# EXHIBIT 2



COPYRIGHT, DESIGNS AND PATENTS ACT 1988

# Copyright, Designs and Patents Act 1988

CHAPTER 48

Published by TSO (The Stationery Office) and available from:

**Online**
www.tso.co.uk/bookshop

**Mail, Telephone, Fax & E-mail**
TSO
PO Box 29, Norwich NR3 1GN
Telephone orders/General enquiries 0870 600 5522
Fax orders 0870 600 5533
Order through the Parliamentary Hotline Lo-call 0845 7 023474
Email book.orders@tso.co.uk
Textphone 0870 240 3701

**TSO Shops**
123 Kingsway, London WC2B 6PQ
020 7242 6393 Fax 020 7242 6394
68–69 Bull Street, Birmingham B4 6AD
0121 236 9696 Fax 0121 236 9699
9–21 Princess Street, Manchester M60 8AS
0161 834 7201 Fax 0161 833 0634
16 Arthur Street, Belfast BT1 4GD
028 9023 8451 Fax 028 9023 5401
18–19 High Street, Cardiff CF10 1PT
029 2039 5548 Fax 029 2038 4347
71 Lothian Road, Edinburgh EH3 9AZ
0870 606 5566 Fax 0870 606 5588

**The Parliamentary Bookshop**
12 Bridge Street, Parliament Square,
London SW1A 2JX
Telephone orders/General enquiries 020 7219 3890
Fax orders 020 7219 3866

**Accredited Agents**
(see Yellow Pages)

*and through good booksellers*

ISBN 0-10-544888-5



First Published 1988
Reprinted Incorporating Corrections 2003



# Copyright, Designs and Patents Act 1988

## CHAPTER 48

## ARRANGEMENT OF SECTIONS

### Part I

### COPYRIGHT

### Chapter I

### SUBSISTENCE, OWNERSHIP AND DURATION OF COPYRIGHT

#### *Introductory*

Section
1. Copyright and copyright works.
2. Rights subsisting in copyright works.

#### *Descriptions of work and related provisions*

3. Literary, dramatic and musical works.
4. Artistic works.
5. Sound recordings and films.
6. Broadcasts.
7. Cable programmes.
8. Published editions.

#### *Authorship and ownership of copyright*

9. Authorship of work.
10. Works of joint authorship.
11. First ownership of copyright.

#### *Duration of copyright*

12. Duration of copyright in literary, dramatic, musical or artistic works.
13. Duration of copyright in sound recordings and films.
14. Duration of copyright in broadcasts and cable programmes.
15. Duration of copyright in typographical arrangement of published editions.

ii          c. **48**          *Copyright, Designs and Patents Act 1988*

## CHAPTER II

### RIGHTS OF COPYRIGHT OWNER

Section
16. The acts restricted by copyright in a work.
17. Infringement of copyright by copying.
18. Infringement by issue of copies to the public.
19. Infringement by performance, showing or playing of work in public.
20. Infringement by broadcasting or inclusion in a cable programme service.
21. Infringement by making adaptation or act done in relation to adaptation.

*Secondary infringement of copyright*

22. Secondary infringement: importing infringing copy.
23. Secondary infringement: possessing or dealing with infringing copy.
24. Secondary infringement: providing means for making infringing copies.
25. Secondary infringement: permitting use of premises for infringing performance.
26. Secondary infringement: provision of apparatus for infringing performance, &c.

*Infringing copies*

27. Meaning of "infringing copy".

## CHAPTER III

### ACTS PERMITTED IN RELATION TO COPYRIGHT WORKS

*Introductory*

28. Introductory provisions.

*General*

29. Research and private study.
30. Criticism, review and news reporting.
31. Incidental inclusion of copyright material.

*Education*

32. Things done for purposes of instruction or examination.
33. Anthologies for educational use.
34. Performing, playing or showing work in course of activities of educational establishment.
35. Recording by educational establishments of broadcasts and cable programmes.
36. Reprographic copying by educational establishments of passages from published works.

*Libraries and archives*

37. Libraries and archives: introductory.
38. Copying by librarians: articles in periodicals.
39. Copying by librarians: parts of published works.

*Copyright, Designs and Patents Act 1988*    c. **48**    iii

Section
40. Restriction on production of multiple copies of the same material.
41. Copying by librarians: supply of copies to other libraries.
42. Copying by librarians or archivists: replacement copies of works.
43. Copying by librarians or archivists: certain unpublished works.
44. Copy of work required to be made as condition of export.

*Public administration*

45. Parliamentary and judicial proceedings.
46. Royal Commissions and statutory inquiries.
47. Material open to public inspection or on official register.
48. Material communicated to the Crown in the course of public business.
49. Public records.
50. Acts done under statutory authority.

*Designs*

51. Design documents and models.
52. Effect of exploitation of design derived from artistic work.
53. Things done in reliance on registration of design.

*Typefaces*

54. Use of typeface in ordinary course of printing.
55. Articles for producing material in particular typeface.

*Works in electronic form*

56. Transfers of copies of works in electronic form.

*Miscellaneous: literary, dramatic, musical and artistic works*

57. Anonymous or pseudonymous works: acts permitted on assumptions as to expiry of copyright or death of author.
58. Use of notes or recordings of spoken words in certain cases.
59. Public reading or recitation.
60. Abstracts of scientific or technical articles.
61. Recordings of folksongs.
62. Representation of certain artistic works on public display.
63. Advertisement of sale of artistic work.
64. Making of subsequent works by same artist.
65. Reconstruction of buildings.

*Miscellaneous: sound recordings, films and computer programs*

66. Rental of sound recordings, films and computer programs.
67. Playing of sound recordings for purposes of club, society, &c.

*Miscellaneous: broadcasts and cable programmes*

68. Incidental recording for purposes of broadcast or cable programme.
69. Recording for purposes of supervision and control of broadcasts and cable programmes.
70. Recording for purposes of time-shifting.
71. Photographs of television broadcasts or cable programmes.

iv          c. **48**        *Copyright, Designs and Patents Act 1988*

Section
72. Free public showing or playing of broadcast or cable programme.
73. Reception and re-transmission of broadcast in cable programme service.
74. Provision of sub-titled copies of broadcast or cable programme.
75. Recording for archival purposes.

### *Adaptations*

76. Adaptations.

## CHAPTER IV

### MORAL RIGHTS

#### *Right to be identified as author or director*

77. Right to be identified as author or director.
78. Requirement that right be asserted.
79. Exceptions to right.

#### *Right to object to derogatory treatment of work*

80. Right to object to derogatory treatment of work.
81. Exceptions to right.
82. Qualification of right in certain cases.
83. Infringement of right by possessing or dealing with infringing article.

#### *False attribution of work*

84. False attribution of work.

#### *Right to privacy of certain photographs and films*

85. Right to privacy of certain photographs and films.

#### *Supplementary*

86. Duration of rights.
87. Consent and waiver of rights.
88. Application of provisions to joint works.
89. Application of provisions to parts of works.

## CHAPTER V

### DEALINGS WITH RIGHTS IN COPYRIGHT WORKS

#### *Copyright*

90. Assignment and licences.
91. Prospective ownership of copyright.
92. Exclusive licences.
93. Copyright to pass under will with unpublished work.

#### *Moral rights*

94. Moral rights not assignable.
95. Transmission of moral rights on death.

*Copyright, Designs and Patents Act 1988*    c. **48**    v

## Chapter VI

### Remedies for Infringement

#### *Rights and remedies of copyright owner*

Section
96.  Infringement actionable by copyright owner.
97.  Provisions as to damages in infringement action.
98.  Undertaking to take licence of right in infringement proceedings.
99.  Order for delivery up.
100. Right to seize infringing copies and other articles.

#### *Rights and remedies of exclusive licensee*

101. Rights and remedies for exclusive licensee.
102. Exercise of concurrent rights.

#### *Remedies for infringement of moral rights*

103. Remedies for infringement of moral rights.

#### *Presumptions*

104. Presumptions relevant to literary, dramatic, musical and artistic works.
105. Presumptions relevant to sound recordings, films and computer programs.
106. Presumptions relevant to works subject to Crown copyright.

#### *Offences*

107. Criminal liability for making or dealing with infringing articles, &c.
108. Order for delivery up in criminal proceedings.
109. Search warrants.
110. Offence by body corporate: liability of officers.

#### *Provision for preventing importation of infringing copies*

111. Infringing copies may be treated as prohibited goods.
112. Power of Commissioners of Customs and Excise to make regulations.

#### *Supplementary*

113. Period after which remedy of delivery up not available.
114. Order as to disposal of infringing copy or other article.
115. Jurisdiction of county court and sheriff court.

## Chapter VII

### Copyright Licensing

#### *Licensing schemes and licensing bodies*

116. Licensing schemes and licensing bodies.

#### *References and applications with respect to licensing schemes*

117. Licensing schemes to which ss. 118 to 123 apply.
118. Reference of proposed licensing scheme to tribunal.

vi          c. **48**          *Copyright, Designs and Patents Act 1988*

Section
119.   Reference of licensing scheme to tribunal.
120.   Further reference of scheme to tribunal.
121.   Application for grant of licence in connection with licensing scheme.
122.   Application for review of order as to entitlement to licence.
123.   Effect of order of tribunal as to licensing scheme.

*References and applications with respect to licensing by licensing bodies*

124.   Licences to which ss. 125 to 128 apply.
125.   Reference to tribunal of proposed licence.
126.   Reference to tribunal of expiring licence.
127.   Application for review of order as to licence.
128.   Effect of order of tribunal as to licence.

*Factors to be taken into account in certain classes of case*

129.   General considerations: unreasonable discrimination.
130.   Licences for reprographic copying.
131.   Licences for educational establishments in respect of works included in broadcasts or cable programmes.
132.   Licences to reflect conditions imposed by promoters of events.
133.   Licences to reflect payments in respect of underlying rights.
134.   Licences in respect of works included in re-transmissions.
135.   Mention of specific matters not to exclude other relevant considerations.

*Implied indemnity in schemes or licences for reprographic copying*

136.   Implied indemnity in certain schemes and licences for reprographic copying.

*Reprographic copying by educational establishments*

137.   Power to extend coverage of scheme or licence.
138.   Variation or discharge of order extending scheme or licence.
139.   Appeals against orders.
140.   Inquiry whether new scheme or general licence required.
141.   Statutory licence where recommendation not implemented.

*Royalty or other sum payable for rental of certain works*

142.   Royalty or other sum payable for rental of sound recording, film or computer program.

*Certification of licensing schemes*

143.   Certification of licensing schemes.

*Powers exercisable in consequence of competition report*

144.   Powers exercisable in consequence of report of Monopolies and Mergers Commission.

*Copyright, Designs and Patents Act 1988*    c. **48**    vii

## Chapter VIII

### The Copyright Tribunal

#### *The tribunal*

Section
145. The Copyright Tribunal.
146. Membership of the tribunal.
147. Financial provisions.
148. Constitution for purposes of proceedings.

#### *Jurisdiction and procedure*

149. Jurisdiction of the tribunal.
150. General power to make rules.
151. Costs, proof of orders, &c.

#### *Appeals*

152. Appeal to the court on point of law.

## Chapter IX

### Qualification for and Extent of Copyright Protection

#### *Qualification for copyright protection*

153. Qualification for copyright protection.
154. Qualification by reference to author.
155. Qualification by reference to country of first publication.
156. Qualification by reference to place of transmission.

#### *Extent and application of this Part*

157. Countries to which this Part extends.
158. Countries ceasing to be colonies.
159. Application of this Part to countries to which it does not extend.
160. Denial of copyright protection to citizens of countries not giving adequate protection to British works.

#### *Supplementary*

161. Territorial waters and the continental shelf.
162. British ships, aircraft and hovercraft.

## Chapter X

### Miscellaneous and General

#### *Crown and Parliamentary copyright*

163. Crown copyright.
164. Copyright in Acts and Measures.
165. Parliamentary copyright.
166. Copyright in Parliamentary Bills.
167. Houses of Parliament: supplementary provisions with respect to copyright.

#### *Other miscellaneous provisions*

168. Copyright vesting in certain international organisations.

viii        c. **48**        *Copyright, Designs and Patents Act 1988*

Section
169.    Folklore, &c.: anonymous unpublished works.

*Transitional provisions and savings*

170.    Transitional provisions and savings.
171.    Rights and privileges under other enactments or the common law.

*Interpretation*

172.    General provisions as to construction.
173.    Construction of references to copyright owner.
174.    Meaning of "educational establishment" and related expressions.
175.    Meaning of publication and commercial publication.
176.    Requirement of signature: application in relation to body corporate.
177.    Adaptation of expressions for Scotland.
178.    Minor definitions.
179.    Index of defined expressions.

## PART II

### RIGHTS IN PERFORMANCES

#### *Introductory*

180.    Rights conferred on performers and persons having recording rights.

*Performers' rights*

181.    Qualifying performances.
182.    Consent required for recording or live transmission of performance.
183.    Infringement of performer's rights by use of recording made without consent.
184.    Infringement of performer's rights by importing, possessing or dealing with illicit recording.

*Rights of person having recording rights*

185.    Exclusive recording contracts and persons having recording rights.
186.    Consent required for recording of performance subject to exclusive contract.
187.    Infringement of recording rights by use of recording made without consent.
188.    Infringement of recording rights by importing, possessing or dealing with illicit recording.

*Exceptions to rights conferred*

189.    Acts permitted notwithstanding rights conferred by this Part.
190.    Power of tribunal to give consent on behalf of performer in certain cases.

*Duration and transmission of rights; consent*

191.    Duration of rights.

*Copyright, Designs and Patents Act 1988*    c. **48**    ix

Section
192.  Transmission of rights.
193.  Consent.

### *Remedies for infringement*

194.  Infringement actionable as breach of statutory duty.
195.  Order for delivery up.
196.  Right to seize illicit recordings.
197.  Meaning of "illicit recording".

### *Offences*

198.  Criminal liability for making, dealing with or using illicit recordings.
199.  Order for delivery up in criminal proceedings.
200.  Search warrants.
201.  False representation of authority to give consent.
202.  Offence by body corporate: liability of officers.

### *Supplementary provisions with respect to delivery up and seizure*

203.  Period after which remedy of delivery up not available.
204.  Order as to disposal of illicit recording.
205.  Jurisdiction of county court and sheriff court.

### *Qualification for protection and extent*

206.  Qualifying countries, individuals and persons.
207.  Countries to which this Part extends.
208.  Countries enjoying reciprocal protection.
209.  Territorial waters and the continental shelf.
210.  British ships, aircraft and hovercraft.

### *Interpretation*

211.  Expressions having same meaning as in copyright provisions.
212.  Index of defined expressions.

## PART III

### DESIGN RIGHT

### CHAPTER I

### DESIGN RIGHT IN ORIGINAL DESIGNS

#### *Introductory*

213.  Design right.
214.  The designer.
215.  Ownership of design right.
216.  Duration of design right.

### *Qualification for design right protection*

217.  Qualifying individuals and qualifying persons.
218.  Qualification by reference to designer.
219.  Qualification by reference to commissioner or employer.
220.  Qualification by reference to first marketing.

x    c. **48**    *Copyright, Designs and Patents Act 1988*

Section
221.  Power to make further provision as to qualification.

### *Dealings with design right*

222.  Assignment and licences.
223.  Prospective ownership of design right.
224.  Assignment of right in registered design presumed to carry with it design right.
225.  Exclusive licences.

## CHAPTER II

### RIGHTS OF DESIGN RIGHT OWNER AND REMEDIES

#### *Infringement of design right*

226.  Primary infringement of design right.
227.  Secondary infringement: importing or dealing with infringing article.
228.  Meaning of "infringing article".

#### *Remedies for infringement*

229.  Rights and remedies of design right owner.
230.  Order for delivery up.
231.  Order as to disposal of infringing articles, &c.
232.  Jurisdiction of county court and sheriff court.
233.  Innocent infringement.
234.  Rights and remedies of exclusive licensee.
235.  Exercise of concurrent rights.

## CHAPTER III

### EXCEPTIONS TO RIGHTS OF DESIGN RIGHT OWNERS

#### *Infringement of copyright*

236.  Infringement of copyright.

#### *Availability of licences of right*

237.  Licences available in last five years of design right.
238.  Powers exercisable for protection of the public interest.
239.  Undertaking to take licence of right in infringement proceedings.

#### *Crown use of designs*

240.  Crown use of designs.
241.  Settlement of terms for Crown use.
242.  Rights of third parties in case of Crown use.
243.  Crown use: compensation for loss of profit.
244.  Special provision for Crown use during emergency.

#### *General*

245.  Power to provide for further exceptions.

## CHAPTER IV

### JURISDICTION OF THE COMPTROLLER AND THE COURT

#### *Jurisdiction of the comptroller*

Section
246.   Jurisdiction to decide matters relating to design right.
247.   Application to settle terms of licence of right.
248.   Settlement of terms where design right owner unknown.
249.   Appeals as to terms of licence of right.
250.   Rules.

#### *Jurisdiction of the court*

251.   References and appeals on design right matters.
252.   Reference of disputes relating to Crown use.

## CHAPTER V

### MISCELLANEOUS AND GENERAL

#### *Miscellaneous*

253.   Remedy for groundless threats of infringement proceedings.
254.   Licensee under licence of right not to claim connection with design
          right owner.

#### *Extent of operation of this Part*

255.   Countries to which this Part extends.
256.   Countries enjoying reciprocal protection.
257.   Territorial waters and the continental shelf.

#### *Interpretation*

258.   Construction of references to design right owner.
259.   Joint designs.
260.   Application of provisions to articles in kit form.
261.   Requirement of signature: application in relation to body
          corporate.
262.   Adaptation of expressions in relation to Scotland.
263.   Minor definitions.
264.   Index of defined expressions.

## PART IV

### REGISTERED DESIGNS

#### *Amendments of the Registered Designs Act 1949*

265.   Registrable designs.
266.   Provisions with respect to certain designs registered in pursuance
          of application made before commencement.
267.   Authorship and first ownership of designs.
268.   Right given by registration of design.
269.   Duration of right in registered design.
270.   Powers exercisable for protection of the public interest.
271.   Crown use: compensation for loss of profit.
272.   Minor and consequential amendments.

xii        c. **48**        *Copyright, Designs and Patents Act 1988*

*Supplementary*

Section
273.   Text of Registered Designs Act 1949 as amended.

## PART V

### PATENT AGENTS AND TRADE MARK AGENTS

*Patent agents*

274.   Persons permitted to carry on business of a patent agent.
275.   The register of patent agents.
276.   Persons entitled to describe themselves as patent agents.
277.   Persons entitled to describe themselves as European patent
       attorneys, &c.
278.   Use of the term "patent attorney": supplementary provisions.
279.   Power to prescribe conditions, &c. for mixed partnerships and
       bodies corporate.
280.   Privilege for communications with patent agents.
281.   Power of comptroller to refuse to deal with certain agents.

*Trade mark agents*

282.   The register of trade mark agents.
283.   Unregistered persons not to be described as registered trade
       mark agents.
284.   Privilege for communications with registered trade mark agents.

*Supplementary*

285.   Offences committed by partnerships and bodies corporate.
286.   Interpretation.

## PART VI

### PATENTS

*Patents county courts*

287.   Patents county courts: special jurisdiction.
288.   Financial limits in relation to proceedings within special
       jurisdiction of patents county court.
289.   Transfer of proceedings between High Court and patents county
       court.
290.   Limitation of costs where pecuniary claim could have been
       brought in patents county court.
291.   Proceedings in patents county court.
292.   Rights and duties of registered patent agents in relation to
       proceedings in patents county court.

*Licences of right in respect of certain patents*

293.   Restriction of acts authorised by certain licences.
294.   When application may be made for settlement of terms of licence.

*Patents: miscellaneous amendments*

295.   Patents: miscellaneous amendments.

*Copyright, Designs and Patents Act 1988*    c. **48**    xiii

# Part VII

## Miscellaneous and General

### *Devices designed to circumvent copy–protection*

Section
296.   Devices designed to circumvent copy–protection.

### *Fraudulent reception of transmissions*

297.   Offence of fraudulently receiving programmes.
298.   Rights and remedies in respect of apparatus, &c. for unauthorised reception of transmissions.
299.   Supplementary provisions as to fraudulent reception.

### *Fraudulent application or use of trade mark*

300.   Fraudulent application or use of trade mark an offence.

### *Provisions for the benefit of the Hospital for Sick Children*

301.   Provisions for the benefit of the Hospital for Sick Children.

### *Financial assistance for certain international bodies*

302.   Financial assistance for certain international bodies.

### *General*

303.   Consequential amendments and repeals.
304.   Extent.
305.   Commencement.
306.   Short title.

Schedules:

Schedule 1—Copyright: transitional provisions and savings.
Schedule 2—Rights in performances: permitted acts.
Schedule 3—Registered designs: minor and consequential amendments of 1949 Act.
Schedule 4—The Registered Designs Act 1949 as amended.
Schedule 5—Patents: miscellaneous amendments.
Schedule 6—Provisions for the benefit of the Hospital for Sick Children.
Schedule 7—Consequential amendments: general.
Schedule 8—Repeals.

**ELIZABETH II**                                                c. **48**



# Copyright, Designs and Patents Act 1988

### 1988 CHAPTER 48

An Act to restate the law of copyright, with amendments; to make fresh provision as to the rights of performers and others in performances; to confer a design right in original designs; to amend the Registered Designs Act 1949; to make provision with respect to patent agents and trade mark agents; to confer patents and designs jurisdiction on certain county courts; to amend the law of patents; to make provision with respect to devices designed to circumvent copy-protection of works in electronic form; to make fresh provision penalising the fraudulent reception of transmissions; to make the fraudulent application or use of a trade mark an offence; to make provision for the benefit of the Hospital for Sick Children, Great Ormond Street, London; to enable financial assistance to be given to certain international bodies; and for connected purposes.

                                                        [15th November 1988]

**B**E IT ENACTED by the Queen's most Excellent Majesty, by and with the advice and consent of the Lords Spiritual and Temporal, and Commons, in this present Parliament assembled, and by the authority of the same, as follows:—

### PART I
### COPYRIGHT
### CHAPTER I
##### SUBSISTENCE, OWNERSHIP AND DURATION OF COPYRIGHT
*Introductory*

**1.**—(1) Copyright is a property right which subsists in accordance with this Part in the following descriptions of work—

    (a) original literary, dramatic, musical or artistic works,

*Copyright and copyright works.*

2          c. **48**          *Copyright, Designs and Patents*

PART I

(b) sound recordings, films, broadcasts or cable programmes, and

(c) the typographical arrangement of published editions.

(2) In this Part "copyright work" means a work of any of those descriptions in which copyright subsists.

(3) Copyright does not subsist in a work unless the requirements of this Part with respect to qualification for copyright protection are met (see section 153 and the provisions referred to there).

Rights subsisting in copyright works.

**2.**—(1) The owner of the copyright in a work of any description has the exclusive right to do the acts specified in Chapter II as the acts restricted by the copyright in a work of that description.

(2) In relation to certain descriptions of copyright work the following rights conferred by Chapter IV (moral rights) subsist in favour of the author, director or commissioner of the work, whether or not he is the owner of the copyright—

(a) section 77 (right to be identified as author or director),

(b) section 80 (right to object to derogatory treatment of work), and

(c) section 85 (right to privacy of certain photographs and films).

*Descriptions of work and related provisions*

Literary, dramatic and musical works.

**3.**—(1) In this Part—

"literary work" means any work, other than a dramatic or musical work, which is written, spoken or sung, and accordingly includes—

(a) a table or compilation, and

(b) a computer program;

"dramatic work" includes a work of dance or mime; and

"musical work" means a work consisting of music, exclusive of any words or action intended to be sung, spoken or performed with the music.

(2) Copyright does not subsist in a literary, dramatic or musical work unless and until it is recorded, in writing or otherwise; and references in this Part to the time at which such a work is made are to the time at which it is so recorded.

(3) It is immaterial for the purposes of subsection (2) whether the work is recorded by or with the permission of the author; and where it is not recorded by the author, nothing in that subsection affects the question whether copyright subsists in the record as distinct from the work recorded.

Artistic works.

**4.**—(1) In this Part "artistic work" means—

(a) a graphic work, photograph, sculpture or collage, irrespective of artistic quality,

(b) a work of architecture being a building or a model for a building, or

(c) a work of artistic craftsmanship.

(2) In this Part—    <span style="float:right">PART I</span>

"building" includes any fixed structure, and a part of a building or fixed structure;

"graphic work" includes—

(a) any painting, drawing, diagram, map, chart or plan, and

(b) any engraving, etching, lithograph, woodcut or similar work;

"photograph" means a recording of light or other radiation on any medium on which an image is produced or from which an image may by any means be produced, and which is not part of a film;

"sculpture" includes a cast or model made for purposes of sculpture.

**5.**—(1) In this Part—    <span style="float:right">Sound recordings<br>and films.</span>

"sound recording" means—

(a) a recording of sounds, from which the sounds may be reproduced, or

(b) a recording of the whole or any part of a literary, dramatic or musical work, from which sounds reproducing the work or part may be produced,

regardless of the medium on which the recording is made or the method by which the sounds are reproduced or produced; and

"film" means a recording on any medium from which a moving image may by any means be produced.

(2) Copyright does not subsist in a sound recording or film which is, or to the extent that it is, a copy taken from a previous sound recording or film.

**6.**—(1) In this Part a "broadcast" means a transmission by wireless    <span style="float:right">Broadcasts.</span> telegraphy of visual images, sounds or other information which—

(a) is capable of being lawfully received by members of the public, or

(b) is transmitted for presentation to members of the public;

and references to broadcasting shall be construed accordingly.

(2) An encrypted transmission shall be regarded as capable of being lawfully received by members of the public only if decoding equipment has been made available to members of the public by or with the authority of the person making the transmission or the person providing the contents of the transmission.

(3) References in this Part to the person making a broadcast, broadcasting a work, or including a work in a broadcast are—

(a) to the person transmitting the programme, if he has responsibility to any extent for its contents, and

(b) to any person providing the programme who makes with the person transmitting it the arrangements necessary for its transmission;

and references in this Part to a programme, in the context of broadcasting, are to any item included in a broadcast.

4          c. **48**          *Copyright, Designs and Patents*

(4) For the purposes of this Part the place from which a broadcast is made is, in the case of a satellite transmission, the place from which the signals carrying the broadcast are transmitted to the satellite.

(5) References in this Part to the reception of a broadcast include reception of a broadcast relayed by means of a telecommunications system.

(6) Copyright does not subsist in a broadcast which infringes, or to the extent that it infringes, the copyright in another broadcast or in a cable programme.

Cable
programmes.

**7.**—(1) In this Part—

"cable programme" means any item included in a cable programme service; and

"cable programme service" means a service which consists wholly or mainly in sending visual images, sounds or other information by means of a telecommunications system, otherwise than by wireless telegraphy, for reception—

(a) at two or more places (whether for simultaneous reception or at different times in response to requests by different users), or

(b) for presentation to members of the public,

and which is not, or so far as it is not, excepted by or under the following provisions of this section.

(2) The following are excepted from the definition of "cable programme service"—

(a) a service or part of a service of which it is an essential feature that while visual images, sounds or other information are being conveyed by the person providing the service there will or may be sent from each place of reception, by means of the same system or (as the case may be) the same part of it, information (other than signals sent for the operation or control of the service) for reception by the person providing the service or other persons receiving it;

(b) a service run for the purposes of a business where—

(i) no person except the person carrying on the business is concerned in the control of the apparatus comprised in the system,

(ii) the visual images, sounds or other information are conveyed by the system solely for purposes internal to the running of the business and not by way of rendering a service or providing amenities for others, and

(iii) the system is not connected to any other telecommunications system;

(c) a service run by a single individual where—

(i) all the apparatus comprised in the system is under his control,

(ii) the visual images, sounds or other information conveyed by the system are conveyed solely for domestic purposes of his, and

(iii) the system is not connected to any other telecommunications system;

(d) services where—

(i) all the apparatus comprised in the system is situated in, or connects, premises which are in single occupation, and

(ii) the system is not connected to any other telecommunications system,

other than services operated as part of the amenities provided for residents or inmates of premises run as a business;

(e) services which are, or to the extent that they are, run for persons providing broadcasting or cable programme services or providing programmes for such services.

(3) The Secretary of State may by order amend subsection (2) so as to add or remove exceptions, subject to such transitional provision as appears to him to be appropriate.

(4) An order shall be made by statutory instrument; and no order shall be made unless a draft of it has been laid before and approved by resolution of each House of Parliament.

(5) References in this Part to the inclusion of a cable programme or work in a cable programme service are to its transmission as part of the service; and references to the person including it are to the person providing the service.

(6) Copyright does not subsist in a cable programme—

(a) if it is included in a cable programme service by reception and immediate re-transmission of a broadcast, or

(b) if it infringes, or to the extent that it infringes, the copyright in another cable programme or in a broadcast.

**8.**—(1) In this Part "published edition", in the context of copyright in     Published editions. the typographical arrangement of a published edition, means a published edition of the whole or any part of one or more literary, dramatic or musical works.

(2) Copyright does not subsist in the typographical arrangement of a published edition if, or to the extent that, it reproduces the typographical arrangement of a previous edition.

### *Authorship and ownership of copyright*

**9.**—(1) In this Part "author", in relation to a work, means the person     Authorship of who creates it.     work.

(2) That person shall be taken to be—

(a) in the case of a sound recording or film, the person by whom the arrangements necessary for the making of the recording or film are undertaken;

(b) in the case of a broadcast, the person making the broadcast (see section 6(3)) or, in the case of a broadcast which relays another broadcast by reception and immediate re-transmission, the person making that other broadcast;

(c) in the case of a cable programme, the person providing the cable programme service in which the programme is included;

6          c. **48**          *Copyright, Designs and Patents*

PART I

(d) in the case of the typographical arrangement of a published edition, the publisher.

(3) In the case of a literary, dramatic, musical or artistic work which is computer-generated, the author shall be taken to be the person by whom the arrangements necessary for the creation of the work are undertaken.

(4) For the purposes of this Part a work is of "unknown authorship" if the identity of the author is unknown or, in the case of a work of joint authorship, if the identity of none of the authors is known.

(5) For the purposes of this Part the identity of an author shall be regarded as unknown if it is not possible for a person to ascertain his identity by reasonable inquiry; but if his identity is once known it shall not subsequently be regarded as unknown.

Works of joint authorship.

**10.**—(1) In this Part a "work of joint authorship" means a work produced by the collaboration of two or more authors in which the contribution of each author is not distinct from that of the other author or authors.

(2) A broadcast shall be treated as a work of joint authorship in any case where more than one person is to be taken as making the broadcast (see section 6(3)).

(3) References in this Part to the author of a work shall, except as otherwise provided, be construed in relation to a work of joint authorship as references to all the authors of the work.

First ownership of copyright.

**11.**—(1) The author of a work is the first owner of any copyright in it, subject to the following provisions.

(2) Where a literary, dramatic, musical or artistic work is made by an employee in the course of his employment, his employer is the first owner of any copyright in the work subject to any agreement to the contrary.

(3) This section does not apply to Crown copyright or Parliamentary copyright (see sections 163 and 165) or to copyright which subsists by virtue of section 168 (copyright of certain international organisations).

*Duration of copyright*

Duration of copyright in literary, dramatic, musical or artistic works.

**12.**—(1) Copyright in a literary, dramatic, musical or artistic work expires at the end of the period of 50 years from the end of the calendar year in which the author dies, subject to the following provisions of this section.

(2) If the work is of unknown authorship, copyright expires at the end of the period of 50 years from the end of the calendar year in which it is first made available to the public; and subsection (1) does not apply if the identity of the author becomes known after the end of that period.

For this purpose making available to the public includes—

(a) in the case of a literary, dramatic or musical work—

(i) performance in public, or

(ii) being broadcast or included in a cable programme service;

(b) in the case of an artistic work—

(i) exhibition in public,

(ii) a film including the work being shown in public, or

(iii) being included in a broadcast or cable programme service;

but in determining generally for the purposes of this subsection whether a work has been made available to the public no account shall be taken of any unauthorised act.

(3) If the work is computer-generated neither of the above provisions applies and copyright expires at the end of the period of 50 years from the end of the calendar year in which the work was made.

(4) In relation to a work of joint authorship—

(a) the reference in subsection (1) to the death of the author shall be construed —

(i) if the identity of all the authors is known, as a reference to the death of the last of them to die, and

(ii) if the identity of one or more of the authors is known and the identity of one or more others is not, as a reference to the death of the last of the authors whose identity is known; and

(b) the reference in subsection (2) to the identity of the author becoming known shall be construed as a reference to the identity of any of the authors becoming known.

(5) This section does not apply to Crown copyright or Parliamentary copyright (see sections 163 to 166) or to copyright which subsists by virtue of section 168 (copyright of certain international organisations).

13.—(1) Copyright in a sound recording or film expires—

Duration of copyright in sound recordings and films.

(a) at the end of the period of 50 years from the end of the calendar year in which it is made, or

(b) if it is released before the end of that period, 50 years from the end of the calendar year in which it is released.

(2) A sound recording or film is "released" when—

(a) it is first published, broadcast or included in a cable programme service, or

(b) in the case of a film or film sound-track, the film is first shown in public;

but in determining whether a work has been released no account shall be taken of any unauthorised act.

14.—(1) Copyright in a broadcast or cable programme expires at the end of the period of 50 years from the end of the calendar year in which the broadcast was made or the programme was included in a cable programme service.

Duration of copyright in broadcasts and cable programmes.

(2) Copyright in a repeat broadcast or cable programme expires at the same time as the copyright in the original broadcast or cable programme; and accordingly no copyright arises in respect of a repeat broadcast or cable programme which is broadcast or included in a cable programme service after the expiry of the copyright in the original broadcast or cable programme.

8          c. **48**          *Copyright, Designs and Patents*

(3) A repeat broadcast or cable programme means one which is a repeat either of a broadcast previously made or of a cable programme previously included in a cable programme service.

Duration of copyright in typographical arrangement of published editions.

**15.** Copyright in the typographical arrangement of a published edition expires at the end of the period of 25 years from the end of the calendar year in which the edition was first published.

### CHAPTER II

### RIGHTS OF COPYRIGHT OWNER

#### *The acts restricted by copyright*

The acts restricted by copyright in a work.

**16.**—(1) The owner of the copyright in a work has, in accordance with the following provisions of this Chapter, the exclusive right to do the following acts in the United Kingdom—

   (a) to copy the work (see section 17);

   (b) to issue copies of the work to the public (see section 18);

   (c) to perform, show or play the work in public (see section 19);

   (d) to broadcast the work or include it in a cable programme service (see section 20);

   (e) to make an adaptation of the work or do any of the above in relation to an adaptation (see section 21);

and those acts are referred to in this Part as the "acts restricted by the copyright".

(2) Copyright in a work is infringed by a person who without the licence of the copyright owner does, or authorises another to do, any of the acts restricted by the copyright.

(3) References in this Part to the doing of an act restricted by the copyright in a work are to the doing of it—

   (a) in relation to the work as a whole or any substantial part of it, and

   (b) either directly or indirectly;

and it is immaterial whether any intervening acts themselves infringe copyright.

   (4) This Chapter has effect subject to—

   (a) the provisions of Chapter III (acts permitted in relation to copyright works), and

   (b) the provisions of Chapter VII (provisions with respect to copyright licensing).

Infringement of copyright by copying.

**17.**—(1) The copying of the work is an act restricted by the copyright in every description of copyright work; and references in this Part to copying and copies shall be construed as follows.

(2) Copying in relation to a literary, dramatic, musical or artistic work means reproducing the work in any material form.

This includes storing the work in any medium by electronic means.

(3) In relation to an artistic work copying includes the making of a copy in three dimensions of a two-dimensional work and the making of a copy in two dimensions of a three-dimensional work.

(4) Copying in relation to a film, television broadcast or cable programme includes making a photograph of the whole or any substantial part of any image forming part of the film, broadcast or cable programme.

(5) Copying in relation to the typographical arrangement of a published edition means making a facsimile copy of the arrangement.

(6) Copying in relation to any description of work includes the making of copies which are transient or are incidental to some other use of the work.

**18.**—(1) The issue to the public of copies of the work is an act restricted by the copyright in every description of copyright work.

Infringement by issue of copies to the public.

(2) References in this Part to the issue to the public of copies of a work are to the act of putting into circulation copies not previously put into circulation, in the United Kingdom or elsewhere, and not to—

    (a) any subsequent distribution, sale, hiring or loan of those copies, or

    (b) any subsequent importation of those copies into the United Kingdom;

except that in relation to sound recordings, films and computer programs the restricted act of issuing copies to the public includes any rental of copies to the public.

**19.**—(1) The performance of the work in public is an act restricted by the copyright in a literary, dramatic or musical work.

Infringement by performance, showing or playing of work in public.

(2) In this Part "performance", in relation to a work—

    (a) includes delivery in the case of lectures, addresses, speeches and sermons, and

    (b) in general, includes any mode of visual or acoustic presentation, including presentation by means of a sound recording, film, broadcast or cable programme of the work.

(3) The playing or showing of the work in public is an act restricted by the copyright in a sound recording, film, broadcast or cable programme.

(4) Where copyright in a work is infringed by its being performed, played or shown in public by means of apparatus for receiving visual images or sounds conveyed by electronic means, the person by whom the visual images or sounds are sent, and in the case of a performance the performers, shall not be regarded as responsible for the infringement.

**20.** The broadcasting of the work or its inclusion in a cable programme service is an act restricted by the copyright in—

Infringement by broadcasting or inclusion in a cable programme service.

    (a) a literary, dramatic, musical or artistic work,

    (b) a sound recording or film, or

    (c) a broadcast or cable programme.

10          c. **48**          *Copyright, Designs and Patents*

PART I
Infringement by
making
adaptation or act
done in relation to
adaptation.

**21.**—(1) The making of an adaptation of the work is an act restricted by the copyright in a literary, dramatic or musical work.

For this purpose an adaptation is made when it is recorded, in writing or otherwise.

(2) The doing of any of the acts specified in sections 17 to 20, or subsection (1) above, in relation to an adaptation of the work is also an act restricted by the copyright in a literary, dramatic or musical work.

For this purpose it is immaterial whether the adaptation has been recorded, in writing or otherwise, at the time the act is done.

(3) In this Part "adaptation"—

(a) in relation to a literary or dramatic work, means—

(i) a translation of the work;

(ii) a version of a dramatic work in which it is converted into a non-dramatic work or, as the case may be, of a non-dramatic work in which it is converted into a dramatic work;

(iii) a version of the work in which the story or action is conveyed wholly or mainly by means of pictures in a form suitable for reproduction in a book, or in a newspaper, magazine or similar periodical;

(b) in relation to a musical work, means an arrangement or transcription of the work.

(4) In relation to a computer program a "translation" includes a version of the program in which it is converted into or out of a computer language or code or into a different computer language or code, otherwise than incidentally in the course of running the program.

(5) No inference shall be drawn from this section as to what does or does not amount to copying a work.

*Secondary infringement of copyright*

Secondary
infringement:
importing
infringing copy.

**22.** The copyright in a work is infringed by a person who, without the licence of the copyright owner, imports into the United Kingdom, otherwise than for his private and domestic use, an article which is, and which he knows or has reason to believe is, an infringing copy of the work.

Secondary
infringement:
possessing or
dealing with
infringing copy.

**23.** The copyright in a work is infringed by a person who, without the licence of the copyright owner—

(a) possesses in the course of a business,

(b) sells or lets for hire, or offers or exposes for sale or hire,

(c) in the course of a business exhibits in public or distributes, or

(d) distributes otherwise than in the course of a business to such an extent as to affect prejudicially the owner of the copyright,

an article which is, and which he knows or has reason to believe is, an infringing copy of the work.

Secondary
infringement:
providing means
for making
infringing copies.

**24.**—(1) Copyright in a work is infringed by a person who, without the licence of the copyright owner—

(a) makes,

(b) imports into the United Kingdom,

*Copyright, Designs and Patents*          c. **48**          11

(c) possesses in the course of a business, or                    Part I

(d) sells or lets for hire, or offers or exposes for sale or hire,

an article specifically designed or adapted for making copies of that work, knowing or having reason to believe that it is to be used to make infringing copies.

(2) Copyright in a work is infringed by a person who without the licence of the copyright owner transmits the work by means of a telecommunications system (otherwise than by broadcasting or inclusion in a cable programme service), knowing or having reason to believe that infringing copies of the work will be made by means of the reception of the transmission in the United Kingdom or elsewhere.

**25.**—(1) Where the copyright in a literary, dramatic or musical work is infringed by a performance at a place of public entertainment, any person who gave permission for that place to be used for the performance is also liable for the infringement unless when he gave permission he believed on reasonable grounds that the performance would not infringe copyright.

Secondary infringement: permitting use of premises for infringing performance.

(2) In this section "place of public entertainment" includes premises which are occupied mainly for other purposes but are from time to time made available for hire for the purposes of public entertainment.

**26.**—(1) Where copyright in a work is infringed by a public performance of the work, or by the playing or showing of the work in public, by means of apparatus for—

Secondary infringement: provision of apparatus for infringing performance, &c.

(a) playing sound recordings,

(b) showing films, or

(c) receiving visual images or sounds conveyed by electronic means,

the following persons are also liable for the infringement.

(2) A person who supplied the apparatus, or any substantial part of it, is liable for the infringement if when he supplied the apparatus or part—

(a) he knew or had reason to believe that the apparatus was likely to be so used as to infringe copyright, or

(b) in the case of apparatus whose normal use involves a public performance, playing or showing, he did not believe on reasonable grounds that it would not be so used as to infringe copyright.

(3) An occupier of premises who gave permission for the apparatus to be brought onto the premises is liable for the infringement if when he gave permission he knew or had reason to believe that the apparatus was likely to be so used as to infringe copyright.

(4) A person who supplied a copy of a sound recording or film used to infringe copyright is liable for the infringement if when he supplied it he knew or had reason to believe that what he supplied, or a copy made directly or indirectly from it, was likely to be so used as to infringe copyright.

*Infringing copies*

**27.**—(1) In this Part "infringing copy", in relation to a copyright work, shall be construed in accordance with this section.

Meaning of "infringing copy".

12       c. **48**        *Copyright, Designs and Patents*

PART I       (2) An article is an infringing copy if its making constituted an infringement of the copyright in the work in question.

(3) An article is also an infringing copy if—

(a) it has been or is proposed to be imported into the United Kingdom, and

(b) its making in the United Kingdom would have constituted an infringement of the copyright in the work in question, or a breach of an exclusive licence agreement relating to that work.

(4) Where in any proceedings the question arises whether an article is an infringing copy and it is shown—

(a) that the article is a copy of the work, and

(b) that copyright subsists in the work or has subsisted at any time,

it shall be presumed until the contrary is proved that the article was made at a time when copyright subsisted in the work.

(5) Nothing in subsection (3) shall be construed as applying to an article which may lawfully be imported into the United Kingdom by virtue of any enforceable Community right within the meaning of section 2(1) of the European Communities Act 1972.

1972 c. 68.

(6) In this Part "infringing copy" includes a copy falling to be treated as an infringing copy by virtue of any of the following provisions—

section 32(5) (copies made for purposes of instruction or examination),

section 35(3) (recordings made by educational establishments for educational purposes),

section 36(5) (reprographic copying by educational establishments for purposes of instruction),

section 37(3)(b) (copies made by librarian or archivist in reliance on false declaration),

section 56(2) (further copies, adaptations, &c. of work in electronic form retained on transfer of principal copy),

section 63(2) (copies made for purpose of advertising artistic work for sale),

section 68(4) (copies made for purpose of broadcast or cable programme), or

any provision of an order under section 141 (statutory licence for certain reprographic copying by educational establishments).

CHAPTER III

ACTS PERMITTED IN RELATION TO COPYRIGHT WORKS

*Introductory*

Introductory provisions.

**28.**—(1) The provisions of this Chapter specify acts which may be done in relation to copyright works notwithstanding the subsistence of copyright; they relate only to the question of infringement of copyright and do not affect any other right or obligation restricting the doing of any of the specified acts.

(2) Where it is provided by this Chapter that an act does not infringe copyright, or may be done without infringing copyright, and no particular description of copyright work is mentioned, the act in question does not infringe the copyright in a work of any description.

PART I

(3) No inference shall be drawn from the description of any act which may by virtue of this Chapter be done without infringing copyright as to the scope of the acts restricted by the copyright in any description of work.

(4) The provisions of this Chapter are to be construed independently of each other, so that the fact that an act does not fall within one provision does not mean that it is not covered by another provision.

### General

**29.**—(1) Fair dealing with a literary, dramatic, musical or artistic work for the purposes of research or private study does not infringe any copyright in the work or, in the case of a published edition, in the typographical arrangement.

Research and private study.

(2) Fair dealing with the typographical arrangement of a published edition for the purposes mentioned in subsection (1) does not infringe any copyright in the arrangement.

(3) Copying by a person other than the researcher or student himself is not fair dealing if—

    (a) in the case of a librarian, or a person acting on behalf of a librarian, he does anything which regulations under section 40 would not permit to be done under section 38 or 39 (articles or parts of published works: restriction on multiple copies of same material), or

    (b) in any other case, the person doing the copying knows or has reason to believe that it will result in copies of substantially the same material being provided to more than one person at substantially the same time and for substantially the same purpose.

**30.**—(1) Fair dealing with a work for the purpose of criticism or review, of that or another work or of a performance of a work, does not infringe any copyright in the work provided that it is accompanied by a sufficient acknowledgement.

Criticism, review and news reporting.

(2) Fair dealing with a work (other than a photograph) for the purpose of reporting current events does not infringe any copyright in the work provided that (subject to subsection (3)) it is accompanied by a sufficient acknowledgement.

(3) No acknowledgement is required in connection with the reporting of current events by means of a sound recording, film, broadcast or cable programme.

**31.**—(1) Copyright in a work is not infringed by its incidental inclusion in an artistic work, sound recording, film, broadcast or cable programme.

Incidental inclusion of copyright material.

(2) Nor is the copyright infringed by the issue to the public of copies, or the playing, showing, broadcasting or inclusion in a cable programme service, of anything whose making was, by virtue of subsection (1), not an infringement of the copyright.

14      c. **48**      *Copyright, Designs and Patents*

PART I

(3) A musical work, words spoken or sung with music, or so much of a sound recording, broadcast or cable programme as includes a musical work or such words, shall not be regarded as incidentally included in another work if it is deliberately included.

### *Education*

Things done for purposes of instruction or examination.

**32.**—(1) Copyright in a literary, dramatic, musical or artistic work is not infringed by its being copied in the course of instruction or of preparation for instruction, provided the copying—

(a) is done by a person giving or receiving instruction, and

(b) is not by means of a reprographic process.

(2) Copyright in a sound recording, film, broadcast or cable programme is not infringed by its being copied by making a film or film sound-track in the course of instruction, or of preparation for instruction, in the making of films or film sound-tracks, provided the copying is done by a person giving or receiving instruction.

(3) Copyright is not infringed by anything done for the purposes of an examination by way of setting the questions, communicating the questions to the candidates or answering the questions.

(4) Subsection (3) does not extend to the making of a reprographic copy of a musical work for use by an examination candidate in performing the work.

(5) Where a copy which would otherwise be an infringing copy is made in accordance with this section but is subsequently dealt with, it shall be treated as an infringing copy for the purpose of that dealing, and if that dealing infringes copyright for all subsequent purposes.

For this purpose "dealt with" means sold or let for hire or offered or exposed for sale or hire.

Anthologies for educational use.

**33.**—(1) The inclusion of a short passage from a published literary or dramatic work in a collection which—

(a) is intended for use in educational establishments and is so described in its title, and in any advertisements issued by or on behalf of the publisher, and

(b) consists mainly of material in which no copyright subsists,

does not infringe the copyright in the work if the work itself is not intended for use in such establishments and the inclusion is accompanied by a sufficient acknowledgement.

(2) Subsection (1) does not authorise the inclusion of more than two excerpts from copyright works by the same author in collections published by the same publisher over any period of five years.

(3) In relation to any given passage the reference in subsection (2) to excerpts from works by the same author—

(a) shall be taken to include excerpts from works by him in collaboration with another, and

(b) if the passage in question is from such a work, shall be taken to include excerpts from works by any of the authors, whether alone or in collaboration with another.

(4) References in this section to the use of a work in an educational establishment are to any use for the educational purposes of such an establishment.

PART I

**34.**—(1) The performance of a literary, dramatic or musical work before an audience consisting of teachers and pupils at an educational establishment and other persons directly connected with the activities of the establishment—

Performing, playing or showing work in course of activities of educational establishment.

    (a) by a teacher or pupil in the course of the activities of the establishment, or

    (b) at the establishment by any person for the purposes of instruction,

is not a public performance for the purposes of infringement of copyright.

(2) The playing or showing of a sound recording, film, broadcast or cable programme before such an audience at an educational establishment for the purposes of instruction is not a playing or showing of the work in public for the purposes of infringement of copyright.

(3) A person is not for this purpose directly connected with the activities of the educational establishment simply because he is the parent of a pupil at the establishment.

**35.**—(1) A recording of a broadcast or cable programme, or a copy of such a recording, may be made by or on behalf of an educational establishment for the educational purposes of that establishment without thereby infringing the copyright in the broadcast or cable programme, or in any work included in it.

Recording by educational establishments of broadcasts and cable programmes.

(2) This section does not apply if or to the extent that there is a licensing scheme certified for the purposes of this section under section 143 providing for the grant of licences.

(3) Where a copy which would otherwise be an infringing copy is made in accordance with this section but is subsequently dealt with, it shall be treated as an infringing copy for the purposes of that dealing, and if that dealing infringes copyright for all subsequent purposes.

For this purpose "dealt with" means sold or let for hire or offered or exposed for sale or hire.

**36.**—(1) Reprographic copies of passages from published literary, dramatic or musical works may, to the extent permitted by this section, be made by or on behalf of an educational establishment for the purposes of instruction without infringing any copyright in the work, or in the typographical arrangement.

Reprographic copying by educational establishments of passages from published works.

(2) Not more than one per cent. of any work may be copied by or on behalf of an establishment by virtue of this section in any quarter, that is, in any period 1st January to 31st March, 1st April to 30th June, 1st July to 30th September or 1st October to 31st December.

(3) Copying is not authorised by this section if, or to the extent that, licences are available authorising the copying in question and the person making the copies knew or ought to have been aware of that fact.

16          c. **48**          *Copyright, Designs and Patents*

PART I

(4) The terms of a licence granted to an educational establishment authorising the reprographic copying for the purposes of instruction of passages from published literary, dramatic or musical works are of no effect so far as they purport to restrict the proportion of a work which may be copied (whether on payment or free of charge) to less than that which would be permitted under this section.

(5) Where a copy which would otherwise be an infringing copy is made in accordance with this section but is subsequently dealt with, it shall be treated as an infringing copy for the purposes of that dealing, and if that dealing infringes copyright for all subsequent purposes.

For this purpose "dealt with" means sold or let for hire or offered or exposed for sale or hire.

### *Libraries and archives*

Libraries and archives: introductory.

37.—(1) In sections 38 to 43 (copying by librarians and archivists)—

(a) references in any provision to a prescribed library or archive are to a library or archive of a description prescribed for the purposes of that provision by regulations made by the Secretary of State; and

(b) references in any provision to the prescribed conditions are to the conditions so prescribed.

(2) The regulations may provide that, where a librarian or archivist is required to be satisfied as to any matter before making or supplying a copy of a work—

(a) he may rely on a signed declaration as to that matter by the person requesting the copy, unless he is aware that it is false in a material particular, and

(b) in such cases as may be prescribed, he shall not make or supply a copy in the absence of a signed declaration in such form as may be prescribed.

(3) Where a person requesting a copy makes a declaration which is false in a material particular and is supplied with a copy which would have been an infringing copy if made by him—

(a) he is liable for infringement of copyright as if he had made the copy himself, and

(b) the copy shall be treated as an infringing copy.

(4) The regulations may make different provision for different descriptions of libraries or archives and for different purposes.

(5) Regulations shall be made by statutory instrument which shall be subject to annulment in pursuance of a resolution of either House of Parliament.

(6) References in this section, and in sections 38 to 43, to the librarian or archivist include a person acting on his behalf.

Copying by librarians: articles in periodicals.

38.—(1) The librarian of a prescribed library may, if the prescribed conditions are complied with, make and supply a copy of an article in a periodical without infringing any copyright in the text, in any illustrations accompanying the text or in the typographical arrangement.

(2) The prescribed conditions shall include the following—

(a) that copies are supplied only to persons satisfying the librarian that they require them for purposes of research or private study, and will not use them for any other purpose;

(b) that no person is furnished with more than one copy of the same article or with copies of more than one article contained in the same issue of a periodical; and

(c) that persons to whom copies are supplied are required to pay for them a sum not less than the cost (including a contribution to the general expenses of the library) attributable to their production.

**39.**—(1) The librarian of a prescribed library may, if the prescribed conditions are complied with, make and supply from a published edition a copy of part of a literary, dramatic or musical work (other than an article in a periodical) without infringing any copyright in the work, in any illustrations accompanying the work or in the typographical arrangement.

Copying by librarians: parts of published works.

(2) The prescribed conditions shall include the following—

(a) that copies are supplied only to persons satisfying the librarian that they require them for purposes of research or private study, and will not use them for any other purpose;

(b) that no person is furnished with more than one copy of the same material or with a copy of more than a reasonable proportion of any work; and

(c) that persons to whom copies are supplied are required to pay for them a sum not less than the cost (including a contribution to the general expenses of the library) attributable to their production.

**40.**—(1) Regulations for the purposes of sections 38 and 39 (copying by librarian of article or part of published work) shall contain provision to the effect that a copy shall be supplied only to a person satisfying the librarian that his requirement is not related to any similar requirement of another person.

Restriction on production of multiple copies of the same material.

(2) The regulations may provide—

(a) that requirements shall be regarded as similar if the requirements are for copies of substantially the same material at substantially the same time and for substantially the same purpose; and

(b) that requirements of persons shall be regarded as related if those persons receive instruction to which the material is relevant at the same time and place.

**41.**—(1) The librarian of a prescribed library may, if the prescribed conditions are complied with, make and supply to another prescribed library a copy of—

Copying by librarians: supply of copies to other libraries.

(a) an article in a periodical, or

18          c. **48**                *Copyright, Designs and Patents*

PART I

(b) the whole or part of a published edition of a literary, dramatic or musical work,

without infringing any copyright in the text of the article or, as the case may be, in the work, in any illustrations accompanying it or in the typographical arrangement.

(2) Subsection (1)(b) does not apply if at the time the copy is made the librarian making it knows, or could by reasonable inquiry ascertain, the name and address of a person entitled to authorise the making of the copy.

Copying by librarians or archivists: replacement copies of works.

**42.**—(1) The librarian or archivist of a prescribed library or archive may, if the prescribed conditions are complied with, make a copy from any item in the permanent collection of the library or archive—

(a) in order to preserve or replace that item by placing the copy in its permanent collection in addition to or in place of it, or

(b) in order to replace in the permanent collection of another prescribed library or archive an item which has been lost, destroyed or damaged,

without infringing the copyright in any literary, dramatic or musical work, in any illustrations accompanying such a work or, in the case of a published edition, in the typographical arrangement.

(2) The prescribed conditions shall include provision for restricting the making of copies to cases where it is not reasonably practicable to purchase a copy of the item in question to fulfil that purpose.

Copying by librarians or archivists: certain unpublished works.

**43.**—(1) The librarian or archivist of a prescribed library or archive may, if the prescribed conditions are complied with, make and supply a copy of the whole or part of a literary, dramatic or musical work from a document in the library or archive without infringing any copyright in the work or any illustrations accompanying it.

(2) This section does not apply if—

(a) the work had been published before the document was deposited in the library or archive, or

(b) the copyright owner has prohibited copying of the work,

and at the time the copy is made the librarian or archivist making it is, or ought to be, aware of that fact.

(3) The prescribed conditions shall include the following—

(a) that copies are supplied only to persons satisfying the librarian or archivist that they require them for purposes of research or private study and will not use them for any other purpose;

(b) that no person is furnished with more than one copy of the same material; and

(c) that persons to whom copies are supplied are required to pay for them a sum not less than the cost (including a contribution to the general expenses of the library or archive) attributable to their production.

*Copyright, Designs and Patents*    c. **48**    19

**44.** If an article of cultural or historical importance or interest cannot lawfully be exported from the United Kingdom unless a copy of it is made and deposited in an appropriate library or archive, it is not an infringement of copyright to make that copy.

<div align="right">

PART I

Copy of work required to be made as condition of export.

</div>

### *Public administration*

**45.**—(1) Copyright is not infringed by anything done for the purposes of parliamentary or judicial proceedings.

(2) Copyright is not infringed by anything done for the purposes of reporting such proceedings; but this shall not be construed as authorising the copying of a work which is itself a published report of the proceedings.

<div align="right">

Parliamentary and judicial proceedings.

</div>

**46.**—(1) Copyright is not infringed by anything done for the purposes of the proceedings of a Royal Commission or statutory inquiry.

(2) Copyright is not infringed by anything done for the purpose of reporting any such proceedings held in public; but this shall not be construed as authorising the copying of a work which is itself a published report of the proceedings.

(3) Copyright in a work is not infringed by the issue to the public of copies of the report of a Royal Commission or statutory inquiry containing the work or material from it.

(4) In this section—

"Royal Commission" includes a Commission appointed for Northern Ireland by the Secretary of State in pursuance of the prerogative powers of Her Majesty delegated to him under section 7(2) of the Northern Ireland Constitution Act 1973; and

"statutory inquiry" means an inquiry held or investigation conducted in pursuance of a duty imposed or power conferred by or under an enactment.

<div align="right">

Royal Commissions and statutory inquiries.

1973 c. 36.

</div>

**47.**—(1) Where material is open to public inspection pursuant to a statutory requirement, or is on a statutory register, any copyright in the material as a literary work is not infringed by the copying of so much of the material as contains factual information of any description, by or with the authority of the appropriate person, for a purpose which does not involve the issuing of copies to the public.

(2) Where material is open to public inspection pursuant to a statutory requirement, copyright is not infringed by the copying or issuing to the public of copies of the material, by or with the authority of the appropriate person, for the purpose of enabling the material to be inspected at a more convenient time or place or otherwise facilitating the exercise of any right for the purpose of which the requirement is imposed.

(3) Where material which is open to public inspection pursuant to a statutory requirement, or which is on a statutory register, contains information about matters of general scientific, technical, commercial or economic interest, copyright is not infringed by the copying or issuing to the public of copies of the material, by or with the authority of the appropriate person, for the purpose of disseminating that information.

(4) The Secretary of State may by order provide that subsection (1), (2) or (3) shall, in such cases as may be specified in the order, apply only to copies marked in such manner as may be so specified.

<div align="right">

Material open to public inspection or on official register.

</div>

20          c. **48**              *Copyright, Designs and Patents*

PART I          (5) The Secretary of State may by order provide that subsections (1) to (3) apply, to such extent and with such modifications as may be specified in the order—

> (a) to material made open to public inspection by—
>
>> (i) an international organisation specified in the order, or
>>
>> (ii) a person so specified who has functions in the United Kingdom under an international agreement to which the United Kingdom is party, or
>
> (b) to a register maintained by an international organisation specified in the order,

as they apply in relation to material open to public inspection pursuant to a statutory requirement or to a statutory register.

> (6) In this section—
>
>> "appropriate person" means the person required to make the material open to public inspection or, as the case may be, the person maintaining the register;
>>
>> "statutory register" means a register maintained in pursuance of a statutory requirement; and
>>
>> "statutory requirement" means a requirement imposed by provision made by or under an enactment.

(7) An order under this section shall be made by statutory instrument which shall be subject to annulment in pursuance of a resolution of either House of Parliament.

Material communicated to the Crown in the course of public business.

**48.**—(1) This section applies where a literary, dramatic, musical or artistic work has in the course of public business been communicated to the Crown for any purpose, by or with the licence of the copyright owner and a document or other material thing recording or embodying the work is owned by or in the custody or control of the Crown.

(2) The Crown may, for the purpose for which the work was communicated to it, or any related purpose which could reasonably have been anticipated by the copyright owner, copy the work and issue copies of the work to the public without infringing any copyright in the work.

(3) The Crown may not copy a work, or issue copies of a work to the public, by virtue of this section if the work has previously been published otherwise than by virtue of this section.

(4) In subsection (1) "public business" includes any activity carried on by the Crown.

(5) This section has effect subject to any agreement to the contrary between the Crown and the copyright owner.

Public records.
1958 c. 51.
1937 c. 43.
1923 c. 20 (N.I.).

**49.** Material which is comprised in public records within the meaning of the Public Records Act 1958, the Public Records (Scotland) Act 1937 or the Public Records Act (Northern Ireland) 1923 which are open to public inspection in pursuance of that Act, may be copied, and a copy may be supplied to any person, by or with the authority of any officer appointed under that Act, without infringement of copyright.

**50.**—(1) Where the doing of a particular act is specifically authorised by an Act of Parliament, whenever passed, then, unless the Act provides otherwise, the doing of that act does not infringe copyright.

PART I
Acts done under statutory authority.

(2) Subsection (1) applies in relation to an enactment contained in Northern Ireland legislation as it applies in relation to an Act of Parliament.

(3) Nothing in this section shall be construed as excluding any defence of statutory authority otherwise available under or by virtue of any enactment.

### Designs

**51.**—(1) It is not an infringement of any copyright in a design document or model recording or embodying a design for anything other than an artistic work or a typeface to make an article to the design or to copy an article made to the design.

Design documents and models.

(2) Nor is it an infringement of the copyright to issue to the public, or include in a film, broadcast or cable programme service, anything the making of which was, by virtue of subsection (1), not an infringement of that copyright.

(3) In this section—

"design" means the design of any aspect of the shape or configuration (whether internal or external) of the whole or part of an article, other than surface decoration; and

"design document" means any record of a design, whether in the form of a drawing, a written description, a photograph, data stored in a computer or otherwise.

**52.**—(1) This section applies where an artistic work has been exploited, by or with the licence of the copyright owner, by—

Effect of exploitation of design derived from artistic work.

(a) making by an industrial process articles falling to be treated for the purposes of this Part as copies of the work, and

(b) marketing such articles, in the United Kingdom or elsewhere.

(2) After the end of the period of 25 years from the end of the calendar year in which such articles are first marketed, the work may be copied by making articles of any description, or doing anything for the purpose of making articles of any description, and anything may be done in relation to articles so made, without infringing copyright in the work.

(3) Where only part of an artistic work is exploited as mentioned in subsection (1), subsection (2) applies only in relation to that part.

(4) The Secretary of State may by order make provision—

(a) as to the circumstances in which an article, or any description of article, is to be regarded for the purposes of this section as made by an industrial process;

(b) excluding from the operation of this section such articles of a primarily literary or artistic character as he thinks fit.

(5) An order shall be made by statutory instrument which shall be subject to annulment in pursuance of a resolution of either House of Parliament.

22          c. **48**          *Copyright, Designs and Patents*

PART I

(6) In this section—

(a) references to articles do not include films; and

(b) references to the marketing of an article are to its being sold or let for hire or offered or exposed for sale or hire.

Things done in reliance on registration of design.
1949 c. 88.

**53.**—(1) The copyright in an artistic work is not infringed by anything done—

(a) in pursuance of an assignment or licence made or granted by a person registered under the Registered Designs Act 1949 as the proprietor of a corresponding design, and

(b) in good faith in reliance on the registration and without notice of any proceedings for the cancellation of the registration or for rectifying the relevant entry in the register of designs;

and this is so notwithstanding that the person registered as the proprietor was not the proprietor of the design for the purposes of the 1949 Act.

(2) In subsection (1) a "corresponding design", in relation to an artistic work, means a design within the meaning of the 1949 Act which if applied to an article would produce something which would be treated for the purposes of this Part as a copy of the artistic work.

### Typefaces

Use of typeface in ordinary course of printing.

**54.**—(1) It is not an infringement of copyright in an artistic work consisting of the design of a typeface—

(a) to use the typeface in the ordinary course of typing, composing text, typesetting or printing,

(b) to possess an article for the purpose of such use, or

(c) to do anything in relation to material produced by such use;

and this is so notwithstanding that an article is used which is an infringing copy of the work.

(2) However, the following provisions of this Part apply in relation to persons making, importing or dealing with articles specifically designed or adapted for producing material in a particular typeface, or possessing such articles for the purpose of dealing with them, as if the production of material as mentioned in subsection (1) did infringe copyright in the artistic work consisting of the design of the typeface—

section 24 (secondary infringement: making, importing, possessing or dealing with article for making infringing copy),

sections 99 and 100 (order for delivery up and right of seizure),

section 107(2) (offence of making or possessing such an article), and

section 108 (order for delivery up in criminal proceedings).

(3) The references in subsection (2) to "dealing with" an article are to selling, letting for hire, or offering or exposing for sale or hire, exhibiting in public, or distributing.

Articles for producing material in particular typeface.

**55.**—(1) This section applies to the copyright in an artistic work consisting of the design of a typeface where articles specifically designed or adapted for producing material in that typeface have been marketed by or with the licence of the copyright owner.

(2) After the period of 25 years from the end of the calendar year in which the first such articles are marketed, the work may be copied by making further such articles, or doing anything for the purpose of making such articles, and anything may be done in relation to articles so made, without infringing copyright in the work.

PART I

(3) In subsection (1) "marketed" means sold, let for hire or offered or exposed for sale or hire, in the United Kingdom or elsewhere.

### *Works in electronic form*

**56.**—(1) This section applies where a copy of a work in electronic form has been purchased on terms which, expressly or impliedly or by virtue of any rule of law, allow the purchaser to copy the work, or to adapt it or make copies of an adaptation, in connection with his use of it.

Transfers of copies of works in electronic form.

(2) If there are no express terms—

  (a) prohibiting the transfer of the copy by the purchaser, imposing obligations which continue after a transfer, prohibiting the assignment of any licence or terminating any licence on a transfer, or

  (b) providing for the terms on which a transferee may do the things which the purchaser was permitted to do,

anything which the purchaser was allowed to do may also be done without infringement of copyright by a transferee; but any copy, adaptation or copy of an adaptation made by the purchaser which is not also transferred shall be treated as an infringing copy for all purposes after the transfer.

(3) The same applies where the original purchased copy is no longer usable and what is transferred is a further copy used in its place.

(4) The above provisions also apply on a subsequent transfer, with the substitution for references in subsection (2) to the purchaser of references to the subsequent transferor.

### *Miscellaneous: literary, dramatic, musical and artistic works*

**57.**—(1) Copyright in a literary, dramatic, musical or artistic work is not infringed by an act done at a time when, or in pursuance of arrangements made at a time when—

Anonymous or pseudonymous works: acts permitted on assumptions as to expiry of copyright or death of author.

  (a) it is not possible by reasonable inquiry to ascertain the identity of the author, and

  (b) it is reasonable to assume—

      (i) that copyright has expired, or

      (ii) that the author died 50 years or more before the beginning of the calendar year in which the act is done or the arrangements are made.

(2) Subsection (1)(b)(ii) does not apply in relation to—

  (a) a work in which Crown copyright subsists, or

  (b) a work in which copyright originally vested in an international organisation by virtue of section 168 and in respect of which an Order under that section specifies a copyright period longer than 50 years.

24          c. **48**              *Copyright, Designs and Patents*

(3) In relation to a work of joint authorship—

    (a) the reference in subsection (1) to its being possible to ascertain the identity of the author shall be construed as a reference to its being possible to ascertain the identity of any of the authors, and

    (b) the reference in subsection (1)(b)(ii) to the author having died shall be construed as a reference to all the authors having died.

**Use of notes or recordings of spoken words in certain cases.**

**58.**—(1) Where a record of spoken words is made, in writing or otherwise, for the purpose—

    (a) of reporting current events, or

    (b) of broadcasting or including in a cable programme service the whole or part of the work,

it is not an infringement of any copyright in the words as a literary work to use the record or material taken from it (or to copy the record, or any such material, and use the copy) for that purpose, provided the following conditions are met.

(2) The conditions are that—

    (a) the record is a direct record of the spoken words and is not taken from a previous record or from a broadcast or cable programme;

    (b) the making of the record was not prohibited by the speaker and, where copyright already subsisted in the work, did not infringe copyright;

    (c) the use made of the record or material taken from it is not of a kind prohibited by or on behalf of the speaker or copyright owner before the record was made; and

    (d) the use is by or with the authority of a person who is lawfully in possession of the record.

**Public reading or recitation.**

**59.**—(1) The reading or recitation in public by one person of a reasonable extract from a published literary or dramatic work does not infringe any copyright in the work if it is accompanied by a sufficient acknowledgement.

(2) Copyright in a work is not infringed by the making of a sound recording, or the broadcasting or inclusion in a cable programme service, of a reading or recitation which by virtue of subsection (1) does not infringe copyright in the work, provided that the recording, broadcast or cable programme consists mainly of material in relation to which it is not necessary to rely on that subsection.

**Abstracts of scientific or technical articles.**

**60.**—(1) Where an article on a scientific or technical subject is published in a periodical accompanied by an abstract indicating the contents of the article, it is not an infringement of copyright in the abstract, or in the article, to copy the abstract or issue copies of it to the public.

(2) This section does not apply if or to the extent that there is a licensing scheme certified for the purposes of this section under section 143 providing for the grant of licences.

**61.**—(1) A sound recording of a performance of a song may be made for the purpose of including it in an archive maintained by a designated body without infringing any copyright in the words as a literary work or in the accompanying musical work, provided the conditions in subsection (2) below are met.

(2) The conditions are that—

    (a) the words are unpublished and of unknown authorship at the time the recording is made,

    (b) the making of the recording does not infringe any other copyright, and

    (c) its making is not prohibited by any performer.

(3) Copies of a sound recording made in reliance on subsection (1) and included in an archive maintained by a designated body may, if the prescribed conditions are met, be made and supplied by the archivist without infringing copyright in the recording or the works included in it.

(4) The prescribed conditions shall include the following—

    (a) that copies are only supplied to persons satisfying the archivist that they require them for purposes of research or private study and will not use them for any other purpose, and

    (b) that no person is furnished with more than one copy of the same recording.

(5) In this section—

    (a) "designated" means designated for the purposes of this section by order of the Secretary of State, who shall not designate a body unless satisfied that it is not established or conducted for profit,

    (b) "prescribed" means prescribed for the purposes of this section by order of the Secretary of State, and

    (c) references to the archivist include a person acting on his behalf.

(6) An order under this section shall be made by statutory instrument which shall be subject to annulment in pursuance of a resolution of either House of Parliament.

**62.**—(1) This section applies to—

    (a) buildings, and

    (b) sculptures, models for buildings and works of artistic craftsmanship, if permanently situated in a public place or in premises open to the public.

(2) The copyright in such a work is not infringed by—

    (a) making a graphic work representing it,

    (b) making a photograph or film of it, or

    (c) broadcasting or including in a cable programme service a visual image of it.

(3) Nor is the copyright infringed by the issue to the public of copies, or the broadcasting or inclusion in a cable programme service, of anything whose making was, by virtue of this section, not an infringement of the copyright.

26        c. **48**        *Copyright, Designs and Patents*

PART I
Advertisement of
sale of artistic
work.

**63.**—(1) It is not an infringement of copyright in an artistic work to copy it, or to issue copies to the public, for the purpose of advertising the sale of the work.

(2) Where a copy which would otherwise be an infringing copy is made in accordance with this section but is subsequently dealt with for any other purpose, it shall be treated as an infringing copy for the purposes of that dealing, and if that dealing infringes copyright for all subsequent purposes.

For this purpose "dealt with" means sold or let for hire, offered or exposed for sale or hire, exhibited in public or distributed.

Making of
subsequent works
by same artist.

**64.** Where the author of an artistic work is not the copyright owner, he does not infringe the copyright by copying the work in making another artistic work, provided he does not repeat or imitate the main design of the earlier work.

Reconstruction of
buildings.

**65.** Anything done for the purposes of reconstructing a building does not infringe any copyright—

(a) in the building, or

(b) in any drawings or plans in accordance with which the building was, by or with the licence of the copyright owner, constructed.

*Miscellaneous: sound recordings, films and computer programs*

Rental of sound
recordings, films
and computer
programs.

**66.**—(1) The Secretary of State may by order provide that in such cases as may be specified in the order the rental to the public of copies of sound recordings, films or computer programs shall be treated as licensed by the copyright owner subject only to the payment of such reasonable royalty or other payment as may be agreed or determined in default of agreement by the Copyright Tribunal.

(2) No such order shall apply if, or to the extent that, there is a licensing scheme certified for the purposes of this section under section 143 providing for the grant of licences.

(3) An order may make different provision for different cases and may specify cases by reference to any factor relating to the work, the copies rented, the renter or the circumstances of the rental.

(4) An order shall be made by statutory instrument; and no order shall be made unless a draft of it has been laid before and approved by a resolution of each House of Parliament.

(5) Copyright in a computer program is not infringed by the rental of copies to the public after the end of the period of 50 years from the end of the calendar year in which copies of it were first issued to the public in electronic form.

(6) Nothing in this section affects any liability under section 23 (secondary infringement) in respect of the rental of infringing copies.

Playing of sound
recordings for
purposes of club,
society, &c.

**67.**—(1) It is not an infringement of the copyright in a sound recording to play it as part of the activities of, or for the benefit of, a club, society or other organisation if the following conditions are met.

(2) The conditions are—

PART I

- (a) that the organisation is not established or conducted for profit and its main objects are charitable or are otherwise concerned with the advancement of religion, education or social welfare, and

- (b) that the proceeds of any charge for admission to the place where the recording is to be heard are applied solely for the purposes of the organisation.

### *Miscellaneous: broadcasts and cable programmes*

**68.**—(1) This section applies where by virtue of a licence or assignment of copyright a person is authorised to broadcast or include in a cable programme service—

Incidental recording for purposes of broadcast or cable programme.

- (a) a literary, dramatic or musical work, or an adaptation of such a work,

- (b) an artistic work, or

- (c) a sound recording or film.

(2) He shall by virtue of this section be treated as licensed by the owner of the copyright in the work to do or authorise any of the following for the purposes of the broadcast or cable programme—

- (a) in the case of a literary, dramatic or musical work, or an adaptation of such a work, to make a sound recording or film of the work or adaptation;

- (b) in the case of an artistic work, to take a photograph or make a film of the work;

- (c) in the case of a sound recording or film, to make a copy of it.

(3) That licence is subject to the condition that the recording, film, photograph or copy in question—

- (a) shall not be used for any other purpose, and

- (b) shall be destroyed within 28 days of being first used for broadcasting the work or, as the case may be, including it in a cable programme service.

(4) A recording, film, photograph or copy made in accordance with this section shall be treated as an infringing copy—

- (a) for the purposes of any use in breach of the condition mentioned in subsection (3)(a), and

- (b) for all purposes after that condition or the condition mentioned in subsection (3)(b) is broken.

**69.**—(1) Copyright is not infringed by the making or use by the British Broadcasting Corporation, for the purpose of maintaining supervision and control over programmes broadcast by them, of recordings of those programmes.

Recording for purposes of supervision and control of broadcasts and cable programmes.

(2) Copyright is not infringed by—

- (a) the making or use of recordings by the Independent Broadcasting Authority for the purposes mentioned in section 4(7) of the Broadcasting Act 1981 (maintenance of supervision and control over programmes and advertisements); or

1981 c. 68.

28          c. **48**          *Copyright, Designs and Patents*

PART I

(b) anything done under or in pursuance of provision included in a contract between a programme contractor and the Authority in accordance with section 21 of that Act.

(3) Copyright is not infringed by—

(a) the making by or with the authority of the Cable Authority, or the use by that Authority, for the purpose of maintaining supervision and control over programmes included in services licensed under Part I of the Cable and Broadcasting Act 1984, of recordings of those programmes; or

1984 c. 46.

(b) anything done under or in pursuance of—

(i) a notice or direction given under section 16 of the Cable and Broadcasting Act 1984 (power of Cable Authority to require production of recordings); or

(ii) a condition included in a licence by virtue of section 35 of that Act (duty of Authority to secure that recordings are available for certain purposes).

Recording for purposes of time-shifting.

**70.** The making for private and domestic use of a recording of a broadcast or cable programme solely for the purpose of enabling it to be viewed or listened to at a more convenient time does not infringe any copyright in the broadcast or cable programme or in any work included in it.

Photographs of television broadcasts or cable programmes.

**71.** The making for private and domestic use of a photograph of the whole or any part of an image forming part of a television broadcast or cable programme, or a copy of such a photograph, does not infringe any copyright in the broadcast or cable programme or in any film included in it.

Free public showing or playing of broadcast or cable programme.

**72.**—(1) The showing or playing in public of a broadcast or cable programme to an audience who have not paid for admission to the place where the broadcast or programme is to be seen or heard does not infringe any copyright in—

(a) the broadcast or cable programme, or

(b) any sound recording or film included in it.

(2) The audience shall be treated as having paid for admission to a place—

(a) if they have paid for admission to a place of which that place forms part; or

(b) if goods or services are supplied at that place (or a place of which it forms part)—

(i) at prices which are substantially attributable to the facilities afforded for seeing or hearing the broadcast or programme, or

(ii) at prices exceeding those usually charged there and which are partly attributable to those facilities.

(3) The following shall not be regarded as having paid for admission to a place—

(a) persons admitted as residents or inmates of the place;

(b) persons admitted as members of a club or society where the payment is only for membership of the club or society and the provision of facilities for seeing or hearing broadcasts or programmes is only incidental to the main purposes of the club or society.

PART I

(4) Where the making of the broadcast or inclusion of the programme in a cable programme service was an infringement of the copyright in a sound recording or film, the fact that it was heard or seen in public by the reception of the broadcast or programme shall be taken into account in assessing the damages for that infringement.

**73.**—(1) This section applies where a broadcast made from a place in the United Kingdom is, by reception and immediate re-transmission, included in a cable programme service.

Reception and re-transmission of broadcast in cable programme service.

(2) The copyright in the broadcast is not infringed—

(a) if the inclusion is in pursuance of a requirement imposed under section 13(1) of the Cable and Broadcasting Act 1984 (duty of Cable Authority to secure inclusion in cable service of certain programmes), or

1984 c. 46.

(b) if and to the extent that the broadcast is made for reception in the area in which the cable programme service is provided and is not a satellite transmission or an encrypted transmission.

(3) The copyright in any work included in the broadcast is not infringed—

(a) if the inclusion is in pursuance of a requirement imposed under section 13(1) of the Cable and Broadcasting Act 1984 (duty of Cable Authority to secure inclusion in cable service of certain programmes), or

(b) if and to the extent that the broadcast is made for reception in the area in which the cable programme service is provided;

but where the making of the broadcast was an infringement of the copyright in the work, the fact that the broadcast was re-transmitted as a programme in a cable programme service shall be taken into account in assessing the damages for that infringement.

**74.**—(1) A designated body may, for the purpose of providing people who are deaf or hard of hearing, or physically or mentally handicapped in other ways, with copies which are sub-titled or otherwise modified for their special needs, make copies of television broadcasts or cable programmes and issue copies to the public, without infringing any copyright in the broadcasts or cable programmes or works included in them.

Provision of sub-titled copies of broadcast or cable programme.

(2) A "designated body" means a body designated for the purposes of this section by order of the Secretary of State, who shall not designate a body unless he is satisfied that it is not established or conducted for profit.

(3) An order under this section shall be made by statutory instrument which shall be subject to annulment in pursuance of a resolution of either House of Parliament.

(4) This section does not apply if, or to the extent that, there is a licensing scheme certified for the purposes of this section under section 143 providing for the grant of licences.

30        c. **48**        *Copyright, Designs and Patents*

PART I
Recording for
archival purposes.

75.—(1) A recording of a broadcast or cable programme of a designated class, or a copy of such a recording, may be made for the purpose of being placed in an archive maintained by a designated body without thereby infringing any copyright in the broadcast or cable programme or in any work included in it.

(2) In subsection (1) "designated" means designated for the purposes of this section by order of the Secretary of State, who shall not designate a body unless he is satisfied that it is not established or conducted for profit.

(3) An order under this section shall be made by statutory instrument which shall be subject to annulment in pursuance of a resolution of either House of Parliament.

### *Adaptations*

Adaptations.

76. An act which by virtue of this Chapter may be done without infringing copyright in a literary, dramatic or musical work does not, where that work is an adaptation, infringe any copyright in the work from which the adaptation was made.

### CHAPTER IV

### MORAL RIGHTS

#### *Right to be identified as author or director*

Right to be
identified as
author or director.

77.—(1) The author of a copyright literary, dramatic, musical or artistic work, and the director of a copyright film, has the right to be identified as the author or director of the work in the circumstances mentioned in this section; but the right is not infringed unless it has been asserted in accordance with section 78.

(2) The author of a literary work (other than words intended to be sung or spoken with music) or a dramatic work has the right to be identified whenever—

    (a) the work is published commercially, performed in public, broadcast or included in a cable programme service; or

    (b) copies of a film or sound recording including the work are issued to the public;

and that right includes the right to be identified whenever any of those events occur in relation to an adaptation of the work as the author of the work from which the adaptation was made.

(3) The author of a musical work, or a literary work consisting of words intended to be sung or spoken with music, has the right to be identified whenever—

    (a) the work is published commercially;

    (b) copies of a sound recording of the work are issued to the public; or

    (c) a film of which the sound-track includes the work is shown in public or copies of such a film are issued to the public;

and that right includes the right to be identified whenever any of those events occur in relation to an adaptation of the work as the author of the work from which the adaptation was made.

(4) The author of an artistic work has the right to be identified whenever—    <span style="float:right">PART I</span>

- (a) the work is published commercially or exhibited in public, or a visual image of it is broadcast or included in a cable programme service;
- (b) a film including a visual image of the work is shown in public or copies of such a film are issued to the public; or
- (c) in the case of a work of architecture in the form of a building or a model for a building, a sculpture or a work of artistic craftsmanship, copies of a graphic work representing it, or of a photograph of it, are issued to the public.

(5) The author of a work of architecture in the form of a building also has the right to be identified on the building as constructed or, where more than one building is constructed to the design, on the first to be constructed.

(6) The director of a film has the right to be identified whenever the film is shown in public, broadcast or included in a cable programme service or copies of the film are issued to the public.

(7) The right of the author or director under this section is—

- (a) in the case of commercial publication or the issue to the public of copies of a film or sound recording, to be identified in or on each copy or, if that is not appropriate, in some other manner likely to bring his identity to the notice of a person acquiring a copy,
- (b) in the case of identification on a building, to be identified by appropriate means visible to persons entering or approaching the building, and
- (c) in any other case, to be identified in a manner likely to bring his identity to the attention of a person seeing or hearing the performance, exhibition, showing, broadcast or cable programme in question;

and the identification must in each case be clear and reasonably prominent.

(8) If the author or director in asserting his right to be identified specifies a pseudonym, initials or some other particular form of identification, that form shall be used; otherwise any reasonable form of identification may be used.

(9) This section has effect subject to section 79 (exceptions to right).

**78.**—(1) A person does not infringe the right conferred by section 77 (right to be identified as author or director) by doing any of the acts mentioned in that section unless the right has been asserted in accordance with the following provisions so as to bind him in relation to that act.    <span style="float:right">Requirement that right be asserted.</span>

(2) The right may be asserted generally, or in relation to any specified act or description of acts—

- (a) on an assignment of copyright in the work, by including in the instrument effecting the assignment a statement that the author or director asserts in relation to that work his right to be identified, or
- (b) by instrument in writing signed by the author or director.

32        c. **48**        *Copyright, Designs and Patents*

PART 1

(3) The right may also be asserted in relation to the public exhibition of an artistic work—

   (a) by securing that when the author or other first owner of copyright parts with possession of the original, or of a copy made by him or under his direction or control, the author is identified on the original or copy, or on a frame, mount or other thing to which it is attached, or

   (b) by including in a licence by which the author or other first owner of copyright authorises the making of copies of the work a statement signed by or on behalf of the person granting the licence that the author asserts his right to be identified in the event of the public exhibition of a copy made in pursuance of the licence.

(4) The persons bound by an assertion of the right under subsection (2) or (3) are—

   (a) in the case of an assertion under subsection (2)(a), the assignee and anyone claiming through him, whether or not he has notice of the assertion;

   (b) in the case of an assertion under subsection (2)(b), anyone to whose notice the assertion is brought;

   (c) in the case of an assertion under subsection (3)(a), anyone into whose hands that original or copy comes, whether or not the identification is still present or visible;

   (d) in the case of an assertion under subsection (3)(b), the licensee and anyone into whose hands a copy made in pursuance of the licence comes, whether or not he has notice of the assertion.

(5) In an action for infringement of the right the court shall, in considering remedies, take into account any delay in asserting the right.

Exceptions to right.

**79.**—(1) The right conferred by section 77 (right to be identified as author or director) is subject to the following exceptions.

(2) The right does not apply in relation to the following descriptions of work—

   (a) a computer program;

   (b) the design of a typeface;

   (c) any computer-generated work.

(3) The right does not apply to anything done by or with the authority of the copyright owner where copyright in the work originally vested—

   (a) in the author's employer by virtue of section 11(2) (works produced in course of employment), or

   (b) in the director's employer by virtue of section 9(2)(a) (person to be treated as author of film).

(4) The right is not infringed by an act which by virtue of any of the following provisions would not infringe copyright in the work—

   (a) section 30 (fair dealing for certain purposes), so far as it relates to the reporting of current events by means of a sound recording, film, broadcast or cable programme;

   (b) section 31 (incidental inclusion of work in an artistic work, sound recording, film, broadcast or cable programme);

(c) section 32(3) (examination questions);

(d) section 45 (parliamentary and judicial proceedings);

(e) section 46(1) or (2) (Royal Commissions and statutory inquiries);

(f) section 51 (use of design documents and models);

(g) section 52 (effect of exploitation of design derived from artistic work);

(h) section 57 (anonymous or pseudonymous works: acts permitted on assumptions as to expiry of copyright or death of author).

(5) The right does not apply in relation to any work made for the purpose of reporting current events.

(6) The right does not apply in relation to the publication in—

(a) a newspaper, magazine or similar periodical, or

(b) an encyclopaedia, dictionary, yearbook or other collective work of reference,

of a literary, dramatic, musical or artistic work made for the purposes of such publication or made available with the consent of the author for the purposes of such publication.

(7) The right does not apply in relation to—

(a) a work in which Crown copyright or Parliamentary copyright subsists, or

(b) a work in which copyright originally vested in an international organisation by virtue of section 168,

unless the author or director has previously been identified as such in or on published copies of the work.

#### Right to object to derogatory treatment of work

**80.**—(1) The author of a copyright literary, dramatic, musical or artistic work, and the director of a copyright film, has the right in the circumstances mentioned in this section not to have his work subjected to derogatory treatment.

Right to object to derogatory treatment of work.

(2) For the purposes of this section—

(a) "treatment" of a work means any addition to, deletion from or alteration to or adaptation of the work, other than—

(i) a translation of a literary or dramatic work, or

(ii) an arrangement or transcription of a musical work involving no more than a change of key or register; and

(b) the treatment of a work is derogatory if it amounts to distortion or mutilation of the work or is otherwise prejudicial to the honour or reputation of the author or director;

and in the following provisions of this section references to a derogatory treatment of a work shall be construed accordingly.

(3) In the case of a literary, dramatic or musical work the right is infringed by a person who—

(a) publishes commercially, performs in public, broadcasts or includes in a cable programme service a derogatory treatment of the work; or

34          c. **48**          *Copyright, Designs and Patents*

PART I

(b) issues to the public copies of a film or sound recording of, or including, a derogatory treatment of the work.

(4) In the case of an artistic work the right is infringed by a person who—

(a) publishes commercially or exhibits in public a derogatory treatment of the work, or broadcasts or includes in a cable programme service a visual image of a derogatory treatment of the work,

(b) shows in public a film including a visual image of a derogatory treatment of the work or issues to the public copies of such a film, or

(c) in the case of—

(i) a work of architecture in the form of a model for a building,

(ii) a sculpture, or

(iii) a work of artistic craftsmanship,

issues to the public copies of a graphic work representing, or of a photograph of, a derogatory treatment of the work.

(5) Subsection (4) does not apply to a work of architecture in the form of a building; but where the author of such a work is identified on the building and it is the subject of derogatory treatment he has the right to require the identification to be removed.

(6) In the case of a film, the right is infringed by a person who—

(a) shows in public, broadcasts or includes in a cable programme service a derogatory treatment of the film; or

(b) issues to the public copies of a derogatory treatment of the film,

or who, along with the film, plays in public, broadcasts or includes in a cable programme service, or issues to the public copies of, a derogatory treatment of the film sound-track.

(7) The right conferred by this section extends to the treatment of parts of a work resulting from a previous treatment by a person other than the author or director, if those parts are attributed to, or are likely to be regarded as the work of, the author or director.

(8) This section has effect subject to sections 81 and 82 (exceptions to and qualifications of right).

Exceptions to right.

**81.**—(1) The right conferred by section 80 (right to object to derogatory treatment of work) is subject to the following exceptions.

(2) The right does not apply to a computer program or to any computer-generated work.

(3) The right does not apply in relation to any work made for the purpose of reporting current events.

(4) The right does not apply in relation to the publication in—

(a) a newspaper, magazine or similar periodical, or

(b) an encyclopaedia, dictionary, yearbook or other collective work of reference,

of a literary, dramatic, musical or artistic work made for the purposes of such publication or made available with the consent of the author for the purposes of such publication.

Nor does the right apply in relation to any subsequent exploitation elsewhere of such a work without any modification of the published version.

(5) The right is not infringed by an act which by virtue of section 57 (anonymous or pseudonymous works: acts permitted on assumptions as to expiry of copyright or death of author) would not infringe copyright.

(6) The right is not infringed by anything done for the purpose of—

(a) avoiding the commission of an offence,

(b) complying with a duty imposed by or under an enactment, or

(c) in the case of the British Broadcasting Corporation, avoiding the inclusion in a programme broadcast by them of anything which offends against good taste or decency or which is likely to encourage or incite to crime or to lead to disorder or to be offensive to public feeling,

provided, where the author or director is identified at the time of the relevant act or has previously been identified in or on published copies of the work, that there is a sufficient disclaimer.

**82.**—(1) This section applies to—

(a) works in which copyright originally vested in the author's employer by virtue of section 11(2) (works produced in course of employment) or in the director's employer by virtue of section 9(2)(a) (person to be treated as author of film),

(b) works in which Crown copyright or Parliamentary copyright subsists, and

(c) works in which copyright originally vested in an international organisation by virtue of section 168.

Qualification of right in certain cases.

(2) The right conferred by section 80 (right to object to derogatory treatment of work) does not apply to anything done in relation to such a work by or with the authority of the copyright owner unless the author or director—

(a) is identified at the time of the relevant act, or

(b) has previously been identified in or on published copies of the work;

and where in such a case the right does apply, it is not infringed if there is a sufficient disclaimer.

**83.**—(1) The right conferred by section 80 (right to object to derogatory treatment of work) is also infringed by a person who—

(a) possesses in the course of a business, or

(b) sells or lets for hire, or offers or exposes for sale or hire, or

(c) in the course of a business exhibits in public or distributes, or

Infringement of right by possessing or dealing with infringing article.

36          c. **48**              *Copyright, Designs and Patents*

(d) distributes otherwise than in the course of a business so as to affect prejudicially the honour or reputation of the author or director,

an article which is, and which he knows or has reason to believe is, an infringing article.

(2) An "infringing article" means a work or a copy of a work which—

  (a) has been subjected to derogatory treatment within the meaning of section 80, and

  (b) has been or is likely to be the subject of any of the acts mentioned in that section in circumstances infringing that right.

### *False attribution of work*

False attribution of work.

**84.**—(1) A person has the right in the circumstances mentioned in this section—

  (a) not to have a literary, dramatic, musical or artistic work falsely attributed to him as author, and

  (b) not to have a film falsely attributed to him as director;

and in this section an "attribution", in relation to such a work, means a statement (express or implied) as to who is the author or director.

(2) The right is infringed by a person who—

  (a) issues to the public copies of a work of any of those descriptions in or on which there is a false attribution, or

  (b) exhibits in public an artistic work, or a copy of an artistic work, in or on which there is a false attribution.

(3) The right is also infringed by a person who—

  (a) in the case of a literary, dramatic or musical work, performs the work in public, broadcasts it or includes it in a cable programme service as being the work of a person, or

  (b) in the case of a film, shows it in public, broadcasts it or includes it in a cable programme service as being directed by a person,

knowing or having reason to believe that the attribution is false.

(4) The right is also infringed by the issue to the public or public display of material containing a false attribution in connection with any of the acts mentioned in subsection (2) or (3).

(5) The right is also infringed by a person who in the course of a business—

  (a) possesses or deals with a copy of a work of any of the descriptions mentioned in subsection (1) in or on which there is a false attribution, or

  (b) in the case of an artistic work, possesses or deals with the work itself when there is a false attribution in or on it,

knowing or having reason to believe that there is such an attribution and that it is false.

(6) In the case of an artistic work the right is also infringed by a person who in the course of a business—

PART I

- (a) deals with a work which has been altered after the author parted with possession of it as being the unaltered work of the author, or

- (b) deals with a copy of such a work as being a copy of the unaltered work of the author,

knowing or having reason to believe that that is not the case.

(7) References in this section to dealing are to selling or letting for hire, offering or exposing for sale or hire, exhibiting in public, or distributing.

(8) This section applies where, contrary to the fact—

- (a) a literary, dramatic or musical work is falsely represented as being an adaptation of the work of a person, or

- (b) a copy of an artistic work is falsely represented as being a copy made by the author of the artistic work,

as it applies where the work is falsely attributed to a person as author.

### *Right to privacy of certain photographs and films*

**85.**—(1) A person who for private and domestic purposes commissions the taking of a photograph or the making of a film has, where copyright subsists in the resulting work, the right not to have—

Right to privacy of certain photographs and films.

- (a) copies of the work issued to the public,

- (b) the work exhibited or shown in public, or

- (c) the work broadcast or included in a cable programme service;

and, except as mentioned in subsection (2), a person who does or authorises the doing of any of those acts infringes that right.

(2) The right is not infringed by an act which by virtue of any of the following provisions would not infringe copyright in the work—

- (a) section 31 (incidental inclusion of work in an artistic work, film, broadcast or cable programme);

- (b) section 45 (parliamentary and judicial proceedings);

- (c) section 46 (Royal Commissions and statutory inquiries);

- (d) section 50 (acts done under statutory authority);

- (e) section 57 (anonymous or pseudonymous works: acts permitted on assumptions as to expiry of copyright or death of author).

### *Supplementary*

**86.**—(1) The rights conferred by section 77 (right to be identified as author or director), section 80 (right to object to derogatory treatment of work) and section 85 (right to privacy of certain photographs and films) continue to subsist so long as copyright subsists in the work.

Duration of rights.

(2) The right conferred by section 84 (false attribution) continues to subsist until 20 years after a person's death.

**87.**—(1) It is not an infringement of any of the rights conferred by this Chapter to do any act to which the person entitled to the right has consented.

Consent and waiver of rights.

38          c. **48**          *Copyright, Designs and Patents*

PART I          (2) Any of those rights may be waived by instrument in writing signed by the person giving up the right.

(3) A waiver—

    (a) may relate to a specific work, to works of a specified description or to works generally, and may relate to existing or future works, and

    (b) may be conditional or unconditional and may be expressed to be subject to revocation;

and if made in favour of the owner or prospective owner of the copyright in the work or works to which it relates, it shall be presumed to extend to his licensees and successors in title unless a contrary intention is expressed.

(4) Nothing in this Chapter shall be construed as excluding the operation of the general law of contract or estoppel in relation to an informal waiver or other transaction in relation to any of the rights mentioned in subsection (1).

Application of provisions to joint works.

**88.**—(1) The right conferred by section 77 (right to be identified as author or director) is, in the case of a work of joint authorship, a right of each joint author to be identified as a joint author and must be asserted in accordance with section 78 by each joint author in relation to himself.

(2) The right conferred by section 80 (right to object to derogatory treatment of work) is, in the case of a work of joint authorship, a right of each joint author and his right is satisfied if he consents to the treatment in question.

(3) A waiver under section 87 of those rights by one joint author does not affect the rights of the other joint authors.

(4) The right conferred by section 84 (false attribution) is infringed, in the circumstances mentioned in that section—

    (a) by any false statement as to the authorship of a work of joint authorship, and

    (b) by the false attribution of joint authorship in relation to a work of sole authorship;

and such a false attribution infringes the right of every person to whom authorship of any description is, whether rightly or wrongly, attributed.

(5) The above provisions also apply (with any necessary adaptations) in relation to a film which was, or is alleged to have been, jointly directed, as they apply to a work which is, or is alleged to be, a work of joint authorship.

A film is "jointly directed" if it is made by the collaboration of two or more directors and the contribution of each director is not distinct from that of the other director or directors.

(6) The right conferred by section 85 (right to privacy of certain photographs and films) is, in the case of a work made in pursuance of a joint commission, a right of each person who commissioned the making of the work, so that—

    (a) the right of each is satisfied if he consents to the act in question, and

(b) a waiver under section 87 by one of them does not affect the rights of the others.

**89.**—(1) The rights conferred by section 77 (right to be identified as author or director) and section 85 (right to privacy of certain photographs and films) apply in relation to the whole or any substantial part of a work.

Application of provisions to parts of works.

(2) The rights conferred by section 80 (right to object to derogatory treatment of work) and section 84 (false attribution) apply in relation to the whole or any part of a work.

## CHAPTER V

### DEALINGS WITH RIGHTS IN COPYRIGHT WORKS

#### *Copyright*

**90.**—(1) Copyright is transmissible by assignment, by testamentary disposition or by operation of law, as personal or moveable property.

Assignment and licences.

(2) An assignment or other transmission of copyright may be partial, that is, limited so as to apply—

   (a) to one or more, but not all, of the things the copyright owner has the exclusive right to do;

   (b) to part, but not the whole, of the period for which the copyright is to subsist.

(3) An assignment of copyright is not effective unless it is in writing signed by or on behalf of the assignor.

(4) A licence granted by a copyright owner is binding on every successor in title to his interest in the copyright, except a purchaser in good faith for valuable consideration and without notice (actual or constructive) of the licence or a person deriving title from such a purchaser; and references in this Part to doing anything with, or without, the licence of the copyright owner shall be construed accordingly.

**91.**—(1) Where by an agreement made in relation to future copyright, and signed by or on behalf of the prospective owner of the copyright, the prospective owner purports to assign the future copyright (wholly or partially) to another person, then if, on the copyright coming into existence, the assignee or another person claiming under him would be entitled as against all other persons to require the copyright to be vested in him, the copyright shall vest in the assignee or his successor in title by virtue of this subsection.

Prospective ownership of copyright.

(2) In this Part—

   "future copyright" means copyright which will or may come into existence in respect of a future work or class of works or on the occurrence of a future event; and

   "prospective owner" shall be construed accordingly, and includes a person who is prospectively entitled to copyright by virtue of such an agreement as is mentioned in subsection (1).

(3) A licence granted by a prospective owner of copyright is binding on every successor in title to his interest (or prospective interest) in the right, except a purchaser in good faith for valuable consideration and without notice (actual or constructive) of the licence or a person deriving title from

40          c. **48**              *Copyright, Designs and Patents*

PART I              such a purchaser; and references in this Part to doing anything with, or
                    without, the licence of the copyright owner shall be construed
                    accordingly.

Exclusive licences.   **92.**—(1) In this Part an "exclusive licence" means a licence in writing
                    signed by or on behalf of the copyright owner authorising the licensee to
                    the exclusion of all other persons, including the person granting the
                    licence, to exercise a right which would otherwise be exercisable
                    exclusively by the copyright owner.

                    (2) The licensee under an exclusive licence has the same rights against
                    a successor in title who is bound by the licence as he has against the person
                    granting the licence.

Copyright to pass     **93.** Where under a bequest (whether specific or general) a person is
under will with     entitled, beneficially or otherwise, to—
unpublished work.

> (a) an original document or other material thing recording or
>     embodying a literary, dramatic, musical or artistic work which
>     was not published before the death of the testator, or
>
> (b) an original material thing containing a sound recording or film
>     which was not published before the death of the testator,

the bequest shall, unless a contrary intention is indicated in the testator's
will or a codicil to it, be construed as including the copyright in the work
in so far as the testator was the owner of the copyright immediately before
his death.

## *Moral rights*

Moral rights not      **94.** The rights conferred by Chapter IV (moral rights) are not
assignable.         assignable.

Transmission of       **95.**—(1) On the death of a person entitled to the right conferred by
moral rights on     section 77 (right to identification of author or director), section 80 (right
death.              to object to derogatory treatment of work) or section 85 (right to privacy
                    of certain photographs and films)—

> (a) the right passes to such person as he may by testamentary
>     disposition specifically direct,
>
> (b) if there is no such direction but the copyright in the work in
>     question forms part of his estate, the right passes to the person
>     to whom the copyright passes, and
>
> (c) if or to the extent that the right does not pass under paragraph
>     (a) or (b) it is exercisable by his personal representatives.

(2) Where copyright forming part of a person's estate passes in part to
one person and in part to another, as for example where a bequest is
limited so as to apply—

> (a) to one or more, but not all, of the things the copyright owner has
>     the exclusive right to do or authorise, or
>
> (b) to part, but not the whole, of the period for which the copyright
>     is to subsist,

any right which passes with the copyright by virtue of subsection (1) is
correspondingly divided.

(3) Where by virtue of subsection (1)(a) or (b) a right becomes exercisable by more than one person—

PART I

> (a) it may, in the case of the right conferred by section 77 (right to identification of author or director), be asserted by any of them;
>
> (b) it is, in the case of the right conferred by section 80 (right to object to derogatory treatment of work) or section 85 (right to privacy of certain photographs and films), a right exercisable by each of them and is satisfied in relation to any of them if he consents to the treatment or act in question; and
>
> (c) any waiver of the right in accordance with section 87 by one of them does not affect the rights of the others.

(4) A consent or waiver previously given or made binds any person to whom a right passes by virtue of subsection (1).

(5) Any infringement after a person's death of the right conferred by section 84 (false attribution) is actionable by his personal representatives.

(6) Any damages recovered by personal representatives by virtue of this section in respect of an infringement after a person's death shall devolve as part of his estate as if the right of action had subsisted and been vested in him immediately before his death.

## CHAPTER VI

### REMEDIES FOR INFRINGEMENT

#### *Rights and remedies of copyright owner*

**96.**—(1) An infringement of copyright is actionable by the copyright owner.

Infringement actionable by copyright owner.

(2) In an action for infringement of copyright all such relief by way of damages, injunctions, accounts or otherwise is available to the plaintiff as is available in respect of the infringement of any other property right.

(3) This section has effect subject to the following provisions of this Chapter.

**97.**—(1) Where in an action for infringement of copyright it is shown that at the time of the infringement the defendant did not know, and had no reason to believe, that copyright subsisted in the work to which the action relates, the plaintiff is not entitled to damages against him, but without prejudice to any other remedy.

Provisions as to damages in infringement action.

(2) The court may in an action for infringement of copyright having regard to all the circumstances, and in particular to—

> (a) the flagrancy of the infringement, and
>
> (b) any benefit accruing to the defendant by reason of the infringement,

award such additional damages as the justice of the case may require.

**98.**—(1) If in proceedings for infringement of copyright in respect of which a licence is available as of right under section 144 (powers exercisable in consequence of report of Monopolies and Mergers Commission) the defendant undertakes to take a licence on such terms as may be agreed or, in default of agreement, settled by the Copyright Tribunal under that section—

Undertaking to take licence of right in infringement proceedings.

42          c. **48**          *Copyright, Designs and Patents*

(a) no injunction shall be granted against him,

(b) no order for delivery up shall be made under section 99, and

(c) the amount recoverable against him by way of damages or on an account of profits shall not exceed double the amount which would have been payable by him as licensee if such a licence on those terms had been granted before the earliest infringement.

(2) An undertaking may be given at any time before final order in the proceedings, without any admission of liability.

(3) Nothing in this section affects the remedies available in respect of an infringement committed before licences of right were available.

Order for delivery up.

**99.**—(1) Where a person—

(a) has an infringing copy of a work in his possession, custody or control in the course of a business, or

(b) has in his possession, custody or control an article specifically designed or adapted for making copies of a particular copyright work, knowing or having reason to believe that it has been or is to be used to make infringing copies,

the owner of the copyright in the work may apply to the court for an order that the infringing copy or article be delivered up to him or to such other person as the court may direct.

(2) An application shall not be made after the end of the period specified in section 113 (period after which remedy of delivery up not available); and no order shall be made unless the court also makes, or it appears to the court that there are grounds for making, an order under section 114 (order as to disposal of infringing copy or other article).

(3) A person to whom an infringing copy or other article is delivered up in pursuance of an order under this section shall, if an order under section 114 is not made, retain it pending the making of an order, or the decision not to make an order, under that section.

(4) Nothing in this section affects any other power of the court.

Right to seize infringing copies and other articles.

**100.**—(1) An infringing copy of a work which is found exposed or otherwise immediately available for sale or hire, and in respect of which the copyright owner would be entitled to apply for an order under section 99, may be seized and detained by him or a person authorised by him.

The right to seize and detain is exercisable subject to the following conditions and is subject to any decision of the court under section 114.

(2) Before anything is seized under this section notice of the time and place of the proposed seizure must be given to a local police station.

(3) A person may for the purpose of exercising the right conferred by this section enter premises to which the public have access but may not seize anything in the possession, custody or control of a person at a permanent or regular place of business of his, and may not use any force.

(4) At the time when anything is seized under this section there shall be left at the place where it was seized a notice in the prescribed form containing the prescribed particulars as to the person by whom or on whose authority the seizure is made and the grounds on which it is made.

*Copyright, Designs and Patents*    c. **48**    43

(5) In this section—

PART I

"premises" includes land, buildings, moveable structures, vehicles, vessels, aircraft and hovercraft; and

"prescribed" means prescribed by order of the Secretary of State.

(6) An order of the Secretary of State under this section shall be made by statutory instrument which shall be subject to annulment in pursuance of a resolution of either House of Parliament.

### Rights and remedies of exclusive licensee

**101.**—(1) An exclusive licensee has, except against the copyright owner, the same rights and remedies in respect of matters occurring after the grant of the licence as if the licence had been an assignment.

Rights and remedies of exclusive licensee.

(2) His rights and remedies are concurrent with those of the copyright owner; and references in the relevant provisions of this Part to the copyright owner shall be construed accordingly.

(3) In an action brought by an exclusive licensee by virtue of this section a defendant may avail himself of any defence which would have been available to him if the action had been brought by the copyright owner.

**102.**—(1) Where an action for infringement of copyright brought by the copyright owner or an exclusive licensee relates (wholly or partly) to an infringement in respect of which they have concurrent rights of action, the copyright owner or, as the case may be, the exclusive licensee may not, without the leave of the court, proceed with the action unless the other is either joined as a plaintiff or added as a defendant.

Exercise of concurrent rights.

(2) A copyright owner or exclusive licensee who is added as a defendant in pursuance of subsection (1) is not liable for any costs in the action unless he takes part in the proceedings.

(3) The above provisions do not affect the granting of interlocutory relief on an application by a copyright owner or exclusive licensee alone.

(4) Where an action for infringement of copyright is brought which relates (wholly or partly) to an infringement in respect of which the copyright owner and an exclusive licensee have or had concurrent rights of action—

(a) the court shall in assessing damages take into account—

(i) the terms of the licence, and

(ii) any pecuniary remedy already awarded or available to either of them in respect of the infringement;

(b) no account of profits shall be directed if an award of damages has been made, or an account of profits has been directed, in favour of the other of them in respect of the infringement; and

(c) the court shall if an account of profits is directed apportion the profits between them as the court considers just, subject to any agreement between them;

and these provisions apply whether or not the copyright owner and the exclusive licensee are both parties to the action.

44          c. **48**          *Copyright, Designs and Patents*

PART I

(5) The copyright owner shall notify any exclusive licensee having concurrent rights before applying for an order under section 99 (order for delivery up) or exercising the right conferred by section 100 (right of seizure); and the court may on the application of the licensee make such order under section 99 or, as the case may be, prohibiting or permitting the exercise by the copyright owner of the right conferred by section 100, as it thinks fit having regard to the terms of the licence.

### *Remedies for infringement of moral rights*

Remedies for infringement of moral rights.

**103.**—(1) An infringement of a right conferred by Chapter IV (moral rights) is actionable as a breach of statutory duty owed to the person entitled to the right.

(2) In proceedings for infringement of the right conferred by section 80 (right to object to derogatory treatment of work) the court may, if it thinks it is an adequate remedy in the circumstances, grant an injunction on terms prohibiting the doing of any act unless a disclaimer is made, in such terms and in such manner as may be approved by the court, dissociating the author or director from the treatment of the work.

### *Presumptions*

Presumptions relevant to literary, dramatic, musical and artistic works.

**104.**—(1) The following presumptions apply in proceedings brought by virtue of this Chapter with respect to a literary, dramatic, musical or artistic work.

(2) Where a name purporting to be that of the author appeared on copies of the work as published or on the work when it was made, the person whose name appeared shall be presumed, until the contrary is proved—

    (a) to be the author of the work;

    (b) to have made it in circumstances not falling within section 11(2), 163, 165 or 168 (works produced in course of employment, Crown copyright, Parliamentary copyright or copyright of certain international organisations).

(3) In the case of a work alleged to be a work of joint authorship, subsection (2) applies in relation to each person alleged to be one of the authors.

(4) Where no name purporting to be that of the author appeared as mentioned in subsection (2) but—

    (a) the work qualifies for copyright protection by virtue of section 155 (qualification by reference to country of first publication), and

    (b) a name purporting to be that of the publisher appeared on copies of the work as first published,

the person whose name appeared shall be presumed, until the contrary is proved, to have been the owner of the copyright at the time of publication.

(5) If the author of the work is dead or the identity of the author cannot be ascertained by reasonable inquiry, it shall be presumed, in the absence of evidence to the contrary—

    (a) that the work is an original work, and

    (b) that the plaintiff's allegations as to what was the first publication of the work and as to the country of first publication are correct.

**105.**—(1) In proceedings brought by virtue of this Chapter with respect to a sound recording, where copies of the recording as issued to the public bear a label or other mark stating—

PART I
Presumptions
relevant to sound
recordings and
films.

    (a) that a named person was the owner of copyright in the recording at the date of issue of the copies, or

    (b) that the recording was first published in a specified year or in a specified country,

the label or mark shall be admissible as evidence of the facts stated and shall be presumed to be correct until the contrary is proved.

(2) In proceedings brought by virtue of this Chapter with respect to a film, where copies of the film as issued to the public bear a statement—

    (a) that a named person was the author or director of the film,

    (b) that a named person was the owner of copyright in the film at the date of issue of the copies, or

    (c) that the film was first published in a specified year or in a specified country,

the statement shall be admissible as evidence of the facts stated and shall be presumed to be correct until the contrary is proved.

(3) In proceedings brought by virtue of this Chapter with respect to a computer program, where copies of the program are issued to the public in electronic form bearing a statement—

    (a) that a named person was the owner of copyright in the program at the date of issue of the copies, or

    (b) that the program was first published in a specified country or that copies of it were first issued to the public in electronic form in a specified year,

the statement shall be admissible as evidence of the facts stated and shall be presumed to be correct until the contrary is proved.

(4) The above presumptions apply equally in proceedings relating to an infringement alleged to have occurred before the date on which the copies were issued to the public.

(5) In proceedings brought by virtue of this Chapter with respect to a film, where the film as shown in public, broadcast or included in a cable programme service bears a statement—

    (a) that a named person was the author or director of the film, or

    (b) that a named person was the owner of copyright in the film immediately after it was made,

the statement shall be admissible as evidence of the facts stated and shall be presumed to be correct until the contrary is proved.

    This presumption applies equally in proceedings relating to an infringement alleged to have occurred before the date on which the film was shown in public, broadcast or included in a cable programme service.

**106.** In proceedings brought by virtue of this Chapter with respect to a literary, dramatic or musical work in which Crown copyright subsists, where there appears on printed copies of the work a statement of the year in which the work was first published commercially, that statement shall be admissible as evidence of the fact stated and shall be presumed to be correct in the absence of evidence to the contrary.

Presumptions
relevant to works
subject to Crown
copyright.

46          c. **48**          *Copyright, Designs and Patents*

*Offences*

Criminal liability
for making or
dealing with
infringing articles,
&c.

**107.**—(1) A person commits an offence who, without the licence of the copyright owner—

    (a) makes for sale or hire, or

    (b) imports into the United Kingdom otherwise than for his private and domestic use, or

    (c) possesses in the course of a business with a view to committing any act infringing the copyright, or

    (d) in the course of a business —

        (i) sells or lets for hire, or

        (ii) offers or exposes for sale or hire, or

        (iii) exhibits in public, or

        (iv) distributes, or

    (e) distributes otherwise than in the course of a business to such an extent as to affect prejudicially the owner of the copyright,

an article which is, and which he knows or has reason to believe is, an infringing copy of a copyright work.

(2) A person commits an offence who—

    (a) makes an article specifically designed or adapted for making copies of a particular copyright work, or

    (b) has such an article in his possession,

knowing or having reason to believe that it is to be used to make infringing copies for sale or hire or for use in the course of a business.

(3) Where copyright is infringed (otherwise than by reception of a broadcast or cable programme)—

    (a) by the public performance of a literary, dramatic or musical work, or

    (b) by the playing or showing in public of a sound recording or film,

any person who caused the work to be so performed, played or shown is guilty of an offence if he knew or had reason to believe that copyright would be infringed.

(4) A person guilty of an offence under subsection (1)(a), (b), (d)(iv) or (e) is liable—

    (a) on summary conviction to imprisonment for a term not exceeding six months or a fine not exceeding the statutory maximum, or both;

    (b) on conviction on indictment to a fine or imprisonment for a term not exceeding two years, or both.

(5) A person guilty of any other offence under this section is liable on summary conviction to imprisonment for a term not exceeding six months or a fine not exceeding level 5 on the standard scale, or both.

(6) Sections 104 to 106 (presumptions as to various matters connected with copyright) do not apply to proceedings for an offence under this section; but without prejudice to their application in proceedings for an order under section 108 below.

**108.**—(1) The court before which proceedings are brought against a person for an offence under section 107 may, if satisfied that at the time of his arrest or charge—

PART I

Order for delivery up in criminal proceedings.

(a) he had in his possession, custody or control in the course of a business an infringing copy of a copyright work, or

(b) he had in his possession, custody or control an article specifically designed or adapted for making copies of a particular copyright work, knowing or having reason to believe that it had been or was to be used to make infringing copies,

order that the infringing copy or article be delivered up to the copyright owner or to such other person as the court may direct.

(2) For this purpose a person shall be treated as charged with an offence—

(a) in England, Wales and Northern Ireland, when he is orally charged or is served with a summons or indictment;

(b) in Scotland, when he is cautioned, charged or served with a complaint or indictment.

(3) An order may be made by the court of its own motion or on the application of the prosecutor (or, in Scotland, the Lord Advocate or procurator-fiscal), and may be made whether or not the person is convicted of the offence, but shall not be made—

(a) after the end of the period specified in section 113 (period after which remedy of delivery up not available), or

(b) if it appears to the court unlikely that any order will be made under section 114 (order as to disposal of infringing copy or other article).

(4) An appeal lies from an order made under this section by a magistrates' court—

(a) in England and Wales, to the Crown Court, and

(b) in Northern Ireland, to the county court;

and in Scotland, where an order has been made under this section, the person from whose possession, custody or control the infringing copy or article has been removed may, without prejudice to any other form of appeal under any rule of law, appeal against that order in the same manner as against sentence.

(5) A person to whom an infringing copy or other article is delivered up in pursuance of an order under this section shall retain it pending the making of an order, or the decision not to make an order, under section 114.

(6) Nothing in this section affects the powers of the court under section 43 of the Powers of Criminal Courts Act 1973, section 223 or 436 of the Criminal Procedure (Scotland) Act 1975 or Article 7 of the Criminal Justice (Northern Ireland) Order 1980 (general provisions as to forfeiture in criminal proceedings).

1973 c. 62.
1975 c. 21.
S.I. 1980/704
(N.I. 6).

**109.**—(1) Where a justice of the peace (in Scotland, a sheriff or justice of the peace) is satisfied by information on oath given by a constable (in Scotland, by evidence on oath) that there are reasonable grounds for believing—

Search warrants.

48          c. **48**          *Copyright, Designs and Patents*

PART I

    (a) that an offence under section 107(1)(a), (b), (d)(iv) or (e) has been or is about to be committed in any premises, and

    (b) that evidence that such an offence has been or is about to be committed is in those premises,

he may issue a warrant authorising a constable to enter and search the premises, using such reasonable force as is necessary.

1984 c. 60.

    (2) The power conferred by subsection (1) does not, in England and Wales, extend to authorising a search for material of the kinds mentioned in section 9(2) of the Police and Criminal Evidence Act 1984 (certain classes of personal or confidential material).

    (3) A warrant under this section—

    (a) may authorise persons to accompany any constable executing the warrant, and

    (b) remains in force for 28 days from the date of its issue.

    (4) In executing a warrant issued under this section a constable may seize an article if he reasonably believes that it is evidence that any offence under section 107(1) has been or is about to be committed.

    (5) In this section "premises" includes land, buildings, moveable structures, vehicles, vessels, aircraft and hovercraft.

Offence by body corporate: liability of officers.

    **110.**—(1) Where an offence under section 107 committed by a body corporate is proved to have been committed with the consent or connivance of a director, manager, secretary or other similar officer of the body, or a person purporting to act in any such capacity, he as well as the body corporate is guilty of the offence and liable to be proceeded against and punished accordingly.

    (2) In relation to a body corporate whose affairs are managed by its members "director" means a member of the body corporate.

*Provision for preventing importation of infringing copies*

Infringing copies may be treated as prohibited goods.

    **111.**—(1) The owner of the copyright in a published literary, dramatic or musical work may give notice in writing to the Commissioners of Customs and Excise—

    (a) that he is the owner of the copyright in the work, and

    (b) that he requests the Commissioners, for a period specified in the notice, to treat as prohibited goods printed copies of the work which are infringing copies.

    (2) The period specified in a notice under subsection (1) shall not exceed five years and shall not extend beyond the period for which copyright is to subsist.

    (3) The owner of the copyright in a sound recording or film may give notice in writing to the Commissioners of Customs and Excise—

    (a) that he is the owner of the copyright in the work,

    (b) that infringing copies of the work are expected to arrive in the United Kingdom at a time and a place specified in the notice, and

    (c) that he requests the Commissioners to treat the copies as prohibited goods.

*Copyright, Designs and Patents*    c. **48**    49

(4) When a notice is in force under this section the importation of goods to which the notice relates, otherwise than by a person for his private and domestic use, is prohibited; but a person is not by reason of the prohibition liable to any penalty other than forfeiture of the goods.

PART I

**112.**—(1) The Commissioners of Customs and Excise may make regulations prescribing the form in which notice is to be given under section 111 and requiring a person giving notice—

Power of Commissioners of Customs and Excise to make regulations.

(a) to furnish the Commissioners with such evidence as may be specified in the regulations, either on giving notice or when the goods are imported, or at both those times, and

(b) to comply with such other conditions as may be specified in the regulations.

(2) The regulations may, in particular, require a person giving such a notice—

(a) to pay such fees in respect of the notice as may be specified by the regulations;

(b) to give such security as may be so specified in respect of any liability or expense which the Commissioners may incur in consequence of the notice by reason of the detention of any article or anything done to an article detained;

(c) to indemnify the Commissioners against any such liability or expense, whether security has been given or not.

(3) The regulations may make different provision as respects different classes of case to which they apply and may include such incidental and supplementary provisions as the Commissioners consider expedient.

(4) Regulations under this section shall be made by statutory instrument which shall be subject to annulment in pursuance of a resolution of either House of Parliament.

(5) Section 17 of the Customs and Excise Management Act 1979 (general provisions as to Commissioners' receipts) applies to fees paid in pursuance of regulations under this section as to receipts under the enactments relating to customs and excise.

1979 c. 2.

*Supplementary*

**113.**—(1) An application for an order under section 99 (order for delivery up in civil proceedings) may not be made after the end of the period of six years from the date on which the infringing copy or article in question was made, subject to the following provisions.

Period after which remedy of delivery up not available.

(2) If during the whole or any part of that period the copyright owner—

(a) is under a disability, or

(b) is prevented by fraud or concealment from discovering the facts entitling him to apply for an order,

an application may be made at any time before the end of the period of six years from the date on which he ceased to be under a disability or, as the case may be, could with reasonable diligence have discovered those facts.

50          c. **48**          *Copyright, Designs and Patents*

PART I

(3) In subsection (2) "disability"—

1980 c. 58.

 (a) in England and Wales, has the same meaning as in the Limitation Act 1980;

 (b) in Scotland, means legal disability within the meaning of the Prescription and Limitation (Scotland) Act 1973;

1973 c. 52.

1958 c. 10 (N.I.).

 (c) in Northern Ireland, has the same meaning as in the Statute of Limitations (Northern Ireland) 1958.

(4) An order under section 108 (order for delivery up in criminal proceedings) shall not, in any case, be made after the end of the period of six years from the date on which the infringing copy or article in question was made.

Order as to disposal of infringing copy or other article.

**114.**—(1) An application may be made to the court for an order that an infringing copy or other article delivered up in pursuance of an order under section 99 or 108, or seized and detained in pursuance of the right conferred by section 100, shall be—

 (a) forfeited to the copyright owner, or

 (b) destroyed or otherwise dealt with as the court may think fit,

or for a decision that no such order should be made.

(2) In considering what order (if any) should be made, the court shall consider whether other remedies available in an action for infringement of copyright would be adequate to compensate the copyright owner and to protect his interests.

(3) Provision shall be made by rules of court as to the service of notice on persons having an interest in the copy or other articles, and any such person is entitled—

 (a) to appear in proceedings for an order under this section, whether or not he was served with notice, and

 (b) to appeal against any order made, whether or not he appeared;

and an order shall not take effect until the end of the period within which notice of an appeal may be given or, if before the end of that period notice of appeal is duly given, until the final determination or abandonment of the proceedings on the appeal.

(4) Where there is more than one person interested in a copy or other article, the court shall make such order as it thinks just and may (in particular) direct that the article be sold, or otherwise dealt with, and the proceeds divided.

(5) If the court decides that no order should be made under this section, the person in whose possession, custody or control the copy or other article was before being delivered up or seized is entitled to its return.

(6) References in this section to a person having an interest in a copy or other article include any person in whose favour an order could be made in respect of it under this section or under section 204 or 231 of this Act or section 58C of the Trade Marks Act 1938 (which make similar provision in relation to infringement of rights in performances, design right and trade marks).

1938 c. 22.

**115.**—(1) In England, Wales and Northern Ireland a county court may entertain proceedings under—

    section 99 (order for delivery up of infringing copy or other article),

    section 102(5) (order as to exercise of rights by copyright owner where exclusive licensee has concurrent rights), or

    section 114 (order as to disposal of infringing copy or other article),

where the value of the infringing copies and other articles in question does not exceed the county court limit for actions in tort.

PART I
Jurisdiction of county court and sheriff court.

(2) In Scotland proceedings for an order under any of those provisions may be brought in the sheriff court.

(3) Nothing in this section shall be construed as affecting the jurisdiction of the High Court or, in Scotland, the Court of Session.

### CHAPTER VII

### COPYRIGHT LICENSING

#### *Licensing schemes and licensing bodies*

**116.**—(1) In this Part a "licensing scheme" means a scheme setting out—

Licensing schemes and licensing bodies.

    (a) the classes of case in which the operator of the scheme, or the person on whose behalf he acts, is willing to grant copyright licences, and

    (b) the terms on which licences would be granted in those classes of case;

and for this purpose a "scheme" includes anything in the nature of a scheme, whether described as a scheme or as a tariff or by any other name.

(2) In this Chapter a "licensing body" means a society or other organisation which has as its main object, or one of its main objects, the negotiation or granting, either as owner or prospective owner of copyright or as agent for him, of copyright licences, and whose objects include the granting of licences covering works of more than one author.

(3) In this section "copyright licences" means licences to do, or authorise the doing of, any of the acts restricted by copyright.

(4) References in this Chapter to licences or licensing schemes covering works of more than one author do not include licences or schemes covering only—

    (a) a single collective work or collective works of which the authors are the same, or

    (b) works made by, or by employees of or commissioned by, a single individual, firm, company or group of companies.

For this purpose a group of companies means a holding company and its subsidiaries, within the meaning of section 736 of the Companies Act 1985.

1985 c. 6.

*References and applications with respect to licensing schemes*

Licensing schemes to which ss. 118 to 123 apply.

**117.** Sections 118 to 123 (references and applications with respect to licensing schemes) apply to—

(a) licensing schemes operated by licensing bodies in relation to the copyright in literary, dramatic, musical or artistic works or films (or film sound-tracks when accompanying a film) which cover works of more than one author, so far as they relate to licences for—

(i) copying the work,

(ii) performing, playing or showing the work in public, or

(iii) broadcasting the work or including it in a cable programme service;

(b) all licensing schemes in relation to the copyright in sound recordings (other than film sound-tracks when accompanying a film), broadcasts or cable programmes, or the typographical arrangement of published editions; and

(c) all licensing schemes in relation to the copyright in sound recordings, films or computer programs so far as they relate to licences for the rental of copies to the public;

and in those sections "licensing scheme" means a licensing scheme of any of those descriptions.

Reference of proposed licensing scheme to tribunal.

**118.**—(1) The terms of a licensing scheme proposed to be operated by a licensing body may be referred to the Copyright Tribunal by an organisation claiming to be representative of persons claiming that they require licences in cases of a description to which the scheme would apply, either generally or in relation to any description of case.

(2) The Tribunal shall first decide whether to entertain the reference, and may decline to do so on the ground that the reference is premature.

(3) If the Tribunal decides to entertain the reference it shall consider the matter referred and make such order, either confirming or varying the proposed scheme, either generally or so far as it relates to cases of the description to which the reference relates, as the Tribunal may determine to be reasonable in the circumstances.

(4) The order may be made so as to be in force indefinitely or for such period as the Tribunal may determine.

Reference of licensing scheme to tribunal.

**119.**—(1) If while a licensing scheme is in operation a dispute arises between the operator of the scheme and—

(a) a person claiming that he requires a licence in a case of a description to which the scheme applies, or

(b) an organisation claiming to be representative of such persons,

that person or organisation may refer the scheme to the Copyright Tribunal in so far as it relates to cases of that description.

(2) A scheme which has been referred to the Tribunal under this section shall remain in operation until proceedings on the reference are concluded.

(3) The Tribunal shall consider the matter in dispute and make such order, either confirming or varying the scheme so far as it relates to cases of the description to which the reference relates, as the Tribunal may determine to be reasonable in the circumstances.

PART I

(4) The order may be made so as to be in force indefinitely or for such period as the Tribunal may determine.

**120.**—(1) Where the Copyright Tribunal has on a previous reference of a licensing scheme under section 118 or 119, or under this section, made an order with respect to the scheme, then, while the order remains in force—

Further reference of scheme to tribunal.

(a) the operator of the scheme,

(b) a person claiming that he requires a licence in a case of the description to which the order applies, or

(c) an organisation claiming to be representative of such persons,

may refer the scheme again to the Tribunal so far as it relates to cases of that description.

(2) A licensing scheme shall not, except with the special leave of the Tribunal, be referred again to the Tribunal in respect of the same description of cases—

(a) within twelve months from the date of the order on the previous reference, or

(b) if the order was made so as to be in force for 15 months or less, until the last three months before the expiry of the order.

(3) A scheme which has been referred to the Tribunal under this section shall remain in operation until proceedings on the reference are concluded.

(4) The Tribunal shall consider the matter in dispute and make such order, either confirming, varying or further varying the scheme so far as it relates to cases of the description to which the reference relates, as the Tribunal may determine to be reasonable in the circumstances.

(5) The order may be made so as to be in force indefinitely or for such period as the Tribunal may determine.

**121.**—(1) A person who claims, in a case covered by a licensing scheme, that the operator of the scheme has refused to grant him or procure the grant to him of a licence in accordance with the scheme, or has failed to do so within a reasonable time after being asked, may apply to the Copyright Tribunal.

Application for grant of licence in connection with licensing scheme.

(2) A person who claims, in a case excluded from a licensing scheme, that the operator of the scheme either—

(a) has refused to grant him a licence or procure the grant to him of a licence, or has failed to do so within a reasonable time of being asked, and that in the circumstances it is unreasonable that a licence should not be granted, or

(b) proposes terms for a licence which are unreasonable,

may apply to the Copyright Tribunal.

54          c. **48**          *Copyright, Designs and Patents*

(3) A case shall be regarded as excluded from a licensing scheme for the purposes of subsection (2) if—

(a) the scheme provides for the grant of licences subject to terms excepting matters from the licence and the case falls within such an exception, or

(b) the case is so similar to those in which licences are granted under the scheme that it is unreasonable that it should not be dealt with in the same way.

(4) If the Tribunal is satisfied that the claim is well-founded, it shall make an order declaring that, in respect of the matters specified in the order, the applicant is entitled to a licence on such terms as the Tribunal may determine to be applicable in accordance with the scheme or, as the case may be, to be reasonable in the circumstances.

(5) The order may be made so as to be in force indefinitely or for such period as the Tribunal may determine.

Application for review of order as to entitlement to licence.

**122.**—(1) Where the Copyright Tribunal has made an order under section 121 that a person is entitled to a licence under a licensing scheme, the operator of the scheme or the original applicant may apply to the Tribunal to review its order.

(2) An application shall not be made, except with the special leave of the Tribunal—

(a) within twelve months from the date of the order, or of the decision on a previous application under this section, or

(b) if the order was made so as to be in force for 15 months or less, or as a result of the decision on a previous application under this section is due to expire within 15 months of that decision, until the last three months before the expiry date.

(3) The Tribunal shall on an application for review confirm or vary its order as the Tribunal may determine to be reasonable having regard to the terms applicable in accordance with the licensing scheme or, as the case may be, the circumstances of the case.

Effect of order of tribunal as to licensing scheme.

**123.**—(1) A licensing scheme which has been confirmed or varied by the Copyright Tribunal—

(a) under section 118 (reference of terms of proposed scheme), or

(b) under section 119 or 120 (reference of existing scheme to Tribunal),

shall be in force or, as the case may be, remain in operation, so far as it relates to the description of case in respect of which the order was made, so long as the order remains in force.

(2) While the order is in force a person who in a case of a class to which the order applies—

(a) pays to the operator of the scheme any charges payable under the scheme in respect of a licence covering the case in question or, if the amount cannot be ascertained, gives an undertaking to the operator to pay them when ascertained, and

(b) complies with the other terms applicable to such a licence under the scheme,

shall be in the same position as regards infringement of copyright as if he had at all material times been the holder of a licence granted by the owner of the copyright in question in accordance with the scheme.

(3) The Tribunal may direct that the order, so far as it varies the amount of charges payable, has effect from a date before that on which it is made, but not earlier than the date on which the reference was made or, if later, on which the scheme came into operation.

If such a direction is made—

(a) any necessary repayments, or further payments, shall be made in respect of charges already paid, and

(b) the reference in subsection (2)(a) to the charges payable under the scheme shall be construed as a reference to the charges so payable by virtue of the order.

No such direction may be made where subsection (4) below applies.

(4) An order of the Tribunal under section 119 or 120 made with respect to a scheme which is certified for any purpose under section 143 has effect, so far as it varies the scheme by reducing the charges payable for licences, from the date on which the reference was made to the Tribunal.

(5) Where the Tribunal has made an order under section 121 (order as to entitlement to licence under licensing scheme) and the order remains in force, the person in whose favour the order is made shall if he—

(a) pays to the operator of the scheme any charges payable in accordance with the order or, if the amount cannot be ascertained, gives an undertaking to pay the charges when ascertained, and

(b) complies with the other terms specified in the order,

be in the same position as regards infringement of copyright as if he had at all material times been the holder of a licence granted by the owner of the copyright in question on the terms specified in the order.

*References and applications with respect to licensing by licensing bodies*

**124.** Sections 125 to 128 (references and applications with respect to licensing by licensing bodies) apply to the following descriptions of licence granted by a licensing body otherwise than in pursuance of a licensing scheme—

Licences to which ss. 125 to 128 apply.

(a) licences relating to the copyright in literary, dramatic, musical or artistic works or films (or film sound-tracks when accompanying a film) which cover works of more than one author, so far as they authorise—

(i) copying the work,

(ii) performing, playing or showing the work in public, or

(iii) broadcasting the work or including it in a cable programme service;

56          c. **48**          *Copyright, Designs and Patents*

(b) any licence relating to the copyright in a sound recording (other than a film sound-track when accompanying a film), broadcast or cable programme, or the typographical arrangement of a published edition; and

(c) all licences in relation to the copyright in sound recordings, films or computer programs so far as they relate to the rental of copies to the public;

and in those sections a "licence" means a licence of any of those descriptions.

<div style="margin-left:2em">Reference to tribunal of proposed licence.</div>

**125.**—(1) The terms on which a licensing body proposes to grant a licence may be referred to the Copyright Tribunal by the prospective licensee.

(2) The Tribunal shall first decide whether to entertain the reference, and may decline to do so on the ground that the reference is premature.

(3) If the Tribunal decides to entertain the reference it shall consider the terms of the proposed licence and make such order, either confirming or varying the terms, as it may determine to be reasonable in the circumstances.

(4) The order may be made so as to be in force indefinitely or for such period as the Tribunal may determine.

<div style="margin-left:2em">Reference to tribunal of expiring licence.</div>

**126.**—(1) A licensee under a licence which is due to expire, by effluxion of time or as a result of notice given by the licensing body, may apply to the Copyright Tribunal on the ground that it is unreasonable in the circumstances that the licence should cease to be in force.

(2) Such an application may not be made until the last three months before the licence is due to expire.

(3) A licence in respect of which a reference has been made to the Tribunal shall remain in operation until proceedings on the reference are concluded.

(4) If the Tribunal finds the application well-founded, it shall make an order declaring that the licensee shall continue to be entitled to the benefit of the licence on such terms as the Tribunal may determine to be reasonable in the circumstances.

(5) An order of the Tribunal under this section may be made so as to be in force indefinitely or for such period as the Tribunal may determine.

<div style="margin-left:2em">Application for review of order as to licence.</div>

**127.**—(1) Where the Copyright Tribunal has made an order under section 125 or 126, the licensing body or the person entitled to the benefit of the order may apply to the Tribunal to review its order.

(2) An application shall not be made, except with the special leave of the Tribunal—

(a) within twelve months from the date of the order or of the decision on a previous application under this section, or

(b) if the order was made so as to be in force for 15 months or less, or as a result of the decision on a previous application under this section is due to expire within 15 months of that decision, until the last three months before the expiry date.

*Copyright, Designs and Patents*          **c. 48**          57

(3) The Tribunal shall on an application for review confirm or vary its order as the Tribunal may determine to be reasonable in the circumstances.

PART I

**128.**—(1) Where the Copyright Tribunal has made an order under section 125 or 126 and the order remains in force, the person entitled to the benefit of the order shall if he—

Effect of order of tribunal as to licence.

(a) pays to the licensing body any charges payable in accordance with the order or, if the amount cannot be ascertained, gives an undertaking to pay the charges when ascertained, and

(b) complies with the other terms specified in the order,

be in the same position as regards infringement of copyright as if he had at all material times been the holder of a licence granted by the owner of the copyright in question on the terms specified in the order.

(2) The benefit of the order may be assigned—

(a) in the case of an order under section 125, if assignment is not prohibited under the terms of the Tribunal's order; and

(b) in the case of an order under section 126, if assignment was not prohibited under the terms of the original licence.

(3) The Tribunal may direct that an order under section 125 or 126, or an order under section 127 varying such an order, so far as it varies the amount of charges payable, has effect from a date before that on which it is made, but not earlier than the date on which the reference or application was made or, if later, on which the licence was granted or, as the case may be, was due to expire.

If such a direction is made—

(a) any necessary repayments, or further payments, shall be made in respect of charges already paid, and

(b) the reference in subsection (1)(a) to the charges payable in accordance with the order shall be construed, where the order is varied by a later order, as a reference to the charges so payable by virtue of the later order.

*Factors to be taken into account in certain classes of case*

**129.** In determining what is reasonable on a reference or application under this Chapter relating to a licensing scheme or licence, the Copyright Tribunal shall have regard to—

General considerations: unreasonable discrimination.

(a) the availability of other schemes, or the granting of other licences, to other persons in similar circumstances, and

(b) the terms of those schemes or licences,

and shall exercise its powers so as to secure that there is no unreasonable discrimination between licensees, or prospective licensees, under the scheme or licence to which the reference or application relates and licensees under other schemes operated by, or other licences granted by, the same person.

58        c. **48**                *Copyright, Designs and Patents*

PART I
Licences for
reprographic
copying.

**130.** Where a reference or application is made to the Copyright Tribunal under this Chapter relating to the licensing of reprographic copying of published literary, dramatic, musical or artistic works, or the typographical arrangement of published editions, the Tribunal shall have regard to—

(a) the extent to which published editions of the works in question are otherwise available,

(b) the proportion of the work to be copied, and

(c) the nature of the use to which the copies are likely to be put.

Licences for
educational
establishments in
respect of works
included in
broadcasts or
cable
programmes.

**131.**—(1) This section applies to references or applications under this Chapter relating to licences for the recording by or on behalf of educational establishments of broadcasts or cable programmes which include copyright works, or the making of copies of such recordings, for educational purposes.

(2) The Copyright Tribunal shall, in considering what charges (if any) should be paid for a licence, have regard to the extent to which the owners of copyright in the works included in the broadcast or cable programme have already received, or are entitled to receive, payment in respect of their inclusion.

Licences to reflect
conditions
imposed by
promoters of
events.

**132.**—(1) This section applies to references or applications under this Chapter in respect of licences relating to sound recordings, films, broadcasts or cable programmes which include, or are to include, any entertainment or other event.

(2) The Copyright Tribunal shall have regard to any conditions imposed by the promoters of the entertainment or other event; and, in particular, the Tribunal shall not hold a refusal or failure to grant a licence to be unreasonable if it could not have been granted consistently with those conditions.

(3) Nothing in this section shall require the Tribunal to have regard to any such conditions in so far as they—

(a) purport to regulate the charges to be imposed in respect of the grant of licences, or

(b) relate to payments to be made to the promoters of any event in consideration of the grant of facilities for making the recording, film, broadcast or cable programme.

Licences to reflect
payments in
respect of
underlying rights.

**133.**—(1) In considering what charges should be paid for a licence—

(a) on a reference or application under this Chapter relating to licences for the rental to the public of copies of sound recordings, films or computer programs, or

(b) on an application under section 142 (settlement of royalty or other sum payable for deemed licence),

the Copyright Tribunal shall take into account any reasonable payments which the owner of the copyright in the sound recording, film or computer program is liable to make in consequence of the granting of the licence, or of the acts authorised by the licence, to owners of copyright in works included in that work.

(2) On any reference or application under this Chapter relating to licensing in respect of the copyright in sound recordings, films, broadcasts or cable programmes, the Copyright Tribunal shall take into account, in considering what charges should be paid for a licence, any reasonable payments which the copyright owner is liable to make in consequence of the granting of the licence, or of the acts authorised by the licence, in respect of any performance included in the recording, film, broadcast or cable programme.

PART 1

**134.**—(1) This section applies to references or applications under this Chapter relating to licences to include in a broadcast or cable programme service—

(a) literary, dramatic, musical or artistic works, or,

(b) sound recordings or films,

where one broadcast or cable programme ("the first transmission") is, by reception and immediate re-transmission, to be further broadcast or included in a cable programme service ("the further transmission").

Licences in respect of works included in re-transmissions.

(2) So far as the further transmission is to the same area as the first transmission, the Copyright Tribunal shall, in considering what charges (if any) should be paid for licences for either transmission, have regard to the extent to which the copyright owner has already received, or is entitled to receive, payment for the other transmission which adequately remunerates him in respect of transmissions to that area.

(3) So far as the further transmission is to an area outside that to which the first transmission was made, the Tribunal shall (except where subsection (4) applies) leave the further transmission out of account in considering what charges (if any) should be paid for licences for the first transmission.

(4) If the Tribunal is satisfied that requirements imposed under section 13(1) of the Cable and Broadcasting Act 1984 (duty of Cable Authority to secure inclusion of certain broadcasts in cable programme services) will result in the further transmission being to areas part of which fall outside the area to which the first transmission is made, the Tribunal shall exercise its powers so as to secure that the charges payable for licences for the first transmission adequately reflect that fact.

1984 c. 46.

**135.** The mention in sections 129 to 134 of specific matters to which the Copyright Tribunal is to have regard in certain classes of case does not affect the Tribunal's general obligation in any case to have regard to all relevant considerations.

Mention of specific matters not to exclude other relevant considerations.

*Implied indemnity in schemes or licences for reprographic copying*

**136.**—(1) This section applies to—

(a) schemes for licensing reprographic copying of published literary, dramatic, musical or artistic works, or the typographical arrangement of published editions, and

(b) licences granted by licensing bodies for such copying,

where the scheme or licence does not specify the works to which it applies with such particularity as to enable licensees to determine whether a work falls within the scheme or licence by inspection of the scheme or licence and the work.

Implied indemnity in certain schemes and licences for reprographic copying.

60          c. **48**              *Copyright, Designs and Patents*

PART I        (2) There is implied—

> (a) in every scheme to which this section applies an undertaking by
> the operator of the scheme to indemnify a person granted a
> licence under the scheme, and

> (b) in every licence to which this section applies an undertaking by
> the licensing body to indemnify the licensee,

against any liability incurred by him by reason of his having infringed
copyright by making or authorising the making of reprographic copies of
a work in circumstances within the apparent scope of his licence.

(3) The circumstances of a case are within the apparent scope of a
licence if—

> (a) it is not apparent from inspection of the licence and the work that
> it does not fall within the description of works to which the
> licence applies; and

> (b) the licence does not expressly provide that it does not extend to
> copyright of the description infringed.

(4) In this section "liability" includes liability to pay costs; and this
section applies in relation to costs reasonably incurred by a licensee in
connection with actual or contemplated proceedings against him for
infringement of copyright as it applies to sums which he is liable to pay
in respect of such infringement.

(5) A scheme or licence to which this section applies may contain
reasonable provision—

> (a) with respect to the manner in which, and time within which,
> claims under the undertaking implied by this section are to be
> made;

> (b) enabling the operator of the scheme or, as the case may be, the
> licensing body to take over the conduct of any proceedings
> affecting the amount of his liability to indemnify.

*Reprographic copying by educational establishments*

Power to extend     **137.**—(1) This section applies to—
coverage of
scheme or licence.      (a) a licensing scheme to which sections 118 to 123 apply (see section
> 117) and which is operated by a licensing body, or

> (b) a licence to which sections 125 to 128 apply (see section 124),

so far as it provides for the grant of licences, or is a licence, authorising
the making by or on behalf of educational establishments for the purposes
of instruction of reprographic copies of published literary, dramatic,
musical or artistic works, or of the typographical arrangement of
published editions.

(2) If it appears to the Secretary of State with respect to a scheme or
licence to which this section applies that—

> (a) works of a description similar to those covered by the scheme or
> licence are unreasonably excluded from it, and

> (b) making them subject to the scheme or licence would not conflict
> with the normal exploitation of the works or unreasonably
> prejudice the legitimate interests of the copyright owners,

he may by order provide that the scheme or licence shall extend to those
works.

(3) Where he proposes to make such an order, the Secretary of State shall give notice of the proposal to—

PART I

    (a) the copyright owners,

    (b) the licensing body in question, and

    (c) such persons or organisations representative of educational establishments, and such other persons or organisations, as the Secretary of State thinks fit.

(4) The notice shall inform those persons of their right to make written or oral representations to the Secretary of State about the proposal within six months from the date of the notice; and if any of them wishes to make oral representations, the Secretary of State shall appoint a person to hear the representations and report to him.

(5) In considering whether to make an order the Secretary of State shall take into account any representations made to him in accordance with subsection (4), and such other matters as appear to him to be relevant.

**138.**—(1) The owner of the copyright in a work in respect of which an order is in force under section 137 may apply to the Secretary of State for the variation or discharge of the order, stating his reasons for making the application.

Variation or discharge of order extending scheme or licence.

(2) The Secretary of State shall not entertain an application made within two years of the making of the original order, or of the making of an order on a previous application under this section, unless it appears to him that the circumstances are exceptional.

(3) On considering the reasons for the application the Secretary of State may confirm the order forthwith; if he does not do so, he shall give notice of the application to—

    (a) the licensing body in question, and

    (b) such persons or organisations representative of educational establishments, and such other persons or organisations, as he thinks fit.

(4) The notice shall inform those persons of their right to make written or oral representations to the Secretary of State about the application within the period of two months from the date of the notice; and if any of them wishes to make oral representations, the Secretary of State shall appoint a person to hear the representations and report to him.

(5) In considering the application the Secretary of State shall take into account the reasons for the application, any representations made to him in accordance with subsection (4), and such other matters as appear to him to be relevant.

(6) The Secretary of State may make such order as he thinks fit confirming or discharging the order (or, as the case may be, the order as previously varied), or varying (or further varying) it so as to exclude works from it.

PART I
Appeals against
orders.

**139.**—(1) The owner of the copyright in a work which is the subject of an order under section 137 (order extending coverage of scheme or licence) may appeal to the Copyright Tribunal which may confirm or discharge the order, or vary it so as to exclude works from it, as it thinks fit having regard to the considerations mentioned in subsection (2) of that section.

(2) Where the Secretary of State has made an order under section 138 (order confirming, varying or discharging order extending coverage of scheme or licence)—

(a) the person who applied for the order, or

(b) any person or organisation representative of educational establishments who was given notice of the application for the order and made representations in accordance with subsection (4) of that section,

may appeal to the Tribunal which may confirm or discharge the order or make any other order which the Secretary of State might have made.

(3) An appeal under this section shall be brought within six weeks of the making of the order or such further period as the Tribunal may allow.

(4) An order under section 137 or 138 shall not come into effect until the end of the period of six weeks from the making of the order or, if an appeal is brought before the end of that period, until the appeal proceedings are disposed of or withdrawn.

(5) If an appeal is brought after the end of that period, any decision of the Tribunal on the appeal does not affect the validity of anything done in reliance on the order appealed against before that decision takes effect.

Inquiry whether
new scheme or
general licence
required.

**140.**—(1) The Secretary of State may appoint a person to inquire into the question whether new provision is required (whether by way of a licensing scheme or general licence) to authorise the making by or on behalf of educational establishments for the purposes of instruction of reprographic copies of—

(a) published literary, dramatic, musical or artistic works, or

(b) the typographical arrangement of published editions,

of a description which appears to the Secretary of State not to be covered by an existing licensing scheme or general licence and not to fall within the power conferred by section 137 (power to extend existing schemes and licences to similar works).

(2) The procedure to be followed in relation to an inquiry shall be such as may be prescribed by regulations made by the Secretary of State.

(3) The regulations shall, in particular, provide for notice to be given to—

(a) persons or organisations appearing to the Secretary of State to represent the owners of copyright in works of that description, and

(b) persons or organisations appearing to the Secretary of State to represent educational establishments,

and for the making of written or oral representations by such persons; but without prejudice to the giving of notice to, and the making of representations by, other persons and organisations.

(4) The person appointed to hold the inquiry shall not recommend the making of new provision unless he is satisfied—

PART I

- (a) that it would be of advantage to educational establishments to be authorised to make reprographic copies of the works in question, and

- (b) that making those works subject to a licensing scheme or general licence would not conflict with the normal exploitation of the works or unreasonably prejudice the legitimate interests of the copyright owners.

(5) If he does recommend the making of new provision he shall specify any terms, other than terms as to charges payable, on which authorisation under the new provision should be available.

(6) Regulations under this section shall be made by statutory instrument which shall be subject to annulment in pursuance of a resolution of either House of Parliament.

(7) In this section (and section 141) a "general licence" means a licence granted by a licensing body which covers all works of the description to which it applies.

**141.**—(1) The Secretary of State may, within one year of the making of a recommendation under section 140 by order provide that if, or to the extent that, provision has not been made in accordance with the recommendation, the making by or on behalf of an educational establishment, for the purposes of instruction, of reprographic copies of the works to which the recommendation relates shall be treated as licensed by the owners of the copyright in the works.

Statutory licence where recommendation not implemented.

(2) For that purpose provision shall be regarded as having been made in accordance with the recommendation if—

- (a) a certified licensing scheme has been established under which a licence is available to the establishment in question, or

- (b) a general licence has been—

    (i) granted to or for the benefit of that establishment, or

    (ii) referred by or on behalf of that establishment to the Copyright Tribunal under section 125 (reference of terms of proposed licence), or

    (iii) offered to or for the benefit of that establishment and refused without such a reference,

and the terms of the scheme or licence accord with the recommendation.

(3) The order shall also provide that any existing licence authorising the making of such copies (not being a licence granted under a certified licensing scheme or a general licence) shall cease to have effect to the extent that it is more restricted or more onerous than the licence provided for by the order.

(4) The order shall provide for the licence to be free of royalty but, as respects other matters, subject to any terms specified in the recommendation and to such other terms as the Secretary of State may think fit.

64          c. **48**          *Copyright, Designs and Patents*

(5) The order may provide that where a copy which would otherwise be an infringing copy is made in accordance with the licence provided by the order but is subsequently dealt with, it shall be treated as an infringing copy for the purposes of that dealing, and if that dealing infringes copyright for all subsequent purposes.

In this subsection "dealt with" means sold or let for hire, offered or exposed for sale or hire, or exhibited in public.

(6) The order shall not come into force until at least six months after it is made.

(7) An order may be varied from time to time, but not so as to include works other than those to which the recommendation relates or remove any terms specified in the recommendation, and may be revoked.

(8) An order under this section shall be made by statutory instrument which shall be subject to annulment in pursuance of a resolution of either House of Parliament.

(9) In this section a "certified licensing scheme" means a licensing scheme certified for the purposes of this section under section 143.

### *Royalty or other sum payable for rental of certain works*

Royalty or other sum payable for rental of sound recording, film or computer program.

**142.**—(1) An application to settle the royalty or other sum payable in pursuance of section 66 (rental of sound recordings, films and computer programs) may be made to the Copyright Tribunal by the copyright owner or the person claiming to be treated as licensed by him.

(2) The Tribunal shall consider the matter and make such order as it may determine to be reasonable in the circumstances.

(3) Either party may subsequently apply to the Tribunal to vary the order, and the Tribunal shall consider the matter and make such order confirming or varying the original order as it may determine to be reasonable in the circumstances.

(4) An application under subsection (3) shall not, except with the special leave of the Tribunal, be made within twelve months from the date of the original order or of the order on a previous application under that subsection.

(5) An order under subsection (3) has effect from the date on which it is made or such later date as may be specified by the Tribunal.

### *Certification of licensing schemes*

Certification of licensing schemes.

**143.**—(1) A person operating or proposing to operate a licensing scheme may apply to the Secretary of State to certify the scheme for the purposes of—

(a) section 35 (educational recording of broadcasts or cable programmes),

(b) section 60 (abstracts of scientific or technical articles),

(c) section 66 (rental of sound recordings, films and computer programs),

(d) section 74 (sub-titled copies of broadcasts or cable programmes for people who are deaf or hard of hearing), or

(e) section 141 (reprographic copying of published works by educational establishments).

(2) The Secretary of State shall by order made by statutory instrument certify the scheme if he is satisfied that it—

   (a) enables the works to which it relates to be identified with sufficient certainty by persons likely to require licences, and

   (b) sets out clearly the charges (if any) payable and the other terms on which licences will be granted.

(3) The scheme shall be scheduled to the order and the certification shall come into operation for the purposes of section 35, 60, 66, 74 or 141, as the case may be—

   (a) on such date, not less than eight weeks after the order is made, as may be specified in the order, or

   (b) if the scheme is the subject of a reference under section 118 (reference of proposed scheme), any later date on which the order of the Copyright Tribunal under that section comes into force or the reference is withdrawn.

(4) A variation of the scheme is not effective unless a corresponding amendment of the order is made; and the Secretary of State shall make such an amendment in the case of a variation ordered by the Copyright Tribunal on a reference under section 118, 119 or 120, and may do so in any other case if he thinks fit.

(5) The order shall be revoked if the scheme ceases to be operated and may be revoked if it appears to the Secretary of State that it is no longer being operated according to its terms.

### *Powers exercisable in consequence of competition report*

**144.**—(1) Where the matters specified in a report of the Monopolies and Mergers Commission as being those which in the Commission's opinion operate, may be expected to operate or have operated against the public interest include—

*Powers exercisable in consequence of report of Monopolies and Mergers Commission.*

   (a) conditions in licences granted by the owner of copyright in a work restricting the use of the work by the licensee or the right of the copyright owner to grant other licences, or

   (b) a refusal of a copyright owner to grant licences on reasonable terms,

the powers conferred by Part I of Schedule 8 to the Fair Trading Act 1973 (powers exercisable for purpose of remedying or preventing adverse effects specified in report of Commission) include power to cancel or modify those conditions and, instead or in addition, to provide that licences in respect of the copyright shall be available as of right.

*1973 c. 41.*

(2) The references in sections 56(2) and 73(2) of that Act, and sections 10(2)(b) and 12(5) of the Competition Act 1980, to the powers specified in that Part of that Schedule shall be construed accordingly.

*1980 c. 21.*

(3) A Minister shall only exercise the powers available by virtue of this section if he is satisfied that to do so does not contravene any Convention relating to copyright to which the United Kingdom is a party.

66     c. **48**     *Copyright, Designs and Patents*

PART I

(4) The terms of a licence available by virtue of this section shall, in default of agreement, be settled by the Copyright Tribunal on an application by the person requiring the licence; and terms so settled shall authorise the licensee to do everything in respect of which a licence is so available.

(5) Where the terms of a licence are settled by the Tribunal, the licence has effect from the date on which the application to the Tribunal was made.

## CHAPTER VIII

### THE COPYRIGHT TRIBUNAL

#### *The Tribunal*

The Copyright Tribunal.

1956 c. 74.

**145.**—(1) The Tribunal established under section 23 of the Copyright Act 1956 is renamed the Copyright Tribunal.

(2) The Tribunal shall consist of a chairman and two deputy chairmen appointed by the Lord Chancellor, after consultation with the Lord Advocate, and not less than two or more than eight ordinary members appointed by the Secretary of State.

(3) A person is not eligible for appointment as chairman or deputy chairman unless he is a barrister, advocate or solicitor of not less than seven years' standing or has held judicial office.

Membership of the Tribunal.

**146.**—(1) The members of the Copyright Tribunal shall hold and vacate office in accordance with their terms of appointment, subject to the following provisions.

(2) A member of the Tribunal may resign his office by notice in writing to the Secretary of State or, in the case of the chairman or a deputy chairman, to the Lord Chancellor.

(3) The Secretary of State or, in the case of the chairman or a deputy chairman, the Lord Chancellor may by notice in writing to the member concerned remove him from office if—

(a) he has become bankrupt or made an arrangement with his creditors or, in Scotland, his estate has been sequestrated or he has executed a trust deed for his creditors or entered into a composition contract, or

(b) he is incapacitated by physical or mental illness,

or if he is in the opinion of the Secretary of State or, as the case may be, the Lord Chancellor otherwise unable or unfit to perform his duties as member.

(4) If a member of the Tribunal is by reason of illness, absence or other reasonable cause for the time being unable to perform the duties of his office, either generally or in relation to particular proceedings, a person may be appointed to discharge his duties for a period not exceeding six months at one time or, as the case may be, in relation to those proceedings.

(5) The appointment shall be made—

(a) in the case of the chairman or deputy chairman, by the Lord Chancellor, who shall appoint a person who would be eligible for appointment to that office, and

(b) in the case of an ordinary member, by the Secretary of State;

PART I

and a person so appointed shall have during the period of his appointment, or in relation to the proceedings in question, the same powers as the person in whose place he is appointed.

(6) The Lord Chancellor shall consult the Lord Advocate before exercising his powers under this section.

**147.**—(1) There shall be paid to the members of the Copyright Tribunal such remuneration (whether by way of salaries or fees), and such allowances, as the Secretary of State with the approval of the Treasury may determine.

Financial provisions.

(2) The Secretary of State may appoint such staff for the Tribunal as, with the approval of the Treasury as to numbers and remuneration, he may determine.

(3) The remuneration and allowances of members of the Tribunal, the remuneration of any staff and such other expenses of the Tribunal as the Secretary of State with the approval of the Treasury may determine shall be paid out of money provided by Parliament.

**148.**—(1) For the purposes of any proceedings the Copyright Tribunal shall consist of—

Constitution for purposes of proceedings.

    (a) a chairman, who shall be either the chairman or a deputy chairman of the Tribunal, and

    (b) two or more ordinary members.

(2) If the members of the Tribunal dealing with any matter are not unanimous, the decision shall be taken by majority vote; and if, in such a case, the votes are equal the chairman shall have a further, casting vote.

(3) Where part of any proceedings before the Tribunal has been heard and one or more members of the Tribunal are unable to continue, the Tribunal shall remain duly constituted for the purpose of those proceedings so long as the number of members is not reduced to less than three.

(4) If the chairman is unable to continue, the chairman of the Tribunal shall—

    (a) appoint one of the remaining members to act as chairman, and

    (b) appoint a suitably qualified person to attend the proceedings and advise the members on any questions of law arising.

(5) A person is "suitably qualified" for the purposes of subsection (4)(b) if he is, or is eligible for appointment as, a deputy chairman of the Tribunal.

*Jurisdiction and procedure*

**149.** The function of the Copyright Tribunal is to hear and determine proceedings under—

Jurisdiction of the Tribunal.

    (a) section 118, 119, or 120 (reference of licensing scheme);

    (b) section 121 or 122 (application with respect to entitlement to licence under licensing scheme);

68          c. **48**          *Copyright, Designs and Patents*

PART I

(c) section 125, 126 or 127 (reference or application with respect to licensing by licensing body);

(d) section 139 (appeal against order as to coverage of licensing scheme or licence);

(e) section 142 (application to settle royalty or other sum payable for rental of sound recording, film or computer program);

(f) section 144(4) (application to settle terms of copyright licence available as of right);

(g) section 190 (application to give consent for purposes of Part II on behalf of performer);

(h) paragraph 5 of Schedule 6 (determination of royalty or other remuneration to be paid to trustees for the Hospital for Sick Children).

General power to make rules.

**150.**—(1) The Lord Chancellor may, after consultation with the Lord Advocate, make rules for regulating proceedings before the Copyright Tribunal and, subject to the approval of the Treasury, as to the fees chargeable in respect of such proceedings.

(2) The rules may apply in relation to the Tribunal—

1950 c. 27.

(a) as respects proceedings in England and Wales, any of the provisions of the Arbitration Act 1950;

1937 c. 8 (N.I.).

(b) as respects proceedings in Northern Ireland, any of the provisions of the Arbitration Act (Northern Ireland) 1937;

and any provisions so applied shall be set out in or scheduled to the rules.

(3) Provision shall be made by the rules—

(a) prohibiting the Tribunal from entertaining a reference under section 118, 119 or 120 by a representative organisation unless the Tribunal is satisfied that the organisation is reasonably representative of the class of persons which it claims to represent;

(b) specifying the parties to any proceedings and enabling the Tribunal to make a party to the proceedings any person or organisation satisfying the Tribunal that they have a substantial interest in the matter; and

(c) requiring the Tribunal to give the parties to proceedings an opportunity to state their case, in writing or orally as the rules may provide.

(4) The rules may make provision for regulating or prescribing any matters incidental to or consequential upon any appeal from the Tribunal under section 152 (appeal to the court on point of law).

(5) Rules under this section shall be made by statutory instrument which shall be subject to annulment in pursuance of a resolution of either House of Parliament.

Costs, proof of orders, &c.

**151.**—(1) The Copyright Tribunal may order that the costs of a party to proceedings before it shall be paid by such other party as the Tribunal may direct; and the Tribunal may tax or settle the amount of the costs, or direct in what manner they are to be taxed.

(2) A document purporting to be a copy of an order of the Tribunal and to be certified by the chairman to be a true copy shall, in any proceedings, be sufficient evidence of the order unless the contrary is proved.

PART I

(3) As respect proceedings in Scotland, the Tribunal has the like powers for securing the attendance of witnesses and the production of documents, and with regard to the examination of witnesses on oath, as an arbiter under a submission.

*Appeals*

**152.**—(1) An appeal lies on any point of law arising from a decision of the Copyright Tribunal to the High Court or, in the case of proceedings of the Tribunal in Scotland, to the Court of Session.

Appeal to the court on point of law.

(2) Provision shall be made by rules under section 150 limiting the time within which an appeal may be brought.

(3) Provision may be made by rules under that section—

    (a) for suspending, or authorising or requiring the Tribunal to suspend, the operation of orders of the Tribunal in cases where its decision is appealed against;

    (b) for modifying in relation to an order of the Tribunal whose operation is suspended the operation of any provision of this Act as to the effect of the order;

    (c) for the publication of notices or the taking of other steps for securing that persons affected by the suspension of an order of the Tribunal will be informed of its suspension.

### CHAPTER IX

### QUALIFICATION FOR AND EXTENT OF COPYRIGHT PROTECTION

*Qualification for copyright protection*

**153.**—(1) Copyright does not subsist in a work unless the qualification requirements of this Chapter are satisfied as regards—

Qualification for copyright protection.

    (a) the author (see section 154), or

    (b) the country in which the work was first published (see section 155), or

    (c) in the case of a broadcast or cable programme, the country from which the broadcast was made or the cable programme was sent (see section 156).

(2) Subsection (1) does not apply in relation to Crown copyright or Parliamentary copyright (see sections 163 to 166) or to copyright subsisting by virtue of section 168 (copyright of certain international organisations).

(3) If the qualification requirements of this Chapter, or section 163, 165 or 168, are once satisfied in respect of a work, copyright does not cease to subsist by reason of any subsequent event.

70          c. **48**          *Copyright, Designs and Patents*

PART I
Qualification by
reference to
author.

1981 c. 61.

**154.**—(1) A work qualifies for copyright protection if the author was at the material time a qualifying person, that is—

    (a) a British citizen, a British Dependent Territories citizen, a British National (Overseas), a British Overseas citizen, a British subject or a British protected person within the meaning of the British Nationality Act 1981, or

    (b) an individual domiciled or resident in the United Kingdom or another country to which the relevant provisions of this Part extend, or

    (c) a body incorporated under the law of a part of the United Kingdom or of another country to which the relevant provisions of this Part extend.

(2) Where, or so far as, provision is made by Order under section 159 (application of this Part to countries to which it does not extend), a work also qualifies for copyright protection if at the material time the author was a citizen or subject of, an individual domiciled or resident in, or a body incorporated under the law of, a country to which the Order relates.

(3) A work of joint authorship qualifies for copyright protection if at the material time any of the authors satisfies the requirements of subsection (1) or (2); but where a work qualifies for copyright protection only under this section, only those authors who satisfy those requirements shall be taken into account for the purposes of—

    section 11(1) and (2) (first ownership of copyright; entitlement of author or author's employer),

    section 12(1) and (2) (duration of copyright; dependent on life of author unless work of unknown authorship), and section 9(4) (meaning of "unknown authorship") so far as it applies for the purposes of section 12(2), and

    section 57 (anonymous or pseudonymous works: acts permitted on assumptions as to expiry of copyright or death of author).

(4) The material time in relation to a literary, dramatic, musical or artistic work is—

    (a) in the case of an unpublished work, when the work was made or, if the making of the work extended over a period, a substantial part of that period;

    (b) in the case of a published work, when the work was first published or, if the author had died before that time, immediately before his death.

(5) The material time in relation to other descriptions of work is as follows—

    (a) in the case of a sound recording or film, when it was made;

    (b) in the case of a broadcast, when the broadcast was made;

    (c) in the case of a cable programme, when the programme was included in a cable programme service;

    (d) in the case of the typographical arrangement of a published edition, when the edition was first published.

155.—(1) A literary, dramatic, musical or artistic work, a sound recording or film, or the typographical arrangement of a published edition, qualifies for copyright protection if it is first published—

PART I
Qualification by reference to country of first publication.

    (a) in the United Kingdom, or

    (b) in another country to which the relevant provisions of this Part extend.

(2) Where, or so far as, provision is made by Order under section 159 (application of this Part to countries to which it does not extend), such a work also qualifies for copyright protection if it is first published in a country to which the Order relates.

(3) For the purposes of this section, publication in one country shall not be regarded as other than the first publication by reason of simultaneous publication elsewhere; and for this purpose publication elsewhere within the previous 30 days shall be treated as simultaneous.

156.—(1) A broadcast qualifies for copyright protection if it is made from, and a cable programme qualifies for copyright protection if it is sent from, a place in—

Qualification by reference to place of transmission.

    (a) the United Kingdom, or

    (b) another country to which the relevant provisions of this Part extend.

(2) Where, or so far as, provision is made by Order under section 159 (application of this Part to countries to which it does not extend), a broadcast or cable programme also qualifies for copyright protection if it is made from or, as the case may be, sent from a place in a country to which the Order relates.

### *Extent and application of this Part*

157.—(1) This Part extends to England and Wales, Scotland and Northern Ireland.

Countries to which this Part extends.

(2) Her Majesty may by Order in Council direct that this Part shall extend, subject to such exceptions and modifications as may be specified in the Order, to—

    (a) any of the Channel Islands,

    (b) the Isle of Man, or

    (c) any colony.

(3) That power includes power to extend, subject to such exceptions and modifications as may be specified in the Order, any Order in Council made under the following provisions of this Chapter.

(4) The legislature of a country to which this Part has been extended may modify or add to the provisions of this Part, in their operation as part of the law of that country, as the legislature may consider necessary to adapt the provisions to the circumstances of that country—

    (a) as regards procedure and remedies, or

    (b) as regards works qualifying for copyright protection by virtue of a connection with that country.

72          c. **48**          *Copyright, Designs and Patents*

PART I

1956 c. 74.
1911 c. 46.

(5) Nothing in this section shall be construed as restricting the extent of paragraph 36 of Schedule 1 (transitional provisions: dependent territories where the Copyright Act 1956 or the Copyright Act 1911 remains in force) in relation to the law of a dependent territory to which this Part does not extend.

Countries ceasing to be colonies.

**158.**—(1) The following provisions apply where a country to which this Part has been extended ceases to be a colony of the United Kingdom.

(2) As from the date on which it ceases to be a colony it shall cease to be regarded as a country to which this Part extends for the purposes of—

    (a) section 160(2)(a) (denial of copyright protection to citizens of countries not giving adequate protection to British works), and

    (b) sections 163 and 165 (Crown and Parliamentary copyright).

(3) But it shall continue to be treated as a country to which this Part extends for the purposes of sections 154 to 156 (qualification for copyright protection) until—

    (a) an Order in Council is made in respect of that country under section 159 (application of this Part to countries to which it does not extend), or

    (b) an Order in Council is made declaring that it shall cease to be so treated by reason of the fact that the provisions of this Part as part of the law of that country have been repealed or amended.

(4) A statutory instrument containing an Order in Council under subsection (3)(b) shall be subject to annulment in pursuance of a resolution of either House of Parliament.

Application of this Part to countries to which it does not extend.

**159.**—(1) Her Majesty may by Order in Council make provision for applying in relation to a country to which this Part does not extend any of the provisions of this Part specified in the Order, so as to secure that those provisions—

    (a) apply in relation to persons who are citizens or subjects of that country or are domiciled or resident there, as they apply to persons who are British citizens or are domiciled or resident in the United Kingdom, or

    (b) apply in relation to bodies incorporated under the law of that country as they apply in relation to bodies incorporated under the law of a part of the United Kingdom, or

    (c) apply in relation to works first published in that country as they apply in relation to works first published in the United Kingdom, or

    (d) apply in relation to broadcasts made from or cable programmes sent from that country as they apply in relation to broadcasts made from or cable programmes sent from the United Kingdom.

(2) An Order may make provision for all or any of the matters mentioned in subsection (1) and may—

    (a) apply any provisions of this Part subject to such exceptions and modifications as are specified in the Order; and

(b) direct that any provisions of this Part apply either generally or in relation to such classes of works, or other classes of case, as are specified in the Order.

PART I

(3) Except in the case of a Convention country or another member State of the European Economic Community, Her Majesty shall not make an Order in Council under this section in relation to a country unless satisfied that provision has been or will be made under the law of that country, in respect of the class of works to which the Order relates, giving adequate protection to the owners of copyright under this Part.

(4) In subsection (3) "Convention country" means a country which is a party to a Convention relating to copyright to which the United Kingdom is also a party.

(5) A statutory instrument containing an Order in Council under this section shall be subject to annulment in pursuance of a resolution of either House of Parliament.

**160.**—(1) If it appears to Her Majesty that the law of a country fails to give adequate protection to British works to which this section applies, or to one or more classes of such works, Her Majesty may make provision by Order in Council in accordance with this section restricting the rights conferred by this Part in relation to works of authors connected with that country.

Denial of copyright protection to citizens of countries not giving adequate protection to British works.

(2) An Order in Council under this section shall designate the country concerned and provide that, for the purposes specified in the Order, works first published after a date specified in the Order shall not be treated as qualifying for copyright protection by virtue of such publication if at that time the authors are—

(a) citizens or subjects of that country (not domiciled or resident in the United Kingdom or another country to which the relevant provisions of this Part extend), or

(b) bodies incorporated under the law of that country;

and the Order may make such provision for all the purposes of this Part or for such purposes as are specified in the Order, and either generally or in relation to such class of cases as are specified in the Order, having regard to the nature and extent of that failure referred to in subsection (1).

(3) This section applies to literary, dramatic, musical and artistic works, sound recordings and films; and "British works" means works of which the author was a qualifying person at the material time within the meaning of section 154.

(4) A statutory instrument containing an Order in Council under this section shall be subject to annulment in pursuance of a resolution of either House of Parliament.

*Supplementary*

**161.**—(1) For the purposes of this Part the territorial waters of the United Kingdom shall be treated as part of the United Kingdom.

Territorial waters and the continental shelf.

(2) This Part applies to things done in the United Kingdom sector of the continental shelf on a structure or vessel which is present there for purposes directly connected with the exploration of the sea bed or subsoil or the exploitation of their natural resources as it applies to things done in the United Kingdom.

74          c. **48**          *Copyright, Designs and Patents*

PART I
1964 c. 29.

(3) The United Kingdom sector of the continental shelf means the areas designated by order under section 1(7) of the Continental Shelf Act 1964.

British ships, aircraft and hovercraft.

**162.**—(1) This Part applies to things done on a British ship, aircraft or hovercraft as it applies to things done in the United Kingdom.

(2) In this section—

1988 c. 12.

"British ship" means a ship which is a British ship for the purposes of the Merchant Shipping Acts (see section 2 of the Merchant Shipping Act 1988) otherwise than by virtue of registration in a country outside the United Kingdom; and

"British aircraft" and "British hovercraft" mean an aircraft or hovercraft registered in the United Kingdom.

## CHAPTER X

### MISCELLANEOUS AND GENERAL

#### *Crown and Parliamentary copyright*

Crown copyright.

**163.**—(1) Where a work is made by Her Majesty or by an officer or servant of the Crown in the course of his duties—

(a) the work qualifies for copyright protection notwithstanding section 153(1) (ordinary requirement as to qualification for copyright protection), and

(b) Her Majesty is the first owner of any copyright in the work.

(2) Copyright in such a work is referred to in this Part as "Crown copyright", notwithstanding that it may be, or have been, assigned to another person.

(3) Crown copyright in a literary, dramatic, musical or artistic work continues to subsist—

(a) until the end of the period of 125 years from the end of the calendar year in which the work was made, or

(b) if the work is published commercially before the end of the period of 75 years from the end of the calendar year in which it was made, until the end of the period of 50 years from the end of the calendar year in which it was first so published.

(4) In the case of a work of joint authorship where one or more but not all of the authors are persons falling within subsection (1), this section applies only in relation to those authors and the copyright subsisting by virtue of their contribution to the work.

(5) Except as mentioned above, and subject to any express exclusion elsewhere in this Part, the provisions of this Part apply in relation to Crown copyright as to other copyright.

(6) This section does not apply to a work if, or to the extent that, Parliamentary copyright subsists in the work (see sections 165 and 166).

Copyright in Acts and Measures.

**164.**—(1) Her Majesty is entitled to copyright in every Act of Parliament or Measure of the General Synod of the Church of England.

(2) The copyright subsists from Royal Assent until the end of the period of 50 years from the end of the calendar year in which Royal Assent was given.

(3) References in this Part to Crown copyright (except in section 163) include copyright under this section; and, except as mentioned above, the provisions of this Part apply in relation to copyright under this section as to other Crown copyright.

(4) No other copyright, or right in the nature of copyright, subsists in an Act or Measure.

**165.**—(1) Where a work is made by or under the direction or control of the House of Commons or the House of Lords—

Parliamentary copyright.

- (a) the work qualifies for copyright protection notwithstanding section 153(1) (ordinary requirement as to qualification for copyright protection), and

- (b) the House by whom, or under whose direction or control, the work is made is the first owner of any copyright in the work, and if the work is made by or under the direction or control of both Houses, the two Houses are joint first owners of copyright.

(2) Copyright in such a work is referred to in this Part as "Parliamentary copyright", notwithstanding that it may be, or have been, assigned to another person.

(3) Parliamentary copyright in a literary, dramatic, musical or artistic work continues to subsist until the end of the period of 50 years from the end of the calendar year in which the work was made.

(4) For the purposes of this section, works made by or under the direction or control of the House of Commons or the House of Lords include—

- (a) any work made by an officer or employee of that House in the course of his duties, and

- (b) any sound recording, film, live broadcast or live cable programme of the proceedings of that House;

but a work shall not be regarded as made by or under the direction or control of either House by reason only of its being commissioned by or on behalf of that House.

(5) In the case of a work of joint authorship where one or more but not all of the authors are acting on behalf of, or under the direction or control of, the House of Commons or the House of Lords, this section applies only in relation to those authors and the copyright subsisting by virtue of their contribution to the work.

(6) Except as mentioned above, and subject to any express exclusion elsewhere in this Part, the provisions of this Part apply in relation to Parliamentary copyright as to other copyright.

(7) The provisions of this section also apply, subject to any exceptions or modifications specified by Order in Council, to works made by or under the direction or control of any other legislative body of a country to which this Part extends; and references in this Part to "Parliamentary copyright" shall be construed accordingly.

76          c. **48**          *Copyright, Designs and Patents*

PART I

(8) A statutory instrument containing an Order in Council under subsection (7) shall be subject to annulment in pursuance of a resolution of either House of Parliament.

Copyright in
Parliamentary
Bills.

**166.**—(1) Copyright in every Bill introduced into Parliament belongs, in accordance with the following provisions, to one or both of the Houses of Parliament.

(2) Copyright in a public Bill belongs in the first instance to the House into which the Bill is introduced, and after the Bill has been carried to the second House to both Houses jointly, and subsists from the time when the text of the Bill is handed in to the House in which it is introduced.

(3) Copyright in a private Bill belongs to both Houses jointly and subsists from the time when a copy of the Bill is first deposited in either House.

(4) Copyright in a personal Bill belongs in the first instance to the House of Lords, and after the Bill has been carried to the House of Commons to both Houses jointly, and subsists from the time when it is given a First Reading in the House of Lords.

(5) Copyright under this section ceases—

(a) on Royal Assent, or

(b) if the Bill does not receive Royal Assent, on the withdrawal or rejection of the Bill or the end of the Session:

Provided that, copyright in a Bill continues to subsist notwithstanding its rejection in any Session by the House of Lords if, by virtue of the Parliament Acts 1911 and 1949, it remains possible for it to be presented for Royal Assent in that Session.

(6) References in this Part to Parliamentary copyright (except in section 165) include copyright under this section; and, except as mentioned above, the provisions of this Part apply in relation to copyright under this section as to other Parliamentary copyright.

(7) No other copyright, or right in the nature of copyright, subsists in a Bill after copyright has once subsisted under this section; but without prejudice to the subsequent operation of this section in relation to a Bill which, not having passed in one Session, is reintroduced in a subsequent Session.

Houses of
Parliament:
supplementary
provisions with
respect to
copyright.

**167.**—(1) For the purposes of holding, dealing with and enforcing copyright, and in connection with all legal proceedings relating to copyright, each House of Parliament shall be treated as having the legal capacities of a body corporate, which shall not be affected by a prorogation or dissolution.

(2) The functions of the House of Commons as owner of copyright shall be exercised by the Speaker on behalf of the House; and if so authorised by the Speaker, or in case of a vacancy in the office of Speaker, those functions may be discharged by the Chairman of Ways and Means or a Deputy Chairman.

(3) For this purpose a person who on the dissolution of Parliament was Speaker of the House of Commons, Chairman of Ways and Means or a Deputy Chairman may continue to act until the corresponding appointment is made in the next Session of Parliament.

(4) The functions of the House of Lords as owner of copyright shall be exercised by the Clerk of the Parliaments on behalf of the House; and if so authorised by him, or in case of a vacancy in the office of Clerk of the Parliaments, those functions may be discharged by the Clerk Assistant or the Reading Clerk.

PART I

(5) Legal proceedings relating to copyright—

    (a) shall be brought by or against the House of Commons in the name of "The Speaker of the House of Commons"; and

    (b) shall be brought by or against the House of Lords in the name of "The Clerk of the Parliaments".

### *Other miscellaneous provisions*

**168.**—(1) Where an original literary, dramatic, musical or artistic work—

Copyright vesting in certain international organisations.

    (a) is made by an officer or employee of, or is published by, an international organisation to which this section applies, and

    (b) does not qualify for copyright protection under section 154 (qualification by reference to author) or section 155 (qualification by reference to country of first publication),

copyright nevertheless subsists in the work by virtue of this section and the organisation is first owner of that copyright.

(2) The international organisations to which this section applies are those as to which Her Majesty has by Order in Council declared that it is expedient that this section should apply.

(3) Copyright of which an international organisation is first owner by virtue of this section continues to subsist until the end of the period of 50 years from the end of the calendar year in which the work was made or such longer period as may be specified by Her Majesty by Order in Council for the purpose of complying with the international obligations of the United Kingdom.

(4) An international organisation to which this section applies shall be deemed to have, and to have had at all material times, the legal capacities of a body corporate for the purpose of holding, dealing with and enforcing copyright and in connection with all legal proceedings relating to copyright.

(5) A statutory instrument containing an Order in Council under this section shall be subject to annulment in pursuance of a resolution of either House of Parliament.

**169.**—(1) Where in the case of an unpublished literary, dramatic, musical or artistic work of unknown authorship there is evidence that the author (or, in the case of a joint work, any of the authors) was a qualifying individual by connection with a country outside the United Kingdom, it shall be presumed until the contrary is proved that he was such a qualifying individual and that copyright accordingly subsists in the work, subject to the provisions of this Part.

Folklore, &c.: anonymous unpublished works.

(2) If under the law of that country a body is appointed to protect and enforce copyright in such works, Her Majesty may by Order in Council designate that body for the purposes of this section.

78          c. **48**          *Copyright, Designs and Patents*

Part I

(3) A body so designated shall be recognised in the United Kingdom as having authority to do in place of the copyright owner anything, other than assign copyright, which it is empowered to do under the law of that country; and it may, in particular, bring proceedings in its own name.

(4) A statutory instrument containing an Order in Council under this section shall be subject to annulment in pursuance of a resolution of either House of Parliament.

(5) In subsection (1) a "qualifying individual" means an individual who at the material time (within the meaning of section 154) was a person whose works qualified under that section for copyright protection.

(6) This section does not apply if there has been an assignment of copyright in the work by the author of which notice has been given to the designated body; and nothing in this section affects the validity of an assignment of copyright made, or licence granted, by the author or a person lawfully claiming under him.

*Transitional provisions and savings*

Transitional provisions and savings.

**170.** Schedule 1 contains transitional provisions and savings relating to works made, and acts or events occurring, before the commencement of this Part, and otherwise with respect to the operation of the provisions of this Part.

Rights and privileges under other enactments or the common law.

**171.**—(1) Nothing in this Part affects—

(a) any right or privilege of any person under any enactment (except where the enactment is expressly repealed, amended or modified by this Act);

(b) any right or privilege of the Crown subsisting otherwise than under an enactment;

(c) any right or privilege of either House of Parliament;

(d) the right of the Crown or any person deriving title from the Crown to sell, use or otherwise deal with articles forfeited under the laws relating to customs and excise;

(e) the operation of any rule of equity relating to breaches of trust or confidence.

(2) Subject to those savings, no copyright or right in the nature of copyright shall subsist otherwise than by virtue of this Part or some other enactment in that behalf.

(3) Nothing in this Part affects any rule of law preventing or restricting the enforcement of copyright, on grounds of public interest or otherwise.

(4) Nothing in this Part affects any right of action or other remedy, whether civil or criminal, available otherwise than under this Part in respect of acts infringing any of the rights conferred by Chapter IV (moral rights).

(5) The savings in subsection (1) have effect subject to section 164(4) and section 166(7) (copyright in Acts, Measures and Bills: exclusion of other rights in the nature of copyright).

*Interpretation*                                                      PART I

172.—(1) This Part restates and amends the law of copyright, that is,   General
the provisions of the Copyright Act 1956, as amended.   provisions as to
  construction.

(2) A provision of this Part which corresponds to a provision of the   1956 c. 74.
previous law shall not be construed as departing from the previous law
merely because of a change of expression.

(3) Decisions under the previous law may be referred to for the
purpose of establishing whether a provision of this Part departs from the
previous law, or otherwise for establishing the true construction of this
Part.

173.—(1) Where different persons are (whether in consequence of a   Construction of
partial assignment or otherwise) entitled to different aspects of copyright   references to
in a work, the copyright owner for any purpose of this Part is the person   copyright owner.
who is entitled to the aspect of copyright relevant for that purpose.

(2) Where copyright (or any aspect of copyright) is owned by more
than one person jointly, references in this Part to the copyright owner are
to all the owners, so that, in particular, any requirement of the licence of
the copyright owner requires the licence of all of them.

174.—(1) The expression "educational establishment" in a provision of   Meaning of
this Part means—   "educational
  establishment"
  and related
  (a) any school, and   expressions.

  (b) any other description of educational establishment specified for
     the purposes of this Part, or that provision, by order of the
     Secretary of State.

(2) The Secretary of State may by order provide that the provisions of
this Part relating to educational establishments shall apply, with such
modifications and adaptations as may be specified in the order, in relation
to teachers who are employed by a local education authority to give
instruction elsewhere to pupils who are unable to attend an educational
establishment.

(3) In subsection (1)(a) "school"—

  (a) in relation to England and Wales, has the same meaning as in the
     Education Act 1944;   1944 c. 31.

  (b) in relation to Scotland, has the same meaning as in the
     Education (Scotland) Act 1962, except that it includes an   1962 c. 47.
     approved school within the meaning of the Social Work   1968 c. 49.
     (Scotland) Act 1968; and

  (c) in relation to Northern Ireland, has the same meaning as in the
     Education and Libraries (Northern Ireland) Order 1986.   S.I. 1986/594
      (N.I.3).

(4) An order under subsection (1)(b) may specify a description of
educational establishment by reference to the instruments from time to
time in force under any enactment specified in the order.

(5) In relation to an educational establishment the expressions
"teacher" and "pupil" in this Part include, respectively, any person who
gives and any person who receives instruction.

80        c. **48**            *Copyright, Designs and Patents*

(6) References in this Part to anything being done "on behalf of" an educational establishment are to its being done for the purposes of that establishment by any person.

(7) An order under this section shall be made by statutory instrument which shall be subject to annulment in pursuance of a resolution of either House of Parliament.

Meaning of
publication and
commercial
publication.

175.—(1) In this Part "publication", in relation to a work—

(a) means the issue of copies to the public, and

(b) includes, in the case of a literary, dramatic, musical or artistic work, making it available to the public by means of an electronic retrieval system;

and related expressions shall be construed accordingly.

(2) In this Part "commercial publication", in relation to a literary, dramatic, musical or artistic work means—

(a) issuing copies of the work to the public at a time when copies made in advance of the receipt of orders are generally available to the public, or

(b) making the work available to the public by means of an electronic retrieval system;

and related expressions shall be construed accordingly.

(3) In the case of a work of architecture in the form of a building, or an artistic work incorporated in a building, construction of the building shall be treated as equivalent to publication of the work.

(4) The following do not constitute publication for the purposes of this Part and references to commercial publication shall be construed accordingly—

(a) in the case of a literary, dramatic or musical work—

(i) the performance of the work, or

(ii) the broadcasting of the work or its inclusion in a cable programme service (otherwise than for the purposes of an electronic retrieval system);

(b) in the case of an artistic work—

(i) the exhibition of the work,

(ii) the issue to the public of copies of a graphic work representing, or of photographs of, a work of architecture in the form of a building or a model for a building, a sculpture or a work of artistic craftsmanship,

(iii) the issue to the public of copies of a film including the work, or

(iv) the broadcasting of the work or its inclusion in a cable programme service (otherwise than for the purposes of an electronic retrieval system);

(c) in the case of a sound recording or film—

(i) the work being played or shown in public, or

(ii) the broadcasting of the work or its inclusion in a cable programme service.

(5) References in this Part to publication or commercial publication do not include publication which is merely colourable and not intended to satisfy the reasonable requirements of the public.

PART I

(6) No account shall be taken for the purposes of this section of any unauthorised act.

**176.**—(1) The requirement in the following provisions that an instrument be signed by or on behalf of a person is also satisfied in the case of a body corporate by the affixing of its seal—

Requirement of signature: application in relation to body corporate.

> section 78(3)(b) (assertion by licensor of right to identification of author in case of public exhibition of copy made in pursuance of the licence),
>
> section 90(3) (assignment of copyright),
>
> section 91(1) (assignment of future copyright),
>
> section 92(1) (grant of exclusive licence).

(2) The requirement in the following provisions that an instrument be signed by a person is satisfied in the case of a body corporate by signature on behalf of the body or by the affixing of its seal—

> section 78(2)(b) (assertion by instrument in writing of right to have author identified),
>
> section 87(2) (waiver of moral rights).

**177.** In the application of this Part to Scotland—

Adaptation of expressions for Scotland.

> "account of profits" means accounting and payment of profits;
>
> "accounts" means count, reckoning and payment;
>
> "assignment" means assignation;
>
> "costs" means expenses;
>
> "defendant" means defender;
>
> "delivery up" means delivery;
>
> "estoppel" means personal bar;
>
> "injunction" means interdict;
>
> "interlocutory relief" means interim remedy; and
>
> "plaintiff" means pursuer.

**178.** In this Part—

Minor definitions.

> "article", in the context of an article in a periodical, includes an item of any description;
>
> "business" includes a trade or profession;
>
> "collective work" means—
>
>> (a) a work of joint authorship, or
>>
>> (b) a work in which there are distinct contributions by different authors or in which works or parts of works of different authors are incorporated;

"computer-generated", in relation to a work, means that the work is generated by computer in circumstances such that there is no human author of the work;

"country" includes any territory;

"the Crown" includes the Crown in right of Her Majesty's Government in Northern Ireland or in any country outside the United Kingdom to which this Part extends;

"electronic" means actuated by electric, magnetic, electro-magnetic, electro-chemical or electro-mechanical energy, and "in electronic form" means in a form usable only by electronic means;

"employed", "employee", "employer" and "employment" refer to employment under a contract of service or of apprenticeship;

"facsimile copy" includes a copy which is reduced or enlarged in scale;

"international organisation" means an organisation the members of which include one or more states;

"judicial proceedings" includes proceedings before any court, tribunal or person having authority to decide any matter affecting a person's legal rights or liabilities;

"parliamentary proceedings" includes proceedings of the Northern Ireland Assembly or of the European Parliament;

"rental" means any arrangement under which a copy of a work is made available—

(a) for payment (in money or money's worth), or

(b) in the course of a business, as part of services or amenities for which payment is made,

on terms that it will or may be returned;

"reprographic copy" and "reprographic copying" refer to copying by means of a reprographic process;

"reprographic process" means a process—

(a) for making facsimile copies, or

(b) involving the use of an appliance for making multiple copies,

and includes, in relation to a work held in electronic form, any copying by electronic means, but does not include the making of a film or sound recording;

"sufficient acknowledgement" means an acknowledgement identifying the work in question by its title or other description, and identifying the author unless—

(a) in the case of a published work, it is published anonymously;

(b) in the case of an unpublished work, it is not possible for a person to ascertain the identity of the author by reasonable inquiry;

"sufficient disclaimer", in relation to an act capable of infringing the right conferred by section 80 (right to object to derogatory treatment of work), means a clear and reasonably prominent indication—

(a) given at the time of the act, and

(b) if the author or director is then identified, appearing along with the identification,

that the work has been subjected to treatment to which the author or director has not consented;

"telecommunications system" means a system for conveying visual images, sounds or other information by electronic means;

"typeface" includes an ornamental motif used in printing;

"unauthorised", as regards anything done in relation to a work, means done otherwise than—

(a) by or with the licence of the copyright owner, or

(b) if copyright does not subsist in the work, by or with the licence of the author or, in a case where section 11(2) would have applied, the author's employer or, in either case, persons lawfully claiming under him, or

(c) in pursuance of section 48 (copying, &c. of certain material by the Crown);

"wireless telegraphy" means the sending of electro-magnetic energy over paths not provided by a material substance constructed or arranged for that purpose;

"writing" includes any form of notation or code, whether by hand or otherwise and regardless of the method by which, or medium in or on which, it is recorded, and "written" shall be construed accordingly.

**179.** The following Table shows provisions defining or otherwise explaining expressions used in this Part (other than provisions defining or explaining an expression used only in the same section)—

*Index of defined expressions.*

| | |
|---|---|
| account of profits and accounts (in Scotland) | section 177 |
| acts restricted by copyright | section 16(1) |
| adaptation | section 21(3) |
| archivist (in sections 37 to 43) | section 37(6) |
| article (in a periodical) | section 178 |
| artistic work | section 4(1) |
| assignment (in Scotland) | section 177 |
| author | sections 9 and 10(3) |
| broadcast (and related expressions) | section 6 |
| building | section 4(2) |
| business | section 178 |
| cable programme, cable programme service (and related expressions) | section 7 |
| collective work | section 178 |
| commencement (in Schedule 1) | paragraph 1(2) of that Schedule |
| commercial publication | section 175 |
| computer-generated | section 178 |
| copy and copying | section 17 |
| copyright (generally) | section 1 |
| copyright (in Schedule 1) | paragraph 2(2) of that Schedule |

84      c. **48**        *Copyright, Designs and Patents*

| | |
|---|---|
| copyright owner | sections 101(2) and 173 |
| Copyright Tribunal | section 145 |
| copyright work | section 1(2) |
| costs (in Scotland) | section 177 |
| country | section 178 |
| the Crown | section 178 |
| Crown copyright | sections 163(2) and 164(3) |
| defendant (in Scotland) | section 177 |
| delivery up (in Scotland) | section 177 |
| dramatic work | section 3(1) |
| educational establishment | sections 174(1) to (4) |
| electronic and electronic form | section 178 |
| employed, employee, employer and employment | section 178 |
| exclusive licence | section 92(1) |
| existing works (in Schedule 1) | paragraph 1(3) of that Schedule |
| facsimile copy | section 178 |
| film | section 5 |
| future copyright | section 91(2) |
| general licence (in sections 140 and 141) | section 140(7) |
| graphic work | section 4(2) |
| infringing copy | section 27 |
| injunction (in Scotland) | section 177 |
| interlocutory relief (in Scotland) | section 177 |
| international organisation | section 178 |
| issue of copies to the public | section 18(2) |
| joint authorship (work of) | sections 10(1) and (2) |
| judicial proceedings | section 178 |
| librarian (in sections 37 to 43) | section 37(6) |
| licence (in sections 125 to 128) | section 124 |
| licence of copyright owner | sections 90(4), 91(3) and 173 |
| licensing body (in Chapter VII) | section 116(2) |
| licensing scheme (generally) | section 116(1) |
| licensing scheme (in sections 118 to 121) | section 117 |
| literary work | section 3(1) |
| made (in relation to a literary, dramatic or musical work) | section 3(2) |
| musical work | section 3(1) |
| the new copyright provisions (in Schedule 1) | paragraph 1(1) of that Schedule |
| the 1911 Act (in Schedule 1) | paragraph 1(1) of that Schedule |
| the 1956 Act (in Schedule 1) | paragraph 1(1) of that Schedule |
| on behalf of (in relation to an educational establishment) | section 174(5) |
| Parliamentary copyright | sections 165(2) and (7) and 166(6) |
| parliamentary proceedings | section 178 |
| performance | section 19(2) |
| photograph | section 4(2) |
| plaintiff (in Scotland) | section 177 |
| prescribed conditions (in sections 38 to 43) | section 37(1)(b) |
| prescribed library or archive (in sections 38 to 43) | section 37(1)(a) |

| | | |
|---|---|---|
| programme (in the context of broadcasting) | section 6(3) | PART I |
| prospective owner (of copyright) | section 91(2) | |
| publication and related expressions | section 175 | |
| published edition (in the context of copyright in the typographical arrangement) | section 8 | |
| pupil | section 174(5) | |
| rental | section 178 | |
| reprographic copies and reprographic copying | section 178 | |
| reprographic process | section 178 | |
| sculpture | section 4(2) | |
| signed | section 176 | |
| sound recording | section 5 | |
| sufficient acknowledgement | section 178 | |
| sufficient disclaimer | section 178 | |
| teacher | section 174(5) | |
| telecommunications system | section 178 | |
| typeface | section 178 | |
| unauthorised (as regards things done in relation to a work) | section 178 | |
| unknown (in relation to the author of a work) | section 9(5) | |
| unknown authorship (work of) | section 9(4) | |
| wireless telegraphy | section 178 | |
| work (in Schedule 1) | paragraph 2(1) of that Schedule | |
| work of more than one author (in Chapter VII) | section 116(4) | |
| writing and written | section 178 | |

## PART II

### RIGHTS IN PERFORMANCES

#### *Introductory*

**180.**—(1) This Part confers rights—

Rights conferred on performers and persons having recording rights.

(a) on a performer, by requiring his consent to the exploitation of his performances (see sections 181 to 184), and

(b) on a person having recording rights in relation to a performance, in relation to recordings made without his consent or that of the performer (see sections 185 to 188),

and creates offences in relation to dealing with or using illicit recordings and certain other related acts (see sections 198 and 201).

(2) In this Part—

"performance" means—

(a) a dramatic performance (which includes dance and mime),

(b) a musical performance,

(c) a reading or recitation of a literary work, or

(d) a performance of a variety act or any similar presentation,

which is, or so far as it is, a live performance given by one or more individuals; and

86       c. **48**       *Copyright, Designs and Patents*

PART II

"recording", in relation to a performance, means a film or sound recording—

(a) made directly from the live performance,

(b) made from a broadcast of, or cable programme including, the performance, or

(c) made, directly or indirectly, from another recording of the performance.

(3) The rights conferred by this Part apply in relation to performances taking place before the commencement of this Part; but no act done before commencement, or in pursuance of arrangements made before commencement, shall be regarded as infringing those rights.

(4) The rights conferred by this Part are independent of—

(a) any copyright in, or moral rights relating to, any work performed or any film or sound recording of, or broadcast or cable programme including, the performance, and

(b) any other right or obligation arising otherwise than under this Part.

*Performers' rights*

Qualifying performances.

**181.** A performance is a qualifying performance for the purposes of the provisions of this Part relating to performers' rights if it is given by a qualifying individual (as defined in section 206) or takes place in a qualifying country (as so defined).

Consent required for recording or live transmission of performance.

**182.**—(1) A performer's rights are infringed by a person who, without his consent—

(a) makes, otherwise than for his private and domestic use, a recording of the whole or any substantial part of a qualifying performance, or

(b) broadcasts live, or includes live in a cable programme service, the whole or any substantial part of a qualifying performance.

(2) In an action for infringement of a performer's rights brought by virtue of this section damages shall not be awarded against a defendant who shows that at the time of the infringement he believed on reasonable grounds that consent had been given.

Infringement of performer's rights by use of recording made without consent.

**183.** A performer's rights are infringed by a person who, without his consent—

(a) shows or plays in public the whole or any substantial part of a qualifying performance, or

(b) broadcasts or includes in a cable programme service the whole or any substantial part of a qualifying performance,

by means of a recording which was, and which that person knows or has reason to believe was, made without the performer's consent.

Infringement of performer's rights by importing, possessing or dealing with illicit recording.

**184.**—(1) A performer's rights are infringed by a person who, without his consent—

(a) imports into the United Kingdom otherwise than for his private and domestic use, or

(b) in the course of a business possesses, sells or lets for hire, offers or exposes for sale or hire, or distributes,

PART II

a recording of a qualifying performance which is, and which that person knows or has reason to believe is, an illicit recording.

(2) Where in an action for infringement of a performer's rights brought by virtue of this section a defendant shows that the illicit recording was innocently acquired by him or a predecessor in title of his, the only remedy available against him in respect of the infringement is damages not exceeding a reasonable payment in respect of the act complained of.

(3) In subsection (2) "innocently acquired" means that the person acquiring the recording did not know and had no reason to believe that it was an illicit recording.

### Rights of person having recording rights

**185.**—(1) In this Part an "exclusive recording contract" means a contract between a performer and another person under which that person is entitled to the exclusion of all other persons (including the performer) to make recordings of one or more of his performances with a view to their commercial exploitation.

Exclusive recording contracts and persons having recording rights.

(2) References in this Part to a "person having recording rights", in relation to a performance, are (subject to subsection (3)) to a person—

(a) who is party to and has the benefit of an exclusive recording contract to which the performance is subject, or

(b) to whom the benefit of such a contract has been assigned,

and who is a qualifying person.

(3) If a performance is subject to an exclusive recording contract but the person mentioned in subsection (2) is not a qualifying person, references in this Part to a "person having recording rights" in relation to the performance are to any person—

(a) who is licensed by such a person to make recordings of the performance with a view to their commercial exploitation, or

(b) to whom the benefit of such a licence has been assigned,

and who is a qualifying person.

(4) In this section "with a view to commercial exploitation" means with a view to the recordings being sold or let for hire, or shown or played in public.

**186.**—(1) A person infringes the rights of a person having recording rights in relation to a performance who, without his consent or that of the performer, makes a recording of the whole or any substantial part of the performance, otherwise than for his private and domestic use.

Consent required for recording of performance subject to exclusive contract.

(2) In an action for infringement of those rights brought by virtue of this section damages shall not be awarded against a defendant who shows that at the time of the infringement he believed on reasonable grounds that consent had been given.

88        c. **48**        *Copyright, Designs and Patents*

PART II
Infringement of
recording rights
by use of
recording made
without consent.

**187.**—(1) A person infringes the rights of a person having recording rights in relation to a performance who, without his consent or, in the case of a qualifying performance, that of the performer—

(a) shows or plays in public the whole or any substantial part of the performance, or

(b) broadcasts or includes in a cable programme service the whole or any substantial part of the performance,

by means of a recording which was, and which that person knows or has reason to believe was, made without the appropriate consent.

(2) The reference in subsection (1) to "the appropriate consent" is to the consent of—

(a) the performer, or

(b) the person who at the time the consent was given had recording rights in relation to the performance (or, if there was more than one such person, of all of them).

Infringement of
recording rights
by importing,
possessing or
dealing with illicit
recording.

**188.**—(1) A person infringes the rights of a person having recording rights in relation to a performance who, without his consent or, in the case of a qualifying performance, that of the performer—

(a) imports into the United Kingdom otherwise than for his private and domestic use, or

(b) in the course of a business possesses, sells or lets for hire, offers or exposes for sale or hire, or distributes,

a recording of the performance which is, and which that person knows or has reason to believe is, an illicit recording.

(2) Where in an action for infringement of those rights brought by virtue of this section a defendant shows that the illicit recording was innocently acquired by him or a predecessor in title of his, the only remedy available against him in respect of the infringement is damages not exceeding a reasonable payment in respect of the act complained of.

(3) In subsection (2) "innocently acquired" means that the person acquiring the recording did not know and had no reason to believe that it was an illicit recording.

### Exceptions to rights conferred

Acts permitted
notwithstanding
rights conferred
by this Part.

**189.** The provisions of Schedule 2 specify acts which may be done notwithstanding the rights conferred by this Part, being acts which correspond broadly to certain of those specified in Chapter III of Part I (acts permitted notwithstanding copyright).

Power of tribunal
to give consent on
behalf of
performer in
certain cases.

**190.**—(1) The Copyright Tribunal may, on the application of a person wishing to make a recording from a previous recording of a performance, give consent in a case where—

(a) the identity or whereabouts of a performer cannot be ascertained by reasonable inquiry, or

(b) a performer unreasonably withholds his consent.

(2) Consent given by the Tribunal has effect as consent of the performer for the purposes of—

(a) the provisions of this Part relating to performers' rights, and

(b) section 198(3)(a) (criminal liability: sufficient consent in relation to qualifying performances),

and may be given subject to any conditions specified in the Tribunal's order.

(3) The Tribunal shall not give consent under subsection (1)(a) except after the service or publication of such notices as may be required by rules made under section 150 (general procedural rules) or as the Tribunal may in any particular case direct.

(4) The Tribunal shall not give consent under subsection (1)(b) unless satisfied that the performer's reasons for withholding consent do not include the protection of any legitimate interest of his; but it shall be for the performer to show what his reasons are for withholding consent, and in default of evidence as to his reasons the Tribunal may draw such inferences as it thinks fit.

(5) In any case the Tribunal shall take into account the following factors—

(a) whether the original recording was made with the performer's consent and is lawfully in the possession or control of the person proposing to make the further recording;

(b) whether the making of the further recording is consistent with the obligations of the parties to the arrangements under which, or is otherwise consistent with the purposes for which, the original recording was made.

(6) Where the Tribunal gives consent under this section it shall, in default of agreement between the applicant and the performer, make such order as it thinks fit as to the payment to be made to the performer in consideration of consent being given.

### Duration and transmission of rights; consent

**191.** The rights conferred by this Part continue to subsist in relation to a performance until the end of the period of 50 years from the end of the calendar year in which the performance takes place.

Duration of rights.

**192.**—(1) The rights conferred by this Part are not assignable or transmissible, except to the extent that performers' rights are transmissible in accordance with the following provisions.

Transmission of rights.

(2) On the death of a person entitled to performer's rights—

(a) the rights pass to such person as he may by testamentary disposition specifically direct, and

(b) if or to the extent that there is no such direction, the rights are exercisable by his personal representatives;

and references in this Part to the performer, in the context of the person having performers' rights, shall be construed as references to the person for the time being entitled to exercise those rights.

(3) Where by virtue of subsection (2)(a) a right becomes exercisable by more than one person, it is exercisable by each of them independently of the other or others.

90  c. **48**  *Copyright, Designs and Patents*

PART II

(4) The above provisions do not affect section 185(2)(b) or (3)(b), so far as those provisions confer rights under this Part on a person to whom the benefit of a contract or licence is assigned.

(5) Any damages recovered by personal representatives by virtue of this section in respect of an infringement after a person's death shall devolve as part of his estate as if the right of action had subsisted and been vested in him immediately before his death.

Consent.

**193.**—(1) Consent for the purposes of this Part may be given in relation to a specific performance, a specified description of performances or performances generally, and may relate to past or future performances.

(2) A person having recording rights in a performance is bound by any consent given by a person through whom he derives his rights under the exclusive recording contract or licence in question, in the same way as if the consent had been given by him.

(3) Where a right conferred by this Part passes to another person, any consent binding on the person previously entitled binds the person to whom the right passes in the same way as if the consent had been given by him.

### *Remedies for infringement*

Infringement actionable as breach of statutory duty.

**194.** An infringement of any of the rights conferred by this Part is actionable by the person entitled to the right as a breach of statutory duty.

Order for delivery up.

**195.**—(1) Where a person has in his possession, custody or control in the course of a business an illicit recording of a performance, a person having performer's rights or recording rights in relation to the performance under this Part may apply to the court for an order that the recording be delivered up to him or to such other person as the court may direct.

(2) An application shall not be made after the end of the period specified in section 203; and no order shall be made unless the court also makes, or it appears to the court that there are grounds for making, an order under section 204 (order as to disposal of illicit recording).

(3) A person to whom a recording is delivered up in pursuance of an order under this section shall, if an order under section 204 is not made, retain it pending the making of an order, or the decision not to make an order, under that section.

(4) Nothing in this section affects any other power of the court.

Right to seize illicit recordings.

**196.**—(1) An illicit recording of a performance which is found exposed or otherwise immediately available for sale or hire, and in respect of which a person would be entitled to apply for an order under section 195, may be seized and detained by him or a person authorised by him.

The right to seize and detain is exercisable subject to the following conditions and is subject to any decision of the court under section 204 (order as to disposal of illicit recording).

(2) Before anything is seized under this section notice of the time and place of the proposed seizure must be given to a local police station.

(3) A person may for the purpose of exercising the right conferred by this section enter premises to which the public have access but may not seize anything in the possession, custody or control of a person at a permanent or regular place of business of his and may not use any force.

(4) At the time when anything is seized under this section there shall be left at the place where it was seized a notice in the prescribed form containing the prescribed particulars as to the person by whom or on whose authority the seizure is made and the grounds on which it is made.

(5) In this section—

"premises" includes land, buildings, fixed or moveable structures, vehicles, vessels, aircraft and hovercraft; and

"prescribed" means prescribed by order of the Secretary of State.

(6) An order of the Secretary of State under this section shall be made by statutory instrument which shall be subject to annulment in pursuance of a resolution of either House of Parliament.

**197.**—(1) In this Part "illicit recording", in relation to a performance, shall be construed in accordance with this section.

Meaning of "illicit recording".

(2) For the purposes of a performer's rights, a recording of the whole or any substantial part of a performance of his is an illicit recording if it is made, otherwise than for private purposes, without his consent.

(3) For the purposes of the rights of a person having recording rights, a recording of the whole or any substantial part of a performance subject to the exclusive recording contract is an illicit recording if it is made, otherwise than for private purposes, without his consent or that of the performer.

(4) For the purposes of sections 198 and 199 (offences and orders for delivery up in criminal proceedings), a recording is an illicit recording if it is an illicit recording for the purposes mentioned in subsection (2) or subsection (3).

(5) In this Part "illicit recording" includes a recording falling to be treated as an illicit recording by virtue of any of the following provisions of Schedule 2—

paragraph 4(3) (recordings made for purposes of instruction or examination),

paragraph 6(2) (recordings made by educational establishments for educational purposes),

paragraph 12(2) (recordings of performance in electronic form retained on transfer of principal recording), or

paragraph 16(3) (recordings made for purposes of broadcast or cable programme),

but otherwise does not include a recording made in accordance with any of the provisions of that Schedule.

(6) It is immaterial for the purposes of this section where the recording was made.

92          c. **48**            *Copyright, Designs and Patents*

*Offences*

Criminal liability
for making,
dealing with or
using illicit
recordings.

**198.**—(1) A person commits an offence who without sufficient consent—

(a) makes for sale or hire, or

(b) imports into the United Kingdom otherwise than for his private and domestic use, or

(c) possesses in the course of a business with a view to committing any act infringing the rights conferred by this Part, or

(d) in the course of a business—

(i) sells or lets for hire, or

(ii) offers or exposes for sale or hire, or

(iii) distributes,

a recording which is, and which he knows or has reason to believe is, an illicit recording.

(2) A person commits an offence who causes a recording of a performance made without sufficient consent to be—

(a) shown or played in public, or

(b) broadcast or included in a cable programme service,

thereby infringing any of the rights conferred by this Part, if he knows or has reason to believe that those rights are thereby infringed.

(3) In subsections (1) and (2) "sufficient consent" means—

(a) in the case of a qualifying performance, the consent of the performer, and

(b) in the case of a non-qualifying performance subject to an exclusive recording contract—

(i) for the purposes of subsection (1)(a) (making of recording), the consent of the performer or the person having recording rights, and

(ii) for the purposes of subsection (1)(b), (c) and (d) and subsection (2) (dealing with or using recording), the consent of the person having recording rights.

The references in this subsection to the person having recording rights are to the person having those rights at the time the consent is given or, if there is more than one such person, to all of them.

(4) No offence is committed under subsection (1) or (2) by the commission of an act which by virtue of any provision of Schedule 2 may be done without infringing the rights conferred by this Part.

(5) A person guilty of an offence under subsection (1)(a), (b) or (d)(iii) is liable—

(a) on summary conviction to imprisonment for a term not exceeding six months or a fine not exceeding the statutory maximum, or both;

(b) on conviction on indictment to a fine or imprisonment for a term not exceeding two years, or both.

(6) A person guilty of any other offence under this section is liable on summary conviction to a fine not exceeding level 5 on the standard scale or imprisonment for a term not exceeding six months, or both.

199.—(1) The court before which proceedings are brought against a person for an offence under section 198 may, if satisfied that at the time of his arrest or charge he had in his possession, custody or control in the course of a business an illicit recording of a performance, order that it be delivered up to a person having performers' rights or recording rights in relation to the performance or to such other person as the court may direct.

PART II
Order for delivery up in criminal proceedings.

(2) For this purpose a person shall be treated as charged with an offence—

    (a) in England, Wales and Northern Ireland, when he is orally charged or is served with a summons or indictment;

    (b) in Scotland, when he is cautioned, charged or served with a complaint or indictment.

(3) An order may be made by the court of its own motion or on the application of the prosecutor (or, in Scotland, the Lord Advocate or procurator-fiscal), and may be made whether or not the person is convicted of the offence, but shall not be made—

    (a) after the end of the period specified in section 203 (period after which remedy of delivery up not available), or

    (b) if it appears to the court unlikely that any order will be made under section 204 (order as to disposal of illicit recording).

(4) An appeal lies from an order made under this section by a magistrates' court—

    (a) in England and Wales, to the Crown Court, and

    (b) in Northern Ireland, to the county court;

and in Scotland, where an order has been made under this section, the person from whose possession, custody or control the illicit recording has been removed may, without prejudice to any other form of appeal under any rule of law, appeal against that order in the same manner as against sentence.

(5) A person to whom an illicit recording is delivered up in pursuance of an order under this section shall retain it pending the making of an order, or the decision not to make an order, under section 204.

(6) Nothing in in this section affects the powers of the court under section 43 of the Powers of Criminal Courts Act 1973, section 223 or 436 of the Criminal Procedure (Scotland) Act 1975 or Article 7 of the Criminal Justice (Northern Ireland) Order 1980 (general provisions as to forfeiture in criminal proceedings).

1973 c. 62.
1975 c. 21.
S.I. 1980/704
(N.I.6).

200.—(1) Where a justice of the peace (in Scotland, a sheriff or justice of the peace) is satisfied by information on oath given by a constable (in Scotland, by evidence on oath) that there are reasonable grounds for believing—

Search warrants.

    (a) that an offence under section 198(1)(a), (b) or (d)(iii) (offences of making, importing or distributing illicit recordings) has been or is about to be committed in any premises, and

    (b) that evidence that such an offence has been or is about to be committed is in those premises,

he may issue a warrant authorising a constable to enter and search the premises, using such reasonable force as is necessary.

94        c. **48**        *Copyright, Designs and Patents*

PART II

1984 c. 60.

(2) The power conferred by subsection (1) does not, in England and Wales, extend to authorising a search for material of the kinds mentioned in section 9(2) of the Police and Criminal Evidence Act 1984 (certain classes of personal or confidential material).

(3) A warrant under subsection (1)—

    (a) may authorise persons to accompany any constable executing the warrant, and

    (b) remains in force for 28 days from the date of its issue.

(4) In this section "premises" includes land, buildings, fixed or moveable structures, vehicles, vessels, aircraft and hovercraft.

False representation of authority to give consent.

**201.**—(1) It is an offence for a person to represent falsely that he is authorised by any person to give consent for the purposes of this Part in relation to a performance, unless he believes on reasonable grounds that he is so authorised.

(2) A person guilty of an offence under this section is liable on summary conviction to imprisonment for a term not exceeding six months or a fine not exceeding level 5 on the standard scale or both.

Offence by body corporate: liability of officers.

**202.**—(1) Where an offence under this Part committed by a body corporate is proved to have been committed with the consent or connivance of a director, manager, secretary or other similar officer of the body, or a person purporting to act in any such capacity, he as well as the body corporate is guilty of the offence and liable to be proceeded against and punished accordingly.

(2) In relation to a body corporate whose affairs are managed by its members "director" means a member of the body corporate.

*Supplementary provisions with respect to delivery up and seizure*

Period after which remedy of delivery up not available.

**203.**—(1) An application for an order under section 195 (order for delivery up in civil proceedings) may not be made after the end of the period of six years from the date on which the illicit recording in question was made, subject to the following provisions.

(2) If during the whole or any part of that period a person entitled to apply for an order—

    (a) is under a disability, or

    (b) is prevented by fraud or concealment from discovering the facts entitling him to apply,

an application may be made by him at any time before the end of the period of six years from the date on which he ceased to be under a disability or, as the case may be, could with reasonable diligence have discovered those facts.

(3) In subsection (2) "disability"—

1980 c. 58.

    (a) in England and Wales, has the same meaning as in the Limitation Act 1980;

1973 c. 52.

    (b) in Scotland, means legal disability within the meaning of the Prescription and Limitations (Scotland) Act 1973;

1958 c. 10 (N.I.).

    (c) in Northern Ireland, has the same meaning as in the Statute of Limitation (Northern Ireland) 1958.

(4) An order under section 199 (order for delivery up in criminal proceedings) shall not, in any case, be made after the end of the period of six years from the date on which the illicit recording in question was made.

PART II

**204.**—(1) An application may be made to the court for an order that an illicit recording of a performance delivered up in pursuance of an order under section 195 or 199, or seized and detained in pursuance of the right conferred by section 196, shall be—

Order as to disposal of illicit recording.

(a) forfeited to such person having performer's rights or recording rights in relation to the performance as the court may direct, or

(b) destroyed or otherwise dealt with as the court may think fit,

or for a decision that no such order should be made.

(2) In considering what order (if any) should be made, the court shall consider whether other remedies available in an action for infringement of the rights conferred by this Part would be adequate to compensate the person or persons entitled to the rights and to protect their interests.

(3) Provision shall be made by rules of court as to the service of notice on persons having an interest in the recording, and any such person is entitled—

(a) to appear in proceedings for an order under this section, whether or not he was served with notice, and

(b) to appeal against any order made, whether or not he appeared;

and an order shall not take effect until the end of the period within which notice of an appeal may be given or, if before the end of that period notice of appeal is duly given, until the final determination or abandonment of the proceedings on the appeal.

(4) Where there is more than one person interested in a recording, the court shall make such order as it thinks just and may (in particular) direct that the recording be sold, or otherwise dealt with, and the proceeds divided.

(5) If the court decides that no order should be made under this section, the person in whose possession, custody or control the recording was before being delivered up or seized is entitled to its return.

(6) References in this section to a person having an interest in a recording include any person in whose favour an order could be made in respect of the recording under this section or under section 114 or 231 of this Act or section 58C of the Trade Marks Act 1938 (which make similar provision in relation to infringement of copyright, design right and trade marks).

1938 c. 22.

**205.**—(1) In England, Wales and Northern Ireland a county court may entertain proceedings under—

Jurisdiction of county court and sheriff court.

section 195 (order for delivery up of illicit recording), or

section 204 (order as to disposal of illicit recording),

where the value of the illicit recordings in question does not exceed the county court limit for actions in tort.

(2) In Scotland proceedings for an order under either of those provisions may be brought in the sheriff court.

96        c. **48**            *Copyright, Designs and Patents*

PART II

(3) Nothing in this section shall be construed as affecting the jurisdiction of the High Court or, in Scotland, the Court of Session.

*Qualification for protection and extent*

Qualifying countries, individuals and persons.

**206.**—(1) In this Part—

"qualifying country" means—

(a) the United Kingdom,

(b) another member State of the European Economic Community, or

(c) to the extent that an Order under section 208 so provides, a country designated under that section as enjoying reciprocal protection;

"qualifying individual" means a citizen or subject of, or an individual resident in, a qualifying country; and

"qualifying person" means a qualifying individual or a body corporate or other body having legal personality which—

(a) is formed under the law of a part of the United Kingdom or another qualifying country, and

(b) has in any qualifying country a place of business at which substantial business activity is carried on.

(2) The reference in the definition of "qualifying individual" to a person's being a citizen or subject of a qualifying country shall be construed—

(a) in relation to the United Kingdom, as a reference to his being a British citizen, and

(b) in relation to a colony of the United Kingdom, as a reference to his being a British Dependent Territories' citizen by connection with that colony.

(3) In determining for the purpose of the definition of "qualifying person" whether substantial business activity is carried on at a place of business in any country, no account shall be taken of dealings in goods which are at all material times outside that country.

Countries to which this Part extends.

**207.** This Part extends to England and Wales, Scotland and Northern Ireland.

Countries enjoying reciprocal protection.

**208.**—(1) Her Majesty may by Order in Council designate as enjoying reciprocal protection under this Part—

(a) a Convention country, or

(b) a country as to which Her Majesty is satisfied that provision has been or will be made under its law giving adequate protection for British performances.

(2) A "Convention country" means a country which is a party to a Convention relating to performers' rights to which the United Kingdom is also a party.

PART II

(3) A "British performance" means a performance—

(a) given by an individual who is a British citizen or resident in the United Kingdom, or

(b) taking place in the United Kingdom.

(4) If the law of that country provides adequate protection only for certain descriptions of performance, an Order under subsection (1)(b) designating that country shall contain provision limiting to a corresponding extent the protection afforded by this Part in relation to performances connected with that country.

(5) The power conferred by subsection (1)(b) is exercisable in relation to any of the Channel Islands, the Isle of Man or any colony of the United Kingdom, as in relation to a foreign country.

(6) A statutory instrument containing an Order in Council under this section shall be subject to annulment in pursuance of a resolution of either House of Parliament.

**209.**—(1) For the purposes of this Part the territorial waters of the United Kingdom shall be treated as part of the United Kingdom.

Territorial waters and the continental shelf.

(2) This Part applies to things done in the United Kingdom sector of the continental shelf on a structure or vessel which is present there for purposes directly connected with the exploration of the sea bed or subsoil or the exploitation of their natural resources as it applies to things done in the United Kingdom.

(3) The United Kingdom sector of the continental shelf means the areas designated by order under section 1(7) of the Continental Shelf Act 1964.

1964 c. 29.

**210.**—(1) This Part applies to things done on a British ship, aircraft or hovercraft as it applies to things done in the United Kingdom.

British ships, aircraft and hovercraft.

(2) In this section—

"British ship" means a ship which is a British ship for the purposes of the Merchant Shipping Acts (see section 2 of the Merchant Shipping Act 1988) otherwise than by virtue of registration in a country outside the United Kingdom; and

1988 c. 12.

"British aircraft" and "British hovercraft" mean an aircraft or hovercraft registered in the United Kingdom.

### *Interpretation*

**211.**—(1) The following expressions have the same meaning in this Part as in Part I (copyright)—

Expressions having same meaning as in copyright provisions.

> broadcast,
> business,
> cable programme,
> cable programme service,
> country,
> defendant (in Scotland),
> delivery up (in Scotland),
> film,

98        c. **48**        *Copyright, Designs and Patents*

PART II

literary work,
published, and
sound recording.

(2) The provisions of section 6(3) to (5), section 7(5) and 19(4) (supplementary provisions relating to broadcasting and cable programme services) apply for the purposes of this Part, and in relation to an infringement of the rights conferred by this Part, as they apply for the purposes of Part I and in relation to an infringement of copyright.

Index of defined
expressions.

**212.** The following Table shows provisions defining or otherwise explaining expressions used in this Part (other than provisions defining or explaining an expression used only in the same section)—

| | |
|---|---|
| broadcast (and related expressions) | section 211 (and section 6) |
| business | section 211(1) (and section 178) |
| cable programme, cable programme service (and related expressions) | section 211 (and section 7) |
| country | section 211(1) (and section 178) |
| defendant (in Scotland) | section 211(1) (and section 177) |
| delivery up (in Scotland) | section 211(1) (and section 177) |
| exclusive recording contract | section 185(1) |
| film | section 211(1) (and section 5) |
| illicit recording | section 197 |
| literary work | section 211(1) (and section 3(1)) |
| performance | section 180(2) |
| published | section 211(1) (and section 175) |
| qualifying country | section 206(1) |
| qualifying individual | section 206(1) and (2) |
| qualifying performance | section 181 |
| qualifying person | section 206(1) and (3) |
| recording (of a performance) | section 180(2) |
| recording rights (person having) | section 185(2) and (3) |
| sound recording | section 211(1) (and section 5). |

## PART III

### DESIGN RIGHT

#### CHAPTER I

##### DESIGN RIGHT IN ORIGINAL DESIGNS

*Introductory*

Design right.

**213.**—(1) Design right is a property right which subsists in accordance with this Part in an original design.

(2) In this Part "design" means the design of any aspect of the shape or configuration (whether internal or external) of the whole or part of an article.

(3) Design right does not subsist in—

(a) a method or principle of construction,

(b) features of shape or configuration of an article which—

(i) enable the article to be connected to, or placed in, around or against, another article so that either article may perform its function, or

PART III

(ii) are dependent upon the appearance of another article of which the article is intended by the designer to form an integral part, or

(c) surface decoration.

(4) A design is not "original" for the purposes of this Part if it is commonplace in the design field in question at the time of its creation.

(5) Design right subsists in a design only if the design qualifies for design right protection by reference to—

(a) the designer or the person by whom the design was commissioned or the designer employed (see sections 218 and 219), or

(b) the person by whom and country in which articles made to the design were first marketed (see section 220),

or in accordance with any Order under section 221 (power to make further provision with respect to qualification).

(6) Design right does not subsist unless and until the design has been recorded in a design document or an article has been made to the design.

(7) Design right does not subsist in a design which was so recorded, or to which an article was made, before the commencement of this Part.

**214.**—(1) In this Part the "designer", in relation to a design, means the person who creates it.

The designer.

(2) In the case of a computer-generated design the person by whom the arrangements necessary for the creation of the design are undertaken shall be taken to be the designer.

**215.**—(1) The designer is the first owner of any design right in a design which is not created in pursuance of a commission or in the course of employment.

Ownership of design right.

(2) Where a design is created in pursuance of a commission, the person commissioning the design is the first owner of any design right in it.

(3) Where, in a case not falling within subsection (2) a design is created by an employee in the course of his employment, his employer is the first owner of any design right in the design.

(4) If a design qualifies for design right protection by virtue of section 220 (qualification by reference to first marketing of articles made to the design), the above rules do not apply and the person by whom the articles in question are marketed is the first owner of the design right.

**216.**—(1) Design right expires—

Duration of design right.

(a) fifteen years from the end of the calendar year in which the design was first recorded in a design document or an article was first made to the design, whichever first occurred, or

(b) if articles made to the design are made available for sale or hire within five years from the end of that calendar year, ten years from the end of the calendar year in which that first occurred.

(2) The reference in subsection (1) to articles being made available for sale or hire is to their being made so available anywhere in the world by or with the licence of the design right owner.

100      c. **48**      *Copyright, Designs and Patents*

*Qualification for design right protection*

Qualifying
individuals and
qualifying
persons.

**217.**—(1) In this Part—

"qualifying individual" means a citizen or subject of, or an individual habitually resident in, a qualifying country; and

"qualifying person" means a qualifying individual or a body corporate or other body having legal personality which—

(a) is formed under the law of a part of the United Kingdom or another qualifying country, and

(b) has in any qualifying country a place of business at which substantial business activity is carried on.

(2) References in this Part to a qualifying person include the Crown and the government of any other qualifying country.

(3) In this section "qualifying country" means—

(a) the United Kingdom,

(b) a country to which this Part extends by virtue of an Order under section 255,

(c) another member State of the European Economic Community, or

(d) to the extent that an Order under section 256 so provides, a country designated under that section as enjoying reciprocal protection.

(4) The reference in the definition of "qualifying individual" to a person's being a citizen or subject of a qualifying country shall be construed—

(a) in relation to the United Kingdom, as a reference to his being a British citizen, and

(b) in relation to a colony of the United Kingdom, as a reference to his being a British Dependent Territories' citizen by connection with that colony.

(5) In determining for the purpose of the definition of "qualifying person" whether substantial business activity is carried on at a place of business in any country, no account shall be taken of dealings in goods which are at all material times outside that country.

Qualification by
reference to
designer.

**218.**—(1) This section applies to a design which is not created in pursuance of a commission or in the course of employment.

(2) A design to which this section applies qualifies for design right protection if the designer is a qualifying individual or, in the case of a computer-generated design, a qualifying person.

(3) A joint design to which this section applies qualifies for design right protection if any of the designers is a qualifying individual or, as the case may be, a qualifying person.

(4) Where a joint design qualifies for design right protection under this section, only those designers who are qualifying individuals or qualifying persons are entitled to design right under section 215(1) (first ownership of design right: entitlement of designer).

*Copyright, Designs and Patents*    **c. 48**    101

**219.**—(1) A design qualifies for design right protection if it is created in pursuance of a commission from, or in the course of employment with, a qualifying person.

PART III

Qualification by reference to commissioner or employer.

(2) In the case of a joint commission or joint employment a design qualifies for design right protection if any of the commissioners or employers is a qualifying person.

(3) Where a design which is jointly commissioned or created in the course of joint employment qualifies for design right protection under this section, only those commissioners or employers who are qualifying persons are entitled to design right under section 215(2) or (3) (first ownership of design right: entitlement of commissioner or employer).

**220.**—(1) A design which does not qualify for design right protection under section 218 or 219 (qualification by reference to designer, commissioner or employer) qualifies for design right protection if the first marketing of articles made to the design—

Qualification by reference to first marketing.

    (a) is by a qualifying person who is exclusively authorised to put such articles on the market in the United Kingdom, and

    (b) takes place in the United Kingdom, another country to which this Part extends by virtue of an Order under section 255, or another member State of the European Economic Community.

(2) If the first marketing of articles made to the design is done jointly by two or more persons, the design qualifies for design right protection if any of those persons meets the requirements specified in subsection (1)(a).

(3) In such a case only the persons who meet those requirements are entitled to design right under section 215(4) (first ownership of design right: entitlement of first marketer of articles made to the design).

(4) In subsection (1)(a) "exclusively authorised" refers—

    (a) to authorisation by the person who would have been first owner of design right as designer, commissioner of the design or employer of the designer if he had been a qualifying person, or by a person lawfully claiming under such a person, and

    (b) to exclusivity capable of being enforced by legal proceedings in the United Kingdom.

**221.**—(1) Her Majesty may, with a view to fulfilling an international obligation of the United Kingdom, by Order in Council provide that a design qualifies for design right protection if such requirements as are specified in the Order are met.

Power to make further provision as to qualification.

(2) An Order may make different provision for different descriptions of design or article; and may make such consequential modifications of the operation of sections 215 (ownership of design right) and sections 218 to 220 (other means of qualification) as appear to Her Majesty to be appropriate.

(3) A statutory instrument containing an Order in Council under this section shall be subject to annulment in pursuance of a resolution of either House of Parliament.

102      c. **48**         *Copyright, Designs and Patents*

PART III                              *Dealings with design right*

Assignment and
licences.

**222.**—(1) Design right is transmissible by assignment, by testamentary disposition or by operation of law, as personal or moveable property.

(2) An assignment or other transmission of design right may be partial, that is, limited so as to apply—

(a) to one or more, but not all, of the things the design right owner has the exclusive right to do;

(b) to part, but not the whole, of the period for which the right is to subsist.

(3) An assignment of design right is not effective unless it is in writing signed by or on behalf of the assignor.

(4) A licence granted by the owner of design right is binding on every successor in title to his interest in the right, except a purchaser in good faith for valuable consideration and without notice (actual or constructive) of the licence or a person deriving title from such a purchaser; and references in this Part to doing anything with, or without, the licence of the design right owner shall be construed accordingly.

Prospective
ownership of
design right.

**223.**—(1) Where by an agreement made in relation to future design right, and signed by or on behalf of the prospective owner of the design right, the prospective owner purports to assign the future design right (wholly or partially) to another person, then if, on the right coming into existence, the assignee or another person claiming under him would be entitled as against all other persons to require the right to be vested in him, the right shall vest in him by virtue of this section.

(2) In this section—

"future design right" means design right which will or may come into existence in respect of a future design or class of designs or on the occurrence of a future event; and

"prospective owner" shall be construed accordingly, and includes a person who is prospectively entitled to design right by virtue of such an agreement as is mentioned in subsection (1).

(3) A licence granted by a prospective owner of design right is binding on every successor in title to his interest (or prospective interest) in the right, except a purchaser in good faith for valuable consideration and without notice (actual or constructive) of the licence or a person deriving title from such a purchaser; and references in this Part to doing anything with, or without, the licence of the design right owner shall be construed accordingly.

Assignment of
right in registered
design presumed
to carry with it
design right.
1949 c. 88.

**224.** Where a design consisting of a design in which design right subsists is registered under the Registered Designs Act 1949 and the proprietor of the registered design is also the design right owner, an assignment of the right in the registered design shall be taken to be also an assignment of the design right, unless a contrary intention appears.

Exclusive licences.

**225.**—(1) In this Part an "exclusive licence" means a licence in writing signed by or on behalf of the design right owner authorising the licensee to the exclusion of all other persons, including the person granting the licence, to exercise a right which would otherwise be exercisable exclusively by the design right owner.

(2) The licensee under an exclusive licence has the same rights against any successor in title who is bound by the licence as he has against the person granting the licence.

PART III

## CHAPTER II

### RIGHTS OF DESIGN RIGHT OWNER AND REMEDIES

#### *Infringement of design right*

**226.**—(1) The owner of design right in a design has the exclusive right to reproduce the design for commercial purposes—

Primary infringement of design right.

    (a) by making articles to that design, or

    (b) by making a design document recording the design for the purpose of enabling such articles to be made.

(2) Reproduction of a design by making articles to the design means copying the design so as to produce articles exactly or substantially to that design, and references in this Part to making articles to a design shall be construed accordingly.

(3) Design right is infringed by a person who without the licence of the design right owner does, or authorises another to do, anything which by virtue of this section is the exclusive right of the design right owner.

(4) For the purposes of this section reproduction may be direct or indirect, and it is immaterial whether any intervening acts themselves infringe the design right.

(5) This section has effect subject to the provisions of Chapter III (exceptions to rights of design right owner).

**227.**—(1) Design right is infringed by a person who, without the licence of the design right owner—

Secondary infringement: importing or dealing with infringing article.

    (a) imports into the United Kingdom for commercial purposes, or

    (b) has in his possession for commercial purposes, or

    (c) sells, lets for hire, or offers or exposes for sale or hire, in the course of a business,

an article which is, and which he knows or has reason to believe is, an infringing article.

(2) This section has effect subject to the provisions of Chapter III (exceptions to rights of design right owner).

**228.**—(1) In this Part "infringing article", in relation to a design, shall be construed in accordance with this section.

Meaning of "infringing article".

(2) An article is an infringing article if its making to that design was an infringement of design right in the design.

(3) An article is also an infringing article if—

    (a) it has been or is proposed to be imported into the United Kingdom, and

    (b) its making to that design in the United Kingdom would have been an infringement of design right in the design or a breach of an exclusive licence agreement relating to the design.

104          c. **48**          *Copyright, Designs and Patents*

PART III

**(4)** Where it is shown that an article is made to a design in which design right subsists or has subsisted at any time, it shall be presumed until the contrary is proved that the article was made at a time when design right subsisted.

**(5)** Nothing in subsection (3) shall be construed as applying to an article which may lawfully be imported into the United Kingdom by virtue of any enforceable Community right within the meaning of section 2(1) of the European Communities Act 1972.

1972 c. 68.

**(6)** The expression "infringing article" does not include a design document, notwithstanding that its making was or would have been an infringement of design right.

### *Remedies for infringement*

Rights and remedies of design right owner.

**229.**—(1) An infringement of design right is actionable by the design right owner.

**(2)** In an action for infringement of design right all such relief by way of damages, injunctions, accounts or otherwise is available to the plaintiff as is available in respect of the infringement of any other property right.

**(3)** The court may in an action for infringement of design right, having regard to all the circumstances and in particular to—

(a) the flagrancy of the infringement, and

(b) any benefit accruing to the defendant by reason of the infringement,

award such additional damages as the justice of the case may require.

**(4)** This section has effect subject to section 233 (innocent infringement).

Order for delivery up.

**230.**—(1) Where a person—

(a) has in his possession, custody or control for commercial purposes an infringing article, or

(b) has in his possession, custody or control anything specifically designed or adapted for making articles to a particular design, knowing or having reason to believe that it has been or is to be used to make an infringing article,

the owner of the design right in the design in question may apply to the court for an order that the infringing article or other thing be delivered up to him or to such other person as the court may direct.

**(2)** An application shall not be made after the end of the period specified in the following provisions of this section; and no order shall be made unless the court also makes, or it appears to the court that there are grounds for making, an order under section 231 (order as to disposal of infringing article, &c.).

**(3)** An application for an order under this section may not be made after the end of the period of six years from the date on which the article or thing in question was made, subject to subsection (4).

**(4)** If during the whole or any part of that period the design right owner—

(a) is under a disability, or

(b) is prevented by fraud or concealment from discovering the facts entitling him to apply for an order,

PART III

an application may be made at any time before the end of the period of six years from the date on which he ceased to be under a disability or, as the case may be, could with reasonable diligence have discovered those facts.

(5) In subsection (4) "disability"—

(a) in England and Wales, has the same meaning as in the Limitation Act 1980;

1980 c. 58.

(b) in Scotland, means legal disability within the meaning of the Prescription and Limitation (Scotland) Act 1973;

1973 c. 52.

(c) in Northern Ireland, has the same meaning as in the Statute of Limitations (Northern Ireland) 1958.

1958 c. 10 (N.I.).

(6) A person to whom an infringing article or other thing is delivered up in pursuance of an order under this section shall, if an order under section 231 is not made, retain it pending the making of an order, or the decision not to make an order, under that section.

(7) Nothing in this section affects any other power of the court.

**231.**—(1) An application may be made to the court for an order that an infringing article or other thing delivered up in pursuance of an order under section 230 shall be—

Order as to disposal of infringing articles, &c.

(a) forfeited to the design right owner, or

(b) destroyed or otherwise dealt with as the court may think fit,

or for a decision that no such order should be made.

(2) In considering what order (if any) should be made, the court shall consider whether other remedies available in an action for infringement of design right would be adequate to compensate the design right owner and to protect his interests.

(3) Provision shall be made by rules of court as to the service of notice on persons having an interest in the article or other thing, and any such person is entitled—

(a) to appear in proceedings for an order under this section, whether or not he was served with notice, and

(b) to appeal against any order made, whether or not he appeared;

and an order shall not take effect until the end of the period within which notice of an appeal may be given or, if before the end of that period notice of appeal is duly given, until the final determination or abandonment of the proceedings on the appeal.

(4) Where there is more than one person interested in an article or other thing, the court shall make such order as it thinks just and may (in particular) direct that the thing be sold, or otherwise dealt with, and the proceeds divided.

(5) If the court decides that no order should be made under this section, the person in whose possession, custody or control the article or other thing was before being delivered up or seized is entitled to its return.

106        c. **48**             *Copyright, Designs and Patents*

PART III        (6) References in this section to a person having an interest in an article
or other thing include any person in whose favour an order could be made
in respect of it under this section or under section 114 or 204 of this Act
1938 c. 22.     or section 58C of the Trade Marks Act 1938 (which make similar
provision in relation to infringement of copyright, rights in performances
and trade marks).

Jurisdiction of        **232.**—(1) In England, Wales and Northern Ireland a county court may
county court and   entertain proceedings under—
sheriff court.

        section 230 (order for delivery up of infringing article, &c.),

        section 231 (order as to disposal of infringing article, &c.), or

        section 235(5) (application by exclusive licensee having concurrent
            rights),

where the value of the infringing articles and other things in question does
not exceed the county court limit for actions in tort.

        (2) In Scotland proceedings for an order under any of those provisions
may be brought in the sheriff court.

        (3) Nothing in this section shall be construed as affecting the
jurisdiction of the High Court or, in Scotland, the Court of Session.

Innocent        **233.**—(1) Where in an action for infringement of design right brought
infringement.   by virtue of section 226 (primary infringement) it is shown that at the time
of the infringement the defendant did not know, and had no reason to
believe, that design right subsisted in the design to which the action
relates, the plaintiff is not entitled to damages against him, but without
prejudice to any other remedy.

        (2) Where in an action for infringement of design right brought by
virtue of section 227 (secondary infringement) a defendant shows that the
infringing article was innocently acquired by him or a predecessor in title
of his, the only remedy available against him in respect of the
infringement is damages not exceeding a reasonable royalty in respect of
the act complained of.

        (3) In subsection (2) "innocently acquired" means that the person
acquiring the article did not know and had no reason to believe that it was
an infringing article.

Rights and        **234.**—(1) An exclusive licensee has, except against the design right
remedies of     owner, the same rights and remedies in respect of matters occurring after
exclusive licensee.   the grant of the licence as if the licence had been an assignment.

        (2) His rights and remedies are concurrent with those of the design
right owner; and references in the relevant provisions of this Part to the
design right owner shall be construed accordingly.

        (3) In an action brought by an exclusive licensee by virtue of this
section a defendant may avail himself of any defence which would have
been available to him if the action had been brought by the design right
owner.

**235.**—(1) Where an action for infringement of design right brought by the design right owner or an exclusive licensee relates (wholly or partly) to an infringement in respect of which they have concurrent rights of action, the design right owner or, as the case may be, the exclusive licensee may not, without the leave of the court, proceed with the action unless the other is either joined as a plaintiff or added as a defendant.

PART III
Exercise of
concurrent rights.

(2) A design right owner or exclusive licensee who is added as a defendant in pursuance of subsection (1) is not liable for any costs in the action unless he takes part in the proceedings.

(3) The above provisions do not affect the granting of interlocutory relief on the application of the design right owner or an exclusive licensee.

(4) Where an action for infringement of design right is brought which relates (wholly or partly) to an infringement in respect of which the design right owner and an exclusive licensee have concurrent rights of action—

(a) the court shall, in assessing damages, take into account—

(i) the terms of the licence, and

(ii) any pecuniary remedy already awarded or available to either of them in respect of the infringement;

(b) no account of profits shall be directed if an award of damages has been made, or an account of profits has been directed, in favour of the other of them in respect of the infringement; and

(c) the court shall if an account of profits is directed apportion the profits between them as the court considers just, subject to any agreement between them;

and these provisions apply whether or not the design right owner and the exclusive licensee are both parties to the action.

(5) The design right owner shall notify any exclusive licensee having concurrent rights before applying for an order under section 230 (order for delivery up of infringing article, &c.); and the court may on the application of the licensee make such order under that section as it thinks fit having regard to the terms of the licence.

### Chapter III

### Exceptions to Rights of Design Right Owners

#### *Infringement of copyright*

**236.** Where copyright subsists in a work which consists of or includes a design in which design right subsists, it is not an infringement of design right in the design to do anything which is an infringement of the copyright in that work.

Infringement of
copyright.

#### *Availability of licences of right*

**237.**—(1) Any person is entitled as of right to a licence to do in the last five years of the design right term anything which would otherwise infringe the design right.

Licences available
in last five years of
design right.

(2) The terms of the licence shall, in default of agreement, be settled by the comptroller.

108          c. **48**          *Copyright, Designs and Patents*

PART III

(3) The Secretary of State may if it appears to him necessary in order to—

    (a) comply with an international obligation of the United Kingdom, or

    (b) secure or maintain reciprocal protection for British designs in other countries,

by order exclude from the operation of subsection (1) designs of a description specified in the order or designs applied to articles of a description so specified.

(4) An order shall be made by statutory instrument; and no order shall be made unless a draft of it has been laid before and approved by a resolution of each House of Parliament.

Powers exercisable for protection of the public interest.

**238.**—(1) Where the matters specified in a report of the Monopolies and Mergers Commission as being those which in the Commission's opinion operate, may be expected to operate or have operated against the public interest include—

    (a) conditions in licences granted by a design right owner restricting the use of the design by the licensee or the right of the design right owner to grant other licences, or

    (b) a refusal of a design right owner to grant licences on reasonable terms,

1973 c. 41.

the powers conferred by Part I of Schedule 8 to the Fair Trading Act 1973 (powers exercisable for purpose of remedying or preventing adverse effects specified in report of Commission) include power to cancel or modify those conditions and, instead or in addition, to provide that licences in respect of the design right shall be available as of right.

1980 c. 21.

(2) The references in sections 56(2) and 73(2) of that Act, and sections 10(2)(b) and 12(5) of the Competition Act 1980, to the powers specified in that Part of that Schedule shall be construed accordingly.

(3) The terms of a licence available by virtue of this section shall, in default of agreement, be settled by the comptroller.

Undertaking to take licence of right in infringement proceedings.

**239.**—(1) If in proceedings for infringement of design right in a design in respect of which a licence is available as of right under section 237 or 238 the defendant undertakes to take a licence on such terms as may be agreed or, in default of agreement, settled by the comptroller under that section—

    (a) no injunction shall be granted against him,

    (b) no order for delivery up shall be made under section 230, and

    (c) the amount recoverable against him by way of damages or on an account of profits shall not exceed double the amount which would have been payable by him as licensee if such a licence on those terms had been granted before the earliest infringement.

(2) An undertaking may be given at any time before final order in the proceedings, without any admission of liability.

(3) Nothing in this section affects the remedies available in respect of an infringement committed before licences of right were available.

*Crown use of designs*   PART III

**240.**—(1) A government department, or a person authorised in writing by a government department, may without the licence of the design right owner— <span style="float:right">Crown use of designs.</span>

    (a) do anything for the purpose of supplying articles for the services of the Crown, or

    (b) dispose of articles no longer required for the services of the Crown;

and nothing done by virtue of this section infringes the design right.

    (2) References in this Part to "the services of the Crown" are to—

    (a) the defence of the realm,

    (b) foreign defence purposes, and

    (c) health service purposes.

    (3) The reference to the supply of articles for "foreign defence purposes" is to their supply—

    (a) for the defence of a country outside the realm in pursuance of an agreement or arrangement to which the government of that country and Her Majesty's Government in the United Kingdom are parties; or

    (b) for use by armed forces operating in pursuance of a resolution of the United Nations or one of its organs.

    (4) The reference to the supply of articles for "health service purposes" are to their supply for the purpose of providing—

    (a) pharmaceutical services,

    (b) general medical services, or

    (c) general dental services,

that is, services of those kinds under Part II of the National Health Service Act 1977, Part II of the National Health Service (Scotland) Act 1978 or the corresponding provisions of the law in force in Northern Ireland. <span style="float:right">1977 c. 49.<br>1978 c. 29.</span>

    (5) In this Part—

    "Crown use", in relation to a design, means the doing of anything by virtue of this section which would otherwise be an infringement of design right in the design; and

    "the government department concerned", in relation to such use, means the government department by whom or on whose authority the act was done.

    (6) The authority of a government department in respect of Crown use of a design may be given to a person either before or after the use and whether or not he is authorised, directly or indirectly, by the design right owner to do anything in relation to the design.

    (7) A person acquiring anything sold in the exercise of powers conferred by this section, and any person claiming under him, may deal with it in the same manner as if the design right were held on behalf of the Crown.

110     c. **48**     *Copyright, Designs and Patents*

**241.**—(1) Where Crown use is made of a design, the government department concerned shall—

    (a) notify the design right owner as soon as practicable, and

    (b) give him such information as to the extent of the use as he may from time to time require,

unless it appears to the department that it would be contrary to the public interest to do so or the identity of the design right owner cannot be ascertained on reasonable inquiry.

(2) Crown use of a design shall be on such terms as, either before or after the use, are agreed between the government department concerned and the design right owner with the approval of the Treasury or, in default of agreement, are determined by the court.

In the application of this subsection to Northern Ireland the reference to the Treasury shall, where the government department referred to in that subsection is a Northern Ireland department, be construed as a reference to the Department of Finance and Personnel.

(3) Where the identity of the design right owner cannot be ascertained on reasonable inquiry, the government department concerned may apply to the court who may order that no royalty or other sum shall be payable in respect of Crown use of the design until the owner agrees terms with the department or refers the matter to the court for determination.

Rights of third
parties in case of
Crown use.

**242.**—(1) The provisions of any licence, assignment or agreement made between the design right owner (or anyone deriving title from him or from whom he derives title) and any person other than a government department are of no effect in relation to Crown use of a design, or any act incidental to Crown use, so far as they—

    (a) restrict or regulate anything done in relation to the design, or the use of any model, document or other information relating to it, or

    (b) provide for the making of payments in respect of, or calculated by reference to such use;

and the copying or issuing to the public of copies of any such model or document in connection with the thing done, or any such use, shall be deemed not to be an infringement of any copyright in the model or document.

(2) Subsection (1) shall not be construed as authorising the disclosure of any such model, document or information in contravention of the licence, assignment or agreement.

(3) Where an exclusive licence is in force in respect of the design—

    (a) if the licence was granted for royalties—

        (i) any agreement between the design right owner and a government department under section 241 (settlement of terms for Crown use) requires the consent of the licensee, and

        (ii) the licensee is entitled to recover from the design right owner such part of the payment for Crown use as may be agreed between them or, in default of agreement, determined by the court;

    (b) if the licence was granted otherwise than for royalties—

(i) section 241 applies in relation to anything done which but for section 240 (Crown use) and subsection (1) above would be an infringement of the rights of the licensee with the substitution for references to the design right owner of references to the licensee, and

(ii) section 241 does not apply in relation to anything done by the licensee by virtue of an authority given under section 240.

(4) Where the design right has been assigned to the design right owner in consideration of royalties—

(a) section 241 applies in relation to Crown use of the design as if the references to the design right owner included the assignor, and any payment for Crown use shall be divided between them in such proportion as may be agreed or, in default of agreement, determined by the court; and

(b) section 241 applies in relation to any act incidental to Crown use as it applies in relation to Crown use of the design.

(5) Where any model, document or other information relating to a design is used in connection with Crown use of the design, or any act incidental to Crown use, section 241 applies to the use of the model, document or other information with the substitution for the references to the design right owner of references to the person entitled to the benefit of any provision of an agreement rendered inoperative by subsection (1) above.

(6) In this section—

"act incidental to Crown use" means anything done for the services of the Crown to the order of a government department by the design right owner in respect of a design;

"payment for Crown use" means such amount as is payable by the government department concerned by virtue of section 241; and

"royalties" includes any benefit determined by reference to the use of the design.

**243.**—(1) Where Crown use is made of a design, the government department concerned shall pay—

(a) to the design right owner, or

(b) if there is an exclusive licence in force in respect of the design, to the exclusive licensee,

compensation for any loss resulting from his not being awarded a contract to supply the articles made to the design.

(2) Compensation is payable only to the extent that such a contract could have been fulfilled from his existing manufacturing capacity; but is payable notwithstanding the existence of circumstances rendering him ineligible for the award of such a contract.

(3) In determining the loss, regard shall be had to the profit which would have been made on such a contract and to the extent to which any manufacturing capacity was under-used.

(4) No compensation is payable in respect of any failure to secure contracts for the supply of articles made to the design otherwise than for the services of the Crown.

112         c. **48**         *Copyright, Designs and Patents*

(5) The amount payable shall, if not agreed between the design right owner or licensee and the government department concerned with the approval of the Treasury, be determined by the court on a reference under section 252; and it is in addition to any amount payable under section 241 or 242.

(6) In the application of this section to Northern Ireland, the reference in subsection (5) to the Treasury shall, where the government department concerned is a Northern Ireland department, be construed as a reference to the Department of Finance and Personnel.

Special provision for Crown use during emergency.

**244.**—(1) During a period of emergency the powers exercisable in relation to a design by virtue of section 240 (Crown use) include power to do any act which would otherwise be an infringement of design right for any purpose which appears to the government department concerned necessary or expedient—

(a) for the efficient prosecution of any war in which Her Majesty may be engaged;

(b) for the maintenance of supplies and services essential to the life of the community;

(c) for securing a sufficiency of supplies and services essential to the well-being of the community;

(d) for promoting the productivity of industry, commerce and agriculture;

(e) for fostering and directing exports and reducing imports, or imports of any classes, from all or any countries and for redressing the balance of trade;

(f) generally for ensuring that the whole resources of the community are available for use, and are used, in a manner best calculated to serve the interests of the community; or

(g) for assisting the relief of suffering and the restoration and distribution of essential supplies and services in any country outside the United Kingdom which is in grave distress as the result of war.

(2) References in this Part to the services of the Crown include, as respects a period of emergency, those purposes; and references to "Crown use" include any act which would apart from this section be an infringement of design right.

(3) In this section "period of emergency" means a period beginning with such date as may be declared by Order in Council to be the beginning, and ending with such date as may be so declared to be the end, of a period of emergency for the purposes of this section.

(4) No Order in Council under this section shall be submitted to Her Majesty unless a draft of it has been laid before and approved by a resolution of each House of Parliament.

### General

Power to provide for further exceptions.

**245.**—(1) The Secretary of State may if it appears to him necessary in order to—

(a) comply with an international obligation of the United Kingdom, or

(b) secure or maintain reciprocal protection for British designs in other countries,

by order provide that acts of a description specified in the order do not infringe design right.

(2) An order may make different provision for different descriptions of design or article.

(3) An order shall be made by statutory instrument and no order shall be made unless a draft of it has been laid before and approved by a resolution of each House of Parliament.

## CHAPTER IV

### JURISDICTION OF THE COMPTROLLER AND THE COURT

*Jurisdiction of the comptroller*

**246.**—(1) A party to a dispute as to any of the following matters may refer the dispute to the comptroller for his decision—

(a) the subsistence of design right,

(b) the term of design right, or

(c) the identity of the person in whom design right first vested;

and the comptroller's decision on the reference is binding on the parties to the dispute.

Jurisdiction to decide matters relating to design right.

(2) No other court or tribunal shall decide any such matter except—

(a) on a reference or appeal from the comptroller,

(b) in infringement or other proceedings in which the issue arises incidentally, or

(c) in proceedings brought with the agreement of the parties or the leave of the comptroller.

(3) The comptroller has jurisdiction to decide any incidental question of fact or law arising in the course of a reference under this section.

**247.**—(1) A person requiring a licence which is available as of right by virtue of—

(a) section 237 (licences available in last five years of design right), or

(b) an order under section 238 (licences made available in the public interest),

may apply to the comptroller to settle the terms of the licence.

Application to settle terms of licence of right.

(2) No application for the settlement of the terms of a licence available by virtue of section 237 may be made earlier than one year before the earliest date on which the licence may take effect under that section.

(3) The terms of a licence settled by the comptroller shall authorise the licensee to do—

(a) in the case of licence available by virtue of section 237, everything which would be an infringement of the design right in the absence of a licence;

(b) in the case of a licence available by virtue of section 238, everything in respect of which a licence is so available.

114        c. **48**            *Copyright, Designs and Patents*

(4) In settling the terms of a licence the comptroller shall have regard to such factors as may be prescribed by the Secretary of State by order made by statutory instrument.

(5) No such order shall be made unless a draft of it has been laid before and approved by a resolution of each House of Parliament.

(6) Where the terms of a licence are settled by the comptroller, the licence has effect—

    (a) in the case of an application in respect of a licence available by virtue of section 237 made before the earliest date on which the licence may take effect under that section, from that date;

    (b) in any other case, from the date on which the application to the comptroller was made.

Settlement of terms where design right owner unknown.

**248.**—(1) This section applies where a person making an application under section 247 (settlement of terms of licence of right) is unable on reasonable inquiry to discover the identity of the design right owner.

(2) The comptroller may in settling the terms of the licence order that the licence shall be free of any obligation as to royalties or other payments.

(3) If such an order is made the design right owner may apply to the comptroller to vary the terms of the licence with effect from the date on which his application is made.

(4) If the terms of a licence are settled by the comptroller and it is subsequently established that a licence was not available as of right, the licensee shall not be liable in damages for, or for an account of profits in respect of, anything done before he was aware of any claim by the design right owner that a licence was not available.

Appeals as to terms of licence of right.
1949 c. 88.

**249.**—(1) An appeal lies from any decision of the comptroller under section 247 or 248 (settlement of terms of licence of right) to the Appeal Tribunal constituted under section 28 of the Registered Designs Act 1949.

(2) Section 28 of that Act applies to appeals from the comptroller under this section as it applies to appeals from the registrar under that Act; but rules made under that section may make different provision for appeals under this section.

Rules.

**250.**—(1) The Secretary of State may make rules for regulating the procedure to be followed in connection with any proceeding before the comptroller under this Part.

(2) Rules may, in particular, make provision—

    (a) prescribing forms;

    (b) requiring fees to be paid;

    (c) authorising the rectification of irregularities of procedure;

    (d) regulating the mode of giving evidence and empowering the comptroller to compel the attendance of witnesses and the discovery of and production of documents;

    (e) providing for the appointment of advisers to assist the comptroller in proceedings before him;

(f) prescribing time limits for doing anything required to be done (and providing for the alteration of any such limit); and

PART III

(g) empowering the comptroller to award costs and to direct how, to what party and from what parties, costs are to be paid.

(3) Rules prescribing fees require the consent of the Treasury.

(4) The remuneration of an adviser appointed to assist the comptroller shall be determined by the Secretary of State with the consent of the Treasury and shall be defrayed out of money provided by Parliament.

(5) Rules shall be made by statutory instrument which shall be subject to annulment in pursuance of a resolution of either House of Parliament.

### *Jurisdiction of the court*

**251.**—(1) In any proceedings before him under section 246 (reference of matter relating to design right), the comptroller may at any time order the whole proceedings or any question or issue (whether of fact or law) to be referred, on such terms as he may direct, to the High Court or, in Scotland, the Court of Session.

References and appeals on design right matters.

(2) The comptroller shall make such an order if the parties to the proceedings agree that he should do so.

(3) On a reference under this section the court may exercise any power available to the comptroller by virtue of this Part as respects the matter referred to it and, following its determination, may refer any matter back to the comptroller.

(4) An appeal lies from any decision of the comptroller in proceedings before him under section 246 (decisions on matters relating to design right) to the High Court or, in Scotland, the Court of Session.

**252.**—(1) A dispute as to any matter which falls to be determined by the court in default of agreement under—

Reference of disputes relating to Crown use.

(a) section 241 (settlement of terms for Crown use),

(b) section 242 (rights of third parties in case of Crown use), or

(c) section 243 (Crown use: compensation for loss of profit),

may be referred to the court by any party to the dispute.

(2) In determining a dispute between a government department and any person as to the terms for Crown use of a design the court shall have regard to—

(a) any sums which that person or a person from whom he derives title has received or is entitled to receive, directly or indirectly, from any government department in respect of the design; and

(b) whether that person or a person from whom he derives title has in the court's opinion without reasonable cause failed to comply with a request of the department for the use of the design on reasonable terms.

(3) One of two or more joint owners of design right may, without the concurrence of the others, refer a dispute to the court under this section, but shall not do so unless the others are made parties; and none of those others is liable for any costs unless he takes part in the proceedings.

116        c. **48**        *Copyright, Designs and Patents*

PART III

(4) Where the consent of an exclusive licensee is required by section 242(3)(a)(i) to the settlement by agreement of the terms for Crown use of a design, a determination by the court of the amount of any payment to be made for such use is of no effect unless the licensee has been notified of the reference and given an opportunity to be heard.

(5) On the reference of a dispute as to the amount recoverable as mentioned in section 242(3)(a)(ii) (right of exclusive licensee to recover part of amount payable to design right owner) the court shall determine what is just having regard to any expenditure incurred by the licensee—

(a) in developing the design, or

(b) in making payments to the design right owner in consideration of the licence (other than royalties or other payments determined by reference to the use of the design).

(6) In this section "the court" means—

(a) in England and Wales, the High Court or any patents county court having jurisdiction by virtue of an order under section 287 of this Act,

(b) in Scotland, the Court of Session, and

(c) in Northern Ireland, the High Court.

CHAPTER V

MISCELLANEOUS AND GENERAL

*Miscellaneous*

Remedy for groundless threats of infringement proceedings.

**253.**—(1) Where a person threatens another person with proceedings for infringement of design right, a person aggrieved by the threats may bring an action against him claiming—

(a) a declaration to the effect that the threats are unjustifiable;

(b) an injunction against the continuance of the threats;

(c) damages in respect of any loss which he has sustained by the threats.

(2) If the plaintiff proves that the threats were made and that he is a person aggrieved by them, he is entitled to the relief claimed unless the defendant shows that the acts in respect of which proceedings were threatened did constitute, or if done would have constituted, an infringement of the design right concerned.

(3) Proceedings may not be brought under this section in respect of a threat to bring proceedings for an infringement alleged to consist of making or importing anything.

(4) Mere notification that a design is protected by design right does not constitute a threat of proceedings for the purposes of this section.

Licensee under licence of right not to claim connection with design right owner.

**254.**—(1) A person who has a licence in respect of a design by virtue of section 237 or 238 (licences of right) shall not, without the consent of the design right owner—

(a) apply to goods which he is marketing, or proposes to market, in reliance on that licence a trade description indicating that he is the licensee of the design right owner, or

(b) use any such trade description in an advertisement in relation to such goods.    PART III

(2) A contravention of subsection (1) is actionable by the design right owner.

(3) In this section "trade description", the reference to applying a trade description to goods and "advertisement" have the same meaning as in the Trade Descriptions Act 1968.    1968 c. 29.

### Extent of operation of this Part

**255.**—(1) This Part extends to England and Wales, Scotland and Northern Ireland.    Countries to which this Part extends.

(2) Her Majesty may by Order in Council direct that this Part shall extend, subject to such exceptions and modifications as may be specified in the Order, to—

(a) any of the Channel Islands,

(b) the Isle of Man, or

(c) any colony.

(3) That power includes power to extend, subject to such exceptions and modifications as may be specified in the Order, any Order in Council made under section 221 (further provision as to qualification for design right protection) or section 256 (countries enjoying reciprocal protection).

(4) The legislature of a country to which this Part has been extended may modify or add to the provisions of this Part, in their operation as part of the law of that country, as the legislature may consider necessary to adapt the provisions to the circumstances of that country; but not so as to deny design right protection in a case where it would otherwise exist.

(5) Where a country to which this Part extends ceases to be a colony of the United Kingdom, it shall continue to be treated as such a country for the purposes of this Part until—

(a) an Order in Council is made under section 256 designating it as a country enjoying reciprocal protection, or

(b) an Order in Council is made declaring that it shall cease to be so treated by reason of the fact that the provisions of this Part as part of the law of that country have been amended or repealed.

(6) A statutory instrument containing an Order in Council under subsection (5)(b) shall be subject to annulment in pursuance of a resolution of either House of Parliament.

**256.**—(1) Her Majesty may, if it appears to Her that the law of a country provides adequate protection for British designs, by Order in Council designate that country as one enjoying reciprocal protection under this Part.    Countries enjoying reciprocal protection.

(2) If the law of a country provides adequate protection only for certain classes of British design, or only for designs applied to certain classes of article, any Order designating that country shall contain provision limiting, to a corresponding extent, the protection afforded by this Part in relation to designs connected with that country.

118        c. **48**          *Copyright, Designs and Patents*

PART III          (3) An Order under this section shall be subject to annulment in pursuance of a resolution of either House of Parliament.

Territorial waters and the continental shelf.          **257.**—(1) For the purposes of this Part the territorial waters of the United Kingdom shall be treated as part of the United Kingdom.

(2) This Part applies to things done in the United Kingdom sector of the continental shelf on a structure or vessel which is present there for purposes directly connected with the exploration of the sea bed or subsoil or the exploitation of their natural resources as it applies to things done in the United Kingdom.

1964 c. 29.          (3) The United Kingdom sector of the continental shelf means the areas designated by order under section 1(7) of the Continental Shelf Act 1964.

*Interpretation*

Construction of references to design right owner.          **258.**—(1) Where different persons are (whether in consequence of a partial assignment or otherwise) entitled to different aspects of design right in a work, the design right owner for any purpose of this Part is the person who is entitled to the right in the respect relevant for that purpose.

(2) Where design right (or any aspect of design right) is owned by more than one person jointly, references in this Part to the design right owner are to all the owners, so that, in particular, any requirement of the licence of the design right owner requires the licence of all of them.

Joint designs.          **259.**—(1) In this Part a "joint design" means a design produced by the collaboration of two or more designers in which the contribution of each is not distinct from that of the other or others.

(2) References in this Part to the designer of a design shall, except as otherwise provided, be construed in relation to a joint design as references to all the designers of the design.

Application of provisions to articles in kit form.          **260.**—(1) The provisions of this Part apply in relation to a kit, that is, a complete or substantially complete set of components intended to be assembled into an article, as they apply in relation to the assembled article.

(2) Subsection (1) does not affect the question whether design right subsists in any aspect of the design of the components of a kit as opposed to the design of the assembled article.

Requirement of signature: application in relation to body corporate.          **261.** The requirement in the following provisions that an instrument be signed by or on behalf of a person is also satisfied in the case of a body corporate by the affixing of its seal—

section 222(3) (assignment of design right),

section 223(1) (assignment of future design right),

section 225(1) (grant of exclusive licence).

Adaptation of expressions in relation to Scotland.          **262.** In the application of this Part to Scotland—

"account of profits" means accounting and payment of profits;

"accounts" means count, reckoning and payment;

"assignment" means assignation;

*Copyright, Designs and Patents*          c. **48**          119

"costs" means expenses;

"defendant" means defender;

"delivery up" means delivery;

"injunction" means interdict;

"interlocutory relief" means interim remedy; and

"plaintiff" means pursuer.

263.—(1) In this Part—                                     Minor definitions.

"British design" means a design which qualifies for design right protection by reason of a connection with the United Kingdom of the designer or the person by whom the design is commissioned or the designer is employed;

"business" includes a trade or profession;

"commission" means a commission for money or money's worth;

"the comptroller" means the Comptroller-General of Patents, Designs and Trade Marks;

"computer-generated", in relation to a design, means that the design is generated by computer in circumstances such that there is no human designer,

"country" includes any territory;

"the Crown" includes the Crown in right of Her Majesty's Government in Northern Ireland;

"design document" means any record of a design, whether in the form of a drawing, a written description, a photograph, data stored in a computer or otherwise;

"employee", "employment" and "employer" refer to employment under a contract of service or of apprenticeship;

"government department" includes a Northern Ireland department.

(2) References in this Part to "marketing", in relation to an article, are to its being sold or let for hire, or offered or exposed for sale or hire, in the course of a business, and related expressions shall be construed accordingly; but no account shall be taken for the purposes of this Part of marketing which is merely colourable and not intended to satisfy the reasonable requirements of the public.

(3) References in this Part to an act being done in relation to an article for "commercial purposes" are to its being done with a view to the article in question being sold or hired in the course of a business.

264. The following Table shows provisions defining or otherwise   Index of defined explaining expressions used in this Part (other than provisions defining or   expressions. explaining an expression used only in the same section)—

| | |
|---|---|
| account of profits and accounts (in Scotland) | section 262 |
| assignment (in Scotland) | section 262 |
| British designs | section 263(1) |
| business | section 263(1) |
| commercial purposes | section 263(3) |
| commission | section 263(1) |
| the comptroller | section 263(1) |
| computer-generated | section 263(1) |

120        c. **48**        *Copyright, Designs and Patents*

PART III

| | |
|---|---|
| costs (in Scotland) | section 262 |
| country | section 263(1) |
| the Crown | section 263(1) |
| Crown use | sections 240(5) and 244(2) |
| defendant (in Scotland) | section 262 |
| delivery up (in Scotland) | section 262 |
| design | section 213(2) |
| design document | section 263(1) |
| designer | sections 214 and 259(2) |
| design right | section 213(1) |
| design right owner | sections 234(2) and 258 |
| employee, employment and employer | section 263(1) |
| exclusive licence | section 225(1) |
| government department | section 263(1) |
| government department concerned (in relation to Crown use) | section 240(5) |
| infringing article | section 228 |
| injunction (in Scotland) | section 262 |
| interlocutory relief (in Scotland) | section 262 |
| joint design | section 259(1) |
| licence (of the design right owner) | sections 222(4), 223(3) and 258 |
| making articles to a design | section 226(2) |
| marketing (and related expressions) | section 263(2) |
| original | section 213(4) |
| plaintiff (in Scotland) | section 262 |
| qualifying individual | section 217(1) |
| qualifying person | sections 217(1) and (2) |
| signed | section 261 |

## PART IV

### REGISTERED DESIGNS

#### *Amendments of the Registered Designs Act 1949*

Registrable designs.
1949 c. 88.

**265.**—(1) For section 1 of the Registered Designs Act 1949 (designs registrable under that Act) substitute—

"Designs registrable under Act.

1.—(1) In this Act 'design' means features of shape, configuration, pattern or ornament applied to an article by any industrial process, being features which in the finished article appeal to and are judged by the eye, but does not include—

(a) a method or principle of construction, or

(b) features of shape or configuration of an article which—

(i) are dictated solely by the function which the article has to perform, or

(ii) are dependent upon the appearance of another article of which the article is intended by the author of the design to form an integral part.

(2) A design which is new may, upon application by the person claiming to be the proprietor, be registered under this Act in respect of any article, or set of articles, specified in the application.

(3) A design shall not be registered in respect of an article if the appearance of the article is not material, that is, if aesthetic considerations are not normally taken into account to a material extent by persons acquiring or using articles of that description, and would not be so taken into account if the design were to be applied to the article.

PART IV

(4) A design shall not be regarded as new for the purposes of this Act if it is the same as a design—

(a) registered in respect of the same or any other article in pursuance of a prior application, or

(b) published in the United Kingdom in respect of the same or any other article before the date of the application,

or if it differs from such a design only in immaterial details or in features which are variants commonly used in the trade.

This subsection has effect subject to the provisions of sections 4, 6 and 16 of this Act.

(5) The Secretary of State may by rules provide for excluding from registration under this Act designs for such articles of a primarily literary or artistic character as the Secretary of State thinks fit.".

(2) The above amendment does not apply in relation to applications for registration made before the commencement of this Part; but the provisions of section 266 apply with respect to the right in certain designs registered in pursuance of such an application.

**266.**—(1) Where a design is registered under the Registered Designs Act 1949 in pursuance of an application made after 12th January 1988 and before the commencement of this Part which could not have been registered under section 1 of that Act as substituted by section 265 above—

Provisions with respect to certain designs registered in pursuance of application made before commencement.
1949 c. 88.

(a) the right in the registered design expires ten years after the commencement of this Part, if it does not expire earlier in accordance with the 1949 Act, and

(b) any person is, after the commencement of this Part, entitled as of right to a licence to do anything which would otherwise infringe the right in the registered design.

(2) The terms of a licence available by virtue of this section shall, in default of agreement, be settled by the registrar on an application by the person requiring the licence; and the terms so settled shall authorise the licensee to do everything which would be an infringement of the right in the registered design in the absence of a licence.

(3) In settling the terms of a licence the registrar shall have regard to such factors as may be prescribed by the Secretary of State by order made by statutory instrument.

No such order shall be made unless a draft of it has been laid before and approved by a resolution of each House of Parliament.

122      c. **48**        *Copyright, Designs and Patents*

PART IV

(4) Where the terms of a licence are settled by the registrar, the licence has effect from the date on which the application to the registrar was made.

(5) Section 11B of the 1949 Act (undertaking to take licence of right in infringement proceedings), as inserted by section 270 below, applies where a licence is available as of right under this section, as it applies where a licence is available as of right under section 11A of that Act.

(6) Where a licence is available as of right under this section, a person to whom a licence was granted before the commencement of this Part may apply to the registrar for an order adjusting the terms of that licence.

(7) An appeal lies from any decision of the registrar under this section.

1949 c. 88.

(8) This section shall be construed as one with the Registered Designs Act 1949.

Authorship and first ownership of designs.

**267.**—(1) Section 2 of the Registered Designs Act 1949 (proprietorship of designs) is amended as follows.

(2) For subsection (1) substitute—

"(1) The author of a design shall be treated for the purposes of this Act as the original proprietor of the design, subject to the following provisions.

(1A) Where a design is created in pursuance of a commission for money or money's worth, the person commissioning the design shall be treated as the original proprietor of the design.

(1B) Where, in a case not falling within subsection (1A), a design is created by an employee in the course of his employment, his employer shall be treated as the original proprietor of the design.".

(3) After subsection (2) insert—

"(3) In this Act the 'author' of a design means the person who creates it.

(4) In the case of a design generated by computer in circumstances such that there is no human author, the person by whom the arrangements necessary for the creation of the design are made shall be taken to be the author.".

(4) The amendments made by this section do not apply in relation to an application for registration made before the commencement of this Part.

Right given by registration of design.

**268.**—(1) For section 7 of the Registered Designs Act 1949 (right given by registration) substitute—

"Right given by registration.

7.—(1) The registration of a design under this Act gives the registered proprietor the exclusive right—

(a) to make or import —

(i) for sale or hire, or

(ii) for use for the purposes of a trade or business, or

(b) to sell, hire or offer or expose for sale or hire,    PART IV

an article in respect of which the design is registered and to which that design or a design not substantially different from it has been applied.

(2) The right in the registered design is infringed by a person who without the licence of the registered proprietor does anything which by virtue of subsection (1) is the exclusive right of the proprietor.

(3) The right in the registered design is also infringed by a person who without the licence of the registered proprietor makes anything for enabling any such article to be made, in the United Kingdom or elsewhere, as mentioned in subsection (1).

(4) The right in the registered design is also infringed by a person who without the licence of the registered proprietor—

(a) does anything in relation to a kit that would be an infringement if done in relation to the assembled article (see subsection (1)), or

(b) makes anything for enabling a kit to be made or assembled, in the United Kingdom or elsewhere, if the assembled article would be such an article as is mentioned in subsection (1);

and for this purpose a 'kit' means a complete or substantially complete set of components intended to be assembled into an article.

(5) No proceedings shall be taken in respect of an infringement committed before the date on which the certificate of registration of the design under this Act is granted.

(6) The right in a registered design is not infringed by the reproduction of a feature of the design which, by virtue of section 1(1)(b), is left out of account in determining whether the design is registrable.".

(2) The above amendment does not apply in relation to a design registered in pursuance of an application made before the commencement of this Part.

**269.**—(1) For section 8 of the Registered Designs Act 1949 (period of right) substitute—    Duration of right in registered design.

"Duration of right in registered design.    8.—(1) The right in a registered design subsists in the first instance for a period of five years from the date of the registration of the design.    1949 c. 88.

(2) The period for which the right subsists may be extended for a second, third, fourth and fifth period of five years, by applying to the registrar for an extension and paying the prescribed renewal fee.

124          c. **48**          *Copyright, Designs and Patents*

(3) If the first, second, third or fourth period expires without such application and payment being made, the right shall cease to have effect; and the registrar shall, in accordance with rules made by the Secretary of State, notify the proprietor of that fact.

(4) If during the period of six months immediately following the end of that period an application for extension is made and the prescribed renewal fee and any prescribed additional fee is paid, the right shall be treated as if it had never expired, with the result that—

(a) anything done under or in relation to the right during that further period shall be treated as valid,

(b) an act which would have constituted an infringement of the right if it had not expired shall be treated as an infringement, and

(c) an act which would have constituted use of the design for the services of the Crown if the right had not expired shall be treated as such use.

(5) Where it is shown that a registered design—

(a) was at the time it was registered a corresponding design in relation to an artistic work in which copyright subsists, and

(b) by reason of a previous use of that work would not have been registrable but for section 6(4) of this Act (registration despite certain prior applications of design),

the right in the registered design expires when the copyright in that work expires, if that is earlier than the time at which it would otherwise expire, and it may not thereafter be renewed.

(6) The above provisions have effect subject to the proviso to section 4(1) (registration of same design in respect of other articles, &c.).

Restoration of lapsed right in design.

8A.—(1) Where the right in a registered design has expired by reason of a failure to extend, in accordance with section 8(2) or (4), the period for which the right subsists, an application for the restoration of the right in the design may be made to the registrar within the prescribed period.

(2) The application may be made by the person who was the registered proprietor of the design or by any other person who would have been entitled to the right in the design if it had not expired; and where the design was held by two or more persons jointly, the application may, with the leave of the registrar, be made by one or more of them without joining the others.

(3) Notice of the application shall be published by the registrar in the prescribed manner.

(4) If the registrar is satisfied that the proprietor took reasonable care to see that the period for which the right subsisted was extended in accordance with section 8(2) or (4), he shall, on payment of any unpaid renewal fee and any prescribed additional fee, order the restoration of the right in the design.

(5) The order may be made subject to such conditions as the registrar thinks fit, and if the proprietor of the design does not comply with any condition the registrar may revoke the order and give such consequential directions as he thinks fit.

(6) Rules altering the period prescribed for the purposes of subsection (1) may contain such transitional provisions and savings as appear to the Secretary of State to be necessary or expedient.

*Effect of order for restoration of right.*

8B.—(1) The effect of an order under section 8A for the restoration of the right in a registered design is as follows.

(2) Anything done under or in relation to the right during the period between expiry and restoration shall be treated as valid.

(3) Anything done during that period which would have constituted an infringement if the right had not expired shall be treated as an infringement—

    (a) if done at a time when it was possible for an application for extension to be made under section 8(4); or

    (b) if it was a continuation or repetition of an earlier infringing act.

(4) If, after it was no longer possible for such an application for extension to be made and before publication of notice of the application for restoration, a person—

    (a) began in good faith to do an act which would have constituted an infringement of the right in the design if it had not expired, or

    (b) made in good faith effective and serious preparations to do such an act,

he has the right to continue to do the act or, as the case may be, to do the act, notwithstanding the restoration of the right in the design; but this does not extend to granting a licence to another person to do the act.

(5) If the act was done, or the preparations were made, in the course of a business, the person entitled to the right conferred by subsection (4) may—

    (a) authorise the doing of that act by any partners of his for the time being in that business, and

126        c. **48**        *Copyright, Designs and Patents*

PART IV

      (b) assign that right, or transmit it on death (or in the case of a body corporate on its dissolution), to any person who acquires that part of the business in the course of which the act was done or the preparations were made.

      (6) Where an article is disposed of to another in exercise of the rights conferred by subsection (4) or subsection (5), that other and any person claiming through him may deal with the article in the same way as if it had been disposed of by the registered proprietor of the design.

      (7) The above provisions apply in relation to the use of a registered design for the services of the Crown as they apply in relation to infringement of the right in the design.".

    (2) The above amendment does not apply in relation to the right in a design registered in pursuance of an application made before the commencement of this Part.

Powers exercisable for protection of the public interest. 1949 c. 88.

**270.** In the Registered Designs Act 1949 after section 11 insert—

"Powers exercisable for protection of the public interest.

    11A.—(1) Where a report of the Monopolies and Mergers Commission has been laid before Parliament containing conclusions to the effect—

      (a) on a monopoly reference, that a monopoly situation exists and facts found by the Commission operate or may be expected to operate against the public interest,

      (b) on a merger reference, that a merger situation qualifying for investigation has been created and the creation of the situation, or particular elements in or consequences of it specified in the report, operate or may be expected to operate against the public interest,

      (c) on a competition reference, that a person was engaged in an anti-competitive practice which operated or may be expected to operate against the public interest, or

      (d) on a reference under section 11 of the Competition Act 1980 (reference of public bodies and certain other persons), that a person is pursuing a course of conduct which operates against the public interest,

the appropriate Minister or Ministers may apply to the registrar to take action under this section.

    (2) Before making an application the appropriate Minister or Ministers shall publish, in such a manner as he or they think appropriate, a notice describing the nature of the proposed application and shall consider any representations which may be made within 30 days of such publication by persons whose interests appear to him or them to be affected.

PART IV

(3) If on an application under this section it appears to the registrar that the matters specified in the Commission's report as being those which in the Commission's opinion operate or operated or may be expected to operate against the public interest include—

(a) conditions in licences granted in respect of a registered design by its proprietor restricting the use of the design by the licensee or the right of the proprietor to grant other licences, or

(b) a refusal by the proprietor of a registered design to grant licences on reasonable terms,

he may by order cancel or modify any such condition or may, instead or in addition, make an entry in the register to the effect that licences in respect of the design are to be available as of right.

(4) The terms of a licence available by virtue of this section shall, in default of agreement, be settled by the registrar on an application by the person requiring the licence; and terms so settled shall authorise the licensee to do everything which would be an infringement of the right in the registered design in the absence of a licence.

(5) Where the terms of a licence are settled by the registrar the licence has effect from the date on which the application to him was made.

(6) An appeal lies from any order of the registrar under this section.

(7) In this section 'the appropriate Minister or Ministers' means the Minister or Ministers to whom the report of the Monopolies and Mergers Commission was made.

Undertaking to take licence of right in infringement proceedings.

11B.—(1) If in proceedings for infringement of the right in a registered design in respect of which a licence is available as of right under section 11A of this Act the defendant undertakes to take a licence on such terms as may be agreed or, in default of agreement, settled by the registrar under that section—

(a) no injunction shall be granted against him, and

(b) the amount recoverable against him by way of damages or on an account of profits shall not exceed double the amount which would have been payable by him as licensee if such a licence on those terms had been granted before the earliest infringement.

(2) An undertaking may be given at any time before final order in the proceedings, without any admission of liability.

(3) Nothing in this section affects the remedies available in respect of an infringement committed before licences of right were available.".

128    c. **48**    *Copyright, Designs and Patents*

PART IV
Crown use:
compensation for
loss of profit.
1949 c. 88.

271.—(1) In Schedule 1 to the Registered Designs Act 1949 (Crown use), after paragraph 2 insert —

"Compensation
for loss of profit.

2A.—(1) Where Crown use is made of a registered design, the government department concerned shall pay—

(a) to the registered proprietor, or

(b) if there is an exclusive licence in force in respect of the design, to the exclusive licensee,

compensation for any loss resulting from his not being awarded a contract to supply the articles to which the design is applied.

(2) Compensation is payable only to the extent that such a contract could have been fulfilled from his existing manufacturing capacity; but is payable notwithstanding the existence of circumstances rendering him ineligible for the award of such a contract.

(3) In determining the loss, regard shall be had to the profit which would have been made on such a contract and to the extent to which any manufacturing capacity was underused.

(4) No compensation is payable in respect of any failure to secure contracts for the supply of articles to which the design is applied otherwise than for the services of the Crown.

(5) The amount payable under this paragraph shall, if not agreed between the registered proprietor or licensee and the government department concerned with the approval of the Treasury, be determined by the court on a reference under paragraph 3; and it is in addition to any amount payable under paragraph 1 or 2 of this Schedule.

(6) In this paragraph—

'Crown use', in relation to a design, means the doing of anything by virtue of paragraph 1 which would otherwise be an infringement of the right in the design; and

'the government department concerned', in relation to such use, means the government department by whom or on whose authority the act was done.".

(2) In paragraph 3 of that Schedule (reference of disputes as to Crown use), for sub-paragraph (1) substitute—

"(1) Any dispute as to—

(a) the exercise by a Government department, or a person authorised by a Government department, of the powers conferred by paragraph 1 of this Schedule,

(b) terms for the use of a design for the services of the Crown under that paragraph,

(c) the right of any person to receive any part of a payment made under paragraph 1(3), or

(d) the right of any person to receive a payment under
paragraph 2A,

PART IV

may be referred to the court by either party to the dispute.".

(3) The above amendments apply in relation to any Crown use of a
registered design after the commencement of this section, even if the terms
for such use were settled before commencement.

**272.** The Registered Designs Act 1949 is further amended in
accordance with Schedule 3 which contains minor amendments and
amendments consequential upon the provisions of this Act.

Minor and
consequential
amendments.
1949 c. 88.

### *Supplementary*

**273.** Schedule 4 contains the text of the Registered Designs Act 1949 as
amended.

Text of Registered
Designs Act 1949
as amended.

## PART V

### PATENT AGENTS AND TRADE MARK AGENTS

#### *Patent agents*

**274.**—(1) Any individual, partnership or body corporate may, subject
to the following provisions of this Part, carry on the business of acting as
agent for others for the purpose of—

Persons permitted
to carry on
business of a
patent agent.

(a) applying for or obtaining patents, in the United Kingdom or
elsewhere, or

(b) conducting proceedings before the comptroller relating to
applications for, or otherwise in connection with, patents.

(2) This does not affect any restriction under the European Patent
Convention as to who may act on behalf of another for any purpose
relating to European patents.

**275.**—(1) The Secretary of State may make rules requiring the keeping
of a register of persons who act as agent for others for the purposes of
applying for or obtaining patents; and in this Part a "registered patent
agent" means a person whose name is entered in the register kept under
this section.

The register of
patent agents.

(2) The rules may contain such provision as the Secretary of State
thinks fit regulating the registration of persons, and may in particular—

(a) require the payment of such fees as may be prescribed, and

(b) authorise in prescribed cases the erasure from the register of the
name of any person registered in it, or the suspension of a
person's registration.

(3) The rules may delegate the keeping of the register to another person,
and may confer on that person—

(a) power to make regulations—

(i) with respect to the payment of fees, in the cases and
subject to the limits prescribed by rules, and

(ii) with respect to any other matter which could be
regulated by rules, and

130    c. **48**    *Copyright, Designs and Patents*

PART V

(b) such other functions, including disciplinary functions, as may be prescribed by rules.

(4) Rules under this section shall be made by statutory instrument which shall be subject to annulment in pursuance of a resolution of either House of Parliament.

Persons entitled to describe themselves as patent agents.

**276.**—(1) An individual who is not a registered patent agent shall not—

(a) carry on a business (otherwise than in partnership) under any name or other description which contains the words "patent agent" or "patent attorney"; or

(b) in the course of a business otherwise describe himself, or permit himself to be described, as a "patent agent" or "patent attorney".

(2) A partnership shall not—

(a) carry on a business under any name or other description which contains the words "patent agent" or "patent attorney"; or

(b) in the course of a business otherwise describe itself, or permit itself to be described as, a firm of "patent agents" or "patent attorneys",

unless all the partners are registered patent agents or the partnership satisfies such conditions as may be prescribed for the purposes of this section.

(3) A body corporate shall not—

(a) carry on a business (otherwise than in partnership) under any name or other description which contains the words "patent agent" or "patent attorney"; or

(b) in the course of a business otherwise describe itself, or permit itself to be described as, a "patent agent" or "patent attorney",

unless all the directors of the body corporate are registered patent agents or the body satisfies such conditions as may be prescribed for the purposes of this section.

(4) Subsection (3) does not apply to a company which began to carry on business as a patent agent before 17th November 1917 if the name of a director or the manager of the company who is a registered patent agent is mentioned as being so registered in all professional advertisements, circulars or letters issued by or with the company's consent on which its name appears.

(5) Where this section would be contravened by the use of the words "patent agent" or "patent attorney" in reference to an individual, partnership or body corporate, it is equally contravened by the use of other expressions in reference to that person, or his business or place of business, which are likely to be understood as indicating that he is entitled to be described as a "patent agent" or "patent attorney".

(6) A person who contravenes this section commits an offence and is liable on summary conviction to a fine not exceeding level 5 on the standard scale; and proceedings for such an offence may be begun at any time within a year from the date of the offence.

(7) This section has effect subject to—

    PART V

(a) section 277 (persons entitled to describe themselves as European patent attorneys, &c.), and

(b) section 278(1) (use of term "patent attorney" in reference to solicitors).

**277.**—(1) The term "European patent attorney" or "European patent agent" may be used in the following cases without any contravention of section 276.

Persons entitled to describe themselves as European patent attorneys, &c.

(2) An individual who is on the European list may—

(a) carry on business under a name or other description which contains the words "European patent attorney" or "European patent agent", or

(b) otherwise describe himself, or permit himself to be described, as a "European patent attorney" or "European patent agent".

(3) A partnership of which not less than the prescribed number or proportion of partners is on the European list may—

(a) carry on a business under a name or other description which contains the words "European patent attorneys" or "European patent agents", or

(b) otherwise describe itself, or permit itself to be described, as a firm which carries on the business of a "European patent attorney" or "European patent agent".

(4) A body corporate of which not less than the prescribed number or proportion of directors is on the European list may—

(a) carry on a business under a name or other description which contains the words "European patent attorney" or "European patent agent", or

(b) otherwise describe itself, or permit itself to be described as, a company which carries on the business of a "European patent attorney" or "European patent agent".

(5) Where the term "European patent attorney" or "European patent agent" may, in accordance with this section, be used in reference to an individual, partnership or body corporate, it is equally permissible to use other expressions in reference to that person, or to his business or place of business, which are likely to be understood as indicating that he is entitled to be described as a "European patent attorney" or "European patent agent."

**278.**—(1) The term "patent attorney" may be used in reference to a solicitor, and a firm of solicitors may be described as a firm of "patent attorneys", without any contravention of section 276.

Use of the term "patent attorney": supplementary provisions.

(2) No offence is committed under the enactments restricting the use of certain expressions in reference to persons not qualified to act as solicitors—

(a) by the use of the term "patent attorney" in reference to a registered patent agent, or

(b) by the use of the term "European patent attorney" in reference to a person on the European list.

132        c. **48**            *Copyright, Designs and Patents*

Part V
1974 c. 37.
1980 c. 46.
S.I. 1976/582
(N.I.12).

(3) The enactments referred to in subsection (2) are section 21 of the Solicitors Act 1974, section 31 of the Solicitors (Scotland) Act 1980 and Article 22 of the Solicitors (Northern Ireland) Order 1976.

Power to prescribe conditions, &c. for mixed partnerships and bodies corporate.

**279.**—(1) The Secretary of State may make rules—

(a) prescribing the conditions to be satisfied for the purposes of section 276 (persons entitled to describe themselves as patent agents) in relation to a partnership where not all the partners are qualified persons or a body corporate where not all the directors are qualified persons, and

(b) imposing requirements to be complied with by such partnerships and bodies corporate.

(2) The rules may, in particular—

(a) prescribe conditions as to the number or proportion of partners or directors who must be qualified persons;

(b) impose requirements as to—

(i) the identification of qualified and unqualified persons in professional advertisements, circulars or letters issued by or with the consent of the partnership or body corporate and which relate to it or to its business; and

(ii) the manner in which a partnership or body corporate is to organise its affairs so as to secure that qualified persons exercise a sufficient degree of control over the activities of unqualified persons.

(3) Contravention of a requirement imposed by the rules is an offence for which a person is liable on summary conviction to a fine not exceeding level 5 on the standard scale.

(4) The Secretary of State may make rules prescribing for the purposes of section 277 the number or proportion of partners of a partnership or directors of a body corporate who must be qualified persons in order for the partnership or body to take advantage of that section.

(5) In this section "qualified person"—

(a) in subsections (1) and (2), means a person who is a registered patent agent, and

(b) in subsection (4), means a person who is on the European list.

(6) Rules under this section shall be made by statutory instrument which shall be subject to annulment in pursuance of a resolution of either House of Parliament.

Privilege for communications with patent agents.

**280.**—(1) This section applies to communications as to any matter relating to the protection of any invention, design, technical information, trade mark or service mark, or as to any matter involving passing off.

(2) Any such communication—

(a) between a person and his patent agent, or

(b) for the purpose of obtaining, or in response to a request for, information which a person is seeking for the purpose of instructing his patent agent,

PART V

is privileged from disclosure in legal proceedings in England, Wales or Northern Ireland in the same way as a communication between a person and his solicitor or, as the case may be, a communication for the purpose of obtaining, or in response to a request for, information which a person seeks for the purpose of instructing his solicitor.

(3) In subsection (2) "patent agent" means—

(a) a registered patent agent or a person who is on the European list,

(b) a partnership entitled to describe itself as a firm of patent agents or as a firm carrying on the business of a European patent attorney, or

(c) a body corporate entitled to describe itself as a patent agent or as a company carrying on the business of a European patent attorney.

(4) It is hereby declared that in Scotland the rules of law which confer privilege from disclosure in legal proceedings in respect of communications extend to such communications as are mentioned in this section.

**281.**—(1) This section applies to business under the Patents Act 1949, the Registered Designs Act 1949 or the Patents Act 1977.

Power of comptroller to refuse to deal with certain agents.
1949 c. 87.
1949 c. 88.
1977 c. 37.

(2) The Secretary of State may make rules authorising the comptroller to refuse to recognise as agent in respect of any business to which this section applies—

(a) a person who has been convicted of an offence under section 88 of the Patents Act 1949, section 114 of the Patents Act 1977 or section 276 of this Act;

(b) an individual whose name has been erased from and not restored to, or who is suspended from, the register of patent agents on the ground of misconduct;

(c) a person who is found by the Secretary of State to have been guilty of such conduct as would, in the case of an individual registered in the register of patent agents, render him liable to have his name erased from the register on the ground of misconduct;

(d) a partnership or body corporate of which one of the partners or directors is a person whom the comptroller could refuse to recognise under paragraph (a), (b) or (c) above.

(3) The rules may contain such incidental and supplementary provisions as appear to the Secretary of State to be appropriate and may, in particular, prescribe circumstances in which a person is or is not to be taken to have been guilty of misconduct.

(4) Rules made under this section shall be made by statutory instrument which shall be subject to annulment in pursuance of a resolution of either House of Parliament.

134        c. **48**           *Copyright, Designs and Patents*

PART V        (5) The comptroller shall refuse to recognise as agent in respect of any business to which this section applies a person who neither resides nor has a place of business in the United Kingdom, the Isle of Man or another member State of the European Economic Community.

### *Trade mark agents*

The register of trade mark agents.

**282.**—(1) The Secretary of State may make rules requiring the keeping of a register of persons who act as agent for others for the purpose of applying for or obtaining the registration of trade marks; and in this Part a "registered trade mark agent" means a person whose name is entered in the register kept under this section.

(2) The rules may contain such provision as the Secretary of State thinks fit regulating the registration of persons, and may in particular—

   (a) require the payment of such fees as may be prescribed, and

   (b) authorise in prescribed cases the erasure from the register of the name of any person registered in it, or the suspension of a person's registration.

(3) The rules may delegate the keeping of the register to another person, and may confer on that person—

   (a) power to make regulations—

        (i) with respect to the payment of fees, in the cases and subject to the limits prescribed by rules, and

        (ii) with respect to any other matter which could be regulated by rules, and

   (b) such other functions, including disciplinary functions, as may be prescribed by rules.

(4) Rules under this section shall be made by statutory instrument which shall be subject to annulment in pursuance of a resolution of either House of Parliament.

Unregistered persons not to be described as registered trade mark agents.

**283.**—(1) An individual who is not a registered trade mark agent shall not—

   (a) carry on a business (otherwise than in partnership) under any name or other description which contains the words "registered trade mark agent"; or

   (b) in the course of a business otherwise describe or hold himself out, or permit himself to be described or held out, as a registered trade mark agent.

(2) A partnership shall not—

   (a) carry on a business under any name or other description which contains the words "registered trade mark agent"; or

   (b) in the course of a business otherwise describe or hold itself out, or permit itself to be described or held out, as a firm of registered trade mark agents,

unless all the partners are registered trade mark agents or the partnership satisfies such conditions as may be prescribed for the purposes of this section.

(3) A body corporate shall not—

    (a) carry on a business (otherwise than in partnership) under any name or other description which contains the words "registered trade mark agent"; or

    (b) in the course of a business otherwise describe or hold itself out, or permit itself to be described or held out, as a registered trade mark agent,

unless all the directors of the body corporate are registered trade mark agents or the body satisfies such conditions as may be prescribed for the purposes of this section.

(4) The Secretary of State may make rules prescribing the conditions to be satisfied for the purposes of this section in relation to a partnership where not all the partners are registered trade mark agents or a body corporate where not all the directors are registered trade mark agents; and the rules may, in particular, prescribe conditions as to the number or proportion of partners or directors who must be registered trade mark agents.

(5) Rules under this section shall be made by statutory instrument which shall be subject to annulment in pursuance of a resolution of either House of Parliament.

(6) A person who contravenes this section commits an offence and is liable on summary conviction to a fine not exceeding level 5 on the standard scale; and proceedings for such an offence may be begun at any time within a year from the date of the offence.

**284.**—(1) This section applies to communications as to any matter relating to the protection of any design, trade mark or service mark, or as to any matter involving passing off.

Privilege for communications with registered trade mark agents.

(2) Any such communication—

    (a) between a person and his trade mark agent, or

    (b) for the purpose of obtaining, or in response to a request for, information which a person is seeking for the purpose of instructing his trade mark agent,

is privileged from disclosure in legal proceedings in England, Wales or Northern Ireland in the same way as a communication between a person and his solicitor or, as the case may be, a communication for the purpose of obtaining, or in response to a request for, information which a person seeks for the purpose of instructing his solicitor.

(3) In subsection (1) "trade mark agent" means—

    (a) a registered trade mark agent, or

    (b) a partnership entitled to describe itself as a firm of registered trade mark agents, or

    (c) a body corporate entitled to describe itself as a registered trade mark agent.

(4) It is hereby declared that in Scotland the rules of law which confer privilege from disclosure in legal proceedings in respect of communications extend to such communications as are mentioned in subsection (1).

136       c. **48**          *Copyright, Designs and Patents*

Part V

Offences
committed by
partnerships and
bodies corporate.

1980 c. 43.
S.I. 1981/1675
(N.I. 26).

Interpretation.

*Supplementary*

**285.**—(1) Proceedings for an offence under this Part alleged to have been committed by a partnership shall be brought in the name of the partnership and not in that of the partners; but without prejudice to any liability of theirs under subsection (4) below.

(2) The following provisions apply for the purposes of such proceedings as in relation to a body corporate—

(a) any rules of court relating to the service of documents;

(b) in England, Wales or Northern Ireland, Schedule 3 to the Magistrates' Courts Act 1980 or Schedule 4 to the Magistrates' Courts (Northern Ireland) Order 1981 (procedure on charge of offence).

(3) A fine imposed on a partnership on its conviction in such proceedings shall be paid out of the partnership assets.

(4) Where a partnership is guilty of an offence under this Part, every partner, other than a partner who is proved to have been ignorant of or to have attempted to prevent the commission of the offence, is also guilty of the offence and liable to be proceeded against and punished accordingly.

(5) Where an offence under this Part committed by a body corporate is proved to have been committed with the consent or connivance of a director, manager, secretary or other similar officer of the body, or a person purporting to act in any such capacity, he as well as the body corporate is guilty of the offence and liable to be proceeded against and punished accordingly.

**286.** In this Part—

"the comptroller" means the Comptroller-General of Patents, Designs and Trade Marks;

"director", in relation to a body corporate whose affairs are managed by its members, means any member of the body corporate;

"the European list" means the list of professional representatives maintained by the European Patent Office in pursuance of the European Patent Convention;

"registered patent agent" has the meaning given by section 275(1);

"registered trade mark agent" has the meaning given by section 282(1).

Part VI

Patents

*Patents county courts*

Patents county
courts: special
jurisdiction.

**287.**—(1) The Lord Chancellor may by order made by statutory instrument designate any county court as a patents county court and confer on it jurisdiction (its "special jurisdiction") to hear and determine such descriptions of proceedings—

(a) relating to patents or designs, or

(b) ancillary to, or arising out of the same subject matter as, proceedings relating to patents or designs,

as may be specified in the order.

PART VI

(2) The special jurisdiction of a patents county court is exercisable throughout England and Wales, but rules of court may provide for a matter pending in one such court to be heard and determined in another or partly in that and partly in another.

(3) A patents county court may entertain proceedings within its special jurisdiction notwithstanding that no pecuniary remedy is sought.

(4) An order under this section providing for the discontinuance of any of the special jurisdiction of a patents county court may make provision as to proceedings pending in the court when the order comes into operation.

(5) Nothing in this section shall be construed as affecting the ordinary jurisdiction of a county court.

**288.**—(1) Her Majesty may by Order in Council provide for limits of amount or value in relation to any description of proceedings within the special jurisdiction of a patents county court.

Financial limits in relation to proceedings within special jurisdiction of patents county court.

(2) If a limit is imposed on the amount of a claim of any description and the plaintiff has a cause of action for more than that amount, he may abandon the excess; in which case a patents county court shall have jurisdiction to hear and determine the action, but the plaintiff may not recover more than that amount.

(3) Where the court has jurisdiction to hear and determine an action by virtue of subsection (2), the judgment of the court in the action is in full discharge of all demands in respect of the cause of action, and entry of the judgment shall be made accordingly.

(4) If the parties agree, by a memorandum signed by them or by their respective solicitors or other agents, that a patents county court shall have jurisdiction in any proceedings, that court shall have jurisdiction to hear and determine the proceedings notwithstanding any limit imposed under this section.

(5) No recommendation shall be made to Her Majesty to make an Order under this section unless a draft of the Order has been laid before and approved by a resolution of each House of Parliament.

**289.**—(1) No order shall be made under section 41 of the County Courts Act 1984 (power of High Court to order proceedings to be transferred from the county court) in respect of proceedings within the special jurisdiction of a patents county court.

Transfer of proceedings between High Court and patents county court.
1984 c. 28.

(2) In considering in relation to proceedings within the special jurisdiction of a patents county court whether an order should be made under section 40 or 42 of the County Courts Act 1984 (transfer of proceedings from or to the High Court), the court shall have regard to the financial position of the parties and may order the transfer of the proceedings to a patents county court or, as the case may be, refrain from ordering their transfer to the High Court notwithstanding that the proceedings are likely to raise an important question of fact or law.

138        c. **48**        *Copyright, Designs and Patents*

PART VI
Limitation of
costs where
pecuniary claim
could have been
brought in patents
county court.

**290.**—(1) Where an action is commenced in the High Court which could have been commenced in a patents county court and in which a claim for a pecuniary remedy is made, then, subject to the provisions of this section, if the plaintiff recovers less than the prescribed amount, he is not entitled to recover any more costs than those to which he would have been entitled if the action had been brought in the county court.

(2) For this purpose a plaintiff shall be treated as recovering the full amount recoverable in respect of his claim without regard to any deduction made in respect of matters not falling to be taken into account in determining whether the action could have been commenced in a patents county court.

(3) This section does not affect any question as to costs if it appears to the High Court that there was reasonable ground for supposing the amount recoverable in respect of the plaintiff's claim to be in excess of the prescribed amount.

(4) The High Court, if satisfied that there was sufficient reason for bringing the action in the High Court, may make an order allowing the costs or any part of the costs on the High Court scale or on such one of the county court scales as it may direct.

(5) This section does not apply to proceedings brought by the Crown.

(6) In this section "the prescribed amount" means such amount as may be prescribed by Her Majesty for the purposes of this section by Order in Council.

(7) No recommendation shall be made to Her Majesty to make an Order under this section unless a draft of the Order has been laid before and approved by a resolution of each House of Parliament.

**291.**—(1) Where a county court is designated a patents county court, the Lord Chancellor shall nominate a person entitled to sit as a judge of that court as the patents judge.

(2) County court rules shall make provision for securing that, so far as is practicable and appropriate—

(a) proceedings within the special jurisdiction of a patents county court are dealt with by the patents judge, and

(b) the judge, rather than a registrar or other officer of the court, deals with interlocutory matters in the proceedings.

(3) County court rules shall make provision empowering a patents county court in proceedings within its special jurisdiction, on or without the application of any party—

(a) to appoint scientific advisers or assessors to assist the court, or

(b) to order the Patent Office to inquire into and report on any question of fact or opinion.

(4) Where the court exercises either of those powers on the application of a party, the remuneration or fees payable to the Patent Office shall be at such rate as may be determined in accordance with county court rules and shall be costs of the proceedings unless otherwise ordered by the judge.

(5) Where the court exercises either of those powers of its own motion, the remuneration or fees payable to the Patent Office shall be at such rate as may be determined by the Lord Chancellor with the approval of the Treasury and shall be paid out of money provided by Parliament.

PART VI

**292.**—(1) A registered patent agent may do, in or in connection with proceedings in a patents county court which are within the special jurisdiction of that court, anything which a solicitor of the Supreme Court might do, other than prepare a deed.

(2) The Lord Chancellor may by regulations provide that the right conferred by subsection (1) shall be subject to such conditions and restrictions as appear to the Lord Chancellor to be necessary or expedient; and different provision may be made for different descriptions of proceedings.

(3) A patents county court has the same power to enforce an undertaking given by a registered patent agent acting in pursuance of this section as it has, by virtue of section 142 of the County Courts Act 1984, in relation to a solicitor.

(4) Nothing in section 143 of the County Courts Act 1984 (prohibition on persons other than solicitors receiving remuneration) applies to a registered patent agent acting in pursuance of this section.

(5) The provisions of county court rules prescribing scales of costs to be paid to solicitors apply in relation to registered patent agents acting in pursuance of this section.

(6) Regulations under this section shall be made by statutory instrument which shall be subject to annulment in pursuance of a resolution of either House of Parliament.

Rights and duties of registered patent agents in relation to proceedings in patents county court.

1984 c. 28.

*Licences of right in respect of certain patents*

**293.** In paragraph 4(2)(c) of Schedule 1 to the Patents Act 1977 (licences to be available as of right where term of existing patent extended), at the end insert ", but subject to paragraph 4A below", and after that paragraph insert—

Restriction of acts authorised by certain licences. 1977 c. 37.

"**4A.**—(1) If the proprietor of a patent for an invention which is a product files a declaration with the Patent Office in accordance with this paragraph, the licences to which persons are entitled by virtue of paragraph 4(2)(c) above shall not extend to a use of the product which is excepted by or under this paragraph.

(2) Pharmaceutical use is excepted, that is—

(a) use as a medicinal product within the meaning of the Medicines Act 1968, and

(b) the doing of any other act mentioned in section 60(1)(a) above with a view to such use.

(3) The Secretary of State may by order except such other uses as he thinks fit; and an order may—

(a) specify as an excepted use any act mentioned in section 60(1)(a) above, and

(b) make different provision with respect to acts done in different circumstances or for different purposes.

140        c. **48**            *Copyright, Designs and Patents*

(4) For the purposes of this paragraph the question what uses are excepted, so far as that depends on—

    (a) orders under section 130 of the Medicines Act 1968 (meaning of "medicinal product"), or

    (b) orders under sub-paragraph (3) above,

shall be determined in relation to a patent at the beginning of the sixteenth year of the patent.

(5) A declaration under this paragraph shall be in the prescribed form and shall be filed in the prescribed manner and within the prescribed time limits.

(6) A declaration may not be filed—

    (a) in respect of a patent which has at the commencement of section 293 of the Copyright, Designs and Patents Act 1988 passed the end of its fifteenth year; or

    (b) if at the date of filing there is—

        (i) an existing licence for any description of excepted use of the product, or

        (ii) an outstanding application under section 46(3)(a) or (b) above for the settlement by the comptroller of the terms of a licence for any description of excepted use of the product,

    and, in either case, the licence took or is to take effect at or after the end of the sixteenth year of the patent.

(7) Where a declaration has been filed under this paragraph in respect of a patent—

    (a) section 46(3)(c) above (restriction of remedies for infringement where licences available as of right) does not apply to an infringement of the patent in so far as it consists of the excepted use of the product after the filing of the declaration; and

    (b) section 46(3)(d) above (abatement of renewal fee if licences available as of right) does not apply to the patent.".

When application may be made for settlement of terms of licence.
1977 c. 37.

**294.** In Schedule 1 to the Patents Act 1977, after the paragraph inserted by section 293 above, insert—

"4B.—(1) An application under section 46(3)(a) or (b) above for the settlement by the comptroller of the terms on which a person is entitled to a licence by virtue of paragraph 4(2)(c) above is ineffective if made before the beginning of the sixteenth year of the patent.

(2) This paragraph applies to applications made after the commencement of section 294 of the Copyright, Designs and Patents Act 1988 and to any application made before the commencement of that section in respect of a patent which has not at the commencement of that section passed the end of its fifteenth year.".

*Copyright, Designs and Patents*     c. **48**     141

*Patents: miscellaneous amendments*     PART VI

**295.** The Patents Act 1949 and the Patents Act 1977 are amended in accordance with Schedule 5.

Patents: miscellaneous amendments.
1949 c. 87.

## PART VII

### MISCELLANEOUS AND GENERAL

*Devices designed to circumvent copy-protection*

**296.**—(1) This section applies where copies of a copyright work are issued to the public, by or with the licence of the copyright owner, in an electronic form which is copy-protected.

1977 c. 37.

Devices designed to circumvent copy-protection.

(2) The person issuing the copies to the public has the same rights against a person who, knowing or having reason to believe that it will be used to make infringing copies—

  (a) makes, imports, sells or lets for hire, offers or exposes for sale or hire, or advertises for sale or hire, any device or means specifically designed or adapted to circumvent the form of copy-protection employed, or

  (b) publishes information intended to enable or assist persons to circumvent that form of copy-protection,

as a copyright owner has in respect of an infringement of copyright.

(3) Further, he has the same rights under section 99 or 100 (delivery up or seizure of certain articles) in relation to any such device or means which a person has in his possession, custody or control with the intention that it should be used to make infringing copies of copyright works, as a copyright owner has in relation to an infringing copy.

(4) References in this section to copy-protection include any device or means intended to prevent or restrict copying of a work or to impair the quality of copies made.

(5) Expressions used in this section which are defined for the purposes of Part I of this Act (copyright) have the same meaning as in that Part.

(6) The following provisions apply in relation to proceedings under this section as in relation to proceedings under Part I (copyright)—

  (a) sections 104 to 106 of this Act (presumptions as to certain matters relating to copyright), and

  (b) section 72 of the Supreme Court Act 1981, section 15 of the Law Reform (Miscellaneous Provisions) (Scotland) Act 1985 and section 94A of the Judicature (Northern Ireland) Act 1978 (withdrawal of privilege against self-incrimination in certain proceedings relating to intellectual property);

1981 c. 54.
1985 c. 37.
1978 c. 23.

and section 114 of this Act applies, with the necessary modifications, in relation to the disposal of anything delivered up or seized by virtue of subsection (3) above.

142        c. **48**        *Copyright, Designs and Patents*

PART VII                    *Fraudulent reception of transmissions*

Offence of
fraudulently
receiving
programmes.

**297.**—(1) A person who dishonestly receives a programme included in a broadcasting or cable programme service provided from a place in the United Kingdom with intent to avoid payment of any charge applicable to the reception of the programme commits an offence and is liable on summary conviction to a fine not exceeding level 5 on the standard scale.

(2) Where an offence under this section committed by a body corporate is proved to have been committed with the consent or connivance of a director, manager, secretary or other similar officer of the body, or a person purporting to act in any such capacity, he as well as the body corporate is guilty of the offence and liable to be proceeded against and punished accordingly.

In relation to a body corporate whose affairs are managed by its members "director" means a member of the body corporate.

Rights and
remedies in
respect of
apparatus, &c. for
unauthorised
reception of
transmissions.

**298.**—(1) A person who—

(a) makes charges for the reception of programmes included in a broadcasting or cable programme service provided from a place in the United Kingdom, or

(b) sends encrypted transmissions of any other description from a place in the United Kingdom,

is entitled to the following rights and remedies.

(2) He has the same rights and remedies against a person who—

(a) makes, imports or sells or lets for hire any apparatus or device designed or adapted to enable or assist persons to receive the programmes or other transmissions when they are not entitled to do so, or

(b) publishes any information which is calculated to enable or assist persons to receive the programmes or other transmissions when they are not entitled to do so,

as a copyright owner has in respect of an infringement of copyright.

(3) Further, he has the same rights under section 99 or 100 (delivery up or seizure of certain articles) in relation to any such apparatus or device as a copyright owner has in relation to an infringing copy.

1981 c. 54.
1985 c. 37.
1978 c. 23.

(4) Section 72 of the Supreme Court Act 1981, section 15 of the Law Reform (Miscellaneous Provisions) (Scotland) Act 1985 and section 94A of the Judicature (Northern Ireland) Act 1978 (withdrawal of privilege against self-incrimination in certain proceedings relating to intellectual property) apply to proceedings under this section as to proceedings under Part I of this Act (copyright).

(5) In section 97(1) (innocent infringement of copyright) as it applies to proceedings for infringement of the rights conferred by this section, the reference to the defendant not knowing or having reason to believe that copyright subsisted in the work shall be construed as a reference to his not knowing or having reason to believe that his acts infringed the rights conferred by this section.

(6) Section 114 of this Act applies, with the necessary modifications, in relation to the disposal of anything delivered up or seized by virtue of subsection (3) above.

**299.**—(1) Her Majesty may by Order in Council—

PART VII

Supplementary
provisions as to
fraudulent
reception.

(a) provide that section 297 applies in relation to programmes included in services provided from a country or territory outside the United Kingdom, and

(b) provide that section 298 applies in relation to such programmes and to encrypted transmissions sent from such a country or territory.

(2) No such Order shall be made unless it appears to Her Majesty that provision has been or will be made under the laws of that country or territory giving adequate protection to persons making charges for programmes included in broadcasting or cable programme services provided from the United Kingdom or, as the case may be, for encrypted transmissions sent from the United Kingdom.

(3) A statutory instrument containing an Order in Council under subsection (1) shall be subject to annulment in pursuance of a resolution of either House of Parliament.

(4) Where sections 297 and 298 apply in relation to a broadcasting service or cable programme service, they also apply to any service run for the person providing that service, or a person providing programmes for that service, which consists wholly or mainly in the sending by means of a telecommunications system of sounds or visual images, or both.

(5) In sections 297 and 298, and this section, "programme", "broadcasting" and "cable programme service", and related expressions, have the same meaning as in Part I (copyright).

### *Fraudulent application or use of trade mark*

**300.** In the Trade Marks Act 1938 the following sections are inserted before section 59, after the heading *"Offences and restraint of use of Royal Arms"*—

Fraudulent
application or use
of trade mark an
offence.
1938 c. 22.

"Fraudulent
application or
use of trade
mark an offence.

58A.—(1) It is an offence, subject to subsection (3) below, for a person—

(a) to apply a mark identical to or nearly resembling a registered trade mark to goods, or to material used or intended to be used for labelling, packaging or advertising goods, or

(b) to sell, let for hire, or offer or expose for sale or hire, or distribute—

(i) goods bearing such a mark, or

(ii) material bearing such a mark which is used or intended to be used for labelling, packaging or advertising goods, or

(c) to use material bearing such a mark in the course of a business for labelling, packaging or advertising goods, or

144        c. **48**              *Copyright, Designs and Patents*

(d) to possess in the course of a business goods or material bearing such a mark with a view to doing any of the things mentioned in paragraphs (a) to (c),

when he is not entitled to use the mark in relation to the goods in question and the goods are not connected in the course of trade with a person who is so entitled.

(2) It is also an offence, subject to subsection (3) below, for a person to possess in the course of a business goods or material bearing a mark identical to or nearly resembling a registered trade mark with a view to enabling or assisting another person to do any of the things mentioned in subsection (1)(a) to (c), knowing or having reason to believe that the other person is not entitled to use the mark in relation to the goods in question and that the goods are not connected in the course of trade with a person who is so entitled.

(3) A person commits an offence under subsection (1) or (2) only if—

(a) he acts with a view to gain for himself or another, or with intent to cause loss to another, and

(b) he intends that the goods in question should be accepted as connected in the course of trade with a person entitled to use the mark in question;

and it is a defence for a person charged with an offence under subsection (1) to show that he believed on reasonable grounds that he was entitled to use the mark in relation to the goods in question.

(4) A person guilty of an offence under this section is liable—

(a) on summary conviction to imprisonment for a term not exceeding six months or a fine not exceeding the statutory maximum, or both;

(b) on conviction on indictment to a fine or imprisonment for a term not exceeding ten years, or both.

(5) Where an offence under this section committed by a body corporate is proved to have been committed with the consent or connivance of a director, manager, secretary or other similar officer of the body, or a person purporting to act in any such capacity, he as well as the body corporate is guilty of the offence and liable to be proceeded against and punished accordingly.

In relation to a body corporate whose affairs are managed by its members 'director' means a member of the body corporate.

(6) In this section 'business' includes a trade or profession."

Delivery up of
offending goods
and material.

58B.—(1) The court by which a person is convicted of
an offence under section 58A may, if satisfied that at the
time of his arrest or charge he had in his possession,
custody or control—

    (a) goods or material in respect of which the offence
was committed, or

    (b) goods of the same description as those in respect
of which the offence was committed, or material
similar to that in respect of which the offence
was committed, bearing a mark identical to or
nearly resembling that in relation to which the
offence was committed,

order that the goods or material be delivered up to such
person as the court may direct.

    (2) For this purpose a person shall be treated as
charged with an offence—

    (a) in England, Wales and Northern Ireland, when he
is orally charged or is served with a summons or
indictment;

    (b) in Scotland, when he is cautioned, charged or
served with a complaint or indictment.

    (3) An order may be made by the court of its own
motion or on the application of the prosecutor (or, in
Scotland, the Lord Advocate or procurator-fiscal), but
shall not be made if it appears to the court unlikely that
any order will be made under section 58C (order as to
disposal of offending goods or material).

    (4) An appeal lies from an order made under this
section by a magistrates' court—

    (a) in England and Wales, to the Crown Court, and

    (b) in Northern Ireland, to the county court;

and in Scotland, where an order has been made under this
section, the person from whose possession, custody or
control the goods or material have been removed may,
without prejudice to any other form of appeal under any
rule of law, appeal against that order in the same manner
as against sentence.

    (5) A person to whom goods or material are delivered
up in pursuance of an order under this section shall retain
it pending the making of an order under section 58C.

    (6) Nothing in this section affects the powers of the
court under section 43 of the Powers of Criminal Courts
Act 1973, section 223 or 436 of the Criminal Procedure
(Scotland) Act 1975 or Article 7 of the Criminal Justice
(Northern Ireland) Order 1980 (general provisions as to
forfeiture in criminal proceedings).

146    c. **48**    *Copyright, Designs and Patents*

PART VII

Order as to disposal of offending goods or material.

58C.—(1) Where goods or material have been delivered up in pursuance of an order under section 58B, an application may be made to the court for an order that they be destroyed or forfeited to such person as the court may think fit.

(2) Provision shall be made by rules of court as to the service of notice on persons having an interest in the goods or material, and any such person is entitled—

(a) to appear in proceedings for an order under this section, whether or not he was served with notice, and

(b) to appeal against any order made, whether or not he appeared;

and an order shall not take effect until the end of the period within which notice of an appeal may be given or, if before the end of that period notice of appeal is duly given, until the final determination or abandonment of the proceedings on the appeal.

(3) Where there is more than one person interested in goods or material, the court shall make such order as it thinks just.

(4) References in this section to a person having an interest in goods or material include any person in whose favour an order could be made under this section or under sections 114, 204 or 231 of the Copyright, Designs and Patents Act 1988 (which make similar provision in relation to infringement of copyright, rights in performances and design right).

(5) Proceedings for an order under this section may be brought—

(a) in a county court in England, Wales and Northern Ireland, provided the value of the goods or material in question does not exceed the county court limit for actions in tort, and

(b) in a sheriff court in Scotland;

but this shall not be construed as affecting the jurisdiction of the High Court or, in Scotland, the Court of Session.

Enforcement of section 58A.

58D.—(1) The functions of a local weights and measures authority include the enforcement in their area of section 58A.

(2) The following provisions of the Trade Descriptions Act 1968 apply in relation to the enforcement of that section as in relation to the enforcement of that Act—

section 27 (power to make test purchases),

section 28 (power to enter premises and inspect and seize goods and documents),

section 29 (obstruction of authorised officers), and

section 33 (compensation for loss, &c. of goods seized under s.28).

(3) Subsection (1) above does not apply in relation to the enforcement of section 58A in Northern Ireland, but the functions of the Department of Economic Development include the enforcement of that section in Northern Ireland.

PART VII

For that purpose the provisions of the Trade Descriptions Act 1968 specified in subsection (2) apply as if for the references to a local weights and measures authority and any officer of such an authority there were substituted references to that Department and any of its officers.

(4) Any enactment which authorises the disclosure of information for the purpose of facilitating the enforcement of the Trade Descriptions Act 1968 shall apply as if section 58A above were contained in that Act and as if the functions of any person in relation to the enforcement of that section were functions under that Act.".

### *Provisions for the benefit of the Hospital for Sick Children*

**301.** The provisions of Schedule 6 have effect for conferring on trustees for the benefit of the Hospital for Sick Children, Great Ormond Street, London, a right to a royalty in respect of the public performance, commercial publication, broadcasting or inclusion in a cable programme service of the play "Peter Pan" by Sir James Matthew Barrie, or of any adaptation of that work, notwithstanding that copyright in the work expired on 31st December 1987.

Provisions for the benefit of the Hospital for Sick Children.

### *Financial assistance for certain international bodies*

**302.**—(1) The Secretary of State may give financial assistance, in the form of grants, loans or guarantees to—

Financial assistance for certain international bodies.

   (a) any international organisation having functions relating to trade marks or other intellectual property, or

   (b) any Community institution or other body established under any of the Community Treaties having any such functions,

with a view to the establishment or maintenance by that organisation, institution or body of premises in the United Kingdom.

(2) Any expenditure of the Secretary of State under this section shall be defrayed out of money provided by Parliament; and any sums received by the Secretary of State in consequence of this section shall be paid into the Consolidated Fund.

### *General*

**303.**—(1) The enactments specified in Schedule 7 are amended in accordance with that Schedule, the amendments being consequential on the provisions of this Act.

Consequential amendments and repeals.

(2) The enactments specified in Schedule 8 are repealed to the extent specified.

PART VII
Extent.

**304.**—(1) Provision as to the extent of Part I (copyright), Part II (rights in performances) and Part III (design right) is to be found in sections 157, 207 and 255 respectively; the extent of the other provisions of this Act is as follows.

(2) Parts IV to VII extend to England and Wales, Scotland and Northern Ireland, except that—

(a) sections 287 to 292 (patents county courts) extend to England and Wales only,

(b) the proper law of the trust created by Schedule 6 (provisions for the benefit of the Hospital for Sick Children) is the law of England and Wales, and

(c) the amendments and repeals in Schedules 7 and 8 have the same extent as the enactments amended or repealed.

(3) The following provisions extend to the Isle of Man subject to any modifications contained in an Order made by Her Majesty in Council—

(a) sections 293 and 294 (patents: licences of right), and

(b) paragraphs 24 and 29 of Schedule 5 (patents: effect of filing international application for patent and power to extend time limits).

(4) Her Majesty may by Order in Council direct that the following provisions extend to the Isle of Man, with such exceptions and modifications as may be specified in the Order—

(a) Part IV (registered designs),

(b) Part V (patent agents),

(c) the provisions of Schedule 5 (patents: miscellaneous amendments) not mentioned in subsection (3) above,

(d) sections 297 to 299 (fraudulent reception of transmissions), and

(e) section 300 (fraudulent application or use of trade mark).

(5) Her Majesty may by Order in Council direct that sections 297 to 299 (fraudulent reception of transmissions) extend to any of the Channel Islands, with such exceptions and modifications as may be specified in the Order.

(6) Any power conferred by this Act to make provision by Order in Council for or in connection with the extent of provisions of this Act to a country outside the United Kingdom includes power to extend to that country, subject to any modifications specified in the Order, any provision of this Act which amends or repeals an enactment extending to that country.

Commencement.

**305.**—(1) The following provisions of this Act come into force on Royal Assent—

paragraphs 24 and 29 of Schedule 5 (patents: effect of filing international application for patent and power to extend time limits);

section 301 and Schedule 6 (provisions for the benefit of the Hospital for Sick Children).

(2) Sections 293 and 294 (licences of right) come into force at the end of the period of two months beginning with the passing of this Act.

(3) The other provisions of this Act come into force on such day as the Secretary of State may appoint by order made by statutory instrument, and different days may be appointed for different provisions and different purposes.

PART VII

**306.** This Act may be cited as the Copyright, Designs and Patents Act 1988.

Short title.

150          c. **48**              *Copyright, Designs and Patents*

# S C H E D U L E S

Section 170.                              SCHEDULE 1

COPYRIGHT: TRANSITIONAL PROVISIONS AND SAVINGS

*Introductory*

1.—(1) In this Schedule—

1911 c. 46.        "the 1911 Act" means the Copyright Act 1911,

1956 c. 74.        "the 1956 Act" means the Copyright Act 1956, and

"the new copyright provisions" means the provisions of this Act relating to copyright, that is, Part I (including this Schedule) and Schedules 3, 7 and 8 so far as they make amendments or repeals consequential on the provisions of Part I.

(2) References in this Schedule to "commencement", without more, are to the date on which the new copyright provisions come into force.

(3) References in this Schedule to "existing works" are to works made before commencement; and for this purpose a work of which the making extended over a period shall be taken to have been made when its making was completed.

2.—(1) In relation to the 1956 Act, references in this Schedule to a work include any work or other subject-matter within the meaning of that Act.

(2) In relation to the 1911 Act—

(a) references in this Schedule to copyright include the right conferred by section 24 of that Act in substitution for a right subsisting immediately before the commencement of that Act;

(b) references in this Schedule to copyright in a sound recording are to the copyright under that Act in records embodying the recording; and

(c) references in this Schedule to copyright in a film are to any copyright under that Act in the film (so far as it constituted a dramatic work for the purposes of that Act) or in photographs forming part of the film.

*General principles: continuity of the law*

3. The new copyright provisions apply in relation to things existing at commencement as they apply in relation to things coming into existence after commencement, subject to any express provision to the contrary.

4.—(1) The provisions of this paragraph have effect for securing the continuity of the law so far as the new copyright provisions re-enact (with or without modification) earlier provisions.

(2) A reference in an enactment, instrument or other document to copyright, or to a work or other subject-matter in which copyright subsists, which apart from this Act would be construed as referring to copyright under the 1956 Act shall be construed, so far as may be required for continuing its effect, as being, or as the case may require, including, a reference to copyright under this Act or to works in which copyright subsists under this Act.

(3) Anything done (including subordinate legislation made), or having effect as done, under or for the purposes of a provision repealed by this Act has effect as if done under or for the purposes of the corresponding provision of the new copyright provisions.

(4) References (expressed or implied) in this Act or any other enactment, instrument or document to any of the new copyright provisions shall, so far as the context permits, be construed as including, in relation to times, circumstances and purposes before commencement, a reference to corresponding earlier provisions.

(5) A reference (express or implied) in an enactment, instrument or other document to a provision repealed by this Act shall be construed, so far as may be required for continuing its effect, as a reference to the corresponding provision of this Act.

(6) The provisions of this paragraph have effect subject to any specific transitional provision or saving and to any express amendment made by this Act.

*Subsistence of copyright*

5.—(1) Copyright subsists in an existing work after commencement only if copyright subsisted in it immediately before commencement.

(2) Sub-paragraph (1) does not prevent an existing work qualifying for copyright protection after commencement—

(a) under section 155 (qualification by virtue of first publication), or

(b) by virtue of an Order under section 159 (application of Part I to countries to which it does not extend).

6.—(1) Copyright shall not subsist by virtue of this Act in an artistic work made before 1st June 1957 which at the time when the work was made constituted a design capable of registration under the Registered Designs Act 1949 or under the enactments repealed by that Act, and was used, or intended to be used, as a model or pattern to be multiplied by an industrial process.

(2) For this purpose a design shall be deemed to be used as a model or pattern to be multiplied by any industrial process—

(a) when the design is reproduced or is intended to be reproduced on more than 50 single articles, unless all the articles in which the design is reproduced or is intended to be reproduced together form only a single set of articles as defined in section 44(1) of the Registered Designs Act 1949, or

(b) when the design is to be applied to—

(i) printed paper hangings,

(ii) carpets, floor cloths or oil cloths, manufactured or sold in lengths or pieces,

(iii) textile piece goods, or textile goods manufactured or sold in lengths or pieces, or

(iv) lace, not made by hand.

7.—(1) No copyright subsists in a film, as such, made before 1st June 1957.

(2) Where a film made before that date was an original dramatic work within the meaning of the 1911 Act, the new copyright provisions have effect in relation to the film as if it was an original dramatic work within the meaning of Part I.

(3) The new copyright provisions have effect in relation to photographs forming part of a film made before 1st June 1957 as they have effect in relation to photographs not forming part of a film.

8.—(1) A film sound-track to which section 13(9) of the 1956 Act applied before commencement (film to be taken to include sounds in associated sound-track) shall be treated for the purposes of the new copyright provisions not as part of the film, but as a sound recording.

SCH. 1

1949 c. 88.

(2) However—

> (a) copyright subsists in the sound recording only if copyright subsisted in the film immediately before commencement, and it continues to subsist until copyright in the film expires;

> (b) the author and first owner of copyright in the film shall be treated as having been author and first owner of the copyright in the sound recording; and

> (c) anything done before commencement under or in relation to the copyright in the film continues to have effect in relation to the sound recording as in relation to the film.

9. No copyright subsists in—

(a) a broadcast made before 1st June 1957, or

(b) a cable programme included in a cable programme service before 1st January 1985;

and any such broadcast or cable programme shall be disregarded for the purposes of section 14(2) (duration of copyright in repeats).

### *Authorship of work*

10. The question who was the author of an existing work shall be determined in accordance with the new copyright provisions for the purposes of the rights conferred by Chapter IV of Part I (moral rights), and for all other purposes shall be determined in accordance with the law in force at the time the work was made.

### *First ownership of copyright*

11.—(1) The question who was first owner of copyright in an existing work shall be determined in accordance with the law in force at the time the work was made.

(2) Where before commencement a person commissioned the making of a work in circumstances falling within—

(a) section 4(3) of the 1956 Act or paragraph (a) of the proviso to section 5(1) of the 1911 Act (photographs, portraits and engravings), or

(b) the proviso to section 12(4) of the 1956 Act (sound recordings),

those provisions apply to determine first ownership of copyright in any work made in pursuance of the commission after commencement.

### *Duration of copyright in existing works*

12.—(1) The following provisions have effect with respect to the duration of copyright in existing works.

The question which provision applies to a work shall be determined by reference to the facts immediately before commencement; and expressions used in this paragraph which were defined for the purposes of the 1956 Act have the same meaning as in that Act.

(2) Copyright in the following descriptions of work continues to subsist until the date on which it would have expired under the 1956 Act—

(a) literary, dramatic or musical works in relation to which the period of 50 years mentioned in the proviso to section 2(3) of the 1956 Act (duration of copyright in works made available to the public after the death of the author) has begun to run;

(b) engravings in relation to which the period of 50 years mentioned in the proviso to section 3(4) of the 1956 Act (duration of copyright in works published after the death of the author) has begun to run;

(c) published photographs and photographs taken before 1st June 1957;

(d) published sound recordings and sound recordings made before 1st June 1957;    SCH. 1

(e) published films and films falling within section 13(3)(a) of the 1956 Act (films registered under former enactments relating to registration of films).

(3) Copyright in anonymous or pseudonymous literary, dramatic, musical or artistic works (other than photographs) continues to subsist—

    (a) if the work is published, until the date on which it would have expired in accordance with the 1956 Act, and

    (b) if the work is unpublished, until the end of the period of 50 years from the end of the calendar year in which the new copyright provisions come into force or, if during that period the work is first made available to the public within the meaning of section 12(2) (duration of copyright in works of unknown authorship), the date on which copyright expires in accordance with that provision;

unless, in any case, the identity of the author becomes known before that date, in which case section 12(1) applies (general rule: life of the author plus 50 years).

(4) Copyright in the following descriptions of work continues to subsist until the end of the period of 50 years from the end of the calendar year in which the new copyright provisions come into force—

    (a) literary, dramatic and musical works of which the author has died and in relation to which none of the acts mentioned in paragraphs (a) to (e) of the proviso to section 2(3) of the 1956 Act has been done;

    (b) unpublished engravings of which the author has died;

    (c) unpublished photographs taken on or after 1st June 1957.

(5) Copyright in the following descriptions of work continues to subsist until the end of the period of 50 years from the end of the calendar year in which the new copyright provisions come into force—

    (a) unpublished sound recordings made on or after 1st June 1957;

    (b) films not falling within sub-paragraph (2)(e) above,

unless the recording or film is published before the end of that period in which case copyright in it shall continue until the end of the period of 50 years from the end of the calendar year in which the recording or film is published.

(6) Copyright in any other description of existing work continues to subsist until the date on which copyright in that description of work expires in accordance with sections 12 to 15 of this Act.

(7) The above provisions do not apply to works subject to Crown or Parliamentary copyright (see paragraphs 41 to 43 below).

### *Perpetual copyright under the Copyright Act 1775*

13.—(1) The rights conferred on universities and colleges by the Copyright    1775 c. 53.
Act 1775 shall continue to subsist until the end of the period of 50 years from the end of the calendar year in which the new copyright provisions come into force and shall then expire.

(2) The provisions of the following Chapters of Part I—

    Chapter III (acts permitted in relation to copyright works),

    Chapter VI (remedies for infringement),

    Chapter VII (provisions with respect to copyright licensing), and

    Chapter VIII (the Copyright Tribunal),

apply in relation to those rights as they apply in relation to copyright under this Act.

154          c. **48**          *Copyright, Designs and Patents*

*Acts infringing copyright*

14.—(1) The provisions of Chapters II and III of Part I as to the acts constituting an infringement of copyright apply only in relation to acts done after commencement; the provisions of the 1956 Act continue to apply in relation to acts done before commencement.

(2) So much of section 18(2) as extends the restricted act of issuing copies to the public to include the rental to the public of copies of sound recordings, films or computer programs does not apply in relation to a copy of a sound recording, film or computer program acquired by any person before commencement for the purpose of renting it to the public.

(3) For the purposes of section 27 (meaning of "infringing copy") the question whether the making of an article constituted an infringement of copyright, or would have done if the article had been made in the United Kingdom, shall be determined—

    (a) in relation to an article made on or after 1st June 1957 and before commencement, by reference to the 1956 Act, and

    (b) in relation to an article made before 1st June 1957, by reference to the 1911 Act.

(4) For the purposes of the application of sections 31(2), 51(2) and 62(3) (subsequent exploitation of things whose making was, by virtue of an earlier provision of the section, not an infringement of copyright) to things made before commencement, it shall be assumed that the new copyright provisions were in force at all material times.

(5) Section 55 (articles for producing material in a particular typeface) applies where articles have been marketed as mentioned in subsection (1) before commencement with the substitution for the period mentioned in subsection (3) of the period of 25 years from the end of the calendar year in which the new copyright provisions come into force.

(6) Section 56 (transfer of copies, adaptations, &c. of work in electronic form) does not apply in relation to a copy purchased before commencement.

(7) In section 65 (reconstruction of buildings) the reference to the owner of the copyright in the drawings or plans is, in relation to buildings constructed before commencement, to the person who at the time of the construction was the owner of the copyright in the drawings or plans under the 1956 Act, the 1911 Act or any enactment repealed by the 1911 Act.

15.—(1) Section 57 (anonymous or pseudonymous works: acts permitted on assumptions as to expiry of copyright or death of author) has effect in relation to existing works subject to the following provisions.

(2) Subsection (1)(b)(i) (assumption as to expiry of copyright) does not apply in relation to—

    (a) photographs, or

    (b) the rights mentioned in paragraph 13 above (rights conferred by the
1775 c. 53.    Copyright Act 1775).

(3) Subsection (1)(b)(ii) (assumption as to death of author) applies only—

    (a) where paragraph 12(3)(b) above applies (unpublished anonymous or pseudonymous works), after the end of the period of 50 years from the end of the calendar year in which the new copyright provisions come into force, or

    (b) where paragraph 12(6) above applies (cases in which the duration of copyright is the same under the new copyright provisions as under the previous law).

16. The following provisions of section 7 of the 1956 Act continue to apply in relation to existing works—                                                              Sch. 1

    (a) subsection (6) (copying of unpublished works from manuscript or copy in library, museum or other institution);

    (b) subsection (7) (publication of work containing material to which subsection (6) applies), except paragraph (a) (duty to give notice of intended publication);

    (c) subsection (8) (subsequent broadcasting, performance, &c. of material published in accordance with subsection (7));

and subsection (9)(d) (illustrations) continues to apply for the purposes of those provisions.

17. Where in the case of a dramatic or musical work made before 1st July 1912, the right conferred by the 1911 Act did not include the sole right to perform the work in public, the acts restricted by the copyright shall be treated as not including—

    (a) performing the work in public,

    (b) broadcasting the work or including it in a cable programme service, or

    (c) doing any of the above in relation to an adaptation of the work;

and where the right conferred by the 1911 Act consisted only of the sole right to perform the work in public, the acts restricted by the copyright shall be treated as consisting only of those acts.

18. Where a work made before 1st July 1912 consists of an essay, article or portion forming part of and first published in a review, magazine or other periodical or work of a like nature, the copyright is subject to any right of publishing the essay, article, or portion in a separate form to which the author was entitled at the commencement of the 1911 Act, or would if that Act had not been passed, have become entitled under section 18 of the Copyright Act 1842.    1842 c. 45.

*Designs*

19.—(1) Section 51 (exclusion of copyright protection in relation to works recorded or embodied in design document or models) does not apply for ten years after commencement in relation to a design recorded or embodied in a design document or model before commencement.

(2) During those ten years the following provisions of Part III (design right) apply to any relevant copyright as in relation to design right—

    (a) sections 237 to 239 (availability of licences of right), and

    (b) sections 247 and 248 (application to comptroller to settle terms of licence of right).

(3) In section 237 as it applies by virtue of this paragraph, for the reference in subsection (1) to the last five years of the design right term there shall be substituted a reference to the last five years of the period of ten years referred to in sub-paragraph (1) above, or to so much of those last five years during which copyright subsists.

(4) In section 239 as it applies by virtue of this paragraph, for the reference in subsection (1)(b) to section 230 there shall be substituted a reference to section 99.

(5) Where a licence of right is available by virtue of this paragraph, a person to whom a licence was granted before commencement may apply to the comptroller for an order adjusting the terms of that licence.

(6) The provisions of sections 249 and 250 (appeals and rules) apply in relation to proceedings brought under or by virtue of this paragraph as to proceedings under Part III.

156    c. **48**    *Copyright, Designs and Patents*

(7) A licence granted by virtue of this paragraph shall relate only to acts which would be permitted by section 51 if the design document or model had been made after commencement.

(8) Section 100 (right to seize infringing copies, &c.) does not apply during the period of ten years referred to in sub-paragraph (1) in relation to anything to which it would not apply if the design in question had been first recorded or embodied in a design document or model after commencement.

(9) Nothing in this paragraph affects the operation of any rule of law preventing or restricting the enforcement of copyright in relation to a design.

20.—(1) Where section 10 of the 1956 Act (effect of industrial application of design corresponding to artistic work) applied in relation to an artistic work at any time before commencement, section 52(2) of this Act applies with the substitution for the period of 25 years mentioned there of the relevant period of 15 years as defined in section 10(3) of the 1956 Act.

(2) Except as provided in sub-paragraph (1), section 52 applies only where articles are marketed as mentioned in subsection (1)(b) after commencement.

*Abolition of statutory recording licence*

21. Section 8 of the 1956 Act (statutory licence to copy records sold by retail) continues to apply where notice under subsection (1)(b) of that section was given before the repeal of that section by this Act, but only in respect of the making of records—

(a) within one year of the repeal coming into force, and

(b) up to the number stated in the notice as intended to be sold.

*Moral rights*

22.—(1) No act done before commencement is actionable by virtue of any provision of Chapter IV of Part I (moral rights).

(2) Section 43 of the 1956 Act (false attribution of authorship) continues to apply in relation to acts done before commencement.

23.—(1) The following provisions have effect with respect to the rights conferred by—

(a) section 77 (right to be identified as author or director), and

(b) section 80 (right to object to derogatory treatment of work).

(2) The rights do not apply—

(a) in relation to a literary, dramatic, musical and artistic work of which the author died before commencement; or

(b) in relation to a film made before commencement.

(3) The rights in relation to an existing literary, dramatic, musical or artistic work do not apply—

(a) where copyright first vested in the author, to anything which by virtue of an assignment of copyright made or licence granted before commencement may be done without infringing copyright;

(b) where copyright first vested in a person other than the author, to anything done by or with the licence of the copyright owner.

(4) The rights do not apply to anything done in relation to a record made in pursuance of section 8 of the 1956 Act (statutory recording licence).

24. The right conferred by section 85 (right to privacy of certain photographs and films) does not apply to photographs taken or films made before commencement.

*Assignments and licences*

25.—(1) Any document made or event occurring before commencement which had any operation—

(a) affecting the ownership of the copyright in an existing work, or

(b) creating, transferring or terminating an interest, right or licence in respect of the copyright in an existing work,

has the corresponding operation in relation to copyright in the work under this Act.

(2) Expressions used in such a document shall be construed in accordance with their effect immediately before commencement.

26.—(1) Section 91(1) of this Act (assignment of future copyright: statutory vesting of legal interest on copyright coming into existence) does not apply in relation to an agreement made before 1st June 1957.

(2) The repeal by this Act of section 37(2) of the 1956 Act (assignment of future copyright: devolution of right where assignee dies before copyright comes into existence) does not affect the operation of that provision in relation to an agreement made before commencement.

27.—(1) Where the author of a literary, dramatic, musical or artistic work was the first owner of the copyright in it, no assignment of the copyright and no grant of any interest in it, made by him (otherwise than by will) after the passing of the 1911 Act and before 1st June 1957, shall be operative to vest in the assignee or grantee any rights with respect to the copyright in the work beyond the expiration of 25 years from the death of the author.

(2) The reversionary interest in the copyright expectant on the termination of that period may after commencement be assigned by the author during his life but in the absence of any assignment shall, on his death, devolve on his legal personal representatives as part of his estate.

(3) Nothing in this paragraph affects—

(a) an assignment of the reversionary interest by a person to whom it has been assigned,

(b) an assignment of the reversionary interest after the death of the author by his personal representatives or any person becoming entitled to it, or

(c) any assignment of the copyright after the reversionary interest has fallen in.

(4) Nothing in this paragraph applies to the assignment of the copyright in a collective work or a licence to publish a work or part of a work as part of a collective work.

(5) In sub-paragraph (4) "collective work" means—

(a) any encyclopaedia, dictionary, yearbook, or similar work;

(b) a newspaper, review, magazine, or similar periodical; and

(c) any work written in distinct parts by different authors, or in which works or parts of works of different authors are incorporated.

28.—(1) This paragraph applies where copyright subsists in a literary, dramatic, musical or artistic work made before 1st July 1912 in relation to which the author, before the commencement of the 1911 Act, made such an assignment or grant as was mentioned in paragraph (a) of the proviso to section 24(1) of that Act (assignment or grant of copyright or performing right for full term of the right under the previous law).

(2) If before commencement any event has occurred or notice has been given which by virtue of paragraph 38 of Schedule 7 to the 1956 Act had any operation in relation to copyright in the work under that Act, the event or notice has the corresponding operation in relation to copyright under this Act.

SCH. 1

(3) Any right which immediately before commencement would by virtue of paragraph 38(3) of that Schedule have been exercisable in relation to the work, or copyright in it, is exercisable in relation to the work or copyright in it under this Act.

(4) If in accordance with paragraph 38(4) of that Schedule copyright would, on a date after the commencement of the 1956 Act, have reverted to the author or his personal representatives and that date falls after the commencement of the new copyright provisions—

    (a) the copyright in the work shall revert to the author or his personal representatives, as the case may be, and

    (b) any interest of any other person in the copyright which subsists on that date by virtue of any document made before the commencement of the 1911 Act shall thereupon determine.

29. Section 92(2) of this Act (rights of exclusive licensee against successors in title of person granting licence) does not apply in relation to an exclusive licence granted before commencement.

*Bequests*

30.—(1) Section 93 of this Act (copyright to pass under will with original document or other material thing embodying unpublished work)—

    (a) does not apply where the testator died before 1st June 1957, and

    (b) where the testator died on or after that date and before commencement, applies only in relation to an original document embodying a work.

(2) In the case of an author who died before 1st June 1957, the ownership after his death of a manuscript of his, where such ownership has been acquired under a testamentary disposition made by him and the manuscript is of a work which has not been published or performed in public, is prima facie proof of the copyright being with the owner of the manuscript.

*Remedies for infringement*

31.—(1) Sections 96 and 97 of this Act (remedies for infringement) apply only in relation to an infringement of copyright committed after commencement; section 17 of the 1956 Act continues to apply in relation to infringements committed before commencement.

(2) Sections 99 and 100 of this Act (delivery up or seizure of infringing copies, &c.) apply to infringing copies and other articles made before or after commencement; section 18 of the 1956 Act, and section 7 of the 1911 Act, (conversion damages, &c.), do not apply after commencement except for the purposes of proceedings begun before commencement.

(3) Sections 101 to 102 of this Act (rights and remedies of exclusive licensee) apply where sections 96 to 100 of this Act apply; section 19 of the 1956 Act continues to apply where section 17 or 18 of that Act applies.

(4) Sections 104 to 106 of this Act (presumptions) apply only in proceedings brought by virtue of this Act; section 20 of the 1956 Act continues to apply in proceedings brought by virtue of that Act.

32. Sections 101 and 102 of this Act (rights and remedies of exclusive licensee) do not apply to a licence granted before 1st June 1957.

33.—(1) The provisions of section 107 of this Act (criminal liability for making or dealing with infringing articles, &c.) apply only in relation to acts done after commencement; section 21 of the 1956 Act (penalties and summary proceedings in respect of dealings which infringe copyright) continues to apply in relation to acts done before commencement.

SCH. 1

(2) Section 109 of this Act (search warrants) applies in relation to offences committed before commencement in relation to which section 21A or 21B of the 1956 Act applied; sections 21A and 21B continue to apply in relation to warrants issued before commencement.

*Copyright Tribunal: proceedings pending on commencement*

34.—(1) The Lord Chancellor may, after consultation with the Lord Advocate, by rules make such provision as he considers necessary or expedient with respect to proceedings pending under Part IV of the 1956 Act immediately before commencement.

(2) Rules under this paragraph shall be made by statutory instrument which shall be subject to annulment in pursuance of a resolution of either House of Parliament.

*Qualification for copyright protection*

35. Every work in which copyright subsisted under the 1956 Act immediately before commencement shall be deemed to satisfy the requirements of Part I of this Act as to qualification for copyright protection.

*Dependent territories*

36.—(1) The 1911 Act shall remain in force as part of the law of any dependent territory in which it was in force immediately before commencement until—

(a) the new copyright provisions come into force in that territory by virtue of an Order under section 157 of this Act (power to extend new copyright provisions), or

(b) in the case of any of the Channel Islands, the Act is repealed by Order under sub-paragraph (3) below.

(2) An Order in Council in force immediately before commencement which extends to any dependent territory any provisions of the 1956 Act shall remain in force as part of the law of that territory until—

(a) the new copyright provisions come into force in that territory by virtue of an Order under section 157 of this Act (power to extend new copyright provisions), or

(b) in the case of the Isle of Man, the Order is revoked by Order under sub-paragraph (3) below;

and while it remains in force such an Order may be varied under the provisions of the 1956 Act under which it was made.

(3) If it appears to Her Majesty that provision with respect to copyright has been made in the law of any of the Channel Islands or the Isle of Man otherwise than by extending the provisions of Part I of this Act, Her Majesty may by Order in Council repeal the 1911 Act as it has effect as part of the law of that territory or, as the case may be, revoke the Order extending the 1956 Act there.

(4) A dependent territory in which the 1911 or 1956 Act remains in force shall be treated, in the law of the countries to which Part I extends, as a country to which that Part extends; and those countries shall be treated in the law of such a territory as countries to which the 1911 Act or, as the case may be, the 1956 Act extends.

(5) If a country in which the 1911 or 1956 Act is in force ceases to be a colony of the United Kingdom, section 158 of this Act (consequences of country ceasing to be colony) applies with the substitution for the reference in subsection (3)(b) to the provisions of Part I of this Act of a reference to the provisions of the 1911 or 1956 Act, as the case may be.

(6) In this paragraph "dependent territory" means any of the Channel Islands, the Isle of Man or any colony.

160       c. **48**       *Copyright, Designs and Patents*

Sch. 1

37.—(1) This paragraph applies to a country which immediately before commencement was not a dependent territory within the meaning of paragraph 36 above but—

    (a) was a country to which the 1956 Act extended, or

    (b) was treated as such a country by virtue of paragraph 39(2) of Schedule 7 to that Act (countries to which the 1911 Act extended or was treated as extending);

and Her Majesty may by Order in Council conclusively declare for the purposes of this paragraph whether a country was such a country or was so treated.

(2) A country to which this paragraph applies shall be treated as a country to which Part I extends for the purposes of sections 154 to 156 (qualification for copyright protection) until—

    (a) an Order in Council is made in respect of that country under section 159 (application of Part I to countries to which it does not extend), or

    (b) an Order in Council is made declaring that it shall cease to be so treated by reason of the fact that the provisions of the 1956 Act or, as the case may be, the 1911 Act, which extended there as part of the law of that country have been repealed or amended.

(3) A statutory instrument containing an Order in Council under this paragraph shall be subject to annulment in pursuance of a resolution of either House of Parliament.

*Territorial waters and the continental shelf*

38. Section 161 of this Act (application of Part I to things done in territorial waters or the United Kingdom sector of the continental shelf) does not apply in relation to anything done before commencement.

*British ships, aircraft and hovercraft*

39. Section 162 (British ships, aircraft and hovercraft) does not apply in relation to anything done before commencement.

*Crown copyright*

40.—(1) Section 163 of this Act (general provisions as to Crown copyright) applies to an existing work if—

    (a) section 39 of the 1956 Act applied to the work immediately before commencement, and

    (b) the work is not one to which section 164, 165 or 166 applies (copyright in Acts, Measures and Bills and Parliamentary copyright: see paragraphs 42 and 43 below).

(2) Section 163 (1)(b) (first ownership of copyright) has effect subject to any agreement entered into before commencement under section 39(6) of the 1956 Act.

41.—(1) The following provisions have effect with respect to the duration of copyright in existing works to which section 163 (Crown copyright) applies.

The question which provision applies to a work shall be determined by reference to the facts immediately before commencement; and expressions used in this paragraph which were defined for the purposes of the 1956 Act have the same meaning as in that Act.

(2) Copyright in the following descriptions of work continues to subsist until the date on which it would have expired in accordance with the 1956 Act—

    (a) published literary, dramatic or musical works;

    (b) artistic works other than engravings or photographs;

    (c) published engravings;

(d) published photographs and photographs taken before 1st June 1957;

(e) published sound recordings and sound recordings made before 1st June 1957;

(f) published films and films falling within section 13(3)(a) of the 1956 Act (films registered under former enactments relating to registration of films).

(3) Copyright in unpublished literary, dramatic or musical works continues to subsist until—

(a) the date on which copyright expires in accordance with section 163(3), or

(b) the end of the period of 50 years from the end of the calendar year in which the new copyright provisions come into force,

whichever is the later.

(4) Copyright in the following descriptions of work continues to subsist until the end of the period of 50 years from the end of the calendar year in which the new copyright provisions come into force—

(a) unpublished engravings;

(b) unpublished photographs taken on or after 1st June 1957.

(5) Copyright in a film or sound recording not falling within sub-paragraph (2) above continues to subsist until the end of the period of 50 years from the end of the calendar year in which the new copyright provisions come into force, unless the film or recording is published before the end of that period, in which case copyright expires 50 years from the end of the calendar year in which it is published.

42.—(1) Section 164 (copyright in Acts and Measures) applies to existing Acts of Parliament and Measures of the General Synod of the Church of England.

(2) References in that section to Measures of the General Synod of the Church of England include Church Assembly Measures.

### *Parliamentary copyright*

43.—(1) Section 165 of this Act (general provisions as to Parliamentary copyright) applies to existing unpublished literary, dramatic, musical or artistic works, but does not otherwise apply to existing works.

(2) Section 166 (copyright in Parliamentary Bills) does not apply—

(a) to a public Bill which was introduced into Parliament and published before commencement,

(b) to a private Bill of which a copy was deposited in either House before commencement, or

(c) to a personal Bill which was given a First Reading in the House of Lords before commencement.

### *Copyright vesting in certain international organisations*

44.—(1) Any work in which immediately before commencement copyright subsisted by virtue of section 33 of the 1956 Act shall be deemed to satisfy the requirements of section 168(1); but otherwise section 168 does not apply to works made or, as the case may be, published before commencement.

(2) Copyright in any such work which is unpublished continues to subsist until the date on which it would have expired in accordance with the 1956 Act, or the end of the period of 50 years from the end of the calendar year in which the new copyright provisions come into force, whichever is the earlier.

162      c. **48**          *Copyright, Designs and Patents*

*Meaning of "publication"*

45. Section 175(3) (construction of building treated as equivalent to publication) applies only where the construction of the building began after commencement.

*Meaning of "unauthorised"*

46. For the purposes of the application of the definition in section 178 (minor definitions) of the expression "unauthorised" in relation to things done before commencement—

(a) paragraph (a) applies in relation to things done before 1st June 1957 as if the reference to the licence of the copyright owner were a reference to his consent or acquiescence;

(b) paragraph (b) applies with the substitution for the words from "or, in a case" to the end of the words "or any person lawfully claiming under him"; and

(c) paragraph (c) shall be disregarded.

## SCHEDULE 2

### RIGHTS IN PERFORMANCES: PERMITTED ACTS

*Introductory*

1.—(1) The provisions of this Schedule specify acts which may be done in relation to a performance or recording notwithstanding the rights conferred by Part II; they relate only to the question of infringement of those rights and do not affect any other right or obligation restricting the doing of any of the specified acts.

(2) No inference shall be drawn from the description of any act which may by virtue of this Schedule be done without infringing the rights conferred by Part II as to the scope of those rights.

(3) The provisions of this Schedule are to be construed independently of each other, so that the fact that an act does not fall within one provision does not mean that it is not covered by another provision.

*Criticism, reviews and news reporting*

2.—(1) Fair dealing with a performance or recording—

(a) for the purpose of criticism or review, of that or another performance or recording, or of a work, or

(b) for the purpose of reporting current events,

does not infringe any of the rights conferred by Part II.

(2) Expressions used in this paragraph have the same meaning as in section 30.

*Incidental inclusion of performance or recording*

3.—(1) The rights conferred by Part II are not infringed by the incidental inclusion of a performance or recording in a sound recording, film, broadcast or cable programme.

(2) Nor are those rights infringed by anything done in relation to copies of, or the playing, showing, broadcasting or inclusion in a cable programme service of, anything whose making was, by virtue of sub-paragraph (1), not an infringement of those rights.

(3) A performance or recording so far as it consists of music, or words spoken or sung with music, shall not be regarded as incidentally included in a sound recording, broadcast or cable programme if it is deliberately included.

(4) Expressions used in this paragraph have the same meaning as in section 31.

*Copyright, Designs and Patents*    c. **48**    163

*Things done for purposes of instruction or examination*    Sch. 2

4.—(1) The rights conferred by Part II are not infringed by the copying of a recording of a performance in the course of instruction, or of preparation for instruction, in the making of films or film sound-tracks, provided the copying is done by a person giving or receiving instruction.

(2) The rights conferred by Part II are not infringed—

(a) by the copying of a recording of a performance for the purposes of setting or answering the questions in an examination, or

(b) by anything done for the purposes of an examination by way of communicating the questions to the candidates.

(3) Where a recording which would otherwise be an illicit recording is made in accordance with this paragraph but is subsequently dealt with, it shall be treated as an illicit recording for the purposes of that dealing, and if that dealing infringes any right conferred by Part II for all subsequent purposes.

For this purpose "dealt with" means sold or let for hire, or offered or exposed for sale or hire.

(4) Expressions used in this paragraph have the same meaning as in section 32.

*Playing or showing sound recording, film, broadcast or cable programme at educational establishment*

5.—(1) The playing or showing of a sound recording, film, broadcast or cable programme at an educational establishment for the purposes of instruction before an audience consisting of teachers and pupils at the establishment and other persons directly connected with the activities of the establishment is not a playing or showing of a performance in public for the purposes of infringement of the rights conferred by Part II.

(2) A person is not for this purpose directly connected with the activities of the educational establishment simply because he is the parent of a pupil at the establishment.

(3) Expressions used in this paragraph have the same meaning as in section 34 and any provision made under section 174(2) with respect to the application of that section also applies for the purposes of this paragraph.

*Recording of broadcasts and cable programmes by educational establishments*

6.—(1) A recording of a broadcast or cable programme, or a copy of such a recording, may be made by or on behalf of an educational establishment for the educational purposes of that establishment without thereby infringing any of the rights conferred by Part II in relation to any performance or recording included in it.

(2) Where a recording which would otherwise be an illicit recording is made in accordance with this paragraph but is subsequently dealt with, it shall be treated as an illicit recording for the purposes of that dealing, and if that dealing infringes any right conferred by Part II for all subsequent purposes.

For this purpose "dealt with" means sold or let for hire, or offered or exposed for sale or hire.

(3) Expressions used in this paragraph have the same meaning as in section 35 and any provision made under section 174(2) with respect to the application of that section also applies for the purposes of this paragraph.

164          c. **48**          *Copyright, Designs and Patents*

SCH. 2                          *Copy of work required to be made as condition of export*

7.—(1) If an article of cultural or historical importance or interest cannot lawfully be exported from the United Kingdom unless a copy of it is made and deposited in an appropriate library or archive, it is not an infringement of any right conferred by Part II to make that copy.

(2) Expressions used in this paragraph have the same meaning as in section 44.

*Parliamentary and judicial proceedings*

8.—(1) The rights conferred by Part II are not infringed by anything done for the purposes of parliamentary or judicial proceedings or for the purpose of reporting such proceedings.

(2) Expressions used in this paragraph have the same meaning as in section 45.

*Royal Commissions and statutory inquiries*

9.—(1) The rights conferred by Part II are not infringed by anything done for the purposes of the proceedings of a Royal Commission or statutory inquiry or for the purpose of reporting any such proceedings held in public.

(2) Expressions used in this paragraph have the same meaning as in section 46.

*Public records*

1958 c. 51.
1937 c. 43.
1923 c. 20 (N.I.).

10.—(1) Material which is comprised in public records within the meaning of the Public Records Act 1958, the Public Records (Scotland) Act 1937 or the Public Records Act (Northern Ireland) 1923 which are open to public inspection in pursuance of that Act, may be copied, and a copy may be supplied to any person, by or with the authority of any officer appointed under that Act, without infringing any right conferred by Part II.

(2) Expressions used in this paragraph have the same meaning as in section 49.

*Acts done under statutory authority*

11.—(1) Where the doing of a particular act is specifically authorised by an Act of Parliament, whenever passed, then, unless the Act provides otherwise, the doing of that act does not infringe the rights conferred by Part II.

(2) Sub-paragraph (1) applies in relation to an enactment contained in Northern Ireland legislation as it applies to an Act of Parliament.

(3) Nothing in this paragraph shall be construed as excluding any defence of statutory authority otherwise available under or by virtue of any enactment.

(4) Expressions used in this paragraph have the same meaning as in section 50.

*Transfer of copies of works in electronic form*

12.—(1) This paragraph applies where a recording of a performance in electronic form has been purchased on terms which, expressly or impliedly or by virtue of any rule of law, allow the purchaser to make further recordings in connection with his use of the recording.

(2) If there are no express terms—

(a) prohibiting the transfer of the recording by the purchaser, imposing obligations which continue after a transfer, prohibiting the assignment of any consent or terminating any consent on a transfer, or

(b) providing for the terms on which a transferee may do the things which the purchaser was permitted to do,

anything which the purchaser was allowed to do may also be done by a transferee without infringement of the rights conferred by this Part, but any recording made by the purchaser which is not also transferred shall be treated as an illicit recording for all purposes after the transfer.

SCH. 2

(3) The same applies where the original purchased recording is no longer usable and what is transferred is a further copy used in its place.

(4) The above provisions also apply on a subsequent transfer, with the substitution for references in sub-paragraph (2) to the purchaser of references to the subsequent transferor.

(5) This paragraph does not apply in relation to a recording purchased before the commencement of Part II.

(6) Expressions used in this paragraph have the same meaning as in section 56.

### *Use of recordings of spoken works in certain cases*

13.—(1) Where a recording of the reading or recitation of a literary work is made for the purpose—

(a) of reporting current events, or

(b) of broadcasting or including in a cable programme service the whole or part of the reading or recitation,

it is not an infringement of the rights conferred by Part II to use the recording (or to copy the recording and use the copy) for that purpose, provided the following conditions are met.

(2) The conditions are that—

(a) the recording is a direct recording of the reading or recitation and is not taken from a previous recording or from a broadcast or cable programme;

(b) the making of the recording was not prohibited by or on behalf of the person giving the reading or recitation;

(c) the use made of the recording is not of a kind prohibited by or on behalf of that person before the recording was made; and

(d) the use is by or with the authority of a person who is lawfully in possession of the recording.

(3) Expressions used in this paragraph have the same meaning as in section 58.

### *Recordings of folksongs*

14.—(1) A recording of a performance of a song may be made for the purpose of including it in an archive maintained by a designated body without infringing any of the rights conferred by Part II, provided the conditions in sub-paragraph (2) below are met.

(2) The conditions are that—

(a) the words are unpublished and of unknown authorship at the time the recording is made,

(b) the making of the recording does not infringe any copyright, and

(c) its making is not prohibited by any performer.

(3) Copies of a recording made in reliance on sub-paragraph (1) and included in an archive maintained by a designated body may, if the prescribed conditions are met, be made and supplied by the archivist without infringing any of the rights conferred by Part II.

166         c. **48**         *Copyright, Designs and Patents*

(4) In this paragraph—

"designated body" means a body designated for the purposes of section 61, and

"the prescribed conditions" means the conditions prescribed for the purposes of subsection (3) of that section;

and other expressions used in this paragraph have the same meaning as in that section.

### *Playing of sound recordings for purposes of club, society, &c*

15.—(1) It is not an infringement of any right conferred by Part II to play a sound recording as part of the activities of, or for the benefit of, a club, society or other organisation if the following conditions are met.

(2) The conditions are—

(a) that the organisation is not established or conducted for profit and its main objects are charitable or are otherwise concerned with the advancement of religion, education or social welfare, and

(b) that the proceeds of any charge for admission to the place where the recording is to be heard are applied solely for the purposes of the organisation.

(3) Expressions used in this paragraph have the same meaning as in section 67.

### *Incidental recording for purposes of broadcast or cable programme*

16.—(1) A person who proposes to broadcast a recording of a performance, or include a recording of a performance in a cable programme service, in circumstances not infringing the rights conferred by Part II shall be treated as having consent for the purposes of that Part for the making of a further recording for the purposes of the broadcast or cable programme.

(2) That consent is subject to the condition that the further recording—

(a) shall not be used for any other purpose, and

(b) shall be destroyed within 28 days of being first used for broadcasting the performance or including it in a cable programme service.

(3) A recording made in accordance with this paragraph shall be treated as an illicit recording—

(a) for the purposes of any use in breach of the condition mentioned in sub-paragraph (2)(a), and

(b) for all purposes after that condition or the condition mentioned in sub-paragraph (2)(b) is broken.

(4) Expressions used in this paragraph have the same meaning as in section 68.

### *Recordings for purposes of supervision and control of broadcasts and cable programmes*

17.—(1) The rights conferred by Part II are not infringed by the making or use by the British Broadcasting Corporation, for the purpose of maintaining supervision and control over programmes broadcast by them, of recordings of those programmes.

(2) The rights conferred by Part II are not infringed by—

(a) the making or use of recordings by the Independent Broadcasting Authority for the purposes mentioned in section 4(7) of the Broadcasting Act 1981 (maintenance of supervision and control over programmes and advertisements); or

1981 c. 68.

(b) anything done under or in pursuance of provision included in a contract between a programme contractor and the Authority in accordance with section 21 of that Act.

SCH. 2

(3) The rights conferred by Part II are not infringed by—

(a) the making by or with the authority of the Cable Authority, or the use by that Authority, for the purpose of maintaining supervision and control over programmes included in services licensed under Part I of the Cable and Broadcasting Act 1984, of recordings of those programmes; or

1984 c. 46.

(b) anything done under or in pursuance of—

(i) a notice or direction given under section 16 of the Cable and Broadcasting Act 1984 (power of Cable Authority to require production of recordings); or

(ii) a condition included in a licence by virtue of section 35 of that Act (duty of Authority to secure that recordings are available for certain purposes).

(4) Expressions used in this paragraph have the same meaning as in section 69.

*Free public showing or playing of broadcast or cable programme*

18.—(1) The showing or playing in public of a broadcast or cable programme to an audience who have not paid for admission to the place where the broadcast or programme is to be seen or heard does not infringe any right conferred by Part II in relation to a performance or recording included in—

(a) the broadcast or cable programme, or

(b) any sound recording or film which is played or shown in public by reception of the broadcast or cable programme.

(2) The audience shall be treated as having paid for admission to a place—

(a) if they have paid for admission to a place of which that place forms part; or

(b) if goods or services are supplied at that place (or a place of which it forms part)—

(i) at prices which are substantially attributable to the facilities afforded for seeing or hearing the broadcast or programme, or

(ii) at prices exceeding those usually charged there and which are partly attributable to those facilities.

(3) The following shall not be regarded as having paid for admission to a place—

(a) persons admitted as residents or inmates of the place;

(b) persons admitted as members of a club or society where the payment is only for membership of the club or society and the provision of facilities for seeing or hearing broadcasts or programmes is only incidental to the main purposes of the club or society.

(4) Where the making of the broadcast or inclusion of the programme in a cable programme service was an infringement of the rights conferred by Part II in relation to a performance or recording, the fact that it was heard or seen in public by the reception of the broadcast or programme shall be taken into account in assessing the damages for that infringement.

(5) Expressions used in this paragraph have the same meaning as in section 72.

*Reception and re-transmission of broadcast in cable programme service*

19.—(1) This paragraph applies where a broadcast made from a place in the United Kingdom is, by reception and immediate re-transmission, included in a cable programme service.

168        c. **48**        *Copyright, Designs and Patents*

SCH. 2

(2) The rights conferred by Part II in relation to a performance or recording included in the broadcast are not infringed—

1984 c. 46.

(a) if the inclusion of the broadcast in the cable programme service is in pursuance of a requirement imposed under section 13(1) of the Cable and Broadcasting Act 1984 (duty of Cable Authority to secure inclusion in cable service of certain programmes), or

(b) if and to the extent that the broadcast is made for reception in the area in which the cable programme service is provided;

but where the making of the broadcast was an infringement of those rights, the fact that the broadcast was re-transmitted as a programme in a cable programme service shall be taken into account in assessing the damages for that infringement.

(3) Expressions used in this paragraph have the same meaning as in section 73.

#### *Provision of sub-titled copies of broadcast or cable programme*

20.—(1) A designated body may, for the purpose of providing people who are deaf or hard of hearing, or physically or mentally handicapped in other ways, with copies which are sub-titled or otherwise modified for their special needs, make recordings of television broadcasts or cable programmes without infringing any right conferred by Part II in relation to a performance or recording included in the broadcast or cable programme.

(2) In this paragraph "designated body" means a body designated for the purposes of section 74 and other expressions used in this paragraph have the same meaning as in that section.

#### *Recording of broadcast or cable programme for archival purposes*

21.—(1) A recording of a broadcast or cable programme of a designated class, or a copy of such a recording, may be made for the purpose of being placed in an archive maintained by a designated body without thereby infringing any right conferred by Part II in relation to a performance or recording included in the broadcast or cable programme.

(2) In this paragraph "designated class" and "designated body" means a class or body designated for the purposes of section 75 and other expressions used in this paragraph have the same meaning as in that section.

Section 272.

### SCHEDULE 3

REGISTERED DESIGNS: MINOR AND CONSEQUENTIAL AMENDMENTS OF 1949 ACT

#### *Section 3: proceedings for registration*

1949 c. 88.

1. In section 3 of the Registered Designs Act 1949 (proceedings for registration) for subsections (2) to (6) substitute—

"(2) An application for the registration of a design in which design right subsists shall not be entertained unless made by the person claiming to be the design right owner.

(3) For the purpose of deciding whether a design is new, the registrar may make such searches, if any, as he thinks fit.

(4) The registrar may, in such cases as may be prescribed, direct that for the purpose of deciding whether a design is new an application shall be treated as made on a date earlier or later than that on which it was in fact made.

(5) The registrar may refuse an application for the registration of a design   SCH. 3
or may register the design in pursuance of the application subject to such
modifications, if any, as he thinks fit; and a design when registered shall be
registered as of the date on which the application was made or is treated as
having been made.

(6) An application which, owing to any default or neglect on the part of
the applicant, has not been completed so as to enable registration to be
effected within such time as may be prescribed shall be deemed to be
abandoned.

(7) An appeal lies from any decision of the registrar under this section.".

### Section 4: registration of same design in respect of other articles, etc.

2. In section 4 of the Registered Designs Act 1949 (registration of same design   1949 c. 88.
in respect of other articles, etc.), in subsection (1), for the proviso substitute—

"Provided that the right in a design registered by virtue of this section
shall not extend beyond the end of the period, and any extended period, for
which the right subsists in the original registered design.".

### Section 5: provisions for secrecy of certain designs

3.—(1) Section 5 of the Registered Designs Act 1949 is amended as follows.

(2) For "a competent authority" or "the competent authority", wherever
occurring, substitute "the Secretary of State"; and in subsection (3)(c) for "that
authority" substitute "he".

(3) For subsection (2) substitute—

"(2) The Secretary of State shall by rules make provision for securing that
where such directions are given—

(a) the representation or specimen of the design, and

(b) any evidence filed in support of the applicant's contention that the
appearance of an article is material (for the purposes of section
1(3) of this Act),

shall not be open to public inspection at the Patent Office during the
continuance in force of the directions."

(4) In subsection (3)(b) after "representation or specimen of the design" insert
", or any such evidence as is mentioned in subsection (2)(b) above,".

(5) Omit subsection (5).

### Section 6: provisions as to confidential disclosure, etc.

4.—(1) Section 6 of the Registered Designs Act 1949 (provisions as to
confidential disclosure, etc.) is amended as follows.

(2) In subsection (2) (display of design at certified exhibition), in paragraph
(a) for "certified by the Board of Trade" substitute "certified by the Secretary
of State".

(3) For subsections (4) and (5) (registration of designs corresponding to
copyright artistic works) substitute—

"(4) Where an application is made by or with the consent of the owner of
copyright in an artistic work for the registration of a corresponding design,
the design shall not be treated for the purposes of this Act as being other
than new by reason only of any use previously made of the artistic work,
subject to subsection (5).

170        c. **48**              *Copyright, Designs and Patents*

SCH. 3

(5) Subsection (4) does not apply if the previous use consisted of or included the sale, letting for hire or offer or exposure for sale or hire of articles to which had been applied industrially—

(a) the design in question, or

(b) a design differing from it only in immaterial details or in features which are variants commonly used in the trade,

and that previous use was made by or with the consent of the copyright owner.

(6) The Secretary of State may make provision by rules as to the circumstances in which a design is to be regarded for the purposes of this section as 'applied industrially' to articles, or any description of articles.".

*Section 9: exemption of innocent infringer from liability for damages*

1949 c. 88.

5. In section 9 of the Registered Designs Act 1949 (exemption of innocent infringer from liability for damages), in subsections (1) and (2) for "copyright in a registered design" substitute "the right in a registered design".

*Section 11: cancellation of registration*

6.—(1) Section 11 of the Registered Designs Act 1949 (cancellation of registration) is amended as follows.

(2) In subsection (2) omit "or original".

(3) For subsections (2A) and (3) substitute—

"(3) At any time after a design has been registered, any person interested may apply to the registrar for the cancellation of the registration on the ground that—

(a) the design was at the time it was registered a corresponding design in relation to an artistic work in which copyright subsisted, and

(b) the right in the registered design has expired in accordance with section 8(4) of this Act (expiry of right in registered design on expiry of copyright in artistic work);

and the registrar may make such order on the application as he thinks fit.

(4) A cancellation under this section takes effect—

(a) in the case of cancellation under subsection (1), from the date of the registrar's decision,

(b) in the case of cancellation under subsection (2), from the date of registration,

(c) in the case of cancellation under subsection (3), from the date on which the right in the registered design expired,

or, in any case, from such other date as the registrar may direct.

(5) An appeal lies from any order of the registrar under this section.".

*Section 14: registration where application has been made in convention country*

7. In section 14 of the Registered Designs Act 1949 (registration where application has been made in convention country), for subsections (2) and (3) substitute—

"(2) Where an application for registration of a design is made by virtue of this section, the application shall be treated, for the purpose of determining whether that or any other design is new, as made on the date of the application for protection in the convention country or, if more than one such application was made, on the date of the first such application.

(3) Subsection (2) shall not be construed as excluding the power to give directions under section 3(4) of this Act in relation to an application made by virtue of this section.".

*Copyright, Designs and Patents*     c. **48**     171

*Section 15: extension of time for application under s.14 in certain cases*     Sch. 3

8. In section 15(1) of the Registered Designs Act 1949 (power to make rules    1949 c. 88.
empowering registrar to extend time for applications under s.14) for "the Board
of Trade are satisfied" substitute "the Secretary of State is satisfied" and for
"they" substitute "he".

*Section 16: protection of designs communicated under international agreements*

9. In section 16 of the Registered Designs Act 1949 (protection of designs
communicated under international agreements)—

    (a) in subsection (1) for "the Board of Trade" substitute "the Secretary
        of State", and

    (b) in subsection (3) for "the Board of Trade" substitute "the Secretary
        of State" and for "the Board are satisfied" substitute "the
        Secretary of State is satisfied".

*Section 19: registration of assignments, &c.*

10. In section 19 of the Registered Designs Act 1949 (registration of
assignments, &c.), after subsection (3) insert—

    "(3A) Where design right subsists in a registered design, the registrar shall
not register an interest under subsection (3) unless he is satisfied that the
person entitled to that interest is also entitled to a corresponding interest in
the design right.

    (3B) Where design right subsists in a registered design and the proprietor
of the registered design is also the design right owner, an assignment of the
design right shall be taken to be also an assignment of the right in the
registered design, unless a contrary intention appears.".

*Section 20: rectification of the register*

11. In section 20 of the Registered Designs Act 1949 (rectification of the
register), after subsection (4) add—

    "(5) A rectification of the register under this section has effect as follows—

    (a) an entry made has effect from the date on which it should have
        been made,

    (b) an entry varied has effect as if it had originally been made in its
        varied form, and

    (c) an entry deleted shall be deemed never to have had effect,

unless, in any case, the court directs otherwise.".

*Section 22: inspection of registered designs*

12.—(1) Section 22 of the Registered Designs Act 1949 (inspection of
registered designs) is amended as follows.

(2) For subsection (1) substitute—

    "(1) Where a design has been registered under this Act, there shall be open
to inspection at the Patent Office on and after the day on which the
certificate of registration is issued—

    (a) the representation or specimen of the design, and

    (b) any evidence filed in support of the applicant's contention that the
        appearance of an article is material (for the purposes of section
        1(3) of this Act).

This subsection has effect subject to the following provisions of this
section and to any rules made under section 5(2) of this Act.".

172        c. **48**        *Copyright, Designs and Patents*

SCH. 3        (3) In subsection (2), subsection (3) (twice) and subsection (4) for "representation or specimen of the design" substitute "representation, specimen or evidence".

*Section 23: information as to existence of right in registered design*

1949 c. 88.        13. For section 23 of the Registered Designs Act 1949 (information as to existence of right in registered design) substitute—

"Information as to existence of right in registered design.        23. On the request of a person furnishing such information as may enable the registrar to identify the design, and on payment of the prescribed fee, the registrar shall inform him—

(a) whether the design is registered and, if so, in respect of what articles, and

(b) whether any extension of the period of the right in the registered design has been granted,

and shall state the date of registration and the name and address of the registered proprietor.".

*Section 25: certificate of contested validity of registration*

14. In section 25 of the Registered Designs Act 1949 (certificate of contested validity of registration), in subsection (2) for "the copyright in the registered design"substitute "the right in the registered design".

*Section 26: remedy for groundless threats of infringement proceedings*

15.—(1) Section 26 of the Registered Designs Act 1949 (remedy for groundless threats of infringement proceedings) is amended as follows.

(2) In subsections (1) and (2) for "the copyright in a registered design" substitute "the right in a registered design".

(3) After subsection (2) insert—

"(2A) Proceedings may not be brought under this section in respect of a threat to bring proceedings for an infringement alleged to consist of the making or importing of anything.".

*Section 27: the court*

16. For section 27 of the Registered Designs Act 1949 (the court) substitute—

"The court.        27.—(1) In this Act 'the court' means—

(a) in England and Wales the High Court or any patents county court having jurisdiction by virtue of an order under section 287 of the Copyright, Designs and Patents Act 1988,

(b) in Scotland, the Court of Session, and

(c) in Northern Ireland, the High Court.

(2) Provision may be made by rules of court with respect to proceedings in the High Court in England and Wales for references and applications under this Act to be dealt with by such judge of that court as the Lord Chancellor may select for the purpose.".

*Section 28: the Appeal Tribunal*

17.—(1) Section 28 of the Registered Designs Act 1949 (the Appeal Tribunal) is amended as follows.

*Copyright, Designs and Patents*     c. **48**     173

(2) For subsection (2) (members of Tribunal) substitute—

Sch. 3

"(2) The Appeal Tribunal shall consist of—

(a) one or more judges of the High Court nominated by the Lord Chancellor, and

(b) one judge of the Court of Session nominated by the Lord President of that Court.".

(3) In subsection (5) (costs), after "costs" (twice) insert "or expenses", and for the words from "and any such order" to the end substitute—

"and any such order may be enforced—

(a) in England and Wales or Northern Ireland, in the same way as an order of the High Court;

(b) in Scotland, in the same way as a decree for expenses granted by the Court of Session.".

(4) For subsection (10) (seniority of judges) substitute—

"(10) In this section 'the High Court' means the High Court in England and Wales; and for the purposes of this section the seniority of judges shall be reckoned by reference to the dates on which they were appointed judges of that court or the Court of Session.".

(5) The amendments to section 28 made by section 10(5) of the Administration of Justice Act 1970 (power to make rules as to right of audience) shall be deemed always to have extended to Northern Ireland.

1970 c. 31.

### Section 29: exercise of discretionary powers of registrar

18. In section 29 of the Registered Designs Act 1949 (exercise of discretionary powers of registrar) for "the registrar shall give" substitute "rules made by the Secretary of State under this Act shall require the registrar to give".

1949 c. 88.

### Section 30: costs and security for costs

19. For section 30 of the Registered Designs Act 1949 (costs and security for costs) substitute—

"Costs and security for costs.    30.—(1) Rules made by the Secretary of State under this Act may make provision empowering the registrar, in any proceedings before him under this Act—

(a) to award any party such costs as he may consider reasonable, and

(b) to direct how and by what parties they are to be paid.

(2) Any such order of the registrar may be enforced—

(a) in England and Wales or Northern Ireland, in the same way as an order of the High Court;

(b) in Scotland, in the same way as a decree for expenses granted by the Court of Session.

(3) Rules made by the Secretary of State under this Act may make provision empowering the registrar to require a person, in such cases as may be prescribed, to give security for the costs of—

(a) an application for cancellation of the registration of a design,

(b) an application for the grant of a licence in respect of a registered design, or

174         c. **48**           *Copyright, Designs and Patents*

Sᴄʜ. 3                              (c) an appeal from any decision of the registrar under
                                        this Act,

                                    and enabling the application or appeal to be treated as
                                    abandoned in default of such security being given.".

                            *Section 31: evidence before registrar*

1949 c. 88.        20. For section 31 of the Registered Designs Act 1949 (evidence before
             registrar) substitute—

             "Evidence before     31. Rules made by the Secretary of State under this Act may
             registrar.          make provision—

                                    (a) as to the giving of evidence in proceedings before the
                                        registrar under this Act by affidavit or statutory
                                        declaration;

                                    (b) conferring on the registrar the powers of an official
                                        referee of the Supreme Court as regards the
                                        examination of witnesses on oath and the discovery
                                        and production of documents; and

                                    (c) applying in relation to the attendance of witnesses in
                                        proceedings before the registrar the rules applicable
                                        to the attendance of witnesses in proceedings before
                                        such a referee.".

                    *Section 32: power of registrar to refuse to deal with certain agents*

             21. Section 32 of the Registered Designs Act 1949 (power of registrar to refuse
             to deal with certain agents) is repealed.

                        *Section 33: offences under s.5 (secrecy of certain designs)*

             22.—(1) Section 33 of the Registered Designs Act 1949 (offences under s.5
             (secrecy of certain designs)) is amended as follows.

             (2) In subsection (1), for paragraphs (a) and (b) substitute—

                    "(a) on conviction on indictment to imprisonment for a term not
                        exceeding two years or a fine, or both;

                    (b) on summary conviction to imprisonment for a term not exceeding
                        six months or a fine not exceeding the statutory maximum, or
                        both.".

             (3) Omit subsection (2).

             (4) The above amendments do not apply in relation to offences committed
             before the commencement of Part IV.

                            *Section 34: falsification of register, &c.*

             23.—(1) In section 34 of the Registered Designs Act 1949 (falsification of
             register, &c.) for "shall be guilty of a misdemeanour" substitute—

             "shall be guilty of an offence and liable—

                    (a) on conviction on indictment to imprisonment for a term not
                        exceeding two years or a fine, or both;

                    (b) on summary conviction to imprisonment for a term not exceeding
                        six months or a fine not exceeding the statutory maximum, or
                        both.".

             (2) The above amendment does not apply in relation to offences committed
             before the commencement of Part IV.

*Section 35: fine for falsely representing a design as registered*    SCH. 3

24.—(1) Section 35 of the Registered Designs Act 1949 (fine for falsely    1949 c. 88.
representing a design as registered) is amended as follows.

(2) In subsection (1) for the words from "a fine not exceeding £50" substitute
"a fine not exceeding level 3 on the standard scale".

(3) In subsection (2)—

    (a) for "the copyright in a registered design" substitute "the right in a
        registered design";

    (b) for "subsisting copyright in the design" substitute "subsisting right
        in the design under this Act"; and

    (c) for the words from "a fine" to the end substitute "a fine not
        exceeding level 1 on the standard scale".

(4) The amendment in sub-paragraph (2) does not apply in relation to offences
committed before the commencement of Part IV.

*Section 35A: offence by body corporate - liability of officers*

25.—(1) In the Registered Designs Act 1949 after section 35 insert—

"Offence by body
corporate:
liability of
officers.

    35A.—(1) Where an offence under this Act committed by a
body corporate is proved to have been committed with the
consent or connivance of a director, manager, secretary or
other similar officer of the body, or a person purporting to act
in any such capacity, he as well as the body corporate is guilty
of the offence and liable to be proceeded against and punished
accordingly.

    (2) In relation to a body corporate whose affairs are
managed by its members "director" means a member of the
body corporate.".

(2) The above amendment does not apply in relation to offences committed
before the commencement of Part IV.

*Section 36: general power to make rules, &c.*

26.—(1) Section 36 of the Registered Designs Act 1949 (general power to
make rules, &c.) is amended as follows.

(2) In subsection (1) for "the Board of Trade" and "the Board" substitute "the
Secretary of State", and for "as they think expedient" substitute "as he thinks
expedient".

(3) For the words in subsection (1) from "and in particular" to the end
substitute the following subsections—

    "(1A) Rules may, in particular, make provision—

    (a) prescribing the form of applications for registration of designs and
        of any representations or specimens of designs or other documents
        which may be filed at the Patent Office, and requiring copies to be
        furnished of any such representations, specimens or documents;

    (b) regulating the procedure to be followed in connection with any
        application or request to the registrar or in connection with any
        proceeding before him, and authorising the rectification of
        irregularities of procedure;

    (c) providing for the appointment of advisers to assist the registrar in
        proceedings before him;

    (d) regulating the keeping of the register of designs;

    (e) authorising the publication and sale of copies of representations of
        designs and other documents in the Patent Office;

176          c. **48**              *Copyright, Designs and Patents*

SCH. 3                    (f) prescribing anything authorised or required by this Act to be
                         prescribed by rules.

                    (1B) The remuneration of an adviser appointed to assist the registrar
                    shall be determined by the Secretary of State with the consent of the
                    Treasury and shall be defrayed out of money provided by Parliament.".

*Section 37: provisions as to rules and Orders*

1949 c. 88.        27.—(1) Section 37 of the Registered Designs Act 1949 (provisions as to rules
               and orders) is amended as follows.

               (2) Omit subsection (1) (duty to advertise making of rules).

               (3) In subsections (2), (3) and (4) for "the Board of Trade" substitute "the
               Secretary of State".

*Section 38: proceedings of the Board of Trade*

               28. Section 38 of the Registered Designs Act 1949 (proceedings of the Board
               of Trade) is repealed.

*Section 39: hours of business and excluded days*

               29. In section 39 of the Registered Designs Act 1949 (hours of business and
               excluded days), in subsection (1) for "the Board of Trade" substitute "the
               Secretary of State".

*Section 40: fees*

               30. In section 40 of the Registered Designs Act 1949 (fees) for "the Board of
               Trade" substitute "the Secretary of State".

*Section 44: interpretation*

               31.—(1) In section 44 of the Registered Designs Act 1949 (interpretation),
               subsection (1) is amended as follows.

               (2) In the definition of "artistic work" for "the Copyright Act 1956" substitute
               "Part I of the Copyright, Designs and Patents Act 1988".

               (3) At the appropriate place insert—

                    "'author' in relation to a design, has the meaning given by section 2(3)
                    and (4);".

               (4) Omit the definition of "copyright".

               (5) In the definition of "corresponding design", for the words from "has the
               same meaning" to the end substitute ", in relation to an artistic work, means a
               design which if applied to an article would produce something which would be
               treated for the purposes of Part I of the Copyright, Designs and Patents Act 1988
               as a copy of that work;".

               (6) For the definition of "court" substitute—

                    "'the court' shall be construed in accordance with section 27 of this Act;".

               (7) In the definition of "design" for "subsection (3) of section one of this Act"
               substitute "section 1(1) of this Act".

               (8) At the appropriate place insert—

                    "'employee', 'employment' and 'employer' refer to employment under a
                    contract of service or of apprenticeship,".

               (9) Omit the definition of "Journal".

(10) In the definition of "prescribed" for "the Board of Trade" substitute "the Secretary of State".    SCH. 3

#### *Section 45: application to Scotland*

32. In section 45 of the Registered Designs Act 1949 (application to Scotland), omit paragraphs (1) and (2).    1949 c. 88.

#### *Section 46: application to Northern Ireland*

33.—(1) Section 46 of the Registered Designs Act 1949 (application to Northern Ireland) is amended as follows.

(2) Omit paragraphs (1) and (2).

(3) For paragraph (3) substitute—

"(3) References to enactments include enactments comprised in Northern Ireland legislation:".

(4) After paragraph (3) insert—

"(3A) References to the Crown include the Crown in right of Her Majesty's Government in Northern Ireland:".

(5) In paragraph (4) for "a department of the Government of Northern Ireland" substitute "a Northern Ireland department", and at the end add "and in relation to a Northern Ireland department references to the Treasury shall be construed as references to the Department of Finance and Personnel".

#### *Section 47: application to Isle of Man*

34. For section 47 of the Registered Designs Act 1949 (application to Isle of Man) substitute—

"Application to Isle of Man.    47. This Act extends to the Isle of Man, subject to any modifications contained in an Order made by Her Majesty in Council, and accordingly, subject to any such Order, references in this Act to the United Kingdom shall be construed as including the Isle of Man.".

#### *Section 47A: territorial waters and the continental shelf*

35. In the Registered Designs Act 1949, after section 47 insert—

"Territorial waters and the continental shelf.    47A.—(1) For the purposes of this Act the territorial waters of the United Kingdom shall be treated as part of the United Kingdom.

(2) This Act applies to things done in the United Kingdom sector of the continental shelf on a structure or vessel which is present there for purposes directly connected with the exploration of the sea bed or subsoil or the exploitation of their natural resources as it applies to things done in the United Kingdom.

(3) The United Kingdom sector of the continental shelf means the areas designated by order under section 1(7) of the Continental Shelf Act 1964.".

#### *Section 48: repeals, savings and transitional provisions*

36. In section 48 of the Registered Designs Act 1949 (repeals, savings and transitional provisions), omit subsection (1) (repeals).

178        c. **48**        *Copyright, Designs and Patents*

SCH. 3

1949 c. 88.

*Schedule 1: provisions as to Crown use of registered designs*

37.—(1) The First Schedule to the Registered Designs Act 1949 (provisions as to Crown use of registered designs) is amended as follows.

(2) In paragraph 2(1) after "copyright" insert "or design right".

(3) In paragraph 3(1) omit "in such manner as may be prescribed by rules of court".

(4) In paragraph 4(2) (definition of "period of emergency") for the words from "the period ending" to "any other period" substitute "a period".

(5) For paragraph 4(3) substitute—

"(3) No Order in Council under this paragraph shall be submitted to Her Majesty unless a draft of it has been laid before and approved by a resolution of each House of Parliament.".

*Schedule 2: enactments repealed*

38. Schedule 2 to the Registered Designs Act 1949 (enactments repealed) is repealed.

Section 273.

## SCHEDULE 4

THE REGISTERED DESIGNS ACT 1949 AS AMENDED

### ARRANGEMENT OF SECTIONS

*Registrable designs and proceedings for registration*

Section

1. Designs registrable under Act.
2. Proprietorship of designs.
3. Proceedings for registration.
4. Registration of same design in respect of other articles.
5. Provision for secrecy of certain designs.
6. Provisions as to confidential disclosure, &c.

*Effect of registration, &c.*

7. Right given by registration.
8. Duration of right in registered design.
8A. Restoration of lapsed right in design.
8B. Effect of order for restoration of right.
9. Exemption of innocent infringer from liability for damages.
10. Compulsory licence in respect of registered design.
11. Cancellation of registration.
11A. Powers exercisable for protection of the public interest.
11B. Undertaking to take licence of right in infringement proceedings.
12. Use for services of the Crown.

*International arrangements*

13. Orders in Council as to convention countries.
14. Registration of design where application for protection in convention country has been made.
15. Extension of time for applications under s.14 in certain cases.
16. Protection of designs communicated under international agreements.

*Register of designs, &c.*

17. Register of designs.
18. Certificate of registration.
19. Registration of assignments, &c.
20. Rectification of register.

*Copyright, Designs and Patents*   c. **48**   179

Section
21.   Power to correct clerical errors.
22.   Inspection of registered designs.
23.   Information as to existence of right in registered design.
24.   ...   ...   ...   ...   ...   ...   ...

*Legal proceedings and appeals*

25.   Certificate of contested validity of registration.
26.   Remedy for groundless threats of infringement proceedings.
27.   The court.
28.   The Appeal Tribunal.

*Powers and duties of registrar*

29.   Exercise of discretionary powers of registrar.
30.   Costs and security for costs.
31.   Evidence before registrar.
32.   ...   ...   ...   ...   ...   ...   ...
33.   Offences under s.5.
34.   Falsification of register, &c.
35.   Fine for falsely representing a design as registered.
35A.  Offence by body corporate: liability of officers.

*Rules, &c.*

36.   General power of Secretary of State to make rules, &c.
37.   Provisions as to rules and Orders.
38.   ...   ...   ...   ...   ...   ...   ...

*Supplemental*

39.   Hours of business and excluded days.
40.   Fees.
41.   Service of notices, &c., by post.
42.   Annual report of registrar.
43.   Savings.
44.   Interpretation.
45.   Application to Scotland.
46.   Application to Northern Ireland.
47.   Application to Isle of Man.
47A.  Territorial waters and the continental shelf.
48.   Repeals, savings and transitional provisions.
49.   Short title and commencement.

SCH. 4

SCHEDULES:
Schedule 1—Provisions as to the use of registered designs for the services of the Crown and as to rights of third parties in respect of such use.

Schedule 2—...   ...   ...   ...   ...   ...   ...

An Act to consolidate certain enactments relating to registered designs.
[16th December 1949]

*Registrable designs and proceedings for registration*

Designs registrable under Act.

1.—(1) In this Act "design" means features of shape, configuration, pattern or ornament applied to an article by any industrial process, being features which in the finished article appeal to and are judged by the eye, but does not include—

(a) a method or principle of construction, or

180    c. **48**    *Copyright, Designs and Patents*

(b) features of shape or configuration of an article which—

(i) are dictated solely by the function which the article has to perform, or

(ii) are dependent upon the appearance of another article of which the article is intended by the author of the design to form an integral part.

(2) A design which is new may, upon application by the person claiming to be the proprietor, be registered under this Act in respect of any article, or set of articles, specified in the application.

(3) A design shall not be registered in respect of an article if the appearance of the article is not material, that is, if aesthetic considerations are not normally taken into account to a material extent by persons acquiring or using articles of that description, and would not be so taken into account if the design were to be applied to the article.

(4) A design shall not be regarded as new for the purposes of this Act if it is the same as a design—

(a) registered in respect of the same or any other article in pursuance of a prior application, or

(b) published in the United Kingdom in respect of the same or any other  article before the date of the application,

or if it differs from such a design only in immaterial details or in features which are variants commonly used in the trade.

This subsection has effect subject to the provisions of sections 4, 6 and 16 of this Act.

(5) The Secretary of State may by rules provide for excluding from registration under this Act designs for such articles of a primarily literary or artistic character as the Secretary of State thinks fit.

Proprietorship of designs.

2.—(1) The author of a design shall be treated for the purposes of this Act as the original proprietor of the design, subject to the following provisions.

(1A) Where a design is created in pursuance of a commission for money or money's worth, the person commissioning the design shall be treated as the original proprietor of the design.

(1B) Where, in a case not falling within subsection (1A), a design is created by an employee in the course of his employment, his employer shall be treated as the original proprietor of the design.

(2) Where a design, or the right to apply a design to any article, becomes vested, whether by assignment, transmission or operation of law, in any person other than the original proprietor, either alone or jointly with the original proprietor, that other person, or as the case may be the original proprietor and that other person, shall be treated for the purposes of this Act as the proprietor of the design or as the proprietor of the design in relation to that article.

(3) In this Act the "author" of a design means the person who creates it.

*Copyright, Designs and Patents*     c. **48**     181

(4) In the case of a design generated by computer in circumstances such that there is no human author, the person by whom the arrangements necessary for the creation of the design are made shall be taken to be the author.

SCH. 4

Proceedings for registration.

3.—(1) An application for the registration of a design shall be made in the prescribed form and shall be filed at the Patent Office in the prescribed manner.

(2) An application for the registration of a design in which design right subsists shall not be entertained unless made by the person claiming to be the design right owner.

(3) For the purpose of deciding whether a design is new, the registrar may make such searches, if any, as he thinks fit.

(4) The registrar may, in such cases as may be prescribed, direct that for the purpose of deciding whether a design is new an application shall be treated as made on a date earlier or later than that on which it was in fact made.

(5) The registrar may refuse an application for the registration of a design or may register the design in pursuance of the application subject to such modifications, if any, as he thinks fit; and a design when registered shall be registered as of the date on which the application was made or is treated as having been made.

(6) An application which, owing to any default or neglect on the part of the applicant, has not been completed so as to enable registration to be effected within such time as may be prescribed shall be deemed to be abandoned.

(7) An appeal lies from any decision of the registrar under this section.

Registration of same design in respect of other articles, etc.

4.—(1) Where the registered proprietor of a design registered in respect of any article makes an application—

    (a) for registration in respect of one or more other articles, of the registered design, or

    (b) for registration in respect of the same or one or more other articles, of a design consisting of the registered design with modifications or variations not sufficient to alter the character or substantially to affect the identity thereof,

the application shall not be refused and the registration made on that application shall not be invalidated by reason only of the previous registration or publication of the registered design:

Provided that the right in a design registered by virtue of this section shall not extend beyond the end of the period, and any extended period, for which the right subsists in the original registered design.

(2) Where any person makes an application for the registration of a design in respect of any article and either—

    (a) that design has been previously registered by another person in respect of some other article; or

    (b) the design to which the application relates consists of a design previously registered by another person in respect of the same or some other article with

182       c. **48**          *Copyright, Designs and Patents*

SCH. 4

modifications or variations not sufficient to alter the character or substantially to affect the identity thereof,

then, if at any time while the application is pending the applicant becomes the registered proprietor of the design previously registered, the foregoing provisions of this section shall apply as if at the time of making the application the applicant had been the registered proprietor of that design.

Provisions for secrecy of certain designs.

5.—(1) Where, either before or after the commencement of this Act, an application for the registration of a design has been made, and it appears to the registrar that the design is one of a class notified to him by the Secretary of State as relevant for defence purposes, he may give directions for prohibiting or restricting the publication of information with respect to the design, or the communication of such information to any person or class of persons specified in the directions.

(2) The Secretary of State shall by rules make provision for securing that where such directions are given—

(a) the representation or specimen of the design, and

(b) any evidence filed in support of the applicant's contention that the appearance of an article is material (for the purposes of section 1(3) of this Act),

shall not be open to public inspection at the Patent Office during the continuance in force of the directions.

(3) Where the registrar gives any such directions as aforesaid, he shall give notice of the application and of the directions to the Secretary of State, and thereupon the following provisions shall have effect, that is to say:—

(a) the Secretary of State shall, upon receipt of such notice, consider whether the publication of the design would be prejudicial to the defence of the realm and unless a notice under paragraph (c) of this subsection has previously been given by that authority to the registrar, shall reconsider that question before the expiration of nine months from the date of filing of the application for registration of the design and at least once in every subsequent year;

(b) for the purpose aforesaid, the Secretary of State may, at any time after the design has been registered or, with the consent of the applicant, at any time before the design has been registered, inspect the representation or specimen of the design, or any such evidence as is mentioned in subsection (2)(b) above, filed in pursuance of the application;

(c) if upon consideration of the design at any time it appears to the Secretary of State that the publication of the design would not, or would no longer, be prejudicial to the defence of the realm, he shall give notice to the registrar to that effect;

(d) on the receipt of any such notice the registrar shall revoke the directions and may, subject to such conditions, if any, as he thinks fit, extend the time for doing anything required or authorised to be done by or under this Act in connection with the application or registration, whether or not that time has previously expired.

(4) No person resident in the United Kingdom shall, except under the authority of a written permit granted by or on behalf of the registrar, make or cause to be made any application outside the United Kingdom for the registration of a design of any class prescribed for the purposes of this subsection unless—

SCH. 4

(a) an application for registration of the same design has been made in the United Kingdom not less than six weeks before the application outside the United Kingdom; and

(b) either no directions have been given under subsection (1) of this section in relation to the application in the United Kingdom or all such directions have been revoked:

Provided that this subsection shall not apply in relation to a design for which an application for protection has first been filed in a country outside the United Kingdom by a person resident outside the United Kingdom.

...    ...    ...    ...

Provisions as to confidential disclosure, etc.

6.—(1) An application for the registration of a design shall not be refused, and the registration of a design shall not be invalidated, by reason only of—

(a) the disclosure of the design by the proprietor to any other person in such circumstances as would make it contrary to good faith for that other person to use or publish the design;

(b) the disclosure of the design in breach of good faith by any person other than the proprietor of the design; or

(c) in the case of a new or original textile design intended for registration, the acceptance of a first and confidential order for goods bearing the design.

(2) An application for the registration of a design shall not be refused and the registration of a design shall not be invalidated by reason only—

(a) that a representation of the design, or any article to which the design has been applied, has been displayed, with the consent of the proprietor of the design, at an exhibition certified by the Secretary of State for the purposes of this subsection;

(b) that after any such display as aforesaid, and during the period of the exhibition, a representation of the design or any such article as aforesaid has been displayed by any person without the consent of the proprietor; or

(c) that a representation of the design has been published in consequence of any such display as is mentioned in paragraph (a) of this subsection,

if the application for registration of the design is made not later than six months after the opening of the exhibition.

(3) An application for the registration of a design shall not be refused, and the registration of a design shall not be invalidated, by reason only of the communication of the design by the proprietor thereof to a government department or to any person authorised by a government department to consider the merits of the design, or of anything done in consequence of such a communication.

Sch. 4

(4) Where an application is made by or with the consent of the owner of copyright in an artistic work for the registration of a corresponding design, the design shall not be treated for the purposes of this Act as being other than new by reason only of any use previously made of the artistic work, subject to subsection (5).

(5) Subsection (4) does not apply if the previous use consisted of or included the sale, letting for hire or offer or exposure for sale or hire of articles to which had been applied industrially—

    (a) the design in question, or

    (b) a design differing from it only in immaterial details or in features which are variants commonly used in the trade,

and that previous use was made by or with the consent of the copyright owner.

(6) The Secretary of State may make provision by rules as to the circumstances in which a design is to be regarded for the purposes of this section as "applied industrially" to articles, or any description of articles.

### *Effect of registration, &c.*

Right given by registration.

7.—(1) The registration of a design under this Act gives the registered proprietor the exclusive right—

    (a) to make or import—

        (i) for sale or hire, or

        (ii) for use for the purposes of a trade or business, or

    (b) to sell, hire or offer or expose for sale or hire,

an article in respect of which the design is registered and to which that design or a design not substantially different from it has been applied.

(2) The right in the registered design is infringed by a person who without the licence of the registered proprietor does anything which by virtue of subsection (1) is the exclusive right of the proprietor.

(3) The right in the registered design is also infringed by a person who, without the licence of the registered proprietor makes anything for enabling any such article to be made, in the United Kingdom or elsewhere, as mentioned in subsection (1).

(4) The right in the registered design is also infringed by a person who without the licence of the registered proprietor—

    (a) does anything in relation to a kit that would be an infringement if done in relation to the assembled article (see subsection (1)), or

    (b) makes anything for enabling a kit to be made or assembled, in the United Kingdom or elsewhere, if the assembled article would be such an article as is mentioned in subsection (1);

and for this purpose a "kit" means a complete or substantially complete set of components intended to be assembled into an article.

*Copyright, Designs and Patents*    **c. 48**    185

(5) No proceedings shall be taken in respect of an infringement committed before the date on which the certificate of registration of the design under this Act is granted.

Sᴄʜ. 4

(6) The right in a registered design is not infringed by the reproduction of a feature of the design which, by virtue of section 1(1)(b), is left out of account in determining whether the design is registrable.

Duration of right in registered design.

8.—(1) The right in a registered design subsists in the first instance for a period of five years from the date of the registration of the design.

(2) The period for which the right subsists may be extended for a second, third, fourth and fifth period of five years, by applying to the registrar for an extension and paying the prescribed renewal fee.

(3) If the first, second, third or fourth period expires without such application and payment being made, the right shall cease to have effect; and the registrar shall, in accordance with rules made by the Secretary of State, notify the proprietor of that fact.

(4) If during the period of six months immediately following the end of that period an application for extension is made and the prescribed renewal fee and any prescribed additional fee is paid, the right shall be treated as if it had never expired, with the result that—

  (a) anything done under or in relation to the right during that further period shall be treated as valid,

  (b) an act which would have constituted an infringement of the right if it had not expired shall be treated as an infringement, and

  (c) an act which would have constituted use of the design for the services of the Crown if the right had not expired shall be treated as such use.

(5) Where it is shown that a registered design—

  (a) was at the time it was registered a corresponding design in relation to an artistic work in which copyright subsists, and

  (b) by reason of a previous use of that work would not have been registrable but for section 6(4) of this Act (registration despite certain prior applications of design),

the right in the registered design expires when the copyright in that work expires, if that is earlier than the time at which it would otherwise expire, and it may not thereafter be renewed.

(6) The above provisions have effect subject to the proviso to section 4(1) (registration of same design in respect of other articles, &c.).

Restoration of lapsed right in design.

8A.—(1) Where the right in a registered design has expired by reason of a failure to extend, in accordance with section 8(2) or (4), the period for which the right subsists, an application for the restoration of the right in the design may be made to the registrar within the prescribed period.

186        c. **48**            *Copyright, Designs and Patents*

(2) The application may be made by the person who was the registered proprietor of the design or by any other person who would have been entitled to the right in the design if it had not expired; and where the design was held by two or more persons jointly, the application may, with the leave of the registrar, be made by one or more of them without joining the others.

(3) Notice of the application shall be published by the registrar in the prescribed manner.

(4) If the registrar is satisfied that the proprietor took reasonable care to see that the period for which the right subsisted was extended in accordance with section 8(2) or (4), he shall, on payment of any unpaid renewal fee and any prescribed additional fee, order the restoration of the right in the design.

(5) The order may be made subject to such conditions as the registrar thinks fit, and if the proprietor of the design does not comply with any condition the registrar may revoke the order and give such consequential directions as he thinks fit.

(6) Rules altering the period prescribed for the purposes of subsection (1) may contain such transitional provisions and savings as appear to the Secretary of State to be necessary or expedient.

Effect of order for restoration of right.

8B.—(1) The effect of an order under section 8A for the restoration of the right in a registered design is as follows.

(2) Anything done under or in relation to the right during the period between expiry and restoration shall be treated as valid.

(3) Anything done during that period which would have constituted an infringement if the right had not expired shall be treated as an infringement—

    (a) if done at a time when it was possible for an application for extension to be made under section 8(4); or

    (b) if it was a continuation or repetition of an earlier infringing act.

(4) If after it was no longer possible for such an application for extension to be made, and before publication of notice of the application for restoration, a person—

    (a) began in good faith to do an act which would have constituted an infringement of the right in the design if it had not expired, or

    (b) made in good faith effective and serious preparations to do such an act,

he has the right to continue to do the act or, as the case may be, to do the act, notwithstanding the restoration of the right in the design; but this does not extend to granting a licence to another person to do the act.

(5) If the act was done, or the preparations were made, in the course of a business, the person entitled to the right conferred by subsection (4) may—

    (a) authorise the doing of that act by any partners of his for the time being in that business, and

    (b) assign that right, or transmit it on death (or in the case of a body corporate on its dissolution), to any person who acquires that part of the business in the course of which the act was done or the preparations were made.

*Copyright, Designs and Patents*    c. **48**    187

(6) Where an article is disposed of to another in exercise of the rights conferred by subsection (4) or subsection (5), that other and any person claiming through him may deal with the article in the same way as if it had been disposed of by the registered proprietor of the design.

SCH. 4

(7) The above provisions apply in relation to the use of a registered design for the services of the Crown as they apply in relation to infringement of the right in the design.

**Exemption of innocent infringer from liability for damages.**

9.—(1) In proceedings for the infringement of the right in a registered design damages shall not be awarded against a defendant who proves that at the date of the infringement he was not aware, and had no reasonable ground for supposing, that the design was registered; and a person shall not be deemed to have been aware or to have had reasonable grounds for supposing as aforesaid by reason only of the marking of an article with the word "registered" or any abbreviation thereof, or any word or words expressing or implying that the design applied to the article has been registered, unless the number of the design accompanied the word or words or the abbreviation in question.

(2) Nothing in this section shall affect the power of the court to grant an injunction in any proceedings for infringement of the right in a registered design.

**Compulsory licence in respect of registered design.**

10.—(1) At any time after a design has been registered any person interested may apply to the registrar for the grant of a compulsory licence in respect of the design on the ground that the design is not applied in the United Kingdom by any industrial process or means to the article in respect of which it is registered to such an extent as is reasonable in the circumstances of the case; and the registrar may make such order on the application as he thinks fit.

(2) An order for the grant of a licence shall, without prejudice to any other method of enforcement, have effect as if it were a deed executed by the registered proprietor and all other necessary parties, granting a licence in accordance with the order.

(3) No order shall be made under this section which would be at variance with any treaty, convention, arrangement or engagement applying to the United Kingdom and any convention country.

(4) An appeal shall lie from any order of the registrar under this section.

**Cancellation of registration.**

11.—(1) The registrar may, upon a request made in the prescribed manner by the registered proprietor, cancel the registration of a design.

(2) At any time after a design has been registered any person interested may apply to the registrar for the cancellation of the registration of the design on the ground that the design was not, at the date of the registration thereof, new..., or on any other ground on which the registrar could have refused to register the design; and the registrar may make such order on the application as he thinks fit.

188        c. **48**        *Copyright, Designs and Patents*

(3) At any time after a design has been registered, any person interested may apply to the registrar for the cancellation of the registration on the ground that—

(a) the design was at the time it was registered a corresponding design in relation to an artistic work in which copyright subsisted, and

(b) the right in the registered design has expired in accordance with section 8(4) of this Act (expiry of right in registered design on expiry of copyright in artistic work);

and the registrar may make such order on the application as he thinks fit.

(4) A cancellation under this section takes effect—

(a) in the case of cancellation under subsection (1), from the date of the registrar's decision,

(b) in the case of cancellation under subsection (2), from the date of registration,

(c) in the case of cancellation under subsection (3), from the date on which the right in the registered design expired,

or, in any case, from such other date as the registrar may direct.

(5) An appeal lies from any order of the registrar under this section.

Powers exercisable for protection of the public interest.

11A.—(1) Where a report of the Monopolies and Mergers Commission has been laid before Parliament containing conclusions to the effect—

(a) on a monopoly reference, that a monopoly situation exists and facts found by the Commission operate or may be expected to operate against the public interest,

(b) on a merger reference, that a merger situation qualifying for investigation has been created and the creation of the situation, or particular elements in or consequences of it specified in the report, operate or may be expected to operate against the public interest,

(c) on a competition reference, that a person was engaged in an anti-competitive practice which operated or may be expected to operate against the public interest, or

(d) on a reference under section 11 of the Competition Act 1980 (reference of public bodies and certain other persons), that a person is pursuing a course of conduct which operates against the public interest,

the appropriate Minister or Ministers may apply to the registrar to take action under this section.

(2) Before making an application the appropriate Minister or Ministers shall publish, in such manner as he or they think appropriate, a notice describing the nature of the proposed application and shall consider any representations which may be made within 30 days of such publication by persons whose interests appear to him or them to be affected.

(3) If on an application under this section it appears to the registrar that the matters specified in the Commission's report as being those which in the Commission's opinion operate, or operated or may be expected to operate, against the public interest include—

*Copyright, Designs and Patents*    c. **48**    189

(a) conditions in licences granted in respect of a registered design by its proprietor restricting the use of the design by the licensee or the right of the proprietor to grant other licences, or

(b) a refusal by the proprietor of a registered design to grant licences on reasonable terms,

he may by order cancel or modify any such condition or may, instead or in addition, make an entry in the register to the effect that licences in respect of the design are to be available as of right.

(4) The terms of a licence available by virtue of this section shall, in default of agreement, be settled by the registrar on an application by the person requiring the licence; and terms so settled shall authorise the licensee to do everything which would be an infringement of the right in the registered design in the absence of a licence.

(5) Where the terms of a licence are settled by the registrar, the licence has effect from the date on which the application to him was made.

(6) An appeal lies from any order of the registrar under this section.

(7) In this section "the appropriate Minister or Ministers" means the Minister or Ministers to whom the report of the Monopolies and Mergers Commission was made.

Undertaking to take licence of right in infringement proceedings.

11B.—(1) If in proceedings for infringement of the right in a registered design in respect of which a licence is available as of right under section 11A of this Act the defendant undertakes to take a licence on such terms as may be agreed or, in default of agreement, settled by the registrar under that section—

(a) no injunction shall be granted against him, and

(b) the amount recoverable against him by way of damages or on an account of profits shall not exceed double the amount which would have been payable by him as licensee if such a licence on those terms had been granted before the earliest infringement.

(2) An undertaking may be given at any time before final order in the proceedings, without any admission of liability.

(3) Nothing in this section affects the remedies available in respect of an infringement committed before licences of right were available.

Use for services of the Crown.

12. The provisions of the First Schedule to this Act shall have effect with respect to the use of registered designs for the services of the Crown and the rights of third parties in respect of such use.

*International Arrangements*

Orders in Council as to convention countries.

13.—(1) His Majesty may, with a view to the fulfilment of a treaty, convention, arrangement or engagement, by Order in Council declare that any country specified in the Order is a convention country for the purposes of this Act:

Sᴄʜ. 4

Provided that a declaration may be made as aforesaid for the purposes either of all or of some only of the provisions of this Act, and a country in the case of which a declaration made for the purposes of some only of the provisions of this Act is in force shall be deemed to be a convention country for the purposes of those provisions only.

(2) His Majesty may by Order in Council direct that any of the Channel Islands, any colony,... shall be deemed to be a convention country for the purposes of all or any of the provisions of this Act; and an Order made under this subsection may direct that any such provisions shall have effect, in relation to the territory in question, subject to such conditions or limitations, if any, as may be specified in the Order.

(3) For the purposes of subsection (1) of this section, every colony, protectorate, territory subject to the authority or under the suzerainty of another country, and territory administered by another country... under the trusteeship system of the United Nations, shall be deemed to be a country in the case of which a declaration may be made under that subsection.

Registration of design where application for protection in convention country has been made.

14.—(1) An application for registration of a design in respect of which protection has been applied for in a convention country may be made in accordance with the provisions of this Act by the person by whom the application for protection was made or his personal representative or assignee:

Provided that no application shall be made by virtue of this section after the expiration of six months from the date of the application for protection in a convention country or, where more than one such application for protection has been made, from the date of the first application.

(2) Where an application for registration of a design is made by virtue of this section, the application shall be treated, for the purpose of determining whether that or any other design is new, as made on the date of the application for protection in the convention country or, if more than one such application was made, on the date of the first such application.

(3) Subsection (2) shall not be construed as excluding the power to give directions under section 3(4) of this Act in relation to an application made by virtue of this section.

(4) Where a person has applied for protection for a design by an application which—

(a) in accordance with the terms of a treaty subsisting between two or more convention countries, is equivalent to an application duly made in any one of those convention countries; or

(b) in accordance with the law of any convention country, is equivalent to an application duly made in that convention country,

he shall be deemed for the purposes of this section to have applied in that convention country.

Extension of time for applications under s.14 in certain cases.

15.—(1) If the Secretary of State is satisfied that provision substantially equivalent to the provision to be made by or under this section has been or will be made under the law of any convention country, he may make rules empowering the registrar to extend the time for making application under subsection (1) of section 14 of this Act for registration of a

SCH. 4

design in respect of which protection has been applied for in that country in any case where the period specified in the proviso to that subsection expires during a period prescribed by the rules.

(2) Rules made under this section—

(a) may, where any agreement or arrangement has been made between His Majesty's Government in the United Kingdom and the government of the convention country for the supply or mutual exchange of information or articles, provide, either generally or in any class of case specified in the rules, that an extension of time shall not be granted under this section unless the design has been communicated in accordance with the agreement or arrangement;

(b) may, either generally or in any class of case specified in the rules, fix the maximum extension which may be granted under this section;

(c) may prescribe or allow any special procedure in connection with applications made by virtue of this section;

(d) may empower the registrar to extend, in relation to an application made by virtue of this section, the time limited by or under the foregoing provisions of this Act for doing any act, subject to such conditions, if any, as may be imposed by or under the rules;

(e) may provide for securing that the rights conferred by registration on an application made by virtue of this section shall be subject to such restrictions or conditions as may be specified by or under the rules and in particular to restrictions and conditions for the protection of persons (including persons acting on behalf of His Majesty) who, otherwise than as the result of a communication made in accordance with such an agreement or arrangement as is mentioned in paragraph (a) of this subsection, and before the date of the application in question or such later date as may be allowed by the rules, may have imported or made articles to which the design is applied or may have made any application for registration of the design.

Protection of designs communicated under international agreements.

16.—(1) Subject to the provisions of this section, the Secretary of State may make rules for securing that, where a design has been communicated in accordance with an agreement or arrangement made between His Majesty's Government in the United Kingdom and the government of any other country for the supply or mutual exchange of information or articles,—

(a) an application for the registration of the design made by the person from whom the design was communicated or his personal representative or assignee shall not be prejudiced, and the registration of the design in pursuance of such an application shall not be invalidated, by reason only that the design has been communicated as aforesaid or that in consequence thereof—

(i) the design has been published or applied, or

192        c. **48**            *Copyright, Designs and Patents*

(ii) an application for registration of the design has been made by any other person, or the design has been registered on such an application;

(b) any application for the registration of a design made in consequence of such a communication as aforesaid may be refused and any registration of a design made on such an application may be cancelled.

(2) Rules made under subsection (1) of this section may provide that the publication or application of a design, or the making of any application for registration thereof shall, in such circumstances and subject to such conditions or exceptions as may be prescribed by the rules, be presumed to have been in consequence of such a communication as is mentioned in that subsection.

(3) The powers of the Secretary of State under this section, so far as they are exercisable for the benefit of persons from whom designs have been communicated to His Majesty's Government in the United Kingdom by the government of any other country, shall only be exercised if and to the extent that the Secretary of State is satisfied that substantially equivalent provision has been or will be made under the law of that country for the benefit of persons from whom designs have been communicated by His Majesty's Government in the United Kingdom to the government of that country.

(4) References in the last foregoing subsection to the communication of a design to or by His Majesty's Government or the government of any other country shall be construed as including references to the communication of the design by or to any person authorised in that behalf by the government in question.

### *Register of designs, etc.*

Register of designs.

17.—(1) The registrar shall maintain the register of designs, in which shall be entered—

(a) the names and addresses of proprietors of registered designs;

(b) notices of assignments and of transmissions of registered designs; and

(c) such other matters as may be prescribed or as the registrar may think fit.

(2) No notice of any trust, whether express, implied or constructive, shall be entered in the register of designs, and the registrar shall not be affected by any such notice.

(3) The register need not be kept in documentary form.

(4) Subject to the provisions of this Act and to rules made by the Secretary of State under it, the public shall have a right to inspect the register at the Patent Office at all convenient times.

(5) Any person who applies for a certified copy of an entry in the register or a certified extract from the register shall be entitled to obtain such a copy or extract on payment of a fee prescribed in relation to certified copies and extracts; and rules made by the Secretary of State under this Act may provide that any person who applies for an uncertified copy or extract shall be entitled to such a copy or extract on payment of a fee prescribed in relation to uncertified copies and extracts.

(6) Applications under subsection (5) above or rules made by virtue of that subsection shall be made in such manner as may be prescribed.

SCH. 4

(7) In relation to any portion of the register kept otherwise than in documentary form—

    (a) the right of inspection conferred by subsection (4) above is a right to inspect the material on the register; and

    (b) the right to a copy or extract conferred by subsection (5) above or rules is a right to a copy or extract in a form in which it can be taken away and in which it is visible and legible.

(8) Subject to subsection (11) below, the register shall be prima facie evidence of anything required or authorised to be entered in it and in Scotland shall be sufficient evidence of any such thing.

(9) A certificate purporting to be signed by the registrar and certifying that any entry which he is authorised by or under this Act to make has or has not been made, or that any other thing which he is so authorised to do has or has not been done, shall be prima facie evidence, and in Scotland shall be sufficient evidence, of the matters so certified.

(10) Each of the following—

    (a) a copy of an entry in the register or an extract from the register which is supplied under subsection (5) above;

    (b) a copy or any representation, specimen or document kept in the Patent Office or an extract from any such document,

which purports to be a certified copy or certified extract shall, subject to subsection (11) below, be admitted in evidence without further proof and without production of any original; and in Scotland such evidence shall be sufficient evidence.

(11) In the application of this section to England and Wales nothing in it shall be taken as detracting from section 69 or 70 of the Police and Criminal Evidence Act 1984 or any provision made by virtue of either of them.

(12) In this section "certified copy" and "certified extract" means a copy and extract certified by the registrar and sealed with the seal of the Patent Office.

Certificate of registration.

18.—(1) The registrar shall grant a certificate of registration in the prescribed form to the registered proprietor of a design when the design is registered.

(2) The registrar may, in a case where he is satisfied that the certificate of registration has been lost or destroyed, or in any other case in which he thinks it expedient, furnish one or more copies of the certificate.

Registration of assignments, etc.

19.—(1) Where any person becomes entitled by assignment, transmission or operation of law to a registered design or to a share in a registered design, or becomes entitled as mortgagee, licensee or otherwise to any other interest in a registered design, he shall apply to the registrar in the prescribed manner for the registration of his title as proprietor or co-proprietor or, as the case may be, of notice of his interest, in the register of designs.

Sch. 4

(2) Without prejudice to the provisions of the foregoing subsection, an application for the registration of the title of any person becoming entitled by assignment to a registered design or a share in a registered design, or becoming entitled by virtue of a mortgage, licence or other instrument to any other interest in a registered design, may be made in the prescribed manner by the assignor, mortgagor, licensor or other party to that instrument, as the case may be.

(3) Where application is made under this section for the registration of the title of any person, the registrar shall, upon proof of title to his satisfaction—

    (a)  where that person is entitled to a registered design or a share in a registered design, register him in the register of designs as proprietor or co-proprietor of the design, and enter in that register particulars of the instrument or event by which he derives title; or

    (b)  where that person is entitled to any other interest in the registered design, enter in that register notice of his interest, with particulars of the instrument (if any) creating it.

(3A) Where design right subsists in a registered design, the registrar shall not register an interest under subsection (3) unless he is satisfied that the person entitled to that interest is also entitled to a corresponding interest in the design right.

(3B) Where design right subsists in a registered design and the proprietor of the registered design is also the design right owner, an assignment of the design right shall be taken to be also an assignment of the right in the registered design, unless a contrary intention appears.

(4) Subject to any rights vested in any other person of which notice is entered in the register of designs, the person or persons registered as proprietor of a registered design shall have power to assign, grant licences under, or otherwise deal with the design, and to give effectual receipts for any consideration for any such assignment, licence or dealing.

Provided that any equities in respect of the design may be enforced in like manner as in respect of any other personal property.

(5) Except for the purposes of an application to rectify the register under the following provisions of this Act, a document in respect of which no entry has been made in the register of designs under subsection (3) of this section shall not be admitted in any court as evidence of the title of any person to a registered design or share of or interest in a registered design unless the court otherwise directs.

Rectification of register.

20.—(1) The court may, on the application of any person aggrieved, order the register of designs to be rectified by the making of any entry therein or the variation or deletion of any entry therein.

(2) In proceedings under this section the court may determine any question which it may be necessary or expedient to decide in connection with the rectification of the register.

(3) Notice of any application to the court under this section shall be given in the prescribed manner to the registrar, who shall be entitled to appear and be heard on the application, and shall appear if so directed by the court.

SCH. 4

(4) Any order made by the court under this section shall direct that notice of the order shall be served on the registrar in the prescribed manner; and the registrar shall, on receipt of the notice, rectify the register accordingly.

(5) A rectification of the register under this section has effect as follows—

(a) an entry made has effect from the date on which it should have been made,

(b) an entry varied has effect as if it had originally been made in its varied form, and

(c) an entry deleted shall be deemed never to have had effect,

unless, in any case, the court directs otherwise.

Power to correct clerical errors.

21.—(1) The registrar may, in accordance with the provisions of this section, correct any error in an application for the registration or in the representation of a design, or any error in the register of designs.

(2) A correction may be made in pursuance of this section either upon a request in writing made by any person interested and accompanied by the prescribed fee, or without such a request.

(3) Where the registrar proposes to make any such correction as aforesaid otherwise than in pursuance of a request made under this section, he shall give notice of the proposal to the registered proprietor or the applicant for registration of the design, as the case may be, and to any other person who appears to him to be concerned, and shall give them an opportunity to be heard before making the correction.

Inspection of registered designs.

22.—(1) Where a design has been registered under this Act, there shall be open to inspection at the Patent Office on and after the day on which the certificate of registration is issued—

(a) the representation or specimen of the design, and

(b) any evidence filed in support of the applicant's contention that the appearance of an article is material (for the purposes of section 1(3) of this Act).

This subsection has effect subject to the following provisions of this section and to any rules made under section 5(2) of this Act.

(2) In the case of a design registered in respect of an article of any class prescribed for the purposes of this subsection, no representation, specimen or evidence filed in pursuance of the application shall, until the expiration of such period after the day on which the certificate of registration is issued as may be prescribed in relation to articles of that class, be open to inspection at the Patent Office except by the registered proprietor, a person authorised in writing by the registered proprietor, or a person authorised by the registrar or by the court:

196       c. **48**        *Copyright, Designs and Patents*

Sch. 4

Provided that where the registrar proposes to refuse an application for the registration of any other design on the ground that it is the same as the first-mentioned design or differs from that design only in immaterial details or in features which are variants commonly used in the trade, the applicant shall be entitled to inspect the representation or specimen of the first-mentioned design filed in pursuance of the application for registration of that design.

(3) In the case of a design registered in respect of an article of any class prescribed for the purposes of the last foregoing subsection, the representation, specimen or evidence shall not, during the period prescribed as aforesaid, be inspected by any person by virtue of this section except in the presence of the registrar or of an officer acting under him; and except in the case of an inspection authorised by the proviso to that subsection, the person making the inspection shall not be entitled to take a copy of the representation, specimen or evidence or any part thereof.

(4) Where an application for the registration of a design has been abandoned or refused, neither the application for registration nor any representation, specimen or evidence filed in pursuance thereof shall at any time be open to inspection at the Patent Office or be published by the registrar.

Information as to existence of right in registered design.

23. On the request of a person furnishing such information as may enable the registrar to identify the design, and on payment of the prescribed fee, the registrar shall inform him—

(a) whether the design is registered and, if so, in respect of what articles, and

(b) whether any extension of the period of the right in the registered design has been granted,

and shall state the date of registration and the name and address of the registered proprietor.

... ... ... ... ... ... ...

*Legal proceedings and appeals*

Certificate of contested validity of registration.

25.—(1) If in any proceedings before the court the validity of the registration of a design is contested, and it is found by the court that the design is validly registered, the court may certify that the validity of the registration of the design was contested in those proceedings.

(2) Where any such certificate has been granted, then if in any subsequent proceedings before the court for infringement of the right in the registered design or for cancellation of the registration of the design, a final order or judgment is made or given in favour of the registered proprietor, he shall, unless the court otherwise directs, be entitled to his costs as between solicitor and client:

Provided that this subsection shall not apply to the costs of any appeal in any such proceedings as aforesaid.

Remedy for groundless threats of infringement proceedings.

26.—(1) Where any person (whether entitled to or interested in a registered design or an application for registration of a design or not) by circulars, advertisements or otherwise

SCH. 4

threatens any other person with proceedings for infringement of the right in a registered design, any person aggrieved thereby may bring an action against him for any such relief as is mentioned in the next following subsection.

(2) Unless in any action brought by virtue of this section the defendant proves that the acts in respect of which proceedings were threatened constitute or, if done, would constitute, an infringement of the right in a registered design the registration of which is not shown by the plaintiff to be invalid, the plaintiff shall be entitled to the following relief, that is to say:—

    (a) a declaration to the effect that the threats are unjustifiable;

    (b) an injunction against the continuance of the threats; and

    (c) such damages, if any, as he has sustained thereby.

(2A) Proceedings may not be brought under this section in respect of a threat to bring proceedings for an infringement alleged to consist of the making or importing of anything.

(3) For the avoidance of doubt it is hereby declared that a mere notification that a design is registered does not constitute a threat of proceedings within the meaning of this section.

The court.

27.—(1) In this Act "the court" means—

    (a) in England and Wales, the High Court or any patents county court having jurisdiction by virtue of an order under section 287 of the Copyright, Designs and Patents Act 1988,

    (b) in Scotland, the Court of Session, and

    (c) in Northern Ireland, the High Court.

(2) Provision may be made by rules of court with respect to proceedings in the High Court in England and Wales for references and applications under this Act to be dealt with by such judge of that court as the Lord Chancellor may select for the purpose.

The Appeal Tribunal.

28.—(1) Any appeal from the registrar under this Act shall lie to the Appeal Tribunal.

(2) The Appeal Tribunal shall consist of—

    (a) one or more judges of the High Court nominated by the Lord Chancellor, and

    (b) one judge of the Court of Session nominated by the Lord President of that Court.

(2A) At any time when it consists of two or more judges, the jurisdiction of the Appeal Tribunal—

    (a) where in the case of any particular appeal the senior of those judges so directs, shall be exercised in relation to that appeal by both of the judges, or (if there are more than two) by two of them, sitting together, and

    (b) in relation to any appeal in respect of which no such direction is given, may be exercised by any one of the judges;

and, in the exercise of that jurisdiction, different appeals may be heard at the same time by different judges.

Sch. 4

(3) The expenses of the Appeal Tribunal shall be defrayed and the fees to be taken therein may be fixed as if the Tribunal were a court of the High Court.

(4) The Appeal Tribunal may examine witnesses on oath and administer oaths for that purpose.

(5) Upon any appeal under this Act the Appeal Tribunal may by order award to any party such costs or expenses as the Tribunal may consider reasonable and direct how and by what parties the costs or expenses are to be paid; and any such order may be enforced—

 (a) in England and Wales or Northern Ireland, in the same way as an order of the High Court;

 (b) in Scotland, in the same way as a decree for expenses granted by the Court of Session.

… … … … … … … …

(7) Upon any appeal under this Act the Appeal Tribunal may exercise any power which could have been exercised by the registrar in the proceeding from which the appeal is brought.

(8) Subject to the foregoing provisions of this section the Appeal Tribunal may make rules for regulating all matters relating to proceedings before it under this Act, including right of audience.

(8A) At any time when the Appeal Tribunal consists of two or more judges, the power to make rules under subsection (8) of this section shall be exercisable by the senior of those judges:

Provided that another of those judges may exercise that power if it appears to him that it is necessary for rules to be made and that the judge (or, if more than one, each of the judges) senior to him is for the time being prevented by illness, absence or otherwise from making them.

(9) An appeal to the Appeal Tribunal under this Act shall not be deemed to be a proceeding in the High Court.

(10) In this section "the High Court" means the High Court in England and Wales; and for the purposes of this section the seniority of judges shall be reckoned by reference to the dates on which they were appointed judges of that court or the Court of Session.

*Powers and duties of Registrar*

Exercise of discretionary powers of registrar.

29. Without prejudice to any provisions of this Act requiring the registrar to hear any party to proceedings thereunder, or to give to any such party an opportunity to be heard, rules made by the Secretary of State under this Act shall require the registrar to give to any applicant for registration of a design an opportunity to be heard before exercising adversely to the applicant any discretion vested in the registrar by or under this Act.

Costs and security for costs.

30.—(1) Rules made by the Secretary of State under this Act may make provision empowering the registrar, in any proceedings before him under this Act—

 (a) to award any party such costs as he may consider reasonable, and

 (b) to direct how and by what parties they are to be paid.

(2) Any such order of the registrar may be enforced—    SCH. 4

(a) in England and Wales or Northern Ireland, in the same way as an order of the High Court;

(b) in Scotland, in the same way as a decree for expenses granted by the Court of Session.

(3) Rules made by the Secretary of State under this Act may make provision empowering the registrar to require a person, in such cases as may be prescribed, to give security for the costs of—

(a) an application for cancellation of the registration of a design,

(b) an application for the grant of a licence in respect of a registered design, or

(c) an appeal from any decision of the registrar under this Act,

and enabling the application or appeal to be treated as abandoned in default of such security being given.

Evidence before registrar.

31. Rules made by the Secretary of State under this Act may make provision—

(a) as to the giving of evidence in proceedings before the registrar under this Act by affidavit or statutory declaration;

(b) conferring on the registrar the powers of an official referee of the Supreme Court as regards the examination of witnesses on oath and the discovery and production of documents; and

(c) applying in relation to the attendance of witnesses in proceedings before the registrar the rules applicable to the attendance of witnesses in proceedings before such a referee.

... ... ... ... ... ... ...

## *Offences*

Offences under s.5.

33.—(1) If any person fails to comply with any direction given under section five of this Act or makes or causes to be made an application for the registration of a design in contravention of that section, he shall be guilty of an offence and liable—

(a) on conviction on indictment to imprisonment for a term not exceeding two years or a fine, or both;

(b) on summary conviction to imprisonment for a term not exceeding six months or a fine not exceeding the statutory maximum, or both.

... ... ... ... ... ... ...

Falsification of register, etc.

34. If any person makes or causes to be made a false entry in the register of designs, or a writing falsely purporting to be a copy of an entry in that register, or produces or tenders or causes to be produced or tendered in evidence any such writing, knowing the entry or writing to be false, he shall be guilty of an offence and liable—

(a) on conviction on indictment to imprisonment for a term not exceeding two years or a fine, or both;

Sch. 4

(b) on summary conviction to imprisonment for a term not exceeding six months or a fine not exceeding the statutory maximum, or both.

Fine for falsely representing a design as registered.

35.—(1) If any person falsely represents that a design applied to any article sold by him is registered in respect of that article, he shall be liable on summary conviction to a fine not exceeding level 3 on the standard scale; and for the purposes of this provision a person who sells an article having stamped, engraved or impressed thereon or otherwise applied thereto the word "registered", or any other word expressing or implying that the design applied to the article is registered, shall be deemed to represent that the design applied to the article is registered in respect of that article.

(2) If any person, after the right in a registered design has expired, marks any article to which the design has been applied with the word "registered", or any word or words implying that there is a subsisting right in the design under this Act, or causes any such article to be so marked, he shall be liable on summary conviction to a fine not exceeding level 1 on the standard scale.

Offence by body corporate: liability of officers.

35A.—(1) Where an offence under this Act committed by a body corporate is proved to have been committed with the consent or connivance of a director, manager, secretary or other similar officer of the body, or a person purporting to act in any such capacity, he as well as the body corporate is guilty of the offence and liable to be proceeded against and punished accordingly.

(2) In relation to a body corporate whose affairs are managed by its members "director" means a member of the body corporate.

*Rules, etc.*

General power of Secretary of State to make rules, etc.

36.—(1) Subject to the provisions of this Act, the Secretary of State may make such rules as he thinks expedient for regulating the business of the Patent Office in relation to designs and for regulating all matters by this Act placed under the direction or control of the registrar or the Secretary of State.

(1A) Rules may, in particular, make provision—

(a) prescribing the form of applications for registration of designs and of any representations or specimens of designs or other documents which may be filed at the Patent Office, and requiring copies to be furnished of any such representations, specimens or documents;

(b) regulating the procedure to be followed in connection with any application or request to the registrar or in connection with any proceeding before him, and authorising the rectification of irregularities of procedure;

(c) providing for the appointment of advisers to assist the registrar in proceedings before him;

(d) regulating the keeping of the register of designs;

(e) authorising the publication and sale of copies of representations of designs and other documents in the Patent Office;

(f) prescribing anything authorised or required by this Act to be prescribed by rules.

(1B) The remuneration of an adviser appointed to assist the registrar shall be determined by the Secretary of State with the consent of the Treasury and shall be defrayed out of money provided by Parliament.

Sch. 4

(2) Rules made under this section may provide for the establishment of branch offices for designs and may authorise any document or thing required by or under this Act to be filed or done at the Patent Office to be filed or done at the branch office at Manchester or any other branch office established in pursuance of the rules.

Provisions as to rules and Orders.

37.—(1)… … … … … … … … .

(2) Any rules made by the Secretary of State in pursuance of section 15 or section 16 of this Act, and any order made, direction given, or other action taken under the rules by the registrar, may be made, given or taken ‚o as to have effect as respects things done or omitted to be done on or after such date, whether before or after the coming into operation of the rules or of this Act, as may be specified in the rules.

(3) Any power to make rules conferred by this Act on the Secretary of State or on the Appeal Tribunal shall be exercisable by statutory instrument; and the Statutory Instruments Act 1946 shall apply to a statutory instrument containing rules made by the Appeal Tribunal in like manner as if the rules had been made by a Minister of the Crown.

(4) Any statutory instrument containing rules made by the Secretary of State under this Act shall be subject to annulment in pursuance of a resolution of either House of Parliament.

(5) Any Order in Council made under this Act may be revoked or varied by a subsequent Order in Council.

… … … … … … … …

## Supplemental

Hours of business and excluded days.

39.—(1) Rules made by the Secretary of State under this Act may specify the hour at which the Patent Office shall be deemed to be closed on any day for purposes of the transaction by the public of business under this Act or of any class of such business, and may specify days as excluded days for any such purposes.

(2) Any business done under this Act on any day after the hour specified as aforesaid in relation to business of that class, or on a day which is an excluded day in relation to business of that class, shall be deemed to have been done on the next following day not being an excluded day; and where the time for doing anything under this Act expires on an excluded day, that time shall be extended to the next following day not being an excluded day.

Fees.

40. There shall be paid in respect of the registration of designs and applications therefor, and in respect of other matters relating to designs arising under this Act, such fees as may be prescribed by rules made by the Secretary of State with the consent of the Treasury.

Service of notices, &c., by post.

41. Any notice required or authorised to be given by or under this Act, and any application or other document so authorised or required to be made or filed, may be given, made or filed by post.

202        c. **48**        *Copyright, Designs and Patents*

Sch. 4

Annual report of registrar.

42. The Comptroller-General of Patents, Designs and Trade Marks shall, in his annual report with respect to the execution of the Patents Act 1977, include a report with respect to the execution of this Act as if it formed a part of or was included in that Act.

Savings.

43.—(1) Nothing in this Act shall be construed as authorising or requiring the registrar to register a design the use of which would, in his opinion, be contrary to law or morality.

(2) Nothing in this Act shall affect the right of the Crown or of any person deriving title directly or indirectly from the Crown to sell or use articles forfeited under the laws relating to customs or excise.

Interpretation.

44.—(1) In this Act, except where the context otherwise requires, the following expressions have the meanings hereby respectively assigned to them, that is to say—

"Appeal Tribunal" means the Appeal Tribunal constituted and acting in accordance with section 28 of this Act as amended by the Administration of Justice Act 1969;

"article" means any article of manufacture and includes any part of an article if that part is made and sold separately;

"artistic work" has the same meaning as in Part I of the Copyright, Designs and Patents Act 1988;

"assignee" includes the personal representative of a deceased assignee, and references to the assignee of any person include references to the assignee of the personal representative or assignee of that person;

"author", in relation to a design, has the meaning given by section 2(3) and (4);

… … … … … … …

"corresponding design", in relation to an artistic work, means a design which if applied to an article would produce something which would be treated for the purposes of Part I of the Copyright, Designs and Patents Act 1988 as a copy of that work;

"the court" shall be construed in accordance with section 27 of this Act;

"design" has the meaning assigned to it by section 1(1) of this Act;

"employee", "employment" and "employer" refer to employment under a contract of service or of apprenticeship;

… … … … … … …

"prescribed" means prescribed by rules made by the Secretary of State under this Act;

"proprietor" has the meaning assigned to it by section two of this Act;

"registered proprietor" means the person or persons for the time being entered in the register of designs as proprietor of the design;

*Copyright, Designs and Patents*    c. **48**        203

"registrar" means the Comptroller-General of Patents    SCH. 4
Designs and Trade Marks;

"set of articles" means a number of articles of the same
general character ordinarily on sale or intended to be
used together, to each of which the same design, or the
same design with modifications or variations not
sufficient to alter the character or substantially to
affect the identity thereof, is applied.

(2) Any reference in this Act to an article in respect of which
a design is registered shall, in the case of a design registered in
respect of a set of articles, be construed as a reference to any
article of that set.

(3) Any question arising under this Act whether a number of
articles constitute a set of articles shall be determined by the
registrar; and notwithstanding anything in this Act any
determination of the registrar under this subsection shall be
final.

(4) For the purposes of subsection (1) of section 14 and of
section 16 of this Act, the expression "personal representative",
in relation to a deceased person, includes the legal
representative of the deceased appointed in any country outside
the United Kingdom.

Application to    45. In the application of this Act to Scotland—
Scotland.

... ... ... ... ... ... ...

(3) The expression "injunction" means "interdict"; the
expression "arbitrator" means "arbiter";
the expression "plaintiff" means "pursuer"; the
expression "defendant" means "defender".

Application to    46. In the application of this Act to Northern Ireland—
Northern Ireland.
... ... ... ... ... ... ...

(3) References to enactments include enactments comprised
in Northern Ireland legislation:

(3A) References to the Crown include the Crown in right of
Her Majesty's Government in Northern Ireland:

(4) References to a government department shall be
construed as including references to a Northern Ireland
department, and in relation to a Northern Ireland department
references to the Treasury shall be construed as references to
the Department of Finance and Personnel.

... ... ... ... ... ... ...

Application to    47. This Act extends to the Isle of Man, subject to any
Isle of Man.    modifications contained in an Order made by Her Majesty in
Council, and accordingly, subject to any such Order, references
in this Act to the United Kingdom shall be construed as
including the Isle of Man.

Territorial waters    47A.—(1) For the purposes of this Act the territorial waters
and the    of the United Kingdom shall be treated as part of the United
continental shelf.    Kingdom.

204        c. **48**        *Copyright, Designs and Patents*

SCH. 4

(2) This Act applies to things done in the United Kingdom sector of the continental shelf on a structure or vessel which is present there for purposes directly connected with the exploration of the sea bed or subsoil or the exploitation of their natural resources as it applies to things done in the United Kingdom.

(3) The United Kingdom sector of the continental shelf means the areas designated by order under section 1(7) of the Continental Shelf Act 1964.

Repeals, savings, and transitional provisions.

48.—(1)... ... ... ... ... ... ...

(2) Subject to the provisions of this section, any Order in Council, rule, order, requirement, certificate, notice, decision, direction, authorisation, consent, application, request or thing made, issued, given or done under any enactment repealed by this Act shall, if in force at the commencement of this Act, and so far as it could have been made, issued, given or done under this Act, continue in force and have effect as if made, issued, given or done under the corresponding enactment of this Act.

(3) Any register kept under the Patents and Designs Act 1907 shall be deemed to form part of the corresponding register under this Act.

(4) Any design registered before the commencement of this Act shall be deemed to be registered under this Act in respect of articles of the class in which it is registered.

(5) Where, in relation to any design, the time for giving notice to the registrar under section 59 of the Patents and Designs Act 1907 expired before the commencement of this Act and the notice was not given, subsection (2) of section 6 of this Act shall not apply in relation to that design or any registration of that design.

(6) Any document referring to any enactment repealed by this Act shall be construed as referring to the corresponding enactment of this Act.

(7) Nothing in the foregoing provisions of this section shall be taken as prejudicing the operation of section 38 of the Interpretation Act 1889 (which relates to the effect of repeals).

Short title and commencement.

49.—(1) This Act may be cited as the Registered Designs Act 1949.

(2) This Act shall come into operation on the first day of January, nineteen hundred and fifty, immediately after the coming into operation of the Patents and Designs Act 1949.

## FIRST SCHEDULE

PROVISIONS AS TO THE USE OF REGISTERED DESIGNS FOR THE SERVICES OF THE CROWN AND AS TO THE RIGHTS OF THIRD PARTIES IN RESPECT OF SUCH USE

*Use of registered designs for services of the Crown*

1.—(1) Notwithstanding anything in this Act, any Government department, and any person authorised in writing by a Government department, may use any registered design for the services of the Crown in accordance with the following provisions of this paragraph.

SCH. 4

(2) If and so far as the design has before the date of registration thereof been duly recorded by or applied by or on behalf of a Government department otherwise than in consequence of the communication of the design directly or indirectly by the registered proprietor or any person from whom he derives title, any use of the design by virtue of this paragraph may be made free of any royalty or other payment to the registered proprietor.

(3) If and so far as the design has not been so recorded or applied as aforesaid, any use of the design made by virtue of this paragraph at any time after the date of registration thereof, or in consequence of any such communication as aforesaid, shall be made upon such terms as may be agreed upon, either before or after the use, between the Government department and the registered proprietor with the approval of the Treasury, or as may in default of agreement be determined by the court on a reference under paragraph 3 of this Schedule.

(4) The authority of a Government department in respect of a design may be given under this paragraph either before or after the design is registered and either before or after the acts in respect of which the authority is given are done, and may be given to any person whether or not he is authorised directly or indirectly by the registered proprietor to use the design.

(5) Where any use of a design is made by or with the authority of a Government department under this paragraph, then, unless it appears to the department that it would be contrary to the public interest so to do, the department shall notify the registered proprietor as soon as practicable after the use is begun, and furnish him with such information as to the extent of the use as he may from time to time require.

(6) For the purposes of this and the next following paragraph "the services of the Crown" shall be deemed to include—

    (a) the supply to the government of any country outside the United Kingdom, in pursuance of an agreement or arrangement between Her Majesty's Government in the United Kingdom and the government of that country, of articles required—

        (i) for the defence of that country; or

        (ii) for the defence of any other country whose government is party to any agreement or arrangement with Her Majesty's said Government in respect of defence matters;

    (b) the supply to the United Nations, or the government of any country belonging to that organisation, in pursuance of an agreement or arrangement between Her Majesty's Government and that organisation or government, of articles required for any armed forces operating in pursuance of a resolution of that organisation or any organ of that organisation;

and the power of a Government department or a person authorised by a Government department under this paragraph to use a design shall include power to sell to any such government or to the said organisation any articles the supply of which is authorised by this sub-paragraph, and to sell to any person any articles made in the exercise of the powers conferred by this paragraph which are no longer required for the purpose for which they were made.

SCH. 4

(7) The purchaser of any articles sold in the exercise of powers conferred by this paragraph, and any person claiming through him, shall have power to deal with them in the same manner as if the rights in the registered design were held on behalf of His Majesty.

*Rights of third parties in respect of Crown use*

2.—(1) In relation to any use of a registered design, or a design in respect of which an application for registration is pending, made for the services of the Crown—

    (a) by a Government department or a person authorised by a Government department under the last foregoing paragraph; or

    (b) by the registered proprietor or applicant for registration to the order of a Government department,

the provisions of any licence, assignment or agreement made, whether before or after the commencement of this Act, between the registered proprietor or applicant for registration or any person who derives title from him or from whom he derives title and any person other than a Government department shall be of no effect so far as those provisions restrict or regulate the use of the design, or any model, document or information relating thereto, or provide for the making of payments in respect of any such use, or calculated by reference thereto; and the reproduction or publication of any model or document in connection with the said use shall not be deemed to be an infringement of any copyright or design right subsisting in the model or document.

(2) Where an exclusive licence granted otherwise than for royalties or other benefits determined by reference to the use of the design is in force under the registered design then—

    (a) in relation to any use of the design which, but for the provisions of this and the last foregoing paragraph, would constitute an infringement of the rights of the licensee, sub-paragraph (3) of the last foregoing paragraph shall have effect as if for the reference to the registered proprietor there were substituted a reference to the licensee; and

    (b) in relation to any use of the design by the licensee by virtue of an authority given under the last foregoing paragraph, that paragraph shall have effect as if the said sub-paragraph (3) were omitted.

(3) Subject to the provisions of the last foregoing sub-paragraph, where the registered design or the right to apply for or obtain registration of the design has been assigned to the registered proprietor in consideration of royalties or other benefits determined by reference to the use of the design, then—

    (a) in relation to any use of the design by virtue of paragraph 1 of this Schedule, sub-paragraph (3) of that paragraph shall have effect as if the reference to the registered proprietor included a reference to the assignor, and any sum payable by virtue of that sub-paragraph shall be divided between the registered proprietor and the assignor in such proportion as may

Sch. 4

be agreed upon between them or as may in default of agreement be determined by the court on a reference under the next following paragraph; and

(b) in relation to any use of the design made for the services of the Crown by the registered proprietor to the order of a Government department, sub-paragraph (3) of paragraph 1 of this Schedule shall have effect as if that use were made by virtue of an authority given under that paragraph.

(4) Where, under sub-paragraph (3) of paragraph 1 of this Schedule, payments are required to be made by a Government department to a registered proprietor in respect of any use of a design, any person being the holder of an exclusive licence under the registered design (not being such a licence as is mentioned in sub-paragraph (2) of this paragraph) authorising him to make that use of the design shall be entitled to recover from the registered proprietor such part (if any) of those payments as may be agreed upon between that person and the registered proprietor, or as may in default of agreement be determined by the court under the next following paragraph to be just having regard to any expenditure incurred by that person—

(a) in developing the said design; or

(b) in making payments to the registered proprietor, other than royalties or other payments determined by reference to the use of the design, in consideration of the licence;

and if, at any time before the amount of any such payment has been agreed upon between the Government department and the registered proprietor, that person gives notice in writing of his interest to the department, any agreement as to the amount of that payment shall be of no effect unless it is made with his consent.

(5) In this paragraph "exclusive licence" means a licence from a registered proprietor which confers on the licensee, or on the licensee and persons authorised by him, to the exclusion of all other persons (including the registered proprietor), any right in respect of the registered design.

### Compensation for loss of profit

2A.—(1) Where Crown use is made of a registered design, the government department concerned shall pay—

(a) to the registered proprietor, or

(b) if there is an exclusive licence in force in respect of the design, to the exclusive licensee,

compensation for any loss resulting from his not being awarded a contract to supply the articles to which the design is applied.

(2) Compensation is payable only to the extent that such a contract could have been fulfilled from his existing manufacturing capacity; but is payable notwithstanding the existence of circumstances rendering him ineligible for the award of such a contract.

(3) In determining the loss, regard shall be had to the profit which would have been made on such a contract and to the extent to which any manufacturing capacity was under-used.

SCH. 4

(4) No compensation is payable in respect of any failure to secure contracts for the supply of articles to which the design is applied otherwise than for the services of the Crown.

(5) The amount payable under this paragraph shall, if not agreed between the registered proprietor or licensee and the government department concerned with the approval of the Treasury, be determined by the court on a reference under paragraph 3; and it is in addition to any amount payable under paragraph 1 or 2 of this schedule.

(6) In this paragraph—

"Crown use", in relation to a design, means the doing of anything by virtue of paragraph 1 which would otherwise be an infringement of the right in the design; and

"the government department concerned", in relation to such use, means the government department by whom or on whose authority the act was done.

*Reference of disputes as to Crown use*

3.—(1) Any dispute as to—

(a) the exercise by a Government department, or a person authorised by a Government department, of the powers conferred by paragraph 1 of this Schedule,

(b) terms for the use of a design for the services of the Crown under that paragraph,

(c) the right of any person to receive any part of a payment made under paragraph 1(3), or

(d) the right of any person to receive a payment under paragraph 2A,

may be referred to the court by either party to the dispute.

(2) In any proceedings under this paragraph to which a Government department are a party, the department may—

(a) if the registered proprietor is a party to the proceedings, apply for cancellation of the registration of the design upon any ground upon which the registration of a design may be cancelled on an application to the court under section twenty of this Act;

(b) in any case, put in issue the validity of the registration of the design without applying for its cancellation.

(3) If in such proceedings as aforesaid any question arises whether a design has been recorded or applied as mentioned in paragraph 1 of this Schedule, and the disclosure of any document recording the design, or of any evidence of the application thereof, would in the opinion of the department be prejudicial to the public interest, the disclosure may be made confidentially to counsel for the other party or to an independent expert mutually agreed upon.

(4) In determining under this paragraph any dispute between a Government department and any person as to terms for the use of a design for the services of the Crown, the court shall have regard to any benefit or compensation which that person or any person from whom he derives title may have

received, or may be entitled to receive, directly or indirectly from any Government department in respect of the design in question.

Sch. 4

(5) In any proceedings under this paragraph the court may at any time order the whole proceedings or any question or issue of fact arising therein to be referred to a special or official referee or an arbitrator on such terms as the court may direct; and references to the court in the foregoing provisions of this paragraph shall be construed accordingly.

### *Special provisions as to Crown use during emergency*

4.—(1) During any period of emergency within the meaning of this paragraph, the powers exercisable in relation to a design by a Government department, or a person authorised by a Government department under paragraph 1 of this Schedule shall include power to use the design for any purpose which appears to the department necessary or expedient—

(a) for the efficient prosecution of any war in which His Majesty may be engaged;

(b) for the maintenance of supplies and services essential to the life of the community;

(c) for securing a sufficiency of supplies and services essential to the well-being of the community;

(d) for promoting the productivity of industry, commerce and agriculture;

(e) for fostering and directing exports and reducing imports, or imports of any classes, from all or any countries and for redressing the balance of trade;

(f) generally for ensuring that the whole resources of the community are available for use, and are used, in a manner best calculated to serve the interests of the community; or

(g) for assisting the relief of suffering and the restoration and distribution of essential supplies and services in any part of His Majesty's dominions or any foreign countries that are in grave distress as the result of war;

and any reference in this Schedule to the services of the Crown shall be construed as including a reference to the purposes aforesaid.

(2) In this paragraph the expression "period of emergency" means a period beginning on such date as may be declared by Order in Council to be the commencement, and ending on such date as may be so declared to be the termination, of a period of emergency for the purposes of this paragraph.

(3) No Order in Council under this paragraph shall be submitted to Her Majesty unless a draft of it has been laid before and approved by a resolution of each House of Parliament.

... ... ... ... ... ... ...

210     c. **48**     *Copyright, Designs and Patents*

## SCHEDULE 5

### PATENTS: MISCELLANEOUS AMENDMENTS

*Withdrawal of application before publication of specification*

1949 c. 87.     1. In section 13(2) of the Patents Act 1949 (duty of comptroller to advertise acceptance of and publish complete specification) after the word "and", in the first place where it occurs, insert ", unless the application is withdrawn,".

### *Correction of clerical errors*

1977 c. 37.     2.—(1) In section 15 of the Patents Act 1977 (filing of application), after subsection (3) insert—

"(3A) Nothing in subsection (2) or (3) above shall be construed as affecting the power of the comptroller under section 117(1) below to correct errors or mistakes with respect to the filing of drawings.".

(2) The above amendment applies only in relation to applications filed after the commencement of this paragraph.

### *Supplementary searches*

3.—(1) Section 17 of the Patents Act 1977 (preliminary examination and search) is amended as follows.

(2) In subsection (7) (supplementary searches) for "subsection (4) above" substitute "subsections (4) and (5) above" and for "it applies" substitute "they apply".

(3) After that subsection add—

"(8) A reference for a supplementary search in consequence of—

(a) an amendment of the application made by the applicant under section 18(3) or 19(1) below, or

(b) a correction of the application, or of a document filed in connection with the application, under section 117 below,

shall be made only on payment of the prescribed fee, unless the comptroller directs otherwise.".

4. In section 18 of the Patents Act 1977 (substantive examination and grant or refusal of patent), after subsection (1) insert—

"(1A) If the examiner forms the view that a supplementary search under section 17 above is required for which a fee is payable, he shall inform the comptroller, who may decide that the substantive examination should not proceed until the fee is paid; and if he so decides, then unless within such period as he may allow—

(a) the fee is paid, or

(b) the application is amended so as to render the supplementary search unnecessary,

he may refuse the application.".

5. In section 130(1) of the Patents Act 1977 (interpretation), in the definition of "search fee", for "section 17 above" substitute "section 17(1) above".

### *Application for restoration of lapsed patent*

6.—(1) Section 28 of the Patents Act 1977 (restoration of lapsed patents) is amended as follows.

(2) For subsection (1) (application for restoration within period of one year) substitute—

"(1) Where a patent has ceased to have effect by reason of a failure to pay any renewal fee, an application for the restoration of the patent may be made to the comptroller within the prescribed period.

Sch. 5

(1A) Rules prescribing that period may contain such transitional provisions and savings as appear to the Secretary of State to be necessary or expedient.".

(3) After subsection (2) insert—

"(2A) Notice of the application shall be published by the comptroller in the prescribed manner.".

(4) In subsection (3), omit paragraph (b) (requirement that failure to renew is due to circumstances beyond proprietor's control) and the word "and" preceding it.

This amendment does not apply to a patent which has ceased to have effect in accordance with section 25(3) of the Patents Act 1977 (failure to renew within prescribed period) and in respect of which the period referred to in subsection (4) of that section (six months' period of grace for renewal) has expired before commencement.

1977 c. 37.

(5) Omit subsections (5) to (9) (effect of order for restoration).

7.  After that section insert—

"Effect of order for restoration of patent.    28A.—(1) The effect of an order for the restoration of a patent is as follows.

(2) Anything done under or in relation to the patent during the period between expiry and restoration shall be treated as valid.

(3) Anything done during that period which would have constituted an infringement if the patent had not expired shall be treated as an infringement—

(a) if done at a time when it was possible for the patent to be renewed under section 25(4), or

(b) if it was a continuation or repetition of an earlier infringing act.

(4) If after it was no longer possible for the patent to be so renewed, and before publication of notice of the application for restoration, a person—

(a) began in good faith to do an act which would have constituted an infringement of the patent if it had not expired, or

(b) made in good faith effective and serious preparations to do such an act,

he has the right to continue to do the act or, as the case may be, to do the act, notwithstanding the restoration of the patent; but this right does not extend to granting a licence to another person to do the act.

(5) If the act was done, or the preparations were made, in the course of a business, the person entitled to the right conferred by subsection (4) may—

(a) authorise the doing of that act by any partners of his for the time being in that business, and

212        c. **48**        *Copyright, Designs and Patents*

    (b) assign that right, or transmit it on death (or in the case of a body corporate on its dissolution), to any person who acquires that part of the business in the course of which the act was done or the preparations were made.

    (6) Where a product is disposed of to another in exercise of the rights conferred by subsection (4) or (5), that other and any person claiming through him may deal with the product in the same way as if it had been disposed of by the registered proprietor of the patent.

    (7) The above provisions apply in relation to the use of a patent for the services of the Crown as they apply in relation to infringement of the patent.".

8. In consequence of the above amendments—

    (a) in section 60(6)(b) of the Patents Act 1977, for "section 28(6)" substitute "section 28A(4) or (5)"; and

    (b) in sections 77(5), 78(6) and 80(4) of that Act, for the words from "section 28(6)" to the end substitute "section 28A(4) and (5) above, and subsections (6) and (7) of that section shall apply accordingly.".

### *Determination of right to patent after grant*

9.—(1) Section 37 of the Patents Act 1977 (determination of right to patent after grant) is amended as follows.

    (2) For subsection (1) substitute—

    "(1) After a patent has been granted for an invention any person having or claiming a proprietary interest in or under the patent may refer to the comptroller the question—

    (a) who is or are the true proprietor or proprietors of the patent,

    (b) whether the patent should have been granted to the person or persons to whom it was granted, or

    (c) whether any right in or under the patent should be transferred or granted to any other person or persons;

and the comptroller shall determine the question and make such order as he thinks fit to give effect to the determination.".

    (3) Substitute "this section"—

    (a) in subsections (4) and (7) for "subsection (1)(a) above", and

    (b) in subsection (8) for "subsection (1) above".

10. In section 74(6) (meaning of "entitlement proceedings"), for "section 37(1)(a) above" substitute "section 37(1) above".

### *Employees' inventions*

11.—(1) In section 39 of the Patents Act 1977 (right to employees' inventions), after subsection (2) add—

    "(3) Where by virtue of this section an invention belongs, as between him and his employer, to an employee, nothing done—

    (a) by or on behalf of the employee or any person claiming under him for the purposes of pursuing an application for a patent, or

(b) by any person for the purpose of performing or working the invention,    SCH. 5

shall be taken to infringe any copyright or design right to which, as between him and his employer, his employer is entitled in any model or document relating to the invention.".

(2) In section 43 of the Patents Act 1977 (supplementary provisions with respect to employees' inventions), in subsection (4) (references to patents to include other forms of protection, whether in UK or elsewhere) for "in sections 40 to 42" substitute "in sections 39 to 42.".    1977 c. 37.

#### *Undertaking to take licence in infringement proceedings*

12.—(1) Section 46 of the Patents Act 1977 (licences of right) is amended as follows.

(2) In subsection (3)(c) (undertaking to take licence in infringement proceedings) after the words "(otherwise than by the importation of any article" insert "from a country which is not a member State of the European Economic Community".

(3) After subsection (3) insert—

"(3A) An undertaking under subsection (3)(c) above may be given at any time before final order in the proceedings, without any admission of liability.".

#### *Power of comptroller on grant of compulsory licence*

13. In section 49 of the Patents Act 1977 (supplementary provisions with respect to compulsory licences), omit subsection (3) (power to order that licence has effect to revoke existing licences and deprive proprietor of power to work invention or grant licences).

#### *Powers exercisable in consequence of report of Monopolies and Mergers Commission*

14. For section 51 of the Patents Act 1977 (licences of right: application by Crown in consequence of report of Monopolies and Mergers Commission) substitute—

"Powers exercisable in consequence of report of Monopolies and Mergers Commission.

51.—(1) Where a report of the Monopolies and Mergers Commission has been laid before Parliament containing conclusions to the effect—

(a) on a monopoly reference, that a monopoly situation exists and facts found by the Commission operate or may be expected to operate against the public interest,

(b) on a merger reference, that a merger situation qualifying for investigation has been created and the creation of the situation, or particular elements in or consequences of it specified in the report, operate or may be expected to operate against the public interest,

(c) on a competition reference, that a person was engaged in an anti-competitive practice which operated or may be expected to operate against the public interest, or

(d) on a reference under section 11 of the Competition Act 1980 (reference of public bodies and certain other persons), that a person is pursuing a course of conduct which operates against the public interest,

the appropriate Minister or Ministers may apply to the comptroller to take action under this section.

214        c. **48**        *Copyright, Designs and Patents*

Sch. 5

(2) Before making an application the appropriate Minister or Ministers shall publish, in such manner as he or they think appropriate, a notice describing the nature of the proposed application and shall consider any representations which may be made within 30 days of such publication by persons whose interests appear to him or them to be affected.

(3) If on an application under this section it appears to the comptroller that the matters specified in the Commission's report as being those which in the Commission's opinion operate, or operated or may be expected to operate, against the public interest include—

(a) conditions in licences granted under a patent by its proprietor restricting the use of the invention by the licensee or the right of the proprietor to grant other licences, or

(b) a refusal by the proprietor of a patent to grant licences on reasonable terms

he may by order cancel or modify any such condition or may, instead or in addition, make an entry in the register to the effect that licences under the patent are to be available as of right.

(4) In this section "the appropriate Minister or Ministers" means the Minister or Ministers to whom the report of the Commission was made.".

*Compulsory licensing: reliance on statements in competition report*

1977 c. 37.

15. In section 53(2) of the Patents Act 1977 (compulsory licensing: reliance on statements in reports of Monopolies and Mergers Commission)—

(a) for "application made in relation to a patent under sections 48 to 51 above" substitute "application made under section 48 above in respect of a patent"; and

(b) after "Part VIII of the Fair Trading Act 1973" insert "or section 17 of the Competition Act 1980".

*Crown use: compensation for loss of profit*

16.—(1) In the Patents Act 1977, after section 57 insert—

"Compensation for loss of profit.

57A.—(1) Where use is made of an invention for the services of the Crown, the government department concerned shall pay—

(a) to the proprietor of the patent, or

(b) if there is an exclusive licence in force in respect of the patent, to the exclusive licensee,

compensation for any loss resulting from his not being awarded a contract to supply the patented product or, as the case may be, to perform the patented process or supply a thing made by means of the patented process.

(2) Compensation is payable only to the extent that such a contract could have been fulfilled from his existing manufacturing or other capacity; but is payable notwithstanding the existence of circumstances rendering him ineligible for the award of such a contract.

(3) In determining the loss, regard shall be had to the profit which would have been made on such a contract and to the extent to which any manufacturing or other capacity was under-used.

(4) No compensation is payable in respect of any failure to secure contracts to supply the patented product or, as the case may be, to perform the patented process or supply a thing made by means of the patented process, otherwise than for the services of the Crown.

SCH. 5

(5) The amount payable shall, if not agreed between the proprietor or licensee and the government department concerned with the approval of the Treasury, be determined by the court on a reference under section 58, and is in addition to any amount payable under section 55 or 57.

(6) In this section 'the government department concerned', in relation to any use of an invention for the services of the Crown, means the government department by whom or on whose authority the use was made.

(7) In the application of this section to Northern Ireland, the reference in subsection (5) above to the Treasury shall, where the government department concerned is a department of the Government of Northern Ireland, be construed as a reference to the Department of Finance and Personnel.".

(2) In section 58 of the Patents Act 1977 (reference of disputes as to Crown use), for subsection (1) substitute—

1977 c. 37.

"(1) Any dispute as to—

(a) the exercise by a government department, or a person authorised by a government department, of the powers conferred by section 55 above,

(b) terms for the use of an invention for the services of the Crown under that section,

(c) the right of any person to receive any part of a payment made in pursuance of subsection (4) of that section, or

(d) the right of any person to receive a payment under section 57A,

may be referred to the court by either party to the dispute after a patent has been granted for the invention.";

and in subsection (4) for "under this section" substitute "under subsection (1)(a), (b) or (c) above".

(3) In section 58(11) of the Patents Act 1977 (exclusion of right to compensation for Crown use if relevant transaction, instrument or event not registered), after "section 57(3) above)" insert ", or to any compensation under section 57A above,".

(4) The above amendments apply in relation to any use of an invention for the services of the Crown after the commencement of this section, even if the terms for such use were settled before commencement.

### *Right to continue use begun before priority date*

17. For section 64 of the Patents Act 1977 (right to continue use begun before priority date) substitute—

"Right to continue use begun before priority date.

64.—(1) Where a patent is granted for an invention, a person who in the United Kingdom before the priority date of the invention—

(a) does in good faith an act which would constitute an infringement of the patent if it were in force, or

216      c. **48**      *Copyright, Designs and Patents*

(b) makes in good faith effective and serious preparations to do such an act,

has the right to continue to do the act or, as the case may be, to do the act, notwithstanding the grant of the patent; but this right does not extend to granting a licence to another person to do the act.

(2) If the act was done, or the preparations were made, in the course of a business, the person entitled to the right conferred by subsection (1) may—

(a) authorise the doing of that act by any partners of his for the time being in that business, and

(b) assign that right, or transmit it on death (or in the case of a body corporate on its dissolution), to any person who acquires that part of the business in the course of which the act was done or the preparations were made.

(3) Where a product is disposed of to another in exercise of the rights conferred by subsection (1) or (2), that other and any person claiming through him may deal with the product in the same way as if it had been disposed of by the registered proprietor of the patent.".

*Revocation on grounds of grant to wrong person*

1977 c. 37.      18. In section 72(1) of the Patents Act 1977 (grounds for revocation of patent), for paragraph (b) substitute—

"(b) that the patent was granted to a person who was not entitled to be granted that patent;".

*Revocation where two patents granted for same invention*

19. In section 73 of the Patents Act 1977 (revocation on initiative of comptroller), for subsections (2) and (3) (revocation of patent where European patent (UK) granted in respect of same invention) substitute—

"(2) If it appears to the comptroller that a patent under this Act and a European patent (UK) have been granted for the same invention having the same priority date, and that the applications for the patents were filed by the same applicant or his successor in title, he shall give the proprietor of the patent under this Act an opportunity of making observations and of amending the specification of the patent, and if the proprietor fails to satisfy the comptroller that there are not two patents in respect of the same invention, or to amend the specification so as to prevent there being two patents in respect of the same invention, the comptroller shall revoke the patent.

(3) The comptroller shall not take action under subsection (2) above before—

(a) the end of the period for filing an opposition to the European patent (UK) under the European Patent Convention, or

(b) if later, the date on which opposition proceedings are finally disposed of;

and he shall not then take any action if the decision is not to maintain the European patent or if it is amended so that there are not two patents in respect of the same invention.

(4) The comptroller shall not take action under subsection (2) above if the European patent (UK) has been surrendered under section 29(1) above before the date on which by virtue of section 25(1) above the patent under this Act is to be treated as having been granted or, if proceedings for the

*Copyright, Designs and Patents*          **c. 48**          217

surrender of the European patent (UK) have been begun before that date,          Sch. 5
until those proceedings are finally disposed of; and he shall not then take any
action if the decision is to accept the surrender of the European patent.".

### *Applications and amendments not to include additional matter*

20. For section 76 of the Patents Act 1977 (amendments of applications and          1977 c. 37.
patents not to include added matter) substitute—

"Amendments of          76.—(1) An application for a patent which—
applications and
patents not to              (a) is made in respect of matter disclosed in an earlier
include added                   application, or in the specification of a patent which
matter.                         has been granted, and

                            (b) discloses additional matter, that is, matter extending
                                beyond that disclosed in the earlier application, as
                                filed, or the application for the patent, as filed,

may be filed under section 8(3), 12 or 37(4) above, or as
mentioned in section 15(4) above, but shall not be allowed to
proceed unless it is amended so as to exclude the additional
matter.

(2) No amendment of an application for a patent shall be
allowed under section 17(3), 18(3) or 19(1) if it results in the
application disclosing matter extending beyond that disclosed
in the application as filed.

(3) No amendment of the specification of a patent shall be
allowed under section 27(1), 73 or 75 if it—

                            (a) results in the specification disclosing additional
                                matter, or

                            (b) extends the protection conferred by the patent.".

### *Effect of European patent (UK)*

21.—(1) Section 77 of the Patents Act 1977 (effect of European patent (UK))
is amended as follows.

(2) For subsection (3) (effect of finding of partial validity on pending
proceedings) substitute—

    "(3) Where in the case of a European patent (UK)—

        (a) proceedings for infringement, or proceedings under section 58
            above, have been commenced before the court or the comptroller
            and have not been finally disposed of, and

        (b) it is established in proceedings before the European Patent Office
            that the patent is only partially valid,

the provisions of section 63 or, as the case may be, of subsections (7) to (9)
of section 58 apply as they apply to proceedings in which the validity of a
patent is put in issue and in which it is found that the patent is only
partially valid.".

(3) For subsection (4) (effect of amendment or revocation under European
Patent Convention) substitute—

    "(4) Where a European patent (UK) is amended in accordance with the
    European Patent Convention, the amendment shall have effect for the
    purposes of Parts I and III of this Act as if the specification of the patent
    had been amended under this Act; but subject to subsection (6)(b) below.

    (4A) Where a European patent (UK) is revoked in accordance with the
    European Patent Convention, the patent shall be treated for the purposes
    of Parts I and III of this Act as having been revoked under this Act.".

218          c. **48**          *Copyright, Designs and Patents*

Sch. 5          (4) In subsection (6) (filing of English translation), in paragraph (b) (amendments) for "a translation of the amendment into English" substitute "a translation into English of the specification as amended".

(5) In subsection (7) (effect of failure to file translation) for the words from "a translation" to "above" substitute "such a translation is not filed".

*The state of the art: material contained in patent applications*

1977 c. 37.          22. In section 78 of the Patents Act 1977 (effect of filing an application for a European patent (UK)), for subsection (5) (effect of withdrawal of application, &c.) substitute—

"(5) Subsections (1) to (3) above shall cease to apply to an application for a European patent (UK), except as mentioned in subsection (5A) below, if—

  (a) the application is refused or withdrawn or deemed to be withdrawn, or

  (b) the designation of the United Kingdom in the application is withdrawn or deemed to be withdrawn,

but shall apply again if the rights of the applicant are re-established under the European Patent Convention, as from their re-establishment.

(5A) The occurrence of any of the events mentioned in subsection (5)(a) or (b) shall not affect the continued operation of section 2(3) above in relation to matter contained in an application for a European patent (UK) which by virtue of that provision has become part of the state of the art as regards other inventions.".

*Jurisdiction in certain proceedings*

23. Section 88 of the Patents Act 1977 (jurisdiction in legal proceedings in connection with Community Patent Convention) is repealed.

*Effect of filing international application for patent*

24.—(1) Section 89 of the Patents Act 1977 (effect of filing international application for patent) is amended as follows.

(2) After subsection (3) insert—

"(3A) If the relevant conditions are satisfied with respect to an application which is amended in accordance with the Treaty and the relevant conditions are not satisfied with respect to any amendment, that amendment shall be disregarded.".

(3) After subsection (4) insert—

"(4A) In subsection (4)(a) 'a copy of the application' includes a copy of the application published in accordance with the Treaty in a language other than that in which it was filed.".

(4) For subsection (10) (exclusion of certain applications subject to European Patent Convention) substitute—

"(10) The foregoing provisions of this section do not apply to an application which falls to be treated as an international application for a patent (UK) by reason only of its containing an indication that the applicant wishes to obtain a European patent (UK); but without prejudice to the application of those provisions to an application which also separately designates the United Kingdom.".

(5) The amendments in this paragraph shall be deemed always to have had effect.

(6) This paragraph shall be repealed by the order bringing the following paragraph into force.    Sch. 5

25. For section 89 of the Patents Act 1977 (effect of filing international 1977 c. 37. application for patent) substitute—

"Effect of international application for patent.

89.—(1) An international application for a patent (UK) for which a date of filing has been accorded under the Patent Co-operation Treaty shall, subject to—

    section 89A (international and national phases of application), and

    section 89B (adaptation of provisions in relation to international application),

be treated for the purposes of Parts I and III of this Act as an application for a patent under this Act.

(2) If the application, or the designation of the United Kingdom in it, is withdrawn or (except as mentioned in subsection (3)) deemed to be withdrawn under the Treaty, it shall be treated as withdrawn under this Act.

(3) An application shall not be treated as withdrawn under this Act if it, or the designation of the United Kingdom in it, is deemed to be withdrawn under the Treaty—

    (a) because of an error or omission in an institution having functions under the Treaty, or

    (b) because, owing to circumstances outside the applicant's control, a copy of the application was not received by the International Bureau before the end of the time limited for that purpose under the Treaty,

or in such other circumstances as may be prescribed.

(4) For the purposes of the above provisions an application shall not be treated as an international application for a patent (UK) by reason only of its containing an indication that the applicant wishes to obtain a European patent (UK), but an application shall be so treated if it also separately designates the United Kingdom.

(5) If an international application for a patent which designates the United Kingdom is refused a filing date under the Treaty and the comptroller determines that the refusal was caused by an error or omission in an institution having functions under the Treaty, he may direct that the application shall be treated as an application under this Act, having such date of filing as he may direct.

International and national phases of application.

89A.—(1) The provisions of the Patent Co-operation Treaty relating to publication, search, examination and amendment, and not those of this Act, apply to an international application for a patent (UK) during the international phase of the application.

(2) The international phase of the application means the period from the filing of the application in accordance with the Treaty until the national phase of the application begins.

(3) The national phase of the application begins—

    (a) when the prescribed period expires, provided any necessary translation of the application into English has been filed at the Patent Office and the prescribed fee has been paid by the applicant; or

SCH. 5

(b) on the applicant expressly requesting the comptroller to proceed earlier with the national phase of the application, filing at the Patent Office—

(i) a copy of the application, if none has yet been sent to the Patent Office in accordance with the Treaty, and

(ii) any necessary translation of the application into English,

and paying the prescribed fee.

For this purpose a "copy of the application" includes a copy published in accordance with the Treaty in a language other than that in which it was originally filed.

(4) If the prescribed period expires without the conditions mentioned in subsection (3)(a) being satisfied, the application shall be taken to be withdrawn.

(5) Where during the international phase the application is amended in accordance with the Treaty, the amendment shall be treated as made under this Act if—

(a) when the prescribed period expires, any necessary translation of the amendment into English has been filed at the Patent Office, or

(b) where the applicant expressly requests the comptroller to proceed earlier with the national phase of the application, there is then filed at the Patent Office—

(i) a copy of the amendment, if none has yet been sent to the Patent Office in accordance with the Treaty, and

(ii) any necessary translation of the amendment into English;

otherwise the amendment shall be disregarded.

(6) The comptroller shall on payment of the prescribed fee publish any translation filed at the Patent Office under subsection (3) or (5) above.

Adaptation of provisions in relation to international application.

89B.—(1) Where an international application for a patent (UK) is accorded a filing date under the Patent Co-operation Treaty—

(a) that date, or if the application is re-dated under the Treaty to a later date that later date, shall be treated as the date of filing the application under this Act,

(b) any declaration of priority made under the Treaty shall be treated as made under section 5(2) above, and where in accordance with the Treaty any extra days are allowed, the period of 12 months specified in section 5(2) shall be treated as altered accordingly, and

(c) any statement of the name of the inventor under the Treaty shall be treated as a statement filed under section 13(2) above.

(2) If the application, not having been published under this Act, is published in accordance with the Treaty it shall be treated, for purposes other than those mentioned in subsection (3), as published under section 16 above when the conditions mentioned in section 89A(3)(a) are complied with.

*Copyright, Designs and Patents*   c. **48**   221

(3) For the purposes of section 55 (use of invention for service of the Crown) and section 69 (infringement of rights conferred by publication) the application, not having been published under this Act, shall be treated as published under section 16 above—

   (a) if it is published in accordance with the Treaty in English, on its being so published; and

   (b) if it is so published in a language other than English—

      (i) on the publication of a translation of the application in accordance with section 89A(6) above, or

      (ii) on the service by the applicant of a translation into English of the specification of the application on the government department concerned or, as the case may be, on the person committing the infringing act.

The reference in paragraph (b)(ii) to the service of a translation on a government department or other person is to its being sent by post or delivered to that department or person.

(4) During the international phase of the application, section 8 above does not apply (determination of questions of entitlement in relation to application under this Act) and section 12 above (determination of entitlement in relation to foreign and convention patents) applies notwithstanding the application; but after the end of the international phase, section 8 applies and section 12 does not.

(5) When the national phase begins the comptroller shall refer the application for so much of the examination and search under section 17 and 18 above as he considers appropriate in view of any examination or search carried out under the Treaty.".

*Proceedings before the court or the comptroller*

26. In the Patents Act 1977, after section 99 (general powers of the court) insert—

"Power of Patents Court to order report.

99A.—(1) Rules of court shall make provision empowering the Patents Court in any proceedings before it under this Act, on or without the application of any party, to order the Patent Office to inquire into and report on any question of fact or opinion.

(2) Where the court makes such an order on the application of a party, the fee payable to the Patent Office shall be at such rate as may be determined in accordance with rules of court and shall be costs of the proceedings unless otherwise ordered by the court.

(3) Where the court makes such an order of its own motion, the fee payable to the Patent Office shall be at such rate as may be determined by the Lord Chancellor with the approval of the Treasury and shall be paid out of money provided by Parliament.

Power of Court of Session to order report.

99B.—(1) In any proceedings before the Court of Session under this Act the court may, either of its own volition or on the application of any party, order the Patent Office to inquire into and report on any question of fact or opinion.

SCH. 5

1977 c. 37.

222        c. **48**            *Copyright, Designs and Patents*

SCH. 5

(2) Where the court makes an order under subsection (1) above of its own volition the fee payable to the Patent Office shall be at such rate as may be determined by the Lord President of the Court of Session with the consent of the Treasury and shall be defrayed out of moneys provided by Parliament.

(3) Where the court makes an order under subsection (1) above on the application of a party, the fee payable to the Patent Office shall be at such rate as may be provided for in rules of court and shall be treated as expenses in the cause.".

1977 c. 37.

27. For section 102 of the Patents Act 1977 (right of audience in patent proceedings) substitute—

"Right of audience, &c. in proceedings before comptroller.

102.—(1) A party to proceedings before the comptroller under this Act, or under any treaty or international convention to which the United Kingdom is a party, may appear before the comptroller in person or be represented by any person whom he desires to represent him.

(2) No offence is committed under the enactments relating to the preparation of documents by persons not legally qualified by reason only of the preparation by any person of a document, other than a deed, for use in such proceedings.

(3) Subsection (1) has effect subject to rules made under section 281 of the Copyright, Designs and Patents Act 1988 (power of comptroller to refuse to recognise certain agents).

(4) In its application to proceedings in relation to applications for, or otherwise in connection with, European patents, this section has effect subject to any restrictions imposed by or under the European Patent Convention.

Right of audience, &c. in proceedings on appeal from the comptroller.

102A.—(1) A solicitor of the Supreme Court may appear and be heard on behalf of any party to an appeal under this Act from the comptroller to the Patents Court.

(2) A registered patent agent or a member of the Bar not in actual practice may do, in or in connection with proceedings on an appeal under this Act from the comptroller to the Patents Court, anything which a solicitor of the Supreme Court might do, other than prepare a deed.

(3) The Lord Chancellor may by regulations—

(a) provide that the right conferred by subsection (2) shall be subject to such conditions and restrictions as appear to the Lord Chancellor to be necessary or expedient, and

(b) apply to persons exercising that right such statutory provisions, rules of court and other rules of law and practice applying to solicitors as may be specified in the regulations;

and different provision may be made for different descriptions of proceedings.

(4) Regulations under this section shall be made by statutory instrument which shall be subject to annulment in pursuance of a resolution of either House of Parliament.

(5) This section is without prejudice to the right of counsel to appear before the High Court.".

### Provision of information

Sᴄʜ. 5

28. In section 118 of the Patents Act 1977 (information about patent applications, &c.), in subsection (3) (restriction on disclosure before publication of application: exceptions) for "section 22(6)(a) above" substitute "section 22(6) above".

1977 c. 37.

### Power to extend time limits

29. In section 123 of the Patents Act 1977 (rules), after subsection (3) insert—

"(3A) It is hereby declared that rules—

(a) authorising the rectification of irregularities of procedure, or

(b) providing for the alteration of any period of time,

may authorise the comptroller to extend or further extend any period notwithstanding that the period has already expired.".

### Availability of samples of micro-organisms

30. In the Patents Act 1977 after section 125 insert—

"Disclosure of invention by specification: availability of samples of micro-organisms.

125A.—(1) Provision may be made by rules prescribing the circumstances in which the specification of an application for a patent, or of a patent, for an invention which requires for its performance the use of a micro-organism is to be treated as disclosing the invention in a manner which is clear enough and complete enough for the invention to be performed by a person skilled in the art.

(2) The rules may in particular require the applicant or patentee—

(a) to take such steps as may be prescribed for the purposes of making available to the public samples of the micro-organism, and

(b) not to impose or maintain restrictions on the uses to which such samples may be put, except as may be prescribed.

(3) The rules may provide that, in such cases as may be prescribed, samples need only be made available to such persons or descriptions of persons as may be prescribed; and the rules may identify a description of persons by reference to whether the comptroller has given his certificate as to any matter.

(4) An application for revocation of the patent under section 72(1)(c) above may be made if any of the requirements of the rules cease to be complied with.".

## SCHEDULE 6

Section 301.

### PROVISIONS FOR THE BENEFIT OF THE HOSPITAL FOR SICK CHILDREN

#### Interpretation

1. —(1) In this Schedule—

"the Hospital" means The Hospital for Sick Children, Great Ormond Street, London,

"the trustees" means the special trustees appointed for the Hospital under the National Health Service Act 1977; and

1977 c. 49.

"the work" means the play "Peter Pan" by Sir James Matthew Barrie.

224        c. **48**        *Copyright, Designs and Patents*

Sch 6

(2) Expressions used in this Schedule which are defined for the purposes of Part I of this Act (copyright) have the same meaning as in that Part.

*Entitlement to royalty*

2.—(1) The trustees are entitled, subject to the following provisions of this Schedule, to a royalty in respect of any public performance, commercial publication, broadcasting or inclusion in a cable programme service of the whole or any substantial part of the work or an adaptation of it.

(2) Where the trustees are or would be entitled to a royalty, another form of remuneration may be agreed.

*Exceptions*

3. No royalty is payable in respect of—

(a) anything which immediately before copyright in the work expired on 31st December 1987 could lawfully have been done without the licence, or further licence, of the trustees as copyright owners; or

(b) anything which if copyright still subsisted in the work could, by virtue of any provision of Chapter III of Part I of this Act (acts permitted notwithstanding copyright), be done without infringing copyright.

*Saving*

4. No royalty is payable in respect of anything done in pursuance of arrangements made before the passing of this Act.

*Procedure for determining amount payable*

5.—(1) In default of agreement application may be made to the Copyright Tribunal which shall consider the matter and make such order regarding the royalty or other remuneration to be paid as it may determine to be reasonable in the circumstances.

(2) Application may subsequently be made to the Tribunal to vary its order, and the Tribunal shall consider the matter and make such order confirming or varying the original order as it may determine to be reasonable in the circumstances.

(3) An application for variation shall not, except with the special leave of the Tribunal, be made within twelve months from the date of the original order or of the order on a previous application for variation.

(4) A variation order has effect from the date on which it is made or such later date as may be specified by the Tribunal.

*Sums received to be held on trust*

6. The sums received by the trustees by virtue of this Schedule, after deduction of any relevant expenses, shall be held by them on trust for the purposes of the Hospital.

*Right only for the benefit of the Hospital*

7.—(1) The right of the trustees under this Schedule may not be assigned and shall cease if the trustees purport to assign or charge it.

1977 c. 49.

(2) The right may not be the subject of an order under section 92 of the National Health Service Act 1977 (transfers of trust property by order of the Secretary of State) and shall cease if the Hospital ceases to have a separate identity or ceases to have purposes which include the care of sick children.

(3) Any power of Her Majesty, the court (within the meaning of the Charities Act 1960) or any other person to alter the trusts of a charity is not exercisable in relation to the trust created by this Schedule.

Sᴄʜ 6
1960 c. 58.

## SCHEDULE 7

Section 303(1).

### Cᴏɴsᴇǫᴜᴇɴᴛɪᴀʟ ᴀᴍᴇɴᴅᴍᴇɴᴛs: Gᴇɴᴇʀᴀʟ

### *British Mercantile Marine Uniform Act 1919 (c.62)*

1. For section 2 of the British Mercantile Marine Uniform Act 1919 (copyright in distinctive marks of uniform) substitute—

"Right in registered design of distinctive marks of uniform.

2. The right of the Secretary of State in any design forming part of the British mercantile marine uniform which is registered under the Registered Designs Act 1949 is not limited to the period prescribed by section 8 of that Act but shall continue to subsist so long as the design remains on the register.".

### *Chartered Associations (Protection of Names and Uniforms) Act 1926 (c.26)*

2. In section 1(5) of the Chartered Associations (Protection of Names and Uniforms) Act 1926 for "the copyright in respect thereof" substitute "the right in the registered design".

### *Patents, Designs, Copyright and Trade Marks (Emergency) Act 1939 (c.107)*

3.—(1) The Patents, Designs, Copyright and Trade Marks (Emergency) Act 1939 is amended as follows.

(2) In section 1 (effect of licence where owner is enemy or enemy subject)—

(a) in subsection (1) after "a copyright" and "the copyright" insert "or design right";

(b) in subsection (2) after "the copyright" insert "or design right" and for "or copyright" substitute ", copyright or design right".

(3) In section 2 (power of comptroller to grant licences)—

(a) in subsection (1) after "a copyright", "the copyright" (twice) and "the said copyright" insert "or design right" and for "or copyright" (twice) substitute ", copyright or design right";

(b) in subsections (2) and (3) for ", or copyright" substitute ", copyright or design right";

(c) in subsection (4) and in subsection (5) (twice), after "the copyright" insert "or design right";

(d) in subsection (8)(c) for "or work in which copyright subsists" substitute "work in which copyright subsists or design in which design right subsists".

(4) In section 5 (effect of war on international arrangements)—

(a) in subsection (1) for "section twenty-nine of the Copyright Act 1911" substitute "section 159 or 256 of the Copyright, Designs and Patents Act 1988 (countries enjoying reciprocal copyright or design right protection)";

(b) in subsection (2) after "copyright" (four times) insert "or design right" and for "the Copyright Act 1911" (twice) substitute "Part I or III of the Copyright, Designs and Patents Act 1988".

226       c. **48**        *Copyright, Designs and Patents*

(5) In section 10(1) (interpretation) omit the definition of "copyright", and for the definitions of "design", "invention", "patent" and "patentee" substitute—

> "'design' has in reference to a registered design the same meaning as in the Registered Designs Act 1949, and in reference to design right the same meaning as in Part III of the Copyright, Designs and Patents Act 1988;
>
> 'invention' and 'patent' have the same meaning as in the Patents Act 1977.".

### *Crown Proceedings Act 1947 (c.44)*

4.—(1) In the Crown Proceedings Act 1947 for section 3 (provisions as to industrial property) substitute—

"Infringement of intellectual property rights.    3.—(1) Civil proceedings lie against the Crown for an infringement committed by a servant or agent of the Crown, with the authority of the Crown, of—

> (a) a patent,
>
> (b) a registered trade mark or registered service mark,
>
> (c) the right in a registered design,
>
> (d) design right, or
>
> (e) copyright;

but save as provided by this subsection no proceedings lie against the Crown by virtue of this Act in respect of an infringement of any of those rights.

(2) Nothing in this section, or any other provision of this Act, shall be construed as affecting—

> (a) the rights of a government department under section 55 of the Patents Act 1977, Schedule 1 to the Registered Designs Act 1949 or section 240 of the Copyright, Designs and Patents Act 1988 (Crown use of patents and designs), or
>
> (b) the rights of the Secretary of State under section 22 of the Patents Act 1977 or section 5 of the Registered Designs Act 1949 (security of information prejudicial to defence or public safety).".

(2) In the application of sub-paragraph (1) to Northern Ireland—

> (a) the reference to the Crown Proceedings Act 1947 is to that Act as it applies to the Crown in right of Her Majesty's Government in Northern Ireland, as well as to the Crown in right of Her Majesty's Government in the United Kingdom, and
>
> (b) in the substituted section 3 as it applies in relation to the Crown in right of Her Majesty's Government in Northern Ireland, subsection (2)(b) shall be omitted.

### *Patents Act 1949 (c.87)*

5. In section 47 of the Patents Act 1949 (rights of third parties in respect of Crown use of patent), in the closing words of subsection (1) (which relate to the use of models or documents), after "copyright" insert "or design right".

### *Public Libraries (Scotland) Act 1955 (c.27)*

6. In section 4 of the Public Libraries (Scotland) Act 1955 (extension of lending power of public libraries), make the existing provision subsection (1) and after it add—

"(2) The provisions of Part I of the Copyright, Designs and Patents Act 1988 (copyright) relating to the rental of copies of sound recordings, films and computer programs apply to any lending by a statutory library authority of copies of such works, whether or not a charge is made for that facility.".

SCH. 7

### *London County Council (General Powers) Act 1958 (c.xxi)*

7. In section 36 of the London County Council (General Powers) Act 1958 (power as to libraries: provision and repair of things other than books) for subsection (5) substitute—

"(5) Nothing in this section shall be construed as authorising an infringement of copyright.".

### *Public Libraries and Museums Act 1964 (c.75)*

8. In section 8 of the Public Libraries and Museums Act 1964 (restrictions on charges for library facilities), after subsection (5) add—

"(6) The provisions of Part I of the Copyright, Designs and Patents Act 1988 (copyright) relating to the rental of copies of sound recordings, films and computer programs apply to any lending by a library authority of copies of such works, whether or not a charge is made for that facility.".

### *Marine, &c., Broadcasting (Offences) Act 1967 (c.41)*

9. In section 5 of the Marine, &c., Broadcasting (Offences) Act 1967 (provision of material for broadcasting by pirate radio stations)—

(a) in subsection (3)(a) for the words from "cinematograph film" to "in the record" substitute "film or sound recording with intent that a broadcast of it"; and

(b) in subsection (6) for the words from "and references" to the end substitute "and "film", "sound recording", "literary, dramatic or musical work" and "artistic work" have the same meaning as in Part I of the Copyright, Designs and Patents Act 1988 (copyright)".

### *Medicines Act 1968 (c.67)*

10.—(1) Section 92 of the Medicines Act 1968 (scope of provisions restricting promotion of sales of medicinal products) is amended as follows.

(2) In subsection (1) (meaning of "advertisement") for the words from "or by the exhibition" to "service" substitute "or by means of a photograph, film, sound recording, broadcast or cable programme,".

(3) In subsection (2) (exception for the spoken word)—

(a) in paragraph (a) omit the words from "or embodied" to "film"; and

(b) in paragraph (b) for the words from "by way of" to the end substitute "or included in a cable programme service".

(4) For subsection (6) substitute—

"(6) In this section 'film', 'sound recording', 'broadcast', 'cable programme', 'cable programme service', and related expressions, have the same meaning as in Part I of the Copyright, Designs and Patents Act 1988 (copyright).".

228          c. **48**                    *Copyright, Designs and Patents*

*Post Office Act 1969 (c.48)*

11. In Schedule 10 to the Post Office Act 1969 (special transitional provisions relating to use of patents and registered designs), in the closing words of paragraphs 8(1) and 18(1) (which relate to the use of models and documents), after "copyright" insert "or design right".

*Merchant Shipping Act 1970 (c.36)*

12. In section 87 of the Merchant Shipping Act 1970 (merchant navy uniform), for subsection (4) substitute—

"(4) Where any design forming part of the merchant navy uniform has been registered under the Registered Designs Act 1949 and the Secretary of State is the proprietor of the design, his right in the design is not limited to the period prescribed by section 8 of that Act but shall continue to subsist so long as the design remains registered.".

*Taxes Management Act 1970 (c.9)*

13. In section 16 of the Taxes Management Act 1970 (returns to be made in respect of certain payments)—

(a) in subsection (1)(c), and

(b) in subsection (2)(b),

for "or public lending right" substitute ", public lending right, right in a registered design or design right".

*Tribunals and Inquiries Act 1971 (c.62)*

14. In Part I of Schedule 1 to the Tribunals and Inquiries Act 1971 (tribunals under direct supervision of Council on Tribunals) renumber the entry inserted by the Data Protection Act 1984 as "5B" and before it insert—

1984 c. 35.

"Copyright.                    5A. The Copyright Tribunal."

*Fair Trading Act 1973 (c.41)*

15. In Schedule 4 to the Fair Trading Act 1973 (excluded services), for paragraph 10 (services of patent agents) substitute—

"10. The services of registered patent agents (within the meaning of Part V of the Copyright, Designs and Patents Act 1988) in their capacity as such.";

and in paragraph 10A (services of European patent attorneys) for "section 84(7) of the Patents Act 1977" substitute "Part V of the Copyright, Designs and Patents Act 1988".

*House of Commons Disqualification Act 1975 (c.24)*

16. In Part II of Schedule 1 to the House of Commons Disqualification Act 1975 (bodies of which all members are disqualified), at the appropriate place insert "The Copyright Tribunal".

*Northern Ireland Assembly Disqualification Act 1975 (c.25)*

17. In Part II of Schedule 1 to the Northern Ireland Assembly Disqualification Act 1975 (bodies of which all members are disqualified), at the appropriate place insert "The Copyright Tribunal".

*Restrictive Trade Practices Act 1976 (c.34)*

18.—(1) The Restrictive Trade Practices Act 1976 is amended as follows.

(2) In Schedule 1 (excluded services) for paragraph 10 (services of patent agents) substitute—

SCH. 7

"10. The services of registered patent agents (within the meaning of Part V of the Copyright, Designs and Patents Act 1988) in their capacity as such.";

and in paragraph 10A (services of European patent attorneys) for "section 84(7) of the Patents Act 1977" substitute "Part V of the Copyright, Designs and Patents Act 1988".

(3) In Schedule 3 (excepted agreements), after paragraph 5A insert—

*"Design right*

5B.—(1) This Act does not apply to—

    (a) a licence granted by the owner or a licensee of any design right,

    (b) an assignment of design right, or

    (c) an agreement for such a licence or assignment,

if the licence, assignment or agreement is one under which no such restrictions as are described in section 6(1) above are accepted, or no such information provisions as are described in section 7(1) above are made, except in respect of articles made to the design; but subject to the following provisions.

(2) Sub-paragraph (1) does not exclude a licence, assignment or agreement which is a design pooling agreement or is granted or made (directly or indirectly) in pursuance of a design pooling agreement.

(3) In this paragraph a 'design pooling agreement' means an agreement—

    (a) to which the parties are or include at least three persons (the "principal parties") each of whom has an interest in one or more design rights, and

    (b) by which each principal party agrees, in respect of design right in which he has, or may during the currency of the agreement acquire, an interest to grant an interest (directly or indirectly) to one or more of the other principal parties, or to one or more of those parties and to other persons.

(4) In this paragraph—

'assignment', in Scotland, means assignation; and

'interest' means an interest as owner or licensee of design right.

(5) This paragraph applies to an interest held by or granted to more than one person jointly as if they were one person.

(6) References in this paragraph to the granting of an interest to a person indirectly are to its being granted to a third person for the purpose of enabling him to make a grant to the person in question.".

### *Resale Prices Act 1976 (c. 53)*

19. In section 10(4) of the Resale Prices Act 1976 (patented articles: articles to be treated in same way), in paragraph (a) after "protected" insert "by design right or".

### *Patents Act 1977 (c. 37)*

20. In section 57 of the Patents Act 1977 (rights of third parties in respect of Crown use of patent), in the closing words of subsection (1) (which relate to the use of models or documents), after "copyright" insert "or design right".

SCH. 7          21. In section 105 of the Patents Act 1977 (privilege in Scotland for communications relating to patent proceedings), omit "within the meaning of section 104 above", make the existing text subsection (1) and after it insert—

"(2) In this section—

"patent proceedings" means proceedings under this Act or any of the relevant conventions, before the court, the comptroller or the relevant convention court, whether contested or uncontested and including an application for a patent; and

"the relevant conventions" means the European Patent Convention, the Community Patent Convention and the Patent Co-operation Treaty.".

22. In section 123(7) of the Patents Act 1977 (publication of case reports by the comptroller)—

(a) for "and registered designs" substitute "registered designs or design right",

(b) for "and copyright" substitute ", copyright and design right".

23. In section 130(1) of the Patents Act 1977 (interpretation), in the definition of "court", for paragraph (a) substitute—

"(a) as respects England and Wales, the High Court or any patents county court having jurisdiction by virtue of an order under section 287 of the Copyright, Designs and Patents Act 1988;".

*Unfair Contract Terms Act 1977 (c. 50)*

24. In paragraph 1 of Schedule 1 to the Unfair Contract Terms Act 1977 (scope of main provisions: excluded contracts), in paragraph (c) (contracts relating to grant or transfer of interest in intellectual property) after "copyright" insert "or design right".

*Judicature (Northern Ireland) Act 1978 (c. 23)*

25. In section 94A of the Judicature (Northern Ireland) Act 1978 (withdrawal of privilege against self-incrimination in certain proceedings relating to intellectual property), in subsection (5) (meaning of "intellectual property") after "copyright" insert "or design right".

*Capital Gains Tax Act 1979 (c. 14)*

26. In section 18(4) of the Capital Gains Tax Act 1979 (situation of certain assets for purposes of Act), for paragraph (h) (intellectual property) substitute—

"(ha) patents, trade marks, service marks and registered designs are situated where they are registered, and if registered in more than one register, where each register is situated, and rights or licences to use a patent, trade mark, service mark or registered design are situated in the United Kingdom if they or any right derived from them are exercisable in the United Kingdom,

(hb) copyright, design right and franchises, and rights or licences to use any copyright work or design in which design right subsists, are situated in the United Kingdom if they or any right derived from them are exercisable in the United Kingdom,".

*Copyright, Designs and Patents*    c. **48**    231

### *British Telecommunications Act 1981 (c. 38)*

27. In Schedule 5 to the British Telecommunications Act 1981 (special transitional provisions relating to use of patents and registered designs), in the closing words of paragraphs 9(1) and 19(1) (which relate to the use of models and documents), after "copyright" insert "or design right".

### *Supreme Court Act 1981 (c. 54)*

28.—(1) The Supreme Court Act 1981 is amended as follows.

(2) In section 72 (withdrawal of privilege against self-incrimination in certain proceedings relating to intellectual property), in subsection (5) (meaning of "intellectual property") after "copyright" insert ", design right".

(3) In Schedule 1 (distribution of business in the High Court), in paragraph 1(i) (business assigned to the Chancery Division: causes and matters relating to certain intellectual property) for "or copyright" substitute ", copyright or design right".

### *Broadcasting Act 1981 (c. 68)*

29.—(1) The Broadcasting Act 1981 is amended as follows.

(2) In section 4 (general duties of IBA as regards programmes) for subsection (7) substitute—

"(7) For the purpose of maintaining supervision and control over the programmes (including advertisements) broadcast by them the Authority may make and use recordings of those programmes or any part of them.".

(3) In section 20(9), omit paragraph (a).

### *Cable and Broadcasting Act 1984 (c. 46)*

30.—(1) The Cable and Broadcasting Act 1984 is amended as follows.

(2) In section 8, omit subsection (8).

(3) In section 49 (power of Secretary of State to give directions in the public interest), for subsection (7) substitute—

"(7) For the purposes of this section the place from which a broadcast is made is, in the case of a satellite transmission, the place from which the signals carrying the broadcast are transmitted to the satellite.".

(4) In section 56(2) (interpretation) omit the definition of "the 1956 Act".

### *Companies Act 1985 (c. 6)*

31.—(1) Part XII of the Companies Act 1985 (registration of charges) is amended as follows.

(2) In section 396 (registration of charges in England and Wales: charges which must be registered), in subsection (1)(j) for the words from "on a patent" to the end substitute "or on any intellectual property", and after subsection (3) insert—

"(3A) The following are 'intellectual property' for the purposes of this section—

(a) any patent, trade mark, service mark, registered design, copyright or design right;

(b) any licence under or in respect of any such right.".

(3) In section 410 (registration of charges in Scotland: charges which must be registered), in subsection (4)(c) (incorporeal moveable property) after subparagraph (vi) insert—

"(vii) a registered design or a licence in respect of such a design,

(viii) a design right or a licence under a design right,".

*Law Reform (Miscellaneous Provisions) (Scotland) Act 1985 (c. 73)*

32. In section 15 of the Law Reform (Miscellaneous Provisions) (Scotland) Act 1985 (withdrawal of privilege against self-incrimination in certain proceedings relating to intellectual property), in subsection (5) (meaning of "intellectual property") after "copyright" insert "or design right".

*Atomic Energy Authority Act 1986 (c. 3)*

33. In section 8(2) of the Atomic Energy Authority Act 1986 (powers of Authority as to exploitation of research: meaning of "intellectual property"), after "copyrights" insert ", design rights".

*Education and Libraries (Northern Ireland) Order 1986 (S.I. 1986/594 (N.I.3))*

34. In Article 77 of the Education and Libraries (Northern Ireland) Order 1986 (charges for library services), after paragraph (2) add—

"(3) The provisions of Part I of the Copyright, Designs and Patents Act 1988 (copyright) relating to the rental of copies of sound recordings, films and computer programs apply to any lending by a board of copies of such works, whether or not a charge is made for that facility.".

*Companies (Northern Ireland) Order 1986 (S.I. 1986/1032 (N.I.6))*

35. In Article 403 of the Companies (Northern Ireland) Order 1986 (registration of charges: charges which must be registered), in paragraph (1)(j) for the words from "on a patent" to the end substitute "or on any intellectual property", and after paragraph (3) insert—

"(3A) The following are "intellectual property" for the purposes of this Article—

(a) any patent, trade mark, service mark, registered design, copyright or design right;

(b) any licence under or in respect of any such right.".

*Income and Corporation Taxes Act 1988 (c. 1)*

36.—(1) The Income and Corporation Taxes Act 1988 is amended as follows.

(2) In section 83 (fees and expenses deductible in computing profits and gains of trade) for "the extension of the period of copyright in a design" substitute "an extension of the period for which the right in a registered design subsists".

(3) In section 103 (charge on receipts after discontinuance of trade, profession or vocation), in subsection (3) (sums to which the section does not apply), after paragraph (b) insert—

"(bb) a lump sum paid to the personal representatives of the designer of a design in which design right subsists as consideration for the assignment by them, wholly or partially, of that right,".

(4) In section 387 (carry forward as losses of certain payments made under deduction of tax), in subsection (3) (payments to which the section does not apply), in paragraph (e) (copyright royalties) after "applies" insert "or royalties in respect of a right in a design to which section 537B applies".

(5) In section 536 (taxation of copyright royalties where owner abroad), for the definition of "copyright" in subsection (2) substitute—

SCH. 7

"'copyright' does not include copyright in—

(i) a cinematograph film or video recording, or

(ii) the sound-track of such a film or recording, so far as it is not separately exploited; and".

(6) In Chapter I of Part XIII (miscellaneous special provisions: intellectual property), after section 537 insert—

### *"Designs*

Relief for payments in respect of designs.

537A. —(1) Where the designer of a design in which design right subsists assigns that right, or the author of a registered design assigns the right in the design, wholly or partially, or grants an interest in it by licence, and—

(a) the consideration for the assignment or grant consists, in whole or in part, of a payment to which this section applies, the whole amount of which would otherwise be included in computing the amount of his profits or gains for a single year of assessment, and

(b) he was engaged in the creation of the design for a period of more than 12 months,

he may, on making a claim, require that effect shall be given to the following provisions in connection with that payment.

(2) If the period for which he was engaged in the creation of the design does not exceed 24 months, then, for all income tax purposes, one-half only of the amount of the payment shall be treated as having become receivable on the date on which it actually became receivable and the remaining half shall be treated as having become receivable 12 months before that date.

(3) If the period for which he was engaged in the creation of the design exceeds 24 months, then, for all income tax purposes, one-third only of the amount of the payment shall be treated as having become receivable on the date on which it actually became receivable, and one-third shall be treated as having become receivable 12 months, and one-third 24 months, before that date.

(4) This section applies to—

(a) a lump sum payment, including an advance on account of royalties which is not returnable, and

(b) any other payment of or on account of royalties or sums payable periodically which does not only become receivable more than two years after articles made to the design or, as the case may be, articles to which the design is applied are first made available for sale or hire.

(5) A claim under this section with respect to any payment to which it applies by virtue only of subsection (4)(b) above shall have effect as a claim with respect to all such payments in respect of rights in the design in question which are receivable by the claimant, whether before or after the claim; and such a claim may be made at any time not later than 5th April next following the expiration of eight years after articles made to the design or, as the case may be, articles to which the design is applied were first made available for sale or hire.

234     c. **48**         *Copyright, Designs and Patents*

Sch. 7

(6) In this section—

(a) "designer" includes a joint designer, and

(b) any reference to articles being made available for sale or hire is to their being so made available anywhere in the world by or with the licence of the design right owner or, as the case may be, the proprietor of the registered design.

Taxation of
design royalties
where owner
abroad.

537B.—(1) Where the usual place of abode of the owner of a right in a design is not within the United Kingdom, section 349(1) shall apply to any payment of or on account of any royalties or sums paid periodically for or in respect of that right as it applies to annual payments not payable out of profits or gains brought into charge to income tax.

(2) In subsection (1) above—

(a) "right in a design" means design right or the right in a registered design,

(b) the reference to the owner of a right includes a person who, notwithstanding that he has assigned the right to some other person, is entitled to receive periodical payments in respect of the right, and

(c) the reference to royalties or other sums paid periodically for or in respect of a right does not include royalties or sums paid in respect of articles which are shown on a claim to have been exported from the United Kingdom for distribution outside the United Kingdom.

(3) Where a payment to which subsection (1) above applies is made through an agent resident in the United Kingdom and that agent is entitled as against the owner of the right to deduct any sum by way of commission in respect of services rendered, the amount of the payment shall for the purposes of section 349(1) be taken to be diminished by the sum which the agent is entitled to deduct.

(4) Where the person by or through whom the payment is made does not know that any such commission is payable or does not know the amount of any such commission, any income tax deducted by or assessed and charged on him shall be computed in the first instance on, and the account to be delivered of the payment shall be an account of, the total amount of the payment without regard being had to any diminution thereof, and in that case, on proof of the facts on a claim, there shall be made to the agent on behalf of the owner of the right such repayment of income tax as is proper in respect of the sum deducted by way of commission.

(5) The time of the making of a payment to which subsection (1) above applies shall, for all tax purposes, be taken to be the time when it is made by the person by whom it is first made and not the time when it is made by or through any other person.

(6) Any agreement for the making of any payment to which subsection (1) above applies in full and without deduction of income tax shall be void.".

(7) In section 821 (payments made under deduction of tax before passing of Act imposing income tax for that year), in subsection (3) (payments subject to adjustment) after paragraph (a) insert—

SCH. 7

"(aa) any payment for or in respect of a right in a design to which section 537B applies; and".

(8) In Schedule 19 (apportionment of income of close companies), in paragraph 10(4) (cessation or liquidation: debts taken into account although creditor is participator or associate), in paragraph (c) (payments for use of certain property) for the words from "tangible property" to "extend)" substitute—

"—

(i) tangible property,

(ii) copyright in a literary, dramatic, musical or artistic work within the meaning of Part I of the Copyright, Designs and Patents Act 1988 (or any similar right under the law of a country to which that Part does not extend), or

(iii) design right,".

(9) In Schedule 25 (taxation of UK-controlled foreign companies: exempt activities), in paragraph 9(1)(a) (investment business: holding of property) for "patents or copyrights" substitute "or intellectual property" and after that subparagraph insert—

"(1A) In sub-paragraph (1)(a) above 'intellectual property' means patents, registered designs, copyright and design right (or any similar rights under the law of a country outside the United Kingdom).".

## SCHEDULE 8

### REPEALS

Section 303(2).

| Chapter | Short title | Extent of repeal |
|---------|-------------|------------------|
| 1939 c. 107. | Patents, Designs, Copyright and Trade Marks (Emergency) Act 1939. | In section 10(1), the definition of "copyright". |
| 1945 c. 16. | Limitation (Enemies and War Prisoners) Act 1945. | In sections 2(1) and 4(a), the reference to section 10 of the Copyright Act 1911. |
| 1949 c. 88. | Registered Designs Act 1949. | In section 3(2), the words "or original". Section 5(5). In section 11(2), the words "or original". In section 14(3), the words "or the Isle of Man". Section 32. Section 33(2). Section 37(1). Section 38. In section 44(1), the definitions of "copyright" and "Journal". In section 45, paragraphs (1) and (2). In section 46, paragraphs (1) and (2). |

236        c. **48**            *Copyright, Designs and Patents*

| Chapter | Short title | Extent of repeal |
|---|---|---|
| 1949 c. 88.—*cont.* | Registered Designs Act 1949.—*cont.* | Section 48(1).<br>In Schedule 1, in paragraph 3(1), the words "in such manner as may be prescribed by rules of court".<br>Schedule 2. |
| 1956 c. 74. | Copyright Act 1956. | The whole Act. |
| 1957 c. 6. | Ghana Independence Act 1957. | In Schedule 2, paragraph 12. |
| 1957 c. 60. | Federation of Malaya Independence Act 1957. | In Schedule 1, paragraphs 14 and 15. |
| 1958 c. 44. | Dramatic and Musical Performers' Protection Act 1958. | The whole Act. |
| 1958 c. 51. | Public Records Act 1958. | Section 11.<br>Schedule 3. |
| 1960 c. 52. | Cyprus Independence Act 1960. | In the Schedule, paragraph 13. |
| 1960 c. 55. | Nigeria Independence Act 1960. | In Schedule 2, paragraphs 12 and 13. |
| 1961 c. 1. | Tanganyika Independence Act 1961. | In Schedule 2, paragraphs 13 and 14. |
| 1961 c. 16. | Sierra Leone Independence Act 1961. | In Schedule 3, paragraphs 13 and 14. |
| 1961 c. 25. | Patents and Designs (Renewals, Extensions and Fees) Act 1961. | The whole Act. |
| 1962 c. 40. | Jamaica Independence Act 1962. | In Schedule 2, paragraph 13. |
| 1962 c. 54. | Trinidad and Tobago Independence Act 1962. | In Schedule 2, paragraph 13. |
| 1963 c. 53. | Performers' Protection Act 1963. | The whole Act. |
| 1964 c. 46. | Malawi Independence Act 1964. | In Schedule 2, paragraph 13. |
| 1964 c. 65. | Zambia Independence Act 1964. | In Schedule 1, paragraph 9. |
| 1964 c. 86. | Malta Independence Act 1964. | In Schedule 1, paragraph 11. |
| 1964 c. 93. | Gambia Independence Act 1964. | In Schedule 2, paragraph 12. |
| 1966 c. 24. | Lesotho Independence Act 1966. | In the Schedule, paragraph 9. |
| 1966 c. 37. | Barbados Independence Act 1966. | In Schedule 2, paragraph 12. |
| 1967 c. 80. | Criminal Justice Act 1967. | In Parts I and IV of Schedule 3, the entries relating to the Registered Designs Act 1949. |
| 1968 c. 56. | Swaziland Independence Act 1968. | In the Schedule, paragraph 9. |

*Copyright, Designs and Patents*                    c. **48**                    237

| Chapter | Short title | Extent of repeal |
|---------|-------------|------------------|
| 1968 c. 67. | Medicines Act 1968. | In section 92(2)(a), the words from "or embodied" to "film". Section 98. |
| 1968 c. 68. | Design Copyright Act 1968. | The whole Act. |
| 1971 c. 4. | Copyright (Amendment) Act 1971. | The whole Act. |
| 1971 c. 23. | Courts Act 1971. | In Schedule 9, the entry relating to the Copyright Act 1956. |
| 1971 c. 62. | Tribunals and Inquiries Act 1971. | In Schedule 1, paragraph 24. |
| 1972 c. 32. | Performers' Protection Act 1972. | The whole Act. |
| 1975 c. 24. | House of Commons Disqualification Act 1975. | In Part II of Schedule 1, the entry relating to the Performing Right Tribunal. |
| 1975 c. 25. | Northern Ireland Assembly Disqualification Act 1975. | In Part II of Schedule 1, the entry relating to the Performing Right Tribunal. |
| 1977 c. 37. | Patents Act 1977. | Section 14(4) and (8). In section 28(3), paragraph (b) and the word "and" preceding it. Section 28(5) to (9). Section 49(3). Sections 72(3). Sections 84 and 85. Section 88. Section 104. In section 105, the words "within the meaning of section 104 above". Sections 114 and 115. Section 123(2)(k). In section 130(1), the definition of "patent agent". In section 130(7), the words "88(6) and (7),". In Schedule 5, paragraphs 1 and 2, in paragraph 3 the words "and 44(1)" and "in each case", and paragraphs 7 and 8. |
| 1979 c. 2. | Customs and Excise Management Act 1979. | In Schedule 4, the entry relating to the Copyright Act 1956. |
| 1980 c. 21. | Competition Act 1980. | Section 14. |
| 1981 c. 68. | Broadcasting Act 1981. | Section 20(9)(a). |
| 1982 c. 35. | Copyright Act 1956 (Amendment) Act 1982. | The whole Act. |

SCH. 8

238        c. **48**                *Copyright, Designs and Patents*

| Chapter | Short title | Extent of repeal |
|---------|-------------|------------------|
| 1983 c. 42. | Copyright (Amendment) Act 1983. | The whole Act. |
| 1984 c. 46. | Cable and Broadcasting Act 1984. | Section 8(8).<br>Section 16(4) and (5).<br>Sections 22 to 24.<br>Section 35(2) and (3).<br>Sections 53 and 54.<br>In section 56(2), the definition of "the 1956 Act".<br>In Schedule 5, paragraphs 6, 7, 13 and 23. |
| 1985 c. 21. | Films Act 1985. | Section 7(2). |
| 1985 c. 41. | Copyright (Computer Software) Amendment Act 1985. | The whole Act. |
| 1985 c. 61. | Administration of Justice Act 1985. | Section 60. |
| 1986 c. 39. | Patents, Designs and Marks Act 1986. | In Schedule 2, paragraph 1(2)(a), in paragraph 1(2)(k) the words "subsection (1)(j) of section 396 and" and in paragraph 1(2)(1) the words "subsection (2)(i) of section 93". |
| 1988 c. 1. | Income and Corporation Taxes Act 1988. | In Schedule 29, paragraph 5. |

© Crown copyright 1988

Printed in the UK by The Stationery Office Limited under the authority and superintendence of Carol Tullo, Controller of Her Majesty's Stationery Office and Queen's Printer of Acts of Parliament.

11/2003   19585   906692

1st Impression November 1988

11th Impression November 2003