# EXHIBIT 3



**Neutral Citation Number: [2004] EWHC 766 (Ch)**

**IN THE HIGH COURT OF JUSTICE
CHANCERY DIVISION**

Case No: HC03 C03797

Royal Courts of Justice
Strand, London, WC2A 2LL

Date: 7th April 2004

Before :

**THE HONOURABLE MR JUSTICE PATTEN**

- - - - - - - - - - - - - - - - - - - - -

**Between :**

| **Novello and Company Limited** | **Claimant** |
|---|---|
| - and - | |
| **Keith Prowse Music Publishing Company Limited** | **Defendant** |

- - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - -

**Mary Vitoria QC** (instructed by **Davenport Lyons**) for the **Claimant**
**Ian Mill QC** and **Shaheed Fatima** (instructed by **Clintons**) for the **Defendant**

Hearing date: 31st March 2004

- - - - - - - - - - - - - - - - - - - - -

## Judgment

**Mr Justice Patten :**

**Introduction**

1.  The principal question which I have to decide in this action is whether a living author (in this case a composer) was able during the currency of the Copyright Act 1956 ("the 1956 Act") to assign the reversionary interest in the copyright in his works, expectant on the termination of the period of 25 years from his death. I shall refer to this interest, for convenience, as "the reversionary interest". Until the commencement of the 1956 Act on 1st June 1957 the answer was clear. Section 5(2) of the Copyright Act 1911 ("the 1911 Act"), whilst conferring on the owner of the copyright a general power of assignment for the whole or part of the term of that copyright, made express provision that no *inter vivos* assignment would be operative to vest the reversionary interest in the assignee and that those rights would vest (notwithstanding any agreement to the contrary) in the author's personal representatives. The proviso to s.5(2) was preserved by Sch 7, para 28(3) of the 1956 Act in relation to certain types of assignment made before 1st June 1957: see para 28(1). The issue between the parties is whether the combined effect of these provisions was also to apply the proviso to s.5(2) to assignments made after that date, but in respect of existing works to which the provisions of the 1911 Act, including s.5(2), had previously applied.

2.  Although it is now almost 50 years since the 1956 Act came into force and more than 10 years since it was repealed by the Copyright, Designs and Patents Act 1988 ("the 1988 Act"), this point of statutory construction remains unresolved. The only judicial statement on the point is a passage in the judgment of Goff J in *Redwood Music Ltd v. Francis, Day & Hunter* [1978] RPC 429 at page 434, where he said:

    > "The Act of 1911 was repealed by the Copyright Act 1956; and the Act of 1956 contains no provision comparable to the proviso to section 5(2) of the Act of 1911. However by virtue of section 50 and paragraph 28 of the Seventh Schedule of the Act of 1956, the proviso to section 5(2) of the Act of 1911 remains applicable to pre-1957 works, unless some further assignment of the copyright has been made since the commencement of the Act of 1956. It is perhaps of some significance that Parliament did not consider the reversionary interest worth preserving in the Act of 1956."

    That dictum supports the Defendant's case that after 1st June 1957 an author became free to dispose of the reversionary interest, but the point did not arise for decision in that case and remains, in terms of precedent, an open question.

3.  The leading textbooks are also ambivalent. The editors of *Copinger and Skone James on Copyright* (14th edition) state that the position is unclear, but support the Claimant's argument. Paragraph 5-113(b) states that:

    > "Whether the reversionary interest could have been so assigned by the author between June 1, 1957 and August 1, 1989 is unclear. It is suggested that the wording of the reverter provision in the 1911 Act, which was repeated in the 1956 Act and applied to assignments executed before commencement of the 1956 Act, was mandatory in relation to the devolution of the reversionary interest and did not permit of any assignment

>of it by the author, even in the case of a further assignment made after the 1956 Act came into force. It seems the draftsman of the 1988 Act took the same view, and hence the ability to assign the reversion is expressly made possible only after August 1, 1989."

Laddie, Prescott and Vitoria, *The Modern Law of Copyright and Design* (3rd edition) sets out both sides of the argument, but expresses no preference between them.

