# EXHIBIT 4



# Copyright Act 1968

**No. 63, 1968**

## Compilation No. 64

**Compilation date:**     11 December 2024

**Includes amendments:**  Act No. 115, 2024

Prepared by the Office of Parliamentary Counsel, Canberra

Replaced Authorised Version registered 10/02/2025 C2024C00854

# About this compilation

**This compilation**

This is a compilation of the *Copyright Act 1968* that shows the text of the law as amended and in force on 11 December 2024 (the ***compilation date***).

The notes at the end of this compilation (the ***endnotes***) include information about amending laws and the amendment history of provisions of the compiled law.

**Uncommenced amendments**

The effect of uncommenced amendments is not shown in the text of the compiled law. Any uncommenced amendments affecting the law are accessible on the Register (www.legislation.gov.au). The details of amendments made up to, but not commenced at, the compilation date are underlined in the endnotes. For more information on any uncommenced amendments, see the Register for the compiled law.

**Application, saving and transitional provisions for provisions and amendments**

If the operation of a provision or amendment of the compiled law is affected by an application, saving or transitional provision that is not included in this compilation, details are included in the endnotes.

**Editorial changes**

For more information about any editorial changes made in this compilation, see the endnotes.

**Modifications**

If the compiled law is modified by another law, the compiled law operates as modified but the modification does not amend the text of the law. Accordingly, this compilation does not show the text of the compiled law as modified. For more information on any modifications, see the Register for the compiled law.

**Self-repealing provisions**

If a provision of the compiled law has been repealed in accordance with a provision of the law, details are included in the endnotes.

# Contents

**Part I—Preliminary** 1

| | | |
|---|---|---|
| 1 | Short title | 1 |
| 2 | Commencement | 1 |
| 4 | Extension to external Territories | 1 |
| 5 | Exclusion of Imperial Copyright Act, 1911 | 1 |
| 6 | Repeal of Copyright Acts | 1 |
| 7 | Act to bind the Crown | 2 |
| 8 | Copyright not to subsist except by virtue of this Act | 2 |
| 8A | Prerogative rights of the Crown in the nature of copyright | 2 |
| 9 | Operation of other laws | 2 |
| 9A | Application of the *Criminal Code* | 3 |

**Part II—Interpretation** 4

| | | |
|---|---|---|
| 10 | Interpretation | 4 |
| 10AA | *Non-infringing copy* of a sound recording | 27 |
| 10AB | *Non-infringing copy* of a computer program | 28 |
| 10AC | *Non-infringing copy* of an electronic literary or music item | 28 |
| 10AD | Accessories to imported articles | 29 |
| 11 | Residence in a country not affected by temporary absence | 30 |
| 12 | References to Parliament | 30 |
| 13 | Acts comprised in copyright | 30 |
| 14 | Acts done in relation to substantial part of work or other subject-matter deemed to be done in relation to the whole | 30 |
| 15 | References to acts done with licence of owner of copyright | 31 |
| 16 | References to partial assignment of copyright | 31 |
| 17 | Statutory employment | 31 |
| 18 | Libraries established or conducted for profit | 31 |
| 19 | References to Copyright Act, 1911 | 31 |
| 20 | Names under which work is published | 32 |
| 21 | Reproduction and copying of works and other subject-matter | 32 |
| 22 | Provisions relating to the making of a work or other subject-matter | 33 |

*Copyright Act 1968*                                                                 *i*

Replaced Authorised Version registered 10/02/2025 C2024C00854

| 23 | Sound recordings and records | 36 |
| 24 | References to sounds and visual images embodied in an article | 36 |
| 25 | Provisions relating to broadcasting | 37 |
| 27 | Performance | 38 |
| 28 | Performance and communication of works or other subject-matter in the course of educational instruction | 39 |
| 29 | Publication | 41 |
| 29A | Making public | 43 |
| 30 | Ownership of copyright for particular purposes | 44 |
| 30A | Commercial rental arrangement | 44 |

**Part III—Copyright in original literary, dramatic, musical and artistic works** ........ 46

**Division 1—Nature, duration and ownership of copyright in works** ........ 46

| 31 | Nature of copyright in original works | 46 |
| 32 | Original works in which copyright subsists | 48 |
| 33 | Duration of copyright in original works | 49 |
| 35 | Ownership of copyright in original works | 50 |

**Division 2—Infringement of copyright in works** ........ 53

| 36 | Infringement by doing acts comprised in the copyright | 53 |
| 37 | Infringement by importation for sale or hire | 53 |
| 38 | Infringement by sale and other dealings | 54 |
| 39 | Infringement by permitting place of public entertainment to be used for performance of work | 55 |
| 39A | Infringing copies made on machines installed in libraries and archives | 55 |
| 39B | Communication by use of certain facilities | 56 |

**Division 3—Acts not constituting infringements of copyright in works** ........ 57

| 40 | Fair dealing for purpose of research or study | 57 |
| 41 | Fair dealing for purpose of criticism or review | 59 |
| 41A | Fair dealing for purpose of parody or satire | 59 |
| 42 | Fair dealing for purpose of reporting news | 59 |
| 43 | Reproduction for purpose of judicial proceedings or professional advice | 60 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

| 43A | Temporary reproductions made in the course of communication ................................................................60 |
| 43B | Temporary reproductions of works as part of a technical process of use ....................................................61 |
| 43C | Reproducing works in books, newspapers and periodical publications in different form for private use.......................................................................61 |
| 44 | Inclusion of works in collections for use by places of education ..............................................................63 |
| 44A | Importation etc. of books....................................................64 |
| 44B | Reproduction of writing on approved label for containers for chemical product .....................................67 |
| 44BA | Acts done in relation to certain medicine .......................68 |
| 44BB | Copyright subsisting in works shared for healthcare or related purposes ..........................................69 |
| 44C | Copyright subsisting in accessories etc. to imported articles ................................................................70 |
| 44D | Import of non-infringing copy of sound recording does not infringe copyright in works recorded................70 |
| 44E | Importation and sale etc. of copies of computer programs..........................................................................71 |
| 44F | Importation and sale etc. of copies of electronic literary or music items ......................................................72 |

**Division 4—Acts not constituting infringements of copyright in literary, dramatic and musical works**     **73**

| 45 | Reading or recitation in public or for a broadcast ............73 |
| 46 | Performance at premises where persons reside or sleep...............................................................................73 |
| 47 | Reproduction for purpose of broadcasting .......................73 |
| 47AA | Reproduction for the purpose of simulcasting ................75 |

**Division 4A—Acts not constituting infringements of copyright in computer programs**     **77**

| 47AB | Meaning of *computer program* ........................................77 |
| 47B | Reproduction for normal use or study of computer programs..........................................................................77 |
| 47C | Back-up copy of computer programs ................................78 |
| 47D | Reproducing computer programs to make interoperable products ........................................................80 |
| 47E | Reproducing computer programs to correct errors...........80 |
| 47F | Reproducing computer programs for security testing ...............................................................................81 |

*Copyright Act 1968*     *iii*

Replaced Authorised Version registered 10/02/2025 C2024C00854

47G          Unauthorised use of copies or information ......................82

47H          Agreements excluding operation of certain
provisions ...........................................................................82

**Division 4B—Acts not constituting infringements of copyright in
artistic works**          83

47J          Reproducing photograph in different format for
private use...........................................................................83

**Division 5—Copying of works in libraries or archives**          85

48          Interpretation .....................................................................85

48A          Copying by Parliamentary libraries for members
of Parliament .....................................................................85

49          Reproducing and communicating works by
libraries and archives for users............................................85

50          Reproducing and communicating works by
libraries or archives for other libraries or archives...........90

51          Reproducing and communicating unpublished
works in libraries or archives ...........................................96

51AA          Reproducing and communicating works in care of
National Archives of Australia...........................................97

52          Publication of unpublished works kept in libraries
or archives ..........................................................................98

53          Application of Division to illustrations
accompanying articles and other works ...........................99

**Division 6—Recording of musical works**          101

54          Interpretation ...................................................................101

55          Conditions upon which manufacturer may make
records of musical work ...................................................102

57          Provisions relating to royalty where 2 or more
works are on the one record .............................................104

59          Conditions upon which manufacturer may include
part of a literary or dramatic work in a record of a
musical work ....................................................................105

60          Records made partly for retail sale and partly for
gratuitous disposal...........................................................107

61          Making inquiries in relation to previous records............108

64          Sections 55 and 59 to be disregarded in
determining whether an infringement has been
committed by the importation of records ......................109

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Division 7—Acts not constituting infringements of copyright in artistic works** 110

| | | |
|---|---|---|
| 65 | Sculptures and certain other works in public places | 110 |
| 66 | Buildings and models of buildings | 110 |
| 67 | Incidental filming or televising of artistic works | 110 |
| 68 | Publication of artistic works | 110 |
| 70 | Reproduction for purpose of including work in television broadcast | 111 |
| 72 | Reproduction of part of work in later work | 112 |
| 73 | Reconstruction of buildings | 112 |

**Division 8—Designs** 114

| | | |
|---|---|---|
| 74 | Corresponding design | 114 |
| 75 | Copyright protection where corresponding design registered | 114 |
| 76 | False registration of industrial designs under the *Designs Act 2003* | 114 |
| 77 | Application of artistic works as industrial designs without registration of the designs | 115 |
| 77A | Certain reproductions of an artistic work do not infringe copyright | 117 |

**Division 9—Works of joint authorship** 119

| | | |
|---|---|---|
| 78 | References to all of joint authors | 119 |
| 79 | References to any one or more of joint authors | 119 |
| 79A | References to the identity of none of joint authors being generally known | 119 |
| 80 | References to whichever of joint authors died last | 119 |
| 81 | Works of joint authorship published under pseudonyms | 120 |
| 82 | Copyright to subsist in joint works without regard to any author who is an unqualified person | 120 |
| 83 | Inclusion of joint works in collections for use in places of education | 121 |

**Part IV—Copyright in subject-matter other than works** 122

**Division 1—Preliminary** 122

| | | |
|---|---|---|
| 84 | Definitions | 122 |

**Division 2—Nature of copyright in subject-matter other than works** 124

| | | |
|---|---|---|
| 85 | Nature of copyright in sound recordings | 124 |

*Copyright Act 1968*    *v*

Replaced Authorised Version registered 10/02/2025 C2024C00854

| | 86 | Nature of copyright in cinematograph films | 124 |
| | 87 | Nature of copyright in television broadcasts and sound broadcasts | 125 |
| | 88 | Nature of copyright in published editions of works | 125 |

**Division 3—Subject-matter, other than works, in which copyright subsists**    126

| | 89 | Sound recordings in which copyright subsists | 126 |
| | 90 | Cinematograph films in which copyright subsists | 126 |
| | 91 | Television broadcasts and sound broadcasts in which copyright subsists | 126 |
| | 92 | Published editions of works in which copyright subsists | 127 |

**Division 4—Duration of copyright in subject-matter other than works**    128

| | 93 | Duration of copyright in sound recordings and films | 128 |
| | 95 | Duration of copyright in television broadcasts and sound broadcasts | 129 |
| | 96 | Duration of copyright in published editions of works | 129 |

**Division 5—Ownership of copyright in subject-matter other than works**    130

**Subdivision A—Ownership of copyright in subject-matter other than works**    130

| | 97 | Ownership of copyright in sound recordings | 130 |
| | 98 | Ownership of copyright in cinematograph films | 130 |
| | 99 | Ownership of copyright in television broadcasts and sound broadcasts | 132 |
| | 100 | Ownership of copyright in published editions of works | 132 |

**Subdivision B—Specific provisions relating to the ownership of copyright in pre-commencement sound recordings of live performances**    132

| | 100AA | Application | 132 |
| | 100AB | Definitions | 132 |
| | 100AC | Application of sections 100AD and 100AE | 133 |
| | 100AD | Makers of pre-commencement sound recordings of live performances | 133 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

| 100AE | Ownership of pre-commencement copyright in sound recordings of live performances ..........................134 |
| 100AF | Former owners may continue to do any act in relation to the copyright .................................................135 |
| 100AG | Actions by new owners of copyright.............................135 |
| 100AH | References to the owner of the copyright in a sound recording ............................................................136 |

**Division 6—Infringement of copyright in subject-matter other than works**    137

| 100A | Interpretation ................................................................137 |
| 101 | Infringement by doing acts comprised in copyright.......137 |
| 102 | Infringement by importation for sale or hire .................138 |
| 103 | Infringement by sale and other dealings........................138 |
| 103A | Fair dealing for purpose of criticism or review .............139 |
| 103AA | Fair dealing for purpose of parody or satire ..................139 |
| 103B | Fair dealing for purpose of reporting news ...................140 |
| 103C | Fair dealing for purpose of research or study.................140 |
| 104 | Acts done for purposes of judicial proceeding...............140 |
| 104A | Acts done by Parliamentary libraries for members of Parliament ................................................................141 |
| 104B | Infringing copies made on machines installed in libraries and archives....................................................141 |
| 104C | Copyright subsisting in sound recordings and cinematograph films shared for healthcare or related purposes ............................................................142 |
| 105 | Copyright in certain recordings not infringed by causing recordings to be heard in public or broadcast........................................................................143 |
| 106 | Causing sound recording to be heard at guest house or club ................................................................143 |
| 107 | Making of a copy of the sound recording for purpose of broadcasting................................................144 |
| 108 | Copyright in published recording not infringed by public performance if equitable remuneration paid .......145 |
| 109 | Copyright in published sound recording not infringed by broadcast in certain circumstances ...........146 |
| 109A | Copying sound recordings for private and domestic use ..................................................................148 |
| 110 | Provisions relating to cinematograph films....................149 |
| 110AA | Copying cinematograph film in different format for private use ................................................................149 |

*Copyright Act 1968*      *vii*

Compilation No. 64                      Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

| | | |
|---|---|---|
| 110A | Copying and communicating unpublished sound recordings and cinematograph films in libraries or archives................................................................151 | |
| 110C | Making of a copy of a sound recording or cinematograph film for the purpose of simulcasting....................................................................152 | |
| 111 | Recording broadcasts for replaying at more convenient time ............................................................153 | |
| 111A | Temporary copy made in the course of communication ..................................................................154 | |
| 111B | Temporary copy of subject-matter as part of a technical process of use ..................................................154 | |
| 112 | Reproductions of editions of work .................................155 | |
| 112A | Importation and sale etc. of books...................................155 | |
| 112B | Reproduction of writing on approved label for containers for chemical product ......................................159 | |
| 112C | Copyright subsisting in accessories etc. to imported articles ..............................................................159 | |
| 112D | Import of non-infringing copy of a sound recording does not infringe copyright in the sound recording...................................................................160 | |
| 112DA | Importation and sale etc. of copies of electronic literary or music items ....................................................161 | |
| 112E | Communication by use of certain facilities...................161 | |

**Division 7—Miscellaneous** .......................................................... 162

| | | |
|---|---|---|
| 113 | Copyrights to subsist independently..............................162 | |
| 113A | Agents may act on behalf of groups of performers ........162 | |
| 113B | Consent to the use of a sound recording of a live performance .....................................................162 | |
| 113C | Use of published sound recordings when owners cannot be found etc........................................................163 | |

**Part IVA—Uses that do not infringe copyright** ...................... 165

**Division 1—Simplified outline of this Part** ............................... 165

| | | |
|---|---|---|
| 113D | Simplified outline of this Part .......................................165 | |

**Division 2—Access by or for persons with a disability** ............. 166

| | | |
|---|---|---|
| 113E | Fair dealing for purpose of access by persons with a disability ........................................................166 | |
| 113F | Use of copyright material by organisations assisting persons with a disability ..................................166 | |

Replaced Authorised Version registered 10/02/2025 C2024C00854

### Division 3—Libraries and archives                           167

#### Subdivision A—Public libraries, parliamentary libraries and archives                           167
113G        Libraries.................................................................167
113H        Preservation ........................................................167
113J         Research ..............................................................168
113K        Administration of the collection.....................169

#### Subdivision B—Key cultural institutions                           169
113L        Meaning of *key cultural institution* ...............169
113M       Preservation ........................................................169

### Division 4—Educational institutions—statutory licence                           171
113N        Simplified outline of this Division .................171
113P        Copying and communicating works and broadcasts ......171
113Q        Remuneration notices .........................................174
113R        Equitable remuneration .....................................175
113S        Educational institutions must assist collecting society.................................................................176
113T        Voluntary licences..............................................177
113U        Persons acting on behalf of bodies administering educational institutions.....................................178

### Division 5—Collecting societies                           179

#### Subdivision A—Declaration of collecting society                           179
113V        Declaration of collecting society.....................179
113W       Requirements for declaration of collecting society.......181
113X        Revocation of declaration.................................182

#### Subdivision B—Operation of collecting society                           183
113Y        Scope of this Subdivision .................................183
113Z        Annual report and accounts .............................183
113ZA      Amendment of rules ...........................................184
113ZB      Review of distribution arrangement by Copyright Tribunal .............................................................184
113ZC      Operation of collecting society rules...............185

## Part V—Remedies and offences                           186

### Division 1—Preliminary                           186
114          Interpretation ....................................................186

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Division 2—Actions by owner of copyright**                                    187

    115          Actions for infringement ................................187

    115A       Injunctions relating to online locations outside
                  Australia ........................................................189

    116          Rights of owner of copyright in respect of
                  infringing copies..........................................193

    116AAA   Compensation for acquisition of property....................195

**Division 2AA—Limitation on remedies available against service
    providers**                                                                196

    **Subdivision A—Preliminary**                                                196

        116AA     Purpose of this Division ................................196

        116AB     Definitions....................................................196

        116ABA    Definition of *service provider* .........................197

    **Subdivision B—Relevant activities**                                        198

        116AC     Category A activity .......................................198

        116AD     Category B activity........................................198

        116AE     Category C activity ........................................198

        116AF     Category D activity .......................................198

    **Subdivision C—Limitations on remedies**                                    198

        116AG     Limitations on remedies ................................198

    **Subdivision D—Conditions**                                                 200

        116AH     Conditions ....................................................200

        116AI      Evidence of compliance with conditions........................204

    **Subdivision E—Regulations**                                                204

        116AJ      Regulations....................................................204

**Division 2A—Actions in relation to technological protection
    measures and electronic rights management
    information**                                                               206

    **Subdivision A—Technological protection measures**                          206

        116AK     Definitions....................................................206

        116AL     Interaction of this Subdivision with Part VAA .............206

        116AM    Geographical application................................206

        116AN     Circumventing an access control technological
                    protection measure ........................................206

        116AO     Manufacturing etc. a circumvention device for a
                    technological protection measure ....................210

Replaced Authorised Version registered 10/02/2025 C2024C00854

| | | |
|---|---|---|
| 116AP | Providing etc. a circumvention service for a technological protection measure | 214 |
| 116AQ | Remedies in actions under this Subdivision | 217 |

**Subdivision B—Electronic rights management information** 218

| | | |
|---|---|---|
| 116B | Removal or alteration of electronic rights management information | 218 |
| 116C | Distribution to the public etc. of works whose electronic rights management information has been removed or altered | 219 |
| 116CA | Distribution and importation of electronic rights management information that has been removed or altered | 220 |
| 116CB | Exception relating to national security and law enforcement | 221 |
| 116D | Remedies in actions under this Subdivision | 221 |

**Division 3—Proceedings where copyright is subject to exclusive licence** 223

| | | |
|---|---|---|
| 117 | Interpretation | 223 |
| 118 | Application | 223 |
| 119 | Rights of exclusive licensee | 223 |
| 120 | Joinder of owner or exclusive licensee as a party | 224 |
| 121 | Defences available against exclusive licensee | 224 |
| 122 | Assessment of damages where exclusive licence granted | 225 |
| 123 | Apportionment of profits between owner and exclusive licensee | 225 |
| 124 | Separate actions in relation to the same infringement | 226 |
| 125 | Liability for costs | 226 |

**Division 4—Proof of facts in civil actions** 227

| | | |
|---|---|---|
| 126 | Presumptions as to subsistence and ownership of copyright | 227 |
| 126A | Presumptions relating to subsistence of copyright | 227 |
| 126B | Presumptions relating to ownership of copyright | 228 |
| 127 | Presumptions in relation to authorship of work | 230 |
| 128 | Presumptions in relation to publisher of work | 231 |
| 129 | Presumptions where author has died | 231 |
| 129A | Presumptions relating to computer programs | 232 |
| 130 | Presumptions relating to sound recordings | 232 |

*Copyright Act 1968* *xi*

Replaced Authorised Version registered 10/02/2025 C2024C00854

| 130A | Acts relating to imported copies of sound recordings | 234 |
| 130B | Acts relating to imported copies of computer programs | 234 |
| 130C | Acts relating to imported copies of electronic literary or music items | 234 |
| 131 | Presumptions relating to films | 235 |

**Division 4A—Jurisdiction and appeals**     237

| 131A | Exercise of jurisdiction | 237 |
| 131B | Appeals | 237 |
| 131C | Jurisdiction of Federal Court of Australia | 237 |
| 131D | Jurisdiction of Federal Circuit and Family Court of Australia (Division 2) | 237 |

**Division 5—Offences and summary proceedings**     238

**Subdivision A—Preliminary**     238

| 132AA | Definitions | 238 |
| 132AB | Geographical application | 238 |

**Subdivision B—Substantial infringement on a commercial scale**     238

| 132AC | Commercial-scale infringement prejudicing copyright owner | 238 |

**Subdivision C—Infringing copies**     241

| 132AD | Making infringing copy commercially | 241 |
| 132AE | Selling or hiring out infringing copy | 242 |
| 132AF | Offering infringing copy for sale or hire | 244 |
| 132AG | Exhibiting infringing copy in public commercially | 246 |
| 132AH | Importing infringing copy commercially | 248 |
| 132AI | Distributing infringing copy | 251 |
| 132AJ | Possessing infringing copy for commerce | 253 |
| 132AK | Aggravated offence—work etc. converted to digital form | 255 |
| 132AL | Making or possessing device for making infringing copy | 256 |
| 132AM | Advertising supply of infringing copy | 258 |

**Subdivision D—Airing of works, sound recordings and films**     259

| 132AN | Causing work to be performed publicly | 259 |
| 132AO | Causing recording or film to be heard or seen in public | 260 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Subdivision E—Technological protection measures**                        261

    132APA      Definitions ........................................................................261

    132APB      Interaction of this Subdivision with Part VAA .............261

    132APC      Circumventing an access control technological
                     protection measure ..........................................................261

    132APD      Manufacturing etc. a circumvention device for a
                     technological protection measure ...................................266

    132APE      Providing etc. a circumvention service for a
                     technological protection measure ...................................270

**Subdivision F—Electronic rights management information**                 274

    132AQ      Removing or altering electronic rights
                     management information.................................................274

    132AR      Distributing, importing or communicating copies
                     after removal or alteration of electronic rights
                     management information.................................................276

    132AS      Distributing or importing electronic rights
                     management information.................................................279

    132AT      Defences ..........................................................................282

**Subdivision G—Evidence**                                                 283

    132AU      Prosecution to prove profit ..............................................283

    132A      Presumptions in relation to subsistence and
                     ownership of copyright....................................................284

    132AAA    Presumptions relating to computer programs.................285

    132B      Presumptions relating to sound recordings ....................285

    132C      Presumptions relating to films........................................287

**Subdivision H—Extra court orders**                                       288

    133      Destruction or delivery up of infringing copies etc.......288

**Subdivision I—Procedure and jurisdiction**                              288

    133A      Courts in which offences may be prosecuted.................288

    133B      Infringement notices.......................................................289

**Division 6—Miscellaneous**                                              290

    134      Limitation of actions in respect of infringement of
                     copyright..........................................................................290

    134A      Affidavit evidence ...........................................................290

**Division 7—Seizure of imported copies of copyright material**            292

    134B      Interpretation ...................................................................292

    135      Restriction of importation of copies of works etc. .........293

    135AA     Decision not to seize unless expenses are covered........295

    135AB     Secure storage of seized copies .....................................296

*Copyright Act 1968*                                                       *xiii*

Replaced Authorised Version registered 10/02/2025 C2024C00854

| | | |
|---|---|---|
| 135AC | Notice of seizure | 296 |
| 135AD | Inspection, release etc. of seized copies | 298 |
| 135AE | Forfeiture of seized copies by consent | 299 |
| 135AEA | Claim for release of seized copies | 299 |
| 135AEB | Seized copies not claimed are forfeited | 299 |
| 135AEC | Late claim for release of seized copies | 300 |
| 135AED | Objector to be notified of claim | 300 |
| 135AF | Release of seized copies to importer | 300 |
| 135AFA | Copies released but not collected are forfeited | 302 |
| 135AG | Provision relating to actions for infringement of copyright | 302 |
| 135AH | Retention of control of seized copies | 303 |
| 135AI | Disposal of seized copies forfeited to the Commonwealth | 303 |
| 135AJ | Failure to meet Commonwealth's expenses of seizure | 304 |
| 135AK | Immunity of the Commonwealth | 305 |

**Part VAA—Unauthorised access to encoded broadcasts**   306

  **Division 1—Preliminary**   306

| | | |
|---|---|---|
| 135AL | Definitions | 306 |
| 135AM | Counterclaim | 307 |
| 135AN | This Part does not apply to law enforcement activity etc. | 307 |

  **Division 2—Actions**   308

    **Subdivision A—Actions relating to unauthorised decoders**   308

| | | |
|---|---|---|
| 135AOA | Making or dealing with unauthorised decoder | 308 |

    **Subdivision B—Actions relating to decoders for subscription broadcasts**   309

| | | |
|---|---|---|
| 135AOB | Making decoder available online | 309 |

    **Subdivision C—Actions for unauthorised access to encoded broadcasts**   310

| | | |
|---|---|---|
| 135AOC | Causing unauthorised access | 310 |
| 135AOD | Unauthorised commercial use of subscription broadcast | 311 |

    **Subdivision D—Court orders**   312

| | | |
|---|---|---|
| 135AOE | Relief | 312 |
| 135AOF | Destruction of decoder | 313 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Subdivision E—Jurisdiction and appeals**   313

135AP   Exercise of jurisdiction.................................................313
135AQ   Appeals..........................................................................313
135AR   Jurisdiction of Federal Court of Australia.....................313
135AS   Jurisdiction of Federal Circuit and Family Court of Australia (Division 2)...................................................313

**Division 3—Offences**   314

**Subdivision A—Offences**   314

135ASA   Making unauthorised decoder .......................................314
135ASB   Selling or hiring unauthorised decoder .........................314
135ASC   Offering unauthorised decoder for sale or hire .............314
135ASD   Commercially exhibiting unauthorised decoder in public .............................................................................315
135ASE   Importing unauthorised decoder commercially.............316
135ASF   Distributing unauthorised decoder ................................317
135ASG   Making unauthorised decoder available online.............317
135ASH   Making decoder available online for subscription broadcast......................................................................318
135ASI   Unauthorised access to subscription broadcast etc........318
135ASJ   Causing unauthorised access to encoded broadcast etc. ...............................................................................319

**Subdivision B—Prosecutions**   321

135ATA   Courts in which offences may be prosecuted.................321

**Subdivision C—Further orders by court**   322

135AU   Destruction etc. of unauthorised decoders ...................322

**Part VC—Retransmission of free-to-air broadcasts**   323

**Division 1—Preliminary**   323

135ZZI   Definitions ....................................................................323
135ZZJ   Operation of collecting society rules.............................324
135ZZJA   Application of Part .......................................................324

**Division 2—Retransmission of free-to-air broadcasts**   325

135ZZK   Retransmission of free-to-air broadcasts......................325
135ZZL   Remuneration notices....................................................325
135ZZM   Amount of equitable remuneration................................326
135ZZN   Record system ..............................................................326
135ZZP   Inspection of records etc...............................................327
135ZZQ   Identity cards ................................................................328

Replaced Authorised Version registered 10/02/2025 C2024C00854

|       | 135ZZR | Revocation of remuneration notice | 328 |
|       | 135ZZS | Request for payment of equitable remuneration | 329 |

**Division 3—Collecting societies** 330

|       | 135ZZT | Collecting societies | 330 |
|       | 135ZZU | Revocation of declaration | 332 |
|       | 135ZZV | Annual report and accounts | 332 |
|       | 135ZZW | Amendment of rules | 333 |
|       | 135ZZWA | Applying to Tribunal for review of distribution arrangement | 333 |

**Division 4—Interim retransmissions** 335

|       | 135ZZX | Appointment of notice holder | 335 |
|       | 135ZZY | Retransmitting before declaration of collecting society | 335 |
|       | 135ZZZ | Notices by retransmitters | 335 |
|       | 135ZZZA | Record keeping requirements | 336 |
|       | 135ZZZB | Effect of declaration of collecting society | 336 |

**Division 5—Miscellaneous** 338

|       | 135ZZZC | Relevant copyright owner may authorise retransmitting | 338 |
|       | 135ZZZD | Copyright not to vest under this Part | 338 |
|       | 135ZZZE | Licence to retransmit does not authorise copyright infringements | 338 |

**Part VD—Re-broadcasts by satellite BSA licensees** 339

**Division 1—Preliminary** 339

|       | 135ZZZF | Definitions | 339 |
|       | 135ZZZG | Eligible program and original broadcaster | 340 |
|       | 135ZZZH | Operation of collecting society rules | 340 |

**Division 2—Re-broadcasts by satellite BSA licensees** 341

|       | 135ZZZI | Re-broadcasts by satellite BSA licensees | 341 |
|       | 135ZZZJ | Remuneration notices | 343 |
|       | 135ZZZK | Amount of equitable remuneration | 344 |
|       | 135ZZZL | Record system | 345 |
|       | 135ZZZM | Revocation of remuneration notice | 345 |
|       | 135ZZZN | Request for payment of equitable remuneration | 345 |

**Division 3—Collecting societies** 347

|       | 135ZZZO | Collecting societies | 347 |
|       | 135ZZZP | Revocation of declaration | 349 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

|  | 135ZZZQ | Annual report and accounts | 350 |
|  | 135ZZZR | Amendment of rules | 351 |
|  | 135ZZZS | Applying to Tribunal for review of distribution arrangement | 351 |

**Division 4—Interim re-broadcasts** ... 352

|  | 135ZZZT | Appointment of notice holder | 352 |
|  | 135ZZZU | Re-broadcast before declaration of collecting society | 352 |
|  | 135ZZZV | Notices by satellite BSA licensees | 352 |
|  | 135ZZZW | Record keeping requirements | 353 |
|  | 135ZZZX | Effect of declaration of collecting society | 353 |

**Division 5—Miscellaneous** ... 355

|  | 135ZZZY | Relevant copyright owner may authorise re-broadcast | 355 |
|  | 135ZZZZ | Copyright not to vest under this Part | 355 |
|  | 135ZZZZA | Licence to re-broadcast does not authorise copyright infringements | 355 |

**Part VI—Copyright Tribunal of Australia** ... 356

**Division 1—Preliminary** ... 356

|  | 136 | Interpretation | 356 |
|  | 137 | Cases to which licence schemes apply | 358 |

**Division 2—Constitution of the Tribunal** ... 359

|  | 138 | Constitution of Tribunal | 359 |
|  | 139 | Appointment of members of Tribunal | 359 |
|  | 140 | Qualifications of members | 359 |
|  | 141 | Tenure of office | 360 |
|  | 141A | Seniority of Deputy Presidents | 360 |
|  | 142 | Acting President | 361 |
|  | 143 | Remuneration and allowances | 361 |
|  | 144 | Oath or affirmation of office | 361 |
|  | 144A | Disclosure of interests by members | 361 |
|  | 144B | Removal from office for failure to disclose interest | 362 |
|  | 145 | Resignation | 362 |
|  | 146 | Sittings of the Tribunal | 363 |
|  | 147 | President to arrange business of Tribunal | 364 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

## Division 3—Applications and references to the Tribunal  365

### Subdivision B—Applications relating to Parts III and IV  365

| | | |
|---|---|---|
| 149 | Applications to Tribunal for determination of remuneration payable for making recording or film of a work | 365 |
| 150 | Applications to Tribunal for determination of remuneration payable to owner of copyright in recording for making of a copy of the sound recording | 365 |
| 151 | Applications to Tribunal for determination of remuneration payable to owner of copyright in recording in respect of public playing of the recording | 366 |
| 152 | Applications to Tribunal for determination of amounts payable for broadcasting published sound recordings | 366 |
| 152A | Applications to Tribunal for determination of amount of royalty payable for recording musical works | 373 |
| 152B | Applications to Tribunal for determination of manner of paying royalty | 374 |
| 153 | Applications to Tribunal for apportionment of royalty in respect of a record | 375 |

### Subdivision C—Applications and referrals relating to Part IVA  376

| | | |
|---|---|---|
| 153A | Applications and referrals relating to Division 4 of Part IVA | 376 |

### Subdivision E—Applications relating to Part VII  378

| | | |
|---|---|---|
| 153DF | Meaning of *copyright material* | 378 |
| 153E | Applications to Tribunal under subsection 183(5) | 378 |
| 153F | Applications to Tribunal to declare collecting society for government copies | 379 |
| 153G | Applications to Tribunal to revoke a declaration of a collecting society | 381 |
| 153H | Time limit for deciding applications under section 153F or 153G | 382 |
| 153J | Amendment and revocation of a declaration on the declaration of another collecting society | 382 |
| 153K | Applications to Tribunal for method of working out payment for government copies | 383 |
| 153KA | Review of collecting society's distribution arrangement | 384 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Subdivision G—Applications and references relating to Part VC**      385

153M      Applications to the Tribunal under subsection 135ZZM(1)....................................385

153N      Applications to Tribunal under subsection 135ZZN(3)....................................385

153P      References relating to declaration of collecting society...............................................386

153Q      References relating to revocation of declaration of collecting society...........................................387

153R      Review of collecting society's distribution arrangement..................................................387

**Subdivision GA—Applications and references relating to Part VD**      388

153RA      Application to the Tribunal to determine amount payable to owner of copyright in a broadcast................388

153S      Applications to the Tribunal under paragraph 135ZZZK(1)(b)—equitable remuneration..................................................389

153T      Applications to Tribunal under paragraph 135ZZZL(3)(b)—record system....................390

153U      References relating to declaration of collecting society...............................................390

153V      References relating to revocation of declaration of collecting society...........................................391

153W      Review of collecting society's distribution arrangement..................................................392

**Subdivision H—References and applications relating to licences and licence schemes**      393

154      Reference of proposed licence schemes to Tribunal ......................................................393

155      Reference of existing licence schemes to Tribunal ........394

156      Further reference of licence schemes to Tribunal ..........396

157      Application to Tribunal in relation to licences...............398

157A      Tribunal must have regard to ACCC guidelines on request ......................................................................401

157B      Tribunal may make ACCC party to reference or application ..................................................................402

158      Effect of licence scheme being continued in operation pending order of the Tribunal.........................402

159      Effect of order of Tribunal in relation to licences ..........403

**Subdivision I—General provisions**      406

160      Interim orders .................................................................406

*Copyright Act 1968*      *xix*

Compilation No. 64            Compilation date: 11/12/2024

| 161 | Reference of questions of law to Federal Court of Australia ......................................................... 406 |
| 162 | Agreements or awards not affected ............................... 408 |

**Division 4—Procedure and evidence**                                      409

| 163 | Proceedings to be in public except in special circumstances ............................................................. 409 |
| 163A | Application may be made to Tribunal by the agent of the copyright owner .................................... 409 |
| 164 | Procedure ...................................................................... 409 |
| 165 | Mistakes or errors in orders of the Tribunal .................. 410 |
| 166 | Regulations as to procedure ........................................... 410 |
| 167 | Power to take evidence on oath ..................................... 411 |
| 168 | Evidence in form of written statement ........................... 411 |
| 169 | Representation ............................................................... 411 |

**Division 4A—Alternative dispute resolution processes**              413

| 169A | Referral of proceeding for alternative dispute resolution process .......................................................... 413 |
| 169B | Directions by President or Deputy President ................. 414 |
| 169C | Agreement about the terms of a decision etc. ................ 414 |
| 169D | Evidence not admissible ................................................ 415 |
| 169E | Eligibility of person conducting alternative dispute resolution process to sit as a member of the Tribunal ........................................................................ 416 |
| 169F | Participation by telephone etc. ...................................... 416 |
| 169G | Engagement of persons to conduct alternative dispute resolution processes ........................................... 417 |

**Division 5—Miscellaneous**                                           418

| 170 | Registrar ....................................................................... 418 |
| 170A | Other staff of the Tribunal ............................................ 419 |
| 171 | Protecting persons connected with Tribunal proceedings ................................................................... 419 |
| 172 | Offences by witnesses ................................................... 420 |
| 173 | Offences relating to the Tribunal .................................. 421 |
| 174 | Costs of proceedings ..................................................... 423 |
| 175 | Proof of orders of Tribunal ........................................... 424 |

**Part VII—The Crown**                                                 425

**Division 1—Crown copyright**                                         425

| 176 | Crown copyright in original works made under direction of Crown ......................................................... 425 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

| 177 | Crown copyright in original works first published in Australia under direction of Crown ...........................425 |
| 178 | Crown copyright in recordings and films made under direction of Crown ...............................................425 |
| 179 | Provisions relating to ownership of copyright may be modified by agreement ................................426 |
| 180 | Duration of Crown copyright in original works, sound recordings and films.............................................426 |
| 182 | Application of Parts III and IV to copyright subsisting by virtue of this Part ......................................426 |
| 182A | Copyright in statutory instruments and judgments etc. ........................................................................427 |

**Division 2—Use of copyright material for the Crown**    428

| 182B | Definitions........................................................428 |
| 182C | Relevant collecting society...............................428 |
| 183 | Use of copyright material for the services of the Crown ..............................................................429 |
| 183A | Special arrangements for copying for services of government.......................................................431 |
| 183B | Payment and recovery of equitable remuneration payable for government copies.....................................432 |
| 183C | Powers of collecting society to carry out sampling........432 |
| 183D | Annual report and accounts of collecting society ..........433 |
| 183E | Alteration of rules of collecting society .........................434 |
| 183F | Applying to Tribunal for review of distribution arrangement ..................................................434 |

**Part VIII—Extension or restriction of operation of Act**    435

**Division 1—Foreign countries**    435

| 184 | Application of Act to countries other than Australia ..........................................................435 |
| 185 | Denial of copyright to citizens of countries not giving adequate protection to Australian works............437 |

**Division 2—International organizations**    439

| 186 | Application of Act to international organizations ..........439 |
| 187 | Original works made or first published by international organizations ...............................439 |
| 188 | Subject-matter, other than original works, made or first published by international organizations ...............440 |
| 188A | Duration of international organization copyright..........441 |

*Copyright Act 1968*                                                     *xxi*

Replaced Authorised Version registered 10/02/2025 C2024C00854

## Part IX—Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films 443

### Division 1—Preliminary 443

| | | |
|---|---|---|
| 189 | Definitions | 443 |
| 190 | Moral rights conferred on individuals | 448 |
| 191 | Director, producer and screenwriter of cinematograph film | 448 |
| 191A | Staging a performance | 449 |
| 191B | Conductor to be treated as a performer | 449 |
| 192 | Rights to be additional to other rights | 449 |

### Division 2—Right of attribution of authorship 450

| | | |
|---|---|---|
| 193 | Author's right of attribution of authorship | 450 |
| 194 | Acts giving rise to right of attribution of authorship | 450 |
| 195 | Nature of the identification of author | 451 |
| 195AA | Identification of author to be clear and reasonably prominent | 451 |
| 195AB | What is a reasonably prominent identification | 451 |

### Division 2A—Right of attribution of performership 452

| | | |
|---|---|---|
| 195ABA | Performer's right of attribution of performership | 452 |
| 195ABB | Acts giving rise to right of attribution of performership | 452 |
| 195ABC | Nature of the identification of performer | 452 |
| 195ABD | Identification of performer to be clear and reasonably prominent or audible | 453 |
| 195ABE | What is a reasonably prominent identification | 453 |

### Division 3—Right not to have authorship of a work falsely attributed 454

| | | |
|---|---|---|
| 195AC | Author's right not to have authorship falsely attributed | 454 |
| 195AD | Acts of false attribution of authorship of a literary, dramatic or musical work | 454 |
| 195AE | Acts of false attribution of authorship of artistic work | 455 |
| 195AF | Acts of false attribution of authorship of cinematograph film | 455 |
| 195AG | Acts of false attribution of authorship of altered literary, dramatic, musical or artistic work | 456 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

| 195AH | Act of false attribution of authorship of altered cinematograph film.........................................................456 |

**Division 3A—Right not to have performership falsely attributed**     458

| 195AHA | Performer's right not to have performership falsely attributed...........................................................................458 |
| 195AHB | Acts of false attribution of performership ......................458 |
| 195AHC | Act of false attribution of performership of altered recorded performance....................................................460 |

**Division 4—Right of integrity of authorship of a work**     462

| 195AI | Author's right of integrity of authorship .......................462 |
| 195AJ | Derogatory treatment of literary, dramatic or musical work ....................................................................462 |
| 195AK | Derogatory treatment of artistic work ............................462 |
| 195AL | Derogatory treatment of cinematograph film.................463 |

**Division 4A—Right of integrity of performership**     464

| 195ALA | Performer's right of integrity of performership .............464 |
| 195ALB | Derogatory treatment of performance .............................464 |

**Division 5—Duration and exercise of moral rights**     465

**Subdivision A—Duration and exercise of moral rights of authors**     465

| 195AM | Duration of author's moral rights...................................465 |
| 195AN | Exercise of author's moral rights ...................................465 |

**Subdivision B—Duration and exercise of moral rights of performers**     466

| 195ANA | Duration of performer's moral rights for recorded performances ..................................................................466 |
| 195ANB | Exercise of performer's moral rights..............................466 |

**Division 6—Infringement of moral rights**     468

**Subdivision A—Infringement of moral rights of authors**     468

| 195AO | Infringement of right of attribution of authorship ..........468 |
| 195AP | Infringement of right not to have authorship falsely attributed ...............................................................468 |
| 195AQ | Infringement of right of integrity of authorship .............468 |
| 195AR | No infringement of right of attribution of authorship if it was reasonable not to identify the author............................................................................469 |
| 195AS | No infringement of right of integrity of authorship if derogatory treatment or other action was reasonable ........................................................................471 |

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

| 195AT | Certain treatment of works not to constitute an infringement of the author's right of integrity of authorship ................................................................ 472 |
| 195AU | Infringement by importation for sale or other dealing ......................................................................... 476 |
| 195AV | Infringement by sale and other dealings ........................ 477 |
| 195AVA | Matters to be taken into account .................................... 477 |
| 195AVB | Communication by use of certain facilities ................... 477 |
| 195AW | Author's consent to act or omission—films or works in films ................................................................ 478 |
| 195AWA | Author's consent to act or omission—work that is not a film or included in a film ..................................... 479 |
| 195AWB | Consent invalidated by duress or false or misleading statements ...................................................... 480 |
| 195AX | Acts or omissions outside Australia .............................. 480 |

**Subdivision B—Infringement of moral rights of performers**          480

| 195AXA | Infringement of right of attribution of performership ................................................................. 480 |
| 195AXB | Infringement of right not to have performership falsely attributed .......................................................... 481 |
| 195AXC | Infringement of right of integrity of performership ...... 481 |
| 195AXD | No infringement of right of attribution of performership if it was reasonable not to identify the performer ................................................................ 482 |
| 195AXE | No infringement of right of integrity of performership if derogatory treatment or other action was reasonable .................................................... 482 |
| 195AXF | Infringement by importation for sale or other dealing ......................................................................... 484 |
| 195AXG | Infringement by sale and other dealings ........................ 484 |
| 195AXH | Matters to be taken into account .................................... 484 |
| 195AXI | Communication by use of certain facilities ................... 485 |
| 195AXJ | Performer's consent to act or omission ......................... 485 |
| 195AXK | Consent invalidated by duress or false or misleading statements ...................................................... 486 |
| 195AXL | Acts or omissions outside Australia .............................. 486 |

**Division 7—Remedies for infringements of moral rights**          487

**Subdivision A—Remedies for infringement of moral rights of authors**          487

| 195AY | Definition etc. ............................................................... 487 |
| 195AZ | Actions for infringement of author's moral rights ......... 487 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

| 195AZA | Remedies for infringements of author's moral rights | 487 |
| 195AZD | Presumption as to subsistence of copyright | 489 |
| 195AZE | Presumption as to subsistence of author's moral rights | 490 |
| 195AZF | Presumptions in relation to authorship of work | 490 |
| 195AZG | Other presumptions in relation to literary, dramatic, musical or artistic work | 490 |

**Subdivision B—Remedies for infringement of moral rights of performers** — 490

| 195AZGA | Definition etc. | 490 |
| 195AZGB | Actions for infringement of performer's moral rights | 491 |
| 195AZGC | Remedies for infringements of performer's moral rights | 491 |
| 195AZGD | Presumption as to subsistence of copyright | 492 |
| 195AZGE | Presumption as to subsistence of performer's moral rights | 493 |
| 195AZGF | Presumptions in relation to performership | 493 |

**Subdivision C—Miscellaneous** — 494

| 195AZGG | Saving of other rights and remedies | 494 |
| 195AZGH | Jurisdiction of courts | 494 |

**Division 8—Miscellaneous** — 495

**Subdivision A—Miscellaneous provisions about moral rights of authors** — 495

| 195AZH | Parts of works | 495 |
| 195AZI | Works of joint authorship | 495 |
| 195AZJ | Cinematograph films that have more than one principal director | 495 |
| 195AZK | Cinematograph films that have more than one principal producer | 496 |
| 195AZL | Cinematograph films that have more than one principal screenwriter | 496 |
| 195AZM | Application—right of attribution of authorship | 497 |
| 195AZN | Application—right not to have authorship falsely attributed | 498 |
| 195AZO | Application—right of integrity of authorship | 498 |

**Subdivision B—Miscellaneous provisions about moral rights of performers** — 499

| 195AZP | Parts of performances | 499 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

195AZQ      Performances that have more than one performer..........499
195AZR      Application ......................................................................500

## Part X—Miscellaneous                                                   501

### Division 1—Interpretation                                             501
195A        Interpretation ..................................................................501

### Division 2—Review                                                     502
195B        Review of certain decisions...........................................502

### Division 3—National Library of Australia                              504
195CA       Simplified outline ............................................................504
195CB       Copy of certain material to be delivered to the
            Library ..............................................................................504
195CC       Library may request a copy of material available
            online ................................................................................505
195CD       Delivering material to the Library....................................505
195CE       Meaning of *National Library material*...........................507
195CF       Meaning of *available online*...........................................507
195CG       Infringement notices.......................................................507
195CH       Relationship with State and Territory laws ...................508
195CI       Delegation .......................................................................508
195CJ       Legislative instruments...................................................508

### Division 4—Other matters                                             509
196         Assignments and licences in respect of copyright..........509
197         Prospective ownership of copyright ...............................509
198         Copyright to pass under will with unpublished
            work..................................................................................510
199         Reception of broadcasts..................................................510
200         Use of works and broadcasts for educational
            purposes...........................................................................511
200AAA      Proxy web caching by educational institutions .............513
200AB       Use of works and other subject-matter for certain
            purposes...........................................................................514
202         Groundless threats of legal proceedings in relation
            to copyright infringement ...............................................516
202A        Groundless threats of legal proceedings in relation
            to technological protection measures .............................517
203         Limitation on power of courts to grant relief in
            proceedings under this Act ............................................518
203A        Offence—failing to keep declarations relating to
            copying in library or archives.........................................518

*xxvi*                          *Copyright Act 1968*

Replaced Authorised Version registered 10/02/2025 C2024C00854

|        | 203E | Inspection of records and declarations retained in records of libraries and archives.....................................520 |
|        | 203F | False and misleading declarations.....................................522 |
|        | 203G | Offence—disposing of or destroying certain declarations.....................................522 |
|        | 203H | Notation of certain copies etc..........................................523 |

## Part XI—Transitional    525

### Division 1—Preliminary    525

|        | 204 | Interpretation ....................................................525 |
|        | 205 | References to making of works, recordings and films.....................................526 |
|        | 206 | References in other laws or instruments to copyright.....................................526 |
|        | 207 | Application .......................................................527 |
|        | 208 | Authorship of photographs ...........................................527 |
|        | 209 | Publication........................................................528 |

### Division 2—Original works    529

|        | 210 | Expired copyright not to revive.....................................529 |
|        | 211 | Original works in which copyright subsists ..................529 |
|        | 213 | Ownership of copyright..............................................530 |
|        | 214 | Infringement by importation, sale and other dealings.....................................531 |
|        | 215 | Recording of musical works...........................................531 |
|        | 216 | Publication of artistic works.........................................532 |
|        | 217 | Reconstruction of buildings.........................................532 |
|        | 218 | Industrial designs..................................................532 |
|        | 219 | Reproduction of work upon payment of royalties.........533 |

### Division 3—Subject-matter other than works    535

|        | 220 | Sound recordings.................................................535 |
|        | 221 | Cinematograph films ..............................................535 |
|        | 222 | Application of Act to dramatic works and photographs comprised in cinematograph films ...........535 |
|        | 223 | Television broadcasts and sound broadcasts..................536 |
|        | 224 | Published editions of works .........................................536 |
|        | 225 | Infringement by importation, sale and other dealings.....................................536 |

### Division 4—Miscellaneous    537

|        | 226 | Actions for infringement ..............................................537 |

Compilation No. 64    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

227         Infringing copies..............................................537
228         Actions where copyright subject to exclusive
            licence...........................................................537
229         Offences and summary proceedings.............................537
230         Limitation of actions .....................................538
231         Restriction of importation of printed copies of
            works ............................................................538
232         References and applications to Tribunal in relation
            to licence schemes ..........................................538
235         Crown copyright in films .................................539
236         Works made or published by international
            organizations ................................................539
237         Subject-matter, other than original works, made or
            published by international organizations...................539
239         Assignments and licences....................................539
240         Bequests..........................................................541
242         Groundless threats of legal proceedings.....................542

**Division 5—Works made before 1 July, 1912**                543
243         Interpretation ................................................543
244         Application ....................................................543
245         Rights conferred by Copyright Act, 1911 ...................543
246         Performing rights.............................................543
247         Contributions to periodicals .............................544
248         Assignments and licences....................................544

**Part XIA—Performers' protection**                          546
**Division 1—Preliminary**                                   546
248A        Interpretation ................................................546
248B        Educational purposes.........................................552
248C        Exempt recordings cease to be exempt recordings
            in certain circumstances ...................................552
248CA       Protection period ............................................553
248D        Private and domestic use .................................554
248F        Application ....................................................554

**Division 2—Actions by performers**                         556
248G        What constitutes unauthorised use .......................556
248H        Copying sound recordings for broadcasting................558
248J        Actions for unauthorised use ............................558
248K        Exercise of jurisdiction....................................560

Replaced Authorised Version registered 10/02/2025 C2024C00854

| | | |
|---|---|---|
| 248L | Appeals ........................................................................ | 560 |
| 248M | Jurisdiction of Federal Court .......................................... | 560 |
| 248MA | Jurisdiction of Federal Circuit and Family Court of Australia (Division 2) .................................................... | 560 |
| 248N | Right to bring an action not assignable .......................... | 560 |

**Division 3—Offences**      561

**Subdivision A—General offences**      561

| | | |
|---|---|---|
| 248P | Scope of this Subdivision .............................................. | 561 |
| 248PA | Unauthorised direct recording during protection period ............................................................................ | 561 |
| 248PB | Unauthorised indirect recording during protection period ............................................................................ | 562 |
| 248PC | Unauthorised communication to public during 20-year protection period ................................................ | 563 |
| 248PD | Playing unauthorised recording publicly during 20-year protection period ................................................ | 565 |
| 248PE | Possessing equipment to make or copy unauthorised recording .................................................... | 566 |
| 248PF | Copying unauthorised recording ..................................... | 567 |
| 248PG | Unauthorised copying of exempt recording .................... | 569 |
| 248PH | Unauthorised copying of authorised sound recording ........................................................................ | 570 |
| 248PI | Selling etc. unauthorised recording ................................ | 572 |
| 248PJ | Distributing unauthorised recording ............................... | 573 |
| 248PK | Commercial possession or import of unauthorised recording ........................................................................ | 575 |
| 248PL | Exhibiting unauthorised recording in public by way of trade ................................................................... | 577 |
| 248PM | Importing unauthorised recording for exhibition by way of trade ................................................................... | 578 |

**Subdivision B—Acts relating to sound recordings of performances given before 1 July 1995**      580

| | | |
|---|---|---|
| 248QA | Scope of this Subdivision .............................................. | 580 |
| 248QB | Possessing equipment for copying unauthorised sound recording ............................................................. | 580 |
| 248QC | Copying unauthorised sound recording .......................... | 582 |
| 248QD | Selling etc. unauthorised sound recording ..................... | 583 |
| 248QE | Distributing unauthorised sound recording .................... | 584 |
| 248QF | Commercial possession or import of unauthorised sound recording ............................................................. | 586 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

248QG        Exhibiting unauthorised sound recording in public
             by way of trade ................................................................588
248QH        Importing unauthorised sound recording for
             exhibition by way of trade...........................................589

**Subdivision C—Prosecution and infringement notices**        591
248R         Courts in which offences may be prosecuted.................591
248S         Protection against multiple proceedings for same
             act ..................................................................................591
248SA        Infringement notices......................................................591

**Subdivision D—Destruction or delivery up of unauthorised
             recordings**        592
248T         Destruction or delivery up of unauthorised
             recordings ......................................................................592

**Division 4—Extension of protection to foreign countries**        593
248U         Application to foreign countries.....................................593
248V         Denial of protection to citizens of countries not
             giving adequate protection to Australian
             performances ..................................................................594

**Part XII—Regulations**        596
249          Regulations.....................................................................596

## The Schedule        599

## Endnotes        600

**Endnote 1—About the endnotes**        600

**Endnote 2—Abbreviation key**        602

**Endnote 3—Legislation history**        603

**Endnote 4—Amendment history**        617

Replaced Authorised Version registered 10/02/2025 C2024C00854

# An Act relating to copyright and the protection of certain performances, and for other purposes

## Part I—Preliminary

### 1  Short title

This Act may be cited as the *Copyright Act 1968*.

### 2  Commencement

This Act shall come into operation on a date to be fixed by Proclamation.

### 4  Extension to external Territories

This Act extends to every external Territory.

### 5  Exclusion of Imperial Copyright Act, 1911

(1) This Act operates to the exclusion of the Copyright Act, 1911.

(2) For the purposes of section 8 of the *Acts Interpretation Act 1901-1966*, the Copyright Act, 1911 shall be deemed to be an Act passed by the Parliament of the Commonwealth and to be repealed by this Act, and the enactment of Part XI shall not be taken to affect the operation of section 8 of the *Acts Interpretation Act 1901-1966* as it operates by virtue of this subsection in relation to matters to which that Part does not apply.

### 6  Repeal of Copyright Acts

The following Acts are repealed:

*Copyright Act 1912*;
*Copyright Act 1933*;

Replaced Authorised Version registered 10/02/2025 C2024C00854

*Copyright Act 1935*;
*Copyright Act 1963*.

## 7  Act to bind the Crown

Subject to Part VII, this Act binds the Crown but nothing in this Act renders the Crown liable to be prosecuted for an offence.

## 8  Copyright not to subsist except by virtue of this Act

Subject to section 8A, copyright does not subsist otherwise than by virtue of this Act.

## 8A  Prerogative rights of the Crown in the nature of copyright

(1) Subject to subsection (2), this Act does not affect any prerogative right or privilege of the Crown.

(2) Where a right or privilege of the Crown by way of copyright subsists in a work or published edition of a work, a person does not infringe that right or privilege by doing, or authorizing the doing of, an act in relation to the work or edition without the licence of the Crown if, assuming that that right or privilege of the Crown did not subsist in the work or edition, but copyright subsisted under this Act in the work or edition and was owned by a person other than the Crown, the person would not infringe the copyright of that owner in the work or edition by doing, or by authorizing the doing of, that act without the licence of the owner.

(3) Nothing in subsection (2) shall be taken to limit the duration of the right or privilege of the Crown by way of copyright in a work or published edition of a work.

## 9  Operation of other laws

(1) This Act does not affect the right of, or of a person deriving title directly or indirectly from, the Commonwealth or a State to sell, use or otherwise deal with articles that have been, or are, forfeited under a law of the Commonwealth or of the State.

Replaced Authorised Version registered 10/02/2025 C2024C00854

(3) This Act does not affect the operation of the law relating to breaches of trust or confidence.

## 9A  Application of the *Criminal Code*

Chapter 2 of the *Criminal Code* applies to all offences against this Act.

Note:    Chapter 2 of the *Criminal Code* sets out the general principles of criminal responsibility.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Part II—Interpretation

## 10  Interpretation

(1)  In this Act, unless the contrary intention appears:

***access control technological protection measure*** means a device, product, technology or component (including a computer program) that:

    (a)  is used in Australia or a qualifying country:

        (i)  by, with the permission of, or on behalf of, the owner or the exclusive licensee of the copyright in a work or other subject-matter; and

        (ii)  in connection with the exercise of the copyright; and

    (b)  in the normal course of its operation, controls access to the work or other subject-matter;

but does not include such a device, product, technology or component to the extent that it:

    (c)  if the work or other subject-matter is a cinematograph film or computer program (including a computer game)—controls geographic market segmentation by preventing the playback in Australia of a non-infringing copy of the work or other subject-matter acquired outside Australia; or

    (d)  if the work is a computer program that is embodied in a machine or device—restricts the use of goods (other than the work) or services in relation to the machine or device.

For the purposes of this definition, ***computer program*** has the same meaning as in section 47AB.

***accessory***, in relation to an article, means one or more of the following:

    (a)  a label affixed to, displayed on, incorporated into the surface of, or accompanying, the article;

    (b)  the packaging or container in which the article is packaged or contained;

*Copyright Act 1968*

Compilation No. 64

Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

(c) a label affixed to, displayed on, incorporated into the surface of, or accompanying, the packaging or container in which the article is packaged or contained;

(d) a written instruction, warranty or other information provided with the article;

(e) a record embodying an instructional sound recording, or a copy of an instructional cinematograph film, provided with the article;

but does not include any label, packaging or container on which the olympic symbol (within the meaning of the *Olympic Insignia Protection Act 1987*) is reproduced.

Note:       See also section 10AD for an expanded meaning of **accessory** in relation to certain imported articles.

*adaptation* means:

(a) in relation to a literary work in a non-dramatic form a version of the work (whether in its original language or in a different language) in a dramatic form;

(b) in relation to a literary work in a dramatic form a version of the work (whether in its original language or in a different language) in a non-dramatic form;

(ba) in relation to a literary work being a computer program—a version of the work (whether or not in the language, code or notation in which the work was originally expressed) not being a reproduction of the work;

(c) in relation to a literary work (whether in a non-dramatic form or in a dramatic form):

(i) a translation of the work; or

(ii) a version of the work in which a story or action is conveyed solely or principally by means of pictures; and

(d) in relation to a musical work—an arrangement or transcription of the work.

*alternative dispute resolution processes* means procedures and services for the resolution of disputes, and includes:

(a) conferencing; and

(b) mediation; and

Compilation No. 64                          Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 10

(c) neutral evaluation; and

(d) case appraisal; and

(e) conciliation; and

(f) procedures or services specified in the regulations;

but does not include:

(g) arbitration; or

(h) court procedures or services.

Paragraphs (b) to (f) of this definition do not limit paragraph (a) of this definition.

*approved label* means a label approved under:

(a) Part 2 of the Agvet Code of a State or of the Northern Territory; or

(b) Part 2 of the Agvet Code of the participating Territories within the meaning of the *Agricultural and Veterinary Chemicals Act 1994*.

*archives* means:

(a) archival material in the custody of:

(i) the National Archives of Australia; or

(ii) the Archives Office of New South Wales established by the *Archives Act* 1960 of the State of New South Wales; or

(iii) the Public Record Office established by the *Public Records Ac*t 1973 of the State of Victoria; or

(iv) the Archives Office of Tasmania established by the *Archives Act* 1965 of the State of Tasmania; or

(aa) archival material in the custody of a person (other than the National Archives of Australia) in accordance with an arrangement referred to in section 64 of the *Archives Act 1983*; or

(b) a collection of documents or other material to which this paragraph applies by virtue of subsection (4).

*artistic work* means:

Replaced Authorised Version registered 10/02/2025 C2024C00854

(a) a painting, sculpture, drawing, engraving or photograph, whether the work is of artistic quality or not;

(b) a building or a model of a building, whether the building or model is of artistic quality or not; or

(c) a work of artistic craftsmanship whether or not mentioned in paragraph (a) or (b);

but does not include a circuit layout within the meaning of the *Circuit Layouts Act 1989*.

***Australia*** includes the external Territories.

***author***, in relation to a photograph, means the person who took the photograph.

***authorized officer***, in relation to a library or archives, means the officer in charge of that library or archives or a person authorized by that officer to act on his or her behalf.

***available online***, in relation to National Library material, has the meaning given by section 195CF.

***body administering***:

(a) an institution—means:

(i) if the institution is a body corporate—the institution; or

(ii) otherwise—the body or person (including the Crown) having ultimate responsibility for administering the institution; or

(b) a library or archives—means:

(i) if the library or archives is an archives covered by paragraph (aa) of the definition of ***archives***—the person having the custody of the archives in accordance with the relevant arrangement mentioned in that paragraph; or

(ii) otherwise—the body (whether incorporated or not) or person (including the Crown) having ultimate responsibility for administering the library or archives.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 10

***broadcast*** means a communication to the public delivered by a broadcasting service within the meaning of the *Broadcasting Services Act 1992*. For the purposes of the application of this definition to a service provided under a satellite BSA licence, assume that there is no conditional access system that relates to the service.

Note:    A broadcasting service does not include the following:
(a)   a service (including a teletext service) that provides only data or only text (with or without associated images); or
(b)   a service that makes programs available on demand on a point-to-point basis, including a dial-up service.

***broadcasts collecting society*** means the body declared to be a collecting society by a declaration that is in force under section 113V and to which subparagraph 113V(4)(a)(ii) applies.

***building*** includes a structure of any kind.

***carriage service provider*** has the same meaning as in the *Telecommunications Act 1997*.

***carrier*** has the same meaning as in the *Telecommunications Act 1997*.

***chemical product*** has the same meaning as in the Schedule to the *Agricultural and Veterinary Chemicals Code Act 1994*.

***cinematograph film*** means the aggregate of the visual images embodied in an article or thing so as to be capable by the use of that article or thing:
(a)  of being shown as a moving picture; or
(b)  of being embodied in another article or thing by the use of which it can be so shown;
and includes the aggregate of the sounds embodied in a sound-track associated with such visual images.

***circumvention device*** for a technological protection measure means a device, component or product (including a computer program) that:

Replaced Authorised Version registered 10/02/2025 C2024C00854

(a) is promoted, advertised or marketed as having the purpose or use of circumventing the technological protection measure; or

(b) has only a limited commercially significant purpose or use, or no such purpose or use, other than the circumvention of the technological protection measure; or

(c) is primarily or solely designed or produced to enable or facilitate the circumvention of the technological protection measure.

For the purposes of this definition, *computer program* has the same meaning as in section 47AB.

*circumvention service* for a technological protection measure means a service that:

(a) is promoted, advertised or marketed as having the purpose or use of circumventing the technological protection measure; or

(b) has only a limited commercially significant purpose or use, or no such purpose or use, other than the circumvention of the technological protection measure; or

(c) is primarily or solely designed or produced to enable or facilitate the circumvention of the technological protection measure.

*collecting society* means:

(a) a works collecting society; or

(b) the broadcasts collecting society; or

(c) a body that a declaration in force under section 135ZZT declares to be a collecting society for the purposes of Part VC; or

(d)  a body that a declaration in force under section 135ZZZO declares to be a collecting society for the purposes of Part VD; or

(e) a company that a declaration in force under section 153F declares to be a collecting society for the purposes of Division 2 of Part VII.

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

---

Section 10

---

***communicate*** means make available online or electronically transmit (whether over a path, or a combination of paths, provided by a material substance or otherwise) a work or other subject-matter, including a performance or live performance within the meaning of this Act.

***computer program*** means a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result.

***construction*** includes erection, and ***reconstruction*** has a corresponding meaning.

***controls access***: a device, product, technology or component (including a computer program) ***controls access*** to a work or other subject-matter if it requires the application of information or a process, with the permission of the owner or exclusive licensee of the copyright in the work or other subject-matter, to gain access to the work or other subject-matter.

***copy***:

  (a) of a work—means a reproduction; or

  (b) of a sound recording—means a record embodying the sound recording, or a substantial part of the sound recording, derived directly or indirectly from a record produced on the making of the sound recording; or

     Note:    See also subsection (6).

  (c) of a cinematograph film—means any article or thing in which the visual images or sounds comprising the film are embodied; or

     Note:    See also subsection (5).

  (d) of a broadcast—includes:

    (i) a record embodying a sound recording of the whole or a part of the broadcast; or

    (ii) a copy of a cinematograph film of the whole or a part of the broadcast.

***copyright material*** means anything in which copyright subsists.

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

Note:    This definition does not apply in Subdivision E of Division 3 of Part VI or Division 2 of Part VII (use of copyright material for the Crown): see sections 153DF and 182B.

*delivery period* has the meaning given by subsection 195CD(2).

*device* includes a plate.

*dramatic work* includes:

   (a)  a choreographic show or other dumb show; and

   (b)  a scenario or script for a cinematograph film;

but does not include a cinematograph film as distinct from the scenario or script for a cinematograph film.

*drawing* includes a diagram, map, chart or plan.

*educational institution* means:

 (aa)  an institution at which education is provided at pre-school or kindergarten standard; or

   (a)  a school or similar institution at which full-time primary education or full-time secondary education is provided or both full-time primary education and full-time secondary education are provided; or

   (b)  a university, a college of advanced education or a technical and further education institution; or

   (c)  an institution that conducts courses of primary, secondary or tertiary education by correspondence or on an external study basis; or

   (d)  a school of nursing; or

   (e)  an undertaking within a hospital, if the undertaking conducts courses of study or training in the provision of:

      (i)  medical services; or

     (ii)  services incidental to the provision of medical services; or

   (f)  a teacher education centre; or

   (g)  an institution with the principal function of providing courses of study or training for any of the following purposes:

      (i)  general education;

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part II**  Interpretation

Section 10

     (ii)  the preparation of people for a particular occupation or profession;

     (iii)  the continuing education of people engaged in a particular occupation or profession;

     (iv)  the teaching of English to people whose first language is not English; or

  (h)  an undertaking within a body administering an educational institution, if:

     (i)  the educational institution is of a kind referred to in a preceding paragraph of this definition; and

     (ii)  the principal function, or one of the principal functions, of the undertaking is the provision of teacher training to people engaged as instructors in educational institutions of a kind mentioned in a preceding paragraph of this definition, or of 2 or more such kinds; or

  (i)  an institution, or an undertaking within a body administering an educational institution of a kind referred to in a preceding paragraph of this definition, if:

     (i)  the principal function, or one of the principal functions, of the institution, or undertaking, is the providing of material to educational institutions of a kind referred to in a preceding paragraph of this definition, or 2 or more such kinds; and

     (ii)  that activity is undertaken for the purpose of helping those institutions in their teaching purposes.

***electronic literary or music item*** means:

  (a)  a book in electronic form; or

  (b)  a periodical publication in electronic form; or

  (c)  sheet music in electronic form;

regardless of whether there is a printed form.

***electronic rights management information***, in relation to a work or other subject-matter, means information that:

  (a)  is electronic; and

  (b)  either:

Replaced Authorised Version registered 10/02/2025 C2024C00854

<ol type="i" start="1">
<li>is or was attached to, or is or was embodied in, a copy of the work or subject-matter; or</li>
<li>appears or appeared in connection with a communication, or the making available, of the work or subject-matter; and</li>
</ol>

(c) either:

<ol type="i" start="1">
<li>identifies the work or subject-matter, and its author or copyright owner (including such information represented as numbers or codes); or</li>
<li>identifies or indicates some or all of the terms and conditions on which the work or subject-matter may be used, or indicates that the use of the work or subject-matter is subject to terms or conditions (including such information represented as numbers or codes).</li>
</ol>

***eligible rights holder*** has the meaning given by subsection 113V(9).

***engraving*** includes an etching, lithograph, product of photogravure, woodcut, print or similar work, not being a photograph.

***exclusive licence*** means a licence in writing, signed by or on behalf of the owner or prospective owner of copyright, authorizing the licensee, to the exclusion of all other persons, to do an act that, by virtue of this Act, the owner of the copyright would, but for the licence, have the exclusive right to do, and ***exclusive licensee*** has a corresponding meaning.

***free-to-air broadcast*** means:

(a) a broadcast delivered by a national broadcasting service, commercial broadcasting service or community broadcasting service within the meaning of the *Broadcasting Services Act 1992*; or

(b) a broadcast delivered by a broadcasting service within the meaning of the *Broadcasting Services Act 1992* that does no

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 10

more than transmit program material supplied by National Indigenous TV Limited.

*future copyright* means copyright to come into existence at a future time or upon the happening of a future event.

*generally known*: without limiting when the identity of the author of a work is *generally known*, the identity is *generally known* if it can be ascertained by reasonable enquiry.

*government* has the meaning given by subsection 182B(1).

*government copy* has the meaning given by subsection 182B(1).

*infringing copy* means:

  (a) in relation to a work—a reproduction of the work, or of an adaptation of the work, not being a copy of a cinematograph film of the work or adaptation;

  (b) in relation to a sound recording—a copy of the sound recording not being a sound-track associated with visual images forming part of a cinematograph film;

  (c) in relation to a cinematograph film—a copy of the film;

  (d) in relation to a television broadcast or a sound broadcast—a copy of a cinematograph film of the broadcast or a record embodying a sound recording of the broadcast; and

  (e) in relation to a published edition of a work—a facsimile copy of the edition;

being an article (which may be an electronic reproduction or copy of the work, recording, film, broadcast or edition) the making of which constituted an infringement of the copyright in the work, recording, film, broadcast or edition or, in the case of an article imported without the licence of the owner of the copyright, would have constituted an infringement of that copyright if the article had been made in Australia by the importer, but does not include:

  (f) a non-infringing book whose importation does not constitute an infringement of that copyright; or

  (g) a non-infringing accessory whose importation does not constitute an infringement of that copyright; or

Replaced Authorised Version registered 10/02/2025 C2024C00854

 (h) a non-infringing copy of a sound recording whose importation does not infringe that copyright; or

 (i) a non-infringing copy of a computer program whose importation does not infringe that copyright; or

 (j) a non-infringing copy of an electronic literary or music item whose importation does not infringe that copyright.

*institution* includes an educational institution.

*international agreement* means:

 (a) a convention to which Australia is a party; or

 (b) an agreement or arrangement between Australia and a foreign country, including an agreement, arrangement or understanding between a Minister and an official or authority of a foreign country.

*international organization to which this Act applies* means an organization that is declared by regulations made for the purposes of section 186 to be an international organization to which this Act applies, and includes:

 (a) an organ of, or office within, an organization that is so declared; and

 (b) a commission, council or other body established by such an organization or organ.

*judicial proceeding* means a proceeding before a court, tribunal or person having by law power to hear, receive and examine evidence on oath.

*key cultural institution* has the meaning given by section 113L.

*law of the Commonwealth* includes a law of a Territory.

*licensed copying or communicating* has the meaning given by subsection 113Q(2).

*literary work* includes:

 (a) a table, or compilation, expressed in words, figures or symbols; and

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 10

(b) a computer program or compilation of computer programs.

*made public* has a meaning affected by section 29A.

*manuscript*, in relation to a literary, dramatic or musical work, means the document embodying the work as initially prepared by the author, whether the document is in hardcopy form, electronic form or any other form.

*material form*, in relation to a work or an adaptation of a work, includes any form (whether visible or not) of storage of the work or adaptation, or a substantial part of the work or adaptation, (whether or not the work or adaptation, or a substantial part of the work or adaptation, can be reproduced).

*National Library material* has the meaning given by section 195CE.

*National Library Minister* means the Minister administering the *National Library Act 1960*.

*non-infringing accessory* means an accessory made in:
   (a) a country that is a party to the International Convention for the Protection of Literary and Artistic Works concluded at Berne on 9 September 1886 as revised from time to time; or
   (b) a country that is a member of the World Trade Organization and has a law that provides consistently with the TRIPS Agreement for:
        (i) the ownership and duration of copyright or a related right in works, sound recordings and cinematograph films; and
        (ii) the owner of the copyright or related right to have rights relating to the reproduction of the work, sound recording or cinematograph film;
where:
   (c) the making of any copy of a work, or any reproduction of a published edition of a work, that is, or is on, or is embodied in, the accessory; or

Replaced Authorised Version registered 10/02/2025 C2024C00854

(d)  the making of any record embodying a sound recording, or
any copy of a cinematograph film, that is the accessory;

was authorised by the owner of the copyright in that country in the
work, edition, recording or film, as the case may be.

***non-infringing book*** means a book made (otherwise than under a
compulsory licence) in a country specified in regulations made for
the purposes of subsection 184(1), being a book whose making did
not constitute an infringement of any copyright subsisting in a
work, or in a published edition of a work, under a law of that
country.

***non-infringing copy***:

(a)  in relation to a sound recording, has the meaning given by
section 10AA; and

(b)  in relation to a computer program, has the meaning given by
section 10AB; and

(c)  in relation to an electronic literary or music item, has the
meaning given by section 10AC.

***officer in charge*** means:

(a)  in relation to archives—the archivist or other person having,
for the time being, immediate care and control of the
collection comprising the archives; and

(c)  in relation to a library—the librarian or other person having,
for the time being, immediate care and control of the
collection comprising the library.

***organisation assisting persons with a disability*** means:

(a)  an educational institution; or

(b)  a not-for-profit organisation with a principal function of
providing assistance to persons with a disability (whether or
not the organisation has other principal functions).

***original form***: a library or archives holds copyright material in
***original form*** if the material is held in the collection comprising
the library or archives in a form that embodies the material as
initially prepared by the author or maker of the material.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 10

Example:    A manuscript of a literary, dramatic or musical work.

Note:    This definition does not apply in Division 6 of Part III: see subsection 54(6).

***Parliament***: see section 12.

***person with a disability*** means a person with a disability that causes the person difficulty in reading, viewing, hearing or comprehending copyright material in a particular form.

***photograph*** means a product of photography or of a process similar to photography, other than an article or thing in which visual images forming part of a cinematograph film have been embodied, and includes a product of xerography, and ***photographic*** has a corresponding meaning.

***plate*** includes a stereotype, stone, block, mould, matrix, transfer, negative or other similar appliance.

***private and domestic use*** means private and domestic use on or off domestic premises.

***prospective owner*** means:

   (a) in relation to a future copyright that is not the subject of an agreement of a kind referred to in subsection 197(1)—the person who will be the owner of the copyright on its coming into existence; or

   (b) in relation to a future copyright that is the subject of such an agreement—the person in whom, by virtue of that subsection, the copyright will vest on its coming into existence.

***qualifying country*** means:

   (a) a country that is a party to the International Convention for the Protection of Literary and Artistic Works concluded at Berne on 9 September 1886 as revised from time to time; or

   (b) a country that is a member of the World Trade Organization and has a law that provides consistently with the TRIPS Agreement for:

Replaced Authorised Version registered 10/02/2025 C2024C00854

(i) the ownership and duration of copyright or a related right in works, sound recordings and cinematograph films; and

(ii) the owner of the copyright or related right to have rights relating to the reproduction of the work, sound recording or cinematograph film.

*reception equipment* means equipment whose operation, either alone or together with other equipment, enables people to hear or see a work or other subject-matter that is communicated.

*record* includes a disc, tape, paper, electronic file or other device in which sounds are embodied.

*record embodying* a sound recording means:

(a) a record produced upon the making of the sound recording; or

(b) a record that:

(i) embodies the sound recording; and

(ii) is derived directly or indirectly from a record produced upon the making of the sound recording.

*registered charity* means an entity that is registered under the *Australian Charities and Not-for-profits Commission Act 2012* as the type of entity mentioned in column 1 of item 1 of the table in subsection 25-5(5) of that Act.

*Registrar* means the Registrar of the Tribunal provided for by section 170.

*remuneration notice* means:

(a) a notice mentioned in section 113Q; or

(b) a notice mentioned in section 135ZZL; or

(c) a notice mentioned in section 135ZZZJ.

*retransmission*, in relation to a broadcast, means a retransmission of the broadcast, where:

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 10

___

(a) the content of the broadcast is unaltered (even if the technique used to achieve retransmission is different to the technique used to achieve the original transmission); and

(b) either:

(i) in any case—the retransmission is simultaneous with the original transmission; or

(ii) if the retransmission is in an area that has, wholly or partly, different local time to the area of the original transmission—the retransmission is delayed until no later than the equivalent local time.

***rules***, of a collecting society, means the constitution of the society.

***satellite BSA licence*** means a commercial television broadcasting licence allocated under section 38C of the *Broadcasting Services Act 1992*.

***satellite BSA licensee*** means the licensee of a satellite BSA licence.

***sculpture*** includes a cast or model made for purposes of sculpture.

***simulcasting*** means simultaneously broadcasting a broadcasting service in both analog and digital form in accordance with the requirements of the *Broadcasting Services Act 1992* or of any prescribed legislative provisions relating to digital broadcasting.

***sound broadcast*** means sounds broadcast otherwise than as part of a television broadcast.

***sound recording*** means the aggregate of the sounds embodied in a record.

***sound-track***, in relation to visual images forming part of a cinematograph film, means:

(a) the part of any article or thing, being an article or thing in which those visual images are embodied, in which sounds are embodied; or

(b) a disc, tape or other device in which sounds are embodied and which is made available by the maker of the film for use

Replaced Authorised Version registered 10/02/2025 C2024C00854

in conjunction with the article or thing in which those visual images are embodied.

*sufficient acknowledgement*, in relation to a work, means an acknowledgement identifying the work by its title or other description and, unless the work is anonymous or pseudonymous or the author has previously agreed or directed that an acknowledgement of his or her name is not to be made, also identifying the author.

*technological protection measure* means:

(a) an access control technological protection measure; or

(b) a device, product, technology or component (including a computer program) that:

   (i) is used in Australia or a qualifying country by, with the permission of, or on behalf of, the owner or the exclusive licensee of the copyright in a work or other subject-matter; and

   (ii) in the normal course of its operation, prevents, inhibits or restricts the doing of an act comprised in the copyright;

but does not include such a device, product, technology or component to the extent that it:

   (iii) if the work or other subject-matter is a cinematograph film or computer program (including a computer game)—controls geographic market segmentation by preventing the playback in Australia of a non-infringing copy of the work or other subject-matter acquired outside Australia; or

   (iv) if the work is a computer program that is embodied in a machine or device—restricts the use of goods (other than the work) or services in relation to the machine or device.

For the purposes of this definition, *computer program* has the same meaning as in section 47AB.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 10

*television broadcast* means visual images broadcast by way of television, together with any sounds broadcast for reception along with those images.

*the Australian Broadcasting Commission* means the Australian Broadcasting Commission that was established under the *Broadcasting and Television Act 1942*.

*the Australian Broadcasting Corporation* means the Australian Broadcasting Corporation established under the *Australian Broadcasting Corporation Act 1983*.

*the Commonwealth* includes the Administration of a Territory.

*the Copyright Act, 1911* means the Imperial Act known as the Copyright Act, 1911.

*the Copyright Tribunal* or *the Tribunal* means the Copyright Tribunal of Australia provided for by Part VI, and includes a member of that Tribunal exercising powers of that Tribunal.

*the Crown* includes the Crown in right of a State and the Crown in right of the Australian Capital Territory and the Northern Territory and also includes the Administration of a Territory other than the Australian Capital Territory or the Northern Territory.

*the National Library* means the National Library established under the *National Library Act 1960-1967*.

*the Special Broadcasting Service* means the Special Broadcasting Service that was referred to in section 5 of the *Special Broadcasting Service Act 1991*.

*the Special Broadcasting Service Corporation* means the body corporate preserved and continued in existence as the Special Broadcasting Service Corporation under section 5 of the *Special Broadcasting Service Act 1991*.

*to the public* means to the public within or outside Australia.

Replaced Authorised Version registered 10/02/2025 C2024C00854

***TRIPS Agreement*** means the Agreement on Trade-Related Aspects of Intellectual Property Rights set out in Annex 1C to the Marrakesh Agreement establishing the World Trade Organization, done at Marrakesh on 15 April 1994.

Note:    The English text of the Marrakesh Agreement establishing the World Trade Organization is set out in Australian Treaty Series 1995 No. 8.

***will*** includes a codicil.

***work*** means a literary, dramatic, musical or artistic work.

***work of joint authorship*** means a work that has been produced by the collaboration of two or more authors and in which the contribution of each author is not separate from the contribution of the other author or the contributions of the other authors.

***works collecting society*** means a body declared to be a collecting society by a declaration that is in force under section 113V and to which subparagraph 113V(4)(a)(i) applies.

***writing*** means a mode of representing or reproducing words, figures or symbols in a visible form, and ***written*** has a corresponding meaning.

(1A) Without limiting the meaning of the expression ***educational purposes*** in this Act, a copy of the whole or a part of a work or other subject-matter shall be taken, for the purposes of the provision in which the expression appears, to have been made, used or retained, as the case may be, for the educational purposes of an educational institution if:

   (a)  it is made or retained for use, or is used, in connection with a particular course of instruction provided by the institution; or

   (b)  it is made or retained for inclusion, or is included, in the collection of a library of the institution.

(2) Without limiting the meaning of the expression ***reasonable portion*** in this Act, where a literary, dramatic or musical work (other than a computer program) is contained in a published edition of that work, being an edition of not less than 10 pages, a copy of part of that work, as it appears in that edition, shall be taken to contain

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 10

only a reasonable portion of that work if the pages that are copied in the edition:

    (a) do not exceed, in the aggregate, 10% of the number of pages in that edition; or

    (b) in a case where the work is divided into chapters exceed, in the aggregate, 10% of the number of pages in that edition but contain only the whole or part of a single chapter of the work.

(2A) Without limiting the meaning of the expression ***reasonable portion*** in this Act, if a person makes a reproduction of a part of:

    (a) a published literary work (other than a computer program or an electronic compilation, such as a database); or

    (b) a published dramatic work;

being a work that is in electronic form, the reproduction is taken to contain only a reasonable portion of the work if:

    (c) the number of words copied does not exceed, in the aggregate, 10% of the number of words in the work; or

    (d) if the work is divided into chapters—the number of words copied exceeds, in the aggregate, 10% of the number of words in the work, but the reproduction contains only the whole or part of a single chapter of the work.

(2B) If a published literary or dramatic work is contained in a published edition of the work and is separately available in electronic form, a reproduction of a part of the work is taken to contain only a reasonable portion of the work if it is taken to do so either under subsection (2) or (2A), whether or not it does so under both of them.

(2C) If:

    (a) a person makes a reproduction of a part of a published literary or dramatic work; and

    (b) the reproduction is taken to contain only a reasonable portion of the work under subsection (2) or (2A);

Replaced Authorised Version registered 10/02/2025 C2024C00854

subsection (2) or (2A) does not apply in relation to any subsequent reproduction made by the person of any other part of the same work.

(3) In this Act, unless the contrary intention appears:

    (e) a reference to the Crown in right of a State shall be read as including a reference to the Crown in right of the Australian Capital Territory and the Northern Territory; and

    (g) a reference to the making, by reprographic reproduction, of a copy of a document, or of the whole or a part of a work, shall be read as a reference to the making of a facsimile copy of the document or the whole or that part of the work, being a facsimile copy of any size or form; and

    (j) a reference to a microform copy of the whole or a part of a work shall be read as a reference to a copy of the whole or a part of the work produced by miniaturizing the graphic symbols of which the work is composed; and

    (k) a reference to a periodical publication shall be read as a reference to an issue of a periodical publication and a reference to articles contained in the same periodical publication shall be read as a reference to articles contained in the same issue of that periodical publication; and

    (ma) a reference to a relevant declaration, in relation to the making, in reliance on section 49, of a copy of the whole or a part of a work, shall be read as a reference to:

        (i) in a case where the copy is made in reliance on subsection 49(2)—a declaration of the kind referred to in subsection 49(1) that is furnished in relation to the making of the copy; or

        (ii) in a case where the copy is made in reliance on subsection 49(2C)—a declaration of the kind referred to in paragraph 49(2C)(b) that is made in relation to the making of the copy; or

        (iii) in any case—a declaration of the kind referred to in subsection 49(5) that is made in relation to the making of the copy; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 10

(n) a reference to a State shall be read as including a reference to the Australian Capital Territory and the Northern Territory and a reference to a Territory shall be read as not including a reference to the Australian Capital Territory or the Northern Territory.

(3A) For the purposes of this Act, something held in, or forming part of, the collection of any archives covered by paragraph (aa) of the definition of **archives** in subsection (1) is taken not to be held in, and not to form part of, the collection of the National Archives of Australia.

Note: Paragraph (aa) of the definition of **archives** covers archival material in the custody of a person other than the National Archives of Australia under an arrangement referred to in section 64 of the *Archives Act 1983*.

(4) Where:

(a) a collection of documents or other material of historical significance or public interest that is in the custody of a body, whether incorporated or unincorporated, is being maintained by the body for the purpose of conserving and preserving those documents or other material; and

(b) the body does not maintain and operate the collection for the purpose of deriving a profit;

paragraph (b) of the definition of **archives** in subsection (1) applies to that collection.

Example: Museums and galleries are examples of bodies that could have collections covered by paragraph (b) of the definition of **archives**.

(5) A reference to a copy of a cinematograph film includes a reference to any form (whether visible or not) of storage of a cinematograph film, or a substantial part of a cinematograph film, (whether or not the copy of the film, or a substantial part of the film, can be reproduced).

(6) A reference to a copy of a sound recording includes a reference to any form (whether visible or not) of storage of the sound recording, or a substantial part of the sound recording, (whether or not the

Replaced Authorised Version registered 10/02/2025 C2024C00854

copy of the recording, or a substantial part of the recording, can be reproduced).

## 10AA  *Non-infringing copy* of a sound recording

*Minimum requirements*

(1) A copy of a sound recording is a **non-infringing copy** only if it is made by or with the consent of:

    (a) the owner of the copyright or related right in the sound recording in the country (the **copy country**) in which the copy was made; or

    (b) the owner of the copyright or related right in the sound recording in the country (the **original recording country**) in which the sound recording was made, if the law of the copy country did not provide for copyright or a related right in sound recordings when the sound recording was made; or

    (c) the maker of the sound recording, if neither the law of the copy country nor the law of the original recording country (whether those countries are different or not) provided for copyright or a related right in sound recordings when the sound recording was made.

*Extra requirements for copies of recordings of works subject to Australian copyright*

(2) If the sound recording is of a work that is a literary, dramatic or musical work in which copyright subsists in Australia, the copy is a **non-infringing copy** only if:

    (a) copyright subsists in the work under the law of the copy country; and

    (b) the making of the copy does not infringe the copyright in the work under the law of the copy country; and

    (c) the copy country meets the requirements of subsection (3).

To avoid doubt, the requirements of this subsection are additional to those of subsection (1).

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 10AB

*Requirements for copy country*

(3) The copy country mentioned in subsection (2) must:

    (a) be a party to the International Convention for the Protection of Literary and Artistic Works concluded at Berne on 9 September 1886 as revised from time to time; or

    (b) be a member of the World Trade Organization and have a law that provides consistently with the TRIPS Agreement for:

        (i) the ownership and duration of copyright in literary, dramatic and musical works; and

        (ii) the owner of the copyright in the work to have rights relating to the reproduction of the work.

*Australian copyright may result from Act or regulations*

(4) For the purposes of subsection (2) it does not matter whether the copyright in the work subsists in Australia as a result of this Act or as a result of the regulations made for the purposes of section 184.

## 10AB  *Non-infringing copy* of a computer program

A copy of a computer program is a ***non-infringing copy*** only if:

    (a) it is made in a qualifying country; and

    (b) its making did not constitute an infringement of any copyright in a work under a law of that country.

## 10AC  *Non-infringing copy* of an electronic literary or music item

A copy of an electronic literary or music item is a ***non-infringing copy*** only if:

    (a) it is made in a qualifying country; and

    (b) its making did not constitute an infringement of any copyright in a work, or in a published edition of a work, under a law of that country.

Compilation No. 64        Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

## 10AD  Accessories to imported articles

*Accessories*

(1) If a person imports into Australia:

    (a) an article that has embodied in it a copy of a computer program; or

    (b) an article that has embodied in it a copy of an electronic literary or music item; or

    (c) an article that has embodied in it a copy of a sound recording;

a copy of any work or other subject matter (other than a feature film) that is on, embodied in, or included with, the article on its importation is taken to be an *accessory* to the article.

> Note: See also sections 44C and 112C (about the non-infringement of copyright in works or other subject matter that are accessories to imported articles).

*Definition*

(2) In this section:

*feature film* means a cinematograph film that:

    (a) is produced wholly or principally:

        (i) for exhibition to the public in cinemas or by way of television broadcasting; or

        (ii) for sale or rental to the public where it is reasonable to assume that the viewing of the film (without electronic interactive involvement with the film) would be the primary object of any such sale or rental; and

    (b) is more than 20 minutes in duration.

*Interpretation*

(3) This section does not limit the meaning of *accessory* in subsection 10(1).

---

Compilation No. 64                              Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 11

### 11  Residence in a country not affected by temporary absence

For the purposes of this Act, a person who, at a material time, was ordinarily resident in a country (including Australia) but was temporarily absent from that country shall be treated as if he or she had been resident in that country at that time.

### 12  References to Parliament

A reference in this Act to a Parliament shall be read as a reference to the Parliament of the Commonwealth or of a State or a legislature of a Territory.

### 13  Acts comprised in copyright

(1) A reference in this Act to an act comprised in the copyright in a work or other subject-matter shall be read as a reference to any act that, under this Act, the owner of the copyright has the exclusive right to do.

(2) For the purposes of this Act, the exclusive right to do an act in relation to a work, an adaptation of a work or any other subject-matter includes the exclusive right to authorize a person to do that act in relation to that work, adaptation or other subject-matter.

### 14  Acts done in relation to substantial part of work or other subject-matter deemed to be done in relation to the whole

(1) In this Act, unless the contrary intention appears:

  (a) a reference to the doing of an act in relation to a work or other subject-matter shall be read as including a reference to the doing of that act in relation to a substantial part of the work or other subject-matter; and

  (b) a reference to a reproduction, adaptation or copy of a work shall be read as including a reference to a reproduction, adaptation or copy of a substantial part of the work, as the case may be.

Replaced Authorised Version registered 10/02/2025 C2024C00854

(2)  This section does not affect the interpretation of any reference in sections 32, 177, 187 and 198 to the publication, or absence of publication, of a work.

## 15  References to acts done with licence of owner of copyright

For the purposes of this Act, an act shall be deemed to have been done with the licence of the owner of a copyright if the doing of the act was authorized by a licence binding the owner of the copyright.

## 16  References to partial assignment of copyright

A reference in this Act to a partial assignment of copyright shall be read as a reference to an assignment of copyright that is limited in any way.

## 17  Statutory employment

For the purposes of this Act, the employment of a person, or the employment of a person as an apprentice, under a law of the Commonwealth or of a State but otherwise than under a contract of service or contract of apprenticeship shall be treated as if that employment were employment under a contract of service or employment under a contract of apprenticeship, as the case may be.

## 18  Libraries established or conducted for profit

For the purposes of this Act, a library shall not be taken to be established or conducted for profit by reason only that the library is owned by a person carrying on business for profit.

## 19  References to Copyright Act, 1911

A reference in a provision of this Act to the Copyright Act, 1911, in relation to any time before the commencement of this Act, shall, for the purposes of the application of that provision in relation to a

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 20

State or a Territory, be read as a reference to the Copyright Act, 1911 as it applied in that State or Territory at that time.

## 20  Names under which work is published

(1) A reference in this Act to the name or names under which a work was published shall be read as a reference to the name or names specified in the work as the name of the author or the names of the authors of the work.

(2) For the purposes of this Act, a publication of a work under two or more names shall not be taken to be pseudonymous unless all those names are pseudonyms.

## 21  Reproduction and copying of works and other subject-matter

(1) For the purposes of this Act, a literary, dramatic or musical work shall be deemed to have been reproduced in a material form if a sound recording or cinematograph film is made of the work, and any record embodying such a recording and any copy of such a film shall be deemed to be a reproduction of the work.

(1A) For the purposes of this Act, a work is taken to have been reproduced if it is converted into or from a digital or other electronic machine-readable form, and any article embodying the work in such a form is taken to be a reproduction of the work.

> Note:    The reference to the conversion of a work into a digital or other electronic machine-readable form includes the first digitisation of the work.

(2) Subsections (1) and (1A) apply in relation to an adaptation of a work in the same way as they apply in relation to a work.

(3) For the purposes of this Act, an artistic work shall be deemed to have been reproduced:

   (a) in the case of a work in a two-dimensional form—if a version of the work is produced in a three-dimensional form; or

*Copyright Act 1968*

Replaced Authorised Version registered 10/02/2025 C2024C00854

(b) in the case of a work in a three-dimensional form—if a version of the work is produced in a two-dimensional form;

and the version of the work so produced shall be deemed to be a reproduction of the work.

(4) The last preceding subsection has effect subject to Division 7 of Part III.

(5) For the purposes of this Act, a computer program is taken to have been reproduced if:

(a) an object code version of the program is derived from the program in source code by any process, including compilation; or

(b) a source code version of the program is derived from the program in object code by any process, including decompilation;

and any such version is taken to be a reproduction of the program.

(6) For the purposes of this Act, a sound recording or cinematograph film is taken to have been copied if it is converted into or from a digital or other electronic machine-readable form, and any article embodying the recording or film in such a form is taken to be a copy of the recording or film.

Note:    The reference to the conversion of a sound recording or cinematograph film into a digital or other electronic machine-readable form includes the first digitisation of the recording or film.

## 22  Provisions relating to the making of a work or other subject-matter

*Literary, dramatic, musical or artistic works*

(1) A reference in this Act to the time when, or the period during which, a literary, dramatic, musical or artistic work was made shall be read as a reference to the time when, or the period during which, as the case may be, the work was first reduced to writing or to some other material form.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 22

(2) For the purposes of this Act, a literary, dramatic or musical work that exists in the form of sounds embodied in an article or thing shall be deemed to have been reduced to a material form and to have been so reduced at the time when those sounds were embodied in that article or thing.

*Sound recordings*

(3) For the purposes of this Act:

(a) a sound recording, other than a sound recording of a live performance, shall be deemed to have been made at the time when the first record embodying the recording was produced; and

(b) the maker of the sound recording is the person who owned that record at that time.

(3A) For the purposes of this Act, the makers of a sound recording of a live performance are:

(a) the person or persons who, at the time of the recording, own the record on which the recording is made; and

(b) the performer or performers who performed in the performance (other than a performer who is already covered by paragraph (a)).

Note:    A performer might be liable to pay compensation under section 116AAA to a person who owns the record on which the recording is made.

(3B) If:

(a) a sound recording of a live performance is made; and

(b) a performer performs in that performance under the terms of his or her employment by another person (the ***employer***) under a contract of service or apprenticeship;

then, for the purposes of paragraph (3A)(b), the employer is taken to be a maker instead of that performer.

(3C) Subsection (3B) may be excluded or modified by agreement between the performer and the employer.

Replaced Authorised Version registered 10/02/2025 C2024C00854

*Cinematograph films*

(4) For the purposes of this Act:

   (a) a reference to the making of a cinematograph film shall be read as a reference to the doing of the things necessary for the production of the first copy of the film; and

   (b) the maker of the cinematograph film is the person by whom the arrangements necessary for the making of the film were undertaken.

*Broadcasts and other communications*

(5) For the purposes of this Act, a broadcast is taken to have been made by the person who provided the broadcasting service by which the broadcast was delivered.

(6) For the purposes of this Act, a communication other than a broadcast is taken to have been made by the person responsible for determining the content of the communication.

(6A) To avoid doubt, for the purposes of subsection (6), a person is not responsible for determining the content of a communication merely because the person takes one or more steps for the purpose of:

   (a) gaining access to what is made available online by someone else in the communication; or

   (b) receiving the electronic transmission of which the communication consists.

   Example:   A person is not responsible for determining the content of the communication to the person of a web page merely because the person clicks on a link to gain access to the page.

*Definitions*

(7) In this section:

   **live performance** means:

   (a) a performance (including an improvisation) of a dramatic work, or part of such a work, including such a performance given with the use of puppets; or

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 23

___

(b)  a performance (including an improvisation) of a musical work or part of such a work; or

(c)  the reading, recitation or delivery of a literary work, or part of such a work, or the recitation or delivery of an improvised literary work; or

(d)  a performance of a dance; or

(e)  a performance of a circus act or a variety act or any similar presentation or show; or

(f)  a performance of an expression of folklore;

being a live performance, whether in the presence of an audience or otherwise.

**_performer_** in a live performance:

(a)  means each person who contributed to the sounds of the performance; and

(b)  if the performance includes a performance of a musical work—includes the conductor.

**_sound recording of a live performance_** means a sound recording, made at the time of the live performance, consisting of, or including, the sounds of the performance.

## 23  Sound recordings and records

(1)  For the purposes of this Act, sounds embodied in a sound-track associated with visual images forming part of cinematograph film shall be deemed not to be a sound recording.

(2)  A reference in this Act to a record of a work or other subject-matter shall, unless the contrary intention appears, be read as a reference to a record by means of which the work or other subject-matter can be performed.

## 24  References to sounds and visual images embodied in an article

For the purposes of this Act, sounds or visual images shall be taken to have been embodied in an article or thing if the article or thing has been so treated in relation to those sounds or visual images that

___

Replaced Authorised Version registered 10/02/2025 C2024C00854

those sounds or visual images are capable, with or without the aid of some other device, of being reproduced from the article or thing.

## 25  Provisions relating to broadcasting

(1) A reference in this Act to broadcasting shall, unless the contrary intention appears, be read as a reference to broadcasting whether by way of sound broadcasting or of television.

(2) A reference in this Act to the doing of an act by the reception of a television broadcast or sound broadcast shall be read as a reference to the doing of that act by means of receiving a broadcast:

(a) from the transmission by which the broadcast is made; or

(b) from a transmission made otherwise than by way of broadcasting, but simultaneously with the transmission referred to in the last preceding paragraph;

whether the reception of the broadcast is directly from the transmission concerned or from a re-transmission made by any person from any place.

(3) Where a record embodying a sound recording or a copy of a cinematograph film is used for the purpose of making a broadcast (in this subsection referred to as *the primary broadcast*), a person who makes a broadcast (in this subsection referred to as *the secondary broadcast*) by receiving and making a retransmission of:

(a) the transmission by which the primary broadcast was made; or

(b) a transmission made otherwise than by way of broadcasting but simultaneously with the transmission referred to in the last preceding paragraph;

shall, for the purposes of this Act, be deemed not to have used the record or copy for the purpose of making the secondary broadcast.

(4) In this Act:

(a) a reference to a cinematograph film of a television broadcast shall be read as including a reference to a cinematograph film, or a photograph, of any of the visual images comprised in the broadcast; and

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 27

---

(b) a reference to a copy of a cinematograph film of a television broadcast shall be read as including a reference to a copy of a cinematograph film, or a reproduction of a photograph, of any of those images.

## 27  Performance

(1) Subject to this section, a reference in this Act to performance shall:

    (a) be read as including a reference to any mode of visual or aural presentation, whether the presentation is by the use of reception equipment, by the exhibition of a cinematograph film, by the use of a record or by any other means; and

    (b) in relation to a lecture, address, speech or sermon—be read as including a reference to delivery;

and a reference in this Act to performing a work or an adaptation of a work has a corresponding meaning.

(2) For the purposes of this Act, the communication of a work or other subject-matter to the public does not constitute:

    (a) performance; or

    (b) causing visual images to be seen or sounds to be heard.

(3) Where visual images or sounds are displayed or emitted by any reception equipment to which they are communicated, the operation of any equipment by which the images or sounds are communicated, directly or indirectly, to the reception equipment shall be deemed not to constitute performance or to constitute causing visual images to be seen or sounds to be heard but, in so far as the display or emission of the images or sounds constitutes a performance, or causes the images to be seen or the sounds to be heard, the performance, or the causing of the images to be seen or sounds to be heard, as the case may be, shall be deemed to be effected by the operation of the reception equipment.

---

Compilation No. 64          Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

(4) Without prejudice to the last two preceding subsections, where a work or an adaptation of a work is performed or visual images are caused to be seen or sounds to be heard by the operation of any equipment referred to in the last preceding subsection or of any equipment for reproducing sounds by the use of a record, being equipment provided by or with the consent of the occupier of the premises where the equipment is situated, the occupier of those premises shall, for the purposes of this Act, be deemed to be the person giving the performance or causing the images to be seen or the sounds to be heard, whether he or she is the person operating the equipment or not.

(5) This section does not apply to a performance within the meaning of Part XIA.

## 28  Performance and communication of works or other subject-matter in the course of educational instruction

(1) Where a literary, dramatic or musical work:

    (a) is performed in class, or otherwise in the presence of an audience; and

    (b) is so performed by a teacher in the course of giving educational instruction, not being instruction given for profit, or by a student in the course of receiving such instruction;

the performance shall, for the purposes of this Act, be deemed not to be a performance in public if the audience is limited to persons who are taking part in the instruction or are otherwise directly connected with the place where the instruction is given.

(2) For the purposes of this section, educational instruction given by a teacher at a place of education that is not conducted for profit shall not be taken to be given for profit by reason only that the teacher receives remuneration for giving the instruction.

(3) For the purposes of this section, a person shall not be taken to be directly connected with a place where instruction is given by reason only that he or she is a parent or guardian of a student who receives instruction at that place.

Compilation No. 64                Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 28

(4) The last three preceding subsections apply in relation to sound recordings and cinematograph films in like manner as they apply in relation to literary, dramatic and musical works but, in the application of those subsections in relation to such recordings or films, any reference to performance shall be read as a reference to the act of causing the sounds concerned to be heard or the visual images concerned to be seen.

(5) A communication of a literary, dramatic or musical work, a sound recording or a cinematograph film is taken for the purposes of this Act not to be a communication to the public if the communication is made merely to facilitate:

   (a) a performance of the work that, because of this section, is not a performance in public; or

   (b) an act of causing sounds forming part of the recording to be heard that, because of this section, is not an act of causing the sound recording to be heard in public; or

   (c) an act of causing visual images or sounds forming part of the cinematograph film to be seen or heard that, because of this section, is not an act of causing the film to be seen or heard in public.

(6) A communication of a television broadcast or sound broadcast is taken for the purposes of this Act not to be a communication of the broadcast, or of a work or other subject-matter included in the broadcast, to the public if:

   (a) the communication is made merely to facilitate the television broadcast being seen and heard, or the sound broadcast being heard, in class or otherwise in the presence of an audience, in the course of educational instruction that:

      (i) is given by a teacher; and

      (ii) is not given for profit; and

   (b) the audience is limited to persons who are taking part in the instruction or are otherwise directly connected with the place where the instruction is given.

(7) A communication of an artistic work is taken for the purposes of this Act not to be a communication of the work to the public if:

Replaced Authorised Version registered 10/02/2025 C2024C00854

    (a) the communication is made merely to facilitate the work being seen in class or otherwise in the presence of an audience, in the course of educational instruction that:

        (i) is given by a teacher; and

        (ii) is not given for profit; and

    (b) the audience is limited to persons who are taking part in the instruction or are otherwise directly connected with the place where the instruction is given.

## 29  Publication

(1) Subject to this section, for the purposes of this Act:

    (a) a literary, dramatic, musical or artistic work, or an edition of such a work, shall be deemed to have been published if, but only if, reproductions of the work or edition have been supplied (whether by sale or otherwise) to the public;

    (b) a cinematograph film shall be deemed to have been published if, but only if, copies of the film have been sold, let on hire, or offered or exposed for sale or hire, to the public; and

    (c) a sound recording shall be deemed to have been published if, but only if, records embodying the recording or a part of the recording have been supplied (whether by sale or otherwise) to the public.

(2) In determining, for the purposes of paragraph (1)(a), whether reproductions of a work or edition have been supplied to the public, section 14 does not apply.

(3) For the purposes of this Act, the performance of a literary, dramatic or musical work, the supplying (whether by sale or otherwise) to the public of records of a literary, dramatic or musical work, the exhibition of an artistic work, the construction of a building or of a model of a building, or the supplying (whether by sale or otherwise) to the public of photographs or engravings of a building, of a model of a building or of a sculpture, does not constitute publication of the work.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 29

(4) A publication that is merely colourable and is not intended to satisfy the reasonable requirements of the public shall be disregarded for the purposes of this Act except in so far as it may constitute an infringement of copyright or a breach of a duty under Part IX.

(5) For the purposes of this Act, a publication in Australia or in any other country shall not be treated as being other than the first publication by reason only of an earlier publication elsewhere, if the two publications took place within a period of not more than thirty days.

(6) In determining, for the purposes of any provision of this Act:

    (a) whether a work or other subject-matter has been published;

    (b) whether a publication of a work or other subject-matter was the first publication of the work or other subject-matter; or

    (c) whether a work or other subject-matter was published or otherwise dealt with in the life-time of a person;

any unauthorized publication or the doing of any other unauthorized act shall be disregarded.

(7) Subject to section 52, a publication or other act shall, for the purposes of the last preceding subsection, be taken to have been unauthorized if, but only if:

    (a) copyright subsisted in the work or other subject-matter and the act concerned was done otherwise than by, or with the licence of, the owner of the copyright; or

    (b) copyright did not subsist in the work or other subject-matter and the act concerned was done otherwise than by, or with the licence of:

        (i) the author or, in the case of a sound recording, cinematograph film or edition of a work, the maker or publisher, as the case may be; or

        (ii) persons lawfully claiming under the author, maker or publisher.

(8) Nothing in either of the last two preceding subsections affects any provisions of this Act relating to the acts comprised in a copyright

Replaced Authorised Version registered 10/02/2025 C2024C00854

or to acts constituting infringements of copyrights or any provisions of Part IX.

## 29A  Making public

(1) Without limiting when a work is ***made public***, it is ***made public*** when:

    (a) the work, or an adaptation of the work, is:

        (i) published, performed in public, broadcast or otherwise communicated to the public; or

        (ii) if the work is an artistic work—exhibited in public; or

    (b) if the work is an artistic work included in a cinematograph film—the film is seen in public; or

    (c) if the work is a building—the building has been constructed; or

    (d) records of the work, or of an adaptation of the work, are:

        (i) offered to the public (whether or not for sale); or

        (ii) exposed for sale to the public.

(2) Without limiting when copyright material other than a work is ***made public***, the material is ***made public*** when:

    (a) it is published; or

    (b) if the material is a sound recording—it is:

        (i) heard in public; or

        (ii) communicated to the public; or

    (c) if the material is a cinematograph film—it is:

        (i) seen in public (to the extent it consists of visual images); or

        (ii) heard in public (to the extent it consists of sounds); or

        (iii) communicated to the public; or

    (d) copies of the material are:

        (i) offered to the public (whether or not for sale); or

        (ii) exposed for sale to the public.

Replaced Authorised Version registered 10/02/2025 C2024C00854

---

Section 30

---

(3) Subsections 29(4) to (7) apply, for the purposes of this section, in relation to making public in the same way as those subsections apply in relation to publication.

## 30  Ownership of copyright for particular purposes

In the case of a copyright of which (whether as a result of a partial assignment or otherwise) different persons are the owners in respect of its application to:

(a) the doing of different acts or classes of acts; or

(b) the doing of one or more acts or classes of acts in different countries or at different times;

the owner of the copyright, for any purpose of this Act, shall be deemed to be the person who is the owner of the copyright in respect of its application to the doing of the particular act or class of acts, or to the doing of the particular act or class of acts in the particular country or at the particular time, as the case may be, that is relevant to that purpose, and a reference in this Act to the prospective owner of a future copyright of which different persons are the prospective owners has a corresponding meaning.

## 30A  Commercial rental arrangement

(1) In this Act, the expression *commercial rental arrangement*, in relation to a work reproduced in a sound recording, signifies an arrangement that has the following features:

(a) however the arrangement is expressed, it is in substance an arrangement under which a copy of the sound recording is made available by a person on terms that it will or may be returned to the person;

(b) the arrangement is made in the course of the conduct of a business;

(c) the arrangement provides for the copy to be made available:

(i) for payment in money or money's worth; or

(ii) as part of the provision of a service for which payment in money or money's worth is to be made.

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

(2) In this Act, the expression ***commercial rental arrangement***, in relation to a sound recording or a computer program, signifies an arrangement that has the following features:

    (a) however the arrangement is expressed, it is in substance an arrangement under which a copy of the sound recording or computer program is made available by a person on terms that it will or may be returned to the person;

    (b) the arrangement is made in the course of the conduct of a business;

    (c) the arrangement provides for the copy to be made available:

        (i) for payment in money or money's worth; or

        (ii) as part of the provision of a service for which payment in money or money's worth is to be made.

(3) It is not the intention of the Parliament that a lending arrangement should be regarded as a commercial rental arrangement for the purposes of subsection (1) or (2).

(4) An arrangement is to be regarded as a lending arrangement if, regardless of the way in which the arrangement is expressed, the true nature of the arrangement is that it is an arrangement for the lending of a copy of a sound recording or computer program under which no amount, other than a deposit to secure the return of the copy, is payable.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Part III—Copyright in original literary, dramatic, musical and artistic works

## Division 1—Nature, duration and ownership of copyright in works

### 31  Nature of copyright in original works

(1) For the purposes of this Act, unless the contrary intention appears, copyright, in relation to a work, is the exclusive right:

  (a) in the case of a literary, dramatic or musical work, to do all or any of the following acts:

    (i) to reproduce the work in a material form;

    (ii) to publish the work;

    (iii) to perform the work in public;

    (iv) to communicate the work to the public;

    (vi) to make an adaptation of the work;

    (vii) to do, in relation to a work that is an adaptation of the first-mentioned work, any of the acts specified in relation to the first-mentioned work in subparagraphs (i) to (iv), inclusive; and

  (b) in the case of an artistic work, to do all or any of the following acts:

    (i) to reproduce the work in a material form;

    (ii) to publish the work;

    (iii) to communicate the work to the public; and

  (c) in the case of a literary work (other than a computer program) or a musical or dramatic work, to enter into a commercial rental arrangement in respect of the work reproduced in a sound recording; and

  (d) in the case of a computer program, to enter into a commercial rental arrangement in respect of the program.

Replaced Authorised Version registered 10/02/2025 C2024C00854

(2) The generality of subparagraph (1)(a)(i) is not affected by subparagraph (1)(a)(vi).

(3) Paragraph (1)(d) does not extend to entry into a commercial rental arrangement in respect of a machine or device in which a computer program is embodied if the program is not able to be copied in the course of the ordinary use of the machine or device.

(4) The reference in subsection (3) to a device does not include a device of a kind ordinarily used to store computer programs (for example, a floppy disc, a device of the kind commonly known as a CD ROM, or an integrated circuit).

(5) Paragraph (1)(d) does not extend to entry into a commercial rental arrangement if the computer program is not the essential object of the rental.

(6) Paragraph (1)(c) does not extend to entry into a commercial rental arrangement if:

  (a) the copy of the sound recording concerned was purchased by a person (***the record owner***) before the commencement of Part 2 of the *Copyright (World Trade Organization Amendments) Act 1994*; and

  (b) the commercial rental arrangement is entered into in the ordinary course of a business conducted by the record owner; and

  (c) the record owner was conducting the same business, or another business that consisted of, or included, the making of commercial rental arrangements of the same kind, when the copy was purchased.

(7) Paragraph (1)(d) does not extend to entry into a commercial rental arrangement in respect of a computer program if:

  (a) the copy of the computer program was purchased by a person (***the program owner***) before the commencement of Part 2 of the *Copyright (World Trade Organization Amendments) Act 1994*; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

    (b) the commercial rental arrangement is entered into in the ordinary course of a business conducted by the program owner; and

    (c) the program owner was conducting the same business, or another business that consisted of, or included, the making of commercial rental arrangements in respect of computer programs, when the copy was purchased.

## 32  Original works in which copyright subsists

(1) Subject to this Act, copyright subsists in an original literary, dramatic, musical or artistic work that is unpublished and of which the author:

    (a) was a qualified person at the time when the work was made; or

    (b) if the making of the work extended over a period—was a qualified person for a substantial part of that period.

(2) Subject to this Act, where an original literary, dramatic, musical or artistic work has been published:

    (a) copyright subsists in the work; or

    (b) if copyright in the work subsisted immediately before its first publication—copyright continues to subsist in the work;

if, but only if:

    (c) the first publication of the work took place in Australia;

    (d) the author of the work was a qualified person at the time when the work was first published; or

    (e) the author died before that time but was a qualified person immediately before his or her death.

(3) Notwithstanding the last preceding subsection but subject to the remaining provisions of this Act, copyright subsists in:

    (a) an original artistic work that is a building situated in Australia; or

    (b) an original artistic work that is attached to, or forms part of, such a building.

Replaced Authorised Version registered 10/02/2025 C2024C00854

(4) In this section, ***qualified person*** means an Australian citizen or a person resident in Australia.

## 33  Duration of copyright in original works

(1) This section applies to copyright that subsists in a work under this Part.

*Works first made public before 1 January 2019*

(2) The following table has effect if the work was first made public before 1 January 2019.

| Duration of copyright—works first made public before 1 January 2019 | | |
|---|---|---|
| **Item** | **Column 1**<br>**If …** | **Column 2**<br>**the copyright continues**<br>**to subsist until …** |
| 1 | no other item of this table applies | 70 years after the calendar year in which the author of the work died. |
| 2 | (a) the work is:<br>    (i) a literary work (other than a computer program); or<br>    (ii) a dramatic work; or<br>    (iii) a musical work; or<br>    (iv) an engraving; and<br>(b) the author of the work has died; and<br>(c) the work was not first made public before the author died; and<br>(d) item 3 does not apply | 70 years after the calendar year in which the work was first made public. |
| 3 | the identity of the author of the work is not generally known at any time before the end of 70 years after the calendar year in which the work was first made public | 70 years after the calendar year in which the work was first made public. |

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part III** Copyright in original literary, dramatic, musical and artistic works
**Division 1** Nature, duration and ownership of copyright in works

Section 35

---

*Works never made public, and works first made public on or after*
*1 January 2019*

(3) The following table has effect if the work was not first made public before 1 January 2019.

| Duration of copyright—works not first made public before 1 January 2019 | | |
|---|---|---|
| **Item** | **Column 1**<br>**If …** | **Column 2**<br>**the copyright continues**<br>**to subsist until …** |
| 1 | no other item of this table applies | 70 years after the calendar year in which the author of the work died. |
| 2 | (a) the identity of the author is not generally known at any time before the end of 70 years after the calendar year in which the work was made; and<br><br>(b) the work is not first made public before the end of 50 years after the calendar year in which the work was made | 70 years after the calendar year in which the work was made. |
| 3 | (a) the identity of the author is not generally known at any time before the end of 70 years after the calendar year in which the work was first made public; and<br><br>(b) the work is first made public before the end of 50 years after the calendar year in which the work was made | 70 years after the calendar year in which the work was first made public. |

## 35  Ownership of copyright in original works

(1) This section has effect subject to Parts VII and X.

(2) Subject to this section, the author of a literary, dramatic, musical or artistic work is the owner of any copyright subsisting in the work by virtue of this Part.

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

(3) The operation of any of the next three succeeding subsections in relation to copyright in a particular work may be excluded or modified by agreement.

(4) If a literary, dramatic or artistic work:

   (a) is made by the author under the terms of his or her employment by the proprietor of a newspaper, magazine or similar periodical under a contract of service or apprenticeship; and

   (b) is so made for the purpose of inclusion in a newspaper, magazine or similar periodical;

   the following paragraphs apply:

   (c) the author is the owner of the copyright only in so far as the copyright relates to:

      (i) reproduction of the work for the purpose of inclusion in a book; or

      (ii) reproduction of the work in the form of a hard copy facsimile (other than a hard copy facsimile made as part of a process of transmission) made from a paper edition of, or from another hard copy facsimile made from a paper edition of, an issue of the newspaper, magazine or similar periodical, but not including reproduction by the proprietor for a purpose connected with the publication of the newspaper, magazine or similar periodical;

   (d) except as provided by paragraph (c), the proprietor is the owner of the copyright.

(5) Subject to the last preceding subsection, where:

   (a) a person makes, for valuable consideration, an agreement with another person for the taking of a photograph for a private or domestic purpose, the painting or drawing of a portrait or the making of an engraving by the other person; and

   (b) the work is made in pursuance of the agreement;

   the first-mentioned person is the owner of any copyright subsisting in the work by virtue of this Part, but, if at the time the agreement was made that person made known, expressly or by implication, to

Compilation No. 64                                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part III**  Copyright in original literary, dramatic, musical and artistic works
**Division 1**  Nature, duration and ownership of copyright in works

Section 35

the author of the work the purpose for which the work was required, the author is entitled to restrain the doing, otherwise than for that purpose, of any act comprised in the copyright in the work.

(6) Where a literary, dramatic or artistic work to which neither of the last two preceding subsections applies, or a musical work, is made by the author in pursuance of the terms of his or her employment by another person under a contract of service or apprenticeship, that other person is the owner of any copyright subsisting in the work by virtue of this Part.

(7) In this section:

*hard copy facsimile*, in relation to a literary, dramatic or artistic work, means a facsimile which is in a material form and from which the work is visible to a human being without the use of any device.

*private or domestic purpose* includes a portrait of family members, a wedding party or children.

Replaced Authorised Version registered 10/02/2025 C2024C00854

## Division 2—Infringement of copyright in works

### 36  Infringement by doing acts comprised in the copyright

(1)  Subject to this Act, the copyright in a literary, dramatic, musical or artistic work is infringed by a person who, not being the owner of the copyright, and without the licence of the owner of the copyright, does in Australia, or authorizes the doing in Australia of, any act comprised in the copyright.

(1A)  In determining, for the purposes of subsection (1), whether or not a person has authorised the doing in Australia of any act comprised in the copyright in a work, without the licence of the owner of the copyright, the matters that must be taken into account include the following:

(a)  the extent (if any) of the person's power to prevent the doing of the act concerned;

(b)  the nature of any relationship existing between the person and the person who did the act concerned;

(c)  whether the person took any reasonable steps to prevent or avoid the doing of the act, including whether the person complied with any relevant industry codes of practice.

(2)  The next three succeeding sections do not affect the generality of this section.

### 37  Infringement by importation for sale or hire

(1)  Subject to Division 3, the copyright in a literary, dramatic, musical or artistic work is infringed by a person who, without the licence of the owner of the copyright, imports an article into Australia for the purpose of:

(a)  selling, letting for hire, or by way of trade offering or exposing for sale or hire, the article;

(b)  distributing the article:

(i)  for the purpose of trade; or

Compilation No. 64                           Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 38

              (ii)  for any other purpose to an extent that will affect prejudicially the owner of the copyright; or

       (c)  by way of trade exhibiting the article in public;

if the importer knew, or ought reasonably to have known, that the making of the article would, if the article had been made in Australia by the importer, have constituted an infringement of the copyright.

(2) In relation to an accessory to an article that is or includes a copy of a work, being a copy that was made without the licence of the owner of the copyright in the work in the country in which the copy was made, subsection (1) has effect as if the words "the importer knew, or ought reasonably to have known, that" were omitted.

## 38  Infringement by sale and other dealings

(1) Subject to Division 3, the copyright in a literary, dramatic, musical or artistic work is infringed by a person who, in Australia, and without the licence of the owner of the copyright:

       (a)  sells, lets for hire, or by way of trade offers or exposes for sale or hire, an article; or

       (b)  by way of trade exhibits an article in public;

if the person knew, or ought reasonably to have known, that the making of the article constituted an infringement of the copyright or, in the case of an imported article, would, if the article had been made in Australia by the importer, have constituted such an infringement.

(2) For the purposes of the last preceding subsection, the distribution of any articles:

       (a)  for the purpose of trade; or

       (b)  for any other purpose to an extent that affects prejudicially the owner of the copyright concerned;

shall be taken to be the sale of those articles.

(3) In this section:

Replaced Authorised Version registered 10/02/2025 C2024C00854

*article* includes a reproduction or copy of a work or other
subject-matter, being a reproduction or copy in electronic form.

## 39  Infringement by permitting place of public entertainment to be used for performance of work

(1) The copyright in a literary, dramatic or musical work is infringed
by a person who permits a place of public entertainment to be used
for the performance in public of the work, where the performance
constitutes an infringement of the copyright in the work.

(2) This section does not apply where the person permitting the place
to be so used establishes:

(a) that he or she was not aware, and had no reasonable grounds
for suspecting, that the performance would be an
infringement of the copyright; or

(b) that he or she gave the permission gratuitously, or for a
consideration that was only nominal or, if more than
nominal, did not exceed a reasonable estimate of the
expenses to be incurred by him or her by reason of the use of
the place for the performance.

(3) In this section, *place of public entertainment* includes any
premises that are occupied principally for purposes other than
public entertainment but are from time to time made available for
hire for purposes of public entertainment.

## 39A  Infringing copies made on machines installed in libraries and archives

Where:

(a) a person makes an infringing copy of, or of part of, a work on
a machine (including a computer), being a machine installed
by or with the approval of the body administering a library or
archives on the premises of the library or archives, or outside
those premises for the convenience of persons using the
library or archives; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part III**  Copyright in original literary, dramatic, musical and artistic works
**Division 2**  Infringement of copyright in works

Section 39B

---

        (b)  there is affixed to, or in close proximity to, the machine, in a place readily visible to persons using the machine, a notice of the prescribed dimensions and in accordance with the prescribed form;

neither the body administering the library or archives nor the officer in charge of the library or archives shall be taken to have authorized the making of the infringing copy by reason only that the copy was made on that machine.

### 39B  Communication by use of certain facilities

A person (including a carrier or carriage service provider) who provides facilities for making, or facilitating the making of, a communication is not taken to have authorised any infringement of copyright in a work merely because another person uses the facilities so provided to do something the right to do which is included in the copyright.

---

Compilation No. 64                        Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

## Division 3—Acts not constituting infringements of copyright in works

### 40  Fair dealing for purpose of research or study

(1) A fair dealing with a literary, dramatic, musical or artistic work, or with an adaptation of a literary, dramatic or musical work, for the purpose of research or study does not constitute an infringement of the copyright in the work.

(1A) A fair dealing with a literary work (other than lecture notes) does not constitute an infringement of the copyright in the work if it is for the purpose of, or associated with, an approved course of study or research by an enrolled external student of an educational institution.

(1B) In subsection (1A) the expression ***lecture notes*** means any literary work produced for the purpose of the course of study or research by a person lecturing or teaching in or in connection with the course of study or research.

(2) For the purposes of this Act, the matters to which regard shall be had, in determining whether a dealing with a literary, dramatic, musical or artistic work or with an adaptation of a literary, dramatic or musical work, being a dealing by way of reproducing the whole or a part of the work or adaptation, constitutes a fair dealing with the work or adaptation for the purpose of research or study include:

   (a) the purpose and character of the dealing;

   (b) the nature of the work or adaptation;

   (c) the possibility of obtaining the work or adaptation within a reasonable time at an ordinary commercial price;

   (d) the effect of the dealing upon the potential market for, or value of, the work or adaptation; and

   (e) in a case where part only of the work or adaptation is reproduced—the amount and substantiality of the part copied taken in relation to the whole work or adaptation.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 40

(3) Despite subsection (2), a reproduction, for the purpose of research or study, of all or part of a literary, dramatic or musical work, or of an adaptation of such a work, contained in an article in a periodical publication is taken to be a fair dealing with the work or adaptation for the purpose of research or study.

(4) Subsection (3) does not apply if another article in the publication is also reproduced for the purpose of different research or a different course of study.

(5) Despite subsection (2), a reproduction, for the purpose of research or study, of not more than a reasonable portion of a work or adaptation that is described in an item of the table and is not contained in an article in a periodical publication is taken to be a fair dealing with the work or adaptation for the purpose of research or study. For this purpose, ***reasonable portion*** means the amount described in the item.

| Works, adaptations and reasonable portions | | |
|---|---|---|
| **Item** | **Work or adaptation** | **Amount that is reasonable portion** |
| 1 | A literary, dramatic or musical work (except a computer program), or an adaptation of such a work, that is contained in a published edition of at least 10 pages | (a) 10% of the number of pages in the edition; or <br>(b) if the work or adaptation is divided into chapters—a single chapter |
| 2 | A published literary work in electronic form (except a computer program or an electronic compilation, such as a database), a published dramatic work in electronic form or an adaptation published in electronic form of such a literary or dramatic work | (a) 10% of the number of words in the work or adaptation; or <br>(b) if the work or adaptation is divided into chapters—a single chapter |

(6) Subsection (5) applies to a reproduction of a work or adaptation described in both items of the table in that subsection even if the amount of the work or adaptation reproduced is not more than a

Replaced Authorised Version registered 10/02/2025 C2024C00854

reasonable portion (as defined in that subsection) on the basis of only one of those items.

(7) If:

   (a) a person makes a reproduction of a part of a published literary or dramatic work or published adaptation of a literary or dramatic work; and

   (b) the reproduction is of not more than a reasonable portion (as defined in subsection (5)) of the work or adaptation;

subsection (5) does not apply in relation to any subsequent reproduction made by the person of any other part of the same work or adaptation.

(8) Subsections 10(2), (2A), (2B) and (2C) do not affect subsection (5), (6) or (7) of this section.

## 41  Fair dealing for purpose of criticism or review

A fair dealing with a literary, dramatic, musical or artistic work, or with an adaptation of a literary, dramatic or musical work, does not constitute an infringement of the copyright in the work if it is for the purpose of criticism or review, whether of that work or of another work, and a sufficient acknowledgement of the work is made.

## 41A  Fair dealing for purpose of parody or satire

A fair dealing with a literary, dramatic, musical or artistic work, or with an adaptation of a literary, dramatic or musical work, does not constitute an infringement of the copyright in the work if it is for the purpose of parody or satire.

## 42  Fair dealing for purpose of reporting news

(1) A fair dealing with a literary, dramatic, musical or artistic work, or with an adaptation of a literary, dramatic or musical work, does not constitute an infringement of the copyright in the work if:

Replaced Authorised Version registered 10/02/2025 C2024C00854

(a) it is for the purpose of, or is associated with, the reporting of news in a newspaper, magazine or similar periodical and a sufficient acknowledgement of the work is made; or

(b) it is for the purpose of, or is associated with, the reporting of news by means of a communication or in a cinematograph film.

(2) The playing of a musical work in the course of reporting news by means of a communication or in a cinematograph film is not a fair dealing with the work for the purposes of this section if the playing of the work does not form part of the news being reported.

## 43  Reproduction for purpose of judicial proceedings or professional advice

(1) The copyright in a literary, dramatic, musical or artistic work is not infringed by anything done for the purposes of a judicial proceeding or of a report of a judicial proceeding.

(2) A fair dealing with a literary, dramatic, musical or artistic work does not constitute an infringement of the copyright in the work if it is for the purpose of the giving of professional advice by:

(a) a legal practitioner; or

(b) a person registered as a patent attorney under the *Patents Act 1990*; or

(c) a person registered as a trade marks attorney under the *Trade Marks Act 1995*.

## 43A  Temporary reproductions made in the course of communication

(1) The copyright in a work, or an adaptation of a work, is not infringed by making a temporary reproduction of the work or adaptation as part of the technical process of making or receiving a communication.

(2) Subsection (1) does not apply in relation to the making of a temporary reproduction of a work, or an adaptation of a work, as

Replaced Authorised Version registered 10/02/2025 C2024C00854

part of the technical process of making a communication if the making of the communication is an infringement of copyright.

### 43B  Temporary reproductions of works as part of a technical process of use

(1) Subject to subsection (2), the copyright in a work is not infringed by the making of a temporary reproduction of the work if the reproduction is incidentally made as a necessary part of a technical process of using a copy of the work.

(2) Subsection (1) does not apply to:

  (a) the making of a temporary reproduction of a work if the reproduction is made from:

    (i) an infringing copy of the work; or

    (ii) a copy of the work where the copy is made in another country and would be an infringing copy of the work if the person who made the copy had done so in Australia; or

  (b) the making of a temporary reproduction of a work as a necessary part of a technical process of using a copy of the work if that use constitutes an infringement of the copyright in the work.

(3) Subsection (1) does not apply to any subsequent use of a temporary reproduction of a work other than as a part of the technical process in which the temporary reproduction was made.

### 43C  Reproducing works in books, newspapers and periodical publications in different form for private use

(1) This section applies if:

  (a) the owner of a book, newspaper or periodical publication makes from it a reproduction (the ***main copy***) of a work contained in the book, newspaper or periodical publication; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 43C

    (b) the main copy is made for his or her private and domestic use instead of the work as contained in the book, newspaper or periodical publication; and

    (c) the main copy embodies the work in a form different from the form in which the work is embodied in the book, newspaper or periodical publication; and

    (d) the book, newspaper or periodical publication itself is not an infringing copy of either the work or a published edition of the work; and

    (e) at the time the owner makes the main copy, he or she has not made, and is not making, another copy that embodies the work in a form substantially identical to the form of the main copy.

For this purpose, disregard a temporary reproduction of the work incidentally made as a necessary part of the technical process of making the main copy.

  (2) The making of the main copy is not an infringement of copyright in the work or a published edition of the work.

*Dealing with main copy may make it an infringing copy*

  (3) Subsection (2) is taken never to have applied if the main copy is:

    (a) sold; or

    (b) let for hire; or

    (c) by way of trade offered or exposed for sale or hire; or

    (d) distributed for the purpose of trade or otherwise.

Note:    If the main copy is dealt with as described in subsection (3), then copyright may be infringed not only by the making of the main copy but also by the dealing with the main copy.

  (4) To avoid doubt, paragraph (3)(d) does not apply to a loan of the main copy by the lender to a member of the lender's family or household for the member's private and domestic use.

Replaced Authorised Version registered 10/02/2025 C2024C00854

*Reproducing work from main copy may infringe copyright*

(5) Subsection (2) does not prevent the main copy from being an infringing copy for the purpose of working out whether this section applies again in relation to the making of another reproduction of the work from the main copy.

*Disposal of book etc. may make the main copy an infringing copy*

(6) Subsection (2) is taken never to have applied if the owner of the book, newspaper or periodical publication disposes of it (in the form from which the main copy was made) to another person.

*Status of temporary reproduction*

(7) If subsection (2) applies to the making of the main copy only as a result of disregarding the incidental making of a temporary reproduction of the work as a necessary part of the technical process of making the main copy, then:

   (a) if the temporary reproduction is destroyed at the first practicable time during or after the making of the main copy—the making of the temporary reproduction does not infringe copyright in the work or a published edition of the work; or

   (b) if the temporary reproduction is not destroyed at that time— the making of the temporary reproduction is taken always to have infringed copyright (if any) subsisting in the work and the published edition of the work from which the main copy was made.

## 44  Inclusion of works in collections for use by places of education

(1) The copyright in a published literary, dramatic, musical or artistic work is not infringed by the inclusion of a short extract from the work, or, in the case of a published literary, dramatic or musical work, from an adaptation of the work, in a collection of literary, dramatic, musical or artistic works contained in a book, sound recording or cinematograph film and intended for use by places of education if:

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 44A

      (a)  the collection is described in an appropriate place in the book, on the label of each record embodying the recording or of its container, or in the film, as being intended for use by places of education;

      (b)  the work or adaptation was not published for the purpose of being used by places of education;

      (c)  the collection consists principally of matter in which copyright does not subsist; and

      (d)  a sufficient acknowledgement of the work or adaptation is made.

  (2)  The last preceding subsection does not apply in relation to the copyright in a work if, in addition to the extract concerned, 2 or more other extracts from, or from adaptations of, works (being works in which copyright subsists at the time when the collection is published) by the author of the first-mentioned work are contained in that collection, or are contained in that collection taken together with every similar collection, if any, of works intended for use by places of education and published by the same publisher within the period of 5 years immediately preceding the publication of the first-mentioned collection.

## 44A  Importation etc. of books

  (1)  The copyright in an overseas work first published on or after the commencing day is not infringed by a person who, without the licence of the owner of the copyright, imports a non-infringing book into Australia for a purpose mentioned in paragraph 37(1)(a), (b) or (c).

  (2)  Subject to this section, the copyright in:

      (a)  an overseas work first published before the commencing day; or

      (b)  a work first published in Australia, whether before, on or after the commencing day;

is not infringed by a person who, without the licence of the owner of the copyright, imports a copy (in this subsection called the *imported copy*) of a hardback or paperback version of a

Replaced Authorised Version registered 10/02/2025 C2024C00854

non-infringing book into Australia for a purpose mentioned in paragraph 37(1)(a), (b) or (c) if:

    (c) the person had ordered in writing from the copyright owner, or the owner's licensee or agent, one or more copies of that version of the book (not being second-hand copies or more copies than were needed to satisfy the person's reasonable requirements); and

    (d) when the person ordered the imported copy, the original order mentioned in paragraph (c) had not been withdrawn or cancelled by, or with the consent of, the person and:

        (i) at least 7 days had elapsed since the person placed the original order and the copyright owner, licensee or agent had not notified the person in writing that the original order would be filled within 90 days after it was placed; or

        (ii) at least 90 days had elapsed since the person placed the original order and the copyright owner, licensee or agent had not filled the order.

(3) The copyright in a published work (whether first published before, on or after the commencing day) is not infringed by a person who, without the licence of the owner of the copyright, imports a single copy of a non-infringing book into Australia if the importation is for the purpose of filling a written order, or a verifiable telephone order, by a customer of the person and:

    (a) in the case of a written order, the order contains a statement, signed by the customer; or

    (b) in the case of a telephone order, the customer makes a verifiable statement;

to the effect that the customer does not intend to use the book for a purpose mentioned in paragraph 37(1)(a), (b) or (c).

(4) The copyright in a published work (whether first published before, on or after the commencing day) is not infringed by a person who, without the licence of the owner of the copyright, imports 2 or more copies of a non-infringing book into Australia if:

Compilation No. 64　　　　　　　　　　　Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

(a) the importation is for the purpose of filling a written order, or a verifiable telephone order, placed with the person by or on behalf of a library, other than a library conducted for the profit (direct or indirect) of a person or organisation; and

(b) in the case of a written order—the order contains a statement, signed by the person placing the order, to the effect that the library does not intend to use any of the books for a purpose mentioned in paragraph 37(1)(a), (b) or (c); and

(c) in the case of a telephone order—the person placing the order makes a verifiable statement to the effect referred to in paragraph (b); and

(d) the number of copies so imported is not more than the number of copies so ordered.

(5) Without limiting the ways in which a telephone order under subsection (3) or (4), or a statement under paragraph (3)(b) or (4)(c) relating to such an order, may be verified, such an order or statement is, for the purposes of this section, taken to be verifiable if the person who takes the order, or to whom the statement is made, makes a written note of the details of the order or statement when, or immediately after, the order is placed, or the statement is made, as the case may be.

(6) Where:

(a) a book is imported into Australia for a purpose mentioned in paragraph 37(1)(a), (b) or (c); and

(b) the importation does not, under this section, constitute an infringement of copyright in a published work;

the use of the book for any such purpose does not constitute an infringement of the copyright in the work and subsection 38(1) does not apply to the book.

(7) Subsection (2) does not apply to the importation of a copy of a hardback version of a non-infringing book into Australia if the copyright owner, or his or her licensee or agent, is able to supply in Australia enough copies of a paperback version of the book to fill any reasonable order.

Replaced Authorised Version registered 10/02/2025 C2024C00854

(8) For the purposes of paragraph (2)(d), a copyright owner, licensee or agent is not taken to have filled an order by a person for one or more copies of a version of a book unless and until the copyright owner, licensee or agent sends the copy, or all of the copies, as the case requires, to the person.

(9) In this section:

*book* does not include:

   (a) a book whose main content is one or more musical works, with or without any related literary, dramatic or artistic work; or

   (b) a manual sold with computer software for use in connection with that software; or

   (c) a periodical publication.

*commencing day* means the day on which the *Copyright Amendment Act 1991* commences.

*overseas work* means a work:

   (a) that was first published in a country other than Australia; and

   (b) that was not published in Australia within 30 days after its first publication in that other country.

Note: A work may, for the purposes of this Act, be ***first published*** in Australia if it is published in Australia within 30 days of an earlier publication elsewhere. For the meaning of ***first publication***, see section 29 and, in particular, subsection 29(5).

## 44B  Reproduction of writing on approved label for containers for chemical product

The reproduction on a label on a container for a chemical product of any writing appearing on an approved label is not an infringement of any copyright subsisting under this Part in relation to that writing.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part III  Copyright in original literary, dramatic, musical and artistic works
Division 3  Acts not constituting infringements of copyright in works

---

Section 44BA

---

### 44BA  Acts done in relation to certain medicine

(1) The following acts are not an infringement of any copyright subsisting under this Part in a work that is product information approved under section 25AA of the *Therapeutic Goods Act 1989* in relation to medicine:

  (a) an act that is done under that Act and that is in respect of product information in relation to:

    (i) restricted medicine; or

    (ii) medicine in respect of which the applicant for the registration of that medicine under that Act has been given a notice of the kind referred to in subparagraph 25(1)(da)(ii) of that Act; or

    (iii) medicine in respect of which subsection 25AA(2) or (3) of that Act applies;

  (b) an act that is ancillary or incidental to an act referred to in paragraph (a).

(2) The following acts are not an infringement of any copyright subsisting under this Part in a work that is product information approved under section 25AA of the *Therapeutic Goods Act 1989* in relation to medicine:

  (a) supplying, in Australia, some or all of any product information that is approved under that section in relation to medicine;

  (b) reproducing, in Australia, some or all of the information referred to in paragraph (a);

  (c) publishing, in Australia, some or all of the information referred to in paragraph (a);

  (d) communicating, in Australia, some or all of the information referred to in paragraph (a);

  (e) adapting, in Australia, some or all of the information referred to in paragraph (a);

to the extent that the supply, reproduction, publication, communication or adaptation is for a purpose related to the safe and effective use of the medicine referred to in paragraph (a).

---

Compilation No. 64      Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Copyright in original literary, dramatic, musical and artistic works  **Part III**
Acts not constituting infringements of copyright in works  **Division 3**

Section 44BB

(3) An act done in Australia that is ancillary or incidental to a supply, reproduction, publication, communication or adaptation referred to in subsection (2) is not an infringement of any copyright subsisting under this Part in the work referred to in subsection (2).

(4) For the purposes of this section, *medicine*, *product information* and *restricted medicine* have the same meanings as in the *Therapeutic Goods Act 1989*.

## 44BB  Copyright subsisting in works shared for healthcare or related purposes

(1) The copyright in a work is not infringed by an act comprised in the copyright in the work if:

  (a) the act is done, or authorised to be done:

    (i) for a purpose for which the collection, use or disclosure of health information is required or authorised under the *My Health Records Act 2012*; or

    (ii) in circumstances in which a permitted general situation exists under item 1 of the table in subsection 16A(1) of the *Privacy Act 1988* (serious threat to life, health or safety), or would exist if the act were done, or authorised to be done, by an entity that is an APP entity for the purposes of that Act; or

    (iii) in circumstances in which a permitted health situation exists under section 16B of the *Privacy Act 1988*, or would exist if the act were done, or authorised to be done, by an entity that is an organisation for the purposes of that Act; or

    (iv) for any other purpose relating to healthcare, or the communication or management of health information, prescribed by the regulations; and

  (b) either:

    (i) the work is substantially comprised of health information; or

    (ii) the work allows for the storage, retrieval or use of health information and it is reasonably necessary to do

Compilation No. 64    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 44C

the act, or authorise it to be done, in circumstances that would otherwise infringe copyright in the work.

(2) In this section:

*healthcare* has the same meaning as in the *My Health Records Act 2012*.

*health information* has the same meaning as in the *My Health Records Act 2012*.

## 44C  Copyright subsisting in accessories etc. to imported articles

(1) The copyright in a work a copy of which is, or is on, or embodied in, a non-infringing accessory to an article is not infringed by importing the accessory with the article.

> Note:    See the definition of *accessory* in subsection 10(1) and see also section 10AD for an expanded meaning of *accessory* in relation to certain imported articles.

(2) Section 38 does not apply to a copy of a work, being a copy that is, or is on, or embodied in, a non-infringing accessory to an article, if the importation of the accessory is not an infringement of copyright in the work.

## 44D  Import of non-infringing copy of sound recording does not infringe copyright in works recorded

(1) The copyright in a literary, dramatic or musical work is not infringed by a person who:

    (a) imports into Australia a non-infringing copy of a sound recording of the work; or

    (b) does an act described in section 38 involving an article that is a non-infringing copy of a sound recording of the work and has been imported into Australia by anyone.

> Note:    In a civil action for infringement of copyright, a copy of a sound recording is presumed not to be a non-infringing copy of the sound recording unless the defendant proves it is. See section 130A.

Replaced Authorised Version registered 10/02/2025 C2024C00854

(2) This section applies to a copy of a sound recording only if, when the copy is imported into Australia, the sound recording has been published:

   (a) in Australia; or

   (b) in another country (the ***publication country***) by or with the consent of:

      (i) the owner of the copyright or related right in the sound recording in the publication country; or

      (ii) the owner of the copyright or related right in the sound recording in the country (the ***original recording country***) in which the sound recording was made, if the law of the publication country did not provide for copyright or a related right in sound recordings when publication occurred; or

      (iii) the maker of the sound recording, if neither the law of the publication country nor the law of the original recording country (whether those countries are different or not) provided for copyright or a related right in sound recordings when publication occurred.

     Note:    Subsection 29(6) deals with unauthorised publication.

(3) In subsection (2):

***owner*** of the copyright or related right in the sound recording means the owner at the time publication of the sound recording occurred.

(4) The definition of ***article*** in section 38 does not affect this section.

## 44E  Importation and sale etc. of copies of computer programs

(1) The copyright in a literary work:

   (a) that is a computer program; and

   (b) that has been published in Australia or a qualifying country;

is not infringed by a person who:

   (c) imports into Australia an article that has embodied in it a non-infringing copy of the program; or

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 44F

    (d)  does an act mentioned in section 38 involving an article that has embodied in it a non-infringing copy of the program and that has been imported into Australia by anyone.

> Note:      Section 130B deals with the burden of proof a defendant bears in a civil action for infringement of copyright.

  (2)  The definition of **article** in section 38 does not affect this section.

## 44F  Importation and sale etc. of copies of electronic literary or music items

  (1)  The copyright in a work:

    (a)  that is, or is part of, an electronic literary or music item; and

    (b)  that has been published in Australia or a qualifying country;

is not infringed by a person who:

    (c)  imports into Australia an article that has embodied in it a non-infringing copy of the electronic literary or music item; or

    (d)  does an act mentioned in section 38 involving an article that has embodied in it a non-infringing copy of the electronic literary or music item and that has been imported into Australia by anyone.

> Note:      Section 130C deals with the burden of proof a defendant bears in a civil action for infringement of copyright.

  (2)  The definition of **article** in section 38 does not affect this section.

Compilation No. 64                               Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 4—Acts not constituting infringements of copyright in literary, dramatic and musical works

## 45  Reading or recitation in public or for a broadcast

The reading or recitation in public, or the inclusion in a sound broadcast or television broadcast of a reading or recitation, of an extract of reasonable length from a published literary or dramatic work, or from an adaptation of such a work, does not constitute an infringement of the copyright in the work if a sufficient acknowledgement of the work is made.

## 46  Performance at premises where persons reside or sleep

Where a literary, dramatic or musical work, or an adaptation of such a work, is performed in public, by the operation of reception equipment or by the use of a record, at premises where persons reside or sleep, as part of the amenities provided exclusively for residents or inmates of the premises or for those residents or inmates and their guests, the performance does not constitute an infringement of the copyright in the work.

## 47  Reproduction for purpose of broadcasting

(1) Where the broadcasting by a person of a literary, dramatic or musical work, or of an adaptation of such a work, would not (whether by reason of an assignment or licence or of the operation of a provision of this Act) constitute an infringement of the copyright in the work, but the making by the person of a sound recording or a cinematograph film of the work or adaptation would, apart from this subsection, constitute such an infringement, the copyright in the work is not infringed by the making by the person of such a recording or film solely for the purpose of the broadcasting of the work or adaptation.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Section 47**

(2)  The last preceding subsection does not apply in relation to a recording or film if a record embodying the recording or a copy of the film is used for a purpose other than:

    (a)  the broadcasting of the work or adaptation in circumstances that do not (whether by reason of an assignment or licence or of the operation of a provision of this Act) constitute an infringement of the copyright in the work; or

    (b)  the making of further records embodying the recording or further copies of the film for the purpose of the broadcasting of the work or adaptation in such circumstances.

(3)  Subsection (1) does not apply in relation to a recording or film where a record embodying the recording or a copy of the film is used for the purpose of the broadcasting of the work or adaptation by a person who is not the maker of the recording or film unless the maker has paid to the owner of the copyright in the work such amount as they agree or, in default of agreement, has given an undertaking in writing to the owner to pay to the owner such amount as is determined by the Copyright Tribunal, on the application of either of them, to be equitable remuneration to the owner for the making of the recording or film.

(4)  A person who has given an undertaking referred to in the last preceding subsection is liable, when the Copyright Tribunal has determined the amount to which the undertaking relates, to pay that amount to the owner of the copyright in the work and the owner may recover that amount in a court of competent jurisdiction from the person as a debt due to the owner.

(5)  Subsection (1) of this section does not apply in relation to a recording or film unless, before the expiration of the period of 12 months commencing on the day on which any of the records embodying the recording or any of the copies of the film is first used for broadcasting the work or adaptation in accordance with that subsection, or before the expiration of such further period, if any, as is agreed between the maker of the recording or film and the owner of the copyright in the work, all the records embodying the recording or all the copies of the film are destroyed or are

Replaced Authorised Version registered 10/02/2025 C2024C00854

transferred, with the consent of the Director-General of the National Archives of Australia, to the care (within the meaning of the *Archives Act 1983*) of the National Archives of Australia.

(6) The Director-General of the National Archives of Australia must not consent to the transfer to the care of the National Archives of Australia in accordance with subsection (5) of a record embodying a recording or of a copy of a film unless he or she has certified that the recording or film is of an exceptional documentary character.

(7) In this section:

*broadcasting* does not include simulcasting.

## 47AA  Reproduction for the purpose of simulcasting

(1) If the broadcasting of a literary, dramatic or musical work, or of an adaptation of such a work, would not for any reason constitute an infringement of the copyright in the work, but the making of a sound recording or a cinematograph film of the work or adaptation would, apart from this subsection, constitute such an infringement, the copyright in the work is not infringed by the making of such a recording or film solely for the purpose of simulcasting the work or adaptation in digital form.

(2) Subsection (1) does not apply in relation to a recording or film if a record embodying the recording or a copy of the film is used for a purpose other than:

(a) the simulcasting of the work or adaptation in circumstances that do not for any reason constitute an infringement of the copyright in the work; or

(b) the making of further records embodying the recording or further copies of the film for the purpose of simulcasting the work or adaptation in such circumstances.

(3) Subsection (1) does not apply in relation to a recording or film unless all records embodying the recording, or all copies of the film, made under that subsection are destroyed on or before the relevant date specified in the regulations.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part III**  Copyright in original literary, dramatic, musical and artistic works
**Division 4**  Acts not constituting infringements of copyright in literary, dramatic and musical works

Section 47AA

(4)  For the purposes of subsection (3), the regulations may specify different dates in relation to different classes of sound recordings or cinematograph films.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 4A—Acts not constituting infringements of copyright in computer programs

## 47AB  Meaning of *computer program*

In this Division:

*computer program* includes any literary work that is:

(a) incorporated in, or associated with, a computer program; and

(b) essential to the effective operation of a function of that computer program.

## 47B  Reproduction for normal use or study of computer programs

(1) Subject to subsection (2), the copyright in a literary work that is a computer program is not infringed by the making of a reproduction of the work if:

(a) the reproduction is incidentally and automatically made as part of the technical process of running a copy of the program for the purposes for which the program was designed; and

(b) the running of the copy is done by, or on behalf of, the owner or licensee of the copy.

(2) Subsection (1) does not apply to the making of a reproduction of a computer program:

(a) from an infringing copy of the computer program; or

(b) contrary to an express direction or licence given by, or on behalf of, the owner of the copyright in the computer program to the owner or licensee of the copy from which the reproduction is made when the owner or licensee of that copy acquired it.

(3) Subject to subsection (4), the copyright in a literary work that is a computer program is not infringed by the making of a reproduction of the work if:

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 47C

 (a) the reproduction is incidentally and automatically made as part of the technical process of running a copy of the program for the purpose of studying the ideas behind the program and the way in which it functions; and

 (b) the running of the copy is done by, or on behalf of, the owner or licensee of the copy.

(4) Subsection (3) does not apply to the making of a reproduction of a computer program from an infringing copy of the computer program.

(5) In this section:

*reproduction*, in relation to a computer program, does not include a version of the program of the kind referred to in paragraph 21(5)(b).

### 47C  Back-up copy of computer programs

(1) Subject to subsection (4), the copyright in a literary work that is a computer program is not infringed by the making of a reproduction of the work if:

 (a) the reproduction is made by, or on behalf of, the owner or licensee of the copy (the *original copy*) from which the reproduction is made; and

 (b) the reproduction is made for use only by, or on behalf of, the owner or licensee of the original copy; and

 (c) the reproduction is made for any of the following purposes:

  (i) to enable the owner or licensee of the original copy to use the reproduction in lieu of the original copy and to store the original copy;

  (ii) to enable the owner or licensee of the original copy to store the reproduction for use in lieu of the original copy if the original copy is lost, destroyed or rendered unusable;

  (iii) to enable the owner or licensee of the original copy to use the reproduction in lieu of the original copy, or of another reproduction made under this subsection, if the

Compilation No. 64      Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

original copy, or the other reproduction, is lost, destroyed or rendered unusable.

(2) Subject to subsection (4), the copyright in a literary work that is a computer program, and in any work or other subject-matter held together with the program on the same computer system, is not infringed by the making of a reproduction of the program, or of such a work or other subject-matter if:

    (a) the reproduction is made by, or on behalf of, the owner or licensee of the copy (the ***original copy***) from which the reproduction is made; and

    (b) the making of the reproduction is part of the normal back-up copying of data for security purposes.

(3) Subsection (1) applies in relation to a reproduction of a work made for a purpose referred to in subparagraph (1)(c)(iii) whether or not other reproductions of the work have previously been made for the same purpose from the same copy.

(4) Subsections (1) and (2) do not apply to the making of a reproduction of a computer program:

    (a) from an infringing copy of the computer program; or

    (b) if the owner of the copyright in the computer program has so designed the program that copies of it cannot be made without modifying the program; or

    (c) if a licence to use the original copy, given by, or on behalf of, the owner of the copyright in the computer program to the owner of the original copy when the owner of that copy acquired it, has expired or been terminated.

(5) For the purposes of this section, a reference to a copy of a computer program is a reference to any article in which the computer program is reproduced in a material form.

(6) In this section:

***reproduction***, in relation to a computer program, does not include a version of the program of the kind referred to in paragraph 21(5)(b).

Compilation No. 64                          Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 47D

### 47D  Reproducing computer programs to make interoperable products

(1) Subject to this Division, the copyright in a literary work that is a computer program is not infringed by the making of a reproduction or adaptation of the work if:

    (a) the reproduction or adaptation is made by, or on behalf of, the owner or licensee of the copy of the program (the *original program*) used for making the reproduction or adaptation; and

    (b) the reproduction or adaptation is made for the purpose of obtaining information necessary to enable the owner or licensee, or a person acting on behalf of the owner or licensee, to make independently another program (the *new program*), or an article, to connect to and be used together with, or otherwise to interoperate with, the original program or any other program; and

    (c) the reproduction or adaptation is made only to the extent reasonably necessary to obtain the information referred to in paragraph (b); and

    (d) to the extent that the new program reproduces or adapts the original program, it does so only to the extent necessary to enable the new program to connect to and be used together with, or otherwise to interoperate with, the original program or the other program; and

    (e) the information referred to in paragraph (b) is not readily available to the owner or licensee from another source when the reproduction or adaptation is made.

(2) Subsection (1) does not apply to the making of a reproduction or adaptation of a computer program from an infringing copy of the computer program.

### 47E  Reproducing computer programs to correct errors

(1) Subject to this Division, the copyright in a literary work that is a computer program is not infringed by the making, on or after 23 February 1999, of a reproduction or adaptation of the work if:

Replaced Authorised Version registered 10/02/2025 C2024C00854

    (a) the reproduction or adaptation is made by, or on behalf of, the owner or licensee of the copy of the program (the ***original copy***) used for making the reproduction or adaptation; and

    (b) the reproduction or adaptation is made for the purpose of correcting an error in the original copy that prevents it from operating (including in conjunction with other programs or with hardware):

      (i) as intended by its author; or

      (ii) in accordance with any specifications or other documentation supplied with the original copy; and

    (c) the reproduction or adaptation is made only to the extent reasonably necessary to correct the error referred to in paragraph (b); and

    (d) when the reproduction or adaptation is made, another copy of the program that does operate as mentioned in paragraph (b) is not available to the owner or licensee within a reasonable time at an ordinary commercial price.

  (2) Subsection (1) does not apply to the making of a reproduction or adaptation of a computer program from an infringing copy of the computer program.

## 47F  Reproducing computer programs for security testing

  (1) Subject to this Division, the copyright in a literary work that is a computer program is not infringed by the making of a reproduction or adaptation of the work if:

    (a) the reproduction or adaptation is made by, or on behalf of, the owner or licensee of the copy of the program (the ***original copy***) used for making the reproduction or adaptation; and

    (b) the reproduction or adaptation is made for the purpose of:

      (i) testing in good faith the security of the original copy, or of a computer system or network of which the original copy is a part; or

Replaced Authorised Version registered 10/02/2025 C2024C00854

(ii) investigating, or correcting, in good faith a security flaw in, or the vulnerability to unauthorised access of, the original copy, or of a computer system or network of which the original copy is a part; and

(c) the reproduction or adaptation is made only to the extent reasonably necessary to achieve a purpose referred to in paragraph (b); and

(d) the information resulting from the making of the reproduction or adaptation is not readily available to the owner or licensee from another source when the reproduction or adaptation is made.

(2) Subsection (1) does not apply to the making of a reproduction or adaptation of a computer program from an infringing copy of the computer program.

## 47G  Unauthorised use of copies or information

(1) If:

(a) a reproduction or adaptation of a literary work that is a computer program is made under a prescribed provision; and

(b) the reproduction or adaptation, or any information derived from it, is, without the consent of the owner of the copyright in the computer program, used, or sold or otherwise supplied to a person, for a purpose other than a purpose specified in the prescribed provision;

the prescribed provision does not apply, and is taken never to have applied, to the making of the reproduction or adaptation.

(2) For the purposes of this section, sections 47B, 47C, 47D, 47E and 47F are prescribed provisions.

## 47H  Agreements excluding operation of certain provisions

An agreement, or a provision of an agreement, that excludes or limits, or has the effect of excluding or limiting, the operation of subsection 47B(3), or section 47C, 47D, 47E or 47F, has no effect.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 4B—Acts not constituting infringements of copyright in artistic works

## 47J  Reproducing photograph in different format for private use

(1) This section applies if:

    (a) the owner of a photograph (the ***original photograph***) makes a reproduction (the ***main copy***) of it for his or her private and domestic use instead of the original photograph; and

    (b) the original photograph itself is not an infringing copy of a work or published edition of a work; and

    (c) either:

        (i) the original photograph is in hardcopy form and the main copy is in electronic form; or

        (ii) the original photograph is in electronic form and the main copy is in hardcopy form; and

    (d) at the time the owner makes the main copy, he or she has not made, and is not making, another reproduction of the original photograph that embodies the original photograph in a form substantially identical to the form of the main copy.

For this purpose, disregard a temporary reproduction of the original photograph incidentally made as a necessary part of the technical process of making the main copy.

(2) The making of the main copy is not an infringement of copyright:

    (a) in the original photograph; or

    (b) in a work, or published edition of a work, included in the original photograph.

*Dealing with main copy may make it an infringing copy*

(3) Subsection (2) is taken never to have applied if the main copy is:

    (a) sold; or

    (b) let for hire; or

    (c) by way of trade offered or exposed for sale or hire; or

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part III**  Copyright in original literary, dramatic, musical and artistic works
**Division 4B**  Acts not constituting infringements of copyright in artistic works

Section 47J

(d)  distributed for the purpose of trade or otherwise.

> Note:  If the main copy is dealt with as described in subsection (3), then copyright may be infringed not only by the making of the main copy but also by the dealing with the main copy.

(4)  To avoid doubt, paragraph (3)(d) does not apply to a loan of the main copy by the lender to a member of the lender's family or household for the member's private and domestic use.

*Reproducing main copy may infringe copyright*

(5)  Subsection (2) does not prevent the main copy from being an infringing copy for the purpose of working out whether this section applies again in relation to the making of a reproduction of the main copy.

*Disposal of original may make the main copy an infringing copy*

(6)  Subsection (2) is taken never to have applied if the owner of the original photograph disposes of it to another person.

*Status of temporary reproduction*

(7)  If subsection (2) applies to the making of the main copy only as a result of disregarding the incidental making of a temporary reproduction of the original photograph as a necessary part of the technical process of making the main copy, then:

(a)  if the temporary reproduction is destroyed at the first practicable time during or after the making of the main copy—the making of the temporary reproduction does not infringe copyright in the original photograph or a work, or published edition of a work, included in the original photograph; or

(b)  if the temporary reproduction is not destroyed at that time—the making of the temporary reproduction is taken always to have infringed copyright (if any) subsisting in the original photograph or a work, or published edition of a work, included in the original photograph.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 5—Copying of works in libraries or archives

## 48  Interpretation

In this Division, a reference to an article contained in a periodical publication shall be read as a reference to anything (other than an artistic work) appearing in such a publication.

## 48A  Copying by Parliamentary libraries for members of Parliament

The copyright in a work is not infringed by anything done, for the sole purpose of assisting a person who is a member of a Parliament in the performance of the person's duties as such a member, by an authorized officer of a library, being a library the principal purpose of which is to provide library services for members of that Parliament.

## 49  Reproducing and communicating works by libraries and archives for users

(1) A person may furnish to the officer in charge of a library or archives:

(a) a request in writing to be supplied with a reproduction of an article, or a part of an article, contained in a periodical publication or of the whole or a part of a published work other than an article contained in a periodical publication, being a periodical publication or a published work held in the collection of a library or archives; and

(b) a declaration signed by him or her stating:

(i) that he or she requires the reproduction for the purpose of research or study and will not use it for any other purpose; and

(ii) that he or she has not previously been supplied with a reproduction of the same article or other work, or the same part of the article or other work, as the case may be, by an authorized officer of the library or archives.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 49

(2)  Subject to this section, where a request and declaration referred to in subsection (1) are furnished to the officer in charge of a library or archives, an authorized officer of the library or archives may, unless the declaration contains a statement that to his or her knowledge is untrue in a material particular, make, or cause to be made, the reproduction to which the request relates and supply the reproduction to the person who made the request.

Note:    The reproduction could be made from another reproduction of the article or published work in the collection of the library or archives that was made without infringing copyright because of subsection 113H(1) (Preservation).

(2A)  A person may make to an authorized officer of a library or archives:

(a)  a request to be supplied with a reproduction of an article, or part of an article, contained in a periodical publication, or of the whole or a part of a published work other than an article contained in a periodical publication, being a periodical publication or a published work held in the collection of a library or archives; and

(b)  a declaration to the effect that:

(i)  the person requires the reproduction for the purpose of research or study and will not use it for any other purpose;

(ii)  the person has not previously been supplied with a reproduction of the same article or other work, or the same part of the article or other work, as the case may be, by an authorized officer of the library or archives; and

(iii)  by reason of the remoteness of the person's location, the person cannot conveniently furnish to the officer in charge of the library or archives a request and declaration referred to in subsection (1) in relation to the reproduction soon enough to enable the reproduction to be supplied to the person before the time by which the person requires it.

*Copyright Act 1968*

Replaced Authorised Version registered 10/02/2025 C2024C00854

(2B)  A request or declaration referred to in subsection (2A) is not required to be made in writing.

(2C)  Subject to this section, where:

(a)  a request and declaration referred to in subsection (2A) are made by a person to an authorized officer of a library or archives; and

(b)  the authorized officer makes a declaration setting out particulars of the request and declaration made by the person and stating that:

(i)  the declaration made by the person, so far as it relates to the matters specified in subparagraphs (2A)(b)(i) and (ii), does not contain a statement that, to the knowledge of the authorized officer, is untrue in a material particular; and

(ii)  the authorized officer is satisfied that the declaration made by the person is true so far as it relates to the matter specified in subparagraph (2A)(b)(iii);

an authorized officer of the library or archives may make, or cause to be made, the reproduction to which the request relates and supply the reproduction to the person.

Note:    The reproduction could be made from another reproduction of the article or published work in the collection of the library or archives that was made without infringing copyright because of subsection 113H(1) (Preservation).

(3)  Where a charge is made for making and supplying a reproduction to which a request under subsection (1) or (2A) relates, subsection (2) or (2C), as the case may be, does not apply in relation to the request if the amount of the charge exceeds the cost of making and supplying the reproduction.

(4)  Subsection (2) or (2C) does not apply in relation to a request for a reproduction of, or parts of, 2 or more articles contained in the same periodical publication unless the articles are requested for the same research or course of study.

(5)  Subsection (2) or (2C) does not apply to a request for a reproduction of the whole of a work (other than an article

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

contained in a periodical publication), or to a reproduction of a part of such a work that contains more than a reasonable portion of the work unless:

(a) the work forms part of the library or archives collection; and

(b) before the reproduction is made, an authorized officer has, after reasonable investigation, made a declaration stating that he or she is satisfied that a reproduction (not being a second-hand reproduction) of the work cannot be obtained within a reasonable time at an ordinary commercial price.

(5AA) For the purposes of subsection (5), if the characteristics of the work are such that subsection 10(2) or (2A) is relevant to the question whether the reproduction contains only a reasonable portion of the work, then that question is to be determined solely by reference to subsection 10(2) or (2A) and not by reference to the ordinary meaning of *reasonable portion*.

(5AB) For the purposes of paragraph (5)(b), in determining whether a reproduction (not being a second-hand reproduction) of the work cannot be obtained within a reasonable time at an ordinary commercial price, the authorized officer must take into account:

(a) the time by which the person requesting the reproduction requires it; and

(b) the time within which a reproduction (not being a second-hand reproduction) of the work at an ordinary commercial price could be delivered to the person; and

(c) whether an electronic reproduction of the work can be obtained within a reasonable time at an ordinary commercial price.

(5A) If an article contained in a periodical publication, or a published work (other than an article contained in a periodical publication) is acquired, in electronic form, as part of a library or archives collection, the officer in charge of the library or archives may make it available online within the premises of the library or archives in such a manner that users cannot, by using any equipment supplied by the library or archives:

(a) make an electronic reproduction of the article or work; or

Replaced Authorised Version registered 10/02/2025 C2024C00854

(b)  communicate the article or work.

(6)  The copyright in an article contained in a periodical publication is not infringed by the making, in relation to a request under subsection (1) or (2A), of a reproduction of the article, or of a part of the article, in accordance with subsection (2) or (2C), as the case may be, unless the reproduction is supplied to a person other than the person who made the request.

(7)  The copyright in a published work other than an article contained in a periodical publication is not infringed by the making, in relation to a request under subsection (1) or (2A), of a reproduction of the work, or of a part of the work, in accordance with subsection (2) or (2C), as the case may be, unless the reproduction is supplied to a person other than the person who made the request.

(7A)  Subsections (6) and (7) do not apply to the making under subsection (2) or (2C) of an electronic reproduction of:

(a)  an article, or a part of an article, contained in a periodical publication; or

(b)  the whole or part of a published work, other than such an article;

in relation to a request under this section for communication to the person who made the request unless:

(c)  before or when the reproduction is communicated to the person, the person is notified in accordance with the regulations:

(i)  that the reproduction has been made under this section and that the article or work might be subject to copyright protection under this Act; and

(ii)  about such other matters (if any) as are prescribed; and

(d)  as soon as practicable after the reproduction is communicated to the person, the reproduction made under subsection (2) or (2C) and held by the library or archives is destroyed.

(7B)  It is not an infringement of copyright in an article contained in a periodical publication, or of copyright in a published work, to communicate it in accordance with subsection (2), (2C) or (5A).

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part III** Copyright in original literary, dramatic, musical and artistic works
**Division 5** Copying of works in libraries or archives

Section 50

(8) The regulations may exclude the application of subsection (6) or (7) in such cases as are specified in the regulations.

(9) In this section:

*archives* means an archives all or part of whose collection is accessible to members of the public.

*library* means a library all or part of whose collection is accessible to members of the public directly or through interlibrary loans.

*supply* includes supply by way of a communication.

Note:    Under section 203F, it is an offence to make a false or misleading declaration for the purposes of this section. Sections 203A and 203G create offences relating to the keeping of declarations made for the purposes of this section.

## 50  Reproducing and communicating works by libraries or archives for other libraries or archives

(1) The officer in charge of a library may request, or cause another person to request, the officer in charge of another library to supply the officer in charge of the first-mentioned library with a reproduction of an article, or a part of an article, contained in a periodical publication, or of the whole or a part of a published work other than an article contained in a periodical publication, being a periodical publication or a published work held in the collection of a library:

  (a) for the purpose of including the reproduction in the collection of the first-mentioned library;

 (aa) in a case where the principal purpose of the first-mentioned library is to provide library services for members of a Parliament—for the purpose of assisting a person who is a member of that Parliament in the performance of the person's duties as such a member; or

  (b) for the purpose of supplying the reproduction to a person who has made a request for the reproduction under section 49.

Replaced Authorised Version registered 10/02/2025 C2024C00854

(2) Subject to this section, where a request is made by or on behalf of the officer in charge of a library to the officer in charge of another library under subsection (1), an authorized officer of the last-mentioned library may make, or cause to be made, the reproduction to which the request relates and supply the reproduction to the officer in charge of the first-mentioned library.

> Note: The reproduction could be made from another reproduction of the article or published work in the collection of the other library that was made without infringing copyright because of subsection 113H(1) (Preservation).

(3) Where, under subsection (2), an authorized officer of a library makes, or causes to be made, a reproduction of the whole or part of a work (including an article contained in a periodical publication) and supplies it to the officer in charge of another library in accordance with a request made under subsection (1):

    (a) the reproduction shall, for all purposes of this Act, be deemed to have been made on behalf of an authorized officer of the other library for the purpose for which the reproduction was requested; and

    (b) an action shall not be brought against the body administering that first-mentioned library, or against any officer or employee of that library, for infringement of copyright by reason of the making or supplying of that reproduction.

(4) Subject to this section, if a reproduction of the whole or a part of an article contained in a periodical publication, or of any other published work, is, by virtue of subsection (3), taken to have been made on behalf of an authorised officer of a library, the copyright in the article or other work is not infringed:

    (a) by the making of the reproduction; or

    (b) if the work is supplied under subsection (2) by way of a communication—by the making of the communication.

(5) The regulations may exclude the application of subsection (4) in such cases as are specified in the regulations.

(6) Where a charge is made for making and supplying a reproduction to which a request under subsection (1) relates, subsection (3) does

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part III**  Copyright in original literary, dramatic, musical and artistic works
**Division 5**  Copying of works in libraries or archives

Section 50

not apply in relation to the request if the amount of the charge exceeds the cost of making and supplying the reproduction.

(7)  Where:

(a)  a reproduction (in this subsection referred to as the ***relevant reproduction***) of, or of a part of, an article, or of the whole or a part of another work, is supplied under subsection (2) to the officer in charge of a library; and

(b)  a reproduction of the same article or other work, or of the same part of the article or other work, as the case may be, has previously been supplied under subsection (2) for the purpose of inclusion in the collection of the library;

subsection (4) does not apply to or in relation to the relevant reproduction unless, as soon as practicable after the request under subsection (1) relating to the relevant reproduction is made, an authorized officer of the library makes a declaration:

(c)  setting out particulars of the request (including the purpose for which the relevant reproduction was requested); and

(d)  stating that the reproduction referred to in paragraph (b) has been lost, destroyed or damaged, as the case requires.

(7A)  If:

(a)  a reproduction is made of the whole of a work (other than an article contained in a periodical publication) or of a part of such a work, being a part that contains more than a reasonable portion of the work; and

(b)  the work from which the reproduction is made is in hardcopy form; and

(c)  the reproduction is supplied under subsection (2) to the officer in charge of a library;

subsection (4) does not apply in relation to the reproduction unless:

(d)  in a case where the principal purpose of the library is to provide library services for members of a Parliament—the reproduction is so supplied for the purpose of assisting a person who is a member of that Parliament in the performance of the person's duties as such a member; or

Replaced Authorised Version registered 10/02/2025 C2024C00854

    (e) as soon as practicable after the request under subsection (1) relating to the reproduction is made, an authorized officer of the library makes a declaration:

       (i) setting out particulars of the request (including the purpose for which the reproduction was requested); and

       (ii) stating that, after reasonable investigation, the authorized officer is satisfied that a copy (not being a second-hand copy) of the work cannot be obtained within a reasonable time at an ordinary commercial price.

(7B) If:

    (a) a reproduction is made of the whole of a work (including an article contained in a periodical publication) or of a part of such a work, whether or not the part contains more than a reasonable portion of the work; and

    (b) the work from which the reproduction is made is in electronic form; and

    (c) the reproduction is supplied under subsection (2) to the officer in charge of a library;

subsection (4) does not apply in relation to the reproduction unless:

    (d) in a case where the principal purpose of the library is to provide library services for members of a Parliament—the reproduction is so supplied for the purpose of assisting a person who is a member of that Parliament in the performance of the person's duties as such a member; or

    (e) as soon as practicable after the request under subsection (1) relating to the reproduction is made, an authorized officer of the library makes a declaration:

       (i) setting out particulars of the request (including the purpose for which the reproduction was requested); and

       (ii) if the reproduction is of the whole, or of more than a reasonable portion, of a work other than an article—stating that, after reasonable investigation, the authorised officer is satisfied that the work cannot be obtained in electronic form within a reasonable time at an ordinary commercial price; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

(iii) if the reproduction is of a reasonable portion, or less than a reasonable portion, of a work other than an article—stating that, after reasonable investigation, the authorised officer is satisfied that the portion cannot be obtained in electronic form, either separately or together with a reasonable amount of other material, within a reasonable time at an ordinary commercial price; and

(iv) if the reproduction is of the whole or of a part of an article—stating that, after reasonable investigation, the authorised officer is satisfied that the article cannot be obtained on its own in electronic form within a reasonable time at an ordinary commercial price.

(7BA) For the purposes of subsections (7A) and (7B), if the characteristics of the work are such that subsection 10(2) or (2A) is relevant to the question whether the reproduction contains only a reasonable portion of the work, then that question is to be determined solely by reference to subsection 10(2) or (2A) and not by reference to the ordinary meaning of *reasonable portion*.

(7BB) For the purposes of subparagraphs (7A)(e)(ii) and (7B)(e)(ii), (iii) and (iv), in determining whether a copy of the work, the work, the portion of the work or the article (as appropriate) cannot be obtained within a reasonable time at an ordinary commercial price, the authorized officer must take into account:

(a) the time by which the person requesting the reproduction under section 49 requires the reproduction; and

(b) the time within which a reproduction (not being a second-hand reproduction) of the work at an ordinary commercial price could be delivered to the person; and

(c) whether the copy, work, portion or article can be obtained in electronic form within a reasonable time at an ordinary commercial price.

(7C) If:

(a) a reproduction is made in electronic form by or on behalf of an authorised officer of a library of the whole of a work

Replaced Authorised Version registered 10/02/2025 C2024C00854

(including an article contained in a periodical publication) or of a part of such a work; and

   (b)  the reproduction is supplied under subsection (2) to the officer in charge of another library;

subsection (3) does not apply in relation to the reproduction unless, as soon as practicable after the reproduction is supplied to the other library the reproduction made for the purpose of the supply and held by the first-mentioned library is destroyed.

  (8)  Subsection (4) does not apply to a reproduction or communication of all or part of 2 or more articles that are contained in the same periodical publication and that have been requested for the same purpose unless:

   (a)  the purpose is the one described in paragraph (1)(aa) (assisting a member of a Parliament perform his or her duties); or

   (b)  the purpose is the one described in paragraph (1)(b) (supplying a reproduction to a person requesting it under section 49 for research or study) and the reproduction of the articles was requested under section 49 for the same research or course of study.

  (10)  In this section:

*library* means:

   (a)  a library all or part of whose collection is accessible to members of the public directly or through interlibrary loans; or

   (b)  a library whose principal purpose is to provide library services for members of a Parliament; or

   (c)  an archives all or part of whose collection is accessible to members of the public.

*supply* includes supply by way of a communication.

Note:    Under section 203F, it is an offence to make a false or misleading declaration for the purposes of this section. Sections 203A and 203G create offences relating to the keeping of declarations made for the purposes of this section.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part III** Copyright in original literary, dramatic, musical and artistic works
**Division 5** Copying of works in libraries or archives

Section 51

## 51  Reproducing and communicating unpublished works in libraries or archives

(1) Where, at a time more than 50 years after the end of the calendar year in which the author of a literary, dramatic, musical or artistic work died, copyright subsists in the work but:

    (a) the work has not been published; and

    (b) a reproduction of the work, or, in the case of a literary, dramatic or musical work, the manuscript of the work, is kept in the collection of a library or archives where it is, subject to any regulations governing that collection, open to public inspection;

the copyright in the work is not infringed:

    (c) by the making or communication of a reproduction of the work by a person for the purposes of research or study or with a view to publication; or

    (d) by the making or communication of a reproduction of the work by, or on behalf of, the officer in charge of the library or archives if the reproduction is supplied (whether by way of communication or otherwise) to a person who satisfies the officer in charge of the library or archives that the person requires the reproduction for the purposes of research or study, or with a view to publication, and that the person will not use it for any other purpose.

(2) If the manuscript, or a reproduction, of an unpublished thesis or other similar literary work is kept in a library of a university or other similar institution, or in an archives, the copyright in the thesis or other work is not infringed by the making or communication of a reproduction of the thesis or other work by or on behalf of the officer in charge of the library or archives if the reproduction is supplied (whether by communication or otherwise) to a person who satisfies an authorized officer of the library or archives that he or she requires the reproduction for the purposes of research or study.

*Copyright Act 1968*

Replaced Authorised Version registered 10/02/2025 C2024C00854

### 51AA  Reproducing and communicating works in care of National Archives of Australia

(1) The copyright in a work that is kept in the collection of an archives covered by subparagraph (a)(i) or paragraph (aa) of the definition of ***archives*** in subsection 10(1), where it is open to public inspection, is not infringed by the making or communication by, or on behalf of, the officer in charge of the archives:

   (a) of a single working copy of the work; or

   (b) of a single reference copy of the work for supply to the central office of the National Archives of Australia; or

   (c) on the written request for a reference copy of the work by an officer of the National Archives of Australia in a regional office of the Archives, where the officer in charge is satisfied that a reference copy of the work has not been previously supplied to that regional office—of a single reference copy of the work for supply to that regional office; or

   (d) where the officer in charge is satisfied that a reference copy of the work supplied to a regional office of the National Archives of Australia is lost, damaged or destroyed and an officer of the Archives in that regional office makes a written request for a replacement copy of the work—of a single replacement copy of the work for supply to that regional office; or

   (e) where the officer in charge is satisfied that a reference copy of the work supplied to the central office of the National Archives of Australia is lost, damaged or destroyed—of a single replacement copy of the work for supply to that central office.

(2) In this section:

***reference copy***, in relation to a work, means a reproduction of the work made from a working copy for supply to the central office, or to a regional office, of the National Archives of Australia for use by that office in providing access to the work to members of the public.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 52

*replacement copy*, in relation to a work, means a reproduction of the work made from a working copy for the purpose of replacing a reference copy of the work that is lost, damaged or destroyed.

*working copy*, in relation to a work, means a reproduction of the work made for the purpose of enabling the National Archives of Australia to retain the copy and use it for making reference copies and replacement copies of the work.

## 52  Publication of unpublished works kept in libraries or archives

(1) Where:

(a) a published literary, dramatic or musical work (in this section referred to as *the new work*) incorporates the whole or a part of a work (in this section referred to as *the old work*) to which subsection 51(1) applied immediately before the new work was published;

(b) before the new work was published, the prescribed notice of the intended publication of the work had been given; and

(c) immediately before the new work was published, the identity of the owner of the copyright in the old work was not known to the publishers of the new work;

then, for the purposes of this Act, the first publication of the new work, and any subsequent publication of the new work whether in the same or in an altered form, shall, in so far as it constitutes a publication of the old work, be deemed not to be an infringement of the copyright in the old work or an unauthorized publication of the old work.

(2) The last preceding subsection does not apply to a subsequent publication of the new work incorporating a part of the old work that was not included in the first publication of the new work unless:

(a) subsection 51(1) would, but for this section, have applied to that part of the old work immediately before that subsequent publication;

(b) before that subsequent publication, the prescribed notice of the intended publication had been given; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

(c) immediately before that subsequent publication, the identity of the owner of the copyright in the old work was not known to the publisher of that subsequent publication.

(3) If a work, or part of a work, has been published and, because of this section, the publication is taken not to be an infringement of the copyright in the work, the copyright in the work is not infringed by a person who, after the publication took place:

(a) broadcasts the work, or that part of the work; or

(b) electronically transmits the work, or that part of the work (other than in a broadcast) for a fee payable to the person who made the transmission; or

(c) performs the work, or that part of the work, in public; or

(d) makes a record of the work, or that part of the work.

## 53  Application of Division to illustrations accompanying articles and other works

Where an article, thesis or literary, dramatic or musical work is accompanied by artistic works provided for the purpose of explaining or illustrating the article, thesis or other work (in this section referred to as *the illustrations*), the preceding sections of this Division apply as if:

(a) where any of those sections provides that the copyright in the article, thesis or work is not infringed—the reference to that copyright included a reference to any copyright in the illustrations; and

(b) a reference in section 49, section 50 or section 51 to a reproduction of the article, thesis or work included a reference to a reproduction of the article, thesis or work together with a reproduction of the illustrations; and

(c) a reference in section 49 or section 50 to a reproduction of a part of the article or work included a reference to a reproduction of that part of the article or work together with a reproduction of the illustrations that were provided for the purpose of explaining or illustrating that part; and

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 53

(d) a reference in section 52 to the doing of any act in relation to the work included a reference to the doing of that act in relation to the work together with the illustrations.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 6—Recording of musical works

## 54  Interpretation

(1A)  In this Division:

*record* means a disc, tape, paper or other device in which sounds are embodied.

(1)  For the purposes of this Division:

    (a)  a reference to a musical work shall be read as a reference to the work in its original form or to an adaptation of the work;

    (b)  a reference to the owner of the copyright in a literary, dramatic or musical work shall, unless the contrary intention appears, be read as a reference to the person who is entitled to authorize the making in, and the importation into, Australia of records of the work; and

    (c)  a reference to sale of a record by retail or to retail sale of a record shall be read as not including a reference to:

        (i)  sale for a consideration not consisting wholly of money; or

        (ii)  sale by a person not ordinarily carrying on the business of making or selling records.

(2)  For the purposes of this Division, where a musical work is comprised partly in one record and partly in another record or other records, all the records shall be treated as if they constituted a single record.

(3)  A reference in this Division to a record of a musical work does not include a reference to a sound-track associated with visual images forming part of a cinematograph film.

(4)  Subject to subsection (5), this Division applies to a record of a part of a musical work as it applies to a record of the whole work.

(5)  Section 55:

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part III** Copyright in original literary, dramatic, musical and artistic works
**Division 6** Recording of musical works

Section 55

---

(a) does not apply to a record of a whole work unless the previous record referred to in paragraph 55(1)(a) was a record of the whole work; and

(b) does not apply to a record of a part of a work unless that previous record was a record of that part of the work.

*Original form*

(6) The definition of ***original form*** in subsection 10(1) does not apply in this Division.

## 55 Conditions upon which manufacturer may make records of musical work

(1) Subject to this Division, the copyright in a musical work is not infringed by a person (in this section referred to as ***the manufacturer***) who makes, in Australia, a record of the work if:

(a) a record of the work:

(i) has previously been made in, or imported into, Australia for the purpose of retail sale and was so made or imported by, or with the licence of, the owner of the copyright in the work;

(ii) has previously been made in Australia for use in making other records for the purpose of retail sale and was so made by, or with the licence of, the owner of the copyright in the work;

(iii) has previously been made in, or imported into, a country other than Australia for the purpose of retail sale, being a country that, at the time of the previous making or importation, was specified in the regulations to be a country in relation to which this Division applies, and was so made or imported by, or with the licence of, the person who was, under the law of that country, the owner of the copyright in the work; or

(iv) has previously been made in a country other than Australia for use in making other records for the purpose of retail sale, being a country that, at the time of

---

*Copyright Act 1968*

Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

the previous making, was specified in the regulations to be a country in relation to which this Division applies, and was so made by, or with the licence of, the person who was, under the law of that country, the owner of the copyright in the work;

(b) before the making of the record, the prescribed notice of the intended making of the record was given to the owner of the copyright;

(c) the manufacturer intends to sell the record by retail, or to supply it for the purpose of its being sold by retail by a person other than the manufacturer, or intends to use it for making other records that are to be so sold or supplied; and

(d) where the record is so sold or supplied by the manufacturer:

    (i) the sale or supply is made with the licence of the owner of the copyright; and

    (ii) the prescribed royalty is paid to the owner of the copyright in the manner agreed between the manufacturer and the owner of the copyright or, failing such agreement, determined by the Copyright Tribunal under section 152B.

(3) Subparagraph (1)(d)(i) does not apply in relation to a record of a work (other than a work that was made for the purpose of being performed, or has been performed, in association with a dramatic work or has been included in a cinematograph film) if the sale or supply is made after the expiration of the prescribed period after the earliest of the following dates:

(a) the date of the first making in, or the date of the first importation into, Australia of a previous record of the work in circumstances referred to in subparagraph (1)(a)(i) or (ii);

(b) the date of the first supplying (whether by sale or otherwise) to the public in a country referred to in subparagraph (1)(a)(iii) or (iv) of a previous record of the work made in, or imported into, that country in circumstances referred to in that subparagraph.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part III  Copyright in original literary, dramatic, musical and artistic works
Division 6  Recording of musical works

Section 57

(4) Regulations prescribing a period for the purposes of the last preceding subsection may prescribe different periods in relation to different classes of records.

(5) If, apart from this subsection, the amount of royalty payable in respect of a record under this section would be less than one cent, that amount of royalty is one cent.

(6) In this section:

*prescribed royalty*, in relation to a record of a musical work, means:

(a) such amount of royalty as is agreed between the manufacturer and the owner of the copyright in the work or, failing such agreement, as is determined by the Copyright Tribunal under section 152A; or

(b) if no such agreement or determination is in force—an amount equal to 6.25% of the retail selling price of the record.

## 57  Provisions relating to royalty where 2 or more works are on the one record

Where a record comprises 2 or more musical works, whether or not there is any other matter comprised in the record:

(a) if the record includes a work in which copyright does not subsist or works in which copyrights do not subsist the royalty payable in respect of the record is, subject to the next succeeding paragraph, the amount that bears to the amount that, but for this section, would be the amount of the royalty the same proportion as the number of works in the record in which copyrights subsist bears to the total number of works in the record; and

(b) if the record includes 2 or more works in which copyrights subsist:

(i) subject to this Division, the royalty payable in respect of the record shall not be less than One cent in respect of each work in the record in which copyright subsists; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

      (ii) if the owners of the copyrights in the works in the record in which copyrights subsist are different persons there shall be paid to the owner of the copyright in each work, in respect of that work, an amount ascertained by dividing the amount of the royalty payable in respect of the record by the number of works in the record in which copyrights subsist.

### 59  Conditions upon which manufacturer may include part of a literary or dramatic work in a record of a musical work

(1) Where:

  (a) a person makes in Australia a record comprising the performance of a musical work in which words are sung, or are spoken incidentally to or in association with the music, whether or not there is any other matter comprised in the record;

  (b) copyright does not subsist in that work or, if copyright so subsists, the requirements specified in subsection 55(1) are complied with in relation to that copyright;

  (c) the words consist or form part of a literary or dramatic work in which copyright subsists;

  (d) a record of the musical work in which those words, or words substantially the same as those words, were sung, or were spoken incidentally to or in association with the music:

    (i) has previously been made in, or imported into, Australia for the purpose of retail sale and was so made or imported by, or with the licence of, the owner of the copyright in the literary or dramatic work;

    (ii) has previously been made in Australia for use in making other records for the purpose of retail sale and was so made by, or with the licence of, the owner of the copyright in the literary or dramatic work;

    (iii) has previously been made in, or imported into, a country other than Australia for the purpose of retail sale, being a country that, at the time of the previous making or importation, was specified in the regulations to be a

Replaced Authorised Version registered 10/02/2025 C2024C00854

country in relation to which this Division applies, and was so made or imported by, or with the licence of, the person who was, under the law of that country, the owner of the copyright in the literary or dramatic work; or

    (iv) has previously been made in a country other than Australia for use in making other records for the purpose of retail sale, being a country that, at the time of the previous making, was specified in the regulations to be a country in relation to which this Division applies, and was so made by, or with the licence of, the person who was, under the law of that country, the owner of the copyright in the literary or dramatic work; and

  (e) the like notice was given to the owner of the copyright in the literary or dramatic work as is required by paragraph 55(1)(b) to be given to the owner of the copyright (if any) in the musical work and there is paid to the owner of the copyright in the literary or dramatic work such amount (if any) as is ascertained in accordance with this section;

the making of the record does not constitute an infringement of the copyright in the literary or dramatic work.

(2) Where copyright does not subsist in the musical work, the amount to be paid in respect of the literary or dramatic work is an amount equal to the royalty that, but for this section, would have been payable in respect of the musical work if copyright had subsisted in the musical work.

(3) Where copyright subsists in the musical work as well as in the literary or dramatic work:

  (a) if the copyrights in those works are owned by the same person—an amount is not payable in respect of the literary or dramatic work; or

  (b) if the copyrights in those works are owned by different persons—the royalty that, but for this section, would have been payable in respect of the musical work shall be apportioned between them in such manner as they agree, or,

Replaced Authorised Version registered 10/02/2025 C2024C00854

in default of the agreement, as is determined by the Copyright Tribunal on the application of either of them.

(4) Where the owner of the copyright in a musical work and the owner of the copyright in a literary or dramatic work do not agree on the manner in which an amount is to be apportioned between them but the person who made the record gives an undertaking in writing to each owner to pay to him or her the portion of that amount that the Tribunal determines to be payable to him or her, then:

(a) paragraph 55(1)(d) and paragraph (1)(e) of this section have effect as if the payments referred to in those paragraphs had been made; and

(b) the person who made the record is liable, when the amount to which an undertaking relates is determined, to pay that amount to the owner of the copyright to whom the undertaking was given and the owner may recover that amount in a court of competent jurisdiction from that person as a debt due to the owner.

## 60  Records made partly for retail sale and partly for gratuitous disposal

Where a person makes, in Australia, a number of records embodying the same sound recording, being a recording of a musical work or of a musical work and of words consisting or forming part of a literary or dramatic work, with the intention of:

(a) selling by retail, or supplying for sale by retail by another person, a substantial proportion of the records (in this section referred to as *the records made for retail sale*); and

(b) disposing gratuitously of the remainder of the records or supplying the remainder of the records for gratuitous disposal by another person;

this Division applies in relation to the records other than the records made for retail sale as if:

(c) those records had been made with the intention of selling them by retail or of supplying them for sale by retail by another person;

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part III**  Copyright in original literary, dramatic, musical and artistic works
**Division 6**  Recording of musical works

Section 61

---

(d) the gratuitous disposal of those records by the maker of the records, or the supplying of those records by the maker of the records for gratuitous disposal by another person, were a sale of the records by retail; and

(e) the retail selling price of those records were the same as the retail selling price of the records made for retail sale.

## 61  Making inquiries in relation to previous records

Where:

(a) a person makes inquiries, as prescribed, for the purpose of ascertaining whether a record of a musical work, or a record of a musical work in which words consisting or forming part of a literary or dramatic work were sung or spoken, has previously been made in, or imported into, Australia by, or with the licence of, the owner of the copyright in the musical work or in the literary or dramatic work, as the case may be, for the purpose of retail sale or for use in making other records for the purpose of retail sale; and

(b) an answer to those inquiries is not received within the prescribed period;

a record of that musical work, or a record of that work in which those words were sung or spoken, as the case may be, shall, for the purposes of the application of this Division:

(c) in relation to the person who made the inquiries; or

(d) in relation to a person who makes records of the musical work, or records of that work in which those words or substantially the same words are sung or spoken, for the purpose of supplying those records to the person who made the inquiries in pursuance of an agreement entered into between those persons for the making of the records;

be taken to have been previously made in, or imported into, Australia with the licence of the owner of that copyright for the purpose of retail sale or for use in making other records for the purpose of retail sale, as the case may be.

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

## 64  Sections 55 and 59 to be disregarded in determining whether an infringement has been committed by the importation of records

For the purpose of any provision of this Act relating to imported articles, in determining whether the making of a record made outside Australia would have constituted an infringement of copyright if the record had been made in Australia by the importer, sections 55 and 59 shall be disregarded.

Replaced Authorised Version registered 10/02/2025 C2024C00854

## Division 7—Acts not constituting infringements of copyright in artistic works

### 65  Sculptures and certain other works in public places

(1) This section applies to sculptures and to works of artistic craftsmanship of the kind referred to in paragraph (c) of the definition of *artistic work* in section 10.

(2) The copyright in a work to which this section applies that is situated, otherwise than temporarily, in a public place, or in premises open to the public, is not infringed by the making of a painting, drawing, engraving or photograph of the work or by the inclusion of the work in a cinematograph film or in a television broadcast.

### 66  Buildings and models of buildings

The copyright in a building or a model of a building is not infringed by the making of a painting, drawing, engraving or photograph of the building or model or by the inclusion of the building or model in a cinematograph film or in a television broadcast.

### 67  Incidental filming or televising of artistic works

Without prejudice to the last two preceding sections, the copyright in an artistic work is not infringed by the inclusion of the work in a cinematograph film or in a television broadcast if its inclusion in the film or broadcast is only incidental to the principal matters represented in the film or broadcast.

### 68  Publication of artistic works

The copyright in an artistic work is not infringed by the publication of a painting, drawing, engraving, photograph or cinematograph film if, by virtue of section 65, section 66 or section 67, the making

Replaced Authorised Version registered 10/02/2025 C2024C00854

of that painting, drawing, engraving, photograph or film did not constitute an infringement of the copyright.

## 70 Reproduction for purpose of including work in television broadcast

(1) Where the inclusion of an artistic work in a television broadcast made by a person would not (whether by reason of an assignment or licence or of the operation of a provision of this Act) constitute an infringement of copyright in the work but the making by the person of a cinematograph film of the work would, apart from this subsection, constitute such an infringement, the copyright in the work is not infringed by the making by the person of such a film solely for the purpose of the inclusion of the work in a television broadcast.

(2) The last preceding subsection does not apply in relation to a film if a copy of the film is used for a purpose other than:

(a) the inclusion of the work in a television broadcast in circumstances that do not (whether by reason of an assignment or licence or of the operation of a provision of this Act) constitute an infringement of the copyright in the work; or

(b) the making of further copies of the film for the purpose of the inclusion of the work in such a broadcast.

(3) Subsection (1) does not apply in relation to a film where a copy of the film is used for the purpose of the inclusion of the work in a television broadcast made by a person who is not the maker of the film unless the maker has paid to the owner of the copyright in the work such amount as they agree or, in default of agreement, has given an undertaking in writing to the owner to pay to the owner such amount as is determined by the Copyright Tribunal, on the application of either of them, to be equitable remuneration to the owner for the making of the film.

(4) A person who has given an undertaking referred to in the last preceding subsection is liable, when the Copyright Tribunal has determined the amount to which the undertaking relates, to pay that

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 72

amount to the owner of the copyright in the work and the owner may recover that amount in a court of competent jurisdiction from the person as a debt due to the owner.

(5) Subsection (1) does not apply in relation to a film unless, before the expiration of the period of 12 months commencing on the day on which any of the copies of the film is first used for including the work in a television broadcast in accordance with that subsection, or before the expiration of such further period, if any, as is agreed between the maker of the film and the owner of the copyright in the work, all the copies of the film are destroyed or are transferred, with the consent of the Director-General of the National Archives of Australia, to the care (within the meaning of the *Archives Act 1983*) of the National Archives of Australia.

(6) The Director-General of the National Archives of Australia must not consent to the transfer to the care of the National Archives of Australia in accordance with subsection (5) of a copy of a film unless he or she has certified that the film is of an exceptional documentary character.

## 72  Reproduction of part of work in later work

(1) The copyright in an artistic work is not infringed by the making of a later artistic work by the same author if, in making the later work, the author does not repeat or imitate the main design of the earlier work.

(2) The last preceding subsection has effect notwithstanding that part of the earlier work is reproduced in the later work and that, in reproducing the later work, the author used a mould, cast, sketch, plan, model or study made for the purposes of the earlier work.

## 73  Reconstruction of buildings

(1) Where copyright subsists in a building, the copyright is not infringed by a reconstruction of that building.

Replaced Authorised Version registered 10/02/2025 C2024C00854

(2)  Where a building has been constructed in accordance with architectural drawings or plans in which copyright subsists and has been so constructed by, or with the licence of, the owner of that copyright, that copyright is not infringed by a later reconstruction of the building by reference to those drawings or plans.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 74

## Division 8—Designs

### 74 Corresponding design

(1) In this Division:

*corresponding design*, in relation to an artistic work, means visual features of shape or configuration which, when embodied in a product, result in a reproduction of that work, whether or not the visual features constitute a design that is capable of being registered under the *Designs Act 2003*.

(2) For the purposes of subsection (1):

*embodied in*, in relation to a product, includes woven into, impressed on or worked into the product.

### 75 Copyright protection where corresponding design registered

Subject to section 76, where copyright subsists in an artistic work (whether made before the commencement of this section or otherwise) and a corresponding design is or has been registered under the *Designs Act 1906* or the *Designs Act 2003* on or after that commencement, it is not an infringement of that copyright to reproduce the work by embodying that, or any other, corresponding design in a product.

### 76 False registration of industrial designs under the *Designs Act 2003*

(1) This section applies if:

(a) proceedings (*copyright proceedings*) are brought under this Act in relation to an artistic work in which copyright subsists; and

(b) a corresponding design was registered under the *Designs Act 2003*; and

*Copyright Act 1968*

Replaced Authorised Version registered 10/02/2025 C2024C00854

    (c) the exclusive right in the design had not expired by effluxion of time before the copyright proceedings began; and

    (d) it is established in the copyright proceedings that:

       (i) none of the persons who are registered owners of the registered design are entitled persons in relation to the design; and

       (ii) none of those persons were registered with the knowledge of the owner of the copyright in the artistic work.

(2) Subject to subsection (3), for the purposes of the copyright proceedings:

    (a) the design is taken never to have been registered under the *Designs Act 2003*; and

    (b) section 75 does not apply in relation to anything done in respect of the design; and

    (c) nothing in the *Designs Act 2003* constitutes a defence.

(3) Ignore subsection (2) if it is established in the copyright proceedings that the act to which the proceedings relate was done:

    (a) by an assignee of, or under a licence granted by, the registered owner of the registered design; and

    (b) in good faith relying on the registration and without notice of any proceedings (whether or not before a court) to revoke the registration or to rectify the entry in the Register of Designs in relation to the design.

## 77 Application of artistic works as industrial designs without registration of the designs

(1) This section applies where:

    (a) copyright subsists in an artistic work (other than a building or a model of a building, or a work of artistic craftsmanship) whether made before the commencement of this section or otherwise;

    (b) a corresponding design is or has been applied industrially, whether in Australia or elsewhere, and whether before or

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 77

after the commencement of this section, by or with the licence of the owner of the copyright in the place of industrial application; and

(c) at any time on or after the commencement of this section, products to which the corresponding design has been so applied (the ***products made to the corresponding design***) are sold, let for hire or offered or exposed for sale or hire, whether in Australia or elsewhere; and

(d) at that time, the corresponding design is not registrable under the *Designs Act 2003* or has not been registered under that Act or under the *Designs Act 1906*.

(1A) This section also applies if:

(a) a complete specification that discloses a product made to the corresponding design; or

(b) a representation of a product made to the corresponding design and included in a design application;

is published in Australia, whether or not paragraphs (1)(b) and (c) are satisfied in relation to the corresponding design.

(2) It is not an infringement of the copyright in the artistic work to reproduce the work, on or after the day on which:

(a) products made to the corresponding design are first sold, let for hire or offered or exposed for sale or hire; or

(b) a complete specification that discloses a product made to the corresponding design is first published in Australia; or

(c) a representation of a product made to the corresponding design and included in a design application is first published in Australia;

by embodying that, or any other, corresponding design in a product.

(3) This section does not apply in relation to any articles or products in respect of which, at the time when they were sold, let for hire or offered or exposed for sale or hire, the corresponding design concerned was excluded from registration by regulations made under the *Designs Act 1906* or the *Designs Act 2003*, and, for the

*Copyright Act 1968*

Replaced Authorised Version registered 10/02/2025 C2024C00854

purposes of any proceedings under this Act, a design shall be conclusively presumed to have been so excluded if:

(a) before the commencement of the proceedings, an application for the registration of the design under the *Designs Act 1906* in respect of those articles, or under the *Designs Act 2003* in respect of those products, had been refused;

(b) the reason, or one of the reasons, given for the refusal was that the design was excluded from registration under that Act by regulations made under that Act; and

(c) when the proceedings were commenced, no appeal against the refusal had been allowed or was pending.

(4) The regulations may specify the circumstances in which a design is, for the purposes of this section, to be taken to be applied industrially.

(5) In this section:

**building or model of a building** does not include a portable building such as a shed, a pre-constructed swimming pool, a demountable building or similar portable building.

**complete specification** has the same meaning as in the *Patents Act 1990*.

**design application** has the same meaning as in the *Designs Act 2003*.

**representation**, in relation to a design, has the same meaning as in the *Designs Act 2003*.

## 77A  Certain reproductions of an artistic work do not infringe copyright

(1) It is not an infringement of copyright in an artistic work to reproduce the artistic work, or communicate that reproduction, if:

(a) the reproduction is derived from a three-dimensional product that embodies a corresponding design in relation to the artistic work; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 77A

      (b) the reproduction is in the course of, or incidental to:

          (i) making a product (the ***non-infringing product***), if the making of the product did not, or would not, infringe the copyright in the artistic work because of the operation of this Division; or

          (ii) selling or letting for hire the non-infringing product, offering or exposing the non-infringing product for sale or hire.

  (2) It is not an infringement of copyright in an artistic work to make a cast or mould embodying a corresponding design in relation to the artistic work, if:

      (a) the cast or mould is for the purpose of making products; and

      (b) the making of the products would not infringe copyright because of the operation of this Division.

Compilation No. 64                            Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 9—Works of joint authorship

## 78  References to all of joint authors

Subject to this Division, a reference in this Act to the author of a work shall, unless otherwise expressly provided by this Act, be read, in relation to a work of joint authorship, as a reference to all the authors of the work.

## 79  References to any one or more of joint authors

A reference in section 32 to the author of a work is taken to be a reference to any one or more of the authors of the work if the work is a work of joint authorship.

## 79A  References to the identity of none of joint authors being generally known

A reference in any of the following provisions to the identity of the author of a work not being generally known is taken to be a reference to the identity of none of the authors of the work being generally known if the work is a work of joint authorship:

(a)  item 3 of the table in subsection 33(2);

(b)  item 2 or 3 of the table in subsection 33(3).

## 80  References to whichever of joint authors died last

A reference in any of the following provisions to the author of a work is taken to be a reference to the author who died last if the work is a work of joint authorship to which section 81 does not apply:

(a)  item 1 or 2 of the table in subsection 33(2);

(b)  item 1 of the table in subsection 33(3);

(c)  section 51.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 81

### 81  Works of joint authorship published under pseudonyms

(1) This section applies to a work of joint authorship that was first published under 2 or more names of which one was a pseudonym or 2 or more (but not all) were pseudonyms.

(2) This section also applies to a work of joint authorship that was first published under 2 or more names all of which were pseudonyms if, at any time within 70 years after the end of the calendar year in which the work was first published, the identity of one or more (but not all) of the authors was generally known.

(3) A reference in any of the provisions mentioned in subsection (3A) to the author of the work is taken to be a reference to:

   (a) the author whose identity was disclosed; or

   (b) if the identity of 2 or more of the authors was disclosed— whichever of those authors died last.

(3A) The provisions are as follows:

   (a) item 1 or 2 of the table in subsection 33(2);

   (b) item 1 of the table in subsection 33(3).

(4) For the purposes of this section, the identity of an author shall be deemed to have been disclosed if:

   (a) one of the names under which the work was published was the name of that author; or

   (b) the identity of that author is generally known.

### 82  Copyright to subsist in joint works without regard to any author who is an unqualified person

(1) Subsection 35(2) has effect, in relation to a work of joint authorship of which one of the authors is an unqualified person, or 2 or more (but not all) of the authors are unqualified persons, as if the author or authors, other than unqualified persons, had alone been the author or authors, as the case may be, of the work.

(2) For the purposes of the last preceding subsection, a person is an unqualified person in relation to a work where, if he or she had

*Copyright Act 1968*

Replaced Authorised Version registered 10/02/2025 C2024C00854

alone been the author of the work, copyright would not have subsisted in the work by virtue of this Part.

## 83  Inclusion of joint works in collections for use in places of education

The reference in subsection 44(2) to other extracts from, or from adaptations of, works by the author of the extract concerned:

(a) shall be read as including a reference to extracts from, or from adaptations of, works by the author of the extract concerned in collaboration with any other person; or

(b) if the extract concerned is from, or from an adaptation of, a work of joint authorship shall be read as including a reference to extracts from, or from adaptations of, works by any one or more of the authors of the extract concerned, or by any one or more of those authors in collaboration with any other person.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 84

# Part IV—Copyright in subject-matter other than works

## Division 1—Preliminary

### 84  Definitions

In this Part:

*live performance* means:
  (a) a performance (including an improvisation) of a dramatic work, or part of such a work, including such a performance given with the use of puppets; or
  (b) a performance (including an improvisation) of a musical work or part of such a work; or
  (c) the reading, recitation or delivery of a literary work, or part of such a work, or the recitation or delivery of an improvised literary work; or
  (d) a performance of a dance; or
  (e) a performance of a circus act or a variety act or any similar presentation or show; or
  (f) a performance of an expression of folklore;
being a live performance, whether in the presence of an audience or otherwise.

*performer* in a live performance:
  (a) means each person who contributed to the sounds of the performance; and
  (b) if the performance includes a performance of a musical work—includes the conductor.

*qualified person* means:
  (a) an Australian citizen or a person (other than a body corporate) resident in Australia; or

Replaced Authorised Version registered 10/02/2025 C2024C00854

    (b)  a body corporate incorporated under a law of the
Commonwealth or of a State.

***sound recording of a live performance*** means a sound recording,
made at the time of the live performance, consisting of, or
including, the sounds of the performance.

Replaced Authorised Version registered 10/02/2025 C2024C00854

## Division 2—Nature of copyright in subject-matter other than works

### 85  Nature of copyright in sound recordings

(1) For the purposes of this Act, unless the contrary intention appears, copyright, in relation to a sound recording, is the exclusive right to do all or any of the following acts:

  (a) to make a copy of the sound recording;

  (b) to cause the recording to be heard in public;

  (c) to communicate the recording to the public;

  (d) to enter into a commercial rental arrangement in respect of the recording.

(2) Paragraph (1)(d) does not extend to entry into a commercial rental arrangement in respect of a sound recording if:

  (a) the copy of the sound recording was purchased by a person (*the record owner*) before the commencement of Part 2 of the *Copyright (World Trade Organization Amendments) Act 1994*; and

  (b) the commercial rental arrangement is entered into in the ordinary course of a business conducted by the record owner; and

  (c) the record owner was conducting the same business, or another business that consisted of, or included, the making of commercial rental arrangements in respect of copies of sound recordings, when the copy was purchased.

### 86  Nature of copyright in cinematograph films

For the purposes of this Act, unless the contrary intention appears, copyright, in relation to a cinematograph film, is the exclusive right to do all or any of the following acts:

  (a) to make a copy of the film;

Replaced Authorised Version registered 10/02/2025 C2024C00854

    (b) to cause the film, in so far as it consists of visual images, to be seen in public, or, in so far as it consists of sounds, to be heard in public;

    (c) to communicate the film to the public.

## 87  Nature of copyright in television broadcasts and sound broadcasts

For the purposes of this Act, unless the contrary intention appears, copyright, in relation to a television broadcast or sound broadcast, is the exclusive right:

    (a) in the case of a television broadcast in so far as it consists of visual images—to make a cinematograph film of the broadcast, or a copy of such a film;

    (b) in the case of a sound broadcast, or of a television broadcast in so far as it consists of sounds—to make a sound recording of the broadcast, or a copy of such a sound recording; and

    (c) in the case of a television broadcast or of a sound broadcast—to re-broadcast it or communicate it to the public otherwise than by broadcasting it.

## 88  Nature of copyright in published editions of works

For the purposes of this Act, unless the contrary intention appears, copyright, in relation to a published edition of a literary, dramatic, musical or artistic work or of two or more literary, dramatic, musical or artistic works, is the exclusive right to make a facsimile copy of the edition.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 3—Subject-matter, other than works, in which copyright subsists

### 89  Sound recordings in which copyright subsists

(1) Subject to this Act, copyright subsists in a sound recording of which the maker was a qualified person at the time when the recording was made.

(2) Without prejudice to the last preceding subsection, copyright subsists, subject to this Act, in a sound recording if the recording was made in Australia.

(3) Without prejudice to the last two preceding subsections, copyright subsists, subject to this Act, in a published sound recording if the first publication of the recording took place in Australia.

### 90  Cinematograph films in which copyright subsists

(1) Subject to this Act, copyright subsists in a cinematograph film of which the maker was a qualified person for the whole or a substantial part of the period during which the film was made.

(2) Without prejudice to the last preceding subsection, copyright subsists, subject to this Act, in a cinematograph film if the film was made in Australia.

(3) Without prejudice to the last two preceding subsections, copyright subsists, subject to this Act, in a published cinematograph film if the first publication of the film took place in Australia.

### 91  Television broadcasts and sound broadcasts in which copyright subsists

Subject to this Act, copyright subsists in a television broadcast or sound broadcast made from a place in Australia:

  (a) under the authority of a licence or a class licence under the *Broadcasting Services Act 1992*; or

Replaced Authorised Version registered 10/02/2025 C2024C00854

(b)  by the Australian Broadcasting Corporation or the Special
Broadcasting Service Corporation.

## 92  Published editions of works in which copyright subsists

(1)  Subject to this Act, copyright subsists in a published edition of a
literary, dramatic, musical or artistic work, or of 2 or more literary,
dramatic, musical or artistic works, where:

(a)  the first publication of the edition took place in Australia; or

(b)  the publisher of the edition was a qualified person at the date
of the first publication of the edition.

(2)  The last preceding subsection does not apply to an edition that
reproduces a previous edition of the same work or works.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 4—Duration of copyright in subject-matter other than works

## 93  Duration of copyright in sound recordings and films

(1) This section applies to copyright that subsists in copyright material under this Part, if the material is:

    (a)  a sound recording; or

    (b)  a cinematograph film.

*Copyright material first made public before 1 January 2019*

(2) The copyright continues to subsist until 70 years after the calendar year in which the copyright material was first made public if the material was first made public before 1 January 2019.

*Copyright material never made public, and material first made public on or after 1 January 2019*

(3) The following table has effect if the copyright material was not first made public before 1 January 2019.

| Item | Column 1<br>If … | Column 2<br>the copyright continues to subsist until … |
|---|---|---|
| 1 | the copyright material is first made public before the end of 50 years after the calendar year in which the material was made | 70 years after the calendar year in which the material was first made public. |
| 2 | item 1 does not apply | 70 years after the calendar year in which the copyright material was made. |

**Duration of copyright—copyright material not first made public before 1 January 2019**

Replaced Authorised Version registered 10/02/2025 C2024C00854

## 95  Duration of copyright in television broadcasts and sound broadcasts

(1) Copyright subsisting in a television broadcast or sound broadcast by virtue of this Part continues to subsist until the expiration of 50 years after the expiration of the calendar year in which the broadcast was made.

(2) In so far as a television broadcast or sound broadcast is a repetition (whether the first or a subsequent repetition) of a previous television broadcast or sound broadcast to which section 91 applies, and is made by broadcasting visual images or sounds embodied in any article or thing:

(a) if it is made before the expiration of the period of 50 years after the expiration of the calendar year in which the previous broadcast was made—any copyright subsisting in it expires at the expiration of that period; and

(b) if it is made after the expiration of that period—copyright does not subsist in it by virtue of this Part.

## 96  Duration of copyright in published editions of works

Copyright subsisting in a published edition of a work or works by virtue of this Part continues to subsist until the expiration of 25 years after the expiration of the calendar year in which the edition was first published.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 5—Ownership of copyright in subject-matter other than works

## Subdivision A—Ownership of copyright in subject-matter other than works

### 97  Ownership of copyright in sound recordings

(1) This section has effect subject to Parts VII and X.

(2) Subject to subsection (3), the maker of a sound recording is the owner of any copyright subsisting in the recording by virtue of this Part.

(2A) If there is more than one owner of the copyright in a sound recording of a live performance, the owners own the copyright as tenants in common in equal shares.

(3) Where:

    (a) a person makes, for valuable consideration, an agreement with another person for the making of a sound recording by the other person; and

    (b) the recording is made in pursuance of the agreement;

the first-mentioned person is, in the absence of any agreement to the contrary, the owner of any copyright subsisting in the recording by virtue of this Part.

### 98  Ownership of copyright in cinematograph films

(1) This section has effect subject to Parts VII and X.

(2) Subject to the next succeeding subsection, the maker of a cinematograph film is the owner of any copyright subsisting in the film by virtue of this Part.

(3) Where:

Replaced Authorised Version registered 10/02/2025 C2024C00854

(a) a person makes, for valuable consideration, an agreement with another person for the making of a cinematograph film by the other person; and

(b) the film is made in pursuance of the agreement;

the first-mentioned person is, in the absence of any agreement to the contrary, the owner of any copyright subsisting in the film by virtue of this Part.

(4) If the film is not a commissioned film, then the reference in subsection (2) to the maker of the film includes a reference to each director of the film.

(5) If a director directed the film under the terms of his or her employment under a contract of service or apprenticeship with another person (the *employer*), then, in the absence of any agreement to the contrary, the employer is to be substituted for the director for the purposes of subsection (4).

(6) If a person becomes an owner of the copyright:

(a) because of the operation of subsection (4); or

(b) because of the operation of subsections (4) and (5);

then the person becomes the owner of the copyright only so far as the copyright consists of the right to include the film in a retransmission of a free-to-air broadcast.

(7) In this section:

*commissioned film* means a film made as mentioned in paragraphs (3)(a) and (b).

*director* has the same meaning as in Part IX.

*retransmission* means a retransmission (as defined in section 10) to which Part VC applies.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 99

### 99  Ownership of copyright in television broadcasts and sound broadcasts

Subject to Parts VII and X, the maker of a television broadcast or sound broadcast is the owner of any copyright subsisting in the broadcast.

### 100  Ownership of copyright in published editions of works

Subject to Parts VII and X, the publisher of an edition of a work or works is the owner of any copyright subsisting in the edition by virtue of this Part.

## Subdivision B—Specific provisions relating to the ownership of copyright in pre-commencement sound recordings of live performances

### 100AA  Application

This Subdivision applies to a sound recording of a live performance if:

(a) copyright subsists in the recording on the day on which this section commences; and

(b) at least one person would become a maker of the recording under paragraph 100AD(1)(b) or subsection 100AD(2).

### 100AB  Definitions

In this Subdivision:

*former owner* of the copyright in a sound recording of a live performance means a person mentioned in paragraph 100AD(1)(a).

*new owner* of the copyright in a sound recording of a live performance means the following people:

(a) a person who becomes a maker of a sound recording under paragraph 100AD(1)(b);

Replaced Authorised Version registered 10/02/2025 C2024C00854

(b) if subsection 100AD(2) applies—an employer who becomes a maker of a sound recording under that subsection.

Note:        Other expressions used in this Subdivision are defined in section 84.

## 100AC  Application of sections 100AD and 100AE

Sections 100AD and 100AE have effect subject to Parts VII and X.

## 100AD  Makers of pre-commencement sound recordings of live performances

(1) For the purpose of section 100AE, the makers of a sound recording of a live performance are:

(a) the person or persons who, immediately before the commencement of this section, owned the copyright subsisting in the recording; and

(b) the performer or performers who performed in the performance (other than a performer who is already covered by paragraph (a)).

*Employer may be a maker of the sound recording*

(2) If:

(a) a sound recording of a live performance was made; and

(b) a performer performed in that performance under the terms of his or her employment by another person (the ***employer***) under a contract of service or apprenticeship;

then, for the purposes of paragraph (1)(b), the employer is taken to be a maker instead of that performer.

(3) Subsection (2) may be excluded or modified by an agreement (whether made before or after the live performance) between the performer and the employer.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 100AE

### 100AE  Ownership of pre-commencement copyright in sound recordings of live performances

*Ownership of the copyright*

(1) On and after the day on which this section commences, all makers of a sound recording of a live performance are owners of any copyright subsisting in the recording by virtue of this Part.

*Division of the ownership of the copyright*

(2) The former owners of the copyright and the new owners of the copyright each own half of the copyright as tenants in common in 2 equal shares.

(3) The former owners own their half of the copyright in the same proportions as the whole copyright was owned by them immediately before the commencement of this section.

(4) The new owners own their half of the copyright as tenants in common in equal shares.

(5) Subsections (3) and (4) do not limit section 196.

(6) Subsection (3) does not otherwise affect the terms on which the former owners own their half of the copyright.

*Copyright to devolve if a new owner is not alive*

(7) If a new owner is not alive on the day on which this section commences, then, for the purposes of subsections (2) and (4), that owner is replaced by the person to whom the copyright would have devolved if the new owner had owned the copyright immediately before his or her death. If the copyright would have devolved to more than one person, those persons are to be treated as a single new owner for the purposes of subsections (2) and (4).

Replaced Authorised Version registered 10/02/2025 C2024C00854

### 100AF  Former owners may continue to do any act in relation to the copyright

(1) On and after the day on which this section commences, a former owner of the copyright in a sound recording of a live performance may:

    (a)  do an act comprised in the copyright; or

    (b)  do any other act in relation to the copyright;

as if each new owner of the copyright had granted a licence or permission (however described) to the former owner to do the act.

> Note:    However, the former owner may still need to obtain the consent of other former owners of the copyright before doing the act.

(2) Subsection (1) applies to:

    (a)  the former owner's licensees and successors in title; and

    (b)  any persons who are authorised by the former owner; and

    (c)  any persons who are authorised by the former owner's licensees or successors in title;

in the same way as it applies to the former owner.

(3) Subsections (1) and (2) may be excluded or modified by an agreement (whether made before or after this section commences) between the former owner and a new owner.

### 100AG  Actions by new owners of copyright

If a new owner of the copyright in a sound recording of a live performance brings an action under this Act in respect of the copyright, the new owner is not entitled to the remedies listed in the table.

| **Actions under this Act** | | |
| --- | --- | --- |
| **Item** | **In this case...** | **the new owner is not entitled to:** |
| 1 | the action is for an infringement of the copyright under section 115 | (a) damages (other than additional damages); or<br>(b) an account of profits |

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part IV**  Copyright in subject-matter other than works
**Division 5**  Ownership of copyright in subject-matter other than works

Section 100AH

| | Actions under this Act | |
|---|---|---|
| **Item** | **In this case...** | **the new owner is not entitled to:** |
| 2 | the action is for conversion or detention under section 116 | (a) damages (other than additional damages); or |
| | | (b) an account of profits; or |
| | | (c) any other pecuniary remedy (other than costs); or |
| | | (d) delivery up of an infringing copy |
| 2A | the action is brought under section 116AN, 116AO or 116AP | (a) damages (other than additional damages); or |
| | | (b) an account of profits; or |
| | | (c) destruction or delivery up of a circumvention device |
| 3 | the action is brought under section 116B or 116C | (a) damages (other than additional damages); or |
| | | (b) an account of profits |

## 100AH  References to the owner of the copyright in a sound recording

A new owner of the copyright in a sound recording of a live performance is taken not to be the owner of the copyright for the purposes of the following provisions:

   (a) sections 107, 108 and 109 (in Part IV);

   (b) sections 119 and 133 (in Part V);

   (c) the definitions of *licence* and *licensor* in subsection 136(1), and sections 150, 151, 152, 153E, 153F, 153G, 159 and 163A (in Part VI);

   (d) section 183 (in Part VII).

Note:    A new owner of the copyright in a sound recording of a live performance is not an *eligible rights holder* under subsection 113V(9), nor a *relevant copyright owner* under section 135ZZI or 135ZZZF.

Replaced Authorised Version registered 10/02/2025 C2024C00854

## Division 6—Infringement of copyright in subject-matter other than works

### 100A  Interpretation

In this Division, ***audio-visual item*** means a sound recording, a cinematograph film, a sound broadcast or a television broadcast.

### 101  Infringement by doing acts comprised in copyright

(1) Subject to this Act, a copyright subsisting by virtue of this Part is infringed by a person who, not being the owner of the copyright, and without the licence of the owner of the copyright, does in Australia, or authorizes the doing in Australia of, any act comprised in the copyright.

(1A) In determining, for the purposes of subsection (1), whether or not a person has authorised the doing in Australia of any act comprised in a copyright subsisting by virtue of this Part without the licence of the owner of the copyright, the matters that must be taken into account include the following:

   (a) the extent (if any) of the person's power to prevent the doing of the act concerned;

   (b) the nature of any relationship existing between the person and the person who did the act concerned;

   (c) whether the person took any other reasonable steps to prevent or avoid the doing of the act, including whether the person complied with any relevant industry codes of practice.

(2) The next two succeeding sections do not affect the generality of the last preceding subsection.

(3) Subsection (1) applies in relation to an act done in relation to a sound recording whether the act is done by directly or indirectly making use of a record embodying the recording.

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 102

(4) Subsection (1) applies in relation to an act done in relation to a television broadcast or a sound broadcast whether the act is done by the reception of the broadcast or by making use of any article or thing in which the visual images and sounds comprised in the broadcast have been embodied.

## 102  Infringement by importation for sale or hire

(1) Subject to sections 112A, 112C, 112D and 112DA, a copyright subsisting by virtue of this Part is infringed by a person who, without the licence of the owner of the copyright, imports an article into Australia for the purpose of:

    (a) selling, letting for hire, or by way of trade offering or exposing for sale or hire, the article;

    (b) distributing the article:

        (i) for the purpose of trade; or

        (ii) for any other purpose to an extent that will affect prejudicially the owner of the copyright; or

    (c) by way of trade exhibiting the article in public;

if the importer knew, or ought reasonably to have known, that the making of the article would, if the article had been made in Australia by the importer, have constituted an infringement of the copyright.

(2) In relation to an accessory to an article that is or includes a copy of subject-matter in which copyright subsists by virtue of this Part, being a copy that was made without the licence of the owner of the copyright in the country in which the copy was made, subsection (1) has effect as if the words "the importer knew, or ought reasonably to have known, that" were omitted.

## 103  Infringement by sale and other dealings

(1) Subject to sections 112A, 112C, 112D and 112DA, a copyright subsisting by virtue of this Part is infringed by a person who, in Australia, and without the licence of the owner of the copyright:

Replaced Authorised Version registered 10/02/2025 C2024C00854

   (a)  sells, lets for hire, or by way of trade offers or exposes for sale or hire, an article; or

   (b)  by way of trade exhibits an article in public;

if the person knew, or ought reasonably to have known, that the making of the article constituted an infringement of the copyright or, in the case of an imported article, would, if the article had been made in Australia by the importer, have constituted an infringement of the copyright.

(2)  For the purposes of the last preceding subsection, the distribution of any articles:

   (a)  for the purpose of trade; or

   (b)  for any other purpose to an extent that affects prejudicially the owner of the copyright concerned;

shall be taken to be the sale of those articles.

(3)  In this section:

*article* includes a reproduction or copy of a work or other subject-matter, being a reproduction or copy in electronic form.

## 103A  Fair dealing for purpose of criticism or review

A fair dealing with an audio-visual item does not constitute an infringement of the copyright in the item or in any work or other audio-visual item included in the item if it is for the purpose of criticism or review, whether of the first-mentioned audio-visual item, another audio-visual item or a work, and a sufficient acknowledgement of the first-mentioned audio-visual item is made.

## 103AA  Fair dealing for purpose of parody or satire

A fair dealing with an audio-visual item does not constitute an infringement of the copyright in the item or in any work or other audio-visual item included in the item if it is for the purpose of parody or satire.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 103B

### 103B  Fair dealing for purpose of reporting news

(1) A fair dealing with an audio-visual item does not constitute an infringement of the copyright in the item or in any work or other audio-visual item included in the item if:

(a) it is for the purpose of, or is associated with, the reporting of news in a newspaper, magazine or similar periodical and a sufficient acknowledgement of the first-mentioned audio-visual item is made; or

(b) it is for the purpose of, or is associated with, the reporting of news by means of a communication or in a cinematograph film.

### 103C  Fair dealing for purpose of research or study

(1) A fair dealing with an audio-visual item does not constitute an infringement of the copyright in the item or in any work or other audio-visual item included in the item if it is for the purpose of research or study.

(2) For the purposes of this Act, the matters to which regard shall be had in determining whether a dealing with an audio-visual item constitutes a fair dealing for the purpose of research or study include:

(a) the purpose and character of the dealing;

(b) the nature of the audio-visual item;

(c) the possibility of obtaining the audio-visual item within a reasonable time at an ordinary commercial price;

(d) the effect of the dealing upon the potential market for, or value of, the audio-visual item; and

(e) in a case where part only of the audio-visual item is copied—the amount and substantiality of the part copied taken in relation to the whole item.

### 104  Acts done for purposes of judicial proceeding

A copyright subsisting by virtue of this Part is not infringed by anything done:

Replaced Authorised Version registered 10/02/2025 C2024C00854

Copyright in subject-matter other than works  **Part IV**
Infringement of copyright in subject-matter other than works  **Division 6**

Section 104A

(a) for the purpose of a judicial proceeding or a report of a judicial proceeding; or

(b) for the purpose of seeking professional advice from:

(i) a legal practitioner; or

(ii) a person registered as a patent attorney under the *Patents Act 1990*; or

(iii) a person registered as a trade marks attorney under the *Trade Marks Act 1995*; or

(c) for the purpose of, or in the course of, the giving of professional advice by:

(i) a legal practitioner; or

(ii) a person registered as a patent attorney under the *Patents Act 1990*; or

(iii) a person registered as a trade marks attorney under the *Trade Marks Act 1995*.

## 104A  Acts done by Parliamentary libraries for members of Parliament

A copyright subsisting by virtue of this Part is not infringed by anything done, for the sole purpose of assisting a person who is a member of a Parliament in the performance of the person's duties as such a member, by an authorized officer of a library, being a library the principal purpose of which is to provide library services for members of that Parliament.

## 104B  Infringing copies made on machines installed in libraries and archives

If:

(a) a person makes an infringing copy of, or of part of, an audio-visual item or a published edition of a work on a machine (including a computer), being a machine installed by or with the approval of the body administering a library or archives on the premises of the library or archives, or outside those premises for the convenience of persons using the library or archives; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

(b) there is affixed to, or in close proximity to, the machine, in a place readily visible to persons using the machine, a notice of the prescribed dimensions and in accordance with the prescribed form;

neither the body administering the library or archives, nor the officer in charge of the library or archives, is taken to have authorised the making of the infringing copy merely because the copy was made on that machine.

### 104C Copyright subsisting in sound recordings and cinematograph films shared for healthcare or related purposes

(1) The copyright in a cinematograph film or a sound recording is not infringed by an act comprised in the copyright in the film or recording if:

 (a) the act is done, or authorised to be done:

   (i) for a purpose for which the collection, use or disclosure of health information is required or authorised under the *My Health Records Act 2012*; or

   (ii) in circumstances in which a permitted general situation exists under item 1 of the table in subsection 16A(1) of the *Privacy Act 1988* (serious threat to life, health or safety), or would exist if the entity doing the thing were an APP entity for the purposes of that Act; or

   (iii) in circumstances in which a permitted health situation exists under section 16B of the *Privacy Act 1988*, or would exist if the entity doing the thing were an organisation for the purposes of that Act; or

   (iv) for any other purpose relating to healthcare, or the communication or management of health information, prescribed by the regulations; and

 (b) either:

   (i) the film or recording is substantially comprised of health information; or

   (ii) the film or recording allows for the storage, retrieval or use of health information and it is reasonably necessary

Replaced Authorised Version registered 10/02/2025 C2024C00854

to do the act, or authorise it to be done, in circumstances that would otherwise infringe copyright in the work.

(2) In this section:

***healthcare*** has the same meaning as in the *My Health Records Act 2012*.

***health information*** has the same meaning as in the *My Health Records Act 2012*.

## 105  Copyright in certain recordings not infringed by causing recordings to be heard in public or broadcast

Copyright subsisting in a sound recording by virtue only of subsection 89(3) is not infringed by the causing of the recording to be heard in public or by the broadcasting of the recording.

## 106  Causing sound recording to be heard at guest house or club

(1) Where a sound recording is caused to be heard in public:

(a) at premises where persons reside or sleep, as part of the amenities provided exclusively for residents or inmates of the premises or for those residents or inmates and their guests; or

(b) as part of the activities of, or for the benefit of, a registered charity;

the act of causing the recording to be so heard does not constitute an infringement of the copyright in the recording.

(2) The last preceding subsection does not apply:

(a) in relation to premises of a kind referred to in paragraph (a) of that subsection, if a specific charge is made for admission to the part of the premises where the recording is to be heard; or

(b) in relation to a registered charity of a kind referred to in paragraph (b) of that subsection, if a charge is made for admission to the place where the recording is to be heard and

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 107

any of the proceeds of the charge are applied otherwise than for the purposes of the registered charity.

(3) A reference in the last preceding subsection to a specific charge, or a charge, made for admission includes a reference to a specific charge, or a charge, made partly for admission and partly for other purposes.

## 107  Making of a copy of the sound recording for purpose of broadcasting

(1) Where the broadcasting by a person of a sound recording would not (whether by reason of an assignment or licence or of the operation of a provision of this Act) constitute an infringement of the copyright in the recording but the making by the person of a copy of the sound recording would, apart from this subsection, constitute such an infringement, the copyright in the recording is not infringed by the making by the person of a copy of the sound recording in association with other matter solely for the purpose of the broadcasting of the recording in association with the other matter.

(2) The last preceding subsection does not apply in relation to a copy of a sound recording if the copy is used for a purpose other than:

 (a) the broadcasting of the recording in circumstances that do not (whether by reason of an assignment or licence or of the operation of a provision of this Act) constitute an infringement of the copyright in the recording; or

 (b) the making of further copies of the sound recording for the purpose of the broadcasting of the recording in such circumstances.

(3) Subsection (1) does not apply in relation to a copy of a sound recording where the copy is used for the purpose of the broadcasting of the recording by a person who is not the maker of the copy unless the maker has paid to the owner of the copyright in the recording such amount as they agree or, in default of agreement, has given an undertaking in writing to the owner to pay to the owner such amount as is determined by the Copyright

Replaced Authorised Version registered 10/02/2025 C2024C00854

Tribunal, on the application of either of them, to be equitable remuneration to the owner for the making of the copy.

(4) A person who has given an undertaking referred to in the last preceding subsection is liable, when the Copyright Tribunal has determined the amount to which the undertaking relates, to pay that amount to the owner of the copyright in the recording and the owner may recover that amount in a court of competent jurisdiction from the person as a debt due to the owner.

(5) Subsection (1) does not apply in relation to a copy of a sound recording unless, before the expiration of the period of 12 months commencing on the day on which any of the copies made in accordance with that subsection is first used for broadcasting the recording in accordance with that subsection, or before the expiration of such further period, if any, as is agreed between the maker of the copy and the owner of the copyright in the recording, all the copies made in accordance with that subsection are destroyed or are transferred, with the consent of the Director-General of the National Archives of Australia, to the care (within the meaning of the *Archives Act 1983*) of the National Archives of Australia.

(6) The Director-General of the National Archives of Australia must not consent to the transfer to the care of the National Archives of Australia in accordance with subsection (5) of a copy of a sound recording unless he or she has certified that the recording is of an exceptional documentary character.

(7) In this section:

*broadcasting* does not include simulcasting.

## 108  Copyright in published recording not infringed by public performance if equitable remuneration paid

(1) The copyright in a sound recording that has been published is not infringed by a person who causes the recording to be heard in public if:

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 109

(a) the person has paid to the owner of the copyright in the recording such amount as they agree or, in default of agreement, has given an undertaking in writing to the owner to pay to the owner such amount as is determined by the Copyright Tribunal, on the application of either of them, to be equitable remuneration to the owner for the causing of the recording to be heard in public; and

(b) in the case of a recording that was first published outside Australia—the recording has been published in Australia or the prescribed period after the date of the first publication of the recording has expired.

(2) A person who has given an undertaking referred to in the last preceding subsection is liable, when the Copyright Tribunal has determined the amount to which the undertaking relates, to pay that amount to the owner of the copyright in the recording and the owner may recover that amount in a court of competent jurisdiction from the person as a debt due to the owner.

(3) Regulations prescribing a period for the purposes of paragraph (1)(b) may prescribe different periods in relation to different classes of sound recordings.

## 109  Copyright in published sound recording not infringed by broadcast in certain circumstances

(1) Subject to this section, the copyright in a published sound recording is not infringed by the making of a broadcast (other than a broadcast transmitted for a fee payable to the person who made the broadcast) of that recording if:

(a) where there is no order of the Tribunal in force under section 152 applying to the maker of that broadcast in relation to the time when that broadcast was made—the maker of that broadcast has given an undertaking in writing to the person who is the owner of the copyright in that recording to pay to the owner such amounts (if any) as may be specified in, or determined in accordance with, an order of the Tribunal made under that section in respect of the

Replaced Authorised Version registered 10/02/2025 C2024C00854

broadcasting by the maker, during a period within which that broadcast was made, of published sound recordings in which the copyrights are owned by that person and which include that recording; or

(b) where there is an order of the Tribunal in force under that section applying to the maker of that broadcast in relation to the time when that broadcast was made:

 (i) the copyright in that recording is owned by a person who is specified in the order as one of the persons among whom the amount specified in, or determined in accordance with, the order is to be divided and the maker of the broadcast makes payments to the person in accordance with the order; or

 (ii) the copyright in that recording is owned by a person who is not so specified in the order.

(2) The last preceding subsection does not apply in relation to a broadcast of a sound recording if the broadcast was made in accordance with an agreement between the maker of the broadcast and the owner of the copyright in the recording.

(3) Subsection (1) does not apply in relation to a broadcast of a sound recording that has not been published in Australia if the broadcast was made before the expiration of the prescribed period after the date of the first publication of the recording.

(4) Regulations prescribing a period for the purposes of the last preceding subsection may prescribe different periods in relation to different classes of sound recordings.

(5) Subsection (1) does not apply in relation to a broadcast of a sound recording that has not been published in Australia if:

(a) the recording consists of, or includes, a musical work in which copyright subsists;

(b) the musical work was made for the purpose of being performed, or has been performed, in association with a dramatic work or has been included in a cinematograph film; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

 (c) records of the musical work have not been supplied (whether by sale or otherwise) to the public in Australia.

(6) For the purposes of paragraph (5)(c), a supplying of records of a musical work shall be disregarded if the supplying was done otherwise than by, or with the licence of, the owner of the copyright in the work.

## 109A  Copying sound recordings for private and domestic use

(1) This section applies if:

 (a) the owner of a copy (the ***earlier copy***) of a sound recording makes another copy (the ***later copy***) of the sound recording using the earlier copy; and

 (b) the sole purpose of making the later copy is the owner's private and domestic use of the later copy with a device that:

  (i) is a device that can be used to cause sound recordings to be heard; and

  (ii) he or she owns; and

 (c) the earlier copy was not made by downloading over the internet a digital recording of a radio broadcast or similar program; and

 (d) the earlier copy is not an infringing copy of the sound recording, a broadcast or a literary, dramatic or musical work included in the sound recording.

(2) The making of the later copy does not infringe copyright in the sound recording, or in a literary, dramatic or musical work or other subject-matter included in the sound recording.

(3) Subsection (2) is taken never to have applied if the earlier copy or the later copy is:

 (a) sold; or

 (b) let for hire; or

 (c) by way of trade offered or exposed for sale or hire; or

 (d) distributed for the purpose of trade or otherwise; or

 (e) used for causing the sound recording to be heard in public; or

Replaced Authorised Version registered 10/02/2025 C2024C00854

(f)  used for broadcasting the sound recording.

Note:    If the earlier or later copy is dealt with as described in subsection (3), then copyright may be infringed not only by the making of the later copy but also by a dealing with the later copy.

(4)  To avoid doubt, paragraph (3)(d) does not apply to a loan of the earlier copy or the later copy by the lender to a member of the lender's family or household for the member's private and domestic use.

## 110  Provisions relating to cinematograph films

(1)  Where the visual images forming part of a cinematograph film consist wholly or principally of images that, at the time when they were first embodied in an article or thing, were means of communicating news, the copyright in the film is not infringed by the causing of the film to be seen or heard, or to be both seen and heard, in public after the expiration of 50 years after the expiration of the calendar year in which the principal events depicted in the film occurred.

(2)  Where, by virtue of this Part, copyright has subsisted in a cinematograph film, a person who, after that copyright has expired, causes the film to be seen or heard, or to be seen and heard, in public does not, by so doing, infringe any copyright subsisting by virtue of Part III in a literary, dramatic, musical or artistic work.

(3)  Where the sounds that are embodied in a sound-track associated with the visual images forming part of a cinematograph film are also embodied in a record, other than such a sound-track or a record derived directly or indirectly from such a sound-track, the copyright in the cinematograph film is not infringed by any use made of that record.

## 110AA  Copying cinematograph film in different format for private use

(1)  This section applies if:

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part IV  Copyright in subject-matter other than works
Division 6  Infringement of copyright in subject-matter other than works

**Section 110AA**

---

(a) the owner of videotape embodying a cinematograph film in analog form makes a copy (the ***main copy***) of the film in electronic form for his or her private and domestic use instead of the videotape; and

(b) the videotape itself is not an infringing copy of the film or of a broadcast, sound recording, work or published edition of a work; and

(c) at the time the owner makes the main copy, he or she has not made, and is not making, another copy that embodies the film in an electronic form substantially identical to the electronic form in which the film is embodied in the main copy.

For this purpose, disregard a temporary copy of the film incidentally made as a necessary part of the technical process of making the main copy.

(2) The making of the main copy is not an infringement of copyright in the cinematograph film or in a work or other subject-matter included in the film.

*Dealing with main copy may make it an infringing copy*

(3) Subsection (2) is taken never to have applied if the main copy is:

(a) sold; or

(b) let for hire; or

(c) by way of trade offered or exposed for sale or hire; or

(d) distributed for the purpose of trade or otherwise.

Note:    If the main copy is dealt with as described in subsection (3), then copyright may be infringed not only by the making of the main copy but also by the dealing with the main copy.

(4) To avoid doubt, paragraph (3)(d) does not apply to a loan of the main copy by the lender to a member of the lender's family or household for the member's private and domestic use.

*Disposal of videotape may make the main copy an infringing copy*

(5) Subsection (2) is taken never to have applied if the owner of the videotape disposes of it to another person.

---

*Copyright Act 1968*

Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

*Status of temporary copy*

(6) If subsection (2) applies to the making of the main copy only as a result of disregarding the incidental making of a temporary copy of the film as a necessary part of the technical process of making the main copy, then:

(a) if the temporary copy is destroyed at the first practicable time during or after the making of the main copy—the making of the temporary copy does not infringe copyright in the film or in any work or other subject-matter included in the film; or

(b) if the temporary copy is not destroyed at that time—the making of the temporary copy is taken always to have infringed copyright (if any) subsisting in the film and in any work or other subject-matter included in the film.

### 110A  Copying and communicating unpublished sound recordings and cinematograph films in libraries or archives

Where, at a time more than 50 years after the time at which, or the expiration of the period during which, a sound recording or cinematograph film was made, copyright subsists in the sound recording or cinematograph film but:

(a) the sound recording or cinematograph film has not been published; and

(b) a record embodying the sound recording, or a copy of the cinematograph film, is kept in the collection of a library or archives where it is, subject to any regulations governing that collection, accessible to the public;

the copyright in the sound recording or cinematograph film and in any work or other subject-matter included in the sound recording or cinematograph film is not infringed:

(c) by the making of a copy or the communication of the sound recording or cinematograph film by a person for the purpose of research or study or with a view to publication; or

(d) by the making of a copy or the communication of the sound recording or cinematograph film by, or on behalf of, the officer in charge of the library or archives if the copy is

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 110C

supplied or communicated to a person who satisfies the officer that he or she requires the copy for the purpose of research or study, or with a view to publication and that he or she will not use it for any other purpose.

### 110C  Making of a copy of a sound recording or cinematograph film for the purpose of simulcasting

(1) If the broadcasting of a sound recording or a cinematograph film would not for any reason constitute an infringement of the copyright in the recording or film, but the making of a copy of the recording or film would, apart from this section, constitute an infringement of the copyright, the copyright is not infringed by the making of a copy of the recording or film if:

    (a) the recording or film from which the copy is made is in analog form; and

    (b) the copy is made solely for the purpose of simulcasting the recording or film in digital form.

(2) Subsection (1) does not apply in relation to a copy of a recording or film if the copy is used for a purpose other than:

    (a) the simulcasting of the recording or film in circumstances that do not for any reason constitute an infringement of the copyright in the recording or film; or

    (b) the making of further copies of the recording or film for the purpose of simulcasting the recording or film in such circumstances.

(3) Subsection (1) does not apply in relation to a copy of a recording or film unless all copies of the recording or film made under that subsection are destroyed on or before the relevant date specified in the regulations.

(4) For the purposes of subsection (3), the regulations may specify different dates in relation to different classes of sound recordings or cinematograph films.

Replaced Authorised Version registered 10/02/2025 C2024C00854

### 111  Recording broadcasts for replaying at more convenient time

(1) This section applies if a person makes a cinematograph film or sound recording of a broadcast solely for private and domestic use by watching or listening to the material broadcast at a time more convenient than the time when the broadcast is made.

> Note:  Subsection 10(1) defines *broadcast* as a communication to the public delivered by a broadcasting service within the meaning of the *Broadcasting Services Act 1992*.

*Making the film or recording does not infringe copyright*

(2) The making of the film or recording does not infringe copyright in the broadcast or in any work or other subject-matter included in the broadcast.

> Note:  Even though the making of the film or recording does not infringe that copyright, that copyright may be infringed if a copy of the film or recording is made.

*Dealing with embodiment of film or recording*

(3) Subsection (2) is taken never to have applied if an article or thing embodying the film or recording is:
   (a) sold; or
   (b) let for hire; or
   (c) by way of trade offered or exposed for sale or hire; or
   (d) distributed for the purpose of trade or otherwise; or
   (e) used for causing the film or recording to be seen or heard in public; or
   (f) used for broadcasting the film or recording.

> Note:  If the article or thing embodying the film or recording is dealt with as described in subsection (3), then copyright may be infringed not only by the making of the article or thing but also by the dealing with the article or thing.

(4) To avoid doubt, paragraph (3)(d) does not apply to a loan of the article or thing by the lender to a member of the lender's family or household for the member's private and domestic use.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 111A

## 111A  Temporary copy made in the course of communication

(1)  A copyright subsisting under this Part is not infringed by making a temporary copy of an audio-visual item as part of the technical process of making or receiving a communication.

(2)  Subsection (1) does not apply in relation to the making of a temporary copy of an audio-visual item as part of the technical process of making a communication if the making of the communication is an infringement of copyright.

## 111B  Temporary copy of subject-matter as part of a technical process of use

(1)  Subject to subsection (2), the copyright in a subject-matter is not infringed by the making of a temporary copy of the subject-matter if the temporary copy is incidentally made as a necessary part of a technical process of using a copy of the subject-matter.

(2)  Subsection (1) does not apply to:
   (a)  the making of a temporary copy of a subject-matter if the temporary copy is made from:
      (i)  an infringing copy of the subject-matter; or
      (ii)  a copy of the subject-matter where the copy is made in another country and would be an infringing copy of the subject-matter if the person who made the copy had done so in Australia; or
   (b)  the making of a temporary copy of a subject-matter as a necessary part of a technical process of using a copy of the subject-matter if that use constitutes an infringement of the copyright in the subject-matter.

(3)  Subsection (1) does not apply to any subsequent use of a temporary copy of a subject-matter other than as a part of the technical process in which the temporary copy was made.

Replaced Authorised Version registered 10/02/2025 C2024C00854

## 112  Reproductions of editions of work

The copyright in a published edition of a work or works is not infringed by the making of a reproduction of the whole or a part of that edition if that reproduction is made in the course of:

(a) where the edition contains one work only:

    (i) a dealing with that work, being a dealing that does not, by virtue of section 40, 41, 42, 43, 44 or 113E, infringe copyright in that work; or

    (ii) a use of the whole or a part of that work, being a use that, because of section 49, 50, 113F, 113H, 113J, 113K, 113M, 113P or 182A, does not infringe copyright in that work; or

(b) where the edition contains more than one work:

    (i) a dealing with one of those works or dealings with some or all of those works, being a dealing that does not, or dealings that do not, by virtue of section 40, 41, 42, 43, 44 or 113E, infringe copyright in that work or those works; or

    (ii) a use of a whole or a part of one of those works, or a use of the whole or parts of some or all of those works, being a use that, because of section 49, 50, 113F, 113H, 113J, 113K, 113M, 113P or 182A, does not infringe copyright in that work or those works.

## 112A  Importation and sale etc. of books

(1) The copyright in an overseas edition first published on or after the commencing day, is not infringed by a person who, without the licence of the owner of the copyright, imports a non-infringing book into Australia for a purpose mentioned in paragraph 102(1)(a), (b) or (c).

(2) Subject to this section, the copyright in:

    (a) an overseas edition first published before the commencing day; or

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part IV**  Copyright in subject-matter other than works
**Division 6**  Infringement of copyright in subject-matter other than works

**Section 112A**

---

    (b)  a published edition of a work, being an edition first published in Australia, whether before, on or after the commencing day;

is not infringed by a person who, without the licence of the owner of the copyright, imports a copy (in this subsection called the ***imported copy***) of a hardback or paperback version of a non-infringing book into Australia for a purpose mentioned in paragraph 102(1)(a), (b) or (c) if:

    (c)  the person had ordered in writing from the copyright owner, or the owner's licensee or agent, one or more copies of that version of the book (not being second-hand copies or more copies than were needed to satisfy the person's reasonable requirements); and

    (d)  when the person ordered the imported copy, the original order mentioned in paragraph (c) had not been withdrawn or cancelled by, or with the consent of, the person and:

        (i)  at least 7 days had elapsed since the person placed the original order and the copyright owner, licensee or agent had not notified the person in writing that the original order would be filled within 90 days after it was placed; or

       (ii)  at least 90 days had elapsed since the person placed the original order and the copyright owner, licensee or agent had not filled the order.

    (3)  The copyright in a published edition of a work (whether the edition was first published before, on or after the commencing day) is not infringed by a person who, without the licence of the owner of the copyright, imports a single copy of a non-infringing book into Australia if the importation is for the purpose of filling a written order, or a verifiable telephone order, by a customer of the person and:

    (a)  in the case of a written order, the order contains a statement, signed by the customer; or

    (b)  in the case of a telephone order, the customer makes a verifiable statement;

to the effect that the customer does not intend to use the book for a purpose mentioned in paragraph 102(1)(a), (b) or (c).

---

*Copyright Act 1968*

Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

(4) The copyright in a published edition of a work (whether the edition was first published before, on or after the commencing day) is not infringed by a person who, without the licence of the owner of the copyright, imports 2 or more copies of a non-infringing book into Australia if:

   (a) the importation is for the purpose of filling a written order, or a verifiable telephone order, placed with the person by or on behalf of a library, other than a library conducted for the profit (direct or indirect) of a person or organisation; and

   (b) in the case of a written order—the order contains a statement, signed by the person placing the order, to the effect that the library does not intend to use any of the books for a purpose mentioned in paragraph 102(1)(a), (b) or (c); and

   (c) in the case of a telephone order—the person placing the order makes a verifiable statement to the effect referred to in paragraph (b); and

   (d) the number of copies so imported is not more than the number of copies so ordered.

(5) Without limiting the ways in which a telephone order under subsection (3) or (4), or a statement under paragraph (3)(b) or (4)(c) relating to such an order, may be verified, such an order or statement is, for the purposes of this section, taken to be verifiable if the person who takes the order, or to whom the statement is made, makes a written note of the details of the order or statement when, or immediately after, the order is placed, or the statement is made, as the case may be.

(6) Where:

   (a) a book is imported into Australia for a purpose mentioned in paragraph 102(1)(a), (b) or (c); and

   (b) the importation does not, under this section, constitute an infringement of copyright in a published edition of a work;

the use of the book for any such purpose does not constitute an infringement of the copyright in the edition and subsection 103(1) does not apply to the book.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part IV**  Copyright in subject-matter other than works
**Division 6**  Infringement of copyright in subject-matter other than works

---

Section 112A

---

(7) Subsection (2) does not apply to the importation of a copy of a hardback version of a non-infringing book into Australia if the copyright owner, or his or her licensee or agent, is able to supply in Australia enough copies of a paperback version of the book to fill any reasonable order.

(8) For the purposes of paragraph (2)(d), a copyright owner, licensee or agent is not taken to have filled an order by a person for one or more copies of a version of a book unless and until the copyright owner, licensee or agent sends the copy, or all of the copies, as the case requires, to the person.

(9) In this section:

**book** does not include:
(a) a book whose main content is one or more musical works, with or without any related literary, dramatic or artistic work; or
(b) a manual sold with computer software for use in connection with that software; or
(c) a periodical publication.

**commencing day** means the day on which the *Copyright Amendment Act 1991* commences.

**overseas edition** means a published edition of a work, being an edition:
(a) that was first published in a country other than Australia; and
(b) that was not published in Australia within 30 days after its first publication in that other country.

Note:    An edition of a work may, for the purposes of this Act, be *first published* in Australia if it is published in Australia within 30 days of an earlier publication elsewhere. For the meaning of *first publication*, see section 29 and, in particular, subsection 29(5).

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

### 112B  Reproduction of writing on approved label for containers for chemical product

The reproduction on a label on a container for a chemical product of any writing appearing on an approved label is not an infringement of any copyright subsisting under section 92 in relation to that writing.

### 112C  Copyright subsisting in accessories etc. to imported articles

(1) The copyright in:

    (a) a published edition of a work a reproduction of which is on, or embodied in, a non-infringing accessory to an article; or

    (b) a cinematograph film a copy of which is a non-infringing accessory to an article; or

    (c) a sound recording a record of which is a non-infringing accessory to an article;

is not infringed by importing the accessory with the article.

Note:    See the definition of *accessory* in subsection 10(1) and see also section 10AD for an expanded meaning of *accessory* in relation to certain imported articles.

(2) Section 103 does not apply to:

    (a) a reproduction of a published edition of a work, being a reproduction that is on, or embodied in, a non-infringing accessory to an article; or

    (b) a copy of a cinematograph film, being a copy that is a non-infringing accessory to an article; or

    (c) a record embodying a sound recording, being a record that is a non-infringing accessory to an article;

if the importation of the accessory is not an infringement of copyright in the edition, film or recording, as the case may be.

(3) The definition of *article* in section 103 does not affect this section.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 112D

## 112D  Import of non-infringing copy of a sound recording does not infringe copyright in the sound recording

(1) The copyright in a sound recording is not infringed by a person who:

    (a) imports into Australia a non-infringing copy of the sound recording; or

    (b) does an act described in section 103 involving an article that is a non-infringing copy of the sound recording and has been imported into Australia by anyone.

> Note:  In a civil action for infringement of copyright, a copy of a sound recording is presumed not to be a non-infringing copy of the sound recording unless the defendant proves it is. See section 130A.

(2) This section applies to a copy of a sound recording only if, when the copy is imported into Australia, the sound recording has been published:

    (a) in Australia; or

    (b) in another country (the *publication country*) by or with the consent of:

        (i) the owner of the copyright or related right in the sound recording in the publication country; or

        (ii) the owner of the copyright or related right in the sound recording in the country (the *original recording country*) in which the sound recording was made, if the law of the publication country did not provide for copyright or a related right in sound recordings when publication occurred; or

        (iii) the maker of the sound recording, if neither the law of the publication country nor the law of the original recording country (whether those countries are different or not) provided for copyright or a related right in sound recordings when publication occurred.

> Note:  Subsection 29(6) deals with unauthorised publication.

(3) In subsection (2):

Replaced Authorised Version registered 10/02/2025 C2024C00854

*owner* of the copyright or related right in the sound recording means the owner at the time publication of the sound recording occurred.

(4) The definition of ***article*** in section 103 does not affect this section.

## 112DA  Importation and sale etc. of copies of electronic literary or music items

(1) If, in relation to a published edition of a work:

    (a) the work is, or is part of, an electronic literary or music item; and

    (b) the edition has been published in Australia or a qualifying country;

then the copyright in the published edition is not infringed by a person who:

    (c) imports into Australia an article that has embodied in it a non-infringing copy of the electronic literary or music item; or

    (d) does an act mentioned in section 103 involving an article that has embodied in it a non-infringing copy of the electronic literary or music item and that has been imported into Australia by anyone.

> Note: Section 130C deals with the burden of proof a defendant bears in a civil action for infringement of copyright.

(2) The definition of ***article*** in section 103 does not affect this section.

## 112E  Communication by use of certain facilities

A person (including a carrier or carriage service provider) who provides facilities for making, or facilitating the making of, a communication is not taken to have authorised any infringement of copyright in an audio-visual item merely because another person uses the facilities so provided to do something the right to do which is included in the copyright.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 113

## Division 7—Miscellaneous

### 113  Copyrights to subsist independently

(1) Subject to subsection 110(2), where copyright subsists in any subject-matter by virtue of this Part, nothing in this Part shall be taken to affect the operation of Part III in relation to any literary, dramatic, musical or artistic work from which that subject-matter is wholly or partly derived, and any copyright subsisting by virtue of this Part is in addition to, and independent of, any copyright subsisting by virtue of Part III.

(2) The subsistence of copyright under any provision of this Part does not affect the operation of any other provision of this Part under which copyright can subsist.

### 113A  Agents may act on behalf of groups of performers

(1) This section applies in respect of all members of a group of performers who have an interest in the copyright in a sound recording of a live performance.

(2) All members of the group are taken to have granted a licence or permission (however described) to a person:

    (a)  to do an act comprised in the copyright; or

    (b)  to do any other act in relation to the copyright;

if an agent of the group, acting within the scope of his or her actual or apparent authority, has granted a licence or permission to the person to do the act.

Note:     The person may still need to obtain the licence or permission of other owners of the copyright before doing the act.

### 113B  Consent to the use of a sound recording of a live performance

A person is taken to have been granted a licence or permission (however described) by a performer to use a sound recording of a live performance if:

Replaced Authorised Version registered 10/02/2025 C2024C00854

(a) the performer has given his or her consent to recording the performance for a particular purpose; and

(b) the recording is used for that purpose in accordance with the terms of the consent.

Note:    The person may still need to obtain the consent of the other owners of the copyright in the sound recording of the live performance before using the sound recording.

### 113C  Use of published sound recordings when owners cannot be found etc.

(1) An owner (the ***first owner***) of the copyright in a sound recording of a live performance that is a published sound recording is taken to have been granted a licence or permission (however described) by another owner of the copyright to do an act comprised in the copyright, or to do any other act in relation to the copyright, if:

(a) the first owner has entered into an agreement with another person to do the act; and

(b) the first owner, after making reasonable inquiries, cannot discover the identity or location of the other owner or a person representing the other owner.

Note:    The first owner may still need to obtain a licence or permission from any other owners of the copyright in the sound recording of the live performance.

(2) If the first owner does the act, then the first owner must hold the other owner's share of any amount received in respect of it on trust for 4 years after the day on which the agreement is entered into (unless the amount is distributed to, or on behalf of, the other owner before then).

(3) If during the 4 year period, the other owner is identified and located, the first owner must distribute the amount held on trust to, or on behalf of, the other owner. If at the end of the 4 year period, the other owner remains unidentified or is not located, the first owner may retain the amount.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part IV**  Copyright in subject-matter other than works
**Division 7**  Miscellaneous

## Section 113C

    (4)  After initially making reasonable inquiries, the first owner is not required to continue making reasonable inquiries during the 4 year period.

    (5)  The other owner cannot prevent the first owner doing the act comprised in the copyright during the term of the agreement if the other owner is identified or located.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Case 1:25-cv-00910-JMF    Document 26-5    Filed 02/28/25    Page 198 of 692

# Part IVA—Uses that do not infringe copyright

## Division 1—Simplified outline of this Part

### 113D  Simplified outline of this Part

> The following do not infringe copyright in any copyright material:
>
> (a)    certain use by or for persons with a disability;
>
> (b)    certain use for the purposes of libraries, archives and key cultural institutions;
>
> (c)    certain use by educational institutions.
>
> Note 1:    Other provisions of this Act, including Parts III, IV, VC, VII and X, provide that certain other use of copyright material does not infringe copyright.
>
> Note 2:    A person may circumvent an access control technological protection measure to enable the person to do an act that, under this Part, does not infringe copyright (if the act is prescribed by regulations made for the purposes of paragraph 116AN(9)(c)).

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 2—Access by or for persons with a disability

### 113E  Fair dealing for purpose of access by persons with a disability

(1) A fair dealing with copyright material does not infringe copyright in the material if the dealing is for the purpose of one or more persons with a disability having access to copyright material (whether the dealing is by any of those persons or by another person).

(2) The matters to which regard must be had, in determining whether the dealing is a fair dealing for the purposes of this section, include the following matters:

(a) the purpose and character of the dealing;

(b) the nature of the copyright material;

(c) the effect of the dealing upon the potential market for, or value of, the material;

(d) if only part of the material is dealt with—the amount and substantiality of the part dealt with, taken in relation to the whole material.

### 113F  Use of copyright material by organisations assisting persons with a disability

An organisation assisting persons with a disability, or a person acting on behalf of such an organisation, does not infringe copyright in copyright material by using the material if:

(a) the use is for the sole purpose of assisting one or more persons with a disability to access the material in a format that the person or persons require because of the disability (whether the access is provided by or on behalf of the organisation or by another body or person); and

(b) the organisation, or the person acting on behalf of the organisation, is satisfied that the material (or a relevant part of the material) cannot be obtained in that format within a reasonable time at an ordinary commercial price.

Replaced Authorised Version registered 10/02/2025 C2024C00854

## Division 3—Libraries and archives

### Subdivision A—Public libraries, parliamentary libraries and archives

#### 113G  Libraries

This Subdivision applies to a library if:

(a) all or part of the collection comprising the library is accessible to members of the public directly or through interlibrary loans; or

(b) the principal purpose of the library is to provide library services for members of a Parliament.

Note 1:    For references to a Parliament, see section 12.

Note 2:    This Subdivision also applies to archives (within the meaning of section 10).

#### 113H  Preservation

(1) An authorized officer of a library or archives does not infringe copyright in copyright material by using the material if:

(a) the use is for the purpose of preserving the collection comprising that or another library or archives; and

(b) either or both of the following subparagraphs apply:

(i) the authorized officer's library or archives holds the material in original form;

(ii) the authorized officer is satisfied that a copy of the material cannot be obtained in a version or format that is required for that purpose, consistent with best practice for preserving such collections.

(2) An authorized officer of a library or archives does not infringe copyright in copyright material (the ***preservation copy***) by making the preservation copy available to be accessed at the library or archives if:

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part IVA**  Uses that do not infringe copyright
**Division 3**  Libraries and archives

Section 113J

(a) subsection (1) applied to the making of the preservation copy because it was done for the purpose of preserving the collection comprising the library or archives; and

(b) the preservation copy is in electronic form; and

(c) the body administering the library or archives takes reasonable steps to ensure that a person who accesses the preservation copy at the library or archives does not infringe copyright in the preservation copy.

Note:    Other uses of the preservation copy might not infringe copyright because of other provisions of this Act, such as section 49 (Reproducing and communicating works by libraries and archives for users).

## 113J  Research

(1) An authorized officer of a library or archives does not infringe copyright in copyright material by using the material if:

(a) the material forms part of the collection comprising the library or archives; and

(b) the library or archives holds the material in original form; and

(c) the use is for the purpose of research carried out at that or another library or archives.

(2) An authorized officer of a library or archives does not infringe copyright in copyright material (the *research copy*) by making the research copy available to be accessed at the library or archives if:

(a) subsection (1) applied to the making of the research copy because it was done for the purpose of research carried out at the library or archives; and

(b) the research copy is in electronic form; and

(c) the body administering the library or archives takes reasonable steps to ensure that a person who accesses the research copy at the library or archives does not infringe copyright in the research copy.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Note:    Other uses of the research copy might not infringe copyright because of other provisions of this Act, such as section 49 (Reproducing and communicating works by libraries and archives for users).

### 113K  Administration of the collection

An authorized officer of a library or archives does not infringe copyright in copyright material by using the material if the use is for purposes directly related to the care or control of the collection comprising the library or archives.

## Subdivision B—Key cultural institutions

### 113L  Meaning of *key cultural institution*

A library or archives is a ***key cultural institution*** if the body administering it:

   (a) has, under a law of the Commonwealth or a State or Territory, the function of developing and maintaining the collection comprising the library or archives; or

   (b) is prescribed by the regulations for the purposes of this paragraph.

### 113M  Preservation

(1) An authorized officer of a key cultural institution does not infringe copyright in copyright material by using the material if:

   (a) the material forms part of the collection comprising the key cultural institution; and

   (b) the authorized officer is satisfied that the material is of historical or cultural significance to Australia; and

   (c) the use is for the purpose of preserving the material; and

   (d) either or both of the following subparagraphs apply:

      (i) the key cultural institution holds the material in original form;

      (ii) the authorized officer is satisfied that a copy of the material cannot be obtained in a version or format that is

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 113M

required for that purpose, consistent with best practice for preserving such copyright material.

Note:     If the use of the copyright material does not meet the requirements of this subsection, the authorized officer might be able to rely on subsection 113H(1) instead.

(2)  An authorized officer of a key cultural institution does not infringe copyright in copyright material (the ***preservation copy***) by making the preservation copy available to be accessed at the key cultural institution if:

(a)  subsection (1) applied to the making of the preservation copy because it was done for the purpose of preserving copyright material that formed part of the collection comprising the key cultural institution; and

(b)  the preservation copy is in electronic form; and

(c)  the body administering the key cultural institution takes reasonable steps to ensure that a person who accesses the preservation copy at the key cultural institution does not infringe copyright in the preservation copy.

Note:     Other uses of the preservation copy might not infringe copyright because of other provisions of this Act, such as section 49 (Reproducing and communicating works by libraries and archives for users).

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 4—Educational institutions—statutory licence

## 113N  Simplified outline of this Division

> An educational institution may copy or communicate certain copyright material for educational purposes if the body administering the educational institution agrees to pay equitable remuneration to a collecting society.

## 113P  Copying and communicating works and broadcasts

*Works*

(1) The body administering an educational institution does not infringe copyright in a work by copying or communicating the whole or a part of the work if:

  (a) a remuneration notice that applies to the educational institution and the work is in force under section 113Q; and

  (b) the work is not:

      (i) a computer program; or

      (ii) a compilation of computer programs; or

      (iii) a work included in a broadcast; or

      (iv) a work comprising scheme information within the meaning of Part IVE of the *Competition and Consumer Act 2010* (which provides for a motor vehicle service and repair information sharing scheme); and

  (c) the copying or communicating occurs solely for the educational purposes of:

      (i) the educational institution; or

      (ii) another educational institution, if a remuneration notice that applies to the other educational institution and the work is in force under section 113Q; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 113P

(d)  the amount of the work copied or communicated does not unreasonably prejudice the legitimate interests of the owner of the copyright; and

(e)  the copying or communicating complies with:

(i)  any relevant agreement between the relevant works collecting society and the body administering the educational institution; and

(ii)  any relevant determination made by the Copyright Tribunal under subsection (4) of this section.

*Broadcasts*

(2)  The body administering an educational institution does not infringe copyright in copyright material by copying, or communicating a copy of, the whole or a part of a broadcast if:

(a)  a remuneration notice that applies to the educational institution and the material is in force under section 113Q; and

(b)  the material is:

(i)  the broadcast; or

(ii)  a work, sound recording or cinematograph film included in the broadcast; and

(c)  the copying or communicating occurs solely for the educational purposes of:

(i)  the educational institution; or

(ii)  another educational institution, if a remuneration notice that applies to the other educational institution and the material is in force under section 113Q; and

(d)  the copying or communicating complies with:

(i)  any relevant agreement between the broadcasts collecting society and the body administering the educational institution; and

(ii)  any relevant determination made by the Copyright Tribunal under subsection (4) of this section.

Replaced Authorised Version registered 10/02/2025 C2024C00854

(3) For the purposes of Part XIA, each performer in a performance is taken to have authorised the copying, or the communicating a copy, of the whole or a part of:

    (a) a broadcast of the performance; or

    (b) the content of a broadcast of the performance;

if subsection (2) applies to the copying or communicating.

> Note:  The effect of this subsection is that no right of action and no offence occurs, in respect of the copy or communication, under Part XIA (Performers' protection).

*Questions determined by Copyright Tribunal*

(4) The Copyright Tribunal may determine a question relating to copying or communicating mentioned in subsection (1) or (2) if:

    (a) the relevant collecting society and the body administering the relevant educational institution fail to determine the question by agreement under subparagraph (1)(e)(i) or (2)(d)(i); and

    (b) the society or the body applies to the Tribunal to have the Tribunal determine the question.

> Note:  Section 153A sets out the procedure of the Copyright Tribunal in dealing with the application.

*Copies and communications subsequently used for other purposes*

(5) Subsections (1), (2) and (3) do not apply, and are taken never to have applied, to copying, or communicating a copy, by a body administering an educational institution if the copy is, with the consent of the body:

    (a) used for a purpose other than the educational purposes of an educational institution; or

    (b) given to the body administering another educational institution, if no remuneration notice that applies to the other educational institution and the relevant copyright material is in force under section 113Q; or

    (c) sold or otherwise supplied for a financial profit.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 113Q

*Content of certain broadcasts*

(6) This section applies to the content of a broadcast in the same way as this section applies to a broadcast if the content of the broadcast was:

(a) electronically transmitted using the internet at the same time, or at substantially the same time, as the broadcast; or

(b) if the broadcast is a free-to-air broadcast—made available online by the broadcaster of the broadcast at the same time as, or after, the broadcast.

## 113Q  Remuneration notices

(1) A ***remuneration notice*** is a written notice:

(a) that the body administering an educational institution gives to a collecting society; and

(b) by which the body undertakes:

(i) to pay to the society equitable remuneration for licensed copying or communicating; and

(ii) to give to the society reasonable assistance to enable the society to collect and distribute that equitable remuneration.

Note:    For equitable remuneration, see section 113R.

(2) Copying or communicating mentioned in subsection 113P(1) or (2) is ***licensed copying or communicating*** if the copying or communicating does not infringe copyright only because of section 113P.

(3) A remuneration notice that a body gives to a collecting society under this section applies to:

(a) an educational institution that the body administers; and

(b) copyright material for which the society is the collecting society.

Note:    See paragraph 113V(4)(a).

Replaced Authorised Version registered 10/02/2025 C2024C00854

(4) However, the notice does not apply to a work to which paragraph 113P(1)(b) applies if the society is not the works collecting society for the eligible rights holder who owns the copyright in the work.

> Note:    See paragraph 113V(4)(b).

*When remuneration notice is in force*

(5) A remuneration notice given under this section:

    (a) comes into force on:

        (i) the day on which the notice is given to the relevant collecting society; or

        (ii) a later day specified in the notice; and

    (b) remains in force until it is revoked.

(6) The body administering an educational institution may, at any time, revoke a remuneration notice the body gave to a collecting society under this section. The body revokes the remuneration notice by giving notice in writing to the society. The revocation takes effect:

    (a) at the end of the period of 3 months starting on the day the notice of revocation is given to the society; or

    (b) on a later day specified in the notice of revocation.

## 113R  Equitable remuneration

(1) The amount of the equitable remuneration that, by a remuneration notice given to a collecting society under section 113Q, the body administering an educational institution undertakes to pay for licensed copying or communicating is the amount:

    (a) agreed between the society and the body; or

    (b) determined by the Copyright Tribunal under subsection (2).

(2) The Copyright Tribunal may determine the amount of the equitable remuneration if:

    (a) the society and the body fail to determine the amount by agreement under paragraph (1)(a); and

*Copyright Act 1968*         *175*

Replaced Authorised Version registered 10/02/2025 C2024C00854

(b) the society or the body apply to the Tribunal to have the Tribunal determine the amount.

Note:    Section 153A sets out the procedure of the Copyright Tribunal in dealing with the application.

(3) A determination of the Tribunal under subsection (2) may be expressed to have effect in relation to copying or communicating done before the day on which the determination is made.

## 113S  Educational institutions must assist collecting society

(1) If a remuneration notice that applies to an educational institution is in force under section 113Q, the relevant collecting society may, in writing (the *entry notice*), notify the body administering the educational institution that the society wishes, on a day specified in the notice, to enter the premises of the educational institution for the purpose of reviewing the body's compliance with:

(a) the remuneration notice; and

(b) any relevant agreements and determinations mentioned in paragraph 113P(1)(e) or (2)(d).

(2) A person authorised in writing by the collecting society may enter the premises of the educational institution for the purpose mentioned in subsection (1) after the collecting society gives the entry notice to the body.

(3) Entry onto premises under subsection (2) may only occur:

(a) during ordinary working hours of the educational institution; and

(b) on the day specified in the entry notice, which must not be earlier than 7 days after the day on which the entry notice is given.

(4) The Copyright Tribunal may determine a question relating to entry onto premises of an educational institution under this section if:

(a) the relevant collecting society and the body administering the educational institution fail to determine the question by agreement; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

    (b) the society or the body applies to the Tribunal to have the Tribunal determine the question.

> Note:    Section 153A sets out the procedure of the Copyright Tribunal in dealing with the application.

(5) The body administering an educational institution must:

    (a) ensure that a person who enters the premises of the educational institution under subsection (2) is provided with all reasonable and necessary facilities and assistance for the effective review of the body's compliance with the remuneration notice, agreements and determinations mentioned in paragraphs (1)(a) and (b); and

    (b) comply with any determinations of the Copyright Tribunal made under subsection (4).

(6) A body administering an educational institution commits an offence if the body contravenes subsection (5).

Penalty:  5 penalty units.

## 113T  Voluntary licences

(1) Nothing in this Division affects the right of the owner of the copyright in copyright material to grant a licence authorising any use of that material by the body administering an educational institution.

(2) Nothing in this Division affects the right of a performer in a performance (within the meaning of Part XIA) to authorise the body administering an educational institution:

    (a) to make, or cause to be made, a sound recording or a cinematograph film of the performance; and

    (b) to communicate, or cause to be communicated, that recording or film.

Replaced Authorised Version registered 10/02/2025 C2024C00854

211 of 692

**Part IVA**  Uses that do not infringe copyright
**Division 4**  Educational institutions—statutory licence

Section 113U

### 113U  Persons acting on behalf of bodies administering educational institutions

A reference in this Division (other than the first reference in subsection 113S(6)) to the body administering an educational institution includes a reference to a person acting on behalf of the body.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 5—Collecting societies

## Subdivision A—Declaration of collecting society

### 113V  Declaration of collecting society

*Applications*

(1) A body may apply, in writing, to the Minister to be declared to be:
    (a) the works collecting society for:
        (i) all eligible rights holders; or
        (ii) specified classes of eligible rights holders; or
    (b) the broadcasts collecting society.

*Declarations*

(2) After receiving the application, the Minister must do one of the following:
    (a) declare the body to be a collecting society;
    (b) refuse to declare the body to be a collecting society;
    (c) both:
        (i) refer the application to the Copyright Tribunal in the way prescribed by the regulations; and
        (ii) notify the body of the referral.

(3) The Copyright Tribunal may declare the body to be a collecting society if the Minister refers the application to the Tribunal under paragraph (2)(c). The Registrar must notify the Minister of the declaration.

    Note:    Section 153A sets out the procedure of the Copyright Tribunal in dealing with the referral.

(4) A declaration of the body to be a collecting society under this section must declare the body to be a collecting society:
    (a) for either:
        (i) works to which paragraph 113P(1)(b) applies; or

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 113V

         (ii) copyright material to which paragraph 113P(2)(b) applies; and

     (b) for:

         (i) if subparagraph (a)(i) of this subsection applies—specified classes of eligible rights holders; or

         (ii) in either case—all eligible rights holders.

   (5) The Minister must, by notifiable instrument, give notice of a declaration made under this section.

*Existing collecting societies*

   (6) If:

     (a) a body is declared to be the works collecting society for an eligible rights holder; and

     (b) another body is later declared to be the works collecting society for the eligible rights holder;

the first declaration ceases to be in effect on the day (the ***cessation day***) before the second declaration commences, to the extent the first declaration relates to the eligible rights holder.

   (7) If:

     (a) a remuneration notice given to the first body under section 113Q:

         (i) is in force on the cessation day; and

         (ii) applies to a work; and

     (b) the eligible rights holder owns the copyright in the work;

the notice ceases to be in force on the cessation day, to the extent the notice applies to the work.

   (8) A body cannot be declared to be the broadcasts collecting society while another body is declared to be the broadcasts collecting society.

*Eligible rights holders*

   (9) In this Act:

Replaced Authorised Version registered 10/02/2025 C2024C00854

***eligible rights holder*** means:

  (a) for a works collecting society—the owner of the copyright in a work; or

  (b) for the broadcasts collecting society—any of the following:

    (i) the owner of the copyright in a work, a sound recording or a cinematograph film (other than a new owner of the copyright in a sound recording of a live performance within the meaning of section 100AB);

    (ii) a performer in a performance (within the meaning of Part XIA).

## 113W  Requirements for declaration of collecting society

The Minister and the Copyright Tribunal must not declare a body to be a collecting society for eligible rights holders under section 113V unless:

  (a) the body is a company limited by guarantee and incorporated under a law of the Commonwealth, a State or a Territory relating to companies; and

  (b) all of those eligible rights holders, or their agents, are entitled to become its members; and

  (c) its rules prohibit the payment of dividends to its members; and

  (d) its rules contain such other provisions as are prescribed by the regulations, being provisions necessary to ensure that the interests of the collecting society's members who are eligible rights holders or their agents are protected adequately, including provisions about:

    (i) the collection of amounts of equitable remuneration payable under remuneration notices given to the society under section 113Q; and

    (ii) the payment of the administrative costs of the society out of amounts collected by it; and

    (iii) the distribution of amounts collected by it; and

    (iv) the holding on trust by the society of amounts for eligible rights holders who are not its members; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part IVA**  Uses that do not infringe copyright
**Division 5**  Collecting societies

Section 113X

(v)  access to records of the society by its members.

## 113X  Revocation of declaration

(1)  Subsection (2) applies if the Minister is satisfied that a body declared to be a collecting society under section 113V:

(a)  is not functioning adequately as the collecting society; or

(b)  is not acting in accordance with its rules or in the best interests of those of its members who are eligible rights holders or their agents; or

(c)  has altered its rules so that they no longer comply with paragraphs 113W(c) and (d); or

(d)  has refused or failed, without reasonable excuse, to comply with section 113Z or 113ZA.

(2)  The Minister may:

(a)  revoke the declaration; or

(b)  refer to the Copyright Tribunal, in the way prescribed by the regulations, the question whether the declaration should be revoked.

(3)  The Tribunal may revoke the declaration if:

(a)  the Minister refers the question to the Copyright Tribunal under paragraph (2)(b); and

(b)  the Tribunal is satisfied that paragraph (1)(a), (b), (c) or (d) applies to the body.

The Registrar must notify the Minister of the revocation.

Note:    Section 153A sets out the procedure of the Copyright Tribunal in dealing with the referral.

(4)  A revocation under this section must specify the day on which it takes effect.

(5)  The Minister must, by notifiable instrument, give notice of a revocation under this section.

Replaced Authorised Version registered 10/02/2025 C2024C00854

(6) Subsection 33(3) of the *Acts Interpretation Act 1901* does not apply in relation to a power under section 113V of this Act to make a declaration.

## Subdivision B—Operation of collecting society

### 113Y  Scope of this Subdivision

This Subdivision applies to:
- (a) a works collecting society; or
- (b) the broadcasts collecting society.

### 113Z  Annual report and accounts

(1) The collecting society must, as soon as practicable after the end of each financial year:
- (a) prepare a report of its operations during that financial year; and
- (b) send a copy of the report to the Minister, for presentation to the Parliament.

(2) The collecting society must keep accounting records correctly recording and explaining the transactions of the society (including any transactions as trustee) and the financial position of the society.

(3) The accounting records must be kept in such a manner as will enable true and fair accounts of the society to be prepared from time to time and those accounts to be conveniently and properly audited.

(4) The collecting society must:
- (a) as soon as practicable after the end of each financial year, cause its accounts to be audited by an auditor who is not a member of the society; and
- (b) must send to the Minister a copy of its accounts as so audited.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Section 113ZA**

(5) The collecting society must give its members reasonable access to copies of all reports and audited accounts prepared under this section.

(6) This section does not affect any obligations of a collecting society relating to the preparation and lodging of annual returns or accounts under the law under which it is incorporated.

## 113ZA  Amendment of rules

The collecting society must, within 21 days after it alters its rules, send a copy of the rules as so altered to the Minister, together with a statement setting out:

  (a)  the effect of the alteration; and

  (b)  the reasons why it was made.

## 113ZB  Review of distribution arrangement by Copyright Tribunal

(1) The collecting society or a member of the society may apply to the Copyright Tribunal for review of the arrangement adopted, or proposed to be adopted, by the society for distributing amounts it collects in a period.

> Note:  Section 153A sets out the procedure of the Copyright Tribunal in dealing with the application.

(2) After an application is made under subsection (1), the Tribunal must make an order:

  (a)  confirming the arrangement; or

  (b)  varying the arrangement; or

  (c)  substituting for the arrangement another arrangement for distributing amounts the collecting society collects in the period.

(3) If the Tribunal makes an order varying the arrangement or substituting for it another arrangement, the arrangement reflecting the Tribunal's order:

  (a)  has effect as if it had been adopted in accordance with the society's rules; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

(b) does not affect a distribution started before the order was made.

### 113ZC  Operation of collecting society rules

Division 4 and this Division apply to the collecting society despite anything in the rules of the society, but nothing in those Divisions affects the rules so far as they can operate together with those Divisions.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Part V—Remedies and offences

## Division 1—Preliminary

### 114  Interpretation

(1) In this Part, ***action*** means a proceeding of a civil nature between parties, and includes a counterclaim.

(2) In the application of this Part in relation to a counterclaim, references to the plaintiff and to the defendant shall be read as references to the defendant and to the plaintiff, respectively.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 2—Actions by owner of copyright

## 115  Actions for infringement

(1) Subject to this Act, the owner of a copyright may bring an action for an infringement of the copyright.

(2) Subject to this Act, the relief that a court may grant in an action for an infringement of copyright includes an injunction (subject to such terms, if any, as the court thinks fit) and either damages or an account of profits.

(3) Where, in an action for infringement of copyright, it is established that an infringement was committed but it is also established that, at the time of the infringement, the defendant was not aware, and had no reasonable grounds for suspecting, that the act constituting the infringement was an infringement of the copyright, the plaintiff is not entitled under this section to any damages against the defendant in respect of the infringement, but is entitled to an account of profits in respect of the infringement whether any other relief is granted under this section or not.

(4) Where, in an action under this section:

   (a) an infringement of copyright is established; and

   (b) the court is satisfied that it is proper to do so, having regard to:

     (i) the flagrancy of the infringement; and

    (ia) the need to deter similar infringements of copyright; and

    (ib) the conduct of the defendant after the act constituting the infringement or, if relevant, after the defendant was informed that the defendant had allegedly infringed the plaintiff's copyright; and

    (ii) whether the infringement involved the conversion of a work or other subject-matter from hardcopy or analog form into a digital or other electronic machine-readable form; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part V**  Remedies and offences
**Division 2**  Actions by owner of copyright

Section 115

        (iii)  any benefit shown to have accrued to the defendant by reason of the infringement; and

        (iv)  all other relevant matters;

the court may, in assessing damages for the infringement, award such additional damages as it considers appropriate in the circumstances.

*Consideration for relief for electronic commercial infringement*

(5)  Subsection (6) applies to a court hearing an action for infringement of copyright if the court is satisfied that:

    (a)  the infringement (the ***proved infringement***) occurred (whether as a result of the doing of an act comprised in the copyright, the authorising of the doing of such an act or the doing of another act); and

    (b)  the proved infringement involved a communication of a work or other subject-matter to the public; and

    (c)  because the work or other subject-matter was communicated to the public, it is likely that there were other infringements (the ***likely infringements***) of the copyright by the defendant that the plaintiff did not prove in the action; and

    (d)  taken together, the proved infringement and likely infringements were on a commercial scale.

(6)  The court may have regard to the likelihood of the likely infringements (as well as the proved infringement) in deciding what relief to grant in the action.

(7)  In determining for the purposes of paragraph (5)(d) whether, taken together, the proved infringement and the likely infringements were on a commercial scale, the following matters are to be taken into account:

    (a)  the volume and value of any articles that:

        (i)  are infringing copies that constitute the proved infringement; or

        (ii)  assuming the likely infringements actually occurred, would be infringing copies constituting those infringements;

Replaced Authorised Version registered 10/02/2025 C2024C00854

(b)  any other relevant matter.

(8)  In subsection (7):

*article* includes a reproduction or copy of a work or other
subject-matter, being a reproduction or copy in electronic form.

## 115A  Injunctions relating to online locations outside Australia

*Application for an injunction*

(1)  The owner of a copyright may apply to the Federal Court of
Australia to grant an injunction that requires a carriage service
provider to take such steps as the Court considers reasonable to
disable access to an online location outside Australia that:

(a)  infringes, or facilitates an infringement, of the copyright; and

(b)  has the primary purpose or the primary effect of infringing,
or facilitating an infringement, of copyright (whether or not
in Australia).

(2)  The application under subsection (1) may also request that the
injunction require an online search engine provider (other than a
provider that is covered by a declaration under subsection (8B)) to
take such steps as the Court considers reasonable so as not to
provide a search result that refers users to the online location.

*Granting the injunction*

(2A)  The Court may grant the injunction in the terms, and subject to the
conditions, that the Court considers appropriate.

Note 1:    For the matters that the Court may take into account when
determining whether to grant the injunction, see subsection (5).

Note 2:    The terms and conditions of the injunction that apply to a carriage
service provider under subsection (1) may be different from those that
apply to an online search engine provider under subsection (2).

(2B)  Without limiting subsection (2A), the injunction may:

(a)  require the carriage service provider to take reasonable steps
to do either or both of the following:

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Section 115A**

       (i) block domain names, URLs and IP addresses that provide access to the online location and that are specified in the injunction;

      (ii) block domain names, URLs and IP addresses that the carriage service provider and the owner of the copyright agree, in writing, have started to provide access to the online location after the injunction is made; and

   (b) require the online search engine provider to take reasonable steps to do either or both of the following:

       (i) not provide search results that include domain names, URLs and IP addresses that provide access to the online location and that are specified in the injunction;

      (ii) not provide search results that include domain names, URLs and IP addresses that the online search engine provider and the owner of the copyright agree, in writing, have started to provide access to the online location after the injunction is made.

*Parties*

(3) The parties to an action under subsection (1) are:

   (a) the owner of the copyright; and

   (b) the carriage service provider; and

  (ba) if the application under subsection (1) also sought for the injunction to apply against an online search engine provider—the online search engine provider; and

   (c) the person who operates the online location if, but only if, that person makes an application to be joined as a party to the proceedings.

*Service*

(4) The owner of the copyright must notify:

   (a) the carriage service provider; and

  (aa) if the application under subsection (1) also sought for the injunction to apply against an online search engine provider—the online search engine provider; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

(b)  the person who operates the online location;

of the making of an application under subsection (1), but the Court may dispense, on such terms as it sees fit, with the notice required to be sent under paragraph (b) if the Court is satisfied that the owner of the copyright is unable, despite reasonable efforts, to determine the identity or address of the person who operates the online location, or to send notices to that person.

*Matters to be taken into account*

(5)  In determining whether to grant the injunction, the Court may take the following matters into account:

(a)  the flagrancy of the infringement, or the flagrancy of the facilitation of the infringement, as referred to in paragraph (1)(b);

(b)  whether the online location makes available or contains directories, indexes or categories of the means to infringe, or facilitate an infringement of, copyright;

(c)  whether the owner or operator of the online location demonstrates a disregard for copyright generally;

(d)  whether access to the online location has been disabled by orders from any court of another country or territory on the ground of or related to copyright infringement;

(e)  whether disabling access to the online location is a proportionate response in the circumstances;

(ea)  if the application under subsection (1) also sought for the injunction to apply against an online search engine provider—whether not providing search results that refer users to the online location is a proportionate response in the circumstances;

(f)  the impact on any person, or class of persons, likely to be affected by the grant of the injunction;

(g)  whether it is in the public interest to disable access to the online location;

(ga)  if the application under subsection (1) also sought for the injunction to apply against an online search engine

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part V  Remedies and offences
Division 2  Actions by owner of copyright

---

## Section 115A

provider—whether it is in the public interest not to provide search results that refer users to the online location;

(h) whether the owner of the copyright complied with subsection (4);

(i) any other remedies available under this Act;

(j) any other matter prescribed by the regulations;

(k) any other relevant matter.

*Presumption that the online location is outside Australia*

(5A) For the purposes of the proceedings, the online location is presumed to be outside Australia, unless the contrary is established.

*Affidavit evidence*

(6) For the purposes of the proceedings, section 134A (affidavit evidence) applies as if the reference in paragraph 134A(f) to a particular act included a reference to a class of acts.

*Rescinding and varying injunctions*

(7) The Court may:

(a) limit the duration of; or

(b) upon application, rescind or vary;

an injunction granted under this section.

(8) An application under subsection (7) may be made by:

(a) any of the persons referred to in subsection (3); or

(b) any other person prescribed by the regulations.

(8A) An application under subsection (7) must not request the Court to vary the injunction so that it applies to an online search engine provider that is covered by a declaration under subsection (8B).

*Declarations excluding online search engine providers*

(8B) The Minister may, by legislative instrument, declare that:

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

    (a)  a particular online search engine provider; or

    (b)  an online search engine provider that is a member of a particular class;

must not be specified in an application under subsection (1) or (7).

*Costs*

(9)  A carriage service provider or, if applicable, an online search engine provider is not liable for any costs in relation to the proceedings unless the provider enters an appearance and takes part in the proceedings.

## 116  Rights of owner of copyright in respect of infringing copies

(1)  The owner of the copyright in a work or other subject-matter may bring an action for conversion or detention in relation to:

    (a)  an infringing copy; or

    (b)  a device (including a circumvention device) used or intended to be used for making infringing copies.

(1A)  In an action for conversion or detention, a court may grant to the owner of the copyright all or any of the remedies that are available in such an action as if:

    (a)  the owner of the copyright had been the owner of the infringing copy since the time the copy was made; or

    (b)  the owner of the copyright had been the owner of the device since the time when it was used or intended to be used for making infringing copies.

(1B)  Any relief granted by a court in an action for conversion or detention is in addition to any relief that the court may grant under section 115.

(1C)  A court is not to grant any relief to the owner of the copyright in an action for conversion or detention if the relief that the court has granted or proposes to grant under section 115 is, in the opinion of the court, a sufficient remedy.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part V**  Remedies and offences
**Division 2**  Actions by owner of copyright

## Section 116

(1D)  In deciding whether to grant relief in an action for conversion or detention and in assessing the amount of damages payable, the court may have regard to the following:

(a)  the expenses incurred by the defendant, being a person who marketed or otherwise dealt with the infringing copy, in manufacturing or acquiring the infringing copy;

(b)  whether the expenses were incurred before or after the infringing copy was sold or otherwise disposed of by the defendant;

(c)  any other matter that the court considers relevant.

(1E)  If the infringing copy is an article of which only part consists of material that infringes copyright, the court, in deciding whether to grant relief and in assessing the amount of damages payable, may also have regard to the following:

(a)  the importance to the market value of the article of the material that infringes the copyright;

(b)  the proportion the material that infringes copyright bears to the article;

(c)  the extent to which the material that infringes copyright may be separated from the article.

(2)  A plaintiff is not entitled by virtue of this section to any damages or to any other pecuniary remedy, other than costs, if it is established that, at the time of the conversion or detention:

(a)  the defendant was not aware, and had no reasonable grounds for suspecting, that copyright subsisted in the work or other subject-matter to which the action relates;

(b)  where the articles converted or detained were infringing copies—the defendant believed, and had reasonable grounds for believing, that they were not infringing copies; or

(c)  where an article converted or detained was a device used or intended to be used for making articles—the defendant believed, and had reasonable grounds for believing, that the articles so made or intended to be made were not or would not be, as the case may be, infringing copies.

Replaced Authorised Version registered 10/02/2025 C2024C00854

### 116AAA  Compensation for acquisition of property

(1) This section applies if, apart from this section, subsections 22(3A) and 97(2) and (2A) would result in the acquisition of property from a maker of a sound recording of a live performance by a performer in the performance otherwise than on just terms.

(2) There is payable to the maker by the performer such amount of compensation as is agreed on between those persons, or, failing agreement, as is determined by a court of competent jurisdiction.

(3) Any damages or compensation recovered or other remedy given in a proceeding that is commenced otherwise than under this section is to be taken into account in assessing compensation payable in a proceeding that is commenced under this section and that arises out of the same event or transaction.

(4) Any compensation payable in a proceeding that is commenced under this section is to be taken into account in assessing any damages or compensation or other remedy to be awarded in a proceeding that is commenced otherwise than under this section and that arises out of the same event or transaction.

(5) In this section:

*acquisition of property* has the same meaning as in paragraph 51(xxxi) of the Constitution.

*just terms* has the same meaning as in paragraph 51(xxxi) of the Constitution.

*maker* of a sound recording of a live performance means a person mentioned in paragraph 22(3A)(a).

*performer* in a live performance means the following people:
   (a) a person who becomes a maker of a sound recording under paragraph 22(3A)(b);
   (b) if subsection 22(3B) applies—an employer who becomes a maker of a sound recording under that subsection.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 116AA
___

# Division 2AA—Limitation on remedies available against service providers

## Subdivision A—Preliminary

### 116AA  Purpose of this Division

(1) The purpose of this Division is to limit the remedies that are available against service providers for infringements of copyright that relate to the carrying out of certain online activities by service providers. A service provider must satisfy certain conditions to take advantage of the limitations.

Note 1A:    For the meaning of *service provider*, see section 116ABA.

Note 1:    Subdivision B contains a description of the relevant activities.

Note 2:    Subdivision C contains details of the limitations on remedies.

Note 3:    Subdivision D sets out the conditions that must be satisfied for a service provider to take advantage of the limitations. The limitations are automatic if a service provider complies with the relevant conditions.

(2) This Division does not limit the operation of provisions of this Act outside this Division in relation to determining whether copyright has been infringed.

### 116AB  Definitions

In this Division:

*caching* means the reproduction of copyright material on a system or network controlled or operated by or for a service provider in response to an action by a user in order to facilitate efficient access to that material by that user or other users.

*industry code* means:
   (a) an industry code that:
      (i) meets any prescribed requirements; and

___

*Copyright Act 1968*

Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

   (ii) is registered under Part 6 of the *Telecommunications Act 1997*; or
 (b) an industry code developed in accordance with the regulations.

*service provider* has the meaning given by section 116ABA.

## 116ABA  Definition of *service provider*

(1) Each of the following is a *service provider*:
 (a) a carriage service provider;
 (b) an organisation assisting persons with a disability;
 (c) the body administering a library, if:
   (i) all or part of the collection comprising the library is accessible to members of the public directly or through interlibrary loans; or
   (ii) the principal purpose of the library is to provide library services for members of a Parliament;
 (d) the body administering an archives;
 (e) the body administering a key cultural institution;
 (f) the body administering an educational institution.

(2) If a service provider is not:
 (a) a carriage service provider; or
 (b) an organisation assisting persons with a disability; or
 (c) the body administering an educational institution, being an educational institution that is a body corporate;
this Division only applies to activities that the service provider carries out because of its relationship to the relevant library, archives, key cultural institution or educational institution mentioned in subsection (1).

Replaced Authorised Version registered 10/02/2025 C2024C00854

## Subdivision B—Relevant activities

### 116AC  Category A activity

A service provider carries out a ***Category A activity*** by providing facilities or services for transmitting, routing or providing connections for copyright material, or the intermediate and transient storage of copyright material in the course of transmission, routing or provision of connections.

### 116AD  Category B activity

A service provider carries out a ***Category B activity*** by caching copyright material through an automatic process. The service provider must not manually select the copyright material for caching.

### 116AE  Category C activity

A service provider carries out a ***Category C activity*** by storing, at the direction of a user, copyright material on a system or network controlled or operated by or for the service provider.

### 116AF  Category D activity

A service provider carries out a ***Category D activity*** by referring users to an online location using information location tools or technology.

## Subdivision C—Limitations on remedies

### 116AG  Limitations on remedies

*Relevant conditions must be satisfied*

(1)  A service provider must satisfy the relevant conditions set out in Subdivision D before the limitations in this section apply.

Replaced Authorised Version registered 10/02/2025 C2024C00854

*General limitations*

(2) For infringements of copyright that occur in the course of carrying out any of the categories of activities set out in Subdivision B, a court must not grant relief against a service provider that consists of:

   (a) damages or an account of profits; or

   (b) additional damages; or

   (c) other monetary relief.

*Category specific limitations*

(3) For an infringement of copyright that occurs in the course of the carrying out of a Category A activity, the relief that a court may grant against a service provider is limited to one or more of the following orders:

   (a) an order requiring the service provider to take reasonable steps to disable access to an online location outside Australia;

   (b) an order requiring the service provider to terminate a specified account.

(4) For an infringement of copyright that occurs in the course of the carrying out of a Category B, C or D activity, the relief that a court may grant against a service provider is limited to one or more of the following orders:

   (a) an order requiring the service provider to remove or disable access to infringing copyright material, or to a reference to infringing copyright material;

   (b) an order requiring the service provider to terminate a specified account;

   (c) some other less burdensome but comparably effective non-monetary order if necessary.

*Relevant matters*

(5) In deciding whether to make an order of a kind referred to in subsection (3) or (4), a court must have regard to:

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 116AH

      (a)  the harm that has been caused to the owner or exclusive
           licensee of the copyright; and

      (b)  the burden that the making of the order will place on the
           service provider; and

      (c)  the technical feasibility of complying with the order; and

      (d)  the effectiveness of the order; and

      (e)  whether some other comparably effective order would be less
           burdensome.

The court may have regard to other matters it considers relevant.

## Subdivision D—Conditions

### 116AH  Conditions

    (1)  This table sets out the conditions for each of the categories of
       activities.

| Conditions | | |
|---|---|---|
| **Item** | **Activity** | **Conditions** |
| 1 | All categories | 1.  The service provider must adopt and reasonably implement a policy that provides for termination, in appropriate circumstances, of the accounts of repeat infringers. |
| | | 2.  If there is a relevant industry code in force—the service provider must comply with the relevant provisions of that code relating to accommodating and not interfering with standard technical measures used to protect and identify copyright material. |
| 2 | Category A | 1.  Any transmission of copyright material in carrying out this activity must be initiated by or at the direction of a person other than the service provider. |
| | | 2.  The service provider must not make substantive modifications to copyright material transmitted. This does not apply to modifications made as part of a technical process. |

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Conditions**

| Item | Activity | Conditions |
|------|----------|-----------|
| 3 | Category B | 1. If the copyright material that is cached is subject to conditions on user access at the originating site, the service provider must ensure that access to a significant part of the cached copyright material is permitted only to users who have met those conditions. |
| | | 2. If there is a relevant industry code in force—the service provider must comply with the relevant provisions of that code relating to:<br>(a) updating the cached copyright material; and<br>(b) not interfering with technology used at the originating site to obtain information about the use of the copyright material. |
| | | 3. The service provider must expeditiously remove or disable access to cached copyright material upon notification in the prescribed form that the material has been removed or access to it has been disabled at the originating site. |
| | | 4. The service provider must not make substantive modifications to the cached copyright material as it is transmitted to subsequent users. This does not apply to modifications made as part of a technical process. |

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part V**  Remedies and offences
**Division 2AA**  Limitation on remedies available against service providers

Section 116AH

| Conditions | | |
|---|---|---|
| **Item** | **Activity** | **Conditions** |
| 4 | Category C | 1. The service provider must not receive a financial benefit that is directly attributable to the infringing activity if the service provider has the right and ability to control the activity. |
| | | 2. The service provider must expeditiously remove or disable access to copyright material residing on its system or network upon receipt of a notice in the prescribed form that the material has been found to be infringing by a court. |
| | | 2A. The service provider must act expeditiously to remove or disable access to copyright material residing on its system or network if the service provider:<br>(a) becomes aware that the material is infringing; or<br>(b) becomes aware of facts or circumstances that make it apparent that the material is likely to be infringing.<br><br>The service provider does not, in an action relating to this Division, bear any onus of proving a matter referred to in paragraph (a) or (b). |
| | | 3. The service provider must comply with the prescribed procedure in relation to removing or disabling access to copyright material residing on its system or network. |

Replaced Authorised Version registered 10/02/2025 C2024C00854

| Conditions | | |
|---|---|---|
| **Item** | **Activity** | **Conditions** |
| 5 | Category D | 1. The service provider must not receive a financial benefit that is directly attributable to the infringing activity if the service provider has the right and ability to control the activity. |
| | | 2. The service provider must expeditiously remove or disable access to a reference residing on its system or network upon receipt of a notice in the prescribed form that the copyright material to which it refers has been found to be infringing by a court. |
| | | 2A. The service provider must act expeditiously to remove or disable access to a reference residing on its system or network if the service provider: <br>(a) becomes aware that the copyright material to which it refers is infringing; or <br>(b) becomes aware of facts or circumstances that make it apparent that the copyright material to which it refers is likely to be infringing. <br><br>The service provider does not, in an action relating to this Division, bear any onus of proving a matter referred to in paragraph (a) or (b). |
| | | 3. The service provider must comply with the prescribed procedure in relation to removing or disabling a reference residing on its system or network. |

(2) Nothing in the conditions is to be taken to require a service provider to monitor its service or to seek facts to indicate infringing activity except to the extent required by a standard technical measure mentioned in condition 2 in table item 1 in the table in subsection (1).

(3) In deciding, for the purposes of condition 1 in table items 4 and 5 in the table in subsection (1), whether a financial benefit is otherwise directly attributable to the infringing activity referred to in that condition, a court must have regard to:

Compilation No. 64                                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 116AI

---

    (a) industry practice in relation to the charging of services by service providers, including charging based on level of activity; and

    (b) whether the financial benefit was greater than the benefit that would usually result from charging in accordance with accepted industry practice.

The court may have regard to other matters it considers relevant.

  (4) An act done by a service provider in complying with the prescribed procedure referred to in condition 3 in table item 4 in the table in subsection (1) does not constitute a failure to satisfy condition 2A in that item.

## 116AI  Evidence of compliance with conditions

If a service provider, in an action relating to this Division, points to evidence, as prescribed, that suggests that the service provider has complied with a condition, the court must presume, in the absence of evidence to the contrary, that the service provider has complied with the condition.

## Subdivision E—Regulations

## 116AJ  Regulations

  (1) The regulations may provide that a service provider is not liable for damages or any other civil remedy as a result of action taken in good faith to comply with a condition.

  (2) The regulations may provide civil remedies for conduct by relevant parties in relation to conditions.

  (3) The regulations may prescribe offences for conduct by persons issuing notices under the regulations, and prescribe penalties for offences against those regulations. The penalties must not exceed 50 penalty units.

    Note:    If a body corporate is convicted of an offence against regulations made under this section, subsection 4B(3) of the *Crimes Act 1914*

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

allows a court to impose fines of up to 5 times the penalty stated above.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part V  Remedies and offences
Division 2A  Actions in relation to technological protection measures and electronic
rights management information

Section 116AK

# Division 2A—Actions in relation to technological protection measures and electronic rights management information

## Subdivision A—Technological protection measures

### 116AK  Definitions

In this Subdivision, *computer program* has the same meaning as in section 47AB.

### 116AL  Interaction of this Subdivision with Part VAA

This Subdivision does not apply to encoded broadcasts (within the meaning of Part VAA).

### 116AM  Geographical application

(1) This Subdivision applies to acts done in Australia.

(2) This section does not, by implication, affect the interpretation of any other provision of this Act.

### 116AN  Circumventing an access control technological protection measure

(1) An owner or exclusive licensee of the copyright in a work or other subject-matter may bring an action against a person if:

    (a) the work or other subject-matter is protected by an access control technological protection measure; and

    (b) the person does an act that results in the circumvention of the access control technological protection measure; and

    (c) the person knows, or ought reasonably to know, that the act would have that result.

*Copyright Act 1968*

Replaced Authorised Version registered 10/02/2025 C2024C00854

Remedies and offences **Part V**
Actions in relation to technological protection measures and electronic rights
management information **Division 2A**

Section 116AN

*Exception—permission*

(2) Subsection (1) does not apply to the person if the person has the permission of the copyright owner or exclusive licensee to circumvent the access control technological protection measure.

*Exception—interoperability*

(3) Subsection (1) does not apply to the person if:

  (a) the person circumvents the access control technological protection measure to enable the person to do an act; and

  (b) the act:

    (i) relates to a copy of a computer program (the ***original program***) that is not an infringing copy and that was lawfully obtained; and

    (ii) will not infringe the copyright in the original program; and

    (iia) relates to elements of the original program that will not be readily available to the person when the circumvention occurs; and

    (iii) will be done for the sole purpose of achieving interoperability of an independently created computer program with the original program or any other program.

*Exception—encryption research*

(4) Subsection (1) does not apply to the person if:

  (a) the person circumvents the access control technological protection measure to enable:

    (i) the person; or

    (ii) if the person is a body corporate—an employee of the person;

    to do an act; and

  (b) the act:

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part V  Remedies and offences
Division 2A  Actions in relation to technological protection measures and electronic rights management information

Section 116AN

      (i) relates to a copy of a work or other subject-matter that is not an infringing copy and that was lawfully obtained; and

      (ii) will not infringe the copyright in the work or other subject-matter; and

      (iii) will be done for the sole purpose of identifying and analysing flaws and vulnerabilities of encryption technology; and

  (c) the person or employee is:

      (i) engaged in a course of study at an educational institution in the field of encryption technology; or

      (ii) employed, trained or experienced in the field of encryption technology; and

  (d) the person or employee:

      (i) has obtained permission from the owner or exclusive licensee of the copyright to do the act; or

      (ii) has made, or will make, a good faith effort to obtain such permission.

In this subsection, *encryption technology* means the scrambling and descrambling of information using mathematical formulas or algorithms.

*Exception—computer security testing*

(5) Subsection (1) does not apply to the person if:

  (a) the person circumvents the access control technological protection measure to enable the person to do an act; and

  (b) the act:

      (i) relates to a copy of a computer program that is not an infringing copy; and

      (ii) will not infringe the copyright in the computer program; and

      (iii) will be done for the sole purpose of testing, investigating or correcting the security of a computer, computer system or computer network; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

Remedies and offences  **Part V**
Actions in relation to technological protection measures and electronic rights
management information  **Division 2A**

Section 116AN

    (iv)  will be done with the permission of the owner of the computer, computer system or computer network.

*Exception—online privacy*

(6)  Subsection (1) does not apply to the person if:

  (a)  the person circumvents the access control technological protection measure to enable the person to do an act; and

  (b)  the act:

    (i)  relates to a copy of a work or other subject-matter that is not an infringing copy; and

    (ii)  will not infringe the copyright in the work or other subject-matter; and

   (iii)  will be done for the sole purpose of identifying and disabling an undisclosed capability to collect or disseminate personally identifying information about the online activities of a natural person; and

   (iv)  will not affect the ability of the person or any other person to gain access to the work or other subject-matter or any other work or subject-matter.

*Exception—law enforcement and national security*

(7)  Subsection (1) does not apply in relation to anything lawfully done for the purposes of:

  (a)  law enforcement; or

  (b)  national security; or

  (c)  performing a statutory function, power or duty;

by or on behalf of the Commonwealth, a State or a Territory, or an authority of one of those bodies.

*Exception—libraries etc.*

(8)  Subsection (1) does not apply to the person if:

  (a)  the person circumvents the access control technological protection measure to enable the person to do an act; and

  (b)  the person is:

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part V  Remedies and offences
Division 2A  Actions in relation to technological protection measures and electronic rights management information

Section 116AO

(i) a library (other than a library that is conducted for the profit, direct or indirect, of an individual or individuals); or

(ii) a body mentioned in paragraph (a) of the definition of *archives* in subsection 10(1), or in subsection 10(4); or

(iii) an educational institution; and

(c) the act will be done for the sole purpose of making an acquisition decision in relation to the work or other subject-matter; and

(d) the work or other subject-matter will not be otherwise available to the person when the act is done.

Note:    A library that is owned by a person conducting a business for profit might not itself be conducted for profit (see section 18).

*Exception—prescribed acts*

(9) Subsection (1) does not apply to the person if:

(a) the person circumvents the access control technological protection measure to enable the person to do an act; and

(b) the act will not infringe the copyright in a work or other subject-matter; and

(c) the doing of the act by the person is prescribed by the regulations.

Note:    For the making of regulations prescribing the doing of an act by a person, see section 249.

*Burden of proof*

(10) The defendant bears the burden of establishing the matters referred to in subsections (2) to (9).

## 116AO  Manufacturing etc. a circumvention device for a technological protection measure

(1) An owner or exclusive licensee of the copyright in a work or other subject-matter may bring an action against a person if:

(a) the person does any of the following acts with a device:

Replaced Authorised Version registered 10/02/2025 C2024C00854

Remedies and offences  **Part V**
Actions in relation to technological protection measures and electronic rights
management information  **Division 2A**

Section 116AO

      (i)  manufactures it with the intention of providing it to another person;

     (ii)  imports it into Australia with the intention of providing it to another person;

   (iii)  distributes it to another person;

   (iv)  offers it to the public;

    (v)  provides it to another person;

   (vi)  communicates it to another person; and

  (b)  the person knows, or ought reasonably to know, that the device is a circumvention device for a technological protection measure; and

  (c)  the work or other subject-matter is protected by the technological protection measure.

*Exception - no promotion, advertising etc.*

(2)  Subsection (1) does not apply to the person if:

  (a)  the device is a circumvention device for the technological protection measure only because it was promoted, advertised or marketed as having the purpose of circumventing the technological protection measure; and

  (b)  both of the following apply:

     (i)  the person did not do such promoting, advertising or marketing;

    (ii)  the person did not direct or request (expressly or impliedly) another person to do such promoting, advertising or marketing.

*Exception—interoperability*

(3)  Subsection (1) does not apply to the person if:

  (a)  the circumvention device will be used to circumvent the technological protection measure to enable the doing of an act; and

  (b)  the act:

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part V**  Remedies and offences
**Division 2A**  Actions in relation to technological protection measures and electronic rights management information

Section 116AO

(i) relates to a copy of a computer program (the ***original program***) that is not an infringing copy and that was lawfully obtained; and

(ii) will not infringe the copyright in the original program; and

(iia) relates to elements of the original program that will not be readily available to the person doing the act when the circumvention occurs; and

(iii) will be done for the sole purpose of achieving interoperability of an independently created computer program with the original program or any other program.

*Exception—encryption research*

(4) Subsection (1) does not apply to the person if:

(a) the technological protection measure is an access control technological protection measure; and

(b) the circumvention device will be used to circumvent the access control technological protection measure to enable a person (the ***researcher***) to do an act; and

(c) the act:

(i) relates to a copy of a work or other subject-matter that is not an infringing copy and that was lawfully obtained; and

(ii) will not infringe the copyright in the work or other subject-matter; and

(iii) will be done for the sole purpose of identifying and analysing flaws and vulnerabilities of encryption technology; and

(d) the researcher is:

(i) engaged in a course of study at an educational institution in the field of encryption technology; or

(ii) employed, trained or experienced in the field of encryption technology; and

(e) the researcher:

Replaced Authorised Version registered 10/02/2025 C2024C00854

Remedies and offences  **Part V**
Actions in relation to technological protection measures and electronic rights
management information  **Division 2A**

Section 116AO

     (i)  has obtained permission from the owner or exclusive licensee of the copyright to do the act; or

    (ii)  has made, or will make, a good faith effort to obtain such permission.

In this subsection, ***encryption technology*** means the scrambling and descrambling of information using mathematical formulas or algorithms.

*Exception—computer security testing*

(5)  Subsection (1) does not apply to the person if:

    (a)  the technological protection measure is an access control technological protection measure; and

    (b)  the circumvention device will be used to circumvent the access control technological protection measure to enable the doing of an act; and

    (c)  the act:

       (i)  relates to a copy of a computer program that is not an infringing copy; and

      (ii)  will not infringe the copyright in the computer program; and

     (iii)  will be done for the sole purpose of testing, investigating or correcting the security of a computer, computer system or computer network; and

     (iv)  will be done with the permission of the owner of the computer, computer system or computer network.

*Exception—law enforcement and national security*

(6)  Subsection (1) does not apply in relation to anything lawfully done for the purposes of:

    (a)  law enforcement; or

    (b)  national security; or

    (c)  performing a statutory function, power or duty;

by or on behalf of the Commonwealth, a State or a Territory, or an authority of one of those bodies.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part V  Remedies and offences
**Division 2A**  Actions in relation to technological protection measures and electronic
rights management information

Section 116AP

*Burden of proof*

(7) The defendant bears the burden of establishing the matters referred
to in subsections (2) to (6).

## 116AP  Providing etc. a circumvention service for a technological protection measure

(1) An owner or exclusive licensee of the copyright in a work or other
subject-matter may bring an action against a person if:
  (a) the person:
    (i) provides a service to another person; or
    (ii) offers a service to the public; and
  (b) the person knows, or ought reasonably to know, that the
  service is a circumvention service for a technological
  protection measure; and
  (c) the work or other subject-matter is protected by the
  technological protection measure.

*Exception - no promotion, advertising etc.*

(2) Subsection (1) does not apply to the person if:
  (a) the service is a circumvention service for the technological
  protection measure only because it was promoted, advertised
  or marketed as having the purpose of circumventing the
  technological protection measure; and
  (b) both of the following apply:
    (i) the person did not do such promoting, advertising or
    marketing;
    (ii) the person did not direct or request (expressly or
    impliedly) another person to do such promoting,
    advertising or marketing.

*Exception—interoperability*

(3) Subsection (1) does not apply to the person if:

Replaced Authorised Version registered 10/02/2025 C2024C00854

Remedies and offences  **Part V**
Actions in relation to technological protection measures and electronic rights
management information  **Division 2A**

Section 116AP

(a) the circumvention service will be used to circumvent a technological protection measure to enable the doing of an act; and

(b) the act:

  (i) relates to a copy of a computer program (the ***original program***) that is not an infringing copy and that was lawfully obtained; and

  (ii) will not infringe the copyright in the original program; and

  (iia) relates to elements of the original program that will not be readily available to the person doing the act when the circumvention occurs; and

  (iii) will be done for the sole purpose of achieving interoperability of an independently created computer program with the original program or any other program.

*Exception—encryption research*

(4) Subsection (1) does not apply to the person if:

(a) the technological protection measure is an access control technological protection measure; and

(b) the circumvention service will be used to circumvent the access control technological protection measure to enable a person (the ***researcher***) to do an act; and

(c) the act:

  (i) relates to a copy of a work or other subject-matter that is not an infringing copy and that was lawfully obtained; and

  (ii) will not infringe the copyright in the work or other subject-matter; and

  (iii) will be done for the sole purpose of identifying and analysing flaws and vulnerabilities of encryption technology; and

(d) the researcher is:

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part V  Remedies and offences
Division 2A  Actions in relation to technological protection measures and electronic rights management information

Section 116AP

        (i) engaged in a course of study at an educational institution in the field of encryption technology; or

        (ii) employed, trained or experienced in the field of encryption technology; and

    (e) the researcher:

        (i) has obtained permission from the owner or exclusive licensee of the copyright to do the act; or

        (ii) has made, or will make, a good faith effort to obtain such permission.

In this subsection, **encryption technology** means the scrambling and descrambling of information using mathematical formulas or algorithms.

*Exception—computer security testing*

  (5) Subsection (1) does not apply to the person if:

    (a) the technological protection measure is an access control technological protection measure; and

    (b) the circumvention service will be used to circumvent the access control technological protection measure to enable the doing of an act; and

    (c) the act:

        (i) relates to a copy of a computer program that is not an infringing copy; and

        (ii) will not infringe the copyright in the computer program; and

        (iii) will be done for the sole purpose of testing, investigating or correcting the security of a computer, computer system or computer network; and

        (iv) will be done with the permission of the owner of the computer, computer system or computer network.

*Exception—law enforcement and national security*

  (6) Subsection (1) does not apply in relation to anything lawfully done for the purposes of:

*Copyright Act 1968*

Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Remedies and offences  **Part V**
Actions in relation to technological protection measures and electronic rights
management information  **Division 2A**

Section 116AQ

    (a)  law enforcement; or

    (b)  national security; or

    (c)  performing a statutory function, power or duty;

by or on behalf of the Commonwealth, a State or a Territory, or an authority of one of those bodies.

*Burden of proof*

(7)  The defendant bears the burden of establishing the matters referred to in subsections (2) to (6).

## 116AQ  Remedies in actions under this Subdivision

(1)  Without limiting the relief that a court may grant in an action under this Subdivision, the relief may include:

    (a)  an injunction, subject to such terms, if any, as the court thinks fit; and

    (b)  damages or an account of profits; and

    (c)  if the doing of an act, which is the subject of the action, involved a circumvention device—an order that the circumvention device be destroyed or dealt with as specified in the order.

(2)  In assessing damages, the court may award such additional damages as it considers appropriate, having regard to:

    (a)  the flagrancy of the defendant's acts that are the subject of the action; and

    (b)  the need to deter similar acts; and

    (c)  the conduct of the defendant after the acts or, if relevant, after the defendant was informed that the defendant had allegedly done an act that would be the subject of an action under this Subdivision; and

    (d)  any benefit shown to have accrued to the defendant as a result of those acts; and

    (e)  any other relevant matters.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part V  Remedies and offences
Division 2A  Actions in relation to technological protection measures and electronic rights management information

Section 116B

(3) If:

(a) an action has been commenced against a person under this Subdivision; and

(b) the doing of an act by the person, which is the subject of the action, involved a device; and

(c) the device appears to the court to be a circumvention device;

the court may order that the device be delivered up to the court upon such conditions as the court considers appropriate.

(4) This section does not, by implication, affect the interpretation of any other provision of this Act.

## Subdivision B—Electronic rights management information

### 116B  Removal or alteration of electronic rights management information

(1) This section applies if:

(a) either:

(i) a person removes, from a copy of a work or other subject-matter in which copyright subsists, any electronic rights management information that relates to the work or other subject-matter; or

(ii) a person alters any electronic rights management information that relates to a work or other subject-matter in which copyright subsists; and

(b) the person does so without the permission of the owner or exclusive licensee of the copyright; and

(c) the person knew, or ought reasonably to have known, that the removal or alteration would induce, enable, facilitate or conceal an infringement of the copyright in the work or other subject-matter.

(2) If this section applies, the owner or exclusive licensee of the copyright may bring an action against the person.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Case 1:25-cv-00910-JMF    Document 26-5    Filed 02/28/25    Page 252 of 692

Remedies and offences  **Part V**
Actions in relation to technological protection measures and electronic rights
management information  **Division 2A**

Section 116C

(3) In an action under subsection (2), it must be presumed that the defendant knew, or ought reasonably to have known, that the removal or alteration to which the action relates would have the effect referred to in paragraph (1)(c) unless the defendant proves otherwise.

### 116C  Distribution to the public etc. of works whose electronic rights management information has been removed or altered

(1) This section applies if:

  (a) a person does any of the following acts in relation to a work or other subject-matter in which copyright subsists without the permission of the owner or exclusive licensee of the copyright:

    (i) distributes a copy of the work or other subject-matter to the public;

    (ii) imports into Australia a copy of the work or other subject-matter for distribution to the public;

    (iii) communicates a copy of the work or other subject-matter to the public; and

  (b) either:

    (i) any electronic rights management information that relates to the work or other subject-matter has been removed from the copy of the work or subject-matter; or

    (ii) any electronic rights management information that relates to the work or other subject-matter has been altered; and

  (c) the person knew that the electronic rights management information had been so removed or altered without the permission of the owner or exclusive licensee of the copyright; and

  (d) the person knew, or ought reasonably to have known, that the act referred to in paragraph (a) that was done by the person would induce, enable, facilitate or conceal an infringement of the copyright in the work or other subject-matter.

Compilation No. 64                                              Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part V  Remedies and offences
**Division 2A**  Actions in relation to technological protection measures and electronic rights management information

Section 116CA

(2) If this section applies, the owner or exclusive licensee of the copyright may bring an action against the person.

(3) In an action under subsection (2), it must be presumed that the defendant:

(a) had the knowledge referred to in paragraph (1)(c); and

(b) knew, or ought reasonably to have known, that the doing of the act to which the action relates would have the effect referred to in paragraph (1)(d);

unless the defendant proves otherwise.

## 116CA  Distribution and importation of electronic rights management information that has been removed or altered

(1) This section applies if:

(a) a person does either of the following acts in relation to electronic rights management information that relates to a work or other subject-matter in which copyright subsists:

(i) distributes the electronic rights management information;

(ii) imports into Australia the electronic rights management information for distribution; and

(b) the person does so without the permission of the owner or exclusive licensee of the copyright; and

(c) either:

(i) the information has been removed from a copy of the work or subject-matter without the permission of the owner or exclusive licensee of the copyright; or

(ii) the information has been removed from a copy of the work or subject-matter with the permission of the owner or exclusive licensee of the copyright but the information has been altered without that permission; and

(d) the person knew that the information had been removed or altered without that permission; and

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

Remedies and offences  **Part V**
Actions in relation to technological protection measures and electronic rights
management information  **Division 2A**

Section 116CB

(e) the person knew, or ought reasonably to have known, that the act referred to in paragraph (a) that was done by the person would induce, enable, facilitate or conceal an infringement of the copyright.

(2) If this section applies, the owner or exclusive licensee of the copyright may bring an action against the person.

(3) In an action under subsection (2), it must be presumed that the defendant:

(a) had the knowledge referred to in paragraph (1)(d); and

(b) knew, or ought reasonably to have known, that the doing of the act to which the action relates would have the effect referred to in paragraph (1)(e);

unless the defendant proves otherwise.

## 116CB  Exception relating to national security and law enforcement

Sections 116B to 116CA do not apply in respect of anything lawfully done for the purposes of law enforcement or national security by or on behalf of:

(a) the Commonwealth or a State or Territory; or

(b) an authority of the Commonwealth or of a State or Territory.

## 116D  Remedies in actions under this Subdivision

(1) The relief that a court may grant in an action under this Subdivision includes an injunction (subject to such terms, if any, as the court thinks fit) and either damages or an account of profits.

(2) If, in an action under this Subdivision, the court is satisfied that it is proper to do so, having regard to:

(a) the flagrancy of the defendant's actions that are the subject of the action; and

(b) any benefit shown to have accrued to the defendant as a result of those acts; and

(c) any other relevant matters;

Replaced Authorised Version registered 10/02/2025 C2024C00854

## Section 116D

the court may, in assessing damages, award such additional damages as it considers appropriate in the circumstances.

Replaced Authorised Version registered 10/02/2025 C2024C00854

## Division 3—Proceedings where copyright is subject to exclusive licence

### 117  Interpretation

In this Division:

*if the licence had been an assignment* means if, instead of the licence, there had been granted (subject to conditions corresponding as nearly as practicable with those subject to which the licence was granted) an assignment of the copyright in respect of its application to the doing, at the places and times authorized by the licence, of the acts so authorized.

*the other party* means:

(a) in relation to the owner of the copyright—the exclusive licensee; and

(b) in relation to the exclusive licensee—the owner of the copyright.

### 118  Application

This Division applies to proceedings in relation to a copyright in respect of which an exclusive licence has been granted and is in force at the time of the events to which the proceedings relate.

### 119  Rights of exclusive licensee

Subject to the succeeding sections of this Division:

(a) except against the owner of the copyright, the exclusive licensee has the same rights of action as he or she would have, and is entitled to the same remedies as he or she would be entitled to, by virtue of section 115 or 115A if the licence had been an assignment, and those rights and remedies are concurrent with the rights and remedies of the owner of the copyright under that section;

Compilation No. 64                     Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

---

Section 120

---

(b) except against the owner of the copyright, the exclusive licensee has the same rights of action as he or she would have, and is entitled to the same remedies as he or she would be entitled to, by virtue of section 116 if the licence had been an assignment; and

(c) the owner of the copyright does not have any rights of action that he or she would not have, and is not entitled to any remedies that he or she would not be entitled to, by virtue of section 116 if the licence had been an assignment.

## 120  Joinder of owner or exclusive licensee as a party

(1) Where:

(a) an action is brought by the owner of the copyright or by the exclusive licensee; and

(b) the action, in so far as it is brought under section 115 or 115A, relates, in whole or in part, to an infringement in respect of which the owner and the licensee have concurrent rights of action under that section;

the owner or licensee, as the case may be, is not entitled, except with the leave of the court, to proceed with the action, in so far as it is brought under that section and relates to that infringement, unless the other party is joined as a plaintiff in the action or added as a defendant.

(2) This section does not affect the granting of an interlocutory injunction on the application of the owner of the copyright or of the exclusive licensee.

## 121  Defences available against exclusive licensee

In an action brought by the exclusive licensee by virtue of this Division, a defence under this Act that would have been available to a defendant in the action if the action had been brought by the owner of the copyright is available to that defendant as against the exclusive licensee.

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

### 122  Assessment of damages where exclusive licence granted

Where an action to which section 120 applies is brought and the owner of the copyright and the exclusive licensee are not both plaintiffs in the action, the court, in assessing damages in respect of an infringement of a kind referred to in that section, shall:

(a) if the plaintiff is the exclusive licensee—take into account any liabilities, in respect of royalties or otherwise, to which the licence is subject; and

(b) whether the plaintiff is the owner of the copyright or the exclusive licensee—take into account any pecuniary remedy already awarded to the other party under section 115 in respect of that infringement, or any right of action exercisable by the other party under that section in respect of that infringement, as the case requires.

### 123  Apportionment of profits between owner and exclusive licensee

Where:

(a) an action, in so far as it is brought under section 115, relates, in whole or in part, to an infringement in respect of which the owner of the copyright and the exclusive licensee have concurrent rights of action under that section; and

(b) in that action, whether the owner of the copyright and the exclusive licensee are both parties or not, an account of profits is directed to be taken in respect of that infringement;

then, subject to any agreement of which the court is aware by which the application of those profits is determined as between the owner of the copyright and the exclusive licensee, the court shall apportion the profits between them in such a manner as the court considers just and shall give such directions as the court considers appropriate for giving effect to that apportionment.

Note:    However, not all owners of the copyright are entitled to an account of profits: see section 100AG.

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part V  Remedies and offences
Division 3  Proceedings where copyright is subject to exclusive licence

Section 124

## 124  Separate actions in relation to the same infringement

In an action brought by the owner of the copyright or by the exclusive licensee:

(a) a judgment or order for the payment of damages in respect of an infringement of copyright shall not be given or made under section 115 if a final judgment or order has been given or made in favour of the other party directing an account of profits under that section in respect of the same infringement; and

(b) a judgment or order for an account of profits in respect of an infringement of copyright shall not be given or made under that section if a final judgment or order has been given or made in favour of the other party awarding damages or directing an account of profits under that section in respect of the same infringement.

Note:    However, not all owners of the copyright are entitled to damages (other than additional damages) or an account of profits: see section 100AG.

## 125  Liability for costs

Where, in an action to which section 120 applies, whether brought by the owner of the copyright or by the exclusive licensee, the other party is not joined as a plaintiff (either at the commencement of the action or at a later time), but is added as a defendant, the other party is not liable for any costs in the action unless he or she enters an appearance and takes part in the proceedings.

Replaced Authorised Version registered 10/02/2025 C2024C00854

## Division 4—Proof of facts in civil actions

### 126  Presumptions as to subsistence and ownership of copyright

In an action brought by virtue of this Part:

   (a) copyright shall be presumed to subsist in the work or other subject-matter to which the action relates if the defendant does not put in issue the question whether copyright subsists in the work or other subject-matter; and

   (b) where the subsistence of the copyright is established—the plaintiff shall be presumed to be the owner of the copyright if he or she claims to be the owner of the copyright and the defendant does not put in issue the question of his or her ownership.

### 126A  Presumptions relating to subsistence of copyright

(1) This section applies to an action under this Part in which the defendant puts in issue the question whether copyright subsists in the work or other subject matter to which the action relates.

*Labels or marks*

(2) If a copy of the work or other subject matter, or the packaging or container in which the copy is packaged or contained, bears a label or mark stating the year and place of the first publication, or of the making, of the work or other subject matter, then that year and place are presumed to be as stated on the label or mark, unless the contrary is established.

*Foreign certificates*

(3) If a certificate or other document issued in a qualifying country in accordance with a law of that country states the year and place of the first publication, or of the making, of the work or other subject matter, then that year and place are presumed to be as stated in the certificate or document, unless the contrary is established.

Compilation No. 64　　　　　　　　　　　　Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part V  Remedies and offences
Division 4  Proof of facts in civil actions

Section 126B

---

(4) For the purposes of this section, a document purporting to be a certificate or document referred to in subsection (3) is, unless the contrary intention is established, taken to be such a certificate or document.

## 126B  Presumptions relating to ownership of copyright

(1) This section applies to an action under this Part in which the defendant puts in issue the question of the plaintiff's ownership of copyright in the work or other subject matter to which the action relates.

*Labels or marks*

(2) If a copy of the work or other subject matter, or the packaging or container in which the copy is packaged or contained, bears a label or mark stating that a person was the owner of copyright in the work or other subject matter at a particular time, then the person is presumed to have been the owner of the copyright at the time, unless the contrary is established.

*Foreign certificates*

(3) If a certificate or other document issued in a qualifying country in accordance with a law of that country states that a person was the owner of copyright in the work or other subject matter at a particular time, then the person is presumed to have been the owner of the copyright at the time, unless the contrary is established.

(4) For the purposes of this section, a document purporting to be a certificate or document referred to in subsection (3) is, unless the contrary intention is established, taken to be such a certificate or document.

*Chains of ownership*

(5) If:
    (a)  subsection (2) or (3) applies; and
    (b)  the plaintiff produces a document stating the following:

---

*Copyright Act 1968*

Replaced Authorised Version registered 10/02/2025 C2024C00854

         (i) each subsequent owner of the copyright the subject of the action (including the plaintiff's ownership);

        (ii) the date each subsequent owner became the owner of that copyright;

       (iii) a description of the transaction resulting in each subsequent owner becoming the owner of that copyright;

then the matters described in subparagraphs (b)(i), (ii) and (iii) are presumed to be as stated in the document, unless the contrary is established.

(6) If:

    (a) neither subsection (2) nor (3) applies; and

    (b) the plaintiff produces a document stating the following:

         (i) the original owner of the copyright the subject of the action;

        (ii) each subsequent owner of that copyright (including the plaintiff's ownership);

       (iii) the date each owner became the owner of that copyright;

      (iv) a description of the transaction resulting in each owner becoming the owner of that copyright;

then the matters described in subparagraphs (b)(i), (ii), (iii) and (iv) are presumed to be as stated in the document, unless the contrary is established.

*Offence*

(7) A person commits an offence if:

    (a) the person produces a document under subsection (5) or (6); and

    (b) the person is reckless as to whether the document is false or misleading.

Penalty:  30 penalty units.

Compilation No. 64                              Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part V** Remedies and offences
**Division 4** Proof of facts in civil actions

---

Section 127

---

### 127  Presumptions in relation to authorship of work

(1) Where a name purporting to be that of the author of a literary, dramatic, musical or artistic work appeared on copies of the work as published or a name purporting to be that of the author of an artistic work appeared on the work when it was made, the person whose name so appeared, if it was his or her true name or a name by which he or she was commonly known, shall, in an action brought by virtue of this Part, be presumed, unless the contrary is established, to be the author of the work and to have made the work in circumstances to which subsections 35(4), (5) and (6) do not apply.

(2) Where a work is alleged to be a work of joint authorship, the last preceding subsection applies in relation to each person alleged to be one of the authors of the work as if references in that subsection to the author were references to one of the authors.

(3) Where, in an action brought by virtue of this Part in relation to a photograph:

    (a) it is established that, at the time when the photograph was taken, a person was the owner of the material on which the photograph was taken or, if the ownership of that material as at that time is not established, that a person was the owner of the apparatus by which the photograph was taken; or

    (b) neither the ownership as at the time when the photograph was taken of the material on which it was taken nor the ownership as at that time of the apparatus by which it was taken is established but it is established that, at the time of the death of a person, the photograph was owned by the person or, if the ownership of the photograph as at that time is not established, was in the possession or custody of the person;

the person shall be presumed, unless the contrary is established, to have been the person who took the photograph.

(4) However, if the owner of the material or apparatus was a body corporate, then paragraph (3)(a) only applies if the presumption is required to determine the ownership of the copyright in the photograph.

---

*Copyright Act 1968*

Replaced Authorised Version registered 10/02/2025 C2024C00854

Note:      For example, the presumption does not apply if it is required to
           determine the duration of the copyright in the photograph.

### 128  Presumptions in relation to publisher of work

Where, in an action brought by virtue of this Part in relation to a
literary, dramatic, musical or artistic work, the last preceding
section does not apply, but it is established:

(a) that the work was first published in Australia and was so
published during the period of 70 years that ended
immediately before the commencement of the calendar year
in which the action was brought; and

(b) that a name purporting to be that of the publisher appeared on
copies of the work as first published;

then, unless the contrary is established, copyright shall be
presumed to subsist in the work and the person whose name so
appeared shall be presumed to have been the owner of that
copyright at the time of the publication.

### 129  Presumptions where author has died

(1) Where, in an action brought by virtue of this Part in relation to a
literary, dramatic, musical or artistic work, it is established that the
author is dead:

(a) the work shall be presumed to be an original work unless the
contrary is established; and

(b) if it is alleged by the plaintiff that a publication specified in
the allegation was the first publication of the work, and that it
took place in a country and on a date so specified—that
publication shall be presumed, unless the contrary is
established, to have been the first publication of the work,
and to have taken place in that country and on that date.

(2) Where:

(a) a literary, dramatic, musical or artistic work has been
published; and

(b) the publication was anonymous or is alleged by the plaintiff
to have been pseudonymous; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part V**  Remedies and offences
**Division 4**  Proof of facts in civil actions

Section 129A

(c) it is not established that the work has ever been published under the true name of the author, or under a name by which he or she was commonly known, or that the identity of the author is generally known;

paragraphs (1)(a) and (b) apply, in an action brought by virtue of this Part in relation to the work, in like manner as those paragraphs apply where it is established that the author is dead.

## 129A  Presumptions relating to computer programs

(1) This section applies to an action under this Part relating to copyright in a literary work that is a computer program if:

   (a) articles or things embodying all or part of the program have been supplied (by sale or otherwise) to the public; and

   (b) at the time of the supply, the articles or things, or their containers, bore a label or other mark consisting of the letter "C" in a circle accompanied by a specified year and the name of a person.

(2) It is presumed that:

   (a) the computer program is an original literary work; and

   (b) the computer program was first published in the year; and

   (c) the person was the owner of copyright in the program when and where the articles, things or containers were labelled or marked;

unless the contrary is established.

(3) A presumption about a person under subsection (2) does not imply that the person was the only owner of copyright in the program when and where the articles, things or containers were labelled or marked.

## 130  Presumptions relating to sound recordings

(1) This section applies to an action under this Part relating to copyright in a sound recording if:

   (a) records embodying all or part of the recording have been supplied (by sale or otherwise) to the public; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

(b) at the time of the supply, the records or their containers bore a label or other mark.

(2) If the label or mark contained a statement described in an item of the table, the matter described in the item is presumed, unless the contrary is established.

**Statements and matters presumed unless the contrary is established**

| Item | Statement | Matter presumed |
|---|---|---|
| 1 | A specified person was the maker of the recording | The person was the maker of the recording |
| 2 | The recording was first published in a specified year | The recording was first published in the year |
| 3 | The recording was first published in a specified country | The recording was first published in the country |

(3) If the label or mark consisted of the letter "P" in a circle accompanied by a specified year and the name of a person, it is presumed that:

(a) the recording was first published in the year; and

(b) the person was the owner of copyright in the recording when and where the records or containers were labelled or marked;

unless the contrary is established.

(4) A presumption about a person under this section does not imply that the person was:

(a) the only maker of the recording; or

(b) the only owner of copyright in the recording when and where the records or containers were labelled or marked.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 130A
_____

### 130A  Acts relating to imported copies of sound recordings

(1) In an action for infringement of copyright described in section 37, 38, 102 or 103 by an act involving an article that is a copy of a sound recording, it must be presumed that the copy is not a non-infringing copy unless the defendant proves that the copy is a non-infringing copy.

> Note 1:  Sections 37 and 38 deal with infringement of copyright in literary, dramatic and musical works (among other things) by commercial importation and dealings involving articles.

> Note 2:  Sections 102 and 103 deal with infringement of copyright in sound recordings (among other things) by commercial importation and dealings involving articles.

(2) The definition of *article* in sections 38 and 103 does not affect this section.

### 130B  Acts relating to imported copies of computer programs

(1) In an action by a plaintiff for infringement of copyright described in section 37 or 38:

(a) relating to the plaintiff's copyright in a literary work that is a computer program; and

(b) involving an article that has embodied in it a copy of the program;

it must be presumed, unless the defendant proves otherwise, that the copy is not a non-infringing copy so far as it relates to the plaintiff's copyright.

> Note:  Sections 37 and 38 deal with infringement of copyright in literary works (among other things) by commercial importation and dealings involving articles.

(2) The definition of *article* in section 38 does not affect this section.

### 130C  Acts relating to imported copies of electronic literary or music items

(1) In an action by a plaintiff for infringement of copyright described in section 37, 38, 102 or 103:

_____

Replaced Authorised Version registered 10/02/2025 C2024C00854

    (a) relating to the plaintiff's copyright in a work, or in a published edition of a work, that is, or is part of, an electronic literary or music item; and

    (b) involving an article that has embodied in it a copy of the electronic literary or music item;

it must be presumed, unless the defendant proves otherwise, that the copy is not a non-infringing copy so far as it relates to the plaintiff's copyright.

Note 1:    Sections 37 and 38 deal with infringement of copyright in a work by commercial importation and dealings involving articles.

Note 2:    Sections 102 and 103 deal with infringement of copyright in a published edition of a work (among other things) by commercial importation and dealings involving articles.

(2) The definition of **_article_** in sections 38 and 103 does not affect this section.

## 131  Presumptions relating to films

(1) Where the name of a person appeared on copies of a cinematograph film as made available to the public in such a way as to imply that the person was the maker of the film and, in the case of a person other than a body corporate, that name was his or her true name or a name by which he or she was commonly known, that person shall, in an action brought by virtue of this Part, be presumed, unless the contrary is established, to be the maker of the film and to have made the film in circumstances to which subsection 98(3) does not apply.

(2) Subsection (3) applies to an action under this Part relating to copyright in a cinematograph film, if:

    (a) articles or things embodying the film have been supplied commercially; and

    (b) at the time of the supply, the articles or things, or their containers, bore a label or other mark consisting of the letter "C" in a circle accompanied by a specified year and the name of a person.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part V**  Remedies and offences
**Division 4**  Proof of facts in civil actions

Section 131

---

(3) It is presumed that:

    (a) the film was first made in the year; and

    (b) the person was the owner of copyright in the film when and where the articles, things or containers were labelled or marked;

unless the contrary is established.

(4) A presumption about a person under subsection (3) does not imply that the person was the only owner of copyright in the film when and where the articles, things or containers were labelled or marked.

---

*Copyright Act 1968*

Compilation No. 64                                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 4A—Jurisdiction and appeals

## 131A  Exercise of jurisdiction

(1) The jurisdiction of the Supreme Court of a State or Territory in an action under this Part shall be exercised by a single Judge of the Court.

(2) Despite subsection 39(2) of the *Judiciary Act 1903*, the Supreme Court of a State or Territory does not have jurisdiction in relation to applications under section 115A of this Act (injunctions relating to online locations outside Australia).

## 131B  Appeals

(1) Subject to subsection (2), a decision of a court of a State or Territory (however constituted) under this Part is final and conclusive.

(2) An appeal lies from a decision of a court of a State or Territory under this Part:

    (a)  to the Federal Court of Australia; or

    (b)  by special leave of the High Court, to the High Court.

## 131C  Jurisdiction of Federal Court of Australia

Jurisdiction is conferred on the Federal Court of Australia with respect to actions under this Part.

## 131D  Jurisdiction of Federal Circuit and Family Court of Australia (Division 2)

Jurisdiction is conferred on the Federal Circuit and Family Court of Australia (Division 2) with respect to civil actions under this Part (other than section 115A).

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 5—Offences and summary proceedings

## Subdivision A—Preliminary

### 132AA  Definitions

In this Division:

*article* includes a reproduction or copy of a work or other subject-matter, being a reproduction or copy in electronic form.

*distribute*, except in Subdivision E, includes distribute by way of communication.

*place of public entertainment* includes premises that are occupied principally for purposes other than public entertainment but are from time to time made available for hire for purposes of public entertainment.

*profit* does not include any advantage, benefit, or gain, that:

(a)  is received by a person; and

(b)  results from, or is associated with, the person's private or domestic use of any copyright material.

### 132AB  Geographical application

(1)  Subdivisions B, C, D, E and F apply only to acts done in Australia.

(2)  This section has effect despite section 14.1 (Standard geographical jurisdiction) of the *Criminal Code*.

## Subdivision B—Substantial infringement on a commercial scale

### 132AC  Commercial-scale infringement prejudicing copyright owner

*Indictable offence*

(1)  A person commits an offence if:

Replaced Authorised Version registered 10/02/2025 C2024C00854

    (a) the person engages in conduct; and

    (b) the conduct results in one or more infringements of the copyright in a work or other subject-matter; and

    (c) the infringement or infringements have a substantial prejudicial impact on the owner of the copyright; and

    (d) the infringement or infringements occur on a commercial scale.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

> Note:    A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offence*

(3) A person commits an offence if:

    (a) the person engages in conduct; and

    (b) the conduct results in one or more infringements of the copyright in a work or other subject-matter; and

    (c) the infringement or infringements have a substantial prejudicial impact on the owner of the copyright and the person is negligent as to that fact; and

    (d) the infringement or infringements occur on a commercial scale and the person is negligent as to that fact.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(4) An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

*Determining whether infringements occur on commercial scale*

(5) In determining whether one or more infringements occur on a commercial scale for the purposes of paragraph (1)(d) or (3)(d), the following matters are to be taken into account:

    (a) the volume and value of any articles that are infringing copies that constitute the infringement or infringements;

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Section 132AC**

(b) any other relevant matter.

*Defence relating to law enforcement and national security*

(6) This section does not apply in respect of anything lawfully done for the purposes of law enforcement or national security by or on behalf of:

(a) the Commonwealth or a State or Territory; or

(b) an authority of the Commonwealth or of a State or Territory.

Note:    A defendant bears an evidential burden in relation to the matter in subsection (6) (see subsection 13.3(3) of the *Criminal Code*).

*Defence for certain public institutions etc.*

(7) This section does not apply in respect of anything lawfully done by the following in performing their functions:

(a) a library (other than a library that is conducted for the profit, direct or indirect, of an individual or individuals);

(b) a body mentioned in:

(i) paragraph (a) of the definition of ***archives*** in subsection 10(1); or

(ii) subsection 10(4);

(c) an educational institution;

(d) a public non-commercial broadcaster, including:

(i) a body that provides a national broadcasting service within the meaning of the *Broadcasting Services Act 1992*; and

(ii) a body that holds a community broadcasting licence within the meaning of that Act.

Note 1:    A library that is owned by a person conducting a business for profit might not itself be conducted for profit (see section 18).

Note 2:    A defendant bears an evidential burden in relation to the matter in subsection (7) (see subsection 13.3(3) of the *Criminal Code*).

(8) This section does not apply in respect of anything lawfully done by a person in connection with a work or other subject-matter if:

Replaced Authorised Version registered 10/02/2025 C2024C00854

(a) the person has custody of the work or other subject-matter under an arrangement referred to in section 64 of the *Archives Act 1983*; and

(b) under subsection (7), it would be lawful for the National Archives of Australia to do that thing.

Note:     A defendant bears an evidential burden in relation to the matter in subsection (8) (see subsection 13.3(3) of the *Criminal Code*).

## Subdivision C—Infringing copies

### 132AD  Making infringing copy commercially

*Indictable offence*

(1) A person commits an offence if:

(a) the person makes an article, with the intention of:

(i) selling it; or

(ii) letting it for hire; or

(iii) obtaining a commercial advantage or profit; and

(b) the article is an infringing copy of a work or other subject-matter; and

(c) copyright subsists in the work or other subject-matter when the article is made.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

Note 1:     A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

Note 2:     If the infringing copy was made by converting the work or other subject-matter from a hard copy or analog form into a digital or other electronic machine-readable form, there is an aggravated offence with a higher maximum penalty under section 132AK.

*Summary offence*

(3) A person commits an offence if:

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 132AE

(a) the person makes an article, with the intention of:
  (i) selling it; or
  (ii) letting it for hire; or
  (iii) obtaining a commercial advantage or profit; and
(b) the article is an infringing copy of a work or other subject-matter and the person is negligent as to that fact; and
(c) copyright subsists in the work or other subject-matter when the article is made and the person is negligent as to that fact.

Penalty: 120 penalty units or imprisonment for 2 years, or both.

(4) An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

*Strict liability offence*

(5) A person commits an offence if:
  (a) the person makes an article in preparation for, or in the course of:
    (i) selling it; or
    (ii) letting it for hire; or
    (iii) obtaining a commercial advantage or profit; and
  (b) the article is an infringing copy of a work or other subject-matter; and
  (c) copyright subsists in the work or other subject-matter when the article is made.

Penalty: 60 penalty units.

(6) Subsection (5) is an offence of strict liability.

  Note:    For strict liability, see section 6.1 of the *Criminal Code*.

## 132AE  Selling or hiring out infringing copy

*Indictable offence*

(1) A person commits an offence if:

Replaced Authorised Version registered 10/02/2025 C2024C00854

  (a) the person sells an article or lets an article for hire; and

  (b) the article is an infringing copy of a work or other subject-matter; and

  (c) copyright subsists in the work or other subject-matter at the time of the sale or letting.

 (2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

> Note 1: A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

> Note 2: If the infringing copy was made by converting the work or other subject-matter from a hard copy or analog form into a digital or other electronic machine-readable form, there is an aggravated offence with a higher maximum penalty under section 132AK.

  *Summary offence*

 (3) A person commits an offence if:

  (a) the person sells an article or lets an article for hire; and

  (b) the article is an infringing copy of a work or other subject-matter and the person is negligent as to that fact; and

  (c) copyright subsists in the work or other subject-matter at the time of the sale or letting and the person is negligent as to that fact.

  Penalty: 120 penalty units or imprisonment for 2 years, or both.

 (4) An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

  *Strict liability offence*

 (5) A person commits an offence if:

  (a) the person sells an article or lets an article for hire; and

  (b) the article is an infringing copy of a work or other subject-matter; and

Compilation No. 64  Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 132AF

---

    (c)  copyright subsists in the work or other subject-matter at the time of the sale or letting.

Penalty:  60 penalty units.

(6)  Subsection (5) is an offence of strict liability.

> Note:      For strict liability, see section 6.1 of the *Criminal Code*.

## 132AF  Offering infringing copy for sale or hire

*Indictable offences*

(1)  A person commits an offence if:

    (a)  the person by way of trade offers or exposes an article for sale or hire; and

    (b)  the article is an infringing copy of a work or other subject-matter; and

    (c)  copyright subsists in the work or other subject-matter at the time of the offer or exposure.

(2)  A person commits an offence if:

    (a)  the person offers or exposes an article for sale or hire, with the intention of obtaining a commercial advantage or profit; and

    (b)  the article is an infringing copy of a work or other subject-matter; and

    (c)  copyright subsists in the work or other subject-matter at the time of the offer or exposure.

(3)  An offence against subsection (1) or (2) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

> Note 1:    A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).
>
> Note 2:    If the infringing copy was made by converting the work or other subject-matter from a hard copy or analog form into a digital or other electronic machine-readable form, there is an aggravated offence with a higher maximum penalty under section 132AK.

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

*Summary offences*

(4) A person commits an offence if:

    (a) the person by way of trade offers or exposes an article for sale or hire; and

    (b) the article is an infringing copy of a work or other subject-matter and the person is negligent as to that fact; and

    (c) copyright subsists in the work or other subject-matter at the time of the offer or exposure and the person is negligent as to that fact.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(5) A person commits an offence if:

    (a) the person offers or exposes an article for sale or hire, with the intention of obtaining a commercial advantage or profit; and

    (b) the article is an infringing copy of a work or other subject-matter and the person is negligent as to that fact; and

    (c) copyright subsists in the work or other subject-matter at the time of the offer or exposure and the person is negligent as to that fact.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(6) An offence against subsection (4) or (5) is a summary offence, despite section 4G of the *Crimes Act 1914*.

*Strict liability offences*

(7) A person commits an offence if:

    (a) the person by way of trade offers or exposes an article for sale or hire; and

    (b) the article is an infringing copy of a work or other subject-matter; and

    (c) copyright subsists in the work or other subject-matter at the time of the offer or exposure.

Penalty:  60 penalty units.

Compilation No. 64    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part V**  Remedies and offences
**Division 5**  Offences and summary proceedings

---

**Section 132AG**

---

(8) A person commits an offence if:
  (a) the person offers or exposes an article for sale or hire, in preparation for, or in the course of, obtaining a commercial advantage or profit; and
  (b) the article is an infringing copy of a work or other subject-matter; and
  (c) copyright subsists in the work or other subject-matter at the time of the offer or exposure.

Penalty:  60 penalty units.

(9) Subsections (7) and (8) are offences of strict liability.

> Note:    For strict liability, see section 6.1 of the *Criminal Code*.

## 132AG  Exhibiting infringing copy in public commercially

*Indictable offences*

(1) A person commits an offence if:
  (a) the person by way of trade exhibits an article in public; and
  (b) the article is an infringing copy of a work or other subject-matter; and
  (c) copyright subsists in the work or other subject-matter at the time of the exhibition.

(2) A person commits an offence if:
  (a) the person exhibits an article in public, with the intention of obtaining a commercial advantage or profit; and
  (b) the article is an infringing copy of a work or other subject-matter; and
  (c) copyright subsists in the work or other subject-matter at the time of the exhibition.

(3) An offence against subsection (1) or (2) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

Note 1:   A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

Note 2:   If the infringing copy was made by converting the work or other subject-matter from a hard copy or analog form into a digital or other electronic machine-readable form, there is an aggravated offence with a higher maximum penalty under section 132AK.

*Summary offences*

(4) A person commits an offence if:
  (a) the person by way of trade exhibits an article in public; and
  (b) the article is an infringing copy of a work or other subject-matter and the person is negligent as to that fact; and
  (c) copyright subsists in the work or other subject-matter at the time of the exhibition and the person is negligent as to that fact.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(5) A person commits an offence if:
  (a) the person exhibits an article in public, with the intention of obtaining a commercial advantage or profit; and
  (b) the article is an infringing copy of a work or other subject-matter and the person is negligent as to that fact; and
  (c) copyright subsists in the work or other subject-matter at the time of the exhibition and the person is negligent as to that fact.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(6) An offence against subsection (4) or (5) is a summary offence, despite section 4G of the *Crimes Act 1914*.

*Strict liability offences*

(7) A person commits an offence if:
  (a) the person by way of trade exhibits an article in public; and
  (b) the article is an infringing copy of a work or other subject-matter; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part V**  Remedies and offences
**Division 5**  Offences and summary proceedings

Section 132AH

---

(c) copyright subsists in the work or other subject-matter at the time of the exhibition.

Penalty:  60 penalty units.

(8) A person commits an offence if:

(a) the person exhibits an article in public in preparation for, or in the course of, obtaining a commercial advantage or profit; and

(b) the article is an infringing copy of a work or other subject-matter; and

(c) copyright subsists in the work or other subject-matter at the time of the exhibition.

Penalty:  60 penalty units.

(9) Subsections (7) and (8) are offences of strict liability.

Note:      For strict liability, see section 6.1 of the *Criminal Code*.

## 132AH  Importing infringing copy commercially

*Indictable offence*

(1) A person commits an offence if:

(a) the person imports an article into Australia, with the intention of doing any of the following with the article:

(i) selling it;

(ii) letting it for hire;

(iii) by way of trade offering or exposing it for sale or hire;

(iv) offering or exposing it for sale or hire to obtain a commercial advantage or profit;

(v) distributing it for trade;

(vi) distributing it to obtain a commercial advantage or profit;

(vii) distributing it to an extent that will affect prejudicially the owner of the copyright in the work or other subject-matter of which the article is an infringing copy;

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

(viii) by way of trade exhibiting it in public;

(ix) exhibiting it in public to obtain a commercial advantage or profit; and

(b) the article is an infringing copy of a work or other subject-matter; and

(c) copyright subsists in the work or other subject-matter at the time of the import.

(2) An offence against this section is punishable on conviction by a fine of not more than 650 penalty units or imprisonment for not more than 5 years, or both.

Note 1:     A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

Note 2:     If the infringing copy was made by converting the work or other subject-matter from a hard copy or analog form into a digital or other electronic machine-readable form, there is an aggravated offence with a higher maximum penalty under section 132AK.

*Summary offence*

(3) A person commits an offence if:

(a) the person imports an article into Australia, with the intention of doing any of the following with the article:

(i) selling it;

(ii) letting it for hire;

(iii) by way of trade offering or exposing it for sale or hire;

(iv) offering or exposing it for sale or hire to obtain a commercial advantage or profit;

(v) distributing it for trade;

(vi) distributing it to obtain a commercial advantage or profit;

(vii) distributing it to an extent that will affect prejudicially the owner of the copyright in the work or other subject-matter of which the article is an infringing copy;

(viii) by way of trade exhibiting it in public;

(ix) exhibiting it in public to obtain a commercial advantage or profit; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part V**  Remedies and offences
**Division 5**  Offences and summary proceedings

**Section 132AH**

---

(b) the article is an infringing copy of a work or other subject-matter and the person is negligent as to that fact; and

(c) copyright subsists in the work or other subject-matter at the time of the import and the person is negligent as to that fact.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(4) An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

*Strict liability offence*

(5) A person commits an offence if:

(a) the person imports an article into Australia in preparation for, or in the course of, doing any of the following with the article:

(i) selling it;

(ii) letting it for hire;

(iii) by way of trade offering or exposing it for sale or hire;

(iv) offering or exposing it for sale or hire to obtain a commercial advantage or profit;

(v) distributing it for trade;

(vi) distributing it to obtain a commercial advantage or profit;

(vii) distributing it to an extent that will affect prejudicially the owner of the copyright in the work or other subject-matter of which the article is an infringing copy;

(viii) by way of trade exhibiting it in public;

(ix) exhibiting it in public to obtain a commercial advantage or profit; and

(b) the article is an infringing copy of a work or other subject-matter; and

(c) copyright subsists in the work or other subject-matter at the time of the import.

Penalty:  60 penalty units.

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

(6)  Subsection (5) is an offence of strict liability.

> Note:      For strict liability, see section 6.1 of the *Criminal Code*.

## 132AI  Distributing infringing copy

*Indictable offences*

(1)  A person commits an offence if:

  (a)  the person distributes an article, with the intention of:

   (i)  trading; or

   (ii)  obtaining a commercial advantage or profit; and

  (b)  the article is an infringing copy of a work or other subject-matter; and

  (c)  copyright subsists in the work or other subject-matter at the time of the distribution.

(2)  A person commits an offence if:

  (a)  the person distributes an article; and

  (b)  the article is an infringing copy of a work or other subject-matter; and

  (c)  copyright subsists in the work or other subject-matter at the time of the distribution; and

  (d)  the extent of the distribution affects prejudicially the owner of the copyright.

(3)  An offence against subsection (1) or (2) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

> Note 1:      A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

> Note 2:      If the infringing copy was made by converting the work or other subject-matter from a hard copy or analog form into a digital or other electronic machine-readable form, there is an aggravated offence with a higher maximum penalty under section 132AK.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part V Remedies and offences
Division 5 Offences and summary proceedings

---

Section 132AI
_____

*Summary offences*

(4) A person commits an offence if:

   (a) the person distributes an article, with the intention of:

     (i) trading; or

     (ii) obtaining a commercial advantage or profit; and

   (b) the article is an infringing copy of a work or other subject-matter and the person is negligent as to that fact; and

   (c) copyright subsists in the work or other subject-matter at the time of the distribution and the person is negligent as to that fact.

Penalty: 120 penalty units or imprisonment for 2 years, or both.

(5) A person commits an offence if:

   (a) the person distributes an article; and

   (b) the article is an infringing copy of a work or other subject-matter and the person is negligent as to that fact; and

   (c) copyright subsists in the work or other subject-matter at the time of the distribution and the person is negligent as to that fact; and

   (d) the extent of the distribution affects prejudicially the owner of the copyright and the person is negligent as to that fact.

Penalty: 120 penalty units or imprisonment for 2 years, or both.

(6) An offence against subsection (4) or (5) is a summary offence, despite section 4G of the *Crimes Act 1914*.

*Strict liability offence*

(7) A person commits an offence if:

   (a) the person distributes an article in preparation for, or in the course of:

     (i) trading; or

     (ii) obtaining a commercial advantage or profit; and

   (b) the article is an infringing copy of a work or other subject-matter; and

---

*Copyright Act 1968*

Compilation No. 64

Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

     (c)  copyright subsists in the work or other subject-matter at the time of the distribution.

Penalty:  60 penalty units.

(9)  Subsection (7) is an offence of strict liability.

Note:        For strict liability, see section 6.1 of the *Criminal Code*.

## 132AJ  Possessing infringing copy for commerce

*Indictable offence*

(1)  A person commits an offence if:

    (a)  the person possesses an article, with the intention of doing any of the following with the article:

       (i)  selling it;

      (ii)  letting it for hire;

     (iii)  by way of trade offering or exposing it for sale or hire;

     (iv)  offering or exposing it for sale or hire to obtain a commercial advantage or profit;

      (v)  distributing it for trade;

     (vi)  distributing it to obtain a commercial advantage or profit;

    (vii)  distributing it to an extent that will affect prejudicially the owner of the copyright in the work or other subject-matter of which the article is an infringing copy;

   (viii)  by way of trade exhibiting it in public;

     (ix)  exhibiting it in public to obtain a commercial advantage or profit; and

    (b)  the article is an infringing copy of a work or other subject-matter; and

    (c)  copyright subsists in the work or other subject-matter at the time of the possession.

(2)  An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part V** Remedies and offences
**Division 5** Offences and summary proceedings

Section 132AJ

Note 1:    A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

Note 2:    If the infringing copy was made by converting the work or other subject-matter from a hard copy or analog form into a digital or other electronic machine-readable form, there is an aggravated offence with a higher maximum penalty under section 132AK.

*Summary offence*

(3) A person commits an offence if:

   (a) the person possesses an article, with the intention of doing any of the following with the article:

   (i) selling it;

   (ii) letting it for hire;

   (iii) by way of trade offering or exposing it for sale or hire;

   (iv) offering or exposing it for sale or hire to obtain a commercial advantage or profit;

   (v) distributing it for trade;

   (vi) distributing it to obtain a commercial advantage or profit;

   (vii) distributing it to an extent that will affect prejudicially the owner of the copyright in the work or other subject-matter of which the article is an infringing copy;

   (viii) by way of trade exhibiting it in public;

   (ix) exhibiting it in public to obtain a commercial advantage or profit; and

   (b) the article is an infringing copy of a work or other subject-matter and the person is negligent as to that fact; and

   (c) copyright subsists in the work or other subject-matter at the time of the possession and the person is negligent as to that fact.

   Penalty:  120 penalty units or imprisonment for 2 years, or both.

(4) An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

Replaced Authorised Version registered 10/02/2025 C2024C00854

*Strict liability offence*

(5) A person commits an offence if:

   (a) the person possesses an article in preparation for, or in the course of, doing any of the following with the article:

      (i) selling it;

      (ii) letting it for hire;

      (iii) by way of trade offering or exposing it for sale or hire;

      (iv) offering or exposing it for sale or hire to obtain a commercial advantage or profit;

      (v) distributing it for trade;

      (vi) distributing it to obtain a commercial advantage or profit;

      (vii) distributing it to an extent that will affect prejudicially the owner of the copyright in the work or other subject-matter of which the article is an infringing copy;

      (viii) by way of trade exhibiting it in public;

      (ix) exhibiting it in public to obtain a commercial advantage or profit; and

   (b) the article is an infringing copy of a work or other subject-matter; and

   (c) copyright subsists in the work or other subject-matter at the time of the possession.

Penalty: 60 penalty units.

(6) Subsection (5) is an offence of strict liability.

   Note:     For strict liability, see section 6.1 of the *Criminal Code*.

### 132AK  Aggravated offence—work etc. converted to digital form

(1) An indictable offence against a provision (the ***basic offence provision***) of this Subdivision (except sections 132AL and 132AM) relating to an infringing copy is an ***aggravated offence*** if the infringing copy was made by converting a work or other subject-matter from a hard copy or analog form into a digital or other electronic machine-readable form.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part V**  Remedies and offences
**Division 5**  Offences and summary proceedings

---

Section 132AL

---

(2) An aggravated offence is punishable on conviction by a fine of not more than 850 penalty units or imprisonment for not more than 5 years, or both.

> Note:      A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

(3) To prove an aggravated offence, the prosecution must prove that the defendant was reckless with respect to the circumstance that the infringing copy was made by converting a work or other subject-matter from a hard copy or analog form into a digital or other electronic machine-readable form.

> Note:      The prosecution must also prove all the physical and fault elements of the offence against the basic offence provision.

(4) If the prosecution intends to prove an aggravated offence, the charge must allege that the infringing copy was made by converting a work or other subject-matter from a hard copy or analog form into a digital or other electronic machine-readable form.

### 132AL  Making or possessing device for making infringing copy

*Indictable offences*

(1) A person commits an offence if:
   (a) the person makes a device, intending it to be used for making an infringing copy of a work or other subject-matter; and
   (b) copyright subsists in the work or other subject-matter at the time of the making of the device.

(2) A person commits an offence if:
   (a) the person possesses a device, intending it to be used for making an infringing copy of a work or other subject-matter; and
   (b) copyright subsists in the work or other subject-matter at the time of the possession.

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

(3) An offence against subsection (1) or (2) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

> Note:     A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offences*

(4) A person commits an offence if:

    (a) the person makes a device; and

    (b) the device is to be used for copying a work or other subject-matter; and

    (c) the copy will be an infringing copy and the person is negligent as to that fact; and

    (d) copyright subsists in the work or other subject-matter at the time of the making of the device and the person is negligent as to that fact.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(5) A person commits an offence if:

    (a) the person possesses a device; and

    (b) the device is to be used for copying a work or other subject-matter; and

    (c) the copy will be an infringing copy and the person is negligent as to that fact; and

    (d) copyright subsists in the work or other subject-matter at the time of the possession and the person is negligent as to that fact.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(6) To avoid doubt, recklessness is the fault element for the circumstance in paragraphs (4)(b) and (5)(b) that the device is to be used for copying a work or other subject-matter.

(7) An offence against subsection (4) or (5) is a summary offence, despite section 4G of the *Crimes Act 1914*.

Replaced Authorised Version registered 10/02/2025 C2024C00854

---

**Section 132AM**

---

*Strict liability offence*

(8) A person commits an offence if:

    (a) the person makes a device; and

    (b) the device is to be used for copying a work or other subject-matter; and

    (c) the copy will be an infringing copy; and

    (d) copyright subsists in the work or other subject-matter at the time of the making of the device.

Penalty: 60 penalty units.

(10) Subsection (8) is an offence of strict liability.

    Note:    For strict liability, see section 6.1 of the *Criminal Code*.

*No need to prove which work etc. is to be copied*

(11) In a prosecution for an offence against this section, it is not necessary to prove which particular work or other subject-matter is intended to be, or will be, copied using the device.

## 132AM  Advertising supply of infringing copy

*Summary offence*

(1) A person commits an offence if:

    (a) the person, by any means, publishes, or causes to be published, an advertisement for the supply in Australia of a copy (whether from within or outside Australia) of a work or other subject-matter; and

    (b) the copy is, or will be, an infringing copy.

Penalty: 30 penalty units or imprisonment for 6 months, or both.

*Location of supply of copy by communication resulting in creation of copy*

(2) For the purposes of this section, a communication of a work or other subject-matter that, when received and recorded, will result

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

in the creation of a copy of the work or other subject-matter is taken to constitute the supply of a copy of the work or other subject-matter at the place where the copy will be created.

## Subdivision D—Airing of works, sound recordings and films

### 132AN  Causing work to be performed publicly

*Indictable offence*

(1) A person commits an offence if:

    (a) the person causes a literary, dramatic or musical work to be performed; and

    (b) the performance is in public at a place of public entertainment; and

    (c) the performance infringes copyright in the work.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

> Note:  A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offence*

(3) A person commits an offence if:

    (a) the person causes a literary, dramatic or musical work to be performed; and

    (b) the performance is in public at a place of public entertainment; and

    (c) the performance infringes copyright in the work and the person is negligent as to that fact.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(4) An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**132AO  Causing recording or film to be heard or seen in public**

*Indictable offence*

(1) A person commits an offence if:

   (a) the person causes:

      (i)  a sound recording to be heard; or

      (ii)  images from a cinematograph film to be seen; or

      (iii)  sound from a cinematograph film to be heard; and

   (b) the hearing or seeing occurs in public at a place of public entertainment; and

   (c) causing the hearing or seeing infringes copyright in the recording or film.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

   Note:     A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offence*

(3) A person commits an offence if:

   (a) the person causes:

      (i)  a sound recording to be heard; or

      (ii)  images from a cinematograph film to be seen; or

      (iii)  sound from a cinematograph film to be heard; and

   (b) the hearing or seeing occurs in public at a place of public entertainment; and

   (c) causing the hearing or seeing infringes copyright in the recording or film and the person is negligent as to that fact.

   Penalty:  120 penalty units or imprisonment for 2 years, or both.

(4) An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

Replaced Authorised Version registered 10/02/2025 C2024C00854

*Strict liability offence*

(5) A person commits an offence if:

    (a) the person causes:

        (ii) images from a cinematograph film to be seen; or

        (iii) sound from a cinematograph film to be heard; and

    (b) the hearing or seeing occurs in public at a place of public entertainment; and

    (c) causing the hearing or seeing infringes copyright in the recording or film.

Penalty:  60 penalty units.

(6) Subsection (5) is an offence of strict liability.

Note:      For strict liability, see section 6.1 of the *Criminal Code*.

## Subdivision E—Technological protection measures

### 132APA  Definitions

In this Subdivision, **computer program** has the same meaning as in section 47AB.

### 132APB  Interaction of this Subdivision with Part VAA

This Subdivision does not apply to encoded broadcasts (within the meaning of Part VAA).

### 132APC  Circumventing an access control technological protection measure

(1) A person commits an offence if:

    (a) the person engages in conduct; and

    (b) the conduct results in the circumvention of a technological protection measure; and

    (c) the technological protection measure is an access control technological protection measure; and

Compilation No. 64      Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 132APC

---

(d) the person engages in the conduct with the intention of obtaining a commercial advantage or profit.

Penalty: 60 penalty units.

*Defence—permission*

(2) Subsection (1) does not apply to the person if the person has the permission of the copyright owner or exclusive licensee to circumvent the access control technological protection measure.

Note:       A defendant bears an evidential burden in relation to the matter in subsection (2) (see subsection 13.3(3) of the *Criminal Code*).

*Defence—interoperability*

(3) Subsection (1) does not apply to the person if:
   (a) the person circumvents the access control technological protection measure to enable the person to do an act; and
   (b) the act:
      (i) relates to a copy of a computer program (the ***original program***) that is not an infringing copy and that was lawfully obtained; and
      (ii) will not infringe the copyright in the original program; and
      (iia) relates to elements of the original program that will not be readily available to the person when the circumvention occurs; and
      (iii) will be done for the sole purpose of achieving interoperability of an independently created computer program with the original program or any other program.

Note:       A defendant bears an evidential burden in relation to the matter in subsection (3) (see subsection 13.3(3) of the *Criminal Code*).

*Defence—encryption research*

(4) Subsection (1) does not apply to the person if:

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

(a) the person circumvents the access control technological
protection measure to enable:

  (i) the person; or

  (ii) if the person is a body corporate—an employee of the
person;

to do an act; and

(b) the act:

  (i) relates to a copy of a work or other subject-matter that is
not an infringing copy and that was lawfully obtained;
and

  (ii) will not infringe the copyright in the work or other
subject-matter; and

  (iii) will be done for the sole purpose of identifying and
analysing flaws and vulnerabilities of encryption
technology; and

(c) the person or employee is:

  (i) engaged in a course of study at an educational
institution in the field of encryption technology; or

  (ii) employed, trained or experienced in the field of
encryption technology; and

(d) the person or employee:

  (i) has obtained permission from the owner or exclusive
licensee of the copyright to do the act; or

  (ii) has made, or will make, a good faith effort to obtain
such permission.

In this subsection, **_encryption technology_** means the scrambling
and descrambling of information using mathematical formulas or
algorithms.

Note:    A defendant bears an evidential burden in relation to the matter in
subsection (4) (see subsection 13.3(3) of the *Criminal Code*).

*Defence—computer security testing*

(5) Subsection (1) does not apply to the person if:

(a) the person circumvents the access control technological
protection measure to enable the person to do an act; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

---

**Section 132APC**

---

    (b)  the act:

        (i)  relates to a copy of a computer program that is not an infringing copy; and

       (ii)  will not infringe the copyright in the computer program; and

      (iii)  will be done for the sole purpose of testing, investigating or correcting the security of a computer, computer system or computer network; and

      (iv)  will be done with the permission of the owner of the computer, computer system or computer network.

> Note:      A defendant bears an evidential burden in relation to the matter in subsection (5) (see subsection 13.3(3) of the *Criminal Code*).

*Defence—online privacy*

(6)  Subsection (1) does not apply to the person if:

    (a)  the person circumvents the access control technological protection measure to enable the person to do an act; and

    (b)  the act:

        (i)  relates to a copy of a work or other subject-matter that is not an infringing copy; and

       (ii)  will not infringe the copyright in the work or other subject-matter; and

      (iii)  will be done for the sole purpose of identifying and disabling an undisclosed capability to collect or disseminate personally identifying information about the online activities of a natural person; and

      (iv)  will not affect the ability of the person or any other person to gain access to the work or other subject-matter or any other work or subject-matter.

> Note:      A defendant bears an evidential burden in relation to the matter in subsection (6) (see subsection 13.3(3) of the *Criminal Code*).

*Defence—law enforcement and national security*

(7)  Subsection (1) does not apply in relation to anything lawfully done for the purposes of:

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

    (a)  law enforcement; or

    (b)  national security; or

    (c)  performing a statutory function, power or duty;

by or on behalf of the Commonwealth, a State or a Territory, or an authority of one of those bodies.

> Note:    A defendant bears an evidential burden in relation to the matter in subsection (7) (see subsection 13.3(3) of the *Criminal Code*).

*Defence—libraries etc.*

(8)  Subsection (1) does not apply in respect of anything lawfully done by the following bodies in performing their functions:

    (a)  a library (other than a library that is conducted for the profit, direct or indirect, of an individual or individuals);

    (b)  a body mentioned in:

        (i)  paragraph (a) of the definition of **archives** in subsection 10(1); or

        (ii)  subsection 10(4);

    (c)  an educational institution;

    (d)  a public non-commercial broadcaster (including a body that provides a national broadcasting service, within the meaning of the *Broadcasting Services Act 1992,* and a body that holds a community broadcasting licence within the meaning of that Act).

> Note 1:    A library that is owned by a person conducting a business for profit might not itself be conducted for profit (see section 18).

> Note 2:    A defendant bears an evidential burden in relation to the matter in subsection (8) (see subsection 13.3(3) of the *Criminal Code*).

(8A)  This section does not apply in respect of anything lawfully done by a person in connection with a work or other subject-matter if:

    (a)  the person has custody of the work or other subject-matter under an arrangement referred to in section 64 of the *Archives Act 1983*; and

    (b)  under subsection (8), it would be lawful for the National Archives of Australia to do that thing.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part V**  Remedies and offences
**Division 5**  Offences and summary proceedings

Section 132APD
_____

> Note:     A defendant bears an evidential burden in relation to the matter in subsection (8A) (see subsection 13.3(3) of the *Criminal Code*).

*Defence—prescribed acts*

(9) Subsection (1) does not apply to the person if:

 (a) the person circumvents the access control technological protection measure to enable the person to do an act; and

 (b) the act will not infringe the copyright in a work or other subject-matter; and

 (c) the doing of the act by the person is prescribed by the regulations.

> Note 1:     A defendant bears an evidential burden in relation to the matter in subsection (9) (see subsection 13.3(3) of the *Criminal Code*).

> Note 2:     For the making of regulations prescribing the doing of an act by a person, see section 249.

### 132APD  Manufacturing etc. a circumvention device for a technological protection measure

(1) A person commits an offence if:

 (a) the person does any of the following acts with a device:

  (i) manufactures it with the intention of providing it to another person;

  (ii) imports it into Australia with the intention of providing it to another person;

  (iii) distributes it to another person;

  (iv) offers it to the public;

  (v) provides it to another person;

  (vi) communicates it to another person; and

 (b) the person does the act with the intention of obtaining a commercial advantage or profit; and

 (c) the device is a circumvention device for a technological protection measure.

Penalty:  550 penalty units or imprisonment for 5 years, or both.

_____

Replaced Authorised Version registered 10/02/2025 C2024C00854

*Defence—no promotion, advertising etc.*

(2) Subsection (1) does not apply to the person if:

    (a) the device is a circumvention device for the technological protection measure only because it was promoted, advertised or marketed as having the purpose of circumventing the technological protection measure; and

    (b) both of the following apply:

        (i) the person did not do such promoting, advertising or marketing;

        (ii) the person did not direct or request (expressly or impliedly) another person to do such promoting, advertising or marketing.

> Note:    A defendant bears an evidential burden in relation to the matter in subsection (2) (see subsection 13.3(3) of the *Criminal Code*).

*Defence—interoperability*

(3) Subsection (1) does not apply to the person if:

    (a) the circumvention device will be used to circumvent the technological protection measure to enable the doing of an act; and

    (b) the act:

        (i) relates to a copy of a computer program (the ***original program***) that is not an infringing copy and that was lawfully obtained; and

        (ii) will not infringe the copyright in the original program; and

        (iia) relates to elements of the original program that will not be readily available to the person doing the act when the circumvention occurs; and

        (iii) will be done for the sole purpose of achieving interoperability of an independently created computer program with the original program or any other program.

> Note:    A defendant bears an evidential burden in relation to the matter in subsection (3) (see subsection 13.3(3) of the *Criminal Code*).

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part V** Remedies and offences
**Division 5** Offences and summary proceedings

Section 132APD

---

*Defence—encryption research*

(4) Subsection (1) does not apply to the person if:

   (a) the technological protection measure is an access control technological protection measure; and

   (b) the circumvention device will be used to circumvent the access control technological protection measure to enable a person (the ***researcher***) to do an act; and

   (c) the act:

      (i) relates to a copy of a work or other subject-matter that is not an infringing copy and that was lawfully obtained; and

      (ii) will not infringe the copyright in the work or other subject-matter; and

      (iii) will be done for the sole purpose of identifying and analysing flaws and vulnerabilities of encryption technology; and

   (d) the researcher is:

      (i) engaged in a course of study at an educational institution in the field of encryption technology; or

      (ii) employed, trained or experienced in the field of encryption technology; and

   (e) the researcher:

      (i) has obtained permission from the owner or exclusive licensee of the copyright to do the act; or

      (ii) has made, or will make, a good faith effort to obtain such permission.

In this subsection, ***encryption technology*** means the scrambling and descrambling of information using mathematical formulas or algorithms.

Note:     A defendant bears an evidential burden in relation to the matter in subsection (4) (see subsection 13.3(3) of the *Criminal Code*).

*Defence—computer security testing*

(5) Subsection (1) does not apply to the person if:

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

(a) the technological protection measure is an access control technological protection measure; and

(b) the circumvention device will be used to circumvent the access control technological protection measure to enable the doing of an act; and

(c) the act:

(i) relates to a copy of a computer program that is not an infringing copy; and

(ii) will not infringe the copyright in the computer program; and

(iii) will be done for the sole purpose of testing, investigating or correcting the security of a computer, computer system or computer network; and

(iv) will be done with the permission of the owner of the computer, computer system or computer network.

Note:    A defendant bears an evidential burden in relation to the matter in subsection (5) (see subsection 13.3(3) of the *Criminal Code*).

*Defence—law enforcement and national security*

(6) Subsection (1) does not apply in relation to anything lawfully done for the purposes of:

(a) law enforcement; or

(b) national security; or

(c) performing a statutory function, power or duty;

by or on behalf of the Commonwealth, a State or a Territory, or an authority of one of those bodies.

Note:    A defendant bears an evidential burden in relation to the matter in subsection (6) (see subsection 13.3(3) of the *Criminal Code*).

*Defence—libraries etc.*

(7) Subsection (1) does not apply in respect of anything lawfully done by the following bodies in performing their functions:

(a) a library (other than a library that is conducted for the profit, direct or indirect, of an individual or individuals);

(b) a body mentioned in:

Replaced Authorised Version registered 10/02/2025 C2024C00854

           (i) paragraph (a) of the definition of ***archives*** in subsection 10(1); or

           (ii) subsection 10(4);

    (c) an educational institution;

    (d) a public non-commercial broadcaster (including a body that provides a national broadcasting service, within the meaning of the *Broadcasting Services Act 1992,* and a body that holds a community broadcasting licence within the meaning of that Act).

> Note 1:    A library that is owned by a person conducting a business for profit might not itself be conducted for profit (see section 18).

> Note 2:    A defendant bears an evidential burden in relation to the matter in subsection (7) (see subsection 13.3(3) of the *Criminal Code*).

  (8) This section does not apply in respect of anything lawfully done by a person in connection with a work or other subject-matter if:

    (a) the person has custody of the work or other subject-matter under an arrangement referred to in section 64 of the *Archives Act 1983*; and

    (b) under subsection (7), it would be lawful for the National Archives of Australia to do that thing.

> Note:    A defendant bears an evidential burden in relation to the matter in subsection (8) (see subsection 13.3(3) of the *Criminal Code*).

### 132APE  Providing etc. a circumvention service for a technological protection measure

  (1) A person commits an offence if:

    (a) the person:

           (i) provides a service to another person; or

           (ii) offers a service to the public; and

    (b) the person does so with the intention of obtaining a commercial advantage or profit; and

    (c) the service is a circumvention service for a technological protection measure.

    Penalty:  550 penalty units or imprisonment for 5 years, or both.

Replaced Authorised Version registered 10/02/2025 C2024C00854

*Defence—no promotion, advertising etc.*

(2) Subsection (1) does not apply to the person if:

(a) the service is a circumvention service for the technological protection measure only because it was promoted, advertised or marketed as having the purpose of circumventing the technological protection measure; and

(b) both of the following apply:

(i) the person did not do such promoting, advertising or marketing;

(ii) the person did not direct or request (expressly or impliedly) another person to do such promoting, advertising or marketing.

Note:   A defendant bears an evidential burden in relation to the matter in subsection (2) (see subsection 13.3(3) of the *Criminal Code*).

*Defence—interoperability*

(3) Subsection (1) does not apply to the person if:

(a) the circumvention service will be used to circumvent a technological protection measure to enable the doing of an act; and

(b) the act:

(i) relates to a copy of a computer program (the ***original program***) that is not an infringing copy and that was lawfully obtained; and

(ii) will not infringe the copyright in the original program; and

(iia) relates to elements of the original program that will not be readily available to the person doing the act when the circumvention occurs; and

(iii) will be done for the sole purpose of achieving interoperability of an independently created computer program with the original program or any other program.

Note:   A defendant bears an evidential burden in relation to the matter in subsection (3) (see subsection 13.3(3) of the *Criminal Code*).

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 132APE

---

*Defence—encryption research*

(4) Subsection (1) does not apply to the person if:

  (a) the technological protection measure is an access control technological protection measure; and

  (b) the circumvention service will be used to circumvent the access control technological protection measure to enable a person (the ***researcher***) to do an act; and

  (c) the act:

  (i) relates to a copy of a work or other subject-matter that is not an infringing copy and that was lawfully obtained; and

  (ii) will not infringe the copyright in the work or other subject-matter; and

  (iii) will be done for the sole purpose of identifying and analysing flaws and vulnerabilities of encryption technology; and

  (d) the researcher is:

  (i) engaged in a course of study at an educational institution in the field of encryption technology; or

  (ii) employed, trained or experienced in the field of encryption technology; and

  (e) the researcher:

  (i) has obtained permission from the owner or exclusive licensee of the copyright to do the act; or

  (ii) has made, or will make, a good faith effort to obtain such permission.

In this subsection, ***encryption technology*** means the scrambling and descrambling of information using mathematical formulas or algorithms.

Note:    A defendant bears an evidential burden in relation to the matter in subsection (4) (see subsection 13.3(3) of the *Criminal Code*).

*Defence—computer security testing*

(5) Subsection (1) does not apply to the person if:

---

*Copyright Act 1968*

Replaced Authorised Version registered 10/02/2025 C2024C00854

Remedies and offences  **Part V**
Offences and summary proceedings  **Division 5**

Section 132APE

(a) the technological protection measure is an access control technological protection measure; and

(b) the circumvention service will be used to circumvent the access control technological protection measure to enable the doing of an act; and

(c) the act:

(i) relates to a copy of a computer program that is not an infringing copy; and

(ii) will not infringe the copyright in the computer program; and

(iii) will be done for the sole purpose of testing, investigating or correcting the security of a computer, computer system or computer network; and

(iv) will be done with the permission of the owner of the computer, computer system or computer network.

Note:     A defendant bears an evidential burden in relation to the matter in subsection (5) (see subsection 13.3(3) of the *Criminal Code*).

*Defence—law enforcement and national security*

(6) Subsection (1) does not apply in relation to anything lawfully done for the purposes of:

(a) law enforcement; or

(b) national security; or

(c) performing a statutory function, power or duty;

by or on behalf of the Commonwealth, a State or a Territory, or an authority of one of those bodies.

Note:     A defendant bears an evidential burden in relation to the matter in subsection (6) (see subsection 13.3(3) of the *Criminal Code*).

*Defence—libraries etc.*

(7) Subsection (1) does not apply in respect of anything lawfully done by the following bodies in performing their functions:

(a) a library (other than a library that is conducted for the profit, direct or indirect, of an individual or individuals);

(b) a body mentioned in:

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part V** Remedies and offences
**Division 5** Offences and summary proceedings

Section 132AQ

          (i)  paragraph (a) of the definition of ***archives*** in subsection 10(1); or

         (ii)  subsection 10(4);

    (c)  an educational institution;

    (d)  a public non-commercial broadcaster (including a body that provides a national broadcasting service, within the meaning of the *Broadcasting Services Act 1992,* and a body that holds a community broadcasting licence within the meaning of that Act).

    Note 1:    A library that is owned by a person conducting a business for profit might not itself be conducted for profit (see section 18).

    Note 2:    A defendant bears an evidential burden in relation to the matter in subsection (7) (see subsection 13.3(3) of the *Criminal Code*).

  (8)  This section does not apply in respect of anything lawfully done by a person in connection with a work or other subject-matter if:

    (a)  the person has custody of the work or other subject-matter under an arrangement referred to in section 64 of the *Archives Act 1983*; and

    (b)  under subsection (7), it would be lawful for the National Archives of Australia to do that thing.

    Note:    A defendant bears an evidential burden in relation to the matter in subsection (8) (see subsection 13.3(3) of the *Criminal Code*).

## Subdivision F—Electronic rights management information

### 132AQ  Removing or altering electronic rights management information

*Indictable offence*

  (1)  A person commits an offence if:

    (a)  copyright subsists in a work or other subject-matter; and

    (b)  either:

        (i)  the person removes, from a copy of the work or subject-matter, any electronic rights management information that relates to the work or subject-matter; or

Replaced Authorised Version registered 10/02/2025 C2024C00854

        (ii)  the person alters any electronic rights management information that relates to the work or subject-matter; and

    (c)  the person does so without the permission of the owner or exclusive licensee of the copyright; and

    (d)  the removal or alteration will induce, enable, facilitate or conceal an infringement of the copyright.

(2)  An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

> Note:    A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offence*

(3)  A person commits an offence if:

    (a)  copyright subsists in a work or other subject-matter; and

    (b)  either:

        (i)  the person removes, from a copy of the work or subject-matter, any electronic rights management information that relates to the work or subject-matter; or

        (ii)  the person alters any electronic rights management information that relates to the work or subject-matter; and

    (c)  the person does so without the permission of the owner or exclusive licensee of the copyright; and

    (d)  the removal or alteration will induce, enable, facilitate or conceal an infringement of the copyright and the person is negligent as to that result.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(4)  An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part V**  Remedies and offences
**Division 5**  Offences and summary proceedings

---

Section 132AR

---

*Strict liability offence*

(5) A person commits an offence if:

    (a)  copyright subsists in a work or other subject-matter; and

    (b)  either:

        (i)  the person removes, from a copy of the work or subject-matter, any electronic rights management information that relates to the work or subject-matter; or

        (ii)  the person alters any electronic rights management information that relates to the work or subject-matter; and

    (c)  the person does so without the permission of the owner or exclusive licensee of the copyright; and

    (d)  the removal or alteration will induce, enable, facilitate or conceal an infringement of the copyright.

Penalty:  60 penalty units.

(6) Subsection (5) is an offence of strict liability.

Note:      For strict liability, see section 6.1 of the *Criminal Code*.

## 132AR  Distributing, importing or communicating copies after removal or alteration of electronic rights management information

*Indictable offence*

(1) A person commits an offence if:

    (a)  copyright subsists in a work or other subject-matter; and

    (b)  the person does any of the following acts in relation to the work or subject-matter:

        (i)  distributes a copy of the work or subject-matter with the intention of trading or obtaining a commercial advantage or profit;

        (ii)  imports a copy of the work or subject-matter into Australia with the intention of trading or obtaining a commercial advantage or profit;

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

   (iii) communicates a copy of the work or subject-matter to the public; and

   (c) the person does so without the permission of the owner or exclusive licensee of the copyright; and

   (d) either:

      (i) any electronic rights management information that relates to the work or subject-matter has been removed from the copy of the work or subject-matter; or

      (ii) any electronic rights management information that relates to the work or subject-matter has been altered;

   without the permission of the owner or exclusive licensee of the copyright; and

   (e) the person knows that the information has been removed or altered without that permission; and

   (f) the act referred to in paragraph (b) will induce, enable, facilitate or conceal an infringement of the copyright.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

   Note:      A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offence*

(3) A person commits an offence if:

   (a) copyright subsists in a work or other subject-matter; and

   (b) the person does any of the following acts in relation to the work or subject-matter:

      (i) distributes a copy of the work or subject-matter with the intention of trading or obtaining a commercial advantage or profit;

      (ii) imports a copy of the work or subject-matter into Australia with the intention of trading or obtaining a commercial advantage or profit;

      (iii) communicates a copy of the work or subject-matter to the public; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 132AR
_____

      (c)  the person does so without the permission of the owner or exclusive licensee of the copyright; and

      (d)  either:

         (i)  any electronic rights management information that relates to the work or subject-matter has been removed from the copy of the work or subject-matter; or

        (ii)  any electronic rights management information that relates to the work or subject-matter has been altered;

      without the permission of the owner or exclusive licensee of the copyright; and

      (e)  the act referred to in paragraph (b) will induce, enable, facilitate or conceal an infringement of the copyright and the person is negligent as to that result.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

  (4)  An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

*Strict liability offence*

  (5)  A person commits an offence if:

      (a)  copyright subsists in a work or other subject-matter; and

      (b)  the person does any of the following acts in relation to the work or subject-matter:

        (i)  distributes a copy of the work or subject-matter in preparation for, or in the course of, trading or for obtaining a commercial advantage or profit;

        (ii)  imports a copy of the work or subject-matter into Australia in preparation for, or in the course of, trading or in preparation for, or in the course of, obtaining a commercial advantage or profit;

        (iii)  communicates a copy of the work or subject-matter to the public; and

      (c)  the person does so without the permission of the owner or exclusive licensee of the copyright; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

    (d) either:

        (i) any electronic rights management information that relates to the work or subject-matter has been removed from the copy of the work or subject-matter; or

        (ii) any electronic rights management information that relates to the work or subject-matter has been altered;

    without the permission of the owner or exclusive licensee of the copyright; and

    (e) the act referred to in paragraph (b) will induce, enable, facilitate or conceal an infringement of the copyright.

Penalty:  60 penalty units.

(6) Subsection (5) is an offence of strict liability.

    Note:        For strict liability, see section 6.1 of the *Criminal Code*.

## 132AS  Distributing or importing electronic rights management information

*Indictable offence*

(1) A person commits an offence if:

    (a) copyright subsists in a work or other subject-matter; and

    (b) the person does either of the following acts in relation to electronic rights management information that relates to the work or subject-matter:

        (i) distributes the electronic rights management information with the intention of trading or obtaining a commercial advantage or profit;

        (ii) imports the electronic rights management information into Australia with the intention of trading or obtaining a commercial advantage or profit; and

    (c) the person does so without the permission of the owner or exclusive licensee of the copyright; and

    (d) either:

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Section 132AS**

(i) the information has been removed from a copy of the work or subject-matter without the permission of the owner or exclusive licensee of the copyright; or

(ii) the information has been removed from a copy of the work or subject-matter with the permission of the owner or exclusive licensee of the copyright but the information has been altered without that permission; and

(e) the person knows that the information has been removed or altered without that permission; and

(f) the act referred to in paragraph (b) will induce, enable, facilitate or conceal an infringement of the copyright.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

> Note: A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offence*

(3) A person commits an offence if:

(a) copyright subsists in a work or other subject-matter; and

(b) the person does either of the following acts in relation to electronic rights management information that relates to the work or subject-matter:

(i) distributes the electronic rights management information with the intention of trading or obtaining a commercial advantage or profit;

(ii) imports the electronic rights management information into Australia with the intention of trading or obtaining a commercial advantage or profit; and

(c) the person does so without the permission of the owner or exclusive licensee of the copyright; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

(d) either:

    (i) the information has been removed from a copy of the work or subject-matter without the permission of the owner or exclusive licensee of the copyright; or

    (ii) the information has been removed from a copy of the work or subject-matter with the permission of the owner or exclusive licensee of the copyright but the information has been altered without that permission; and

(e) the act referred to in paragraph (b) will induce, enable, facilitate or conceal an infringement of the copyright and the person is negligent as to that result.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(4) An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

*Strict liability offence*

(5) A person commits an offence if:

(a) copyright subsists in a work or other subject-matter; and

(b) the person does either of the following acts in relation to electronic rights management information that relates to the work or subject-matter:

    (i) distributes the electronic rights management information in preparation for, or in the course of, trading or in preparation for, or in the course of, obtaining a commercial advantage or profit;

    (ii) imports the electronic rights management information into Australia in preparation for, or in the course of, trading or in preparation for, or in the course of, obtaining a commercial advantage or profit; and

(c) the person does so without the permission of the owner or exclusive licensee of the copyright; and

(d) either:

Compilation No. 64                              Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

      (i)  the information has been removed from a copy of the work or subject-matter without the permission of the owner or exclusive licensee of the copyright; or

      (ii)  the information has been removed from a copy of the work or subject-matter with the permission of the owner or exclusive licensee of the copyright but the information has been altered without that permission; and

    (e)  the act referred to in paragraph (b) will induce, enable, facilitate or conceal an infringement of the copyright.

Penalty:  60 penalty units.

(6)  Subsection (5) is an offence of strict liability.

Note:       For strict liability, see section 6.1 of the *Criminal Code*.

## 132AT  Defences

*Law enforcement and national security*

(1)  This Subdivision does not apply in respect of anything lawfully done for the purposes of law enforcement or national security by or on behalf of:

    (a)  the Commonwealth or a State or Territory; or

    (b)  an authority of the Commonwealth or of a State or Territory.

Note:       A defendant bears an evidential burden in relation to the matter in subsection (1) (see subsection 13.3(3) of the *Criminal Code*).

*Certain public institutions etc.*

(2)  This Subdivision does not apply in respect of anything lawfully done by the following in performing their functions:

    (a)  a library (other than a library that is conducted for the profit, direct or indirect, of an individual or individuals);

    (b)  a body mentioned in:

      (i)  paragraph (a) of the definition of ***archives*** in subsection 10(1); or

Replaced Authorised Version registered 10/02/2025 C2024C00854

        (ii) subsection 10(4);

    (c) an educational institution;

    (d) a public non-commercial broadcaster, including:

        (i) a body that provides a national broadcasting service within the meaning of the *Broadcasting Services Act 1992*; and

        (ii) a body that holds a community broadcasting licence within the meaning of that Act.

> Note 1:    A library that is owned by a person conducting a business for profit might not itself be conducted for profit (see section 18).

> Note 2:    A defendant bears an evidential burden in relation to the matter in subsection (2) (see subsection 13.3(3) of the *Criminal Code*).

  (3) This Subdivision does not apply in respect of anything lawfully done by a person in connection with a work or other subject-matter if:

    (a) the person has custody of the work or other subject-matter under an arrangement referred to in section 64 of the *Archives Act 1983*; and

    (b) under subsection (2), it would be lawful for the National Archives of Australia to do that thing.

> Note:    A defendant bears an evidential burden in relation to the matter in subsection (3) (see subsection 13.3(3) of the *Criminal Code*).

## Subdivision G—Evidence

### 132AU  Prosecution to prove profit

  (1) This section applies if, in the prosecution of an offence against this Division, either of the following questions is relevant:

    (a) whether the defendant intended to obtain a profit;

    (b) whether the defendant did something for, in preparation for, or in the course of, obtaining a profit.

  (2) The burden of proving that any advantage, benefit or gain does not result from, or is not associated with, any private or domestic use of any copyright material is on the prosecution.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Section 132A**

Note:   For the purposes of this Division, section 132AA defines **profit** as not including any advantage, benefit, or gain, that:

(a)   is received by a person; and

(b)   results from, or is associated with, the person's private or domestic use of any copyright material.

### 132A  Presumptions in relation to subsistence and ownership of copyright

(1) This section applies to a prosecution for an offence against this Division, except section 132AM, in relation to a work or other subject matter.

*Labels or marks*

(2) If a copy of the work or other subject matter, or the packaging or container in which the copy is packaged or contained, bears a label or mark stating the year and place of the first publication, or of the making, of the work or other subject matter, then that year and place are presumed to be as stated on the label or mark, unless the contrary is established.

(3) If a copy of the work or other subject matter, or the packaging or container in which the copy is packaged or contained, bears a label or mark stating that a person was the owner of copyright in the work or other subject matter at a particular time, then the person is presumed to have been the owner of the copyright at the time, unless the contrary is established.

*Foreign certificates*

(4) If a certificate or other document issued in a qualifying country in accordance with a law of that country states the year and place of the first publication, or of the making, of the work or other subject matter, then that year and place are presumed to be as stated in the certificate or document, unless the contrary is established.

(5) If a certificate or other document issued in a qualifying country in accordance with a law of that country states that a person was the owner of copyright in the work or other subject matter at a

Replaced Authorised Version registered 10/02/2025 C2024C00854

particular time, then the person is presumed to have been the owner of the copyright at the time, unless the contrary is established.

(6) For the purposes of this section, a document purporting to be a certificate or document referred to in subsection (4) or (5) is, unless the contrary intention is established, taken to be such a certificate or document.

## 132AAA  Presumptions relating to computer programs

(1) This section applies to a prosecution for an offence against this Division, except section 132AM, relating to copyright in a literary work that is a computer program if:

    (a) articles or things embodying all or part of the program have been supplied (by sale or otherwise) to the public; and

    (b) at the time of the supply, the articles or things, or their containers, bore a label or other mark consisting of the letter "C" in a circle accompanied by a specified year and the name of a person.

(2) It is presumed that:

    (a) the computer program is an original literary work; and

    (b) the computer program was first published in the year; and

    (c) the person was the owner of copyright in the program when and where the articles, things or containers were labelled or marked;

unless the contrary is established.

(3) A presumption about a person under subsection (2) does not imply that the person was the only owner of copyright in the program when and where the articles, things or containers were labelled or marked.

## 132B  Presumptions relating to sound recordings

(1) This section applies to a prosecution for an offence against this Division, except section 132AM, relating to copyright in a sound recording if:

Compilation No. 64                                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part V** Remedies and offences
**Division 5** Offences and summary proceedings

---

Section 132B

---

    (a) records embodying all or part of the recording have been
supplied (by sale or otherwise) to the public; and

    (b) at the time of the supply, the records or their containers bore
a label or other mark.

(2) If the label or other mark contained a statement described in an
item of the table, the matter described in the item is presumed,
unless the contrary is established.

---

| **Statements and matters to be presumed unless the contrary is established** | | |
|---|---|---|
| **Item** | **Statement** | **Matter presumed** |
| 1 | A specified person was the maker of the recording | The person was the maker of the recording |
| 2 | The recording was first published in a specified year | The recording was first published in the year |
| 3 | The recording was first published in a specified country | The recording was first published in the country |

---

(3) If the label or mark consisted of the letter "P" in a circle
accompanied by a specified year and the name of a person, it is
presumed that:

    (a) the recording was first published in the year; and

    (b) the person was the owner of copyright in the recording when
and where the records or containers were labelled or marked;

unless the contrary is established.

(4) A presumption about a person under this section does not imply
that the person was:

    (a) the only maker of the recording; or

    (b) the only owner of copyright in the recording when and where
the records or containers were labelled or marked.

Replaced Authorised Version registered 10/02/2025 C2024C00854

### 132C  Presumptions relating to films

*Presumption about film maker*

(1) Subsection (2) applies to a prosecution for an offence against this Division, except section 132AM, relating to copyright in a cinematograph film if:

    (a) copies of the film were made available to the public; and

    (b) a person's name appeared on the copies in such a way as to imply that the person was the maker of the film; and

    (c) if the person is not a body corporate—the name is his or her true name or a name by which he or she is commonly known.

(2) It is presumed that:

    (a) the person is the maker of the film; and

    (b) the person made the film in circumstances to which subsection 98(3) does not apply;

unless the contrary is established.

*Presumption about time of making and owner of copyright*

(3) Subsection (4) applies to a prosecution for an offence against this Division, except section 132AM, relating to copyright in a cinematograph film, if:

    (a) articles or things embodying the film have been supplied commercially; and

    (b) at the time of the supply, the articles or things, or their containers, bore a label or other mark consisting of the letter "C" in a circle accompanied by a specified year and the name of a person.

(4) It is presumed that:

    (a) the film was first made in the year; and

    (b) the person was the owner of copyright in the film when and where the articles, things or containers were labelled or marked;

unless the contrary is established.

Compilation No. 64                                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

(5)  A presumption about a person under subsection (4) does not imply that the person was the only owner of copyright in the film when and where the articles, things or containers were labelled or marked.

## Subdivision H—Extra court orders

### 133  Destruction or delivery up of infringing copies etc.

(1)  This section applies if:

   (a)  a person is charged before a court with an offence against this Division, except section 132AM, whether or not the person is convicted of the offence; and

   (b)  the person possesses an article that appears to the court to be any of the following:

      (i)  a circumvention device used or intended to be used in conduct constituting an offence against Subdivision E;

      (ii)  an infringing copy;

      (iii)  a device or equipment used or intended to be used for making infringing copies.

(2)  The court may order that the article be destroyed, delivered up to the owner of the copyright concerned or dealt with as the court thinks fit.

## Subdivision I—Procedure and jurisdiction

### 133A  Courts in which offences may be prosecuted

(1)  Prosecutions for offences against this Division may be brought in the Federal Court of Australia or in any other court of competent jurisdiction.

(2)  However, the Federal Court of Australia does not have jurisdiction to hear or determine prosecutions for indictable offences, despite section 15C of the *Acts Interpretation Act 1901*.

Replaced Authorised Version registered 10/02/2025 C2024C00854

(3) The Federal Court of Australia has jurisdiction to hear and determine prosecutions of the following offences against this Division:

    (a) summary offences;

    (b) offences of strict liability.

## 133B  Infringement notices

(1) The regulations may make provision enabling a person who is alleged to have committed an offence of strict liability against this Division to do both of the following as an alternative to prosecution:

    (a) pay a penalty to the Commonwealth;

    (b) forfeit to the Commonwealth:

      (i) each article (if any) that is alleged to be an infringing copy of a work or other subject-matter and that is alleged to have been involved in the commission of the offence; and

      (ii) each device (if any) that is alleged to have been made to be used for making an infringing copy of a work or other subject-matter and that is alleged to have been involved in the commission of the offence.

Note: Regulations made for this purpose will make provision to the effect that a prosecution of an alleged offender will be avoided if the alleged offender both pays a penalty to the Commonwealth and forfeits to the Commonwealth all relevant articles and devices (if any).

(2) The penalty must equal one-fifth of the maximum fine that a court could impose on the person as a penalty for that offence.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 134

# Division 6—Miscellaneous

## 134  Limitation of actions in respect of infringement of copyright

(1) An action shall not be brought for an infringement of copyright or in respect of the conversion or detention of an infringing copy, or of a device (including a circumvention device) used or intended to be used for making infringing copies, after the expiration of six years from the time when the infringement took place or the infringing copy or device was made, as the case may be.

(2) An action may not be brought under section 116AN, 116AO, 116AP, 116B, 116C or 116CA in respect of an act done by a person if more than 6 years have elapsed from the time when the act was done.

## 134A  Affidavit evidence

(1) Subject to subsection (2), at the trial of a proceeding, being:

    (a) an action brought by virtue of this Part; or

    (b) a prosecution for an offence against this Act;

evidence that:

    (c) at a particular time, copyright subsisted in the work or other subject-matter to which the proceeding relates; or

    (d) at a particular time, copyright in that work or subject-matter was owned by, or exclusively licensed to, a particular person; or

    (e) at a particular time, copyright in that work or subject-matter was not owned by, or exclusively licensed to, a particular person; or

    (f) a particular act was done without the licence of the owner of the copyright, or of the exclusive licensee of the copyright, in that work or subject-matter;

may be given by affidavit.

*Copyright Act 1968*

Replaced Authorised Version registered 10/02/2025 C2024C00854

(2)  If a party to a proceeding referred to in subsection (1) desires in good faith that the person who made an affidavit referred to in that subsection that is proposed to be used in the proceeding be cross-examined with respect to the matters in the affidavit, the affidavit may not be used in the proceeding unless the person appears as a witness for such cross-examination or the court in which the proceeding is being tried, in its discretion, permits the affidavit to be used without the person so appearing.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 7—Seizure of imported copies of copyright material

## 134B  Interpretation

In this Division:

*action period*, in relation to particular seized copies, means the period prescribed by the regulations after notice of a claim for release of the copies is given to the objector under section 135AED.

*claim period*, in relation to particular seized copies, means the period prescribed by the regulations after notice of seizure of the copies is given to the importer under section 135AC.

*Comptroller-General of Customs* means the person who is the Comptroller-General of Customs in accordance with subsection 11(3) or 14(2) of the *Australian Border Force Act 2015*.

*copy*, in relation to copyright material, means:

  (a)  if the copyright material is a work—an article in which the work is embodied; or

  (b)  if the copyright material is a sound recording, or a sound broadcast as recorded in a sound recording—a record embodying the sound recording; or

  (c)  if the copyright material is a cinematograph film or a television broadcast as recorded in a cinematograph film—an article in which the visual images or sounds comprising the film are embodied; or

  (d)  if the copyright material is a published edition of a work—an article in which the edition is embodied.

*importer*, in relation to copies of copyright material, includes a person who or which is, or holds himself, herself or itself out to be, the owner or importer of the goods comprising the copies.

Replaced Authorised Version registered 10/02/2025 C2024C00854

*objector*, in relation to particular seized copies, means the person who gave the notice under subsection 135(2) as a result of the giving of which the copies were seized.

*owner*, in relation to the copyright in copyright material, includes an exclusive licensee of the copyright in the material.

*personal information* has the same meaning as in the *Privacy Act 1988*.

*seized copies* means copies seized under subsection 135(7).

*working day* means a day that is not:
(a)  a Saturday; or
(b)  a Sunday; or
(c)  a public holiday in the Australian Capital Territory.

## 135  Restriction of importation of copies of works etc.

(1)  In this section:
(a)  a reference to Australia does not include a reference to the external Territories; and
(b)  a reference to importation into Australia does not include a reference to importation from such a Territory.

(2)  A person may give the Comptroller-General of Customs a written notice stating:
(a)  that the person is the owner of the copyright in copyright material; and
(b)  that the person objects to the importation into Australia of copies of the copyright material to which this section applies.

(3)  A notice under subsection (2):
(a)  is to be given together with any prescribed document; and
(b)  is to be accompanied by the prescribed fee (if any).

(4)  This section applies to a copy of copyright material if the making of the copy would, if it had been carried out in Australia by the

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part V  Remedies and offences
Division 7  Seizure of imported copies of copyright material

---

Section 135

---

person importing the copy, have constituted an infringement of the copyright in the copyright material.

(5) Unless it is revoked under subsection (6) or declared to be ineffective under subsection (6A), a notice under subsection (2) remains in force until:

  (a) the end of the period of 4 years commencing on the day on which the notice was given; or

  (b) the end of the period for which the copyright in the copyright material to which the notice relates is to subsist;

whichever is the earlier.

(6) A notice under subsection (2) may be revoked by written notice given to the Comptroller-General of Customs by the person who gave the first-mentioned notice or by a subsequent owner of the copyright in the copyright material to which the notice relates.

(6A) If the Comptroller-General of Customs believes, on reasonable grounds, that it is no longer appropriate to give effect to a notice given under subsection (2), the Comptroller-General of Customs may, by writing, declare the notice to be ineffective.

    Note:    Subsection 195B(3) requires the Comptroller-General of Customs to notify the person who gave the notice of the decision declaring the notice to be ineffective.

(7) If:

  (a) a notice has been given under subsection (2) in respect of copyright material; and

  (b) the notice has not been declared to be ineffective or revoked; and

  (c) a person imports copies of the copyright material to which this section applies into Australia for the purpose of:

    (i) selling, letting for hire, or by way of trade offering or exposing for sale or hire, the copies; or

    (ii) distributing the copies for the purpose of trade; or

    (iii) distributing the copies for any other purpose to an extent that will affect prejudicially the owner of the copyright in the copyright material; or

---

Compilation No. 64        Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

(iv) by way of trade exhibiting the copies in public; and

(d) the copies are subject to customs control under the *Customs Act 1901*;

the Comptroller-General of Customs may seize the copies.

(8) The regulations may make provision for or in relation to:

(a) the forms of notices under this section; and

(b) the times at which, and the manner in which, notices are to be given; and

(c) the giving of information and evidence to the Comptroller-General of Customs.

(9) The regulations may contain provisions similar to the provisions of this Division in relation to the importation into external Territories (other than importation from Australia or from another such Territory) of copies of copyright material.

(10) This Division does not apply to the importation into Australia of copies of copyright material whose importation does not constitute an infringement of copyright because of section 44A, 44D, 44E, 44F, 112A, 112D or 112DA.

(10A) This Division does not apply to the importation into Australia of copies of copyright material whose importation does not constitute an infringement of copyright because of section 44C or 112C.

## 135AA  Decision not to seize unless expenses are covered

(1) Subject to subsection (2), the Comptroller-General of Customs may decide not to seize the copies under subsection 135(7) unless he or she has been given by the objector (or by one or more of the objectors) a written undertaking acceptable to the Comptroller-General of Customs to repay to the Commonwealth the expenses of seizing the copies.

(2) The Comptroller-General of Customs may decide not to seize the copies under subsection 135(7) unless he or she has been given by the objector (or one or more of the objectors), instead of an undertaking, security in an amount that the Comptroller-General of

Replaced Authorised Version registered 10/02/2025 C2024C00854

Customs considers sufficient to repay to the Commonwealth the expenses of seizing the copies if:

 (a) an amount payable under an undertaking given by the objector (or one or more of the objectors) in relation to other copies has not been paid in accordance with the undertaking; and

 (b) the Comptroller-General of Customs considers it reasonable in all the circumstances to require the security.

(3) An undertaking may be withdrawn or varied if the Comptroller-General of Customs consents in writing to a written request from the objector or objectors to do so.

(4) In this section:

***expenses of seizing the copies*** means the expenses that may be incurred by the Commonwealth if the copies were seized.

## 135AB  Secure storage of seized copies

Seized copies must be taken to such secure place as the Comptroller-General of Customs directs.

## 135AC  Notice of seizure

(1) As soon as is practicable after copies are seized under subsection 135(7), the Comptroller-General of Customs must give to the importer and the objector, by any means of communication (including by electronic means), a notice (the ***seizure notice***) identifying the copies and stating that the identified copies have been seized.

(2) The seizure notice must state that the copies will be released to the importer if:

 (a) the importer makes a claim for the release of the copies within the claim period; and

 (b) the objector has not, by the end of the action period:

  (i) instituted an action for infringement of copyright in relation to the copies; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

        (ii) given the Comptroller-General of Customs written notice of that action.

(3) The seizure notice must also:

    (a) set out the claim period for the copies; and

    (b) set out the action period for the copies and state that the action period will begin only if the importer makes a claim for the release of the copies; and

    (c) if the notice is given to the objector—state the name and the address of the place of business or residence of the importer (if known), unless the Comptroller-General of Customs is satisfied, for reasons of confidentiality, that it is not desirable to do so; and

    (d) if the notice is given to the importer—state the name and the address of the place of business or residence of:

        (i) the objector; or

        (ii) if the objector has nominated a person to be the objector's agent or representative for the purposes of this Division—that person;

    unless the Comptroller-General of Customs is satisfied, for reasons of confidentiality, that it is not desirable to do so.

(8) The Comptroller-General of Customs may, at any time after the copies are seized, give to the objector:

    (a) the name, and the address of the place of business or residence, of any person or body (whether in or outside Australia) that made arrangements, on behalf of the importer, for the copies to be brought to Australia or any information that the Comptroller-General of Customs has, and believes on reasonable grounds may help in identifying and locating such a person or body; and

    (b) any information (including personal information) that the Comptroller-General of Customs has, and believes on reasonable grounds may be relevant for the purpose of identifying and locating the importer.

---

*Copyright Act 1968*        *297*

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 135AD

## 135AD  Inspection, release etc. of seized copies

(1)  The Comptroller-General of Customs may permit the objector or the importer to inspect the seized copies.

(2)  If the objector gives the Comptroller-General of Customs the requisite undertakings, the Comptroller-General of Customs may permit the objector to remove one or more samples of the seized copies from the custody of the Comptroller-General of Customs for inspection by the objector.

(3)  If the importer gives the Comptroller-General of Customs the requisite undertakings, the Comptroller-General of Customs may permit the importer to remove one or more samples of the seized copies from the custody of the Comptroller-General of Customs for inspection by the importer.

(4)  The requisite undertakings are undertakings in writing that the person giving the undertaking will:

(a)  return the sample copies to the Comptroller-General of Customs at a specified time that is satisfactory to the Comptroller-General of Customs; and

(b)  take reasonable care to prevent damage to the sample copies.

(5)  If the Comptroller-General of Customs permits inspection of the seized copies, or the removal of sample copies, by the objector in accordance with this section, the Commonwealth is not liable to the importer for any loss or damage suffered by the importer arising out of:

(a)  damage to any of the seized copies incurred during that inspection; or

(b)  anything done by the objector or any other person to, or in relation to, sample copies removed from the custody of the Comptroller-General of Customs or any use made by the objector of such sample copies.

Replaced Authorised Version registered 10/02/2025 C2024C00854

### 135AE  Forfeiture of seized copies by consent

(1) Subject to subsection (2), the importer may, by written notice to the Comptroller-General of Customs, consent to the seized copies being forfeited to the Commonwealth.

(2) The notice must be given before any action for infringement of copyright in relation to the copies is instituted.

(3) If the importer gives such a notice, the copies are forfeited to the Commonwealth.

### 135AEA  Claim for release of seized copies

(1) The importer may make a claim to the Comptroller-General of Customs for the release of seized copies.

(2) The claim must be made before the end of the claim period for the copies.

(3) The claim must contain the information prescribed by the regulations.

   Note:    Sections 137.1 and 137.2 of the *Criminal Code* create offences for providing false or misleading information or documents.

### 135AEB  Seized copies not claimed are forfeited

(1) Seized copies are forfeited to the Commonwealth if a claim for the release of the goods is not made within the claim period for the copies.

(2) However, if the Comptroller-General of Customs allows a late claim for the copies (see section 135AEC), the copies are taken not to have been forfeited.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 135AEC

---

### 135AEC  Late claim for release of seized copies

(1) The Comptroller-General of Customs may allow the importer to make a claim (the *late claim*) to the Comptroller-General of Customs for the release of seized copies after the end of the claim period for the copies.

(2) The Comptroller-General of Customs may allow the late claim only if:

    (a) an action for infringement of copyright in relation to the copies has not been instituted; and

    (b) the Comptroller-General of Customs considers it reasonable in the circumstances; and

    (c) the copies have not been disposed of under section 135AI.

### 135AED  Objector to be notified of claim

(1) If the importer makes a claim for the release of seized copies, the Comptroller-General of Customs must, as soon as practicable, give notice of the claim to the objector.

(2) The notice:

    (a) must be in writing; and

    (b) may include any information that the Comptroller-General of Customs has, and believes on reasonable grounds may be relevant, for the purpose of identifying and locating either or both of the following:

        (i) the importer of the copies;

        (ii) any other person or body (whether in or outside Australia) that made arrangements for the copies to be brought to Australia.

### 135AF  Release of seized copies to importer

(1) The Comptroller-General of Customs must release seized copies to the importer if:

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

> (a) the objector gives written notice to the Comptroller-General of Customs stating that the objector consents to the release of the seized copies; and
>
> (b) the copies have not been disposed of under section 135AI.

(2) The Comptroller-General of Customs may release seized copies to the importer at any time if:

> (a) the Comptroller-General of Customs, having regard to information that has come to his or her knowledge after the copies were seized, is satisfied that there are no reasonable grounds for believing that copyright has been infringed by the importation of the copies; and
>
> (b) the objector has not brought an action for infringement of copyright in relation to the copies.

(3) The Comptroller-General of Customs must release seized copies to the importer if:

> (a) the importer has made a claim for the release of the copies; and
>
> (b) the objector has not, by the end of the action period:
>
>> (i) instituted an action for infringement of copyright in relation to the copies; and
>>
>> (ii) given the Comptroller-General of Customs written notice of that action.

(4) The Comptroller-General of Customs must release seized copies to the importer if:

> (a) the importer has made a claim for the release of the copies; and
>
> (b) an action for infringement of copyright has been instituted in relation to the copies; and
>
> (c) at the end of a period of 20 working days commencing on the day on which the action was instituted, there is not in force an order of the court in which the action was instituted preventing the release of the copies.

(5) This section has effect subject to section 135AH.

Compilation No. 64                          Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 135AFA

### 135AFA  Copies released but not collected are forfeited

Seized copies are forfeited to the Commonwealth if:

(a) the copies are released by the Comptroller-General of Customs to the importer; and

(b) the importer does not take possession of the copies within 90 days of the release.

### 135AG  Provision relating to actions for infringement of copyright

(1) In this section, *infringement action* means an action for an infringement of copyright constituted by the importation of seized copies.

(2) The court in which an infringement action is pending may, on the application of a person having a sufficient interest in the subject-matter of the action, allow the person to be joined as a defendant to the action.

(3) The Comptroller-General of Customs is entitled to be heard on the hearing of an infringement action.

(4) In addition to any relief that may be granted apart from this section, the court may:

(a) at any time, order that the seized copies be released to the importer subject to such conditions (if any) as the court thinks fit; or

(b) order that the seized copies not be released to the importer before the end of a specified period; or

(c) order that the goods be forfeited to the Commonwealth.

(5) A court may not make an order under paragraph (4)(a) if it is satisfied that the Comptroller-General of Customs is required or permitted, under any other law of the Commonwealth, to retain control of the seized copies.

(6) The Comptroller-General of Customs must comply with an order made under subsection (4).

Replaced Authorised Version registered 10/02/2025 C2024C00854

(7) If:

    (a) the court decides that the relevant copyright was not infringed by the importation of the seized copies; and

    (b) a defendant to the infringement action satisfies the court that he or she has suffered loss or damage as a result of the seizure of the copies;

the court may order the objector to pay to that defendant such amount as the court determines as compensation for any part of that loss or damage that is attributable to a period beginning on or after the day on which the action was commenced.

## 135AH  Retention of control of seized copies

In spite of section 135AF, in a case in which no order has been made under subsection 135AG(4) in relation to seized copies, the Comptroller-General of Customs is not obliged to release or dispose of the copies if the Comptroller-General of Customs is required or permitted, under any other law of the Commonwealth, to retain control of the copies.

## 135AI  Disposal of seized copies forfeited to the Commonwealth

(1) Seized copies forfeited to the Commonwealth must be disposed of:

    (a) in the manner prescribed by the regulations; or

    (b) if no manner of disposal is so prescribed—as the Comptroller-General of Customs directs.

(2) However, copies forfeited under section 135AEB must not be disposed of until 30 days after their forfeiture.

(3) Subsection (1) does not require the disposal of copies that are required in relation to an action for infringement of copyright.

*Right of compensation in certain circumstances*

(4) Despite the forfeiture of seized copies to the Commonwealth, a person may apply to a court of competent jurisdiction under this section for compensation for the disposal of the copies.

Compilation No. 64                                         Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

(5) A right to compensation exists if:

   (a) the copies did not infringe the objector's copyright; and

   (b) the person establishes, to the satisfaction of the court:

      (i) that he or she was the owner of the copies immediately before they were forfeited; and

      (ii) that there were circumstances providing a reasonable excuse for the failure to make a claim for the release of the copies.

(6) If a right to compensation exists under subsection (4), the court must order the payment by the Commonwealth to the person of an amount equal to the market value of the copies at the time of their disposal.

## 135AJ  Failure to meet Commonwealth's expenses of seizure

(1) If an amount payable under an undertaking in relation to copies covered by a notice given under section 135 is not paid in accordance with the undertaking, the Comptroller-General of Customs may decide not to seize copies covered by the notice until the amount owing is paid.

(2) An amount not paid under an undertaking:

   (a) is a debt due by the objector, or by the objectors jointly or each of them separately, to the Commonwealth; and

   (b) may be recovered by an action taken in a court of competent jurisdiction.

(3) If the amount paid under an undertaking in relation to copies covered by a notice given under section 135 is in accordance with the undertaking but is not sufficient to meet the expenses incurred by the Commonwealth as a result of the action taken by the Comptroller-General of Customs under this Division because of the notice, the amount of the difference between those expenses and the amount paid:

   (a) is a debt due by the objector, or by the objectors jointly or each of them separately, to the Commonwealth; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

(b)  may be recovered by an action taken in a court of competent jurisdiction.

(4)  If security given under subsection 135AA(2) by the objector or objectors who gave notice under section 135 is not sufficient to meet the expenses incurred by the Commonwealth as a result of the action taken by the Comptroller-General of Customs under this Division because of the notice, the amount of the difference between those expenses and the amount of security:

(a)  is a debt due by the objector, or by the objectors jointly or each of them separately, to the Commonwealth; and

(b)  may be recovered by an action taken in a court of competent jurisdiction.

## 135AK  Immunity of the Commonwealth

The Commonwealth is not liable for any loss or damage suffered by a person:

(a)  because of the seizure of copies, or the failure of the Comptroller-General of Customs to seize copies, under this Division; or

(b)  because of the release of any seized copies.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Part VAA—Unauthorised access to encoded broadcasts

## Division 1—Preliminary

### 135AL  Definitions

In this Part:

*action* means a proceeding of a civil nature between parties, including a counterclaim.

*broadcaster* means a person licensed under the *Broadcasting Services Act 1992* to provide a broadcasting service (as defined in that Act) by which an encoded broadcast is delivered.

*channel provider* means a person who:
  (a)  packages a channel (which might include programs produced by the person); and
  (b)  supplies a broadcaster with the channel; and
  (c)  carries on a business that involves the supply of the channel;
where, apart from any breaks for the purposes of the transmission of incidental matter, the channel is broadcast as part of an encoded broadcast service.

*decoder* means a device (including a computer program) designed or adapted to decrypt, or facilitate the decryption of, an encoded broadcast.

*encoded broadcast* means:
  (a)  a subscription broadcast; or
  (b)  a broadcast (except a radio broadcast or subscription broadcast) that is encrypted and is delivered by a commercial broadcasting service, or a national broadcasting service, within the meaning of the *Broadcasting Services Act 1992*.

Replaced Authorised Version registered 10/02/2025 C2024C00854

> *subscription broadcast* means a broadcast that is encrypted and is made available by the broadcaster only to persons authorised by the broadcaster to access the broadcast in intelligible form.

> *unauthorised decoder* means a device (including a computer program) designed or adapted to decrypt, or facilitate the decryption of, an encoded broadcast without the authorisation of the broadcaster.

## 135AM  Counterclaim

In the application of this Part in relation to a counterclaim, references to the defendant are to be read as references to the plaintiff.

## 135AN  This Part does not apply to law enforcement activity etc.

This Part does not apply in relation to anything lawfully done for the purposes of law enforcement or national security by or on behalf of:

(a)  the Commonwealth or a State or Territory; or

(b)  an authority of the Commonwealth or of a State or Territory.

Note:     A defendant in proceedings for an offence against this Part bears an evidential burden in relation to the matter in this section (see subsection 13.3(3) of the *Criminal Code*).

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 135AOA

## Division 2—Actions

### Subdivision A—Actions relating to unauthorised decoders

#### 135AOA  Making or dealing with unauthorised decoder

(1) A channel provider, or anyone with an interest in the copyright in either an encoded broadcast or the content of an encoded broadcast, may bring an action against a person if:

    (a) the person does any of the acts described in subsection (2) with an unauthorised decoder; and

    (b) the person knows, or ought reasonably to know, that the unauthorised decoder will be used to enable someone to gain access to an encoded broadcast without the authorisation of the broadcaster.

(2) The acts with the unauthorised decoder are as follows:

    (a) making the unauthorised decoder;

    (b) selling the unauthorised decoder or letting it for hire;

    (c) by way of trade, or with the intention of obtaining a commercial advantage or profit, offering or exposing the unauthorised decoder for sale or hire;

    (d) exhibiting the unauthorised decoder in public by way of trade or with the intention of obtaining a commercial advantage or profit;

    (e) distributing the unauthorised decoder (including by exporting it from Australia) for the purpose of trade, or for a purpose that will prejudicially affect a channel provider or anyone with an interest in the copyright in either an encoded broadcast or the content of an encoded broadcast;

    (f) importing the unauthorised decoder into Australia for the purpose of:

        (i) selling the unauthorised decoder or letting it for hire; or

        (ii) by way of trade, or with the intention of obtaining a commercial advantage or profit, offering or exposing the unauthorised decoder for sale or hire; or

Replaced Authorised Version registered 10/02/2025 C2024C00854

(iii) exhibiting the unauthorised decoder in public by way of trade or with the intention of obtaining a commercial advantage or profit; or

(iv) distributing the unauthorised decoder for the purpose of trade, or for a purpose that will prejudicially affect a channel provider or anyone with an interest in the copyright in either an encoded broadcast or the content of an encoded broadcast;

(g) making the unauthorised decoder available online to an extent that will prejudicially affect a channel provider or anyone with an interest in the copyright in either an encoded broadcast or the content of an encoded broadcast.

(3) The action may be brought only within 6 years of the act.

(4) In an action under this section it must be presumed that the defendant knew, or ought reasonably to have known, that the unauthorised decoder would be used as described in paragraph (1)(b), unless the defendant proves otherwise.

## Subdivision B—Actions relating to decoders for subscription broadcasts

### 135AOB  Making decoder available online

(1) This section permits an action to be brought against a person if:

(a) a decoder was supplied (to the person or someone else) by, or with the authorisation of, the broadcaster (the *supplying broadcaster*) of a subscription broadcast; and

(b) the person makes the decoder available online to an extent that will prejudicially affect any of the following persons (the *affected parties*):

(i) anyone with an interest in the copyright in a subscription broadcast by the supplying broadcaster;

(ii) anyone with an interest in the copyright in the content of a subscription broadcast by the supplying broadcaster;

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VAA**  Unauthorised access to encoded broadcasts
**Division 2**  Actions

Section 135AOC

---

(iii) a channel provider who supplies the supplying
broadcaster with a channel for a subscription broadcast;
and

(c) the person knows, or ought reasonably to know, that the
decoder will be used to enable someone to gain access to a
subscription broadcast without the authorisation of the
broadcaster.

(2) The action may be brought by any of the affected parties but only
within 6 years of the person first making the decoder available
online as described in paragraph (1)(b).

(3) In an action under this section it must be presumed that the
defendant knew, or ought reasonably to have known, that the
decoder would be used as described in paragraph (1)(c), unless the
defendant proves otherwise.

## Subdivision C—Actions for unauthorised access to encoded broadcasts

### 135AOC  Causing unauthorised access

(1) This section permits an action to be brought against a person if:

(a) without the authorisation of the broadcaster of an encoded
broadcast, the person does an act causing the person or
anyone else to gain access in intelligible form to the
broadcast or sounds or images from the broadcast; and

(b) the access will prejudicially affect any of the following
persons (the **affected parties**):

(i) anyone with an interest in the copyright in an encoded
broadcast by the broadcaster;

(ii) anyone with an interest in the copyright in the content of
an encoded broadcast by the broadcaster;

(iii) a channel provider who supplies the broadcaster with a
channel for an encoded broadcast; and

(c) the person knows, or ought reasonably to know, that the
access is not authorised by the broadcaster.

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

Unauthorised access to encoded broadcasts **Part VAA**
Actions **Division 2**

Section 135AOD

Note:    Paragraph (a)—examples of causing a person to gain access to the
broadcast or sounds or images from the broadcast include:
(a)    using, or authorising the use of, a decoder so the person gains
access to the broadcast, sounds or images; and
(b)    distributing, or authorising the distribution of, the sounds or
images to the person after they are obtained from the broadcast
using a decoder.

(2)    The action may be brought by any of the affected parties but only
within 6 years of the act.

(3)    Subsection (1) does not apply to:

(a)    an act consisting merely of one or more of the following:

(i)    starting the playing of sounds or images in or from the
broadcast on a device (for example by switching the
device on);

(ii)    listening to sounds in or from the broadcast and/or
seeing images in or from the broadcast;

(iii)    distributing the sounds or images within a single
dwelling that is occupied by a single household and is
the subject of an arrangement involving a member of
the household and the broadcaster about authorisation of
private access to the broadcast; or

(b)    access to the sounds or images gained from:

(i)    a cinematograph film, or sound recording, made of the
encoded broadcast; or

(ii)    a copy of such a film or recording.

Note:    Paragraph (b)—the making of such a film, recording or copy may be
an infringement of copyright: see paragraphs 87(a) and (b) and
section 101.

### 135AOD  Unauthorised commercial use of subscription broadcast

(1)    This section permits an action to be brought against a person if:

(a)    without the authorisation of the broadcaster of a subscription
broadcast, the person uses the broadcast, or sounds or images
from the broadcast, by way of trade or with the intention of
obtaining a commercial advantage or profit; and

*Copyright Act 1968*                                            *311*

Replaced Authorised Version registered 10/02/2025 C2024C00854

(b)  the use prejudicially affects any of the following persons (the ***affected parties***):

   (i)  anyone with an interest in the copyright in the broadcast;

   (ii)  anyone with an interest in the copyright in any content of the broadcast;

   (iii)  the channel provider who supplied the broadcaster with the channel for the broadcast; and

(c)  the person knows, or ought reasonably to know, that the use is not authorised by the broadcaster.

(2)  The action may be brought by any of the affected parties but only within 6 years of the use.

## Subdivision D—Court orders

### 135AOE  Relief

(1)  The relief that a court may grant in an action under this Division includes an injunction (subject to the terms, if any, the court thinks fit) and either damages or an account of profits.

(2)  In assessing damages, the court may award such additional damages as it considers appropriate, having regard to:

(a)  the flagrancy with which the defendant did any of the relevant acts; and

(b)  the need to deter acts similar to the relevant acts; and

(c)  any benefit shown in an action under Subdivision A or B to have accrued to the defendant as a result of making or dealing with the decoder; and

(d)  any benefit shown in an action under Subdivision C to have accrued to the defendant or any trade or business carried on by, or in association with, the defendant; and

(e)  all other relevant matters.

Replaced Authorised Version registered 10/02/2025 C2024C00854

### 135AOF  Destruction of decoder

In an action under this Division, the court may order that the relevant decoder (if any) be destroyed or dealt with as specified in the order.

## Subdivision E—Jurisdiction and appeals

### 135AP  Exercise of jurisdiction

The jurisdiction of the Supreme Court of a State or Territory in an action under the Part is to be exercised by a single Judge of the Court.

### 135AQ  Appeals

(1) Subject to subsection (2), a decision of a court of a State or Territory (however constituted) under this Part is final and conclusive.

(2) An appeal lies from a decision of a court of a State or Territory under this Part:
   (a) to the Federal Court of Australia; or
   (b) by special leave of the High Court, to the High Court.

### 135AR  Jurisdiction of Federal Court of Australia

Jurisdiction is conferred on the Federal Court of Australia with respect to actions under this Part.

### 135AS  Jurisdiction of Federal Circuit and Family Court of Australia (Division 2)

Jurisdiction is conferred on the Federal Circuit and Family Court of Australia (Division 2) with respect to actions under this Part.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 3—Offences

## Subdivision A—Offences

### 135ASA  Making unauthorised decoder

(1) A person commits an offence if:

    (a)  the person makes an unauthorised decoder; and

    (b)  the unauthorised decoder will be used to enable a person to gain access to an encoded broadcast without the authorisation of the broadcaster.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

> Note:     A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

### 135ASB  Selling or hiring unauthorised decoder

(1) A person commits an offence if:

    (a)  the person sells or lets for hire an unauthorised decoder; and

    (b)  the unauthorised decoder will be used to enable a person to gain access to an encoded broadcast without the authorisation of the broadcaster.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

> Note:     A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

### 135ASC  Offering unauthorised decoder for sale or hire

(1) A person commits an offence if:

Replaced Authorised Version registered 10/02/2025 C2024C00854

(a) with the intention of obtaining a commercial advantage or profit, the person offers or exposes an unauthorised decoder for sale or hire; and

(b) the unauthorised decoder will be used to enable a person to gain access to an encoded broadcast without the authorisation of the broadcaster.

(2) A person commits an offence if:

(a) the person offers or exposes an unauthorised decoder for sale or hire; and

(b) the offer or exposure is by way of trade; and

(c) the unauthorised decoder will be used to enable a person to gain access to an encoded broadcast without the authorisation of the broadcaster.

(3) An offence against subsection (1) or (2) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

> Note:    A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

## 135ASD  Commercially exhibiting unauthorised decoder in public

(1) A person commits an offence if:

(a) the person exhibits an unauthorised decoder in public with the intention of obtaining a commercial advantage or profit; and

(b) the unauthorised decoder will be used to enable a person to gain access to an encoded broadcast without the authorisation of the broadcaster.

(2) A person commits an offence if:

(a) the person exhibits an unauthorised decoder in public; and

(b) the exhibition is by way of trade; and

(c) the unauthorised decoder will be used to enable a person to gain access to an encoded broadcast without the authorisation of the broadcaster.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Section 135ASE**

(3) An offence against subsection (1) or (2) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

> Note:      A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

### 135ASE  Importing unauthorised decoder commercially

(1) A person commits an offence if:

   (a) the person imports an unauthorised decoder into Australia with the intention of doing any of the following with the unauthorised decoder:

     (i) selling the unauthorised decoder;

     (ii) letting the unauthorised decoder for hire;

     (iii) offering or exposing the unauthorised decoder for sale or hire, by way of trade or to obtain a commercial advantage or profit;

     (iv) exhibiting the unauthorised decoder in public by way of trade or to obtain a commercial advantage or profit;

     (v) distributing the unauthorised decoder for trade;

     (vi) distributing the unauthorised decoder to obtain a commercial advantage or profit;

     (vii) distributing the unauthorised decoder in preparation for, or in the course of, engaging in an activity that will prejudicially affect a channel provider or anyone with an interest in the copyright in either an encoded broadcast or the content of an encoded broadcast; and

   (b) the unauthorised decoder will be used to enable a person to gain access to an encoded broadcast without the authorisation of the broadcaster.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

> Note:      A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

Replaced Authorised Version registered 10/02/2025 C2024C00854

### 135ASF  Distributing unauthorised decoder

(1) A person commits an offence if:

    (a) the person distributes (including by exporting from Australia) an unauthorised decoder with the intention of:

        (i) trading; or

        (ii) obtaining a commercial advantage or profit; or

        (iii) engaging in any other activity that will prejudicially affect a channel provider or anyone with an interest in the copyright in either an encoded broadcast or the content of an encoded broadcast; and

    (b) the unauthorised decoder will be used to enable a person to gain access to an encoded broadcast without the authorisation of the broadcaster.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

> Note:    A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

### 135ASG  Making unauthorised decoder available online

(1) A person commits an offence if:

    (a) the person makes an unauthorised decoder available online; and

    (b) the unauthorised decoder is made available online to an extent that will prejudicially affect a channel provider or anyone with an interest in the copyright in either an encoded broadcast or the content of an encoded broadcast; and

    (c) the unauthorised decoder will be used to enable a person to gain access to an encoded broadcast without the authorisation of the broadcaster.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

Compilation No. 64    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VAA**  Unauthorised access to encoded broadcasts
**Division 3**  Offences

---

Section 135ASH

Note:      A corporation may be fined up to 5 times the amount of the maximum
           fine (see subsection 4B(3) of the *Crimes Act 1914*).

### 135ASH  Making decoder available online for subscription broadcast

(1)  A person commits an offence if:

(a)  a decoder was supplied (to the person or anyone else) by, or
with the authorisation of, the broadcaster of a subscription
broadcast; and

(b)  the person makes the decoder available online; and

(c)  the decoder is made available online without the
authorisation of the broadcaster; and

(d)  the decoder will be used to enable a person to gain access to a
subscription broadcast without the authorisation of the
broadcaster; and

(e)  the decoder is made available online to an extent that will
prejudicially affect any of the following:

(i)  anyone with an interest in the copyright in a
subscription broadcast by the broadcaster;

(ii)  anyone with an interest in the copyright in the content of
a subscription broadcast by the broadcaster;

(iii)  a channel provider who supplies the broadcaster with a
channel for a subscription broadcast.

(2)  An offence against subsection (1) is punishable on conviction by a
fine of not more than 550 penalty units or imprisonment for not
more than 5 years, or both.

Note:      A corporation may be fined up to 5 times the amount of the maximum
           fine (see subsection 4B(3) of the *Crimes Act 1914*).

### 135ASI  Unauthorised access to subscription broadcast etc.

A person commits an offence if:

(a)  the person does an act; and

(b)  the act (either alone or in conjunction with other acts) results
in the person gaining access in intelligible form to a

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

subscription broadcast or sounds or images from a
subscription broadcast; and

(c) the access is not authorised by the broadcaster and the person
knows that; and

(d) the act does not consist merely of one or more of the
following:

   (i) starting the playing of sounds or images in or from the
   broadcast on a device (for example by switching the
   device on);

   (ii) listening to sounds in or from the broadcast and/or
   seeing images in or from the broadcast;

   (iii) distributing the sounds or images within a single
   dwelling that is occupied by a single household and is
   the subject of an arrangement involving a member of
   the household and the broadcaster about authorisation of
   private access to the broadcast; and

(e) the access to the sounds or images is not gained from:

   (i) a cinematograph film, or sound recording, made of the
   encoded broadcast; or

   (ii) a copy of such a film or recording.

   Note:    The making of such a film, recording or copy may be an
   infringement of copyright: see paragraphs 87(a) and (b) and
   section 101.

Penalty:  60 penalty units.

## 135ASJ  Causing unauthorised access to encoded broadcast etc.

(1) A person commits an offence if:

(a) the person does an act; and

(b) the act is done by way of trade; and

(c) the act results in the person or anyone else gaining access in
intelligible form to an encoded broadcast or sounds or images
from an encoded broadcast; and

(d) the access is not authorised by the broadcaster; and

(e) the access to the sounds or images is not gained from:

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VAA**  Unauthorised access to encoded broadcasts
**Division 3**  Offences

---

## Section 135ASJ

---

       (i)  a cinematograph film, or sound recording, made of the encoded broadcast; or

      (ii)  a copy of such a film or recording.

      Note:     Paragraph (e)—the making of such a film, recording or copy may be an infringement of copyright: see paragraphs 87(a) and (b) and section 101.

  (2)  A person commits an offence if:

    (a)  the person does an act with the intention of obtaining a commercial advantage or profit; and

    (b)  the act results in the person or anyone else gaining access in intelligible form to an encoded broadcast or sounds or images from an encoded broadcast; and

    (c)  the access is not authorised by the broadcaster; and

    (d)  the access to the sounds or images is not gained from:

       (i)  a cinematograph film, or sound recording, made of the encoded broadcast; or

      (ii)  a copy of such a film or recording.

      Note:     Paragraph (e)—the making of such a film, recording or copy may be an infringement of copyright: see paragraphs 87(a) and (b) and section 101.

  (3)  A person commits an offence if:

    (a)  the person does an act; and

    (b)  the act results in anyone else gaining access in intelligible form to an encoded broadcast or sounds or images from an encoded broadcast; and

    (c)  the access is not authorised by the broadcaster and the person knows that; and

    (d)  the act does not consist merely of one or more of the following:

       (i)  starting the playing of sounds or images in or from the broadcast on a device (for example by switching the device on);

      (ii)  distributing the sounds or images within a single dwelling that is occupied by a single household and is the subject of an arrangement involving a member of

Replaced Authorised Version registered 10/02/2025 C2024C00854

the household and the broadcaster about authorisation of private access to the broadcast; and

(e) the access to the sounds or images is not gained from:

(i) a cinematograph film, or sound recording, made of the encoded broadcast; or

(ii) a copy of such a film or recording.

Note:    Paragraph (e)—the making of such a film, recording or copy may be an infringement of copyright: see paragraphs 87(a) and (b) and section 101.

(4) An offence against subsection (1), (2) or (3) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

Note:    A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

## Subdivision B—Prosecutions

### 135ATA  Courts in which offences may be prosecuted

(1) Prosecutions for offences against this Division may be brought in the Federal Court of Australia or in any other court of competent jurisdiction.

(2) However, the Federal Court of Australia does not have jurisdiction to hear or determine prosecutions for indictable offences, despite section 15C of the *Acts Interpretation Act 1901*.

(3) The Federal Court of Australia has jurisdiction to hear and determine prosecutions of summary offences against this Division.

(4) Also, section 4J (except subsection 4J(2)) of the *Crimes Act 1914* applies in relation to the Federal Court of Australia and an indictable offence against this Division in the way in which that section would apply if that court were a court of summary jurisdiction.

Note:    Section 4J of the *Crimes Act 1914* lets a court of summary jurisdiction try indictable offences in certain circumstances and subject to limits on the penalties the court can impose.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 135AU

## Subdivision C—Further orders by court

### 135AU  Destruction etc. of unauthorised decoders

(1) The court trying a person for an offence against this Division may order that any article in the person's possession that appears to the court to be an unauthorised decoder be destroyed or otherwise dealt with as specified in the order.

(2) The court may make the order whether the person is convicted of the offence or not.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Case 1:25-cv-00910-JMF    Document 26-5    Filed 02/28/25    Page 356 of 692

# Part VC—Retransmission of free-to-air broadcasts

## Division 1—Preliminary

### 135ZZI  Definitions

In this Part:

*collecting society* means a body that is, for the time being, declared to be a collecting society under section 135ZZT.

*delayed retransmission*, in relation to a free-to-air broadcast, means a retransmission of the broadcast in an area that has, wholly or partly, different local time to the area of the original transmission and that is delayed until no later than the equivalent local time.

*notice holder* means the person who is, for the time being, appointed to be the notice holder under section 135ZZX.

*relevant collecting society*, in relation to a remuneration notice, means a collecting society for owners of copyright in the same kind of work or other subject-matter as that to which the remuneration notice relates.

*relevant copyright owner* means the owner of the copyright in a work, a sound recording or a cinematograph film, but does not include a new owner of the copyright in a sound recording of a live performance within the meaning of Subdivision B of Division 5 of Part IV.

*remuneration notice* means a notice referred to in section 135ZZL.

*retransmitter* means a person who makes a retransmission of a free-to-air broadcast.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 135ZZJ

### 135ZZJ  Operation of collecting society rules

This Part applies to a collecting society despite anything in the rules of the society, but nothing in this Part affects those rules so far as they can operate together with this Part.

### 135ZZJA  Application of Part

(1) This Part does not apply in relation to a retransmission of a free-to-air broadcast if the retransmission takes place over the internet.

(2) This Part does not apply in relation to a retransmission if:

    (a) the retransmission is a re-broadcast by a satellite BSA licensee; and

    (b) subsection 135ZZZI(1) or (2) applies to the re-broadcast.

Replaced Authorised Version registered 10/02/2025 C2024C00854

## Division 2—Retransmission of free-to-air broadcasts

### 135ZZK  Retransmission of free-to-air broadcasts

(1) The copyright in a work, sound recording or cinematograph film included in a free-to-air broadcast is not infringed by the retransmission of the broadcast if:

    (a) a remuneration notice given by, or on behalf of, the retransmitter to the relevant collecting society is in force; and

    (b) the free-to-air broadcast was made by a broadcaster specified in the remuneration notice; and

    (c) the retransmitter complies with section 135ZZN.

(2) The copyright in a work, sound recording or cinematograph film included in a free-to-air broadcast is not infringed by the making of a copy of the broadcast for the sole purpose of enabling a delayed retransmission of the broadcast to be made.

(3) Subsection (2) does not apply if the retransmission of the broadcast would infringe the copyright in the broadcast.

(4) If a copy of a broadcast made for the purpose referred to in subsection (2) is not destroyed within 7 days after it is made, subsection (2) does not apply, and is taken never to have applied, in relation to the making of the copy.

(5) In this section, a reference to the making of a copy of a free-to-air broadcast is a reference to making a cinematograph film or sound recording of the broadcast, or a copy of such a film or sound recording.

### 135ZZL  Remuneration notices

(1) A retransmitter may, by notice in writing given to the relevant collecting society by, or on behalf of, the retransmitter, undertake to pay equitable remuneration to the society for retransmissions of free-to-air broadcasts by specified broadcasters, being

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VC**  Retransmission of free-to-air broadcasts
**Division 2**  Retransmission of free-to-air broadcasts

Section 135ZZM

retransmissions made by, or on behalf of, the retransmitter while the notice is in force.

(2) A remuneration notice must specify that the amount of equitable remuneration is to be assessed on the basis of the records to be kept by the retransmitter under section 135ZZN.

(3) A remuneration notice comes into force on the day on which it is given to the collecting society, or on such earlier day as is specified in the notice, and remains in force until it is revoked.

## 135ZZM  Amount of equitable remuneration

(1) If a retransmitter gives a remuneration notice to a collecting society, the amount of equitable remuneration payable to the collecting society for each retransmission made by, or on behalf of, the retransmitter while the notice is in force is the amount determined by agreement between the retransmitter and the collecting society or, failing such agreement, by the Copyright Tribunal on application made by either of them.

(2) If a determination has been made by the Copyright Tribunal under subsection (1), either the retransmitter or the collecting society may, at any time after 12 months from the day on which the determination was made, apply to the Tribunal under that subsection for a new determination payable to the collecting society by the retransmitter for retransmissions made by, or on behalf of, the retransmitter.

(3) For the purposes of subsection (1), different amounts may be determined (whether by agreement or by the Copyright Tribunal) in relation to different classes of works, sound recordings or cinematograph films included in retransmissions.

## 135ZZN  Record system

(1) If a remuneration notice is given to a collecting society by, or on behalf of, a retransmitter, the retransmitter must establish and maintain a record system.

Replaced Authorised Version registered 10/02/2025 C2024C00854

(2) The record system must provide for a record to be kept of the title of each program included in each retransmission made by, or on behalf of, the retransmitter of each broadcast made by each broadcaster specified in the remuneration notice.

(3) Subject to subsection (2), the record system must be determined by agreement between the retransmitter and the collecting society or, failing such agreement, by the Copyright Tribunal on application made by either of them.

## 135ZZP  Inspection of records etc.

(1) If a remuneration notice is or has been in force, the collecting society to which it was given may, in writing, notify the relevant retransmitter that the society wishes, on a day specified in the notice, being an ordinary working day of the retransmitter specified in the notice, not earlier than 7 days after the day on which the notice is given, to do such of the following things as are specified in the notice:

   (a) assess the number of retransmissions carried out at the premises of the retransmitter;

   (b) inspect all the relevant records held at those premises that relate to the making of retransmissions in reliance on section 135ZZK;

   (c) inspect such other records held at those premises as are relevant to the assessment of the amount of equitable remuneration payable by the retransmitter to the society.

(2) Subject to section 135ZZQ, if a collecting society gives a notice, a person authorised in writing by the society may, during the ordinary working hours of the retransmitter on the day specified in the notice (but not before 10 am or after 3 pm), carry out the assessment, or inspect the records, to which the notice relates and, for that purpose, may enter the premises of the retransmitter.

(3) A retransmitter must take all reasonable precautions, and exercise reasonable diligence, to ensure that a person referred to in subsection (2) who attends the premises of the retransmitter for the purpose of exercising the powers conferred by that subsection is

Compilation No. 64                          Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 135ZZQ

provided with all reasonable and necessary facilities and assistance for the effective exercise of those powers.

(4) A retransmitter who contravenes subsection (3) commits an offence punishable, on conviction, by a fine not exceeding 10 penalty units.

> Note:    A corporation may be fined up to 5 times the amount of the maximum fine. See subsection 4B(3) of the *Crimes Act 1914*.

## 135ZZQ  Identity cards

(1) The chief executive officer (however described) of a collecting society must issue an identity card to each person authorised by the society for the purposes of subsection 135ZZP(2). The identity card must satisfy the requirements prescribed by the regulations and must contain a recent photograph of the authorised person.

(2) If an authorised person who attends or enters premises for the purpose of exercising powers conferred by subsection 135ZZP(2) fails to produce his or her identity card when asked to do so by a person apparently in charge of the premises, the authorised person must not enter or remain on the premises or exercise any other powers under subsection 135ZZP(2) at the premises.

(3) A person commits an offence punishable on conviction by a fine not exceeding 1 penalty unit if:
    (a) the person has been issued with an identity card; and
    (b) the person stops being an authorised person; and
    (c) the person does not, immediately after he or she stops being an authorised person, return the identity card to the relevant collecting society.

(4) An authorised person must carry his or her identity card at all times when exercising powers under subsection 135ZZP(2).

## 135ZZR  Revocation of remuneration notice

A remuneration notice may be revoked at any time by the relevant retransmitter by notice in writing given to the collecting society to

Replaced Authorised Version registered 10/02/2025 C2024C00854

which the remuneration notice was given, and the revocation takes effect at the end of 3 months after the date of the notice, or on such later day as is specified in it.

## 135ZZS  Request for payment of equitable remuneration

(1) Subject to this section, where a remuneration notice is or has been in force, the collecting society to which the notice was given may, by notice in writing given to the relevant retransmitter, request the retransmitter to pay to the society, within a reasonable time after the date of the notice, the amount of equitable remuneration specified in the notice, being an amount payable under section 135ZZM for retransmissions made by, or on behalf of, the retransmitter while the remuneration notice is or was in force.

(2) If an amount specified in a request under subsection (1) is not paid in accordance with the request, it may be recovered from the retransmitter by the collecting society in the Federal Court of Australia or any other court of competent jurisdiction as a debt due to the society.

Replaced Authorised Version registered 10/02/2025 C2024C00854

## Division 3—Collecting societies

### 135ZZT  Collecting societies

(1)  A body may apply to the Minister to be declared as a collecting society for all relevant copyright owners or for specified classes of relevant copyright owners.

(1A)  After receiving the application, the Minister must do one of the following:

  (a)  declare the body to be a collecting society, by notice in the *Gazette*;

  (b)  refuse to declare the body to be a collecting society;

  (c)  refer the application to the Copyright Tribunal in the way prescribed by the regulations and notify the body of the referral.

(1B)  A declaration made under paragraph (1A)(a) is not a legislative instrument.

(1C)  If the Minister refers the application to the Copyright Tribunal, the Tribunal may declare the body to be a collecting society.

  Note:    Section 153P sets out the procedure of the Copyright Tribunal in dealing with the reference.

(1D)  A declaration of the body as a collecting society must declare the body to be:

  (a)  the collecting society for all relevant copyright owners; or

  (b)  the collecting society for classes of relevant copyright owners specified in the declaration.

(2)  If a body is declared to be the collecting society for a specified class of copyright owners and another body is subsequently declared to be the collecting society for that class of copyright owners:

Replaced Authorised Version registered 10/02/2025 C2024C00854

(a) the first-mentioned collecting society ceases to be the collecting society for that class of copyright owners on the day on which the subsequent declaration is made; and

(b) any remuneration notice given to that collecting society ceases to be in force to the extent to which it relates to relevant copyright owners included in that class of copyright owners.

(3) The Minister and the Copyright Tribunal must not declare a body to be a collecting society unless:

(a) it is a company limited by guarantee and incorporated under a law in force in a State or Territory relating to companies; and

(b) all persons who are included in a class of relevant copyright owners to be specified in the declaration, or their agents, are entitled to become its members; and

(c) its rules prohibit the payment of dividends to its members; and

(d) its rules contain such other provisions as are prescribed, being provisions necessary to ensure that the interests of members of the collecting society who are relevant copyright owners, or their agents, are protected adequately, including, in particular, provisions about:

(i) the collection of amounts of equitable remuneration payable under section 135ZZM; and

(ii) the payment of the administrative costs of the collecting society out of amounts collected by it; and

(iii) the distribution of amounts collected by the collecting society; and

(iv) the holding on trust by the collecting society of amounts for relevant copyright owners who are not its members; and

(v) access to records of the collecting society by its members.

(4) If the Minister or the Copyright Tribunal has declared a body to be the collecting society for a specified class of copyright owners, the

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 135ZZU

Minister and the Copyright Tribunal may refuse to declare another body to be the collecting society for that class of copyright owners unless satisfied that to do so would be in the interests of those copyright owners, having regard to the number of members of the first-mentioned society, the scope of its activities and such other considerations as are relevant.

## 135ZZU  Revocation of declaration

(1) This section applies if the Minister is satisfied that a body declared as a collecting society:

    (a) is not functioning adequately as a collecting society; or

    (b) is not acting in accordance with its rules or in the best interests of those of its members who are relevant copyright owners, or their agents; or

    (c) has altered its rules so that they no longer comply with paragraphs 135ZZT(3)(c) and (d); or

    (d) has refused or failed, without reasonable excuse, to comply with section 135ZZV or 135ZZW.

(2) The Minister may:

    (a) by notice in the *Gazette*, revoke the declaration; or

    (b) refer the question whether the declaration should be revoked to the Copyright Tribunal in the way prescribed by the regulations.

(3) If the Minister refers the question to the Copyright Tribunal, the Tribunal may revoke the declaration if it is satisfied that any of paragraphs (1)(a), (b), (c) and (d) applies to the body.

Note:    Section 153Q sets out the procedure of the Copyright Tribunal in dealing with the reference.

## 135ZZV  Annual report and accounts

(1) A collecting society must, as soon as practicable after the end of each financial year, prepare a report of its operations during that financial year and send a copy of the report to the Minister.

Replaced Authorised Version registered 10/02/2025 C2024C00854

(2)  The Minister must cause a copy of the report sent to the Minister under subsection (1) to be laid before each House of the Parliament within 15 sitting days of that House after the receipt of the report by the Minister.

(3)  A collecting society must keep accounting records correctly recording and explaining the transactions of the society (including any transactions as trustee) and the financial position of the society.

(4)  The accounting records must be kept in such a manner as will enable true and fair accounts of the society to be prepared from time to time and those accounts to be conveniently and properly audited.

(5)  A collecting society must, as soon as practicable after the end of each financial year, cause its accounts to be audited by an auditor who is not a member of the society, and must send to the Minister a copy of its accounts as so audited.

(6)  A collecting society must give its members reasonable access to copies of all reports and audited accounts prepared by it under this section.

(7)  This section does not affect any obligations of a collecting society relating to the preparation and lodging of annual returns or accounts under the law under which it is incorporated.

## 135ZZW  Amendment of rules

A collecting society must, within 21 days after it alters its rules, send a copy of the rules as so altered to the Minister, together with a statement setting out the effect of the alteration and the reasons why it was made.

## 135ZZWA  Applying to Tribunal for review of distribution arrangement

(1)  A collecting society or a member of a collecting society may apply to the Copyright Tribunal for review of the arrangement adopted,

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 135ZZWA

or proposed to be adopted, by the collecting society for distributing amounts it collects in a period.

(2) If the Tribunal makes an order under section 153R varying the arrangement or substituting for it another arrangement, the arrangement reflecting the Tribunal's order has effect as if it had been adopted in accordance with the collecting society's rules, but does not affect a distribution started before the order was made.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 4—Interim retransmissions

## 135ZZX  Appointment of notice holder

The Minister may, by notice in the *Gazette*, appoint a person to be the notice holder for the purposes of this Division.

## 135ZZY  Retransmitting before declaration of collecting society

The copyright in any work, sound recording or cinematograph film included in a retransmission of a free-to-air broadcast is not infringed by the making of the retransmission if:

    (a) at the time the retransmission is made, a collecting society has not been declared; and

    (b) a notice given by the retransmitter by whom, or on whose behalf, the retransmission was made to the notice holder under subsection 135ZZZ(1) is in force; and

    (c) the retransmitter complies with section 135ZZN.

## 135ZZZ  Notices by retransmitters

(1) A retransmitter may at any time before the declaration of the first collecting society, by notice in writing given to the notice holder by, or on behalf of, the retransmitter, undertake to pay equitable remuneration to a collecting society, when it is declared, for retransmissions made by, or on behalf of, the retransmitter while the notice is in force.

(2) A notice must specify that the amount of equitable remuneration is to be assessed on the basis of the records to be kept by the retransmitter under section 135ZZN.

(3) A notice comes into force on the day on which it is given to the notice holder, or on such later day as is specified in the notice, and remains in force until it is revoked.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VC**  Retransmission of free-to-air broadcasts
**Division 4**  Interim retransmissions

---

Section 135ZZZA

---

(4) A notice may be revoked at any time by the retransmitter by notice in writing given to the notice holder, and the revocation takes effect on the date of the notice of revocation or on such later date as is specified in it.

## 135ZZZA  Record keeping requirements

If a retransmitter gives a notice to the notice holder under section 135ZZZ, sections 135ZZM and 135ZZN apply as if:

(a) references to a collecting society were references to the notice holder; and

(b) references to a remuneration notice were references to a notice under section 135ZZZ.

## 135ZZZB  Effect of declaration of collecting society

(1) If:

(a) as a result of the declaration of one or more collecting societies, there is a society for all relevant copyright owners; and

(b) a notice under section 135ZZZ was in force immediately before the day on which the declaration came into force;

then, on and after that day, the notice ceases to have effect as such a notice, but is taken, for the purposes of this Part, to be a remuneration notice that:

(c) was given by the relevant retransmitter to the collecting society, or to each of the collecting societies, as the case may be; and

(d) came into force on the same day as the notice came into force.

(2) If:

(a) one or more collecting societies are declared for one or more, but not for all, classes of relevant copyright owners; and

(b) a notice was in force immediately before the day on which the declaration came into force;

then, on and after that day:

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

(c) the notice ceases to have effect as such a notice in relation to the relevant copyright owners in the class or classes of copyright owners for whom a collecting society is declared, but is taken, for the purposes of this Part, to be a remuneration notice that:

   (i) was given by the relevant retransmitter to the collecting society or to each of the collecting societies, as the case may be; and

   (ii) came into force on the same day as the notice came into force; and

(d) the notice continues to have effect as such a notice in relation to all other relevant copyright owners.

(3) When a notice is, under this section, taken to be a remuneration notice, the relevant retransmitter must cause copies of all records made under section 135ZZN on or after the day on which the notice is taken to have come into force to be sent to the relevant collecting society within 21 days after the declaration of the collecting society.

Replaced Authorised Version registered 10/02/2025 C2024C00854

## Division 5—Miscellaneous

### 135ZZZC  Relevant copyright owner may authorise retransmitting

Nothing in this Part affects the right of the owner of the copyright in a work, sound recording or cinematograph film included in a free-to-air broadcast to grant a licence authorising a retransmitter to make, or cause to be made, a retransmission of the free-to-air broadcast without infringing that copyright.

### 135ZZZD  Copyright not to vest under this Part

Despite any other provision of this Act, the retransmission of a free-to-air broadcast by, or on behalf of, a retransmitter that is not an infringement of copyright under this Part, does not vest copyright in any work or other subject-matter in any person.

### 135ZZZE  Licence to retransmit does not authorise copyright infringements

The owner of the copyright in a free-to-air broadcast is not taken, for the purpose of this Act, to have authorised the infringement of copyright in any work, sound recording or cinematograph film included in the broadcast merely because the owner licences the retransmission of the broadcast.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Part VD—Re-broadcasts by satellite BSA licensees

## Division 1—Preliminary

### 135ZZZF  Definitions

In this Part:

***collecting society*** means a body that is, for the time being, declared to be a collecting society under section 135ZZZO.

***commercial television broadcasting licence*** has the same meaning as in the *Broadcasting Services Act 1992*.

***eligible program*** has the meaning given by section 135ZZZG.

***engage in conduct*** means:

  (a)  do an act; or
  (b)  omit to perform an act.

***notice holder*** means the person who is, for the time being, appointed to be the notice holder under section 135ZZZT.

***original broadcaster*** has the meaning given by section 135ZZZG.

***relevant collecting society***, in relation to a remuneration notice, means a collecting society for owners of copyright in the same kind of work or other subject-matter as that to which the remuneration notice relates.

***relevant copyright owner*** means the owner of the copyright in a work, a sound recording or a cinematograph film, but does not include a new owner of the copyright in a sound recording of a live performance within the meaning of Subdivision B of Division 5 of Part IV.

***remuneration notice*** means a notice referred to in section 135ZZZJ.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VD**  Re-broadcasts by satellite BSA licensees
**Division 1**  Preliminary

Section 135ZZZG

## 135ZZZG  Eligible program and original broadcaster

(2) For the purposes of this Part, if the following conditions are satisfied in relation to a program:

    (a) the program is broadcast by the licensee of a commercial television broadcasting licence for a regional licence area (within the meaning of section 43AA of the *Broadcasting Services Act 1992*);

    (b) the licensee is required to provide the program to a satellite BSA licensee under section 43AA of that Act;

then:

    (c) the program is an ***eligible program***; and

    (d) the licensee mentioned in paragraph (a) is the ***original broadcaster*** of the eligible program.

(3) For the purposes of this Part, if the following conditions are satisfied in relation to a program:

    (a) the program is broadcast by the licensee of a commercial television broadcasting licence;

    (b) the licensee is required to provide the program to a satellite BSA licensee under section 43AB or 43AC of the *Broadcasting Services Act 1992*;

then:

    (c) the program is an ***eligible program***; and

    (d) the licensee mentioned in paragraph (a) is the ***original broadcaster*** of the eligible program.

## 135ZZZH  Operation of collecting society rules

This Part applies to a collecting society despite anything in the rules of the society, but nothing in this Part affects those rules so far as they can operate together with this Part.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 2—Re-broadcasts by satellite BSA licensees

### 135ZZZI  Re-broadcasts by satellite BSA licensees

*Copyright in a work, sound recording or cinematograph film included in an eligible program*

(1) The copyright in a work, sound recording or cinematograph film included in a broadcast of an eligible program is not infringed by the re-broadcast of the eligible program if:

  (a) the eligible program is re-broadcast by a satellite BSA licensee; and

  (b) the eligible program is re-broadcast on a service authorised by the satellite BSA licensee's satellite BSA licence; and

  (c) the re-broadcast of the eligible program complies with the conditions of the satellite BSA licensee's satellite BSA licence that are set out in clause 7A of Schedule 2 to the *Broadcasting Services Act 1992*; and

  (d) a remuneration notice given by the satellite BSA licensee to the relevant collecting society is in force; and

  (e) the original broadcaster of the eligible program was specified in the remuneration notice; and

  (f) the satellite BSA licensee complies with section 135ZZZL.

*Copyright in a broadcast of an eligible program*

(2) The copyright in a broadcast of an eligible program is not infringed by the re-broadcast of the eligible program if:

  (a) the eligible program is re-broadcast by a satellite BSA licensee; and

  (b) the eligible program is re-broadcast on a service authorised by the satellite BSA licensee's satellite BSA licence; and

  (c) the re-broadcast of the eligible program complies with the conditions of the satellite BSA licensee's satellite BSA licence that are set out in clause 7A of Schedule 2 to the *Broadcasting Services Act 1992*; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VD**  Re-broadcasts by satellite BSA licensees
**Division 2**  Re-broadcasts by satellite BSA licensees

---

**Section 135ZZZI**

---

(d)  any of the following conditions is satisfied:

(i)  there is an agreement in force between the satellite BSA licensee and the owner of the copyright in the broadcast of the eligible program as to the amount payable by the satellite BSA licensee to the owner of the copyright for the re-broadcast of eligible programs during a particular period;

(ii)  if there is no agreement—there is in force a determination of the Copyright Tribunal under section 153RA of the amount payable by the satellite BSA licensee to the owner of the copyright in the broadcast of the eligible program for the re-broadcast of eligible programs during a particular period;

(iii)  if there is no agreement or determination—the satellite BSA licensee has given the owner of the copyright in the broadcast of the eligible program a written undertaking to pay to the owner of the copyright such amount as is determined by the Copyright Tribunal under section 153RA for the re-broadcast of eligible programs during a particular period; and

(e)  the eligible program is re-broadcast by the satellite BSA licensee during the period mentioned in whichever of subparagraphs (d)(i), (ii) or (iii) applies.

*Making a copy for the purpose of a re-broadcast*

(3)  The copyright in a work, sound recording or cinematograph film included in a broadcast of an eligible program is not infringed by the making of a copy of the eligible program if:

(a)  the sole purpose of making the copy is to enable a re-broadcast of the eligible program at a later time; and

(b)  subsection (1) would apply to the re-broadcast of the eligible program at the later time.

(4)  The copyright in a broadcast of an eligible program is not infringed by the making of a copy of the eligible program if:

(a)  the sole purpose of making the copy is to enable a re-broadcast of the eligible program at a later time; and

---

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

(b) subsection (2) would apply to the re-broadcast of the eligible program at the later time.

(5) If:

(a) a copy of an eligible program is made for a purpose referred to in subsection (3) or (4); and

(b) under a law of the Commonwealth, the satellite BSA licensee is required to retain the copy for a period longer than 7 days after the copy is made; and

(c) the copy is not destroyed as soon as practicable after the end of that period;

subsection (3) or (4), as the case requires, does not apply, and is taken never to have applied, in relation to the making of the copy.

(5A) If:

(a) a copy of an eligible program is made for a purpose referred to in subsection (3) or (4); and

(b) subsection (5) does not apply; and

(c) the copy is not destroyed within 7 days after it is made;

subsection (3) or (4), as the case requires, does not apply, and is taken never to have applied, in relation to the making of the copy.

(6) In this section, a reference to the ***making of a copy*** of an eligible program is a reference to making a cinematograph film or sound recording of the broadcast of the eligible program, or a copy of such a film or sound recording.

## 135ZZZJ  Remuneration notices

(1) A satellite BSA licensee may, by written notice given to the relevant collecting society, undertake to pay equitable remuneration to the society for re-broadcasts of eligible programs broadcast by specified original broadcasters, where the eligible programs are re-broadcast by the satellite BSA licensee while the notice is in force.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VD**  Re-broadcasts by satellite BSA licensees
**Division 2**  Re-broadcasts by satellite BSA licensees

Section 135ZZZK

(2) A remuneration notice must specify that the amount of equitable remuneration is to be assessed on the basis of the records to be kept by the satellite BSA licensee under section 135ZZZL.

(3) A remuneration notice comes into force on:
   (a) the day on which it is given to the collecting society; or
   (b) such earlier day as is specified in the notice;
and remains in force until it is revoked.

## 135ZZZK  Amount of equitable remuneration

(1) If a satellite BSA licensee gives a remuneration notice to a collecting society, the amount of equitable remuneration payable to the collecting society for re-broadcasts of eligible programs by the satellite BSA licensee while the notice is in force is the amount:
   (a) determined by agreement between the satellite BSA licensee and the collecting society; or
   (b) failing such agreement—determined by the Copyright Tribunal on application made by either of them.

(2) If a determination has been made by the Copyright Tribunal under subsection (1), either:
   (a) the satellite BSA licensee; or
   (b) the collecting society;
may, at any time after 12 months from the day on which the determination was made, apply to the Tribunal under that subsection for a new determination of amounts payable to the collecting society by the satellite BSA licensee for re-broadcasts of eligible programs by the satellite BSA licensee.

(3) For the purposes of subsection (1), different amounts may be determined (whether by agreement or by the Copyright Tribunal) in relation to different classes of:
   (a) works; or
   (b) sound recordings; or
   (c) cinematograph films;
included in re-broadcasts.

Replaced Authorised Version registered 10/02/2025 C2024C00854

## 135ZZZL  Record system

(1) If a remuneration notice is given to a collecting society by a satellite BSA licensee, the satellite BSA licensee must establish and maintain a record system.

(2) The record system must provide:

    (a) for a record to be kept of the title of each eligible program that is:

        (i) broadcast by an original broadcaster specified in the remuneration notice; and

        (ii) re-broadcast by the satellite BSA licensee; and

    (b) for the collecting society to have access to such a record.

(3) The record system must be:

    (a) determined by agreement between the satellite BSA licensee and the collecting society; or

    (b) failing such agreement—determined by the Copyright Tribunal on application made by either of them.

(4) Subsection (3) has effect subject to subsection (2).

## 135ZZZM  Revocation of remuneration notice

(1) A remuneration notice may be revoked at any time by the relevant satellite BSA licensee by written notice given to the collecting society to which the remuneration notice was given.

(2) The revocation takes effect:

    (a) at the end of 3 months after the date of the notice; or

    (b) on such later day as is specified in the notice.

## 135ZZZN  Request for payment of equitable remuneration

(1) If a remuneration notice is or has been in force, the collecting society to which the notice was given may, by written notice given to the relevant satellite BSA licensee, request the satellite BSA licensee to pay to the society, within a reasonable time after the

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VD**  Re-broadcasts by satellite BSA licensees
**Division 2**  Re-broadcasts by satellite BSA licensees

Section 135ZZZN

date of the notice, the amount of equitable remuneration specified in the notice.

(2) The amount specified in the notice must be an amount payable under section 135ZZZK for re-broadcasts made by the satellite BSA licensee while the remuneration notice is or was in force.

(3) Subsection (1) has effect subject to subsection (4).

(4) If an amount specified in a request under subsection (1) is not paid in accordance with the request, it may be recovered from the satellite BSA licensee by the collecting society in:

   (a)  the Federal Court of Australia; or

   (b)  any other court of competent jurisdiction;

as a debt due to the society.

Replaced Authorised Version registered 10/02/2025 C2024C00854

## Division 3—Collecting societies

### 135ZZZO  Collecting societies

(1) A body may apply to the Minister to be declared as a collecting society for:

    (a)  all relevant copyright owners; or

    (b)  specified classes of relevant copyright owners.

(2) After receiving the application, the Minister must do one of the following:

    (a)  by notice published in the *Gazette*, declare the body to be a collecting society;

    (b)  refuse to declare the body to be a collecting society;

    (c)  both:

        (i)  refer the application to the Copyright Tribunal in the way prescribed by the regulations; and

        (ii)  notify the body of the referral.

(3) A declaration made under paragraph (2)(a) is not a legislative instrument.

(4) If the Minister refers the application to the Copyright Tribunal, the Tribunal may declare the body to be a collecting society.

    Note:       Section 153U sets out the procedure of the Copyright Tribunal in dealing with the reference.

(5) A declaration of the body as a collecting society must declare the body to be:

    (a)  the collecting society for all relevant copyright owners; or

    (b)  the collecting society for classes of relevant copyright owners specified in the declaration.

(6) If:

    (a)  a body is declared to be the collecting society for a specified class of copyright owners; and

Compilation No. 64      Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VD**  Re-broadcasts by satellite BSA licensees
**Division 3**  Collecting societies

---

### Section 135ZZZO

---

    (b)  another body is subsequently declared to be the collecting society for that class of copyright owners:

then:

    (c)  the first-mentioned collecting society ceases to be the collecting society for that class of copyright owners on the day on which the subsequent declaration is made; and

    (d)  any remuneration notice given to that collecting society ceases to be in force to the extent to which it relates to relevant copyright owners included in that class of copyright owners.

  (7)  The Minister and the Copyright Tribunal must not declare a body to be a collecting society unless:

    (a)  it is:

      (i)  registered as a company under Part 2A.2 of the *Corporations Act 2001*; and

      (ii)  a company limited by guarantee; and

    (b)  all persons who are included in a class of relevant copyright owners to be specified in the declaration, or their agents, are entitled to become its members; and

    (c)  its rules prohibit the payment of dividends to its members; and

    (d)  its rules contain such other provisions as are prescribed, where the provisions are necessary to ensure that the interests of members of the collecting society who are relevant copyright owners, or their agents, are protected adequately, including, in particular, provisions about:

      (i)  the collection of amounts of equitable remuneration payable under section 135ZZZK; and

      (ii)  the payment of the administrative costs of the collecting society out of amounts collected by it; and

      (iii)  the distribution of amounts collected by the collecting society; and

      (iv)  the holding on trust by the collecting society of amounts for relevant copyright owners who are not its members; and

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

(v) access to records of the collecting society by its members.

(8) If the Minister or the Copyright Tribunal has declared a body to be the collecting society for a specified class of copyright owners, the Minister and the Copyright Tribunal may refuse to declare another body to be the collecting society for that class of copyright owners unless satisfied that to do so would be in the interests of those copyright owners, having regard to:

   (a) the number of members of the first-mentioned society; and

   (b) the scope of its activities; and

   (c) such other considerations as are relevant.

## 135ZZZP  Revocation of declaration

(1) This section applies if the Minister is satisfied that a body declared as a collecting society:

   (a) is not functioning adequately as a collecting society; or

   (b) is not acting in accordance with its rules or in the best interests of those of its members who are relevant copyright owners, or their agents; or

   (c) has altered its rules so that they no longer comply with paragraphs 135ZZZO(7)(c) and (d); or

   (d) has refused or failed, without reasonable excuse, to comply with section 135ZZZQ or 135ZZZR.

(2) The Minister may:

   (a) by notice published in the *Gazette*, revoke the declaration; or

   (b) refer the question whether the declaration should be revoked to the Copyright Tribunal in the way prescribed by the regulations.

(3) If the Minister refers the question to the Copyright Tribunal, the Tribunal may revoke the declaration if it is satisfied that any of paragraphs (1)(a), (b), (c) and (d) applies to the body.

   Note:    Section 153V sets out the procedure of the Copyright Tribunal in dealing with the reference.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VD** Re-broadcasts by satellite BSA licensees
**Division 3** Collecting societies

Section 135ZZZQ

## 135ZZZQ  Annual report and accounts

(1) A collecting society must, as soon as practicable after the end of each financial year, prepare a report of its operations during that financial year and send a copy of the report to the Minister.

(2) The Minister must cause a copy of the report sent to the Minister under subsection (1) to be tabled in each House of the Parliament within 15 sitting days of that House after the receipt of the report by the Minister.

(3) A collecting society must keep accounting records correctly recording and explaining:
  (a) the transactions of the society (including any transactions as trustee); and
  (b) the financial position of the society.

(4) The accounting records must be kept in such a manner as will enable:
  (a) true and fair accounts of the society to be prepared from time to time; and
  (b) those accounts to be conveniently and properly audited.

(5) A collecting society must, as soon as practicable after the end of each financial year:
  (a) cause its accounts to be audited by an auditor who is not a member of the society; and
  (b) send to the Minister a copy of its accounts as so audited.

(6) A collecting society must give its members reasonable access to copies of all reports and audited accounts prepared by it under this section.

(7) This section does not affect any obligations of a collecting society relating to the preparation and lodging of annual returns or accounts under the *Corporations Act 2001*.

(8) For the purposes of this section, the period:
  (a) beginning at the commencement of this section; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

(b) ending at the end of 30 June 2010;

is taken to be a financial year.

## 135ZZZR  Amendment of rules

A collecting society must, within 21 days after it alters its rules, send a copy of the rules as so altered to the Minister, together with a statement setting out:

(a) the effect of the alteration; and

(b) the reasons why it was made.

## 135ZZZS  Applying to Tribunal for review of distribution arrangement

(1) A collecting society or a member of a collecting society may apply to the Copyright Tribunal for review of the arrangement adopted, or proposed to be adopted, by the collecting society for distributing amounts it collects in a period.

(2) If the Tribunal makes an order under section 153W varying the arrangement or substituting for it another arrangement, the arrangement reflecting the Tribunal's order has effect as if it had been adopted in accordance with the collecting society's rules, but does not affect a distribution started before the order was made.

Replaced Authorised Version registered 10/02/2025 C2024C00854

## Division 4—Interim re-broadcasts

### 135ZZZT  Appointment of notice holder

The Minister may, by notice published in the *Gazette*, appoint a person to be the notice holder for the purposes of this Division.

### 135ZZZU  Re-broadcast before declaration of collecting society

The copyright in a work, sound recording or cinematograph film included in a broadcast of an eligible program is not infringed by the re-broadcast of the eligible program if:

　　(a) the eligible program is re-broadcast by a satellite BSA licensee; and

　　(b) the eligible program is re-broadcast on a service authorised by the satellite BSA licensee's satellite BSA licence; and

　　(c) the re-broadcast of the eligible program complies with the conditions of the satellite BSA licensee's satellite BSA licence that are set out in clause 7A of Schedule 2 to the *Broadcasting Services Act 1992*; and

　　(d) at the time the re-broadcast is made, a collecting society has not been declared; and

　　(e) a notice given by the satellite BSA licensee to the notice holder under subsection 135ZZZV(1) is in force; and

　　(f) the satellite BSA licensee complies with section 135ZZZL.

### 135ZZZV  Notices by satellite BSA licensees

　　(1) A satellite BSA licensee may, at any time before the declaration of the first collecting society, by written notice given to the notice holder by the satellite BSA licensee, undertake to pay equitable remuneration to a collecting society, when it is declared, for re-broadcasts of eligible programs by the satellite BSA licensee while the notice is in force.

Replaced Authorised Version registered 10/02/2025 C2024C00854

(2) A notice must specify that the amount of equitable remuneration is to be assessed on the basis of the records to be kept by the satellite BSA licensee under section 135ZZZL.

(3) A notice comes into force on:
    (a) the day on which it is given to the notice holder; or
    (b) such later day as is specified in the notice;
and remains in force until it is revoked.

(4) A notice may be revoked at any time by the satellite BSA licensee by written notice given to the notice holder.

(5) The revocation takes effect:
    (a) on the date of the notice of revocation; or
    (b) on such later date as is specified in the notice of revocation.

## 135ZZZW  Record keeping requirements

If a satellite BSA licensee gives a notice to the notice holder under section 135ZZZV, sections 135ZZZK and 135ZZZL apply as if:
    (a) references to a collecting society were references to the notice holder; and
    (b) references to a remuneration notice were references to a notice under section 135ZZZV.

## 135ZZZX  Effect of declaration of collecting society

(1) If:
    (a) as a result of the declaration of one or more collecting societies, there is a society for all relevant copyright owners; and
    (b) a notice under section 135ZZZV was in force immediately before the day on which the declaration came into force;
then, on and after that day, the notice ceases to have effect as such a notice, but is taken, for the purposes of this Part, to be a remuneration notice that:

Compilation No. 64    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VD**  Re-broadcasts by satellite BSA licensees
**Division 4**  Interim re-broadcasts

---

### Section 135ZZZX

---

        (c)  was given by the relevant satellite BSA licensee to the collecting society, or to each of the collecting societies, as the case may be; and

        (d)  came into force on the same day as the notice came into force.

  (2)  If:

        (a)  one or more collecting societies are declared for one or more, but not for all, classes of relevant copyright owners; and

        (b)  a notice was in force immediately before the day on which the declaration came into force;

then, on and after that day:

        (c)  the notice ceases to have effect as such a notice in relation to the relevant copyright owners in the class or classes of copyright owners for whom a collecting society is declared, but is taken, for the purposes of this Part, to be a remuneration notice that:

            (i)  was given by the relevant satellite BSA licensee to the collecting society or to each of the collecting societies, as the case may be; and

           (ii)  came into force on the same day as the notice came into force; and

        (d)  the notice continues to have effect as such a notice in relation to all other relevant copyright owners.

  (3)  When a notice is, under this section, taken to be a remuneration notice, the relevant satellite BSA licensee must cause copies of all records made under section 135ZZZL on or after the day on which the notice is taken to have come into force to be sent to the relevant collecting society within 21 days after the declaration of the collecting society.

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

## Division 5—Miscellaneous

### 135ZZZY  Relevant copyright owner may authorise re-broadcast

(1) Nothing in this Part affects the right of the owner of the copyright in a broadcast of an eligible program to grant a licence authorising a satellite BSA licensee to re-broadcast the eligible program without infringing that copyright.

(2) Nothing in this Part affects the right of the owner of the copyright in a work, sound recording or cinematograph film included in a broadcast of an eligible program to grant a licence authorising a satellite BSA licensee to re-broadcast the eligible program without infringing that copyright.

### 135ZZZZ  Copyright not to vest under this Part

Despite any other provision of this Act, the re-broadcast of an eligible program that is not an infringement of copyright under this Part does not vest copyright in any work or other subject-matter in any person.

### 135ZZZZA  Licence to re-broadcast does not authorise copyright infringements

The owner of the copyright in a broadcast of an eligible program is not taken, for the purposes of this Act, to have authorised the infringement of copyright in any work, sound recording or cinematograph film included in the broadcast of the eligible program merely because the owner licenses the re-broadcast of the eligible program.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Part VI—Copyright Tribunal of Australia

## Division 1—Preliminary

### 136  Interpretation

(1)  In this Part, unless the contrary intention appears:

**Deputy President** means a Deputy President of the Tribunal.

**Judge** means:

   (a)  a Judge of a federal court or of the Supreme Court of a State or Territory; or

   (b)  a person who has the same designation and status as a Judge of a federal court.

**licence** means a licence granted by or on behalf of the owner or prospective owner of the copyright in a work or other subject-matter to do an act comprised in the copyright.

**licence scheme** means a scheme (including anything in the nature of a scheme, whether called a scheme or tariff or called by any other name) formulated by a licensor or licensors and setting out the classes of cases in which the licensor or each of the licensors is willing, or the persons on whose behalf the licensor or each of the licensors acts are willing, to grant licences and the charges (if any) subject to payment of which, and the conditions subject to which, licences would be granted in those classes of cases.

**licensor** means a body corporate for which both the following conditions are met:

   (a)  the body is incorporated under a law in force in a State or Territory relating to companies;

   (b)  the body's constitution:

      (i)  entitles any owner of copyright, or any owner of copyright of a specified kind, to become a member of the body; and

*Copyright Act 1968*

Replaced Authorised Version registered 10/02/2025 C2024C00854

      (ii) requires the body to protect the interests of its members connected with copyright; and

     (iii) provides that the main business of the body is granting licences; and

     (iv) requires the body to distribute to its members the proceeds (after deduction of the body's administrative expenses) from payments to the body for licences; and

     (v) prevents the body from paying dividends.

*member* means a member of the Tribunal, and includes the President and a Deputy President.

*order* includes an interim order.

*organization* means an organization or association of persons whether corporate or unincorporate.

*the President* means the President of the Tribunal.

(2) In this Part:

  (a) a reference to conditions is a reference to any conditions other than conditions relating to the payment of a charge;

  (b) a reference to giving an opportunity to a person or organization of presenting a case is a reference to giving the person or organization an opportunity, at the option of the person or organization, of submitting representations in writing, or of being heard, or of submitting representations in writing and being heard;

  (c) a reference to a person who requires a licence of a particular kind includes a reference to a person who holds a licence of that kind if the person will, at the expiration of the period for which the licence was granted, require a renewal of that licence or a grant of a further licence of the same kind; and

  (d) a reference to proceedings for infringement of copyright includes a reference to a prosecution of an offence against Subdivision D of Division 5 of Part V.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VI**  Copyright Tribunal of Australia
**Division 1**  Preliminary

---

Section 137

---

(3) For the purposes of this Part, a person shall not be taken not to require a licence to cause a sound recording to be heard in public by reason only of the operation of section 108.

## 137  Cases to which licence schemes apply

(1) For the purposes of this Part, a case shall, subject to the next succeeding subsection, be deemed to be a case to which a licence scheme applies if, in accordance with a licence scheme for the time being in operation, a licence would be granted in that case.

(2) For the purposes of this Part, where, in accordance with a licence scheme:

    (a) the licences that would be granted would be subject to conditions by virtue of which particular matters would be excepted from the licences; and

    (b) a case relates to one or more matters falling within such an exception;

that case shall be deemed not to be a case to which the scheme applies.

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 2—Constitution of the Tribunal

## 138  Constitution of Tribunal

The Copyright Tribunal established by the section for which this section was substituted by section 138 of the *Statute Law (Miscellaneous Amendments) Act (No. 1) 1982* continues in existence as the Copyright Tribunal of Australia but shall consist of a President, and such number of Deputy Presidents and other members as are appointed in accordance with this Division.

## 139  Appointment of members of Tribunal

A member of the Tribunal shall be appointed by the Governor-General.

## 140  Qualifications of members

(1) A person shall not be appointed as the President unless he or she is a Judge of the Federal Court of Australia.

(1A) A person is not to be appointed as a Deputy President unless he or she is, or has been, a Judge of a federal court or of the Supreme Court of a State or Territory.

(2) A person shall not be appointed as a member (other than the President or a Deputy President) unless:

(a) he or she is or has been a Judge;

(b) he or she is enrolled as a legal practitioner of the High Court, of another federal court or of the Supreme Court of a State or Territory and has been so enrolled for not less than 5 years;

(c) he or she has had experience, for not less than 5 years, at a high level in industry, commerce, business, public administration, education or the practice of a profession;

(d) he or she has obtained a degree of a university, or an educational qualification of a similar standing, after studies in the field of law, economics or public administration; or

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 141

(e) he or she has, in the opinion of the Governor-General, special knowledge or skill relevant to the duties of a member.

## 141  Tenure of office

(1) Subject to this section, a member holds office for such period, not exceeding 7 years, as is specified in the instrument of his or her appointment, but is eligible for re-appointment.

(2) Where a member who is a Judge ceases to be a Judge, he or she ceases to hold office as a member, but he or she is eligible for appointment as a member (other than the President).

(3) The Governor-General may terminate the appointment of a member (other than a member who is a Judge) for physical or mental incapacity.

(4) The Governor-General shall terminate the appointment of a member (other than a member who is a Judge) if:
    (a) the member is guilty of misbehaviour; or
    (b) the member becomes bankrupt, applies to take the benefit of any law for the relief of bankrupt or insolvent debtors, compounds with his or her creditors or makes an assignment of his or her remuneration for their benefit.

## 141A  Seniority of Deputy Presidents

(1) The Deputy Presidents have seniority as Deputy Presidents according to the dates of their first appointment to the Tribunal, or, if 2 or more Deputy Presidents were appointed on the same day, according to the precedence assigned to them in their instruments of appointment.

(2) At any time when only one person is holding office as a Deputy President, any reference in this Part to 'the senior Deputy President' is to be taken to be a reference to the Deputy President.

Replaced Authorised Version registered 10/02/2025 C2024C00854

### 142  Acting President

The Governor-General may appoint the senior Deputy President available to act in the office of President:

(a) during a vacancy in that office; or

(b) during any period when the person holding that office is absent from duty or from Australia or is, for any other reason, unable to perform the functions of that office.

### 143  Remuneration and allowances

(1) Subject to this section, a member shall be paid such remuneration as is determined by the Remuneration Tribunal but, if no determination of that remuneration by the Tribunal is in operation, the member shall be paid such remuneration as is prescribed.

(2) A member shall be paid such allowances as are prescribed.

(3) Subsections (1) and (2) have effect subject to the *Remuneration Tribunal Act 1973*.

(4) A member who is a Judge is not, while he or she receives salary or annual allowance as a Judge, entitled to remuneration under this Act.

### 144  Oath or affirmation of office

(1) A member shall, before proceeding to discharge the duties of his or her office, take an oath or make an affirmation in accordance with the form of oath or affirmation in the Schedule to this Act.

(2) An oath or affirmation shall be taken or made before a justice or judge of a federal court or of the Supreme Court of a State or Territory.

### 144A  Disclosure of interests by members

(1) Where a member is, or is to be, the Tribunal, or a member of the Tribunal, as constituted for the purposes of a proceeding and the

Compilation No. 64                                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

---

**Section 144B**

---

member has or acquires any interest, pecuniary or otherwise, that could conflict with the proper performance of his or her functions in relation to that proceeding:

  (a) he or she shall disclose the interest to the parties to the proceeding; and

  (b) except with the consent of all the parties to the proceeding, he or she shall not take part in the proceeding.

(2) Where the President becomes aware that a member is, or is to be, the Tribunal, or a member of the Tribunal, as constituted for the purposes of a proceeding and that the member has, in relation to that proceeding, such an interest as is mentioned under subsection (1):

  (a) if the President considers that the member should not take part, or should not continue to take part, in the proceeding—he or she shall give a direction to the member accordingly; or

  (b) in any other case—he or she shall cause the interest of the member to be disclosed to the parties to the proceeding.

(3) In this section, a reference to a proceeding includes a reference to a proceeding by way of an application or reference to the Tribunal under this Act.

## 144B  Removal from office for failure to disclose interest

Where the Governor-General is satisfied that a member (other than a member who is a Judge) has failed, without reasonable excuse, to make a disclosure that he or she is, under subsection 144A(1), required to make, the Governor-General shall remove that member from office.

## 145  Resignation

A member may resign the office of member by giving a signed notice of resignation to the Governor-General.

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

## 146  Sittings of the Tribunal

(1) Sittings of the Tribunal shall be held at such places and times as the President determines.

(2) Subject to the next succeeding subsection, the Tribunal shall be constituted by a single member.

(3) If a party to an application or reference requests that the Tribunal be constituted by more than one member for the purposes of the application or reference, the Tribunal must, for the purposes of the application or reference, be constituted by not less than 2 members of whom one must be the President or a Deputy President.

(3A) Nothing in subsection (3) prevents a single member from exercising the powers of the Tribunal in relation to matters of procedure.

(4) At a proceeding before the Tribunal constituted by more than one member:

    (a) if the President is one of the members constituting the Tribunal—he or she shall preside; and

    (b) in any other case—the senior Deputy President who is present is to preside.

(5) Where the Tribunal constituted by more than one member is divided in opinion on a question, the question shall be decided according to the decision of the majority, if there is a majority, but if the Tribunal as so constituted is equally divided in opinion, the question shall be decided according to the opinion of the President or, if he or she is not one of the members constituting the Tribunal, according to the opinion of the senior Deputy President who is present.

(6) The Tribunal constituted by a member or members may sit and exercise the powers of the Tribunal notwithstanding that the Tribunal constituted by another member or other members is at the same time sitting and exercising those powers.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 147

(7)  The exercise of the powers of the Tribunal is not affected by a vacancy or vacancies in the membership of the Tribunal.

(8)  Where the hearing of any proceeding has been commenced before the Tribunal constituted by 2 or more members and one or more of those members has ceased to be a member or has ceased to be available for the purposes of the proceeding, the remaining member or members may continue the hearing of the proceeding if the remaining member, or one of the remaining members, is the President or a Deputy President.

## 147  President to arrange business of Tribunal

The President may give directions as to the arrangement of the business of the Tribunal and, subject to subsection 146(2) or (3), as to the constitution of the Tribunal for the purposes of particular proceedings.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 3—Applications and references to the Tribunal

## Subdivision B—Applications relating to Parts III and IV

### 149  Applications to Tribunal for determination of remuneration payable for making recording or film of a work

(1) This section applies where an application is made to the Tribunal in pursuance of subsection 47(3) or 70(3) for the determination of an equitable remuneration to be paid to the owner of the copyright in a work for the making of a sound recording or cinematograph film of the work or of an adaptation of the work.

(2) The parties to an application in relation to which this section applies are:
    (a)  the owner of the copyright in the work; and
    (b)  the maker of the recording or film.

(3) Where an application in relation to which this section applies is made to the Tribunal, the Tribunal shall consider the application and, after giving to the parties to the application an opportunity of presenting their cases, shall make an order determining the amount that it considers to be equitable remuneration to the owner of the copyright for the making of the recording or film.

### 150  Applications to Tribunal for determination of remuneration payable to owner of copyright in recording for making of a copy of the sound recording

(1) This section applies where an application is made to the Tribunal in pursuance of subsection 107(3) for the determination of an equitable remuneration to be paid to the owner of the copyright in a sound recording for the making of a copy of the sound recording.

(2) The parties to an application in relation to which this section applies are:
    (a)  the owner of the copyright in the sound recording; and

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 151

(b)  the maker of the copy of the sound recording.

(3)  Where an application in relation to which this section applies is made to the Tribunal, the Tribunal shall consider the application and, after giving to the parties to the application an opportunity of presenting their cases, shall make an order determining the amount that it considers to be equitable remuneration to the owner of the copyright for the making of the copy of the sound recording.

## 151  Applications to Tribunal for determination of remuneration payable to owner of copyright in recording in respect of public playing of the recording

(1)  This section applies where an application is made to the Tribunal in pursuance of subsection 108(1) for the determination of an equitable remuneration to be paid to the owner of the copyright in a sound recording for the causing of the recording to be heard in public.

(2)  The parties to an application in relation to which this section applies are:

(a)  the owner of the copyright in the recording; and

(b)  the person who caused the recording to be heard in public.

(3)  Where an application in relation to which this section applies is made to the Tribunal, the Tribunal shall consider the application and, after giving to the parties to the application an opportunity of presenting their cases, shall make an order determining the amount that it considers to be equitable remuneration to the owner of the copyright for the causing of the recording to be heard in public.

## 152  Applications to Tribunal for determination of amounts payable for broadcasting published sound recordings

(1)  In this section, unless the contrary intention appears:

*Australia* does not include the external Territories other than Norfolk Island.

Replaced Authorised Version registered 10/02/2025 C2024C00854

*broadcaster* means:
  (a) the Australian Broadcasting Corporation; or
 (aa) the Special Broadcasting Service Corporation; or
  (b) the holder of a licence allocated by the Australian Communications and Media Authority under the *Broadcasting Services Act 1992*; or
  (c) a person making a broadcast under the authority of a class licence determined by the Australian Communications and Media Authority under the *Broadcasting Services Act 1992*.

*broadcasting* does not include broadcasting by a transmission for a fee payable to the person who made the broadcast.

(1A) For the purposes of the application of this section in relation to a period before the commencement of this subsection, this section has effect as if any act or thing done during that period by the Australian Broadcasting Commission had been done by the Australian Broadcasting Corporation and any earnings of the Australian Broadcasting Commission during that period were earnings of the Australian Broadcasting Corporation.

(1B) In its application in relation to a period before the commencement of this subsection, this section has effect as if any act or thing done during that period by the Special Broadcasting Service had been done by the Special Broadcasting Service Corporation and any earnings of the Special Broadcasting Service during that period were earnings of the Special Broadcasting Service Corporation.

(2) Subject to this section, an application may be made to the Tribunal for an order determining, or making provision for determining, the amount payable by a broadcaster to the owners of copyrights in published sound recordings in respect of the broadcasting, during a period specified in the application, of those recordings by that broadcaster.

(3) An application under the last preceding subsection may be made by the broadcaster or by the owner of a copyright in a published sound recording.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Section 152**

(4) The parties to an application under subsection (2) are:
   (a) the person making the application; and
   (b) such organizations or persons as apply to the Tribunal to be made parties to the application and, in accordance with the next succeeding subsection, are made parties to the application.

(5) Where an organization (whether claiming to be representative of broadcasters or of the owners of copyrights in published sound recordings or not) or a person (whether a broadcaster or the owner of a copyright in a published sound recording or not) applies to the Tribunal to be made a party to an application under this section, and the Tribunal is satisfied that the organization or person has a substantial interest in the matter that is the subject of the application, the Tribunal may, if it thinks fit, make that organization or person a party to the application.

(6) The Tribunal shall consider an application under subsection (2) and, after giving the parties to the application an opportunity of presenting their cases, shall make an order:
   (a) determining, or making provision for determining, the amount payable by the broadcaster to the owners of copyrights in published sound recordings in respect of the broadcasting, during the period to which the order applies, by the broadcaster of those recordings;
   (b) specifying as the persons among whom that amount is to be divided such of the persons who were, or were represented by, parties to the application as the Tribunal is satisfied are the owners of copyrights in published sound recordings; and
   (c) specifying as the respective shares in that amount of the persons among whom that amount is to be divided and as the times at which those shares are to be paid such shares and times as those persons agree or, in default of agreement, as the Tribunal thinks equitable.

(7) In so making an order in relation to a broadcaster, the Tribunal shall take into account all relevant matters, including the extent to which the broadcaster uses, for the purposes of broadcasting,

Replaced Authorised Version registered 10/02/2025 C2024C00854

records embodying sound recordings (other than recordings in relation to which section 105 applies) in which copyrights subsist, being copyrights owned by persons who are, or are represented by, parties to the application.

(8) The Tribunal must not make an order that would require a broadcaster who is:

(a) the holder of a licence allocated by the Australian Communications and Media Authority under the *Broadcasting Services Act 1992* that authorises the holder to broadcast radio programs; or

(b) a person authorised by a class licence determined by that Authority under that Act to broadcast radio programs;

to pay, in respect of the broadcasting of published sound recordings during the period covered by the order, an amount exceeding 1% of the amount determined by the Tribunal to be the gross earnings of the broadcaster during the period equal to the period covered by the order that ended on the last 30 June that occurred before the period covered by the order.

(9) If a broadcaster that is:

(a) the holder of a licence allocated by the Australian Communications and Media Authority under the *Broadcasting Services Act 1992* that authorises the holder to broadcast radio programs; or

(b) a person authorised by a class licence determined by that Authority under that Act to broadcast radio programs;

has, with the permission of that Authority, adopted an accounting period ending on a day other than 30 June, the reference in subsection (8) to 30 June is, in relation to that broadcaster, a reference to that other day.

(10) Subsection (8) does not apply to an order in relation to a broadcaster unless:

(a) the broadcaster establishes to the satisfaction of the Tribunal the amount of the gross earnings of the broadcaster during the period in respect of which those earnings are to be determined; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VI**  Copyright Tribunal of Australia
**Division 3**  Applications and references to the Tribunal

---

Section 152

---

(b) the broadcaster carried on the transmission of programmes by way of sound broadcasting throughout the whole of that period.

(11) Where an application is made to the Tribunal under subsection (2) in relation to the Australian Broadcasting Corporation, the Tribunal:

(a) shall make separate orders in respect of sound broadcasts by the Corporation of published sound recordings and in respect of television broadcasts by the Corporation of such recordings; and

(b) shall not make an order that would require the Corporation to pay, in respect of sound broadcasts of published sound recordings during the period in relation to which the order applies, an amount exceeding the sum of:

(i) in respect of each complete year included in that period the amount ascertained by multiplying one-half of One cent by the number equal to the number of persons comprised in the estimated population of Australia as last set out in statistics published by the Commonwealth Statistician before the making of the order; and

(ii) in respect of each part of a year included in that period—the amount that bears to the amount ascertained in accordance with the last preceding subparagraph in relation to a complete year the same proportion as that part of a year bears to a complete year.

(12) A person who is not specified in an order in force under subsection (6) as one of the persons among whom the amount specified in, or determined in accordance with, the order is to be divided may, before the expiration of the period to which the order applies, apply to the Tribunal for an amendment of the order so as to specify him or her as one of those persons.

(13) The parties to an application under the last preceding subsection for an amendment of an order are:

(a) the person making the application;

(b) the broadcaster in relation to whom the order applies;

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

    (c)  the persons specified in the order as the persons among whom the amount specified in, or determined in accordance with, the order is to be divided; and

    (d)  such organizations or persons as apply to the Tribunal to be made parties to the application and, in accordance with subsection (5), are made parties to the application.

(14)  The Tribunal shall consider an application under subsection (12) for an amendment of an order in force under subsection (6) (in this subsection referred to as *the principal order*) and, after giving the parties to the application an opportunity of presenting their cases, shall, if it is satisfied that the applicant is the owner of the copyright or copyrights in one or more published sound recordings, make an order amending the principal order so as to:

    (a)  specify the applicant as one of the persons among whom the amount specified in, or determined in accordance with, the principal order is to be divided; and

    (b)  specify as the share of the applicant in that amount and as the times at which that share is to be paid such share and times as the applicant and the other persons among whom that amount is to be divided agree or, in default of agreement, as the Tribunal thinks equitable and make any consequential alterations in respect of the shares of those other persons.

(15)  An order of the Tribunal made under subsection (6) in relation to a broadcaster applies in relation to the period commencing on the date specified in the order and ending on 30 June next succeeding the date of making of the order.

(16)  The date that may be so specified in an order of the Tribunal made under subsection (6) in relation to a broadcaster may be a date before the date of making of the order or before the date of making of the application but shall not be a date before the date of expiration of the period in relation to which the last preceding order (if any) of the Tribunal made under that subsection in relation to that broadcaster applied or before the date of commencement of this Act.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 152

(17)  An order of the Tribunal made under subsection (14) amending an order of the Tribunal made under subsection (6) applies in relation to the period commencing on the date of making of the amending order and ending on the date of expiration of the period in relation to which the order that is being amended applies.

(18)  Where an order of the Tribunal is in force under this section, the broadcaster in relation to whom the order applies is liable to pay to each of the persons specified in the order as the persons among whom the amount specified in, or determined in accordance with, the order is to be divided the share so specified in relation to that person and is so liable to pay that share at the times so specified and that person may recover any amount that is not paid in accordance with the order in a court of competent jurisdiction from the broadcaster as a debt due to the person.

(19)  For the purposes of this section, the gross earnings of a broadcaster in respect of a period are the gross earnings of the broadcaster during that period in respect of the broadcasting by the broadcaster of advertisements or other matter, including the gross earnings of the broadcaster during that period in respect of the provision by the broadcaster of, or otherwise in respect of, matter broadcast by the broadcaster.

(20)  Where, in connexion with a transaction, any consideration is paid or given otherwise than in cash, the money value of that consideration shall, for the purposes of the last preceding subsection, be deemed to have been paid or given.

(21)  Where the Tribunal is of the opinion that:

　(a)  an amount, or part of an amount, earned during any period by a person other than a broadcaster would, if the broadcaster and that person were the same person, form part of the gross earnings of the broadcaster in respect of that period for the purposes of this section; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

(b) a relationship exists between the broadcaster and the other person (whether by reason of any shareholding or of any agreement or arrangement, or for any other reason) of such a kind that the amount or the part of the amount, as the case may be, should, for the purposes of this section, be treated as part of the gross earnings of the broadcaster in respect of that period;

the Tribunal may so treat the amount or the part of the amount, as the case may be.

## 152A  Applications to Tribunal for determination of amount of royalty payable for recording musical works

(1) In this section:

*manufacturer* has the same meaning as in section 55.

(2) Subject to this section, an application may be made to the Tribunal for an order determining, or making provision for determining, the amount of royalty payable by the manufacturer of a record of a musical work to the owner of the copyright in the work during a period specified in the application.

(3) An application may be made by the manufacturer or the owner of the copyright in the musical work recorded by the manufacturer.

(4) The parties to an application are:
   (a) the manufacturer and the owner of the copyright in the musical work; and
   (b) any organisations or persons who are made parties to the application.

(5) Where an application is made under subsection (2), the Tribunal shall consider the application and, after giving the parties an opportunity of presenting their cases, make an order determining, or making provision for determining, an equitable amount of royalty payable by the manufacturer of the record of the musical work to the owner of the copyright in the work during the period specified in the order.

Compilation No. 64                          Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VI**  Copyright Tribunal of Australia
**Division 3**  Applications and references to the Tribunal

---

Section 152B

---

(6) Where an organisation (whether claiming to represent manufacturers or the owners of copyrights in musical works or not) or a person (whether a manufacturer or the owner of the copyright in a musical work or not) applies to the Tribunal to be made a party to an application under this section, the Tribunal may, if it thinks fit, make that organisation or person a party to the application if the Tribunal is satisfied that the organisation or person has a substantial interest in the application.

(7) The period that may be specified in an order under subsection (5) in relation to a manufacturer may be a period beginning before the date of making of the order or before the date of making of the application but shall not be a period beginning before:

    (a) the end of the period specified in the last preceding order (if any) made under that subsection in relation to that manufacturer; or

    (b) the commencement of this section.

(8) Where an order is in force under this section, the manufacturer in relation to whom the order applies is liable to pay to the person specified in the order the amount of royalty so specified at the times so specified and that person may recover the amount, if it is not paid in accordance with the order, in a court of competent jurisdiction from the manufacturer as a debt due to the person.

## 152B  Applications to Tribunal for determination of manner of paying royalty

(1) In this section:

*manufacturer* has the same meaning as in section 55.

(2) An application may be made to the Tribunal for an order determining the manner in which amounts of royalty payable by the manufacturer of a record of a musical work to the owner of the copyright in the work are to be paid.

(3) An application may be made by the manufacturer or the owner of the copyright in the musical work recorded by the manufacturer.

---

*Copyright Act 1968*

Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

(4) The parties to an application are:

    (a) the manufacturer and the owner of the copyright in the musical work; and

    (b) any organisations or persons who are made parties to the application.

(5) Where an organisation (whether claiming to represent manufacturers or the owners of copyrights in musical works or not) or a person (whether a manufacturer or the owner of the copyright in a musical work or not) applies to the Tribunal to be made a party to an application under this section, the Tribunal may, if it thinks fit, make that organisation or person a party to the application if the Tribunal is satisfied that the organisation or person has a substantial interest in the application.

(6) Where an application is made under subsection (2), the Tribunal shall consider the application and, after giving the parties an opportunity of presenting their cases, make an order determining the manner in which amounts of royalty payable by the manufacturer of the record of the musical work to the owner of the copyright in the work are to be paid.

## 153  Applications to Tribunal for apportionment of royalty in respect of a record

(1) This section applies where an application is made to the Tribunal in pursuance of paragraph 59(3)(b) for an apportionment of an amount payable in respect of a record between the owner of the copyright in a musical work and the owner of the copyright in a literary or dramatic work.

(2) The parties to an application in relation to which this section applies are:

    (a) the owner of the copyright in the musical work; and

    (b) the owner of the copyright in the literary or dramatic work.

(3) Where an application in relation to which this section applies is made to the Tribunal, the Tribunal shall consider the application and, after giving to the parties to the application an opportunity of

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 153A

presenting their cases, shall make an order apportioning the amount to which the application relates between the parties in such manner as it thinks equitable.

## Subdivision C—Applications and referrals relating to Part IVA

### 153A  Applications and referrals relating to Division 4 of Part IVA

(1) This section applies to an application or referral to the Tribunal mentioned in column 1 of an item of the table in subsection (4).

(2) The parties to the application or referral are the parties mentioned in column 2 of the item.

(3) The Tribunal must:

(a) consider the application or referral; and

(b) give the parties the opportunity to present their cases; and

(c) comply with column 3 of the item.

(4) This is the table:

| Applications and referrals relating to licensed copying and communicating | | |
|---|---|---|
| Item | Column 1<br>Application or referral | Column 2<br>Parties | Column 3<br>The Tribunal must … |
| 1 | an application made under paragraph 113P(4)(b) or 113S(4)(b) to determine a question | (a) the relevant collecting society; and<br>(b) the body administering the relevant educational institution | having regard to any matters prescribed by the regulations, determine the relevant question under subsection 113P(4) or 113S(4). |

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Applications and referrals relating to licensed copying and communicating**

| Item | Column 1<br>Application or referral | Column 2<br>Parties | Column 3<br>The Tribunal must … |
|---|---|---|---|
| 2 | an application made under paragraph 113R(2)(b) to determine an amount of equitable remuneration | (a) the relevant collecting society; and<br>(b) the body administering the relevant educational institution | having regard to any matters prescribed by the regulations, determine the amount of equitable remuneration under subsection 113R(2). |
| 3 | a referral under paragraph 113V(2)(c) of an application by a body (the *applicant*) to be declared to be a collecting society | (a) the applicant; and<br>(b) any person made a party under subsection (5) of this section | (a) declare the applicant to be a collecting society under subsection 113V(3); or<br>(b) refuse to declare the applicant to be a collecting society. |
| 4 | a referral under paragraph 113X(2)(b) of the question whether a declaration of a body to be a collecting society should be revoked | (a) the Minister; and<br>(b) the body; and<br>(c) any person made a party under subsection (5) of this section | (a) revoke the declaration under subsection 113X(3); or<br>(b) refuse to revoke the declaration. |
| 5 | an application under subsection 113ZB(1) for review of the arrangement adopted, or proposed to be adopted, by a collecting society for distributing amounts it collects in a period | (a) the applicant for the review; and<br>(b) the collecting society (if it is not the applicant); and<br>(c) any member or organization made a party under subsection (5) of this section | make an order under subsection 113ZB(2). |

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 153DF

(5) For the purposes of column 2 of item 3, 4 or 5 of the table, the Tribunal may make the following person or organization a party to the referral or application if the person or organization asks to be made a party:

  (a) in the case of item 3 or 4—a person the Tribunal thinks has a sufficient interest in the matter;

  (b) in the case of item 5—a person or organization that:

    (i) the Tribunal thinks has a substantial interest in the arrangement; and

    (ii) is a member of the collecting society, or is an organization that claims to be representative of members of the collecting society.

## Subdivision E—Applications relating to Part VII

### 153DF  Meaning of *copyright material*

In this Subdivision:

*copyright material* has the same meaning as in Division 2 of Part VII.

### 153E  Applications to Tribunal under subsection 183(5)

(1) The parties to an application to the Tribunal under subsection 183(5) for the fixing of the terms for the doing of an act comprised in a copyright where the act is done for the services of the Commonwealth or a State are:

  (a) the Commonwealth or the State, as the case may be; and

  (b) the owner of the copyright.

(2) If an application is made to the Tribunal under subsection 183(5), the Tribunal is to consider the application and, after giving the parties to the application an opportunity of presenting their cases, is to make an order fixing the terms for the doing of the act.

Replaced Authorised Version registered 10/02/2025 C2024C00854

### 153F  Applications to Tribunal to declare collecting society for government copies

(1) A company limited by guarantee may apply to the Tribunal for a declaration that the company be a collecting society for the purposes of Division 2 of Part VII.

(2) The parties to the application are the applicant and any person made a party by the Tribunal.

(3) The Tribunal may make a person a party if:

    (a) the person asks to be made a party; and

    (b) the Tribunal thinks that the person has a sufficient interest in either or both of the following questions:

        (i) whether the applicant should be declared to be a collecting society;

        (ii) whether any current declaration of a company as a collecting society should be revoked.

(4) After giving each party an opportunity of presenting its case, the Tribunal must:

    (a) declare the applicant to be a collecting society for the purposes of Division 2 of Part VII; or

    (b) reject the application.

(5) A declaration of a company as a collecting society for the purposes of Division 2 of Part VII may be a declaration in relation to:

    (a) all government copies; or

    (b) a specified class of government copies.

(6) The Tribunal may only declare the applicant to be a collecting society if the Tribunal is satisfied:

    (a) that the applicant is a company limited by guarantee incorporated under a law in force in a State or Territory relating to companies; and

    (b) in the case of an application for a declaration in relation to all government copies, that the applicant's rules permit the

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VI**  Copyright Tribunal of Australia
**Division 3**  Applications and references to the Tribunal

Section 153F

owner, or the agent of the owner, of the copyright in any copyright material to become a member; and

(c) in the case of an application for a declaration in relation to a class of government copies, that the applicant's rules permit the owner, or the agent of the owner, of the copyright in any copyright material a reproduction of which in accordance with section 183 would be within that class to become a member; and

(d) that the applicant's rules prohibit the payment of dividends to its members; and

(e) that the applicant's rules contain such provisions about all of the following matters as are adequate for the protection of its members:

(i) the collection of remuneration payable under section 183A;

(ii) the payment of administrative costs of the collecting society out of remuneration it collects;

(iii) the distribution of remuneration the collecting society collects;

(iv) the collecting society holding on trust remuneration for owners of copyright in copyright material who are not members of the society;

(v) access to the collecting society's records by its members; and

(f) that the applicant's rules contain such other provisions as are required by the regulations to be included for the protection of members of the society.

(7) A declaration must specify the day on which it takes effect.

(8) If the Tribunal makes a declaration under this section, the Registrar must publish the declaration in the *Gazette*.

Replaced Authorised Version registered 10/02/2025 C2024C00854

### 153G  Applications to Tribunal to revoke a declaration of a collecting society

(1) Any of the following persons may apply to the Tribunal for the revocation of a declaration under section 153F:

    (a) the collecting society;

    (b) a member of the collecting society;

    (c) a government.

(2) The parties to an application are:

    (a) the applicant for revocation of the declaration; and

    (b) if the collecting society is not the applicant for revocation of the declaration—the collecting society; and

    (c) any person made a party by the Tribunal.

(3) The Tribunal may make a person a party if:

    (a) the person asks to be made a party; and

    (b) the Tribunal thinks that the person has a sufficient interest in the question whether the declaration of the collecting society should be revoked.

(4) After giving each party an opportunity of presenting its case, the Tribunal must:

    (a) revoke the declaration of the collecting society; or

    (b) reject the application.

(5) The Tribunal may only revoke the declaration of a company as the collecting society if the Tribunal is satisfied that the company:

    (a) is not functioning adequately as the collecting society; or

    (b) is not acting in accordance with its rules or in the best interests of its members who own copyright in copyright material or who are agents of copyright owners; or

    (c) has altered its rules so that they no longer comply with any one or more of paragraphs 153F(6)(b) to (f); or

    (d) has contravened section 183D or 183E (dealing with reporting and accounting, and alteration of rules).

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VI**  Copyright Tribunal of Australia
**Division 3**  Applications and references to the Tribunal

---

Section 153H

---

(6) A revocation must specify the day on which it takes effect.

(7) If the Tribunal revokes the declaration of the collecting society, the Registrar must publish notice of the revocation in the *Gazette*.

## 153H  Time limit for deciding applications under section 153F or 153G

(1) The Tribunal must make its decision on an application under section 153F or 153G within 6 months after the conclusion of the hearing of the application.

(2) The 6 months time limit in subsection (1) does not apply if the Tribunal thinks that the matter cannot be dealt with properly within that period of 6 months, whether because of its complexity or because of other special circumstances.

(3) If subsection (2) applies, the Tribunal must tell the applicant before the end of the 6 months period that the matter cannot be dealt with properly within that period.

## 153J  Amendment and revocation of a declaration on the declaration of another collecting society

(1) If:

    (a) a declaration (the **previous declaration**) is in force under section 153F; and

    (b) the Tribunal, under that section, declares another company to be the collecting society for the purposes of Division 2 of Part VII in relation to a class of government copies that includes some of the government copies to which the previous declaration relates;

the Tribunal must amend the previous declaration so as to exclude from the government copies to which it relates all government copies to which the declaration of the company referred to in paragraph (b) relates.

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

(2) An amendment of a declaration under subsection (1) takes effect when the declaration of the company referred to in paragraph (1)(b) takes effect.

(3) If:

    (a) a declaration (the *previous declaration*) is in force under section 153F; and

    (b) the Tribunal makes another declaration under that section in relation to:

        (i) all government copies; or

        (ii) a class of government copies that includes all government copies to which the previous declaration relates;

the Tribunal must revoke the previous declaration.

(4) The revocation of a declaration under subsection (3) takes effect when the declaration referred to in paragraph (3)(b) takes effect.

(5) The Registrar must publish in the *Gazette* notice of an amendment or revocation made under this section.

## 153K  Applications to Tribunal for method of working out payment for government copies

(1) A collecting society or a government may apply to the Tribunal for an order determining the method for working out remuneration payable under subsection 183A(2) for government copies made for the services of the government in a particular period.

(2) The parties to an application are the collecting society and the government.

(3) After giving each party an opportunity of presenting its case, the Tribunal must make an order determining the method.

> Note:    Subsection 183A(3) sets out matters that the method must provide for. Subsection 183A(4) sets out matters that the method may provide for.

(4) An order may also specify how and when payments of the amount worked out using the method determined are to be made.

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 153KA

## 153KA  Review of collecting society's distribution arrangement

(1) This section has effect if an application is made to the Tribunal under section 183F for review of an arrangement adopted, or proposed to be adopted, by a collecting society for distributing amounts it collects in a period.

(2) The parties to the application are:
  (a) the applicant; and
  (b) the collecting society (if it is not the applicant); and
  (c) a member of the collecting society, or an organization claiming to be representative of members of the collecting society, that the Tribunal makes a party to the application.

(3) The Tribunal may make a member of the collecting society, or an organization claiming to be representative of members of the collecting society, a party to the application if:
  (a) the member or organization asks to be made a party; and
  (b) the Tribunal is satisfied that the member or organization has a substantial interest in the arrangement.

(4) The Tribunal must consider the application, give the parties an opportunity of presenting their cases then make an order:
  (a) confirming the arrangement; or
  (b) varying the arrangement; or
  (c) substituting for the arrangement another arrangement for distributing amounts the collecting society collects in the period.

(5) In this section:

*collecting society* has the same meaning as in Division 2 of Part VII.

Replaced Authorised Version registered 10/02/2025 C2024C00854

## Subdivision G—Applications and references relating to Part VC

### 153M  Applications to the Tribunal under subsection 135ZZM(1)

(1) The parties to an application to the Tribunal under subsection 135ZZM(1) for the determination of the amount of equitable remuneration payable to a collecting society by a retransmitter for the making, by or on behalf of the retransmitter, of a retransmission of a free-to-air broadcast are the society and the retransmitter.

(2) On an application to the Tribunal under subsection 135ZZM(1), the Tribunal must consider the application and, after giving the parties an opportunity to present their cases, make an order determining the amount that it considers to be equitable remuneration for the making of retransmissions of free-to-air broadcasts.

(3) In making an order, the Tribunal may have regard to such matters (if any) as are prescribed.

(4) An order may be expressed to have effect in relation to retransmissions of free-to-air broadcasts made in reliance on section 135ZZK before the day on which the order is made.

(5) In this section, *collecting society* and *retransmitter* have the same meanings as in Part VC.

### 153N  Applications to Tribunal under subsection 135ZZN(3)

(1) The parties to an application to the Tribunal under subsection 135ZZN(3) for the determination of a record system are the collecting society and the retransmitter concerned.

(2) On an application to the Tribunal under subsection 135ZZN(3), the Tribunal must consider the application and, after giving the parties an opportunity to present their cases, make an order determining the record system.

Replaced Authorised Version registered 10/02/2025 C2024C00854

---

Section 153P

---

(3) In this section, **_collecting society_** and **_retransmitter_** have the same meanings as in Part VC.

## 153P  References relating to declaration of collecting society

(1) This section has effect if the Minister refers to the Copyright Tribunal under section 135ZZT an application of a body to be declared a collecting society.

(2) The parties to the reference are the applicant and any person made a party by the Tribunal.

(3) The Tribunal may make a person a party if:

    (a) the person asks to be made a party; and

    (b) the Tribunal thinks that the person has a sufficient interest in either or both of the following questions:

        (i) whether the applicant should be declared to be a collecting society for all relevant copyright owners (as defined in Part VC) or a particular class of relevant copyright owners;

        (ii) whether another body should cease to be the collecting society for any of the relevant copyright owners (as defined in Part VC) if the applicant is declared to be a collecting society.

(4) After giving each party an opportunity of presenting its case, the Tribunal must:

    (a) declare the applicant to be a collecting society under section 135ZZT; or

    (b) reject the application.

(5) If the Tribunal declares the applicant to be the collecting society under section 135ZZT, the Registrar must publish notice of the declaration in the *Gazette*.

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

Copyright Tribunal of Australia  **Part VI**
Applications and references to the Tribunal  **Division 3**

Section 153Q

### 153Q  References relating to revocation of declaration of collecting society

(1) This section has effect if the Minister refers to the Copyright Tribunal under section 135ZZU the question whether the declaration of a body as a collecting society should be revoked.

(2) The parties to the reference are:
    (a) the Minister; and
    (b) the collecting society; and
    (c) any person made a party by the Tribunal.

(3) The Tribunal may make a person a party if:
    (a) the person asks to be made a party; and
    (b) the Tribunal thinks that the person has a sufficient interest in the question whether the declaration of the collecting society should be revoked.

(4) After giving each party an opportunity of presenting its case, the Tribunal must:
    (a) revoke the declaration of the collecting society under section 135ZZU; or
    (b) refuse to revoke the declaration.

(5) If the Tribunal revokes the declaration of the collecting society:
    (a) the revocation must specify the day on which it takes effect; and
    (b) the Registrar must publish notice of the revocation in the *Gazette*.

### 153R  Review of collecting society's distribution arrangement

(1) This section has effect if an application is made to the Tribunal under section 135ZZWA for review of an arrangement adopted, or proposed to be adopted, by a collecting society for distributing amounts it collects in a period.

(2) The parties to the application are:

Compilation No. 64      Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

    (a) the applicant; and

    (b) the collecting society (if it is not the applicant); and

    (c) a member of the collecting society, or an organization claiming to be representative of members of the collecting society, that the Tribunal makes a party to the application.

(3) The Tribunal may make a member of the collecting society, or an organization claiming to be representative of members of the collecting society, a party to the application if:

    (a) the member or organization asks to be made a party; and

    (b) the Tribunal is satisfied that the member or organization has a substantial interest in the arrangement.

(4) The Tribunal must consider the application, give the parties an opportunity of presenting their cases then make an order:

    (a) confirming the arrangement; or

    (b) varying the arrangement; or

    (c) substituting for the arrangement another arrangement for distributing amounts the collecting society collects in the period.

(5) In this section:

*collecting society* has the same meaning as in Part VC.

## Subdivision GA—Applications and references relating to Part VD

### 153RA  Application to the Tribunal to determine amount payable to owner of copyright in a broadcast

(1) Either:

    (a) a satellite BSA licensee; or

    (b) a person (the *copyright owner*) who is, or will be, the owner of the copyright in the broadcast of an eligible program;

may apply to the Tribunal for an order determining the amount payable by the satellite BSA licensee to the copyright owner for

Replaced Authorised Version registered 10/02/2025 C2024C00854

the re-broadcast by the satellite BSA licensee, during the period specified in the application, of eligible programs, where the copyright owner owns the copyright in the broadcast of the eligible programs.

(2) The parties to an application under subsection (1) are:

    (a) the satellite BSA licensee; and

    (b) the copyright owner.

(3) On an application to the Tribunal under subsection (1), the Tribunal must consider the application and, after giving the parties an opportunity to present their cases, make an order determining the amount that it considers to be equitable remuneration for re-broadcasts of eligible programs during the period specified in the order, where the copyright owner owns the copyright in the broadcast of the eligible programs.

(4) In this section:

*eligible program* has the same meaning as in Part VD.

### 153S  Applications to the Tribunal under paragraph 135ZZZK(1)(b)—equitable remuneration

(1) The parties to an application to the Tribunal under paragraph 135ZZZK(1)(b) for the determination of the amount of equitable remuneration payable to a collecting society by a satellite BSA licensee for re-broadcasts by the satellite BSA licensee of eligible programs are:

    (a) the society; and

    (b) the satellite BSA licensee.

(2) On an application to the Tribunal under paragraph 135ZZZK(1)(b), the Tribunal must consider the application and, after giving the parties an opportunity to present their cases, make an order determining the amount that it considers to be equitable remuneration for the re-broadcast of eligible programs.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 153T

(3)  In making an order, the Tribunal may have regard to such matters (if any) as are prescribed.

(4)  An order may be expressed to have effect in relation to re-broadcasts of eligible programs in reliance on section 135ZZZI before the day on which the order is made.

(5)  In this section:

*collecting society* has the same meaning as in Part VD.

*eligible program* has the same meaning as in Part VD.

## 153T  Applications to Tribunal under paragraph 135ZZZL(3)(b)— record system

(1)  The parties to an application to the Tribunal under paragraph 135ZZZL(3)(b) for the determination of a record system are:
    (a)  the collecting society concerned; and
    (b)  the satellite BSA licensee concerned.

(2)  On an application to the Tribunal under paragraph 135ZZZL(3)(b), the Tribunal must consider the application and, after giving the parties an opportunity to present their cases, make an order determining the record system.

(3)  In this section:

*collecting society* has the same meaning as in Part VD.

## 153U  References relating to declaration of collecting society

(1)  This section has effect if the Minister refers to the Copyright Tribunal under section 135ZZZO an application of a body to be declared a collecting society.

(2)  The parties to the reference are the applicant and any person made a party by the Tribunal.

Replaced Authorised Version registered 10/02/2025 C2024C00854

(3) The Tribunal may make a person a party if:

    (a) the person asks to be made a party; and

    (b) the Tribunal thinks that the person has a sufficient interest in either or both of the following questions:

        (i) whether the applicant should be declared to be a collecting society for all relevant copyright owners (as defined in Part VD) or a particular class of relevant copyright owners;

        (ii) whether another body should cease to be the collecting society for any of the relevant copyright owners (as defined in Part VD) if the applicant is declared to be a collecting society.

(4) After giving each party an opportunity to present its case, the Tribunal must:

    (a) declare the applicant to be a collecting society under section 135ZZZO; or

    (b) reject the application.

(5) If the Tribunal declares the applicant to be the collecting society under section 135ZZZO, the Registrar must publish notice of the declaration in the *Gazette*.

## 153V  References relating to revocation of declaration of collecting society

(1) This section has effect if the Minister refers to the Copyright Tribunal under paragraph 135ZZZP(2)(b) the question whether the declaration of a body as a collecting society should be revoked.

(2) The parties to the reference are:

    (a) the Minister; and

    (b) the collecting society; and

    (c) any person made a party by the Tribunal.

(3) The Tribunal may make a person a party if:

    (a) the person asks to be made a party; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 153W

---

      (b) the Tribunal thinks that the person has a sufficient interest in the question whether the declaration of the collecting society should be revoked.

(4) After giving each party an opportunity to present its case, the Tribunal must:

      (a) revoke the declaration of the collecting society under subsection 135ZZZP(3); or

      (b) refuse to revoke the declaration.

(5) If the Tribunal revokes the declaration of the collecting society:

      (a) the revocation must specify the day on which it takes effect; and

      (b) the Registrar must publish notice of the revocation in the *Gazette*.

## 153W  Review of collecting society's distribution arrangement

(1) This section has effect if an application is made to the Tribunal under section 135ZZZS for review of an arrangement adopted, or proposed to be adopted, by a collecting society for distributing amounts it collects in a period.

(2) The parties to the application are:

      (a) the applicant; and

      (b) the collecting society (if it is not the applicant); and

      (c) a member of the collecting society, or an organisation claiming to be representative of members of the collecting society, that the Tribunal makes a party to the application.

(3) The Tribunal may make a member of the collecting society, or an organisation claiming to be representative of members of the collecting society, a party to the application if:

      (a) the member or organisation asks to be made a party; and

      (b) the Tribunal is satisfied that the member or organisation has a substantial interest in the arrangement.

---

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

(4)  The Tribunal must consider the application, give the parties an opportunity to present their cases then make an order:

(a)  confirming the arrangement; or

(b)  varying the arrangement; or

(c)  substituting for the arrangement another arrangement for distributing amounts the collecting society collects in the period.

(5)  In this section:

*collecting society* has the same meaning as in Part VD.

## Subdivision H—References and applications relating to licences and licence schemes

### 154  Reference of proposed licence schemes to Tribunal

(1)  Where a licensor proposes to bring a licence scheme into operation, he or she may refer the scheme to the Tribunal.

(2)  The parties to a reference under this section are:

(a)  the licensor referring the scheme; and

(b)  such organizations or persons (if any) as apply to the Tribunal to be made parties to the reference and, in accordance with the next succeeding subsection, are made parties to the reference; and

(c)  the Australian Competition and Consumer Commission, if the Tribunal makes the Commission a party to the reference under section 157B.

(3)  Where an organization (whether claiming to be representative of persons requiring licences or not) or a person (whether requiring a licence or not) applies to the Tribunal to be made a party to a reference, and the Tribunal is satisfied that the organization or person has a substantial interest in the operation of the scheme to which the reference relates, the Tribunal may, if it thinks fit, make that organization or person a party to the reference.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 155

(4) The Tribunal shall consider a scheme referred under this section and, after giving to the parties to the reference an opportunity of presenting their cases, shall make such order, confirming or varying the scheme or substituting for the scheme another scheme proposed by one of the parties, as the Tribunal considers reasonable in the circumstances.

(5) An order (other than an interim order) of the Tribunal under this section may, notwithstanding anything contained in the licence scheme to which it relates, be made so as to be in force either indefinitely or for such period as the Tribunal thinks fit.

(6) Where a licence scheme has been referred to the Tribunal under this section, the licensor may do either or both of the following things:

  (a) bring the scheme into operation before the Tribunal makes an order in pursuance of the reference;

  (b) withdraw the reference at any time before the Tribunal makes an order in pursuance of the reference, whether the scheme has been brought into operation or not.

(7) The scheme reflecting the Tribunal's order:

  (a) comes into operation when the order is made, if the scheme referred to the Tribunal had not already come into operation; and

  (b) operates as long as the order remains in force.

This subsection has effect despite anything in the scheme referred to the Tribunal.

Note:     Depending on the Tribunal's order, the scheme reflecting the order will be the scheme confirmed by the order, the scheme as varied by the order or the scheme substituted by the order for the scheme referred to the Tribunal.

## 155  Reference of existing licence schemes to Tribunal

(1) Where, at any time while a licence scheme is in operation, a dispute arises with respect to the terms of the scheme between the licensor operating the scheme and:

Replaced Authorised Version registered 10/02/2025 C2024C00854

(a) an organization claiming to be representative of persons requiring licences in cases included in a class of cases to which the scheme applies; or

(b) any person claiming that he or she requires a licence in a case included in a class of cases to which the scheme applies;

the licensor, organization or person concerned may refer the scheme to the Tribunal in so far as the scheme relates to cases included in that class.

(2) The parties to a reference under this section are:

(a) the licensor, organization or person referring the scheme; and

(b) if the reference is not made by the licensor operating the scheme—that licensor; and

(c) such other organizations or persons (if any) as apply to the Tribunal to be made parties to the reference and, in accordance with the next succeeding subsection, are made parties to the reference; and

(d) the Australian Competition and Consumer Commission, if the Tribunal makes the Commission a party to the reference under section 157B.

(3) Where an organization (whether claiming to be representative of persons requiring licences or not) or a person (whether requiring a licence or not) applies to the Tribunal to be made a party to a reference, and the Tribunal is satisfied that the organization or person has a substantial interest in the matter in dispute, the Tribunal may, if it thinks fit, make that organization or person a party to the reference.

(4) The Tribunal shall not begin to consider a reference under this section by an organization unless the Tribunal is satisfied that the organization is reasonably representative of the class of persons that it claims to represent.

(5) The Tribunal must consider the matter in dispute, give the parties an opportunity of presenting their cases then make an order that the Tribunal considers reasonable in the circumstances doing one of the following to the scheme so far as it relates to the relevant class:

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 156

    (a)  confirming it;

    (b)  varying it;

    (c)  substituting for it another scheme proposed by one of the parties.

This subsection has effect to subsection (4).

  (6)  An order (other than an interim order) of the Tribunal under this section may, notwithstanding anything contained in the licence scheme to which it relates, be made so as to be in force either indefinitely or for such period as the Tribunal thinks fit.

  (7)  A reference of a licence scheme to the Tribunal under this section may be withdrawn at any time before an order is made in pursuance of the reference.

  (8)  Where a licence scheme has been referred to the Tribunal under this section, the scheme remains in operation, notwithstanding anything contained in the scheme, until the Tribunal makes an order in pursuance of the reference.

  (9)  The last preceding subsection does not apply in relation to a reference with respect to any period after the reference has been withdrawn or after the Tribunal has refused to begin to consider the reference in pursuance of subsection (4).

 (10)  The scheme reflecting the Tribunal's order operates as long as the order remains in force, despite anything in the scheme referred to the Tribunal.

    Note:    Depending on the Tribunal's order, the scheme reflecting the order will be the scheme confirmed by the order, the scheme as varied by the order or the scheme substituted by the order for the scheme referred to the Tribunal.

## 156  Further reference of licence schemes to Tribunal

  (1)  Where the Tribunal has made an order (other than an interim order) under either of the last two preceding sections with respect to a licence scheme, then, subject to the next succeeding subsection, at any time while the order remains in force:

Replaced Authorised Version registered 10/02/2025 C2024C00854

      (a) the licensor operating the scheme;

      (b) any organization claiming to be representative of persons requiring licences in cases included in the class of cases to which the order applies; or

      (c) any person claiming that he or she requires a licence in a case included in that class;

may refer the scheme reflecting the order to the Tribunal in so far as it relates to cases included in that class.

(2) A scheme shall not, except with the leave of the Tribunal, be referred to the Tribunal under the last preceding subsection at a time earlier than:

      (a) where the order concerned was made so as to be in force indefinitely or for a period exceeding 15 months—the expiration of the period of 12 months commencing on the date on which the order was made; or

      (b) where the order concerned was made so as to be in force for a period not exceeding 15 months—the commencement of the period of 3 months ending on the date of expiration of the order.

(3) The parties to a reference under this section are:

      (a) the licensor, organization or person referring the scheme; and

      (b) if the reference is not made by the licensor operating the scheme—that licensor; and

      (c) such other organizations or persons (if any) as apply to the Tribunal to be made parties to the reference and, in accordance with the provisions applicable in that behalf by virtue of subsection (5), are made parties to the reference; and

      (d) the Australian Competition and Consumer Commission, if the Tribunal makes the Commission a party to the reference under section 157B.

(4) The Tribunal must consider the matter in dispute, give the parties an opportunity of presenting their cases then make an order that the Tribunal considers reasonable in the circumstances doing one of

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VI**  Copyright Tribunal of Australia
**Division 3**  Applications and references to the Tribunal

Section 157

the following to the scheme so far as it is referred to the Tribunal under subsection (1):

    (a)  confirming it;

    (b)  varying it;

    (c)  substituting for it another scheme proposed by one of the parties.

This subsection has effect to subsection (5).

(5)  Subsections 155(3), (4), and (6) to (10) inclusive apply for the purposes of this section.

(6)  The preceding subsections of this section have effect in relation to orders made under this section in like manner as they have effect in relation to orders made under either of the last two preceding sections.

(7)  Nothing in this section prevents a licence scheme in respect of which an order has been made under either of the last two preceding sections from being again referred to the Tribunal under that section:

    (a)  in so far as the scheme relates to cases included in a class of cases to which the order does not apply—at any time; and

    (b)  in so far as the scheme relates to cases included in the class of cases to which the order applied while it was in force—after the expiration of the order.

## 157  Application to Tribunal in relation to licences

*Refusal or failure to grant licence under licence scheme*

(1)  A person who claims, in a case to which a licence scheme applies, that the licensor operating the scheme has refused or failed to grant him or her a licence in accordance with the scheme, or to procure the grant to him or her of such a licence, may apply to the Tribunal under this section.

*Copyright Act 1968*

Compilation No. 64

Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

*Licence scheme sets unreasonable charges or conditions for case*

(2) A person who claims, in a case to which a licence scheme applies, that he or she requires a licence but that the grant of a licence in accordance with the scheme would, in that case, be subject to the payment of charges, or to conditions, that are not reasonable in the circumstances of the case may apply to the Tribunal under this section.

*No licence scheme and licensor refuses or fails to grant reasonable licence*

(3) A person who claims that he or she requires a licence in a case to which a licence scheme does not apply (including a case where a licence scheme has not been formulated or is not in operation) and:

    (a) that a licensor has refused or failed to grant the licence, or to procure the grant of the licence, and that in the circumstances it is unreasonable that the licence should not be granted; or

    (b) that a licensor proposes that the licence should be granted subject to the payment of charges, or to conditions, that are unreasonable;

may apply to the Tribunal under this section.

(4) An organization that claims that it is representative of persons requiring licences in cases to which a licence scheme does not apply (including cases where a licence scheme has not been formulated or is not in operation) and:

    (a) that a licensor has refused or failed to grant the licences, or to procure the grant of the licences, and that in the circumstances it is unreasonable that the licences should not be granted; or

    (b) that a licensor proposes that the licences should be granted subject to the payment of charges, or to conditions, that are unreasonable;

may apply to the Tribunal under this section.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 157

*Other parties to application*

(5) Where an organization (whether claiming to be representative of persons requiring licences or not) or a person (whether requiring a licence or not) applies to the Tribunal to be made a party to an application under any of the preceding subsections of this section, and the Tribunal is satisfied that the organization or person has a substantial interest in the matter in dispute, the Tribunal may, if it thinks fit, make that organization or person a party to the application.

Note:      Under section 157B, the Tribunal may also make the Australian Competition and Consumer Commission a party to the application.

*Letting parties present their cases*

(6) The Tribunal must give the applicant, the licensor concerned and each other party (if any) to the application an opportunity of presenting their cases.

*Order dealing with application under subsection (1)*

(6A) If the Tribunal is satisfied that the claim of an applicant under subsection (1) is well-founded, the Tribunal must either:

 (a) make an order specifying, in respect of the matters specified in the order, the charges, if any, and the conditions, that the Tribunal considers to be applicable in accordance with the licence scheme in relation to the applicant; or

 (b) order that the applicant be granted a licence in the terms proposed by the applicant, the licensor concerned or another party to the application.

*Order dealing with application under subsection (2) or (3)*

(6B) If the Tribunal is satisfied that the claim of an applicant under subsection (2) or (3) is well-founded, the Tribunal must either:

 (a) make an order specifying, in respect of the matters specified in the order, the charges, if any, and the conditions, that the Tribunal considers reasonable in the circumstances in relation to the applicant; or

Replaced Authorised Version registered 10/02/2025 C2024C00854

    (b) order that the applicant be granted a licence in the terms proposed by the applicant, the licensor concerned or another party to the application.

*Order dealing with application under subsection (4)*

(6C) If the Tribunal is satisfied that the claim of an applicant under subsection (4) is well-founded, the Tribunal must either:

    (a) make an order specifying, in respect of the matters specified in the order, the charges, if any, and the conditions, that the Tribunal considers reasonable in the circumstances in relation to persons who:

        (i) are specified in the order (whether by reference to a class or otherwise); and

        (ii) were represented by the applicant or were parties to the application; or

    (b) order that a licence be granted, in the terms proposed by the applicant, the licensor concerned or another party to the application, to each person who:

        (i) is specified in the order (whether by reference to a class or otherwise); and

        (ii) was represented by the applicant or was a party to the application.

*Definition of refusal or failure to grant a licence*

(7) A reference in this section to a failure to grant a licence, or to procure the grant of a licence, shall be read as a reference to a failure to grant the licence, or to procure the grant of the licence, as the case may be, within a reasonable time after a request to do so.

## 157A  Tribunal must have regard to ACCC guidelines on request

(1) In making a decision on a reference or application under this Subdivision, the Tribunal must, if requested by a party to the reference or application, have regard to relevant guidelines (if any) made by the Australian Competition and Consumer Commission.

Compilation No. 64　　　　　　　　　　　Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VI**  Copyright Tribunal of Australia
**Division 3**  Applications and references to the Tribunal

---

Section 157B

---

(2) To avoid doubt, subsection (1) does not prevent the Tribunal from having regard to other relevant matters in making a decision on a reference or application under this Subdivision.

## 157B  Tribunal may make ACCC party to reference or application

The Tribunal may make the Australian Competition and Consumer Commission a party to a reference or application made under this Subdivision if:

(a) the Commission asks to be made a party to the reference or application; and

(b) the Tribunal is satisfied that it is appropriate that the Commission be a party to the reference or application.

## 158  Effect of licence scheme being continued in operation pending order of the Tribunal

(1) Where a licence scheme is in operation by virtue of this Part pending the making of an order on a reference under this Part and a person, in a case to which the scheme applies, does anything that, apart from this subsection, would be an infringement of a copyright but would not be such an infringement if the person were the holder of a licence granted in accordance with the scheme in so far as the scheme relates to cases to which the reference relates, that person shall, if he or she has complied with the relevant requirements, be in the like position, in any proceedings for infringement of that copyright, as if he or she had at the material time been the holder of such a licence.

(2) For the purposes of the last preceding subsection, the relevant requirements are:

(a) that, at all material times, the person concerned has complied with the conditions that, in accordance with the licence scheme, would be applicable to a licence in respect of the case concerned; and

(b) where, in accordance with the scheme, any charges are payable in respect of such a licence—that, at the material time, the person concerned had paid those charges to the

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

licensor operating the scheme, or, if at that time the amount payable could not be ascertained, he or she had given an undertaking in writing to the licensor to pay the charges when ascertained.

(3) A person who does anything in relation to which subsection (1) applies is liable to pay to the licensor operating the licence scheme concerned the amount of any charges that would be payable if he or she were the holder of a licence granted in accordance with the scheme in so far as the scheme relates to the doing of that thing and the licensor may recover that amount in a court of competent jurisdiction from the person as a debt due to the licensor.

## 159  Effect of order of Tribunal in relation to licences

*Order under section 154, 155 or 156*

(1) Where an order made on a reference under this Part with respect to a licence scheme is for the time being in force and a person, in a case to which the scheme reflecting the order applies, does anything that, apart from this subsection, would be an infringement of copyright but would not be such an infringement if he or she were the holder of a licence granted in accordance with that scheme, in so far as the scheme relates to cases to which the order applies, that person shall, if he or she has complied with the relevant requirements, be in the like position, in any proceedings for infringement of that copyright, as if he or she had at the material time been the holder of such a licence.

(2) For the purposes of the last preceding subsection, the relevant requirements are:

   (a) that, at all material times, the person concerned has complied with the conditions that, in accordance with the scheme reflecting the order, would be applicable to a licence in respect of the case concerned; and

   (b) where, in accordance with the scheme, any charges are payable in respect of such a licence—that, at the material time, the person concerned had paid those charges to the

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VI**  Copyright Tribunal of Australia
**Division 3**  Applications and references to the Tribunal

Section 159

licensor operating the scheme, or, if at that time the amount payable could not be ascertained, he or she had given an undertaking in writing to the licensor to pay the charges when ascertained.

(3) A person who does anything in relation to which subsection (1) applies is liable to pay to the licensor operating the scheme concerned the amount of any charges that would be payable if he or she were the holder of a licence granted in accordance with the scheme reflecting the order, in so far as the scheme relates to the doing of that thing, and the licensor may recover that amount in a court of competent jurisdiction from the person as a debt due to the licensor.

*Order under section 157 specifying conditions and charges*

(4) Where the Tribunal has made an order on an application under subsection 157(1), (2) or (3) specifying charges, if any, and conditions, in relation to the applicant, in respect of the matters specified in the order, then if:

    (a) the applicant has complied with the conditions specified in the order; and

    (b) in a case where the order specifies any charges—he or she has paid those charges to the licensor or, if the amount payable could not be ascertained, has given to the licensor an undertaking in writing to pay the charges when ascertained;

the applicant shall be in the like position, in any proceedings for infringement of copyright relating to any of those matters, as if he or she had at all material times been the holder of a licence granted by the owner of the copyright concerned on the conditions, and subject to payment of the charges (if any), specified in the order.

(5) Where the Tribunal has made an order on an application under subsection 157(4) specifying charges (if any) and conditions, in relation to the persons, or to persons included in the classes of persons, specified in the order, in respect of matters specified in the order, then, if:

Replaced Authorised Version registered 10/02/2025 C2024C00854

    (a) any such person has complied with the conditions specified in the order; and

    (b) in the case where the order specifies any charges—the person has paid those charges to the licensor or, if the amount payable could not be ascertained, has given to the licensor an undertaking in writing to pay the charges when ascertained;

that person shall be in the like position, in any proceedings for infringement of copyright relating to any of those matters, as if he or she had at all material times been the holder of a licence granted by the owner of the copyright concerned on the conditions, and subject to payment of the charges (if any), specified in the order.

(6) Where a person in relation to whom an order referred to in subsection (4) or subsection (5) applies does, in relation to any of the matters specified in that order, anything that, apart from that subsection, would be an infringement of copyright but would not be such an infringement if he or she were the holder of a licence in respect of the doing of that thing granted by the owner of the copyright concerned on the conditions and subject to payment of the charges (if any) specified in the order, that person is liable to pay to the owner of the copyright the amount of any charges that would be payable if he or she were the holder of such a licence and the owner of the copyright may recover that amount in a court of competent jurisdiction from the person as a debt due to the owner of the copyright.

(7) To avoid doubt, subsections (4) and (5) do not apply to an order that a person be granted a licence.

*Order under section 157 that person be granted licence*

(8) A person whom the Tribunal has ordered under section 157 be granted a licence in the terms proposed by the applicant, the licensor concerned or another party to the application under that section:

    (a) is taken, for the purpose of proceedings for infringement of copyright, to have been granted the licence in those terms; and

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

(b) is liable to pay the owner of the copyright concerned the amount of any charges that would be payable if the person had been granted the licence in those terms.

> Note: Paragraph (a)—if those terms made the licence subject to conditions and the person did not comply with the conditions, the licence will not give the person a defence in the proceedings.

(9) The owner of the copyright may recover the amount described in paragraph (8)(b) from the person in a court of competent jurisdiction as a debt due to the owner.

## Subdivision I—General provisions

### 160  Interim orders

Where an application or reference is made to the Tribunal under this Act, the Tribunal may make an interim order having effect until the final decision of the Tribunal on the application or reference.

### 161  Reference of questions of law to Federal Court of Australia

(1) The Tribunal may, of its own motion or at the request of a party, refer a question of law arising in proceedings before it for determination by the Federal Court of Australia.

(2) A question shall not be referred to the Federal Court of Australia by virtue of the last preceding subsection in pursuance of a request made after the date on which the Tribunal gave its decision in the proceedings unless the request is made before the expiration of such period as is prescribed.

(3) If the Tribunal, after giving its decision in any proceedings, refuses a request to refer a question to the Federal Court of Australia, the party by whom the request was made may, within such period as is prescribed, apply to the Federal Court of Australia for an order directing the Tribunal to refer the question to the Federal Court of Australia.

Replaced Authorised Version registered 10/02/2025 C2024C00854

(4) Where a reference is made to the Federal Court of Australia under this section with respect to any proceedings before the Tribunal, and where an application is made under the last preceding subsection with respect to any such proceedings, every party to the proceedings before the Tribunal is entitled to appear and to be heard.

(5) Where, after the Tribunal has given its decision in any proceedings, the Tribunal refers to the Federal Court of Australia under this section a question of law that arose in the course of the proceedings, and the Federal Court of Australia decides that the question was erroneously determined by the Tribunal:

(a) the Tribunal shall reconsider the matter in dispute and, if it considers it necessary to do so for the purpose of giving effect to the decision of the Federal Court of Australia, shall give to the parties to the proceedings a further opportunity of presenting their cases; and

(b) if it appears to the Tribunal to be appropriate, and in conformity with the decision of the Federal Court of Australia, to do so, the Tribunal shall make such order revoking or modifying any order previously made by it in the proceedings, or, in the case of proceedings under section 157 where the Tribunal refused to make an order, shall make such order under that section, as the Tribunal considers to be appropriate.

(6) A reference of a question by the Tribunal to the Federal Court of Australia under this section shall be by way of stating a case for the opinion of the Federal Court of Australia.

(7) Jurisdiction is conferred on the Federal Court of Australia to hear and determine a question of law referred to it under this section.

(8) For the purposes of this section, a question of law does not include a question whether there is sufficient evidence to justify a finding of fact by the Tribunal.

Compilation No. 64                                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VI**  Copyright Tribunal of Australia
**Division 3**  Applications and references to the Tribunal

Section 162

### 162  Agreements or awards not affected

Nothing in this Part affects the operation of any agreement or of any award made by an arbitrator, whether the agreement or award was made before, or is made after, the commencement of this Act.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 4—Procedure and evidence

## 163  Proceedings to be in public except in special circumstances

(1) Subject to this section, the hearing of proceedings before the Tribunal shall be in public.

(2) Where the Tribunal is satisfied that it is desirable to do so by reason of the confidential nature of any evidence or matter or for any other reason, the Tribunal may:

   (a) direct that a hearing or part of a hearing shall take place in private and give directions as to the persons who may be present; or

   (b) give directions prohibiting or restricting the publication of evidence given before the Tribunal (whether in public or in private) or of matters contained in documents produced to the Tribunal.

## 163A  Application may be made to Tribunal by the agent of the copyright owner

(1) An owner of copyright may make an application to the Tribunal under this Act by his or her agent.

(2) Two or more owners of copyright may jointly make a single application to the Tribunal by the same agent against the same person or body.

## 164  Procedure

In proceedings before the Tribunal:

   (a) the procedure of the Tribunal is, subject to this Act and the regulations, within the discretion of the Tribunal;

   (b) the Tribunal is not bound by the rules of evidence; and

   (c) the proceedings shall be conducted with as little formality, and with as much expedition, as the requirements of this Act

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 165

and a proper consideration of the matters before the Tribunal permit.

## 165  Mistakes or errors in orders of the Tribunal

The Tribunal may correct, in any order of the Tribunal, a clerical mistake or an error arising from an accidental slip or omission.

## 166  Regulations as to procedure

(1) The regulations may make provision for or in relation to the procedure in connexion with the making of references and applications to the Tribunal and the regulation of proceedings before the Tribunal and may prescribe the fees payable in respect of those references and applications and the fees and expenses of witnesses in those proceedings.

(2) The regulations may include provision:

(a) for requiring notice of an intended reference to the Tribunal under section 154, section 155 or section 156 to be advertised in accordance with the regulations;

(b) for requiring notice of an intended application to the Federal Court of Australia under subsection 161(3) to be given to the Tribunal and to the other parties to the proceedings, and for limiting the time within which any such notice is to be given;

(c) for suspending, or authorizing or requiring the Tribunal to suspend, the operation of orders of the Tribunal in cases where, after giving its decision, the Tribunal refers a question of law to the Federal Court of Australia;

(d) for modifying, in relation to orders of the Tribunal the operation of which is suspended, the operation of any provisions of this Part as to the effect of orders made under this Part;

(e) for the publication of notices, or the doing of any other things, to ensure that persons affected by the suspension of an order of the Tribunal will be informed of its suspension; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

(f) for regulating or prescribing any other matters incidental to or consequential upon any request, application, order or decision under section 161.

## 167  Power to take evidence on oath

(1) The Tribunal may take evidence on oath or affirmation, and for that purpose a member may administer an oath or affirmation.

(2) A member or the Registrar may summon a person to appear before the Tribunal to give evidence.

(3) A member or the Registrar may summon a person to produce specified documents or articles to the Tribunal by producing the documents or articles to a specified person at a specified time at a specified place.

## 168  Evidence in form of written statement

The Tribunal may, if it thinks fit, permit a person appearing as a witness before the Tribunal to give evidence by tendering, and verifying by oath or affirmation, a written statement, which shall be filed with the Registrar.

## 169  Representation

In proceedings before the Tribunal:
(a) a party other than a body corporate or an unincorporated body of persons may appear in person or be represented by an employee of the party approved by the Tribunal;
(b) a party being a body corporate may be represented by a director or other officer, or by an employee, of the party approved by the Tribunal;
(c) a party being an unincorporated body of persons or a member of such a body may be represented by a member, or by an officer or employee, of the body approved by the Tribunal; and

Compilation No. 64                                     Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VI**  Copyright Tribunal of Australia
**Division 4**  Procedure and evidence

Section 169

___

(d)  any party may be represented by a barrister or solicitor of the High Court or of the Supreme Court of a State or of a Territory.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 4A—Alternative dispute resolution processes

### 169A  Referral of proceeding for alternative dispute resolution process

(1) If an application or reference is made to the Tribunal, the President or a Deputy President may:

    (a) direct the holding of a conference of the parties or their representatives in relation to the proceeding, or any part of the proceeding or any matter arising out of the proceeding; or

    (b) direct that the proceeding, or any part of the proceeding or any matter arising out of the proceeding, be referred for a particular alternative dispute resolution process (other than conferencing).

(2) The President may also direct the holding of conferences of the parties or their representatives in the case of applications or references made to the Tribunal that are of a kind specified in the direction.

(3) The President may also direct that proceedings be referred for a particular alternative dispute resolution process (other than conferencing) in the case of applications or references made to the Tribunal that are of a kind specified in the direction.

(4) A direction may be given under a particular paragraph of subsection (1):

    (a) whether or not a direction has previously been given under the same or the other paragraph of that subsection in relation to the proceeding; and

    (b) whether or not a direction under subsection (2) or (3) has applied.

(5) If a direction under this section is applicable to:

    (a) a proceeding; or

    (b) a part of a proceeding; or

    (c) a matter arising out of a proceeding;

Compilation No. 64                          Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

each party must act in good faith in relation to the conduct of the alternative dispute resolution process concerned.

## 169B  Directions by President or Deputy President

(1) The President or a Deputy President may give directions about alternative dispute resolution processes.

(2) Directions under subsection (1) may relate to:

    (a) the procedure to be followed in the conduct of an alternative dispute resolution process; and

    (b) the person who is to conduct an alternative dispute resolution process; and

    (c) the procedure to be followed when an alternative dispute resolution process ends.

(3) Subsection (2) does not limit subsection (1).

(4) The President or a Deputy President may at any time vary or revoke a direction under subsection (1).

(5) A person is not entitled to conduct an alternative dispute resolution process unless the person is:

    (a) a member; or

    (b) the Registrar; or

    (c) a person whose services are made available, under an arrangement made by the Registrar and the Chief Executive Officer and Principal Registrar of the Federal Court of Australia, to conduct the process; or

    (d) a person engaged under section 169G.

## 169C  Agreement about the terms of a decision etc.

(1) If:

    (a) in the course of an alternative dispute resolution process under this Division, agreement is reached between the parties or their representatives as to the terms of a decision of the Tribunal:

Replaced Authorised Version registered 10/02/2025 C2024C00854

(i)  in the proceeding; or

(ii)  in relation to the part of the proceeding; or

(iii)  in relation to the matter arising out of the proceeding;

that would be acceptable to the parties; and

(b)  the terms of the agreement are reduced to writing, signed by or on behalf of the parties and lodged with the Tribunal; and

(c)  7 days pass after lodgment, and none of the parties has notified the Tribunal in writing that he or she wishes to withdraw from the agreement; and

(d)  the Tribunal is satisfied that a decision in the terms of the agreement or consistent with those terms would be within the powers of the Tribunal;

the Tribunal may, if it appears to it to be appropriate to do so, act in accordance with whichever of subsection (2) or (3) is relevant in the particular case.

(2)  If the agreement reached is an agreement as to the terms of a decision of the Tribunal in the proceeding, the Tribunal may, without giving the parties an opportunity of presenting their cases, make a decision in accordance with those terms.

(3)  If the agreement relates to:

(a)  a part of the proceeding; or

(b)  a matter arising out of the proceeding;

the Tribunal may, in its decision in the proceeding, give effect to the terms of the agreement without giving the parties an opportunity of presenting their cases so far as they relate only to the part or matter to which the agreement relates.

## 169D  Evidence not admissible

(1)  Evidence of anything said, or any act done, at an alternative dispute resolution process under this Division is not admissible:

(a)  in any court; or

(b)  in any proceedings before a person authorised by a law of the Commonwealth or of a State or Territory to hear evidence; or

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 169E

---

(c) in any proceedings before a person authorised by the consent of the parties to hear evidence.

*Exceptions*

(2) Subsection (1) does not apply so as to prevent the admission, at the hearing of a proceeding before the Tribunal, of particular evidence if the parties agree to the evidence being admissible at the hearing.

(3) Subsection (1) does not apply so as to prevent the admission, at the hearing of a proceeding before the Tribunal, of:

   (a) a case appraisal report prepared by a person conducting an alternative dispute resolution process under this Division; or

   (b) a neutral evaluation report prepared by a person conducting an alternative dispute resolution process under this Division;

unless a party to the proceeding notifies the Tribunal before the hearing that he or she objects to the report being admissible at the hearing.

## 169E  Eligibility of person conducting alternative dispute resolution process to sit as a member of the Tribunal

If:

   (a) an alternative dispute resolution process under this Division in relation to a proceeding is conducted by a member of the Tribunal; and

   (b) a party (the ***objector***) to the proceeding notifies the Tribunal, before any party to the proceeding is given an opportunity of presenting its case, that the objector objects to that member participating in the proceeding;

that member is not entitled to be a member of the Tribunal as constituted for the purposes of the proceeding.

## 169F  Participation by telephone etc.

The person conducting an alternative dispute resolution process under this Division may allow a person to participate by:

   (a) telephone; or

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

    (b)  closed-circuit television; or

    (c)  any other means of communication.

### 169G  Engagement of persons to conduct alternative dispute resolution processes

(1)  The Registrar may, on behalf of the Commonwealth, engage persons as consultants to conduct one or more kinds of alternative dispute resolution processes under this Division.

(2)  The Registrar must not engage a person under subsection (1) unless the Registrar is satisfied, having regard to the person's qualifications and experience, that the person is a suitable person to conduct the relevant kind or kinds of alternative dispute resolution processes under this Division.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 170

## Division 5—Miscellaneous

### 170  Registrar

(1)  There is to be a Registrar of the Tribunal.

(2)  The Registrar is to be a person engaged under the *Public Service Act 1999*, or a person whose services are made available under an arrangement made under that Act, who is appointed as the Registrar by the Minister by written instrument.

*Remuneration as public servant*

(3)  The office of Registrar is not a public office for the purposes of the *Remuneration Tribunal Act 1973*.

*Resignation*

(4)  The Registrar may resign his or her appointment by giving the Minister a written resignation.

*Termination of appointment*

(5)  The Minister may terminate, by writing signed by him or her, the appointment of the Registrar.

(6)  The appointment of the Registrar is terminated if the Registrar ceases to be engaged under the *Public Service Act 1999* or to be a person whose services are made available under an arrangement made under that Act.

*Acting appointment*

(7)  The President may appoint a person engaged under the *Public Service Act 1999*, or a person whose services are made available under an arrangement made under that Act, to act as the Registrar:

  (a)  during a vacancy in the office of Registrar (whether or not an appointment has previously been made to the office); or

Replaced Authorised Version registered 10/02/2025 C2024C00854

(b) during any period, or during all periods, when the Registrar is absent from duty or from Australia or is, for any reason, unable to perform the duties of the office.

Note:    For rules that apply to acting appointments, see section 33A of the *Acts Interpretation Act 1901*.

## 170A  Other staff of the Tribunal

Any staff needed to assist the Tribunal must be persons engaged under the *Public Service Act 1999* or persons whose services are made available under arrangements made under that Act.

## 171  Protecting persons connected with Tribunal proceedings

(1) A member has, in the performance of his or her duty as a member, the same protection and immunity as a Justice of the High Court.

(1A) An alternative dispute resolution practitioner has, in the performance of his or her duties as an alternative dispute resolution practitioner under this Act, the same protection and immunity as a Justice of the High Court.

(1B) The Registrar has in the performance of his or her duty as Registrar under section 167, 174 or 175, the same protection and immunity as a Justice of the High Court.

(2) A barrister, solicitor or other person appearing before the Tribunal on behalf of a party has the same protection and immunity as a barrister has in appearing for a party in proceedings in the High Court.

(3) A person summoned to appear before the Tribunal as a witness has the same protection, and is, in addition to the penalties provided by this Act, subject to the same liabilities, in any civil or criminal proceedings as a witness in proceedings in the High Court.

(4) In this section:

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 172

*alternative dispute resolution practitioner* means a person who conducts an alternative dispute resolution process under Division 4A.

### 172  Offences by witnesses

*Failing to appear*

(1)  A person commits an offence if:

    (a)  the person has been summoned to appear as a witness before the Tribunal; and

    (b)  there has been tendered to the person an amount of money at least equal to the expenses the person could reasonably be expected to incur in connection with appearing as a witness; and

    (c)  the person fails to appear in obedience to the summons.

Penalty:  30 penalty units or imprisonment for 6 months, or both.

*Failing to produce document or article summoned*

(2)  A person commits an offence if:

    (a)  the person has been summoned to produce a document or article to the Tribunal; and

    (b)  there has been tendered to the person an amount of money at least equal to the expenses the person could reasonably be expected to incur in connection with producing the document or article; and

    (c)  the person fails to produce the document or article.

Penalty:  30 penalty units or imprisonment for 6 months, or both.

*Refusal to swear or affirm*

(3)  A person commits an offence if:

    (a)  the person appears before the Tribunal; and

    (b)  the person refuses to be sworn or to make an affirmation.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Penalty:  30 penalty units or imprisonment for 6 months, or both.

*Refusal to answer questions or produce documents as required*

(4) A person commits an offence if:

    (a) the person appears before the Tribunal; and

    (b) the Tribunal requires the person to answer a question or produce a document or article; and

    (c) the person refuses to answer the question or produce the document or article.

Penalty:  30 penalty units or imprisonment for 6 months, or both.

*General defence of reasonable excuse*

(5) Subsection (1), (2), (3) or (4) does not apply if the person has a reasonable excuse.

> Note:     A defendant bears an evidential burden in relation to the matter in subsection (5) (see subsection 13.3(3) of the *Criminal Code*).

## 173  Offences relating to the Tribunal

*Insulting a member*

(1) A person commits an offence if:

    (a) the person engages in conduct; and

    (b) the person's conduct insults or disturbs a member in the exercise of his or her powers or functions as a member.

Penalty:  30 penalty units or imprisonment for 6 months, or both.

*Interrupting proceedings of the Tribunal*

(2) A person commits an offence if:

    (a) the person engages in conduct; and

    (b) the person's conduct interrupts the proceedings of the Tribunal.

Penalty:  30 penalty units or imprisonment for 6 months, or both.

Compilation No. 64      Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VI**  Copyright Tribunal of Australia
**Division 5**  Miscellaneous

---

Section 173

---

*Using insulting language*

(3) A person commits an offence if:

(a) the person uses insulting language towards another person; and

(b) the other person is a member.

Penalty:  30 penalty units or imprisonment for 6 months, or both.

*Creating a disturbance*

(4) A person commits an offence if:

(a) the person engages in conduct; and

(b) the person's conduct creates a disturbance in or near a place where the Tribunal is sitting.

Penalty:  30 penalty units or imprisonment for 6 months, or both.

*Taking part in creating or continuing a disturbance*

(5) A person commits an offence if:

(a) the person takes part in creating or continuing a disturbance; and

(b) the disturbance is in or near a place where the Tribunal is sitting.

Penalty:  30 penalty units or imprisonment for 6 months, or both.

*Contravention of direction limiting publication of evidence*

(6) A person commits an offence if:

(a) the person engages in conduct; and

(b) the conduct contravenes a direction of the Tribunal under paragraph 163(2)(b).

Penalty:  30 penalty units or imprisonment for 6 months, or both.

*Contempt of Tribunal*

(7) A person commits an offence if:

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

(a) the person engages in conduct; and

(b) the person's conduct would, if the Tribunal were a court of record, constitute a contempt of that court.

Penalty:  30 penalty units or imprisonment for 6 months, or both.

*Definition of **engage in conduct***

(8) In this section:

**engage in conduct** means:

(a) do an act; or

(b) omit to perform an act.

## 174  Costs of proceedings

(1) The Tribunal may order that the costs of any proceedings before it incurred by any party, or a part of those costs, shall be paid by any other party and may tax or settle the amount of the costs to be so paid, or specify the manner in which they are to be taxed.

(1A) In taxing or settling under subsection (1) the amount of the costs, or of a part of the costs, of any proceedings before the Tribunal incurred by a party, the Tribunal or the person or persons taxing or settling those costs, as the case may be, shall allow so much only of the amount as in the opinion of the Tribunal or the person or persons, as the case may be, would be allowed if the proceedings were proceedings before the Federal Court of Australia and the costs were taxed under the Federal Court Rules.

(2) Costs directed by the Tribunal to be paid to a party may be recovered by that party in any court of competent jurisdiction.

(2A) In any proceedings before a court under subsection (2) for the recovery of costs directed by the Tribunal to be paid to a party, a certificate signed by the Registrar that states that the costs have been taxed or the amount of the costs has been settled and sets out the amount of the costs as so taxed or settled is *prima facie* evidence of the matters stated in the certificate.

Compilation No. 64                                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VI** Copyright Tribunal of Australia
**Division 5** Miscellaneous

Section 175

### 175  Proof of orders of Tribunal

Without prejudice to any other method available by law for the proof of orders of the Tribunal, a document purporting to be a copy of such an order, and to be certified by the Registrar to be a true copy of the order, is, in any proceeding, evidence of the order.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Part VII—The Crown

## Division 1—Crown copyright

### 176  Crown copyright in original works made under direction of Crown

(1) Where, apart from this section, copyright would not subsist in an original literary, dramatic, musical or artistic work made by, or under the direction or control of, the Commonwealth or a State, copyright subsists in the work by virtue of this subsection.

(2) The Commonwealth or a State is, subject to this Part and to Part X, the owner of the copyright in an original literary, dramatic, musical or artistic work made by, or under the direction or control of, the Commonwealth or the State, as the case may be.

### 177  Crown copyright in original works first published in Australia under direction of Crown

Subject to this Part and to Part X, the Commonwealth or a State is the owner of the copyright in an original literary, dramatic, musical or artistic work first published in Australia if first published by, or under the direction or control of, the Commonwealth or the State, as the case may be.

### 178  Crown copyright in recordings and films made under direction of Crown

(1) Where, apart from this section, copyright would not subsist in a sound recording or cinematograph film made by, or under the direction or control of, the Commonwealth or a State, copyright subsists in the recording or film by virtue of this subsection.

(2) The Commonwealth or a State is, subject to this Part and to Part X, the owner of the copyright in a sound recording or cinematograph

Compilation No. 64                          Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 179

film made by, or under the direction or control of, the
Commonwealth or the State, as the case may be.

## 179  Provisions relating to ownership of copyright may be modified by agreement

The last three preceding sections have effect subject to any
agreement made by, or on behalf of, the Commonwealth or a State
with the author of the work or with the maker of the sound
recording or cinematograph film, as the case may be, by which it is
agreed that the copyright in the work, recording or film is to vest in
the author or maker, or in another person specified in the
agreement.

## 180  Duration of Crown copyright in original works, sound recordings and films

Copyright in copyright material subsists until 50 years after the
calendar year in which the material is made if:

(a)  the material is a work, sound recording or cinematograph
film; and

(b)  the Commonwealth or a State:

(a)  is the owner; or

(b)  would, but for an agreement to which section 179
applies, be the owner;

of copyright in the material.

## 182  Application of Parts III and IV to copyright subsisting by virtue of this Part

(1)  Part III (other than the provisions of that Part relating to the
subsistence, duration or ownership of copyright) applies in relation
to copyright subsisting by virtue of this Part in a literary, dramatic,
musical or artistic work in like manner as it applies in relation to
copyright subsisting in such a work by virtue of that Part.

(2)  Part IV (other than the provisions of that Part relating to the
subsistence, duration or ownership of copyright) applies in relation

Replaced Authorised Version registered 10/02/2025 C2024C00854

to copyright subsisting by virtue of this Part in a sound recording or cinematograph film in like manner as it applies in relation to copyright subsisting in such a recording or film by virtue of that Part.

### 182A  Copyright in statutory instruments and judgments etc.

(1) The copyright, including any prerogative right or privilege of the Crown in the nature of copyright, in a prescribed work is not infringed by the making, by reprographic reproduction, of one copy of the whole or of a part of that work by or on behalf of a person and for a particular purpose.

(2) Subsection (1) does not apply to the making, by reprographic reproduction, of a copy of the whole or a part of the work, where a charge is made for making and supplying that copy, unless the amount of the charge does not exceed the cost of making and supplying that copy.

(3) In subsection (1), *a prescribed work* means:

   (a) an Act or State Act, an enactment of the legislature of a Territory or an instrument (including an Ordinance or a rule, regulation or by-law) made under an Act, a State Act or such an enactment;

   (b) a judgment, order or award of a Federal court or of a court of a State or Territory;

   (c) a judgment, order or award of a Tribunal (not being a court) established by or under an Act or other enactment of the Commonwealth, a State or a Territory;

   (d) reasons for a decision of a court referred to in paragraph (b), or of a Tribunal referred to in paragraph (c), given by the court or by the Tribunal; or

   (e) reasons given by a Justice, Judge or other member of a court referred to in paragraph (b), or of a member of a Tribunal referred to in paragraph (c), for a decision given by him or her either as the sole member, or as one of the members, of the court or Tribunal.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 182B

# Division 2—Use of copyright material for the Crown

## 182B  Definitions

(1) Subject to subsection (2), in this Division:

***collecting society*** means a company in respect of which a declaration is in force under section 153F.

***copyright material*** means:
   (a) a work; or
   (b) a published edition of a work; or
   (c) a sound recording; or
   (d) a cinematograph film; or
   (e) a television or sound broadcast; or
   (f) a work that is included in a sound recording, a cinematograph film or a television or sound broadcast.

***government*** means the Commonwealth or a State.

Note:     State includes the Australian Capital Territory and the Northern Territory: see paragraph 10(3)(n).

***government copy*** means a reproduction in a material form of copyright material made under subsection 183(1).

(2) A reference in subsection (1) to a work does not include a reference to a literary work that consists of a computer program or a compilation of computer programs.

## 182C  Relevant collecting society

A company is the relevant collecting society in relation to a government copy if there is in force, under Division 3 of Part VI, a declaration of the company as the collecting society for the purposes of this Division in relation to:
   (a) all government copies; or

Replaced Authorised Version registered 10/02/2025 C2024C00854

(b) a class of government copies that includes the
first-mentioned government copy.

## 183  Use of copyright material for the services of the Crown

(1) The copyright in a literary, dramatic, musical or artistic work or a
published edition of such a work, or in a sound recording,
cinematograph film, television broadcast or sound broadcast, is not
infringed by the Commonwealth or a State, or by a person
authorized in writing by the Commonwealth or a State, doing any
acts comprised in the copyright if the acts are done for the services
of the Commonwealth or State.

(2) Where the Government of the Commonwealth has made an
agreement or arrangement with the Government of some other
country for the supply to that country of goods required for the
defence of that country:

(a) the doing of any act in connexion with the supply of those
goods in pursuance of the agreement or arrangement; and

(b) the sale to any person of such of those goods as are not
required for the purposes of the agreement or arrangement;

shall, for the purposes of the last preceding subsection, be each
deemed to be for the services of the Commonwealth.

(3) Authority may be given under subsection (1) before or after the
acts in respect of which the authority is given have been done, and
may be given to a person notwithstanding that he or she has a
licence granted by, or binding on, the owner of the copyright to do
the acts.

(4) Where an act comprised in a copyright has been done under
subsection (1), the Commonwealth or State shall, as soon as
possible, unless it appears to the Commonwealth or State that it
would be contrary to the public interest to do so, inform the owner
of the copyright, as prescribed, of the doing of the act and shall
furnish him or her with such information as to the doing of the act
as he or she from time to time reasonably requires.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Section 183**

(5) Where an act comprised in a copyright has been done under subsection (1), the terms for the doing of the act are such terms as are, whether before or after the act is done, agreed between the Commonwealth or the State and the owner of the copyright or, in default of agreement, as are fixed by the Copyright Tribunal.

(6) An agreement or licence (whether made or granted before or after the commencement of this Act) fixing the terms upon which a person other than the Commonwealth or a State may do acts comprised in a copyright is inoperative with respect to the doing of those acts, after the commencement of this Act, under subsection (1), unless the agreement or licence has been approved by:

    (a) in the case of the Commonwealth—the Minister; or

    (b) in the case of a State—the Minister of the State with responsibility for copyright.

(7) Where an article is sold and the sale is not, by virtue of subsection (1), an infringement of a copyright, the purchaser of the article, and a person claiming through him or her, is entitled to deal with the article as if the Commonwealth or State were the owner of that copyright.

(8) An act done under subsection (1) does not constitute publication of a work or other subject-matter and shall not be taken into account in the application of any provision of this Act relating to the duration of any copyright.

(9) Where an exclusive licence is in force in relation to any copyright, the preceding subsections of this section have effect as if any reference in those subsections to the owner of the copyright were a reference to the exclusive licensee.

(11) The reproduction, copying or communication of the whole or a part of a work or other subject-matter for the educational purposes of an educational institution of, or under the control of, the Commonwealth, a State, the Australian Capital Territory or the Northern Territory shall, for the purposes of this section, be deemed not to be an act done for the services of the

Replaced Authorised Version registered 10/02/2025 C2024C00854

Commonwealth, that State, the Australian Capital Territory or the Northern Territory.

## 183A  Special arrangements for copying for services of government

(1) Subsections 183(4) and (5) do not apply in relation to a government copy (whenever it was made) if a company is the relevant collecting society for the purposes of this Division in relation to the copy and the company has not ceased operating as that collecting society.

(2) If subsection 183(5) does not apply to government copies made in a particular period for the services of a government, the government must pay the relevant collecting society in relation to those copies (other than excluded copies) equitable remuneration worked out for that period using a method:

    (a) agreed on by the collecting society and the government; or

    (b) if there is no agreement—determined by the Tribunal under section 153K.

(3) The method of working out equitable remuneration payable to a collecting society in respect of government copies (other than excluded copies) for a period must:

    (a) take into account the estimated number of those copies made for the services of the government during the period, being copies in relation to which the society is the relevant collecting society; and

    (b) specify the sampling system to be used for estimating the number of copies for the purposes of paragraph (a).

(4) The method of working out the equitable remuneration payable may provide for different treatment of different kinds or classes of government copies.

(5) Subsections (3) and (4) apply whether the method is agreed on by the collecting society and the government or is determined by the Tribunal.

(6) In this section:

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 183B

*excluded copies* means government copies in respect of which it appears to the government concerned that it would be contrary to the public interest to disclose information about the making of the copies.

## 183B  Payment and recovery of equitable remuneration payable for government copies

(1) Equitable remuneration payable to a collecting society under subsection 183A(2) must be paid:

    (a) in the manner, and at the times, agreed on by the collecting society and the government; or

    (b) if the Tribunal has made an order under subsection 153K(3) specifying how and when payments are to be made—in the manner, and at the times, specified in the order.

(2) If equitable remuneration is not paid in accordance with the agreement or the Tribunal's order, the collecting society may recover the remuneration as a debt due to the society in a court of competent jurisdiction.

## 183C  Powers of collecting society to carry out sampling

(1) This section applies if the method of working out equitable remuneration payable under subsection 183A(2) for government copies made for the services of a government has been agreed on by the government and the relevant collecting society or has been determined by the Tribunal.

(2) The collecting society may give written notice to the government that the society wishes to carry out sampling in accordance with the method during a specified period at specified premises occupied by the government. The period specified must not start earlier than 7 days after the day on which the notice is given.

(3) The government may give the collecting society a written objection, based on reasonable grounds, to the proposal to carry out sampling during the period, or at the premises, specified in the notice. However, if it does so, the notice of objection must propose

Compilation No. 64                Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

an alternative period during which, or alternative premises at which, as the case may be, sampling may be carried out.

(4) If the government gives the collecting society an objection, sampling may not be carried out during the period, or at the premises, to which the objection relates unless the objection is withdrawn.

(5) If the government has not objected, or has withdrawn any objection it made, before or during the specified period, a person authorised in writing by the society may, during that period, enter the premises specified in the notice and carry out sampling in accordance with the method on any ordinary working day for government staff who work in the premises.

(6) The government must take reasonable steps to ensure that the person who attends at the premises is given all reasonable and necessary facilities and assistance for carrying out the sampling.

## 183D  Annual report and accounts of collecting society

(1) As soon as practicable after the end of each financial year, a company that was a collecting society during any part of the year must prepare a report of its operations as a collecting society during the year and send a copy of the report to the Minister.

(2) A collecting society must keep accounting records correctly recording and explaining the transactions of the society (including any transactions as trustee) and the financial position of the society.

(3) Accounting records must be kept in a manner that will enable true and fair accounts of the society to be prepared from time to time and to be conveniently and properly audited.

(4) As soon as practicable after the end of each financial year, a company that was a collecting society during any part of the year must:

    (a) have its accounts audited by an auditor who is not a member of the society; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

(b) give a copy of the audited accounts and the auditor's report on the audit to the Minister.

(5) The Minister must cause a copy of a document given to the Minister under subsection (1) or paragraph (4)(b) to be laid before each House of the Parliament within 15 sitting days of that House after the Minister received the document.

(6) A collecting society must give its members reasonable access to copies of:

(a) all reports and audited accounts prepared by it under this section; and

(b) all auditors' reports on the audit of the accounts.

(7) This section does not affect any obligations of a collecting society relating to the preparation and lodging of annual returns or accounts under the law under which it is incorporated.

## 183E  Alteration of rules of collecting society

If a collecting society alters its rules, it must give a copy of the altered rules, together with a statement of the effects of, and reasons for, the alteration, to the Minister and the Tribunal within 21 days after the day on which the alteration was made.

## 183F  Applying to Tribunal for review of distribution arrangement

(1) A collecting society or a member of a collecting society may apply to the Copyright Tribunal for review of the arrangement adopted, or proposed to be adopted, by the collecting society for distributing amounts it collects in a period.

(2) If the Tribunal makes an order under section 153KA varying the arrangement or substituting for it another arrangement, the arrangement reflecting the Tribunal's order has effect as if it had been adopted in accordance with the collecting society's rules, but does not affect a distribution started before the order was made.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Part VIII—Extension or restriction of operation of Act

## Division 1—Foreign countries

### 184  Application of Act to countries other than Australia

(1) Subject to this section, the regulations may make provision applying any of the provisions of this Act (other than those of Part XIA) specified in the regulations, in relation to a country (other than Australia) so specified, in any one or more of the following ways:

    (a) so that the provisions apply in relation to literary, dramatic, musical or artistic works or editions first published, or sound recordings or cinematograph films made or first published, in that country in like manner as those provisions apply in relation to literary, dramatic, musical or artistic works or editions first published, or sound recordings or cinematograph films made or first published, in Australia;

    (b) so that the provisions apply in relation to artistic works that are buildings situated in that country or are attached to, or form part of, buildings situated in that country in like manner as those provisions apply in relation to artistic works that are buildings situated in Australia or are attached to, or form part of, buildings situated in Australia;

    (c) so that the provisions apply in relation to persons who, at a material time, are citizens or nationals of that country in like manner as those provisions apply in relation to persons who, at such a time, are Australian citizens;

    (d) so that the provisions apply in relation to persons who, at a material time, are resident in that country in like manner as those provisions apply in relation to persons who, at such a time, are resident in Australia;

    (e) so that the provisions apply in relation to bodies incorporated under the law of that country in like manner as those

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VIII**  Extension or restriction of operation of Act
**Division 1**  Foreign countries

## Section 184

provisions apply in relation to bodies incorporated under a law of the Commonwealth or of a State;

(f) so that the provisions apply in relation to television broadcasts and sound broadcasts made from places in that country by persons entitled under the law of that country to make such broadcasts in like manner as those provisions apply in relation to television broadcasts and sound broadcasts made from places in Australia by the Australian Broadcasting Corporation, by the Special Broadcasting Service Corporation, by a holder of a licence allocated by the Australian Communications and Media Authority under the *Broadcasting Services Act 1992* or by a person authorised to make the broadcast by a class licence determined by that Authority under that Act.

(2) Regulations applying a provision of this Act in relation to a country other than Australia in accordance with the last preceding subsection:

(a) may apply the provision without exception or modification or subject to such exceptions or modifications as are specified in the regulations; and

(b) may apply the provision either generally or in relation to such classes of works or other subject-matter, or other classes of cases, as are specified in the regulations.

(3) Before the Governor-General makes a regulation for the purposes of subsection (1) applying a provision of this Act in relation to a country other than Australia:

(a) the country must be a party to an international agreement specified, in relation to the provision of this Act, by the regulations for the purposes of this paragraph; or

(b) the Minister must be satisfied that adequate protection is or will be given under the law of the country to owners of copyright under this Act in the class of works or other subject-matter to which the provision of this Act relates.

(4) Where:

Replaced Authorised Version registered 10/02/2025 C2024C00854

(a) the identity of the author of an unpublished work is unknown but there are reasonable grounds for believing that the author of the work was, at the time when, or for a substantial part of the period during which, the work was made, a citizen or national of a country other than Australia;

(b) under the law of that country, a person is authorized to represent the author, or to protect and enforce the rights of the author, in relation to that work; and

(c) provision is made by the regulations applying any of the provisions of this Act in relation to works made by citizens or nationals of that country;

that person shall, for the purposes of those provisions as so applying, be treated as if he or she were the author of the work.

## 185  Denial of copyright to citizens of countries not giving adequate protection to Australian works

(2) The regulations may, subject to subsection (3), provide, either generally or in such classes of cases as are specified in the regulations, that copyright under this Act does not subsist in works first published after a date specified in the regulations (which may be a date before the commencement of the regulations or before the commencement of this Act) if, at the time of the first publication of those works, the authors of the works were or are:

(a) citizens or nationals of a country specified in the regulations, not being at that time persons resident in Australia; or

(b) in the case of works being sound recordings or cinematograph films—bodies incorporated under the law of a country specified in the regulations.

(3) Before the Governor-General makes a regulation for the purposes of subsection (2) in relation to a country:

(a) the Minister must be satisfied that that the law of the country:

(i) does not give adequate protection to Australian works; or

(ii) does not give adequate protection in relation to a class or classes of such works;

*Copyright Act 1968*                                                      *437*

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 185
_____

(whether the lack of protection relates to the nature of the work or the nationality, citizenship or country of residence of its author, or all of those matters); and

(b) the Minister must have regard to the nature and extent of that lack of protection.

(4) In this section:

*Australian work* means a work the author of which was, at the time when the work was made, a qualified person for the purposes of the relevant provision of this Act.

*author*, in relation to a sound recording or a cinematograph film, means the maker of the recording or film.

*the relevant provision of this Act* means:

(a) in relation to a literary, dramatic, musical or artistic work—section 32; and

(b) in relation to a sound recording or a cinematograph film—Part IV.

*work* means a literary, dramatic, musical or artistic work, a sound recording or a cinematograph film.

Replaced Authorised Version registered 10/02/2025 C2024C00854

## Division 2—International organizations

### 186  Application of Act to international organizations

(1) The regulations may, subject to subsection (1A), declare an organization:

    (a) of which 2 or more countries, or the Governments of 2 or more countries, are members; or

    (b) that is constituted by persons representing 2 or more countries, or representing the Governments of 2 or more countries;

to be an international organization to which this Act applies.

(1A) Before the Governor-General makes a regulation for the purposes of subsection (1) in relation to an organization, the Minister must be satisfied that it is desirable that this Act should apply in relation to the organization.

(2) An international organization to which this Act applies that otherwise does not have, or at some material time otherwise did not have, the legal capacities of a body corporate has, and shall be deemed at all material times to have had, the legal capacities of a body corporate for the purpose of holding, dealing with and enforcing copyright and for the purposes of all legal proceedings relating to copyright.

### 187  Original works made or first published by international organizations

(1) Where an original literary, dramatic, musical or artistic work is made by, or under the direction or control of, an international organization to which this Act applies in such circumstances that copyright would not, apart from this subsection, subsist in the work:

    (a) copyright subsists in the work; and

    (c) the organization is, subject to Part X, the owner of that copyright.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 188

(2) Where an original literary, dramatic, musical or artistic work is first published by, or under the direction or control of, an international organization to which this Act applies in such circumstances that copyright would not, apart from this subsection, subsist in the work immediately after the first publication of the work:

    (a) copyright subsists in the work, or, if copyright in the work subsisted immediately before its first publication, continues to subsist in the work; and

    (c) the organization is, subject to Part X, the owner of that copyright.

(3) Part III, other than the provisions of that Part relating to the subsistence, duration or ownership of copyright, applies in relation to copyright subsisting by virtue of this section in like manner as it applies in relation to copyright subsisting by virtue of that Part.

(4) This section has effect subject to section 188A.

## 188  Subject-matter, other than original works, made or first published by international organizations

(1) Where a sound recording or a cinematograph film is made by, or under the direction or control of, an international organization to which this Act applies in such circumstances that copyright would not, apart from this subsection, subsist in the recording or film:

    (a) copyright subsists in the recording or film; and

    (c) the organization is, subject to Part X, the owner of that copyright.

(2) Where a sound recording or a cinematograph film is first published by, or under the direction or control of, an international organization to which this Act applies in such circumstances that copyright would not, apart from this subsection, subsist in the recording or film immediately after the first publication of the recording or film:

Replaced Authorised Version registered 10/02/2025 C2024C00854

    (a) copyright subsists in the recording or film, or, if copyright in the recording or film subsisted immediately before its first publication, continues to subsist in the recording or film; and

    (c) the organization is, subject to Part X, the owner of that copyright.

  (3) Where an edition of a literary, dramatic, musical or artistic work or of 2 or more literary, dramatic, musical or artistic works, other than an edition that reproduces a previous edition of the same work or works, is published by, or under the direction or control of, an international organization to which this Act applies in such circumstances that copyright would not, apart from this subsection, subsist in the edition immediately after the first publication of the edition:

    (a) copyright subsists in the edition; and

    (c) the organization is, subject to Part X, the owner of that copyright.

  (4) Part IV, other than the provisions of that Part relating to the subsistence, duration or ownership of copyright, applies in relation to copyright subsisting by virtue of this section in like manner as it applies in relation to copyright subsisting by virtue of that Part.

  (5) This section has effect subject to section 188A.

## 188A  Duration of international organization copyright

  (1) This section applies to copyright that subsists in copyright material under section 187 or 188.

*Copyright material first made public before 1 January 2019*

  (2) The copyright continues to subsist, subject to subsection (4), until 70 years after the calendar year in which the copyright material was first made public if the material was first made public before 1 January 2019.

Compilation No. 64     Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part VIII** Extension or restriction of operation of Act
**Division 2** International organizations

Section 188A

*Copyright material never made public, and material first made public on or after 1 January 2019*

(3) The following table has effect, subject to subsection (4), if the copyright material was not first made public before 1 January 2019.

**Duration of copyright—copyright material not first made public before 1 January 2019**

| Item | Column 1<br>If … | Column 2<br>the copyright continues<br>to subsist until … |
|------|------------------|-----------------------------------------------------------|
| 1 | the copyright material is first made public before the end of 50 years after the calendar year in which the material was made | 70 years after the calendar year in which the material was first made public. |
| 2 | item 1 does not apply | 70 years after the calendar year in which the copyright material was made. |

*Editions*

(4) If the copyright material is an edition to which subsection 188(3) applies, the copyright continues to subsist until 25 years after the calendar year in which the edition was first made public.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films  **Part IX**
Preliminary  **Division 1**

Section 189

# Part IX—Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films

## Division 1—Preliminary

### 189  Definitions

In this Part, unless the contrary intention appears:

***act of false attribution***:
  (a) in relation to an author's moral rights—has the meaning given by subsection 195AC(2); and
  (b) in relation to a performer's moral rights—has the meaning given by subsection 195AHA(2).

***artistic work*** means an artistic work in which copyright subsists.

***attributable act***:
  (a) in relation to an author's moral rights—has the meaning given by subsection 193(2); and
  (b) in relation to a performer's moral rights—has the meaning given by subsection 195ABA(2).

***attributor***:
  (a) in relation to an author's moral rights—has the meaning given by subsection 195AC(2); and
  (b) in relation to a performer's moral rights—has the meaning given by subsection 195AHA(2).

***author***, in relation to a cinematograph film, means the maker of the film.

***cinematograph film*** means the complete and final version of a cinematograph film in which copyright subsists.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part IX  Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films
Division 1  Preliminary

Section 189

*copy record* means a record so far as it embodies:

(a)  a recorded performance; or

(b)  a substantial part of a recorded performance;

being a record derived directly or indirectly from an original record of the performance.

*deal* means sell, let for hire, by way of trade offer or expose for sale or hire, exhibit in public, or distribute and, in Divisions 3 and 3A, includes publish.

*derogatory treatment*:

(a)  in relation to an author's moral rights—has the relevant meaning given by Division 4; and

(b)  in relation to a performer's moral rights—has the meaning given by section 195ALB.

*director*, in relation to a cinematograph film, has a meaning affected by section 191.

*dramatic work* means a dramatic work in which copyright subsists.

*infringing article* means:

(a)  in relation to an author's moral rights:

(i)  an article that embodies a literary, dramatic, musical or artistic work, or a cinematograph film, whether or not the article bears or contains other material; or

(ii)  a reproduction of, or of an adaptation of, a literary, dramatic or musical work; or

(iii)  a reproduction of an artistic work; or

(iv)  a copy of a cinematograph film;

being a work or film in respect of which a moral right of the author has been infringed, other than by derogatory treatment not involving the material distortion or alteration of, or the mutilation of, the work or film; and

(b)  in relation to the moral rights of a performer in a live performance:

*Copyright Act 1968*

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films **Part IX**
Preliminary **Division 1**

Section 189

    (i) a copy record of the live performance, where the making of the copy record has infringed the performer's right of attribution of performership; or

    (ii) a record embodying the live performance, where a person's name is inserted or affixed on the record and the inserting or affixing has infringed the performer's right not to have performership falsely attributed; or

    (iii) a record embodying the live performance, where the record also embodies sounds the making of which have infringed the performer's right not to have performership falsely attributed; or

    (iv) a record embodying the live performance, being the live performance as affected by derogatory treatment that has infringed the performer's right of integrity of performership; and

  (c) in relation to the moral rights of a performer in a recorded performance:

    (i) a copy record of the recorded performance, where the making of the copy record has infringed the performer's right of attribution of performership; or

    (ii) a record embodying the recorded performance, where a person's name is inserted or affixed on the record and the inserting or affixing has infringed the performer's right not to have performership falsely attributed; or

    (iii) a copy record of the recorded performance, where dealings with the copy as a copy of an unaltered recorded performance have infringed the performer's right not to have performership falsely attributed; or

    (iv) a record embodying the recorded performance, being a record that incorporates derogatory treatment that has infringed the performer's right of integrity of performership.

*literary work* means a literary work in which copyright subsists.

*maker*, in relation to a cinematograph film, means the director of the film, the producer of the film and the screenwriter of the film.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 189

---

*moral right* means:

    (a)  in relation to an author:

        (i)  a right of attribution of authorship; or

       (ii)  a right not to have authorship falsely attributed; or

      (iii)  a right of integrity of authorship; and

    (b)  in relation to a performer:

        (i)  a right of attribution of performership; or

       (ii)  a right not to have performership falsely attributed; or

      (iii)  a right of integrity of performership.

*musical work* means a musical work in which copyright subsists.

*name*, in Divisions 3 and 3A, includes a pseudonym, initials or a monogram.

*original record* means a record produced upon the making of a sound recording of a live performance.

Note:  The sound track of a cinematograph film is treated as not being a sound recording: see section 23.

*performance* means a performance within the meaning of Part XIA, so far as the performance consists of sounds.

*performer* in a performance:

    (a)  means each person who contributed to the sounds of the performance; and

    (b)  in relation to a performance that occurs outside Australia, does not include a person who is not a qualified person at the time of the performance.

Note:  See also section 191B, which deals with the conductor of a musical performance.

*performership* means participation in a performance, as the performer or one of the performers.

*person representing the author*, in relation to a possible infringement of any of an author's moral rights in respect of a

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works
and cinematograph films **Part IX**
Preliminary  **Division 1**

Section 189

work, means a person who, under subsection 195AN(1) or (2), is entitled to exercise and enforce the moral right concerned.

***person representing the performer*** means a person who, under subsection 195ANB(1) or (2), is entitled to exercise and enforce a performer's moral right.

***producer***, in relation to a cinematograph film, has the meaning given by section 191.

***qualified person*** has the same meaning as in Part XIA.

***recorded performance*** means a performance embodied in a record so as to constitute a sound recording.

***record embodying a performance*** means:
  (a) an original record of a performance; or
  (b) a copy record of a performance.

***right not to have authorship falsely attributed*** has the meaning given by Division 3.

***right not to have performership falsely attributed*** has the meaning given by Division 3A.

***right of attribution of authorship*** has the meaning given by Division 2.

***right of attribution of performership*** has the meaning given by Division 2A.

***right of integrity of authorship*** has the meaning given by Division 4.

***right of integrity of performership*** has the meaning given by Division 4A.

***screenwriter***, in relation to a cinematograph film, means the person who wrote the script or screenplay of the film, as that meaning is affected by section 191.

Compilation No. 64                              Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

*sound recording* means a sound recording in which copyright subsists.

*staged*, in relation to a live performance, has the meaning given by section 191A.

*work* means a literary work, a dramatic work, a musical work, an artistic work or a cinematograph film.

## 190  Moral rights conferred on individuals

Only individuals have moral rights.

## 191  Director, producer and screenwriter of cinematograph film

(1) A reference in this Part to the director of a cinematograph film in the direction of which 2 or more individuals were involved is a reference to the principal director of the film and does not include a reference to any subsidiary director, whether described as an associate director, line director, assistant director or in any other way.

(2) A reference in this Part to the producer of a cinematograph film is a reference to:

   (a) the individual who was the producer of the film; or

   (b) if there were 2 or more individuals involved in the production of the film—the individual who was the principal producer of the film;

and does not include a reference to any subsidiary producer, whether described as an executive producer, associate producer, line producer, assistant producer or in any other way.

(3) As only individuals have moral rights (see section 190), if the producer of a cinematograph film was a body corporate, the only moral rights in respect of the film are those of the director and screenwriter.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films **Part IX**
Preliminary **Division 1**

Section 191A

(4) A reference in this Part to the screenwriter of a cinematograph film for which 2 or more individuals were involved in the writing of the script or screenplay is a reference to the principal screenwriter.

> Note: If there were 2 or more principal directors, 2 or more individuals who were the principal producers, or 2 or more principal screenwriters, of a cinematograph film, section 195AZJ, 195AZK or 195AZL applies.

## 191A  Staging a performance

For the purposes of this Part, a live performance is **staged** by the person who makes the arrangements necessary for the performance (including elements of the performance not consisting of sounds) to take place.

## 191B  Conductor to be treated as a performer

If a performance of a musical work is conducted by a conductor, then the sounds of the performance are to be treated as having been made by the conductor (as well as by the persons who actually made those sounds).

> Note: As a consequence, the conductor will be able to be treated as being one of the performers. Note, however, the qualified person requirement in the definition of **performer** in section 189.

## 192  Rights to be additional to other rights

(1) The moral rights of the author of a work are in addition to any other rights in relation to the work that the author or anyone else has under this Act.

(2) The moral rights of a performer in a live performance or recorded performance are in addition to any other rights in relation to the performance that the performer or anyone else has under this Act.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part IX**  Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films
**Division 2**  Right of attribution of authorship

Section 193

# Division 2—Right of attribution of authorship

### 193  Author's right of attribution of authorship

(1) The author of a work has a right of attribution of authorship in respect of the work.

(2) The author's right is the right to be identified in accordance with this Division as the author of the work if any of the acts (the ***attributable acts***) mentioned in section 194 are done in respect of the work.

### 194  Acts giving rise to right of attribution of authorship

(1) If the work is a literary, dramatic or musical work, the ***attributable acts*** are the following:

  (a) to reproduce the work in a material form;
  (b) to publish the work;
  (c) to perform the work in public;
  (d) to communicate the work to the public;
  (e) to make an adaptation of the work.

(2) If the work is an artistic work, the ***attributable acts*** are the following:

  (a) to reproduce the work in a material form;
  (b) to publish the work;
  (c) to exhibit the work to the public;
  (d) to communicate the work to the public.

(3) If the work is a cinematograph film, the ***attributable acts*** are the following:

  (a) to make a copy of the film;
  (b) to exhibit the film in public;
  (c) to communicate the film to the public.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works
and cinematograph films  **Part IX**
Right of attribution of authorship  **Division 2**

Section 195

### 195  Nature of the identification of author

(1) Subject to subsection (2), the author of a work may be identified by any reasonable form of identification.

(2) If:

    (a) the author of a work has made known, either generally or to a person who is required under this Part to identify the author, that the author wishes to be identified in a particular way; and

    (b) the identification of the author in that way is reasonable in the circumstances;

the identification is to be made in that way.

### 195AA  Identification of author to be clear and reasonably prominent

An identification of the author of a work must be clear and reasonably prominent.

### 195AB  What is a reasonably prominent identification

When a literary, dramatic, musical or artistic work is reproduced in a material form, an adaptation is made of a literary, dramatic or musical work, or a copy of a cinematograph film is made, an identification of the author is taken to be reasonably prominent if it is included on each reproduction of the work or of the adaptation or on each copy of the film, as the case may be, in such a way that a person acquiring the reproduction or copy will have notice of the author's identity.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part IX**  Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films
**Division 2A**  Right of attribution of performership

Section 195ABA

## Division 2A—Right of attribution of performership

### 195ABA  Performer's right of attribution of performership

(1)  A performer in a live performance or recorded performance has a right of attribution of performership in respect of the performance.

(2)  The performer's right is the right to be identified in accordance with this Division as a performer in the performance if any of the acts (the ***attributable acts***) mentioned in section 195ABB are done in respect of the performance.

> Note:    If there is more than one performer in a performance, then each performer has a right of attribution of performership: see subsection 195AZQ(2).

### 195ABB  Acts giving rise to right of attribution of performership

(1)  The ***attributable acts*** for a live performance are the following:
    (a)  communicating the live performance to the public;
    (b)  staging the live performance in public.

> Note:    For the definition of ***staged***, see section 191A.

(2)  The ***attributable acts*** for a recorded performance are the following:
    (a)  making a copy record of the recorded performance;
    (b)  communicating the recorded performance to the public.

### 195ABC  Nature of the identification of performer

(1)  Subject to this section, a performer may be identified by any reasonable form of identification.

(2)  If:
    (a)  a performer has made known, either generally or to a person who is required under this Part to identify the performer, that the performer wishes to be identified in a particular way; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films **Part IX**

Right of attribution of performermership **Division 2A**

Section 195ABD

(b) the identification of the performer in that way is reasonable in the circumstances;

the identification is to be made in that way.

(3) If a performance is presented by performers who use a group name, then identification by using the group name is sufficient identification of the performers in the group.

## 195ABD  Identification of performer to be clear and reasonably prominent or audible

An identification of a performer must be clear and reasonably prominent or reasonably audible.

## 195ABE  What is a reasonably prominent identification

When a copy record is made of a recorded performance, an identification of a performer or group of performers is taken to be reasonably prominent if it is included on each copy record of the recorded performance in such a way that a person acquiring the copy record will have notice of the identity of the performer or group.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part IX**  Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films
**Division 3**  Right not to have authorship of a work falsely attributed

Section 195AC

# Division 3—Right not to have authorship of a work falsely attributed

## 195AC  Author's right not to have authorship falsely attributed

(1) The author of a work has a right not to have authorship of the work falsely attributed.

(2) The author's right is the right not to have a person (the **_attributor_**) do, in respect of the work, any of the acts (the **_acts of false attribution_**) mentioned in the following provisions of this Division.

## 195AD  Acts of false attribution of authorship of a literary, dramatic or musical work

If the work is a literary, dramatic or musical work, it is an act of false attribution in relation to the author of the work:

(a) to insert or affix, or to authorise the inserting or affixing of, a person's name in or on the work, or in or on a reproduction of the work, in such a way as:

  (i) to imply falsely that the person is the author or an author of the work; or

  (ii) to imply falsely that the work is an adaptation of a work of the person; or

(b) to deal with the work with a person's name so inserted or affixed, if the attributor knows that the person is not an author of the work or that the work is not an adaptation of a work of the person, as the case may be; or

(c) to deal with a reproduction of the work, being a reproduction in or on which a person's name has been so inserted or affixed, if the attributor knows that the person is not an author of the work or that the work is not an adaptation of a work of the person, as the case may be; or

(d) to perform the work in public, or communicate it to the public, as being a work of which a person is the author or as being an adaptation of a work of a person, if the attributor

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films  **Part IX**

Right not to have authorship of a work falsely attributed  **Division 3**

Section 195AE

knows that the person is not an author of the work or that the work is not an adaptation of the work of the person, as the case may be.

## 195AE  Acts of false attribution of authorship of artistic work

(1) This section applies if the work is an artistic work.

(2) It is an act of false attribution in relation to the author of the work:

    (a) to insert or affix, or to authorise the inserting or affixing of, a person's name in or on the work, or in or on a reproduction of the work, or to use, or to authorise the use of, a person's name in connection with the work, or in connection with a reproduction of the work, in such a way as to imply falsely that the person is an author of the work; or

    (b) to deal with the work with a person's name so inserted or affixed, if the attributor knows that the person is not an author of the work; or

    (c) to deal with a reproduction of the work, being a reproduction in or on which a person's name has been so inserted or affixed, if the attributor knows that the person is not an author of the work; or

    (d) to communicate the work to the public as being a work of which a person is the author, if the attributor knows that the person is not an author of the work.

## 195AF  Acts of false attribution of authorship of cinematograph film

(1) This section applies if the work is a cinematograph film.

(2) It is an act of false attribution in relation to the director, producer or screenwriter of the film:

    (a) to insert or affix, or to authorise the inserting or affixing of, a person's name on the film or on a copy of the film in such a way as to imply falsely that the person is the director, producer or screenwriter, as the case may be, of the film; or

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 195AG

(b) to deal with the film or a copy of the film if a person's name has been so inserted or affixed on the film or a copy, as the case may be, and the attributor knows that the person is not the director, producer or screenwriter, as the case may be, of the film; or

(c) to communicate the film to the public as being a film of which a person is the director, producer or screenwriter, as the case may be, if the attributor knows that the person is not the director, producer or screenwriter of the film.

## 195AG  Acts of false attribution of authorship of altered literary, dramatic, musical or artistic work

(1) If the work is a literary, dramatic, musical or artistic work that has been altered by a person other than the author of the work, it is an act of false attribution in relation to the author of the work:

(a) to deal with the work as so altered, as being the unaltered work of the author; or

(b) to deal with a reproduction of the work as so altered, as being a reproduction of the unaltered work of the author;

if, to the knowledge of the attributor, it is not the unaltered work or a reproduction of the unaltered work, as the case may be, of the author.

(2) Subsection (1) does not apply if:

(a) the effect of the alteration is insubstantial; or

(b) the alteration was required by law to be made, or was otherwise necessary to avoid a breach of any law.

## 195AH  Act of false attribution of authorship of altered cinematograph film

(1) If the work is a cinematograph film that has been altered by a person other than the maker of the film, it is an act of false attribution in relation to the director, the producer and the screenwriter of the film to deal with a copy of the film as so altered, as being a copy of the unaltered film, if, to the knowledge

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films **Part IX**

Right not to have authorship of a work falsely attributed **Division 3**

Section 195AH

of the attributor, the copy of the film is not a copy of the unaltered film.

(2) Subsection (1) does not apply if:

    (a) the effect of the alteration is insubstantial; or

    (b) the alteration was required by law to be made, or was otherwise necessary to avoid a breach of any law.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part IX**  Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films
**Division 3A**  Right not to have performership falsely attributed

Section 195AHA

# Division 3A—Right not to have performership falsely attributed

## 195AHA  Performer's right not to have performership falsely attributed

(1) A performer in a live performance or recorded performance has a right not to have performership falsely attributed.

(2) A performer's right is the right not to have a person (the *attributor*) do, in respect of the live performance or recorded performance (as the case may be), any of the acts (the *acts of false attribution*) mentioned in sections 195AHB and 195AHC.

> Note:  If there is more than one performer in a performance, then each performer has a right not to have performership falsely attributed: see subsection 195AZQ(3).

## 195AHB  Acts of false attribution of performership

*Acts of false attribution for live performances*

(1) For a live performance, it is an act of false attribution for the stager of the performance, or a person authorised by the stager, to state falsely, or imply falsely, to the audience or intended audience immediately before the performance that:

    (a) a person is, or will be, a performer in the performance; or

    (b) the performance is being, or will be, presented by a particular group of performers.

> Note:  For the definition of *staged*, see section 191A.

> Example 1:  The stager of a live performance given by X and Y attributes the performance to A and B. This is an act of false attribution in relation to both X and Y.

> Example 2:  The stager of a live performance given by X and Y attributes the performance to X and A. This is an act of false attribution in relation to both X and Y (even though X is mentioned in the attribution).

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works
and cinematograph films  **Part IX**
Right not to have performership falsely attributed  **Division 3A**

Section 195AHB

(2) For a live performance, it is an act of false attribution for the stager of the performance, or a person authorised by the stager, to state falsely, or imply falsely, to the audience during the performance that:

    (a) a person is, was, or will be a performer in the performance; or

    (b) the performance is being, was, or will be, presented by a particular group of performers.

(3) For a live performance, it is an act of false attribution for the stager of the performance, or a person authorised by the stager, to state falsely, or imply falsely, to the audience immediately after the performance that:

    (a) a person was a performer in the performance; or

    (b) a particular group of performers presented the performance.

(4) However, doing an act mentioned in subsection (1), (2) or (3) is only an act of false attribution if the performance is in public or is communicated to the public. For this purpose, any unauthorised communication to the public is to be disregarded.

*Acts of false attribution for recorded performances—individual performers*

(5) For a recorded performance, each of the following acts is an act of false attribution:

    (a) to insert or affix, or authorise the inserting or affixing of, a person's name in or on a record embodying the performance in such a way as to imply falsely that the person is a performer in the performance;

    (b) to deal with a record embodying the performance if:

        (i) a person's name has been inserted or affixed in or on the record as mentioned in paragraph (a); and

        (ii) the attributor knows that the person is not a performer in the performance;

    (c) to communicate the recorded performance to the public as being a performance in which a person is a performer, if the

Compilation No. 64                                 Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part IX**  Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films
**Division 3A**  Right not to have performership falsely attributed

Section 195AHC

attributor knows that the person is not a performer in the performance.

*Acts of false attribution for recorded performances—groups of performers*

(6) For a recorded performance, each of the following acts is an act of false attribution:

    (a) to insert or affix, or authorise the inserting or affixing of, a group name in or on a record embodying the performance in such a way as to imply falsely that the group are performers in the performance;

    (b) to deal with a record embodying the performance if:

        (i) a group name has been inserted or affixed in or on the record as mentioned in paragraph (a); and

        (ii) the attributor knows that the group are not performers in the performance;

    (c) to communicate the recorded performance to the public as being a performance in which a group are performers, if the attributor knows that the group are not performers in the performance.

*Silent performers*

(7) It is not an act of false attribution of performership to state that a performer who participated silently in a performance performed in the performance.

> Example:  X and Y together present a cabaret act in which X sings and Y dances silently. The "performance" for the purposes of this Part consists only of the sounds made by X. It is not an act of false attribution in respect of the performance to state or imply that Y was also a performer.

## 195AHC  Act of false attribution of performership of altered recorded performance

(1) If the work is a recorded performance that has been altered by a person other than a performer in the performance, it is an act of false attribution of performership in relation to the performer to

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works
and cinematograph films  **Part IX**
Right not to have performermership falsely attributed  **Division 3A**

Section 195AHC

deal with a copy of the recorded performance as so altered, as being a copy of the unaltered recorded performance, if, to the knowledge of the attributor, the copy of the recorded performance is not a copy of the unaltered recorded performance.

(2) Subsection (1) does not apply if:

   (a) the effect of the alteration is insubstantial; or

   (b) the alteration was required by law to be made, or was otherwise necessary to avoid a breach of any law.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part IX**  Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films
**Division 4**  Right of integrity of authorship of a work

Section 195AI

# Division 4—Right of integrity of authorship of a work

## 195AI  Author's right of integrity of authorship

(1) The author of a work has a right of integrity of authorship in respect of the work.

(2) The author's right is the right not to have the work subjected to derogatory treatment.

## 195AJ  Derogatory treatment of literary, dramatic or musical work

In this Part:

*derogatory treatment*, in relation to a literary, dramatic or musical work, means:
   (a) the doing, in relation to the work, of anything that results in a material distortion of, the mutilation of, or a material alteration to, the work that is prejudicial to the author's honour or reputation; or
   (b) the doing of anything else in relation to the work that is prejudicial to the author's honour or reputation.

## 195AK  Derogatory treatment of artistic work

In this Part:

*derogatory treatment*, in relation to an artistic work, means:
   (a) the doing, in relation to the work, of anything that results in a material distortion of, the destruction or mutilation of, or a material alteration to, the work that is prejudicial to the author's honour or reputation; or
   (b) an exhibition in public of the work that is prejudicial to the author's honour or reputation because of the manner or place in which the exhibition occurs; or
   (c) the doing of anything else in relation to the work that is prejudicial to the author's honour or reputation.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films  **Part IX**
Right of integrity of authorship of a work  **Division 4**

Section 195AL

### 195AL  Derogatory treatment of cinematograph film

In this Part:

***derogatory treatment***, in relation to a cinematograph film, means:

(a) the doing, in relation to the film, of anything that results in a material distortion of, the mutilation of, or a material alteration to, the film that is prejudicial to the maker's honour or reputation; or

(b) the doing of anything else in relation to the film that is prejudicial to the honour or reputation of the maker of the film.

Compilation No. 64    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part IX  Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films
Division 4A  Right of integrity of performership

Section 195ALA

# Division 4A—Right of integrity of performership

## 195ALA  Performer's right of integrity of performership

(1) A performer in a live performance or recorded performance has a right of integrity of performership in respect of the performance.

(2) The performer's right is the right not to have the performance subjected to derogatory treatment.

> Note: If there is more than one performer in a performance, then each performer has a right of integrity of performership: see subsection 195AZQ(4).

## 195ALB  Derogatory treatment of performance

In this Part:

***derogatory treatment***, in relation to a performer in a live performance or recorded performance, means the doing, in relation to the performance, of anything that results in a material distortion of, the mutilation of, or a material alteration to, the performance that is prejudicial to the performer's reputation.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works
and cinematograph films  **Part IX**
Duration and exercise of moral rights  **Division 5**

Section 195AM

# Division 5—Duration and exercise of moral rights

## Subdivision A—Duration and exercise of moral rights of authors

### 195AM  Duration of author's moral rights

(1) An author's right of integrity of authorship in respect of a cinematograph film continues in force until the author dies.

(2) An author's right of integrity of authorship in respect of a work other than a cinematograph film continues in force until copyright ceases to subsist in the work.

(3) An author's moral rights (other than the right of integrity of authorship) in respect of a work continue in force until copyright ceases to subsist in the work.

### 195AN  Exercise of author's moral rights

(1) If the author of a work dies, the author's moral rights (other than the right of integrity of authorship in respect of a cinematograph film) in respect of the work may be exercised and enforced by his or her legal personal representative.

(2) If the affairs of the author of a work are lawfully administered by another person (except under a law for the relief of bankrupt or insolvent debtors), the author's moral rights may be exercised and enforced by the person administering his or her affairs.

(3) Subject to this section, a moral right in respect of a work is not transmissible by assignment, by will, or by devolution by operation of law.

(4) If:
  (a) a cinematograph film; or
  (b) a literary, dramatic, musical or artistic work as included in a cinematograph film;

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part IX  Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films
Division 5  Duration and exercise of moral rights

Section 195ANA

has 2 or more authors, the authors may enter into a written co-authorship agreement by which each of them agrees not to exercise his or her right of integrity of authorship in respect of the film or work, as the case may be, except jointly with the other author or authors.

(5) A co-authorship agreement has effect according to its terms.

## Subdivision B—Duration and exercise of moral rights of performers

### 195ANA  Duration of performer's moral rights for recorded performances

(1) A performer's right of attribution of performership in respect of a recorded performance continues in force until copyright ceases to subsist in the recorded performance.

(2) A performer's right not to have performership falsely attributed in respect of a recorded performance continues in force until copyright ceases to subsist in the recorded performance.

(3) A performer's right of integrity of performership in respect of a recorded performance continues in force until the performer dies.

### 195ANB  Exercise of performer's moral rights

(1) If a performer in a live performance or recorded performance dies, the performer's moral rights in respect of the performance may be exercised and enforced by his or her legal personal representative.

(2) If the affairs of a performer in a live performance or recorded performance are lawfully administered by another person (except under a law for the relief of bankrupt or insolvent debtors), the performer's moral rights may be exercised and enforced by the person administering his or her affairs.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works
and cinematograph films  **Part IX**
Duration and exercise of moral rights  **Division 5**

Section 195ANB

(3) Subject to this section, a moral right in respect of a live performance or recorded performance is not transmissible by assignment, by will, or by devolution by operation of law.

(4) If there are 2 or more performers in a live performance or recorded performance, then the performers may enter into a written co-performership agreement by which each of them agrees not to exercise his or her right of integrity of performership in respect of the live performance or recorded performance, as the case may be, except jointly with the other performer or performers.

(5) A co-performership agreement has effect according to its terms.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part IX  Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films
Division 6  Infringement of moral rights

Section 195AO

# Division 6—Infringement of moral rights

## Subdivision A—Infringement of moral rights of authors

### 195AO  Infringement of right of attribution of authorship

Subject to this Subdivision, a person infringes an author's right of attribution of authorship in respect of a work if the person does, or authorises the doing of, an attributable act in respect of the work without the identification of the author in accordance with Division 2 as the author of the work.

### 195AP  Infringement of right not to have authorship falsely attributed

Subject to this Subdivision, a person infringes an author's right not to have authorship of a work falsely attributed if the person does an act of false attribution in respect of the work.

### 195AQ  Infringement of right of integrity of authorship

(1) This section has effect subject to this Subdivision.

(2) A person infringes an author's right of integrity of authorship in respect of a work if the person subjects the work, or authorises the work to be subjected, to derogatory treatment.

(3) If a literary, dramatic or musical work has been subjected to derogatory treatment of a kind mentioned in paragraph (a) of the definition of **_derogatory treatment_** in section 195AJ that infringes the author's right of integrity of authorship in respect of the work, a person infringes the author's right of integrity of authorship in respect of the work if the person does any of the following in respect of the work as so derogatorily treated:
  (a) reproduces it in a material form;
  (b) publishes it;
  (c) performs it in public;

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works
and cinematograph films  **Part IX**
Infringement of moral rights  **Division 6**

Section 195AR

(d) communicates it to the public;

(e) makes an adaptation of it.

(4) If an artistic work has been subjected to derogatory treatment of a kind mentioned in paragraph (a) of the definition of ***derogatory treatment*** in section 195AK that infringes the author's right of integrity of authorship in respect of the work, a person infringes the author's right of integrity of authorship in respect of the work if the person does any of the following in respect of the work as so derogatorily treated:

(a) reproduces it in a material form;

(b) publishes it;

(c) communicates it to the public.

(5) If a cinematograph film has been subjected to derogatory treatment of a kind mentioned in paragraph (a) of the definition of ***derogatory treatment*** in section 195AL that infringes the author's right of integrity of authorship in respect of the film, a person infringes the author's right of integrity of authorship in respect of the film if the person does any of the following in respect of the film as so derogatorily treated:

(a) makes a copy of it;

(b) exhibits it;

(c) communicates it to the public.

## 195AR  No infringement of right of attribution of authorship if it was reasonable not to identify the author

(1) A person who does, or authorises the doing of, an attributable act in respect of a work does not, because the author of the work is not identified, infringe the author's right of attribution of authorship in respect of the work if the person establishes that it was reasonable in all the circumstances not to identify the author.

(2) The matters to be taken into account in determining for the purposes of subsection (1) whether it was reasonable in particular

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 195AR

circumstances not to identify the author of a literary, dramatic, musical or artistic work include the following:

(a) the nature of the work;

(b) the purpose for which the work is used;

(c) the manner in which the work is used;

(d) the context in which the work is used;

(e) any practice, in the industry in which the work is used, that is relevant to the work or the use of the work;

(f) any practice contained in a voluntary code of practice, in the industry in which the work is used, that is relevant to the work or the use of the work;

(g) any difficulty or expense that would have been incurred as a result of identifying the author;

(h) whether the work was made:

(i) in the course of the author's employment; or

(ii) under a contract for the performance by the author of services for another person;

(i) if the work has 2 or more authors—their views about the failure to identify them.

(3) The matters to be taken into account in determining for the purposes of subsection (1) whether it was reasonable in particular circumstances not to identify the maker of a cinematograph film include the following:

(a) the nature of the film;

(b) whether the primary purpose for which the film was made was for exhibition at cinemas, for broadcasting by television or for some other purpose;

(c) the purpose for which the film is used;

(d) the manner in which the film is used;

(e) the context in which the film is used;

(f) any practice, in the industry in which the film is used, that is relevant to the film or the use of the film;

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works
and cinematograph films  **Part IX**
Infringement of moral rights  **Division 6**

Section 195AS

(g) any practice contained in a voluntary code of practice, in the industry in which the film is used, that is relevant to the film or the use of the film;

(h) any difficulty or expense that would have been incurred as a result of identifying the maker;

(i) whether the film was made in the course of the employment of the director, producer or screenwriter.

## 195AS  No infringement of right of integrity of authorship if derogatory treatment or other action was reasonable

(1) A person does not, by subjecting a work, or authorising a work to be subjected, to derogatory treatment, infringe the author's right of integrity of authorship in respect of the work if the person establishes that it was reasonable in all the circumstances to subject the work to the treatment.

(2) The matters to be taken into account in determining for the purposes of subsection (1) whether it was reasonable in particular circumstances to subject a literary, dramatic, musical or artistic work to derogatory treatment include the following:

(a) the nature of the work;

(b) the purpose for which the work is used;

(c) the manner in which the work is used;

(d) the context in which the work is used;

(e) any practice, in the industry in which the work is used, that is relevant to the work or the use of the work;

(f) any practice contained in a voluntary code of practice, in the industry in which the work is used, that is relevant to the work or the use of the work;

(g) whether the work was made:
   (i) in the course of the author's employment; or
   (ii) under a contract for the performance by the author of services for another person;

(h) whether the treatment was required by law or was otherwise necessary to avoid a breach of any law;

Compilation No. 64    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part IX**  Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films
**Division 6**  Infringement of moral rights

Section 195AT

        (i) if the work has 2 or more authors—their views about the treatment.

    (3) The matters to be taken into account in determining for the purposes of subsection (1) whether it was reasonable in particular circumstances to subject a cinematograph film to derogatory treatment include the following:

        (a) the nature of the film;

        (b) whether the primary purpose for which the film was made was for exhibition at cinemas, for broadcasting by television or for some other use;

        (c) the purpose for which the film is used;

        (d) the manner in which the film is used;

        (e) the context in which the film is used;

        (f) any practice, in the industry in which the film is used, that is relevant to the film or the use of the film;

        (g) any practice contained in a voluntary code of practice, in the industry in which the film is used, that is relevant to the film or the use of the film;

        (h) whether the film was made in the course of the employment of the director, producer or screenwriter who alleges that the treatment was derogatory;

        (i) whether the treatment was required by law or was otherwise necessary to avoid a breach of any law.

    (4) A person who does any act referred to in subsection 195AQ(3), (4) or (5) in respect of a work that has been subjected to derogatory treatment of a kind mentioned in that subsection does not, by doing that act, infringe the author's right of integrity of authorship in respect of the work if the person establishes that it was reasonable in all the circumstances to do that act.

## 195AT  Certain treatment of works not to constitute an infringement of the author's right of integrity of authorship

    (1) The destruction of a moveable artistic work is not an infringement of the author's right of integrity of authorship in respect of the

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works
and cinematograph films  **Part IX**
Infringement of moral rights  **Division 6**

Section 195AT

work if the person who destroyed the work gave the author, or a person representing the author, a reasonable opportunity to remove the work from the place where it was situated.

(2) A change in, or the relocation, demolition or destruction of, a building is not an infringement of the author's right of integrity of authorship in respect of an artistic work that is affixed to or forms part of the building if:

    (a) the owner of the building, after making reasonable inquiries, cannot discover the identity and location of the author or a person representing the author; or

    (b) if paragraph (a) does not apply—the owner complies with subsection (2A) in relation to the change, relocation, demolition or destruction.

(2A) This subsection is complied with by the owner of a building in relation to a change in, or the relocation, demolition or destruction of, the building if:

    (a) the owner has, in accordance with the regulations and before the change, relocation, demolition or destruction is carried out, given the author or a person representing the author a written notice stating the owner's intention to carry out the change, relocation, demolition or destruction; and

    (b) the notice stated that the person to whom the notice was given may, within 3 weeks from the date of the notice, seek to have access to the work for either or both of the following purposes:

        (i) making a record of the work;

        (ii) consulting in good faith with the owner about the change, relocation, demolition or destruction; and

    (c) the notice contained such other information and particulars as are prescribed; and

    (d) where the person to whom the notice was given notifies the owner within the period of 3 weeks referred to in paragraph (b) that the person wishes to have access to the work for either or both of the purposes mentioned in that paragraph—the owner has given the person a reasonable

Compilation No. 64                                          Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 195AT

opportunity within a further period of 3 weeks to have such access; and

(e) where, in the case of a change or relocation, the person to whom the notice was given notifies the owner that the person requires the removal from the work of the author's identification as the author of the work—the owner has complied with the requirement.

(3) A change in, or the relocation, demolition or destruction of, a building is not an infringement of the author's right of integrity of authorship in respect of the building, or in respect of any plans or instructions used in the construction of the building or a part of the building if:

(a) the owner of the building, after making reasonable inquiries, cannot discover the identity and location of the author or a person representing the author, or of any of the authors or persons representing the authors, as the case may be; or

(b) if paragraph (a) does not apply—the owner complies with subsection (3A) in relation to the change, relocation, demolition or destruction.

(3A) This subsection is complied with by the owner of a building in relation to a change in, or the relocation, demolition or destruction of, the building if:

(a) the owner has, in accordance with the regulations and before the change, relocation, demolition or destruction is carried out, given the author or a person representing the author, or the authors or the persons representing the authors, whose identity and location the owner knows, a written notice stating the owner's intention to carry out the change, relocation, demolition or destruction; and

(b) the notice stated that the person to whom the notice was given may, within 3 weeks from the date of the notice, seek to have access to the building for either or both of the following purposes:

(i) making a record of the artistic work;

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works
and cinematograph films  **Part IX**
Infringement of moral rights  **Division 6**

Section 195AT

      (ii) consulting in good faith with the owner about the change, relocation, demolition or destruction; and

    (c) the notice contained such other information and particulars as are prescribed; and

    (d) where the person to whom the notice was given notifies the owner within the period of 3 weeks referred to in paragraph (b) that the person wishes to have access to the building for either or both of the purposes mentioned in that paragraph—the owner has given the person a reasonable opportunity within a further period of 3 weeks to have such access; and

    (e) where, in the case of a change or relocation, the person to whom the notice was given notifies the owner that the person requires the removal from the building of the author's identification as the author of the artistic work—the owner has complied with the requirement.

  (4) Subsections (2), (2A), (3) and (3A) do not limit the operation of section 195AG.

(4A) The removal or relocation by a person (the ***remover***) of a moveable artistic work that is situated at a place that is accessible to the public, and was made for installation in that place, is not an infringement of the author's right of integrity of authorship in respect of the work if the remover:

    (a) after making reasonable inquiries, cannot discover the identity and location of the author or a person representing the author; or

    (b) if paragraph (a) does not apply—complies with subsection (4B) in relation to the removal or relocation.

(4B) This subsection is complied with by the remover in relation to the removal or relocation of a moveable artistic work if:

    (a) the remover has, in accordance with the regulations and before the removal or relocation is carried out, given the author or a person representing the author a written notice stating the remover's intention to carry out the removal or relocation; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

(b) the notice stated that the person to whom the notice was given may, within 3 weeks from the date of the notice, seek to have access to the work for either or both of the following purposes:

   (i) making a record of the work;

   (ii) consulting in good faith with the remover about the removal or relocation; and

(c) the notice contained such other information and particulars as are prescribed; and

(d) where the person to whom the notice was given notifies the remover within the period of 3 weeks referred to in paragraph (b) that the person wishes to have access to the work for either or both of the purposes mentioned in that paragraph—the remover has given the person a reasonable opportunity within a further period of 3 weeks to have such access; and

(e) where the person to whom the notice was given notifies the remover that the person requires the removal from the work of the author's identification as the author of the work—the remover has complied with the requirement.

(5) Anything done in good faith to restore or preserve a work is not, by that act alone, an infringement of the author's right of integrity of authorship in respect of the work.

## 195AU  Infringement by importation for sale or other dealing

(1) An author's moral right in respect of a work is infringed by a person who imports an article into Australia for the purpose of dealing with the article if the importer knew, or ought reasonably to have known, that, if the article had been made in Australia, it would have been an infringing article.

(2) In subsection (1):

*dealing with* does not include distributing except where the proposed distribution is for the purposes of sale.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works
and cinematograph films  **Part IX**
Infringement of moral rights  **Division 6**

Section 195AV

### 195AV  Infringement by sale and other dealings

(1) An author's moral right in respect of a work is infringed by a person who, in Australia, deals with an article if the person knew, or ought reasonably to have known, that the article was an infringing article or, in respect of an imported article, would, if it had been made in Australia, have been an infringing article.

(2) In subsection (1):

*deals with* does not include:

(a) distributes, except where the distribution is for the purposes of sale; or

(b) deals with by means of a dealing covered by paragraph 195AD(b), 195AD(c), 195AE(2)(b), 195AE(2)(c) or 195AF (2)(b) or subsection 195AG(1) or 195AH(1); or

(c) deals with by means of an exhibition that is an attributable act to which section 195AO applies or an exhibition to which subsection 195AQ(5) applies.

### 195AVA  Matters to be taken into account

In determining whether a person has authorised the doing of an act that is an infringement of moral rights in respect of a work, the matters that must be taken into account include the following:

(a) the extent (if any) of the person's power to prevent the doing of the act concerned;

(b) the nature of any relationship existing between the person and the person who did the act concerned;

(c) whether the person took any reasonable steps to prevent or avoid the doing of the act, including whether the person complied with any relevant industry codes of practice.

### 195AVB  Communication by use of certain facilities

A person (including a carrier or carriage service provider) who provides facilities for making, or facilitating the making of, a communication is not taken to have authorised the doing of an act

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part IX**  Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films
**Division 6**  Infringement of moral rights

Section 195AW

that is an infringement of moral rights in respect of a work merely because another person uses the facilities so provided to do such an act.

## 195AW  Author's consent to act or omission—films or works in films

(1A)  This section applies to a work that is:

    (a)  a cinematograph film; or

    (b)  a literary, dramatic, musical or artistic work as included in a cinematograph film.

(1)  It is not an infringement of a moral right of an author in respect of a work to do, or omit to do, something if the act or omission is within the scope of a written consent given by the author or a person representing the author.

(2)  A consent may be given in relation to all or any acts or omissions occurring before or after the consent is given.

(3)  A consent may be given in relation to:

    (a)  a specified work or specified works existing when the consent is given; or

    (b)  a work or works of a particular description:

        (i)  the making of which has not begun; or

        (ii)  that is or are in the course of being made.

(4)  A consent may be given by an employee for the benefit of his or her employer in relation to all works made or to be made by the employee in the course of his or her employment.

(5)  A consent given for the benefit of the owner or prospective owner of copyright in the work or works to which it relates is presumed, unless the contrary intention appears in the consent instrument, to extend to his or her licensees and successors in title, and to any persons who are authorised by the owner or prospective owner, or by such a licensee or successor in title, to do acts comprised in the copyright.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Case 1:25-cv-00910-JMF    Document 26-5    Filed 02/28/25    Page 512 of 692

Moral rights of performers and of authors of literary, dramatic, musical or artistic works
and cinematograph films **Part IX**
Infringement of moral rights **Division 6**

Section 195AWA

(6) Subsections (2) to (5), inclusive, do not limit the operation of subsection (1).

## 195AWA  Author's consent to act or omission—work that is not a film or included in a film

(1) This section applies to a literary, dramatic, musical or artistic work other than such a work as included in a cinematograph film.

(2) It is not an infringement of a moral right of an author in respect of a work to do, or omit to do, something if the act or omission is within the scope of a written consent genuinely given by the author or a person representing the author.

(3) Subject to subsection (4), a consent does not have any effect unless it is given:

    (a) in relation to specified acts or omissions, or specified classes or types of acts or omissions, whether occurring before or after the consent is given; and

    (b) in relation to either of the following:

        (i) a specified work or specified works existing when the consent is given; or

        (ii) a specified work, or works of a particular description, the making of which has not begun or that is or are in the course of being made.

(4) A consent may be given by an employee for the benefit of his or her employer in relation to all or any acts or omissions (whether occurring before or after the consent is given) and in relation to all works made or to be made by the employee in the course of his or her employment.

(5) A consent given for the benefit of the owner or prospective owner of copyright in the work or works to which it relates is presumed, unless the contrary intention appears in the consent instrument, to extend to his or her licensees and successors in title, and to any persons who are authorised by the owner or prospective owner, or

Replaced Authorised Version registered 10/02/2025 C2024C00854

---

Section 195AWB

---

by such a licensee or successor in title, to do acts comprised in the copyright.

### 195AWB  Consent invalidated by duress or false or misleading statements

(1) If a person applies duress to an author, or to a person representing an author, in connection with the giving of a consent for the purposes of section 195AW or 195AWA, the consent does not have any effect.

(2) If:

    (a) a person makes a statement to another person; and

    (b) the person makes the statement knowing:

        (i) that the statement is false or misleading in a material particular; or

        (ii) that a matter or thing has been omitted from the statement without which the statement is false or misleading in a material particular; and

    (c) the person makes the statement with the intention of persuading the other person to give, or not to give, a consent for the purposes of section 195AW or 195AWA;

the consent does not have any effect.

### 195AX  Acts or omissions outside Australia

It is not an infringement of an author's moral right in respect of a work to do, or omit to do, something outside Australia.

## Subdivision B—Infringement of moral rights of performers

### 195AXA  Infringement of right of attribution of performership

Subject to this Subdivision, a person infringes a performer's right of attribution of performership in respect of a live performance or recorded performance if the person does, or authorises the doing of, an attributable act in respect of the performance without the

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works
and cinematograph films  **Part IX**
Infringement of moral rights  **Division 6**

Section 195AXB

identification of the performer in accordance with Division 2A as a
performer in the performance.

### 195AXB  Infringement of right not to have performership falsely attributed

Subject to this Subdivision, a person infringes a performer's right
not to have performership falsely attributed if the person does an
act of false attribution in respect of the performance.

### 195AXC  Infringement of right of integrity of performership

(1) This section has effect subject to this Subdivision.

(2) A person infringes a performer's right of integrity of performership
in respect of a live performance or recorded performance if the
person subjects the performance, or authorises the performance to
be subjected, to derogatory treatment.

(3) If a live performance, as affected by derogatory treatment, has
become a recorded performance, then a person infringes a
performer's right of integrity of performership in respect of the live
performance if the person does any of the following in respect of
the recorded performance:
  (a) makes a copy record of the recorded performance;
  (b) communicates the recorded performance to the public;
  (c) causes the recorded performance to be heard in public.

(4) If a recorded performance has been subjected to derogatory
treatment, then a person infringes a performer's right of integrity of
performership in respect of the recorded performance if the person
does any of the following in respect of the recorded performance
(as affected by the derogatory treatment):
  (a) makes a copy record of the recorded performance;
  (b) communicates the recorded performance to the public;
  (c) causes the recorded performance to be heard in public.

Compilation No. 64                              Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part IX  Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films
Division 6  Infringement of moral rights

Section 195AXD

### 195AXD  No infringement of right of attribution of performership if it was reasonable not to identify the performer

(1) A person who does, or authorises the doing of, an attributable act in respect of a live performance or recorded performance does not, because a performer in the performance is not identified, infringe the performer's right of attribution of performership in respect of the performance if the person establishes that it was reasonable in all the circumstances not to identify the performer.

(2) The matters to be taken into account in determining for the purposes of subsection (1) whether it was reasonable in particular circumstances not to identify a performer in a live performance or recorded performance include the following:

  (a) the nature of the performance;

  (b) the purpose for which the performance is used;

  (c) the manner in which the performance is used;

  (d) the context in which the performance is used;

  (e) any practice, in the industry in which the performance is used, that is relevant to the performance or to the use of the performance;

  (f) any practice contained in a voluntary code of practice, in the industry in which the performance is used, that is relevant to the performance or to the use of the performance;

  (g) any difficulty or expense that would have been incurred as a result of identifying the performer;

  (h) whether the performer participated in the performance in the course of the employment of the performer.

Note:    For example, a performance may be used to attract custom in a hotel or restaurant.

### 195AXE  No infringement of right of integrity of performership if derogatory treatment or other action was reasonable

(1) A person does not, by subjecting a live performance or recorded performance to derogatory treatment, or by authorising a live performance or recorded performance to be subjected to derogatory

*Copyright Act 1968*

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works
and cinematograph films  **Part IX**
Infringement of moral rights  **Division 6**

Section 195AXE

treatment, infringe a performer's right of integrity of performership in respect of the performance if the person establishes that it was reasonable in all the circumstances to subject the performance to the treatment.

(2) The matters to be taken into account in determining for the purposes of subsection (1) whether it was reasonable in particular circumstances to subject a live performance or recorded performance to derogatory treatment include the following:

(a) the nature of the performance;

(b) the purpose for which the performance is used;

(c) the manner in which the performance is used;

(d) any practice, in the industry in which the performance is used, that is relevant to the performance or to the use of the performance;

(e) any practice contained in a voluntary code of practice, in the industry in which the performance is used, that is relevant to the performance or to the use of the performance;

(f) whether the performer who alleges that the treatment was derogatory participated in the performance in the course of the employment of the performer;

(g) whether the treatment was required by law or was otherwise necessary to avoid a breach of any law.

Note:    For example, a performance may be used to attract custom in a hotel or restaurant.

(3) A person who:

(a) does an act referred to in subsection 195AXC(3) in respect of a live performance that has been subjected to derogatory treatment; or

(b) does an act referred to in subsection 195AXC(4) in respect of a recorded performance that has been subjected to derogatory treatment;

does not, by doing that act, infringe a performer's right of integrity of performership in respect of the performance if the person establishes that it was reasonable in all the circumstances to do that act.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part IX  Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films
Division 6  Infringement of moral rights

Section 195AXF

## 195AXF  Infringement by importation for sale or other dealing

(1) A performer's moral right in respect of a live performance or recorded performance is infringed by a person who imports an article into Australia for the purpose of dealing with the article if the importer knew, or ought reasonably to have known, that, if the article had been made in Australia, it would have been an infringing article.

(2) In subsection (1):

***dealing with*** does not include distributing except where the proposed distribution is for the purposes of sale.

## 195AXG  Infringement by sale and other dealings

(1) A performer's moral right in respect of a live performance or recorded performance is infringed by a person who, in Australia, deals with an article if the person knew, or ought reasonably to have known, that the article was an infringing article or, in respect of an imported article, would, if it had been made in Australia, have been an infringing article.

(2) In subsection (1):

***deals with*** does not include:
   (a) distributes, except where the distribution is for the purposes of sale; or
   (b) deals with by means of a dealing covered by paragraph 195AHB(5)(b) or (6)(b).

## 195AXH  Matters to be taken into account

In determining whether a person has authorised the doing of an act that is an infringement of moral rights in a live performance or recorded performance, the matters that must be taken into account include the following:
   (a) the extent (if any) of the person's power to prevent the doing of the act concerned;

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works
and cinematograph films  **Part IX**
Infringement of moral rights  **Division 6**

Section 195AXI

(b) the nature of any relationship existing between the person and the person who did the act concerned;

(c) whether the person took any reasonable steps to prevent or avoid the doing of the act, including whether the person complied with any relevant industry codes of practice.

### 195AXI  Communication by use of certain facilities

A person (including a carrier or carriage service provider) who provides facilities for making, or facilitating the making of, a communication is not taken to have authorised the doing of an act that is an infringement of moral rights in a live performance or recorded performance merely because another person uses the facilities so provided to do such an act.

### 195AXJ  Performer's consent to act or omission

(1) It is not an infringement of a performer's moral right in respect of a live performance or recorded performance to do, or omit to do, something if the act or omission is within the scope of a written consent given by the performer or a person representing the performer.

> Note:    The consent of one performer does not affect the moral rights of any other performer: see subsection 195AZQ(5).

(2) A consent may be given in relation to all or any acts or omissions occurring before or after the consent is given.

(3) A consent may be given in relation to:

(a) a specified performance or specified performances occurring before the consent is given; or

(b) a performance or performances of a particular description:

(i) that have not yet occurred; or

(ii) that are in the course of occurring.

(4) A consent may be given by an employee for the benefit of his or her employer in relation to all performances in which the employee is to be a performer in the course of his or her employment.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part IX  Moral rights of performers and of authors of literary, dramatic, musical or
artistic works and cinematograph films
Division 6  Infringement of moral rights

Section 195AXK

(5)  A consent given for the benefit of the owner or prospective owner
of copyright in the recorded performance or recorded performances
to which the consent relates is presumed, unless the contrary
intention appears in the consent instrument, to extend to his or her
licensees and successors in title, and to any persons who are
authorised by the owner or prospective owner, or by such a
licensee or successor in title, to do acts comprised in the copyright.

(6)  Subsections (2) to (5), inclusive, do not limit the operation of
subsection (1).

## 195AXK  Consent invalidated by duress or false or misleading statements

(1)  If a person applies duress to a performer or, if a performer is
represented by a person, to the person representing the performer,
in connection with the giving of a consent for the purposes of
section 195AXJ, the consent does not have any effect.

(2)  If:

(a)  a person makes a statement to another person; and
(b)  the person makes the statement knowing:
(i)  that the statement is false or misleading in a material
particular; or
(ii)  that a matter or thing has been omitted from the
statement without which the statement is false or
misleading in a material particular; and
(c)  the person makes the statement with the intention of
persuading the other person to give, or not to give, a consent
for the purposes of section 195AXJ;

the consent does not have any effect.

## 195AXL  Acts or omissions outside Australia

It is not an infringement of a performer's moral right in respect of a
live performance or recorded performance to do, or omit to do,
something outside Australia.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films  **Part IX**
Remedies for infringements of moral rights  **Division 7**

Section 195AY

# Division 7—Remedies for infringements of moral rights

## Subdivision A—Remedies for infringement of moral rights of authors

### 195AY  Definition etc.

(1) In this Subdivision:

*action* means a proceeding of a civil nature between parties, and includes a counterclaim.

(2) In the application of this Subdivision in relation to a counterclaim, references to the defendant are taken to be references to the plaintiff.

### 195AZ  Actions for infringement of author's moral rights

If a person infringes any of the moral rights of an author in respect of a work, the infringement is not an offence but the author or a person representing the author may bring an action in respect of the infringement, subject to any co-authorship agreement in force under section 195AN to which the author is a party.

### 195AZA  Remedies for infringements of author's moral rights

(1) Subject to section 203, the relief that a court may grant in an action for an infringement of any of an author's moral rights in respect of a work includes any one or more of the following:

(a) an injunction (subject to any terms that the court thinks fit);

(b) damages for loss resulting from the infringement;

(c) a declaration that a moral right of the author has been infringed;

(d) an order that the defendant make a public apology for the infringement;

---

Compilation No. 64                                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

---

**Section 195AZA**

        (e)  an order that any false attribution of authorship, or derogatory treatment, of the work be removed or reversed.

  (2)  In exercising its discretion as to the appropriate relief to be granted, the court may take into account any of the following:

        (a)  whether the defendant was aware, or ought reasonably to have been aware, of the author's moral rights;

        (b)  the effect on the author's honour or reputation resulting from any damage to the work;

        (c)  the number, and categories, of people who have seen or heard the work;

        (d)  anything done by the defendant to mitigate the effects of the infringement;

        (e)  if the moral right that was infringed was a right of attribution of authorship—any cost or difficulty that would have been associated with identifying the author;

        (f)  any cost or difficulty in removing or reversing any false attribution of authorship, or derogatory treatment, of the work.

  (3)  In deciding whether or not to grant an injunction under subsection (1), the court must consider whether the parties have made any attempt to negotiate a settlement of the action and whether it should adjourn the hearing or further hearing of the action for the purpose of giving the parties an appropriate opportunity to negotiate a settlement, whether through a process of mediation or otherwise.

  (4)  If:

        (a)  the work is a cinematograph film; and

        (b)  the action is brought by a person who is a screenwriter of the film; and

        (c)  the relief granted in the action consists of or includes damages; and

        (d)  the person has already been granted relief by way of damages in an action for an infringement of his or her moral rights as

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works
and cinematograph films  **Part IX**
Remedies for infringements of moral rights  **Division 7**

Section 195AZD

an author of the dramatic work constituted by the script or
screenplay for the film;

the amount of any damages that, apart from this subsection, would
be awarded to the person in the action referred to in paragraph (b)
is to be reduced by the amount of the damages awarded to the
person in the action referred to in paragraph (d).

(5) If:

    (a) the work is a dramatic work constituted by the screenplay or
script for a cinematograph film; and

    (b) the action is brought by a person who is an author of the
screenplay or script; and

    (c) the relief granted in the action consists of or includes
damages; and

    (d) the person has already been granted relief by way of damages
in an action for an infringement of his or her moral rights as a
screenwriter of the film;

the amount of any damages that, apart from this subsection, would
be awarded to the person in the action referred to in paragraph (b)
is to be reduced by the amount of the damages awarded to the
person in the action referred to in paragraph (d).

(6) If, in respect of an act done after the death of an author of a work,
damages are recovered under this section by the legal personal
representative of the author, those damages devolve as if they
formed part of the author's estate and as if the right of action in
respect of the doing of the act had subsisted, and had been vested
in the author, immediately before his or her death.

Note:    Subsection (6) does not apply in relation to the right of integrity of
authorship in respect of a cinematograph film, which ends on the
author's death. See subsection 195AM(1).

## 195AZD  Presumption as to subsistence of copyright

In an action brought under this Part for an infringement of a moral
right in respect of a work, copyright is presumed to subsist in the

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part IX  Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films
Division 7  Remedies for infringements of moral rights

Section 195AZE

work if the defendant does not put in issue the question whether copyright subsists in the work.

### 195AZE  Presumption as to subsistence of author's moral rights

In an action brought under this Part for an infringement of a moral right in respect of a work, if copyright is presumed or proved to have subsisted in the work when the infringement is alleged to have occurred, the moral right is presumed to have subsisted in the work at that time.

### 195AZF  Presumptions in relation to authorship of work

(1) Section 127 applies in respect of an action brought under this Part.

(2) If a name purporting to be the name of the director, producer or screenwriter of a cinematograph film appeared on copies of the film that were issued when the film was made, then, in an action brought under this Part, the person whose name so appeared is, if it was his or her true name or a name by which he or she was commonly known, presumed, unless the contrary is established, to be the director, producer or screenwriter, as the case may be, of the film.

### 195AZG  Other presumptions in relation to literary, dramatic, musical or artistic work

Sections 128 and 129 apply in respect of an action brought under this Part.

## Subdivision B—Remedies for infringement of moral rights of performers

### 195AZGA  Definition etc.

(1) In this Subdivision:

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works
and cinematograph films **Part IX**
Remedies for infringements of moral rights **Division 7**

Section 195AZGB

*action* means a proceeding of a civil nature between parties, and includes a counterclaim.

(2) In the application of this Subdivision in relation to a counterclaim, references to the defendant are taken to be references to the plaintiff.

## 195AZGB  Actions for infringement of performer's moral rights

If a person infringes any of the moral rights of a performer in respect of a live performance or recorded performance, then the performer or a person representing the performer may bring an action in respect of the infringement, subject to any co-performership agreement in force under section 195ANB to which the performer is a party.

## 195AZGC  Remedies for infringements of performer's moral rights

(1) Subject to section 203, the relief that a court may grant in an action for an infringement of any of a performer's moral rights in respect of a live performance or recorded performance includes any one or more of the following:

(a) an injunction (subject to any terms that the court thinks fit);

(b) damages for loss resulting from the infringement;

(c) a declaration that a moral right of the performer has been infringed;

(d) an order that the defendant make a public apology for the infringement;

(e) an order that any false attribution of performership, or derogatory treatment, of the performance be removed or reversed.

(2) In exercising its discretion as to the appropriate relief to be granted, the court may take into account any of the following:

(a) whether the defendant was aware, or ought reasonably to have been aware, of the performer's moral rights;

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 195AZGD

<div style="border-top:1px solid #000"></div>

    (b)  the effect on the performer's reputation resulting from any damage to the performance;

    (c)  the number, and categories, of people who have heard the performance;

    (d)  anything done by the defendant to mitigate the effects of the infringement;

    (e)  if the moral right that was infringed was a right of attribution of performership—any cost or difficulty that would have been associated with identifying the performer;

    (f)  any cost or difficulty in removing or reversing any false attribution of performership, or derogatory treatment, of the performance.

  (3)  In deciding whether or not to grant an injunction under subsection (1), the court must consider whether the parties have made any attempt to negotiate a settlement of the action and whether it should adjourn the hearing or further hearing of the action for the purpose of giving the parties an appropriate opportunity to negotiate a settlement, whether through a process of mediation or otherwise.

  (4)  If, after the death of a performer, in respect of an act done in a live performance or recorded performance, damages are recovered under this section by the legal personal representative of the performer, those damages devolve as if they formed part of the performer's estate and as if the right of action in respect of the doing of the act had subsisted, and had been vested in the performer, immediately before his or her death.

    Note:  Subsection (4) does not apply in relation to the right of integrity of performership, which ends on the performer's death: see section 195ANA.

## 195AZGD  Presumption as to subsistence of copyright

In an action brought under this Part for an infringement of a moral right in respect of a recorded performance, copyright is presumed to subsist in the recorded performance if the defendant does not put

<div style="border-top:1px solid #000"></div>

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works
and cinematograph films  **Part IX**
Remedies for infringements of moral rights  **Division 7**

Section 195AZGE

in issue the question whether copyright subsists in the recorded performance.

### 195AZGE  Presumption as to subsistence of performer's moral rights

(1) In an action brought under this Part for an infringement of a moral right in respect of a recorded performance, if copyright is presumed or proved to have subsisted in the recorded performance when the infringement is alleged to have occurred, then the moral right is presumed to have subsisted in the recorded performance at that time.

(2) This section has effect subject to subsection 195ANA(3).

### 195AZGF  Presumptions in relation to performership

(1) If a name purporting to be the name of a performer appears on a record embodying a performance so as to indicate that the person was a performer in the performance, then, in an action brought under this Part, the person whose name so appeared is, if it was his or her true name or a name by which he or she was commonly known, presumed, unless the contrary is established, to be a performer in the performance.

(2) If a name purporting to be the name of a group of performers appears on a record embodying a performance so as to indicate that the group performed in the performance, then, in an action brought under this Part, the group whose name so appeared is, if it was a name by which the group was commonly known, presumed, unless the contrary is established, to have performed in the performance.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part IX**  Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films
**Division 7**  Remedies for infringements of moral rights

Section 195AZGG

## Subdivision C—Miscellaneous

### 195AZGG  Saving of other rights and remedies

(1)  Subject to this section, this Part does not affect any right of action or other remedy, whether civil or criminal, in proceedings brought otherwise than under this Part.

(2)  Any damages recovered in proceedings brought under this Part are to be taken into account in assessing damages in proceedings brought otherwise than under this Part and arising out of the same event or transaction.

(3)  Any damages recovered in proceedings brought otherwise than under this Part are to be taken into account in proceedings brought under this Part and arising out of the same event or transaction.

### 195AZGH  Jurisdiction of courts

(1)  The jurisdiction of the Supreme Court of a State or Territory in a matter arising under this Part is to be exercised by a single Judge of the Court.

(2)  Subject to subsection (3), a decision of a court of a State or Territory (however constituted) under this Part is final.

(3)  An appeal lies from a decision of a court of a State or Territory under this Part:
   (a)  to the Federal Court of Australia; or
   (b)  by special leave of the High Court, to the High Court.

(4)  The Federal Court of Australia has jurisdiction with respect to matters arising under this Part.

(5)  The Federal Circuit and Family Court of Australia (Division 2) has jurisdiction with respect to matters arising under this Part.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works
and cinematograph films  **Part IX**
Miscellaneous  **Division 8**

Section 195AZH

# Division 8—Miscellaneous

## Subdivision A—Miscellaneous provisions about moral rights of authors

### 195AZH  Parts of works

Moral rights in respect of a work apply in relation to a whole or a substantial part of the work.

### 195AZI  Works of joint authorship

(1) This section applies to a literary, dramatic, musical or artistic work that is a work of joint authorship.

(2) The right of attribution of authorship in respect of the work is a right of each joint author to be identified as a joint author.

(3) An act of false attribution in respect of the work infringes the right of each joint author not to have authorship of the work falsely attributed.

(4) The right of integrity of authorship in respect of the work is a right of each joint author.

(5) The consent of one joint author to any act or omission affecting his or her moral rights in respect of the work does not affect the moral rights of the other joint author or other joint authors in respect of the work.

### 195AZJ  Cinematograph films that have more than one principal director

(1) This section applies to a cinematograph film that has more than one principal director.

(2) The director's right of attribution of authorship in respect of the film is a right of each director to be identified as a director.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part IX  Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films
Division 8  Miscellaneous

Section 195AZK

(3)  An act of false attribution in respect of the direction of the film infringes the right of each director not to have the direction of the film falsely attributed.

(4)  The director's right of integrity of authorship in respect of the film is a right of each director.

(5)  The consent of one director to any act or omission affecting his or her moral rights in respect of the film does not affect the moral rights of the other director or other directors in respect of the film.

## 195AZK  Cinematograph films that have more than one principal producer

(1)  This section applies to a cinematograph film of which more than one individual is the principal producer.

(2)  The producer's right of attribution of authorship in respect of the film is a right of each producer to be identified as a producer.

(3)  An act of false attribution in respect of the production of the film infringes the right of each producer not to have the production of the film falsely attributed.

(4)  The producer's right of integrity of authorship in respect of the film is a right of each producer.

(5)  The consent of one producer to any act or omission affecting his or her moral rights in respect of the film does not affect the moral rights of the other producer or other producers in respect of the film.

## 195AZL  Cinematograph films that have more than one principal screenwriter

(1)  This section applies to a cinematograph film of which there is more than one principal screenwriter.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works
and cinematograph films  **Part IX**
Miscellaneous  **Division 8**

Section 195AZM

(2) The screenwriter's right of attribution of authorship in respect of the film is a right of each screenwriter to be identified as a screenwriter.

(3) An act of false attribution of authorship in respect of the script or screenplay of the film infringes the right of each screenwriter not to have the authorship of the script or screenplay of the film falsely attributed.

(4) The screenwriter's right of integrity of authorship in respect of the film is a right of each screenwriter.

(5) The consent of one screenwriter to any act or omission affecting his or her moral rights in respect of the film does not affect the moral rights of the other screenwriter or other screenwriters in respect of the film.

## 195AZM  Application—right of attribution of authorship

(1) The right of attribution of authorship in respect of:
   (a) a cinematograph film; or
   (b) a literary, dramatic, musical or artistic work as included in a cinematograph film;
   subsists only if the cinematograph film is made after the commencement of this Part.

(2) The right of attribution of authorship in respect of a literary, dramatic, musical or artistic work other than such a work as included in a cinematograph film subsists in respect of a work made before or after the commencement of this Part but this Part only applies in relation to attributable acts done after that commencement.

   Note:    Subsection 22(1) explains when a literary, dramatic, musical or artistic work is taken to be made and paragraph 22(4)(a) explains when a cinematograph film is taken to be made.

*Copyright Act 1968*    *497*

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part IX  Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films
Division 8  Miscellaneous

Section 195AZN

### 195AZN  Application—right not to have authorship falsely attributed

(1) The right not to have authorship falsely attributed subsists in respect of a work made before or after the commencement of this Part but this Part only applies in relation to acts of false attribution done after that commencement.

(2) Paragraph 195AD(b) or (c), 195AE(2)(b) or (c) or 195AF(2)(b) applies to an act of false attribution done after the commencement of this Part even if the name concerned was inserted or affixed before that commencement.

> Note:    Subsection 22(1) explains when a literary, dramatic, musical or artistic work is taken to be made and paragraph 22(4)(a) explains when a cinematograph film is taken to be made.

### 195AZO  Application—right of integrity of authorship

(1) The right of integrity of authorship in respect of:

    (a) a cinematograph film; or

    (b) a literary, dramatic, musical or artistic work as included in a cinematograph film;

subsists only if the cinematograph film is made after the commencement of this Part.

(2) Subject to subsection (3), the right of integrity of authorship in respect of a literary, dramatic, musical or artistic work, other than such a work as included in a cinematograph film, subsists in respect of a work made before or after the commencement of this Part.

(3) This Part applies in relation to an infringement of a right of integrity of authorship that subsists in respect of a work referred to in subsection (2) that was made before the commencement of this Part only if the infringement occurs after the commencement of this Part. However, an act referred to in paragraph 195AQ(3)(a), (b), (c), (d) or (e) or (4)(a), (b) or (c) is not an infringement if the relevant derogatory treatment occurred before that commencement.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films **Part IX**
Miscellaneous **Division 8**

Section 195AZP

> Note:    Subsection 22(1) explains when a literary, dramatic, musical or artistic work is taken to be made and paragraph 22(4)(a) explains when a cinematograph film is taken to be made.

## Subdivision B—Miscellaneous provisions about moral rights of performers

### 195AZP  Parts of performances

Moral rights in respect of a live performance or recorded performance apply in relation to the whole or a substantial part of the performance.

### 195AZQ  Performances that have more than one performer

(1)  This section applies to a live performance or recorded performance that has more than one performer.

(2)  A performer's right of attribution of performership in respect of the performance is a right of the performer to be identified as a performer.

> Example:    If X and Y are the performers in a performance, then each of them has the right to be identified. However, there is no infringement of X's moral right if Y is not identified (and vice versa).

> Note:    See also subsection 195ABC(3), which relates to the use of group names.

(3)  An act of false attribution of performership in respect of the performance infringes each performer's right not to have performership falsely attributed.

> Example:    X and Y are the performers in a performance that is falsely attributed to X and Z. This false attribution infringes X's moral right and Y's moral right.

(4)  The right of integrity of performership in respect of the performance is a right of each performer.

> Example:    X and Y are the performers in a performance. The performance is subjected to derogatory treatment that is prejudicial to X's reputation but not to Y's reputation. The result is an infringement of X's right of

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part IX  Moral rights of performers and of authors of literary, dramatic, musical or artistic works and cinematograph films
Division 8  Miscellaneous

Section 195AZR

integrity of performership but not an infringement of Y's right of integrity of performership.

(5) The consent of one performer to any act or omission affecting his or her moral rights in respect of the performance does not affect the moral rights of any other performer in respect of the performance.

## 195AZR  Application

(1) Moral rights in respect of a live performance only subsist in a live performance that occurs after the commencement of this section.

(2) Moral rights in respect of a recorded performance only subsist if the live performance concerned occurs after the commencement of this section.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Part X—Miscellaneous

## Division 1—Interpretation

### 195A  Interpretation

(1)  In this Part (other than subsection 203H(5)), ***officer in charge*** means:

   (a)  in relation to archives—the person holding, or performing the duties of, the office or position in the service of the body administering the archives the duties of which involve that person having direct responsibility for the maintenance of, and the provision of services in relation to, the collection comprising the archives;

   (b)  in relation to a central records authority—the person holding, or performing the duties of, the office in the service of the body administering the authority the duties of which involve that person having direct responsibility for the maintenance of, and the provision of services in relation to, the records deposited with the authority; and

   (c)  in relation to a library—the officer holding, or performing the duties of, the office or position in the service of the body administering the library the duties of which involve that person having direct responsibility for the maintenance of, and the provision of services in relation to, the collection comprising the library.

(3)  A reference in this Part to an educational institution includes a reference to an institution that has at any time been an educational institution.

(4)  A reference in this Part to an institution includes a reference to a school of nursing, an undertaking within a hospital, a teacher education centre and an undertaking within a body administering an educational institution.

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 2—Review

## 195B  Review of certain decisions

(1) For the purposes of this section, the following decisions are reviewable decisions:

(ba) a decision of the Comptroller-General of Customs under subsection 135(6A) to declare a notice given under subsection 135(2) to be ineffective;

(c) a decision of the Comptroller-General of Customs under section 135AA refusing to seize copies under subsection 135(7);

(ca) a decision of the Comptroller-General of Customs under section 135AEC refusing to allow a late claim for the release of seized copies;

(cb) a decision of the Comptroller-General of Customs under section 135AJ refusing to seize copies under subsection 135(7);

(d) a decision of the Comptroller-General of Customs not to give permission under subsection 135AD(1);

(e) a decision of the Minister under paragraph 113V(2)(b), 135ZZT(1A)(b) or 135ZZZO(2)(b) refusing to declare a body as a collecting society;

(f) a decision of the Minister under paragraph 113X(2)(a), 135ZZU(2)(a) or 135ZZZP(2)(a) revoking a declaration of a body as a collecting society.

(3) If the Comptroller-General of Customs makes a reviewable decision referred to in paragraphs (1)(ba) to (d), the Comptroller-General of Customs must cause to be sent to the objector or importer whose interests are affected by the decision a notice containing:

(a) the terms of the decision; and

(b) a statement to the effect that the objector or importer, as the case may be, may request a statement of reasons under section 268 of the *Administrative Review Tribunal Act 2024*.

Replaced Authorised Version registered 10/02/2025 C2024C00854

(4) Failure to include in a notice under subsection (3) a statement of the kind referred to in paragraph (3)(b) does not affect the validity of the decision to which the notice relates.

(5) Application may be made to the Administrative Review Tribunal for review of a reviewable decision.

(8) In this section:

*decision* has the same meaning as in the *Administrative Review Tribunal Act 2024*.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 3—National Library of Australia

## 195CA  Simplified outline

> Persons publishing certain literary, dramatic, musical or artistic works in Australia must deliver copies of the works to the National Library. The National Library may also request the delivery of works that are available online.

## 195CB  Copy of certain material to be delivered to the Library

*Material published but not available online*

(1) A person commits an offence if:

    (a) the person publishes National Library material in Australia on a particular day, but not in such a way that makes the material available online; and

    (b) the person is not requested under section 195CC, during the period of 1 month starting on that day, to cause a copy of the material to be delivered under section 195CD; and

    (c) the person contravenes section 195CD.

Penalty:  10 penalty units.

*Material available online*

(2) A person commits an offence if:

    (a) the person publishes National Library material; and

    (b) the material is available online; and

    (c) the person is requested under section 195CC to cause a copy of the material to be delivered under section 195CD; and

    (d) the person contravenes section 195CD.

Penalty:  10 penalty units.

Replaced Authorised Version registered 10/02/2025 C2024C00854

*Offences of strict liability*

(3) Subsections (1) and (2) are offences of strict liability.

> Note:    For strict liability, see section 6.1 of the *Criminal Code*.

*Not continuing offences*

(4) Subsection 4K(2) of the *Crimes Act 1914* (about continuing offences) does not apply in relation to an offence against subsection (1) or (2).

## 195CC  Library may request a copy of material available online

(1) The Director-General of the National Library may request, in writing, a person to cause a copy of National Library material to be delivered under section 195CD if:

  (a) the person publishes the material; and
  (b) the material is available online; and
  (c) the Director-General considers that a copy of the material should be included in the national collection of library material (see section 6 of the *National Library Act 1960*).

> Note:    The national collection includes a comprehensive collection of library material relating to Australia and the Australian people.

(2) The request may be made any time after the person publishes the material.

(3) For the purposes of paragraph 9(2)(d) of the *Electronic Transactions Act 1999*, one way of consenting to a request being made by way of electronic communication is having the ability to automatically receive user agent requests.

> Example:    The Director-General could use a web harvester to make requests in the form of user agent requests.

## 195CD  Delivering material to the Library

(1) A person contravenes this section unless the person causes to be delivered to the National Library, before the end of the delivery

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part X** Miscellaneous
**Division 3** National Library of Australia

Section 195CD

period for the National Library material, a copy of the material that:

(a) is a copy of the whole of the material (including any illustrations, drawings, engravings, photographs and audio-visual elements); and

(b) if the copy was requested under section 195CC—is in the electronic form in which the material was available online; and

(c) if the copy is in an electronic form:

(i) is free from any technological protection measure; and

(ii) is accompanied by any software or additional information necessary for the National Library to access the material from the copy; and

(d) if the copy is in hardcopy form:

(i) is finished and coloured, and bound, sewed, stitched or otherwise fastened together, in the same manner as the best copies of the material are supplied to the public; and

(ii) is on the best paper on which the material is printed; and

(e) is delivered at the person's own expense, unless the copy was requested under section 195CC and the request stated otherwise; and

(f) meets the requirements (if any) prescribed by the National Library Minister for the purposes of this paragraph.

(2) The *delivery period*, for National Library material, starts on:

(a) for material published in a way covered by paragraph 195CB(1)(a)—the day it was so published; or

(b) for material requested under section 195CC—the day the request was made;

and ends 1 month later or on a later day allowed by the Director-General of the National Library.

Note:    This section could apply twice, with separate delivery periods, if material published in Australia but not available online later became available online and was requested under section 195CC more than 1 month after it was published.

Replaced Authorised Version registered 10/02/2025 C2024C00854

### 195CE  Meaning of *National Library material*

A literary, dramatic, musical or artistic work, or an edition of such a work, (whether in an electronic form or otherwise) is ***National Library material*** if:

(a) the work or edition is:

   (i) a website, web page, web file, book, periodical, newspaper, pamphlet, sheet of music, map, plan, chart or table; or

   (ii) prescribed by the National Library Minister for the purposes of this subparagraph; and

(b) copyright subsists in the work or edition under this Act; and

(c) the work or edition is not primarily audio-visual; and

(d) in the case of an edition:

   (i) the edition contains additions or alterations in the text or other reading matter, illustrations, drawings, engravings, photographs or audio-visual elements; and

   (ii) the content of at least one of those additions or alterations was not contained in any earlier edition; and

(e) the work or edition is not prescribed by the National Library Minister for the purposes of this paragraph.

Note:     The same work in hardcopy form and an electronic form is the same National Library material.

### 195CF  Meaning of *available online*

National Library material is ***available online*** if it is communicated:

(a) on the internet; or

(b) in an electronic form prescribed by the National Library Minister for the purposes of this paragraph.

### 195CG  Infringement notices

(1) The National Library Minister may prescribe a scheme enabling a person who is alleged to have committed an offence against subsection 195CB(1) or (2) to pay a penalty to the Commonwealth as an alternative to prosecution.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 195CH

(2) The penalty must equal one-fifth of the maximum fine that a court could impose on the person as a penalty for that offence.

## 195CH  Relationship with State and Territory laws

This Division is not intended to exclude or limit the operation of any law of a State or Territory (whether made before or after the commencement of this Division) that makes provision for or in relation to the delivery to a specified public or other library in or of the State or Territory of copies of National Library material published in the State or Territory.

## 195CI  Delegation

(1) The Director-General of the National Library may, in writing, delegate the Director-General's powers under this Division to a member of the staff of the National Library who is an SES employee or acting SES employee.

Note:    The relevant powers are in section 195CC (about requesting copies of material available online), and subsection 195CD(2) (about allowing further time for delivery).

(2) In exercising powers under a delegation, the delegate must comply with any written directions of the Director-General.

## 195CJ  Legislative instruments

The National Library Minister may, by legislative instrument, prescribe matters required or permitted by this Division to be prescribed by that Minister.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 4—Other matters

## 196  Assignments and licences in respect of copyright

(1) Copyright is personal property and, subject to this section, is transmissible by assignment, by will and by devolution by operation of law.

(2) An assignment of copyright may be limited in any way, including any one or more of the following ways:

(a) so as to apply to one or more of the classes of acts that, by virtue of this Act, the owner of the copyright has the exclusive right to do (including a class of acts that is not separately specified in this Act as being comprised in the copyright but falls within a class of acts that is so specified);

(b) so as to apply to a place in or part of Australia;

(c) so as to apply to part of the period for which the copyright is to subsist.

(3) An assignment of copyright (whether total or partial) does not have effect unless it is in writing signed by or on behalf of the assignor.

(4) A licence granted in respect of a copyright by the owner of the copyright binds every successor in title to the interest in the copyright of the grantor of the licence to the same extent as the licence was binding on the grantor.

## 197  Prospective ownership of copyright

(1) Where, by an agreement made in relation to a future copyright and signed by or on behalf of the person who would, apart from this section, be the owner of the copyright on its coming into existence, that person purports to assign the future copyright (wholly or partially) to another person (in this subsection referred to as *the assignee*), then if, on the coming into existence of the copyright, the assignee or a person claiming under him or her would, apart from this subsection, be entitled as against all other persons to have

Compilation No. 64    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part X**  Miscellaneous
**Division 4**  Other matters

Section 198

the copyright vested in him or her (wholly or partially, as the case may be), the copyright, on its coming into existence, vests in the assignee or his or her successor in title by force of this subsection.

(2) Where, at the time when a copyright comes into existence, the person who, if he or she were then living, would be entitled to the copyright is dead, the copyright devolves as if it had subsisted immediately before his or her death and he or she had then been the owner of the copyright.

(3) A licence granted in respect of a future copyright by the prospective owner of the copyright binds every successor in title to the prospective interest in the copyright of the grantor of the licence to the same extent as the licence was binding on the grantor.

## 198  Copyright to pass under will with unpublished work

Where under a bequest, whether specific or general, a person is entitled, beneficially or otherwise, to the manuscript of a literary, dramatic or musical work, or to an artistic work, and the work was not published before the death of the testator, the bequest shall, unless a contrary intention appears in the testator's will, be read as including the copyright in the work in so far as the testator was the owner of the copyright immediately before his or her death.

## 199  Reception of broadcasts

(1) Where the inclusion in a television broadcast or sound broadcast of a reading or recitation of an extract from a published literary or dramatic work, or from an adaptation of such a work, does not constitute an infringement of the copyright in the work, a person who, by the reception of the broadcast, causes the work or adaptation to be performed in public does not, by doing so, infringe the copyright in the work.

(2) A person who, by the reception of a television broadcast or sound broadcast, causes a sound recording to be heard in public does not,

*Copyright Act 1968*

Replaced Authorised Version registered 10/02/2025 C2024C00854

by doing so, infringe the copyright, if any, in that recording under Part IV.

(3) A person who, by the reception of an authorized television broadcast, causes a cinematograph film to be seen or heard in public shall be treated, in any proceedings for infringement of the copyright, if any, in the film under Part IV, as if the person had been the holder of a licence granted by the owner of that copyright to cause the film to be seen or heard in public by the reception of the broadcast.

(5) If, in the circumstances mentioned in subsection (3), the person causing the cinematograph film to be seen or heard infringed the copyright in the film by reason that the broadcast was not an authorized broadcast, proceedings shall not be brought against that person under this Act in respect of his or her infringement of that copyright but the infringement shall be taken into account in assessing damages in any proceedings against the maker of the broadcast in respect of that copyright, in so far as that copyright was infringed by the making of the broadcast.

(6) For the purposes of this section, a broadcast, in relation to a cinematograph film, is an authorised broadcast only if it is made by, or with the licence of, the owner of the copyright in the film.

(7) A reference in this section to a broadcast must be read as a reference to a broadcast made by the Australian Broadcasting Corporation, by the Special Broadcasting Service Corporation, by the holder of a licence allocated by the Australian Communications and Media Authority under the *Broadcasting Services Act 1992*, or by a person authorised to make the broadcast by a class licence determined by that Authority under that Act.

## 200  Use of works and broadcasts for educational purposes

(1) A teacher or student does not infringe copyright in a work by copying the whole or a part of the work if:
  (a) the copying occurs in the course of educational instruction; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part X** Miscellaneous
**Division 4** Other matters

___

Section 200

___

    (b) the copying is not done using:

        (i) a device adapted for the production of multiple copies; or

        (ii) a device capable of producing a copy or copies by a process of reprographic reproduction.

(1A) Copying or communicating the whole or a part of copyright material does not infringe copyright in the material, if the material is copied or communicated:

    (a) as part of the questions to be answered in an examination; or

    (b) in an answer to such a question.

(1B) In subsections (1) and (1A):

    (a) a reference to copying a work or copyright material includes a reference to making or copying an adaptation of the work or material; and

    (b) a reference to communicating copyright material includes a reference to communicating an adaptation of the material.

  (2) The making of a record of a sound broadcast, being a broadcast that was intended to be used for educational purposes, does not constitute an infringement of copyright in a work or sound recording included in the broadcast if:

    (a) the record is made by, or on behalf of, the person or authority in charge of a place of education that is not conducted for profit; and

    (b) the record is not used except in the course of instruction at that place.

(2A) The making of a record of a sound broadcast is not an infringement of copyright in the broadcast if the record is made by, or on behalf of, the body administering an educational institution and is not used except for the educational purposes of that institution or another educational institution.

  (3) For the purposes of sections 38 and 103, in determining whether the making of an article constituted an infringement of copyright, subsections (1), (1A), (2) and (2A) shall be disregarded.

___

Replaced Authorised Version registered 10/02/2025 C2024C00854

(4) For the purposes of any provision of this Act relating to imported articles, in determining whether the making of an article made outside Australia would, if the article had been made in Australia by the importer of the article, have constituted an infringement of copyright, subsections (1), (1A), (2) and (2A) shall be disregarded.

## 200AAA  Proxy web caching by educational institutions

(1) This section applies if:

   (a) a computer system is operated by or on behalf of a body administering an educational institution; and

   (b) the system is operated primarily to enable staff and students of the institution to use the system to gain online access for educational purposes to works and other subject-matter (whether they are made available online using the internet or merely the system); and

   (c) the system automatically makes:

      (i) temporary electronic reproductions of works made available online through the system to users of the system in response to action by the users; and

      (ii) temporary electronic copies of other subject-matter made available online through the system to users of the system in response to action by the users; and

   (d) those reproductions and copies are made by the system merely to facilitate efficient later access to the works and other subject-matter by users of the system.

(2) Copyright in a work or other subject-matter reproduced or copied by the system as described in paragraphs (1)(c) and (d) is not infringed by:

   (a) that reproduction or copying; or

   (b) the later communication of the work or other subject-matter, using that reproduction or copy, to a user of the system.

(3) This section does not limit section 28, 43A, 43B, 111A or 111B.

(4) Disregard this section in determining whether copyright in a work or other subject-matter is infringed by an act that:

*Copyright Act 1968*                                           *513*

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part X** Miscellaneous
**Division 4** Other matters

Section 200AB

---

(a) involves a system like one described in subsection (1) except that the system is not operated as described in paragraphs (1)(a) and (b); and

(b) corresponds to an act described in paragraph (2)(a) or (b).

(5) In this section:

*system* includes network.

### 200AB  Use of works and other subject-matter for certain purposes

(1) The copyright in a work or other subject-matter is not infringed by a use of the work or other subject-matter if all the following conditions exist:

(a) the circumstances of the use (including those described in paragraphs (b), (c) and (d)) amount to a special case;

(b) the use is covered by subsection (2) or (3);

(c) the use does not conflict with a normal exploitation of the work or other subject-matter;

(d) the use does not unreasonably prejudice the legitimate interests of the owner of the copyright.

*Use by body administering library or archives*

(2) This subsection covers a use that:

(a) is made by or on behalf of the body administering a library or archives; and

(b) is made for the purpose of maintaining or operating the library or archives (including operating the library or archives to provide services of a kind usually provided by a library or archives); and

(c) is not made partly for the purpose of the body obtaining a commercial advantage or profit.

*Use by body administering educational institution*

(3) This subsection covers a use that:

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

    (a)  is made by or on behalf of a body administering an educational institution; and

    (b)  is made for the purpose of giving educational instruction; and

    (c)  is not made partly for the purpose of the body obtaining a commercial advantage or profit.

*This section does not apply if under another provision the use does not, or might not, infringe copyright*

(6)  Subsection (1) does not apply if, because of another provision of this Act:

    (a)  the use is not an infringement of copyright; or

    (b)  the use would not be an infringement of copyright assuming the conditions or requirements of that other provision were met.

> Example:  Paragraph (a)—Without using a device adapted for producing multiple copies or a device that can produce copies by reprographic reproduction, a school teacher copies a literary work in the course of educational instruction. Under subsection 200(1), the copying is not an infringement of copyright in the work, so this section does not apply.

(6AA)  In working out, for the purposes of subsection 113Q(2) (about the meaning of *licensed copying or communication*), whether copying or communicating does not infringe copyright only because of section 113P, disregard this section.

*Cost recovery not commercial advantage or profit*

(6A)  The use does not fail to meet the condition in paragraph (2)(c) or (3)(c) merely because of the charging of a fee that:

    (a)  is connected with the use; and

    (b)  does not exceed the costs of the use to the charger of the fee.

*Definitions*

(7)  In this section:

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part X**  Miscellaneous
**Division 4**  Other matters

Section 202

---

*conflict with a normal exploitation* has the same meaning as in Article 13 of the TRIPS Agreement.

*special case* has the same meaning as in Article 13 of the TRIPS Agreement.

*unreasonably prejudice the legitimate interests* has the same meaning as in Article 13 of the TRIPS Agreement.

*use* includes any act that would infringe copyright apart from this section.

## 202  Groundless threats of legal proceedings in relation to copyright infringement

(1) Where a person, by means of circulars, advertisements or otherwise, threatens a person with an action or proceeding in respect of an infringement of copyright, then, whether the person making the threats is or is not the owner of the copyright or an exclusive licensee, a person aggrieved may bring an action against the first-mentioned person and may obtain a declaration to the effect that the threats are unjustifiable, and an injunction against the continuance of the threats, and may recover such damages (if any) as he or she has sustained, unless the first-mentioned person satisfies the court that the acts in respect of which the action or proceeding was threatened constituted, or, if done, would constitute, an infringement of copyright.

(2) The mere notification of the existence of a copyright does not constitute a threat of an action or proceeding within the meaning of this section.

(3) Nothing in this section renders a barrister or solicitor of the High Court, or of the Supreme Court of a State or Territory, liable to an action under this section in respect of an act done by him or her in his or her professional capacity on behalf of a client.

(4) The defendant in an action under this section may apply, by way of counterclaim, for relief to which he or she would be entitled in a separate action in respect of an infringement by the plaintiff of the

---

*Copyright Act 1968*

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

copyright to which the threats relate and, in any such case, the provisions of this Act with respect to an action for infringement of a copyright are, *mutatis mutandis*, applicable in relation to the action.

(5) A reference in this section to an action in respect of an infringement of copyright shall be read as including a reference to an action in respect of the conversion or detention of an infringing copy or of a device used or intended to be used for making infringing copies.

## 202A  Groundless threats of legal proceedings in relation to technological protection measures

(1) If a person (the ***first person***) threatens another person with an action under Subdivision A of Division 2A of Part V, a person aggrieved may bring an action against the first person.

> Note:    Subdivision A of Division 2A of Part V establishes causes of action that relate to circumventing an access control technological protection measure (section 116AN), manufacturing etc. a circumvention device for a technological protection measure (section 116AO) and providing etc. a circumvention service for a technological protection measure (section 116AP).

(2) An action may be brought under this section whether or not the first person is the owner or exclusive licensee of the copyright in the work or other subject-matter to which the threatened action relates.

(3) The mere notification that a work or other subject-matter is protected by a technological protection measure does not constitute a threat of an action within the meaning of this section.

(4) In an action under this section, the orders a court may make include the following:
   (a) an order declaring that the threat is unjustifiable;
   (b) an order granting an injunction restraining the first person from continuing to make the threat;

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 203

(c) an order awarding such damages (if any) for loss that the person aggrieved has suffered as a result of the making of the threat.

(5) The court must not make an order under subsection (4) if the first person satisfies the court that an action under Subdivision A of Division 2A of Part V has reasonable prospects of success.

(6) Nothing in this section renders a barrister or solicitor of the High Court, or of the Supreme Court of a State or Territory, liable to an action under this section in respect of an act done in his or her professional capacity on behalf of a client.

(7) If an action under this section is brought:

(a) the first person may apply, by way of counterclaim, for relief to which he or she would be entitled in an action under Subdivision A of Division 2A of Part V; and

(b) the provisions of Part V apply as if the counterclaim were an action brought by the first person under that Subdivision.

## 203  Limitation on power of courts to grant relief in proceedings under this Act

Nothing in this Act authorizes a State court or a court of a Territory to grant relief by way of injunction or account of profits if that court would not, apart from this Act, have power to grant such relief.

## 203A  Offence—failing to keep declarations relating to copying in library or archives

(1) A person commits an offence if:

(a) at a time, the person is:

(i) ultimately responsible for administering a library or archives; or

(ii) the officer in charge of a library or archives; and

(b) that time is:

*Copyright Act 1968*

Replaced Authorised Version registered 10/02/2025 C2024C00854

(i) after an authorized officer of a library or archives reproduced or copied all or part of a work or other subject-matter under section 49 or 50; and

(ii) after a written declaration was made for the purpose of that section in relation to the reproduction or copying; and

(iii) before the end of the period prescribed by the regulations for the keeping of the declaration; and

(c) at that time, the declaration is not kept in the records of the library or archives.

Penalty:  5 penalty units.

(2) Subsection (1) does not apply if:

(a) the person is the officer in charge of a library or archives and proves that:

(i) the reproduction or copying took place before the day the person became the officer in charge; and

(ii) on that day the declaration was not in the possession of the person administering the library or archives; or

(b) the person proves that the person took all reasonable precautions, and exercised due diligence, to ensure the declaration was kept in the records of the library or archives.

Note:    The person bears a legal burden in relation to a matter in subsection (2) (see section 13.4 of the *Criminal Code*).

(3) Subsection (1) is an offence of strict liability.

Note:    For strict liability, see section 6.1 of the *Criminal Code*.

(4) The person cannot be convicted of more than one offence under this section in relation to the one declaration.

Note:    Section 203G makes early destruction or disposal of the declaration an offence.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part X  Miscellaneous
Division 4  Other matters

Section 203E

### 203E  Inspection of records and declarations retained in records of libraries and archives

(1) The owner of the copyright in a work, sound recording or cinematograph film, or the agent of such an owner, may notify the officer in charge of a library or archives, in writing, that he or she wishes to inspect, on a day specified in the notice:

    (a) all the relevant declarations retained in the records of the library or archives that relate to the making, in reliance on section 49 or 50, of copies of works or parts of works or of copies of other subject-matter; or

    (b) such of those declarations as:

        (i) relate to the making, in reliance on section 49 or 50, of copies of works or parts of works or of copies of other subject-matter; and

        (ii) were made during a period specified in the notice.

(2) The day specified in the notice must be an ordinary working day of the library or archives that is at least 7 days after the notice is given.

(4) Where a person gives notice, under subsection (1), to the officer in charge of a library or archives that he or she wishes to inspect certain declarations on a particular day, that person may, during the ordinary working hours of the library or archives, on that day, but not earlier than 10 a.m. or later than 3 p.m., inspect the declarations to which the notice relates and, where the notice relates also to the inspection of the collection of the library or archives, may also during those hours on that day inspect that collection, and, for that purpose, may enter the premises of the library or archives.

(6) A person commits an offence if:

    (a) the person is:

        (i) ultimately responsible for administering a library or archives; or

        (ii) the officer in charge of a library or archives; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

(b) another person (the ***inspector***) attends at the premises of the library or archives for the purpose of exercising his or her powers under subsection (4); and

(c) the inspector is not provided with all reasonable facilities and assistance for the effective exercise of those powers.

Penalty:  5 penalty units.

(6A) Subsection (6) is an offence of strict liability.

Note:       For ***strict liability***, see section 6.1 of the *Criminal Code*.

(8) The officer in charge of a library or archives shall not be convicted of an offence against subsection (6) if the officer adduces evidence that he or she believed, on reasonable grounds, that the person who attended the premises of the library or archives, as the case may be, as mentioned in that subsection, was provided with all reasonable facilities and assistance for the effective exercise of the powers conferred by subsection (4) and that evidence is not rebutted by the prosecution.

(9) The body administering a library or archives shall not be convicted of an offence against subsection (6) if the body adduces evidence that it took all reasonable precautions, and exercised due diligence, to ensure that the person who attended the premises of the library or archives, as the case may be, as mentioned in that subsection, was provided with all reasonable facilities and assistance for the effective exercise of the powers conferred by subsection (4) and that evidence is not rebutted by the prosecution.

(10) A person (the ***defendant***) commits an offence if:

(a) the defendant makes a record of information, or divulges or communicates information; and

(b) the information was acquired by the defendant either in the course of an inspection the defendant made under subsection (4) or because it was divulged or communicated to the defendant either:

(i) by another person who acquired the information in the course of an inspection he or she made under subsection (4); or

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 203F

---

(ii) in one of a series of divulgements or communications by different persons that started with a divulgement or communication of the information by a person who acquired it the course of an inspection he or she made under subsection (4).

Penalty:  5 penalty units.

(10A)  Subsection (10) is an offence of strict liability.

Note:        For **strict liability**, see section 6.1 of the *Criminal Code*.

(11)  Subsection (10) does not apply if the defendant makes the record, divulgement or communication with the intention of:

(a) informing the owner of the copyright in a work or other subject-matter that a copy has been made of the work or other subject-matter; or

(b) enforcing a right that a person has under this Act in connection with a work or other subject-matter in which copyright subsists; or

(c) ensuring compliance with a provision of Division 5 of Part III or with a provision of this Part.

Note:        The defendant bears an evidential burden in relation to the matter in subsection (11) (see subsection 13.3(3) of the *Criminal Code*).

## 203F  False and misleading declarations

A person commits an offence if:

(a) the person makes a declaration for the purposes of section 49 or 50; and

(b) the declaration is false or misleading in a material particular.

Penalty:  5 penalty units.

## 203G  Offence—disposing of or destroying certain declarations

A person commits an offence if:

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

(a) the person disposes of, destroys, or causes the disposal or destruction of, a declaration made for the purposes of section 49 or 50; and

(b) the period prescribed by the regulations for the keeping of the declaration has not ended.

Penalty:  5 penalty units.

### 203H  Notation of certain copies etc.

(1) In proceedings against a person or body for infringement of copyright in a work in connection with the making, by or on behalf of an institution, of a reproduction of the work, or of a part of the work, the person or body is not entitled to rely on section 49 or 50 as justification for the making of the reproduction unless, at or about the time the reproduction was made, there was made on the reproduction a notation stating that the reproduction was made on behalf of that institution and specifying the date on which the reproduction was made.

(4) A person commits an offence if:

(a) the person makes a notation described in subsection (1) on a reproduction of a work or part of a work; and

(b) a statement in the notation is false or misleading in a material particular.

Penalty:  5 penalty units.

(5) For the purposes of subsection (1):

(a) if a reproduction of the whole or part of a work, or a copy of a sound recording or a cinematograph film:

(i) is made, or caused to be made, by an authorized officer of a library; or

(ii) is made by, or on behalf of, the officer in charge of a library;

being a library of an institution, the reproduction or copy is taken to have been made on behalf of the institution; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part X** Miscellaneous
**Division 4** Other matters

---

Section 203H

---

    (b) if a reproduction of the whole or part of a work, or a copy of a sound recording or a cinematograph film:

        (i) is made, or caused to be made, by an authorized officer of a library; or

       (ii) is made by, or on behalf of, the officer in charge of a library;

    being a library that is not a library of an institution:

      (iii) the reproduction or copy is taken to have been made on behalf of the person or body administering the library; and

      (iv) that subsection applies as if references to an institution were references to that person or body; and

    (c) if a reproduction of the whole or part of a work, or a copy of a sound recording or a cinematograph film:

        (i) is made, or caused to be made, by an authorized officer of archives; or

       (ii) is made by, or on behalf of, the officer in charge of archives;

    then:

      (iii) the reproduction or copy is taken to have been made by or on behalf of the person or body administering the archives; and

      (iv) that subsection applies as if references to an institution were references to that person or body; and

    (d) if a reproduction, or a record embodying a sound recording, of the whole or part of a work is made by or on behalf of the body administering an institution, the reproduction or record is taken to have been made on behalf of the institution; and

    (e) if a copy of a sound recording or a cinematograph film is made by or on behalf of the body administering an institution, the copy is taken to have been made on behalf of the institution.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Part XI—Transitional

## Division 1—Preliminary

### 204  Interpretation

(1) In this Part, the expression *photograph* has, in lieu of the meaning given to that expression by section 10, the meaning given by the next succeeding subsection.

(2) For the purposes of any provision of this Part that provides that an expression is to have the meaning given to that expression by this section or that refers to an expression as defined by this section:

*collective work* means:
   (a) an encyclopaedia, dictionary, year book or similar work;
   (b) a newspaper, review, magazine or similar periodical; or
   (c) a work written in distinct parts by different authors, or in which works or parts of works of different authors are incorporated.

*deliver*, in relation to a lecture, includes deliver by means of a mechanical instrument.

*dramatic work* includes a piece for recitation, a choreographic work or entertainment in dumb show the scenic arrangement or acting form of which is fixed in writing or otherwise, and a cinematograph production where the arrangement, the acting form or the combination of incidents represented gives the work an original character.

*lecture* includes an address, speech and sermon.

*literary work* includes a map, chart, plan, table and compilation.

*perform*, in relation to a dramatic work as defined by this section or a musical work, means make an acoustic representation of the work or a visual representation of a dramatic action in the work,

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 205

and includes make such a representation by means of a mechanical instrument.

*photograph* includes photo-lithograph and a work produced by a process similar to photography.

## 205  References to making of works, recordings and films

For the purposes of any reference in this Part to works, sound recordings or cinematograph films made before the commencement of this Act, a work, sound recording or cinematograph film the making of which extended over a period shall be deemed not to have been made before the commencement of this Act unless the making of it was completed before the commencement of this Act.

## 206  References in other laws or instruments to copyright

(1) Without prejudice to the operation of the succeeding sections of this Part:

 (a) a reference in any other law of the Commonwealth or in any contract, agreement or other instrument to a provision of the Copyright Act, 1911 shall be read as a reference, or as including a reference, to the corresponding provision of this Act;

 (b) a reference in any other law of the Commonwealth or in any contract, agreement or other instrument to copyright or to works in which copyright subsists shall, if apart from this Act it would be read as a reference to copyright under the Copyright Act, 1911 or to works in which copyright subsisted under that Act, be read as a reference, or as including a reference, to copyright under this Act or to works or any other subject-matter in which copyright subsists under this Act, as the case may be; and

 (c) a reference in any other law of the Commonwealth or in any contract, agreement or other instrument to the grant of an interest in copyright by licence shall be read, in relation to

Replaced Authorised Version registered 10/02/2025 C2024C00854

copyright under this Act, as a reference to the grant of a licence in respect of that copyright.

(2) This section has effect unless the contrary intention appears in the other law of the Commonwealth or in the contract, agreement or other instrument, as the case may be.

(3) In this section, *law of the Commonwealth* means:

    (a) an Act;

    (b) an instrument (including regulations or rules) having effect by virtue of an Act;

    (c) an Ordinance of a Territory and any other law in force in a Territory;

    (d) an instrument (including regulations or rules) having effect by virtue of such an Ordinance or law; and

    (e) an instrument having effect by virtue of any such regulations or rules as are mentioned in paragraph (b) or paragraph (d).

## 207  Application

Except in so far as this Part otherwise expressly provides, this Act applies in relation to things existing at the commencement of this Act in like manner as it applies in relation to things coming into existence after the commencement of this Act.

## 208  Authorship of photographs

(1) A reference in this Act to the author of a photograph shall, in relation to a photograph taken before the commencement of this Act, be read as a reference to the person who, at the time when the photograph was taken, was the owner of the material on which the photograph was taken.

(2) However, if the owner of the material on which the photograph was taken was a body corporate, then subsection (1) only applies in respect of references to the author of the photograph that relate to the ownership of the copyright in the photograph.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 209

Note:    For example, subsection (1) does not apply in relation to references to the author of the photograph that relate to the duration of the copyright in the photograph.

### 209  Publication

(1) For the purposes of the application of subsection 29(5) in determining whether a publication that took place before the commencement of this Act was the first publication, the reference in that subsection to a period of not more than 30 days shall be read as a reference to a period of not more than 14 days.

(2) For the purposes of the application of subsection 29(7) in relation to an act done before the commencement of this Act:

  (a) a reference in that subsection to copyright includes a reference to copyright under the *Copyright Act 1905* and to copyright under the Copyright Act, 1911; and

  (b) a reference in that subsection to the licence of the owner of copyright shall:

   (i) in relation to copyright under the *Copyright Act 1905*—be read as a reference to the privity of the owner; and

   (ii) in relation to copyright under the Copyright Act, 1911—be read as a reference to the consent or acquiescence of the owner.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 2—Original works

## 210  Expired copyright not to revive

(1) Notwithstanding anything in Part III, copyright does not subsist by virtue of that Part in a work first published before the commencement of this Act unless copyright subsisted in the work under the Copyright Act, 1911 immediately before the commencement of this Act.

(2) The last preceding subsection does not apply in relation to a work to which Division 5 applies.

## 211  Original works in which copyright subsists

(1) Subsection 32(1) applies to works made before the commencement of this Act as if each reference in that subsection to a qualified person included a reference to a British subject and to a person domiciled in any part of the Sovereign's dominions to which the Copyright Act, 1911 extended.

(2) Subsection 32(2) applies to works first published before the commencement of this Act as if paragraphs (d) and (e) of that subsection were omitted.

(3) Subsection 32(2) applies to works that are first published after the commencement of this Act and the author of which died before the commencement of the *Nationality and Citizenship Act 1948* as if the reference in paragraph 32(2)(e) to a qualified person included a reference to a person who would have been an Australian citizen if that Act had been in force immediately before his or her death.

(4) Subsection 32(3) does not apply to or in relation to a building that was constructed before the commencement of this Act.

(5) This section has effect subject to the last preceding section.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part XI**  Transitional
**Division 2**  Original works

Section 213

### 213  Ownership of copyright

(1) Subsections 35(4) and (6) do not apply in relation to works made before the commencement of this Act.

(2) Subsection 35(5) does not apply in relation to a work that was or is made in pursuance of an agreement made before the commencement of this Act.

(3) Where a work is excluded from the application of subsection 35(4), (5) or (6) by reason of either of the last two preceding subsections, subsection 35(2) has effect in relation to the work subject to the succeeding subsections of this section.

(4) The operation of any of the next three succeeding subsections in relation to a particular work may be excluded or modified by agreement.

(5) Where, in the case of a work being a photograph, portrait or engraving:

    (a)  a person made, for valuable consideration, an agreement with another person for the taking of the photograph, the painting or drawing of the portrait or the making of the engraving by the other person; and

    (b)  the work was made in pursuance of the agreement;

the first-mentioned person is the owner of any copyright subsisting in the work by virtue of Part III.

(6) Where the work was made by the author in pursuance of the terms of his or her employment by another person under a contract of service or apprenticeship, that other person is the owner of any copyright subsisting in the work by virtue of Part III.

(7) Where the work is a literary, dramatic or artistic work that was made by the author in pursuance of the terms of his or her employment by the proprietor of a newspaper, magazine or similar periodical under a contract of service or apprenticeship and was so made for the purpose of publication in a newspaper, magazine or similar periodical, the author is entitled to restrain the publication

Replaced Authorised Version registered 10/02/2025 C2024C00854

of the work otherwise than in a newspaper, magazine or similar periodical.

(8) In the last three preceding subsections, expressions that are defined by section 204 have the meanings respectively given to those expressions by that section and do not have the meanings, if any, respectively given to those expressions by Part II.

## 214  Infringement by importation, sale and other dealings

For the purposes of sections 37 and 38, the fact that, to the knowledge of a person, the making of an article constituted, or, in the case of an imported article, would, if the article had been made in Australia by the importer of the article, have constituted, an infringement of copyright under the Copyright Act, 1911 has the like effect as if, to the knowledge of that person, the making of the article had constituted, or would, if the article had been made in Australia by the importer, have constituted, as the case may be, an infringement of copyright under this Act.

## 215  Recording of musical works

(1) Where a record of a work has, before the commencement of this Act, been made by, or with the consent or acquiescence of, the owner of the copyright in the work under the Copyright Act, 1911, Division 6 of Part III has the like effect as if the record had been made in Australia for the purpose of retail sale and had been so made by, or with the licence of, the person who is entitled, by virtue of this Act, to authorize the making in Australia of records of the work.

(2) Notwithstanding subsection 5(1) of this Act, subsections 19(2) to (7), inclusive, of the Copyright Act, 1911 as in force immediately before the commencement of this Act continue to apply in relation to records made before the commencement of this Act and, subject to those subsections, any regulations made for the purposes of those subsections and in force immediately before the commencement of this Act continue to apply in relation to those records.

Replaced Authorised Version registered 10/02/2025 C2024C00854

### 216  Publication of artistic works

Section 68 does not apply in relation to a painting, drawing, engraving, photograph or cinematograph film made before the date of commencement of this Act, but the copyright in an artistic work is not infringed by the publication of a painting, drawing, engraving, photograph or cinematograph film made before that date if, by virtue of section 65 or section 66, the making of the painting, drawing, engraving, photograph or film would not have constituted an infringement of the copyright under this Act if this Act had been in operation at the time when it was made.

### 217  Reconstruction of buildings

The reference in subsection 73(2) to construction of a building by, or with the licence of, the owner of the copyright in architectural drawings or plans shall be read as including a reference to construction by, or with the licence of, the person who, at the time of the construction, was the owner of the copyright in the drawings or plans under the law relating to copyright that was in force at that time in the State or Territory in which the building was constructed.

### 218  Industrial designs

(1) Division 8 of Part III does not apply to artistic works made before the commencement of this Act.

(2) Copyright does not subsist by virtue of this Act in an artistic work made before the commencement of this Act which, at the time when the work was made, constituted a design capable of being registered under the *Designs Act 1906*, or under that Act as amended and in force at that time, and was used, or intended to be used, as a model or pattern to be multiplied by an industrial process.

Replaced Authorised Version registered 10/02/2025 C2024C00854

### 219  Reproduction of work upon payment of royalties

(1) The copyright in a literary, dramatic, musical or artistic work that has been published before the commencement of this Act is not infringed by the reproduction of the work for sale if:

    (a) the reproduction takes place at a time after the expiration of twenty-five years, or, in the case of a work in which copyright subsisted at the commencement of the Copyright Act, 1911, after the expiration of thirty years, after the date of the death of the author; and

    (b) the person reproducing the work establishes:

        (i) that, before the commencement of this Act, he or she gave the notice in writing of his or her intention to reproduce the work that was prescribed for the purposes of the proviso to section 3 of the Copyright Act, 1911; and

        (ii) that he or she has paid, in the manner that was prescribed for the purposes of that proviso, or is prescribed for the purposes of this section, as the case may be, to, or for the benefit of, the owner of the copyright royalties in respect of all copies of the work sold by him or her calculated at the rate of ten per centum of the price at which he or she published the reproduction.

(2) The regulations may make provision for or in relation to the manner in which, and the times at which, payment of royalties is to be made for the purposes of subparagraph (ii) of paragraph (b) of the last preceding subsection and may include provision requiring payment in advance, or otherwise securing the payment of the royalties.

(3) Regulations 38 to 42, inclusive, of the Copyright Regulations as in force under the *Copyright Act 1912-1966* immediately before the commencement of this Act continue in force for the purposes of this section as if they had been made under this Act, but may be amended or repealed by regulations made under this Act.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part XI**  Transitional
**Division 2**  Original works

Section 219

(4) A reference in paragraph (1)(a) to a time after the expiration of a specified number of years from the date of the death of the author of a work shall, in the case of a work of joint authorship, be read as a reference to a time after:

    (a) the expiration of the same number of years from the date of the death of the author who died first; or

    (b) the date of the death of the author who died last;

whichever is the later.

(5) Where a literary, dramatic or musical work, or an engraving, in which copyright subsisted at the date of the death of the author or, in the case of a work of joint authorship, at or immediately before the date of the death of the author who died last:

    (a) had not been published;

    (b) in the case of a dramatic or musical work—had not been performed in public; and

    (c) in the case of a lecture—had not been delivered in public;

before that date, subsection (1) applies as if the author had died on the date on which:

    (d) in the case of a literary work (other than a lecture) or an engraving—the work was first published;

    (e) in the case of a dramatic or musical work—the work was first published or first performed in public, whichever first happened; or

    (f) in the case of a lecture—the lecture was first published or first delivered in public, whichever first happened.

(6) In this section, expressions that are defined by section 204 have the meanings respectively given to those expressions by that section and do not have the meanings, if any, respectively given to those expressions by Part II.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 3—Subject-matter other than works

## 220  Sound recordings

(1) Subsection 89(1) applies in relation to sound recordings made before the commencement of this Act as if the reference in that subsection to a qualified person included a reference to a British subject and to a person domiciled in any part of the Sovereign's dominions to which the Copyright Act, 1911 extended.

(2) Subsection 89(2) does not apply in relation to a sound recording made before the commencement of this Act.

## 221  Cinematograph films

Copyright does not subsist by virtue of section 90 in a cinematograph film made before the commencement of this Act.

## 222  Application of Act to dramatic works and photographs comprised in cinematograph films

(1) Where a cinematograph film made before the commencement of this Act was an original dramatic work as defined by section 204, this Act (other than this subsection) has effect in relation to the film as if the film had been an original dramatic work as defined by section 10 and the person who was the author of the work for the purposes of the Copyright Act, 1911 shall be deemed to be the author of the work for the purposes of this Act as having effect by virtue of this subsection.

(2) This Act has effect in relation to photographs forming part of a cinematograph film made before the commencement of this Act in like manner as it has effect in relation to photographs not forming part of a cinematograph film.

Replaced Authorised Version registered 10/02/2025 C2024C00854

11

Section 223

---

### 223  Television broadcasts and sound broadcasts

Copyright does not subsist by virtue of section 91 in:

   (a)  a television broadcast or a sound broadcast made before the commencement of this Act; or

   (b)  a television broadcast or a sound broadcast made after the commencement of this Act that is a repetition of a television broadcast or a sound broadcast made before the commencement of this Act.

### 224  Published editions of works

Copyright does not subsist by virtue of section 92 in a published edition of a work or works where the first publication of the edition took place before the commencement of this Act.

### 225  Infringement by importation, sale and other dealings

For the purposes of sections 102 and 103, the fact that, to the knowledge of a person, the making of an article constituted, or, in the case of an imported article, would, if the article had been made in Australia by the importer of the article, have constituted, an infringement of copyright under the Copyright Act, 1911 has the like effect as if, to the knowledge of that person, the making of the article had constituted, or would, if the article had been made in Australia by the importer, have constituted, as the case may be, an infringement of copyright under this Act.

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 4—Miscellaneous

## 226  Actions for infringement

Section 115 does not apply to an infringement of copyright under the Copyright Act, 1911 and does not affect any proceedings under that Act, whether instituted before or after the commencement of this Act.

## 227  Infringing copies

Section 116 of this Act does not apply in relation to an article made, or imported into Australia, before the commencement of this Act, but, notwithstanding subsection 5(1) of this Act, proceedings may, subject to the Copyright Act, 1911, be brought or continued by virtue of section 7 of that Act in relation to such an article and may be so brought or continued although the proceedings relate to the conversion or detention of the article after the commencement of this Act.

## 228  Actions where copyright subject to exclusive licence

Division 3 of Part V does not apply in relation to a licence granted before the commencement of this Act and does not affect any proceedings under the Copyright Act, 1911, whether instituted before or after the commencement of this Act.

## 229  Offences and summary proceedings

For the purposes of Division 5 of Part V, the definition of *infringing copy* in section 10 applies as if any reference in that definition to copyright included a reference to copyright under the Copyright Act, 1911.

Replaced Authorised Version registered 10/02/2025 C2024C00854

6

**Part XI**  Transitional
**Division 4**  Miscellaneous

---

Section 230

---

### 230  Limitation of actions

Section 134 of this Act does not apply in relation to an infringement of copyright under the Copyright Act, 1911 or to an article made, or imported into Australia, before the commencement of this Act.

### 231  Restriction of importation of printed copies of works

Where:

(a) before the date of commencement of this Act, a notice had been given in respect of a work under section 10 of the *Copyright Act 1912* or of that Act as amended; and

(b) that notice had not been withdrawn, and had not otherwise ceased to have effect, before that date;

the notice has, during the period of six months commencing on that date, such effect (if any) as it would have if it had been duly given in accordance with section 135 of this Act.

### 232  References and applications to Tribunal in relation to licence schemes

(1) Part VI applies in relation to licence schemes formulated before the date of commencement of this Act in like manner as it applies in relation to licence schemes formulated on or after that date, but, for the purposes of the application of that Part in relation to licence schemes formulated before that date, any reference in that Part to copyright includes a reference to copyright under the Copyright Act, 1911.

(2) Any reference in section 157 to a refusal or failure to grant or procure the grant of a licence, or to a proposal that a licence should be granted, does not include a reference to a refusal or failure that occurred, or a proposal that was made, before the commencement of this Act.

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

### 235  Crown copyright in films

(1) This section applies to a cinematograph film made before the commencement of this Act.

(2) Section 178 does not apply in relation to the film.

(3) Sections 176, 177 and 180 apply:
  (a) in relation to the film in accordance with subsection 222(1) if the film was an original dramatic work (within the meaning of section 204); and
  (b) in relation to photographs forming part of the film in the same way as those sections apply in relation to photographs not forming part of a cinematograph film.

### 236  Works made or published by international organizations

(1) Subsection 187(1) does not apply in relation to works made before the commencement of this Act.

(2) Subsection 187(2) does not apply in relation to works first published before the commencement of this Act.

### 237  Subject-matter, other than original works, made or published by international organizations

(1) Subsection 188(1) does not apply in relation to sound recordings or cinematograph films made before the commencement of this Act.

(2) Subsection 188(2) does not apply in relation to sound recordings or cinematograph films first published before the commencement of this Act.

(3) Subsection 188(3) does not apply in relation to an edition published before the commencement of this Act.

### 239  Assignments and licences

(1) Subject to this section, where copyright subsists in a work by virtue of this Act, any document that was made, or event that occurred,

Compilation No. 64                                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part XI** Transitional
**Division 4** Miscellaneous

## Section 239

before the commencement of this Act, being a document or event that had any operation affecting the ownership of, or creating, transferring or terminating an interest, right or licence in respect of, copyright in the work under the Copyright Act, 1911 or would have had such an operation if that Act had continued in force, has the like operation in relation to the copyright in the work under this Act.

(2) If the operation of a document to which the last preceding subsection applies was or would have been limited to a period specified in the document, the document does not have any operation in relation to the copyright under this Act, except in so far as that period extends after the commencement of this Act.

(3) For the purposes of the operation of a document in accordance with this section:

   (a) expressions used in the document have the same respective meanings as they had immediately before the commencement of this Act, whether or not those expressions have different meanings for the purposes of this Act; and

   (b) subsection 197(1) does not apply.

(4) Without prejudice to the generality of subsection (1), where the author of a work that was made before the commencement of this Act was the first owner of the copyright in the work:

   (a) any assignment of the copyright, or any grant of an interest in the copyright, made by the author (otherwise than by will) after the commencement of the Copyright Act, 1911 and before the commencement of this Act, being an assignment or grant that has effect in relation to copyright in the work under this Act by virtue of subsection (1), does not operate to vest in the assignee or grantee any rights with respect to the copyright in the work after the expiration of 25 years after the date of the death of the author;

   (b) on the death of the author, the reversionary interest in the copyright expectant on the termination of that period devolves, notwithstanding any agreement to the contrary, on

Replaced Authorised Version registered 10/02/2025 C2024C00854

his or her legal personal representative as part of his or her estate; and

    (c) any agreement entered into by the author as to the disposition of that reversionary interest is of no force or effect;

but nothing in this subsection shall be taken to apply to the assignment of the copyright in a collective work or a licence to publish a work or a part of a work as part of a collective work.

(5) In the last preceding subsection, expressions that are defined by section 204 have the meanings respectively given to those expressions by that section and do not have the meanings, if any, respectively given to those expressions by Part II.

(6) The preceding subsections of this section apply in relation to copyright under this Act in a sound recording or in a cinematograph film in like manner as they apply in relation to copyright in a work but a reference in those subsections to the copyright under the Copyright Act, 1911 shall:

    (a) in the application of those subsections in relation to a sound recording—be read as a reference to the copyright under that Act in records embodying the recording; and

    (b) in the application of those subsections in relation to a cinematograph film—be read as a reference to any copyright under that Act in the film (in so far as it constituted a dramatic work for the purposes of that Act) or in photographs forming part of the film.

## 240  Bequests

(1) Section 198 does not apply in relation to a bequest contained in the will of a testator who died before the commencement of this Act.

(2) Where:

    (a) an author has died before the commencement of this Act;

    (b) a person has acquired, under the will of the author, the ownership of a manuscript of a work by the author; and

    (c) the work:

        (i) has not been published;

Compilation No. 64     Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part XI**  Transitional
**Division 4**  Miscellaneous

Section 242

_____

    (ii) in the case of a dramatic or musical work—has not been performed in public; and

    (iii) in the case of a lecture—has not been delivered in public;

  the ownership by that person of the manuscript is evidence that that person is the owner of the copyright in the work.

 (3) In the last preceding subsection, expressions that are defined by section 204 have the meanings respectively given to those expressions by that section and do not have the meanings, if any, respectively given to those expressions by Part II.

## 242  Groundless threats of legal proceedings

  Section 202 of this Act does not apply in relation to threats made after the commencement of this Act in respect of acts that took place before the commencement of this Act and, notwithstanding section 6 of this Act, section 41A of the *Copyright Act 1912-1966* continues to apply in relation to any such threats in like manner as it continues to apply in relation to threats made before the commencement of this Act.

_____

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 5—Works made before 1 July, 1912

### 243  Interpretation

In this Division, ***right conferred by the Copyright Act, 1911***, in relation to a work, means a right that, by virtue of section 24 of the Copyright Act, 1911, was conferred in place of a right that subsisted immediately before the commencement of that Act.

### 244  Application

This Division applies to works made before 1 July 1912.

### 245  Rights conferred by Copyright Act, 1911

Notwithstanding anything in Division 2, section 32 of this Act does not apply to a work to which this Division applies unless a right conferred by the Copyright Act, 1911 subsisted in the work immediately before the commencement of this Act.

### 246  Performing rights

(1) Where the right conferred by the Copyright Act, 1911 in relation to a dramatic or musical work to which this Division applies did not include the sole right to perform the work in public, then, copyright, in so far as it subsists in the work by virtue of this Act, does not include the performing rights in relation to the work.

(2) Where the right conferred by the Copyright Act, 1911 in relation to a dramatic or musical work to which this Division applies consisted only of the sole right to perform the work in public, then, copyright, in so far as it subsists in the work by virtue of this Act, consists only of the performing rights in relation to the work.

(3) For the purposes of this section, the performing rights, in relation to a work, are:

(a) the exclusive right to perform the work, or an adaptation of the work, in public;

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part XI** Transitional
**Division 5** Works made before 1 July, 1912

Section 247

(b) the exclusive right to communicate the work or an adaptation of the work to the public.

## 247 Contributions to periodicals

Where:

(a) a work to which this Division applies (in this section referred to as *the relevant work*) consists of an essay, article or item forming part of, and first published in, a review, magazine or other periodical or work of a like nature; and

(b) immediately before the commencement of this Act, a right of publishing the relevant work in a separate form subsisted by virtue of the note to the First Schedule to the Copyright Act, 1911;

copyright subsisting in the relevant work by virtue of this Act is subject to that right of publishing the relevant work in a separate form.

## 248 Assignments and licences

(1) Without prejudice to the generality of subsection 239(1) of this Act, where:

(a) the author of a work to which this Division applies had, before the commencement of the Copyright Act, 1911, made an assignment or grant of a kind referred to in paragraph (a) of the proviso to subsection 24(1) of that Act (in this section referred to as *the proviso*); and

(b) copyright subsists in the work by virtue of this Act;

the succeeding subsections of this section have effect.

(2) If, before the commencement of this Act, an event occurred or a notice was given, being an event or notice that, in accordance with paragraph (a) of the proviso, had any operation affecting the ownership of the right conferred by the Copyright Act, 1911 in relation to the work or creating, transferring or terminating an interest, right or licence in respect of that right, that event or notice has the like operation in relation to the copyright in the work under this Act.

Replaced Authorised Version registered 10/02/2025 C2024C00854

(3) Any right that, at a time after the commencement of this Act, would, by virtue of paragraph (a) of the proviso, have been exercisable in relation to the work or in relation to the right conferred by the Copyright Act, 1911, if this Act had not been enacted, is exercisable in relation to the work or in relation to the copyright subsisting in the work under this Act, as the case may be.

(4) If, in accordance with paragraph (a) of the proviso, the right conferred by the Copyright Act, 1911 would have reverted to the author or his or her personal representatives on the date referred to in that paragraph, and that date occurs after the commencement of this Act, then on that date:

    (a) the copyright in the work under this Act reverts to the author or his or her personal representatives, as the case may be; and

    (b) any interest of any other person in that copyright that subsists on that date by virtue of any document made before the commencement of the Copyright Act, 1911 ceases.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 248A

# Part XIA—Performers' protection

## Division 1—Preliminary

### 248A  Interpretation

(1)  In this Part:

*20-year protection period* of a performance means the period:
   (a)  beginning on the day when the performance was given; and
   (b)  ending at the end of 20 calendar years after the calendar year in which the performance was given.

*50-year protection period* of a performance means the period:
   (a)  beginning on the day when the performance was given; and
   (b)  ending at the end of 50 calendar years after the calendar year in which the performance was given.

*action* means a proceeding of a civil nature between parties and includes a counterclaim.

*authorised*, in relation to a recording of a performance, means made with the authority of the performer.

*cinematograph film* includes an article in which visual images are embodied and which is capable of being used to show those images as a moving picture, and a sound-track associated with those images.

*direct*, in relation to a sound recording or cinematograph film of a performance, means made directly from the live performance.

*exempt recording* means:
   (a)  an indirect cinematograph film of a performance, being a film made solely for the purpose of the private and domestic use of the person who made it; or

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

(aaa) an indirect cinematograph film or sound recording of a performance, being a film or recording that:

    (i) is made from a communication that is a broadcast of the performance; and

    (ii) is made in domestic premises; and

    (iii) is made solely for private and domestic use by watching or listening to the performance at a time more convenient than the time when the broadcast is made; or

(aa) an indirect sound recording of a performance, being a recording that is a fair dealing with the performance for the purpose of research or study; or

> Note:    See subsection (1A).

(b) an indirect cinematograph film of a performance, being a film made solely for the purpose of use in scientific research; or

(c) a direct or indirect sound recording or cinematograph film of a performance if the recording or film is made:

    (i) by, or on behalf of, the body administering an educational institution; and

    (ii) solely for the educational purposes of that or another educational institution; or

> Note:    See section 248B.

(d) a direct or indirect sound recording or cinematograph film of a performance if the recording or film is a fair dealing with the performance for the purpose of one or more persons with a disability having access to copyright material; or

(e) a direct or indirect sound recording or cinematograph film of a performance if the recording or film is made:

    (i) by, or on behalf of, an organisation assisting persons with a disability; and

    (ii) solely for the purpose of assisting one or more persons with a disability to access copyright material in a format that the person or persons require because of the disability (whether the access is provided by or on behalf of the organisation or by another body or person); or

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Section 248A**

(ea) a direct or indirect sound recording or cinematograph film of a performance if the recording or film is made by an authorized officer of a library or archives to which Subdivision A of Division 3 of Part IVA applies solely for any of the following purposes:

   (i) the purpose of preserving the collection comprising that or another library or archives to which that Subdivision applies;

   (ii) the purpose of research carried out at that or another library or archives to which that Subdivision applies;

   (iii) purposes directly related to the care of control of the collection comprising the library or archives; or

(eb) a direct or indirect sound recording or cinematograph film of a performance if the recording or film is made by an authorized officer of a key cultural institution solely for the purpose of preserving copyright material that:

   (i) forms part of the collection comprising the key cultural institution; and

   (ii) the authorized officer is satisfied is of historical or cultural significance to Australia; or

 (f) a direct or indirect cinematograph film of a performance made:

   (i) for the purpose of, or associated with, the reporting of news or current affairs; or

   (ii) for the purpose of criticism or review; or

(fa) a direct or indirect sound recording of a performance, being a recording that is a fair dealing with the performance:

   (i) for the purpose of criticism or review, whether of that performance or another performance; or

   (ii) for the purpose of, or associated with, the reporting of news in a newspaper, magazine or similar periodical; or

   (iii) for the purpose of, or associated with, the reporting of news by means of a communication or in a cinematograph film; or

 (g) a direct or indirect sound recording or cinematograph film of a performance made solely for the purpose of a judicial

Replaced Authorised Version registered 10/02/2025 C2024C00854

proceeding or the giving of professional advice by a legal practitioner; or

(h) a direct sound recording or cinematograph film of a performance made by a broadcaster who has the authority of the performer to broadcast the performance, being a recording or film made solely for the purpose of making that broadcast; or

(j) a direct or indirect sound recording or cinematograph film of a performance made by a person who reasonably believes, due to a fraudulent or innocent misrepresentation made to the person, that the performer has authorised the making of the recording or film by the person; or

(ja) a copy of a sound recording if:

   (i) paragraph (aa), (c), (d), (e), (ea), (eb), (fa), (g) or (j) applies to the sound recording; and

   (ii) the copy is made solely for a purpose mentioned in any of those paragraphs (other than paragraph (j)); or

(k) a copy of a cinematograph film if:

   (i) paragraph (a), (b), (c), (d), (e), (ea), (eb), (f), (g) or (j) applies to the film; and

   (ii) the copy is made solely for a purpose mentioned in any of those paragraphs (other than paragraph (j)); or

(m) a copy of a sound recording or cinematograph film referred to in paragraph (h), being a copy made solely for the purpose referred to in that paragraph; or

(n) a copy of a sound recording or cinematograph film of a performance if:

   (i) paragraph (j) applies to the recording or film; and

   (ii) the copy is made by a person who believes, due to a fraudulent or innocent representation made to the person, that the performer has authorised the making of the copy; or

(p) a copy of an authorised recording of a performance, other than a copy of an authorised sound recording where the copy was made for use in a sound-track but the making of the

Compilation No. 64                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 248A

sound recording was not authorised for the purpose of use in a sound-track.

*indirect*, in relation to a sound recording or cinematograph film of a performance, means made from a communication of the performance.

*performance* means:

(a) a performance (including an improvisation) of a dramatic work, or part of such a work, including such a performance given with the use of puppets; or

(b) a performance (including an improvisation) of a musical work or part of such a work; or

(c) the reading, recitation or delivery of a literary work, or part of such a work, or the recitation or delivery of an improvised literary work; or

(d) a performance of a dance; or

(e) a performance of a circus act or a variety act or any similar presentation or show; or

(f) a performance of an expression of folklore;

being a live performance:

(g) that is given in Australia, whether in the presence of an audience or otherwise; or

(h) that is given by one or more qualified persons (even if it is also given by one or more persons who are not qualified persons), whether in the presence of an audience or otherwise.

*performer*, in relation to a performance that is given outside Australia, does not include a person who is not a qualified person at the time of the performance.

*protection period*, in relation to a performance, has the meaning given by section 248CA.

*qualified person* means an Australian citizen or a person resident in Australia.

Replaced Authorised Version registered 10/02/2025 C2024C00854

*recording* means a sound recording or cinematograph film, other than an exempt recording.

*sound recording* includes an article in which sounds are embodied.

*unauthorised*, in relation to a recording of a performance, means made without the authority of the performer.

*unauthorised use* has the meaning given by section 248G.

(1A) For the purposes of paragraph (aa) of the definition of *exempt recording*, in determining whether a recording is a fair dealing with a performance for the purpose of research or study, regard must be had to the following matters:

(a) the purpose and character of the recording;

(b) the nature of the performance;

(c) the possibility of obtaining an authorised recording of the performance within a reasonable time at an ordinary commercial price;

(d) the effect of the recording upon the potential market for, or the value of, authorised recordings of the performance;

(e) if only part of the performance is recorded—the amount and substantiality of the part recorded when compared to the whole performance.

(2) The following shall be taken not to be performances for the purposes of this Part:

(a) a performance referred to in subsection 28(1);

(b) a reading, recital or delivery of any item of news and information;

(c) a performance of a sporting activity; or

(d) a participation in a performance as a member of an audience.

(3) In this Part:

(a) a reference to the doing of an act in relation to a performance includes a reference to the doing of that act in relation to a substantial part of the performance;

Replaced Authorised Version registered 10/02/2025 C2024C00854

---

Section 248B

---

     (b)  a reference to the doing of an act in relation to a performance, or a recording of a performance, with the authority of the performer is, in the case of 2 or more performers, a reference to the doing of the act where each of the performers has authorised the doing of the act;

     (c)  a reference to the doing of an act in relation to a performance, or a recording of a performance, without the authority of the performer is, in the case of 2 or more performers, a reference to the doing of the act where at least one of the performers has not authorised the doing of the act; and

     (d)  a reference to a sound-track is a reference to a sound-track associated with visual images forming part of a cinematograph film.

## 248B  Educational purposes

Without limiting the meaning of the expression *educational purposes* in paragraph (c) of the definition of *exempt recording* in subsection 248A(1), a cinematograph film of a performance shall be taken to have been made for the educational purposes of an educational institution if it is made:

     (a)  for use in connection with a particular course of instruction provided by the institution; or

     (b)  for inclusion in the collection of a library of the institution.

## 248C  Exempt recordings cease to be exempt recordings in certain circumstances

    (1)  If any copies of a sound recording or a cinematograph film of a performance, being a sound recording or film that is an exempt recording under paragraph (h) of the definition of *exempt recording* in subsection 248A(1), are not destroyed before the end of the period of 12 months beginning on the day on which any of those copies is first used for broadcasting the performance, the sound recording or film shall, at the end of that period, cease to be an exempt recording.

---

Compilation No. 64                          Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

(1A)  A sound recording, or a copy of a sound recording, ceases to be an exempt recording if it:

(a)  is an exempt recording because it was made for a purpose mentioned in paragraph (aaa), (aa), (c), (d), (e), (ea), (eb) or (fa) of the definition of *exempt recording* in subsection 248A(1); and

(b)  is used for a purpose not mentioned in those paragraphs without the authority of the performer.

(2)  A cinematograph film, or a copy of a cinematograph film, ceases to be an exempt recording if it:

(a)  is an exempt recording because it was made for a purpose mentioned in paragraph (a), (aaa), (b), (c), (d), (e), (ea), (eb) or (f) of the definition of *exempt recording* in subsection 248A(1); and

(b)  is used for a purpose not mentioned in those paragraphs without the authority of the performer.

## 248CA  Protection period

(1)  Subject to subsection (3), the protection period of a performance is the period beginning on the day when the performance was given and ending at the end of the period of 20 calendar years after the calendar year in which the performance was given.

(3)  For the purposes of the operation, in relation to a sound recording of a performance, of a provision of this Part listed in subsection (4), the protection period of a performance is the period beginning on the day when the performance was given and ending at the end of the period of 50 calendar years after the calendar year in which the performance was given.

(4)  Subsection (3) applies to the following provisions of this Part:

(a)  paragraphs 248G(1)(a), (2)(a), (2)(b) and (2)(d) to (g);

(b)  section 248PA;

(c)  section 248PB;

(d)  section 248PE;

(e)  section 248PF;

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 248D

---

  (f) section 248PG;

  (g) section 248PI;

  (h) section 248PJ;

  (i) section 248PK;

  (j) section 248PL;

  (k) section 248PM.

## 248D  Private and domestic use

For the purposes of this Part, a cinematograph film is taken not to have been made for the private and domestic use of the person who made it if it is made for the purpose of:

 (a) selling it, letting it for hire, or by way of trade offering or exposing it for sale or hire; or

 (b) distributing it, whether for the purpose of trade or otherwise; or

 (c) by way of trade exhibiting it in public; or

 (d) broadcasting the film; or

 (e) causing the film to be seen or heard in public.

## 248F  Application

 (1) This Part, except Subdivisions A, B and C of Division 3, applies to acts done on or after 1 October 1989 in relation to a performance given on or after that day.

  Note 1: That day was the day this Part commenced.

  Note 2: Sections 248P and 248QA apply Subdivisions A and B of Division 3 to acts done at or after the time those Subdivisions commence as a result of Part 1 of Schedule 1 to the *Copyright Amendment Act 2006*. Subdivision C of that Division is merely ancillary to those Subdivisions.

 (2) Nothing in this Part affects any copyright subsisting in a work that is performed or in any sound recording, cinematograph film or broadcast of a performance, or any other right or obligation arising otherwise than under this Part.

---

(3)  In the application of this Part to a counterclaim, the reference in section 248J to the defendant shall be read as a reference to the plaintiff.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 2—Actions by performers

## 248G  What constitutes unauthorised use

(1)  A person makes an unauthorised use of a performance if the person, at any time during the protection period of the performance and without the authority of the performer:

    (a)  makes a direct or indirect recording of the performance; or

    (b)  communicates the performance to the public, either directly from the live performance or from an unauthorised recording of it.

> Note:    An educational institution can copy and communicate a broadcast of a performance without the authority of the performer in some circumstances: see Division 4 of Part IVA.

(2)  A person makes an unauthorised use of a performance if the person, at any time during the protection period of the performance and without the authority of the performer:

    (a)  makes a copy of a recording of the performance that the person knows, or ought reasonably to know, is an unauthorised recording;

    (b)  makes a copy of an exempt recording of the performance, being a copy that the person knows, or ought reasonably to know, is not itself an exempt recording;

    (c)  makes, for use in a sound-track, a copy of an authorised sound recording of the performance and the person knows, or ought reasonably to know, that the making of the sound recording was not authorised for the purpose of use in that or any other sound-track;

    (d)  has in his or her possession a recording of the performance, for the purpose of:

        (i)  selling it, letting it for hire, or by way of trade offering or exposing it for sale or hire; or

        (ii)  distributing it for the purpose of trade, or for any other purpose that will affect prejudicially the financial

Replaced Authorised Version registered 10/02/2025 C2024C00854

interests of the performer or performers in the
performance;

being a recording that the person knows, or ought reasonably
to know, is an unauthorised recording;

(e) sells, lets on hire, or by way of trade exhibits in public or
offers or exposes for sale or hire, a recording of the
performance that the person knows, or ought reasonably to
know, is an unauthorised recording;

(f) distributes a recording of the performance for the purpose of
trade, or for any other purpose to an extent that will affect
prejudicially the financial interests of the performer or
performers in the performance, being a recording that the
person knows, or ought reasonably to know, is an
unauthorised recording;

(g) imports a recording of the performance into Australia for the
purpose of:

   (i) selling it, letting it for hire, or by way of trade
exhibiting it in public or offering or exposing it for sale
or hire; or

   (ii) distributing it for the purpose of trade, or for any other
purpose to an extent that will affect prejudicially the
financial interests of the performer or performers in the
performance;

being a recording that the person knows, or ought reasonably
to know, is an unauthorised recording; or

(h) causes a recording of the performance to be heard or seen in
public, being a recording that the person knows, or ought
reasonably to know, is an unauthorised recording.

(3) A person who communicates an authorised recording of a
performance to the public without the authority of the performer
does not, by so doing, make an unauthorised use of the
performance.

(4) This section applies only to acts done in Australia.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Part XIA  Performers' protection
Division 2  Actions by performers

Section 248H

## 248H  Copying sound recordings for broadcasting

(1) Despite paragraph 248G(2)(c), where the making of a copy of a sound recording of a performance for use in a sound-track would, but for this subsection, be an unauthorised use of the performance under that paragraph, the making by a person of such a copy solely for the purpose of use in a broadcast by that person is not an unauthorised use of the performance.

(2) Subsection (1) does not apply to a copy if it is used for a purpose other than:

    (a) a broadcast by the person who made the copy; or

    (b) the making of further copies by that person for the purpose of broadcasting by that person.

(3) Subsection (1) does not apply to a copy unless all the copies made in accordance with that subsection are:

    (a) destroyed; or

    (b) transferred, with the consent of the Director-General of the National Archives of Australia, to the care (within the meaning of the *Archives Act 1983*) of the National Archives of Australia;

before the end of the period of 12 months beginning on the day on which any of those copies is first used for the purpose of a broadcast in accordance with that subsection, or before the end of such further period (if any) as is agreed between the maker of the copy and the performer, or all of the performers.

(4) The Director-General of the National Archives of Australia must not consent to the transfer of the care of a copy of a sound recording to the National Archives of Australia unless the Director-General has certified that the sound recording is of an exceptional documentary character.

## 248J  Actions for unauthorised use

(1) A performer may bring an action for an unauthorised use of his or her performance.

*Copyright Act 1968*

Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

(2) The relief that a court may grant in an action for an unauthorised use of a performance includes an injunction (subject to such terms, if any, as the court thinks fit) and damages.

(3) Where, in an action for an unauthorised use of a performance:

    (a) the unauthorised use is established; and

    (b) the court is satisfied that it is proper to do so, having regard to:

        (i) the flagrancy of the use;

        (ii) any benefit shown to have accrued to the defendant by reason of the use; and

        (iii) all other relevant matters;

the court may, in assessing damages, award such additional damages as it considers appropriate in the circumstances.

(4) If:

    (a) a performer brings an action under this section that relates to a recording of a performance; and

    (b) the relief granted in the action consists of or includes damages; and

    (c) the performer has already been granted damages in an action under another section of this Act in relation to an infringement of his or her copyright in the recording; and

    (d) the action referred to in paragraph (c) arose out of the same event or transaction as the action referred to in paragraph (a);

the amount of any damages referred to in paragraph (b) that, apart from this subsection, would be awarded to the performer is to be reduced by the amount of the damages referred to in paragraph (c).

(5) If:

    (a) a performer brings an action under another section of this Act that relates to an infringement of his or her copyright in a recording of a performance; and

    (b) the relief granted in the action consists of or includes damages; and

    (c) the performer has already been granted damages in an action under this section in relation to the performance; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

(d)  the action referred to in paragraph (c) arose out of the same event or transaction as the action referred to in paragraph (a);

the amount of any damages referred to in paragraph (b) that, apart from this subsection, would be awarded to the performer is to be reduced by the amount of the damages referred to in paragraph (c).

## 248K  Exercise of jurisdiction

The jurisdiction of the Supreme Court of a State or Territory in an action under section 248J shall be exercised by a single Judge of the Court.

## 248L  Appeals

(1)  Subject to subsection (2), a decision of a court of a State or Territory (however constituted) in an action under section 248J is final and conclusive.

(2)  An appeal lies from a decision of a court of a State or Territory in an action under section 248J:

(a)  to the Federal Court of Australia; or

(b)  by special leave of the High Court, to the High Court.

## 248M  Jurisdiction of Federal Court

Jurisdiction is conferred on the Federal Court of Australia with respect to actions under section 248J.

## 248MA  Jurisdiction of Federal Circuit and Family Court of Australia (Division 2)

Jurisdiction is conferred on the Federal Circuit and Family Court of Australia (Division 2) with respect to actions under section 248J.

## 248N  Right to bring an action not assignable

The right of a performer to bring an action under section 248J is not assignable.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 3—Offences

## Subdivision A—General offences

### 248P  Scope of this Subdivision

(1) This Subdivision applies to acts done in Australia on or after the commencement of this Subdivision.

> Note:    This Subdivision commenced when it was included in this Act by Part 1 of Schedule 1 to the *Copyright Amendment Act 2006*.

(2) This section has effect despite section 14.1 (Standard geographical jurisdiction) of the *Criminal Code*.

### 248PA  Unauthorised direct recording during protection period

*Indictable offence*

(1) A person commits an offence if:

(a) the person makes a direct recording of a performance; and

(b) the recording is made during the protection period of the performance; and

(c) the recording is made without the authority of the performer.

> Note:    Under section 248CA, the protection period of a performance is:
>
> (a) a 20-year protection period so far as this section relates to a cinematograph film of the performance; and
>
> (b) a 50-year protection period so far as this section relates to a sound recording of the performance.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

> Note:    A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 248PB

---

*Summary offence*

(3) A person commits an offence if:

   (a) the person makes a direct recording of a performance; and

   (b) the recording is made during the protection period of the performance; and

   (c) the recording is made without the authority of the performer and the person is negligent as to that fact.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(4) An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

## 248PB  Unauthorised indirect recording during protection period

*Indictable offence*

(1) A person commits an offence if:

   (a) the person makes an indirect recording of a performance; and

   (b) the recording is made during the protection period of the performance; and

   (c) the recording is made without the authority of the performer.

   Note:    Under section 248CA, the protection period of a performance is:
   
   (a) a 20-year protection period so far as this section relates to a cinematograph film of the performance; and
   
   (b) a 50-year protection period so far as this section relates to a sound recording of the performance.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

   Note:    A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offence*

(3) A person commits an offence if:

   (a) the person makes an indirect recording of a performance; and

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

(b) the recording is made during the protection period of the performance; and

(c) the recording is made without the authority of the performer and the person is negligent as to that fact.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(4) An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

*Strict liability offence*

(5) A person commits an offence if:
(a) the person makes an indirect recording of a performance; and
(b) the recording is made during the protection period of the performance; and
(c) the recording is made without the authority of the performer.

Penalty:  60 penalty units.

(6) Subsection (5) is an offence of strict liability.

Note:    For strict liability, see section 6.1 of the *Criminal Code*.

*Defence*

(7) Subsection (1), (3) or (5) does not apply if the recording was made solely for the person's private and domestic use.

Note:    A defendant bears an evidential burden in relation to the matter in subsection (7) (see subsection 13.3(3) of the *Criminal Code*).

## 248PC  Unauthorised communication to public during 20-year protection period

*Indictable offence*

(1) A person commits an offence if:
(a) the person communicates a performance to the public; and
(b) the communication is made during the 20-year protection period of the performance; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 248PC

---

(c) the communication is made without the authority of the performer; and

(d) the communication is made either directly from the live performance or from an unauthorised recording of the performance.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

> Note:    A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offence*

(3) A person commits an offence if:

(a) the person communicates a performance to the public; and

(b) the communication is made during the 20-year protection period of the performance; and

(c) the communication is made without the authority of the performer and the person is negligent as to that fact; and

(d) the communication is made either directly from the live performance or from an unauthorised recording of the performance.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(4) An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

*Defence*

(7) To avoid doubt, subsections (1) and (3) do not apply to the communication to the public of an authorised recording of the performance.

> Note 1:    A defendant bears an evidential burden in relation to the matter in subsection (7) (see subsection 13.3(3) of the *Criminal Code*).

> Note 2:    An educational institution can also copy and communicate a broadcast of a performance without contravening this section in some circumstances (see Division 4 of Part IVA).

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

### 248PD  Playing unauthorised recording publicly during 20-year protection period

*Indictable offence*

(1) A person commits an offence if:

   (a) the person causes a recording of a performance to be heard or seen in public; and

   (b) the recording is heard or seen in public during the 20-year protection period of the performance; and

   (c) the recording is unauthorised.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

   Note:    A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offence*

(3) A person commits an offence if:

   (a) the person causes a recording of a performance to be heard or seen in public; and

   (b) the recording is heard or seen in public during the 20-year protection period of the performance; and

   (c) the recording is unauthorised and the person is negligent as to that fact.

   Penalty:  120 penalty units or imprisonment for 2 years, or both.

(4) An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part XIA** Performers' protection
**Division 3** Offences

Section 248PE

---

### 248PE  Possessing equipment to make or copy unauthorised recording

*Indictable offence*

(1) A person commits an offence if:

    (a) the person possesses a plate or recording equipment, intending it to be used for making:

        (i) an unauthorised recording of a performance; or

        (ii) a copy of an unauthorised recording of a performance; and

    (b) the possession occurs during the protection period of the performance.

> Note:     Under section 248CA, the protection period of a performance is:
>
> (a)  a 20-year protection period so far as this section relates to a cinematograph film of the performance; and
>
> (b)  a 50-year protection period so far as this section relates to a sound recording of the performance.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

> Note:     A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offence*

(3) A person commits an offence if:

    (a) the person possesses a plate or recording equipment; and

    (b) the plate or equipment is to be used for making:

        (i) a recording of a performance; or

        (ii) a copy of an unauthorised recording of a performance; and

    (c) either:

        (i) the recording to be made using the plate or equipment will be an unauthorised recording of the performance; or

Replaced Authorised Version registered 10/02/2025 C2024C00854

      (ii)  the recording to be copied using the plate or equipment is an unauthorised recording of the performance;

and the person is negligent as to that fact; and

  (d)  the possession occurs during the protection period of the performance.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(4)  To avoid doubt, recklessness is the fault element for the circumstance that the plate or equipment is to be used for making:

  (a)  a recording of a performance; or

  (b)  a copy of an unauthorised recording of a performance.

(5)  An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

*No need to prove which performance or recording is to be involved*

(8)  In a prosecution for an offence against this section, it is not necessary to prove:

  (a)  which particular performance is intended to be, or will be, recorded using the device; or

  (b)  which particular recording is intended to be, or will be, copied using the device.

## 248PF  Copying unauthorised recording

*Indictable offence*

(1)  A person commits an offence if:

  (a)  the person makes a copy of a recording of a performance; and

  (b)  the copy is made during the protection period of the performance; and

  (c)  the recording is an unauthorised recording.

Note:      Under section 248CA, the protection period of a performance is:

        (a)   a 20-year protection period so far as this section relates to a cinematograph film of the performance; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 248PF

        (b) a 50-year protection period so far as this section relates to a sound recording of the performance.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

> Note: A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offence*

(3) A person commits an offence if:
    (a) the person makes a copy of a recording of a performance; and
    (b) the copy is made during the protection period of the performance; and
    (c) the recording is an unauthorised recording and the person is negligent as to that fact.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(4) An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

*Strict liability offence*

(5) A person commits an offence if:
    (a) the person makes a copy of a recording of a performance; and
    (b) the copy is made during the protection period of the performance; and
    (c) the recording is an unauthorised recording.

Penalty:  60 penalty units.

(6) Subsection (5) is an offence of strict liability.

> Note: For strict liability, see section 6.1 of the *Criminal Code*.

*Copyright Act 1968*

Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

### 248PG  Unauthorised copying of exempt recording

*Indictable offence*

(1) A person commits an offence if:

    (a) the person makes a copy of a recording of a performance; and

    (b) the copy is made during the protection period of the performance; and

    (c) the copy is made without the authority of the performer; and

    (d) the recording is an exempt recording; and

    (e) the copy is not an exempt recording.

> Note:    Under section 248CA, the protection period of a performance is:
> (a) a 20-year protection period so far as this section relates to a cinematograph film of the performance; and
> (b) a 50-year protection period so far as this section relates to a sound recording of the performance.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

> Note:    A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offence*

(3) A person commits an offence if:

    (a) the person makes a copy of a recording of a performance; and

    (b) the copy is made during the protection period of the performance; and

    (c) the copy is made without the authority of the performer and the person is negligent as to that fact; and

    (d) the recording is an exempt recording; and

    (e) the copy is not an exempt recording and the person is negligent as to that fact.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part XIA** Performers' protection
**Division 3** Offences

Section 248PH

(4) An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

*Strict liability offence*

(5) A person commits an offence if:
  (a) the person makes a copy of a recording of a performance; and
  (b) the copy is made during the protection period of the performance; and
  (c) the copy is made without the authority of the performer; and
  (d) the recording is an exempt recording; and
  (e) the copy is not an exempt recording.

  Penalty:  60 penalty units.

(6) Subsection (5) is an offence of strict liability.

  Note:      For strict liability, see section 6.1 of the *Criminal Code*.

**248PH  Unauthorised copying of authorised sound recording**

*Indictable offence*

(1) A person commits an offence if:
  (a) the person makes a copy of a sound recording of a performance, intending that the copy be used in a sound-track; and
  (b) the copy is made during the 20-year protection period of the performance; and
  (c) the copy is made without the authority of the performer; and
  (d) the sound recording is an authorised sound recording; and
  (e) the making of the sound recording was not authorised for the purpose of use in that or any other sound-track.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Note:    A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offence*

(3) A person commits an offence if:

    (a) the person makes a copy of a sound recording of a performance, intending that the copy be used in a sound-track; and

    (b) the copy is made during the 20-year protection period of the performance; and

    (c) the copy is made without the authority of the performer and the person is negligent as to that fact; and

    (d) the sound recording is an authorised sound recording; and

    (e) the making of the sound recording was not authorised for the purpose of use in that or any other sound-track and the person is negligent as to that fact.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(4) An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

*Strict liability offence*

(5) A person commits an offence if:

    (a) the person makes a copy of a sound recording of a performance in preparation for use in a sound-track; and

    (b) the copy is made during the 20-year protection period of the performance; and

    (c) the copy is made without the authority of the performer; and

    (d) the sound recording is an authorised sound recording; and

    (e) the making of the sound recording was not authorised for the purpose of use in that or any other sound-track.

Penalty:  60 penalty units.

(6) Subsection (5) is an offence of strict liability.

Replaced Authorised Version registered 10/02/2025 C2024C00854

---

Section 248PI

---

Note:      For strict liability, see section 6.1 of the *Criminal Code*.

## 248PI  Selling etc. unauthorised recording

*Indictable offence*

(1) A person commits an offence if:

   (a) the person does any of the following acts:

      (i) sells a recording of a performance;

      (ii) lets for hire a recording of a performance;

      (iii) by way of trade offers or exposes for sale or hire a recording of a performance; and

   (b) the act is done during the protection period of the performance; and

   (c) the recording is an unauthorised recording.

Note:      Under section 248CA, the protection period of a performance is:
   (a) a 20-year protection period so far as this section relates to a cinematograph film of the performance; and
   (b) a 50-year protection period so far as this section relates to a sound recording of the performance.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

Note:      A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offence*

(3) A person commits an offence if:

   (a) the person does any of the following acts:

      (i) sells a recording of a performance;

      (ii) lets for hire a recording of a performance;

      (iii) by way of trade offers or exposes for sale or hire a recording of a performance; and

   (b) the act is done during the protection period of the performance; and

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

   (c) the recording is an unauthorised recording and the person is negligent as to that fact.

Penalty: 120 penalty units or imprisonment for 2 years, or both.

(4) An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

*Strict liability offence*

(5) A person commits an offence if:
   (a) the person does any of the following acts:
     (i) sells a recording of a performance;
     (ii) lets for hire a recording of a performance;
     (iii) by way of trade offers or exposes for sale or hire a recording of a performance; and
   (b) the act is done during the protection period of the performance; and
   (c) the recording is an unauthorised recording.

Penalty: 60 penalty units.

(6) Subsection (5) is an offence of strict liability.

Note: For strict liability, see section 6.1 of the *Criminal Code*.

## 248PJ  Distributing unauthorised recording

*Indictable offences*

(1) A person commits an offence if:
   (a) the person distributes a recording of a performance, with the intention of trading; and
   (b) the distribution occurs during the protection period of the performance; and
   (c) the recording is an unauthorised recording.

Note: Under section 248CA, the protection period of a performance is:
   (a) a 20-year protection period so far as this section relates to a cinematograph film of the performance; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part XIA**  Performers' protection
**Division 3**  Offences

Section 248PJ

---

(b)  a 50-year protection period so far as this section relates to a
sound recording of the performance.

(2)  A person commits an offence if:

(a)  the person distributes a recording of a performance; and

(b)  the distribution occurs during the protection period of the
performance; and

(c)  the distribution will affect prejudicially the financial interests
of the performer in the performance; and

(d)  the recording is an unauthorised recording.

(3)  An offence against subsection (1) or (2) is punishable on
conviction by a fine of not more than 550 penalty units or
imprisonment for not more than 5 years, or both.

Note:      A corporation may be fined up to 5 times the amount of the maximum
fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offences*

(4)  A person commits an offence if:

(a)  the person distributes a recording of a performance, with the
intention of trading; and

(b)  the distribution occurs during the protection period of the
performance; and

(c)  the recording is an unauthorised recording and the person is
negligent as to that fact.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(5)  A person commits an offence if:

(a)  the person distributes a recording of a performance; and

(b)  the distribution occurs during the protection period of the
performance; and

(c)  the distribution will affect prejudicially the financial interests
of the performer in the performance; and

(d)  the recording is an unauthorised recording and the person is
negligent as to that fact.

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(6) An offence against subsection (4) or (5) is a summary offence, despite section 4G of the *Crimes Act 1914*.

*Strict liability offence*

(7) A person commits an offence if:

(a) the person distributes a recording of a performance in preparation for, or in the course of, trade; and

(b) the distribution occurs during the protection period of the performance; and

(c) the recording is an unauthorised recording.

Penalty:  60 penalty units.

(9) Subsection (7) is an offence of strict liability.

Note:      For strict liability, see section 6.1 of the *Criminal Code*.

## 248PK  Commercial possession or import of unauthorised recording

*Indictable offence*

(1) A person commits an offence if:

(a) the person possesses, or imports into Australia, a recording of a performance, with the intention of doing any of the following:

(i)  selling the recording;

(ii)  letting the recording for hire;

(iii)  by way of trade offering or exposing the recording for sale or hire;

(iv)  distributing the recording either for the purpose of trade or to an extent that will affect prejudicially the financial interests of the performer in the performance; and

(b) the possession or import occurs during the protection period of the performance; and

(c) the recording is an unauthorised recording.

Replaced Authorised Version registered 10/02/2025 C2024C00854

## Section 248PK

Note:    Under section 248CA, the protection period of a performance is:

(a)    a 20-year protection period so far as this section relates to a cinematograph film of the performance; and

(b)    a 50-year protection period so far as this section relates to a sound recording of the performance.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

Note:    A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offence*

(3) A person commits an offence if:

(a) the person possesses, or imports into Australia, a recording of a performance, with the intention of doing any of the following:

(i) selling the recording;

(ii) letting the recording for hire;

(iii) by way of trade offering or exposing the recording for sale or hire;

(iv) distributing the recording either for the purpose of trade or to an extent that will affect prejudicially the financial interests of the performer in the performance; and

(b) the possession or import occurs during the protection period of the performance; and

(c) the recording is an unauthorised recording and the person is negligent as to that fact.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(4) An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

*Strict liability offence*

(5) A person commits an offence if:

Replaced Authorised Version registered 10/02/2025 C2024C00854

(a) the person possesses, or imports into Australia, a recording of a performance in preparation for, or in the course of, doing any of the following:

    (i) selling the recording;

    (ii) letting the recording for hire;

    (iii) by way of trade offering or exposing the recording for sale or hire;

    (iv) distributing the recording for trade; and

(b) the possession or import occurs during the protection period of the performance; and

(c) the recording is an unauthorised recording.

Penalty:  60 penalty units.

(6) Subsection (5) is an offence of strict liability.

> Note:     For strict liability, see section 6.1 of the *Criminal Code*.

## 248PL  Exhibiting unauthorised recording in public by way of trade

### *Indictable offence*

(1) A person commits an offence if:

(a) the person by way of trade exhibits in public a recording of a performance; and

(b) the exhibition occurs during the protection period of the performance; and

(c) the recording is an unauthorised recording.

> Note:     Under section 248CA, the protection period of a performance is:
>
> (a) a 20-year protection period so far as this section relates to a cinematograph film of the performance; and
>
> (b) a 50-year protection period so far as this section relates to a sound recording of the performance.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part XIA**  Performers' protection
**Division 3**  Offences

Section 248PM

Note:      A corporation may be fined up to 5 times the amount of the maximum
           fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offence*

(3)  A person commits an offence if:

    (a)  the person by way of trade exhibits in public a recording of a
performance; and

    (b)  the exhibition occurs during the protection period of the
performance; and

    (c)  the recording is an unauthorised recording and the person is
negligent as to that fact.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(4)  An offence against subsection (3) is a summary offence, despite
section 4G of the *Crimes Act 1914*.

*Strict liability offence*

(5)  A person commits an offence if:

    (a)  the person by way of trade exhibits in public a recording of a
performance; and

    (b)  the exhibition occurs during the protection period of the
performance; and

    (c)  the recording is an unauthorised recording.

Penalty:  60 penalty units.

(6)  Subsection (5) is an offence of strict liability.

Note:      For strict liability, see section 6.1 of the *Criminal Code*.

### 248PM  Importing unauthorised recording for exhibition by way of trade

*Indictable offence*

(1)  A person commits an offence if:

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

(a) the person imports into Australia a recording of a performance, with the intention of exhibiting the recording in public by way of trade; and

(b) the import occurs during the protection period of the performance; and

(c) the recording is an unauthorised recording.

Note:   Under section 248CA, the protection period of a performance is:

(a) a 20-year protection period so far as this section relates to a cinematograph film of the performance; and

(b) a 50-year protection period so far as this section relates to a sound recording of the performance.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

Note:   A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offence*

(3) A person commits an offence if:

(a) the person imports into Australia a recording of a performance, with the intention of exhibiting the recording in public by way of trade; and

(b) the import occurs during the protection period of the performance; and

(c) the recording is an unauthorised recording and the person is negligent as to that fact.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(4) An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

*Strict liability offence*

(5) A person commits an offence if:

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 248QA

---

(a) the person imports into Australia a recording of a performance, in preparation for exhibiting the recording in public by way of trade; and

(b) the import occurs during the protection period of the performance; and

(c) the recording is an unauthorised recording.

Penalty:  60 penalty units.

(6) Subsection (5) is an offence of strict liability.

> Note:      For strict liability, see section 6.1 of the *Criminal Code*.

## Subdivision B—Acts relating to sound recordings of performances given before 1 July 1995

### 248QA  Scope of this Subdivision

(1) This Subdivision applies to an act done in Australia on or after the commencement of this Subdivision, in relation to a performance given at any time before 1 July 1995.

> Note 1:      That day was the day on which Part 4 of the *Copyright (World Trade Organization Amendments) Act 1994* commenced.

> Note 2:      This Subdivision commenced when it was included in this Act by Part 1 of Schedule 1 to the *Copyright Amendment Act 2006*.

(2) This Subdivision has effect despite section 14.1 (Standard geographical jurisdiction) of the *Criminal Code*.

### 248QB  Possessing equipment for copying unauthorised sound recording

*Indictable offence*

(1) A person commits an offence if:

(a) the person possesses a plate or recording equipment, intending it to be used for making a copy of an unauthorised sound recording of a performance; and

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

    (b) the possession occurs during the 50-year protection period of the performance.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

> Note:    A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offence*

(3) A person commits an offence if:

    (a) the person possesses a plate or recording equipment; and

    (b) the plate or recording equipment is to be used for making a copy of a sound recording of a performance; and

    (c) the recording is an unauthorised recording of the performance and the person is negligent as to that fact; and

    (d) the possession occurs during the 50-year protection period of the performance.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(4) To avoid doubt, recklessness is the fault element for the circumstance that the plate or recording equipment is to be used for making a copy of a sound recording of a performance.

(5) An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

*No need to prove which recording is to be copied*

(8) In a prosecution for an offence against this section, it is not necessary to prove which particular recording is intended to be, or will be, copied using the device.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part XIA**  Performers' protection
**Division 3**  Offences

---

Section 248QC

---

## 248QC  Copying unauthorised sound recording

*Indictable offence*

(1) A person commits an offence if:

    (a) the person makes a copy of a sound recording of a performance; and

    (b) the copy is made during the 50-year protection period of the performance; and

    (c) the recording is an unauthorised recording.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

> Note:    A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offence*

(3) A person commits an offence if:

    (a) the person makes a copy of a sound recording of a performance; and

    (b) the copy is made during the 50-year protection period of the performance; and

    (c) the recording is an unauthorised recording and the person is negligent as to that fact.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(4) An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

*Strict liability offence*

(5) A person commits an offence if:

    (a) the person makes a copy of a sound recording of a performance; and

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

(b) the copy is made during the 50-year protection period of the performance; and

(c) the recording is an unauthorised recording.

Penalty: 60 penalty units.

(6) Subsection (5) is an offence of strict liability.

> Note: For strict liability, see section 6.1 of the *Criminal Code*.

## 248QD  Selling etc. unauthorised sound recording

*Indictable offence*

(1) A person commits an offence if:

(a) the person does any of the following acts:

(i) sells a sound recording of a performance;

(ii) lets for hire a sound recording of a performance;

(iii) by way of trade offers or exposes for sale or hire a sound recording of a performance; and

(b) the act is done during the 50-year protection period of the performance; and

(c) the recording is an unauthorised recording.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

> Note: A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offence*

(3) A person commits an offence if:

(a) the person does any of the following acts:

(i) sells a sound recording of a performance;

(ii) lets for hire a sound recording of a performance;

(iii) by way of trade offers or exposes for sale or hire a sound recording of a performance; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 248QE
___

(b) the act is done during the 50-year protection period of the performance; and

(c) the recording is an unauthorised recording and the person is negligent as to that fact.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(4) An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

*Strict liability offence*

(5) A person commits an offence if:

(a) the person does any of the following acts:

(i) sells a sound recording of a performance;

(ii) lets for hire a sound recording of a performance;

(iii) by way of trade offers or exposes for sale or hire a sound recording of a performance; and

(b) the act is done during the 50-year protection period of the performance; and

(c) the recording is an unauthorised recording.

Penalty:  60 penalty units.

(6) Subsection (5) is an offence of strict liability.

> Note:        For strict liability, see section 6.1 of the *Criminal Code*.

## 248QE  Distributing unauthorised sound recording

*Indictable offences*

(1) A person commits an offence if:

(a) the person distributes a sound recording of a performance, with the intention of trade; and

(b) the distribution occurs during the 50-year protection period of the performance; and

(c) the recording is an unauthorised recording.

___

Replaced Authorised Version registered 10/02/2025 C2024C00854

(2) A person commits an offence if:

    (a) the person distributes a sound recording of a performance; and

    (b) the distribution occurs during the 50-year protection period of the performance; and

    (c) the distribution will affect prejudicially the financial interests of the performer in the performance; and

    (d) the recording is an unauthorised recording.

(3) An offence against subsection (1) or (2) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

> Note:    A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offences*

(4) A person commits an offence if:

    (a) the person distributes a sound recording of a performance, with the intention of trade; and

    (b) the distribution occurs during the 50-year protection period of the performance; and

    (c) the recording is an unauthorised recording and the person is negligent as to that fact.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(5) A person commits an offence if:

    (a) the person distributes a sound recording of a performance; and

    (b) the distribution occurs during the 50-year protection period of the performance; and

    (c) the distribution will affect prejudicially the financial interests of the performer in the performance; and

    (d) the recording is an unauthorised recording and the person is negligent as to that fact.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part XIA** Performers' protection
**Division 3** Offences

Section 248QF
_____

(6) An offence against subsection (4) or (5) is a summary offence, despite section 4G of the *Crimes Act 1914*.

*Strict liability offence*

(7) A person commits an offence if:
   (a) the person distributes a sound recording of a performance in preparation for, or in the course of, trade; and
   (b) the distribution occurs during the 50-year protection period of the performance; and
   (c) the recording is an unauthorised recording.

   Penalty: 60 penalty units.

(9) Subsection (7) is an offence of strict liability.

   Note:    For strict liability, see section 6.1 of the *Criminal Code*.

### 248QF  Commercial possession or import of unauthorised sound recording

*Indictable offence*

(1) A person commits an offence if:
   (a) the person possesses, or imports into Australia, a sound recording of a performance, with the intention of doing any of the following:
      (i) selling the recording;
      (ii) letting the recording for hire;
      (iii) by way of trade offering or exposing the recording for sale or hire;
      (iv) distributing the recording either for the purpose of trade or to an extent that will affect prejudicially the financial interests of the performer in the performance; and
   (b) the possession or import occurs during the 50-year protection period of the performance; and
   (c) the recording is an unauthorised recording.

_____

Replaced Authorised Version registered 10/02/2025 C2024C00854

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

> Note:        A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offence*

(3) A person commits an offence if:

  (a) the person possesses, or imports into Australia, a sound recording of a performance, with the intention of doing any of the following:

    (i) selling the recording;

    (ii) letting the recording for hire;

    (iii) by way of trade offering or exposing the recording for sale or hire;

    (iv) distributing the recording either for the purpose of trade or to an extent that will affect prejudicially the financial interests of the performer in the performance; and

  (b) the possession or import occurs during the 50-year protection period of the performance; and

  (c) the recording is an unauthorised recording and the person is negligent as to that fact.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(4) An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

*Strict liability offence*

(5) A person commits an offence if:

  (a) the person possesses, or imports into Australia, a sound recording of a performance in preparation for, or in the course of, doing any of the following:

    (i) selling the recording;

    (ii) letting the recording for hire;

Compilation No. 64                          Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 248QG

---

(iii) by way of trade offering or exposing the recording for sale or hire;

(iv) distributing the recording for trade; and

(b) the possession or import occurs during the 50-year protection period of the performance; and

(c) the recording is an unauthorised recording.

Penalty: 60 penalty units.

(6) Subsection (5) is an offence of strict liability.

> Note: For strict liability, see section 6.1 of the *Criminal Code*.

### 248QG  Exhibiting unauthorised sound recording in public by way of trade

*Indictable offence*

(1) A person commits an offence if:

(a) the person by way of trade exhibits in public a sound recording of a performance; and

(b) the exhibition occurs during the 50-year protection period of the performance; and

(c) the recording is an unauthorised recording.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

> Note: A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offence*

(3) A person commits an offence if:

(a) the person by way of trade exhibits in public a sound recording of a performance; and

(b) the exhibition occurs during the 50-year protection period of the performance; and

---

Replaced Authorised Version registered 10/02/2025 C2024C00854

    (c) the recording is an unauthorised recording and the person is negligent as to that fact.

  Penalty:  120 penalty units or imprisonment for 2 years, or both.

(4) An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

  *Strict liability offence*

(5) A person commits an offence if:

    (a) the person by way of trade exhibits in public a sound recording of a performance; and

    (b) the exhibition occurs during the 50-year protection period of the performance; and

    (c) the recording is an unauthorised recording.

  Penalty:  60 penalty units.

(6) Subsection (5) is an offence of strict liability.

    Note:      For strict liability, see section 6.1 of the *Criminal Code*.

## 248QH  Importing unauthorised sound recording for exhibition by way of trade

  *Indictable offence*

(1) A person commits an offence if:

    (a) the person imports into Australia a sound recording of a performance, with the intention of exhibiting the recording in public by way of trade; and

    (b) the import occurs during the 50-year protection period of the performance; and

    (c) the recording is an unauthorised recording.

(2) An offence against subsection (1) is punishable on conviction by a fine of not more than 550 penalty units or imprisonment for not more than 5 years, or both.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 248QH

Note:    A corporation may be fined up to 5 times the amount of the maximum fine (see subsection 4B(3) of the *Crimes Act 1914*).

*Summary offence*

(3) A person commits an offence if:

   (a) the person imports into Australia a sound recording of a performance, with the intention of exhibiting the recording in public by way of trade; and

   (b) the import occurs during the 50-year protection period of the performance; and

   (c) the recording is an unauthorised recording and the person is negligent as to that fact.

Penalty:  120 penalty units or imprisonment for 2 years, or both.

(4) An offence against subsection (3) is a summary offence, despite section 4G of the *Crimes Act 1914*.

*Strict liability offence*

(5) A person commits an offence if:

   (a) the person imports into Australia a sound recording of a performance in preparation for exhibiting the recording in public by way of trade; and

   (b) the import occurs during the 50-year protection period of the performance; and

   (c) the recording is an unauthorised recording.

Penalty:  60 penalty units.

(6) Subsection (5) is an offence of strict liability.

Note:    For strict liability, see section 6.1 of the *Criminal Code*.

Replaced Authorised Version registered 10/02/2025 C2024C00854

## Subdivision C—Prosecution and infringement notices

### 248R  Courts in which offences may be prosecuted

(1) Prosecutions for offences against Subdivision A or B may be brought in the Federal Court of Australia or in any other court of competent jurisdiction.

(2) However, the Federal Court of Australia does not have jurisdiction to hear or determine prosecutions for indictable offences, despite section 15C of the *Acts Interpretation Act 1901*.

(3) The Federal Court of Australia has jurisdiction to hear and determine prosecutions of the following offences against Subdivision A or B:

(a) summary offences;

(b) offences of strict liability.

### 248S  Protection against multiple proceedings for same act

If a single act done in relation to a performance is an offence against Subdivision A and an offence against Subdivision B, only one of the offences may be prosecuted.

### 248SA  Infringement notices

(1) The regulations may make provision enabling a person who is alleged to have committed an offence of strict liability against Subdivision A or B to pay a penalty to the Commonwealth as an alternative to prosecution.

(2) The penalty must equal one-fifth of the maximum fine that a court could impose on the person as a penalty for that offence.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Part XIA**  Performers' protection
**Division 3**  Offences

Section 248T
___

## Subdivision D—Destruction or delivery up of unauthorised recordings

### 248T  Destruction or delivery up of unauthorised recordings

The court before which a person is charged with an offence against this Part may, whether the person is convicted of the offence or not, order that any article in the possession of the person that appears to the court to be:

  (a) an unauthorised recording of a performance, or a copy of such a recording; or

  (b) a plate or recording equipment used, or intended to be used, for making an unauthorised recording of a performance, or copies of such a recording;

be destroyed or delivered up to the performer or performers concerned or otherwise dealt with in such manner as the court thinks fit.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Division 4—Extension of protection to foreign countries

### 248U  Application to foreign countries

(1) Subject to this section, the regulations may apply any of the provisions of this Part specified in the regulations, in relation to a foreign country so specified, in any one or more of the following ways:

   (a) so that the provisions apply in relation to performances given in that country in like manner as those provisions apply in relation to performances given in Australia;

  (aa) so that the provisions apply in relation to recordings, made in that country, of performances in like manner as those provisions apply in relation to recordings of performances given in Australia;

  (ab) so that the provisions apply in relation to broadcasts, made in that country, of performances in like manner as those provisions apply in relation to broadcasts of performances given in Australia;

  (ac) so that the provisions apply in relation to recordings, made by persons who are citizens, nationals or residents of that country, of performances in like manner as those provisions apply in relation to recordings of performances given in Australia;

   (b) so that the provisions apply in relation to persons who are citizens or nationals of that country in like manner as those provisions apply in relation to persons who are Australian citizens;

   (c) so that the provisions apply in relation to persons who are resident in that country in like manner as those provisions apply in relation to persons who are resident in Australia.

(2) Regulations applying a provision of this Part in relation to a foreign country:

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 248V

(a) may apply the provision without exception or modification or subject to such exceptions or modifications as are specified in the regulations; and

(b) may apply the provision either generally or in relation to such classes of performances, or other classes of cases, as are specified in the regulations.

(3) Before the Governor-General makes a regulation for the purposes of subsection (1) applying a provision of this Part in relation to a foreign country:

(a) the country must be a party to an international agreement specified, in relation to the provision of this Part, by the regulations for the purposes of this paragraph; or

(b) the Minister must be satisfied that adequate protection is or will be given under the law of the country to performers in performances:

(i) protected under this Act; and

(ii) to which the provision of this Part relates.

## 248V  Denial of protection to citizens of countries not giving adequate protection to Australian performances

(2) The regulations may, subject to subsection (3), provide, either generally or in such cases as are specified in the regulations, that this Part does not apply to performances given after a day specified in the regulations (which may be a day before the commencement of the regulations or of this Part) if, at the time the performances were or are given, the performers were or are citizens or nationals of a foreign country specified in the regulations, other than persons resident in Australia.

(3) Before the Governor-General makes a regulation for the purposes of subsection (2) in relation to a foreign country:

(a) the Minister must be satisfied that that the law of the country does not give adequate protection to Australian performances (whether the lack of protection relates to all or any of the ways that the provisions may be applied by the regulations under subsection 248U(1)); and

Replaced Authorised Version registered 10/02/2025 C2024C00854

(b) the Minister must have regard to the nature and extent of that
lack of protection.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 249

# Part XII—Regulations

## 249  Regulations

*General regulation-making power*

(1) The Governor-General may make regulations, not inconsistent with this Act, prescribing all matters that are required or permitted by this Act to be prescribed or are necessary or convenient to be prescribed for carrying out or giving effect to this Act and, in particular, prescribing penalties not exceeding a fine of $100 for offences against the regulations.

*Regulations in relation to technological protection measures*

(2) Without limiting subsection (1), the Governor-General may make regulations prescribing the doing of an act by a person for the purposes of subsections 116AN(9) and 132APC(9).

   Note:    For prescription of acts and persons by class, see subsection 13(3) of the *Legislation Act 2003*.

(3) However, the Governor-General must not make a regulation prescribing the doing of an act by a person unless the Minister makes a recommendation to prescribe the doing of the act by the person.

(4) The Minister may only make a recommendation to prescribe the doing of an act by a person if:

   (a) a submission has been made (whether before or after the commencement of this section) to prescribe the doing of the act by the person; and

   (b) the doing of the act by the person will not infringe the copyright in a work or other subject-matter; and

   (c) the doing of the act by the person is in relation to a particular class of works or other subject-matter; and

Replaced Authorised Version registered 10/02/2025 C2024C00854

      (d) an actual or likely adverse impact on the doing of the act by the person has been credibly demonstrated; and

      (e) the adequacy of the protection and the effectiveness of the remedies provided by Subdivision A of Division 2A of Part V and Subdivision E of Division 5 of Part V would not be impaired if the doing of the act by the person were prescribed.

> Note:    For the purposes of paragraph (a), it is not necessary for the person who made the submission to be the person in relation to whom the act is prescribed.

(5) If a submission has been made to prescribe the doing of an act by a person, the Minister must make a decision whether to recommend the prescription of the doing of the act by the person as soon as practicable after receiving the submission, but in any case, within 4 years of receiving it.

(6) The Governor-General may make regulations varying or revoking regulations made under subsection (2).

(7) However, the Governor-General must not make a regulation varying or revoking a regulation made under subsection (2) unless the Minister makes a recommendation to vary or revoke the regulation.

(8) The Minister may make a recommendation to vary or revoke a regulation made under subsection (2) only if:

      (a) a submission has been made to vary or revoke the regulation; and

      (b) an actual or likely adverse impact on the doing of the act by the person that is the subject of the regulation can no longer be credibly demonstrated; and

      (c) the adequacy of the protection and the effectiveness of the remedies provided by Subdivision A of Division 2A of Part V and Subdivision E of Division 5 of Part V would be impaired if the regulation were not varied or revoked.

(9) If a submission has been made to vary or revoke a regulation made under subsection (2), the Minister must make a decision whether to

Replaced Authorised Version registered 10/02/2025 C2024C00854

Section 249

recommend the variation or revocation of the regulation as soon as practicable after receiving the submission, but in any case, within 4 years of receiving it.

Replaced Authorised Version registered 10/02/2025 C2024C00854

# The Schedule

Section 144

OATH

I, _____, do swear that I will be faithful and bear true allegiance to *(insert name of the Sovereign)*, *(insert applicable pronoun, such as "His" or "Her")* Heirs and Successors according to law, that I will well and truly serve *(insert applicable pronoun, such as "Him" or "Her")* in the office of

and that I will faithfully and impartially perform the duties of that office.

SO HELP ME GOD!

AFFIRMATION

I, _____, do solemnly and sincerely promise and declare that I will be faithful and bear true allegiance to *(insert name of the Sovereign)*, *(insert applicable pronoun, such as "His" or "Her")* Heirs and Successors according to law, that I will well and truly serve *(insert applicable pronoun, such as "Him" or "Her")* in the office of _____ and that I will faithfully and impartially perform the duties of that office.

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnotes

# Endnotes

## Endnote 1—About the endnotes

The endnotes provide information about this compilation and the compiled law.

The following endnotes are included in every compilation:

Endnote 1—About the endnotes
Endnote 2—Abbreviation key
Endnote 3—Legislation history
Endnote 4—Amendment history

**Abbreviation key—Endnote 2**
The abbreviation key sets out abbreviations that may be used in the endnotes.

**Legislation history and amendment history—Endnotes 3 and 4**
Amending laws are annotated in the legislation history and amendment history.

The legislation history in endnote 3 provides information about each law that has amended (or will amend) the compiled law. The information includes commencement details for amending laws and details of any application, saving or transitional provisions that are not included in this compilation.

The amendment history in endnote 4 provides information about amendments at the provision (generally section or equivalent) level. It also includes information about any provision of the compiled law that has been repealed in accordance with a provision of the law.

**Editorial changes**
The *Legislation Act 2003* authorises First Parliamentary Counsel to make editorial and presentational changes to a compiled law in preparing a compilation of the law for registration. The changes must not change the effect of the law. Editorial changes take effect from the compilation registration date.

If the compilation includes editorial changes, the endnotes include a brief outline of the changes in general terms. Full details of any changes can be obtained from the Office of Parliamentary Counsel.

**Misdescribed amendments**
A misdescribed amendment is an amendment that does not accurately describe how an amendment is to be made. If, despite the misdescription, the amendment

Replaced Authorised Version registered 10/02/2025 C2024C00854

can be given effect as intended, then the misdescribed amendment can be incorporated through an editorial change made under section 15V of the *Legislation Act 2003*.

If a misdescribed amendment cannot be given effect as intended, the amendment is not incorporated and "(md not incorp)" is added to the amendment history.

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 2—Abbreviation key

## Endnote 2—Abbreviation key

ad = added or inserted

am = amended

amdt = amendment

c = clause(s)

C[x] = Compilation No. x

Ch = Chapter(s)

def = definition(s)

Dict = Dictionary

disallowed = disallowed by Parliament

Div = Division(s)

ed = editorial change

exp = expires/expired or ceases/ceased to have effect

F = Federal Register of Legislation

gaz = gazette

LA = *Legislation Act 2003*

LIA = *Legislative Instruments Act 2003*

(md) = misdescribed amendment can be given effect

(md not incorp) = misdescribed amendment cannot be given effect

mod = modified/modification

No. = Number(s)

o = order(s)

Ord = Ordinance

orig = original

par = paragraph(s)/subparagraph(s) /sub-subparagraph(s)

pres = present

prev = previous

(prev…) = previously

Pt = Part(s)

r = regulation(s)/rule(s)

reloc = relocated

renum = renumbered

rep = repealed

rs = repealed and substituted

s = section(s)/subsection(s)

Sch = Schedule(s)

Sdiv = Subdivision(s)

SLI = Select Legislative Instrument

SR = Statutory Rules

Sub-Ch = Sub-Chapter(s)

SubPt = Subpart(s)

underlining = whole or part not commenced or to be commenced

Replaced Authorised Version registered 10/02/2025 C2024C00854

## Endnote 3—Legislation history

| Act | Number and year | Assent | Commencement | Application, saving and transitional provisions |
|-----|-----------------|--------|--------------|-------------------------------------------------|
| Copyright Act 1968 | 63, 1968 | 27 June 1968 | 1 May 1969 (*see Gazette* 1969, p. 2543) | |
| Statute Law Revision Act 1973 | 216, 1973 | 19 Dec 1973 | 31 Dec 1973 | ss. 9(1) and 10 |
| Administrative Changes (Consequential Provisions) Act 1976 | 91, 1976 | 20 Sept 1976 | s 4: 20 Sept 1976 (s 2(1)) Sch: 22 Dec 1975 (s 2(7)) | s 4 |
| Broadcasting and Television Amendment Act 1977 | 160, 1977 | 10 Nov 1977 | 1 Jan 1978 (*see Gazette* 1977, No. S259) | — |
| Jurisdiction of Courts (Miscellaneous Amendments) Act 1979 | 19, 1979 | 28 Mar 1979 | Parts II–XVII (ss. 3–123): 15 May 1979 (*see Gazette* 1979, No. S86) Remainder: 19 Mar 1979 | ss. 9 and 124 |
| Copyright Amendment Act 1980 | 154, 1980 | 19 Sept 1980 | ss. 17–19: 29 Sept 1980 Remainder: 1 Aug 1981 (*see Gazette* 1981, No. S124) | — |

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 3—Legislation history

| Act | Number and year | Assent | Commencement | Application, saving and transitional provisions |
|-----|-----------------|--------|--------------|-------------------------------------------------|
| Designs Amendment Act 1981 | 42, 1981 | 13 May 1981 | ss. 1 and 2: 13 Mar 1981<br>s. 31, Part IV (ss. 34, 35) and s. 36(2): 1 Apr 1982 (*see Gazette* 1982, No. G12)<br>Remainder: 1 Apr 1982 (*see Gazette* 1982, No. G12) | s. 36 |
| Statute Law Revision Act 1981 | 61, 1981 | 12 June 1981 | Sch 1: 12 June 1981 (s 2(1)) | — |
| Broadcasting and Television Amendment Act 1981 | 113, 1981 | 24 June 1981 | s. 30: 10 Aug 1981 (*see Gazette* 1981, No. S158)<br>Remainder: 24 June 1981 | — |
| Statute Law (Miscellaneous Amendments) Act (No. 1) 1982 | 26, 1982 | 7 May 1982 | Part XVIII (s. 136–145): 4 June 1982*)* | s. 138(2) |
| Statute Law (Miscellaneous Amendments) Act (No. 2) 1982 | 80, 1982 | 22 Sept 1982 | Part LXXVII (s. 280): 22 Sept 1982 | s. 280(2) and (3) |
| Broadcasting and Television Amendment Act 1982 | 154, 1982 | 31 Dec 1982 | 31 Dec 1982 | — |
| Australian Broadcasting Corporation (Transitional Provisions and Consequential Amendments) Act 1983 | 7, 1983 | 1 June 1983 | ss. 1, 2, 15(1) and 24: 1 June 1983<br>Remainder: 1 July 1983 (*see* s. 2(2) and *Gazette* 1983, No. S124) | s. 60(2) |

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 3—Legislation history

| Act | Number and year | Assent | Commencement | Application, saving and transitional provisions |
|---|---|---|---|---|
| Copyright Amendment Act 1983 | 80, 1983 | 3 Nov 1983 | 6 June 1984 (*see Gazette* 1984, No. S203) | — |
| Statute Law (Miscellaneous Provisions) Act (No. 2) 1983 | 91, 1983 | 22 Nov 1983 | s 3, 6: 20 Dec 1983 (s 2(1)) | s 6 |
| Radiocommunications (Transitional Provisions and Consequential Amendments) Act 1983 | 136, 1983 | 22 Dec 1983 | 27 Aug 1985 (*see* s. 2 and *Gazette* 1985, No. S322) | — |
| Copyright Amendment Act 1984 | 43, 1984 | 15 June 1984 | 15 June 1984 | s. 7 |
| Statute Law (Miscellaneous Provisions) Act (No. 2) 1984 | 165, 1984 | 25 Oct 1984 | s 6(1), 7 and Sch 1: 22 Nov 1984 (s 2(1)) | s 6(1) and 7 |
| Statute Law (Miscellaneous Provisions) Act (No. 1) 1985 | 65, 1985 | 5 June 1985 | Sch 1: 3 July 1985 (s 2(1)) | — |
| Broadcasting and Television (Consequential Amendments) Act 1985 | 67, 1985 | 5 June 1985 | 1 Jan 1986 | s 4 |
| Copyright Amendment Act 1986 | 78, 1986 | 24 June 1986 | s 14–19: 22 July 1986 (s 2(2)) Remainder: 30 Apr 1987 (s 2(1) and gaz 1987, No S68) | s 20(2) and 28(2) |

*Copyright Act 1968*      *605*

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 3—Legislation history

| Act | Number and year | Assent | Commencement | Application, saving and transitional provisions |
|---|---|---|---|---|
| Statute Law (Miscellaneous Provisions) Act (No. 2) 1986 | 168, 1986 | 18 Dec 1986 | s 5(1): 18 Dec 1986 (s 2(1))<br>Sch 1: 30 Apr 1987 (s 2(3)) | s 5(1) |
| Jurisdiction of Courts (Miscellaneous Amendments) Act 1987 | 23, 1987 | 26 May 1987 | s 5: 26 May 1987 (s 2(1)<br>Sch: 1 Sept 1987 (s 2(2) and gaz 1987, No S217) | s 5 |
| Broadcasting Legislation Amendment Act 1988 | 146, 1988 | 26 Dec 1988 | Sch 5: 1 Mar 1989 (s 2(3)) | — |
| Circuit Layouts Act 1989 | 28, 1989 | 22 May 1989 | ss. 1 and 2: Royal Assent<br>Remainder: 1 Oct 1990 (*see Gazette 1990, No. S261*) | — |

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 3—Legislation history

| Act | Number and year | Assent | Commencement | Application, saving and transitional provisions |
|---|---|---|---|---|
| Copyright Amendment Act 1989 | 32, 1989 | 24 May 1989 | s 3, 5, 7, 12, 13, 21, 22, 28 and Sch (items 1, 4, 10, 12, 14, 19, 25, 26): 1 Oct 1989 (s 2(2) and gaz 1989, No S316) s 4, 14, 16, 18, 20, 23, 25, 27, 29 and Sch (items 48, 49, 53): 29 Jan 1990 (s 2(2) and gaz 1990, No S15) s 6, 15, 19, 24, 26(a) and Sch (items 2, 3, 6–9, 11, 13, 15, 18, 21–24, 27–47, 50–52): 1 July 1990 (s 2(2) and gaz 1990, No S164) s 8–11, 17 and Sch (items 5, 16, 17, 20): 1 Oct 1990 (s 2(2) and gaz 1990, No S261) s 26(b)–(f): 2 July 1990 (s 2(2) and gaz 1990, No S164) Remainder: 24 May 1989 (s 2(1)) | s 25 and 29 |
| **as repealed by** | | | | |
| Copyright Amendment (Re-enactment) Act 1993 | 107, 1993 | 22 Dec 1993 | s 13: 22 Dec 1993 (s 2(1)) | s 2(2) |

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 3—Legislation history

| Act | Number and year | Assent | Commencement | Application, saving and transitional provisions |
|---|---|---|---|---|
| **as re-enacted by** | | | | |
| Copyright Amendment (Re-enactment) Act 1993 | 107, 1993 | 22 Dec 1993 | s 3–12 and Sch: 22 Dec 1993 (s 2(1)) | s 8 and 10–12 |
| Copyright Amendment Act 1991 | 174, 1991 | 25 Nov 1991 | 23 Dec 1991 | — |
| Special Broadcasting Service Act 1991 | 180, 1991 | 25 Nov 1991 | s 116: 23 Dec 1991 (s 2(1)) | s 116(2) |
| Broadcasting Services (Transitional Provisions and Consequential Amendments) Act 1992 | 105, 1992 | 9 July 1992 | 5 Oct 1992 (*see* s. 2 and *Gazette* 1992, No. GN38) | s. 3 |
| Radiocommunications (Transitional Provisions and Consequential Amendments) Act 1992 | 167, 1992 | 11 Dec 1992 | 1 July 1993 | s. 14(3) |
| Copyright Amendment (Re-enactment) Act 1993 | 107, 1993 | 22 Dec 1993 | 22 Dec 1993 | ss. 8 and 10–12 |
| Agricultural and Veterinary Chemicals (Consequential Amendments) Act 1994 | 37, 1994 | 15 Mar 1994 | 15 Mar 1995 (*see* s. 2) | — |
| Law and Justice Legislation Amendment Act (No. 2) 1994 | 141, 1994 | 28 Nov 1994 | s 4 (items 1–13, 15–30, 32–112): 28 Nov 1994 (s 2(1)) s 4 (items 14, 31): 23 Dec 1991 (s 2(4)) | s 7 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 3—Legislation history

| Act | Number and year | Assent | Commencement | Application, saving and transitional provisions |
|---|---|---|---|---|
| Copyright (World Trade Organization Amendments) Act 1994 | 149, 1994 | 13 Dec 1994 | s 1 and 2: 13 Dec 1994 (s 2(2)) Parts 3 and 4 (s 6–17): 1 July 1995 (s 2(4)) Remainder: 1 Jan 1996 (s 2(3)) | — |
| Intellectual Property Laws Amendment Act 1998 | 100, 1998 | 27 July 1998 | Sch 2 (items 1–3): 27 Jan 1999 (s 2(4)(5)) | — |
| Copyright Amendment Act (No. 1) 1998 | 104, 1998 | 30 July 1998 | Sch 2 (items 6, 8, 10, 12) and Sch 8 (item 12): 30 Jan 2000 (s 2(2)) Remainder: 30 July 1998 (s 2(1)) | Sch. 1 (item 4), Sch. 3 (item 4), Sch. 4 (item 6), Sch. 9 (item 8) and Sch. 10 (item 51) |
| Copyright Amendment Act (No. 2) 1998 | 105, 1998 | 30 July 1998 | 30 July 1998 (s 2(1)(2)) | Sch 1 (item 9) |
| Copyright Amendment (Computer Programs) Act 1999 | 105, 1999 | 24 Aug 1999 | 30 Sept 1999 (*see Gazette* 1999, No. S462) | — |
| Public Employment (Consequential and Transitional) Amendment Act 1999 | 146, 1999 | 11 Nov 1999 | Sch 1 (item 338): 5 Dec 1999 (*see* s 2(1)(2) and gaz 1999, No. S584) | — |
| Copyright Amendment (Digital Agenda) Act 2000 | 110, 2000 | 4 Sept 2000 | 4 Mar 2001 (s 2(2)) | Sch 2 |
| **as amended by** | | | | |
| Statute Law Revision Act 2002 | 63, 2002 | 3 July 2002 | Sch 2 (items 4, 5): 4 Mar 2001 (s 2(1) items 33, 34) | — |

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

## Endnote 3—Legislation history

| Act | Number and year | Assent | Commencement | Application, saving and transitional provisions |
|---|---|---|---|---|
| Copyright Amendment (Moral Rights) Act 2000 | 159, 2000 | 21 Dec 2000 | Sch 2: 2 Mar 2001 (s 2(3))<br>Remainder: Royal Assent | Sch 1 (item 3) |
| Law and Justice Legislation Amendment (Application of Criminal Code) Act 2001 | 24, 2001 | 6 Apr 2001 | s 4(1), (2) and Sch 9: 24 May 2001 (s 2(1)(a)) | s 4(1) and (2) |
| Copyright Amendment (Parallel Importation) Act 2003 | 34, 2003 | 15 Apr 2003 | Sch 3 (items 1–3, 5, 7): 4 Mar 2001 (s 2(1) items 4, 6, 8)<br>Sch 3 (items 4, 6, 8, 9): 15 Apr 2003 (s 2(1) items 5, 7, 9)<br>Sch 4: 13 May 2003 (s 2(1) item 10)<br>Remainder: Royal Assent | Sch 1 (item 20), Sch 3 (item 9) and Sch 4 (items 14, 15) |
| Designs (Consequential Amendments) Act 2003 | 148, 2003 | 17 Dec 2003 | Sch 1: 17 June 2004 (s 2(1) item 2) | Sch 1 (items 15–20) |
| US Free Trade Agreement Implementation Act 2004 | 120, 2004 | 16 Aug 2004 | Sch 9 (items 1–15, 59–112, 114–119–166, 168–191): 1 Jan 2005 (s 2(1) items 9, 11, 12, 14–18, 20)<br>Sch 9 (items 16–58): 26 July 2007 (s 2(1) item 10 and gaz 2007, No GN22)<br>Sch 9 (items 113, 167): 16 Aug 2004 (s 2(1) items 13, 19) | Sch 9 (items 15, 84, 106, 117–119, 131–133, 145, 160, 185, 190) |

*Copyright Act 1968*

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 3—Legislation history

| Act | Number and year | Assent | Commencement | Application, saving and transitional provisions |
|---|---|---|---|---|
| **as amended by** | | | | |
| Copyright Legislation Amendment Act 2004 | 154, 2004 | 15 Dec 2004 | Sch 1 (items 42–61): 1 Jan 2005 (s 2(1) item 2) | — |
| Copyright Legislation Amendment Act 2004 | 154, 2004 | 15 Dec 2004 | Sch 1 (items 1–41): 1 Jan 2005 (s 2(1) item 2) | Sch 1 (items 8, 16, 29, 31, 41) |
| Australian Communications and Media Authority (Consequential and Transitional Provisions) Act 2005 | 45, 2005 | 1 Apr 2005 | Schedule 1 (items 59–62) and Schedule 4: 1 July 2005 (*see* s. 2(1)) | Sch 4 |
| **as amended by** | | | | |
| Omnibus Repeal Day (Autumn 2014) Act 2014 | 109, 2014 | 16 Oct 2014 | Sch 2 (items 177–181): 17 Oct 2014 (s 2(1) item 2) | — |
| Copyright Amendment (Film Directors' Rights) Act 2005 | 130, 2005 | 8 Nov 2005 | Schedule 1: 19 Dec 2005 (*see* F2005L04088) Remainder: Royal Assent | s 4 |
| Statute Law Revision Act 2006 | 9, 2006 | 23 Mar 2006 | Schedule 1 (items 8, 9): 1 Jan 2005 (s 2(1) item 6) | Sch. 1 (item 9) |

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 3—Legislation history

| Act | Number and year | Assent | Commencement | Application, saving and transitional provisions |
|-----|-----------------|--------|--------------|-------------------------------------------------|
| Copyright Amendment Act 2006 | 158, 2006 | 11 Dec 2006 | Sch 1 (items 1–33), Sch 2–5 and Sch 12 (items 1–16): 1 Jan 2007 (s 2(1) items 2, 4, 9) Sch 1 (item 34) and Sch 12 (items 17, 18): never commenced (s 2(1) items 3, 10) Sch 9: 8 Jan 2007 (s 2(1) item 6) Remainder: 11 Dec 2006 (s 2(1) items 1, 5, 7, 8) | Sch 1 (items 9, 12, 14, 16, 18, 22, 24, 26), Sch 2 (item 15), Sch 3 (item 20), Sch 4 (item 2), Sch 5 (items 2, 6), Sch 6 (item 9AA), Sch 9 (item 2), Sch 10 (items 5, 20, 30, 55, 58, 61, 63), Sch 11 (items 3, 37, 40, 42, 57) and Sch 12 (item 16) |
| Australian Citizenship (Transitionals and Consequentials) Act 2007 | 21, 2007 | 15 Mar 2007 | Schedules 1–3: 1 July 2007 (*see* s. 2(1) and F2007L01653) Remainder: Royal Assent | — |
| Broadcasting Legislation Amendment Act 2007 | 28, 2007 | 15 Mar 2007 | 15 Mar 2007 | — |
| Statute Law Revision Act 2008 | 73, 2008 | 3 July 2008 | Schedule 4 (item 200): 4 July 2008 | — |
| Archives Amendment Act 2008 | 113, 2008 | 31 Oct 2008 | 1 Nov 2008 | — |
| Statute Law Revision Act 2010 | 8, 2010 | 1 Mar 2010 | Sch 5 (item 137(a)): 1 Mar 2010 (s 2(1) item 38) | — |
| Broadcasting Legislation Amendment (Digital Television) Act 2010 | 94, 2010 | 29 June 2010 | Schedule 1 (items 135–144): 30 June 2010 | — |

*Copyright Act 1968*

Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 3—Legislation history

| Act | Number and year | Assent | Commencement | Application, saving and transitional provisions |
|-----|-----------------|--------|--------------|-------------------------------------------------|
| Broadcasting Legislation Amendment (Digital Dividend and Other Measures) Act 2011 | 36, 2011 | 26 May 2011 | Schedule 2 (item 61): 27 May 2011 | — |
| Therapeutic Goods Legislation Amendment (Copyright) Act 2011 | 39, 2011 | 27 May 2011 | 28 May 2011 | Sch. 1 (items 2, 3) |
| Acts Interpretation Amendment Act 2011 | 46, 2011 | 27 June 2011 | Schedule 2 (items 445, 446) and Schedule 3 (items 10, 11): 27 Dec 2011 | Sch. 3 (items 10, 11) |
| Intellectual Property Laws Amendment (Raising the Bar) Act 2012 | 35, 2012 | 15 Apr 2012 | Schedule 5 (items 1–16): 15 Apr 2013 | — |
| Statute Law Revision Act 2012 | 136, 2012 | 22 Sept 2012 | Schedule 1 (item 37): Royal Assent | — |
| Australian Charities and Not-for-profits Commission (Consequential and Transitional) Act 2012 | 169, 2012 | 3 Dec 2012 | Schedule 2 (items 169–172): 3 Dec 2012 (*see* s. 2(1)) | — |
| Federal Circuit Court of Australia (Consequential Amendments) Act 2013 | 13, 2013 | 14 Mar 2013 | Sch 1 (items 93–95) and Sch 2 (item 2): 12 Apr 2013 (s 2(1) items 2, 3) | — |
| Statute Law Revision Act (No 1) 2014 | 31, 2014 | 27 May 2014 | Sch 1 (items 11, 12) and Sch 8 (item 12): 24 June 2014 | — |
| Customs and Other Legislation Amendment (Australian Border Force) Act 2015 | 41, 2015 | 20 May 2015 | Sch 5 (item 27), Sch 6 (items 23–49) and Sch 9: 1 July 2015 (s 2(1) items 2, 7) | Sch 6 (item 49) and Sch 9 |

*Copyright Act 1968*                                                              *613*

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 3—Legislation history

| Act | Number and year | Assent | Commencement | Application, saving and transitional provisions |
|---|---|---|---|---|
| **as amended by** | | | | |
| Australian Border Force Amendment (Protected Information) Act 2017 | 115, 2017 | 30 Oct 2017 | Sch 1 (item 26): 1 July 2015 (s 2(1) item 2) | — |
| Norfolk Island Legislation Amendment Act 2015 | 59, 2015 | 26 May 2015 | Sch 2 (items 99–101): 1 July 2016 (s 2(1) item 5) Sch 2 (items 356–396): 18 June 2015 (s 2(1) item 6) | Sch 2 (items 356–396) |
| **as amended by** | | | | |
| Territories Legislation Amendment Act 2016 | 33, 2016 | 23 Mar 2016 | Sch 2: 24 Mar 2016 (s 2(1) item 2) | — |
| Copyright Amendment (Online Infringement) Act 2015 | 80, 2015 | 26 June 2015 | 27 June 2015 (s 2) | — |
| Civil Law and Justice Legislation Amendment Act 2015 | 113, 2015 | 17 Aug 2015 | Sch 7: 17 Feb 2016 (s 2(1) item 3) | Sch 7 (item 7) |
| Acts and Instruments (Framework Reform) (Consequential Provisions) Act 2015 | 126, 2015 | 10 Sept 2015 | Sch 1 (item 149): 5 Mar 2016 (s 2(1) item 2) | — |
| Health Legislation Amendment (eHealth) Act 2015 | 157, 2015 | 26 Nov 2015 | Sch 1 (items 1, 2, 111–136): 27 Nov 2015 (s 2(1) item 2) | Sch 1 (items 111–136) |
| Statute Law Revision Act (No. 1) 2016 | 4, 2016 | 11 Feb 2016 | Sch 4 (items 1, 72): 10 Mar 2016 (s 2(1) item 6) | — |

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 3—Legislation history

| Act | Number and year | Assent | Commencement | Application, saving and transitional provisions |
| --- | --- | --- | --- | --- |
| Courts Administration Legislation Amendment Act 2016 | 24, 2016 | 18 Mar 2016 | Sch 5 (item 17): 1 July 2016 (s 2(1) item 7) Sch 6: 18 Mar 2016 (s 2(1) item 9) | Sch 6 |
| Territories Legislation Amendment Act 2016 | 33, 2016 | 23 Mar 2016 | Sch 5 (item 29): 1 July 2016 (s 2(1) item 7) | — |
| Statute Update (A.C.T. Self-Government (Consequential Provisions) Regulations) Act 2017 | 13, 2017 | 22 Feb 2017 | Sch 1 (items 7–13): 22 Mar 2017 (s 2(1) item 2) | — |
| Copyright Amendment (Disability Access and Other Measures) Act 2017 | 49, 2017 | 22 June 2017 | Sch 1 and Sch 3 (items 9–19): 22 Dec 2017 (s 2(1) items 2, 5) Sch 2: 1 Jan 2019 (s 2(1) item 3) Sch 3 (items 1–8): 23 June 2017 (s 2(1) item 4) | Sch 1 (items 79–84), Sch 2 (items 29–31) and Sch 3 (items 7, 8, 19) |
| Copyright Amendment (Service Providers) Act 2018 | 71, 2018 | 29 June 2018 | 29 Dec 2018 (s 2(1) item 1) | — |
| Intellectual Property Laws Amendment (Productivity Commission Response Part 1 and Other Measures) Act 2018 | 77, 2018 | 24 Aug 2018 | Sch 1 (items 1, 6) and Sch 2 (items 300, 301, 306): 25 Aug 2018 (s 2(1) items 2, 11) | Sch 1 (item 6) and Sch 2 (item 306) |
| Copyright Amendment (Online Infringement) Act 2018 | 157, 2018 | 10 Dec 2018 | 11 Dec 2018 (s 2(1) item 1) | Sch 1 (item 12) |

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 3—Legislation history

| Act | Number and year | Assent | Commencement | Application, saving and transitional provisions |
|---|---|---|---|---|
| Territories Legislation Amendment Act 2020 | 154, 2020 | 17 Dec 2020 | Sch 4 (items 3–6): 18 Dec 2020 (s 2(1) item 12) | — |
| Federal Circuit and Family Court of Australia (Consequential Amendments and Transitional Provisions) Act 2021 | 13, 2021 | 1 Mar 2021 | Sch 2 (items 231–237): 6 Sept 2021 (s 2(1) item 5) | — |
| Competition and Consumer Amendment (Motor Vehicle Service and Repair Information Sharing Scheme) Act 2021 | 54, 2021 | 24 June 2021 | Sch 1 (items 26, 27): 1 July 2022 (s 2(1) item 2) | — |
| Statute Law Amendment (Prescribed Forms and Other Updates) Act 2023 | 74, 2023 | 20 Sept 2023 | Sch 1 (items 20–23): 20 Mar 2024 (s 2(1) item 2) | Sch 1 (item 23) |
| Administrative Review Tribunal (Consequential and Transitional Provisions No. 1) Act 2024 | 38, 2024 | 31 May 2024 | Sch 6 (items 1, 10): 14 Oct 2024 (s 2(1) item 2) | — |
| Crown References Amendment Act 2024 | 115, 2024 | 10 Dec 2024 | Sch 1 (items 8, 9): 11 Dec 2024 (s 2(1) item 1) | — |

*Copyright Act 1968*

Replaced Authorised Version registered 10/02/2025 C2024C00854

# Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| Title.................................................. | am. No. 32, 1989 (as am. by No. 107, 1993) |
| **Part I** | |
| s. 3.................................................. | rep. No. 216, 1973 |
| s. 4.................................................. | rs. No. 216, 1973 |
| s. 8.................................................. | am. No. 154, 1980; No. 42, 1981 |
| | rs. No. 165, 1984 |
| s. 8A............................................... | ad. No. 154, 1980 |
| | am. No. 141, 1994 |
| s. 9.................................................. | am. No. 67, 1985 |
| s. 9A............................................... | ad. No. 24, 2001 |
| **Part II** | |
| s 10................................................. | am No 216, 1973; No 160, 1977; No 154, 1980; No 113, 1981; No 154, 1982; No 7, 1983; No 136, 1983; No 43, 1984; No 165, 1984; No 67, 1985; No 78, 1986; No 168, 1986; No 146, 1988; No 28, 1989; No 32, 1989 (as am by No 107, 1993); No 174, 1991; No 180, 1991; No 105, 1992; No 37, 1994; No 141, 1994; No 104, 1998; No 105, 1998; No 110, 2000; No 34, 2003; No 148, 2003; No 120, 2004; No 158, 2006; No 21, 2007; No 28, 2007; No 113, 2008; No 94, 2010; No 169, 2012; No 31, 2014; No 59, 2015; No 113, 2015; No 13, 2017; No 49, 2017; No 154, 2020 |
| s. 10AA........................................... | ad. No. 105, 1998 |
| s 10AB ........................................... | ad No 34, 2003 |
| s 10AC ........................................... | ad No 34, 2003 |
| s. 10AD........................................... | ad. No. 34, 2003 |
| | am. No. 34, 2003 |
| s 10A............................................... | ad No 165, 1984 |
| | am No 78, 1986; No 32, 1989 (as am by No 107, 1993); No 104, 1998 |
| | rep No 49, 2017 |
| s 11................................................. | am No 141, 1994 |

Compilation No. 64                                     Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| s 12................................................ | am No 216, 1973 |
| s 14................................................ | am No 154, 1980; No 49, 2017 |
| s. 19............................................... | am. No. 216, 1973 |
| s. 21............................................... | am. No. 110, 2000 |
| s 22................................................ | am No 78, 1986; No 32, 1989 (as am by No 107, 1993); No 110, 2000; No 120, 2004; No 158, 2006 |
| s. 25............................................... | am. No. 110, 2000 |
| s. 26............................................... | am. No. 141, 1994 |
|  | rep. No. 110, 2000 |
| s. 27............................................... | am No 32, 1989 (as am by No 107, 1993); No 141, 1994; No 110, 2000 |
| s. 28............................................... | am. No. 154, 1980; No. 141, 1994; No. 158, 2006 |
| s. 29............................................... | am. No. 154, 1980 |
| s 29A.............................................. | ad No 49, 2017 |
| s. 30A............................................. | ad. No. 149, 1994 |
| **Part III** | |
| **Division 1** | |
| s. 31............................................... | am. No. 154, 1980; No. 149, 1994; No. 110, 2000 |
| s. 32............................................... | am. No. 141, 1994; No. 21, 2007 |
| s 33................................................ | am No 154, 1980; No 110, 2000; No 120, 2004 |
|  | rs No 49, 2017 |
| s 34................................................ | am No 154, 1980; No 120, 2004 |
|  | rep No 49, 2017 |
| s. 35............................................... | am. No. 141, 1994; No. 104, 1998 |
| **Division 2** | |
| s. 36............................................... | am. No. 110, 2000 |
| s. 37............................................... | am. No. 174, 1991; No. 104, 1998 |
| s. 38............................................... | am. No. 174, 1991; No. 141, 1994; No. 104, 1998; No. 158, 2006 |
| s. 39............................................... | am. No. 141, 1994 |
| s. 39A............................................. | ad. No. 154, 1980 |
|  | am. No. 110, 2000 (as am. by No. 63, 2002); No. 34, 2003 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 4—Amendment history

| Provision affected | How affected |
| --- | --- |
| s. 39B ............................................. | ad. No. 110, 2000 |
| **Division 3** | |
| s 40................................................. | am No 154, 1980; No 32, 1989 (as am by No 107, 1993); No 110, 2000; No 158, 2006 |
| s. 41A ............................................. | ad. No. 158, 2006 |
| s. 42 ............................................... | am. No. 110, 2000 |
| s. 43 ............................................... | am. No. 154, 1980; No. 100, 1998 |
| s. 43A ............................................. | ad. No. 43, 1984 |
| | rep. No. 105, 1999 |
| | ad. No. 110, 2000 |
| s. 43B ............................................. | ad. No. 120, 2004 |
| | am. No. 154, 2004 |
| s. 43C ............................................. | ad. No. 158, 2006 |
| s. 44 ............................................... | am. No. 154, 1980 |
| s. 44A ............................................. | ad. No. 174, 1991 |
| | am. No. 104, 1998 |
| s. 44B ............................................. | ad. No. 37, 1994 |
| s. 44BA ........................................... | ad. No. 39, 2011 |
| s 44BB ............................................ | ad No 157, 2015 |
| s. 44C ............................................. | ad. No. 104, 1998 |
| | am. No. 34, 2003 |
| s. 44D ............................................. | ad. No. 105, 1998 |
| | am. No. 34, 2003; No. 158, 2006 |
| ss. 44E, 44F ..................................... | ad. No. 34, 2003 |
| | am. No. 158, 2006 |
| **Division 4** | |
| s. 46 ............................................... | am. No. 110, 2000 |
| s. 47 ............................................... | am. No. 154, 1980; No. 80, 1983; No. 141, 1994; No. 110, 2000; No. 113, 2008 |
| s. 47AA ........................................... | ad. No. 110, 2000 |
| s 47A .............................................. | ad No 78, 1986 |

*Copyright Act 1968*                                                         619

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 4—Amendment history

| Provision affected | How affected |
| --- | --- |
| | am No 105, 1992; No 167, 1992; No 104, 1998; No 24, 2001; No 4, 2016 |
| | rep No 49, 2017 |
| **Division 4A** | |
| Division 4A........................................ | ad No 105, 1999 |
| s. 47AB ............................................. | ad. No. 110, 2000 |
| ss. 47B–47D...................................... | ad. No. 105, 1999 |
| | am. No. 110, 2000 |
| ss. 47E–47H...................................... | ad. No. 105, 1999 |
| **Division 4B** | |
| Division 4B........................................ | ad No 158, 2006 |
| s 47J ................................................. | ad No 158, 2006 |
| **Division 5** | |
| Division 5 heading............................ | rs No 104, 1998 |
| s. 48................................................... | rs. No. 154, 1980 |
| s. 48A ............................................... | ad. No. 165, 1984 |
| s 49................................................... | rs No 154, 1980 |
| | am No 165, 1984; No 141, 1994; No 110, 2000; No 158, 2006; No 49, 2017 |
| s 50................................................... | rs No 154, 1980 |
| | am No 165, 1984; No 110, 2000; No 158, 2006; No 49, 2017 |
| s. 51................................................... | am. No. 154, 1980; No. 141, 1994; No. 110, 2000; No. 120, 2004 |
| s. 51AA ............................................ | ad. No. 32, 1989 (as am. by No. 107, 1993) |
| | am. No. 110, 2000; No. 113, 2008 |
| s 51A ................................................ | ad No 154, 1980 |
| | am No 78, 1986; No 141, 1994; No 110, 2000; No 158, 2006 |
| | rep No 49, 2017 |
| s 51B ................................................ | ad No 158, 2006 |
| | rep No 49, 2017 |
| s. 52................................................... | am. No. 91, 1983; No. 104, 1998; No. 110, 2000 |
| s 53................................................... | am No 154, 1980; No 34, 2003; No 49, 2017 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| Division 5A...................................... | ad No 154, 1980 |
| | rep No 32, 1989 (as am by No 107, 1993) |
| s. 53A.............................................. | ad. No. 154, 1980 |
| | rep. No. 32, 1989 (as am. by No. 107, 1993) |
| s. 53B.............................................. | ad. No. 154, 1980 |
| | am. No. 165, 1984 |
| | rep. No. 32, 1989 (as am. by No. 107, 1993) |
| s. 53C.............................................. | ad. No. 154, 1980 |
| | am. No. 91, 1983 |
| | rep. No. 32, 1989 (as am. by No. 107, 1993) |
| Division 5B...................................... | ad No 154, 1980 |
| | rep No 32, 1989 (as am by No 107, 1993) |
| s. 53D.............................................. | ad. No. 154, 1980 |
| | am. No. 165, 1984 |
| | rep. No. 32, 1989 (as am. by No. 107, 1993) |
| **Division 6** | |
| s 54................................................. | am No 32, 1989 (as am by No 107, 1993); No 158, 2006; No 49, 2017 |
| s. 55................................................. | am. No. 154, 1980; No. 61, 1981; No. 32, 1989 (as am. by No. 107, 1993); No. 159, 2000; No. 158, 2006 |
| s. 56................................................. | am. No. 154, 1980 |
| | rep. No. 32, 1989 (as am. by No. 107, 1993) |
| s. 57................................................. | am. No. 154, 1980 |
| s. 58................................................. | am. No. 154, 1980 |
| | rep. No. 32, 1989 (as am. by No. 107, 1993) |
| s. 59................................................. | am. No. 154, 1980; No. 141, 1994; No. 158, 2006 |
| ss. 62, 63 ........................................ | am. No. 154, 1980 |
| | rep. No. 32, 1989 (as am. by No. 107, 1993) |
| s. 64................................................. | am. No. 154, 1980 |
| **Division 7** | |
| s. 65................................................. | am. No. 154, 1980 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| s. 68............................................ | am. No. 154, 1980 |
| s. 69............................................ | am. No. 154, 1980 |
|  | rep. No. 110, 2000 |
| s. 70............................................ | am. No. 154, 1980; No. 80, 1983; No. 141, 1994; No. 113, 2008 |
| s. 71............................................ | rep. No. 32, 1989 (as am. by No. 107, 1993) |
| **Division 8** | |
| Division 8 heading.......................... | am No 42, 1981 |
| s. 74............................................ | am. No. 216, 1973; No. 42, 1981 |
|  | rs. No. 32, 1989 (as am. by No. 107, 1993) |
|  | am. No. 148, 2003 |
| s. 75............................................ | am. No. 42, 1981 |
|  | rs. No. 32, 1989 (as am. by No. 107, 1993) |
|  | am. No. 148, 2003 |
| s. 76............................................ | am. No. 42, 1981 |
|  | rs. No. 148, 2003 |
| s. 77............................................ | am. No. 154, 1980; No. 42, 1981 |
|  | rs. No. 32, 1989 (as am. by No. 107, 1993) |
|  | am. No. 148, 2003 |
| s. 77A.......................................... | ad. No. 148, 2003 |
| **Division 9** | |
| s 79............................................. | am No 154, 1980 |
|  | rs No 49, 2017 |
| s 79A........................................... | ad No 49, 2017 |
| s 80............................................. | am No 154, 1980 |
|  | rs No 49, 2017 |
| s 81............................................. | am No 154, 1980; No 120, 2004; No 49, 2017 |
| s. 82............................................ | am. No. 154, 1980; No. 141, 1994 |
| s. 83............................................ | am. No. 154, 1980 |
| **Part IV** | |
| **Division 1** | |
| s. 84............................................ | rs. No. 120, 2004 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| | am. No. 21, 2007 |
| **Division 2** | |
| s. 85 | am. No. 154, 1980; No. 149, 1994; No. 110, 2000 |
| s. 86 | am. No. 110, 2000 |
| s. 87 | am. No. 154, 1980; No. 110, 2000 |
| s. 88 | am. No. 110, 2000 |
| **Division 3** | |
| s. 91 | am. No. 160, 1977; Nos. 7 and 136, 1983; No. 78, 1986 |
| | rs. No. 146, 1988 |
| | am. No. 180, 1991; No. 167, 1992; No. 104, 1998 |
| | rs. No. 110, 2000 |
| s. 91A | ad. No. 104, 1998 |
| | rep. No. 110, 2000 |
| s. 92 | am. No. 154, 1980 |
| **Division 4** | |
| s 93 | am No 154, 1980; No 120, 2004 |
| | rs No 49, 2017 |
| s 94 | am No 154, 1980; No 120, 2004 |
| | rep No 49, 2017 |
| ss. 95, 96 | am. No. 154, 1980 |
| **Division 5** | |
| **Subdivision A** | |
| Subdivision A heading | ad No 120, 2004 |
| s. 97 | am. No. 120, 2004 |
| s. 98 | am. No. 130, 2005; No. 158, 2006 |
| s. 99 | am. No. 160, 1977; No. 154, 1980; No. 7, 1983; No. 78, 1986; No. 146, 1988; No. 180, 1991; No. 104, 1998 |
| | rs. No. 110, 2000 |
| **Subdivision B** | |
| Subdivision B | ad No 120, 2004 |
| ss. 100AA–100AF | ad. No. 120, 2004 |

*Copyright Act 1968*                                                                 *623*

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| s. 100AG ........................................ | ad. No. 120, 2004 |
| | am. No. 158, 2006 |
| s 100AH ........................................ | ad No 120, 2004 |
| | am No 94, 2010; No 49, 2017 |
| **Division 6** | |
| s. 100A ........................................ | ad. No. 78, 1986 |
| s. 101 ........................................ | am. No. 154, 1980; No. 110, 2000 |
| s. 102 ........................................ | am. No. 174, 1991; Nos. 104 and 105, 1998; No. 34, 2003 |
| s. 103 ........................................ | am. No. 174, 1991; No. 141, 1994; Nos. 104 and 105, 1998; No. 34, 2003; No. 158, 2006 |
| s. 103A ........................................ | ad. No. 78, 1986 |
| s. 103AA ........................................ | ad. No. 158, 2006 |
| s. 103B ........................................ | ad. No. 78, 1986 |
| | am. No. 110, 2000 |
| s. 103C ........................................ | ad. No. 32, 1989 (as am. by No. 107, 1993) |
| s. 104 ........................................ | rs. No. 154, 1980 |
| | am. No. 100, 1998 |
| s. 104A ........................................ | ad. No. 165, 1984 |
| s. 104B ........................................ | ad. No. 110, 2000 |
| s 104C ........................................ | ad No 157, 2015 |
| s. 105 ........................................ | am. No. 154, 1980 |
| s. 106 ........................................ | am. No. 169, 2012 |
| s. 107 ........................................ | am. No. 154, 1980; No. 80, 1983; No. 141, 1994; No. 110, 2000; No. 113, 2008 |
| s. 108 ........................................ | am. No. 154, 1980; No. 141, 1994 |
| s. 109 ........................................ | am. No. 154, 1980; No. 141, 1994; No. 104, 1998 |
| s. 109A ........................................ | ad. No. 158, 2006 |
| | am. No. 8, 2010 |
| s. 110 ........................................ | am. No. 154, 1980 |
| s. 110AA ........................................ | ad. No. 158, 2006 |
| s. 110A ........................................ | ad. No. 78, 1986 |

*Copyright Act 1968*

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 4—Amendment history

| Provision affected | How affected |
| --- | --- |
| | am. No. 110, 2000 |
| s 110B ............................................. | ad No 78, 1986 |
| | am No 110, 2000; No 158, 2006 |
| | rep No 49, 2017 |
| s 110BA ........................................... | ad No 158, 2006 |
| | rep No 49, 2017 |
| s. 110C ............................................. | ad. No. 110, 2000 |
| s. 111 ............................................... | am. No. 154, 1980; No. 32, 1989 (as am. by No. 107, 1993) |
| | rs. No. 158, 2006 |
| s. 111A ............................................. | ad. No. 110, 2000 |
| s. 111B ............................................. | ad. No. 120, 2004 |
| | am. No. 154, 2004 |
| s 112 ................................................ | rs No 154, 1980 |
| | am No 78, 1986; No 32, 1989 (as am by No 107, 1993); No 104, 1998; No 158, 2006; No 49, 2017 |
| s. 112A ............................................. | ad. No. 174, 1991 |
| | am. No. 104, 1998 |
| s 112AA ........................................... | ad No 158, 2006 |
| | rep No 49, 2017 |
| s. 112B ............................................. | ad. No. 37, 1994 |
| s. 112C ............................................. | ad. No. 104, 1998 |
| | am. No. 34, 2003; No. 158, 2006 |
| s. 112D ............................................. | ad. No. 105, 1998 |
| | am. No. 158, 2006 |
| s. 112DA ........................................... | ad. No. 34, 2003 |
| | am. No. 158, 2006 |
| s. 112E ............................................. | ad. No. 110, 2000 |
| **Division 7** | |
| s. 113 ............................................... | am. No. 154, 1980 |
| ss. 113A–113C ................................... | ad. No. 120, 2004 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| **Part IVA** | |
| Part IVA............................................ | ad No 49, 2017 |
| **Division 1** | |
| s 113D............................................... | ad No 49, 2017 |
| **Division 2** | |
| s 113E .............................................. | ad No 49, 2017 |
| s 113F .............................................. | ad No 49, 2017 |
| **Division 3** | |
| **Subdivision A** | |
| s 113G............................................... | ad No 49, 2017 |
| s 113H............................................... | ad No 49, 2017 |
| s 113J................................................ | ad No 49, 2017 |
| s 113K............................................... | ad No 49, 2017 |
| **Subdivision B** | |
| s 113L................................................ | ad No 49, 2017 |
| s 113M .............................................. | ad No 49, 2017 |
| **Division 4** | |
| s 113N............................................... | ad No 49, 2017 |
| s 113P ............................................... | ad No 49, 2017 |
| | am No 54, 2021 |
| s 113Q............................................... | ad No 49, 2017 |
| s 113R............................................... | ad No 49, 2017 |
| s 113S .............................................. | ad No 49, 2017 |
| s 113T .............................................. | ad No 49, 2017 |
| s 113U............................................... | ad No 49, 2017 |
| **Division 5** | |
| **Subdivision A** | |
| s 113V............................................... | ad No 49, 2017 |
| s 113W.............................................. | ad No 49, 2017 |
| s 113X............................................... | ad No 49, 2017 |

*Copyright Act 1968*

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| **Subdivision B** | |
| s 113Y ............................................ | ad No 49, 2017 |
| s 113Z ............................................ | ad No 49, 2017 |
| s 113ZA ........................................... | ad No 49, 2017 |
| s 113ZB........................................... | ad No 49, 2017 |
| s 113ZC........................................... | ad No 49, 2017 |
| **Part V** | |
| Part V heading ............................... | rs No 110, 2000 |
| **Division 2** | |
| s. 115.............................................. | am. No. 110, 2000; No. 34, 2003; No. 158, 2006 |
| s 115A............................................ | ad No 80, 2015 |
| | am No 157, 2018 |
| s. 116.............................................. | am. No. 141, 1994; No. 104, 1998; No. 110, 2000 |
| s. 116AAA ...................................... | ad. No. 120, 2004 |
| **Division 2AA** | |
| Division 2AA heading .................... | rs No 71, 2018 |
| Division 2AA.................................. | ad. No. 120, 2004 |
| **Subdivision A** | |
| s. 116AA ........................................ | ad. No. 120, 2004 |
| | am No 71, 2018 |
| s 116AB ......................................... | ad No 120, 2004 |
| | am No 154, 2004; No 9, 2006; No 49, 2017; No 71, 2018 |
| s 116ABA ....................................... | ad No 71, 2018 |
| **Subdivision B** | |
| s 116AC ......................................... | ad No 120, 2004 |
| | am No 71, 2018 |
| s 116AD......................................... | ad No 120, 2004 |
| | am No 71, 2018 |
| s 116AE ......................................... | ad No 120, 2004 |
| | am No 71, 2018 |
| s 116AF.......................................... | ad No 120, 2004 |

*Copyright Act 1968*                    *627*

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| | am No 71, 2018 |
| **Subdivision C** | |
| s. 116AG........................................ | ad. No. 120, 2004 |
| | am No 71, 2018 |
| **Subdivision D** | |
| s. 116AH........................................ | ad. No. 120, 2004 |
| | am. No. 154, 2004; No 71, 2018 |
| s. 116AI ........................................ | ad. No. 120, 2004 |
| | am No 71, 2018 |
| **Subdivision E** | |
| s. 116AJ ........................................ | ad. No. 120, 2004 |
| | am No 71, 2018 |
| **Division 2A** | |
| Division 2A heading...................... | rs No 158, 2006 |
| Division 2A.................................... | ad No 110, 2000 |
| s. 116A............................................ | ad. No. 110, 2000 |
| | rep. No. 158, 2006 |
| **Subdivision A** | |
| Subdivision A ................................ | ad No 158, 2006 |
| ss. 116AK–116AQ......................... | ad. No. 158, 2006 |
| **Subdivision B** | |
| Subdivision B heading.................... | ad No 158, 2006 |
| s. 116B ............................................ | ad. No. 110, 2000 |
| | am. No. 120, 2004 |
| s. 116C ............................................ | ad. No. 110, 2000 |
| | am. No. 120, 2004 |
| s 116CA .......................................... | ad No 120, 2004 |
| s 116CB .......................................... | ad No 120, 2004 |
| s 116D............................................. | ad No 110, 2000 |
| | am No 120, 2004; No 158, 2006 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| **Division 3** | |
| s 119 | am No 154, 1980; No 141, 1994; No 80, 2015 |
| s 120 | am No 154, 1980; No 80, 2015 |
| s 122 | am No 154, 1980 |
| s 123 | am No 154, 1980; No 120, 2004 |
| s 124 | am No 154, 1980; No 120, 2004 |
| s 125 | am No 154, 1980; No 141, 1994 |
| **Division 4** | |
| Division 4 heading | rs No 78, 1986 |
| s. 126 | am. No. 141, 1994 |
| s. 126A | ad. No. 34, 2003 |
| | am. No. 158, 2006 |
| s. 126B | ad. No. 34, 2003 |
| | am. No. 158, 2006; No 4, 2016 |
| s. 127 | am. No. 154, 1980; No. 141, 1994; No. 120, 2004 |
| s. 128 | am. No. 154, 1980; No. 120, 2004 |
| s 129 | am No 154, 1980; No 141, 1994; No 49, 2017 |
| s. 129A | ad. No. 158, 2006 |
| s. 130 | am. No. 34, 2003; No. 154, 2004 |
| | rs. No. 158, 2006 |
| s. 130A | ad. No. 105, 1998 |
| | am. No. 158, 2006 |
| ss. 130B, 130C | ad. No. 34, 2003 |
| | am. No. 158, 2006 |
| s. 131 | am. No. 154, 1980; No. 141, 1994; No. 158, 2006 |
| **Division 4A** | |
| Division 4A heading | rs. No. 23, 1987 |
| Division 4A | ad No 19, 1979 |
| s. 131A | ad. No. 19, 1979 |
| | am No 80, 2015; No 157, 2018 |
| s. 131B | ad. No. 19, 1979 |

*Copyright Act 1968*                                    *629*

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| | am. No. 23, 1987 |
| s. 131C ........................................... | ad. No. 23, 1987 |
| s 131D........................................... | ad No 34, 2003 |
| | am No 13, 2013; No 80, 2015; No 13, 2021 |
| **Division 5** | |
| s. 132............................................... | am. No. 154, 1980; No. 43, 1984; No. 78, 1986; Nos. 104 and 105, 1998; No. 110, 2000; No. 34, 2003; Nos. 120 and 154, 2004 |
| | rep. No. 158, 2006 |
| **Subdivision A** | |
| Subdiv. A of Div. 5 of Part V ......... | ad. No. 158, 2006 |
| s 132AA ......................................... | ad No 158, 2006 |
| | am No 49, 2017 |
| s 132AB ......................................... | ad No 158, 2006 |
| **Subdivision B** | |
| Subdiv. B of Div. 5 of Part V ......... | ad. No. 158, 2006 |
| s. 132AC ......................................... | ad. No. 158, 2006 |
| | am. No. 113, 2008 |
| **Subdivision C** | |
| Subdiv. C of Div. 5 of Part V ......... | ad. No. 158, 2006 |
| ss. 132AD–132AM ......................... | ad. No. 158, 2006 |
| **Subdivision D** | |
| Subdiv. D of Div. 5 of Part V ......... | ad. No. 158, 2006 |
| ss. 132AN, 132AO........................... | ad. No. 158, 2006 |
| **Subdivision E** | |
| Subdiv. E of Div. 5 of Part V ......... | ad. No. 158, 2006 |
| ss. 132APA, 132APB ..................... | ad. No. 158, 2006 |
| ss. 132APC–132APE....................... | ad. No. 158, 2006 |
| | am. No. 113, 2008 |
| **Subdivision F** | |
| Subdiv. F of Div. 5 of Part V.......... | ad. No. 158, 2006 |
| ss. 132AQ–132AS .......................... | ad. No. 158, 2006 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 4—Amendment history

| Provision affected | How affected |
| --- | --- |
| s. 132AT ........................................ | ad. No. 158, 2006 |
|  | am. No. 113, 2008 |
| **Subdivision G** | |
| Subdiv. G of Div. 5 of Part V ......... | ad. No. 158, 2006 |
| s. 132AU ........................................ | ad. No. 158, 2006 |
| s. 132A ........................................... | ad. No. 34, 2003 |
|  | am. No. 158, 2006 |
| s. 132AAA ...................................... | ad. No. 158, 2006 |
| s. 132B ........................................... | ad. No. 34, 2003 |
|  | am. No. 154, 2004 |
|  | rs. No. 158, 2006 |
| s. 132C ........................................... | ad. No. 158, 2006 |
| **Subdivision H** | |
| Subdiv. H of Div. 5 of Part V ......... | ad. No. 158, 2006 |
| s. 133 .............................................. | am. No. 154, 1980; No. 91, 1983; No. 78, 1986; Nos. 104 and 105, 1998; No. 110, 2000 |
|  | rs. No. 158, 2006 |
| **Subdivision I** | |
| Subdiv. I of Div. 5 of Part V ........... | ad. No. 158, 2006 |
| s. 133A ........................................... | ad. No. 43, 1984 |
|  | am. No. 78, 1986; No. 105, 1998; No. 34, 2003 |
|  | rs. No. 158, 2006 |
| s. 133B ........................................... | ad. No. 158, 2006 |
| **Division 6** | |
| s. 134 .............................................. | am. No. 104, 1998; No. 110, 2000; No. 120, 2004; No. 158, 2006 |
| s. 134A ........................................... | ad. No. 78, 1986 |
|  | am. No. 149, 1994 |
| **Division 7** | |
| Division 7 heading ........................... | ad No 149, 1994 |
| s 134B ............................................. | ad No 149, 1994 |
|  | am No 104, 1998; No 35, 2012; No 41, 2015; No 49, 2017 |

*Copyright Act 1968*    *631*

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| s. 135............................................ | am. No. 216, 1973; No. 91, 1976; No. 19, 1979; No. 154, 1980; No. 80, 1982; No. 65, 1985; No. 32, 1989 (as am. by No. 107, 1993); Nos. 141 and 149, 1994; Nos. 104 and 105, 1998; No. 34, 2003; No. 158, 2006; No 41, 2015 |
| s. 135AA.......................................... | ad. No. 149, 1994 |
| | am. No. 104, 1998 |
| | rs. No. 158, 2006 |
| | am No 41, 2015 |
| s. 135AB ......................................... | ad. No. 149, 1994 |
| | am. No. 104, 1998; No 41, 2015 |
| s. 135AC .......................................... | ad. No. 149, 1994 |
| | am. No. 104, 1998; No. 35, 2012; No 41, 2015; No 77, 2018 |
| s. 135AD.......................................... | ad. No. 149, 1994 |
| | am. No. 104, 1998; No. 35, 2012; No 41, 2015 |
| s. 135AE ......................................... | ad. No. 149, 1994 |
| | am. No. 104, 1998; No. 35, 2012; No 41, 2015 |
| s 135AEA ....................................... | ad No 35, 2012 |
| | am No 41, 2015; No 74, 2023 |
| s. 135AEB......................................... | ad. No. 35, 2012 |
| | am No 41, 2015 |
| s. 135AEC......................................... | ad. No. 35, 2012 |
| | am No 31, 2014; No 41, 2015 |
| s. 135AED ....................................... | ad. No. 35, 2012 |
| | am No 41, 2015 |
| s. 135AF.......................................... | ad. No. 149, 1994 |
| | am. No. 104, 1998 |
| | rs. No. 35, 2012 |
| | am No 41, 2015 |
| s. 135AFA....................................... | ad. No. 35, 2012 |
| | am No 41, 2015 |
| s. 135AG.......................................... | ad. No. 149, 1994 |

Compilation No. 64    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| | am. No. 104, 1998; No 41, 2015 |
| s. 135AH......................................... | ad. No. 149, 1994 |
| | am. No. 104, 1998; No 41, 2015 |
| s. 135AI .......................................... | ad. No. 149, 1994 |
| | am. No. 104, 1998 |
| | rs. No. 35, 2012 |
| | am No 41, 2015 |
| s. 135AJ .......................................... | ad. No. 149, 1994 |
| | am. No. 104, 1998 |
| | rs. No. 158, 2006 |
| | am No 41, 2015 |
| s. 135AK......................................... | ad. No. 149, 1994 |
| | am. No. 104, 1998; No 41, 2015 |
| **Part VAA** | |
| Part VAA ......................................... | ad. No. 110, 2000 |
| | rs. No. 158, 2006 |
| **Division 1** | |
| s. 135AL ......................................... | ad. No. 110, 2000 |
| | am. No. 120, 2004 |
| | rs. No. 158, 2006 |
| s. 135AM ........................................ | ad. No. 110, 2000 |
| | rs. No. 158, 2006 |
| s. 135AN......................................... | ad. No. 110, 2000 |
| | am. No. 120, 2004 |
| | rs. No. 158, 2006 |
| s. 135ANA ...................................... | ad. No. 110, 2000 |
| | am. No. 120, 2004 |
| | rep. No. 158, 2006 |
| **Division 2** | |
| **Subdivision A** | |
| s. 135AOA ...................................... | ad. No. 158, 2006 |

*Copyright Act 1968*                                        *633*

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| **Subdivision B** | |
| s. 135AOB ...................................... | ad. No. 158, 2006 |
| **Subdivision C** | |
| ss. 135AOC, 135AOD ................... | ad. No. 158, 2006 |
| **Subdivision D** | |
| s. 135AOE, 135AOF ..................... | ad. No. 158, 2006 |
| **Subdivision E** | |
| ss. 135AP–135AR ......................... | ad. No. 110, 2000 |
| | rs. No. 158, 2006 |
| s. 135ARA ..................................... | ad. No. 34, 2003 |
| | rep. No. 158, 2006 |
| s 135AS.......................................... | ad No 110, 2000 |
| | am No 120, 2004; No 154, 2004 |
| | rs No 158, 2006 |
| | am No 13, 2013; No 13, 2021 |
| **Division 3** | |
| **Subdivision A** | |
| ss. 135ASA–35ASJ ........................ | ad. No. 158, 2006 |
| **Subdivision B** | |
| s. 135ATA ...................................... | ad. No. 158, 2006 |
| s. 135AT ........................................ | ad. No. 110, 2000 |
| | rep. No. 158, 2006 |
| **Subdivision C** | |
| s. 135AU ........................................ | ad. No. 110, 2000 |
| | rs. No. 158, 2006 |
| Part VA heading ............................. | rs No 104, 1998; No 110, 2000 |
| | rep No 49, 2017 |
| Part VA ........................................... | ad No 32, 1989 (as am by No 107, 1993) |
| | rep No 49, 2017 |
| s 135A............................................. | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998; No 110, 2000; No 120, 2004 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 4—Amendment history

| Provision affected | How affected |
| --- | --- |
| | rep No 49, 2017 |
| s 135B ............................................. | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998; No 110, 2000 |
| | rep No 49, 2017 |
| s 135C ............................................. | ad No 32, 1989 (as am by No 107, 1993) |
| | rep No 104, 1998 |
| | ad No 158, 2006 |
| | am No 28, 2007 |
| | rep No 49, 2017 |
| s 135D............................................. | ad No 32, 1989 (as am by No 107, 1993) |
| | rep No 49, 2017 |
| Division 2 heading.......................... | rs No 104, 1998; No 110, 2000 |
| | rep No 49, 2017 |
| s 135E ............................................. | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998; No 110, 2000; No 120, 2004 |
| | rep No 49, 2017 |
| s 135F ............................................. | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998; No 110, 2000; No 120, 2004 |
| | rep No 49, 2017 |
| s 135G............................................. | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998; No 110, 2000 |
| | rep No 49, 2017 |
| s 135H............................................. | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998; No 110, 2000; No 120, 2004 |
| | rep No 49, 2017 |
| s 135J.............................................. | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998; No 110, 2000; No 120, 2004; No 158, 2006 |
| | rep No 49, 2017 |
| s 135JAA ........................................ | ad No 158, 2006 |
| | rep No 49, 2017 |
| s 135JA ........................................... | ad No 110, 2000 |

*Copyright Act 1968*    *635*

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 4—Amendment history

| Provision affected | How affected |
| --- | --- |
| | am No 120, 2004 |
| | rep No 49, 2017 |
| s 135K.................................... | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998; No 110, 2000; No 158, 2006 |
| | rep No 49, 2017 |
| s 135KA.................................. | ad No 110, 2000 |
| | am No 120, 2004 |
| | rep No 49, 2017 |
| s 135L.................................... | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998; No 110, 2000; No 158, 2006; No 4, 2016 |
| | rep No 49, 2017 |
| s 135M.................................... | ad No 32, 1989 (as am by No 107, 1993) |
| | rep No 49, 2017 |
| s 135N.................................... | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998; No 110, 2000 |
| | rep No 49, 2017 |
| s 135P.................................... | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998; No 110, 2000; No 120, 2004; No 158, 2006 |
| | rep No 49, 2017 |
| s 135Q.................................... | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 120, 2004; No 158, 2006 |
| | rep No 49, 2017 |
| s 135R.................................... | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 158, 2006 |
| | rep No 49, 2017 |
| s 135S.................................... | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 158, 2006 |
| | rep No 49, 2017 |
| s 135SA.................................. | ad No 158, 2006 |
| | rep No 49, 2017 |
| s 135T.................................... | ad No 32, 1989 (as am by No 107, 1993) |

*Copyright Act 1968*

Compilation No. 64                     Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| | rep No 49, 2017 |
| s 135U.............................. | ad No 32, 1989 (as am by No. 107, 1993) |
| | am No 104, 1998; No 110, 2000 |
| | rep No 49, 2017 |
| s 135V.............................. | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998; No 110, 2000 |
| | rep No 49, 2017 |
| s 135W............................. | ad No 32, 1989 (as am by No 107, 1993) |
| | ad No 104, 1998; No 110, 2000 |
| | rep No 49, 2017 |
| s 135X.............................. | ad No 32, 1989 (as am by No 107, 1993) |
| | rep No 49, 2017 |
| s 135Y.............................. | ad No 32, 1989 (as am by No 107, 1993) |
| | rep No 49, 2017 |
| s 135Z .............................. | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998 |
| | rs No 110, 2000 |
| | am No 120, 2004 |
| | rep No 49, 2017 |
| s 135ZA ........................... | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998; No 110, 2000 |
| | rep No 49, 2017 |
| Part VB heading............................ | rs No 110, 2000 |
| | rep No 49, 2017 |
| Part VB ........................... | ad. No. 32, 1989 (as am. by No. 107, 1993) |
| | rep No 49, 2017 |
| s 135ZB........................... | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998; No 110, 2000; No 120, 2004 |
| | rep No 49, 2017 |
| s 135ZC........................... | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998 |

*Copyright Act 1968*                                                    *637*

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| | rep No 49, 2017 |
| s 135ZD ........................................... | ad No 32, 1989 (as am by No 107, 1993) |
| | rep No 104, 1998 |
| s 135ZE........................................... | ad. No. 32, 1989 (as am. by No. 107, 1993) |
| | rep No 49, 2017 |
| s 135ZF ........................................... | ad No 32, 1989 (as am by No 107, 1993) |
| | rep No 49, 2017 |
| s 135ZFA ....................................... | ad No 110, 2000 |
| | rep No 49, 2017 |
| Division 2 heading........................... | rs No 110, 2000 |
| | rep No 49, 2017 |
| s 135ZGA ....................................... | ad No 110, 2000 |
| | rep No 49, 2017 |
| s 135ZG ........................................... | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 110, 2000 |
| | rep No 49, 2017 |
| s 135ZH ........................................... | ad No 32, 1989 (as am by No 107, 1993) |
| | rs No 110, 2000 |
| | rep No 49, 2017 |
| s 135ZJ........................................... | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 110, 2000 |
| | rep No 49, 2017 |
| s 135ZK ........................................... | ad No 32, 1989 (as am by No 107, 1993) |
| | rs No 110, 2000 |
| | rep No 49, 2017 |
| s 135ZL........................................... | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 110, 2000 |
| | rep No 49, 2017 |
| s 135ZM........................................... | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998; No 110, 2000 |
| | rep No 49, 2017 |

*Copyright Act 1968*

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 4—Amendment history

| Provision affected | How affected |
| --- | --- |
| Division 2A........................................ | ad No 110, 2000 |
|  | rep No 49, 2017 |
| s 135ZMA......................................... | ad No 110, 2000 |
|  | rep No 49, 2017 |
| s 135ZMB......................................... | ad No 110, 2000 |
|  | am No 158, 2006 |
|  | rep No 49, 2017 |
| s 135ZMC......................................... | ad No 110, 2000 |
|  | rep No 49, 2017 |
| s 135ZMD......................................... | ad No 110, 2000 |
|  | rep No 49, 2017 |
| s 135ZMDA....................................... | ad No 158, 2006 |
|  | rep No 49, 2017 |
| s 135ZME.......................................... | ad No 110, 2000 |
|  | rep No 49, 2017 |
| Division 3 heading............................ | rs No 104, 1998; No 110, 2000 |
|  | rep No 49, 2017 |
| s 135ZN ............................................ | ad No 32, 1989 (as am by No 107, 1993) |
|  | am No 104, 1998 |
|  | rs No 110, 2000 |
|  | rep No 49, 2017 |
| s 135ZP............................................. | ad No 32, 1989 (as am by No 107, 1993) |
|  | am No 104, 1998; No 110, 2000 |
|  | rep No 49, 2017 |
| s 135ZQ ............................................ | ad No 32, 1989 (as am by No 107, 1993) |
|  | am No 104, 1998; No 110, 2000 |
|  | rep No 49, 2017 |
| Division 4 heading............................ | rs No 104, 1998; No 110, 2000 |
|  | rep No 49, 2017 |
| s 135ZR............................................. | ad No 32, 1989 (as am by No 107, 1993) |
|  | am No 104, 1998 |

*Copyright Act 1968*                                                              *639*

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 4—Amendment history

| Provision affected | How affected |
| --- | --- |
| | rs No 110, 2000 |
| | rep No 49, 2017 |
| s 135ZS .......................................... | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998; No 110, 2000 |
| | rep No 49, 2017 |
| s 135ZT .......................................... | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998; No 110, 2000 |
| | rep No 49, 2017 |
| s 135ZU .......................................... | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 110, 2000 |
| | rep No 49, 2017 |
| s 135ZV .......................................... | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998; No 158, 2006 |
| | rep No 49, 2017 |
| s 135ZW .......................................... | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998; No 110, 2000; No 158, 2006 |
| | rep No 49, 2017 |
| s 135ZWAA.................................... | ad No 158, 2006 |
| | rep No 49, 2017 |
| s 135ZWA...................................... | ad No 110, 2000 |
| | rep No 49, 2017 |
| s 135ZX .......................................... | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 110, 2000; No 158, 2006 |
| | rep No 49, 2017 |
| s 135ZXA ....................................... | ad No 110, 2000 |
| | rep No 49, 2017 |
| s 135ZY .......................................... | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 110, 2000; No 158, 2006; No 4, 2016 |
| | rep No 49, 2017 |
| s 135ZZ.......................................... | ad No 32, 1989 (as am by No 107, 1993) |
| | rep No 49, 2017 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| s 135ZZA ................................. | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998; No 110, 2000 |
| | rep No 49, 2017 |
| s 135ZZB ................................. | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998; No 110, 2000; No 158, 2006 |
| | rep No 49, 2017 |
| s 135ZZC ................................. | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 158, 2006 |
| | rep No 49, 2017 |
| s 135ZZD ................................. | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 158, 2006 |
| | rep No 49, 2017 |
| s 135ZZE ................................. | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 158, 2006 |
| | rep No 49, 2017 |
| s 135ZZEA ................................. | ad No 158, 2006 |
| | rep No 49, 2017 |
| s 135ZZF ................................. | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998; No 110, 2000 |
| | rep No 49, 2017 |
| s 135ZZG ................................. | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998; No 110, 2000 |
| | rep No 49, 2017 |
| s 135ZZH ................................. | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 110, 2000 |
| | rep No 49, 2017 |
| **Part VC** | |
| Part VC ................................. | ad. No. 32, 1989 (as rep. by No. 107, 1993); No. 110, 2000 |
| **Division 1** | |
| s 135ZZI ................................. | ad No 110, 2000 |
| | am No 120, 2004; No 158, 2006; No 49, 2017 |

*Copyright Act 1968*                                               *641*

Compilation No. 64                                    Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| s. 135ZZJ ..................................... | ad. No. 32, 1989 (as rep. by No. 107, 1993); No. 110, 2000 |
| s. 135ZZJA ................................... | ad. No. 110, 2000 |
| | am. Nos. 8 and 94, 2010; No. 36, 2011 |
| **Division 2** | |
| ss. 135ZZK–135ZZN..................... | ad. No. 32, 1989 (as rep. by No. 107, 1993); No. 110, 2000 |
| s 135ZZP......................................... | ad. No. 32, 1989 (as rep. by No. 107, 1993); No. 110, 2000 |
| | am No 4, 2016 |
| s 135ZZQ........................................ | ad No 32, 1989 (as rep by No 107, 1993); No 110, 2000 |
| | am No 4, 2016; No 74, 2023 |
| s 135ZZR ....................................... | ad. No. 32, 1989 (as rep. by No. 107, 1993); No. 110, 2000 |
| s 135ZZS......................................... | ad. No. 32, 1989 (as rep. by No. 107, 1993); No. 110, 2000 |
| **Division 3** | |
| ss. 135ZZT–135ZZW ..................... | ad. No. 32, 1989 (as rep. by No. 107, 1993); No. 110, 2000 |
| | am. No. 158, 2006 |
| s. 135ZZWA .................................. | ad. No. 158, 2006 |
| **Division 4** | |
| s 135ZZX........................................ | ad No 32, 1989 (as rep by No 107, 1993); No 110, 2000 |
| | am No 49, 2017 |
| s 135ZZY ....................................... | ad No 32, 1989 (as rep by No 107, 1993); No 110, 2000 |
| s 135ZZZ ....................................... | ad No 32, 1989 (as rep by No 107, 1993); No 110, 2000 |
| ss. 135ZZZA, 135ZZZB................. | ad. No. 32, 1989 (as rep. by No. 107, 1993); No. 110, 2000 |
| **Division 5** | |
| ss. 135ZZZC–135ZZZE ................. | ad. No. 110, 2000 |
| **Part VD** | |
| Part VD............................................ | ad. No. 94, 2010 |
| **Division 1** | |
| s 135ZZZF ...................................... | ad No 94, 2010 |
| | am No 49, 2017 |
| s 135ZZZG ..................................... | ad No 94, 2010 |
| s 135ZZZH ..................................... | ad No 94, 2010 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 4—Amendment history

| Provision affected | How affected |
| --- | --- |
| **Division 2** | |
| ss. 135ZZZI–135ZZZN ................. | ad. No. 94, 2010 |
| **Division 3** | |
| ss. 135ZZZO–135ZZZS ................. | ad. No. 94, 2010 |
| **Division 4** | |
| ss. 135ZZZT–135ZZZX ................. | ad. No. 94, 2010 |
| **Division 5** | |
| ss. 135ZZZY, 135ZZZZ ................. | ad. No. 94, 2010 |
| s. 135ZZZZA ................................. | ad. No. 94, 2010 |
| **Part VI** | |
| Part VI heading............................... | rs No 158, 2006 |
| **Division 1** | |
| s. 136................................................ | am. No. 154, 1980; No. 26, 1982; No. 78, 1986; No. 104, 1998; No. 110, 2000; No. 158, 2006 |
| **Division 2** | |
| s. 138................................................ | am. No. 154, 1980 |
| | rs. No. 26, 1982 |
| | am. No. 104, 1998; No. 158, 2006 |
| s. 140................................................ | am. No. 216, 1973; No. 154, 1980 |
| | rs. No. 26, 1982 |
| | am. No. 141, 1994; No. 104, 1998 |
| s. 141................................................ | am. No. 154, 1980; No. 26, 1982; No. 141, 1994; No. 104, 1998 |
| s. 141A............................................ | ad. No. 104, 1998 |
| s. 142................................................ | am. No. 26, 1982; No. 141, 1994 |
| | rs. No. 104, 1998 |
| s. 143................................................ | rs. No. 26, 1982 |
| | am. No. 141, 1994 |
| s 144................................................ | am No 141, 1994; No 154, 2020 |
| s. 144A............................................ | ad. No. 154, 1980 |
| | am. No. 141, 1994; No. 136, 2012 |
| s. 144B............................................ | ad. No. 154, 1980 |

*Copyright Act 1968*                643

Compilation No. 64                Compilation date: 11/12/2024

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
|  | am. No. 26, 1982; No. 141, 1994 |
| s. 145................................................. | rs. No. 141, 1994 |
| s. 146................................................. | am. No. 154, 1980; No. 26, 1982; No. 141, 1994; No. 104, 1998 |
| s. 147................................................. | am. No. 154, 1980; No. 26, 1982 |
| **Division 3** |  |
| Division 3 heading........................... | rs. No. 104, 1998 |
| Subdivision A heading.................... | ad No 158, 2006 |
|  | rep No 49, 2017 |
| Subdivision A .................................. | rep No 49, 2017 |
| s 148................................................. | am No 154, 1980 |
|  | rep No 32, 1989 (as am by No 107, 1993) |
|  | ad No 104, 1998 |
|  | rep No 49, 2017 |
| **Subdivision B** |  |
| Subdivision B heading.................... | ad. No. 158, 2006 |
| s. 149................................................. | am. No. 154, 1980 |
| s 149A.............................................. | ad No 154, 1980 |
|  | rs 78, 1986 |
|  | am No 32, 1989 (as am by No 107, 1993); No 104, 1998 |
|  | rep No 49, 2017 |
| ss. 150, 151 ..................................... | am. No. 154, 1980 |
| s. 152................................................. | am. No. 216, 1973; No. 160, 1977; No. 154, 1980; No. 7, 1983; No. 67, 1985; No. 78, 1986; No. 146, 1988; No. 180, 1991; No. 141, 1994; No. 104, 1998; No. 110, 2000; No. 45, 2005; No 33, 2016 |
| ss. 152A, 152B................................. | ad. No. 32, 1989 (as am. by No. 107, 1993) |
| s. 153................................................. | am. No. 154, 1980 |
| **Subdivision C** |  |
| Subdivision C heading.................... | ad No 158, 2006 |
|  | rs No 49, 2017 |
| Subdivision C .................................. | rs No 49, 2017 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| s 153A ............................................. | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998; No 110, 2000 |
| | rs No 49, 2017 |
| s 153B ............................................. | ad No 32, 1989 (as am by No 107, 1993) |
| | rep No 49, 2017 |
| s 153BAAA ..................................... | ad No 158, 2006 |
| | rep No 49, 2017 |
| s 153BA ........................................... | ad No 110, 2000 |
| | rep No 49, 2017 |
| s 153BAA ......................................... | ad No 158, 2006 |
| | rep No 49, 2017 |
| s 153BAB ......................................... | ad No 158, 2006 |
| | rep No 49, 2017 |
| s 153BAC ......................................... | ad No 158, 2006 |
| | rep No 49, 2017 |
| s 153BAD ......................................... | ad No 158, 2006 |
| | rep No 49, 2017 |
| Subdivision D heading.................... | ad No 158, 2006 |
| | rep No 49, 2017 |
| s 153BB ........................................... | ad No 110, 2000 |
| | rep No 49, 2017 |
| s 153C ............................................. | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998; No 110, 2000; No 34, 2003 |
| | rep No 49, 2017 |
| s 153D............................................. | ad No 32, 1989 (as am by No 107, 1993) |
| | rep No 49, 2017 |
| s 153DAA ......................................... | ad No 158, 2006 |
| | rep No 49, 2017 |
| s 153DA........................................... | ad No 110, 2000 |
| | rep No 49, 2017 |
| s 153DB ........................................... | ad No 158, 2006 |

*Copyright Act 1968*                                                   645

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 4—Amendment history

| Provision affected | How affected |
| --- | --- |
| | rep No 49, 2017 |
| s 153DC ........................................... | ad No 158, 2006 |
| | rep No 49, 2017 |
| s 153DD........................................... | ad No 158, 2006 |
| | rep No 49, 2017 |
| s 153DE ........................................... | ad No 158, 2006 |
| | rep No 49, 2017 |
| **Subdivision E** | |
| Subdivision E heading .................... | ad. No. 158, 2006 |
| s 153DF........................................... | ad No 49, 2017 |
| s. 153E ............................................. | ad. No. 32, 1989 (as rep. by No. 107, 1993); No. 104, 1998 |
| ss. 153F, 153G ................................ | ad. No. 104, 1998 |
| | am. No. 158, 2006 |
| s. 153H............................................. | ad. No. 104, 1998 |
| s. 153J ............................................. | ad. No. 104, 1998 |
| | am. No. 158, 2006 |
| s. 153K............................................. | ad. No. 104, 1998 |
| s. 153KA.......................................... | ad. No. 158, 2006 |
| Subdivision F heading .................... | ad No 158, 2006 |
| | rep No 49, 2017 |
| Subdivision F .................................. | rep No 49, 2017 |
| s 153L .............................................. | ad No 104, 1998 |
| | rep No 49, 2017 |
| **Subdivision G** | |
| Subdivision G heading.................... | ad. No. 158, 2006 |
| s. 153M ........................................... | ad. No. 110, 2000 |
| | am. No. 158, 2006 |
| s. 153N............................................. | ad. No. 110, 2000 |
| ss. 153P–153R ................................ | ad. No. 158, 2006 |
| **Subdivision GA** | |
| Subdivision GA ............................... | ad. No. 94, 2010 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| s. 153RA .................................... | ad. No. 94, 2010 |
| ss. 153S–153W ............................... | ad. No. 94, 2010 |
| **Subdivision H** | |
| Subdivision H heading.................... | ad. No. 158, 2006 |
| s. 154.................................... | am. No. 141, 1994; No. 158, 2006 |
| ss. 155, 156 ...................................... | am. No. 154, 1980; No. 141, 1994; No. 158, 2006 |
| s. 157.................................... | am. No. 154, 1980; No. 141, 1994; No. 158, 2006 |
| ss. 157A, 157B.............................. | ad. No. 158, 2006 |
| s. 158.................................... | am. No. 154, 1980; No. 141, 1994 |
| s. 159.................................... | am. No. 154, 1980; No. 141, 1994; No. 158, 2006 |
| ss. 159A, 159B.............................. | ad. No. 154, 1980 |
| | am. No. 91, 1983 |
| | rep. No. 32, 1989 (as am. by No. 107, 1993) |
| **Subdivision I** | |
| Subdivision I heading .................... | ad. No. 158, 2006 |
| s. 161.................................... | am. No. 19, 1979; No. 154, 1980; No. 104, 1998 |
| **Division 4** | |
| s. 163A.................................... | ad. No. 154, 1980 |
| | am. No. 141, 1994 |
| s. 166.................................... | am. No. 19, 1979; No. 154, 1980; No. 104, 1998 |
| s. 167.................................... | am. No. 104, 1998; No. 158, 2006 |
| s. 168.................................... | am. No. 158, 2006 |
| s. 169.................................... | am. No. 216, 1973 |
| **Division 4A** | |
| Division 4A.................................... | ad. No. 158, 2006 |
| s. 169A.................................... | ad No. 158, 2006 |
| s. 169B.................................... | ad No. 158, 2006 |
| | am No 24, 2016 |
| s. 169C.................................... | ad. No. 158, 2006 |
| s. 169D.................................... | ad No. 158, 2006 |
| s. 169E.................................... | ad No. 158, 2006 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| s. 169F .................................. | ad No. 158, 2006 |
| s. 169G .................................. | ad No. 158, 2006 |
| **Division 5** | |
| s. 170.................................... | am. No. 146, 1999 |
| | rs. No. 158, 2006 |
| | am. No. 46, 2011 |
| s. 170A.................................. | ad. No. 158, 2006 |
| s. 171.................................... | am. No. 141, 1994; No. 158, 2006 |
| s. 172.................................... | am. No. 154, 1980; No. 141, 1994; No. 24, 2001 |
| | rs. No. 158, 2006 |
| s. 173.................................... | am. No. 154, 1980; No. 141, 1994 |
| | rs. No. 158, 2006 |
| s. 174.................................... | am. No. 154, 1980; No. 78, 1986; No. 104, 1998; No. 158, 2006 |
| s. 175.................................... | am. No. 158, 2006 |
| **Part VII** | |
| Division 1 heading........................... | ad. No. 104, 1998 |
| **Division 1** | |
| s 180..................................... | am No 154, 1980 |
| | rs No 49, 2017 |
| s 181..................................... | am No 154, 1980 |
| | rep No 49, 2017 |
| s. 182A.................................. | ad. No. 154, 1980 |
| | am. No. 141, 1994 |
| **Division 2** | |
| Division 2 ....................... | ad. No. 104, 1998 |
| s 182B ........................... | ad No 104, 1998 |
| | am No 13, 2017; No 154, 2020 |
| s 182C ........................... | ad No 104, 1998 |
| s 183.................................... | am No 19, 1979; No 154, 1980; No 32, 1989 (as am by No 107, 1993); No 141, 1994; No 110, 2000; No 13, 2017; No 49, 2017 |
| s 183A.................................. | ad. No. 104, 1998 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 4—Amendment history

| Provision affected | How affected |
| --- | --- |
| s 183B ............................................ | ad No 104, 1998 |
| s 183C ............................................ | ad No 104, 1998 |
| s 183D ............................................ | ad No 104, 1998 |
| | am No 49, 2017 |
| s 183E ............................................ | ad No 104, 1998 |
| | am No 49, 2017 |
| s. 183F ............................................ | ad. No. 158, 2006 |
| **Part VIII** | |
| **Division 1** | |
| Division 1 heading............................ | ad No 49, 2017 |
| s 184................................................ | am No 160, 1977; No 154, 1980; No 7, 1983; No 78, 1986; No 146, 1988; No 32, 1989 (as am by No 107, 1993); No 180, 1991; No 104, 1998; No 110, 2000; No 45, 2005; No 73, 2008; No 49, 2017 |
| s 185................................................ | am No 154, 1980; No 49, 2017 |
| **Division 2** | |
| Division 2 heading............................ | ad No 49, 2017 |
| s 186................................................ | am No 154, 1980; No 49, 2017 |
| s 187................................................ | am No 154, 1980; No 120, 2004; No 49, 2017 |
| s 188................................................ | am No 154, 1980; No 120, 2004; No 49, 2017 |
| s 188A ............................................ | ad No 49, 2017 |
| **Part IX** | |
| Part IX heading............................... | rs. No. 120, 2004 |
| Part IX ............................................ | rs. No. 159, 2000 |
| **Division 1** | |
| s 189................................................ | rs No 159, 2000 |
| | am No. 159, 2000; No 120, 2004 |
| | ed C62 |
| s. 190................................................ | rs. No. 159, 2000 |
| s. 191................................................ | am. No. 141, 1994 |
| | rs. No. 159, 2000 |

*Copyright Act 1968*                                                                     *649*

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| ss. 191A, 191B.............................. | ad. No. 120, 2004 |
| s. 192.............................................. | am. No. 141, 1994 |
| | rs. No. 159, 2000 |
| | am. No. 120, 2004 |
| **Division 2** | |
| s. 193............................................. | rs. No. 159, 2000 |
| s. 194............................................. | am. No. 154, 1980; No. 141, 1994 |
| | rs. No. 159, 2000 |
| | am. No. 159, 2000 |
| s. 195............................................. | rs. No. 159, 2000 |
| s. 195AA ........................................ | ad. No. 32, 1989 (as am. by No. 107, 1993) |
| | rs. No. 159, 2000 |
| s. 195AB ........................................ | ad. No. 159, 2000 |
| **Division 2A** | |
| Division 2A..................................... | ad No 120, 2004 |
| ss. 195ABA–195ABE.................... | ad. No. 120, 2004 |
| **Division 3** | |
| s. 195AC ........................................ | ad. No. 159, 2000 |
| ss. 195AD–195AF ......................... | ad. No. 159, 2000 |
| | am. No. 159, 2000 |
| ss. 195AG, 195AH......................... | ad. No. 159, 2000 |
| **Division 3A** | |
| Division 3A..................................... | ad No 120, 2004 |
| ss. 195AHA–195AHC.................... | ad. No. 120, 2004 |
| **Division 4** | |
| ss. 195AI–195AL............................ | ad. No. 159, 2000 |
| **Division 4A** | |
| Division 4A..................................... | ad. No. 120, 2004 |
| ss. 195ALA, 195ALB..................... | ad. No. 120, 2004 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| **Division 5** | |
| **Subdivision A** | |
| Subdivision A heading.................... | ad No 120, 2004 |
| s 195AM ......................................... | ad No 159, 2000 |
| | am No 120, 2004 |
| s 195AN.......................................... | ad No 159, 2000 |
| | am No 120, 2004 |
| **Subdivision B** | |
| Subdivision B ................................. | ad No 120, 2004 |
| ss. 195ANA, 195ANB.................... | ad No 120, 2004 |
| **Division 6** | |
| **Subdivision A** | |
| Subdivision A heading.................... | ad No 120, 2004 |
| ss. 195AO, 195AP ......................... | ad No 159, 2000 |
| | am. No. 120, 2004 |
| s. 195AQ......................................... | ad. No. 159, 2000 |
| | am. No. 159, 2000; No. 120, 2004 |
| ss. 195AR–195AV........................... | ad. No. 159, 2000 |
| ss. 195AVA, 195AVB .................... | ad. No. 159, 2000 |
| | am. No. 120, 2004 |
| s. 195AW ........................................ | ad. No. 159, 2000 |
| ss. 195AWA, 195AWB ................. | ad. No. 159, 2000 |
| s. 195AX......................................... | ad. No. 159, 2000 |
| **Subdivision B** | |
| Subdivision B ................................. | ad No 120, 2004 |
| ss. 195AXA–195AXL .................... | ad. No. 120, 2004 |
| **Division 7** | |
| **Subdivision A** | |
| Subdivision A heading.................... | ad No 120, 2004 |
| s. 195AY ......................................... | ad. No. 159, 2000 |
| | am. No. 120, 2004 |

*Copyright Act 1968*                                                                 *651*

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| Heading to s. 195AZ........................ | am. No. 120, 2004 |
| s. 195AZ .......................................... | ad. No. 159, 2000 |
| Heading to s. 195AZA.................... | am. No. 120, 2004 |
| s. 195AZA ...................................... | ad. No. 159, 2000 |
| s. 195AZB........................................ | ad. No. 159, 2000 |
| | rep. No. 120, 2004 |
| s. 195AZC........................................ | ad. No. 159, 2000 |
| | am. No. 34, 2003 |
| | rep. No. 120, 2004 |
| s. 195AZD ...................................... | ad. No. 159, 2000 |
| Heading to s. 195AZE ................... | am. No. 120, 2004 |
| ss. 195AZE–195AZG .................... | ad. No. 159, 2000 |
| **Subdivision B** | |
| Subdivision B ................................. | ad No 120, 2004 |
| ss. 195AZGA–195AZGF............... | ad. No. 120, 2004 |
| **Subdivision C** | |
| Subdivision C ................................. | ad. No. 120, 2004 |
| s. 195AZGG.................................... | ad. No. 120, 2004 |
| s 195AZGH...................................... | ad No 120, 2004 |
| | am No 13, 2013; No 13, 2021 |
| **Division 8** | |
| **Subdivision A** | |
| Subdivision A heading.................... | ad. No. 120, 2004 |
| ss. 195AZH–195AZO..................... | ad. No. 159, 2000 |
| **Subdivision B** | |
| Subdivision B ................................. | ad. No. 120, 2004 |
| ss. 195AZP–195AZR....................... | ad. No. 120, 2004 |
| **Part X** | |
| **Division 1** | |
| Division 1 heading........................... | ad No 113, 2015 |
| s 195A.............................................. | ad No 154, 1980 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| | am No 165, 1984; No 78, 1986; No 32, 1989 (as am by No 107, 1993); No 104, 1998; No 158, 2006; No 49, 2017 |
| **Division 2** | |
| Division 2 heading............................ | ad No 113, 2015 |
| s 195B .............................................. | ad No 32, 1989 (as rep by No 107, 1993); No 107, 1993 |
| | am No 149, 1994; No 104, 1998; No 158, 2006; No 94, 2010; No 35, 2012; No 41, 2015; No 49, 2017; No 38, 2024 |
| **Division 3** | |
| Division 3 ......................................... | ad No 113, 2015 |
| s 195CA ........................................... | ad No 113, 2015 |
| s 195CB ........................................... | ad No 113, 2015 |
| s 195CC ........................................... | ad No 113, 2015 |
| s 195CD ........................................... | ad No 113, 2015 |
| s 195CE............................................ | ad No 113, 2015 |
| s 195CF............................................ | ad No 113, 2015 |
| s 195CG ........................................... | ad No 113, 2015 |
| s 195CH ........................................... | ad No 113, 2015 |
| s 195CI............................................. | ad No 113, 2015 |
| s 195CJ ............................................ | ad No 113, 2015 |
| **Division 4** | |
| Division 4 heading............................ | ad No 113, 2015 |
| ss. 197, 198 ...................................... | am. No. 141, 1994 |
| s. 198A ............................................ | ad. No. 34, 2003 |
| | am. No. 34, 2003 |
| | rep No 77, 2018 |
| s. 199................................................ | am. No. 160, 1977; No. 154, 1980; No. 7, 1983; No. 78, 1986; No. 146, 1988; No. 180, 1991; No. 141, 1994; No. 104, 1998; No. 110, 2000; No. 45, 2005 |
| s 200................................................ | am No 154, 1980; No 32, 1989 (as am by No 107, 1993); No 49, 2017 |
| s. 200AAA ....................................... | ad. No. 158, 2006 |
| | am. No. 8, 2010 |

*Copyright Act 1968*                    *653*

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| s 200AA | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 104, 1998 |
| | rep No 49, 2017 |
| s 200AB | ad No 158, 2006 |
| | am No 49, 2017 |
| s. 200A | ad. No 78, 1986 |
| | rep. No. 32, 1989 (as am. by No. 107, 1993) |
| s. 201 | am. No. 216, 1973; No. 154, 1980; No. 141, 1994 |
| | rep No 113, 2015 |
| s. 202 | am. No. 216, 1973; No. 141, 1994; No. 104, 1998; No. 158, 2006 |
| s. 202A | ad. No. 158, 2006 |
| s 203A | ad No 154, 1980 |
| | am No 91, 1983; No 165, 1984; No 78, 1986; No 32, 1989 (as am by No 107, 1993) |
| | rs No 158, 2006 |
| | am No 49, 2017 |
| ss. 203B, 203C | ad. No. 154, 1980 |
| | am. No. 165, 1984; No. 78, 1986 |
| | rep. No. 32, 1989 (as am. by No. 107, 1993) |
| s 203D | ad No 154, 1980 |
| | am No 165, 1984; No 78, 1986; No 32, 1989 (as am by No 107, 1993) |
| | rs No 158, 2006 |
| | rep No 49, 2017 |
| s 203E | ad No 154, 1980 |
| | am No 165, 1984; No 78, 1986; No 32, 1989 (as am by No 107, 1993); No 141, 1994; No 24, 2001; No 158, 2006; No 49, 2017 |
| s 203F | ad No 154, 1980 |
| | am No 91, 1983; No 165, 1984; No 78, 1986; No 32, 1989 (as am by No 107, 1993); No 24, 2001 |
| | rs No 158, 2006 |
| | am No 49, 2017 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| s 203G | ad No 154, 1980 |
|  | am No 165, 1984; No 78, 1986 |
|  | rep No 32, 1989 (as am by No 107, 1993) |
|  | ad No 110, 2000 |
|  | rs No 158, 2006 |
|  | am No 49, 2017 |
| s 203H | ad No 154, 1980 |
|  | am No 165, 1984; No 78, 1986; No 32, 1989 (as am by No 107, 1993); No 110, 2000; No 158, 2006; No 49, 2017 |
| **Part XI** |  |
| **Division 1** |  |
| s. 204 | am. No. 154, 1980 |
| s. 206 | am. No. 216, 1973; No. 61, 1981 |
| s. 208 | am. No. 120, 2004 |
| s. 209 | am. No. 154, 1980 |
| **Division 2** |  |
| s. 210 | am. No. 154, 1980 |
| s 211 | am No 154, 1980; No 141, 1994; No 115, 2024 |
| s. 212 | am. No. 154, 1980 |
|  | rep. No. 120, 2004 |
| s. 213 | am. No. 154, 1980; No. 141, 1994 |
| ss. 214–216 | am. No. 154, 1980 |
| s. 217 | am. No. 216, 1973; No. 154, 1980 |
| s. 219 | am. No. 154, 1980; No. 141, 1994 |
| **Division 3** |  |
| s 220 | am No 154, 1980; No 120, 2004; No 115, 2024 |
| ss. 221–225 | am. No. 154, 1980 |
| **Division 4** |  |
| ss. 226, 227 | am. No. 154, 1980 |
| s. 229 | am. No. 154, 1980 |
| s 232 | am. No. 154, 1980 |

*Copyright Act 1968*    *655*

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| s 233................................................ | am No 154, 1980 |
| | rep No 49, 2017 |
| s 234................................................ | am No 154, 1980 |
| | rep No 49, 2017 |
| s 235................................................ | am No 154, 1980 |
| | rs No 49, 2017 |
| s 236................................................ | am No 154, 1980 |
| s 237................................................ | am No 154, 1980 |
| s. 238................................................ | am. No. 154, 1980 |
| | rep. No. 159, 2000 |
| s. 239................................................ | am. No. 154, 1980; No. 141, 1994 |
| s 240................................................ | am No 154, 1980 |
| s 241................................................ | am No 154, 1980 |
| | rep No 113, 2015 |
| **Division 5** | |
| ss. 244, 245 ..................................... | am. No. 154, 1980 |
| s. 246................................................ | am. No. 110, 2000 |
| s. 248................................................ | am. No. 154, 1980; No. 141, 1994 |
| **Part XIA** | |
| Part XIA............................................ | ad. No. 32, 1989 (as am. by No. 107, 1993) |
| **Division 1** | |
| s 248A.............................................. | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 149, 1994; No 104, 1998; No 110, 2000 (as am by No 63, 2002); No 120, 2004; No 158, 2006; No 21, 2007; No 49, 2017 |
| s. 248B ............................................ | ad. No. 32, 1989 (as am. by No. 107, 1993) |
| | am. No. 120, 2004 |
| s 248C ............................................. | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 120, 2004; No 158, 2006 |
| | am No 49, 2017 |
| s. 248CA .......................................... | ad. No. 149, 1994 |
| | am. No. 158, 2006 |

*Copyright Act 1968*

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| s. 248D........................................... | ad. No. 32, 1989 (as am. by No. 107, 1993) |
| | rs. No. 120, 2004 |
| s. 248E ........................................... | ad. No. 32, 1989 (as am. by No. 107, 1993) |
| | rep. No. 110, 2000 |
| s. 248F ........................................... | ad. No. 32, 1989 (as am. by No. 107, 1993) |
| | am. No. 149, 1994; No. 158, 2006 |
| **Division 2** | |
| s. 248G........................................... | ad. No. 32, 1989 (as am. by No. 107, 1993) |
| | am. No. 149, 1994; No. 110, 2000; No. 120, 2004; No 49, 2017 |
| s. 248H........................................... | ad. No. 32, 1989 (as am. by No. 107, 1993) |
| | am. No. 113, 2008 |
| s. 248J............................................ | ad. No. 32, 1989 (as am. by No. 107, 1993) |
| | am. No. 120, 2004 |
| ss. 248K–248M............................... | ad. No. 32, 1989 (as am. by No. 107, 1993) |
| s 248MA ......................................... | ad No. 34, 2003 |
| | am No. 13, 2013; No 13, 2021 |
| s. 248N........................................... | ad. No. 32, 1989 (as am. by No. 107, 1993) |
| **Division 3** | |
| **Subdivision A** | |
| Subdivision A ................................. | ad. No. 158, 2006 |
| s. 248P ........................................... | ad. No. 32, 1989 (as am. by No. 107, 1993) |
| | am. No. 105, 1998; No. 110, 2000; No. 120, 2004 |
| | rs. No. 158, 2006 |
| s 248PA........................................... | ad. No. 158, 2006 |
| s 248PB........................................... | ad No 158, 2006 |
| s 248PC........................................... | ad No 158, 2006 |
| | am No 49, 2017 |
| s 248PD........................................... | ad No 158, 2006 |
| s 248PE .......................................... | ad No 158, 2006 |
| s 248PF .......................................... | ad No 158, 2006 |
| s 248PG........................................... | ad No 158, 2006 |

Replaced Authorised Version registered 10/02/2025 C2024C00854

**Endnotes**

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| s 248PH.................................... | ad No 158, 2006 |
| s 248PI ..................................... | ad No 158, 2006 |
| s 248PJ..................................... | ad No 158, 2006 |
| s 248PK.................................... | ad No 158, 2006 |
| s 248PL ................................... | ad No 158, 2006 |
| s 248PM................................... | ad No 158, 2006 |
| **Subdivision B** | |
| Subdivision B ................................. | ad. No. 158, 2006 |
| s. 248Q.......................................... | ad. No. 32, 1989 (as am. by No. 107, 1993) |
| | am. No. 149, 1994; No. 105, 1998 |
| | rep. No. 158, 2006 |
| s. 248QA ........................................ | ad. No. 149, 1994 |
| | am. No. 105, 1998 |
| | rs. No. 158, 2006 |
| s. 248QB ........................................ | ad. No. 149, 1994 |
| | rs. No. 105, 1998; No. 158, 2006 |
| ss. 248QC–248QH.......................... | ad. No. 158, 2006 |
| **Subdivision C** | |
| Subdivision C ................................. | ad. No. 158, 2006 |
| s. 248R ........................................... | ad. No. 32, 1989 (as am. by No. 107, 1993) |
| | am. No. 149, 1994 |
| | rep. No. 105, 1998 |
| | ad. No. 158, 2006 |
| s. 248S ........................................... | ad. No. 32, 1989 (as am. by No. 107, 1993) |
| | rs. No. 158, 2006 |
| s. 248SA......................................... | ad. No. 158, 2006 |
| **Subdivision D** | |
| Subdivision D heading.................... | ad. No. 158, 2006 |
| s. 248T ........................................... | ad. No. 32, 1989 (as am. by No. 107, 1993) |
| **Division 4** | |
| s 248U............................................ | ad No 32, 1989 (as am by No 107, 1993) |

Replaced Authorised Version registered 10/02/2025 C2024C00854

Endnote 4—Amendment history

| Provision affected | How affected |
|---|---|
| | am No 120, 2004; No 49, 2017 |
| s 248V................................................ | ad No 32, 1989 (as am by No 107, 1993) |
| | am No 120, 2004; No 49, 2017 |
| **Part XII** | |
| s. 249................................................ | am. No. 154, 1980; No. 158, 2006; No 126, 2015 |
| **The Schedule** | |
| The Schedule ................................. | am No 115, 2024 |

Replaced Authorised Version registered 10/02/2025 C2024C00854