# EXHIBIT 8



————————

*Number* 28 *of* 2000

————————

**COPYRIGHT AND RELATED RIGHTS ACT, 2000**

————————

ARRANGEMENT OF SECTIONS

PART I

Preliminary and General

Section

1. Short title and commencement.

2. Interpretation.

3. Construction of references to rightsowner.

4. Construction of references to copyright.

5. Encrypted broadcasts.

6. Making and protection of broadcasts.

7. Regulations and orders.

8. Laying of regulations and orders.

9. Expenses.

10. Transitional provisions and repeals.

11. Prosecution of offences.

12. Offences by bodies corporate.

13. Offences by members of partnership.

14. Service of notices.

15. Fees.

16. Jurisdiction of Courts.

[*No.* **28.**]     *Copyright and Related Rights Act,*     [2000.]
2000.

PART II

Copyright

Chapter 1

*Subsistence of Copyright*

Section

17.   Copyright and copyright works.

18.   Copyright in literary, dramatic or musical works and original databases.

19.   Copyright in sound recordings.

20.   Exclusion of copyright in retransmission.


Chapter 2

*Authorship and Ownership of Copyright*

21.   Interpretation of author.

22.   Works of joint authorship.

23.   First ownership of copyright.


Chapter 3

*Duration of Copyright*

24.   Duration of copyright in a literary, dramatic, musical or artistic work or an original database.

25.   Duration of copyright in films.

26.   Duration of copyright in sound recordings.

27.   Duration of copyright in broadcasts.

28.   Duration of copyright in cable programmes.

29.   Duration of copyright in typographical arrangements.

30.   Duration of copyright in computer-generated works.

31.   Duration of copyright in works in volumes, parts, etc.

32.   Miscellaneous matters in relation to duration.

33.   Expiry of copyright.

34.   Making available of a work not previously made available.

35.   Calculation of term of copyright.

Section

36.    Non-application of certain provisions on duration to Government copyright, etc.


### Chapter 4

*Rights of Copyright Owner*

37.    Acts restricted by copyright in a work.

38.    Playing of sound recordings — licences of right.

39.    Reproduction right.

40.    Making available right.

41.    Distribution right.

42.    Rental and lending right.

43.    Infringement by adaptation of works.


### Chapter 5

*Secondary Infringement of Copyright*

44.    Interpretation of infringing copy.

45.    Secondary infringement: dealing with infringing copy.

46.    Secondary infringement: providing means for making infringing copies.

47.    Secondary infringement: permitting use of premises for infringing performances.

48.    Secondary infringement: permitting use of apparatus for infringing performances.


### Chapter 6

*Acts Permitted in Relation to Works Protected by Copyright*

49.    Exemptions in respect of copyright works.

50.    Fair dealing: research or private study.

51.    Fair dealing: criticism or review.

52.    Incidental inclusion of copyright material.


*Education*

53.    Acts done for purposes of instruction or examination.

54.    Anthologies for educational use.

55.    Performing, playing or showing work in course of activities of educational establishment.

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Section

56. Recording by educational establishments of broadcasts and cable programmes.

57. Reprographic copying by educational establishments of certain works.

58. Copyright not infringed by lending.

### *Libraries and Archives*

59. Regulations relating to copying by libraries and archives.

60. Libraries and archives: declarations.

61. Copying by librarians or archivists: articles in periodicals.

62. Copying by librarians or archivists: parts of works lawfully made available to public.

63. Multiple copying.

64. Copying by librarians or archivists: supply of copies to other libraries and archives.

65. Copying by librarians or archivists: replacement copies of works.

66. Copying by librarians or archivists for certain purposes.

67. Copying by librarians or archivists: certain works not lawfully made available to public.

68. Copy of work required to be made as condition of export.

69. Copying by librarians or archivists: exemptions.

70. Copying by librarians or archivists: infringing copy.

### *Public Administration*

71. Parliamentary and judicial proceedings.

72. Statutory inquiries.

73. Copying of material in public records.

74. Material open to public inspection or on statutory register.

75. Works communicated to Government or Oireachtas.

76. Acts done under statutory authority.

77. Savings.

### *Designs*

78. Acts done in reliance on registration of design.

79. Exception from protection of copyright in certain works.

[2000.]    *Copyright and Related Rights Act,*    [*No.* **28.**]
2000.

### Computer Programs

Section

80.    Back-up copies of computer programs.

81.    Lawful copies of computer programs.

82.    Exceptions to infringement of copyright in computer programs.

### Original Database

83.    Access to or use of original database.

### Typefaces

84.    Use of typefaces: printing.

85.    Articles for producing materials in particular typefaces.

### Works in Electronic Form

86.    Transfer of copies of work in electronic form.

### Miscellaneous Matters Relating to Copyright

87.    Transient and incidental copies.

88.    Anonymous or pseudonymous works: acts permitted.

89.    Use of notes or recordings of spoken words in certain cases.

90.    Public reading or recitation of works.

91.    Abstracts of scientific or technical articles.

92.    Fixations of performances of works of folklore.

93.    Representation of certain artistic works on public display.

94.    Advertising sale of artistic work.

95.    Making of subsequent works by same artist.

96.    Reconstruction of buildings.

97.    Playing or showing of sound recordings, broadcasts and cable programmes in certain premises.

98.    Playing of sound recordings for clubs, societies, etc.

99.    Copying for purpose of broadcast or cable programme.

100.    Recording for purposes of supervision and control of broadcasts and cable programmes.

101.    Recording for purposes of time-shifting.

[*No.* **28.**]    *Copyright and Related Rights Act,*    [2000.]
2000.

Section

102.    Photographs of television broadcasts or cable programmes.

103.    Reception and retransmission of broadcasts in cable pro-
gramme services.

104.    Provision of modified works.

105.    Recording for archival purposes.

106.    Adaptation of a work.


### Chapter 7

*Copyright: Moral Rights*

107.    Paternity right.

108.    Exceptions to paternity right.

109.    Integrity right.

110.    Exceptions to integrity right.

111.    Qualification of integrity right in certain cases.

112.    Secondary infringement of integrity right: possessing or
dealing.

113.    False attribution of work.

114.    Right to privacy in photographs and films.

115.    Duration of moral rights.

116.    Waiver of rights.

117.    Application of certain provisions to works of joint authorship
and joint ownership.

118.    Moral rights not assignable or alienable.

119.    Transmission of moral rights on death.


### Chapter 8

*Dealings with Rights in Copyright Works*

120.    Assignment and licences.

121.    Prospective ownership of copyright.

122.    Exclusive licences.

123.    Copyright to pass under will with certain original fixations.

124.    Presumption of transfer of rental right in case of film pro-
duction agreement.

Section

125.  Right to equitable remuneration where rental right transferred.

126.  Equitable remuneration: reference of determination of amount to Controller.

### Chapter 9

*Remedies: Copyright Owner*

127.  Infringement actionable by copyright owner.

128.  Award of damages in infringement action.

129.  Action in respect of construction of building.

130.  Undertakings concerning licences of right.

131.  Order for delivery up.

132.  Application to District Court for seizure of infringing copies, articles or devices.

133.  Right of copyright owner to seize infringing copies, articles or devices, etc.

134.  Rights of owner of copyright in respect of infringing copy.

### Chapter 10

*Rights and Remedies: Exclusive Licensee*

135.  Rights and remedies of exclusive licensee.

136.  Exercise of concurrent rights.

### Chapter 11

*Remedies: Moral Rights*

137.  Remedies for infringement of moral rights.

138.  Action in respect of construction of building.

### Chapter 12

*Presumptions*

139.  Presumptions.

### Chapter 13

*Offences: Copyright*

140.  Offences.

141.  False claims of copyright.

142.  Order for delivery up in criminal proceedings.

143.  Search warrants and seizure.

[*No.* 28.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Chapter 14

*Delivery up and Disposal*

Section

144.  Period after which remedy for delivery up is not available.

145.  Order as to disposal of infringing copy, article or device.

146.  Amendment to section 23 of Trade Marks Act, 1996.


Chapter 15

*Provision for Preventing Importation*

147.  Infringing copies, articles or devices may be treated as pro-
        hibited goods.

148.  Power of Revenue Commissioners to make regulations.


Chapter 16

*Copyright Licensing*

149.  Licensing schemes and licensing bodies.


*References and Applications Relating to Licensing Schemes*

150.  General references.

151.  Reference of proposed licensing scheme to Controller.

152.  Reference of licensing scheme to Controller.

153.  Further reference of scheme to Controller.

154.  Application for grant of licence in connection with licensing
        scheme.

155.  Review of orders made by Controller.

156.  Effect of order of Controller as to licensing scheme.


*References and Applications Relating to Licensing by
Licensing Bodies*

157.  General references by licensing bodies.

158.  Reference to Controller of proposed licence.

159.  Reference to Controller of expiring licence.

160.  Application for review of order made by Controller.

161.  Effect of order of Controller as to licence.

[2000.]    *Copyright and Related Rights Act,*    [*No.* **28.**]
2000.

*Licensing: Miscellaneous*

Section

162.   General considerations: unreasonable discrimination.

163.   Licences for reprographic copying.

164.   Licences to reflect payments in respect of underlying rights.

165.   Licences to reflect conditions imposed by promoters of events.

166.   Licences in respect of works included in retransmissions.

167.   Implied indemnity in certain schemes and licences for reprographic copying.

168.   Power to extend application of scheme or licence.

169.   Variation or discharge of order extending scheme or licence.

170.   Appeals against orders.

171.   Inquiry whether other provisions required.

172.   Statutory licence where recommendation not implemented.

173.   Certification of licensing schemes.

*Cable Retransmissions*

174.   Collective exercise of certain rights in relation to cable retransmissions.

Chapter 17

*Registration of Copyright Licensing Bodies*

175.   Register of copyright licensing bodies.

176.   Proof that licensing body may act on behalf of specified classes.

177.   Notification of charges.

178.   Validity of certificates of registration.

179.   Refusal of application.

180.   Indemnity for Controller.

181.   Obligation of collecting societies to register (copyright).

[*No.* **28**.]     *Copyright and Related Rights Act,*     [2000.]
2000.

Chapter 18

*Qualification for Copyright Protection*

Section

182.   Qualification for copyright protection: general.

183.   Qualification by reference to author.

184.   Qualification for copyright protection: specific.

185.   Territorial waters and Continental Shelf.

186.   Qualification for copyright in broadcasts and cable programmes.

187.   Prohibition on contravention of certain international obligations.

188.   Extension of this Part by order.

189.   Orders to be made for countries other than convention countries, etc.

190.   Restriction of rights by order.

Chapter 19

*Government and Oireachtas copyright*

191.   Government copyright.

192.   Copyright in Acts, etc.

193.   Houses of the Oireachtas: copyright.

194.   Oireachtas copyright.

195.   Houses of the Oireachtas: supplementary provisions with regard to copyright.

Chapter 20

*International Organisations*

196.   Copyright vesting in certain international organisations.

Chapter 21

*Anonymous Works*

197.   Works of folklore.

Chapter 22

*Deposit of Certain Copyright Materials*

198.   Delivery of certain materials to libraries.

[2000.] *Copyright and Related Rights Act,* [*No.* 28.]
2000.

Chapter 23

*Amendment of National Cultural Institutions Act, 1997, and Miscellaneous Repeals*

Section
199.   Amendment of sections 65 and 66 of the National Cultural Institutions Act, 1997.


Chapter 24

*Copyright: Legal Tender*

200.   Copyright in Irish legal tender notes, euro notes, consolidated bank notes and in Irish and euro coins.


Chapter 25

*Disposal of Certain Books*

201.   Disposal of books of King's Inns Library, Dublin.


PART III

Rights in Performances

Chapter 1

*Performers' Rights*

202.   Interpretation.

203.   Performers' rights: general.

204.   Reproduction right of performer.

205.   Making available to public copies of recordings of qualifying performances.

206.   Distribution right of performers.

207.   Rental and lending right of performer.

208.   Right to equitable remuneration for exploitation of sound recording.


Chapter 2

*Infringement of Performers' Rights*

209.   Consent required for recording or live transmission of performance.

210.   Meaning of illicit recording.

211.   Presumptions.

Section

212.   Secondary infringement: importing, possessing or dealing with illicit recordings.

213.   Secondary infringement: providing means for making illicit recording.

214.   Secondary infringement: permitting use of apparatus for infringing performances.


Chapter 3

*Recording Rights*

215.   Interpretation.

216.   Infringement of recording rights by copying.

217.   Infringement of recording rights by use of illicit recording.

218.   Secondary infringement: importing, possessing or dealing with illicit recording.

219.   Secondary infringement: providing means for making illicit recordings.


Chapter 4

*Acts Permitted in Relation to Performances*

220.   Exemptions in respect of performance.

221.   Fair dealing with performances, etc.

222.   Incidental use of performances.


*Education*

223.   Copying of a performance for purpose of instruction, etc.

224.   Playing of sound recording, etc., at an educational establishment.

225.   Recording of broadcast, etc., on behalf of an educational establishment.

226.   Performer's rights not infringed by lending.


*Libraries and Archives*

227.   Regulations relating to copying of recordings by libraries and archives.

228.   Libraries and archives: declarations.

229.   Copying by librarians or archivists: parts of recordings lawfully made available to public.

[2000.]    *Copyright and Related Rights Act,*    [*No.* 28.]
2000.

Section

230.  Multiple copying.

231.  Copying by librarians or archivists: supply of copies to other libraries and archives.

232.  Copying by librarians or archivists: replacement copies of recordings of performances.

233.  Copying by librarians or archivists for certain purposes.

234.  Copying by librarians or archivists: certain recordings not lawfully made available to public.

235.  Copy of recording required to be made as condition of export.

236.  Copying by librarians or archivists: illicit recording.

*Public Administration*

237.  Parliamentary and judicial proceedings.

238.  Statutory inquiries.

239.  Copying of material in public records.

240.  Material open to public inspection or on statutory register.

241.  Acts done under statutory authority.

*Recordings in Electronic Form*

242.  Transfer of copies of recordings in electronic form.

*Miscellaneous Matters Relating to Performers' Rights*

243.  Use of recordings of spoken words in certain cases.

244.  Transient and incidental copies.

245.  Recordings of works of folklore.

246.  Playing or showing sound recordings, broadcasts and cable programmes in certain premises.

247.  Playing of sound recordings for clubs, societies, etc.

248.  Recording for purposes of broadcast or cable programme.

249.  Recording for purposes of supervision and control of broadcasts and cable programmes.

250.  Recording for purposes of time-shifting.

251.  Reception and retransmission of broadcast in cable programme service.

252.  Provision of modified recordings.

253.  Recording for archival purposes.

254.  Power of Controller to consent on behalf of performer.

[*No.* **28.**]     *Copyright and Related Rights Act,*     [2000.]
2000.

Chapter 5

*Delivery Up and Seizure*

Section

255.   Order for delivery up.

256.   Application to District Court for seizure of illicit recordings, articles or devices, etc.

257.   Right of rightsowner to seize illicit recordings, articles or devices, etc.


Chapter 6

*Offences: Performances*

258.   Offences.

259.   False claims of rights in performances.

260.   Order for delivery up in criminal proceedings.

261.   Search warrants and seizure.

262.   False representation of authority to give consent.

263.   Period after which remedy of delivery up is not available.

264.   Order as to disposal of illicit recording, article or device.


Chapter 7

*Licensing Schemes: Performers' Property Rights Licensing*

265.   Licensing schemes and licensing bodies.


*References and Applications Relating to Licensing Schemes*

266.   General references.

267.   Reference of proposed licensing scheme to Controller.

268.   Reference of licensing scheme to Controller.

269.   Further reference of scheme to Controller.

270.   Application for grant of a licence in connection with licensing scheme.

271.   Review of orders made by Controller.

272.   Effect of order of Controller as to licensing scheme.


*References and Applications Relating to Licensing by Licensing Bodies*

273.   General references by licensing bodies.

Section

274.  Reference to Controller of proposed licence.

275.  Reference to Controller of expiring licence.

276.  Application for review of order made by Controller.

277.  Effect of order of Controller as to licence.

*Licensing: Miscellaneous*

278.  General considerations: unreasonable discrimination.

279.  Licences to reflect payments in respect of underlying rights.

Chapter 8

*Registration of Licensing Bodies in Respect of Performers'*
*Property Rights*

280.  Register of licensing bodies for performers' property rights.

281.  Proof that licensing body may act on behalf of specified
       classes.

282.  Notification of charges.

283.  Validity of certificates of registration.

284.  Refusal of application.

285.  Indemnity for Controller.

286.  Obligation of collecting societies to register (performers'
       property rights).

Chapter 9

*Qualification: Performances*

287.  Definition of qualifying person.

288.  Qualifying performance.

289.  Designation of qualifying countries.

290.  Territorial waters and Continental Shelf.

Chapter 10

*Duration of Rights in Performances*

291.  Duration of rights.

[*No.* **28**.]     *Copyright and Related Rights Act,*     [2000.]
2000.

Chapter 11

*Performers' Property Rights*

Section
292.   Performers' property rights.


Chapter 12

*Transmission of Performers' Property Rights*

293.   Assignment and licences.

294.   Prospective ownership of performers' property rights.

295.   Exclusive licences.

296.   Performers' property rights to pass under will with certain
         original recordings.

297.   Presumption of transfer of rental right in case of film pro-
         duction agreement.

298.   Right to equitable remuneration where rental right is
         transferred.

299.   Equitable remuneration: reference of determination of
         amount to Controller.


Chapter 13

*Transmission of Recording Rights and Performers' Non-Property
Rights*

300.   Performers' non-property rights.

301.   Transmissibility of rights of person having recording rights.

302.   Consent.


Chapter 14

*Remedies: Owner of Performers' Property Rights*

303.   Infringement actionable by rightsowner.

304.   Award of damages in infringement action.

305.   Undertakings concerning licences of right.


Chapter 15

*Rights and Remedies: Exclusive Licensee*

306.   Rights and remedies of exclusive licensee.

[2000.]    *Copyright and Related Rights Act,*    [*No.* 28.]
2000.

Section
307.   Exercise of concurrent rights.


Chapter 16

*Remedies: Owner of Performers' Non-Property Rights and Person
having Recording Rights*

308.   Infringement actionable as a breach of statutory duty.


PART IV

Performers' Moral Rights

309.   Paternity right.

310.   Exceptions to paternity right.

311.   Integrity right.

312.   Exceptions to integrity right.

313.   Secondary infringement of integrity right: possessing or
dealing.

314.   False attribution of performances.

315.   Duration of moral rights.

316.   Waiver of rights.

317.   Performers' moral rights not assignable or alienable.

318.   Transmission of moral rights on death.

319.   Remedies for infringement of moral rights.


PART V

Databases

Chapter 1

*Rights in Databases*

320.   Interpretation.


Chapter 2

*Subsistence of Database Right*

321.   Database right.

[*No.* **28**.]      *Copyright and Related Rights Act,*    [2000.]
2000.

### Chapter 3

*Maker and Ownership: Databases*

Section

322.   Maker of database.

323.   First ownership of database right.


### Chapter 4

*Restricted Acts: Databases*

324.   Acts restricted by database right.


### Chapter 5

*Duration of Database Right*

325.   Term of protection of database right.


### Chapter 6

*Qualification: Databases*

326.   Qualification for database right.


### Chapter 7

*Rights and Obligations of Lawful Users*

327.   Avoidance of certain terms affecting lawful users.


### Chapter 8

*Acts Permitted in Respect of Database Right*

328.   Exemptions in respect of databases.

329.   Fair dealing: research or private study.


*Education*

330.   Exception for educational establishments.


*Public Administration*

331.   Parliamentary or judicial proceedings.

332.   Statutory inquiries.

333.   Copying of material in public records.

334.   Material open to public inspection or on statutory register.

Section

335.    Databases communicated to Government or Oireachtas.

336.    Acts done under statutory authority.

*Anonymous or Pseudonymous Databases*

337.    Anonymous or pseudonymous databases: acts permitted.

Chapter 9

*Application of Copyright Provisions to Database Right*

338.    Application of copyright provisions to database right.

Chapter 10

*Presumptions*

339.    Presumptions relevant to database right.

Chapter 11

*Database Right: Licensing*

340.    Licensing schemes and licensing bodies.

*References and Applications Relating to Licensing Schemes*

341.    General references.

342.    Reference of proposed licensing scheme to Controller.

343.    Reference of licensing scheme to Controller.

344.    Further reference of scheme to Controller.

345.    Application for grant of licence in connection with licensing
         scheme.

346.    Review of orders made by Controller.

347.    Effect of order of Controller as to licensing scheme.

*References and Applications Relating to Licensing by
Licensing Bodies*

348.    General reference by licensing bodies.

349.    Reference to Controller of proposed licence.

350.    Reference to Controller of expiring licence.

351.    Application for review of order made by Controller.

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Section
352.   Effect of order of Controller as to licence.

*Licensing: Miscellaneous*

353.   General considerations: unreasonable discrimination.

354.   Licences to reflect payments in respect of underlying rights.


Chapter 12

*Registration of Licensing Bodies in Respect of Database Right*

355.   Register of licensing bodies for database right.

356.   Proof that licensing body may act on behalf of specified classes.

357.   Notification of charges.

358.   Validity of certificates of registration.

359.   Refusal of application.

360.   Indemnity for Controller.

361.   Obligation of collecting societies to register (database rights).


PART VI

Jurisdiction of Controller

362.   Jurisdiction of Controller.

363.   Rules in relation to proceedings before Controller.

364.   Power of Controller to award costs.

365.   Appointment of assessors.

366.   Appeal to the High Court.

367.   References of dispute to arbitrator.

368.   Controller may consult Attorney General.

369.   Definition of dispute for the purposes of this Chapter.


PART VII

Technological Protection Measures

Chapter 1

*Rights Protection Measures*

370.   Devices designed to circumvent protection.

371.   Offence of unlawful reception.

Section

372.    Rights in respect of apparatus, etc., for unauthorised reception of transmissions.

373.    Denial of protection.

374.    Non-interference of rights protection measures with permitted acts.

Chapter 2

*Rights Management Information*

375.    Rights and remedies in respect of unlawful acts which interfere with rights management information.

376.    Removal or interference with rights management information.

FIRST SCHEDULE

PART I

Transitional Provisions and Savings: Copyright

PART II

Works made before the first day of July, 1912

PART III

Secondary Infringements

PART IV

Performers' Rights

PART V

Copyright and Performers' Rights

PART VI

Transitional Provisions and Savings: Databases

SECOND SCHEDULE

PART I

PART II

THIRD SCHEDULE

————————

[*No.* **28.**]    *Copyright and Related Rights Act,*    [2000.]
2000.

### Acts Referred to

| | |
|---|---|
| Arbitration Act, 1954 | 1954, No. 26 |
| Coinage Act, 1926 | 1926, No. 14 |
| Coinage Act, 1950 | 1950, No. 32 |
| Companies Acts, 1963 to 1999 | |
| Continental Shelf Act, 1968 | 1968, No. 14 |
| Copyright Act, 1801 | 41 Geo.3 c.107 |
| Copyright Act, 1836 | 6 & 7 Will.4 c.110 |
| Copyright Act, 1911 | 1911, c.46 |
| Copyright Act, 1963 | 1963, No. 10 |
| Copyright (Amendment) Act, 1987 | 1987, No. 24 |
| Currency Act, 1927 | 1927, No. 32 |
| Decimal Currency Acts, 1969 to 1990 | |
| Dublin City University Act, 1989 | 1989, No. 15 |
| Economic and Monetary Union Act, 1998 | 1998, No. 38 |
| Industrial and Commercial Property (Protection) Act, 1927 | 1927, No. 16 |
| Intellectual Property (Miscellaneous Provisions) Act, 1998 | 1998, No. 28 |
| King's Inns Library Act, 1945 | 1945, No. 22 |
| Local Government Act, 1994 | 1994, No.  8 |
| Maritime Jurisdiction Act, 1959 | 1959, No. 22 |
| National Cultural Institutions Act, 1997 | 1997, No. 11 |
| Performers' Protection Act, 1968 | 1968, No. 19 |
| Petty Sessions (Ireland) Act, 1851 | 14 & 15 Vict. c. 9 |
| Public Offices Fees Act, 1879 | 1879, c. 58 |
| Radio and Television Act, 1988 | 1988, No. 20 |
| Statute of Limitations, 1957 | 1957, No.  6 |
| Statutes of Limitation, 1957 and 1991 | |
| Trade Marks Act, 1996 | 1996, No.  6 |
| Universities Act, 1997 | 1997, No. 24 |
| University of Limerick Act, 1989 | 1989, No. 14 |

[2000.]        *Copyright and Related Rights Act,*        [*No.* **28**]
2000.



————————

*Number* 28 *of* 2000

————————

**COPYRIGHT AND RELATED RIGHTS ACT, 2000**

————————

AN ACT TO MAKE PROVISION IN RESPECT OF COPY-
RIGHT, PROTECTION OF RIGHTS OF PERFORMERS
AND RIGHTS IN PERFORMANCES, TO MAKE PRO-
VISION FOR LICENSING SCHEMES AND REGIS-
TRATION SCHEMES FOR COPYRIGHT AND RELATED
RIGHTS; TO RESTATE THE LAW IN RESPECT OF
COUNCIL DIRECTIVE NO. 91/250/EEC OF 14 MAY 1991[1]
ON THE LEGAL PROTECTION OF COMPUTER PRO-
GRAMS; TO GIVE EFFECT TO COUNCIL DIRECTIVE
NO. 92/100/EEC OF 19 NOVEMBER 1992[2] ON RENTAL
RIGHT AND LENDING RIGHT AND ON CERTAIN
RIGHTS RELATING TO COPYRIGHT IN THE FIELD OF
INTELLECTUAL PROPERTY; TO GIVE EFFECT TO
COUNCIL DIRECTIVE NO. 93/83/EEC OF 27 SEPTEMBER
1993[3] ON THE CO-ORDINATION OF CERTAIN RULES
CONCERNING COPYRIGHT AND RIGHTS RELATED
TO COPYRIGHT APPLICABLE TO SATELLITE BROAD-
CASTING AND CABLE RETRANSMISSION; TO
RESTATE THE LAW IN RESPECT OF COUNCIL DIREC-
TIVE NO. 93/98/EEC OF 29 OCTOBER 1993[4] HARMONIS-
ING THE TERM OF PROTECTION OF COPYRIGHT AND
CERTAIN RELATED RIGHTS AND TO GIVE EFFECT
TO ARTICLE 2.1 THEREOF; TO GIVE EFFECT TO
DIRECTIVE NO. 96/9/EC OF THE EUROPEAN PARLIA-
MENT AND OF THE COUNCIL OF 11 MARCH 1996[5] ON
THE LEGAL PROTECTION OF DATABASES; AND TO
PROVIDE FOR RELATED MATTERS. [10*th July,* 2000]

BE IT ENACTED BY THE OIREACHTAS AS FOLLOWS:

PART I

Preliminary and General

**1.**—(1)  This Act may be cited as the Copyright and Related Rights
Act, 2000.

Short title and
commencement.

[1] O.J. No. L.122, 17/5/1991, p. 42
[2] O.J. No. L.346, 27/11/1992, p. 61
[3] O.J. No. L.290, 24/11/1993, p. 9
[4] O.J. No. L.248, 6/10/1993, p. 13
[5] O.J. No. L.077, 27/3/1996, p. 20

[*No.* **28**.]     *Copyright and Related Rights Act,*     [2000.]
2000.

Pt.I S.1

(2) This Act shall come into operation on such day or days as the Minister may by order or orders either generally or with reference to any particular purpose appoint, and different days may be so appointed for different purposes or different provisions of this Act.

(3) An order under *subsection (2)* may, in respect of the repeals or revocations effected by *section 10* of the enactments mentioned in the *Second Schedule*, fix different days for the repeal or revocation of different enactments or for the repeal or revocation for different purposes of any enactment.

Interpretation.

**2.**—(1) In this Act, unless the context otherwise requires—

''Act of 1927'' means the Industrial and Commercial Property (Protection) Act, 1927;

''anonymous work'' means a work where the identity of the author is unknown or, in the case of a work of joint authorship, where the identity of the authors is unknown;

''appropriate court'' means—

(*a*) the District Court, where the damages or the value of the other relief sought in any action to which the application relates is not liable to exceed such sum as stands specified by an enactment to be the jurisdiction of the District Court for actions in contract or tort,

(*b*) the Circuit Court, where the damages or the value of the other relief sought in any action to which the application relates is not liable to exceed such sum as stands specified by an enactment to be the jurisdiction of the Circuit Court for actions in contract or tort, and

(*c*) in any other case, the High Court;

''artistic work'' includes a work of any of the following descriptions, irrespective of their artistic quality—

(*a*) photographs, paintings, drawings, diagrams, maps, charts, plans, engravings, etchings, lithographs, woodcuts, prints or similar works, collages or sculptures (including any cast or model made for the purposes of a sculpture),

(*b*) works of architecture, being either buildings or models for buildings, and

(*c*) works of artistic craftsmanship;

''author'' has the meaning assigned to it by *section 21*;

''authorised broadcaster'' means Radio Telefís Éireann, Seirbhísí Theilifís na Gaeilge Teoranta or a person with whom the Independent Radio and Television Commission has entered into a contract for the provision of broadcasting services under the Radio and Television Act, 1988, and is licensed under that Act to provide those services;

''authorised cable programme service provider'' means the provider of any cable programme service other than a cable programme service provided unlawfully;

[2000.]    *Copyright and Related Rights Act,*    [*No.* **28.**]
2000.

''broadcast'' means a transmission by wireless means, including by   Pt.I S.2
terrestrial or satellite means, for direct public reception or for pres-
entation to members of the public of sounds, images or data or any
combination of sounds, images or data, or the representations there-
of, but does not include MMDS service;

''building'' includes any structure;

''cable programme'' means any item included in a cable programme
service;

''cable programme service'' means a service, including MMDS, which
consists wholly or mainly of sending sounds, images or data or any
combination of sounds, images or data, or the representations
thereof, by means of a telecommunications system—

  (*a*)  for reception at 2 or more places (whether for simultaneous
       reception or at different times in response to requests by
       different users), or

  (*b*)  for presentation to members of the public,

but shall not include:

  (i)  a service or part of a service of which it is an essential fea-
      ture that while sounds, images or data or any combi-
      nation of sounds, images or data, or the representations
      thereof, are being conveyed by the person providing the
      service, there may be sent from each place of reception,
      by means of the same system or, as the case may be, the
      same part of it, data (other than signals sent for the oper-
      ation or control of the service) for reception by the per-
      son providing the service or other persons receiving the
      service;

  (ii)  a service operated for the purposes of a business, trade or
       profession where—

    (I)  no person except that person carrying on the busi-
        ness, trade or profession is concerned in the control
        of the apparatus comprised in the system,

    (II)  sounds, images or data or any combination of sounds,
         images or data, or the representations thereof, are
         conveyed by the system exclusively for the purposes
         of the internal management of that business, trade
         or profession and not for the purpose of rendering a
         service or providing amenities for others, and

    (III)  the system is not connected to any other telecom-
          munications system;

  (iii)  a service operated by an individual where—

    (I)  all the apparatus comprised in the system is under his
        or her control,

    (II)  sounds, images or data or any combination of sounds,
         images or data, or the representations thereof, con-
         veyed by the system are conveyed solely for his or
         her private and domestic use by that individual, and

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.I S.2

   (III) the system is not connected to any other telecommunications system;

  (iv) services, other than services operated as part of the amenities provided for residents or occupants of premises operated as a business, trade or profession, where—

   (I) all the apparatus comprised in the system is situated in, or connects, premises which are in single occupation, and

   (II) the system is not connected to any other telecommunications system;

  (v) services which are, or to the extent that they are, operated for persons providing broadcasting or cable programme services or providing programmes for such services;

''computer-generated'', in relation to a work, means that the work is generated by computer in circumstances where the author of the work is not an individual;

''computer program'' means a program which is original in that it is the author's own intellectual creation and includes any design materials used for the preparation of the program;

''Controller'' means the Controller of Patents, Designs and Trade Marks;

''copyright work'' means a work in which copyright subsists;

''database'' means a collection of independent works, data or other materials, arranged in a systematic or methodical way and individually accessible by any means but excludes computer programs used in the making or operation of a database;

''disability'' has the same meaning as in section 48 of the Statute of Limitations, 1957;

''dramatic work'' includes a choreographic work or a work of mime;

''educational establishment'' means—

  (*a*) any school,

  (*b*) any university to which the Universities Act, 1997, applies, and

  (*c*) any other educational establishment prescribed by the Minister under *section 55*;

''EEA Agreement'' means the Agreement on the European Economic Area signed at Oporto on 2 May 1992, as adjusted by the Protocol signed at Brussels on 17 March 1993 and as amended from time to time;

''enactment'' means an Act of the Oireachtas or an instrument made thereunder;

''film'' means a fixation on any medium from which a moving image may, by any means, be produced, perceived or communicated through a device;

[2000.]    *Copyright and Related Rights Act,*    [*No.* **28**.]
2000.

''fixation'' means the embodiment of sounds or images or any combi-   Pt.I S.2
nation of sounds or images, or the representations thereof, from
which they can be perceived, reproduced or communicated through
a device;

''general licence'' means a licence granted by a licensing body that
includes all works of the description to which it applies;

''judicial proceeding'' includes proceedings before any court or tri-
bunal which has power to hear, receive and examine evidence on
oath or otherwise and has authority to decide any matter affecting
the legal rights or liabilities of a person;

''licensing body'' means a body referred to in *section 38, 149, 265* or
*340,* as the case may be;

''literary work'' means a work, including a computer program, but
does not include a dramatic or musical work or an original database,
which is written, spoken or sung;

''marketed'' means sold, hired, rented or lent, or offered or exposed
for sale, hire, rental or loan, or otherwise distributed, and references
to ''marketing'' shall be construed accordingly;

''Member State of the EEA'' means a state which is a contracting
state to the EEA Agreement;

''Minister'' means the Minister for Enterprise, Trade and
Employment;

''MMDS'' means a Multipoint Microwave Distribution System;

''musical work'' means a work consisting of music, but does not
include any words, or action, intended to be sung, spoken or perform-
ed with the music;

''original database'' means a database in any form which by reason
of the selection or arrangement of its contents constitutes the original
intellectual creation of the author;

''parliamentary proceeding'' includes proceedings of either or both of
the Houses of the Oireachtas or committees established by either or
both of the Houses of the Oireachtas or proceedings of the European
Parliament or committees established by the European Parliament;

''photograph'' means a recording of light, or any other radiation on
any medium on which an image is produced, or from which an image
may by any means be produced and which is not part of a film;

''premises'' means any building or place, including any land, vehicle,
vessel, moveable structure, trailer, hovercraft or aircraft;

''prescribe'' means prescribe by regulations and cognate words shall
be construed accordingly;

''producer'', in relation to a film or sound recording, means the per-
son by whom the arrangements necessary for the making of the film
or sound recording, as the case may be, are undertaken;

''protection-defeating device'' includes any device, function or prod-
uct, or component incorporated into a device, function or product,
the primary purpose or effect of which is to avoid, bypass, remove,

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

deactivate or otherwise circumvent, without authority, any rights protection measure;

''pseudonymous work'' means a work where the pseudonym adopted by the author or, in the case of a work of joint authorship the authors, does not reveal the identity of the author or authors and the identity of the author or authors is unknown;

''published edition'', in relation to the copyright in the typographical arrangement of a published edition, means a published edition of the whole or any part of one or more literary, dramatic or musical works or original databases;

''repeat broadcast'' means a repeat of a broadcast which has been previously transmitted;

''repeat cable programme'' means a repeat of a cable programme which has been previously included in a cable programme service;

''reprographic process'' means a process—

(*a*) for making facsimile copies, or

(*b*) involving the use of an appliance for making multiple copies,

and includes, in relation to a work held in electronic form, any copying by electronic means, but does not include the making of a film or sound recording;

''rights protection measure'' means any process, treatment, mechanism or system which is designed to prevent or inhibit the unauthorised exercise of any of the rights conferred by this Act;

''sound recording'' means a fixation of sounds, or of the representations thereof, from which the sounds are capable of being reproduced, regardless of the medium on which the recording is made, or the method by which the sounds are reproduced;

''statutory inquiry'' means an inquiry held, or investigation conducted, pursuant to a duty imposed or power conferred by an enactment;

''statutory register'' means a register maintained pursuant to a statutory requirement;

''statutory requirement'' means a requirement imposed by an enactment;

''sufficient acknowledgement'' has the meaning assigned to it by *section 51*;

''telecommunications system'' means a system for conveying sounds, data or information or any combination of sounds, images or information, or the representations thereof, by means of a wire, beam or any other conducting device through which electronically generated programme-carrying signals are guided over a distance;

''work'' means a literary, dramatic, musical or artistic work, sound recording, film, broadcast, cable programme, typographical arrangement of a published edition or an original database and includes a computer program except in *Part II, Chapter 7* where ''work'' means ''literary, dramatic, musical or artistic work or film'';

[2000.]  *Copyright and Related Rights Act,*  [*No.* **28.**]
2000.

''work of joint authorship'' has the meaning assigned to it by *section*   Pt.I S.2
*22*;

''writing'' includes any form of notation or code whether by hand or otherwise and regardless of the method by which, or medium in or on which, it is recorded, and references to ''written'' shall be construed accordingly.

(2) A reference in this Act to the reception of a broadcast shall include the reception of a broadcast relayed by means of a telecommunications system.

(3) A reference in this Act to a prescribed archive shall include references to a prescribed museum.

(4) A reference in this Act to an archive shall include references to a museum and a reference in this Act to an archivist shall include references to a curator.

(5) A reference in this Act to a librarian or archivist shall include references to a person acting on his or her behalf.

(6) A computer program used in the making or operation of databases shall not be regarded as a database.

(7) The author of a work shall be deemed to be known where it is possible for a person, without previous knowledge of the facts, to ascertain the identity of the author of the work by reasonable enquiry.

(8) The authors of a work of joint authorship shall be deemed to be known where it is possible for a person, without previous knowledge of the facts, to ascertain the identity of one or more of the authors of the work by reasonable enquiry.

(9) References in this Act to a permanent collection shall include a collection of works or sound recordings in the possession of a library or archive that have been loaned to that library or archive for an indefinite period.

(10) Where an act which would otherwise infringe any of the rights conferred by this Act is permitted under this Act it is irrelevant whether or not there exists any term or condition in an agreement which purports to prohibit or restrict that act.

(11) A reference in this Act to the copyright owner or the rightsowner shall include a reference to a person designated by the copyright owner or the rightsowner to act on his or her behalf in infringement proceedings.

(12) (*a*)  A reference in this Act to a Part, Chapter, Division, section or Schedule is a reference to a Part, Chapter, Division or section of, or Schedule to, this Act unless it is indicated that a reference to some other Act is intended.

(*b*)  A reference in this Act to a subsection, paragraph or subparagraph is to the subsection, paragraph or subparagraph of the provision in which the reference occurs unless it is indicated that reference to some other provision is intended.

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.I S.2

(*c*) A reference in this Act to any other enactment shall, except where the context otherwise requires, be construed as a reference to that enactment as amended by or under any other enactment including this Act.

Construction of references to rightsowner.

**3.**—(1) In the case of a right conferred by this Act to which different persons are entitled (whether in consequence of a partial assignment of such right or otherwise) in respect of the application of the right—

(*a*) to undertake different acts or classes of acts restricted by that right, or

(*b*) to undertake one or more acts or classes of acts restricted by that right in different countries, territories, states or areas, or at different times,

the rightsowner shall be deemed to be the person who is entitled to the right in respect of its application to the undertaking of the act or class of acts restricted by the right, or, as the case may be, to the undertaking of the act or class of acts restricted by the right in the particular country, territory, state or area or at the particular time, which is relevant to the purpose concerned.

(2) In relation to a future right to which different persons are prospectively entitled, references in this Act to the prospective owner shall be construed accordingly.

(3) Where a right conferred by this Act (or any aspect of such right) is owned by more than one person jointly, references in this Act to the rightsowner are to all the owners, and any requirement of the licence of the rightsowner requires the licence of all of the owners.

Construction of references to copyright.

**4.**—(1) References in this Act to copyright shall include references to copyright under any previous enactment conferring copyright.

(2) References in the Act of 1927 to Part VI or VII of that Act shall be deemed to include references to this Act.

Encrypted broadcasts.

**5.**—A broadcast that is encrypted shall be regarded as being broadcast for lawful direct public reception where the means required for decoding the signals for those broadcasts have been made available by, or with the authority of, the person making the broadcast.

Making and protection of broadcasts.

**6.**—(1) Subject to *subsection (3)*, a reference in this Act to the person making a broadcast, broadcasting a work, or including a work in a broadcast shall be construed as a reference—

(*a*) to the person transmitting the programme, where he or she has responsibility to any extent for its contents, and

(*b*) to any person providing the programme who makes the arrangements necessary for its transmission with the person transmitting that programme,

and references to a programme, in the context of broadcasting, shall be construed as references to any item included in the broadcast.

[2000.]    *Copyright and Related Rights Act,*    [*No.* **28**.]
2000.

(2)  Subject to *subsection (3)*, the place from which a broadcast is    Pt.I S.6
made is the place where, under the control and responsibility of the
person making the broadcast, the programme-carrying signals are
introduced into an uninterrupted chain of communication including,
in the case of a satellite transmission, the chain leading to the satellite
and down towards the earth.

(3)  Where the place from which a broadcast by way of satellite
transmission is made is located in a country, territory, state or area
other than a Member State of the EEA and the law of that country,
territory, state or area fails to provide, at least, the following level of
protection:

(*a*)  exclusive rights in relation to broadcasting equivalent to
those conferred by *section 37*;

(*b*)  a right in relation to live broadcasting equivalent to that
conferred on a performer by *section 204*; and

(*c*)  a right for authors of sound recordings and performers to
share in a single equitable remuneration in respect of the
broadcasting of sound recordings,

then, the following provisions shall apply:

(i)  where the place from which the programme-carrying signals
are transmitted to the satellite (in this Act that place is
referred to as the ''uplink station'') is located in a Mem-
ber State of the EEA—

(I)  that uplink station shall be treated as the place from
which the broadcast is made, and

(II)  the person operating the uplink station shall be
treated as the person making the broadcast;

or

(ii)  where the uplink station is not located in a Member State
of the EEA but a person who is established in a Member
State of the EEA has commissioned the making of the
broadcast—

(I)  the place in which that person has his or her principal
establishment in a Member State of the EEA shall
be treated as the place from which the broadcast is
made, and

(II)  that person shall be treated as the person making the
broadcast.

**7.**—(1)  The Minister may make regulations for the purpose of    Regulations and
enabling this Act to have full effect.    orders.

(2)  Regulations made under this section may contain such inciden-
tal, supplementary and consequential provisions as appear to the
Minister to be necessary or expedient for the purposes of this Act.

(3)  The Minister may make regulations for prescribing any matter
referred to in this Act as prescribed.

[*No. 28.*]     *Copyright and Related Rights Act,*     [2000.]
2000.

(4) The Government or Minister, as the case may be, may by order amend or revoke an order made by the Government or the Minister under this Act including an order made under this subsection (other than an order made under *section 1(2)*).

Laying of regulations and orders.

**8.**—Every order (other than an order made under *section 1(2)*) or regulation made by the Minister or the Minister for Finance under this Act shall be laid before each House of the Oireachtas as soon as may be after it is made and, if a resolution annulling the order or regulation is passed by either such House within the next 21 days on which that House has sat after the order or regulation is laid before it, the order or regulation shall be annulled accordingly, but without prejudice to the validity of anything previously done thereunder.

Expenses.

**9.**—The expenses incurred by the Minister in the administration of this Act shall, to such extent as may be sanctioned by the Minister for Finance, be paid out of moneys provided by the Oireachtas.

Transitional provisions and repeals.

**10.**—(1) The *First Schedule* shall have effect with respect to transitional matters.

(2) The Acts mentioned in *column (2)* of *Part I* of the *Second Schedule* are hereby repealed to the extent mentioned in *column (3)* of that Schedule.

(3) The statutory instruments mentioned in *column (2)* of *Part II* of the *Second Schedule* are hereby revoked to the extent mentioned in *column (3)* of that Schedule.

Prosecution of offences.

**11.**—(1) Summary proceedings for an offence under this Act may be brought and prosecuted by the Minister.

(2) Notwithstanding the provisions of section 10(4) of the Petty Sessions (Ireland) Act, 1851, summary proceedings for an offence under this Act may be commenced at any time within 12 months from the date on which the offence was committed.

Offences by bodies corporate.

**12.**—Where an offence under this Act is committed by a body corporate and is proved to have been so committed with the consent, connivance or approval of or to be attributable to any neglect on the part of a person being a director, manager, secretary or other officer of the body corporate, or any other person who was acting or purporting to act in any such capacity, that person as well as the body corporate shall be guilty of an offence and be liable to be proceeded against and punished as if he or she were guilty of the first-mentioned offence.

Offences by members of partnership.

**13.**—(1) Without prejudice to any liability of a partner under *subsection (3)*, where an offence under this Act is committed by a partnership any proceedings shall be brought against the partnership in the name of the partnership and not in the name of the individual partner.

(2) A fine imposed on a partnership on its conviction in proceedings brought under *subsection (1)* shall be paid out of the assets of the partnership.

(3) Where a partnership is guilty of an offence under this Act, every partner, other than a partner who is proved to have been ignorant of or to have attempted to prevent commission of the offence, shall also be guilty of the offence and shall be liable to be proceeded against and punished accordingly.    Pt.I S.13

**14.**—(1) A notice required to be served or given under this Act shall, subject to *subsection (2)*, be addressed to the person concerned by name, and may be served on or given to the person in one of the following ways—    Service of notices.

   (*a*) by delivering it to the person,

   (*b*) by leaving it at the address at which the person ordinarily resides or, in a case in which an address for service has been furnished, at that address,

   (*c*) by sending it by post in a prepaid letter to the address at which the person ordinarily resides or, in a case in which an address for service has been furnished, to that address,

   (*d*) by sending it by such other method (including electronic method) as the Minister may decide,

   (*e*) where the address at which the person ordinarily resides cannot be ascertained by reasonable enquiry and notice is required to be served on, or given to, him or her in respect of any premises, by delivering it to a person over the age of 16 years of age resident in or employed at the premises or by affixing it in a conspicuous position on or near the premises.

(2) Where a notice under this Act is to be served on or given to a person who is the owner or occupier of any premises and the name of the person cannot be ascertained by reasonable enquiry, it may be addressed to the person by using the words ''the owner'' or, as the case may require, ''the occupier''.

(3) For the purposes of this section, a company within the meaning of the Companies Acts, 1963 to 1999, shall be deemed to be ordinarily resident at its registered office, and every other body corporate, unincorporated body or person, including a partnership shall be deemed to be ordinarily resident at its principal office or place of business.

(4) A person shall not at any time during the period of 3 months after a notice is affixed under *subsection (1)(e)* remove, alter, damage or deface the notice without lawful authority.

(5) A person who contravenes *subsection (4)* shall be guilty of an offence and shall be liable on summary conviction to a fine not exceeding £1,500.

**15.**—The Public Offices Fees Act, 1879, shall not apply in respect of any fees payable under this Act.    Fees.

**16.**—An appeal lies from the making of an order under this Act—    Jurisdiction of Courts.

   (*a*) from the District Court to the Circuit Court, where the order is made by the District Court,

[*No.* **28**.]  *Copyright and Related Rights Act,*  [2000.]
2000.

Pt.I S.16

(b) from the Circuit Court to the High Court, where the order is made by the Circuit Court,

(c) from the Central Criminal Court to the Court of Criminal Appeal, where the order is made by the Central Criminal Court.

PART II

Copyright

Chapter 1

*Subsistence of Copyright*

Copyright and copyright works.

**17.**—(1) Copyright is a property right whereby, subject to this Act, the owner of the copyright in any work may undertake or authorise other persons in relation to that work to undertake certain acts in the State, being acts which are designated by this Act as acts restricted by copyright in a work of that description.

(2) Copyright subsists, in accordance with this Act, in—

(a) original literary, dramatic, musical or artistic works,

(b) sound recordings, films, broadcasts or cable programmes,

(c) the typographical arrangement of published editions, and

(d) original databases.

(3) Copyright protection shall not extend to the ideas and principles which underlie any element of a work, procedures, methods of operation or mathematical concepts and, in respect of original databases, shall not extend to their contents and is without prejudice to any rights subsisting in those contents.

(4) Copyright shall not subsist in a work unless the requirements for copyright protection specified in this Part with respect to qualification are complied with.

(5) Copyright shall not subsist in a work which infringes, or to the extent that it infringes, the copyright in another work.

(6) Copyright shall not subsist in a work which is, or to the extent that it is, a copy taken from a work which has been previously made available to the public.

Copyright in literary, dramatic or musical works and original databases.

**18.**—(1) Copyright shall not subsist in a literary, dramatic or musical work or an original database until that work is recorded in writing or otherwise by or with the consent of the author.

(2) References in this Part to the time at which, or the period during which, a work referred to in *subsection (1)* is made are to the time at which, or the period during which, that work is so recorded.

(3) Copyright may subsist in a work that is recorded and may subsist in the recording of a work.

Copyright in sound recordings.

**19.**—Copyright shall not subsist in a sound recording until the first fixation of the sound recording is made.

Exclusion of copyright in retransmission.

**20.**—(1) Subject to *subsection (2)*, copyright shall not subsist in the transmission of a broadcast or other material in a cable programme service unless the transmission alters the content of the broadcast or other materials.

(2) Nothing in *subsection (1)* shall affect the copyright subsisting in the broadcast or other material arising other than by virtue of the transmission.

Pt.II S.20

### Chapter 2

*Authorship and Ownership of Copyright*

**21.**—In this Act, ''author'' means the person who creates a work and includes:

Interpretation of author.

(*a*)  in the case of a sound recording, the producer;

(*b*)  in the case of a film, the producer and the principal director;

(*c*)  in the case of a broadcast, the person making the broadcast or in the case of a broadcast which relays another broadcast by reception and immediate retransmission, without alteration, the person making that other broadcast;

(*d*)  in the case of a cable programme, the person providing the cable programme service in which the programme is included;

(*e*)  in the case of a typographical arrangement of a published edition, the publisher;

(*f*)  in the case of a work which is computer-generated, the person by whom the arrangements necessary for the creation of the work are undertaken;

(*g*)  in the case of an original database, the individual or group of individuals who made the database; and

(*h*)  in the case of a photograph, the photographer.

**22.**—(1)  In this Act, ''a work of joint authorship'' means a work produced by the collaboration of two or more authors in which the contribution of each author is not distinct from that of the other author or authors.

Works of joint authorship.

(2)  A film shall be treated as a work of joint authorship unless the producer and the principal director are the same person.

(3)  A broadcast shall be treated as a work of joint authorship if more than one person makes the broadcast and the contribution of each person is not distinct from that of any of the others involved in making that broadcast.

(4)  References in this Act to the author of a work shall, unless otherwise provided, be construed, in relation to a work of joint authorship, as references to all of the authors of the work.

**23.**—(1)  The author of a work shall be the first owner of the copyright unless—

First ownership of copyright.

(*a*)  the work is made by an employee in the course of employment, in which case the employer is the first owner of any copyright in the work, subject to any agreement to the contrary,

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

(*b*)  the work is the subject of Government or Oireachtas copyright,

(*c*)  the work is the subject of the copyright of a prescribed international organisation, or

(*d*)  the copyright in the work is conferred on some other person by an enactment.

(2)  Where a work, other than a computer program, is made by an author in the course of employment by the proprietor of a newspaper or periodical, the author may use the work for any purpose, other than for the purposes of making available that work to newspapers or periodicals, without infringing the copyright in the work.

### Chapter 3

#### *Duration of Copyright*

**Duration of copyright in a literary, dramatic, musical or artistic work or an original database.**

**24**.—(1)  The copyright in a literary, dramatic, musical or artistic work, or an original database shall expire 70 years after the death of the author, irrespective of the date on which the work is first lawfully made available to the public.

(2)  The copyright in a work specified in *subsection (1)* which is anonymous or pseudonymous shall expire 70 years after the date on which the work is first lawfully made available to the public.

(3)  In respect of an anonymous or pseudonymous work referred to in *subsection (2)*—

(*a*)  where the pseudonym adopted by the author leaves no doubt as to his or her identity,

(*b*)  where the author discloses his or her identity, or

(*c*)  where his or her identity becomes known during the 70 years from the date on which the work is first lawfully made available to the public,

the copyright in that work shall expire 70 years after the death of that author.

**Duration of copyright in films.**

**25**.—(1)  Subject to *subsection (2)*, the copyright in a film shall expire 70 years after the last of the following persons dies, namely:

(*a*)  the principal director of the film;

(*b*)  the author of the screenplay of the film;

(*c*)  the author of the dialogue of the film;

(*d*)  the author of music specifically composed for use in the film.

(2)  Where a film is first lawfully made available to the public during the period of 70 years following the death of the last of the persons specified in *subsection (1)*, the copyright in that film shall expire 70 years after the date of such making available.

(3)  Where the copyright in a film has expired, a person who, after such expiration, makes available to the public the film or causes the film to be so made available shall not infringe the copyright in any work included in the film.

Pt.II S.25

**26.**—The copyright in a sound recording shall expire—

   (*a*)  50 years after the sound recording is made, or

   (*b*)  where it is first lawfully made available to the public during the period specified in *paragraph (a)*, 50 years after the date of such making available.

Duration of copyright in sound recordings.

**27.**—(1)  The copyright in a broadcast shall expire 50 years after the broadcast is first lawfully transmitted.

Duration of copyright in broadcasts.

(2)  The copyright in a repeat broadcast shall expire at the same time as the copyright in the original broadcast and no copyright shall subsist in a repeat broadcast which is transmitted after the expiration of the copyright in the original broadcast.

**28.**—(1)  The copyright in a cable programme shall expire 50 years after the cable programme is first lawfully included in a cable programme service.

Duration of copyright in cable programmes.

(2)  The copyright in a repeat cable programme shall expire at the same time as the copyright in the original cable programme and no copyright shall subsist in a repeat cable programme which is included in a cable programme service after the expiration of the copyright in the original cable programme.

**29.**—The copyright in a typographical arrangement of a published edition shall expire 50 years after the date on which it is first lawfully made available to the public.

Duration of copyright in typographical arrangements.

**30.**—The copyright in a work which is computer-generated shall expire 70 years after the date on which the work is first lawfully made available to the public.

Duration of copyright in computer-generated works.

**31.**—Where a work is lawfully made available to the public in volumes, parts, instalments, issues or episodes and the copyright subsists from the date on which the work is so made available, the copyright shall subsist in respect of each separate item.

Duration of copyright in works in volumes, parts, etc.

**32.**—(1)  Where the identity of the author of an anonymous or pseudonymous work becomes known or is disclosed after the term of copyright provided in  *section 24(2)* has expired, the term of copyright provided in *subsection (1)* of that section shall not apply, and copyright in the work shall be deemed to have expired 70 years from the date on which the work was first lawfully made available to the public.

Miscellaneous matters in relation to duration.

(2)  Copyright shall not subsist in an anonymous or pseudonymous literary, dramatic, musical or artistic work, or original database where it is reasonable to presume that the author has been dead for 70 years or more.

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.II S.32

(3) Copyright shall not subsist in an anonymous or pseudonymous film where it is reasonable to presume that the last of any of the persons specified in *section 25* has been dead for 70 years or more.

(4) In relation to works of joint authorship, the reference in *section 24* to the death of the author shall be construed—

(*a*) where the identity of all of the authors is known, as a reference to the death of the last of the joint authors, or

(*b*) where the identity of any of the authors is known and the identity of one or more of the others is not, as a reference to the death of the last of the joint authors whose identity is known.

(5) In relation to a work of joint authorship, references to the identity of the author becoming known or being disclosed shall be construed as references to the identity of any of the authors becoming known or being disclosed.

Expiry of copyright.

**33**.—Where the term of copyright in a work is not calculated from the death of the author or authors and the work is not lawfully made available to the public within 70 years of its creation, the copyright in that work shall expire on the expiration of that period of 70 years.

Making available of a work not previously made available.

**34**.—Any person who, after the expiration of the copyright in a work, lawfully makes available to the public for the first time a work which was not previously so made available, shall benefit from rights equivalent to the rights of an author, other than the moral rights, for 25 years from the date on which the work is first lawfully made available to the public.

Calculation of term of copyright.

**35**.—Where a term of copyright is provided for in this Act, the term shall be calculated from the first day of January of the year following the event that gives rise to that term.

Non-application of certain provisions on duration to Government copyright, etc.

**36**.—*Sections 24* to *35* shall not apply to Government or Oireachtas copyright or to the copyright of prescribed international organisations.

Chapter 4

*Rights of Copyright Owner*

Acts restricted by copyright in a work.

**37**.—(1) Subject to the exceptions specified in *Chapter 6* and to any provisions relating to licensing in this Part, the owner of the copyright in a work has the exclusive right to undertake or authorise others to undertake all or any of the following acts, namely:

(*a*) to copy the work;

(*b*) to make available to the public the work;

(*c*) to make an adaptation of the work or to undertake either of the acts referred to in *paragraph (a)* or *(b)* in relation to an adaptation,

and those acts shall be known and in this Act referred to as ''acts    Pt.II S.37
restricted by copyright''.

(2)  The copyright in a work is infringed by a person who without
the licence of the copyright owner undertakes, or authorises another
to undertake, any of the acts restricted by copyright.

(3)  References to the undertaking of an act restricted by the copy-
right in a work shall relate to the work as a whole or to any substan-
tial part of the work and to whether the act is undertaken directly or
indirectly.

**38.**—(1) Notwithstanding the provisions of *section 37*, where a    Playing of sound
person proposes to—    recordings —
    licences of right.

(*a*)  play a sound recording in public, or

(*b*)  include a sound recording in a broadcast or a cable pro-
        gramme service,

he or she may do so as of right where he or she—

(i)  agrees to make payments in respect of such playing
      or inclusion in a broadcast or a cable programme
      service to a licensing body, and

(ii)  complies with the requirements of this section.

(2)  A person may avail of the right to play a sound recording
in public or to include a sound recording in a broadcast or a cable
programme service, where he or she—

(*a*)  gives notice to each licensing body concerned of his or her
        intention to play sound recordings in public or include
        sound recordings in a broadcast or a cable programme
        service,

(*b*)  informs each of those bodies of the date on and from which
        he or she intends to play sound recordings in public or
        include sound recordings in a broadcast or a cable pro-
        gramme service,

(*c*)  makes payments to the licensing body at intervals of not less
        than 3 months in arrears,

(*d*)  complies with any reasonable conditions relating to pay-
        ments under this section as may be notified to him or her
        by the licensing body from time to time, and

(*e*)  complies with any reasonable requests for information from
        the licensing body to enable it to calculate and manage
        payments under this section.

(3)  A person who satisfies the conditions specified in *subsection
(2)* shall be deemed to be in the same position as regards infringe-
ment of copyright as if he or she had been the holder of a licence
granted by the owner of the copyright in question at all material
times.

(4)  Where the person intending to play sound recordings in public
or to include sound recordings in a broadcast or a cable programme

[*No.* **28.**]     *Copyright and Related Rights Act,*     [2000.]
2000.

service and the licensing body fail to reach agreement as to fair pay-
ment under *subsection (2)* within a reasonable time, the terms of the
proposed agreement shall be referred to the Controller for determi-
nation of the amount and terms of payment.

(5) In the case of a dispute referred to the Controller under *sub-
section (4)*, a person shall not exercise the right conferred by *subsec-
tion (1)* unless he or she—

    (*a*) gives reasonable notice to the Controller that he or she has
        commenced or intends to commence the playing of sound
        recordings in public and that a dispute has arisen between
        him or her and the licensing body concerned as to the
        terms of payment and the exercise of the right; and

    (*b*) applies to the Controller for a determination under *subsec-
        tion (4)*.

(6) Where the terms of a proposed agreement are referred to the
Controller under *subsection (4)* a person shall not exercise a right
conferred by *subsection (1)* unless he or she—

    (*a*) gives notice in writing to the Controller of his or her inten-
        tion to exercise the right, and of the date on which he or
        she proposes to begin to do so, and

    (*b*) applies in writing to the Controller for a determination
        under *subsection (4)*.

(7) On an application to settle the terms of payment being
referred to the Controller, he or she shall consider the matter and
make such order as he or she may determine to be reasonable in the
circumstances and that order shall take effect on and from the date
on which the applicant begins to exercise the right, and any necessary
repayments or further payments shall be made in respect of amounts
which, in consequence of the terms of the order, have fallen due.

(8) Where no request for payment has been made by the licensing
body, or where the amount requested by the licensing body is dis-
puted by the person exercising the right then, pending the making of
an order by the Controller under *subsection (7)*, the person exercis-
ing the right shall pay to the licensing body such amount as he or
she considers reasonable, and shall notify the licensing body and the
Controller of his or her intention to do so.

(9) A person exercising the right conferred by *subsection (1)*, or
who has given notice to the Controller of his or her intention to do
so, may also refer to the Controller the question of—

    (*a*) whether any condition relating to payment, notice of which
        has been given to him or her by the licensing body con-
        cerned is a reasonable condition, or

    (*b*) whether any licence condition, notice of which has been
        given to him or her by the licensing body in question, is
        a reasonable condition, or

    (*c*) whether any information required by the licensing body is
        information which the licensing body can reasonably
        require him or her to provide.

(10) Where a reference is made under *subsection (9)*, the Control-    Pt.II S.38
ler shall consider the matter and make such order as he or she may
determine to be reasonable in the circumstances.

(11) A person exercising the right conferred by *subsection (1)* or
a licensing body may apply to the Controller to review any order
under *subsection (7)* or *(10)*.

(12) An application under *subsection (11)* may not be made except
with the special leave of the Controller—

    (*a*) within 12 months from the date of the order or of the
        decision on a previous application under this section, or

    (*b*) where the order was made so as to be in force for 15 months
        or less or, as a result of the decision on a previous appli-
        cation, is due to expire within 15 months of that decision,

until at least 3 months before the expiration of the order.

(13) Where an application is made under *subsection (11)*, the Con-
troller shall consider the matter and make such order confirming or
varying the original order as he or she may determine to be reason-
able in the circumstances and any order made under this subsection
shall be for such period as may be specified by the Controller.

(14) This section shall not apply in any circumstances where sound
recordings are made available to the public by wire or wireless means
in such a way that members of the public may access the sound
recordings from a place and at a time individually chosen by them
(including the making available of copies of sound recordings
through the Internet).

(15) Notwithstanding *section 149*, in this section ''licensing body''
means a society, a company registered under the Companies Acts,
1963 to 1999, or other organisation which has as one of its objects
the negotiation or granting of licences to play sound recordings in
public or to include sound recordings in broadcasts or cable pro-
gramme services, either as owner or prospective owner of copyright
in the said sound recording or as his or her exclusive licensee, agent
or designated representative and shall include a human person who
has the right to negotiate or grant a licence to play sound recordings
in public or to include sound recordings in broadcasts or cable pro-
gramme services, either as owner or prospective owner of copyright
in the sound recordings.

    **39.**—(1) References in this Part to copying shall be construed as    Reproduction right.
including references to all or any of the following, namely:

    (*a*) in relation to any work—

        (i) storing the work in any medium,

        (ii) the making of copies which are transient or incidental
           to some other use of the work;

    (*b*) in relation to an artistic work, the making of a copy in three
        dimensions of a two dimensional work and the making of
        a copy in two dimensions of a three dimensional work;

    (*c*) in relation to a film, television broadcast or cable programme,
        making a photograph of the whole or a substantial part

[*No.* **28.**]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.II S.39

of any image forming part of the film, broadcast or programme;

(*d*) in relation to a typographical arrangement of a published edition, making a reprographic copy of the arrangement.

(2) There shall be a right of the owner of copyright to copy a work or to authorise others to do so which shall be known and in this Part referred to as the ''reproduction right''.

Making available right.

**40.**—(1) References in this Part to the making available to the public of a work shall be construed as including all or any of the following, namely:

(*a*) making available to the public of copies of the work, by wire or wireless means, in such a way that members of the public may access the work from a place and at a time chosen by them (including the making available of copies of works through the Internet);

(*b*) performing, showing or playing a copy of the work in public;

(*c*) broadcasting a copy of the work;

(*d*) including a copy of the work in a cable programme service;

(*e*) issuing copies of the work to the public;

(*f*) renting copies of the work;

(*g*) lending copies of the work without the payment of remuneration to the owner of the copyright in the work,

and references to ''lawfully making available to the public'' shall mean the undertaking of any of the acts referred to in *paragraphs (a)* to *(g)* by or with the licence of the copyright owner.

(2) References in this Part to the making available to the public of copies of a work shall include the making available to the public of the original of the work.

(3) Subject to *subsection (4)*, the provision of facilities for enabling the making available to the public of copies of a work shall not of itself constitute an act of making available to the public of copies of the work.

(4) Without prejudice to *subsection (3)*, where a person who provides facilities referred to in that subsection is notified by the owner of the copyright in the work concerned that those facilities are being used to infringe the copyright in that work and that person fails to remove that infringing material as soon as practicable thereafter that person shall also be liable for the infringement.

(5) Without prejudice to *subsection (4)*, the Minister may prescribe the form of the notice to be given under that subsection and the form shall specify—

(*a*) the name and address of the person claiming to be the owner of the copyright in the work concerned,

(*b*) the grounds that the person requesting the removal of material has for such removal, and

(*c*) a list of the material which is to be removed.    Pt.II S.40

(6) References in this Part to "performance", in relation to a work, shall include—

(*a*) delivery, in the case of lectures, addresses, speeches and sermons, and

(*b*) any means of presentation of sounds or images, or any combination of sounds or images or representations thereof, including presentation by means of a sound recording, film, broadcast or cable programme of the work.

(7) Where copyright in a work is infringed by its being performed, played or shown in public, by means of apparatus for receiving sounds, images or data or any combination of sounds, images or data, or the representations thereof, conveyed by any means, the person by whom sounds, images or data or any combination of sounds, images or data, or the representations thereof, are sent shall not be regarded as liable for the infringement and a performer shall not be regarded as liable for the infringement to the extent that the infringement relates to his or her activity as a performer.

(8) There shall be a right of the owner of copyright to make available to the public copies of a work or to authorise others to do so which shall be known and in this Part referred to as the "making available right".

**41.**—(1) References in this Part to the issue of copies of a work to the public shall be construed as including:    Distribution right.

(*a*) the act of putting into circulation in a Member State of the EEA copies not previously put into circulation in a Member State of the EEA by or with the licence of the copyright owner; or

(*b*) the act of putting into circulation outside the Member States of the EEA copies not previously put into circulation in a Member State of the EEA or elsewhere.

(2) Without prejudice to the rental right or the lending right, references in this Part to the issue of copies of a work to the public shall not include:

(*a*) any subsequent circulation of copies previously put into circulation; or

(*b*) any subsequent importation of such copies into the State or any other Member State of the EEA,

except in so far as *subsection (1)(a)* applies to putting into circulation in the Member States of the EEA copies previously put into circulation outside the Member States of the EEA.

(3) References in this section to "circulation" shall include sale, rental or loan.

(4) There shall be a right of the owner of copyright to issue copies of a work to the public or to authorise others to do so which shall be known and in this Part referred to as the "distribution right".

[*No. 28.*]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.II
Rental and lending
right.

**42.**—(1) References in this Part to ''rental'' or ''lending'' shall be construed as including references to the rental or lending of:

(*a*) a literary, dramatic or musical work, film or original database;

(*b*) an artistic work, other than—

(i) a work of architecture in the form of a building or a model for a building, or

(ii) a work of applied art;

(*c*) a sound recording; or

(*d*) a typographical arrangement of a published edition,

and shall not include, in the case of a computer program, rentals where the program itself is not the essential object of the rental.

(2) In this Part, subject to *subsection (3)*—

(*a*) ''rental'' means making a copy of a work available for use, on terms that it is to be or may be returned after a limited period of time, for direct or indirect economic or commercial advantage, and

(*b*) ''lending'' means making a copy of a work available for use, on terms that it is to be or may be returned after a limited period of time, otherwise than for direct or indirect economic or commercial advantage, through an establishment to which members of the public have access.

(3) References in this Part to ''rental'' or ''lending'' shall not include the making available of copies of a work for the purposes of—

(*a*) performing, playing or showing in public, broadcasting or inclusion in a cable programme service,

(*b*) exhibition in public, or

(*c*) on the spot reference use.

(4) The making of a copy of a work available between establishments to which members of the public have access shall not infringe the copyright in the work.

(5) For the purpose of this section, where lending by an establishment to which members of the public have access gives rise to a payment the amount of which does not exceed that which is necessary to cover the operating costs of the establishment, there is no direct or indirect economic or commercial advantage.

(6) (*a*) There shall be a right of the owner of copyright to rent copies of a work or to authorise others to do so which shall be known and in this Part referred to as the ''rental right''.

(*b*) There shall be a right of the owner of copyright to lend copies of a work or to authorise others to do so which shall be known and in this Part referred to as the ''lending right''.

**43.**—(1) For the purposes of *section 37*—

Pt.II

Infringement by
adaptation of
works.

　　(*a*) an adaptation is made when it is recorded in writing or
　　　otherwise, and

　　(*b*) it shall be immaterial to the interpretation of this section
　　　whether the adaptation has been recorded in writing or
　　　otherwise at the time an act restricted by copyright is
　　　undertaken.

(2) Without prejudice to the generality of *section 37(1)(c)*, in this
Part, "adaptation" in relation to—

　　(*a*) a literary or dramatic work, film, sound recording, broad-
　　　cast, cable programme or typographical arrangement of a
　　　published edition, includes—

　　　　(i) a translation, arrangement or other alteration of the
　　　　　work,

　　　　(ii) a version of a dramatic work which is converted into
　　　　　a non-dramatic work or the conversion of a non-dra-
　　　　　matic work into a dramatic work, and

　　　　(iii) a version of a work in which the story or action is
　　　　　conveyed wholly or mainly by means of pictures in a
　　　　　form suitable for reproduction;

　　(*b*) a musical work, includes a translation, arrangement or other
　　　alteration or transcription of the work;

　　(*c*) an artistic work, includes a collage of the work with other
　　　works, an arrangement or other alteration of the work;

　　(*d*) a computer program, includes a translation, arrangement or
　　　other alteration of the computer program; or

　　(*e*) an original database, includes a translation, arrangement or
　　　other alteration of the original database.

(3) In this section "translation", in relation to a computer pro-
gram, includes the making of a version of the computer program in
which it is converted into or out of a computer language or code or
into a different computer language or code.

Chapter 5

*Secondary Infringement of Copyright*

**44.**—(1) In this Part "infringing copy", in relation to a copyright
work, shall be construed in accordance with this section.

Interpretation of
infringing copy.

(2) A copy shall be an infringing copy—

　　(*a*) where the making of it constitutes an infringement of the
　　　copyright in the work concerned, or

　　(*b*) where it has been or is to be imported into the State, and
　　　its making in the State would have constituted an
　　　infringement of the copyright in the work concerned, or
　　　a breach of an exclusive licence agreement relating to
　　　that work.

[*No.* **28**.]      *Copyright and Related Rights Act,*      [2000.]
2000.

(3) A copy of a work which has previously been issued to the public in accordance with *section 41* in any Member State of the EEA by, or with the licence of, the copyright owner shall not be deemed to be an infringing copy for the purposes of *subsection (2)*.

(4) Where, in any proceedings for infringement of the copyright in a work, the issue arises whether a copy is an infringing copy and it is proved that—

(*a*) the copy is a copy of the work concerned, and

(*b*) copyright subsists in that work or has subsisted at any time in that work,

it shall be presumed until the contrary is proved that the copy was made at a time when copyright subsisted in the work.

**45.**—A person infringes the copyright in a work where he or she without the licence of the copyright owner—

(*a*) sells, rents or lends, or offers or exposes for sale, rental or loan,

(*b*) imports into the State, otherwise than for his or her private and domestic use,

(*c*) in the course of a business, trade or profession, has in his or her possession, custody or control, or makes available to the public, or

(*d*) otherwise than in the course of a business, trade or profession, makes available to the public to such an extent as to prejudice the interests of the owner of the copyright,

a copy of the work which is, and which he or she knows or has reason to believe is, an infringing copy of the work.

**46.**—(1) A person infringes the copyright in a work where he or she, without the licence of the copyright owner—

(*a*) makes,

(*b*) sells, rents or lends, or offers or exposes for sale, rental or loan,

(*c*) imports into the State, or

(*d*) has in his or her possession, custody or control,

an article specifically designed or adapted for making copies of that work, knowing or having reason to believe that it has been or is to be used to make infringing copies.

(2) A person infringes the copyright in a work where he or she, without the licence of the copyright owner, transmits the work by means of a telecommunications system (otherwise than by broadcasting or inclusion in a cable programme service) knowing or having reason to believe that infringing copies of the work may be made by means of the reception of the transmission in the State or elsewhere.

[2000.]    *Copyright and Related Rights Act,*    [*No.* 28.]
2000.

**47.**—(1)  Where the copyright in a work is infringed by a performance at a place of public entertainment, any person who gave permission for that place to be used for the performance shall also be liable for the infringement unless, when that person gave permission, he or she had reason to believe that the performance would not infringe copyright.

Pt.II

Secondary infringement: permitting use of premises for infringing performances.

(2)  In this section, ''place of public entertainment'' includes premises which are occupied mainly for other purposes and which are from time to time made available for hire for the purpose of public entertainment.

**48.**—Where the copyright in a work is infringed by a public performance of the work, or by playing or showing the work in public, by means of apparatus for—

Secondary infringement: permitting use of apparatus for infringing performances.

(*a*)  playing sound recordings,

(*b*)  showing films, or

(*c*)  receiving sounds or images or any combination of sounds or images, or the representations thereof, conveyed by any means,

the following persons shall also be liable for the infringement:

(i)  a person who supplied the apparatus, or any substantial part thereof if, when he or she supplied the apparatus or part thereof—

(I)  he or she knew or had reason to believe that the apparatus was likely to be used to infringe copyright, or

(II)  in the case of apparatus the normal use of which involves a public performance, playing or showing, he or she had reason to believe that it would be used to infringe copyright;

(ii)  an owner or occupier of premises who gave permission for the apparatus to be brought onto the premises if, when the owner or occupier gave permission, he or she knew or had reason to believe that the apparatus was likely to be used to infringe copyright; and

(iii)  a person who supplied a copy of a sound recording or film used to infringe copyright if, when the person supplied it, he or she knew or had reason to believe that what was supplied, or a copy made directly or indirectly therefrom, was likely to be used to infringe copyright.

### Chapter 6

*Acts Permitted in Relation to Works Protected by Copyright*

**49.**—In this Part, an act may be exempted under more than one category of exemption and the exemption of an act under one category of exemption shall not preclude its exemption under another category.

Exemptions in respect of copyright works.

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.II

Fair dealing:
research or private
study.

**50**.—(1) Fair dealing with a literary, dramatic, musical or artistic work, sound recording, film, broadcast, cable programme, or non-electronic original database, for the purposes of research or private study, shall not infringe any copyright in the work.

(2) Fair dealing with a typographical arrangement of a published edition for the purposes of research or private study shall not infringe any copyright in the arrangement.

(3) The copying by a person, other than the researcher or private student, is not fair dealing where—

    (*a*) in the case of a librarian or archivist, he or she does anything which is not permitted under *section 63*, or

    (*b*) in any other case, the person copying knows or has reason to believe that the copying will result in copies of substantially the same material being provided to more than one person at approximately the same time and for substantially the same purpose.

(4) In this Part, ''fair dealing'' means the making use of a literary, dramatic, musical or artistic work, film, sound recording, broadcast, cable programme, non-electronic original database or typographical arrangement of a published edition which has already been lawfully made available to the public, for a purpose and to an extent which will not unreasonably prejudice the interests of the owner of the copyright.

(5) In this Part, the following acts are not fair dealing—

    (*a*) converting a computer program expressed in a low level computer language into a version expressed in a higher level computer language, or

    (*b*) copying a computer program in an incidental manner in the course of converting that program.

Fair dealing:
criticism or review.

**51**.—(1) Fair dealing with a work for the purposes of criticism or review of that or another work or of a performance of a work shall not infringe any copyright in the work where the criticism or review is accompanied by a sufficient acknowledgement.

(2) Fair dealing with a work (other than a photograph) for the purpose of reporting current events shall not infringe copyright in that work, where the report is accompanied by a sufficient acknowledgement.

(3) In this Part, ''sufficient acknowledgement'' means an acknowledgement identifying the work concerned by its title or other description and identifying the author unless—

    (*a*) in the case of a work which has been lawfully made available to the public, it was so made available anonymously, or

    (*b*) in the case of a work which has not been made available to the public, it is not possible for a person without previous knowledge of the facts to ascertain the identity of the author of the work by reasonable enquiry.

**52.**—(1) The copyright in a work is not infringed by its inclusion in an incidental manner in another work.

(2) The copyright in a work is not infringed by the making available to the public of copies of anything the making of which was not, by virtue of *subsection (1)*, an infringement of the copyright.

(3) A work shall not be regarded as included in an incidental manner in another work where it is included in a manner where the interests of the owner of the copyright are unreasonably prejudiced.

(4) The copyright in a work which has been lawfully made available to the public is not infringed by the use of quotations or extracts from the work, where such use does not prejudice the interests of the owner of the copyright in that work and such use is accompanied by a sufficient acknowledgement.

*Pt.II*

Incidental inclusion of copyright material.

### Education

**53.**—(1) Subject to *subsection (2)*, the copyright in a literary, dramatic, musical or artistic work or the typographical arrangement of a published edition is not infringed by its being copied in the course of instruction or of preparation for instruction.

(2) *Subsection (1)* shall not apply unless—

   (*a*) the copying is done by or on behalf of a person giving or receiving instruction,

   (*b*) the copying is not by means of a reprographic process, and

   (*c*) the copy is accompanied by a sufficient acknowledgement.

(3) Subject to *subsection (4)*, the copyright in a sound recording, film, broadcast, cable programme or an original database is not infringed by its being copied in the course of instruction or of preparation for instruction.

(4) *Subsection (3)* shall not apply unless—

   (*a*) the copying is done by or on behalf of a person giving or receiving instruction,

   (*b*) the copying results in only a single copy being made, and

   (*c*) the copy is accompanied by a sufficient acknowledgement.

(5) Subject to *subsection (6)*, the copyright in a work is not infringed by anything done for the purposes of an examination by way of setting questions, communicating questions to the candidates or answering questions.

(6) *Subsection (5)* shall not apply to the making of a reprographic copy of a musical work for use by an examination candidate in performing the work.

(7) Where a copy that would otherwise be an infringing copy is made under this section but is subsequently sold, rented or lent, or offered or exposed for sale, rental or loan, or otherwise made available to the public, it shall be treated as an infringing copy for those purposes and for all subsequent purposes.

Acts done for purposes of instruction or examination.

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.II

Anthologies for
educational use.

**54.**—(1) Subject to *subsection (2)*, the inclusion of a short passage
from a literary, dramatic or musical work, original database or typo-
graphical arrangement of a published edition which has been lawfully
made available to the public in a collection that—

(*a*) is intended for use—

    (i) in educational establishments and is so described in
its title, or

    (ii) in any advertisements issued by or on behalf of the
publisher,

and

(*b*) consists mainly of material in which no copyright subsists,

shall not infringe the copyright in the work where the work itself
is not intended for use in those establishments and the inclusion is
accompanied by a sufficient acknowledgement.

(2) *Subsection (1)* shall not authorise the inclusion of more than 2
excerpts from works by the same author in collections which have
been lawfully made available to the public by the same publisher
within a period of 5 years.

(3) In relation to any given passage the reference in *subsection (2)*
to excerpts from works of the same author—

(*a*) includes excerpts from works by him or her in collaboration
with another author, and

(*b*) where the passage concerned is from such a work, includes
excerpts from works by any of the authors, whether alone
or in collaboration with another author.

(4) References in this section to the use of a work in an edu-
cational establishment shall be construed as references to any use of
that work for the educational purposes of that establishment.

Performing, playing
or showing work in
course of activities
of educational
establishment.

**55.**—(1) The performance of a literary, dramatic or musical work
before an audience limited to persons who are teachers in or pupils
in attendance at an educational establishment or other persons
directly connected with the activities of that establishment—

(*a*) by a teacher or pupil in the course of the activities of the
establishment concerned, or

(*b*) at the establishment by any person for the purposes of
instruction,

is not a public performance for the purposes of infringement of
copyright.

(2) The playing or showing of a sound recording, film, broadcast
or cable programme at an educational establishment before an audi-
ence referred to in *subsection (1)* for the purposes of instruction is
not a playing or showing of the work in public for the purposes of
infringement of copyright.

(3) For the purposes of this section, a person is not directly con-
nected with the activities of an educational establishment by reason
only that he or she is a parent or guardian of a pupil in attendance
at the educational establishment concerned.

(4) The Minister may specify by order establishments (other than    Pt.II S.55
schools) to be educational establishments for the purposes of this
Act.

**56.**—(1) A fixation of a broadcast or a cable programme, or a copy    Recording by
of such a fixation, may be made by or on behalf of an educational    educational
establishment for the educational purposes of that establishment    establishments of
without infringing the copyright in the broadcast or cable pro-    broadcasts and
gramme, or in any work included in the broadcast or cable    cable programmes.
programme.

(2) This section shall not apply where there is a licensing scheme
certified under *section 173* and the person making the copies knew
or ought to have been aware of the existence of the licensing scheme.

(3) Where a copy which would otherwise be an infringing copy is
made under this section but is subsequently sold, rented or lent, or
offered or exposed for sale, rental or loan, or otherwise made avail-
able to the public, it shall be treated as an infringing copy for those
purposes and for all subsequent purposes.

**57.**—(1) Reprographic copies of passages from literary, dramatic    Reprographic
or musical works or typographical arrangements of published edi-    copying by
tions or original databases which have been lawfully made available    educational
to the public may, to the extent permitted under this section, be    establishments of
made by or on behalf of an educational establishment for the edu-    certain works.
cational purposes of that establishment without infringing any copy-
right in the work, subject to those copies being accompanied by a
sufficient acknowledgement.

(2) Not more than 5 per cent of any work may be copied by or
on behalf of an educational establishment under this section in any
calendar year.

(3) This section shall not apply where there is a licensing scheme
certified under *section 173* and the person making the copies knew
or ought to have been aware of the existence of the licensing scheme.

(4) The terms of a licence granted to an educational establishment
authorising the reprographic copying for the educational purposes of
that establishment of passages from literary, dramatic or musical
works or the typographical arrangements of published editions or
original databases, which have been lawfully made available to the
public, shall be void in so far as they purport to restrict the pro-
portion of a work which may be copied (whether on payment or free
of charge) to less than that which would be permitted under this
section.

(5) Where a copy which would otherwise be an infringing copy is
made under this section but is subsequently sold, rented or lent, or
offered or exposed for sale, rental or loan, or otherwise made avail-
able to the public, it shall be treated as an infringing copy for those
purposes and for all subsequent purposes.

**58.**—(1) Subject to *subsection (2)*, educational establishments and    Copyright not
establishments to which members of the public have access shall be    infringed by
exempt from the payment of remuneration under *section 40(1)(g)*    lending.
and shall not infringe the copyright in a work by the lending of copies
of the work.

[*No.* **28**.]     *Copyright and Related Rights Act,*     [*2000.*]
2000.

Pt.II S.58

(2) The Minister shall prescribe the educational establishments and the establishments to which members of the public have access for the purposes of *subsection (1)*.

### *Libraries and Archives*

Regulations relating to copying by libraries and archives.

**59**.—(1) The Minister may make regulations for the purposes of this section and those regulations may make different provisions for different descriptions of libraries or archives and for different purposes.

(2) Without prejudice to the generality of *subsection (1)*, the Minister may prescribe the libraries and archives to which *sections 60* to *67* apply and may prescribe all or any of the following:

(*a*)  the conditions that are to be complied with when a librarian or archivist of a prescribed library or prescribed archive makes and supplies a copy of any part of a work which has been lawfully made available to the public to a person requiring a copy;

(*b*)  the conditions that are to be complied with when a librarian or archivist of a prescribed library or prescribed archive makes and supplies to another prescribed library or prescribed archive a copy of a work or part of a work which has been lawfully made available to the public and is required by that other prescribed library or prescribed archive;

(*c*)  the conditions that are to be complied with before a librarian or archivist of a prescribed library or prescribed archive makes a copy of a work in the permanent collection of the prescribed library or prescribed archive in order to preserve or replace that work in the permanent collection of that library or archive, or in the permanent collection of another prescribed library or prescribed archive;

(*d*)  the conditions that are to be complied with by a librarian or archivist of a prescribed library or prescribed archive when making or supplying a copy of the whole or part of certain works which have not been lawfully made available to the public from a work in the prescribed library or prescribed archive to a person requiring the copy.

Libraries and archives: declarations.

**60**.—(1) Where regulations made by the Minister under *section 59* require a librarian or archivist to be satisfied as to any matter before making or supplying a copy of a work—

(*a*)  the librarian or archivist concerned may rely on a declaration as to that matter by the person requesting the copy, unless the librarian or archivist is aware that it is false in a material particular, and

(*b*)  in such cases as may be prescribed, the librarian or archivist shall not make or supply the copy in the absence of a declaration in such form as may be prescribed.

(2) Where a person requesting a copy of a work makes a declaration which is false in a material particular and is supplied with a copy which would have been an infringing copy if made by him or her—

(*a*) he or she shall be liable for infringement of copyright as if   Pt.II S.60
he or she had made the copy, and

(*b*) the copy shall be treated as an infringing copy.

**61.**—(1) The librarian or archivist of a prescribed library or pre-   Copying by librarians or archivists: articles in periodicals.
scribed archive may, where the prescribed conditions are complied
with, make and supply a copy of an article or the contents page in a
periodical without infringing any copyright in the article, the contents
page or in any illustrations accompanying the article or the contents
page or in the typographical arrangement.

(2) A copy made under *subsection (1)* shall not be supplied other
than to a person who satisfies the librarian or archivist that he or she
requires that copy for the purposes of research or private study and
he or she shall not use it for any other purpose and that person shall
not be furnished with more than one copy of the same article unless
the person satisfies the librarian or archivist that the previous copy
has been lost, stolen, discarded or destroyed or a reasonable period
of time has elapsed, and that person shall not be furnished with more
articles from a volume of a periodical than the number of issues that
comprise that volume or 10 per cent of the volume, whichever is the
greater.

(3) In this section, ''article'' includes an item of any description in
a periodical with the exception of the table of contents.

**62.**—(1) The librarian or archivist of a prescribed library or pre-   Copying by librarians or archivists: parts of works lawfully made available to public.
scribed archive may, where the prescribed conditions are complied
with, make and supply a copy of part of a work (other than an article
or the contents page in a periodical) which has been lawfully made
available to the public without infringing any copyright in the work,
in any illustrations accompanying the work or in the typographical
arrangement.

(2) A copy made under *subsection (1)* shall not be supplied other
than to a person who satisfies the librarian or archivist that he or she
requires that copy for the purposes of research or private study and
he or she shall not use it for any other purpose and that person shall
not be furnished with more than one copy of the same material
unless the person satisfies the librarian or archivist that the previous
copy has been lost, stolen, discarded or destroyed or a reasonable
period of time has elapsed, and that person shall not be furnished
with a copy of more than a reasonable proportion of any work.

**63.**—(1) A copy of a work shall not be supplied under *section 61*   Multiple copying.
or *62* to more than 3 persons whose requirements are related to any
similar requirement of any other person.

(2) For the purposes of *subsection (1)*—

(*a*) the requirements of persons shall be deemed to be similar
where the requirements are for copies of substantially the
same material at approximately the same time and for
substantially the same purpose, and

(*b*) the requirements of persons shall be deemed to be related
where those persons receive instructions to which the
material is relevant at the same time and place.

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.II

Copying by
librarians or
archivists: supply of
copies to other
libraries and
archives.

**64.**—(1) The librarian or archivist of a prescribed library or pre-
scribed archive may, where the prescribed conditions are complied
with, make and supply to another prescribed library or prescribed
archive a copy of—

    (*a*) a periodical or articles or the contents page contained
        therein, or

    (*b*) the whole or part of a work,

which has been lawfully made available to the public, without infring-
ing any copyright in the periodical, in the article, in the contents page
or in the work, in any illustrations accompanying the periodical, the
article, the contents page or the work or in the typographical
arrangement.

(2) *Subsection (1)* shall not apply where, at the time the copy is
made, the librarian or archivist making it could, by reasonable
enquiry, obtain the consent of a person entitled to authorise the mak-
ing of the copy.

Copying by
librarians or
archivists:
replacement copies
of works.

**65.**—(1) The librarian or archivist of a prescribed library or pre-
scribed archive may, where the prescribed conditions are complied
with, make a copy of a work in the permanent collection of the
library or archive in order—

    (*a*) to preserve or replace that work by placing the copy in the
        permanent collection of that library or archive in addition
        to or in place of that work, or

    (*b*) to replace in the permanent collection of another prescribed
        library or prescribed archive a work which has been lost,
        destroyed or damaged,

without infringing the copyright in the work, in any illustrations
accompanying the work or in the typographical arrangement.

(2) This section shall only apply where it is not reasonably practi-
cable to purchase a copy of the work concerned for the purposes of
*subsection (1)*.

Copying by
librarians or
archivists for certain
purposes.

**66.**—(1) The librarian or archivist of a prescribed library or pre-
scribed archive may, where the prescribed conditions are complied
with, make a copy of a work in the permanent collection of the
library or archive—

    (*a*) for the purposes of obtaining insurance cover for the works
        concerned;

    (*b*) for purposes of security;

    (*c*) for the purposes of compiling or preparing a catalogue;

    (*d*) for exhibition in the library or archive; or

    (*e*) for the purposes of informing the public of an exhibition,

without infringing any copyright in the work, in any illustrations
accompanying the work, or in the typographical arrangement.

[2000.]    *Copyright and Related Rights Act,*    [*No.* **28**.]
2000.

(2) This section shall apply to copying conducted for the curatorial    Pt.II S.66
purposes specified in *subsection (1)*, and to an extent reasonably jus-
tified by the non-commercial purpose to be achieved.


**67.**—(1) The librarian or archivist of a prescribed library or pre-    Copying by
scribed archive may, where the prescribed conditions are complied    librarians or
with, make and supply a copy of a work or part of a work which has    archivists: certain
not been lawfully made available to the public from any work in the    works not lawfully
permanent collection of the library or archive without infringing the    made available to
copyright in the work or in any illustrations accompanying the work    public.
or in the typographical arrangement.

(2) This section shall not apply where the copyright owner has
prohibited copying of the work and at the time the copy is made the
librarian or archivist making the copy knew, or ought to have been
aware of, that fact.

(3) A copy made under *subsection (1)* shall not be supplied other
than to a person who satisfies the librarian or archivist that he or she
requires that copy for the purposes of research or private study and
he or she will not use it for any other purpose and that person shall
not be furnished with more than one copy of that work or part of
that work.


**68.**—Where a work of cultural or historical importance or interest    Copy of work
may not lawfully be exported from the State unless a copy of it is    required to be
made and deposited in a library, archive or other institution desig-    made as condition
nated by the Minister for Arts, Heritage, Gaeltacht and the Islands    of export.
under section 50 of the National Cultural Institutions Act, 1997, it
shall not be an infringement of copyright to make that copy.


**69.**—The librarian or archivist of a library or archive prescribed    Copying by
by the Minister for the purpose of lending shall be exempt from the    librarians or
payment of remuneration under *section 40(1)(g)* and shall not    archivists:
infringe the copyright in a work by the lending of copies of that work.    exemptions.
A librarian, archivist, person or establishment shall be exempt from
the payment of remuneration under *section 40(1)(g)* and shall not
infringe the copyright in a work by the lending of a copy of that work
to a library or archive prescribed by the Minister for the purpose of
receiving such loans.


**70.**—Where a copy which would otherwise be an infringing copy    Copying by
is made under *section 61, 62, 64, 65, 67* or *68* but is subsequently    librarians or
sold, rented or lent, or offered or exposed for sale, rental or loan, or    archivists: infringing
otherwise made available to the public, it shall be treated as an    copy.
infringing copy for those purposes and for all subsequent purposes.


*Public Administration*

**71.**—(1) The copyright in a work is not infringed by anything done    Parliamentary and
for the purposes of parliamentary or judicial proceedings or for the    judicial proceedings.
purpose of reporting those proceedings.

(2) *Subsection (1)* shall not be construed as authorising the copy-
ing of a work which is itself a report of the proceedings which has
been lawfully made available to the public.

[*No.* **28**.]     *Copyright and Related Rights Act,*     [2000.]
2000.

Pt.II
Statutory inquiries.

**72.**—(1)  The copyright in a work is not infringed by anything done for the purposes of a statutory inquiry or for the purpose of reporting any such inquiry.

(2)  *Subsection (1)* shall not be construed as authorising the copying of a work which is itself a report of the proceedings which has been lawfully made available to the public.

(3)  The copyright in a work is not infringed by the making available to the public of copies of a report of a statutory inquiry containing the work or materials from the report.

Copying of material
in public records.

**73.**—Any material which is comprised in records which are open to public inspection may be copied, and a copy may be supplied to any person, without infringement of copyright.

Material open to
public inspection or
on statutory
register.

**74.**—(1)  Without prejudice to the generality of *section 73*, where material is open to public inspection pursuant to a statutory requirement, or is on a statutory register, the copyright in the material is not infringed by the copying, for a purpose which does not involve the making available to the public of copies, of so much of the material as contains factual information of any description, by or with the authority of the person required to make the material open to public inspection or, as the case may be, the person maintaining the register.

(2)  Where material is open to public inspection pursuant to a statutory requirement, or is on a statutory register, the copyright in the material is not infringed by the copying or making available to the public of copies of that material, for the purpose of enabling the material to be inspected at another time or place, or otherwise facilitating the exercise of any right for the purpose of which the requirement is imposed, by or with the authority of the person required to make the material open to public inspection or, as the case may be, the person maintaining the register.

(3)  Where material is made available to the public under this section the person granting access to the material shall ensure that it bears a mark clearly indicating that it is provided for the purpose of inspection and that no other use of the material may be made without the licence of the copyright owner.

(4)  Material may not be provided under this section unless the person granting access to the material has obtained from the person requesting the material a declaration, in such form as may be prescribed, indicating that the material is required for the sole purpose of enabling the material to be inspected at another time or place or to otherwise facilitate the exercise of the right of public inspection.

(5)  Where material which is open to public inspection pursuant to a statutory requirement, or is on a statutory register, contains information about matters of general, scientific, technical, commercial or economic interest, the copyright in the material is not infringed by the copying or making available to the public of copies of that material for the purpose of disseminating that information, by or with the authority of the person required to make the material open to public inspection or, as the case may be, the person maintaining the register.

(6) The Minister may prescribe the conditions which are to be complied with before material is made available to the public under this section.

Pt.II S.74

(7) The Minister may by order provide that *subsections (1)* to *(5)* apply—

    (*a*) to material made open to public inspection by—

        (i) an international organisation specified in the order, or

        (ii) a person specified in the order who has functions in the State under an international agreement to which the State is a party,

    or

    (*b*) to a register maintained by an international organisation specified in the order,

as they apply in relation to material that is open to public inspection pursuant to a statutory requirement, or on a statutory register.

**75.**—(1) Where a work has been communicated to the Government or either or both of the Houses of the Oireachtas for any purpose, by or with the licence of the copyright owner, and any fixation of the work or any thing containing the work is owned by, or is in the possession, custody or control of, the Government or either or both of the Houses of the Oireachtas, the Government or either or both of the Houses of the Oireachtas may copy the work, make available to the public copies of the work, or cause the work to be copied or made available to the public for the purpose for which the work was communicated to them, or for any related purpose which could reasonably have been anticipated by the copyright owner, without infringing the copyright in the work.

Works communicated to Government or Oireachtas.

(2) The Government or either or both of the Houses of the Oireachtas shall not make available to the public copies of a work referred to in *subsection (1)* or cause the work to be copied or made available, under this section, where the work has previously been lawfully made available to the public otherwise than under this section.

**76.**—(1) Where the undertaking of a particular act is specifically authorised by an enactment then, unless the enactment provides otherwise, the undertaking of that act shall not infringe the copyright in a work.

Acts done under statutory authority.

(2) Nothing in this section shall be construed as excluding any defence available under any enactment.

**77.**—(1) Nothing in this Act shall affect any right or privilege of the Government subsisting otherwise than by virtue of an enactment, and nothing in this Act shall affect any right or privilege of the Government or of any other person under any enactment, except in so far as that enactment is expressly repealed, amended or modified by this Act.

Savings.

[*No.* **28.**]     *Copyright and Related Rights Act,*     [2000.]
2000.

Pt.II S.77

(2) Nothing in this Act shall affect the right of the Government or of any person deriving title from the Government to sell, use or otherwise deal with articles forfeited under the laws relating to customs or excise, including any article so forfeited by virtue of this Act or of any enactment repealed by this Act.

(3) Nothing in this Act shall affect the operation of any rule of equity relating to breaches of trust or confidence.

(4) Subject to *subsections (1)* to *(3)*, no copyright or right in the nature of copyright, shall subsist otherwise than by virtue of this Act or of some other enactment in that behalf.

### Designs

Acts done in reliance on registration of design.

**78.**—(1) The copyright in a work is not infringed by anything done—

(*a*) pursuant to an assignment or licence made or granted by a person registered under the Act of 1927 as the proprietor of a corresponding design, and

(*b*) in good faith and in reliance on such registration and without notice of any proceedings for the cancellation of the registration or for rectifying the relevant entry in the register of designs.

(2) In *subsection (1)* ''corresponding design'', in relation to a work, means a design within the meaning of the Act of 1927 which, if applied to an article, would produce anything which would be treated for the purposes of this Part as a copy of the work.

Exception from protection of copyright in certain works.

**79.**—(1) The making of an object of any description which is in three dimensions shall not be taken to constitute an infringement of the copyright in a work in two dimensions, if the object would not appear, to a person who is not an expert in relation to objects of that description, to be a reproduction of the work.

(2) The act of reproducing an object of any description which is in three dimensions shall not be taken to constitute an infringement of the copyright in a work in two dimensions (other than a work relating to a work of architecture) where—

(*a*) the lines, contours, colours, shape, texture and materials of the product itself or its ornamentation that appear in the work and are applied to the objects, are wholly or substantially functional, and

(*b*) the object is one of a number, in excess of 50, of identical objects which have been manufactured and made commercially available by the owner of the copyright or by a person authorised by him or her in that behalf.

### Computer Programs

Back-up copies of computer programs.

**80.**—(1) It is not an infringement of the copyright in a computer program for a lawful user of a copy of the computer program to make a back-up copy of it which is necessary for him or her to have for the purposes of his or her lawful use.

(2)  For the purposes of this section and *sections 81* and *82*, a per-  Pt.II S.80
son is a ''lawful user'' of a computer program where, whether under
a licence to undertake any act restricted by the copyright in the pro-
gram or otherwise, he or she has a right to use the program, and
''lawful use'' shall be construed accordingly.

**81.**—(1) It is not an infringement of the copyright in a computer    Lawful copies of
program for a lawful user—    computer programs.

   (*a*)  to make a permanent or temporary copy of the whole or a
      part of the computer program by any means or in any
      form, or

   (*b*)  to make a translation, adaptation, arrangement or any other
      alteration of the computer program and to copy the
      results thereof,

to achieve the interoperability of an independently created computer
program with other programs where the following conditions are
complied with:

   (i)  those acts are performed by the lawful user or on his or her
     behalf by a person authorised to do so;

   (ii)  the information necessary to achieve interoperability has
      not previously been available to the person referred to in
      *subparagraph (i)*; and

   (iii)  those acts are confined to the parts of the original program
       which are necessary to achieve interoperability.

(2)  *Subsection (1)* shall not permit the information obtained
through its application—

   (*a*)  to be used other than to achieve the interoperability of the
      independently created computer program,

   (*b*)  to be given to persons other than those referred to in that
      subsection, except where necessary for the interoperabi-
      lity of the independently created computer program, or

   (*c*)  to be used for the development, production or marketing of
      a computer program substantially similar in its
      expression, or for any other act which infringes copyright.

**82.**—(1) It is not an infringement of the copyright in a computer    Exceptions to
program for a lawful user of a copy of the computer program to    infringement of
make a permanent or temporary copy of the whole or a part of the    copyright in
program by any means and in any form or to translate, adapt or    computer programs.
arrange or in any other way alter the computer program where such
actions are necessary for the use of the program by the lawful user
in accordance with its intended purpose, including error correction.

(2)  It is not an infringement of the copyright in a computer pro-
gram for a lawful user of a copy of the computer program to observe,
study or test the functioning of the program in order to determine
the ideas and principles which underlie any element of the program,
where he or she does so while performing any of the acts of loading,
displaying, running, transmitting or storing the program which he or
she is authorised to do.

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

*Original Database*

Pt.II

Access to or use of
original database.

**83.**—It is not an infringement of the copyright in an original data-
base for a person who has the right to use the database or any part
thereof, whether under a licence to undertake any of the acts restric-
ted by the copyright in the original database or otherwise, to under-
take, in the exercise of that right, anything which is necessary for the
purposes of access to or use of the contents of the database or part
thereof.

*Typefaces*

Use of typefaces:
printing.

**84.**—(1) It is not an infringement of the copyright in a work which
consists of the design of a typeface—

(*a*)  to use the typeface in the ordinary course of typing, compos-
ing text, typesetting or printing,

(*b*)  to possess an article for the purpose of such use, or

(*c*)  to do anything in relation to material produced by such use,

and this subsection applies notwithstanding that an article is used
which is an infringing copy of the work.

(2)  A person infringes the copyright in a work consisting of the
design of a typeface where he or she, without the licence of the copy-
right owner—

(*a*)  makes,

(*b*)  sells, rents or lends, or offers or exposes for sale, rental or
loan, exhibits in public or distributes,

(*c*)  imports into the State, or

(*d*)  has in his or her possession, custody or control, for the pur-
pose of sale, rental or loan, or offering or exposing for
sale, rental or loan, or for exhibition in public or dis-
tribution,

an article specifically designed or adapted for producing material in
the particular typeface, knowing or having reason to believe that the
article has been or is to be used to make copies that infringe the
copyright in the work, including copies which would not be infringing
copies under *subsection (1)*.

Articles for
producing materials
in particular
typefaces.

**85.**—(1)  This section applies to the copyright in a work consisting
of the design of a typeface where articles specifically designed or
adapted for producing material in that typeface have been marketed
by or with the licence of the copyright owner.

(2)  After the expiration of 15 years from the end of the calendar
year in which the articles referred to in *subsection (1)* are marketed
for the first time, the work may be copied by making further such
articles, or doing anything for the purpose of making such articles
and anything may be done in relation to articles so made, without
infringing the copyright in the work.

*Works in Electronic Form*

**86.**—(1)  This section applies where a copy of a work in electronic form has been purchased on terms which expressly or impliedly allow the purchaser to copy the work, or to adapt it or make copies of an adaptation, in connection with his or her use of the work.

Pt.II

Transfer of copies of work in electronic form.

(2)  Where there are no express terms—

    (*a*)  prohibiting the transfer of the copy by the purchaser, imposing obligations which continue after a transfer, prohibiting the assignment of any licence or terminating any licence on a transfer, or

    (*b*)  providing for the conditions on which a transferee may undertake the acts which the purchaser was permitted to undertake,

then, any acts which the purchaser was permitted to undertake may also be undertaken by a transferee without infringement of the copyright, but any copy or adaptation or copy of an adaptation made by the purchaser which is not also transferred shall be treated as an infringing copy for those purposes and for all subsequent purposes.

(3)  *Subsection (2)* applies where the original purchased copy is no longer usable and that which is transferred is a further copy used in its place.

(4)  This section shall apply on a second and subsequent transfer in like manner as to the first transfer to a purchaser and references to the purchaser shall be construed as references to a second or subsequent transferee.

*Miscellaneous Matters Relating to Copyright*

**87.**—(1)  The copyright in a work is not infringed by the making of a transient and incidental copy of that work which is technically required for the viewing of or listening to the work by a member of the public to whom a copy of the work is lawfully made available.

Transient and incidental copies.

(2)  Where a copy, which would otherwise be an infringing copy, is made under this section and is subsequently sold, rented or lent, or offered or exposed for sale, rental or loan, or otherwise made available to the public, it shall be deemed to be an infringing copy for those purposes and for all subsequent purposes.

**88.**—(1)  The copyright in a work is not infringed by an act undertaken when, or pursuant to arrangements made when—

Anonymous or pseudonymous works: acts permitted.

    (*a*)  it is not possible to ascertain the identity of the author of the work by reasonable enquiry, and

    (*b*)  it is reasonable to assume that the copyright has expired.

(2)  Where a work is a work of joint authorship the reference in *subsection (1)* to the possibility of ascertaining the identity of the author shall be construed as a reference to its being possible to ascertain the identity of any of the authors.

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.II

Pt.II

Use of notes or
recordings of
spoken words in
certain cases.

**89.**—(1) Subject to compliance with the conditions specified in *subsection (2)*, where a record of spoken words is made, in writing or otherwise, for the purpose of—

(*a*) reporting current events, or

(*b*) broadcasting or including in a cable programme service the work or part of the work,

it is not an infringement of any copyright in the words as a literary or dramatic work, or in any literary or dramatic work or recording arising from the recording of the words, to use the record or material taken from it or to copy the record, or any such material, and to use the copy for the purposes referred to in *paragraph (a) or (b)*.

(2) The conditions referred to in *subsection (1)* are—

(*a*) that the record is a direct record of the spoken words and is not taken from a previous record or from a broadcast or cable programme,

(*b*) that the making of the record was not prohibited by the speaker and, where copyright already subsisted in the work, did not infringe the copyright in the work,

(*c*) that the use made of the record or material taken from it is not prohibited by or on behalf of the speaker or copyright owner before the record was made, and

(*d*) that the use made of the record or material taken from it is by or with the authority of a person who is lawfully in possession of the record.

Public reading or
recitation of works.

**90.**—(1) The reading or recitation in public by one person of any reasonable extract from a literary or dramatic work which has been lawfully made available to the public, where accompanied by a sufficient acknowledgement, shall not infringe the copyright in the work.

(2) The copyright in a work is not infringed by the making of a fixation, or the broadcasting or inclusion in a cable programme service, of a reading or recitation which by virtue of *subsection (1)* does not infringe the copyright in the work.

(3) Where a copy, which would otherwise be an infringing copy, is made under this section and is subsequently sold, rented or lent, or offered or exposed for sale, rental or loan, or otherwise made available to the public, it shall be deemed to be an infringing copy for those purposes and for all subsequent purposes.

Abstracts of
scientific or
technical articles.

**91.**—Where an article on a scientific or technical subject is lawfully made available to the public in a periodical accompanied by an abstract indicating the contents of the article, it is not an infringement of the copyright in the abstract or in the article to copy the abstract or to make available to the public copies of the abstract or to include the abstract in any other work.

Fixations of
performances of
works of folklore.

**92.**—(1) A fixation of a performance of an anonymous work which has not been lawfully made available to the public may be made for the purpose of including it in an archive maintained by a

designated body without infringing the copyright in the work where    Pt.II S.92
at the time the fixation is made—

> (*a*) the making of the fixation does not infringe any other copy-
> right, and

> (*b*) the making of the fixation is not prohibited by any
> performer.

(2) A copy of a fixation made under *subsection (1)* and included
in an archive maintained by a designated body may, subject to com-
pliance with the conditions referred to in *subsection (3)*, be made
and supplied by the archivist without infringing the copyright in the
fixation or the works included in it.

(3) The conditions referred to in *subsection (2)* are—

> (*a*) that a copy may not be supplied other than to a person who
> satisfies the archivist that he or she requires the copy for
> the purposes of research or private study and he or she
> will not use it for any other purpose, and

> (*b*) that a person shall not be furnished with more than one
> copy of the same fixation.

(4) In this section, ''designated body'' means a body designated
for the purposes of this section by order of the Minister who shall
not designate a body unless he or she is satisfied that the body is not
established or conducted for profit.

**93.**—(1) This section applies to the copyright in—    Representation of
certain artistic
works on public
display.

> (*a*) buildings, and

> (*b*) sculptures, models for buildings and works of artistic crafts-
> manship, where permanently situated in a public place or
> in premises open to the public.

(2) The copyright in a work to which this section applies is not
infringed by—

> (*a*) making a painting, drawing, diagram, map, chart, plan,
> engraving, etching, lithograph, woodcut, print or similar
> thing representing it,

> (*b*) making a photograph or film of it, or

> (*c*) broadcasting or including in a cable programme service, an
> image of it.

(3) The copyright in a work to which this section applies is not
infringed by the making available to the public of copies of anything
the making of which is not, by virtue of this section, an infringement
of the copyright in the work.

**94.**—(1) It is not an infringement of the copyright in an artistic    Advertising sale of
work to copy it, or to make available to the public copies of it, for    artistic work.
the purpose of advertising the sale of the work.

(2) Where a copy which would otherwise be an infringing copy is
made under this section but is subsequently sold, rented or lent, or
offered or exposed for sale, rental or loan, or otherwise made avail-
able to the public, it shall be treated as an infringing copy for those
purposes and for all subsequent purposes.

Pt.II

Making of
subsequent works
by same artist.

**95.**—Where the author of an artistic work is not the copyright owner, it is not an infringement of the copyright in the work to copy the work in making another artistic work, where the author does not repeat or imitate the main design of the earlier work.

Reconstruction of
buildings.

**96.**—Where anything is done for the purposes of reconstructing a building it is not an infringement of the copyright in the building or in any drawings or plans in accordance with which the building was constructed by or with the licence of the copyright owner.

Playing or showing
of sound recordings,
broadcasts and
cable programmes
in certain premises.

**97.**—(1) Subject to *subsection (2)*, it is not an infringement of the copyright in a sound recording, broadcast or cable programme to cause a sound recording, broadcast or cable programme to be heard or viewed where it is heard or viewed—

  (*a*) in part of the premises where sleeping accommodation is provided for the residents or inmates, and

  (*b*) as part of the amenities provided exclusively or mainly for residents or inmates.

  (2) *Subsection (1)* does not apply in respect of any part of premises to which *subsection (1)* applies where there is a discrete charge made for admission to the part of the premises where a sound recording, broadcast or cable programme is to be heard or viewed.

Playing of sound
recordings for clubs,
societies, etc.

**98.**—(1) Subject to compliance with the conditions specified in *subsection (2)*, it is not an infringement of the copyright in a sound recording to play it as part of the private activities of or for the benefit of a club, society or other organisation.

  (2) The conditions referred to in *subsection (1)* are—

  (*a*) that the club, society or other organisation is not established or conducted for profit and its main objects are charitable or are otherwise concerned with the advancement of religion, education or social welfare, and

  (*b*) that the proceeds of any charge for admission to the place where the sound recording is to be heard are applied solely for the purposes of the club, society or other organisation.

  (3) *Subsection (1)* shall not apply in the case of any club, society or other organisation where a charge is made for admission to the place where the sound recording is heard and any of the proceeds of the charge are applied otherwise than for the purposes of the club, society or other organisation.

Copying for
purpose of
broadcast or cable
programme.

**99.**—(1) Where, by virtue of a licence or assignment of copyright, a person is authorised to broadcast or include in a cable programme service a work or an adaptation of a work, he or she shall be deemed to be licensed by the owner of the copyright in the work to copy or authorise the copying of that work by means of his or her own facilities for the purposes of his or her own broadcast or cable programme.

  (2) It shall be a condition of a licence conferred by virtue of *subsection (1)* that any copy resulting from the exercise of rights granted

by the licence shall not be used for any purpose other than the broad-cast or cable programme and shall be destroyed within 3 months of first being used for broadcasting or included in a cable programme service.

(3)  A copy of a work made under this section shall be treated as an infringing copy where it is used for purposes other than broadcast-ing or inclusion in a cable programme service or where it is used after the expiration of 3 months from the date on which it is first used for broadcasting or included in a cable programme service.

**100.**—(1) The copyright in a work is not infringed by the making or use by an authorised broadcaster or authorised cable programme service provider, for the purpose of maintaining supervision and con-trol over programmes broadcast by them or included by them in a cable programme service, of fixations of those programmes.

(2)  The copyright in a work is not infringed by any use made by a body established by the State to regulate the operations of broad-casters or cable programme service providers of any fixations of broadcasts or cable programmes.

**101.**—(1) The making for private and domestic use of a fixation of a broadcast or cable programme solely for the purpose of enabling it to be viewed or listened to at another time or place shall not infringe the copyright in the broadcast or cable programme or in any work included in such a broadcast or cable programme.

(2) Subject to *subsection (3)*, the making by an establishment for private and domestic use of a fixation of a broadcast or cable pro-gramme solely for the purpose of enabling it to be viewed or listened to at another time or place shall not infringe the copyright in the broadcast or cable programme or in any work included in such a broadcast or cable programme.

(3)  The Minister may specify by order establishments for the pur-poses of this section.

(4)  Where a fixation which would otherwise be an infringing copy is made under this section and is subsequently sold, rented or (otherwise than to a person's family member or friend for private and domestic purposes) lent, or offered or exposed for sale, rental or loan, or otherwise made available to the public, it shall be deemed to be an infringing copy for those purposes and for all subsequent purposes.

**102.**—The making for private and domestic use of a photograph of the whole or any part of an image forming part of a television broadcast or cable programme, or of a copy of such a photograph, shall not infringe the copyright in the broadcast or cable programme or in any film included in it.

**103.**—(1) This section applies where a broadcast made from a place in the State is, by reception and immediate retransmission, without alteration, included in a cable programme service.

(2)  The copyright in a broadcast to which this section applies is not infringed where—

(*a*) the inclusion is pursuant to a statutory requirement, or

Pt.II S.99

Recording for purposes of supervision and control of broadcasts and cable programmes.

Recording for purposes of time-shifting.

Photographs of television broadcasts or cable programmes.

Reception and retransmission of broadcasts in cable programme services.

[*No.* **28**.]     *Copyright and Related Rights Act,*     [2000.]
2000.

Pt.II S.103

    (*b*) the broadcast is made for reception in the area in which the cable programme service is provided and it is not a satellite transmission or an encrypted transmission.

    (3) Without prejudice to the generality of *subsection (4)*, the copyright in a work included in the broadcast is not infringed where—

    (*a*) the inclusion is pursuant to a statutory requirement, or

    (*b*) the broadcast is made for reception in the area in which the cable programme service is provided and it is not a satellite transmission or an encrypted transmission.

    (4) Where the making of a broadcast is an infringement of the copyright in a work included in the broadcast, the fact that the broadcast was retransmitted as a programme in a cable programme service shall be taken into account in assessing the damages for that infringement.

Provision of modified works.

    **104**.—(1) A designated body may—

    (*a*) make a copy of a work for the purpose of modifying that copy to meet the special needs of a person who has a physical or mental disability, and

    (*b*) supply that modified copy to that person,

without infringing the copyright in that work.

    (2) Where a copy which would otherwise be an infringing copy is made under this section, but is subsequently sold, rented or lent, or offered or exposed for sale, rental or loan, or otherwise made available to the public, it shall be treated as an infringing copy for those purposes and for all subsequent purposes.

    (3) In this section, ''designated body'' means a body designated for the purposes of this section by order of the Minister who shall not designate a body unless he or she is satisfied that the body is not established or conducted for profit.

Recording for archival purposes.

    **105**.—(1) A fixation of a broadcast or a cable programme of a designated class or a copy of such a fixation may be made for the purpose of including it in an archive maintained by a designated body without infringing the copyright in the broadcast or cable programme or in any work included therein.

    (2) In this section—

''designated body'' means a body designated for the purposes of this section by order of the Minister;

''designated class'' means a class designated for the purposes of this section by order of the Minister.

    (3) The Minister shall not designate a body unless he or she is satisfied that the body is not established or conducted for profit.

Adaptation of a work.

    **106**.—It is not an infringement of the copyright in a work to make an adaptation of the work by any act which may otherwise be done without infringing the copyright in a work under this Chapter.

Chapter 7                                                    Pt.II

*Copyright: Moral Rights*

**107.**—(1) Subject to the exceptions specified in *section 108*, the author of a work shall have the right to be identified as the author and that right shall also apply in relation to an adaptation of the work.    Paternity right.

(2) Where an author uses a pseudonym, initials or other form of identification, that form shall be used to identify his or her work.

(3) The right conferred by this section shall be known and in this Part referred to as the ''paternity right''.

**108.**—(1) The paternity right is not infringed by anything done under *section 52, 53(5), 71, 72* or *88*.    Exceptions to paternity right.

(2) The paternity right shall not apply to anything done by or with the authority of the copyright owner where the copyright in the work originally vested in an employer under *section 23*.

(3) The paternity right shall not apply in relation to a work made for the purpose of reporting current events.

(4) The paternity right shall not apply to a work made for the purposes of—

(*a*) a newspaper or periodical, or

(*b*) an encyclopaedia, dictionary, yearbook or other collective work of reference,

or in relation to a work made available to the public with the licence of the author for those purposes.

(5) The paternity right shall not apply in relation to a work—

(*a*) in which Government or Oireachtas copyright subsists, or

(*b*) in which the copyright originally vested in a prescribed international organisation,

unless the author has previously been identified as the author in or on copies of the work which have been lawfully made available to the public.

**109.**—(1) Subject to the exceptions and qualifications specified in *sections 110* and *111*, the author of a work shall have the right to object to any distortion, mutilation or other modification of, or other derogatory action in relation to, the work which would prejudice his or her reputation and that right shall also apply in relation to an adaptation of the work.    Integrity right.

(2) The right conferred by this section applies to any addition to, deletion from or alteration to or adaptation of parts of a work resulting from any previous addition to, deletion from or alteration to or adaptation of a work or parts of a work by a person other than the author, where those parts are attributed to, or are likely to be regarded as the work of, the author.

[*No.* **28**.]      *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.II S.109

(3) The right conferred by this section shall be known and in this Part referred to as the ''integrity right''.

Exceptions to integrity right.

**110**.—(1) Subject to *subsections (2)* and *(3)*, the integrity right shall not apply to—

(*a*)  a work made for the purpose of reporting current events;

(*b*)  a work made for the purposes of—

   (i)  a newspaper or periodical, or

   (ii)  an encyclopaedia, dictionary, yearbook or other collective work of reference,

or to a work made available to the public with the licence of the author for such purposes; or

(*c*)  a subsequent use of a work referred to in *paragraph (b)* without any modification of the version made available to the public under that paragraph.

(2) Subject to *subsection (3)*, the integrity right is not infringed—

(*a*)  by an act which under *section 51* or *88* would not infringe the copyright in a work, or

(*b*)  by anything done for the purposes of—

   (i)  avoiding any contravention of civil or criminal law,

   (ii)  complying with a duty imposed by or under an enactment, or

   (iii)  in the case of authorised broadcasters or authorised cable programme service providers, avoiding the inclusion in a programme which is broadcast or included in a cable programme service by those broadcasters or providers, of anything which is likely to offend public morality or which is likely to encourage or incite to crime or to lead to public disorder.

(3) *Subsection (2)(b)* shall not apply unless the author is identified at the time of the act concerned or has previously been identified in or on copies of the work which have been lawfully made available to the public and there is a sufficient disclaimer.

(4) In this Part ''sufficient disclaimer'', in relation to an act capable of infringing the integrity right, means a clear and reasonably prominent indication given at the time of the act, or where the author is then identified, appearing with the identification, that the work has been subjected to an action which the author has not licensed.

Qualification of integrity right in certain cases.

**111.**—(1) The integrity right shall be qualified in the manner specified in *subsection (2)* in respect of—

(*a*)  works in which copyright originally vested in the author's employer under *section 23*,

(*b*)  works in which Government or Oireachtas copyright subsists, and

(*c*) works in which copyright originally vested in a prescribed
international organisation.

Pt.II S.111

(2) The integrity right shall not apply to anything done in relation
to works referred to in *subsection (1)* by or with the licence of the
copyright owner unless the author—

(*a*) is identified at the time of the act concerned, or

(*b*) has previously been identified in or on copies of the work
which have been lawfully made available to the public,

and where, in such a case, the integrity right applies, that right shall
not be infringed where there is a sufficient disclaimer.

**112.**—A person infringes the integrity right where he or she—

Secondary
infringement of
integrity right:
possessing or
dealing.

(*a*) sells, rents or lends, or offers or exposes for sale, rental or
loan,

(*b*) imports into the State, otherwise than for his or her private
and domestic use,

(*c*) in the course of a business, trade or profession, has in his or
her possession, custody or control, or

(*d*) makes available to the public,

a work or a copy of a work or an adaptation thereof which has, and
which he or she knows or has reason to believe has, been subjected to
any distortion, mutilation or other modification or other derogatory
action within the meaning of *section 109.*

**113.**—(1) A person has the right not to have a work falsely attri-
buted to him or her as author.

False attribution of
work.

(2) The right conferred by *subsection (1)* is infringed by a person
where he or she—

(*a*) sells, rents or lends, or offers or exposes for sale, rental or
loan,

(*b*) imports into the State, otherwise than for his or her private
and domestic use,

(*c*) in the course of a business, trade or profession, has in his or
her possession, custody or control, or

(*d*) makes available to the public,

a work, or a copy of a work, in or on which there is a false attribution,
knowing or having reason to believe that the attribution is false.

(3) The right conferred by *subsection (1)* is infringed by a person
where he or she—

(*a*) sells, rents or lends, or offers or exposes for sale, rental or
loan,

(*b*) imports into the State, otherwise than for his or her private
and domestic use,

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.II S.113

(*c*) in the course of a business, trade or profession, has in his or her possession, custody or control, or

(*d*) makes available to the public,

a work which has been altered as being the unaltered work of the author, or a copy of such a work as being a copy of the unaltered work of the author, knowing or having reason to believe that the work or the copy of the work has been altered.

(4) This section applies where a work is falsely represented as being an adaptation of the work of a person in the same manner as it applies where a work is so represented as being the work of a person.

(5) In this Part "attribution", in relation to a work, means a statement, express or implied, as to who is the author of the work.

Right to privacy in photographs and films.

**114.**—(1) Subject to the exceptions specified in *subsection (3)*, a person who, for private and domestic purposes, commissions the taking of a photograph or the making of a film has, where copyright subsists in the resulting work, the right not to have the work or copies of the work made available to the public.

(2) Subject to *subsection (3)*, the act of making available to the public, or authorising the making available to the public, of a work or copies of a work referred to in *subsection (1)* without the authority of the person who commissions the work infringes the right conferred by *subsection (1)*.

(3) The right conferred by *subsection (1)* shall not be infringed by an act which under *section 52, 71, 72, 76* or *88* would not infringe the copyright in the work.

Duration of moral rights.

**115.**—(1) The paternity right, the integrity right and the right conferred by *section 114* to privacy in photographs and films shall subsist for the same period of time as the copyright in the work subsists.

(2) The right conferred by *section 113* in relation to a false attribution of a work shall subsist for 20 years after the death of the person on whom the right is conferred.

Waiver of rights.

**116.**—(1) Subject to *subsection (3)*, any of the rights conferred by this Chapter may be waived.

(2) A waiver made under this section shall be in writing and signed by the person waiving the right concerned.

(3) A waiver made under *subsection (1)*—

(*a*) may relate to a specific work, to works of a specified description or to works generally, and may relate to existing or future works, and

(*b*) may be conditional or unconditional, and may be expressed to be subject to revocation,

and where a waiver is made in favour of the owner or prospective owner of the copyright in the work or works to which it relates, that waiver shall be presumed to extend to his or her licensees, successors

in title or other persons claiming under them unless a contrary inten- Pt.II S.116
tion is expressed.

(4) Nothing in this Chapter shall be construed as excluding the
operation of the general law of contract or estoppel in relation to an
informal waiver or other transaction in relation to any of the rights
referred to in *subsection (1)*.

(5) It shall not be an infringement of any of the rights conferred
by this Chapter for a person to undertake any act where the person
entitled to the right conferred by this Chapter has consented to the
use of those rights by that other person.

**117.**—(1) The paternity right or the integrity right is, in the case
of a work of joint authorship, a right of each joint author.

Application of
certain provisions to
works of joint
authorship and joint
ownership.

(2) A waiver made under *section 116* of the paternity right or the
integrity right by one joint author shall not affect the rights of the
other joint authors.

(3) The right conferred by *section 113* in relation to false attribu-
tion is infringed by—

    (*a*) any false statement as to the authorship of a work of joint
        authorship, or

    (*b*) the false attribution of joint authorship in relation to a work
        of sole authorship,

and such a false attribution infringes the right of every person to
whom authorship of any description is attributed.

(4) The right conferred by *section 114* to privacy in photographs
and films is, in the case of a work made pursuant to a joint com-
mission, the right of each person who commissioned the making of
the work and where a waiver is made by one of them under *section
116* that waiver shall not affect the rights of the other persons.

**118.**—The rights conferred by *Chapter 7* shall be incapable of
assignment or alienation.

Moral rights not
assignable or
alienable.

**119.**—(1) On the death of a person entitled to the paternity right,
the integrity right, or the right conferred by *section 114* to privacy in
photographs and films—

Transmission of
moral rights on
death.

    (*a*) the right passes by testamentary disposition to such person
        as the person entitled to the right may direct,

    (*b*) where there is no direction as to whom the right passes but
        the copyright in the work concerned forms part of an
        estate, the right passes to the person to whom the copy-
        right passes, and

    (*c*) where the right does not pass under *paragraph (a)* or *(b)*, it
        is exercisable by the personal representatives of the per-
        son entitled to the right.

(2) Where copyright forming part of an estate passes in part to
one person and in part to another, so as to apply—

    (*a*) to one or more, but not all, of the acts the copyright owner
        has the right to undertake or authorise, or

[*No.* **28.**]    *Copyright and Related Rights Act,*    [2000.]
2000.

(*b*) to part, but not the whole, of the period for which the copyright is to subsist,

any right which passes with the copyright by virtue of *subsection (1)* is divided accordingly.

(3) Where, under *subsection (1)*, a right becomes exercisable by more than one person—

(*a*) it may, in the case of the paternity right, be exercised by any of them,

(*b*) it is, in the case of the integrity right or the right to privacy in photographs and films conferred by *section 114*, a right exercisable by each of them, and

(*c*) any waiver of the right under *section 116* made by one of them shall not affect the rights of the other persons.

(4) A consent or waiver binds any person to whom a right passes under *subsection (1)*.

(5) Any infringement of the right conferred by *section 113* in relation to a false attribution of a work after the death of a person is actionable by the personal representatives of that person.

(6) Any damages recovered by personal representatives under this section in respect of an infringement after a person's death shall devolve as part of the person's estate as if the right of action had subsisted and been vested in that person immediately before his or her death.

### Chapter 8

#### *Dealings with Rights in Copyright Works*

Assignment and licences.

**120.**—(1) The copyright in a work is transmissible by assignment, by testamentary disposition or by operation of law, as personal or moveable property.

(2) A transmission of the copyright in a work by assignment, by testamentary disposition or by operation of law may be partial, so as to apply—

(*a*) to one or more but not all of the acts the copyright owner has the right to undertake or authorise, and

(*b*) to part but not the whole of the period for which the copyright in the work is to subsist.

(3) An assignment of the copyright in a work, whether in whole or in part, is not effective unless it is in writing and signed by or on behalf of the assignor.

(4) A licence granted by a copyright owner is binding on every successor in title to his or her interest in the copyright, except a purchaser in good faith for valuable consideration and without notice (actual or constructive) of the licence or a person deriving title from such a purchaser and references in this Part to undertaking any act with or without the licence of the copyright owner shall be construed accordingly.

(5) A licence granted by a prospective owner of copyright is binding on every successor in title to his or her interest (or prospective interest) in the copyright, except a purchaser in good faith for valuable consideration and without notice (actual or constructive) of the licence or a person deriving title from such a purchaser and references in this Part to undertaking any act with or without the licence of the copyright owner shall be construed accordingly.

Pt.II S.120

**121.**—(1) Where, by an agreement made in relation to future copyright and signed by or on behalf of the prospective owner of the copyright, the prospective owner purports to assign the future copyright, whether in whole or in part, to another person, then, where, on the copyright coming into existence, the assignee or his or her successor in title, or another person claiming under him or her, would be entitled as against all other persons to require the copyright to be vested in him or her, the copyright shall vest in the assignee or his or her successor in title under this section or any other person claiming under him or her.

Prospective ownership of copyright.

(2) Where, at the time when any copyright comes into existence, the person who, if he or she were then living, would be entitled to the copyright is dead, the copyright shall devolve as if it had subsisted immediately before his or her death and he or she had then been the owner of the copyright.

(3) The rights of an assignee to future copyright shall not be prejudiced by the fact that an agreement referred to in *subsection (1)* was made before the commencement of this section.

(4) In this Part—

''future copyright'' means copyright which will or may come into existence in respect of a future work or class of works or on the occurrence of a future event;

''prospective owner'' includes a person who is prospectively entitled to copyright by virtue of an agreement made in relation to future copyright.

**122.**—(1) In this Part, an ''exclusive licence'' means a licence in writing which is signed by or on behalf of an owner or prospective owner of the copyright which authorises the licensee, to the exclusion of all other persons, including the person granting the licence, to exercise a right which would otherwise be exercisable exclusively by the copyright owner and references to an exclusive licensee shall be construed accordingly.

Exclusive licences.

(2) An exclusive licensee has the same rights against a successor in title who is bound by the licence as he or she has against the person granting the licence.

**123.**—Where, under a bequest (whether specific or general), a person is entitled, beneficially or otherwise, to any material thing containing an original fixation of a work which has not been made available to the public before the death of the testator, the bequest shall be construed as including the copyright in the work in so far as the testator was the owner of the copyright immediately before his or her death, unless a contrary intention is indicated in the will of the testator or in a codicil to that will.

Copyright to pass under will with certain original fixations.

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.II

Presumption of
transfer of rental
right in case of film
production
agreement.

**124**.—(1) Without prejudice to the right of an author to receive equitable remuneration in respect of a rental right, where an agreement concerning film production is concluded between an author or a prospective author of a copyright work and a film producer, the author or prospective author shall be presumed, unless the agreement provides to the contrary, to have transferred to the film producer any rental right in relation to the film arising by virtue of the inclusion of a copy of the work of the author in the film.

(2) Where a presumption of transfer of the rental right arises by virtue of *subsection (1)*, the absence of a signature by or on behalf of the author shall not restrict the operation of *section 120* or *121.*

(3) The reference in *subsection (1)* to an agreement concluded between an author or a prospective author and a film producer includes any agreement whether made by them directly or through intermediaries.

(4) The right to equitable remuneration on the transfer of the rental right applies where there is a presumed transfer under this section as in the case of an actual transfer.

Right to equitable
remuneration where
rental right
transferred.

**125**.—(1) Without prejudice to the generality of *section 124*, where an author has transferred his or her rental right he or she retains the right to equitable remuneration for the rental.

(2) The right to equitable remuneration conferred by this section shall not be waived by the author and the author shall not assign the right to equitable remuneration except to a collecting society for the purpose of enabling the collecting society to exercise that right on his or her behalf.

(3) The right to equitable remuneration is transmissible by way of testamentary disposition or by operation of law, as personal or moveable property and it may be further transmitted, including by assignment, by any person who legally acquires the right.

(4) Equitable remuneration under this section is payable by the person to whom the rental right is transferred or any successor in title.

(5) Subject to *section 126*, the amount payable by way of equitable remuneration is that which has been agreed by or on behalf of the persons by and to whom it is payable.

(6) An agreement is void in so far as it purports to exclude or restrict the right to equitable remuneration conferred by this section.

(7) References in this Part to the transfer of the rental right by one person to another include any arrangement having that effect whether made by them directly or through intermediaries.

(8) In this section, ''collecting society'' means a society or other organisation which has as one of its main objects the exercise of the right to collect equitable remuneration under this section on behalf of more than one author.

Equitable
remuneration:
reference of
determination of
amount to
Controller.

**126**.—(1) In default of agreement as to the amount of equitable remuneration payable under *section 125*, the person by or to whom it is payable may apply to the Controller for an order under *subsection (4)*.

(2) Subject to *subsection (3)*, a person by or to whom equitable remuneration is payable under *section 125* may also apply to the Controller—

   (*a*) to vary any agreement as to the amount payable, or

   (*b*) to vary any previous determination of the Controller as to the amount payable.

(3) An application may not be made under *subsection (2)* within 12 months from the date of the previous determination except with the special leave of the Controller.

(4) On an application being made under this section the Controller shall consider the matter and make such order as to the method of calculating and paying equitable remuneration as he or she may determine to be reasonable in the circumstances, having regard to the importance of the contribution of the author.

(5) An order made under *subsection (4)* shall have effect from the date on which it is made or such later date as may be specified by the Controller.

(6) Remuneration shall not be considered inequitable because it is paid by way of a single payment or at the time of transfer of the rental right.

(7) An agreement is void in so far as it purports to prevent a person challenging the amount of equitable remuneration or to restrict the powers of the Controller conferred by this section.

Pt.II S.126

## Chapter 9

### Remedies: Copyright Owner

**127.**—(1) An infringement of the copyright in a work is actionable by the copyright owner.

(2) In an action for infringement of the copyright in a work under this section, all relief by way of damages, injunction, account of profits or otherwise is available to the plaintiff as it is available in respect of the infringement of any other property right.

(3) Subject to *section 139*, where in an action for infringement of the copyright in a work the defendant does not admit that the plaintiff is the owner of the copyright the court may direct that evidence in relation to ownership of the copyright be given on affidavit and the court may decide the issue having considered any affidavit presented to it unless it is satisfied that any conflict of evidence between the affidavits may not be resolved other than by hearing oral testimony in which case the court may order that oral evidence may be adduced.

(4) Hearsay evidence may be accepted for the purposes of any hearing under *subsection (3)*.

Infringement actionable by copyright owner.

**128.**—(1) The court may, in an action for infringement of copyright award such damages as, having regard to all the circumstances of the case, it considers just.

Award of damages in infringement action.

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.II S.128

(2) Without prejudice to any other remedy, where, in an action for infringement of the copyright in a work, it is shown that at the time of the infringement the defendant did not know and had no reason to believe that copyright subsisted in the work to which the action relates, the plaintiff is not entitled to damages against the defendant.

(3) In exercising its powers under *subsection (1)* in addition to or as an alternative to compensating the plaintiff for financial loss, the court may award aggravated or exemplary damages or both aggravated and exemplary damages.

Action in respect of construction of building.

**129.**—In an action for infringement of the copyright in respect of the construction of a building no injunction or other order shall be made—

(*a*) after the construction of the building has begun, so as to prevent it from being completed, or

(*b*) so as to require the building, in so far as it has been constructed, to be demolished.

Undertakings concerning licences of right.

**130.**—(1) Where, in proceedings for infringement of the copyright in a work in respect of which a licence is available as of right, the defendant undertakes to take a licence on such terms as may be agreed or, in default of agreement, settled by the Controller—

(*a*) no injunction shall be granted against the defendant,

(*b*) no order for delivery up shall be made under *section 131*, and

(*c*) the amount recoverable against the defendant by way of damages or on an account of profits shall not exceed three times the amount which would have been payable by the defendant as licensee where a licence on those terms had been granted before the earliest infringement.

(2) An undertaking under *subsection (1)* may be given at any time before the final order in the proceedings without any admission of liability.

(3) Nothing in this section shall affect the remedies available in respect of an infringement committed before a licence was available as of right.

Order for delivery up.

**131.**—(1) Where a person—

(*a*) in the course of a business, trade or profession, has in his or her possession, custody or control an infringing copy of a work,

(*b*) has in his or her possession, custody or control an article specifically designed or adapted for making copies of a copyright work, knowing or having reason to believe that it has been or is to be used to make infringing copies, or

(*c*) has in his or her possession, custody or control a protection-defeating device,

[2000.]    *Copyright and Related Rights Act,*    [*No.* **28**.]
2000.

the owner of the copyright in the work may apply to the appropriate    Pt.II S.131
court for an order that the infringing copy, article or device be deliv-
ered up to him or her or to such other person as the court may direct.

(2)  An application under *subsection (1)* shall not be made after
the expiration of the period specified in *section 144(1)* as being the
limit of the period for delivery up and no order shall be made unless
the court also makes, or it appears to the court that there are grounds
for making, an order as to the disposal of the infringing copy, article
or device.

(3)  A person to whom an infringing copy, article or device is deliv-
ered up pursuant to an order made under this section shall, where
an order under *section 145* as to the disposal of the infringing copy,
article or device is not made, retain it pending the making of an
order, or the decision not to make an order, under that section.

**132.**—(1)  Without prejudice to *section 133*, where the owner of the    Application to
copyright in a work applies to the District Court, it may, where satis-    District Court for
fied that there are reasonable grounds for believing that there are    seizure of infringing
being hawked, carried about or marketed—    copies, articles or
devices.

(*a*)  infringing copies of the work,

(*b*)  articles specifically designed or adapted for making copies
of a work, knowing or having reason to believe that it has
been or is to be used for making infringing copies of a
work, or

(*c*)  protection-defeating devices,

authorise by order a member of the Garda Síochána to seize without
warrant the copies, articles or devices and to bring them before the
District Court.

(2)  On being satisfied that any copy, article or device referred to
in *subsection (1)* is—

(*a*)  an infringing copy,

(*b*)  articles specifically designed or adapted for making copies
of a work, which the person hawking, carrying about or
marketing those articles, knows or has reason to believe
that they have been or are to be used to make infringing
copies of a work, or

(*c*)  a protection-defeating device,

the District Court may order the copy, article or device to be
destroyed or to be delivered up to the owner of the copyright or
otherwise dealt with as the Court may think fit.

(3)  In an application to the District Court under *subsection (1)*
or, in any *ex parte* application or interlocutory motion to a court of
competent jurisdiction for an order which would permit the applicant
to enter and search premises or place specified therein and take pos-
session of material found therein on terms set out in such order, the
court hearing such an application may receive hearsay evidence to
the effect that the witness or deponent believes that the material may
be found in a particular location.

[*No.* **28**.]     *Copyright and Related Rights Act,*     [2000.]
2000.

Pt.II S.132

(4) A witness or deponent shall not be obliged to indicate the source of the information upon which that witness formed the belief that material may be found in a particular location.

(5) After the implementation of an order made under this section, the court may, on the application of a person aggrieved by it, award damages against the applicant for the order as it considers just, on being satisfied that—

(*a*) no infringement of copyright has been established, and

(*b*) the information on which the copyright owner applied for the order was given maliciously.

Right of copyright owner to seize infringing copies, articles or devices, etc.

**133.**—(1) Where it would be impracticable for the owner of the copyright in a work to apply to the District Court for an order under *section 132*, a copy, article or device referred to in *section 132(1)* in respect of which the copyright owner would be entitled to apply for an order for delivery up under *section 131*, may be seized and detained by the copyright owner or a designated representative thereof where the copy, article or device is found being hawked, carried about or marketed.

(2) The right to seize and detain conferred by *subsection (1)* is exercisable, subject to *subsections (4)* to *(8)* of this section, and is subject to any decision of the court relating to disposal of infringing copies, articles or devices under *section 145*.

(3) A person who seizes any infringing copies, articles or devices under this section shall apply to the District Court for an order to dispose of those copies, articles or devices within 30 days of the seizure.

(4) Before any infringing copies, articles or devices are seized under this section notice of the time and place of the proposed seizure shall be given to a member of the Garda Síochána in the District Court Area in which the copies, articles or devices are to be seized.

(5) A person exercising the right to seize and detain conferred by *subsection (1)* may enter premises to which members of the public have access.

(6) A person exercising the right to seize and detain conferred by *subsection (1)* may not seize anything in the possession, custody or control of a person at his or her permanent or regular place of business, trade or profession, and may not use any force.

(7) Without prejudice to the generality of *subsection (6)*, a person exercising the right to seize and detain conferred by *subsection (1)* may make an inventory or prepare other evidence of infringement of copyright or potential infringement of copyright.

(8) At the time when any infringing copies, articles or devices are seized under this section there shall be given to the owner, occupier or person in charge of the place where the copies, articles or devices are seized a notice, in the prescribed form, informing the person of the right of the owner of the copies, articles or devices being seized to apply to the District Court for the return of the copies, articles or devices on the grounds that they are not—

(*a*) infringing copies of a work,

(*b*)  articles that have been or are to be used to make infringing    Pt.II S.133
copies, or

(*c*)  protection-defeating devices.

(9)  Without prejudice to the generality of *subsection (8)*, the Minister shall prescribe the form of the notice to be given under that subsection and the form shall specify—

(*a*)  the name and the address of the person claiming to be the owner of the copyright in the work concerned,

(*b*)  the statutory authority for the seizure,

(*c*)  the grounds that the person seizing the copies, articles or devices has for such seizure, and

(*d*)  a list of that which is seized.

(10)  The owner of any copies, articles or devices seized under this section may apply to the District Court for the return of those copies, articles or devices.

(11)  Rules of court shall be made under this section and the rules shall provide for procedures to enable applications to be made and dealt with in an expeditious manner.

(12)  Where there has been an exercise of the right to seize and detain, conferred by *subsection (1)*, the court may, on the application of a person aggrieved by it, award damages against a person who exercises that right as it considers just, on being satisfied that—

(*a*)  no infringement of copyright has been established, and

(*b*)  the person had no reasonable grounds for such seizure.

**134.**—(1)  Subject to the provisions of this Act, the owner of any    Rights of owner of
copyright shall be entitled to all such rights and remedies, in respect    copyright in respect
of the conversion or detention by any person of—    of infringing copy.

(*a*)  infringing copies of a work,

(*b*)  articles that have been or are to be used to make infringing copies, or

(*c*)  protection-defeating devices,

as he or she would be entitled to if he or she were the owner of every such copy, article or device and had been the owner thereof since the time when it was made.

(2)  Where by virtue of section 12(2) (which relates to successive conversions or detentions) of the Statute of Limitations, 1957, the title of the owner of the copyright to such a copy, article or device referred to in *subsection (1)* of this section would (if he or she had been the owner of the copy, article or device) have been extinguished on the expiration of the period referred to in the said subsection (2), he or she shall not be entitled to any rights or remedies under *subsection (1)* of this section in respect of anything done in relation to that copy, article or device after the expiration of that period.

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.II S.134

(3) In awarding damages for conversion, the court shall take into account all the circumstances of the case and shall award such sum as it considers just.

Chapter 10

*Rights and Remedies: Exclusive Licensee*

Rights and
remedies of
exclusive licensee.

**135.**—(1) An exclusive licensee has, except as against the copyright owner, the same rights and remedies in respect of matters occurring after the grant of the licence as if the licence had been an assignment.

(2) The rights and remedies of an exclusive licensee are concurrent with those of the copyright owner and references in *sections 127 to 134* to the copyright owner shall be construed accordingly.

(3) In proceedings brought by an exclusive licensee under this section a defendant may avail of any defence which would have been available to the defendant if the action had been brought by the copyright owner.

Exercise of
concurrent rights.

**136.**—(1) Where an action for infringement of the copyright in a work brought by the copyright owner or an exclusive licensee relates, whether in whole or in part, to an infringement in respect of which they have concurrent rights of action, the copyright owner or, as the case may be, the exclusive licensee, may not, without the leave of the appropriate court, proceed with the action unless the other is either joined as a plaintiff or added as a defendant.

(2) A copyright owner or exclusive licensee who is added as a defendant under *subsection (1)* shall not be liable for any costs in an action unless he or she takes part in the proceedings.

(3) Nothing in this section shall affect the granting of interlocutory relief on an application by the copyright owner or exclusive licensee.

(4) Where an action for infringement of copyright is brought which relates, whether in whole or in part, to an infringement in respect of which the copyright owner and an exclusive licensee have or had concurrent rights of action, then, the following shall apply—

(*a*) in assessing damages the appropriate court shall have regard to—

(i) the terms of the licence, and

(ii) any pecuniary remedy already awarded or available to either of them in respect of the infringement;

(*b*) no account of profits shall be directed where an award of damages has been made, or an account of profits has been directed, in favour of one of them in respect of the infringement;

(*c*) the appropriate court shall, where an account of profits is directed, apportion the profits between them as the court thinks fit, subject to any agreement between the copyright owner and the exclusive licensee.

(5) *Subsection (4)* shall apply whether or not the copyright owner and the exclusive licensee are both parties to the action.

(6) Before—

    (*a*) applying for an order for delivery up under *section 131*,

    (*b*) applying for an order to seize infringing copies, articles or devices under *section 132*, or

    (*c*) exercising the right to seize and detain conferred by *section 133*,

the copyright owner shall notify any exclusive licensee having concurrent rights and the court may, on the application of the licensee, make such order for delivery up, seizure of infringing copies, articles or devices or, as the case may be, prohibiting or permitting the exercise by the copyright owner of the right of seizure and detention as it thinks fit, having regard to the terms of the licence between the copyright owner and the exclusive licensee.

Pt.II S.136

## Chapter 11

### *Remedies: Moral Rights*

**137.**—(1) An infringement of a right conferred by *section 107, 109, 113* or *114* is actionable as a breach of statutory duty owed to the person entitled to the right concerned.

Remedies for infringement of moral rights.

(2) A person may apply to the appropriate court for damages or other relief in respect of an infringement of a right conferred by *section 107, 109, 113* or *114*.

(3) In proceedings for infringement of the right conferred by *section 109*, the appropriate court may grant an injunction prohibiting any act unless a sufficient disclaimer is made, on such terms and in such a manner as is approved of by the court, dissociating the person entitled to the right from the treatment of the work.

**138.**—In any proceedings for infringement of a right conferred by *section 107, 109* or *113* in respect of the construction of a building, no injunction or other order shall be made—

Action in respect of construction of building.

    (*a*) after the construction of the building has begun, so as to prevent it from being completed, or

    (*b*) so as to require the building, in so far as it has been constructed, to be demolished.

## Chapter 12

### *Presumptions*

**139.**—(1) The presumptions specified in this section shall apply in any proceedings, whether civil or criminal, for infringement of the copyright in any work.

Presumptions.

(2) Copyright shall be presumed to subsist in a work until the contrary is proved.

(3) Except as otherwise provided in this section, where the subsistence of the copyright in a work is proved or admitted, or is presumed under *subsection (2)*, the plaintiff shall be presumed to be the owner or, as the case may be, the exclusive licensee of the copyright, until the contrary is proved.

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

(4) Where—

    (*a*) a name purporting to be that of the author of a work or of the owner or exclusive licensee of the copyright, as the case may be, appears on copies of the work, or

    (*b*) a copy of a work bears or incorporates a statement, label or other mark indicating that a person is the author of the work or the owner or exclusive licensee of the copyright, as the case may be,

that name, statement, label or mark shall be admissible as evidence of the fact stated or indicated which shall be presumed to be correct, unless the contrary is proved.

(5) The person named or in respect of whom a statement, label or other mark appears on or is borne on or is incorporated in copies of a work in accordance with *subsection (4)* shall, unless the contrary is proved, be presumed not to have made the work—

    (*a*) in the course of employment referred to in *section 23(1)(a)*,

    (*b*) in the course of employment as an officer or employee of a prescribed international organisation referred to in *section 196*,

    (*c*) in the course of employment as an officer or employee of the Government or of the State referred to in *section 191*,

    (*d*) under the direction or control of either or both of the Houses of the Oireachtas referred to in *section 193*, or

    (*e*) in circumstances in which the copyright in the work is conferred on another person by an enactment referred to in *section 23(1)(d)*.

(6) Where a work purports to be a work of joint authorship, *subsections (2), (3), (4)* and *(5)* shall apply in relation to each person purporting to be one of the authors of the work.

(7) Where no name purporting to be that of the author of the work or of the owner or exclusive licensee of the copyright, as the case may be, appears on the work or where the work does not bear or incorporate a statement, label or other mark in accordance with *subsection (4)* and—

    (*a*) the work qualifies for copyright protection by reference to the country, territory, state or area, in which it was first lawfully made available to the public, and

    (*b*) (i) a name purporting to be that of the person who first lawfully made available to the public the work appears on copies of the work as first so made available, or

        (ii) copies of the work bear or incorporate a statement, label or other mark indicating that a named person first lawfully made available to the public the work,

then, that named person shall be presumed to have been the author of the work or the owner or exclusive licensee of the copyright, as the case may be, at the time when the work was first lawfully made available to the public, unless the contrary is proved.

(8)  Where the author of the work is dead or the identity of the   Pt.II S.139
author cannot be ascertained by reasonable enquiry, it shall be pre-
sumed, unless the contrary is proved—

   (*a*)  that the work is an original work, and

   (*b*)  that the claims made by the plaintiff as to the date on which
       the work was first lawfully made available to the public
       and as to the country, territory, state or area in which the
       work was first so made available are correct.

(9)  The presumptions set out in *subsections (2)* to *(8)* shall apply
to the same extent in any actions relating to an infringement which
occurred before the date on which copies of a work were first law-
fully made available to the public.

Chapter 13

*Offences: Copyright*

**140.**—(1)  A person who, without the consent of the copyright   Offences.
owner—

   (*a*)  makes for sale, rental or loan,

   (*b*)  sells, rents or lends, or offers or exposes for sale, rental or
       loan,

   (*c*)  imports into the State, otherwise than for his or her private
       and domestic use,

   (*d*)  in the course of a business, trade or profession, has in his or
       her possession, custody or control, or makes available to
       the public, or

   (*e*)  otherwise than in the course of a business, trade or pro-
       fession, makes available to the public to such an extent
       as to prejudice the interests of the owner of the copyright,

a copy of a work which is, and which he or she knows or has reason
to believe is, an infringing copy of the work, shall be guilty of an
offence.

(2)  In this section ''loan'' means a loan for reward and in particu-
lar does not include a loan to a family member or friend for private
and domestic use, and ''lends'' shall be construed accordingly.

(3)  A person who—

   (*a*)  makes,

   (*b*)  sells, rents or lends, or offers or exposes for sale, rental or
       loan,

   (*c*)  imports into the State, or

   (*d*)  has in his or her possession, custody or control,

an article specifically designed or adapted for making copies of a
work, knowing or having reason to believe that it has been or is to
be used to make infringing copies, shall be guilty of an offence.

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.II S.140

(4) A person who—

(*a*)  (i)  makes,

(ii)  sells, rents or lends, or offers or exposes for sale, rental or loan,

(iii)  imports into the State, or

(iv)  has in his or her possession, custody or control,

a protection-defeating device, knowing or having reason to believe that it has been or is to be used to circumvent rights protection measures, or

(*b*)  provides information, or offers or performs any service, intended to enable or assist a person to circumvent rights protection measures,

shall be guilty of an offence.

(5) Where copyright is infringed by—

(*a*)  the public performance of a literary, dramatic or musical work,

(*b*)  the playing or showing in public of a sound recording, artistic work, original database or film, or

(*c*)  broadcasting a work or including a work in a cable programme service,

the person who caused the work to be so performed, played, broadcast, included in a cable programme service or shown shall be guilty of an offence where he or she knew or had reason to believe that the copyright in the work would be infringed.

(6) An offence shall not be committed under *subsection (1)* or *(5)* by the undertaking of an act which under this Part may be undertaken without infringing the copyright in a work.

(7) A person guilty of an offence under *subsection (1)*, *(3)* or *(4)* shall be liable—

(*a*)  on summary conviction, to a fine not exceeding £1,500 in respect of each infringing copy, article or device, or to imprisonment for a term not exceeding 12 months, or both, or

(*b*)  on conviction on indictment, to a fine not exceeding £100,000, or to imprisonment for a term not exceeding 5 years, or both.

(8) A person guilty of an offence under *subsection (5)* shall be liable—

(*a*)  on summary conviction, to a fine not exceeding £1,500 in respect of such offence or to imprisonment for a term not exceeding 12 months, or both, or

(*b*)  on conviction on indictment, to a fine not exceeding £100,000, or to imprisonment for a term not exceeding 5 years, or both.

**141.**—A person who, for financial gain, makes a claim to enjoy a right under this Part which is, and which he or she knows or has reason to believe is, false, shall be guilty of an offence and shall be liable on conviction on indictment to a fine not exceeding £100,000, or to imprisonment for a term not exceeding 5 years, or both.

Pt.II

False claims of copyright.

**142.**—(1)  The court may, on conviction of a person or being satisfied that there is a *prima facie* case to answer, where the court is satisfied that at the time of the arrest or charge the person had in his or her possession, custody or control—

Order for delivery up in criminal proceedings.

> (*a*)  in the course of a business, trade or profession, a copy of a work, knowing or having reason to believe it to be an infringing copy,

> (*b*)  an article specifically designed or adapted for making copies of a work, knowing or having reason to believe that it had been or was to be used to make infringing copies, or

> (*c*)  a protection-defeating device,

order that the infringing copy, article or device be delivered up to the copyright owner or to such other person as the court may direct.

(2)  An order may be made by the court of its own motion, or on the application of the person bringing a prosecution, and may be made whether or not the person is convicted of the offence, but shall not be made—

> (*a*)  after the expiration of the period specified in *section 144(3)* as being the limit of the period for delivery up, or

> (*b*)  where it appears to the court unlikely that any order will be made as to the disposal of the infringing copies, articles or devices.

(3)  A person to whom an infringing copy, article or device is delivered up pursuant to an order made under this section shall retain it pending the making of a final order or decision not to make an order, as the case may be.

**143.**—(1)  Where a judge of the District Court is satisfied by information on oath that there are reasonable grounds for suspecting—

Search warrants and seizure.

> (*a*)  that an offence under *section 140* has been, or is about to be, committed in, on or at any premises or place, and

> (*b*)  that evidence that such an offence has been, or is about to be, committed is in, on or at those premises or that place,

the court may issue a warrant authorising a member of the Garda Síochána, accompanied by such other members of the Garda Síochána or other person or persons as that member thinks proper, at any time or times within 28 days from the date of the issue of the warrant on production, where requested, of that warrant, to enter and search the premises or place specified in the warrant using reasonable force where necessary, and to do all or any of the following acts:

> (i)  to seize any copies of any works, articles or devices in respect of which he or she has reasonable grounds for suspecting that an offence under *section 140* has been or is about to be committed;

[*No. 28.*]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.II S.143

(ii) to make an inventory or prepare other evidence of infringe-
ment of copyright or potential infringement of copyright;

(iii) to seize anything found there which he or she believes on
reasonable grounds may be required to be used in evi-
dence in any proceedings brought in respect of an offence
under this Act;

(iv) to require any person found there to give his or her name
and address.

(2) A warrant issued under this section may authorise persons,
including the copyright owner or designated representative thereof,
to accompany and assist any member of the Garda Síochána in
executing the warrant or in collating any inventory or other evidence.

(3) A person who—

(*a*) obstructs or interferes with a person acting under the auth-
ority of a warrant issued under this section,

(*b*) is found in, on or at the premises or place specified in the
warrant by a member of the Garda Síochána acting as
aforesaid and who fails or refuses to give the member his
or her name and address when required to do so or gives
a name or address that is false or misleading,

(*c*) obstructs the exercise of an authority conferred by a warrant
under this section, or

(*d*) fails or refuses to give information to a member of the
Garda Síochána when requested to do so under this
section,

shall be guilty of an offence and shall be liable on summary convic-
tion to a fine not exceeding £1,500, or to imprisonment for a term
not exceeding 12 months, or both.

Chapter 14

*Delivery up and Disposal*

Period after which
remedy for delivery
up is not available.

**144.**—(1) Subject to *subsection (2)*, an application for an order
under *section 131* may not be made after the expiration of 6 years
from the date on which the infringing copy, article or device was
made.

(2) Where, during the whole or any part of the period referred to
in *subsection (1)*, the copyright owner—

(*a*) is under a disability, or

(*b*) is prevented by fraud or concealment from discovering the
facts entitling him or her to apply for an order,

an application under *section 131* may be made at any time before the
expiration of 6 years from the date on which the applicant ceased to
be under a disability, or, as the case may be, could, with reasonable
diligence, have discovered those facts.

(3) An order for delivery up in criminal proceedings under *section
142* shall not, in any case, be made after the expiration of 6 years
from the date on which the proceedings under that section were
initiated.

(4) Where, in any proceedings for an order for delivery up under *section 131* or *142*, the date of the making of the infringing copy, article or device is put into question by the defendant, the onus of proof shall be on the defendant that the infringing copy, article or device was made more than 6 years before the date on which an application for an order under *section 131* was made or proceedings under *section 142* were initiated.

Pt.II S.144

**145.**—(1) An application may be made to the appropriate court for an order that an infringing copy, article or device—

Order as to disposal of infringing copy, article or device.

(*a*) delivered up under *section 131* or *142*, or

(*b*) seized and detained under *section 132* or *143*,

shall be—

(i) forfeited to the copyright owner, or

(ii) destroyed or otherwise dealt with as the court may direct,

and the court may make such an order or such other order as it thinks fit.

(2) In considering what order, if any, should be made under *subsection (1)*, the court shall consider whether other remedies available in an action for infringement of the copyright in a work would be adequate to compensate the copyright owner and to protect his or her interests.

(3) Provision shall be made by rules of the court as to the service of notice on persons having an interest in the copies, articles or devices concerned, and any such person may—

(*a*) appear in proceedings for an order under this section whether or not he or she was served with notice, or

(*b*) appeal against any order made, whether or not he or she appeared in the proceedings concerned.

(4) An order made under this section shall not take effect until the expiration of the period within which notice of an appeal may be given or, where before the expiration of that period notice of appeal is duly given, until the final determination or abandonment of the proceedings on the appeal.

(5) Where there is more than one person interested in a copy, article or device, the court shall make such order as it thinks fit and may direct the copy, article or device to be sold or otherwise dealt with and any proceeds divided in accordance with the direction of the court.

(6) Where the court decides that no order shall be made under this section, the person who had the copy, article or device in his or her possession, custody or control immediately before it was delivered up or seized shall be entitled to its return.

(7) References in this section to a person having an interest in a copy, article or device include any person in whose favour an order may be made under this section in respect of the copy, article or device or under *section 264* or under section 23 of the Trade Marks Act, 1996.

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

**146**.—Section 23 of the Trade Marks Act, 1996, is hereby amended by the substitution of the following subsection for subsection (6) of that section:

"(6) References in this section to a person having an interest in goods, material or articles include references to any person in whose favour an order could have been made under *sections 145* and *264* of the *Copyright and Related Rights Act, 2000.*".

## Chapter 15

### *Provision for Preventing Importation*

Infringing copies,
articles or devices
may be treated as
prohibited goods.

**147**.—(1) The owner of the copyright in a work may give notice in writing to the Revenue Commissioners—

(*a*) that he or she is the owner of the copyright in the work, and

(*b*) that he or she requests the Revenue Commissioners for a period specified in the notice to treat as prohibited goods—

(i)  copies of the work which are infringing copies,

(ii)  articles specifically designed or adapted or used for making infringing copies of the work, or

(iii)  protection-defeating devices.

(2)  The period specified in a notice given under *subsection (1)* shall not exceed 5 years and in any case shall not extend beyond the period for which copyright is to subsist.

(3)  The owner of the copyright in a work may give notice in writing to the Revenue Commissioners—

(*a*)  that he or she is the owner of the copyright in the work,

(*b*)  that infringing copies, articles or devices referred to in *subsection (1)(b)* are expected to arrive in the State at a time and a place specified in the notice, and

(*c*)  that he or she requests the Revenue Commissioners to treat those copies, articles or devices as prohibited goods.

(4)  When a notice given under *subsection (1)* is in force the importation of goods to which the notice relates, other than copies of a work imported by a person for his or her private and domestic use, is prohibited.

(5)  Notwithstanding *subsection (4)* or anything contained in the Customs Acts, a person is not, by reason of the prohibition, liable to any penalty under the Customs Acts other than forfeiture of the prohibited goods.

(6)  In this section "prohibited goods" means counterfeit or pirated goods within the meaning of the European Communities (Counterfeit and Pirated Goods) Regulations, 1996 (S.I. No. 48 of 1996).

**148.**—(1)  The Revenue Commissioners may prescribe the form in which notice is to be given under *section 147* and require a person giving notice—

Pt.II

Power of Revenue Commissioners to make regulations.

    (*a*)  to furnish the Revenue Commissioners with such evidence as may be prescribed, either on giving notice or when the goods are imported, or at both these times, and

    (*b*)  to comply with such other conditions as may be prescribed.

(2)  Regulations made under this section may require a person giving a notice under *section 147*—

    (*a*)  to pay such fees in respect of the notice as may be specified by the Revenue Commissioners from time to time,

    (*b*)  to give such security as may be specified by the Revenue Commissioners in respect of any liability or expense which the Revenue Commissioners may incur in consequence of the notice given by reason of the detention of any infringing copy, article or device or anything done to any infringing copy, article or device detained, and

    (*c*)  to indemnify the Revenue Commissioners against any such liability or expense whether security has been given or not.

(3)  Regulations made under this section may make different provisions in respect of different classes of case to which they apply and may include such incidental and supplementary provisions as the Revenue Commissioners consider expedient from time to time.

(4)  Any fees paid pursuant to regulations made under this section shall be accounted for in such manner as shall be prescribed by the Minister for Finance.

### Chapter 16

*Copyright Licensing*

**149.**—(1)  In this Part—

Licensing schemes and licensing bodies.

''licences'' means licences to undertake or authorise the undertaking of any of the acts restricted by copyright;

''licensing body'' means a society or other organisation which has as its main object, or one of its main objects, the negotiating or granting, either as owner or prospective owner of copyright, or as exclusive licensee, or as agent for him or her, of copyright licences, and whose objects include the granting of licences relating to works of more than one copyright owner;

''licensing scheme'' means a scheme specifying—

    (*a*)  the classes of case in which the operator of the scheme, or the person on whose behalf that operator acts, is willing to grant copyright licences, and

    (*b*)  the terms on which licences would be granted in those classes of case,

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.II S.149

and for this purpose a "scheme" includes anything in the nature of a scheme, whether described as a scheme or as a tariff or by any other name.

(2)  References in this Part to licences or licensing schemes relating to works of more than one copyright owner shall not include licences or schemes relating to—

(*a*)  a single collective work, or collective works of which the authors are the same, or

(*b*)  works made by, or by employees of or commissioned by, a single individual, firm, company or group of companies, including holding companies and their subsidiaries.

*References and Applications Relating to Licensing Schemes*

General references.

**150**.—*Sections 151* to *156* apply to licensing schemes which are operated by licensing bodies in relation to the copyright in works of more than one copyright owner, in so far as they relate to licences for any of the acts restricted by copyright under *section 37*.

Reference of proposed licensing scheme to Controller.

**151**.—(1)  The terms of a licensing scheme proposed to be operated by a licensing body may be referred to the Controller by an organisation which claims to be representative of persons who claim that they require licences in cases of a description to which the scheme would apply.

(2)  The Controller shall not consider a reference by an organisation under *subsection (1)* unless the Controller is satisfied that the organisation is representative of the class of persons that it claims to represent.

(3)  The Controller may refuse to consider a reference under *subsection (1)* on the ground that the reference is premature.

(4)  Where the Controller decides to consider a reference under *subsection (1)*, he or she shall consider the subject matter of the reference and make an order, either confirming or varying the proposed scheme, as the Controller may determine to be reasonable in the circumstances.

(5)  An order under *subsection (4)* may be made for such period as the Controller may determine.

Reference of licensing scheme to Controller.

**152**.—(1)  Where a licensing scheme is in operation and a dispute arises with respect to the scheme between the operator of the scheme and—

(*a*)  a person claiming that he or she requires a licence in a case of a description to which the scheme applies, or

(*b*)  an organisation claiming to be representative of such persons,

that operator, person or organisation may refer the scheme to the Controller in so far as it relates to cases of that description.

(2)  The Controller shall not consider a reference by an organisation under *subsection (1)* unless the Controller is satisfied that the

organisation is representative of the class of persons that it claims to represent.

Pt.II S.152

(3) A scheme which has been referred to the Controller under *subsection (1)* shall remain in operation until proceedings in relation to the reference are concluded.

(4) The Controller shall consider the matter referred to him or her and shall make an order, confirming or varying the scheme, as the Controller may determine to be reasonable in the circumstances.

(5) An order under *subsection (4)* may be made for such period as the Controller may determine.

**153.**—(1) Where the Controller has, in respect of a licensing scheme under *section 151* or *152* or under this section, made an order in respect of a scheme, and the order remains in force, the persons to whom this section applies may refer the scheme to the Controller in so far as it relates to cases of that description.

Further reference of scheme to Controller.

(2) This section applies to—

(*a*) the operator of the scheme,

(*b*) a person claiming that he or she requires a licence in a case of the description to which the order applies, and

(*c*) an organisation claiming to be representative of the persons referred to in *paragraph (b)*.

(3) Where an order under *section 151* or *152* or this section is in force, the licensing scheme in respect of which the order is made shall not, except with the special leave of the Controller, be referred to the Controller in respect of the same description of cases—

(*a*) within 12 months from the date of the order in respect of the previous reference, or

(*b*) where the order was made so as to be in force for 15 months or less, until the last 3 months before the expiration of the order.

(4) A scheme which has been referred to the Controller under *subsection (1)* shall remain in operation until proceedings in relation to the reference are concluded.

(5) The Controller shall consider the matter referred to him or her and shall make an order, confirming, varying or further varying the scheme, as the Controller may determine to be reasonable in the circumstances.

(6) An order under *subsection (5)* may be made for such period as the Controller may determine.

**154.**—(1) A person who claims, in a case to which a licensing scheme relates, that the operator of the scheme has refused to grant or to procure the grant to him or her of a licence in accordance with the scheme, or has failed to do so in a reasonable period, may apply to the Controller for an order under *subsection (4)*.

Application for grant of licence in connection with licensing scheme.

[*No.* **28**.]     *Copyright and Related Rights Act,*     [2000.]
2000.

(2) A person who claims, in a case excluded from a licensing scheme, that the operator of the scheme—

(*a*) has refused to grant or to procure the grant to him or her of a licence, or has failed to do so within a reasonable period and that in the circumstances it is unreasonable that a licence should not be granted, or

(*b*) proposes terms for a licence that are unreasonable,

may apply to the Controller for an order under *subsection (4)*.

(3) A case shall be regarded as being excluded from a licensing scheme for the purposes of *subsection (2)* where—

(*a*) the scheme provides for the grant of licences, subject to terms excepting matters from the licence and the case is within such an exception, or

(*b*) the case is so similar to those in which licences are granted under the scheme that it is unreasonable that it should not be dealt with in the same way.

(4) Where the Controller is satisfied that a claim under this section is well-founded, he or she shall make an order declaring that in respect of the matters specified in the order, the applicant is entitled to a licence on such terms as the Controller may determine to be applicable in accordance with the scheme, or as the case may be, to be reasonable in the circumstances.

(5) An order under *subsection (4)* may be made for such period as the Controller may determine.

Review of orders
made by Controller.

**155.**—(1) Where the Controller has made an order under *section 154* that a person is entitled to a licence under a licensing scheme, the operator of the scheme or the original applicant may apply to the Controller for a review of that order.

(2) An application under *subsection (1)* shall not be made except with the special leave of the Controller—

(*a*) within 12 months from the date of the order or of the decision on a previous application under this section, or

(*b*) where—

(i) the order was made so as to be in force for 15 months or less, or

(ii) as a result of the decision on a previous application under this section the order is due to expire within 15 months of that decision,

until the last 3 months before the expiration date.

(3) The Controller shall, on an application for review, confirm or vary his or her order as the Controller may determine to be reasonable, having regard to the terms applicable in accordance with the licensing scheme or, as the case may be, the circumstances of the case.

**156.**—(1)  A licensing scheme which has been confirmed or varied by the Controller under *section 151, 152* or *153* shall be in operation or, as the case may be, remain in operation, in so far as it relates to the description of case in respect of which the order was made, for such period as the order remains in force.

Pt.II

Effect of order of Controller as to licensing scheme.

(2)  Where an order made by the Controller under *section 151, 152* or *153* confirming or varying a licensing scheme is in force (in this section referred to as ''an order to which this section applies''), a person who, in a case of a class to which the order applies—

    (*a*)  pays to the operator of the scheme any charges payable under the scheme in respect of a licence applying to the case concerned or, where the amount cannot be ascertained, gives an undertaking to the operator to pay the charges when ascertained, and

    (*b*)  complies with the other terms applicable to the licence under the scheme,

is in the same position as regards infringement of copyright as if he or she had at all material times been the holder of a licence granted by the owner of the copyright concerned in accordance with the scheme.

(3)  Subject to *subsection (4)*, the Controller may direct that an order to which this section applies, in so far as it varies the amount of charges payable, has effect from a date before that on which it was made, but not earlier than the date on which the reference was made, or where later, the date on which the scheme came into operation.

(4)  Where a direction is made under *subsection (3)*—

    (*a*)  any necessary repayments or further payments shall be made in respect of charges already paid, and

    (*b*)  the reference in *subsection (2)(a)* to the charges payable under the scheme shall be construed as a reference to the charges so payable by virtue of the order.

(5)  A direction shall not be made under this section where *subsection (6)* applies.

(6)  An order of the Controller made under *section 152* or *153* in relation to a scheme which is certified for any purpose under *section 173* has effect, in so far as it varies the scheme by reducing the charges payable for licences, from the date on which the reference was made to the Controller.

(7)  Where the Controller has made an order under *section 154* and the order remains in force, the person in whose favour the order is made, where he or she—

    (*a*)  pays to the operator of the scheme any charges payable in accordance with the order or, where the amount cannot be ascertained, gives an undertaking to the operator to pay the charges when ascertained, and

    (*b*)  complies with the other terms specified in the order,

is in the same position as regards infringement of copyright as if he or she had at all material times been the holder of a licence granted by the owner of the copyright concerned on the terms specified in the order.

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.II

*References and Applications Relating to Licensing by
Licensing Bodies*

General references
by licensing bodies.

**157.**—*Sections 158* to *161* apply to licences in relation to the copyright in works of more than one copyright owner, granted by a licensing body otherwise than pursuant to a licensing scheme, in so far as the licences relate to any of the acts restricted by copyright under *section 37.*

Reference to
Controller of
proposed licence.

**158.**—(1) The terms on which a licensing body proposes to grant a licence may be referred to the Controller by the prospective licensee for an order under *subsection (3).*

(2) The Controller may refuse to consider a reference under *subsection (1)* on the ground that the reference is premature.

(3) Where the Controller decides to consider a reference under *subsection (1),* he or she shall consider the terms of the proposed licence and make an order, confirming or varying the terms, as the Controller may determine to be reasonable in the circumstances.

(4) An order under *subsection (3)* may be made for such period as the Controller may determine.

Reference to
Controller of
expiring licence.

**159.**—(1) A licensee under a licence which is due to expire with the passage of time or as a result of notice given by the licensing body may apply to the Controller on the ground that it is unreasonable in the circumstances that the licence should cease to be in force.

(2) An application under *subsection (1)* may be made at any time during the last 3 months before the expiration of the licence.

(3) A licence in respect of which a reference has been made to the Controller under *subsection (1)* shall remain in force until proceedings in relation to the reference are concluded.

(4) Where the Controller is satisfied that an application made under *subsection (1)* is well-founded, he or she shall make an order declaring that the licensee shall continue to be entitled to the benefit of the licence on such terms as the Controller may determine to be reasonable in the circumstances.

(5) An order under *subsection (4)* may be made for such period as the Controller may determine.

Application for
review of order
made by Controller.

**160.**—(1) Where the Controller has made an order under *section 158* or *159,* the licensing body or the person entitled to the benefit of the order may apply to the Controller for a review of that order.

(2) An application under *subsection (1)* shall not be made except with the special leave of the Controller—

(*a*) within 12 months from the date of the order or of the decision on a previous application under this section, or

(*b*) where—

    (i) the order was made so as to be in force for 15 months or less, or

(ii) as a result of the decision on a previous application under this section, the order is due to expire within 15 months of that decision, <span style="float:right">Pt.II S.160</span>

until the last 3 months before the expiration date.

(3)  The Controller shall, on an application for review, confirm or vary his or her order as the Controller may determine to be reasonable in the circumstances.

**161.**—(1)  Where the Controller has made an order under *section 158* or *159*, and the order remains in force, the person entitled to the benefit of the order, where he or she— <span style="float:right">Effect of order of Controller as to licence.</span>

(*a*)  pays to the licensing body any charges payable in accordance with the order or, where the amount cannot be ascertained, gives an undertaking to the operator to pay the charges when ascertained, and

(*b*)  complies with the other terms specified in the order,

is in the same position as regards infringement of copyright as if he or she had at all material times been the holder of a licence granted by the owner of the copyright concerned on the terms specified in the order.

(2)  The benefit of an order made under *section 158* or *159* may be assigned—

(*a*)  in the case of an order made under *section 158*, where assignment is not prohibited under the terms of the order of the Controller, and

(*b*)  in the case of an order made under *section 159*, where assignment was not prohibited under the terms of the original licence.

(3)  The Controller may direct that an order made under *section 158* or *159* or an order made under *section 160* varying such an order, in so far as it varies the amount of charges payable, has effect from a date before that on which it was made, but not earlier than the date on which the reference or application was made or, where later, the date on which the licence was granted or, as the case may be, was due to expire.

(4)  Where a direction is given under *subsection (3)*—

(*a*)  any necessary repayments or further payments shall be made in respect of charges already paid, and

(*b*)  the reference in *subsection (1)(a)* to the charges payable in accordance with the order shall be construed, where the order is varied by a further order, as a reference to the charges so payable by virtue of that further order.

*Licensing: Miscellaneous*

**162.**—(1)  In determining what is reasonable, on a reference or application under this Chapter relating to a licensing scheme or licence, the Controller shall have regard to— <span style="float:right">General considerations: unreasonable discrimination.</span>

(*a*)  the availability of other schemes, or the granting of other licences, to other persons in similar circumstances, and

(*b*)  the terms of those schemes or licences,

[*No.* **28**.]     *Copyright and Related Rights Act,*     [2000.]
2000.

and shall exercise his or her powers so as to ensure that there is no unreasonable discrimination between licensees, or prospective licensees, under the scheme or licence to which the reference or application relates and licensees under other schemes operated by, or other licences granted by, the same person.

(2) *Subsection (1)* shall not affect the obligation of the Controller in any case to have regard to all relevant circumstances.

Licences for reprographic copying.
**163**.—Where a reference or application is made to the Controller under this Chapter relating to the licensing of reprographic copying of literary, dramatic, musical or artistic works, original databases, or of the typographical arrangement of published editions, which have been lawfully made available to the public, the Controller shall have regard to—

(*a*)  the extent to which copies of the works concerned are otherwise available,

(*b*)  the proportion of the work to be copied, and

(*c*)  the nature of the use to which the copies are likely to be put.

Licences to reflect payments in respect of underlying rights.
**164**.—Where a reference or an application is made under this Chapter in relation to licensing of the copyright in a work, the Controller shall take into account, in considering what charges are to be paid for a licence, any payments which the owner of the copyright is liable to make pursuant to the granting of the licence, or pursuant to the acts authorised by the licence—

(*a*)  to owners of the copyright in works included in the work, or

(*b*)  in respect of any performance, included in the work.

Licences to reflect conditions imposed by promoters of events.
**165**.—(1) Where a reference or an application is made under this Chapter relating to licensing in respect of the copyright in sound recordings, films, broadcasts or cable programmes which include, or are to include, any entertainment or other event, the Controller shall have regard to any conditions imposed by the promoters of the entertainment or other event, and in particular the Controller shall not consider a refusal or failure to grant a licence to be unreasonable where it could not have been granted in a manner which is consistent with those conditions.

(2) Nothing in this section shall require the Controller to have regard to any conditions where those conditions—

(*a*)  purport to regulate the charges to be imposed in respect of the grant of licences, or

(*b*)  relate to payments to be made to the promoters of any event in consideration of the grant of facilities for making the sound recording, film, broadcast or cable programme.

Licences in respect of works included in retransmissions.
**166**.—(1) This section applies to references or applications under this Chapter relating to licences to include a work in a broadcast or cable programme service, where one broadcast or cable programme

(in this section referred to as the ''first transmission'') is, by reception    Pt.II S.166
and immediate retransmission without alteration, to be further
broadcast or included in a cable programme service (in this section
referred to as the ''further transmission'').

(2) In so far as the further transmission is to the same area as the
first transmission, the Controller shall, in considering what charges,
if any, are to be paid for licences for either transmission, have regard
to the extent to which the copyright owner has already received,
or is entitled to receive, payment for the other transmission which
adequately remunerates that owner in respect of transmissions to
that area.

(3) In so far as the further transmission is to an area outside that
to which the first transmission was made, the Controller shall dis-
regard all further transmissions in considering what charges, if any,
are to be paid for licences for the first transmission.

**167.**—(1) This section applies to—    Implied indemnity
in certain schemes
and licences for
reprographic
copying.

    (*a*) schemes for licensing reprographic copying of literary, dra-
matic, musical or artistic works, original databases, or of
the typographical arrangement of published editions, law-
fully made available to the public, and

    (*b*) licences granted by licensing bodies for such copying,

where the scheme or licence concerned does not specify the works
to which it applies with sufficient particularity so as to enable
licensees to determine whether a work is within the scheme or
licence by inspection of the scheme or licence and the work.

(2) There is implied in every scheme or licence to which this
section applies—

    (*a*) an undertaking by the operator of the scheme to indemnify
a person granted a licence under the scheme, and

    (*b*) an undertaking by the licensing body to indemnify a
licensee,

against any liability incurred by a person or licensee by reason of his
or her having infringed copyright by making or authorising the mak-
ing of reprographic copies of a work in circumstances within the
apparent scope of the licence.

**168.**—(1) This section applies to—    Power to extend
application of
scheme or licence.

    (*a*) a licensing scheme to which *sections 151* to *156* apply, in so
far as they provide for the grant of licences, or

    (*b*) a licence to which *sections 158* to *161* apply,

in so far as the scheme provides for the grant of licences, or the
licence is a licence which authorises the making by or on behalf of
educational establishments for the purposes of instruction of repro-
graphic copies of literary, dramatic, musical or artistic works, original
databases or of the typographical arrangement of published editions,
which have been lawfully made available to the public.

[*No.* **28**.]     *Copyright and Related Rights Act,*     [2000.]
2000.

Pt.II S.168

(2) Where it appears to the Minister with respect to a scheme or licence to which this section applies that—

(*a*) works of a description similar to those covered by the scheme or licence are unreasonably excluded from it, and

(*b*) making those works subject to a licensing scheme or general licence would not conflict with the normal exploitation of the works or prejudice the interests of the owner of the copyright,

the Minister may by order provide that the scheme or licence shall extend to those works.

(3) Where the Minister proposes to make an order under *subsection (2)*, he or she shall give notice of the proposal to—

(*a*) the owner of the copyright,

(*b*) the licensing body concerned, and

(*c*) such persons or organisations representative of educational establishments, and such other persons or organisations, as the Minister thinks fit.

(4) Where the identity of a person, body or organisation required to be given notice under *subsection (3)* cannot be ascertained by reasonable enquiry, an advertisement published by the Minister in *Iris Oifigiúil* and at least two newspapers circulating in the State specifying details of the proposal to extend the scheme or licence shall be deemed to be notice for the purposes of that subsection.

(5) A notice given under *subsection (3)* shall inform the persons referred to in that subsection of their right to make oral or written representations to the Minister concerning the proposal within 6 months from the date of the notice, and where any of those persons wishes to make oral representations, the Minister shall appoint a person to hear the representations and to report to the Minister.

(6) In considering whether to make an order under *subsection (2)*, the Minister shall take into account any representations made to him or her under *subsection (5)* and such other matters as appear to the Minister to be relevant.

Variation or discharge of order extending scheme or licence.

**169**.—(1) The owner of the copyright in a work in respect of which an order is in force under *section 168* may apply to the Minister for the variation or discharge of the order, stating his or her reasons for making the application.

(2) The Minister shall not consider an application made within 2 years of the making of the original order, or of the making of an order on a previous application under this section, unless it appears to the Minister that the circumstances are exceptional.

(3) The Minister may confirm the order concerned and where the Minister refuses to confirm the order, he or she shall give notice of the application to—

(*a*) the licensing body concerned, and

(*b*) such persons or organisations representative of educational establishments, and such other persons or organisations, as the Minister thinks fit.

Pt.II S.169

(4) A notice given under *subsection (3)* shall inform the persons referred to in that subsection of their right to make written or oral representations to the Minister concerning the application under *subsection (1)* within 2 months from the date of the notice, and where any of those persons wishes to make oral representations, the Minister shall appoint a person to hear the representations and to report to the Minister.

(5) In considering an application under *subsection (1)*, the Minister shall take into account the reasons for the application, any representations made to him or her under *subsection (4)* and such other matters as appear to the Minister to be relevant.

(6) The Minister may make such order as he or she thinks fit confirming or discharging the order or, as the case may be, the order as previously varied, or varying or further varying the order so as to exclude works from it.

**170.**—(1) The owner of the copyright in a work which is the subject of an order made under *section 168* may appeal to the High Court which may confirm or discharge the order, or vary it so as to exclude works from it, as it thinks fit, having regard to the matters referred to in *section 168(2)*.

Appeals against orders.

(2) Where the Minister has made an order under *section 169*—

(*a*) the person who applied for the order, or

(*b*) any person or organisation representative of educational establishments, or any other persons or organisations as the Minister thinks fit, who were given notice of the application for the order and who made representations under *subsection (4)* of that section,

may appeal to the High Court, which may confirm, vary or discharge the order.

(3) An appeal under this section shall be brought within 6 weeks of the making of the order, or such further period as the High Court may allow.

(4) An order made under *section 168* or *169* shall not come into force until the expiration of 6 weeks from the making of the order or, where an appeal is brought before the expiration of that period, until the appeal proceedings are disposed of or withdrawn.

(5) Where an appeal is brought on or before the expiration of the period specified in *subsection (4)*, any decision of the High Court on the appeal shall not affect the validity of anything done in reliance on the order before that decision takes effect.

**171.**—(1) The Minister may appoint a person to inquire whether other provisions are required (whether by way of a licensing scheme or general licence) to authorise the making by or on behalf of educational establishments for the purposes of instruction of reprographic copies of literary, dramatic, musical or artistic works, original

Inquiry whether other provisions required.

[*No.* **28.**]    *Copyright and Related Rights Act,*    [2000.]
2000.

databases, or of the typographical arrangement of published editions, which—

    (*a*) have been lawfully made available to the public, and

    (*b*) are of a description which appears to the Minister—

        (i) not to be regulated by an existing licensing scheme or general licence, and

        (ii) not to be within the power conferred by *section 168.*

(2) The Minister may prescribe procedures for the establishment and conduct of an inquiry under this section and without prejudice to the generality of the aforesaid may prescribe that—

    (*a*) notice be given to persons or organisations appearing to the Minister to represent the owners of the copyright in works of that description,

    (*b*) notice be given to persons or organisations appearing to the Minister to represent educational establishments, or

    (*c*) written or oral representations may be made by those persons.

(3) Where procedures are prescribed under *subsection (2),* they shall not affect the rights of any other person to be given notice of such inquiries or the making of representations by other persons or organisations.

(4) The person appointed to hold an inquiry under this section shall not recommend the making of other provisions unless he or she is satisfied that—

    (*a*) it would be of advantage to educational establishments to be authorised to make reprographic copies of the works concerned, and

    (*b*) making those works subject to a licensing scheme or general licence would not conflict with the normal exploitation of the works or prejudice the interests of the owner of the copyright.

(5) Where a person appointed to hold an inquiry under this section recommends the making of other provisions, he or she shall specify any terms, other than terms as to the charges payable, on which licences under those provisions shall be available.

Statutory licence where recommendation not implemented.

**172.**—(1) The Minister may, within one year of the making of a recommendation under *section 171*, by order provide, that where the provision to which *subsection (2)* applies has not been made pursuant to the recommendation, the making by or on behalf of an educational establishment, for the purposes of instruction, of reprographic copies of the works to which the recommendation relates, shall be deemed to be licensed by the owners of the copyright in the works.

(2) For the purposes of *subsection (1)*, provision shall be regarded as having been made pursuant to the recommendation where—

(*a*) a certified licensing scheme has been established under Pt.II S.172 which a licence is available to the establishment concerned, or

(*b*) a general licence has been—

    (i) granted to or for the benefit of that establishment,

    (ii) referred by or on behalf of that establishment to the Controller under *section 158*, or

    (iii) offered to or for the benefit of that establishment and refused without such a reference,

and the terms of the scheme or licence accord with the recommendation.

(3) An existing licence authorising the making of the copies referred to in *subsection (1)* (not being a licence granted under a certified licensing scheme or a general licence) shall cease to have effect to the extent that it is more restrictive or more onerous than the licence provided for by an order made under *subsection (1)*.

(4) An order made under *subsection (1)* shall provide that the licence be free of any charge and, in relation to other matters, shall be subject to any terms specified in the recommendation and to such other terms as the Minister may think fit.

(5) Where a copy which would otherwise be an infringing copy is made pursuant to a licence provided for by an order made under *subsection (1)* and is subsequently sold, rented or lent, or offered or exposed for sale, rental or loan, or otherwise made available to the public, it shall be treated as an infringing copy for those purposes and for all subsequent purposes.

(6) An order made under *subsection (1)* shall come into operation not less than 6 months after it is made and, subject to *subsection (7)*, the order may be varied from time to time.

(7) An order made under *subsection (1)* shall not be varied so as to include works other than those to which the recommendation relates or to remove any terms specified in the recommendation.

(8) In this section, ''certified licensing scheme'' means a licensing scheme certified under *section 173* for the purposes of this section.

**173.**—(1) A person operating or proposing to operate a licensing scheme may apply to the Minister to certify the scheme for the purposes of *section 56, 57* or *172*.

Certification of licensing schemes.

(2) The Minister may by order certify a licensing scheme where he or she is satisfied that—

(*a*) the licensing body in charge of the scheme is representative of a substantial number of rightsholders in the category of works to which the scheme is designed to apply, and

(*b*) the scheme sets out clearly the charges payable and the other terms and conditions on which licences are to be granted.

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.II S.173

(3) The scheme shall be set out in an order made under *subsection (2)* and the certification shall come into operation for the purposes of *section 56, 57* or *172* as the case may be—

(*a*) on a date, specified in the order, not less than 8 weeks after the order is made, or

(*b*) where the scheme is the subject of a reference under *section 151*, on any later date on which the order of the Controller under that section comes into force, or the reference is withdrawn.

(4) A variation of the scheme to which this section applies is not effective unless a corresponding amendment of the order is made and the Minister shall make such an amendment in the case of a variation ordered by the Controller on a reference under *section 151, 152* or *153* and may do so in any other case where the Minister thinks fit.

(5) An order made under *subsection (2)* shall be revoked where the scheme ceases to operate and may be revoked where it appears to the Minister that the scheme is no longer being operated in accordance with the terms of the order.

*Cable Retransmissions*

Collective exercise of certain rights in relation to cable retransmissions.

**174.**—(1) The owner of the copyright in a literary, dramatic, musical or artistic work, an original database, a sound recording or a film shall have the right to grant or refuse authorisation for cable retransmission of a broadcast or cable programme from another Member State of the EEA in which the work is included.

(2) The right conferred by this section shall be known and in this section referred to as the ''cable retransmission right''.

(3) The cable retransmission right may be exercised against a cable programme service provider only through a licensing body.

(4) Where the owner of the copyright in a work has not transferred his or her cable retransmission right to a licensing body, the licensing body which manages rights of the same category shall be deemed to be permitted to manage his or her right.

(5) Where more than one licensing body manages cable retransmission rights, the owner of the copyright in a work may choose which of them is deemed to be permitted to manage his or her right.

(6) The owner of the copyright in a work to whom *subsection (4)* or *(5)* applies has the same rights and obligations resulting from any relevant agreement between the cable programme service provider and the licensing body as copyright owners who have transferred their cable retransmission right to that licensing body.

(7) Any rights to which the owner of the copyright in a work may be entitled under *subsection (6)* shall be exercised within the period of 3 years commencing on the date of the cable retransmission concerned.

(8) This section shall not affect any rights exercisable by the maker of a broadcast, whether in relation to the broadcast or a work included therein.

(9) In this section, ''cable retransmission'' means the reception and immediate retransmission without alteration by way of a cable programme service of a broadcast or of a cable programme initially transmitted from another Member State of the EEA.

Pt.II S.174

### Chapter 17

*Registration of Copyright Licensing Bodies*

**175.**—(1) The Controller shall establish and maintain a register of copyright licensing bodies in such form and manner and containing such particulars as the Minister may prescribe to be known as the ''Register of Copyright Licensing Bodies'' and referred to in this Part as the ''Register''.

Register of copyright licensing bodies.

(2) The Controller shall keep the Register in such form so that the Register is capable of being used to make a copy of any entry in the Register.

(3) The Register shall be kept at such place as may be prescribed by the Minister and, subject to the payment of such fee as may be prescribed by the Minister with the consent of the Minister for Finance—

(*a*) the Register shall be made available for inspection by a person at such times and in such manner as may be prescribed by the Minister, and

(*b*) where a request is made to the Controller for a certified or uncertified copy of, or extract from, an entry in the Register, the Controller shall issue a copy of the entry or extract to the applicant.

(4) An application for registration or renewal of a registration of a licensing body shall be made to the Controller in such form and manner as may be prescribed by the Minister and shall be subject to the payment of such fee as may be prescribed by the Minister with the consent of the Minister for Finance.

(5) The Controller shall register an applicant or renew a registration where the Controller is satisfied that—

(*a*) the applicant complies with the definition of a licensing body specified in *section 38* or *149*, and

(*b*) the applicant has provided such information and satisfied such conditions as may be prescribed by the Minister for the purposes of registration.

(6) The information prescribed under *paragraph (b)* of *subsection (5)* and supplied by the applicant for registration shall be placed on the Register, and applicants may apply to the Controller to have such information revised from time to time as circumstances may require.

(7) The information to be prescribed by the Minister under *subsection (5)(b)* shall include, as appropriate, the following—

(*a*) the name of the applicant;

(*b*) the address of the applicant;

[*No.* **28**.]     *Copyright and Related Rights Act,*     [2000.]
2000.

Pt.II S.175

(*c*) the names of the chairperson and other members of the board or officers, or names of partners, as the case may be, of the applicant;

(*d*) a copy of the memorandum and articles of association, or partnership agreement, as the case may be, of the applicant;

(*e*) details of the scheme;

(*f*) details of the scales of charges or proposed charges to be levied by the applicant;

(*g*) the class of rightsowners represented or proposed to be represented by the applicant; and

(*h*) in the case of a licensing body within the meaning specified in *section 38*, the names of the rightsholder or rightsholders in respect of whom the body concerned claims entitlement to receive payments under that section.

(8) On the registration or renewal of a registration of a licensing body, the Controller shall issue to the applicant a certificate of registration in such form as the Controller shall determine.

Proof that licensing body may act on behalf of specified classes.

**176**.—A certificate granted under *section 175(8)* shall include the particulars specified in *subsection (7)* of that section and the certificate shall be evidence of the right of the licensing body, until the contrary is proved, to act on behalf of the classes of rightsowners for whom it claims representation rights or on behalf of the rightsowners who have assigned rights to it, or exclusively licensed it, as specified in that certificate.

Notification of charges.

**177**.—(1) A licensing body registered under this Part which proposes to impose a charge, otherwise than in accordance with the scales of charges included in an application for registration or for renewal of a registration, shall provide the Controller in writing with details of the proposed charge not less than one month before the charge comes into effect.

(2) The registration of a licensing body which fails to comply with *subsection (1)* is deemed to be cancelled from the date on which the proposed charge comes into effect.

Validity of certificates of registration.

**178**.—(1) A certificate of registration issued under *section 175(8)* shall be valid for 12 months from the date of registration or such lesser period as may be specified by the Controller in the certificate.

(2) Subject to *section 175(4)*, a licensing body registered under this Part may apply for renewal of its registration for further periods each of which shall not exceed 12 months.

(3) An application for renewal of a registration shall be made not less than one month before the expiration of the period of validity of the certificate of registration.

(4) A term of renewal of a registration shall take effect from the expiration of the previous registration.

Refusal of application.

**179**.—(1) The Controller may refuse an application for renewal of a registration by a licensing body registered under this Part or cancel

the registration of a licensing body where the body no longer fulfils the requirements specified in *section 175(5)*.

Pt.II S.179

(2) The Controller shall remove a licensing body from the Register where its application for renewal of its registration is refused or its registration is cancelled.

**180.**—No action or other proceedings shall lie or be maintainable against the Controller (except in the case of wilful neglect of duty) in respect of anything done or omitted to be done by him or her in the *bona fide* exercise of any functions, powers or duties conferred or imposed by or under this Chapter.

Indemnity for Controller.

**181.**—(1) Any body operating as a licensing body within the meaning specified in *section 38* or *149* shall be obliged to register in accordance with the provisions of this Chapter, and to remain registered for so long as it continues to operate in this capacity.

Obligation of collecting societies to register (copyright).

(2) Any body to which the provisions of *subsection (1)* applies which—

(*a*) fails within six months of the commencement of this Chapter to register under the terms of this Chapter,

(*b*) fails within 2 months of its establishment in the case of a body established after the commencement of this Chapter, to register under the terms of this Chapter, or

(*c*) continues to operate as such a body having been removed from the Register for any reason,

shall be guilty of an offence.

(3) A person guilty of an offence under *subsection (2)* shall be liable—

(*a*) on summary conviction, to a fine not exceeding £1,500, or to imprisonment for a term not exceeding 12 months, or both, or

(*b*) on conviction on indictment, to a fine not exceeding £100,000, or to imprisonment for a term not exceeding 5 years, or both.

## Chapter 18

### *Qualification for Copyright Protection*

**182.**—(1) Copyright shall not subsist in a work unless the qualification requirements of this Chapter are satisfied in relation to—

Qualification for copyright protection: general.

(*a*) the author in *section 183*,

(*b*) the country, territory, state or area in which the work was first lawfully made available to the public in *section 184*,

(*c*) in the case of a broadcast or a cable programme, the country, territory, state or area from which the broadcast was made or from which the programme was sent in *section 186*.

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.II S.182

(2) *Subsection (1)* shall not apply in relation to the Government or the Oireachtas or to the copyright of prescribed international organisations.

(3) Where the qualification requirements specified in this Chapter or in *section 191, 193* or *196* are satisfied on one occasion in relation to a work, the copyright in the work shall not cease to subsist by reason of any subsequent event.

Qualification by
reference to author.

**183**.—(1) A work shall qualify for copyright protection where the author was at the material time a qualifying person.

(2) For the purposes of this Part, a qualifying person shall be—

(*a*) an Irish citizen;

(*b*) a citizen or subject of, or an individual domiciled or ordinarily resident in the State, or in any country, territory, state or area to which the relevant provisions of this Part extend;

(*c*) a body incorporated under the law of the State or of any country, territory, state or area to which the relevant provisions of this Part extend;

(*d*) a partnership or unincorporated body formed under the law of the State or of any country, territory, state or area to which the relevant provisions of this Part extend; or

(*e*) any other body in the State or of any country, territory, state or area to which the relevant provisions of this Part extend.

(3) Where provision is made by order under *section 188*, a work shall also qualify for copyright protection where at the material time the author was—

(*a*) a citizen or subject of, or an individual domiciled or ordinarily resident in a country, territory, state or area to which the order relates;

(*b*) a body incorporated under the law of a country, territory, state or area to which the order relates;

(*c*) a partnership or unincorporated body formed under the law of any country, territory, state or area to which the order relates; or

(*d*) any other body in any country, territory, state or area to which the order relates.

(4) Subject to *subsection (5)*, a work of joint authorship shall qualify for copyright protection where at the material time any of the authors satisfies the requirements specified in *subsection (1)*, *(2)* or *(3)*.

(5) Where a work of joint authorship qualifies for copyright protection only under this section, only those authors who satisfy those requirements shall be taken into account for the purposes of—

(*a*) *section 23(1)(a)* (first ownership of copyright; entitlement of author or author's employer);

[2000.]    *Copyright and Related Rights Act,*    [*No.* **28**.]
2000.

(*b*) *section 24* (duration of copyright in a literary, dramatic,    Pt.II S.183
musical or artistic work or an original database); and

(*c*) *section 88* (anonymous and pseudonymous works; acts
permitted), with reference to *section 2* (definition of
"anonymous work" and definition of "pseudonymous
work"), *section 2(7)* and *(8)* (deemer of authorship to be
known), and *section 33* (expiry of copyright).

(6) The material time in relation to a literary, dramatic, musical
or artistic work or an original database, shall be—

(*a*) in the case of a work which has not been lawfully made
available to the public, when the work was made or,
where the making of the work extended over a period, a
substantial part of that period; or

(*b*) in the case of a work which has been lawfully made available
to the public, when the work was first lawfully made
available to the public or, where the author had died
before that time, immediately before his or her death.

(7) The material time in relation to other descriptions of work
shall be as follows:

(*a*) in the case of a sound recording or film, when the sound
recording or film was made;

(*b*) in the case of a broadcast, when the broadcast was made;

(*c*) in the case of a cable programme, when the programme was
first lawfully included in a cable programme service;

(*d*) in the case of the typographical arrangement of a published
edition, when the edition was first lawfully made avail-
able to the public.

**184.**—(1) A literary, dramatic, musical or artistic work, sound    Qualification for
recording, film, typographical arrangement of a published edition or    copyright
an original database, shall qualify for copyright protection where it    protection: specific.
is first lawfully made available to the public—

(*a*) in the State; or

(*b*) in any country, territory, state or area to which the relevant
provision of this Part extends.

(2) For the purposes of this section, lawfully making available to
the public a work in one country, territory, state or area shall be
deemed to be the first lawful making available to the public of the
work even where the work is simultaneously lawfully made available
to the public elsewhere; and for this purpose, lawfully making avail-
able to the public of a work elsewhere within the previous 30 days
shall be deemed to be simultaneous.

**185.**—For the purposes of this Part—    Territorial waters
and Continental
Shelf.

(*a*) acts undertaken in, on, under or over—

(i) the waters in the portion of the sea which comprises
the territorial seas of the State,

[*No.* **28.**]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.II S.185

(ii) the waters in all areas of the sea to which the internal or inland waters of the State are extended by section 5 of the Maritime Jurisdiction Act, 1959, and

(iii) the waters in any area which is for the time being a designated area within the meaning of section 1 of the Continental Shelf Act, 1968,

and

(*b*) acts undertaken on an Irish ship, aircraft or hovercraft registered under the laws of the State,

shall be deemed to have been undertaken in the State.

Qualification for copyright in broadcasts and cable programmes.

**186.**—A broadcast shall qualify for copyright protection where it is lawfully made from, and a cable programme shall qualify for copyright protection where it is first sent from a place—

(*a*) in the State, or

(*b*) in any country, territory, state or area to which the relevant provisions of this Part extend.

Prohibition on contravention of certain international obligations.

**187.**—The Government shall not exercise the power to make regulations provided for by *section 190*, in relation to a country, territory, state or area in contravention of obligations entered into under any bilateral or multilateral copyright or related rights convention to which the State is a party or of any obligations incurred by the State pursuant to the EEA Agreement.

Extension of this Part by order.

**188.**—(1) The Government may make an order to extend the provisions of this Part and, in particular, the provisions as to qualification of works for copyright protection in *sections 183, 184* and *186*, to any convention country, territory, state or area.

(2) The effect of the extension of copyright protection specified in *subsection (1)*, may, where so stated in the *Third Schedule*, apply to a specified part or parts of the international multilateral agreement, treaty or convention in question.

(3) The Government may, by order, add to or delete from the list of agreements, international multilateral agreements, treaties or conventions contained in the *Third Schedule*, or specify such part or parts of the said multilateral agreements, treaties or conventions to which the extension of protection shall apply in accordance with the terms of *subsection (2)*, having regard to the obligations of the State under relevant multilateral agreements, treaties and conventions.

(4) The effect of the extension of the provisions of *sections 183, 184* and *186* relating to qualification of works for copyright protection under the terms of this section shall be that works qualifying for copyright protection by reference to their authors or geographical provenance under the equivalent provisions of the law of a country, territory, state or area party to an agreement, treaty or convention named in the *Third Schedule* shall qualify for copyright protection under Irish law, to the same degree as if they (those works) had qualified for such protection directly under *sections 183, 184* and *186*.

(5) For the purposes of this section, ''convention country, territory, state or area'' means a convention country, territory, state or area

[2000.]    *Copyright and Related Rights Act,*    [*No.* **28.**]
2000.

which is a party to a multilateral agreement, treaty or convention    Pt.II S.188
relating to copyright to which the State is also a party, and which is
specified in the *Third Schedule*.

**189.**—(1) The Government may by order make provision for    Orders to be made
applying in relation to a country, territory, state or area, other than    for countries other
a convention country, territory, state or area within the meaning of    than convention
*section 188(5)*, all or any of the provisions of this Part specified in    countries, etc.
the order, so as to secure that those provisions apply in relation to—

    (*a*)  individuals who are citizens or subjects of, or who are domi-
ciled or ordinarily resident in, that country, territory,
state or area as they apply to persons who are domiciled
or ordinarily resident in the State,

    (*b*)  bodies incorporated under the law of that country, territory,
state or area as they apply in relation to bodies incorpor-
ated under the law of the State,

    (*c*)  partnerships or unincorporated bodies formed under the law
of that country, territory, state or area as they apply in
relation to partnerships or unincorporated bodies formed
under the law of the State,

    (*d*)  any other bodies in that country, territory, state or area as
they apply in relation to such bodies in the State,

    (*e*)  literary, dramatic, musical or artistic works, sound
recordings, films, typographical arrangement of a pub-
lished edition or original databases first made available
to the public in that country, territory, state or area as
they apply in relation to such works first made available
to the public in the State, or

    (*f*)  broadcasts made from or cable programmes sent from that
country, territory, state or area as they apply in relation
to broadcasts made from or cable programmes sent from
the State.

(2) An order made under this section may make provision for all
or any of the matters referred to in *subsection (1)* and may—

    (*a*)  apply any provision of this Part subject to such exceptions
and modifications as are specified in the order, and

    (*b*)  direct that any provisions of this Part apply either generally
or in relation to such classes of works, or other classes of
case, as are specified in the order.

(3) The Government shall not make an order under this section
in relation to a country, territory, state or area unless satisfied that
provision has been or will be made under the law of that country,
territory, state or area, in respect of the class of works to which the
order relates, giving adequate protection to the owners of copyright
under this Part.

(4) The Government may by order revoke or amend any order
made under this section, including an order under this subsection.

**190.**—(1) Where the protection of Irish copyright law has been    Restriction of rights
extended to a country, territory, state or area under the provisions    by order.

[*No. 28.*]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.II S.190

of *section 189*, and it appears to the Government that Irish works or one or more classes of those works are not adequately protected in that country, territory, state or area, the Government may by order restrict the rights conferred by this Part in relation to works of authors connected with that country, territory, state or area.

(2)  In an order made under *subsection (1)*, the Government shall designate the country, territory, state or area concerned and provide that, for the purposes specified in that order, a work shall not qualify for copyright protection after the date specified in the order where that work is made at a time when the author is—

(*a*)  a citizen or subject of that country, territory, state or area (who is not at the same time domiciled or ordinarily resident in the State),

(*b*)  a body incorporated under the law of that country, territory, state or area,

(*c*)  a partnership or unincorporated body formed under the law of that country, territory, state or area, or

(*d*)  any other body of that country, territory, state or area,

and the order may make such provision for all the purposes of this Part or for such purposes as are specified in that order, and either generally or in relation to such class or classes of cases as are specified in that order, having regard to the nature and extent of the deficiency of protection referred to in *subsection (1)*.

(3)  In this section ''Irish works'' means works of which the author was at the material time within the meaning of *section 183*.

Chapter 19

*Government and Oireachtas Copyright*

Government copyright.

**191.**—(1)  Where a work is made by an officer or employee of the Government or of the State, in the course of his or her duties, the work qualifies for copyright protection notwithstanding the provisions relating to the requirements as to qualification for copyright protection specified in *section 182*.

(2)  The Government shall be the first owner of the copyright in a work to which *subsection (1)* applies.

(3)  The copyright in a work to which *subsection (1)* applies shall be known and in this Act referred to as ''Government copyright'', notwithstanding that the copyright may be, or may have been, assigned to another person.

(4)  Government copyright in a work shall expire 50 years from the end of the calendar year in which the work was made.

(5)  In the case of a work of joint authorship where one or more but not all of the authors is a person to whom *subsection (1)* applies, this section applies in relation to those persons and the copyright subsisting by virtue of their contribution to the work.

(6)  Subject to *subsections (1)* to *(5)*, this Part applies in relation to Government copyright as to other copyright.

(7) Where Oireachtas copyright subsists in a work this section shall not apply.

Pt.II S.191

**192.**—(1) The copyright in any Bill or enactment vests in the Houses of the Oireachtas.

Copyright in Acts, etc.

(2) The copyright provided for in this section subsists from the date of the first lawful making available to the public of the work and shall expire 50 years from the end of the calendar year in which the work was so made available.

**193.**—(1) Where a work is made by or under the direction or control of either or both of the Houses of the Oireachtas—

Houses of the Oireachtas: copyright.

    (*a*) the work qualifies for copyright protection notwithstanding the provisions relating to the requirements as to qualification for copyright protection specified in *section 182*, and

    (*b*) the House of the Oireachtas by whom, or under whose direction or control, the work is made shall be the first owner of any copyright in the work, and where the work is made by or under the direction or control of both Houses of the Oireachtas, each House shall be joint first owners of the copyright.

(2) The copyright in a work to which this section applies shall be known and in this Act referred to as "Oireachtas copyright", notwithstanding that the copyright may be, or may have been, assigned to another person.

(3) Oireachtas copyright in a work shall expire 50 years from the end of the calendar year in which the work was made.

(4) For the purposes of this section, works made by or under the direction or control of either or both of the Houses of the Oireachtas include—

    (*a*) any work made by an officer or employee of either House of the Oireachtas in the course of his or her duties, and

    (*b*) any sound recording, film, live broadcast or live cable programme of the proceedings of either House of the Oireachtas.

(5) In the case of a work of joint authorship where one or more but not all of the authors are acting on behalf of, or under the direction or control of either or both of the Houses of the Oireachtas, this section applies in relation to those authors and the copyright subsisting by virtue of their contribution to the work.

(6) Subject to *subsections (1)* to *(5)*, this Part applies in relation to Oireachtas copyright as to other copyright.

**194.**—(1) Subject to *subsections (2)* and *(3)*, a permission to copy or to make available to the public any work, Act of the Oireachtas, Bill or other material protected by Oireachtas copyright under the provisions of this Chapter may be granted to any person.

Oireachtas copyright.

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.II S.194

(2) The conditions upon which any work, Act of the Oireachtas, Bill or other material protected by Oireachtas copyright may be made available under this Chapter shall be those imposed from time to time on such materials by the Ceann Comhairle of Dáil Éireann and the Cathaoirleach of Seanad Éireann or an officer or employee of the Houses of the Oireachtas duly authorised for that purpose by the Ceann Comhairle of Dáil Éireann and the Cathaoirleach of Seanad Éireann.

(3) The conditions upon which any work, Act of the Oireachtas, Bill or other material protected by Oireachtas copyright may be made available under this Chapter shall be laid before each House of the Oireachtas as soon as may be after they have been imposed.

Houses of the Oireachtas: supplementary provisions with regard to copyright.

**195.**—For the purposes of holding, dealing with and enforcing copyright, and in connection with all legal proceedings relating to copyright, each of the Houses of the Oireachtas shall be deemed to have, and to have had, the legal capacities of a body corporate, which is not affected by a dissolution of either or both of the Houses of the Oireachtas.

Chapter 20

*International Organisations*

Copyright vesting in certain international organisations.

**196.**—(1) Notwithstanding that a work—

(*a*) is made by an officer or employee of, or is lawfully made available to the public by, a prescribed international organisation to which this section applies, and

(*b*) does not qualify for copyright protection under *section 182*,

copyright subsists in the work by virtue of this section and the organisation concerned shall be the first owner of that copyright.

(2) The Government may prescribe the international organisations to which this section applies.

(3) Where an international organisation in respect of which an order has been made under *subsection (2)* is the first owner of the copyright in a work by virtue of this section, the copyright in that work shall expire 50 years from the end of the calendar year in which the work was made or shall subsist for such longer period as the Government may by order specify for the purpose of complying with the international obligations of the State.

(4) An international organisation prescribed under *subsection (2)* shall be deemed to have, and to have had, the legal capacities of a body corporate for the purpose of holding, dealing with and enforcing copyright and in connection with all legal proceedings relating to copyright.

Chapter 21

*Anonymous Works*

Works of folklore.

**197.**—(1) Where, in the case of an anonymous work which has not been lawfully made available to the public, there is evidence that the author (or, in the case of a work of joint authorship, any of the

authors) complied with the requirements for copyright protection   Pt.II S.197
specified in *section 182* by having a connection with a country, terri-
tory, state or area other than the State, it shall be presumed until the
contrary is proved that copyright subsists in the work.

(2) Where, under the law of a country, territory, state or area, a
body is appointed to protect and enforce copyright in a work referred
to in *subsection (1)*, the Minister may by order designate that body
for the purposes of this section.

(3) A body designated by order under *subsection (2)* shall be
recognised in the State as having authority to protect and enforce
copyright in a work referred to in *subsection (1)* in the place of the
owner of the copyright, other than the authority to assign the copy-
right in the work and the body may bring proceedings relating to
copyright in its own name.

(4) This section shall not apply where there has been an assign-
ment of the copyright in a work by the author of which notice has
been given to the designated body, and nothing in this section affects
the validity of an assignment of copyright made, or licence granted,
by the author or a person lawfully claiming under him or her.

## Chapter 22

### *Deposit of Certain Copyright Materials*

**198.**—(1) The publisher of any book first published in the State   Delivery of certain
after the commencement of this section or, in the case of the auth-   materials to
ority specified in *paragraph (a)*, the publisher of any book published   libraries.
in the State, shall, within one month after the publication, deliver, at
his or her own expense, a copy of the book to each of the following—

    (*a*) the authority having control of the National Library of
        Ireland,

    (*b*) the authority having control of the library of Trinity Col-
        lege, Dublin,

    (*c*) the authority having control of the library of the University
        of Limerick,

    (*d*) the authority having control of the library of Dublin City
        University, and

    (*e*) the Board of the British Library,

and four copies of the book for or in accordance with the directions
of the authority having control of the National University of Ireland
for use in the four constituent universities of that University.

(2) Boards and authorities taking delivery of books under *subsec-
tion (1)* shall give a written receipt for every book delivered to them
under that subsection.

(3) The Minister may, on an application of a Board or authority
referred to in *subsection (1)*, make regulations exempting from *sub-
section (1)* in respect of the Board or authority making the appli-
cation, publications wholly or mainly in the nature of trade advertise-
ments, or any class of work as may be specified in those regulations,
and it shall not be necessary for the publisher of any publication so
excepted to deliver the publication to that Board or authority or for

[*No.* **28**.]     *Copyright and Related Rights Act,*     [2000.]
2000.

Pt.II S.198

such Board or authority to give a receipt unless as respects any particular publication a written demand for the delivery of that work is made by the Board or authority concerned.

(4) The Boards or authorities referred to in *subsection (1)* may, before delivery of a book is made under *subsection (1)*, request that a book be delivered in a particular form, being one of the forms in which the book is published and the publisher shall deliver it in the form requested.

(5) The publisher of any book first published in the State after the commencement of this section shall, where a demand is made in writing by the authority having control of each of the following libraries—

(*a*) the Bodleian Library, Oxford,

(*b*) the University Library, Cambridge,

(*c*) the National Library of Scotland, and

(*d*) the National Library of Wales,

before the expiration of 12 months after the book is published, deliver within one month after receipt of that written demand or, where the demand was so made before the book was published, within one month after publication, to an address in Dublin named in the demand a copy of that book for, or in accordance with the directions of, that authority.

(6) In the case of an encyclopaedia, newspaper, review, magazine or work published in a series of numbers or parts, the written demand referred to in *subsection (5)* may include all numbers or parts of the work which may subsequently be published.

(7) A copy of a book delivered to the authority having control of the National Library of Ireland or the Board of the British Library pursuant to this section shall be a copy of the whole book with all maps and illustrations belonging to that book and, subject to *subsection (4)*, finished in the same manner as the copy in that form which is superior in quality to any other copy in that form of the book available.

(8) A copy of a book delivered to any of the authorities referred to in this section, other than those referred to in *subsection (7)*, pursuant to this section, shall be in the form specified by the Board or authority, which shall be one of the forms in which the book has been published, and shall be in like condition as that form of the book.

(9) Where a publisher fails to comply with this section he or she shall be guilty of an offence and shall be liable on summary conviction to a fine not exceeding £500 and in addition the person shall be liable to be ordered to comply with this section.

(10) For the purposes of this section, ''book'' includes every part or division of a book, pamphlet, sheet of letterpress, sheet of music, map, plan, chart or table separately published, but shall not include any second or subsequent edition of a book unless such edition contains additions or alterations either in the letterpress or in the maps, plans, prints or other engravings belonging thereto.

(11) Where a copy of a book requested under *subsection (1)* is delivered in a form other than an electronic form, the Board or other

authorities referred to in *subsection (1)* may request, in addition to    Pt.II S.198
that copy, a copy in an electronic form readable by means of an
electronic retrieval system and on such request being made a copy
in electronic form shall be delivered by the publisher to the Board
or authority concerned.

(12) For the purposes of this section, ''publication'', in relation to
a book—

(*a*) means the issue of copies to the public, and

(*b*) includes its making available to the public by means of an
electronic retrieval system,

and related expressions shall be construed accordingly.

## Chapter 23

*Amendment of National Cultural Institutions Act, 1997, and
Miscellaneous Repeals*

**199.**—(1) Sections 65 and 66 of the National Cultural Institutions    Amendment of
Act, 1997, are hereby amended by the substitution of the following    sections 65 and 66
sections therefor:    of the National
Cultural Institutions
Act, 1997.

''65.—(1) Subject to the provisions of this section, the publisher
of any material to which this section applies shall, within one month
or such longer period as the authority having control of the National
Library of Ireland may allow after its publication, deliver at his or
her own expense, a copy of the material to that authority and the
authority shall give a written receipt to the publisher for any and all
such material delivered to them.

(2) The publisher of material to which this section applies that
relates wholly or mainly to Ireland shall, if a written demand for any
such material is made by the authority referred to in *subsection (1)*
not later than 12 months after its publication, deliver a copy of the
material to that authority within one month after receipt of the
demand or, if the demand was made before its publication, within
one month or such longer period as the authority may in any particu-
lar case allow after its publication.

(3) The Minister, following consultation with the Minister for
Enterprise, Trade and Employment, may make such regulations as
he or she considers appropriate in relation to the quality and format
of material to which this section applies in cases where the copies of
such material are not of uniform quality or can be published in differ-
ent formats.

(4) Where a publisher fails to comply with this section, he or she
shall be guilty of an offence and shall be liable on summary convic-
tion to a fine not exceeding £500 and to pay such sum not exceeding
the value of the material as the court may decide which shall be paid
to the trustees or authority to whom the material should have been
delivered.

(5) In this section:

'material to which this section applies' means material that is of such
class as may be specified in regulations made by the Minister, follow-
ing consultation with the Minister for Enterprise, Trade and Employ-
ment, and in this definition, 'material' includes any engraving, photo-
graph, text of a play, cinematograph film, microfilm, video recording,

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.II S.199

sound recording, record, diskette, magnetic tape, compact disc, or
other thing on or in which works or information or the represen-
tations thereof is written, recorded, stored or reproduced but does
not include local records or local archives within the meaning, in
each case, of section 65 of the Local Government Act, 1994, or books
within the meaning of *section 198* of the *Copyright and Related Rights
Act, 2000*;

'publisher', for the purposes of this section, means a person who
issues to the public, or makes available to the public by means of an
electronic retrieval system, material to which this section applies;

'work', for the purposes of this section, has the meaning assigned to
it by *section 2* of the *Copyright and Related Rights Act, 2000*.

(6) This section shall apply only to material concerned substan-
tially or primarily with Ireland. In cases of doubt, the certification of
the Minister to the effect that material is concerned substantially or
primarily with Ireland shall satisfy the requirements of this
subsection.

(7) The Minister, following consultation with the Minister for
Enterprise, Trade and Employment, may by order apply this section,
with such modifications and adaptations as he or she considers neces-
sary, to one or more of the institutions or bodies referred to in *section
198* of the *Copyright and Related Rights Act, 2000*.

(8) Section 6 of the Dublin City University Act, 1989, and section
7 of the University of Limerick Act, 1989, are hereby repealed.''.


Chapter 24

*Copyright: Legal Tender*

Copyright in Irish
legal tender notes,
euro notes,
consolidated bank
notes and in Irish
and euro coins.

**200**.—(1) Notwithstanding anything contained in this Part and
subject to *subsection (2)*, the copyright in legal tender notes issued,
whether before or after the commencement of this section, by the
Central Bank of Ireland (in this section referred to as ''the Bank'')
or issued before such commencement by the Currency Commission,
shall be perpetual and vests in the Bank.

(2) This Part is without prejudice to the copyright of the European
Central Bank in legal tender notes denominated in the euro unit.

(3) Notwithstanding anything contained in this Part, the copyright
in consolidated bank notes issued before the commencement of this
section by the Bank or by the Currency Commission shall be per-
petual and vests in the Bank.

(4) Notwithstanding anything contained in this Part, the copyright
in coins issued under the Coinage Act, 1926, gold coins issued under
the Currency Act, 1927, coins issued under the Coinage Act, 1950,
and coins issued under the Decimal Currency Acts, 1969 to 1990,
and the copyright in the artistic work defining the design of any such
coin shall be perpetual and vests in the Minister for Finance.

(5) (*a*) This Part is without prejudice to the copyright of the Euro-
pean Community in the common face of coins denomi-
nated in euro or in cent, and in the artistic work defining
the design of any such face, or to the assignment of that
copyright by the Commission of the European Communi-
ties on behalf of the European Community.

(*b*) Notwithstanding anything contained in this Part, the copyright in the national face of coins issued under section 11 of the Economic and Monetary Union Act, 1998, and the copyright in the artistic work defining the design of any such face shall be perpetual and vests in the Minister for Finance.

Pt.II S.200

(*c*) Notwithstanding anything contained in this Part, the copyright in all coins issued under Part III of the Economic and Monetary Union Act, 1998, and the copyright in the artistic work defining the design of any such coin shall be perpetual and vests in the Minister for Finance.

(6) In the application of *section 37(3)* to any legal tender note or consolidated bank note or any coin to which this section applies, references in that subsection to the work as a whole or to any substantial part thereof shall be construed as references to the note or coin as a whole or to any part thereof.

(7) *Chapter 6* of this Part shall not apply in relation to the copyrights referred to in this section.

(8) Coins to which this section applies and the artistic work defining the design of any such coin shall be deemed, for the purposes of section 172 of the Act of 1927, not to be designs.

(9) This section applies to coins issued under the Coinage Act, 1926, gold coins issued under the Currency Act, 1927, coins issued under the Coinage Act, 1950, coins issued under the Decimal Currency Acts, 1969 to 1990, and coins issued under the Economic and Monetary Union Act, 1998.

## Chapter 25

### *Disposal of Certain Books*

**201.**—Notwithstanding anything contained in the King's Inns Library Act, 1945, or the enactments referred to in that Act or the Copyright Act, 1801, or the Copyright Act, 1836, the Benchers of the Honorable Society of King's Inns may sell or exchange any of the books of the King's Inns Library, Dublin, whether acquired before or after the commencement of this section.

Disposal of books of King's Inns Library, Dublin.

## PART III

### Rights in Performances

### Chapter 1

### *Performers' Rights*

**202.**—(1) In *Parts III* and *IV*, "performance" means a performance of any actors, singers, musicians, dancers or other persons who act, sing, deliver, declaim, play in, interpret or otherwise perform literary, dramatic, musical or artistic works or expressions of works of folklore, which is a live performance given by one or more individuals, and shall include a performance of a variety act or any similar presentation.

Interpretation.

(2) A performance of a literary work includes a reading or recitation.

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.III S.202

(3) A performance of a dramatic work includes a choreographic work or a work of mime.

(4) In *Parts III* and *IV*, ''recording'', in relation to a performance, means any fixation—

    (*a*) made directly or indirectly from the live performance,

    (*b*) made from a broadcast of, or cable programme including, the performance, or

    (*c*) made directly or indirectly from another recording of the performance.

(5) The rights conferred by *Parts III* and *IV* are independent of—

    (*a*) the copyright in, or the rights conferred by *Chapter 7* of *Part II* relating to, any work performed or any fixation of, or broadcast or cable programme including, the perform-ance, and

    (*b*) other rights or obligations arising otherwise than under *Parts III* and *IV*.

Performers' rights: general.

**203**.—(1) A performer has the exclusive right to authorise or prohibit—

    (*a*) the making of a recording of the whole or any substantial part of a qualifying performance directly from the live performance,

    (*b*) the broadcasting live, or including live in a cable programme service, of the whole or any substantial part of a qualify-ing performance, or

    (*c*) the making of a recording of the whole or any substantial part of a qualifying performance directly from a broad-cast of, or cable programme including, the live per-formance.

(2) The rights of a performer conferred by this section are infringed by a person who, without the consent of the performer, undertakes or authorises another to undertake any of the acts referred to in *subsection (1)*.

(3) The rights of a performer conferred by this section are not infringed by the making of a recording referred to in *subsection (1)(c)* by a person for his or her private and domestic use.

(4) Where a recording, which would otherwise be an illicit recording, is made under this section but is subsequently sold, rented or lent, or offered or exposed for sale, rental or loan, or otherwise made available to the public, it shall be treated as an illicit recording for those purposes and for all subsequent purposes.

(5) In an action for infringement of the rights of a performer brought under this section, damages shall not be awarded against a defendant who shows that at the time of the infringement he or she did not know and had no reason to believe that consent had not been given.

[2000.]     *Copyright and Related Rights Act,*     [*No.* **28**.]
2000.

**204.**—(1) A performer has the exclusive right to authorise or pro-
hibit the making of a copy of a recording of the whole or any substan-
tial part of a qualifying performance and it is immaterial whether the
copy is made directly or indirectly.

Pt.III

Reproduction right
of performer.

(2) There shall be a right of a performer conferred by this section
which shall be known and in this Part referred to as the ''repro-
duction right''.

(3) The reproduction right is infringed by a person who, without
the consent of the performer, undertakes or authorises another to
undertake the act referred to in *subsection (1)*.

(4) The reproduction right is not infringed by the making of a
copy referred to in *subsection (3)* by a person for his or her private
and domestic use.

(5) Where a copy, which would otherwise be an illicit recording is
made under this section but is subsequently sold, rented or lent, or
offered or exposed for sale, rental or loan, or otherwise made avail-
able to the public, it shall be treated as an illicit recording for those
purposes and for all subsequent purposes.

(6) For the purposes of *Parts III* and *IV*, references to the making
of a copy of a recording or to copying shall include the making of a
temporary or permanent copy of a recording and the storing of a
recording in any medium.

**205.**—(1) Subject to *subsection (2)*, a performer has the exclusive
right to authorise or prohibit the making available to the public of
copies of a recording of the whole or any substantial part of a qualify-
ing performance and it is immaterial whether the copy is made
directly or indirectly.

Making available to
public copies of
recordings of
qualifying
performances.

(2) Where a copy of a sound recording is—

(*a*) played in public, or

(*b*) included in a broadcast or cable programme service,

the right conferred by this section shall be deemed to be satisfied by
the payment of equitable remuneration as specified in *section 208*.

(3) A reference in *Parts III* and *IV* to the making available to the
public of copies of a recording shall include the making available to
the public of the original recording of the live performance.

(4) There shall be a right conferred by this section which shall be
known and in *Parts III* and *IV* referred to as the ''making available
right''.

(5) A reference in *Parts III* and *IV* to the making available to
the public of copies of a recording of a qualifying performance shall
include—

(*a*) making available to the public of copies of a recording, by
wire or wireless means, in such a way that members of
the public may access the recording from a place and at
a time individually chosen by them, including the making
available of copies of recordings through the Internet,

(*b*) showing or playing a copy of the recording in public,

[*No.* **28**.]     *Copyright and Related Rights Act,*     [2000.]
2000.

Pt.III S.205

(*c*) broadcasting a copy of the recording,

(*d*) including a copy of the recording in a cable programme service,

(*e*) issuing copies of the recording to the public,

(*f*) renting copies of the recording, or

(*g*) lending copies of the recording without the payment of remuneration to the rightsowner.

(6) The making available right is infringed by a person who, without the consent of the performer, undertakes or authorises another to undertake any of the acts referred to in *subsection (5)*.

(7) Subject to *subsection (8)*, the provision of facilities for enabling the making available to the public of copies of a recording of a performance shall not of itself constitute an act of making available to the public of copies of the recording.

(8) Without prejudice to *subsection (7)*, where a person who provides facilities referred to in that subsection is notified by the rightsowner that those facilities are being used to infringe any of the rights conferred by *Parts III* and *IV* and that person fails to remove that infringing material as soon as is practicable thereafter, that person shall also be liable for the infringement.

(9) Without prejudice to *subsection (8)*, the Minister may prescribe the form of the notice to be given under that subsection and the form shall specify—

(*a*) the name and address of the person claiming to be the owner of the rights in the recording concerned,

(*b*) the grounds that the person requesting the removal of material has for such removal, and

(*c*) a list of the material which is to be removed.

(10) Where the making available right is infringed by a copy of a recording being played or shown in public, by means of apparatus for receiving sounds, images or data or any combination of sounds, images or data, or the representations thereof, conveyed by any means, the person by whom sounds, images or data or any combination of sounds, images or data, or the representations thereof, are sent shall not be regarded as liable for the infringement.

Distribution right of performers.

**206**.—(1) References in *Parts III* and *IV* to the issue of copies of a recording to the public shall be construed as including—

(*a*) the act of putting into circulation in a Member State of the EEA copies of a recording not previously put into circulation in a Member State of the EEA by or with the consent of the performer, or

(*b*) the act of putting into circulation outside the Member States of the EEA copies of a recording not previously put into circulation in a Member State of the EEA or elsewhere.

(2) Without prejudice to the rental right or the lending right, references in this Part to the issue of copies of a recording to the public shall not include—

*Copyright and Related Rights Act,*    [*No.* **28.**]
2000.

(*a*) any subsequent circulation of copies of a recording pre-    Pt.III S.206
viously put into circulation, or

(*b*) any subsequent importation of such copies of a recording
into the State or any other Member State of the EEA,

except in so far as *subsection (1)(a)* applies to putting into circulation
in the Member States of the EEA copies of a recording previously
put into circulation outside the Member States of the EEA.

(3) A reference in this section to circulation shall include sale,
rental or loan.

(4) A performer has the exclusive right to authorise or prohibit
the issue of copies of a recording to the public of the whole or any
substantial part of a qualifying performance.

(5) There shall be a right conferred by this section which shall be
known and in this Part referred to as the ''distribution right''.

(6) The distribution right is infringed by a person who, without
the consent of the performer, undertakes or authorises another to
undertake the acts referred to in *subsection (4)*.

**207.**—(1) References in *Parts III* and *IV* to ''rental'' or ''lending''    Rental and lending
shall not be construed as including the making available to the public    right of performer.
of copies of a recording for the purposes of—

(*a*) playing or showing in public, broadcasting or inclusion in a
cable programme service,

(*b*) exhibiting in public, or

(*c*) on the spot reference use.

(2) A performer has the exclusive right to authorise or prohibit
the rental or lending of copies of a recording of the whole or any
substantial part of his or her qualifying performance.

(3) (*a*) There shall be a right of the performer to authorise or
prohibit the rental of copies of a recording which shall be
known and in *Parts III* and *IV* referred to as the ''rental
right''.

(*b*) There shall be a right of the performer to authorise or
prohibit the lending of copies of a recording which shall
be known and in *Parts III* and *IV* referred to as the ''lend-
ing right''.

(4) The rental right is infringed by a person who, without the con-
sent of the performer, rents or authorises another to rent copies of
a recording of the whole or any substantial part of a qualifying per-
formance.

(5) The lending right is infringed by a person who, without the
consent of the performer, lends or authorises another to lend copies
of a recording of the whole or any substantial part of a qualifying
performance.

(6) In *Parts III* and *IV*, and subject to *subsections (7)* and *(8)*—

(*a*) ''rental'' means making a copy of a recording available for
use on terms that it will or may be returned after a limited
period of time, for direct or indirect economic or com-
mercial advantage;

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.III S.207

(*b*) ''lending'' means making a copy of a recording available for use on terms that it will or may be returned after a limited period of time, otherwise than for direct or indirect economic or commercial advantage, through an establishment to which members of the public have access.

(7) The making of a copy of a recording available between establishments to which members of the public have access shall not infringe any of the rights conferred by *Parts III* and *IV.*

(8) Where lending by an establishment to which members of the public have access gives rise to a payment, the amount of which does not exceed what is necessary to cover the operating costs of the establishment, there is no direct or indirect economic or commercial advantage for the purposes of this section.

Right to equitable remuneration for exploitation of sound recording.

**208**.—(1) A performer has a right to equitable remuneration from the owner of the copyright in a sound recording where the sound recording of the whole or any substantial part of a qualifying performance which has been made available to the public for commercial purposes is—

(*a*) played in public, or

(*b*) included in a broadcast or cable programme service.

(2) A performer shall not assign the right to equitable remuneration under this section except to a collecting society for the purpose of enabling the collecting society to exercise that right on his or her behalf.

(3) The right to equitable remuneration is transmissible by testamentary disposition or by operation of law, as personal or moveable property, and it may be assigned or further transmitted, including by assignment, by any person who legally acquires the right.

(4) Subject to *subsections (5)* to *(9)*, the amount of equitable remuneration payable under this section is that which has been agreed by or on behalf of the persons by and to whom it is payable.

(5) In default of agreement as to the amount of equitable remuneration payable, the person by or to whom it is payable may apply to the Controller for an order under *subsection (8)*.

(6) Subject to *subsection (7)*, a person to or by whom equitable remuneration is payable may also apply to the Controller—

(*a*) to vary any agreement as to the amount payable, or

(*b*) to vary any previous determination of the Controller as to the amount payable.

(7) An application may not be made under *subsection (6)* within 12 months from the date of the previous determination except with the special leave of the Controller.

(8) On an application being made under this section, the Controller shall consider the matter and make such order as to the method of calculating and paying equitable remuneration as he or she may determine to be reasonable in the circumstances, having regard to the importance of the contribution of the performer to the sound recording.

(9)  An order made under this section shall have effect from the
date on which it is made or such later date as may be specified by
the Controller.

Pt.III S.208

(10)  An agreement as to the amount of equitable remuneration
payable shall be void in so far as it purports—

(*a*)  to exclude or restrict the right to equitable remuneration
conferred by this section,

(*b*)  to prevent a person questioning the amount of equitable
remuneration, or

(*c*)  to restrict the powers of the Controller conferred by this
section.

### Chapter 2

*Infringement of Performers' Rights*

**209.**—A person infringes the rights of a performer conferred by
*section 203* where he or she, without the consent of the performer—

Consent required
for recording or live
transmission of
performance.

(*a*)  shows or plays in public the whole or any substantial part of
a qualifying performance, or

(*b*)  broadcasts or includes in a cable programme service the
whole or any substantial part of a qualifying performance,

by means of a recording which was, and which that person knows or
has reason to believe was, made without the consent of the
performer.

**210.**—(1)  In *Parts III* and *IV* ''illicit recording'', in relation to a
performance, shall be construed in accordance with this section.

Meaning of illicit
recording.

(2)  A recording of the whole or any substantial part of a perform-
ance shall be an illicit recording where the recording is made without
the consent of the performer.

(3)  A copy of a recording shall be an illicit recording where its
making constitutes an infringement of a performer's property rights
in the recording concerned.

(4)  Subject to *subsection (5)*, a copy of a recording shall be an
illicit recording where—

(*a*)  it has been or is to be imported into the State, and

(*b*)  its making in the State would have constituted an infringe-
ment of a performer's property rights in the recording
concerned, or breach of an exclusive licence agreement
relating to that recording.

(5)  A copy of a recording which previously has been issued to the
public in accordance with *section 206* in any other Member State of
the EEA by, or with the consent of, the owner of the performers'
property rights in the recording, shall not be deemed to be an illicit
recording for the purposes of *subsection (4)*.

(6)  A recording of the whole or any substantial part of a perform-
ance which is subject to an exclusive recording contract shall be an

[*No.* **28.**]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.III S.210

illicit recording where it is made, otherwise than for private and domestic use, without the consent of the person having recording rights or the consent of the performer.

(7) For the purposes of *sections 258* and *260*, a recording shall be deemed to be an illicit recording where it is an illicit recording for the purposes referred to in *subsections (2)*, *(3)*, *(4)* and *(5)* of this section.

Presumptions.

**211.**—Where in any proceedings for infringement of any right conferred by *Part III* or *Part IV* the question arises as to whether a recording is an illicit recording and it is shown that—

(*a*) the recording is a recording of the performance concerned, and

(*b*) rights conferred by *Parts III* and *IV* subsist or have subsisted at any time in the recording,

it shall be presumed until the contrary is proved that the recording was made at a time when such rights subsisted.

Secondary infringement: importing, possessing or dealing with illicit recordings.

**212.**—(1) A person infringes the rights of a performer conferred by *section 203* where he or she, without the consent of the performer—

(*a*) sells, rents or lends, or offers or exposes for sale, rental or loan,

(*b*) imports into the State, otherwise than for his or her private and domestic use,

(*c*) in the course of a business, trade or profession, has in his or her possession, custody or control, or makes available to the public, or

(*d*) otherwise than in the course of a business, trade or profession, makes available to the public to such an extent as to prejudice the interests of the performer,

a recording of a qualifying performance which is, and which he or she knows or has reason to believe is, an illicit recording.

(2) Where, in an action brought under this section for infringement of the rights of a performer, a defendant shows that the illicit recording was innocently acquired by him or her or his or her predecessor in title, the only remedy available against the defendant in respect of the infringement shall be an award of damages not exceeding a reasonable payment in respect of the act complained of.

(3) In *Parts III* and *IV* ''innocently acquired'' means that the person acquiring the recording did not know and had no reason to believe that it was an illicit recording.

Secondary infringement: providing means for making illicit recording.

**213.**—(1) A person infringes the rights of a performer conferred by *section 203* where he or she, without the consent of the performer—

(*a*) makes,

(*b*) sells, rents or lends, or offers or exposes for sale, rental or loan,

(*c*)  imports into the State, or        Pt.III S.213

(*d*)  has in his or her possession, custody or control,

an article specifically designed or adapted for making recordings of a performance, knowing or having reason to believe that it has been or is to be used to make illicit recordings.

**214.**—Where the rights of a performer conferred by this Part are infringed by a public performance of a recording of the performance, or by playing or showing the recording in public, by means of apparatus for—      Secondary infringement: permitting use of apparatus for infringing performances.

(*a*)  playing sound recordings,

(*b*)  showing films, or

(*c*)  receiving sounds or images or any combination of sounds or images, or the representations thereof, conveyed by any means,

the following persons shall also be liable for the infringement—

(i)  a person who supplied the apparatus, or any substantial part thereof if, when he or she supplied the apparatus or part thereof—

(I)  he or she knew or had reason to believe that the apparatus was likely to be used to infringe the rights of a performer conferred by this Part, or

(II)  in the case of apparatus the normal use of which involves a public performance, playing or showing, he or she had reason to believe that it would be used to infringe the rights of a performer conferred by this Part;

(ii)  an owner or occupier of premises who gave permission for the apparatus to be brought onto the premises if, when the owner or occupier gave permission, he or she knew or had reason to believe that the apparatus was likely to be used to infringe the rights of a performer conferred by this Part; and

(iii)  a person who supplied a copy of a sound recording or film used to infringe the rights of a performer conferred by this Part if, when the person supplied it, he or she knew or had reason to believe that what was supplied, or a copy made directly or indirectly therefrom, was likely to be used to infringe the rights of a performer conferred by this Part.

## Chapter 3

### *Recording Rights*

**215.**—(1) In *Parts III* and *IV* an ''exclusive recording contract'' means a contract between a performer and another person under which that person is entitled to the exclusion of all other persons (including the performer) to make recordings of one or more of that performer's performances with a view to their commercial exploitation.      Interpretation.

Pt.III S.215

(2) Subject to *subsection (3)*, references in *Parts III* and *IV* to a
''person having recording rights'', in relation to a performance, are
to a person—

    (*a*) who is party to and has the benefit of an exclusive recording
          contract to which the performance is subject, or

    (*b*) to whom the benefit of such a contract has been assigned,

and who is a qualifying person.

(3) Where a performance is subject to an exclusive recording con-
tract but the person mentioned in *subsection (2)* is not a qualifying
person, references in *Parts III* and *IV* to a ''person having recording
rights'', in relation to the performance, are to a person—

    (*a*) who is licensed by the person having recording rights to
          make recordings of the performance with a view to their
          commercial exploitation, or

    (*b*) to whom the benefit of such a licence has been assigned,

and who is a qualifying person.

(4) In this section ''with a view to their commercial exploitation''
means with a view to the recordings being sold, rented or lent, or
offered or exposed for sale, rental or loan or shown or played in
public or otherwise made available to the public for commercial gain.

Infringement of
recording rights by
copying.

**216.**—(1) A person infringes the rights conferred by this Part on
a person having recording rights in relation to a performance where
he or she, without the consent of the performer or of the person
having recording rights in relation to the performance, makes a
recording of the whole or any substantial part of the performance.

(2) Without prejudice to any other remedy, in an action brought
under this section for infringement of the rights referred to in *subsec-
tion (1)*, damages shall not be awarded against a defendant who
shows that at the time of the infringement he or she did not know
and had no reason to believe that consent had not been given.

Infringement of
recording rights by
use of illicit
recording.

**217.**—(1) A person infringes the rights conferred by this Part on
a person having recording rights in relation to a performance where
he or she, without the consent of the person having recording rights
in relation to the performance or, in the case of a qualifying perform-
ance, the consent of the performer—

    (*a*) shows or plays in public the whole or any substantial part of
          the performance, or

    (*b*) broadcasts or includes in a cable programme service the
          whole or any substantial part of the performance,

by means of a recording which was, and which that person knows or
has reason to believe was, made without the appropriate consent.

(2) The reference in *subsection (1)* to the ''appropriate consent''
is to the consent of—

    (*a*) the performer, or

    (*b*) the person who, at the time the consent was given, had
          recording rights in relation to the performance (or, where
          there was more than one such person, the consent of all
          of them).

**218.**—(1)  A person infringes the rights conferred by this Part on a person having recording rights in relation to a performance where he or she, without the consent of the person having recording rights in relation to the performance or, in the case of a qualifying performance, the consent of the performer—

Pt.III

Secondary infringement: importing, possessing or dealing with illicit recording.

(*a*)  sells, rents or lends, or offers or exposes for sale, rental or loan,

(*b*)  imports into the State, otherwise than for his or her private and domestic use,

(*c*)  in the course of a business, trade or profession, has in his or her possession, custody or control, or makes available to the public, or

(*d*)  otherwise than in the course of a business, trade or profession, makes available to the public to such an extent as to prejudice the interests of the person having recording rights,

a recording of a performance which is, and which that person knows or has reason to believe is, an illicit recording.

(2)  Where, in an action brought under this section for infringement of the rights conferred by this Part on a person having recording rights, a defendant shows that the illicit recording was innocently acquired by him or her or his or her predecessor in title, the only remedy available against the defendant in respect of the infringement shall be an award of damages not exceeding a reasonable payment in respect of the act complained of.

**219.**—A person infringes the rights conferred by this Part on a person having recording rights in relation to a performance where he or she, without the consent of the person having recording rights in relation to the performance or, in the case of a qualifying performance, the consent of the performer—

Secondary infringement: providing means for making illicit recordings.

(*a*)  makes,

(*b*)  sells, rents or lends, or offers or exposes for sale, rental or loan,

(*c*)  imports into the State, or

(*d*)  has in his or her possession, custody or control,

an article specifically designed or adapted for making recordings of a performance, knowing or having reason to believe that it has been or is to be used to make illicit recordings.

### Chapter 4

*Acts Permitted in Relation to Performances*

**220.**—In this Part an act may be exempted under more than one category of exemption and the exemption of an act under one category of exemption shall not preclude its exemption under another category.

Exemptions in respect of performance.

**221.**—(1)  Fair dealing with a performance or recording for the purposes of criticism or review, of that or another performance or

Fair dealing with performances, etc.

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.III S.221

recording, or of a work, or for the purpose of reporting current events, shall not infringe any of the rights conferred by this Part.

(2) In this Part "fair dealing" means the making use of a performance or a recording which has been lawfully made available to the public for a purpose and to an extent which will not unreasonably prejudice the interests of the rightsowner.

Incidental use of performances.

**222.**—(1) The rights conferred by this Part are not infringed by the inclusion in an incidental manner of a performance or recording in another recording or work.

(2) The rights conferred by this Part are not infringed by the making available to the public of anything whose making was not, by virtue of *subsection (1)*, an infringement of those rights.

(3) A performance or recording shall not be regarded as included in an incidental manner in another recording or work where it is included in a manner where the interests of the rightsowner are unreasonably prejudiced.

*Education*

Copying of a performance for purpose of instruction, etc.

**223.**—(1) The rights conferred by this Part are not infringed by the copying of a recording of a performance in the course of instruction or preparation for instruction where the copying is done by or on behalf of a person giving or receiving instruction.

(2) The rights conferred by this Part are not infringed—

(*a*) by the copying of a recording of a performance for the purposes of setting or answering the questions in an examination, or

(*b*) by anything done for the purposes of an examination by way of communicating the questions to the examination candidates.

(3) Where a copy which would otherwise be an illicit recording is made under this section but is subsequently sold, rented or lent, or offered or exposed for sale, rental or loan, or otherwise made available to the public, it shall be treated as an illicit recording for those purposes and for all subsequent purposes.

Playing of sound recording, etc., at an educational establishment.

**224.**—(1) The playing or showing of a sound recording, film, broadcast or cable programme before an audience limited to persons who are teachers in or pupils in attendance at an educational establishment or other persons directly connected with the activities of that establishment—

(*a*) by a teacher or pupil in the course of the activities of the establishment concerned, or

(*b*) by any person for the purposes of instruction,

is not a playing or showing of a performance or a recording in public for the purposes of infringement of the rights conferred by this Part.

(2) For the purposes of this section, a person is not directly connected with the activities of an educational establishment by reason only that he or she is a parent or a guardian of a pupil in attendance at the educational establishment concerned.

**225.**—(1) A recording of a broadcast or a cable programme, or a copy of such a recording, may be made by or on behalf of an educational establishment for the educational purposes of that establishment without infringing any of the rights conferred by this Part in relation to any performance or recording included in the broadcast or cable programme.

Pt.III

Recording of broadcast, etc., on behalf of an educational establishment.

(2) Where a recording which would otherwise be an illicit recording is made under this section but is subsequently sold, rented or lent, or offered or exposed for sale, rental or loan, or otherwise made available to the public, it shall be treated as an illicit recording for those purposes and for all subsequent purposes.

**226.**—(1) Subject to *subsection (2)*, educational establishments and establishments to which members of the public have access shall be exempt from the payment of remuneration under *section 205(5)(g)* and shall not infringe the rights conferred by this Part by the lending of copies of a recording of a performance.

Performer's rights not infringed by lending.

(2) The Minister shall prescribe the educational establishments and the establishments to which members of the public have access for the purposes of *subsection (1)*.

### Libraries and Archives

**227.**—(1) The Minister may make regulations for the purposes of this section and those regulations may make different provisions for different classes of libraries or archives and for different purposes.

Regulations relating to copying of recordings by libraries and archives.

(2) Without prejudice to the generality of *subsection (1)*, the Minister may prescribe the libraries and archives to which *sections 228* to *234* apply and may prescribe all or any of the following—

(*a*) the conditions that are to be complied with when a librarian or archivist of a prescribed library or prescribed archive makes and supplies a copy of any part of a recording of a performance which has been lawfully made available to the public to a person requiring a copy;

(*b*) the conditions that are to be complied with when a librarian or archivist of a prescribed library or prescribed archive makes and supplies to another prescribed library or prescribed archive a copy of a recording of a performance or part of a recording of a performance which has been lawfully made available to the public and is required by that other prescribed library or archive;

(*c*) the conditions that are to be complied with before a librarian or archivist of a prescribed library or prescribed archive makes a copy of a recording of a performance in the permanent collection of the library or archive in order to preserve or replace that recording in the permanent collection of that prescribed library or prescribed archive, or in the permanent collection of another prescribed library or prescribed archive;

(*d*) the conditions that are to be complied with by a librarian or archivist of a prescribed library or prescribed archive when making or supplying a copy of the whole or part of certain recordings of a performance which have not been lawfully made available to the public from a recording in the prescribed library or prescribed archive to a person requiring the copy.

[*No.* **28.**]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.III

Libraries and
archives:
declarations.

**228.**—(1)  Where regulations made by the Minister under *section 227* require a librarian or archivist to be satisfied as to any matter before making or supplying a copy of a recording of a performance—

(*a*)  the librarian or archivist concerned may rely on a declaration as to that matter by the person requesting the copy, unless the librarian or archivist is aware that it is false in a material particular, and

(*b*)  in such cases as may be prescribed, the librarian or archivist shall not make or supply the copy in the absence of a declaration in such form as may be prescribed.

(2)  Where a person requesting a copy of a recording of a performance makes a declaration which is false in a material particular and is supplied with a copy which would have been an illicit recording if made by him or her—

(*a*)  he or she shall be liable for infringement of the rights conferred by this Part as if he or she had made the copy, and

(*b*)  the copy shall be treated as an illicit recording.

Copying by
librarians or
archivists: parts of
recordings lawfully
made available to
public.

**229.**—(1)  The librarian or archivist of a prescribed library or prescribed archive may, where the prescribed conditions are complied with, make and supply a copy of part of a recording of a performance which has been lawfully made available to the public without infringing any rights conferred by this Part.

(2)  A copy made under *subsection (1)* shall not be supplied other than to a person who satisfies the librarian or archivist that he or she requires that copy for the purposes of research or private study and he or she shall not use it for any other purpose and that person shall not be furnished with more than one copy of the same recording unless the person satisfies the librarian or archivist that the previous copy has been lost, stolen, discarded or destroyed or a reasonable period of time has elapsed, and that person shall not be furnished with a copy of more than a reasonable proportion of any recording of a performance.

Multiple copying.

**230.**—(1)  A copy of a recording shall not be supplied under *section 229* to more than 3 persons whose requirements are related to any similar requirement of any other person.

(2)  For the purposes of *subsection (1)*—

(*a*)  the requirements of persons shall be deemed to be similar where the requirements are for copies of substantially the same material at approximately the same time and for substantially the same purpose, and

(*b*)  the requirements of persons shall be deemed to be related where those persons receive instructions to which the material is relevant at the same time and place.

Copying by
librarians or
archivists: supply of
copies to other
libraries and
archives.

**231.**—(1)  The librarian or archivist of a prescribed library or prescribed archive may, where the prescribed conditions are complied with, make and supply to another prescribed library or prescribed archive a copy of the whole or part of a recording of a performance, which has been lawfully made available to the public, without infringing any rights conferred by this Part.

(2) *Subsection (1)* shall not apply where, at the time the copy is made, the librarian or archivist making it could, by reasonable enquiry, obtain the consent of a person entitled to authorise the making of the copy.

Pt.III S.231

**232.**—(1) The librarian or archivist of a prescribed library or prescribed archive may, where the prescribed conditions are complied with, make a copy of a recording of a performance in the permanent collection of the library or archive—

Copying by librarians or archivists: replacement copies of recordings of performances.

    (*a*) in order to preserve or replace that recording by placing the copy in the permanent collection of that library or archive in addition to or in place of that recording, or

    (*b*) in order to replace in the permanent collection of another prescribed library or prescribed archive a recording which has been lost, destroyed or damaged,

without infringing any right conferred by this Part.

(2) This section shall only apply where it is not reasonably practicable to purchase a copy of the recording concerned for the purposes of *subsection (1)*.

**233.**—(1) The librarian or archivist of a prescribed library or prescribed archive may, where the prescribed conditions are complied with, make a copy of a recording of a performance in the permanent collection of the library or archive—

Copying by librarians or archivists for certain purposes.

    (*a*) for the purposes of obtaining insurance cover for the copy of a performance concerned;

    (*b*) for purposes of security;

    (*c*) for the purposes of compiling or preparing an archival record of the performance; or

    (*d*) for exhibition in the library or archive,

without infringing any rights conferred by this Part.

(2) This section shall apply to copying conducted for the curatorial purposes specified in *subsection (1)*, and to an extent reasonably justified by the non-commercial purpose to be achieved.

**234.**—(1) The librarian or archivist of a prescribed library or prescribed archive may, where the prescribed conditions are complied with, make and supply a copy of the whole or part of a recording of a performance which has not been lawfully made available to the public from any recording in the permanent collection of the library or archive without infringing any right conferred by this Part.

Copying by librarians or archivists: certain recordings not lawfully made available to public.

(2) This section shall not apply where the performer, or the person having recording rights in the relevant performance, has prohibited copying of that recording of the performance and at the time the copy is made the librarian or archivist making the copy knew, or ought to have been aware of, that fact.

(3) A copy made under *subsection (1)* shall not be supplied other than to a person who satisfies the librarian or archivist that he or she

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.III S.234

requires that copy for purposes of research or private study and he or she shall not use it for any other purpose and that person shall not be furnished with more than one copy of that recording or part of that recording.

Copy of recording required to be made as condition of export.

**235.**—Where a recording of a performance of cultural or historical importance or interest may not lawfully be exported from the State unless a copy of it is made and deposited in a library, archive or other institution designated by the Minister for Arts, Heritage, Gaeltacht and the Islands under section 50 of the National Cultural Institutions Act, 1997, it shall not be an infringement of any right conferred by this Part to make that copy.

Copying by librarians or archivists: illicit recording.

**236.**—Where a copy which would otherwise be an illicit recording is made under *section 229*, *231*, *232*, *234* or *235* but is subsequently sold, rented or lent, or offered or exposed for sale, rental or loan, or otherwise made available to the public, it shall be treated as an illicit recording for those purposes and for all subsequent purposes.

### *Public Administration*

Parliamentary and judicial proceedings.

**237.**—The rights conferred by this Part are not infringed by anything done for the purposes of parliamentary or judicial proceedings or for the purpose of reporting those proceedings.

Statutory inquiries.

**238.**—(1) The rights conferred by this Part are not infringed by anything done for the purposes of a statutory inquiry or for the purpose of reporting any such inquiry.

(2) The rights conferred by this Part are not infringed by the making available to the public of copies of a report of a statutory inquiry containing a recording of a performance.

Copying of material in public records.

**239.**—Any material which is comprised in records which are open to public inspection may be copied, and a copy may be supplied to any person, without infringing any right conferred by this Part.

Material open to public inspection or on statutory register.

**240.**—(1) Without prejudice to the generality of *section 239*, where material is open to public inspection pursuant to a statutory requirement, or is on a statutory register, the rights conferred by this Part are not infringed by the copying, for a purpose which does not involve the making available to the public of copies, of so much of the material as contains factual information of any description, by or with the authority of the person required to make the material open to public inspection or, by or on the authority of the person maintaining the register.

(2) Where material is open to public inspection pursuant to a statutory requirement, or is on a statutory register, the rights conferred by this Part are not infringed by the copying or making available to the public of copies of that material, for the purpose of enabling the material to be inspected at another time or place, or otherwise facilitating the exercise of any right for the purpose of which the requirement is imposed, by or with the authority of the person required to make the material open to public inspection or, as the case may be, the person maintaining the register.

(3) Where a recording of a performance is made available to the public under this section the person granting access to the material shall ensure that it bears a mark clearly indicating that it is provided for the purpose of inspection and that no other use of the material

may be made without the consent of the person entitled to authorise   Pt.III S.240
such use.

(4)  Material may not be provided under this section unless the person granting access to the material has first obtained from the person requesting the material a declaration, in such form as may be prescribed, indicating that the material is required for the sole purpose of enabling the material to be inspected at another time or place or to otherwise facilitate the exercise of the right of public inspection.

(5)  Where material which is open to public inspection pursuant to a statutory requirement, or is on a statutory register, contains information about matters of general, scientific, technical, commercial or economic interest, the rights conferred by this Part are not infringed by the copying or making available to the public of copies of that material for the purpose of disseminating that information, by or with the authority of the person required to make the material open to public inspection or, as the case may be, the person maintaining the register.

(6)  The Minister may prescribe the conditions which are to be complied with before material is made available to the public under this section.

(7)  The Minister may by order provide that *subsections (1)* to *(5)* apply—

   (*a*)  to material made open to public inspection by—

      (i)  an international organisation specified in the order, or

      (ii)  a person specified in the order who has functions in the State under an international agreement to which the State is party,

     or

   (*b*)  to a register maintained by an international organisation specified in the order,

as they apply in relation to material open to public inspection pursuant to a statutory requirement, or on a statutory register.

**241.**—(1)  Where the undertaking of a particular act is specifically   Acts done under
authorised by an enactment then, unless the enactment provides   statutory authority.
otherwise, the undertaking of that act shall not infringe any right
conferred by this Part.

(2)  Nothing in this section shall be construed as excluding any defence available under any enactment.

### Recordings in Electronic Form

**242.**—(1)  This section applies where a recording of a performance   Transfer of copies
in electronic form has been purchased on terms which expressly or   of recordings in
impliedly allow the purchaser to make further recordings in connec-   electronic form.
tion with his or her use of the recording.

(2)  Where there are no express terms—

[*No. 28*.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.III S.242

(*a*) prohibiting the transfer of the recording by the purchaser, imposing obligations which continue after a transfer, prohibiting the assignment of any licence or terminating any licence on a transfer, or

(*b*) specifying the conditions on which a transferee may undertake the acts which the purchaser was permitted to undertake,

then, any acts which the purchaser was permitted to undertake may also be undertaken by a transferee without infringement of any right conferred by this Part, but any recording made by the purchaser which is not also transferred shall be treated as an illicit recording for those purposes and for all subsequent purposes.

(3) *Subsection (2)* applies where the original purchased recording is no longer usable and that which is transferred is a further recording used in its place.

(4) This section shall apply on a second and subsequent transfer in like manner as to the first transfer to a purchaser and references to the purchaser shall be construed as references to a second or subsequent transferee.

(5) This section shall not apply in relation to a recording purchased before the commencement of this Part.

*Miscellaneous Matters Relating to Performers' Rights*

Use of recordings of spoken words in certain cases.

**243.**—(1) Subject to compliance with the conditions specified in *subsection (2)*, where a recording of the reading or recitation of a literary or a dramatic work is made for the purpose of—

(*a*) reporting current events, or

(*b*) broadcasting or including in a cable programme service the whole or part of the reading or recitation,

it is not an infringement of any right conferred by this Part to use the recording or to make further copies and use those copies for the purposes referred to in *paragraphs (a)* and *(b)*.

(2) The conditions referred to in *subsection (1)* are—

(*a*) that the recording is a direct recording of the reading or recitation and is not taken from a previous recording or from a broadcast or cable programme,

(*b*) that the making of the recording was not prohibited by or on behalf of the person giving the reading or recitation,

(*c*) that the use made of the recording is not prohibited by or on behalf of the person giving the reading or recitation before the recording was made, and

(*d*) that the use made of the recording is by or with the authority of a person who is lawfully in possession of the recording.

Transient and incidental copies.

**244.**—(1) The rights conferred by this Part are not infringed by the making of a transient and incidental copy of a recording of a performance which is technically required for the viewing of or

listening to the recording by a member of the public to whom the  Pt.III S.244
recording is lawfully made available.

(2) Where a copy which would otherwise be an illicit recording is
made under this section but is subsequently sold, rented or lent, or
offered or exposed for sale, rental or loan, or otherwise made available
to the public, it shall be treated as an illicit recording for those
purposes and for all subsequent purposes.

**245.**—(1) A recording of a performance of an anonymous work  Recordings of
which has not been lawfully made available to the public may be  works of folklore.
made for the purpose of including it in an archive maintained by a
designated body without infringing any right conferred by this Part
where at the time the recording is made—

(*a*) the making of the recording does not infringe any copyright,
and

(*b*) the making of the recording is not prohibited by any
performer.

(2) A copy of a recording made under *subsection (1)* and included
in an archive maintained by a designated body may, subject to compliance
with the conditions referred to in *subsection (3)*, be made
and supplied by an archivist without infringing any right conferred
by this Part.

(3) The conditions referred to in *subsection (2)* relating to the
actions of archivists are—

(*a*) that a copy may not be supplied other than to a person who
satisfies the archivist that he or she requires that copy for
the purposes of research or private study and he or she
shall not use it for any other purpose, and

(*b*) that a person shall not be furnished with more than one
copy of the same recording.

(4) In this section "designated body" means a body designated for
the purposes of *section 92*.

**246.**—(1) Subject to *subsection (2)*, it is not an infringement of any  Playing or showing
of the rights conferred by this Part to cause a sound recording, broad-  sound recordings,
cast or cable programme to be heard or viewed where it is heard or  broadcasts and
viewed—  cable programmes
  in certain premises.

(*a*) in part of the premises where sleeping accommodation is
provided for the residents or inmates, and

(*b*) as part of the amenities provided exclusively or mainly for
residents or inmates.

(2) *Subsection (1)* does not apply in respect of any part of premises
to which *subsection (1)* applies where there is a discrete charge
made for admission to the part of the premises where a sound
recording, broadcast or cable programme is to be heard or viewed.

**247.**—(1) Subject to compliance with the conditions specified in  Playing of sound
*subsection (2)*, it is not an infringement of any right conferred by this  recordings for clubs,
Part to play a sound recording as part of the private activities of or  societies, etc.
for the benefit of a club, society or other organisation.

(2) The conditions referred to in *subsection (1)* are—

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.III S.247

(a) that the club, society or other organisation is not established or conducted for profit and its main objects are charitable or are otherwise concerned with the advancement of religion, education or social welfare, and

(b) the proceeds of any charge for admission to the place where the sound recording is to be heard are applied solely for the purposes of the club, society or other organisation.

(3) *Subsection (1)* shall not apply in the case of any club, society or other organisation where a charge is made for admission to the place where the sound recording is to be heard and any of the proceeds of the charge are applied otherwise than for the purpose of the club, society or other organisation.

Recording for purposes of broadcast or cable programme.

**248.**—(1) Where, by virtue of a licence or assignment of a right conferred by this Part, a person is authorised to broadcast or include in a cable programme service a recording of a performance, he or she shall be deemed to be licensed by the owner of the right in the recording to copy or authorise the copying of that recording by means of his or her facilities for the purposes of his or her broadcast or cable programme.

(2) A licence conferred by *subsection (1)* shall be subject to the condition that any copy resulting from the exercise of that licence shall not be used for any purpose other than the broadcast or cable programme and shall be destroyed within 3 months of first being used for broadcasting or included in a cable programme service.

(3) A copy of a recording made under this section shall be treated as an illicit recording where it is used for purposes other than broadcasting or inclusion in a cable programme service or where it is used after the expiration of 3 months from the date it is first used for broadcasting or included in a cable programme service.

Recording for purposes of supervision and control of broadcasts and cable programmes.

**249.**—(1) The rights conferred by this Part are not infringed by the making or use by an authorised broadcaster or authorised cable programme service provider, for the purpose of maintaining supervision and control over programmes broadcast by them or included by them in a cable programme service, of recordings of those programmes.

(2) The rights conferred by this Part are not infringed by any use made by any body established by the State to regulate the operations of broadcasters or cable programme service providers of any recordings of broadcasts or cable programmes.

Recording for purposes of time-shifting.

**250.**—(1) The making for private and domestic use of a fixation of a broadcast or cable programme solely for the purpose of enabling it to be viewed or listened to at another time or place shall not infringe any right conferred by this Part.

(2) Subject to *subsection (3)*, the making by an establishment for private and domestic use of a fixation of a broadcast or cable programme solely for the purpose of enabling it to be viewed or listened to at another time or place shall not infringe any right conferred by this Part.

(3) The Minister may specify by order establishments for the purposes of this section.

Reception and retransmission of broadcast in cable programme service.

**251.**—(1) This section applies where a broadcast made from a place in the State is, by reception and immediate retransmission, without alteration, included in a cable programme service.

(2) The rights conferred by this Part in relation to a performance or recording included in a broadcast to which this section applies are not infringed where—

    (*a*) the inclusion is pursuant to a statutory requirement, or

    (*b*) the broadcast is made for reception in the area in which the cable programme service is provided and it is not a satellite transmission or an encrypted transmission.

(3) Where the making of a broadcast is an infringement of any right conferred by this Part, the fact that the broadcast was retransmitted as a programme in a cable programme service shall be taken into account in assessing the damages for that infringement.

Pt.III S.251

**252.**—(1) A designated body may—

    (*a*) make a copy of a recording, for the purpose of modifying that copy to meet the special needs of a person who has a physical or mental disability, and

    (*b*) supply that modified copy to that person without infringing any right conferred by this Part.

(2) Where a copy which would otherwise be an illicit recording is made under this section but is subsequently sold, rented or lent, or offered or exposed for sale, rental or loan, or otherwise made available to the public, it shall be treated as an illicit recording for those purposes and for all subsequent purposes.

(3) In this section ''designated body'' means a body designated for the purposes of *section 104.*

Provision of modified recordings.

**253.**—(1) A recording of a broadcast or a cable programme of a designated class or a copy of such a recording may be made for the purpose of including it in an archive maintained by a designated body without infringing any right conferred by this Part in relation to a performance or recording included in the broadcast or cable programme.

(2) In this section—

''designated body'' means a body designated for the purposes of *section 105*;

''designated class'' means a class designated for the purposes of *section 105.*

Recording for archival purposes.

**254.**—(1) Subject to the service or publication of such notices as may be required by rules made under *section 363* or as the Controller may in any particular case direct, the Controller may by order, on the application of a person wishing to make a copy of a recording of a performance, consent to the making of the copy in a case where the identity or location of the person entitled to the reproduction right cannot be ascertained by reasonable enquiry.

(2) The consent given by the Controller under *subsection (1)* has effect in the same manner as the consent of the person entitled to the reproduction right for the purposes of *section 204* and may be given subject to any conditions specified in the order made under *subsection (1).*

(3) For the purposes of giving consent under *subsection (1)*, the Controller shall take into account—

Power of Controller to consent on behalf of performer.

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.III S.254

(a) whether the original recording was made with the consent of the performer and is lawfully in the possession, custody or control of the person proposing to make the copy, and

(b) whether the making of the copy is consistent with the obligations of the parties to the arrangements under which, or is otherwise consistent with the purposes for which, the original recording was made.

(4) *Subsection (3)* shall not affect the obligation of the Controller in any case to have regard to all relevant circumstances.

(5) Where the Controller consents under *subsection (1)* he or she shall, in default of agreement between the applicant and the person entitled to the reproduction right, make such order as the Controller thinks fit as to the payment to be made to the person entitled to the reproduction right in consideration of consent being given.

## Chapter 5

### Delivery Up and Seizure

Order for delivery up.

**255.**—(1) Where a person—

(a) in the course of a business, trade or profession, has in his or her possession, custody or control an illicit recording of a performance,

(b) has in his or her possession, custody or control an article specifically designed or adapted for making recordings of a performance, knowing or having reason to believe that it has been or is to be used to make illicit recordings, or

(c) has in his or her possession, custody or control a protection-defeating device,

a person having rights conferred by this Part in relation to the performance may apply to the appropriate court for an order that the illicit recording, article or device be delivered up to him or her or to such other person as the court may direct.

(2) An application under *subsection (1)* shall not be made after the expiration of the period specified in *section 263(1)* as being the limit of the period for delivery up and no order shall be made unless the court also makes, or it appears to the court that there are grounds for making, an order as to the disposal of the illicit recording, article or device.

(3) A person to whom an illicit recording, article or device is delivered up pursuant to an order made under this section shall, where an order under *section 264* as to the disposal of the illicit recording, article or device is not made, retain it pending the making of an order, or the decision not to make an order, under that section.

Application to District Court for seizure of illicit recordings, articles or devices, etc.

**256.**—(1) Without prejudice to *section 257* where the owner of the rights in a recording of a performance conferred by this Part applies to the District Court, it may, where satisfied that there are reasonable grounds for believing that there are being hawked, carried about or marketed—

(a) illicit recordings of the performance,

    (*b*)  articles specifically designed or adapted for making Pt.III S.256
recordings of a performance, which the person hawking,
carrying about or marketing those articles, knows or has
reason to believe that they have been or are to be used
to make illicit recordings of a performance, or

    (*c*)  protection-defeating devices,

authorise by order a member of the Garda Síochána to seize without
warrant the recordings, articles or devices and to bring them before
the District Court.

    (2)  On being satisfied that a recording, article or device referred
to in *subsection (1)* is—

    (*a*)  an illicit recording,

    (*b*)  an article that has been or is to be used to make illicit
recordings, or

    (*c*)  a protection-defeating device,

the District Court may order the recording, article or device to be
destroyed or to be delivered up to the rightsowner or otherwise dealt
with as the Court may think fit.

    (3)  In an application to the District Court under *subsection (1)*
or, in any *ex parte* application or interlocutory motion to a court of
competent jurisdiction for an order which would permit the applicant
to enter and search premises or place specified therein and take pos-
session of material found therein on terms set out in such order, the
court hearing such an application may receive hearsay evidence to
the effect that the witness or deponent believes that the material may
be found in a particular location.

    (4)  A witness or deponent shall not be obliged to indicate the
source of the information upon which that witness formed the belief
that material may be found in a particular location.

    (5)  After the implementation of an order made under this section,
the court may, on the application of a person aggrieved by it, award
damages against the applicant for the order as it considers just, on
being satisfied that—

    (*a*)  no infringement of a right conferred by this Part has been
established, and

    (*b*)  the information on which the rightsowner applied for the
order was given maliciously.

    **257.**—(1)  Where it would be impracticable for the owner of the    Right of
rights in a recording of a performance to apply to the District Court    rightsowner to seize
for an order under *section 256*, a recording, article or device referred    illicit recordings,
to in *section 256(1)*, in respect of which the rightsowner would be    articles or devices,
entitled to apply for an order for delivery up under *section 255*, may    etc.
be seized and detained by the rightsowner or a designated represen-
tative of that owner where the recording, article or device is found
being hawked, carried about or marketed.

    (2)  The right to seize and detain conferred by *subsection (1)* is
exercisable subject to *subsections (4)* to *(8)* and is subject to any

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.III S.257   decision of the court relating to disposal of illicit recordings, articles or devices under *section 264*.

(3) A person who seizes any illicit recordings, articles or devices under this section shall apply to the District Court for an order to dispose of those recordings, articles or devices within 30 days of the seizure.

(4) Before any illicit recordings, articles or devices are seized under this section notice of the time and place of the proposed seizure shall be given to a member of the Garda Síochána in the District Court Area in which the recordings, articles or devices are to be seized.

(5) A person exercising the right to seize and detain conferred by *subsection (1)* may enter premises to which members of the public have access.

(6) A person exercising the right to seize and detain conferred by *subsection (1)* may not seize anything in the possession, custody or control of a person at his or her permanent or regular place of business, trade or profession, and may not use any force.

(7) Without prejudice to the generality of *subsection (6)* a person exercising the right to seize and detain conferred by *subsection (1)* may make an inventory or prepare other evidence of infringement of any of the rights conferred by this Part or potential infringement of such rights.

(8) At the time when any illicit recordings, articles or devices are seized under this section there shall be given to the owner, occupier or person in charge of the place where the recordings, articles or devices are seized a notice, in the prescribed form, informing the person of the right of the owner of the recordings, articles or devices being seized to apply to the District Court for the return of the recordings, articles or devices on the grounds that they are not—

(*a*) illicit recordings of a performance,

(*b*) articles that have been or are to be used to make illicit recordings, or

(*c*) protection-defeating devices.

(9) Without prejudice to the generality of *subsection (8)*, the Minister shall prescribe the form of the notice to be given under that subsection and the form shall specify—

(*a*) the name and the address of the person claiming to be the owner of the rights in the recording concerned,

(*b*) the statutory authority for the seizure,

(*c*) the grounds that the person seizing the recordings, articles or devices has for such seizure, and

(*d*) a list of that which is seized.

(10) The owner of any recordings, articles or devices seized under this section may apply to the District Court for the return of those recordings, articles or devices.

(11) Rules of court shall be made under this section and the rules shall provide for procedures to enable applications to be made and dealt with in an expeditious manner.

(12) Where there has been an exercise of the right to seize and    Pt.III S.257
detain, conferred by *subsection (1)*, the court may, on the application
of a person aggrieved by it, award damages against a person who
exercises that right as it considers just, on being satisfied that—

(*a*) no infringement of a right conferred by this Part has been
established, and

(*b*) the person had no reasonable grounds for such seizure.


Chapter 6

*Offences: Performances*

**258.**—(1) A person who, without the consent of the rightsowner—    Offences.

(*a*) makes for sale, rental or loan,

(*b*) sells, rents or lends, or offers or exposes for sale, rental or
loan,

(*c*) imports into the State, otherwise than for his or her private
and domestic use,

(*d*) in the course of a business, trade or profession, has in his or
her possession, custody or control, or makes available to
the public, or

(*e*) otherwise than in the course of a business, trade or pro-
fession, makes available to the public to such an extent
as to prejudice the interests of the rightsowner,

a recording which is, and which he or she knows or has reason to
believe is, an illicit recording, shall be guilty of an offence.

(2) A person who—

(*a*) makes,

(*b*) sells, rents or lends, or offers or exposes for sale, rental or
loan,

(*c*) imports into the State, or

(*d*) has in his or her possession, custody or control,

an article specifically designed or adapted for making recordings of
a performance, knowing or having reason to believe that it has been
or is to be used to make illicit recordings, shall be guilty of an
offence.

(3) A person who—

(*a*)    (i)  makes,

(ii) sells, rents or lends, or offers or exposes for sale, rental
or loan,

(iii) imports into the State, or

(iv) has in his or her possession, custody or control,

[*No.* **28.**]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.III S.258

a protection-defeating device, knowing or having reason to
believe that it has been or is to be used to circumvent rights
protection measures, or

(*b*) provides information, or offers or performs any service
intended to enable or assist persons to circumvent rights
protection measures,

shall be guilty of an offence.

(4) Where the rights conferred by this Part are infringed—

(*a*) by the playing or showing in public of a recording of a per-
formance, or

(*b*) by the broadcasting or inclusion in a cable programme ser-
vice of a performance or a recording of a performance,

the person who caused the recording of the performance to be shown
or played, or the performance or the recording of the performance
to be broadcast or included in a cable programme service, shall be
guilty of an offence where he or she knew or had reason to believe
that the rights conferred by this Part would be infringed.

(5) An offence shall not be committed under *subsection (1)* or *(4)*
by the undertaking of an act which under this Part may be under-
taken without infringing the rights conferred by this Part.

(6) A person guilty of an offence under *subsection (1), (2)* or *(3)*
shall be liable—

(*a*) on summary conviction, to a fine not exceeding £1,500 in
respect of each illicit recording, article or device, or to
imprisonment for a term not exceeding 12 months, or
both, or

(*b*) on conviction on indictment, to a fine not exceeding
£100,000, or to imprisonment for a term not exceeding 5
years, or both.

(7) A person guilty of an offence under *subsection (4)* shall be
liable—

(*a*) on summary conviction, to a fine not exceeding £1,500 in
respect of each offence, or to imprisonment for a term
not exceeding 12 months, or both, or

(*b*) on conviction on indictment, to a fine not exceeding
£100,000, or to imprisonment for a term not exceeding 5
years, or both.

False claims of
rights in
performances.

**259.**—A person who, for financial gain, makes a claim to enjoy a
right under this Part or *Part IV* which is, and which he or she knows
or has reason to believe is, false, shall be guilty of an offence and
shall be liable on conviction on indictment to a fine not exceeding
£100,000, or to imprisonment for a term not exceeding 5 years, or
both.

Order for delivery
up in criminal
proceedings.

**260.**—(1) The court may, on conviction of a person or being satis-
fied that there is a *prima facie* case to answer, where the court is
satisfied that at the time of the arrest or charge the person had in
his or her possession, custody or control—

(*a*) in the course of a business, trade or profession, a recording     Pt.III S.260
of a performance, knowing or having reason to believe it
to be an illicit recording,

(*b*) an article specifically designed or adapted for making
recordings of a performance, knowing or having reason
to believe that it had been or was to be used to make
illicit recordings, or

(*c*) a protection-defeating device,

order that the illicit recording, article or device be delivered up to
the rightsowner or to such other person as the court may direct.

(2) An order may be made by the court of its own motion, or on
the application of the person bringing a prosecution, and may be
made whether or not the person is convicted of the offence, but shall
not be made—

(*a*) after the expiration of the period specified in *section 263(3)*
as being the limit of the period for delivery up, or

(*b*) where it appears to the court unlikely that any order will be
made as to the disposal of the illicit recordings, articles
or devices.

(3) A person to whom an illicit recording, article or device is deliv-
ered up pursuant to an order made under this section shall retain it
pending the making of a final order or decision not to make an order,
as the case may be.

**261.**—(1) Where a Judge of the District Court is satisfied by infor-     Search warrants and
mation on oath that there are reasonable grounds for suspecting—     seizure.

(*a*) that an offence under *section 258* has been, or is about to
be, committed in, on or at any premises or place, and

(*b*) that evidence that such an offence has been, or is about to
be, committed is in, on or at those premises or that place,

the court may issue a warrant authorising a member of the Garda
Síochána, accompanied by such other members of the Garda Síoch-
ána or other person or persons as that member thinks proper, at any
time or times within 28 days from the date of the issue of the warrant,
on production, where requested, of that warrant, to enter and search
the premises or place specified in the warrant using reasonable force
where necessary, and to do all or any of the following acts—

(i) to seize any copies of any recordings, articles or devices in
respect of which he or she has reasonable grounds for
suspecting that an offence under *section 258* has been or
is about to be committed;

(ii) to make an inventory or prepare other evidence of infringe-
ment or potential infringement of any right conferred by
this Part;

(iii) to seize anything found there which he or she believes on
reasonable grounds may be required to be used in evi-
dence in any proceedings brought in respect of an offence
under this Act;

Pt.III S.261

(iv) to require any person found there to give his or her name and address.

(2) A warrant issued under this section may authorise persons, including the rightsowner or designated representative thereof, to accompany and assist any member of the Garda Síochána in executing the warrant or in collating any inventory or other evidence.

(3) A person who—

(*a*) obstructs or interferes with a person acting under the authority of a warrant issued under this section,

(*b*) is found in, on or at the premises or place specified in the warrant by a member of the Garda Síochána acting as aforesaid and who fails or refuses to give the member his or her name and address when required to do so or gives a name or address that is false or misleading,

(*c*) obstructs the exercise of an authority conferred by a warrant under this section, or

(*d*) fails or refuses to give information to a member of the Garda Síochána when required to do so under this section,

shall be guilty of an offence and shall be liable on summary conviction to a fine not exceeding £1,500, or to imprisonment for a term not exceeding 12 months, or both.

False representation of authority to give consent.

**262.**—(1) It shall be an offence for a person to represent falsely that he or she is authorised by any person to give consent for the purposes of this Part in relation to a performance, unless he or she believes on reasonable grounds that he or she is so authorised.

(2) A person guilty of an offence under this section is liable on summary conviction to a fine not exceeding £1,500, or to imprisonment for a term not exceeding 12 months, or both.

Period after which remedy of delivery up is not available.

**263.**—(1) Subject to *subsection (2)*, an application for an order under *section 255* may not be made after the expiration of 6 years from the date on which the illicit recording, article or device was made.

(2) Where, during the whole or any part of the period referred to in *subsection (1)*, a person entitled to apply for an order for delivery up—

(*a*) is under a disability, or

(*b*) is prevented by fraud or concealment from discovering the facts entitling him or her to apply for an order,

an application under *section 255* may be made at any time before the expiration of 6 years from the date on which the applicant ceased to be under a disability, or, as the case may be, could, with reasonable diligence, have discovered those facts.

(3) An order for delivery up in criminal proceedings under *section 260* shall not, in any case, be made after the expiration of 6 years

from the date on which the proceedings under *section 260* were Pt.III S.263
initiated.

(4)  Where in any proceedings for an order for delivery up under *section 255* or *260* the date of the making of the illicit recording, article or device is put into question by the defendant, the onus of proof shall be on the defendant that the illicit recording, article or device was made more than 6 years before the date on which an application for an order under *section 255* was made or proceedings under *section 260* were initiated.

**264.**—(1)  An application may be made to the appropriate court    Order as to disposal
for an order that an illicit recording, article or device—    of illicit recording,
    article or device.

(*a*)  delivered up under *section 255* or *260*, or

(*b*)  seized and detained under *section 256* or *261*,

shall be—

(i)  forfeited to the rightsowner, or

(ii)  destroyed or otherwise dealt with as the court may direct,

and the court may make such an order or such other order as it thinks fit.

(2)  In considering what order, if any, should be made under *sub-section (1)* the court shall consider whether other remedies available in an action for infringement of the rights conferred by this Part would be adequate to compensate the person entitled to those rights and to protect his or her interests.

(3)  Provision shall be made by rules of court as to the service of notice on persons having an interest in the recordings, articles or devices concerned, and any such person may—

(*a*)  appear in proceedings for an order under this section whether or not he or she was served with notice, or

(*b*)  appeal against any order made, whether or not he or she appeared in the proceedings concerned.

(4)  An order made under this section shall not take effect until the expiration of the period within which notice of an appeal may be given or, where before the expiration of that period notice of appeal is duly given, until the final determination or abandonment of the proceedings on the appeal.

(5)  Where there is more than one person interested in a recording, article or device, the court shall make such order as it thinks fit and may direct the recording, article or device to be sold or otherwise dealt with and any proceeds divided in accordance with the direction of the court.

(6)  Where the court decides that no order shall be made under this section, the person who had the recording, article or device in his or her possession, custody or control immediately before it was delivered up or seized shall be entitled to its return.

(7)  References in this section to a person having an interest in a recording, article or device include any person in whose favour an

Pt.III S.264    order may be made under this section in respect of the recording, article or device or under *section 145* or under section 23 of the Trade Marks Act, 1996.

## Chapter 7

### *Licensing Schemes: Performers' Property Rights Licensing*

Licensing schemes and licensing bodies.

**265.**—(1) In this Part—

''licences'' means licences to undertake or authorise the undertaking of any of the acts restricted by a performer's property rights;

''licensing body'' means a society or other organisation which has as its main object, or one of its main objects, the negotiating or granting, either as owner or prospective owner of a performer's property rights, or as exclusive licensee or as agent for him or her, of performers' property rights licences, and whose objects include the granting of licences relating to the performances of more than one performer;

''licensing scheme'' means a scheme specifying—

(*a*) the classes of case in which the operator of the scheme, or the person on whose behalf that operator acts, is willing to grant performers' property rights licences, and

(*b*) the terms on which licences would be granted in those classes of case,

and for this purpose a ''scheme'' includes anything in the nature of a scheme, whether described as a scheme or as a tariff or by any other name.

(2) References in this Part to licences or licensing schemes relating to the performances of more than one performer shall not include licences or schemes relating to—

(*a*) performances recorded in a single recording, or

(*b*) performances recorded in more than one recording where—

(i) the performers giving the performances are the same, or

(ii) the recordings are made by, or by employees of or commissioned by, a single individual, firm, company or group of companies, including holding companies and their subsidiaries.

### *References and Applications Relating to Licensing Schemes*

General references.

**266.**—*Sections 267* to *272* apply to licensing schemes which are operated by licensing bodies in relation to the performer's property rights of more than one performer, in so far as they relate to licences for any of the acts restricted by a performer's property rights under *sections 204* and *205*.

**267.**—(1) The terms of a licensing scheme proposed to be oper-
ated by a licensing body may be referred to the Controller by an
organisation which claims to be representative of persons claiming
that they require licences in cases of a description to which the
scheme would apply.

Pt.III

Reference of
proposed licensing
scheme to
Controller.

(2) The Controller shall not consider a reference by an organis-
ation under *subsection (1)* unless the Controller is satisfied that the
organisation is representative of the class of persons that it claims to
represent.

(3) The Controller may refuse to consider a reference under *sub-
section (1)* on the ground that the reference is premature.

(4) Where the Controller decides to consider a reference under
*subsection (1)* he or she shall consider the subject matter of the refer-
ence and make an order, either confirming or varying the proposed
scheme, as the Controller may determine to be reasonable in the
circumstances.

(5) An order under *subsection (4)* may be made for such period
as the Controller may determine.

**268.**—(1) Where a licensing scheme is in operation and a dispute
arises with respect to the scheme between the operator of the scheme
and—

Reference of
licensing scheme to
Controller.

(*a*) a person claiming that he or she requires a licence in a case
of a description to which the scheme applies, or

(*b*) an organisation claiming to be representative of such
persons,

that operator, person or organisation may refer the scheme to the
Controller in so far as it relates to cases of that description.

(2) The Controller shall not consider a reference by an organis-
ation under *subsection (1)* unless the Controller is satisfied that the
organisation is representative of the class of persons that it claims to
represent.

(3) A scheme which has been referred to the Controller under
*subsection (1)* shall remain in operation until proceedings in relation
to the reference are concluded.

(4) The Controller shall consider the matter referred to him or
her and shall make an order, confirming or varying the scheme, as
the Controller may determine to be reasonable in the circumstances.

(5) An order under *subsection (4)* may be made for such period
as the Controller may determine.

**269.**—(1) Where the Controller has, in respect of a licensing
scheme under *section 267* or *268* or under this section, made an order
in respect of a scheme, and the order remains in force, the persons
to whom this section applies may refer the scheme to the Controller
in so far as it relates to cases of that description.

Further reference of
scheme to
Controller.

(2) This section applies to—

(*a*) the operator of the scheme,

[*No.* **28**.]      *Copyright and Related Rights Act,*     [2000.]
2000.

(*b*) a person claiming that he or she requires a licence in a case of the description to which the order applies, and

(*c*) an organisation claiming to be representative of persons referred to in *paragraph (b)*.

(3) Where an order under *section 267* or *268* or this section is in force the licensing scheme in respect of which the order is made shall not, except with the special leave of the Controller, be referred to the Controller in respect of the same description of cases—

(*a*) within 12 months from the date of the order in respect of the previous reference, or

(*b*) where the order was made so as to be in force for 15 months or less, until the last 3 months before the expiration of the order.

(4) A scheme which has been referred to the Controller under *subsection (1)* shall remain in operation until proceedings in relation to the reference are concluded.

(5) The Controller shall consider the matter referred to him or her and shall make an order, confirming, varying or further varying the scheme, as the Controller may determine to be reasonable in the circumstances.

(6) An order under *subsection (5)* may be made for such period as the Controller may determine.

**270**.—(1) A person who claims, in a case to which a licensing scheme relates, that the operator of the scheme has refused to grant or to procure the grant to him or her of a licence in accordance with the scheme, or has failed to do so within a reasonable period, may apply to the Controller for an order under *subsection (4)*.

(2) A person who claims, in a case excluded from a licensing scheme, that the operator of the scheme—

(*a*) has refused to grant or to procure the grant to him or her of a licence, or has failed to do so within a reasonable period and that in the circumstances it is unreasonable that a licence should not be granted, or

(*b*) proposes terms for a licence that are unreasonable,

may apply to the Controller for an order under *subsection (4)*.

(3) A case shall be regarded as being excluded from a licensing scheme for the purposes of *subsection (2)* where—

(*a*) the scheme provides for the grant of licences, subject to terms excepting matters from the licence and the case is within such an exception, or

(*b*) the case is so similar to those in which licences are granted under the scheme that it is unreasonable that it should not be dealt with in the same way.

(4) Where the Controller is satisfied that a claim under this section is well-founded, he or she shall make an order declaring that in respect of the matters specified in the order, the applicant is

entitled to a licence on such terms as the Controller may determine    Pt.III S.270
to be applicable in accordance with the scheme, or, as the case may
be, to be reasonable in the circumstances.

(5) An order under *subsection (4)* may be made for such period
as the Controller may determine.

**271.**—(1) Where the Controller has made an order under *section*    Review of orders
*270* that a person is entitled to a licence under a licensing scheme,    made by Controller.
the operator of the scheme or the original applicant may apply to
the Controller for a review of that order.

(2) An application under *subsection (1)* shall not be made except
with the special leave of the Controller—

    (*a*) within 12 months from the date of the order or of the
            decision on a previous application under this section, or

    (*b*) where—

            (i) the order was made so as to be in force for 15 months
                or less, or

            (ii) as a result of the decision on a previous application
                under this section the order is due to expire within
                15 months of that decision,

        until the last 3 months before the expiration date.

(3) The Controller shall, on an application for review, confirm or
vary his or her order as the Controller may determine to be reason-
able, having regard to the terms applicable in accordance with the
licensing scheme or, as the case may be, the circumstances of the
case.

**272.**—(1) A licensing scheme which has been confirmed or varied    Effect of order of
by the Controller under *section 267, 268* or *269* shall be in operation    Controller as to
or, as the case may be, remain in operation, in so far as it relates to    licensing scheme.
the description of case in respect of which the order was made, for
such period as the order remains in force.

(2) Where an order made by the Controller under *section 267, 268*
or *269* confirming or varying a licensing scheme is in force (in this
section referred to as ''an order to which this section applies''), a
person who, in a case of a class to which the order applies—

    (*a*) pays to the operator of the scheme any charges payable
            under the scheme in respect of a licence applying to the
            case concerned or, where the amount cannot be ascer-
            tained, gives an undertaking to the operator to pay the
            charges when ascertained, and

    (*b*) complies with the other terms applicable to the licence
            under the scheme,

is in the same position as regards infringement of a performer's prop-
erty rights as if he or she had at all material times been the holder
of a licence granted by the rightsowner concerned in accordance with
the scheme.

(3) The Controller may direct that an order to which this section
applies, in so far as it varies the amount of charges payable, has effect
from a date before that on which it was made, but not earlier than

[*No.* **28.**]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.III S.272   the date on which the reference was made, or where later, the date
on which the scheme came into operation.

(4) Where a direction is made under *subsection (3)*—

(*a*) any necessary repayments or further payments shall be
made in respect of charges already paid, and

(*b*) the reference in *subsection (2)(a)* to the charges payable
under the scheme shall be construed as a reference to the
charges so payable by virtue of the order.

(5) Where the Controller has made an order under *section 270*
and the order remains in force, the person in whose favour the order
is made, where he or she—

(*a*) pays to the operator of the scheme any charges payable in
accordance with the order or, where the amount cannot
be ascertained, gives an undertaking to the operator to
pay the charges when ascertained, and

(*b*) complies with the other terms specified in the order,

is in the same position as regards infringement of a performer's prop-
erty rights as if he or she had at all material times been the holder
of a licence granted by the rightsowner concerned on the terms speci-
fied in the order.

*References and Applications Relating to Licensing by Licensing
Bodies*

General references   **273.**—*Sections 274* to *277* apply to licences in relation to the per-
by licensing bodies.   former's property rights of more than one performer, granted by a
licensing body otherwise than pursuant to a licensing scheme, in so
far as the licences relate to any of the acts restricted by a performer's
property rights under *sections 204* and *205.*

Reference to   **274.**—(1) The terms on which a licensing body proposes to grant
Controller of   a licence may be referred to the Controller by the prospective
proposed licence.   licensee for an order under *subsection (3).*

(2) The Controller may refuse to consider a reference under *sub-
section (1)* on the ground that the reference is premature.

(3) Where the Controller decides to consider a reference under
*subsection (1)*, he or she shall consider the terms of the proposed
licence and make an order, confirming or varying the terms, as the
Controller may determine to be reasonable in the circumstances.

(4) An order under *subsection (3)* may be made for such period
as the Controller may determine.

Reference to   **275.**—(1) A licensee under a licence which is due to expire with
Controller of   the passage of time or as a result of notice given by the licensing body
expiring licence.   may apply to the Controller on the ground that it is unreasonable in
the circumstances that the licence should cease to be in force.

(2) An application under *subsection (1)* may be made at any time
during the last 3 months before the expiration of the licence.

(3) A licence in respect of which a reference has been made to
the Controller under *subsection (1)* shall remain in force until pro-
ceedings in relation to the reference are concluded.

(4) Where the Controller is satisfied that an application made under *subsection (1)* is well-founded, he or she shall make an order declaring that the licensee shall continue to be entitled to the benefit of the licence on such terms as the Controller may determine to be reasonable in the circumstances.

(5) An order under *subsection (4)* may be made for such period as the Controller may determine.

**276.**—(1) Where the Controller has made an order under *section 274* or *275*, the licensing body or the person entitled to the benefit of the order may apply to the Controller for a review of that order.

Pt.III S.275

Application for review of order made by Controller.

(2) An application under *subsection (1)* shall not be made except with the special leave of the Controller—

    (*a*) within 12 months from the date of the order or of the decision on a previous application under this section, or

    (*b*) where—

        (i) the order was made so as to be in force for 15 months or less, or

        (ii) as a result of the decision on a previous application under this section the order is due to expire within 15 months of that decision,

    until the last 3 months before the expiration date.

(3) The Controller shall, on an application for review, confirm or vary his or her order as the Controller may determine to be reasonable in the circumstances.

**277.**—(1) Where the Controller has made an order under *section 274* or *275*, and the order remains in force, the person entitled to the benefit of the order, where he or she—

Effect of order of Controller as to licence.

    (*a*) pays to the licensing body any charges payable in accordance with the order or, where the amount cannot be ascertained, gives an undertaking to the operator to pay the charges when ascertained, and

    (*b*) complies with the other terms specified in the order,

is in the same position as regards infringement of a performer's property rights as if he or she had at all material times been the holder of a licence granted by the rightsowner concerned on the terms specified in the order.

(2) The benefit of an order made under *section 274* or *275* may be assigned—

    (*a*) in the case of an order made under *section 274*, where assignment is not prohibited under the terms of the order of the Controller, and

    (*b*) in the case of an order made under *section 275*, where assignment was not prohibited under the terms of the original licence.

Pt.III S.277

(3) The Controller may direct that an order made under *section 274* or *275* or an order made under *section 276* varying such an order, in so far as it varies the amount of charges payable, has effect from a date before that on which it was made, but not earlier than the date on which the reference or application was made or, where later, the date on which the licence was granted or, as the case may be, was due to expire.

(4) Where a direction is given under *subsection (3)*—

(*a*) any necessary repayments or further payments shall be made in respect of charges already paid, and

(*b*) the reference in *subsection (1)(a)* to the charges payable in accordance with the order shall be construed, where the order is varied by a further order, as a reference to the charges so payable by virtue of that further order.

*Licensing: Miscellaneous*

General considerations: unreasonable discrimination.

**278.**—(1) In determining what is reasonable, on a reference or application under this Chapter relating to a licensing scheme or licence, the Controller shall have regard to—

(*a*) the availability of other schemes, or the granting of other licences, to other persons in similar circumstances, and

(*b*) the terms of those schemes or licences,

and shall exercise his or her powers so as to ensure that there is no unreasonable discrimination between licensees, or prospective licensees, under the scheme or licence to which the reference or application relates and licensees under other schemes operated by, or other licences granted by, the same person.

(2) *Subsection (1)* shall not affect the obligation of the Controller in any case to have regard to all relevant circumstances.

Licences to reflect payments in respect of underlying rights.

**279.**—Where a reference or application is made under this Chapter in relation to licensing in respect of the performer's property rights in a recording, the Controller shall take into account, in considering what charges are to be paid for a licence, any payments which the owner of the performer's property right is liable to make pursuant to the granting of the licence, or pursuant to the acts authorised by the licence—

(*a*) to owners of the copyright in works included in the recording, or

(*b*) in respect of any performance included in the recording.

Chapter 8

*Registration of Licensing Bodies in Respect of Performers' Property Rights*

Register of licensing bodies for performers' property rights.

**280.**—(1) The Controller shall establish and maintain a register of licensing bodies in respect of performers' property rights in such form and manner and containing such particulars as the Minister may prescribe to be known as the ''Register of Licensing Bodies for Performers' Property Rights'' and referred to in this Part as the ''Register''.

(2) The Controller shall keep the Register in such form that the Register is capable of being used to make a copy of any entry in the Register.

Pt.III S.280

(3) The Register shall be kept at such place as may be prescribed by the Minister and, subject to the payment of such fee as may be prescribed by the Minister with the consent of the Minister for Finance—

(*a*) the Register shall be made available for inspection by a person at such times and in such manner as may be prescribed by the Minister, and

(*b*) where a request is made to the Controller for a certified or uncertified copy of, or extract from, an entry in the Register, the Controller shall issue a copy of the entry or extract to the applicant.

(4) An application for registration or renewal of a registration of a licensing body shall be made to the Controller in such form and manner as may be prescribed by the Minister and shall be subject to the payment of such fee as may be prescribed by the Minister with the consent of the Minister for Finance.

(5) The Controller shall register an applicant or renew a registration where the Controller is satisfied that—

(*a*) the applicant complies with the definition of a licensing body specified in *section 265*, and

(*b*) the applicant has provided such information and satisfied such conditions as may be prescribed by the Minister for the purposes of registration.

(6) The information to be prescribed by the Minister under *subsection (5)(b)* shall include the following:

(*a*) the name of the applicant;

(*b*) the address of the applicant;

(*c*) the names of the chairperson and other members of the board or officers, or names of partners, as the case may be, of the applicant;

(*d*) a copy of the memorandum and articles of association or partnership agreement, of the applicant;

(*e*) details of the scheme;

(*f*) details of the scales of charges or proposed charges to be levied by the applicant; and

(*g*) the class of rightsowners represented or proposed to be represented by the applicant.

(7) On the registration or renewal of a registration of a licensing body the Controller shall issue to the applicant a certificate of registration in such form as the Controller shall determine.

**281.**—A certificate granted under *section 280(7)* shall include the particulars specified in *subsection (6)* of that section and the certificate shall be evidence of the right of the licensing body, until the contrary is proved, to act on behalf of the classes of rightsowners for whom it claims representation rights or on behalf of the rightsowners

Proof that licensing body may act on behalf of specified classes.

[*No.* **28**.]     *Copyright and Related Rights Act,*     [2000.]
2000.

Pt.III S.281

who have assigned rights to it, or exclusively licensed it, as specified in that certificate.

Notification of charges.

**282.**—(1) A licensing body registered under this Part which proposes to impose a charge, otherwise than in accordance with the scales of charges included in an application for registration or for renewal of a registration, shall provide the Controller in writing with details of the proposed charge not less than one month before the charge comes into effect.

(2) The registration of a licensing body which fails to comply with *subsection (1)* is deemed to be cancelled from the date on which the proposed charge comes into effect.

Validity of certificates of registration.

**283.**—(1) A certificate of registration issued under *section 280(7)* shall be valid for a period of 12 months from the date of registration or such lesser period as may be specified by the Controller in the certificate.

(2) Subject to *section 280(4)*, a licensing body registered under this Part may apply for renewal of its registration for further periods each of which shall not exceed 12 months.

(3) An application for renewal of a registration shall be made not less than one month before the expiration of the period of validity of the certificate of registration.

(4) A term of renewal of a registration shall take effect from the expiration of the previous registration.

Refusal of application.

**284.**—(1) The Controller may refuse an application for renewal of a registration by a licensing body registered under this Part or cancel the registration of a licensing body where the body no longer fulfils the requirements specified in *section 280(5)*.

(2) The Controller shall remove a licensing body from the Register where its application for renewal of its registration is refused or its registration is cancelled.

Indemnity for Controller.

**285.**—No action or other proceedings shall lie or be maintainable against the Controller (except in the case of wilful neglect of duty) in respect of anything done or omitted to be done by him or her in the *bona fide* exercise of any functions, powers or duties conferred or imposed by or under this Chapter.

Obligation of collecting societies to register (performers' property rights).

**286.**—(1) Any body operating as a licensing body within the meaning specified in *section 265* shall be obliged to register in accordance with the provisions of this Chapter, and to remain registered for so long as it continues to operate in this capacity.

(2) Any body to which the provisions of *subsection (1)* applies which—

(*a*) fails within 6 months of the commencement of this Chapter to register under the terms of this Chapter,

[2000.]     *Copyright and Related Rights Act,*     [*No.* 28.]
2000.

(*b*) fails within 2 months of its establishment in the case of a    Pt.III S.286
body established after the commencement of this Chap-
ter to register under the terms of this Chapter, or

(*c*) continues to operate as such a body having been removed
from the Register for any reason,

shall be guilty of an offence.

(3) A person guilty of an offence under *subsection (2)* shall be
liable—

(*a*) on summary conviction, to a fine not exceeding £1,500, or
to imprisonment for a term not exceeding 12 months, or
both, or

(*b*) on conviction on indictment, to a fine not exceeding
£100,000, or to imprisonment for a term not exceeding 5
years, or both.


Chapter 9

*Qualification: Performances*

**287.**—In this Part, and in *Part IV*—    Definition of
qualifying person.

''qualifying country'' means—

(*a*) Ireland,

(*b*) another Member State of the EEA, or

(*c*) to the extent that an order under *section 289* so provides, a
country designated under that section;

''qualifying individual'' means a citizen or subject of, or an individual
domiciled or ordinarily resident in, a qualifying country; and

''qualifying person'' means an Irish citizen, or an individual domi-
ciled or ordinarily resident in the State.


**288.**—A performance is a qualifying performance for the purposes    Qualifying
of the provisions of this Part and *Part IV* if it is given by a qualifying    performance.
individual or a qualifying person, or takes place in a qualifying coun-
try, territory, state or area, in accordance with this Chapter.


**289.**—(1) The Government may by order designate as a qualifying    Designation of
country enjoying protection under this Part and *Part IV* any country,    qualifying countries.
territory, state or area, as to which the government is satisfied that
provision has been or will be made under its law giving adequate
protection for Irish performances.

(2) For the purposes of this section, an ''Irish performance''
means a performance—

(*a*) given by an Irish citizen, or by an individual who is domi-
ciled or ordinarily resident in the State, or

(*b*) taking place in the State.

Pt.III S.289

(3) Where the law of that country, territory, state or area provides adequate protection only for certain descriptions of performance, an order under *subsection (1)* designating that country, territory, state or area may contain provision limiting to a corresponding extent the protection afforded by this Part or *Part IV* in relation to performances connected with the country, territory, state or area.

Territorial waters and Continental Shelf.

**290**.—For the purposes of this Part and *Part IV*—

(*a*) acts undertaken in, on, under or over—

    (i) the waters in the portion of the sea which comprises the territorial seas of the State,

    (ii) the waters in all areas of the sea to which the internal or inland waters of the State are extended by section 5 of the Maritime Jurisdiction Act, 1959, and

    (iii) the waters in any area which is for the time being a designated area within the meaning of section 1 of the Continental Shelf Act, 1968,

    and

(*b*) acts undertaken on an Irish ship, aircraft or hovercraft registered under the laws of the State,

shall be deemed to have been undertaken in the State.

## Chapter 10

### Duration of Rights in Performances

Duration of rights.

**291**.—The rights conferred by this Part shall expire 50 years from the end of the calendar year in which—

(*a*) the performance takes place, or

(*b*) where within that period a recording of the performance is lawfully made available to the public, that recording is first so lawfully made available to the public.

## Chapter 11

### Performers' Property Rights

Performers' property rights.

**292**.—(1) The rights conferred on a performer by *sections 204, 205, 206* and *207* are property rights and shall be known and in *Parts III* and *IV* referred to as ''performers' property rights''.

(2) Where different persons are (whether in consequence of a partial assignment or otherwise) entitled to different aspects of a performer's property rights in relation to a performance, the rightsowner for the purposes of *Parts III* and *IV* is the person who is entitled to the aspect of those rights relevant for those purposes.

(3) Where a performer's property rights (or any aspect of them) are owned jointly by more than one person, references in this Part to the rightsowner shall include references to all those owners, such that, in particular, any requirement of the licence of the rightsowner requires the licence of all of them.

(4) References in *Parts III* and *IV* to the consent of a performer shall be construed in relation to the performer's property rights as references to the consent of the rightsowner.

Chapter 12                                    Pt.III

*Transmission of Performers' Property Rights*

**293.**—(1) A performer's property rights are transmissible by assignment, by testamentary disposition or by operation of law, as personal or moveable property.

Assignment and licences.

(2) A transmission of a performer's property rights by assignment, by testamentary disposition or by operation of law may be partial, so as to apply—

    (*a*) to one or more but not all of the acts a performer has the right to authorise or prohibit, or

    (*b*) to part but not the whole of the period for which the rights in the performance are to subsist.

(3) An assignment of a performer's property rights, whether in whole or in part, is not effective unless it is in writing and signed by or on behalf of the assignor.

(4) A licence granted by the owner of a performer's property rights is binding on every successor in title to his or her interest in the rights, except a purchaser in good faith for valuable consideration and without notice (actual or constructive) of the licence or a person deriving title from such a purchaser and references in this Part to undertaking any act with or without the licence of the rightsowner shall be construed accordingly.

(5) A licence granted by a prospective owner of a performer's property rights is binding on every successor in title to his or her interest (or prospective interest) in the rights, except a purchaser in good faith for valuable consideration and without notice (actual or constructive) of the licence or a person deriving title from such a purchaser, and references in this Part to undertaking any act with or without the licence of the rightsowner shall be construed accordingly.

**294.**—(1) Where, by an agreement made in relation to a performer's property rights in respect of a future performance and signed by or on behalf of the performer, the performer purports to assign his or her rights in such a performance, whether in whole or in part, to another person, then where, on the rights coming into existence, the assignee or his or her successor in title or another person claiming under him or her would be entitled as against all other persons to require the rights to be vested in him or her, the rights shall vest in the assignee or his or her successor in title under this section or any other person claiming under him or her.

Prospective ownership of performers' property rights.

(2) Where, at the time when any performer's property right comes into existence, the person who, if he or she were then living, would be entitled to the right is dead, the right shall devolve as if it had existed immediately before his or her death and he or she had then been the owner of the right.

(3) The rights of an assignee in a future performance shall not be prejudiced by the fact that the agreement referred to in *subsection (1)* was made before the commencement of this section.

(4) In this Part—

[*No.* **28**.]     *Copyright and Related Rights Act,*     [2000.]
2000.

Pt.III S.294     ''future performance'' means any performance which will or may
take place at some date in the future;

''prospective owner'', in relation to a performer's property rights,
includes a person who is prospectively entitled to those rights by
virtue of an agreement referred to in *subsection (1)*.

Exclusive licences.     **295.**—(1)  In this Part an ''exclusive licence'' means a licence in
writing which is signed by or on behalf of an owner or prospective
owner of a performer's property rights authorising the licensee, to
the exclusion of all other persons, including the person granting the
licence, to exercise a right which would otherwise be exercisable
exclusively by the rightsowner and references to an exclusive licensee
shall be construed accordingly.

(2)  An exclusive licensee has the same rights against a successor
in title who is bound by the licence as he or she has against the
person granting the licence.

Performers'
property rights to
pass under will with
certain original
recordings.     **296.**—Where, under a bequest (whether specific or general), a per-
son is entitled, beneficially or otherwise, to any material thing con-
taining an original recording of a performance which had not been
made available to the public before the death of the testator, the
bequest shall be construed as including any performer's property
rights in relation to the recording in so far as the testator was the
owner of the rights immediately before his or her death, unless a
contrary intention is indicated in the will of the testator or in a codicil
to that will.

Presumption of
transfer of rental
right in case of film
production
agreement.     **297.**—(1)  Without prejudice to the right of a performer to receive
equitable remuneration in respect of a rental right, where an agree-
ment concerning film production is concluded between a performer
and a film producer, the performer shall be presumed, unless the
agreement provides to the contrary, to have transferred to the film
producer any rental right in relation to the film arising by virtue of
the inclusion of a recording of his or her performance in the film.

(2)  Where a presumption of transfer of the rental right arises by
virtue of *subsection (1)*, the absence of a signature by or on behalf
of the performer shall not restrict the operation of *section 293* or *294*.

(3)  The reference in *subsection (1)* to an agreement concluded
between a performer and a film producer includes any agreement
whether made by them directly or through intermediaries.

(4)  The right to equitable remuneration on the transfer of the
rental right applies where there is a presumed transfer under this
section as in the case of an actual transfer.

Right to equitable
remuneration where
rental right is
transferred.     **298.**—(1)  Without prejudice to the generality of *section 297*, where
a performer has transferred his or her rental right he or she retains
the right to equitable remuneration for the rental.

(2)  The right to equitable remuneration conferred by this section
shall not be waived by the performer and the performer shall not
assign the right to equitable remuneration except to a collecting
society for the purpose of enabling the collecting society to exercise
that right on his or her behalf.

(3)  The right to equitable remuneration is transmissible by way of Pt.III S.298
testamentary disposition or by operation of law, as personal or move-
able property and it may be further transmitted, including by assign-
ment, by any person who legally acquires the right.

(4)  Equitable remuneration under this section is payable by the
person to whom the rental right is transferred or any successor in
title.

(5)  Subject to *section 299*, the amount payable by way of equitable
remuneration is that which has been agreed by or on behalf of the
persons by and to whom it is payable.

(6)  An agreement is void in so far as it purports to exclude or
restrict the right to equitable remuneration conferred by this section.

(7)  References in this Part to the transfer of the rental right by
one person to another include any arrangement having that effect
whether made by them directly or through intermediaries.

(8)  In this section ''collecting society'' means a society or other
organisation which has as one of its main objects the exercise of the
right to collect equitable remuneration under this section on behalf
of more than one performer.

**299.**—(1)  In default of agreement as to the amount of equitable    Equitable
remuneration payable under *section 298*, the person by or to whom    remuneration:
it is payable may apply to the Controller for an order under *subsec-*    reference of
*tion (4)*.    determination of
    amount to
    Controller.

(2)  Subject to *subsection (3)*, a person by or to whom equitable
remuneration is payable under *section 298* may also apply to the
Controller—

  (*a*)  to vary any agreement as to the amount payable, or

  (*b*)  to vary any previous determination of the Controller as to
        the amount payable.

(3)  An application may not be made under *subsection (2)* within
12 months from the date of the previous determination except with
the special leave of the Controller.

(4)  On an application being made under this section the Control-
ler shall consider the matter and make such order as to the method
of calculating and paying equitable remuneration as he or she may
determine to be reasonable in the circumstances, having regard to
the importance of the contribution of the performer.

(5)  An order made under *subsection (4)* shall have effect from the
date on which it is made or such later date as may be specified by
the Controller.

(6)  Remuneration shall not be considered inequitable because it
is paid by way of a single payment or at the time of transfer of the
rental right.

(7)  An agreement is void in so far as it purports to prevent a
person challenging the amount of equitable remuneration or to
restrict the powers of the Controller under this section.

[*No.* **28.**]     *Copyright and Related Rights Act,*     [2000.]
2000.

Chapter 13

*Transmission of Recording Rights and Performers' Non-Property
Rights*

Performers' non-
property rights.

**300.**—(1)  The rights conferred on a performer by *sections 203, 209*
and *212* are non-property rights and shall be known and in *Parts III*
and *IV* referred to as ''performers' non-property rights''.

(2)  A performer's non-property rights are not assignable or trans-
missible, except to the extent provided for in *subsection (3)*.

(3)  On the death of a person entitled to a performer's non-prop-
erty rights—

    (*a*)  the rights pass by testamentary disposition to such person
        as the person entitled to the right may direct, and

    (*b*)  where there is no such direction, the right is exercisable by
        the personal representatives of the person entitled to the
        right.

(4)  References in *Parts III* and *IV* to the performer, in the context
of the person having any right referred to in *subsection (1)*, shall be
construed as references to the person for the time being entitled to
exercise those rights.

(5)  Where, under *subsection (3)(a)*, a right becomes exercisable
by more than one person, it is exercisable by each of them.

(6)  Any damages recovered by personal representatives under this
section in respect of an infringement after a person's death shall
devolve as part of the person's estate as if the right of action had
subsisted and been vested in that person immediately before his or
her death.

Transmissibility of
rights of person
having recording
rights.

**301.**—(1)  The rights conferred by this Part on a person having
recording rights in relation to a performance are not assignable or
transmissible.

(2)  *Subsection (1)* shall not affect the operation of *section
215(2)(b)* or *section 215(3)(b)* in so far as those provisions confer
rights under this Part on a person to whom the benefit of a contract
or licence is assigned.

Consent.

**302.**—(1)  For the purposes of this Part and *Part IV*, consent by a
person having a performer's non-property rights, or by a person hav-
ing recording rights, may be given in relation to a specific perform-
ance, a specified description of performances or performances gener-
ally, and may relate to past or future performances.

(2)  A person having recording rights in relation to a performance
shall be bound by any consent given by a person through whom he
or she derives his or her rights under the exclusive recording contract
or licence concerned, in the same way as if the consent had been
given by him or her.

(3)  Where a performer's non-property right passes to another per-
son, any consent binding on the person previously entitled to the
right binds the person to whom the right passes in the same way as
if the consent had been given by him or her.

Chapter 14                                    Pt.III

*Remedies: Owner of Performers' Property Rights*

**303.**—(1) An infringement of a performer's property rights is actionable by the rightsowner.

Infringement actionable by rightsowner.

(2) In an action for infringement of a performer's property rights under this section all relief by way of damages, injunctions, account of profits or otherwise is available to the plaintiff as it is available in respect of the infringement of any other property right.

(3) Where, in an action for infringement of a performer's property rights, the defendant does not admit that the plaintiff is owner of the performer's property rights, the court may direct that evidence in relation to ownership of the performer's property rights be given on affidavit and the court may decide the issue on consideration of any affidavit presented to it unless it is satisfied that any conflict of evidence between the affidavits may not be resolved other than by hearing oral testimony in which case the court may order that oral evidence may be adduced.

(4) Hearsay evidence may be accepted for the purposes of any hearing under *subsection (3).*

**304.**—(1) The court may, in an action for infringement of a performer's property right award such damages as, having regard to all the circumstances of the case, it considers just.

Award of damages in infringement action.

(2) Without prejudice to any other remedy, where, in an action for infringement of a performer's property rights, it is shown that at the time of the infringement the defendant did not know and had no reason to believe that the rights subsisted in the recordings to which the action relates, the plaintiff is not entitled to damages against the defendant.

(3) In exercising its powers under *subsection (1)* in addition to or as an alternative to compensating the plaintiff for financial loss, the court may award aggravated or exemplary damages or both aggravated and exemplary damages.

**305.**—(1) Where, in proceedings for infringement of a performer's property rights in respect of which a licence is available as of right, the defendant undertakes to take a licence on such terms as may be agreed or, in default of agreement, settled by the Controller—

Undertakings concerning licences of right.

(*a*) no injunction shall be granted against the defendant,

(*b*) no order for delivery up shall be made under *section 255*, and

(*c*) the amount recoverable against the defendant by way of damages or on an account of profits shall not exceed three times the amount which would have been payable by the defendant as licensee where a licence on those terms had been granted before the earliest infringement.

(2) An undertaking under *subsection (1)* may be given at any time before the final order in the proceedings without any admission of liability.

(3) Nothing in this section shall affect the remedies available in respect of an infringement committed before a licence was available as of right.

[*No.* **28.**]     *Copyright and Related Rights Act,*     [2000.]
2000.

Pt.III

Chapter 15

*Rights and Remedies: Exclusive Licensee*

Rights and remedies of exclusive licensee.

**306.**—(1) An exclusive licensee has, except as against the owner of the performer's property rights, the same rights and remedies in respect of matters occurring after the grant of the licence as if the licence had been an assignment.

(2) The rights and remedies of an exclusive licensee are concurrent with those of the rightsowner and references in *sections 255, 256, 303, 304* and *305* to the rightsowner shall be construed accordingly.

(3) In proceedings brought by an exclusive licensee under this section a defendant may avail of any defence which would have been available to the defendant if the action had been brought by the rightsowner.

Exercise of concurrent rights.

**307.**—(1) Where an action for infringement of a performer's property rights brought by the rightsowner or an exclusive licensee relates, whether in whole or in part, to an infringement in respect of which they have concurrent rights of action, the rightsowner or, as the case may be, the exclusive licensee, may not, without the leave of the appropriate court, proceed with the action unless the other is either joined as plaintiff or added as a defendant.

(2) A rightsowner or exclusive licensee who is added as a defendant under *subsection (1)* shall not be liable for any costs in an action unless he or she takes part in the proceedings.

(3) Nothing in this section shall affect the granting of interlocutory relief on an application by the rightsowner or exclusive licensee.

(4) Where an action for infringement of a performer's property rights is brought which relates, whether in whole or in part, to an infringement in respect of which the rightsowner and an exclusive licensee have or had concurrent rights of action—

    (*a*) in assessing damages the appropriate court shall have regard to—

        (i) the terms of the licence, and

        (ii) any pecuniary remedy already awarded or available to either of them in respect of the infringement;

    (*b*) no account of profits shall be directed where an award of damages has been made, or an account of profits has been directed, in favour of one of them in respect of the infringement; and

    (*c*) the appropriate court shall, where an account of profits is directed, apportion the profits between them as the appropriate court thinks fit, subject to any agreement between the rightsowner and the exclusive licensee.

(5) *Subsection (4)* shall apply whether or not the rightsowner and the exclusive licensee are both parties to the action.

(6) Before—

    (*a*) applying for an order for delivery up under *section 255*,

    (*b*) applying for an order to seize illicit recordings, articles or devices under *section 256*, or

(*c*) exercising the right to seize and detain conferred by *section 257*,    Pt.III S.307

the rightsowner shall notify any exclusive licensee having concurrent rights and the appropriate court may, on the application of the licensee, make such order for delivery up, seizure of illicit recordings, articles or devices or, as the case may be, prohibiting or permitting the exercise by the rightsowner of the right to seize and detain, as it thinks fit, having regard to the terms of the licence between the rightsowner and the exclusive licensee.

## Chapter 16

*Remedies: Owner of Performers' Non-Property Rights and Person Having Recording Rights*

**308.**—(1) An infringement of—    Infringement actionable as a breach of statutory duty.

(*a*) a performer's non-property rights, or

(*b*) any right conferred by this Part on a person having recording rights,

is actionable as a breach of statutory duty owed to the person entitled to the right.

(2) A person may apply to the appropriate court for damages or other relief in respect of an infringement of a right referred to in *subsection (1)*.

## PART IV

### Performers' Moral Rights

**309.**—(1) Subject to the exceptions specified in *section 310*, a per-former shall, where practicable, have the right to be identified as the performer of his or her performance.    Paternity right.

(2) Where a performer uses a pseudonym, initials or other form of identification that form shall be used to identify his or her per-formance.

(3) The right conferred by this section shall be known and in this Part referred to as the "paternity right".

**310.**—(1) The paternity right shall not be infringed by anything done under *section 222, 223(2), 237* or *238*.    Exceptions to paternity right.

(2) The paternity right shall not apply in relation to a performance or a recording of a performance made for the purpose of reporting current events.

**311.**—(1) Subject to the exceptions specified in *section 312*, a per-former shall have the right to object to any distortion, mutilation or other modification of, or other derogatory action in relation to, his or her performance or a recording thereof, which would prejudice his or her reputation.    Integrity right.

[*No.* **28.**]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.IV S.311

(2) The right conferred by this section shall be known and in this Part referred to as the ''integrity right''.

Exceptions to integrity right.

**312.**—(1) Subject to *subsection (2)*, the integrity right shall not apply in relation to a performance or a recording of a performance made for the purpose of reporting current events.

(2) The integrity right is not infringed by anything done for the purposes of—

(*a*) avoiding any contravention of civil or criminal law,

(*b*) complying with a duty imposed by or under an enactment, or

(*c*) in the case of authorised broadcasters or authorised cable programme service providers, avoiding the inclusion in a programme which is broadcast or included in a cable programme service by those broadcasters or providers, of anything which offends public morality or which is likely to encourage or incite to crime or to lead to public disorder.

(3) *Subsection (2)* shall not apply unless the performer is identified at the time of the act concerned or has previously been identified in or on recordings of the performance which have been lawfully made available to the public and there is a sufficient disclaimer.

(4) In this Part ''sufficient disclaimer'', in relation to an act capable of infringing the integrity right, means a clear and reasonably prominent indication given at the time of the act, or where the performer is then identified, appearing along with the identification, that the recording has been subjected to an action to which the performer has not consented.

Secondary infringement of integrity right: possessing or dealing.

**313.**—A person infringes the integrity right where he or she—

(*a*) sells, rents or lends, or offers or exposes for sale, rental or loan,

(*b*) imports into the State, otherwise than for his or her private and domestic use,

(*c*) in the course of a business, trade or profession, has in his or her possession, custody or control, or

(*d*) makes available to the public,

a recording of a performance which has, and which he or she knows or has reason to believe has, been subjected to any distortion, mutilation or other modification or other derogatory action within the meaning of *section 311.*

False attribution of performances.

**314.**—(1) A person has the right not to have a performance falsely attributed to him or her as performer.

(2) The right conferred by *subsection (1)* is infringed by a person where he or she—

(*a*)  sells, rents or lends, or offers or exposes for sale, rental or    Pt.IV S.314
loan,

(*b*)  imports into the State, otherwise than for his or her private
and domestic use,

(*c*)  in the course of a business, trade or profession, has in his or
her possession, custody or control, or

(*d*)  makes available to the public,

a recording of a performance, in or on which there is a false attribution, knowing or having reason to believe that the attribution is false.

(3)  The right conferred by *subsection (1)* is infringed by a person
where he or she—

(*a*)  sells, rents or lends, or offers or exposes for sale, rental or
loan,

(*b*)  imports into the State, otherwise than for his or her private
and domestic use,

(*c*)  in the course of a business, trade or profession, has in his or
her possession, custody or control, or

(*d*)  makes available to the public,

a recording of a performance which has been altered as being a
recording of the unaltered performance, knowing or having reason
to believe that the recording has been altered.

(4)  In this Part, ''attribution'', in relation to a performance, means
a statement, express or implied, as to who is the performer.

**315.**—The rights conferred by this Part shall expire 50 years from    Duration of moral
the end of the calendar year in which—    rights.

(*a*)  the performance takes place, or

(*b*)  where within that period a recording of the performance is
lawfully made available to the public, that recording is
first so lawfully made available to the public.

**316.**—(1)  Subject to *subsection (3)*, any of the rights conferred by    Waiver of rights.
this Part may be waived.

(2)  A waiver made under this section shall be in writing and signed
by the person waiving the right.

(3)  A waiver made under *subsection (1)*—

(*a*)  may relate to a specific performance or a recording thereof,
to performances or recordings thereof of a specified
description or to performances or recordings thereof generally, and may relate to existing or future performances
or recordings thereof, and

(*b*)  may be conditional or unconditional, and may be expressed
to be subject to revocation,

[*No.* **28**.]     *Copyright and Related Rights Act,*     [2000.]
2000.

and where a waiver is made in favour of the owner or prospective owner of the rights in the performance or recording thereof, or performances or recordings thereof, to which it relates, that waiver shall be presumed to extend to his or her licensees, successors in title or other persons, claiming under them unless a contrary intention is expressed.

(4) Nothing in this Part shall be construed as excluding the operation of the general law of contract or estoppel in relation to an informal waiver or other transaction in relation to any of the rights referred to in *subsection (1)*.

(5) It shall not be an infringement of any of the rights conferred by this Part for a person to undertake any act where the person entitled to the right conferred by this Part has consented to the use of those rights by that other person.

Performers' moral rights not assignable or alienable.

**317.**—The rights conferred by this Part shall be incapable of assignment or alienation.

Transmission of moral rights on death.

**318.**—(1) On the death of a person entitled to the paternity right or the integrity right—

(*a*) the right passes by testamentary disposition to such person as the person entitled to the right may direct,

(*b*) where there is no direction as to whom the right passes but the performer's property rights in the recording of the performance concerned forms part of an estate, the right passes to the person to whom the performer's property rights pass, and

(*c*) where the right does not pass under *paragraph (a)* or *(b)*, it is exercisable by the personal representatives of the person entitled to the right.

(2) Where a performer's property rights forming part of an estate pass in part to one person and in part to another, so as to apply—

(*a*) to one or more, but not all, of the acts the rightsowner has the right to authorise or prohibit, or

(*b*) to part, but not the whole, of the period for which the performer's property rights are to subsist,

any right which passes with the performer's property rights by virtue of *subsection (1)* is divided accordingly.

(3) Where, under *subsection (1)*, a right becomes exercisable by more than one person—

(*a*) it may, in the case of the paternity right, be exercised by any of them,

(*b*) it is, in the case of the integrity right a right exercisable by each of them, and

(*c*) any waiver of the right under *section 316* made by one of them shall not affect the rights of the other persons.

(4) A consent or waiver binds any person to whom a right passes under *subsection (1)*.

Pt.IV S.318

(5) An infringement of the right conferred by *section 316* in relation to a false attribution of a performance after the death of a person is actionable by the personal representatives of that person.

(6) Any damages recovered by personal representatives under this section in respect of an infringement after a person's death shall devolve as part of the person's estate as if the right of action had subsisted and been vested in that person immediately before his or her death.

**319.**—(1) An infringement of the rights conferred by *section 309, 311* or *314* is actionable as a breach of statutory duty owed to the person entitled to the right concerned.

Remedies for infringement of moral rights.

(2) A person may apply to the appropriate court for damages or other relief in respect of an infringement of a right conferred by *section 309, 311* or *314*.

(3) In proceedings for infringement of the right conferred by *section 311*, the appropriate court may grant an injunction prohibiting any act unless a sufficient disclaimer is made, on such terms and in such a manner as is approved of by the court, dissociating the person entitled to the right from the treatment of the performance or of a recording of the performance.

PART V

Databases

Chapter 1

*Rights in Databases*

**320.**—(1) In this Part—

Interpretation.

''extraction'', in relation to the contents of a database, means the permanent or temporary transfer of all or a substantial part of the contents to another medium by any means or in any form;

''insubstantial'', in relation to the contents of a database, shall be construed subject to *section 324(3)*;

''investment'' includes any investment, whether of financial, human or technical resources and cognate words shall be construed accordingly;

''jointly'', in relation to the making of a database which is made jointly, shall be construed as referring to all the makers of the database;

''lawful user'', in relation to a database, means any person who, whether under a licence to undertake any of the acts restricted by any database right in the database, or otherwise, has a right to use the database;

''re-utilisation'', in relation to the contents of a database, means making those contents available to the public by any means;

Pt.V S.320

''substantial'', in relation to the investment, extraction or re-utilisation, means substantial in terms of quantity or quality or a combination of both.

(2) The making of a copy of a database available for use, on terms that it is to be or may be returned after a limited period of time, otherwise than for direct or indirect economic or commercial advantage, through an establishment to which the public have access that is prescribed by the Minister for the purpose of *section 58*, shall not be taken for the purposes of this Part to constitute extraction or re-utilisation of the contents of the database.

(3) Where the making of a copy of a database available through an establishment to which members of the public have access and that is prescribed by the Minister for the purpose of *section 58* gives rise to a payment the amount of which does not exceed that which is necessary to cover the operating costs of the establishment there is no direct or indirect economic or commercial advantage for the purposes of *subsection (2).*

(4) *Subsection (2)* shall not apply to the making of a copy of a database available for on the spot reference use.

(5) Where a copy of a database has been sold within the Member States of the EEA by, or with the consent of, the owner of the database right in the database, the further sale within the Member States of the EEA of that copy for the purposes of this Part shall not be taken to constitute extraction or re-utilisation of the contents of the database.

## Chapter 2

### *Subsistence of Database Right*

Database right.

**321.**—(1) A property right to be known and in this Part referred to as the ''database right'' subsists, in accordance with this Part, in a database where there has been a substantial investment in obtaining, verifying or presenting the contents of the database.

(2) Subject to this Act, the owner of the database right may undertake or authorise others to undertake certain acts in the State in relation to the database, being acts which are designated by this Act as acts restricted by the database right.

(3) For the purposes of this section it is immaterial whether or not the database or any of its contents is a copyright work.

(4) The database right shall not subsist in a database unless the requirements specified in this Part with respect to qualification are complied with.

## Chapter 3

### *Maker and Ownership: Databases*

Maker of database.

**322.**—(1) Subject to the provisions of this section, the person who takes the initiative in obtaining, verifying or presenting the contents of a database and assumes the risk of investing in that obtaining, verification or presentation shall be regarded as the maker of, and as having made, the database.

(2) Where a database is made by an employee in the course of Pt.V S.322
employment, his or her employer shall be regarded as the maker of
the database, subject to any agreement to the contrary.

(3) Subject to *subsection (4)*, where a database is made by an
officer or employee of the Government in the course of his or her
duties, the Government shall be regarded as the maker of the
database.

(4) Where a database is made by or under the direction or control
of either or both of the Houses of the Oireachtas—

    (*a*) the House by whom, or under whose direction or control,
        the database is made shall be regarded as the maker of
        the database, and

    (*b*) where the database is made by or under the direction or
        control of both Houses, both Houses shall be regarded as
        the joint makers of the database.

(5) For the purposes of this Part, a database is made jointly where
two or more persons acting together in collaboration take the initiat-
ive in obtaining, verifying or presenting the contents of the database
and assume the risk of investing in that obtaining, verification or
presentation.

(6) Where a database is made by an organisation prescribed by
the Minister under *section 196(2)*, or by an officer or employee of
such an organisation in the course of his or her duties, that organis-
ation shall be regarded as the maker of the database.

(7) Where the database right is conferred on a person by an enact-
ment that person shall be regarded as the maker of the database.

**323**.—The maker of a database shall be the first owner of the data-   First ownership of
base right in the database.   database right.

### Chapter 4

*Restricted Acts: Databases*

**324**.—(1) Subject to the exceptions specified in *Chapter 8* of this   Acts restricted by
Part and to the provisions relating to licensing in *Chapter 11* of this   database right.
Part, the owner of the database right has the right to undertake or
to authorise others to undertake all or any of the following acts in
relation to all or a substantial part of the contents of a database—

    (*a*) extraction, or

    (*b*) re-utilisation,

and those acts shall be known and in this Part referred to as ''acts
restricted by the database right''.

(2) The database right is infringed by a person who, without the
licence of the owner of the database right, undertakes, or authorises
another to undertake, either of the acts restricted by the database
right.

(3) For the purposes of this Part, the repeated and systematic
extraction or re-utilisation of insubstantial parts of the contents of a
database which conflicts with the normal exploitation of the database
or which prejudices the interests of the maker of the database shall

Pt.V S.324    be deemed to be extraction or re-utilisation of a substantial part of
those contents.

## Chapter 5

### *Duration of Database Right*

Term of protection
of database right.

**325.**—(1) The database right shall expire 15 years from the end of
the calendar year in which the making of the database was
completed.

(2) Where a database is lawfully re-utilised before the expiration
of the period referred to in *subsection (1)*, the database right in the
database shall expire 15 years from the end of the calendar year in
which the database was first so re-utilised.

(3) Any substantial change to the contents of a database, including
a substantial change resulting from the accumulation of successive
additions, deletions or alterations, which would result in the database
being considered to be a substantial new investment shall qualify the
database resulting from that investment for its own term of protec-
tion under this section.

(4) This section applies notwithstanding *paragraph 45* of the *First
Schedule*.

## Chapter 6

### *Qualification: Databases*

Qualification for
database right.

**326.**—(1) Subject to *Chapter 2* of this Part, the database right shall
subsist in a database where, at the material time, its maker or, where
it was made jointly, one or more of its makers, is—

    (*a*) a citizen or subject of, or other individual domiciled or ordi-
narily resident in, a Member State of the EEA,

    (*b*) a body incorporated under the law of a Member State of
the EEA and which at the material time satisfied one of
the conditions specified in *subsection (3)*, or

    (*c*) a partnership or unincorporated body formed under the law
of a Member State of the EEA and which at the material
time satisfied the condition specified in *subsection (3)(a)*.

(2) The database right shall subsist in a database the maker of
which is deemed to be the Government, or either or both of the
Houses of the Oireachtas, or a prescribed international organisation,
in accordance with *section 322*.

(3) The conditions referred to in *paragraphs (b)* and *(c)* of *subsec-
tion (1)* are—

    (*a*) that the body has its principal place of business or oper-
ations within a Member State of the EEA,

    (*b*) that the body has its registered office within a Member State
of the EEA and operates in a Member State of the EEA,
and

    (*c*) that the body has a genuine link with the economy of the
State.

(4) The Government may by order extend the provisions of this section to countries, territories, states or areas outside the Member States of the EEA, where the order is made pursuant to or in conformity with an agreement of the Council of the European Communities allowing such an extension of protection on the basis that comparable protection of databases is available under the law of those countries, territories, states or areas.

Pt.V S.326

(5) For the purposes of this section, the material time in relation to a database shall be—

(*a*) in the case of a database which has not been lawfully re-utilised when the database was made or, where the making of the database extended over a period, a substantial part of that period, or

(*b*) in the case of a database which has been lawfully re-utilised when the database was first lawfully re-utilised or, where the maker had died before that time, immediately before his or her death.

## Chapter 7

### *Rights and Obligations of Lawful Users*

**327.**—(1) Without prejudice to *section 324(3)*, a lawful user of a database shall be entitled to extract or re-utilise insubstantial parts of the contents of the database for any purpose.

Avoidance of certain terms affecting lawful users.

(2) Where, under an agreement, a person has a right to use a database, any term or condition in the agreement shall be void in so far as it purports to prevent that person from extracting or re-utilising insubstantial parts of the contents of the database for any purpose.

(3) While exercising the entitlement conferred by *subsection (1)*, a lawful user of a database shall not prejudice the owner of any right conferred by this Act in respect of works or other subject matter contained in the database.

## Chapter 8

### *Acts Permitted in Respect of Database Right*

**328.**—In this Part an act may be exempted under more than one category of exemption and the exemption of an act under one category of exemption shall not preclude its exemption under another category.

Exemptions in respect of databases.

**329.**—(1) The database right in a non-electronic database which has been re-utilised is not infringed by fair dealing with a substantial part of its contents by a lawful user of the database where that part is extracted for the purposes of research or private study.

Fair dealing: research or private study.

(2) For the purposes of this Part ''fair dealing'' means the extraction of the contents of a database by a lawful user to an extent which will not unreasonably prejudice the interests of the rightsowner.

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.V                                          *Education*

Exception for
educational
establishments.

**330**.—(1) The database right in a database is not infringed by fair dealing with a substantial part of its contents by a lawful user of the database where that part is extracted for the purposes of illustration in the course of instruction or of preparation for instruction and where—

    (*a*) the extraction is done by or on behalf of a person giving or receiving instruction, and

    (*b*) the source is indicated.

(2) For the purposes of this section ''lawful user'' includes an educational establishment.

*Public Administration*

Parliamentary or
judicial proceedings.

**331**.—The database right in a database is not infringed by anything done for the purposes of parliamentary or judicial proceedings or for the purpose of reporting those proceedings.

Statutory inquiries.

**332**.—(1) The database right in a database is not infringed by anything done for the purposes of a statutory inquiry or for the purpose of reporting any such inquiry.

(2) The database right in a database is not infringed by the making available of copies of a report of a statutory inquiry containing the contents of the database.

Copying of material
in public records.

**333**.—All or a substantial part of the contents of a database which are comprised in records which are open to public inspection may be extracted or re-utilised without infringing the database right in the database.

Material open to
public inspection or
on statutory
register.

**334**.—(1) Without prejudice to the generality of *section 333*, where the contents of a database are open to public inspection pursuant to a statutory requirement, or are on a statutory register, the database right in the database is not infringed by the extraction of all or a substantial part of the contents, for a purpose which does not involve re-utilisation of all or a substantial part of the contents as contains factual information of any description, by or with the authority of the person required to make the contents of the database open to public inspection or, as the case may be, the person maintaining the register.

(2) Where the contents of a database are open to public inspection pursuant to a statutory requirement, or are on a statutory register, the database right in the database is not infringed by the extraction or re-utilisation of all or a substantial part of the contents for the purpose of enabling the contents of the database to be inspected at another time or place, or otherwise facilitating the exercise of any right for the purpose of which the requirement is imposed, by or with the authority of the person required to make the contents of the database open to public inspection or, as the case may be, the person maintaining the register.

(3) Where all or a substantial part of the contents of a database are re-utilised under this section the person granting access to the contents of the database shall ensure that those contents bear a mark

clearly indicating that they are provided for the purpose of inspection Pt.V S.334
and that no other use of the contents of the database may be made
without the licence of the owner of the database right.

(4) All or a substantial part of the contents of a database may not
be provided under this section unless the person granting access to
the contents of the database has first obtained from the person
requesting the contents of the database a declaration, in such form
as may be prescribed, indicating that the contents of the database
are required for the sole purpose of enabling the contents of the
database to be inspected at another time or place or to otherwise
facilitate the exercise of the right of public inspection.

(5) Where the contents of a database which are open to public
inspection pursuant to a statutory requirement, or are on a statutory
register, contain information about matters of general, scientific,
technical, commercial or economic interest, the database right in the
database is not infringed by the extraction or re-utilisation of all or
a substantial part of the contents for the purpose of disseminating
that information, by or with the authority of the person required to
make the contents of the database open to public inspection or, as
the case may be, the person maintaining the register.

(6) The Minister may prescribe the conditions which are to be
complied with before the contents of a database are made available
to the public.

(7) The Minister may by order provide that *subsections (1)* to *(5)*
apply—

(*a*) to the contents of a database made open to public inspection
    by—

    (i) an international organisation specified in the order,
        or

    (ii) a person specified in the order who has functions in
        the State under an international agreement to which
        the State is a party,

    or

(*b*) to a register maintained by an international organisation
    specified in the order,

as they apply in relation to the contents of a database open to public
inspection pursuant to a statutory requirement, or on a statutory
register.

**335.**—(1) Where the contents of a database have been communi-    Databases
cated to the Government or either or both of the Houses of the    communicated to
Oireachtas for any purpose, by or with the licence of the owner of    Government or
the database right, and any fixation or any thing containing the con-    Oireachtas.
tents of the database is owned by, or is in the custody, possession or
control of the Government or either or both of the Houses of the
Oireachtas, the Government or either or both of the Houses of the
Oireachtas may extract or re-utilise all or a substantial part of the
contents, for the purpose for which the contents of the database were
communicated to them, or for any related purpose which could
reasonably have been anticipated by the owner of the database right,
without infringing the database right in the database.

[*No.* **28.**]     *Copyright and Related Rights Act,*     [2000.]
2000.

Pt.V S.335

(2) The Government or either or both of the Houses of the Oireachtas shall not re-utilise all or a substantial part of the contents of a database or cause the contents to be extracted or re-utilised, by virtue of this section, where the contents have previously been lawfully re-utilised otherwise than under this section.

Acts done under statutory authority.

**336.**—(1) Where the undertaking of a particular act is specifically authorised by an enactment then, unless the enactment provides otherwise, the undertaking of that act shall not infringe the database right in a database.

(2) Nothing in this section shall be construed as excluding any defence available under any enactment.

### Anonymous or Pseudonymous Database

Anonymous or pseudonymous databases: acts permitted.

**337.**—(1) The database right in a database is not infringed by the extraction or re-utilisation of all or a substantial part of the contents of the database when, or pursuant to arrangements made when—

(*a*) it is not possible by reasonable inquiry to ascertain the identity of the maker of the database, and

(*b*) it is reasonable to assume that the database right has expired.

(2) In the case of a database made jointly, the reference in *subsection (1)*, to the possibility of ascertaining the identity of the maker of the database shall be construed as a reference to its being possible to ascertain the identity of any of its makers.

### Chapter 9

### Application of Copyright Provisions to Database Right

Application of copyright provisions to database right.

**338.**—*Sections 120, 121, 122, 123, 127, 128, 130, 131, 132, 133, 135* and *136* shall apply in relation to the database right and databases in which that right subsists as they apply in relation to copyright and copyright works.

### Chapter 10

### Presumptions

Presumptions relevant to database right.

**339.**—(1) The presumptions specified in this section shall apply in proceedings, whether civil or criminal, for infringement of the database right in any database.

(2) (*a*) The database right shall be presumed to subsist in a database unless the contrary is proved.

(*b*) Except as otherwise provided in this section, where the subsistence of the database right in a database is proved or admitted, or is presumed under *paragraph (a)*, the plaintiff shall be presumed to be the owner or, as the case may be, the exclusive licensee of the database right, unless the contrary is proved.

(3) Where—

(*a*)  a name purporting to be that of the maker of a database or    Pt.V S.339
of the owner or exclusive licensee of the database right,
as the case may be, appears on copies of the database, or

(*b*)  a copy of a database bears or incorporates a statement, label
or other mark indicating that a person is the maker of
the database or the owner or exclusive licensee of the
database right, as the case may be,

that name, statement, label or mark shall be admissible as evidence
of the fact stated or indicated which shall be presumed to be correct,
unless the contrary is proved.

(4)  The person named or in respect of whom a statement, label or
other mark appears on or is borne on or is incorporated in copies of
a database in accordance with *subsection (3)* shall be presumed not
to have made the database—

(*a*)  in the course of employment referred to in *section 322(2)*,

(*b*)  in the course of employment as an officer or employee of a
prescribed international organisation referred to in
*section 322(6)*,

(*c*)  in the course of employment as an officer or employee of
the Government referred to in *section 322(3)*,

(*d*)  under the direction or control of either or both of the
Houses of the Oireachtas referred to in *section 322(4)*, or

(*e*)  in circumstances in which the database right is conferred on
another person by an enactment referred to in *section
322(7)*.

(5)  Where a database purports to be a database made jointly, *sub-
sections (2)*, *(3)* and *(4)* shall apply in relation to each person pur-
porting to be one of the makers of the database.

### Chapter 11

*Database Right: Licensing*

**340.**—(1)  In this Part—                                         Licensing schemes
                                                                    and licensing
''licences'' means licences to extract or re-utilise all or a substantial    bodies.
part of the contents of a database or to authorise others to do so;

''licensing body'' means a society or other organisation which has as
its main object, or one of its main objects, the negotiating or granting,
either as owner or prospective owner of a database right, or as
exclusive licensee, or as agent for him or her, of database right
licences, and whose objects include the granting of licences relating
to the databases of more than one database right owner;

''licensing scheme'' means a scheme specifying—

(*a*)  the classes of case in which the operator of the scheme, or
the person on whose behalf that acts, is willing
to grant database right licences, and

(*b*)  the terms on which licences would be granted in those
classes of case,

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.V S.340

and for this purpose a ''scheme'' includes anything in the nature of
a scheme, whether described as a scheme or as a tariff or by any
other name.

(2) References in this Part to licences or licensing schemes relating
to databases of more than one database right owner shall not include
licences or schemes relating to databases made by, or by employees
of, or commissioned by, a single individual, firm, company or group
of companies, including holding companies and their subsidiaries.

*References and Applications Relating to Licensing Schemes*

General references.

**341.**—*Sections 342* to *347* apply to licensing schemes which are
operated by licensing bodies in relation to the database right in data-
bases of more than one database right owner, in so far as they relate
to licences for the extraction or re-utilisation of all or a substantial
part of the contents of a database.

Reference of
proposed licensing
scheme to
Controller.

**342.**—(1) The terms of a licensing scheme proposed to be oper-
ated by a licensing body may be referred to the Controller by an
organisation which claims to be representative of persons claiming
that they require licences in cases of a description to which the
scheme would apply.

(2) The Controller shall not consider a reference by an organis-
ation under *subsection (1)* unless the Controller is satisfied that the
organisation is representative of the class of persons that it claims to
represent.

(3) The Controller may refuse to consider a reference under *sub-
section (1)* on the ground that the reference is premature.

(4) Where the Controller decides to consider a reference under
*subsection (1)* he or she shall consider the subject matter of the refer-
ence and make an order, either confirming or varying the proposed
scheme, as the Controller may determine to be reasonable in the
circumstances.

(5) An order under *subsection (4)* may be made for such period
as the Controller may determine.

Reference of
licensing scheme to
Controller.

**343.**—(1) Where a licensing scheme is in operation and a dispute
arises with respect to the scheme between the operator of the scheme
and—

(*a*) a person claiming that he or she requires a licence in a case
of a description to which the scheme applies, or

(*b*) an organisation claiming to be representative of such
persons,

that operator, person or organisation may refer the scheme to the
Controller in so far as it relates to cases of that description.

(2) The Controller shall not consider a reference by an organis-
ation under *subsection (1)* unless the Controller is satisfied that the
organisation is representative of the class of persons that it claims to
represent.

(3) A scheme which has been referred to the Controller under *subsection (1)* shall remain in operation until proceedings in relation to the reference are concluded.

(4) The Controller shall consider the matter referred to him or her and shall make an order, confirming or varying the scheme, as the Controller may determine to be reasonable in the circumstances.

(5) An order under *subsection (4)* may be made for such period as the Controller may determine.

Pt.V S.343

**344.**—(1) Where the Controller has, in respect of a licensing scheme under *section 342* or *343* or under this section, made an order in respect of a scheme, and the order remains in force, the persons to whom this section applies may refer the scheme to the Controller in so far as it relates to cases of that description.

Further reference of scheme to Controller.

(2) This section applies to—

(*a*) the operator of the scheme,

(*b*) a person claiming that he or she requires a licence in a case of the description to which the order applies, and

(*c*) an organisation claiming to be representative of such persons.

(3) Where an order made under *section 342* or *343* or this section is in force the licensing scheme in respect of which the order is made shall not, except with the special leave of the Controller, be referred to the Controller in respect of the same description of cases—

(*a*) within 12 months from the date of the order in respect of the previous reference, or

(*b*) where the order was made so as to be in force for 15 months or less, until the last 3 months before the expiration of the order.

(4) A scheme which has been referred to the Controller under *subsection (1)* shall remain in operation until proceedings in relation to the reference are concluded.

(5) The Controller shall consider the matter referred to him or her and shall make an order confirming, varying or further varying the scheme, as the Controller may determine to be reasonable in the circumstances.

(6) An order under *subsection (5)* may be made for such period as the Controller may determine.

**345.**—(1) A person who claims, in a case to which a licensing scheme relates, that the operator of the scheme has refused to grant or to procure the grant to him or her of a licence in accordance with the scheme, or has failed to do so within a reasonable period, may apply to the Controller for an order under *subsection (4)*.

Application for grant of licence in connection with licensing scheme.

(2) A person who claims, in a case excluded from a licensing scheme, that the operator of the scheme—

(*a*) has refused to grant or to procure the grant to him or her of a licence, or has failed to do so within a reasonable

[*No.* **28**.]      *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.V S.345

period and that in the circumstances it is unreasonable that a licence should not be granted, or

(*b*) proposes terms for a licence that are unreasonable,

may apply to the Controller for an order under *subsection (4)*.

(3) A case shall be regarded as being excluded from a licensing scheme for the purposes of *subsection (2)* where—

(*a*) the scheme provides for the grant of licences, subject to terms excepting matters from the licence and the case is within such an exception, or

(*b*) the case is so similar to those in which licences are granted under the scheme that it is unreasonable that it should not be dealt with in the same way.

(4) Where the Controller is satisfied that a claim under this section is well-founded, he or she shall make an order declaring that in respect of the matters specified in the order, the applicant is entitled to a licence on such terms as the Controller may determine to be applicable in accordance with the scheme, or, as the case may be, to be reasonable in the circumstances.

(5) An order under *subsection (4)* may be made for such period as the Controller may determine.

Review of orders made by Controller.

**346.**—(1) Where the Controller has made an order under *section 345* that a person is entitled to a licence under a licensing scheme, the operator of the scheme or the original applicant may apply to the Controller for a review of that order.

(2) An application under *subsection (1)* shall not be made except with the special leave of the Controller—

(*a*) within 12 months from the date of the order or of the decision on a previous application under this section, or

(*b*) where—

(i) the order was made so as to be in force for 15 months or less, or

(ii) as a result of the decision on a previous application under this section the order is due to expire within 15 months of that decision,

until the last 3 months before the expiration date.

(3) The Controller shall, on an application for review, confirm or vary his or her order as the Controller may determine to be reasonable, having regard to the terms applicable in accordance with the licensing scheme, or as the case may be, the circumstances of the case.

Effect of order of Controller as to licensing scheme.

**347.**—(1) A licensing scheme which has been confirmed or varied by the Controller under *section 342, 343* or *344* shall be in operation, or as the case may be, remain in operation, in so far as it relates to the description of case in respect of which the order was made, for such period as the order remains in force.

(2)  Where an order made by the Controller under *section 342, 343* Pt.V S.347
or *344* confirming or varying a licensing scheme is in force (in this
section referred to as an ''order to which this section applies''), a
person who, in a case of a class to which the order applies—

    (*a*)  pays to the operator of the scheme any charges payable
        under the scheme in respect of a licence applying to the
        case concerned or, where the amount cannot be ascer-
        tained, gives an undertaking to the operator to pay the
        charges when ascertained, and

    (*b*)  complies with the other terms applicable to the licence
        under the scheme,

is in the same position as regards infringement of the database right
as if he or she had at all material times been the holder of a licence
granted by the owner of the database right concerned in accordance
with the scheme.

(3)  The Controller may direct that an order to which this section
applies, in so far as it varies the amount of charges payable, has effect
from a date before that on which it was made, but not earlier than
the date on which the reference was made, or where later, the date
on which the scheme came into operation.

(4)  Where a direction is made under *subsection (3)*—

    (*a*)  any necessary repayments or further payments shall be
        made in respect of charges already paid, and

    (*b*)  the reference in *subsection (2)(a)* to the charges payable
        under the scheme shall be construed as a reference to the
        charges so payable by virtue of the order.

(5)  Where the Controller has made an order under *section 345*
and the order remains in force, the person in whose favour the order
is made, where he or she—

    (*a*)  pays to the operator of the scheme any charges payable in
        accordance with the order, or where the amount cannot
        be ascertained, gives an undertaking to the operator to
        pay the charges when ascertained, and

    (*b*)  complies with the other terms specified in the order,

is in the same position as regards infringement of the database right
as if he or she had at all material times been the holder of a licence
granted by the owner of the database right concerned on the terms
specified in the order.

*References and Applications Relating to Licensing by
Licensing Bodies*

**348.**—*Sections 349* to *352* apply to licences in relation to the data-    General reference
base right in databases of more than one database right owner,    by licensing bodies.
granted by a licensing body otherwise than pursuant to a licensing
scheme, in so far as the licences relate to the extraction or re-utilis-
ation of all or a substantial part of the contents of a database.

[*No.* **28**.]     *Copyright and Related Rights Act,*     [2000.]
2000.

Pt.V
Reference to
Controller of
proposed licence.

**349.**—(1)  The terms on which a licensing body proposes to grant a licence may be referred to the Controller by the prospective licensee for an order under *subsection (3)*.

(2)  The Controller may refuse to consider a reference under *subsection (1)* on the ground that the reference is premature.

(3)  Where the Controller decides to consider a reference under *subsection (1)*, he or she shall consider the terms of the proposed licence and make an order, confirming or varying the terms, as the Controller may determine to be reasonable in the circumstances.

(4)  An order under *subsection (3)* may be made for such period as the Controller may determine.

Reference to
Controller of
expiring licence.

**350.**—(1)  A licensee under a licence which is due to expire, with the passage of time or as a result of notice given by the licensing body, may apply to the Controller on the ground that it is unreasonable in the circumstances that the licence should cease to be in force.

(2)  An application under *subsection (1)* may be made at any time during the last 3 months before the expiration of the licence.

(3)  A licence in respect of which a reference has been made to the Controller under *subsection (1)* shall remain in force until proceedings in relation to the reference are concluded.

(4)  Where the Controller is satisfied that an application made under *subsection (1)* is well-founded, he or she shall make an order declaring that the licensee shall continue to be entitled to the benefit of the licence on such terms as the Controller may determine to be reasonable in the circumstances.

(5)  An order under *subsection (4)* may be made for such period as the Controller may determine.

Application for
review of order
made by Controller.

**351.**—(1)  Where the Controller has made an order under *section 349* or *350*, the licensing body or the person entitled to the benefit of the order may apply to the Controller for a review of that order.

(2)  An application under *subsection (1)* shall not be made except with the special leave of the Controller—

(*a*)  within 12 months from the date of the order or of the decision on a previous application under this section, or

(*b*)  where—

(i)  the order was made so as to be in force for 15 months or less, or

(ii)  as a result of the decision on a previous application under this section the order is due to expire within 15 months of that decision,

until the last 3 months before the expiration date.

(3)  The Controller shall, on an application for review, confirm or vary his or her order as the Controller may determine to be reasonable in the circumstances.

**352.**—(1) Where the Controller has made an order under *section 349* or *350*, and the order remains in force, the person entitled to the benefit of the order, where he or she—

Pt.V

Effect of order of Controller as to licence.

    (*a*) pays to the licensing body any charges payable in accordance with the order or, where the amount cannot be ascertained, gives an undertaking to the Controller to pay the charges when ascertained, and

    (*b*) complies with the other terms specified in the order,

is in the same position as regards infringement of the database right as if he or she had at all material times been the holder of a licence granted by the owner of the database right concerned on the terms specified in the order.

    (2) The benefit of an order made under *section 349* or *350* may be assigned—

    (*a*) in the case of an order made under *section 349*, where assignment is not prohibited under the terms of the order of the Controller, and

    (*b*) in the case of an order made under *section 350*, where assignment was not prohibited under the terms of the original licence.

    (3) The Controller may direct that an order made under *section 349* or *350* or an order made under *section 351* varying such an order, in so far as it varies the amount of charges payable, has effect from a date before that on which it was made, but not earlier than the date on which the reference or application was made or, where later, the date on which the licence was granted or, as the case may be, was due to expire.

    (4) Where a direction is given under *subsection (3)*—

    (*a*) any necessary repayments, or further payments, shall be made in respect of charges already paid, and

    (*b*) the reference in *subsection (1)(a)* to the charges payable in accordance with the order shall be construed, where the order is varied by a further order, as a reference to the charges so payable by virtue of that further order.

### *Licensing: Miscellaneous*

**353.**—(1) In determining what is reasonable, on a reference or application under this Chapter relating to a licensing scheme or licence, the Controller shall have regard to—

General considerations: unreasonable discrimination.

    (*a*) the availability of other schemes, or the granting of other licences, to other persons in similar circumstances, and

    (*b*) the terms of those schemes or licences,

and shall exercise his or her powers so as to ensure that there is no unreasonable discrimination between licensees, or prospective licensees, under the scheme or licence to which the reference or application relates and licensees under other schemes operated by, or other licences granted by, the same person.

    (2) *Subsection (1)* shall not affect the obligation of the Controller in any case to have regard to all relevant circumstances.

[*No. 28*.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.V
Licences to reflect
payments in respect
of underlying rights.

**354**.—Where a reference or application is made under this Chapter in relation to licensing in respect of the database right in a database, the Controller shall take into account, in considering what charges are to be paid for a licence, any payments which the owner of the database right is liable to make pursuant to the granting of the licence, or pursuant to the acts authorised by the licence—

(*a*) to owners of the copyright in works included in the data-base, or

(*b*) in respect of any performance included in the database.

### Chapter 12

*Registration of Licensing Bodies in Respect of Database Right*

Register of licensing
bodies for database
right.

**355**.—(1)  The Controller shall establish and maintain a register of licensing bodies in respect of database rights in such form and man-ner and containing such particulars as the Minister may prescribe to be known as the ''Register of Licensing Bodies for Database Rights'' and referred to in this Part as the ''Register''.

(2)  The Controller shall keep the Register in such form that the Register is capable of being used to make a copy of any entry in the Register.

(3)  The Register shall be kept at such place as may be prescribed by the Minister and, subject to the payment of such fee as may be prescribed by the Minister with the consent of the Minister for Finance—

(*a*) the Register shall be made available for inspection by a per-son at such times and in such manner as may be pre-scribed by the Minister, and

(*b*) where a request is made to the Controller for a certified or uncertified copy of, or extract from, an entry in the Regis-ter, the Controller shall issue a copy of the entry or extract to the applicant.

(4)  An application for registration or renewal of a registration of a licensing body shall be made to the Controller in such form and manner as may be prescribed by the Minister and shall be subject to the payment of such fee as may be prescribed by the Minister with the consent of the Minister for Finance.

(5)  The Controller shall register an applicant or renew a regis-tration where the Controller is satisfied that—

(*a*) the applicant complies with the definition of a licensing body specified in *section 340*, and

(*b*) the applicant has provided such information and satisfied such conditions as may be prescribed by the Minister for the purposes of registration.

(6)  The information to be prescribed by the Minister under *sub-section (5)(b)* shall include the following:

(*a*) the name of the applicant;

(*b*) the address of the applicant;

(*c*)  the names of the chairperson and other members of the board or officers, or names of partners, as the case may be, of the applicant;

(*d*)  a copy of the memorandum and articles of association or partnership agreement, of the applicant;

(*e*)  details of the scheme;

(*f*)  details of the scales of charges or proposed charges to be levied by the applicant; and

(*g*)  the class of rightsowners represented or proposed to be represented by the applicant.

Pt.V S.355

(7)  On the registration or renewal of a registration of a licensing body the Controller shall issue to the applicant a certificate of registration in such form as the Controller shall determine.

**356.**—A certificate granted under *section 355(7)* shall include the particulars specified in *subsection (6)* of that section and the certificate shall be evidence of the right of the licensing body, until the contrary is proved, to act on behalf of the classes of rightsowners for whom it claims representation rights or on behalf of the rightsowners who have assigned rights to it, or exclusively licensed it, as specified in that certificate.

Proof that licensing body may act on behalf of specified classes.

**357.**—(1)  A licensing body registered under this Part which proposes to impose a charge, otherwise than in accordance with the scales of charges included in an application for registration or for renewal of a registration, shall provide the Controller in writing with details of the proposed charge not less than one month before the charge comes into effect.

Notification of charges.

(2)  The registration of a licensing body which fails to comply with *subsection (1)* is deemed to be cancelled from the date on which the proposed charge comes into effect.

**358.**—(1)  A certificate of registration issued under *section 355(7)* shall be valid for a period of 12 months from the date of registration or such lesser period as may be specified by the Controller in the certificate.

Validity of certificates of registration.

(2)  Subject to *section 355(4)*, a licensing body registered under this Part may apply for renewal of its registration for further periods each of which shall not exceed 12 months.

(3)  An application for renewal of a registration shall be made not less than one month before the expiration of the period of validity of the certificate of registration.

(4)  A term of renewal of a registration shall take effect from the expiration of the previous registration.

**359.**—(1)  The Controller may refuse an application for renewal of a registration by a licensing body registered under this Part or cancel the registration of a licensing body where the body no longer fulfils the requirements specified in *section 355(5)*.

Refusal of application.

[*No. 28.*]     *Copyright and Related Rights Act,*     [2000.]
2000.

Pt.V S.359

(2)  The Controller shall remove a licensing body from the Register where its application for renewal of its registration is refused or its registration is cancelled.

Indemnity for Controller.

**360.**—No action or other proceedings shall lie or be maintainable against the Controller (except in the case of wilful neglect of duty) in respect of anything done or omitted to be done by him or her in the *bona fide* exercise of any functions, powers or duties conferred or imposed by or under this Chapter.

Obligation of collecting societies to register (database rights).

**361.**—(1) Any body operating as a licensing body within the meaning specified in *section 340* shall be obliged to register in accordance with the provisions of this Chapter, and to remain registered for so long as it continues to operate in this capacity.

(2)  Any body to which the provisions of *subsection (1)* applies which—

(*a*)  fails within 6 months of the commencement of this Chapter to register under the terms of this Chapter,

(*b*)  fails within 2 months of its establishment in the case of a body established after the commencement of this Chapter to register under the terms of this Chapter, or

(*c*)  continues to operate as such a body having been removed from the Register for any reason,

shall be guilty of an offence.

(3)  A person guilty of an offence under *subsection (2)* shall be liable—

(*a*)  on summary conviction, to a fine not exceeding £1,500, or to imprisonment for a term not exceeding 12 months, or both, or

(*b*)  on conviction on indictment, to a fine not exceeding £100,000, or to imprisonment for a term not exceeding 5 years, or both.

## PART VI

### Jurisdiction of Controller

Jurisdiction of Controller.

**362.**—It shall be a function of the Controller pursuant to references or applications under this Act to determine, within a reasonable period of time, disputes arising under this Act between licensing bodies and persons requiring licences or organisations claiming to be representative of those persons.

Rules in relation to proceedings before Controller.

**363.**—(1)  The Minister may make rules in relation to proceedings before the Controller under this Act and, subject to the consent of the Minister for Finance, may also make rules in relation to the fees chargeable in respect of such proceedings.

(2)  Rules made under this section shall—

(*a*) specify the parties to proceedings and permit the Controller to make a party to the proceedings a person or organisation satisfying the Controller that the party concerned has a substantial interest in the matter, and

Pt.VI S.363

(*b*) require the Controller to give the parties to proceedings an opportunity to state their case orally or in writing.

(3) Without prejudice to the generality of *subsection (1)*, rules made under this section may make provision for prescribing matters incidental to or consequential upon appeals from decisions of the Controller under *section 366.*

**364.**—(1) The Controller may order that the costs of a party to proceedings before him or her under this Act, including costs associated with the appointment of an arbitrator under *section 367* and costs of a party to proceedings before that arbitrator, shall be paid by such party as the Controller may direct, and the Controller may determine the amounts of the costs or direct the manner in which they are to be paid.

Power of Controller to award costs.

(2) A copy of an order made by the Controller under *subsection (1)* which is certified by the Controller to be a true copy shall, in proceedings under this Act, be evidence of the order unless the contrary is proved.

**365.**—(1) In any proceedings before him or her under this Act, the Controller may, where he or she thinks fit, and shall, on the request of all the parties to the proceedings, appoint an assessor who is specially qualified in regard to all or any of the questions arising in the course of the proceedings to aid the Controller in his or her consideration of those questions.

Appointment of assessors.

(2) Subject to *subsection (3)*, the Minister shall approve, with the consent of the Minister for Finance, the amount of remuneration (if any) to be paid by the Controller to an assessor appointed by him or her under this section.

(3) The amount of remuneration referred to under *subsection (2)* shall be paid out of moneys provided by the Oireachtas, to such an extent as may be sanctioned by the Minister for Finance.

**366.**—(1) An appeal on a point of law arising from a decision of the Controller under this Act shall lie to the High Court.

Appeal to the High Court.

(2) Provision shall be made in the rules made under *section 363* limiting the time within which such an appeal may be brought.

(3) Provisions may be made in the rules made under *section 363* for all or any of the following, namely:

(*a*) suspending, authorising or requiring the Controller to suspend the operation of orders of the Controller in cases where his or her decision is appealed;

(*b*) modifying, in relation to an order of the Controller the operation of which is suspended, the operation of any provision of this Act as to the effect of that order;

Pt.VI S.366

    (*c*)  the notification of, or the taking of other steps for securing that, persons affected by the suspension of an order of the Controller shall be informed of its suspension.

    (4) Subject to *subsection (5)*, a decision of the High Court under this section shall be final and may not be appealed.

    (5) By leave of the High Court, an appeal from a decision of the High Court under this section shall lie to the Supreme Court on a question of law.

References of dispute to arbitrator.

    **367.**—(1)  In the case of a dispute referred to the Controller under this Act, the Controller may at any time—

    (*a*)  where the parties to the dispute consent, or

    (*b*)  where a matter requires any prolonged examination of documents or other investigation requiring specialist knowledge which could not be made by him or her,

order the matter to be referred to an arbitrator agreed by the parties or, in the absence of such agreement, appointed by the Controller.

    (2) The Controller shall decide whether or not to refer a dispute to arbitration no later than 3 months after the dispute has been referred to the Controller.

    (3) The arbitrator shall make his or her award within 3 months of the reference from the Controller, or within such further period of time as may be agreed with the Controller.

    (4) The award made by an arbitrator in a case referred to him or her under this section shall, where the parties consent to the reference, be final and binding on the parties.

    (5) An appeal from an award made by an arbitrator pursuant to a reference under this section to which the parties to the dispute did not consent shall lie to the High Court and the High Court may make such order confirming, annulling or varying the award of the arbitrator as it thinks fit.

    (6) Subject to *subsection (7)*, a decision of the High Court under this section shall be final and may not be appealed.

    (7) By leave of the High Court, an appeal from a decision of the High Court under this section shall lie to the Supreme Court on a question of law.

    (8) In any reference to an arbitrator under this section, the Controller on giving notice to the parties to the dispute shall have the same power to apply to the court for the removal of that arbitrator under section 24 of the Arbitration Act, 1954, as if he or she had been a party to the arbitration.

    (9) Nothing in *subsection (8)* shall affect the rights of the parties to the arbitration.

    (10) For the avoidance of doubt, in the event of an arbitrator being removed under *subsection (8)*, a second or subsequent arbitrator may be appointed to arbitrate the dispute in accordance with this section.

**368.**—The Controller may, in any case of doubt or difficulty arising in connection with the administration of any of the provisions of this Act, apply to the Attorney General for advice in the matter.

Pt.VI

Controller may consult Attorney General.

**369.**—For the purposes of this Chapter, "dispute" shall include any matter referred to the Controller for decision or resolution by reference or application under any provision of this Act.

Definition of dispute for the purposes of this Chapter.

PART VII

Technological Protection Measures

Chapter 1

*Rights Protection Measures*

**370.**—(1) This section applies where, by or with the licence of the rightsowner—

Devices designed to circumvent protection.

(*a*) copies of copyright works to which rights protection measures have been applied or recordings of performances to which rights protection measures have been applied, are made available to the public, or

(*b*) copies of databases to which rights protection measures have been applied, are re-utilised.

(2) A person who makes available to the public or re-utilises the copies referred to in *subsection (1)* has the same rights and remedies against a person who—

(*a*)  (i)  makes,

(ii)  sells, rents or lends, or offers or exposes for sale, rental or loan,

(iii)  imports into the State, or

(iv)  has in his or her possession, custody or control,

a protection-defeating device, knowing or having reason to believe that it has been or is to be used to circumvent rights protection measures, or

(*b*) provides information, or offers or performs any service, intended to enable or assist persons to circumvent rights protection measures,

as a rightsowner has in respect of an infringement of any of his or her rights under this Act.

(3) The presumptions as to ownership of rights specified in *Chapter 12* of *Part II* and *Chapter 10* of *Part V* shall apply in any proceedings under this section, whether civil or criminal, as in proceedings for infringement of the copyright in a work or for infringement of the database right in a database under *Part II* or *Part V*.

(4) *Sections 145* and *264* shall apply with any necessary modifications in relation to the disposal of anything delivered up or seized by virtue of *subsection (2).*

[*No.* **28.**]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.VII S.370    (5)  References in this Part to copies of a work, recording or database shall include the original.

Offence of unlawful reception.

**371.**—A person who receives a broadcast or cable programme to which rights protection measures have been applied, knowing or having reason to believe that it is being received unlawfully with the intent to avoid payment of any charge applied by the rightsowner for the reception of that broadcast or cable programme shall be guilty of an offence and shall be liable on summary conviction to a fine not exceeding £1,500.

Rights in respect of apparatus, etc., for unauthorised reception of transmissions.

**372.**—(1)  A person who is authorised by the rightsowner—

(*a*)  to make charges for the reception of programmes included in a broadcast or cable programme service, or

(*b*)  to send encrypted transmissions of any other description,

has the same rights and remedies against a person who—

(i)    (I)  makes,

(II)  sells, rents or lends, or offers or exposes for sale, rental or loan,

(III)  imports into the State, or

(IV)  has in his or her possession, custody or control,

any apparatus or protection-defeating device, knowing or having reason to believe that the apparatus or device is to be used to enable or assist persons to receive those programmes or transmissions when those persons are not so entitled, or

(ii)  provides information, or offers or performs any service, intended to enable or assist persons to receive those programmes or transmissions when those persons are not so entitled,

as a rightsowner has in respect of an infringement of any of his or her rights under this Act.

(2)  Without prejudice to any other remedy, in cases of innocent infringement of the rights conferred by *subsection (1)*, the appropriate court may award damages as it considers appropriate in the circumstances, and such damages shall not exceed a reasonable payment in respect of the act complained of.

(3)  *Sections 145* and *264* shall apply with any necessary modifications in relation to the disposal of anything delivered up or seized by virtue of *subsection (1)*.

Denial of protection.

**373.**—(1)  Where it appears to the Minister that broadcasts made, or cable programmes or encrypted transmissions sent, from the State are not adequately protected in a country, territory, state or area, the Minister may by order restrict the rights conferred by *section 370, 371* or *372* in relation to broadcasters or providers of cable programme services or encrypted transmissions connected with that country, territory, state or area.

(2)  In an order made under *subsection (1)* the Minister shall desig-   Pt.VII S.373
nate the country, territory, state or area concerned and provide that,
for the purposes specified in that order, a broadcast made or a cable
programme or encrypted transmission sent after a date specified in
that order shall not qualify for the protection conferred by *section
370, 371* or *372* where at the time of that making or sending the
maker or sender is—

    (*a*)  an individual domiciled or resident in that country, territory,
        state or area (and not at the same time domiciled or resi-
        dent in the State),

    (*b*)  a body incorporated under the law of that country, territory,
        state or area,

    (*c*)  a partnership or unincorporated body formed under the law
        of that country, territory, state or area, or

    (*d*)  any other body,

and the order may make such provision for all the purposes of *section
370, 371* or *372* or for such purposes as are specified in that order.

**374.**—Nothing in this Chapter shall be construed as operating to   Non-interference of
prevent any person from undertaking the acts permitted—   rights protection
measures with
permitted acts.

    (*a*)  in relation to works protected by copyright under *Chapter 6*
        of *Part II*,

    (*b*)  in relation to performances, by *Chapter 4* of *Part III*, or

    (*c*)  in relation to databases, by *Chapter 8* of *Part V*,

or from undertaking any act of circumvention required to effect such
permitted acts.

## Chapter 2

### Rights Management Information

**375.**—(1)  A person who provides rights management information   Rights and
has the same rights and remedies against a person who—   remedies in respect
of unlawful acts
which interfere with
rights management
information.

    (*a*)  removes or alters rights management information from cop-
        ies of copyright works, copies of recordings of perform-
        ances or copies of databases knowing or having reason to
        believe that the primary purpose or effect of such
        removal or alteration is to induce, enable, facilitate or
        conceal an infringement of any right conferred by this
        Act,

    (*b*)  makes available to the public copies of copyright works or
        copies of recordings of performances or re-utilises copies
        of databases, referred to in *paragraph (a)*, knowing or
        having reason to believe that rights management infor-
        mation has been removed or altered from those copies,
        or

    (*c*)  (i)  sells, rents or lends, or offers or exposes for sale, rental
           or loan,

[*No.* **28**.]    *Copyright and Related Rights Act,*    [2000.]
2000.

Pt.VII S.375

(ii) imports into the State, or

(iii) in the course of a business, trade or profession, has in his or her possession, custody or control,

copies of copyright works, copies of recordings of performances or copies of databases referred to in *paragraph (a)*, knowing or having reason to believe that rights management information has been removed or altered from those copies,

as a rightsowner has in respect of an infringement of any of his or her rights under this Act.

(2) References in this section to rights management information include information, or any representation thereof—

(*a*) which identifies a copyright work, recording of a performance or database,

(*b*) which identifies the author in relation to a copyright work, the performer in relation to a recording of a performance or the maker in respect of a database,

(*c*) which identifies the owner of any right in a copyright work, recording of a performance or database, or

(*d*) about the terms and conditions of use of a copyright work, recording of a performance or database,

where any of these items of information, or any representations thereof, are attached to or appear in connection with a copy of a copyright work or a copy of a recording of a performance, which is lawfully made available to the public, or a copy of a database which is lawfully re-utilised.

(3) *Sections 145* and *264* shall apply with any necessary modifications in relation to the disposal of anything delivered up or seized by virtue of *subsection (1)*.

Removal or interference with rights management information.

**376**.—(1) A person who—

(*a*) removes or alters rights management information from copies of copyright works, copies of recordings of performances or copies of databases knowing or having reason to believe that the primary purpose or effect of such removal or alteration is to induce, enable, facilitate or conceal an infringement of any right conferred by this Act,

(*b*) makes available to the public copies of copyright works or copies of recordings of performances or re-utilises copies of databases, referred to in *paragraph (a)*, knowing or having reason to believe that rights management information has been removed or altered from those copies, or

(*c*) (i) sells, rents or lends, or offers or exposes for sale, rental or loan,

(ii) imports into the State, or

[2000.]    *Copyright and Related Rights Act,*    [*No.* **28.**]
2000.

    (iii) in the course of a business, trade or profession, has in   Pt.VII S.376
         his or her possession, custody or control,

    copies of copyright works, copies of recordings of performances or copies of databases, referred to in *paragraph (a)*, knowing or having reason to believe that rights management information has been removed or altered from those copies,

shall be guilty of an offence.

    (2) A person guilty of an offence under *subsection (1)* shall be liable—

    (*a*) on summary conviction to a fine not exceeding £1,500 in respect of each copy, or to imprisonment for a term not exceeding 12 months, or both, or

    (*b*) on conviction on indictment to a fine not exceeding £100,000, or imprisonment for a term not exceeding 5 years, or both.

[*No.* **28.**]    *Copyright and Related Rights Act,*    [2000.]
2000.

SCHEDULES TO THE *COPYRIGHT AND RELATED RIGHTS
ACT, 2000*


FIRST SCHEDULE

PART I

Transitional Provisions and Savings: Copyright

PART II

Works made before the first day of July, 1912

PART III

Secondary Infringements

PART IV

Performers' Rights

PART V

Copyright and Performers' Rights

PART VI

Transitional Provisions and Savings: Databases


SECOND SCHEDULE

PART I


PART II

THIRD SCHEDULE

FIRST SCHEDULE                        *Section 10.*

PART I

Transitional Provisions and Savings: Copyright

1. (1) In this Schedule—

''Act of 1911'' means the Copyright Act, 1911;

''Act of 1927'' means the Industrial and Commercial Property (Protection) Act, 1927;

''Act of 1963'' means the Copyright Act, 1963;

''new copyright provisions'' means the provisions of this Act relating to copyright;

''new right'' means a right arising by virtue of this Act other than—

    (*a*) a right corresponding to a right which existed immediately before the commencement of *Part III* of this Act, or

    (*b*) a right to remuneration arising under this Act.

(2) References in this Schedule to ''commencement'' shall be construed as references to the date on which the provision concerned came into operation.

(3) References in this Schedule to ''existing work'' shall be construed as references to a work made before the commencement of *Part II* of this Act and for this purpose a work the making of which extends over a period of time shall be deemed to have been made when the work is completed.

(4) In relation to the Act of 1963, references in this Schedule to a work include any work within the meaning of that Act.

(5) In relation to the Act of 1927—

    (*a*) a reference in *Part I* of this Schedule to copyright includes the right conferred by that Act in substitution for a right subsisting immediately before the commencement of that Act;

    (*b*) a reference in *Part I* of this Schedule to copyright in a sound recording is a reference to the copyright under that Act in a record embodying the recording; and

    (*c*) a reference in *Part I* of this Schedule to copyright in a film is a reference to any copyright under that Act in the film (in so far as the film constituted a dramatic work for the purposes of that Act) or in photographs forming part of that film.

2. Subject to any express provisions to the contrary, the new copyright provisions shall apply in relation to works existing on the commencement of *Part II* of this Act as they apply in relation to works coming into existence after such commencement.

3. (1) A reference in an enactment or other document to copyright, or to a work in which copyright subsists, which apart from this Act would be construed as referring to copyright under the Act of

Sch.1    1963 shall be construed, in so far as may be required for continuing its effect, as being, or as the case may require, including, a reference to copyright under this Act or to works in which copyright subsists under this Act.

(2) Subject to any express provisions to the contrary, anything done, or having effect as being done, under or for the purposes of a provision repealed by this Act has effect as if done under or for the purposes of the corresponding provision of the new copyright provisions.

(3) References (expressed or implied) in this Act or any other enactment or other document to any of the new copyright provisions shall, in so far as the context permits, be construed as including, in relation to times, circumstances and purposes before commencement of *Part I* or *II* of this Act, a reference to corresponding provisions in operation at the time of the commencement of *Part I* or *II* of this Act.

(4) Subject to any express provision to the contrary, a reference (express or implied) in an enactment or other document to a provision repealed by this Act shall be construed, in so far as may be required for continuing its effect, as a reference to the corresponding provision of this Act in so far as there are corresponding provisions.

(5) Notwithstanding the repeal of the Act of 1963, any regulation, rule or order made under the Act of 1963 and which is in force immediately before the commencement of *Part II* of this Act shall continue in force and be deemed after the commencement of the said *Part II* to be made under the corresponding provisions of this Act.

(6) Notwithstanding the repeal of the Act of 1963, any proceedings initiated or criminal prosecutions instituted under that Act may continue and shall be determined as if the Act of 1963 had not been repealed and any order made or fine or penalty imposed shall have effect accordingly.

(7) Except as otherwise expressly provided, any agreement made prior to the coming into operation of that Part of this Act which relates to the subject matter of the agreement shall be construed by reference to the law existing at the time the agreement was made and it shall not be construed as conferring any rights on any party which were not then in existence except in cases where the parties had expressly agreed that its terms would apply to new rights arising from future legislation.

4. Copyright subsists in an existing work after the commencement of *Part II* of this Act where copyright subsisted in the work concerned immediately before such commencement.

5. (1) Copyright shall not subsist in a film, as such, made before the first day of October, 1964.

(2) Where a film made before the date referred to in *subparagraph (1)* was an original dramatic work for the purposes of the Act of 1927, the new copyright provisions shall have effect in relation to the film as if it was an original dramatic work within the meaning of *Part II* of this Act.

(3) The new copyright provisions apply in relation to photographs forming part of a film made before the first day of October, 1964, as they apply in relation to photographs not forming part of a film.

6. (1) A film sound-track to which section 18(8) of the Act of   Sch.1
1963 applied before the commencement of *Part II* of this Act shall
be deemed for the purposes of the new copyright provisions to be a
sound recording.

(2) Copyright subsists in a sound recording where copyright sub-
sisted in the film immediately before the commencement of *Part II*
of this Act and it continues to subsist until copyright in the film
expires.

(3) The author and first owner of copyright in the film shall be
deemed to be the author and first owner of the copyright in the
sound recording.

(4) Anything done before the commencement of *Part II* of this
Act under or in relation to the copyright in the film continues to
apply in relation to the sound recording as in relation to the film.

7. The question as to who was the author of an existing work shall
be determined in accordance with the new copyright provisions for
the purposes of the rights conferred by *Chapter 7* of *Part II* of this
Act, and for all other purposes shall be determined in accordance
with the law applicable at the time the work was made.

8. (1) The question as to who is or was the first owner of copy-
right in an existing work shall be determined in accordance with the
law applicable to copyright at the time the work was made.

(2) Where, before the commencement of *Part II* of this Act, a
person commissioned the making of a work in circumstances
within—

  (*a*) section 10(3) of the Act of 1963 or paragraph (*a*) of the
        proviso to section 158(1) of the Act of 1927, or

  (*b*) the proviso to section 17(3) of the Act of 1963,

those provisions shall apply in order to determine first ownership of
copyright in any work made pursuant to the commission after the
commencement of the said *Part II.*

9. (1) Nothing in this Act shall affect the duration of copyright in
works in which copyright subsists on or before the commencement
of *Part II* of this Act, and the duration of copyright in those works
shall be determined, where applicable, in accordance with the Euro-
pean Communities (Term of Protection of Copyright) Regulations,
1995 (S.I. No. 158 of 1995), notwithstanding the revocation of those
Regulations.

(2) This Act shall apply to computer programs whether created
before or after the first day of January, 1993.

10. Section 13 of the Act of 1963 continues to apply where notice
under that section was given before the repeal of that section by this
Act, but only in respect of the making of records—

  (*a*) within one year of the repeal of the Act of 1963 coming into
        operation, and

  (*b*) up to the number stated in the notice as intended to be sold.

Sch.1

11. (1)  Any act undertaken before the commencement of *Chapter 7* of *Part II* of this Act shall not be actionable under any provision of that Chapter.

(2)  Section 54 of the Act of 1963 continues to apply in relation to acts undertaken before the commencement of *Chapter 7* of *Part II* of this Act.

12. (1)  The rights conferred by *sections 107* and *109* shall not apply—

> (*a*)  in relation to a literary, dramatic, musical or artistic work the author of which died before the commencement of *Part II* of this Act, or

> (*b*)  in relation to a film, broadcast or typographical arrangement made before the commencement of *Part II* of this Act.

(2)  The rights conferred by *sections 107* and *109* in relation to an existing literary, dramatic, musical or artistic work shall not apply—

> (*a*)  where copyright first vested in the author, to anything which by virtue of an assignment of copyright made or licence granted before the commencement of *Part II* of this Act may be done without infringing copyright,

> (*b*)  where copyright first vested in a person other than the author, to anything done by or with the licence of the copyright owner.

(3)  *Chapter 7* of *Part II* of this Act shall not apply to anything done in relation to a record made pursuant to section 13 of the Act of 1963.

13.  The right conferred by *section 114* shall not apply to photographs taken or films made before the commencement of *Part II* of this Act.

14. (1)  Any document made or event occurring before the commencement of *Part II* of this Act which operated—

> (*a*)  to affect the ownership of the copyright in an existing work, or

> (*b*)  to create, transfer or terminate an interest, right or licence in respect of the copyright in an existing work,

has the corresponding operation in relation to copyright in the existing work under this Act.

(2)  A word or phrase in a document referred to in *subparagraph (1)* shall be construed in accordance with its effect immediately before the commencement of *Part II* of this Act.

15.  *Section 121* shall not apply in relation to an agreement made before the first day of October, 1964, in relation to copyright.

16. (1) Where the author of a literary, dramatic, musical or artistic work was the first owner of the copyright in the work, an assignment of the copyright and a grant of any interest in it, made by him or her (otherwise than by will) after the passing of the Act of 1927 and before the first day of October, 1964, shall not operate to vest in the

assignee or grantee any rights with respect to the copyright in the    Sch.1
work beyond the expiration of 25 years after the death of the author.

(2) The reversionary interest in the copyright expectant on the
expiration of the period referred to in *subparagraph (1)* may, after
the commencement of *Part II* of this Act, be assigned by the author
during his or her life but in the absence of any assignment shall, on
his or her death, devolve on his or her legal personal representatives
as part of his or her estate.

(3) Nothing in this paragraph affects—

    (*a*) an assignment of the reversionary interest by a person to
whom it has been assigned,

    (*b*) an assignment of the reversionary interest after the death of
the author by his or her personal representatives or any
person becoming entitled to it, or

    (*c*) any assignment of the copyright after the reversionary
interest has fallen in.

(4) This paragraph shall not apply to the assignment of the copy-
right in a collective work or a licence to publish a work or part of a
work as part of a collective work.

(5) In *subparagraph (4)* ''collective work'' means—

    (*a*) any encyclopaedia, dictionary, yearbook, or similar work,

    (*b*) a newspaper or periodical, or

    (*c*) any work written in distinct parts by different authors, or in
which works or parts of works of different authors are
incorporated.


PART II

Works made before the first day of July, 1912

17. (1) *Paragraphs 17* to *30* and *44* of this Schedule apply to works
made before the first day of July, 1912.

(2) In *paragraphs 17* to *30* and *44* of this Schedule a ''right con-
ferred by the Act of 1911'', in relation to a work, means such a substi-
tuted right as, by virtue of section 24 of the Act of 1911, was con-
ferred in place of a right subsisting immediately before the
commencement of that Act.

18. Notwithstanding anything in *paragraphs 17* to *30* and *44* of this
Schedule, neither subsection (1) or (2) of section 8 of the Act of
1963, nor subsection (2) or (3) of section 9 of that Act, shall apply
to a work to which this Part of the Schedule applies, unless a right
conferred by the Act of 1911 subsisted in the work immediately
before the commencement of the said section 8 or 9, as the case may
be.

19. (1) Where, in the case of a dramatic or musical work made
before the first day of July, 1912, the right conferred by the Act of
1911 did not include the sole right to perform the work in public,
then, in so far as copyright subsists in the work by virtue of this Act,

Sch.1

the acts restricted by the copyright shall be treated as not including those specified in *subparagraph (3)*.

(2) Where, in the case of a dramatic or musical work to which *paragraphs 17* to *30* and *44* of this Schedule apply, the right conferred by the Act of 1911 consisted only of the sole right to perform the work in public, then, in so far as copyright subsists in the work by virtue of this Act, the acts restricted by the copyright shall be treated as consisting only of those specified in *subparagraph (3)*.

(3) The acts referred to in *subparagraphs (1)* and *(2)* are—

(*a*) performing the work or an adaptation thereof in public,

(*b*) broadcasting the work or an adaptation thereof, or

(*c*) causing the work or an adaptation thereof to be transmitted to subscribers to a diffusion service.

20. Where a work to which *paragraphs 17 to 30* and *44* apply consists of an essay, article or extract forming part of a work and first published in a review, or other periodical or similar work, and immediately before the commencement of section 8 of the Act of 1963, a right of publishing the work in a separate form subsisted by virtue of the note appended to the First Schedule to the Act of 1911, that note shall have effect, in relation to that work, as if it had been re-enacted in this Act with the substitution, where it first occurs for ''right'' of ''copyright''.

21. (1) This paragraph shall apply where—

(*a*) the author of a work to which *paragraphs 17* to *30* and *44* of this Schedule apply had, before the commencement of the Act of 1911, made such an assignment or grant as is mentioned in paragraph (*a*) of the proviso to subsection (1) of section 24 of that Act, and

(*b*) copyright subsists in the work by virtue of any provision of this Act.

(2) Where, before the commencement of section 24 of the Act of 1911, an event occurred, or notice was given, which in accordance with paragraph (*a*) of the proviso referred to in *subparagraph (1)(a)* operated so as to affect the ownership of the right conferred by the Act of 1911 in relation to the work, or creating, transferring or terminating an interest, right or licence in respect of that right, that event or notice shall have the corresponding operation in relation to the copyright in the work under this Act.

(3) Any right which, at a time after the commencement of a provision of this Act by virtue of which copyright subsists in a work, which would, but for the passing of this Act, by virtue of paragraph (*a*) of the proviso referred to in *subparagraph (1)(a)*, have been exercisable in relation to the work, or to the right conferred by the Act of 1911, shall be exercisable in relation to the work or to the copyright in that work under this Act, as the case may be.

(4) If, in accordance with paragraph (*a*) of the proviso referred to in *subparagraph (1)(a)*, the right conferred by the Act of 1911 would have reverted to the author or his or her personal representatives on the date referred to in that paragraph, and the said date is after the commencement of *section 17*—

(*a*) the copyright in the work under this Act shall revert to the
author or his or her personal representatives, as the case
may be, and

Sch.1

(*b*) any interest of any other person in that copyright which sub-
sists on that date by virtue of any document made before
the commencement of the Act of 1911 shall thereupon
determine.

22. (1) *Section 123*—

(*a*) shall not apply where the testator died before the first day
of October, 1964, and

(*b*) applies only in relation to an original document embodying
a work, where the testator died on or after that date and
before the commencement of *Part II* of this Act.

(2) In the case of an author who died before the first day of
October, 1964, the ownership after his or her death of his or her
manuscript, where such ownership has been acquired under a testa-
mentary disposition made by him or her and the manuscript is of a
work which has not been published or performed in public, is *prima
facie* proof of the copyright being with the owner of the manuscript.

23. (1) *Sections 127* and *128* shall apply only in relation to an
infringement of copyright committed after the commencement of
*Part II* of this Act; section 22 of the Act of 1963 shall continue to
apply in relation to infringements committed before such com-
mencement.

(2) *Sections 131* to *133* shall apply to infringing copies, articles and
devices made before or after the commencement of *Part II* of this
Act; section 24 of the Act of 1963 shall not apply after such com-
mencement except for the purposes of proceedings initiated before
such commencement.

(3) *Sections 135* and *136* shall apply only in relation to an infringe-
ment of copyright committed after the commencement of *Part II* of
this Act; section 25 of the Act of 1963 shall continue to apply in
relation to infringements committed before such commencement.

(4) *Section 139* shall apply only in proceedings brought by virtue
of this Act; section 26 of the Act of 1963 shall continue to apply in
proceedings brought by virtue of that Act.

24. *Sections 135* and *136* shall not apply to a licence granted before
the first day of October, 1964.

25. (1) *Section 140* shall apply only in relation to acts undertaken
after the commencement of *Part II* of this Act; section 27 of the Act
of 1963 shall continue to apply in relation to acts undertaken before
such commencement.

(2) *Section 143* shall apply in relation to offences committed
before the commencement of *Part II* of this Act in relation to which
the Act of 1963 applied; section 27(5) of the Act of 1963 shall con-
tinue to apply in relation to warrants issued before such com-
mencement.

26. A dispute referred to the Controller under Part V of the Act
of 1963 and pending at the time of the commencement of *Part II* of

[*No.* **28**.]     *Copyright and Related Rights Act,*     [2000.]
2000.

Sch.1

this Act shall be disposed of under the said Part V of the Act of 1963 as if that Part had not been repealed.

27. Every work in which copyright subsisted under the Act of 1963 immediately before the commencement of *Part II* of this Act shall be deemed to satisfy the requirements of this Act as to qualification for copyright protection.

28. (1) *Section 191* shall apply to an existing work where—

    (*a*) section 51 of the Act of 1963 applied to the work immediately before commencement, and

    (*b*) the work is not one to which *section 193, 194* or *195* applies.

(2) *Section 191(2)* shall have effect subject to any agreement entered into under section 51(6) of the Act of 1963 where that agreement is entered into before the commencement of *Part II* of this Act.

29. (1) *Section 193* of this Act shall apply to existing unpublished literary, dramatic, musical or artistic works, but shall not otherwise apply to existing works.

(2) *Section 194* shall not apply to any Bill introduced into either House of the Oireachtas before the commencement of *Part II* of this Act.

30. (1) Any work in which, immediately before the commencement of *Part II* of this Act, copyright subsisted by virtue of section 44 of the Act of 1963 shall be deemed to satisfy the requirements of *section 196(1)*; but otherwise *section 196(1)* shall not apply to works made or, as the case may be, published before such commencement.

(2) Copyright in a work referred to in *subparagraph (1)* which is unpublished continues to subsist until the date on which it would have expired in accordance with the Act of 1963, or the expiration of the period of 50 years from the end of the calendar year in which the new copyright provisions are commenced, whichever is the earlier.

PART III

Secondary Infringements

31. (1) *Sections 44* to *48* shall apply to secondary infringements occurring on or after the commencement of those sections.

(2) Notwithstanding the repeal of section 11 of the Act of 1963, that section shall continue to apply in respect of infringements occurring before the commencement of *sections 44* to *48*.

PART IV

Performers' Rights

32. In this Part—

''existing'' in relation to a performance, means a performance given before the commencement of this Part of the Schedule.

33. Notwithstanding the repeal of the Performers' Protection Act,    Sch.1
1968, any proceedings initiated or criminal prosecutions instituted
under that Act may continue and shall be determined as if that Act
had not been repealed and any order made or fine or penalty
imposed shall have effect accordingly.

34. For the purposes of this Part of this Schedule a performance,
the making of which extended over a period of time, shall be taken
to have been made when the performance was completed.

35. An act undertaken before the commencement of *Part III* or
*Part IV* of this Act shall not be regarded as an infringement of any
new right, or as giving rise to any right to remuneration arising by
virtue of *Part III* or *Part IV* of this Act.

36. (1) Any new right conferred by *Part III* or *Part IV* of this
Act in relation to a qualifying performance is exercisable after the
commencement of the said *Part III* and *Part IV* by the performer or,
where he or she has died, by the person who under *section 300* would
be entitled to exercise the rights conferred on the performer by the
said *Part III* or *Part IV* in relation to that performance.

(2) Any remuneration or damages received by a person's personal
representatives under a right conferred on them by *subparagraph (1)*
shall devolve as part of that person's estate as if the right had sub-
sisted and been vested in him or her immediately before his or her
death.

PART V

Copyright and Performers' Rights

37. (1) Except as otherwise expressly provided, nothing in this
Act affects an agreement in relation to rental and lending rights
established by virtue of the Council Directive No. 92/100/EEC of 19
November, 1992, on rental right and lending right and certain rights
relating to copyright in the field of intellectual property made before
the 19th day of November, 1992.

(2) An act undertaken pursuant to an agreement referred to in
*subparagraph (1)* after the commencement of *Part III* or *Part IV* of
this Act shall not be regarded as an infringement of any new right.

38. (1) This Act applies to an agreement concluded before the
first day of January, 1995—

    (*a*) between two or more co-producers of a film, one of whom
        is a national of a Member State of the EEA, and

    (*b*) the provisions of the agreement grant to the parties exclus-
        ive rights to exploit all communication to the public of
        the film in separate geographical areas.

(2) When an international co-production agreement concluded
before the first day of January, 1995, between a co-producer from a
Member State of the EEA and one or more co-producers from other
Member States of the EEA or third countries expressly provides for
a system of division of exploitation rights between the co-producers
by geographical areas for all means of communication to the public,
without distinguishing the arrangement applicable to communication
to the public by satellite from the provisions applicable to the other
means of communication, and where communication to the public

Sch.1

by satellite of the co-production would prejudice the exclusivity, in particular the language exclusivity, of one of the co-producers or his or her assignees in a given territory, the authorisation by one of the co-producers or his or her assignees for a communication to the public by satellite shall require the prior consent of the holder of that exclusivity, whether co-producer or assignee.

39. Where before the commencement of *Part II*, *Part III* or *Part IV* of this Act—

    (*a*) the owner or prospective owner of copyright in a literary, dramatic, musical or artistic work has authorised a person to make a copy of the work, or

    (*b*) the owner or prospective owner of performers' rights in a performance has authorised a person to make a copy of a recording of the performance,

any new right in relation to that copy shall vest on such commencement in the person so authorised, subject to any agreement to the contrary.

40. (1) Subject to *paragraph 41*, *sections 124* and *297* shall apply and have effect in relation to an agreement concluded before or after the commencement of *Part II* and *Part III* of this Act.

(2) Subject to *paragraph 41*, *sections 125* and *298* shall apply and have effect accordingly.

41. No right to equitable remuneration under *sections 125* and *298* arises—

    (*a*) in respect of any rental of a sound recording or film before the first day of July, 1997, or

    (*b*) in respect of any rental after that date of a sound recording or film made in pursuance of an agreement entered into before the first day of July, 1994, unless the author or performer (or his or her successor in title) has, before the first day of January, 1997, notified the person by whom the remuneration would be payable that he or she intends to exercise that right.

42. (1) Any new right in relation to a copyright work shall not apply to a copy of the work acquired by a person before the commencement of *Part II* of this Act for the purpose of renting or lending it to the public.

(2) Any new right in relation to a qualifying performance shall not apply to a copy of a recording of the performance acquired by a person before the commencement of *Part III* and *Part IV* of this Act for the purpose of renting or lending it to the public.

43. (1) *Section 2(7)* and *(8)* shall apply from the commencement of *Parts II*, *III* and *IV* of this Act in relation to films made on or after the first day of July, 1994.

(2) It is not an infringement of any right which the principal director has under this Act to do anything after the commencement of *Part II* of this Act pursuant to arrangements for the exploitation of a film made before the 19th day of November, 1992.

(3) Nothing in *subparagraph (2)* shall affect any right of a person Sch.1 to equitable remuneration under *section 125*.

(4) Subject to *paragraph 36* and *subparagraphs (1)* to *(3)* of this paragraph, this Act shall apply to works made and to performances given before or after the commencement of *Part II* or *III* of this Act.

44. (1) This paragraph shall apply to the construction of any reference in this Act to qualified persons.

(2) Where, at any time after the commencement of any provisions of this Act, the Government makes an order declaring that certain countries are excluded from the application of this Act the order shall not affect any rights existing before the making of that order.

PART VI

Transitional Provisions and Savings: Databases

45. (1) Where a database—

(*a*) was created on or before the 27th day of March, 1996, and

(*b*) is a copyright work immediately before the commencement of *Part V* of this Act,

copyright shall continue to subsist in the database for the remainder of its copyright term.

(2) In this paragraph ''copyright term'' means the period of the duration of copyright under *section 24*.

46. Where—

(*a*) the making of a database was completed on or after the first day of January, 1983, and

(*b*) on the commencement of *Part V* of this Act the database right begins to subsist in the database,

the database right shall subsist in the database for the period of 15 years commencing on the first day of January, 1999.

[*No.* **28.**]    *Copyright and Related Rights Act,*    [2000.]
2000.

*Section 10.*                    SECOND SCHEDULE

### PART I

| Number and Year | Short Title of Act | Extent of Repeal |
|---|---|---|
| No. 10 of 1963 | Copyright Act, 1963 | Entire Act other than section 59. |
| No. 19 of 1968 | Performers' Protection Act, 1968 | Entire Act. |
| No. 24 of 1987 | Copyright (Amendment) Act, 1987 | Entire Act. |
| No. 28 of 1998 | Intellectual Property (Miscellaneous Provisions) Act, 1998 | Sections 2 and 3. |
| No. 15 of 1989 | Dublin City University Act, 1989 | Section 6. |
| No. 14 of 1989 | University of Limerick Act, 1989 | Section 7. |
| No. 11 of 1997 | National Cultural Institutions Act, 1997 | Section 66. |

### PART II

| Number and Year | Title of Enactment | Extent of Revocation |
|---|---|---|
| S.I. No. 26 of 1993 | European Communities (Legal Protection of Computer Programs) Regulations, 1993 | Entire Regulations. |
| S.I. No. 158 of 1995 | European Communities (Term of Protection of Copyright) Regulations, 1995 | Entire Regulations. |

[2000.]    *Copyright and Related Rights Act,*    [*No.* **28.**]
2000.

THIRD SCHEDULE                                    *Section 188.*

1. The agreements, treaties and conventions which shall be reckon-able for the purposes of extension of qualification of copyright pro-tection to works under the provisions of *section 188* of this Act shall be:

(1) Berne Convention for the Protection of Literary and Artis-tic Works, as revised at Paris on July 24, 1971 and amended on October 2, 1979.

(2) Universal Copyright Convention, as revised at Paris on July 24, 1971.

(3) EEA Agreement.

(4) Agreement on Trade-Related Aspects of Intellectual Prop-erty Rights, including Trade in Counterfeit Goods.

(5) International Convention for the Protection of Performers, Producers of Phonograms and Broadcasting Organis-ations, done at Rome on October 26, 1961 — in respect, only, of matters addressed by Article 5 and Article 6 of that Convention (see *paragraph 2*, below).

(6) World Intellectual Property Organisation (WIPO) Copy-right Treaty, adopted by the Diplomatic Conference at Geneva on December 20, 1996.

(7) World Intellectual Property Organisation (WIPO) Perform-ances and Phonograms Treaty, adopted by the Diplo-matic Conference at Geneva on December 20, 1996.

*Qualifications on application*

2. In respect of the Convention specified in *paragraph 1(5)* of this Schedule, *section 188* and this Schedule shall have effect in respect of matters addressed by Article 5 and Article 6 of that Convention, only.