# EXHIBIT 27

# Revenue Legislative Services'
# Guide to interpreting legislation

## Part 01-00-06

Document updated last October 2024



The information in this document is provided as a guide only and is not professional advice, including legal advice. It should not be assumed that the guidance is comprehensive or that it provides a definitive answer in every case.

## Table of Contents

1.      Legislative interpretation .................................................................................4

2.      Purpose of this guide .......................................................................................4

3.      Suggested practical approach to interpreting legislation in general .............4

4.      Suggested practical approach to interpreting legislation at the case level .........5

Part 1 – Interpreting legislation ................................................................................6

5.      Sources of guidance on legislative interpretation...........................................7

  5.1     Revenue interpretations ...............................................................................7

6.      The rules and guides to legislative interpretation ..........................................7

  6.1     Words defined in statute ..............................................................................8

  6.2     Literal rule ....................................................................................................8

  6.3     Purposive rule ...............................................................................................9

  6.4     Changes since enactment .............................................................................9

  6.5     References to enactments, or part thereof ..................................................9

  6.6     Presumptions and maxims ..........................................................................10

    6.6.1 Maxim of *noscitur a sociis*..........................................................................10

    6.6.2 Maxim of *ejusdem generis* ........................................................................10

    6.6.3 Maxim of *generalia specialibus non derogant*..........................................10

    6.6.4 Maxim of *expression unis est exclusion alterius* ......................................10

    6.6.5 Presumption of constitutionality ..............................................................10

    6.6.6 Presumption of compatibility with EU law and International Obligations ...........11

    6.6.7 Presumption that all law bears a meaning ................................................11

    6.6.8 Presumption against retrospective effect .................................................11

    6.6.9 Presumption against extra-territorial effect..............................................11

    6.6.10  Presumption against unclear changes in law .........................................11

    6.6.11  Presumption that penal and taxation statues be construed strictly ..........11

    6.6.12  Presumption re reliefs and allowances ..................................................12

7.      Practical issues to take note of when interpreting legislation .....................12

Part 2 – Interpreting case law .................................................................................14

8.      Precedent........................................................................................................15

9.      The Courts.......................................................................................................15

10.     Foreign Decisions ...........................................................................................15

11.     Overruling a precedent ..................................................................................16

12.    Distinguishing a precedent ........................................................................16

13.    Elements of a judgement ..........................................................................16

13.1    Deciding the facts................................................................................16

13.2    Applying relevant legal principles ......................................................17

13.3    Decision ...............................................................................................17

14.    Interpreting a decision .............................................................................17

Part 3 – Other considerations for VAT legislation ...............................................18

15.    Introduction .............................................................................................19

16.    The VAT Directive .....................................................................................19

17.    The Interaction between European VAT law and national VAT legislation.................20

17.1    The VAT Directive and national VAT legislation .................................20

17.1.1 Optional provisions ............................................................................20

17.1.2 Mandatory provisions ........................................................................21

17.1.3 Derogations ........................................................................................21

17.1.4 Interpreting VAT law in an EU context ...............................................21

18.    EU Regulations and national VAT legislation ...........................................21

19.    The role of the Court of Justice of the European Union (CJEU) ....................22

19.1    Preliminary references to the CJEU ...................................................22

20.    The implications of a CJEU ruling from a VAT perspective.........................22

20.1    The Advocate General..........................................................................23

20.2    EU Commission infraction proceedings ..............................................23

21.    The Charter of Fundamental Rights of the EU ('the Charter')....................23

22.    European principles of VAT law ...............................................................23

22.1    The principle of fiscal neutrality...........................................................24

22.2    The principle of proportionality ..........................................................24

22.3    The principle of effectiveness ..............................................................24

22.4    The principle of prohibition of abuse of law ........................................24

Part 6 – EU law claims ........................................................................................26

Part 7 – Double tax agreements .........................................................................27

Appendix 1 – evolution of case law on interpreting taxing statutes .......................28

Appendix 2 – schedule of material updates.........................................................39

# 1. Legislative interpretation

The purpose of interpreting legislation is to determine the intention of the legislature. It is the constitutional prerogative of the Courts to interpret legislation. The more senior the court that makes the interpretation the more authoritative that interpretation will be[1].

However, Revenue officers in the course of their duties are often expected to form views as to what interpretation will or should be given to a particular piece of legislation. In particular, Revenue officials are or will be expected to offer a view as to what their opinion is in regard to interpreting a specific piece of legislation. In many instances, the word or phrase which requires interpreting may already have been considered by the Courts, or the Courts may have examined similar facts and determined whether or not they fit within a provision, or a similar provision. In those cases, regard should be had to cases which have either persuasive or precedential value.

Alternatively, Revenue officials in the course of their duties, either in a customer service role or in a compliance role, will be expected to form a view as to what a particular piece of legislation means and how it applies to a particular taxpayer. Since such activities are case specific the actual proven facts are key in all such instances: legislation cannot and should not be interpreted and applied to unknown or uncertain facts.

# 2. Purpose of this guide

The purpose of this guide is to set out a consistent organisational wide approach to interpreting legislation for direct taxes, capital taxes and VAT.

While this guidance may assist RLS officers in drafting legislation, it is primarily intended for officers, including those in the Revenue Technical Service (RTS)[2], dealing with an interpretation issue in relation to a taxpayer (e.g. a compliance issue).

# 3. Suggested practical approach to interpreting legislation in general

1.  Identify the words / phrases that need clarification.

2.  Start with the definitions section of the provision, then that of the Chapter, that of the Part, that of the relevant tax (e.g. section 3 TCA 1997 for the Income Tax Acts), then that of the Tax Acts (e.g. section 2 TCA 1997), then that of the Act (e.g. section 1 TCA 1997), then that of the Schedule to the Interpretation Act 2005 (as applied by section 21 of that Act).

3.  Read the section completely and see if it refers to other sections[3].

---

[1] Refer to Part 2 below for details on the doctrine of legal precedent.
[2] Refer to Tax and Duty Manual (TDM) Part 37-00-00a for more details on Revenue's Technical Service
[3] Notes to the section in the non-statutory consolidations may be helpful in this regard. Related sections, which may be relevant to the section being interpreted, may also be listed as "cross-references" in the notes to the section in the non-statutory consolidations.

4.    Read those sections.

5.    Read case law on this and similar provisions to see if the Courts have addressed this issue.

6.    Apply the rules, maxims and presumptions outlined below.

7.    Check your interpretation against the Notes for Guidance[4], and any other published Revenue guidance.

## 4.  Suggested practical approach to interpreting legislation at the case level

1.    What are the facts and what is the available evidence that supports those facts? It is important to look beyond the label put on a transaction to determine the true legal form of the transaction.[5]

2.    Have the facts been agreed with the taxpayer or are the actual facts in dispute?

3.    If the facts are in dispute, has the Revenue position been put to the taxpayer and if it has, what is the taxpayer's response? Does the matter need to be further investigated before it becomes an interpretation issue?

4.    Care should be given to ensuring that the approach that Revenue is adopting is reasonable and consistent with the proven facts and – unless there is a carefully-considered reason to amend that approach – with the normal approach that Revenue officials take in such matters.

5.    What is the relevant legislation that applies to the particular facts in question?

6.    Follow the guidance set out in Section 3 above.

7.    Remember:

- In order to make an assessment the Officer must have met the relevant State of mind test[6].

- Revenue officers are obliged to explain the reasons for their decisions.  While decision letters should refer to the relevant sections of legislation or a case upon which a decision turned, they should be in plain English and include explanations of what the sections do or what the case law means[7]. Letters should provide the taxpayer with enough information to understand why the decision was made and whether or not they should appeal against the decision.

---

[4] Notes for Guidance are available here.
[5] McCabe v South City and County Investments Co. Ltd [1997] 3 IR 300. The principle of looking beyond the label is very different to the use of substance over form in section 811/ 811C challenges. Cases involving deciding whether there is a contract of / for services involve looking beyond the label.
[6] Refer to TDM Part 41A-05-01 for details on this.
[7] Where the letter is to a  tax practitioner with tax technical knowledge, for example, it would be appropriate to tailor your language appropriately.

# Part 1 – Interpreting legislation

# 5.  Sources of guidance on legislative interpretation

Guidance on legislative interpretation comes from a number of sources. The first source is the legislation itself, followed closely by the Interpretation Act 2005 and any court cases on similar legislation. There are a number of rules of interpretation that always apply, as well as maxims and presumptions that may apply[8], when interpreting legislation.

While sources external to the legislation, such as published material from when the legislation was passing through the Oireachtas, can be useful in explaining what was intended, it is not binding on whether the words used actually achieved that objective.