**The Background Facts**

4. The only issue in the action is which of the parties owns the reversionary interest. The Claimant relies for its title upon an assignment in writing dated 31st October 2000 made by the trustees of the will of the late Richard S Addinsell, who died on 14th November 1977. Mr Addinsell was a celebrated composer, particularly of film scores. He was responsible for the scores for a number of well-known films released during the 1940s, including *Goodbye Mr Chips*, *Fire Over England*, *Tom Brown's Schooldays*, *Beau Brummel* and *Dangerous Moonlight*. Part of the music composed for *Dangerous Moonlight* was the Warsaw Concerto, the copyright to which forms part of this claim. All of the works in dispute were written before 1st June 1957.

5. Between 1941 and 1946 Mr Addinsell assigned the "whole of his copyright" in the music and songs to Keith Prowse and Company Limited ("KPCL") in exchange for a royalty. Thereafter KPCL assigned the rights to the Defendant. On 4th December 1973 Mr Addinsell executed a further assignment in writing in favour of the Defendant of:

>"the whole of the copyright throughout the world of and in all the musical compositions written and/or composed by the undersigned, the copyrights in which have heretofore been acquired by the Company by earlier assignments to the intent that this assignment shall operate under the 1956 Copyright Act."

It is this assignment which the Defendant relies upon as vesting in it the reversionary interest. It is common ground that if it was effective to do this, then the assignment to the Claimant of the same rights in 2000 was of no effect.

6. Miss Vitoria QC for the Claimant relies upon two arguments in support of her client's title under the 2000 assignment. First, she submits that the effect of the transitional provisions contained in the 1956 Act was to apply to the 1973 assignment the proviso to s.5(2) of the 1911 Act. If this is correct, then it must follow that the 1973 assignment was not effective to transfer to the Defendant the reversionary interest. If she is wrong about that, she contends in the alternative that on its true construction the 1973 assignment did not convey to the Defendant any greater rights than were contained in the earlier assignments executed in the 1940s: i.e. did not include the reversionary interest. I turn first to consider the question of whether the 1973 assignment was capable of transferring the reversionary interest, having regard to the provisions of the 1956 Act.

**The Statutory Provisions**

7. There is a measure of agreement between the parties as to the statutory provisions which govern the effect of the 1973 assignment. Although the musical works in question were composed in the 1940s and attracted copyright under the 1911 Act, the existence and enforceability of those rights now depend on the 1988 Act: see s.171(2). Similarly, although the 1973 assignment took effect (if at all) under the provisions of the 1956 Act, it operated to convey rights created and continued under that Act and now replaced by the 1988 Act. It is therefore to the 1988 Act that one needs to turn in the first instance, in order to establish the current status of the 1973 assignment.

8. Under s.12(2) of the 1988 Act copyright in musical works expires at the end of the period of 70 years from the end of the calendar year in which the author dies. But in the case of works made prior to the commencement of the 1988 Act and of acts and events occurring before that date, the transitional provisions contained in Schedule 1 to the Act apply: see s.170. The general principles embodied in the transitional provisions are set out in paras 3 and 4 of Schedule 1. One of those principles is to ensure the continuity of the law, and para 3 provides that:

    > "The new copyright provisions apply in relation to things existing at commencement as they apply in relation to things coming into existence after commencement, subject to any express provision to the contrary."

    The 1988 Act is therefore a complete code, although it regulates the law in part by preserving in relation to copyright in existing works the statutory codes applicable at the time when the work was made. So, for example, the duration of copyright for musical works, although 70 years from the author's death under the 1988 Act, remains the period of 50 years from the author's death for existing musical works falling within the special cases set out in sub-paragraphs 12(2), (3) and (4). In such cases the provisions of the 1911 and the 1956 Acts are applied. Similarly, the question as to who was the first owner of copyright in an existing work is determined in accordance with the law in force at the time the work was made (see Sch 1, para 11(1)) and in relation to films, which only became the subject of copyright under the 1956 Act, the provisions of the 1911 Act are preserved for films made before 1st June 1957: see Sch 1, para 7.