## 5.1   Revenue interpretations

Where Revenue has previously given an opinion[9] to a taxpayer[10] based on a full disclosure of all relevant facts, then Revenue will generally follow that opinion. However, if on reviewing the opinion Revenue believes that it is incorrect, it may be withdrawn prospectively.

Where Revenue has issued guidance on an issue, and a taxpayer has relied on that guidance in good faith[11], then Revenue will follow that guidance (unless it has been superseded by changes in legislation or case law). If on reviewing the guidance Revenue believes it is incorrect, that guidance will be withdrawn and amended.

Note that taxpayers are not bound by an opinion given by Revenue or by Revenue guidance if they can show that the approach that they adopt is in line with the legislation.

# 6.  The rules and guides to legislative interpretation

It is also useful to understand the reasoning behind the introduction of a provision in order to understand the issue the provision was seeking to address.

For example, if a particular word or phrase was included in a section to address a tax avoidance transaction, it can be useful to understand:

- the general meaning of the section,
- the type of transaction that was intended to be caught by the word or phrase,
- the reason why the transaction was avoidant in nature, and
- the intended effect of the word or phrase,

when attempting to interpret the section.

---

[8] "Consultation Paper on Statutory Drafting and Interpretation: Plain Language and the Law" (1999), Law Reform Commission, provides a detailed analysis of these, as they stood prior to the Interpretation Act 2005.
[9] References to "opinions" include reference to confirmations.
[10] E.g. pursuant to TDM Part 37-00-40 (LCD) or TDM Part 37-00-00a (Revenue's Technical Services)
[11] Revenue guidance may not be relied upon where there is a tax avoidance purpose or to otherwise gain a tax advantage.

Although the legislative language should be given a literal interpretation if possible - legislation should be read in context and in accordance with the canons and principles of interpretation set out in this manual to properly determine what is meant by the words.

There are a number of sources and rules that will be of use when interpreting legislation. They are outlined below.

## 6.1   Words defined in statute

Look at the beginning of the:

- Section,

- Chapter,

- Part, and then

- Act

to see if the word is defined there. If it is not, refer to **Section 21** of, and the **Schedules** to, the **Interpretation Act 2005** to see if it is defined there.

If an Act contains a definition, the definition should be used unless a contrary intention appears elsewhere in the Act itself [**section 20(1) Interpretation Act 2005**].

Where an enactment defines or interprets a word or expression, other parts of speech or grammatical forms of the word or expression have a corresponding meaning [**section 20(2) Interpretation Act 2005**].

A word that imports the singular shall be read as importing the plural, and vice versa [**section 18(a) Interpretation Act 2005**]. Equally, a word that imports the masculine gender shall be read as importing the feminine gender, and vice versa [**section 18(b) Interpretation Act 2005**].

Where a section is importing a definition from another section, Chapter, Part or enactment then it is important to understand that definition in its original context. In its original context, that definition may be based upon, or rely upon, another definition and both definitions may then need to be considered when importing the main definition.

When interpreting a  statutory instrument (SI), a word or expression used in the SI has the same meaning as it has in the enactment under which the SI is made [**section 19 Interpretation Act 2005**].

Examples of the operation of a provision, clearly identified as such by the heading "Example", should not be read as exhaustive and may extend, but not limit, the meaning of the provision [**section 11 Interpretation Act 2005**].

## 6.2   Literal rule

If the word is not defined in the Act, and where the provision is directed to the public at large, apply the ordinary and natural meaning of the words used. This is the primary rule of interpretation and it is legitimate to consult a dictionary to determine the meaning of words

which have no particular legal meaning. If a provision is aimed at a particular trade, business or transaction, then the words should be construed as having the meaning that they have in the context of that trade, business or transaction, even if that may differ from its ordinary meaning [**Henchy J, De Brun (Inspector of Taxes) v Kiernan** [1981] **and McCarthy J, McCann Ltd v Ó'Culacháin** [1986]] [12].

## 6.3   Purposive rule

If such an interpretation is absurd or ambiguous, read the piece of legislation as a whole (including the long and short titles, preamble, schedules, definition and interpretation sections, and marginal notes) and apply the plain intention of the Oireachtas or maker of the legislation where it is clear based on the context of the provision within the act as a whole, but potentially more broadly than that [13] **[Kellystown Company v. H. Hogan, Inspector of Taxes** [1985] I.L.R.M. 200, McKechnie  J., **Dunnes Stores v. Revenue Commissioners** [2019] IESC 50, O'Donnell J**, Bookfinders v Revenue Commissioners** [2020] IESC 60].

The legislative history of the section may also be considered in determining the intention of the Oireachtas. This includes items such as the advice of committees and commissions in advance of legislation, the history of a particular bill passing through parliament (in case significant amendments were made over the course of this process). Parliamentary debates should not be considered in this process [**People (DPP) v McDonagh** [1996] 1 I.R. 565, **Crilly v. T. & J. Farrington Ltd.** [2001] IESC 60; [2002] 1 ILRM 161].

Elements of this purposive rule were found in the "mischief rule", the "golden rule" (also referred to as the presumption against absurdity) and a teleological, or schematic, approach to interpretation (the approach taken to the interpretation of EU law).

## 6.4   Changes since enactment

Courts may make allowances for any changes in the law, social conditions, technology, the meaning of words used and other relevant matters which have occurred since the enactment of a piece of legislation, but only in so far as its text, purpose and context permit [**section 6 Interpretation Act 2005**].

Prior to the introduction of the **Interpretation Act 2005** this was referred to as the presumption that an updated construction should be applied.

## 6.5   References to enactments, or part thereof

A citation or reference to an enactment shall be read as a citation or reference to an enactment as amended, no matter when the citation or reference came into operation [**section 14 Interpretation Act 2005**].

References to a Part, Chapter, section, Schedule or other division should be read as a reference to the enactment in which the reference occurs [**section 9(1) Interpretation Act 2005, Bookfinders Ltd. v The Revenue Commissioners** [2019] IECA 100] while references to

---

[12] In addition to these cases, refer to Appendix 1 for details on the evolution of case law on the interpretation of taxing statutes, and refer to section 6.6.11.

[13] Consideration of a broader context is provided for in **Dunnes** and supported by O'Donnell J in **Bookfinders** which affirms the requirement for a contextual reading despite the dis-application of section 5 Interpretation Act 2005. How broad the context should be for taxing statutes has not yet been tested by the Courts.

subsections, paragraphs etc. should be read as references to the division of the provision in which the reference occurs [**section 9(2) Interpretation Act 2005**].

## 6.6  Presumptions and maxims
These are not binding legal rules, but they provide guidance on statutory interpretation.

### 6.6.1    Maxim of *noscitur a sociis*
Roughly translated, this means that 'a thing is known by its associates'. It provides that while the literal interpretation of one section may seem clear, when considered in light of the Act as a whole, or related Acts, the intended meaning may be revealed as different from the meaning indicated by that section when read in isolation. **"A small section of a picture, if looked at up-close, may indicate something quite clearly; but when one stands back and examines the whole canvas, the close-up view of the small section is often found to have given a wholly wrong view of what it really represented"**[14].

### 6.6.2    Maxim of *ejusdem generis*
This means 'of the same genus', and is similar to, but narrower than, the maxim of **noscitur a sociis** [**People (Attorney General) v Kennedy** [1946] IR 517]. It provides that if a provision includes a broad or open-ended term which follows examples or more restrictive terms, the broad term should be interpreted in terms of those examples. A common example is the expression 'dogs, cats and other animals'. Applying the maxim of **ejusdem generis** the general words (other animals) are to be interpreted in light of the more specific words (dogs and cats), such that it would be construed to mean domestic animals of some sort.

### 6.6.3    Maxim of *generalia specialibus non derogant*
The principle that a general statutory provision does not replace a specific one is a maxim with which care must be had in relation to tax. In **Revenue Commissioners v O'Flynn Construction** Ltd it was argued that the presence of specific anti-avoidance provisions within the relevant legislation, which did not prevent the scheme from working, precluded the application of the general anti-avoidance provision from having effect (**section 811 TCA 1997**). This was rejected by the majority of the Supreme Court based on the wording of **section 811**.

### 6.6.4    Maxim of *expression unis est exclusion alterius*
Translated as 'to express one thing is to exclude another', the principle is that where the Act applies a rule in particular circumstances then the courts can infer that it was not intended to apply to other circumstances.
It was found in **Kiely v Minister for Social Welfare** [1977] IR 267 that a piece of legislation which provided that a written statement could be received into evidence in certain specific circumstances implied it could not be received in other circumstances.

### 6.6.5    Presumption of constitutionality
Where the courts are faced with two interpretations, one of which would render the legislation unconstitutional and one of which would render it constitutional, the constitutional interpretation must be adopted [**Walsh J, East Donegal Co-op v Attorney General** [1970] IR 317].