9. Paragraphs 25-29 of Sch 1 to the 1988 Act deal with assignments and licences. Paragraph 25 provides that:

    > " (1) Any document made or event occurring before commencement which had any operation----
    >
    >   (a)  affecting the ownership of the copyright in an existing work, or
    >
    >   (b)  creating, transferring or terminating an interest, right or licence in respect of the copyright in an existing work,
    >
    > has the corresponding operation in relation to copyright in the work under this Act.

>   (2) Expressions used in such a document shall be construed in accordance with their effect immediately before commencement."

It is important to note that para 25 does no more, but no less, than to preserve the legal effect of a pre-commencement assignment or agreement to assign. It does not seek, in itself, to legislate as to the effect of any such document and applies only to preserve such legal effect as the document originally had. However, in para 27 some attempt is made to address the question of efficacy. Paragraph 27 provides that:

> " (1) Where the author of a literary, dramatic, musical or artistic work was the first owner of the copyright in it, no assignment of the copyright and no grant of any interest in it, made by him (otherwise than by will) after the passing of the 1911 Act and before 1st June 1957, shall be operative to vest in the assignee or grantee any rights with respect to the copyright in the work beyond the expiration of 25 years from the death of the author.
>
>   (2) The reversionary interest in the copyright expectant on the termination of that period may after commencement be assigned by the author during his life but in the absence of any assignment shall, on his death, devolve on his legal personal representatives as part of his estate.
>
>   (3) Nothing in this paragraph affects----
>
>   (a) an assignment of the reversionary interest by a person to whom it has assigned,
>
>   (b) an assignment of the reversionary interest after the death of the author by his personal representatives or any person becoming entitled to it, or
>
>   (c) any assignment of the copyright after the reversionary interest has fallen in."

10. It is clear that para 27(1) was intended to reproduce (although not by way of re-enactment) the provisions of s.5(2) of the 1911 Act, which deal with the power of the author as the first owner of the copyright to assign. Section 5(2) provides that:

> " The owner of the copyright in any work may assign the right, either wholly or partially, and either generally or subject to limitations to the United Kingdom or any self-governing dominion or other part of His Majesty's dominions to which this Act extends, and either for the whole term of the copyright or for any part thereof, and may grant any interest in the right by licence, but no such assignment or grant shall be valid unless it is in writing signed by the owner of the right in respect of which the assignment or grant is made, or by his duly authorised agent:

> Provided that, where the author of a work is the first owner of the copyright therein, no assignment of the copyright, and no grant of any interest therein, made by him (otherwise than by will) after the passing of this Act, shall be operative to vest in the assignee or grantee any rights with respect to the copyright in the work beyond the expiration of twenty-five years from the death of the author, and the reversionary interest in the copyright expectant on the termination of that period shall, on the death of the author, notwithstanding any agreement to the contrary, devolve on his legal personal representatives as part of his estate, and any agreement entered into by him as to the disposition of such reversionary interest shall be null and void, but nothing in this proviso shall be construed as applying to the assignment of the copyright in a collective work or a licence to publish a work or part of a work as part of a collective work."

The bar on the assignment of the reversionary interest has to be read in conjunction with (and is explained by) the provisions of s.3 of the 1911 Act, which set the duration of the copyright as the author's life plus 50 years, but created a statutory right of reproduction in the last 25 years of the term, exercisable upon the giving of the prescribed notice and the payment of a specified royalty to the owner of the copyright. The proviso to s.5(2) has the effect of making the right to receive those statutory royalties inalienable by the author in his lifetime and of vesting those rights in the author's personal representatives. Prior assignment by the author of the whole of the copyright would therefore take effect, subject to this proviso, and it was for this reason that the second part of the proviso describes the right to receive the royalties during the last 25-year period as reversionary. In a case in which there had been a prior assignment of the copyright to a third party, the proviso operated to re-vest the rights in the author's estate without the need for any re-assignment.

11. On one view, para 27 of Sch 1 to the 1988 Act was unnecessary, because para 25 would have limited both the 1940s and the 1973 assignments to whatever legal effect they had at the time when they were executed. I suspect, however, that Miss Vitoria is right in her suggestion that the draftsman of the 1988 Act probably considered it necessary to include paragraph 27(1), if only to ensure that the statutory vesting of the reversionary interest was also preserved. The effect, however, of that sub-paragraph is to make it clear beyond doubt that assignments executed before 1st June 1957 remain ineffective to pass the reversionary interest to the assignee. It is therefore common ground that nothing in the 1988 Act affected the assignments executed by Mr Addinsell in the 1940s and that those assignments remained subject to the restrictions imposed by the 1911 Act.