---

[14] **People (Attorney General) v Kennedy** [1946] IR 517 at p.536

6.6.6      Presumption of compatibility with EU law and International Obligations

As with constitutionality, if two interpretations appear equally valid, and one is compatible with EU[15] / international obligations and the other is not, the compatible interpretation should be adopted [**Dowling v Ireland** [1991] 2 IR 279 re EU and **O'Domhnaill v Merrick** [1984] IR 151 re international obligations].

6.6.7      Presumption that all law bears a meaning

Also known as the presumption against redundancy, this presumption provides that an interpretation which involves certain words or phrases used in the legislation becoming meaningless, superfluous or serving no purpose should not stand. It is presumed that each word is put in the legislation for a purpose [**Cork Co Council v Whillock** [1993] 1 IR 231].

6.6.8      Presumption against retrospective effect

Unless the legislation specifically provides that it applies retrospectively, it is presumed not to have retrospective effect [**Hamilton v Hamilton** [1982] IR 466].

6.6.9      Presumption against extra-territorial effect

It is presumed that the legislation is intended only to cover the territory of the State, unless it is otherwise clearly stated [**Chemical Bank v McCormack** [1983] ILRM 350].

6.6.10     Presumption against unclear changes in law

A change in law must be clear, either in express terms or by clear implication. In the event of ambiguity the Court should interpret the law as not having been changed [**Minister for Industry and Commerce v Hales** [1967] IR 50].

6.6.11     Presumption that penal and taxation statues be construed strictly

In the absence of clear and unambiguous words a penal liability will not be implied by the courts [**Re Emergency Powers Bill** 1976 [1977] IR 159]. The purposive approach set out in **section 5 Interpretation Act 2005** does not apply to a provision that relates to the imposition of a penalty or other sanction.

Penal and taxation laws are closely related, but **distinct** categories in law. The imposition of a charge to tax is not generally considered to be a penal sanction (unlike taxing statutes which impose a penalty such as **section 1077E TCA 1997[16]**). Nevertheless, as failure to comply with taxation can give rise to an offence, it has been held that section 5 Interpretation Act 2005 also does not strictly apply to taxation legislation (coming within an 'other sanction') (affirmed in **Bookfinders Ltd. v Revenue Commissioners** [2020] IESC 60).

Where a provision is interpreted "strictly," this does not mean a literal interpretation is applied, rather the ordinary meaning of the words should be carefully considered to ensure a liability is not imposed by reason of an ambiguity or by slack language. See **Bookfinders Ltd. v The Revenue Commissioners** [2019] IECA 100 and **Inspector of Taxes v Kiernan** [1981] IR 117.

---

[15] Refer to Part 5 of this TDM on how to proceed if this presumption is raised in an interpretation query.
[16] The entitlement of Revenue to charge interest on tax overdue is also not considered to be a penalty [**Harrahill v Kennedy** [2013] IEHC 539]

The rule of strict construction does not override the other canons and principles of interpretation - rather it means that where following the application of these principles, the meaning remaining unclear, the principle against doubtful penalisation should apply. **The People (DPP) v TN** [2020], **Bookfinders** [2020].

The rule of strict construction is often seen as a rule against doubtful penalisation (see **Bookfinders** [2020] and **Dunnes Stores v. Revenue Commissioners** [2019] IESC 50).

> *"It is not, and never has been, correct to approach a statute as if the words were written on glass, without any context or background, and on the basis that, if on a superficial reading more than one meaning could be wrenched from those words, it must be determined to be ambiguous, and the more beneficial interpretation afforded to the taxpayer, however unlikely and implausible. The rule of strict construction is best described as a rule against doubtful penalisation. If, after the application of the general principles of statutory interpretation, it is not possible to say clearly that the Act applies to a particular situation, and if a narrower interpretation is possible, then effect must be given to that interpretation."[17]*

6.6.11.1 Doubtful Penalisation

From the perspective of the interpretation of tax statutes, where, following:
- a consideration of the context of the legislation, and
- the application of **all** the cannons of interpretation (including a strict reading of the legislation),

a doubt or ambiguity remains in a taxing provision, no tax charge shall arise i.e. the taxpayer shall not be penalised where a doubt arises in a taxing provision. See **Robert Harris v JJ Quigley and Liam Irwin** [2005] VI ITR 839 and **Bookfinders** [2019] and [2020].

Conversely, where a person is within the charge to tax, they cannot escape such charge unless it is clear that they are within the terms of such exemption (i.e. where a doubt or ambiguity arises with regard to a relieving provision, such relief shall not apply). See **EP O'Coindealbhain (Inspector of Taxes) v The Honourable Mr Justice Sean Gannon** [1986] III ITR 484.

6.6.12   Presumption re reliefs and allowances

It is generally accepted that, in absence of any statutory direction, taxpayers may claim reliefs and allowances in the manner which is most beneficial to them (see e.g. **Sterling Trust v IRC** 12 TC 868; **Ellis v BP Oil Northern Ireland Refinery Ltd** [1987] STC 52 and **Commercial Union Assurance Co v Shaw** [1999] STC 109).

# 7.  Practical issues to take note of when interpreting legislation

1.   Amendments are shown in [square brackets] in non-statutory consolidations (e.g. the Irish Tax Institute's, Chartered Accountants Ireland's or Bloomsbury Professional publications).

---

[17] Bookfinders, at para 52

2.    In non-statutory consolidations (e.g. the Irish Tax Institute's, Chartered Accountants Ireland's or Bloomsbury Professional publications) footnotes to the provision concerned include:

   a.    citations of the legislation enacting amendments[18]

   b.    other sections referenced in the provision concerned; and

   c.    cross-references to the provision concerned in other sections of the Act.

   Considering the interaction of the provision concerned with other sections of the relevant legislation, as signalled by such cross-references, may assist in interpreting the provision.

3.    Language and punctuation are used deliberately:

   *"means"* is a definition

   *"includes"* is an interpretation

   *"shall"* is an imperative term, but consideration must be given to the wording of the provision as a whole to determine the scope of what is being impelled[19]

   *"may"* is permissive or authorising

   *"deemed"* is temporarily suspending reality, and the deeming goes no further than that one section

   *"subject to"* is *"governed by"* what is said

   *"notwithstanding"* is "*despite*" what is said

   *"and"* means both or all

   *"or"* means one of two or more, and may include all.

A tax case in which many of the rules, maxims and presumptions of interpretation were applied, implicitly and explicitly, is **Patrick O'Connell (Inspector of Taxes) v Tara Mines Ltd:** VI ITR 523, where the definition of the phrase 'mining operations' was in dispute. It is worth reading in full to understand the Courts' approach to such issues.

---

[18] The enacting legislation will be relevant to issues of retrospection - the temporal scope of the provision - where care has been taken in the drafting to provide clarity in that regard.

[19] In **Elliss v BP** [1987] 59 TC 474, the UK courts ruled that a reference in legislation with regard to the manner in which capital allowances "shall be given effect" is limited to the specific manner in which allowances shall be effected on foot of a relevant claim. Refer to section 7 of TDM Part 15-02a-06 for further detail.

# Part 2 – Interpreting case law

## 8. Precedent

It is important to note that the doctrine of precedent applies to the interpretation of statutes. Once a matter has been decided (by one of the higher courts) it becomes a precedent. The decision of the Superior courts as to the correct interpretation of a provision of a statute as it applies to the facts of that case will therefore be binding. In any later case to which that principle is relevant, the same principles should be applied (subject to certain exceptions). Whether the precedent is binding (i.e. **must** be followed) or persuasive (i.e. **may** be followed) depends upon the type of legal principle and the court in which it was decided.

The judgement can generally only be overruled by a higher court or by legislation.

## 9. The Courts

The decisions of the Court of Justice of the European Union (CJEU) are binding on all Irish courts in relation to the interpretation or application of EU law.

The decisions of the Supreme Court are binding on all lower courts. The Supreme Court may overrule the decision of any lower court. The Supreme Court will typically only hear appeals on questions of law, not on findings of fact by the lower court. The Supreme Court will generally follow its own decisions, but it reserves a scope to depart from them where there are "compelling reasons".

The High Court is bound by decisions of the Supreme Court. The High Court may overrule the decisions of lower courts and its decisions bind all lower courts. It is generally expected to follow its own earlier decisions but is not bound to do so.

The Appeal Commissioners are bound by decisions of the High Court or Supreme Court. Previous determinations by the Appeal Commissioners are not a precedent in that they are not binding on the Appeal Commissioners. However, they may be of persuasive authority. Historically, decisions of the Appeal Commissioners were not reported and were not available to the public. However since the introduction of the Finance (Tax Appeals) Act 2015 the Appeal Commissioners are obliged to publish their determinations within 3 months of their being made, which they do on their website (www.taxappeals.ie).