12. The meaning of para 27(2) of Sch 1 is also clear. Under s.90 of the 1988 Act copyright is freely assignable for the whole of its duration. The limitations imposed by the 1911 Act no longer exist and were abolished at least for new works by the 1956 Act (see s.36). Paragraph 27(2) will only therefore apply to works made during the currency of the 1911Act. It confirms that even in the case of those works a living author may after the commencement of the 1988 Act assign the reversionary rights, but that, in the absence of any such assignment, they will vest on his death in his personal representatives. What para 27 does not do in terms is to legislate for or re-state the legal effect of assignments of the reversionary interest made between 1st June 1957 and 1st August 1989. One is therefore thrown back to para 25(1), and the legal

   effect of instruments executed in this period is made to depend upon the provisions of the 1956 Act. Unlike in relation to the 1911 Act, the 1988 Act does not state what this was.

13. Both sides therefore accept that the 1988 Act makes the issue between them dependent upon the provisions of the 1956 Act in force at the time when the 1973 assignment was made and does not alter the legal effect which it had at the time. One can speculate as to why the draftsman of the 1988 Act passed the opportunity of clarifying the law on this point, but it does not really assist in the resolution of the question with which I am faced. It certainly looks as if he took the law on the point to be unsettled and therefore preferred to leave it to the Courts to resolve by construing the 1956 Act rather than risking the alteration by statute of established rights. The clue to this can, I think, be found in the Report of the Whitford Committee (Cmnd 6732) presented to Parliament in March 1977, which led ultimately to the passing of the 1988 Act. In chapter 12 of the Report, which deals with reversionary rights, the Committee noted that the Gregory Committee had in 1952 recommended the repeal of the proviso to s.3 of the 1911 Act and as a consequence the omission of the proviso to s.5(2). In paragraph 613 of its Report the Whitford Committee described the consequence of that recommendation as follows:

> "The recommendations of the Gregory Committee in this respect were accepted, but certain transitional provisions were introduced. In the result, under paragraph 28(3) of the Seventh Schedule to the 1956 Act the reversionary rights provision, as re-enacted in paragraph 6 of the Eighth Schedule to that Act, continues to apply to assignments and licences made before the operative date (1 July 1957) of the 1956 Act. It seems clear that an author may now make a first assignment or licence of copyright in pre-1957 works at any time without restriction."

They then set out some recommendations for the future:

> " 619. The problem of what to do about reversionary interests is a difficult one because, although we have some sympathy with the evidence submitted by such bodies as the British Copyright Council and the Publishers Association, we are also conscious of the fact that assignments and licences made before 1 July 1957 in some cases were no doubt made on the basis that there would be reversion in applicable cases and also that since that date some arrangements will have been validly made in good faith on the basis of the law as it now stands. We are not in favour of retrospective legislation which would adversely affect valid agreements already made or remove expectations of rights to come. Neither are we satisfied that the existing publishers should necessarily in all cases have a statutory right to a continued interest.
>
>  620. We do feel however that difficulties would be considerably relieved if parties (ie the author or his personal representatives) were able to assign or licence copyright for the reversionary period at any time. We think the law already clearly provides for this in cases where the author is dead, but

> the position is not free from doubt in cases where the author is still alive.
>
> 621. Until recently there seems to have been some lack of awareness of the provision for reversion, but this is probably no longer the case. The fact that publishers are now alive to the situation should enable them, in our view and on the basis of the last paragraph, to take appropriate action for the future; and in this respect we would expect existing publishers to be in a better negotiating position than third parties.
>
> 622. We recommend that, to the extent that this is not already clear, the law should make clear provision, in the case of works caught by the reversionary rights provision, for assignments and licences in respect of the residuary period to be made at any time, either by the author if living, or if dead, by his personal representatives."

One can, I think, see from these paragraphs why the draftsman of para 27 thought it best to leave the effect of the 1956 Act to others to resolve.