## 10. Foreign Decisions

A court is not bound to follow the decisions of foreign courts – this does not include the CJEU. However, those decisions can be of persuasive authority and may be followed at the option of the courts. Decisions of other common law countries are frequently cited and adopted by the Irish courts, particularly where there is no Irish authority governing the issue in question.

Given the origin of the Irish legal system and the judicial links between the two systems, it is not surprising that English decisions are the most commonly cited foreign decisions. In

constitutional matters, the courts pay special attention to decisions of courts in the United States of America, especially the Federal Supreme Court. The citing of decisions from other common law jurisdictions, such as Australia, Canada and New Zealand has become more common in recent years.

A significant number of the Irish tax laws are similar in principle to the tax law of the United Kingdom. Consequently, many of the decisions of the UK courts can be of great assistance in the interpretation of the corresponding Irish statutes. However, the Irish courts are fully entitled to ignore the UK case law entirely.

# 11. Overruling a precedent

A precedent may be overruled either by statue or by a higher court. A precedent may also, in limited circumstances, be overruled by a court of equal standing, e.g. the High court may overrule an earlier High Court decision (see for example the comments of Charleton J **Menolly Homes Ltd v Appeal Commissioners and Revenue Commissioners** [2010] ITR 75 in relation to how his decision differs from that of O'Neill J in **Viera Ltd v The Revenue Commissioners [2009]** ITR 143.) If it is overruled by a higher court, the earlier rule of law is deemed never to have existed. This is part of the declaratory theory of the law. The law is never changed, it is merely restated correctly. It does not mean that earlier cases which have been concluded will be reopened, but cases which are not concluded when the law is restated are affected by the restatement.

The courts do not overrule earlier precedents unless there is good reason. Overruling must be distinguished from reversing a decision, which is the term used when a decision is altered on appeal e.g. a decision of the Circuit Court may be reversed on appeal to the High Court.

# 12. Distinguishing a precedent

A court can avoid following a decision which apparently applied to the case in hand, but of which it disapproves, by distinguishing the precedent from the case in hand. Distinguishing is a process whereby a court finds that the material facts of the two cases differ, so that the precedent need not be followed.

# 13. Elements of a judgement

In deciding a case the judge must decide what the facts are, ascertain the law, and apply the law to the facts of the case. These three elements are contained in each judgement.

## 13.1 Deciding the facts

The judge determines and states the relevant facts based on the evidence heard by the court. Generally speaking, because the facts of every case are different, it is only findings as to matters of law, not findings of fact, which will serve as a precedent for later cases. However, if the facts of a prior case are particularly similar to the facts of a later case and the

legal arguments are substantially the same the court may be guided by the earlier decision when it comes to applying the relevant legal rules to the facts at hand.

## 13.2 Applying relevant legal principles

Having ascertained the facts of the case, the court will then decide what it believes are the relevant legal principles to be applied in the case before the court. If there have been previous cases on the same question where the judges have opined on the legal principles to be applied, the lawyers will open these cases to the judge. The judge will be bound to follow some of these decisions and free to ignore others (as set out above).

## 13.3 Decision

The judge arrives at a decision in a case by applying the principles of law to the material facts. This is called the **ratio decidendi** (reason for the decision) and is the only binding element of the decision as far as later cases are concerned. All other statements of legal principle, such as statements of law which do not relate directly to the material facts in question, are known as **obiter dicta** (comments by the way) and are only persuasive in later cases.

# 14. Interpreting a decision

In deciding a case, the **ratio decidendi** is not stated by the court. This is for later courts to discover but this may be difficult due to the manner in which courts give their decisions. The judge may give the decision in a speech or in a written judgment but it is not divided into the three sections above. This is further compounded if the case goes to appeal which may be heard by five or up to seven judges. If the judges disagree in their conclusion and/or reasoning, this may make it difficult for a later court to determine the **ratio decidendi.**

# Part 3 – Other considerations for VAT legislation

## 15. Introduction

This chapter examines the key components of the European legislative framework that shape our drafting, interpretation and application of Value Added Tax (VAT) law at a national level.

VAT is a European tax and, as such, the legislative framework upon which VAT is based has its origins in European law. Council Directive 2006/112/EC ('The VAT Directive') forms the cornerstone upon which the national VAT laws of all Member States must conform.

In addition to the VAT Directive, a number of other legal components underpin the VAT system, such as EU Regulations, that are binding on Member States and are designed to strengthen a harmonised common system of VAT throughout Europe.

In addition to the above, the Court of Justice of the European Union ('CJEU') also promotes a common approach to VAT throughout the EU. The CJEU often rules on matters concerning the application and interpretation of VAT law that have been referred to it, in the form of questions, by the national courts of different Member States. Generally, questions are referred to the CJEU on grounds that there is reasonable uncertainty about the interpretation or application of a particular VAT law stemming from the VAT Directive. The resultant body of CJEU case law is directly applicable to Irish VAT law and provides for the correct application and interpretation of VAT law.

When interpreting and applying VAT law, it is important to consider the overall intended effect that the provision was designed to have.

## 16. The VAT Directive

As the cornerstone of VAT law, the VAT Directive provides for a harmonised system of VAT across all Member States. In accordance with the principle of primacy of EU law, the VAT Directive enjoys supremacy over the national VAT laws of all Member States including our national VAT legislation, the VAT Consolidation Act, 2010 ('VATCA 2010').

As with all Member States, the VATCA 2010, must give effect to the intentions and purpose of the VAT legislation as provided for in the VAT Directive. Essentially this means that the provisions of the VAT Directive have direct effect within our own National VAT legislation. On the basis that EU legislation enjoys supremacy over the national VAT law, the former will prevail in cases where there is a conflict between EU laws and national laws[20].

---

[20] In its Judgment in (C-8/81) Ursula Becker V Münster-Innenstadt, the CJEU held that a taxpayer has the right to directly rely on the provisions of the VAT Directive in circumstances where a Member State has failed to correctly implement the provisions within its own national law. Note: a Member State cannot rely on a provision of the VAT Directive if it has not been transposed it into its national legislation.

The Commission can bring infraction proceedings against any Member State that fails to fulfil its obligations under the VAT Directive, for example, where a Member State fails to lay down a general requirement of the VAT Directive within its own national VAT legislation[21].

National courts may refer questions to the CJEU on the interpretation of VAT law in cases where there is reasonable uncertainty as to the interpretation of that particular VAT principle or doubt about the interpretation of a provision within the VAT Directive.

The VAT Directive also provides for the establishment of the EU VAT Committee which is made up of representatives from the EU Member States. It is an advisory committee and can give some guidance on the application of the VAT Directive. These guidelines are published on the EU Commission website.[22] The VAT Committee does not have any legislative powers and its guidance is not legally binding.

# 17. The Interaction between European VAT law and national VAT legislation

The European common system of VAT is firmly established in European law. European law forms the cornerstone of each Member State's national VAT laws and, as such, EU law enjoys supremacy over national VAT legislation. On that basis, it is important to recognise how EU VAT law interacts with Irish VAT law.

## 17.1 The VAT Directive and national VAT legislation

Each Member State enjoys a certain degree of literary discretion when transposing a particular Article from the VAT Directive however, it must ensure that its national VAT laws and the interpretation of those laws conform with the overarching intention or purpose of the VAT Directive.

### 17.1.1    Optional provisions

In terms of the provisions of the VAT Directive itself, it is important to note that not all Articles are mandatory. Where a particular Directive provision is optional, Member States are not obliged to transpose that Article. As such, Member States are not obliged to give effect to that particular provision within their own national VAT laws. Generally, this class of provision is worded in the form that Member States 'may' provide for a particular VAT rule, however, that option is at each Member State's discretion.[23]

---

[21] Judgment, C-554/07 Commission v. Ireland, 9 July 2009

[22] https://ec.europa.eu/taxation_customs/business/vat/vat-committee_en

[23] Article 11 of the VAT Directive states that "After consulting the advisory committee on value added tax (hereafter, the 'VAT Committee'), each Member State may regard as a single taxable person any persons established in the territory of that Member State who, while legally independent, are closely bound to one another by financial, economic and organisational links" – 17 Member States, including Ireland, have implemented VAT groups regimes within their national VAT law.

### 17.1.2    Mandatory provisions

On the other hand, the majority of Articles within the VAT Directive are not optional and require that Member States 'shall' provide for a particular VAT concept or treatment. In this case, Member States must ensure that they transpose the relevant Article(s) to give effect to their intention and purpose. For VAT purposes, provisions of the VAT Directive that are unconditional and sufficiently precise may be relied on by taxpayers directly against the State. However, by contrast, obligations arising from the VAT Directive must be transposed into national law in order to be capable of being relied on by the State directly against an individual.