14. The 1956 Act retained the copyright period of the author's life plus 50 years, but removed the compulsory licensing provisions contained in the proviso to s.3 of the 1911 Act. The proviso to s.5(2) was also abolished and s.36 of the 1956 Act creates an unrestricted right of assignment. However, as in the case of the 1988 Act, ss.46(5) and 50 of the 1956 Act, whilst introducing a new and entire statutory code for the creation and enforcement of copyright, also provided, in the form of Schedules 7 and 8 to the Act, various transitional provisions designed to regulate copyright in existing works and prior assignments of those rights created under the 1911 Act. The question to decide is whether the preservation of the 1911 code in respect of existing works extended to the capacity of a living author of such works to assign his copyright after the commencement of the 1956 Act or whether from 1st June 1957 he became entitled to take advantage of s.36, free of the proviso to s.5(2) of the 1911 Act.

15. The transitional provisions contained in Sch 7 applied the 1911 Act regime to a number of fundamental aspects of copyright in existing works. The most obvious examples are those which occur in the opening few paragraphs of Sch 7. The conditions for the subsistence of copyright contained in ss.2 and 3 of the 1956 Act are amended (para 1); the duration of copyright in the case of photographs taken before 1st June 1957 is 50 years from the end of the calendar year in which they were taken and not 50 years from the end of the year in which they were first published (para 2); and the provisions of s.5(1) of the 1911 Act relating to ownership are preserved in preference to the new provisions of s.4 of the 1956 Act (para 3). Assignments are dealt with in para 28 and both sides accept that these are the critical provisions in the present case. Paragraph 28(1)-(3) provides as follows:

> " (1) Where by virtue of any provision of this Act copyright subsists in a work, any document or event which---
>
>   (a) was made or occurred before the commencement of that provision, and

> > (b) had any operation affecting the title to copyright in the work under the Act of 1911, or would have had such an operation if the Act of 1911 had continued in force,
>
> shall have the corresponding operation in relation to the copyright in the work under this Act;
>
> Provided that, if the operation of any such document was or would have been limited to a period specified in the document, it shall not have any operation in relation to the copyright under this Act, except in so far as that period extends beyond the commencement of the provision of this Act by virtue of which copyright subsists in the work.
>
> (2) For the purposes of the operation of a document in accordance with the preceding sub-paragraph,---
>
> > (a) expressions used in the document shall be construed in accordance with their effect immediately before the commencement of the provision in question, notwithstanding that a different meaning is assigned to them for the purposes of this Act; and
> >
> > (b) subsection (1) of section thirty-seven shall not apply.
>
> (3) Without prejudice to the generality of sub-paragraph (1) of this paragraph, the proviso set out in paragraph 6 of the Eighth Schedule to this Act (being the proviso to subsection (2) of section five of the Act of 1911) shall apply to assignments and licences having effect in relation to copyright under this Act in accordance with that sub-paragraph, as if that proviso had been re-enacted in this Act."

16. Paragraph 28(1) preserves the legal effect of any assignment made before 1st June 1957 which affected the title to copyright in works under the 1911 Act. This is the equivalent provision to para 25(1) of Sch 1 to the 1988 Act and was obviously the model for that paragraph. A pre-commencement assignment (e.g. the assignments executed by Mr Addinsell in the 1940s) therefore remained ineffective to transfer the reversionary interest, but remained effective insofar as it transferred the whole of the relevant copyright to the extent permitted by the 1911 Act. Nothing in para 28(1) assists either the Claimant or the Defendant. The effect of the 1940s assignments is not extended, but the paragraph does not deal with future assignments.

17. Paragraph 28(2) also deals with pre-commencement assignments of copyright in existing works under the 1911 Act and excludes from any such assignments or agreements (whose operation is continued after 1st June 1957 by virtue of para 28(1) ) the provisions of s.37(1) of the 1956 Act, which permitted for the first time the assignment of a future copyright. This merely confirms that the 1911 Act regime continues to govern pre-commencement assignments or agreements to assign.