### 17.1.3    Derogations

The European Council has authorised EU Member States to derogate from the VAT Directive in certain specific matters. A derogation occurs when a Member State is allowed to either retain or introduce a measure within its national VAT law which, by its nature, is an atypical measure and therefore does not accord with a general VAT law measure legislated for within the VAT Directive.

### 17.1.4    Interpreting VAT law in an EU context

When interpreting VAT law, consideration must be given to the context, aim and objectives of the VAT system as a whole. This requires that the provisions of Irish VAT law should be given their purposive interpretation and not simply their literal interpretation[24].

In addition, zero rates, reduced rates, exemptions from VAT and derogations are required to be interpreted strictly; as they are in their nature exceptions to the general rule that the standard rate applies to all supplies of goods and services and recognises that there should be due regard to the legal requirement that these provisions cannot be enlarged.

## 18. EU Regulations and national VAT legislation

Unlike the VAT Directive which has direct effect, European Regulations have 'direct applicability'. Direct applicability essentially means that EU Regulations are directly binding on Member States, word for word, and in their entirety[25].

Council Implementing Regulation (EU) No 282/2011 of the 15th March 2011 is an example of one such Regulation. The objective of this Regulation is to ensure the uniform application of VAT by laying down rules implementing the VAT Directive. In particular, this Regulation is concerned with implementing rules in respect of taxable persons, the supply of goods and services, and the place of taxable transactions.

Another example is Council Regulation (EU) No. 904/2010 which provides for administrative co-operation and combating fraud in the field of VAT across the EU Member States.

---

[24] The literal interpretation is not ignored for VAT purposes but there is a recognition in EU law generally that a purposive approach is elevated in importance and holds priority over the literal rule.
[25] Article 288 of the Treaty of the Functioning of the EU states that "A regulation shall have general application. It shall be binding in its entirety and directly applicable in all Member States."

# 19. The role of the Court of Justice of the European Union (CJEU)

The role of the CJEU is to ensure that EU law is interpreted in a consistent manner across all Member States.

The national courts of Member States can refer cases to the CJEU for clarification in circumstances where there is reasonable doubt about the interpretation or validity of EU law. National Courts can refer cases to the CJEU by lodging a request for a preliminary ruling pursuant to Article 267 of the Treaty of the Functioning of the European Union (TFEU).

## 19.1 Preliminary references to the CJEU

The preliminary ruling process initially begins with a national court's written submission to the CJEU in which it sets out the relevant national and EU legislation at play, along with the facts of the case, and the question(s) for answer. This summary of a request for a preliminary ruling is made available to all Member States who are then invited to make written observations to the Court. This may or may not be followed by a request for an oral hearing.

In the course of the preliminary reference procedure, the CJEU will make a decision as to the number of Judges to assign to a particular case. The Court will also allocate the case to a particular Chamber of the Court. This often depends on the complexity of the case in question. For example, less complex cases are typically heard in smaller chambers in which 3 Judges will preside over the case. On the other hand, more complex cases are usually assigned to larger chambers in which 5 Judges will preside over the case. The CJEU can also decide not to accept a preliminary reference.

In addition, the Court will decide whether an AG opinion is necessary in the case. If appropriate, the CJEU may decide to issue its ruling without issuing an AG opinion on the matter.

# 20. The implications of a CJEU ruling from a VAT perspective

It is worth noting that the CJEU is the highest arbiter in relation to VAT matters. All CJEU Judgments and, where appropriate, AG Opinions are published and made available to the general public on the [Curia website](#).

Judgments issued by the CJEU have binding precedent and are binding on all Member States. Therefore, the VAT case law that emanates from the CJEU is critical to each Member State's understanding, interpretation and application of VAT laws at a national level.

The judgments apply to the particular set of facts arising in the case in question and therefore may not have broad ranging implications for the generality of Member States or taxpayers. However, the Court will typically elaborate on fundamental principles of VAT, rights and obligations, and the intended effect of particular provisions within the VAT

Directive. The judgments have retrospective effect unless the Court specifies otherwise in the judgment and sets a temporal limit.

## 20.1 The Advocate General

The Advocate General will issue an opinion in certain cases, as required. Unlike a Judgment, the AG's opinion is not legally binding, however, the CJEU may rely on certain points raised in the opinion in their judgment. In such cases, the opinion itself may provide useful insights into the Court's reasoning and may further inform its audience on matters concerning the operation of the common system of VAT across all Member States.

## 20.2 EU Commission infraction proceedings

Where a Member State fails to adhere to a ruling from the CJEU or fails to transpose the VAT Directive into national legislation correctly the Commission may commence infraction proceedings against that Member State. These infraction proceedings are designed to ensure that the VAT Directive and any CJEU ruling is implemented as intended.

## 21. The Charter of Fundamental Rights of the EU ('the Charter')

At a fundamental level, human rights have an impact upon the application of EU and domestic VAT rules. These rights include political, social and economic rights of EU citizens and are enshrined in the Charter of Fundamental Rights of the EU ('The Charter'). The Charter is a source of primary EU law and it applies to Member States when they implement EU law. The rights that are enshrined in the Charter have the potential to impact upon VAT law[26] and, in certain cases, the CJEU has ruled on the impact of the Charter in relation to VAT related matters.

## 22. European principles of VAT law

The general principles of Union law constitute a central role in the overarching legal framework of the Union. In terms of hierarchy, the general principles are considered as primary law and so rank with the provisions of the EU Treaties and the Charter. They are binding both on Union Institutions and on Member States.

The implementation and application of national VAT law is subject to a number of European principles and Member States must respect and uphold the general principles of EU law.

Some of these principles are inherent in VAT and, as such, their application is not subject to a requirement of transposition into national law. Therefore, certain principles of EU law may be relied upon notwithstanding the fact that they are not legislated for at national level.

---

[26] Charter of Fundamental Rights of the EU - Article 19 (1): "*The Court of Justice of the European Union shall include the Court of Justice, the General Court and specialised courts. It shall ensure that in the interpretation and application of the Treaties the law is observed. Member States shall provide remedies sufficient to ensure effective legal protection in the fields covered by Union law.*"

CJEU case law reinforces Member States' understanding of the principles of VAT law and how EU legislation should be interpreted in light of those principles. As such, the CJEU is empowered to apply these principles when interpreting the VAT Directive. These principles can be categorised as either general principles of EU law or principles stemming from VAT law. Some of these principles are discussed below.

## 22.1  The principle of fiscal neutrality

The principle of fiscal neutrality is important in the implementation and application of VAT law insofar as the principle essentially demands that similar supplies should be treated similarly for VAT purposes. It originates from the general EU principle of equal treatment.

In essence, this principle does not allow supplies of similar goods, or supplies of similar services, that are in competition, to be treated differently for VAT purposes. Often the CJEU will comment on this principle in the context of VAT law. Where appropriate, the CJEU will apply the principle to the case before it.

This principle is often balanced against the EU principle of legality which provides that a taxpayer cannot demand that a certain supply be given the same tax treatment as another supply, where such treatment does not comply with the relevant national legislation.

## 22.2 The principle of proportionality

The principle of proportionally is another important principle in the sphere of VAT. This principle requires an acceptable or proportionate balance between the application of the principles, rights, and obligations that are enshrined in VAT law against the power Member States may exercise in order to prevent potential evasion, avoidance or abuse. In many cases, the CJEU has reaffirmed that, in accordance with the principle of proportionality, any measures that a Member State enacts to counter and prevent potential evasion may not go beyond what is necessary in order to achieve that aim.

## 22.3 The principle of effectiveness

The principle of effectiveness precludes national legislation or measures that render rights conferred by EU law, such as the right to a refund, impossible or excessively difficult to exercise. However, this principle does not prevent Tax Authorities making enquiries such as reviewing VAT refund requests.

## 22.4 The principle of prohibition of abuse of law

The principle of probation of abuse of law is a general principle of EU law developed by the Court of Justice of the European Union and it has evolved over time via a body of European case law where it has been considered and applied in a range of different areas falling within the scope of Union law including VAT.  The concept of abuse of rights may be defined as the formal exercise of a right under law in a manner that is intentionally contrived for the purpose of obtaining a particular benefit, the nature of which is contrary to the underlying purpose and objectives of such law.

The principle does not require legislation to give it effect and it can be applied directly to refuse a right emanating from VAT law. It does not prevent a taxpayer making a choice as to how to structure its business or require that they pay a higher amount of VAT; instead it is focused on countering abusive practices and fraudulent transactions.

# Part 6 – EU law claims

Staff in the divisions across Revenue, High Wealth & Financial Services Division, Large Corporates Division, Medium Enterprises Division, Personal Division, Business Division, IPD – should NOT make any decision on a point of EU law in respect of direct or capital taxes without first contacting RLS through the RTS procedures.