18. This takes one to para 28(3). The question is whether this sub-paragraph, like sub-paras 28(1) and (2), is also confined to pre-commencement assignments or whether it also applies the proviso to s.5(2) of the 1911 Act to new assignments, albeit of the

copyright in existing works. It seems to me important to remember that unless limited in some way by these transitional provisions, s.36(1) of the 1956 Act clearly does confer an unrestricted right of assignment of copyright, and this would therefore apply to copyright in both existing and future works. For the Claimant to succeed, it is necessary to construe para 28(3) (because there is no other provision in the 1956 Act relied on for this purpose) as applying to and qualifying s.36(1) of the Act.

19. The form and language of para 28(3) contains no obvious indication that this was its purpose. There is no reference to s.36(1) as such, but, more significantly, there is the express statement that Sch 8, para 6 of the Act (which simply sets out in terms the proviso to s.5(2) of the 1911 Act) applies to arrangements and licences "having effect in relation to copyright under this Act in accordance with that sub-paragraph". This formula is a repeat of the wording of para 28(1) and seems to me to limit the application of the s.5(2) proviso to pre-commencement assignments. That is all that para 28(1) deals with. Looked at in this way, para 28(3) forms part of an intelligible code with the earlier two sub-paragraphs, which preserve but restrict pre-commencement assignments to the legal effect which they had under the 1911 Act. If Parliament had intended to re-enact the proviso to s.5(2) so as to regulate even future assignments of copyright in existing works, one would have expected to find a paragraph in the transitional provisions expressly qualifying the operative provisions of the Act in relation to copyright in existing works. Copyright under the Act for all works, including existing works, is derived from the 1956 Act itself: see s.46(5). The retention of the old 1911 regime in respect of existing works therefore requires the amendment of the provisions governing existing copyright. One can see an example of this in para 3 of Sch 7, which expressly disapplies s.4(2)-(4) of the 1956 Act to existing works and subjects s.4(1) in such cases to the proviso to s.5(1) of the 1911 Act, which is set out in para 1 of Sch 8. The provisions of para 28(3) bear no resemblance to this.

20. The Claimant's argument really comes down to saying that, by incorporating the whole of the proviso to s.5(2), para 28(3) has introduced provisions which by their very nature are prospective in effect. The proviso is applied "without prejudice to the generality" of para 28(1) and therefore has a wide application and effect. Miss Vitoria emphasises that the proviso has two limbs. The first sets up the reversionary interest. The second strikes down any attempt by the author to deal with the reversionary interest during his lifetime. Both parts of the proviso are applied by para 28(3). This is indicative of an intention by Parliament, she says, to apply these provisions to both past and future assignments. Parliament could have provided expressly that an author could, after 1st June 1957, assign the reversionary interest, but it did not do so.

21. I am not persuaded by this argument. In the first place Parliament did expressly confer upon a living author the right freely to assign the entirety of his copyright. The old provisions of ss.3(1) and 5(2) of the 1911 Act were repealed and replaced by s.36(1) of the 1956 Act, which is not limited in terms to copyright in future works. Secondly, I am not convinced that there is such a clear-cut division between the first and second parts of the proviso as Miss Vitoria suggests. It is the first part which invalidates purported assignments of the last 25 years of the copyright. The second merely extends those provisions to agreements to assign. My principal reason, however, for rejecting Miss Vitoria's submissions is that they leave the construction of para 28(3) to be determined by the proviso which they incorporate and not by the provisions of para 28(3) itself. This seems to me to be the statutory equivalent of the

tail wagging the dog. In order to decide what the proviso applies to, one needs to look at para 28(3) itself and not at the proviso in isolation. What para 28(3) says is that it applies to pre-commencement documents or events. Nothing else. One point raised by Miss Vitoria was that the proviso as a whole was intended to have prospective effect, because it contains the vesting provisions for the reversionary interest in the author's estate and these would continue to have effect (even on the Defendant's case) where the author has previously assigned his copyright, but has made no further attempt after 1st June 1957 to assign the reversionary interest. I accept that, but it is catered for by the Defendant's construction of paras 28(1) and 28(3). The pre-commencement assignment remains effective to assign copyright in the works for all but the last 25 years of the 1911 Act term and creates and vests the reversionary interest (with the assistance of the proviso) in the author's estate. To that extent the proviso continues to operate. But it does not, in my judgment, prevent the author, if living, from exercising the power of disposal conferred upon him by s.36.