Revenue officers dealing with any cases challenging the domestic legislation (including where there the presumption of compatibility with EU law is raised[27]) should be referred to RLS through the RTS network.  If the challenge to domestic legislation is made on the basis of EU law RLS staff can refer to EU branch.

RLS branches must ensure that the EU Branch of International Division is notified of relevant direct and capital tax issues queries that come to their attention through the RTS process or otherwise.

Issues of EU law that arise at appeal stage must also be brought to the attention of EU Branch.

---

[27] Refer to paragraph 6.6.6 on this point.

# Part 7 – Double tax agreements

Ireland has signed comprehensive Double Taxation Agreements (DTAs) with 76 countries; 74 are in effect. The agreements cover direct taxes.

The text of the DTAs with our various treaty partners can be accessed on https://www.revenue.ie/en/tax-professionals/tax-agreements/double-taxation-treaties/tax-treaties-by-country.aspx. It is important to note that the content of the treaties is not uniform and the treaty text should be consulted for its exact terms. Treaties can also have protocols which are to clarify the meaning or application of certain articles in the treaty itself. Protocols may be agreed after the treaty is in place to address certain specific situations.

Ireland signed the Multilateral convention to implement tax treaty related measures to prevent base erosion and profit shifting (MLI) in June 2017. The MLI modifies the application of the majority of Ireland's DTAs. It implements agreed minimum standards and best practices to counter treaty abuse and to improve dispute resolution mechanisms. The MLI entered into force for Ireland on 1 May 2019. Generally, it has effect for Ireland's tax treaties with respect to taxes withheld at source, from 1 January 2020 and with respect to all other taxes levied by Ireland, for taxes levied with respect to taxable periods beginning on or after 1 November 2019. However, the date on which the MLI modifies each treaty depends on when Ireland's treaty partners deposit their own instruments of ratification. Where it has not been possible to update a DTA by means of the MLI, a separate protocol negotiated with our treaty partner will make the DTA BEPS minimum standard compliant. Revenue is publishing on an ongoing basis, on the relevant treaty partner country page of its website, synthesised texts to facilitate the interpretation and application of the treaties as modified by the MLI. However, the authentic legal texts of the treaties, protocol(s) thereto and the MLI take precedence and remain the legal texts applicable.

It is important to have accurate and consistent application of Ireland's tax treaties. Complexities of interpretation can arise around a range of issues. Each applicable treaty article should be examined carefully depending on the facts of the case. The text of the DTA, any amending protocols and the MLI should be consulted (the synthesised text will assist in this regard).  Additional resources are available, for example the OECD Model and its accompanying Commentary.

Staff in all divisions across Revenue dealing with DTA queries should consult the resources outlined above.  Where there is any doubt or clarification is required please liaise with Tax Treaties Branch by contacting the appropriate RLS Division via RTS procedures.

If the matter arises at appeal stage it must also be brought to the attention of Tax Treaties Branch.

# Appendix 1 – evolution of case law on interpreting taxing statutes

Traditionally a view was held that taxing statutes should be interpreted in a more literal manner, with limited regard to context (if any). However, when one looks to the case law, it often appears that the rules of interpretation of taxing statutes are not too dissimilar to other legislation:
- the ordinary principles of interpretation must apply, and
- the intention of the legislature be ascertained from the words used in their context.

Differences arise when considering:
- the context within which the words must be placed, and
- ambiguities in legislation.

Section 5 of the Interpretation Act requires non taxing (or penal) statutes to be given a construction that reflects the intention of the Oireachtas or parliament *where that intention can be ascertained from the Act as a whole*. Recent judgements have indicated it may be possible to apply a broader context in the case of taxing statutes.

It has also been recently affirmed that the principles of strict interpretation and doubtful penalisation applies to taxing statutes.

This Appendix sets out an evolution of the case law with respect to interpreting tax legislation.

As noted by O'Donnell J, in **Bookfinders**, statutory interpretation is a nuanced process and it may not be appropriate to seek to *"reduce [the process of interpretation] to a small number of selected quotations from judgments taken in the abstract."* Nevertheless, this Appendix seeks to inform of the most regularly cited cases on the matter of tax interpretation, providing caveats or further context as required.

**Case Law - Timeline**

In **Cape Brandy Syndicate v Inland Revenue Commissioners**[28], Rowlatt J set out principles for interpreting taxation legislation on the basis that the statute must clearly impose the obligation.

> *". . . in a taxing statute one has to look merely at what is clearly said. There is no room for any intendment. There is no equity about a **tax**. There is no presumption as to a tax. Nothing is to be **read** in, nothing is to be implied. One can only look fairly at the language used."*

---

[28] [1921] 1 K.B. 64 at 71

The above case and paragraph is often viewed as the basis for a purely literal approach to interpreting tax legislation – the quote dismisses any room for intention to be read in.

It should be noted that notwithstanding the quote above, the ultimate determination held in this case was not a purely literal one. It was held that a taxing statute needs to be read in tandem with subsequent legislation. Although nothing was to be inferred into a section that was not there, where subsequent legislation clarifies an ambiguity in the original legislation, the clarified points provide context for the original legislation and should be considered in interpretation. This view (on subsequent legislation) has since been overturned by Griffin J in Cronin (Inspector of Taxes) v Cork and County Properties[29].

> *"[T]he Court cannot in my view construe a statute in the light of any amendments that may thereafter have been made to it. An amendment to a statute can, at best, only be neutral – it may have been made for any one of a variety of reasons. It is however for the courts to say what the true construction of a statute is, and that construction cannot be influenced by what the Oireachtas may subsequently have believed it to be."*

Nevertheless, the quote supporting this literal approach to interpretation of tax law has since been cited with approval in the Irish High Court and Supreme Court.

Kennedy, C. J[30]. in **Revenue Commissioners v Doorley**[31] stated that a taxing obligation or exemption should not arise unless it was unambiguously clear that such an obligation or exemption was provided for in statute.

> *"The duty of the Court … is to reject an a priori line of reasoning* [i.e. a line of reasoning based on inference or deduction] *and to examine the text of the taxing Act in question and determine whether the tax in question is thereby imposed expressly and in clear and unambiguous terms, on the alleged subject of taxation, for no person or property is to be subjected to taxation unless brought within the letter of the **taxing** statute, i.e., within the letter of the statute as **interpreted** with the assistance of the ordinary canons of interpretation applicable to Acts of Parliament so far as they can be applied without violating the proper character of taxing Acts to which I have referred.*
>
> *I have been discussing taxing legislation from the point of view of the imposition of tax. Now the exemption from tax, with which we are immediately concerned, is governed by the same considerations. If it is clear that a tax is imposed by the Act under consideration, then exemption from that tax must be given expressly and in clear and unambiguous terms, within the letter of the statute as interpreted with the assistance of the ordinary canons for the interpretation of statutes. This arises from the nature of the*

---

[29] [1986] 1 IR 559 (at 572)
[30] Minority determination
[31] [1933] IR 750 at 765.

> *subject matter under consideration and is complimentary to what I have already said in its regard. The court is not, by greater indulgence in delimiting the area of exemptions, to enlarge their operation beyond what the statute, clearly and without doubt and in express terms, excepts for some good reason from the burden of a tax thereby imposed generally on that description of subject-matter. As the imposition of, so the exemption from, the tax must be brought within the letter of the Taxing Act as interpreted by the established canons of construction so far as applicable."*

This is an often used citation to support an artificially literal interpretation of taxation statutes. However, Kennedy, C. J.'s judgment as a whole considered the context of the issue and applied a limitation that was implicit in the structure of the Act under consideration.

In the Irish Supreme Court in **Swaine v V.E.**[32] Kenny J. stated that it was:

> *"…not necessary to cite authority for the proposition that liability for tax must be imposed by plain words and that the Courts are not to construe Revenue legislation in a manner which will impose tax liabilities in order to avoid anomalies."*

In **Kiernan v Revenue Commissioners**[33] the Supreme Court held that there were three basic rules to be applied when reading legislation to determine its meaning:

1. (Unless there is evidence to the contrary) Where a provision is aimed at the general public, a word should be given its general meaning. If the provision is aimed at a specific group of people where a term has a particular meaning, that meaning should be used.
2. Where legislation is placing a penal or taxation obligation on an individual – any words that may be vague or unclear should be interpreted narrowly to prevent the creation of liabilities by reason of ambiguity.
3. Where a word has a known general meaning, a judge should draw on their understanding of the word to interpret it.