22. For these reasons the provisions of para 28 of Sch 7 to the 1956 Act do not, as I see it, operate to invalidate the 1973 assignment, so far as it was, according to its terms, effective to pass to the Defendant the reversionary interest. Although I have reached this conclusion from my reading and interpretation of the statutory provisions themselves, it does in fact accord with the recommendations of the Gregory Committee which led to the passing of the 1956 Act. In paragraph 23 of its Report (Cmnd 8662) it said:

> "[We] have come to the conclusion that neither the proviso to Section 3 nor Section 4 of the Copyright Act, 1911, is decisive to secure the publication of books in cheap editions which would not otherwise be available to the public at, or at about, the same prices. We have accordingly considered the matter in the wider aspect of the advantages which accrue generally from the continued adherence of the United Kingdom to the Berne Union, and Her Majesty's Government's acceptance of the Brussels Convention. In our view, the advantages of continued adherence to the Union and to the latest Convention are overwhelming, and greatly outweigh any possible disadvantages which might flow from the repeal of the provisions in the existing law to which we have referred. We recommend in this regard that the law be brought into line with the Brussels Convention. The omission of the proviso to Section 3 of the Act would appear to involve the omission also of the proviso to Section 5 (2), which would seem to have been inserted so as to give the royalty under Section 3 to the personal representatives of the author."

Later, in relation to the position of existing assignments, paragraph 325 states:

> "Whilst the repeal of the proviso to Section 3 and 4 should have immediate effect for all works, the proviso to Section 5(2) should continue to apply to assignments already made when the amending Act comes into force."

**The Construction of the 1973 Assignment**

23. The issue of construction can be dealt with quite shortly. The Claimant's case is that the 1973 assignment was not effective to pass to the Defendant the reversionary interest, because it was co-extensive with the earlier assignments. Miss Vitoria pointed to the relative informality of the document, compared with the detailed and much lengthier forms of assignment executed by Mr Addinsell in the 1940s. It is, she says, silent as to the term of the rights conveyed and contains no express reference to the reversionary interest as such at all. The language used is equally consistent with it being a confirmatory assignment to the Defendant of the rights they had previously acquired from KPML, so as to avoid any disputes about the effectiveness of the chain of title.

24. There is no evidence as to the circumstances in which the 1973 assignment came to be executed and I have not therefore been troubled with arguments about what constitutes the relevant factual matrix and the inferences I should draw from it. However, so far as any background is relevant, I am, I think, entitled to have in mind what must have been known to the parties at the time of the assignment: i.e. that there had been previous assignments of copyright in the 1940s; that the benefit of those rights had been assigned to the Defendant; and that the 1911 Act had been replaced by the 1956 Act. All these points are evident from the terms of the 1973 assignment itself.

25. The 1973 assignment purports to deal with the "whole of the copyright throughout the world of and in all the musical compositions written and/or composed by the undersigned, the copyrights in which have heretofore been acquired by the Company by earlier assignments to the intent that this assignment shall operate under the 1956 Copyright Act". If the only purpose of the assignment was to confirm the earlier assignments but not to add to them, I see no reason for the concluding words containing the reference to the 1956 Act. It seems to me that in the absence of some definite context which requires the words used to be given a special or limited meaning, the proper approach must be to treat this as a commercial document made between persons with some knowledge of the subject-matter they were dealing with and to give the words, so far as possible, their ordinary meaning. Construed in that way, the document was effective, in my judgment, to include the reversionary interest. It assigns the whole of the copyright in the relevant works and it expressly does so with the intention that the assignment should operate under the 1956 Act. This must, at least in part, be a reference to s.36 of the 1956 Act, and the "whole of the copyright" in that context must include the reversionary interest. I express no view as to whether it was effective to convey more than the copyright in the musical works e.g. film rights) because this is an issue which does not arise between the parties in this case.

**Conclusion**

26. For these reasons the claim fails and will be dismissed. I will (if required) make a declaration that the 1973 assignment was effective to transfer to the Defendant the reversionary interest. In the absence of agreement, I will hear Counsel on the question of costs and any other consequential matters.