> *"First, if the statutory provision is one directed to the public at large, rather than to a particular class who may be expected to use the word or expression in question in either a narrowed or an extended connotation, or as a term of art, then, in the absence of internal evidence suggesting the contrary, the word or expression should be given its ordinary or colloquial meaning…*

> *….Secondly, if a word or expression is used in a statute creating a penal or taxation liability, and there is looseness or ambiguity attaching to it, the word should be construed strictly[34] so as to prevent a fresh imposition of liability from being created unfairly by the use of oblique or slack language…*

---

[32] [1964] IR 423 at 432
[33] [1981] IR 117
[34] Refer to the text below on Bookfinders v Revenue Commissioners [2019] IECA 100 para 44 which clarified that the word strict *"can be interpreted as precision in the consideration of the ordinary meaning of words used in*

> *…Thirdly, when the word which requires to be given its natural and ordinary meaning is a simple word which has a widespread and unambiguous currency, the judge construing it should draw primarily on his own experience of its use."*

Notwithstanding the requirement for a strict construction, this is not analogous to a literal interpretation. In the context of taxation provisions (as with other provisions generally), where a literal interpretation would lead to an absurdity which failed to reflect the true intention of the legislature, then such literal interpretation will be rejected.

In Kellystown Company v. H. Hogan, Inspector of Taxes[35], Henchy J. said:

> *"The interpretation contended for by Kellystown, whilst it may have the merit of literalness, is at variance with the purposive essence of the proviso. Furthermore, it would lead to an absurd result, for monies which are clearly corporation profits would escape the tax and, indeed, the tax would never be payable on dividends on shares in any Irish company. I consider the law to be that, where a literal reading gives a result which is plainly contrary to the legislative intent, and an alternative reading consonant with that legislative intent is reasonably open, it is the latter reading which must prevail."*

In **McGrath v McDermott**[36] McCarthy J set out the court's function in interpreting legislation. No distinction is made for legislation pertaining to tax.

> *"It is clear that successful tax avoidance schemes can result in unfair burdens on other taxpayers and that unfairness is something against which courts naturally lean. The function of the courts in interpreting a statute of the Oireachtas is, however, strictly confined to ascertaining the true meaning of each statutory provision, resorting in cases of doubt or ambiguity to a consideration of the purpose and intention of the legislature to be inferred from other provisions of the statute involved, or even of other statutes expressed to be construed with it. The courts have not got a function to add to or delete from the express statutory provisions so as to achieve objectives which to the courts appear desirable.*
> *In rare and limited circumstances words or phrases may be implied into statutory provisions solely for the purpose of making them effective to achieve their expressly avowed objective ..."*

The case provides that in cases of doubt or ambiguity, the context of the legislation should be considered in order to determine the true legislative intent – but inferences could not be made solely to achieve objectives that were not intended to be addressed by the legislation in the first place.

---

*order to avoid a liability to tax arising in unclear circumstances, and not as a method by which a narrow construction is to be preferred."*
[35] [1985] I.L.R.M. 200,
[36] [1988] IR 258.

A contextual approach to interpretation was also supported by Barrington J in **EP O'Coindealbhain (Inspector of Taxes) v The Honourable Mr Justice Sean Gannon**[37]

> *"In the construction of a Taxing Act, the court has primary regard to the statutory words themselves and to their proper judicial construction. Particular words must be construed in their context. Taxing Acts are to be construed strictly, in the sense that one has to look merely at what was clearly said, there being no room for any intendment, but a fair and reasonable construction must be given to the language without leaning to one side or the other."*

In **Texaco (Ireland) Ltd v Murphy**[38]  McCarthy, J.[39] stated:

> *"[I]t is an established rule of law that a citizen is not to be **taxed** unless the language of the statute clearly imposes the obligation."*

> *"[whilst] the Court must, if necessary, seek to identify the intent of the Legislature, the **first** rule of statutory construction remains that words be given their ordinary literal meaning." (emphasis added)*

In stating this he upheld the views of Cape Brandy, Doorley, Kiernan and McGrath outlined previously.

> *"I am happy to adopt that observation* [from Cape Brandy]*, borne out, as it is, by the decision of this Court in McGrath v McDermott [1988] IR 258, where reference was made to Revenue Commissioners v Doorley [1933] IR 750 and Inspector of Taxes v Kiernan [1981] IR 117."*

It appears reasonable to infer from this that a literal interpretation is only the starting point for interpreting tax statutes[40].

A contextual reading of the language used (as provided for in McGrath and subsequent cases) may be applied in cases where the legislative intent is unclear or absurd from a literal reading.

Looking at the words in the *context* they appear – in the part of the Act and the Act as a whole is the correct way in which one discerns the meaning of the words used or the intention of the Oireachtas. This cannot always be discerned by way of an artificially literalist interpretation.

This approach to interpretation appeared to be supported by section 5 of the Interpretation Act, *2005* which provides:

---

[37] III ITR 484 (1986)
[38] [1991] 2 IR 449.
[39] With whom Finlay, C. J. and Hederman, J. agreed.
[40] Has been since explicitly held in Bookfinders [2020]

*"(1)   In construing a provision of any Act (other than a provision that relates to the imposition of a penal or other sanction)—*

*(a)   that is obscure or ambiguous, or*
*(b)   that on a literal interpretation would be absurd or would fail to reflect the plain intention of— in the case of an Act to which paragraph (a) of the definition of "Act" in section 2(1) relates, the Oireachtas, or in the case of an Act to which paragraph (b) of that definition relates, the parliament concerned, the provision shall be given a construction that reflects the plain intention of the Oireachtas or parliament concerned, as the case may be, where that intention can be ascertained from the Act as a whole.*

*(2) In construing a provision of a statutory instrument (other than a provision that relates to the imposition of a penal or other sanction)—*

*(a)   that is obscure or ambiguous, or*
*(b)   that on a literal interpretation would be absurd or would fail to reflect the plain intention of the instrument as a whole in the context of the enactment (including the Act) under which it was made,*

*the provision shall be given a construction that reflects the plain intention of the maker of the instrument where that intention can be ascertained from the instrument as a whole in the context of that enactment.*"

The use of a purposive approach and the application of section 5 of the Interpretation Act appeared to be affirmed by O'Donnell J[41] in **Revenue Commissioners v O'Flynn Construction Ltd and Others[42]:**

*"…Furthermore, the decision in McGrath itself expressly contemplates an approach to the interpretation of legislation that has always been understood as purposive. In that decision Finlay, C.J. re-stated the orthodox approach to statutory interpretation at the time when he adverted to the obligation of the Courts in cases of doubt or ambiguity to resort to a "consideration of the purpose and intention of the legislature" at page 276. Indeed if McGrath stands for any principle in statutory interpretation it implicitly rejects the contention that any different and more narrow principle of statutory interpretation applies to taxation matters. As Lord Steyn observed in the Northern Ireland case of IRC v McGukian [1997] 1 WLR 991, there has been a tendency to treat tax law, almost uniquely in the civil law as continuing to be the subject of a strict literalist interpretation.*

---

[41] However, as set out below in more detail, O'Donnell J has since clarified, in **Bookfinders,** that:
- much of this commentary was obiter, and
- section 5 of the Interpretation Act should not apply to taxing statutes.

Although obiter, these citations are included here for contextual purposes and may still have some specific application in anti-avoidance cases.

[42] [2011] ITR 113]

*'During the last 30 years there has been a shift away from the literalist to purposive methods of construction. Where there is no obvious meaning of a statutory provision the modern emphasis is on a contextual approach designed to identify the purpose of a statute and to give effect to it. But under the influence of the narrow Duke of Westminster Doctrine [1936] AC 1, 19 tax law remained remarkably resistant to the new non-formalist methods of interpretation. It was said that the taxpayer was entitled to stand on a literal construction of the words used regardless of the purpose of the statute .... tax law was by and large left behind as some island of literal interpretation.'"*

O'Donnell J. goes on to say at para. 73:

*"In Barclays Finance Ltd. v. Mawson [2004] UKHL 51, [2005] 1 A.C. 684 the House of Lords emphatically reaffirmed that the same principles of statutory interpretation applied to taxation statutes as to other non-criminal statutes. Indeed, it was the realisation in Lord Steyn's words in I.R.C. v. McGuckian [1997] N.I. 157 at p. 166, that "those two features – literal interpretation of tax statutes and the formalistic insistence on examining steps in a composite scheme separately – [which] allowed tax avoidance schemes to flourish" which led the United Kingdom courts to insist that the same principles of statutory interpretation applied to tax statutes as to other legislation. In Ireland, however, this was something that was acknowledged at least implicitly in McGrath v. McDermott [1988] I.R. 258, and explicitly in the provisions of the Interpretation Act 2005 which embodies a purposive approach to the interpretation of statutes other than criminal legislation and made no concession to a more narrow or literalist interpretation of taxation statutes."*

In **Thomas Murray (trading as Tom Murray Garden Machinery) v Revenue Commissioners**,[43] White J. interpreted the "literal approach" as one which applies what is clearly intended:

*"The method of statutory interpretation is the literal approach which has the object of giving effect to the intention of the legislature."*

This manner of interpretation is further re-emphasised at the Supreme Court in **O'Rourke v The Appeal Commissioners and The Revenue Commissioners**[44] by Charleton J when he stated:

*"A statute is to be construed according to its plain meaning and that such emerges from the text of the provision, considered within its proper context."*

---

[43] [2012] IEHC 53
[44] [2016] IEHC 28

In **Bookfinders Ltd. v The Revenue Commissioners**[45] Kennedy J explicitly clarified that taxation matters should typically not be interpreted in a different manner to legislation generally.

> *"There is no basis at law for an approach to the interpretation of revenue statutes that differs from that of statutory interpretation generally."*

He went on to confirm that a "strict" approach to interpretation was not analogous to a literal one:

> *"I accept the **argument** of the respondent that, much like McGrath v. McDermott, many of the cases which are cited as authority for the "strict" approach actually take an approach to statutory interpretation analogous to that contained in s. 5 of the Interpretation Act 2005 and this can be seen in many of the cases relied upon by the appellant…*
>
> *The passage from Inspector of Taxes v. Kiernan which is generally used to support a "strict" reading of taxation statutes reads as follows:*
>
>> *"Secondly if a word or expression is used in a statute creating a penal or taxation liability and there is looseness or ambiguity attaching to it, the word should be construed strictly so as to prevent a fresh imposition of liability from being created unfairly by the use of oblique or slack language."*
>
> *"Strict" in this instance can be interpreted as precision in the consideration of the ordinary meaning of words used in order to avoid a liability to tax arising in unclear circumstances, and not as a method by which a narrow construction is to be preferred."*

and reaffirmed that the ordinary meaning of the language on the page was the starting point when interpreting statutes:

> *On the topic of the interpretation of taxation statutes, Dodd, in Statutory Interpretation in Ireland (1st ed, Tottel, 2008) also states, at para. 6.51:*
>
>> *"In respect of such statutes, what is typically valued is certainty and allowing those affected to rely on the ordinary and plain meaning."*
>
> *As stated with admirable clarity by Blayney J. in Howard v. Commissioners of Public Works in citing with approval from Craies on Statute Law, p. 71:*
>
>> *"If the words of the statute are themselves precise and unambiguous, then no more can be necessary than to expound those words in their*

---

[45] [2019] IECA 100

> *ordinary and natural sense. The words themselves alone do in such cases best declare the intention of the lawgiver."*
>
> *I adopt this approach and accordingly, the starting point in the analysis must be the plain language of the Act."*

The approach to the interpretation of tax statutes set out in this manual has been succinctly summarised recently by McKechnie J. in **Dunnes Stores v. Revenue Commissioners[46] [47]** as follows:

> *"As has been said time and time again, the focus of all interpretive exercises is to find out what the legislature meant: or as it is put, what is the will of Parliament. If the words used are plain and their meaning self-evident, then save for compelling reasons to be found within the instrument as a whole, the ordinary, basic and natural meaning of those words should prevail. "The words themselves alone do in such cases best declare the intention of the law maker" (Craies on Statutory Interpretation (7th Ed.) Sweet &Maxwell, 1971 at pg. 71). In conducting this approach "…it is natural to inquire what is the subject matter with respect to which they are used and the object in view" Direct United States Cable Company v. Anglo – American Telegraph Company [1877] 2 App. Cs.394. Such will inform the meaning of the words, phrases or provisions in question. McCann Limited v. O'Culachain (Inspector of Taxes) [1986] 1 I.R. 196, per McCarthy J. at201.*
> *Therefore, even with this approach, context is critical: both immediate and proximate, certainly within the Act as a whole, but in some circumstances perhaps even further than that.*
>
> *Where however the meaning is not clear, but rather is imprecise or ambiguous, further rules of construction come into play. Those rules are numerous both as to their existence, their scope and their application. It can be very difficult to try and identify a common thread which can both coherently and intelligibly explain why, in any given case one particular rule rather than another has been applied, and why in a similar case the opposite has also occurred. Aside from this however, the aim, even when invoking secondary aids to interpretation, remains exactly the same as that with the more direct approach, which is, insofar as possible, to identify the will and intention of Parliament.*
>
> *When recourse to the literal approach is not sufficient, it is clear that regard to a purposeful interpretation is permissible. There are many aspects to such method of construction: one of which is where two or more meanings are reasonably open, then that which best reflects the object and purpose of the enactment should prevail. It is presumed that such an interpretation is that intended by the lawmaker.*

---

[46] [2019] IESC 50 at para. 63
[47] Paragraphs 54 to 83 of this judgement provides a detailed analysis of legislative interpretation matters which may be of interest to staff and is available here

> *Another general proposition is that each word or phrase has and should be given a meaning, as it is presumed that the Oireachtas did not intend to use surplusage or to have words or phrases without meaning. Therefore, every word or phrase, if possible, should be given effect to. (Cork County Council v. Whillock [1993] 1 I.R. 231). This however, like many other approaches may have to yield in certain circumstances, where notwithstanding a word or phrase which is unnecessary, the overall meaning is relatively clear-cut. However, it is abundantly clear that a court cannot speculate as to meaning and cannot import words that are not found in the statute, either expressly or by necessary inference. Further, a court cannot legislate: therefore if, on the only interpretation available the provision in question is ineffectual, then subject to the Interpretation Act 2005, that consequence must prevail."*

The approach to the interpretation set out in **Dunnes** has been affirmed in both **Perrigo Pharma International DAC v McNamara & Ors (Rev 1)[48]** and **Bookfinders Ltd v Revenue Commissioners**[49].

As part of his judgment in **Bookfinders**, O'Donnell J. also held that section 5 of the Interpretation Act does not apply in taxation statutes, which was referred to previously (a point McKechnie J. does not address in **Dunnes**):

> *"I am satisfied that s. 5 of the Interpretation Act should not be applied in the interpretation of taxation statutes."*

In addition, the judgement supports the concepts of strict interpretation and doubtful penalisation.

However, O'Donnell J.'s judgment is clear that this does not interfere with many of the general principles of interpretation of legislation:

> *"It is worth emphasising that the starting point of any exercise in statutory interpretation is, and must be, the language of the particular statute rather than any pre-determined theory of statutory interpretation"*

and that in dis-applying section 5 and affirming that doubtful penalisation and strict interpretation apply, he is not supporting an artificial literalist interpretation of legislation:

> *"It is not, and never has been, correct to approach a statute as if the words were written on glass, without any context or background, and on the basis that, if on a superficial reading more than one meaning could be wrenched from those words, it must be determined to be ambiguous, and the more beneficial interpretation afforded to the taxpayer, however unlikely and implausible. The rule of strict construction is best described as a rule against doubtful penalisation. If, after the application of the general principles of statutory interpretation, it is not possible to say clearly that the Act applies to*

---

[48] [2020] IEHC 552
[49] [2020] IESC 60

> *a particular situation, and if a narrower interpretation is possible, then effect must be given to that interpretation. As was observed in Kiernan, the words should then be construed "strictly so as to prevent a fresh imposition of liability from being created unfairly by the use of oblique or slack language."*

He also cites the below from where McKechnie J. reviews the principles of interpretation and, without seeking to in any way dilute the principle of strict construction of penal statutes, sought to place that principle in its proper position in the overall interpretive exercise. Such application should be considered when interpreting taxation statutes.

> *"Therefore while the principle of strict construction of penal statutes must be borne in mind, its role in the overall interpretive exercise, whilst really important in certain given situations, cannot be seen or relied upon to override all other rules of interpretation. The principle does not mean that whenever two potentially plausible readings of a statute are available, the court must automatically adopt the interpretation which favours the accused: it does not mean that where the defendant can point to any conceivable uncertainly or doubt regarding the meaning of the section, he is entitled to a construction which benefits him. Rather, it means that where ambiguity should remain following the utilisation of the other approaches and principles of interpretation at the Court's disposal, the accused will then be entitled to the benefit of that ambiguity. The task for the Court, however, remains the ascertainment of the intention of the legislature through, in the first instance, the application of the literal approach to statutory interpretation."*

# Appendix 2 – schedule of material updates

November 2021

- Additional introduction text was inserted into section 6 of Part 1

- Part 3, on VAT, introduced

- Part 6 (previously Part 5) updated

- Part 7, on Double Tax Agreements, introduced

- Updates included to take account of the Supreme Court's determination in Bookfinders v Revenue Commissioners [2020] IESC 60

- Appendix 2 introduced