**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK WARREN PEARY,<br><br>     Plaintiff,<br><br>  v.<br><br>DC COMICS, INC.; DC COMICS; DC ENTERTAINMENT, INC.; WARNER BROS. DISCOVERY, INC.; and DOES 1-10,<br><br>    Defendants. | Case No. 1:25-cv-00910-JMF |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL AND LEGAL FINDINGS FROM THE PRIOR *PEARY*
       LITIGATION ...................................................................................................... 3

       A.     Siegel and Shuster's Agreements With DC ........................................... 3

       B.     Jean Peavy's Agreement With DC ......................................................... 4

       C.     Mark Peary's First Effort To Claim Superman Copyrights .................. 6

III.   PROCEDURAL BACKGROUND OF THIS LAWSUIT .................................... 7

IV.    DC'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
       JURISDICTION ................................................................................................. 7

       A.     Diversity ................................................................................................ 8

       B.     Federal Question ................................................................................... 9

       C.     The Declaratory Judgment Act ........................................................... 11

V.     DC'S MOTION, URGED IN THE ALTERNATIVE, TO TRANSFER VENUE .......... 12

       A.     The Legal Test ..................................................................................... 13

       B.     Balancing the Factors .......................................................................... 14

VI.    CONCLUSION ................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Barr*,
464 F. Supp. 3d 549 (S.D.N.Y. 2020) ................................................................. 1

*Allied Erecting & Dismantling Co., Inc. v. U.S. Steel Corp.*,
2016 WL 7442397 (W.D. Pa. Nov. 22, 2016) ....................................................... 14

*Aurecchione v. Schoolman Transp. Sys., Inc.*,
426 F.3d 635 (2d Cir. 2005) ................................................................................... 8

*Berman v. Informix Corp.*,
30 F. Supp. 2d 653 (S.D.N.Y. 1998) ..................................................................... 17

*Bridgeman Art Libr., Ltd. v. Corel Corp.*,
25 F. Supp. 2d 421 (S.D.N.Y. 1998) ..................................................................... 10

*Carell v. Shubert Org., Inc.*,
104 F. Supp. 2d 236 (S.D.N.Y. 2000) ................................................................... 10

*Carter v. HealthPort Techs., LLC*,
822 F.3d 47 (2d Cir. 2016) ..................................................................................... 9

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ................................................................................... 3

*Citigroup Inc. v. City Holding Co.*,
97 F. Supp. 2d 549 (S.D.N.Y. 2000) ..................................................................... 13

*Columbia Marine Servs., Inc. v. Reffet Ltd.*,
861 F.2d 18 (2d Cir. 1988) ................................................................................... 10

*DC Comics v. Pac. Pictures Corp.*,
2012 WL 4936588 (C.D. Cal. Oct. 17, 2012)................................................*passim*

*DC Comics v. Pac. Pictures Corp.*,
545 F. App'x 678 (9th Cir. 2013) ..................................................................*passim*

*De Jesus v. Nat'l R.R. Passenger Corp.*,
725 F. Supp. 207 (S.D.N.Y. 1989) ....................................................................... 18

*Elsevier B.V. v. UnitedHealth Grp., Inc.*,
2010 WL 150167 (S.D.N.Y. Jan. 14, 2010) ......................................................... 10

*Eres N.V. v. Citgo Asphalt Refin. Co.*,
605 F. Supp. 2d 473 (S.D.N.Y. 2009) ................................................................. 18

*Geringer v. Strong*,
2016 WL 2732134 (C.D. Cal. May 9, 2016) ......................................................... 17

*Goggins v. All. Cap. Mgmt., L.P.*,
279 F. Supp. 2d 228 (S.D.N.Y. 2003) ................................................................. 16

**TABLE OF AUTHORITIES**
(conintued)

**Page(s)**

*Grable & Sons Metal Products, Inc. v. Darue Eng'g & Manf'g*,
  545 U.S. 308 (2005)......................................................................................... 10

*Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*,
  213 F.3d 48 (2d Cir. 2000) ............................................................................... 9

*Hartke on behalf of Est. of Hartke v. Bonhams & Butterfields Auctioneers Corp.*,
  2024 WL 4380315 (2d Cir. Oct. 3, 2024)......................................................... 8

*Itar-Tass Russian New Agency v. Russian Kurier, Inc.*,
  153 F.3d 82 (2d Cir. 1998).................................................................................11

*Izkhakov v. Educ. Comm'n for Foreign Med. Graduates*,
  2012 WL 2861338 (S.D.N.Y. July 10, 2012) .................................................. 13

*Johnson v. Smithsonian Inst.*,
  80 F. Supp. 2d 197 (S.D.N.Y. 2000), *aff'd*, 4 F. App'x 69 (2d Cir. 2001)............... 8

*Kawasaki Motors Fin. Corp. v. Power Sports Unlimited LLC*,
  2010 WL 11595853 (C.D. Cal. Mar. 22, 2010)............................................... 14

*Larson v. Warner Bros. Ent. Inc.*,
  2013 WL 1688199 (C.D. Cal. Apr. 18, 2013) ............................................ 3, 19

*Madani v. Shell Oil Co.*,
  2008 WL 268986 (N.D. Cal. Jan. 30, 2008) ................................................... 17

*Mahon v. Mainsail LLC*,
  2020 WL 4569597 (N.D. Cal. Aug. 7, 2020) .................................................. 10

*Mailer v. Zolotow*,
  380 F. Supp. 894 (S.D.N.Y. 1974) ................................................................. 12

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000) ........................................................................ 7, 8

*Mastr Asset Backed Sec. Tr. 2007-WMC1, ex rel. U.S. Bank Nat. Ass'n v. WMC Mortg. LLC*,
  880 F. Supp. 2d 418 (S.D.N.Y. 2012) ............................................................ 16

*Morrison v. Nat'l Austl. Bank Ltd.*,
  547 F.3d 167 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010) ................................. 8

*Murphy v. Gutfreund*,
  624 F. Supp. 444 (S.D.N.Y. 1985) ................................................................... 9

*Pence v. Gee Grp., Inc.*,
  236 F. Supp. 3d 843 (S.D.N.Y. 2017) ...................................................... 13, 18

*Robertson v. Cartinhour*,
  2011 WL 5175597 (S.D.N.Y. Oct. 28, 2011).................................................. 14

*Schilling v. Rogers*,
  363 U.S. 666 (1960).........................................................................................11

**TABLE OF AUTHORITIES**
(conintued)

Page(s)

*Solomon v. St. Joseph Hosp.*,
  62 F.4th 54 (2d Cir. 2023) ............................................................... 9

*Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co.*,
  116 F.4th 106 (2d Cir. 2024) ......................................................... 11

*Tagger v. Strauss Grp. Ltd.*,
  951 F.3d 124 (2d Cir. 2020) ............................................................. 8

*TechnoMarine SA v. Giftports, Inc.*,
  758 F.3d 493 (2d Cir. 2014) ............................................................. 3

*Tianhai Lace USA Inc. v. Forever 21, Inc.*,
  2017 WL 4712632 (S.D.N.Y. Sept. 27, 2017)................................. 19

*Vassallo v. Niedermeyer*,
  495 F. Supp. 757 (S.D.N.Y. 1980) ................................................ 13

*Veneruso v. Mt. Vernon Neighborhood Health Ctr.*,
  933 F. Supp. 2d 613 (S.D.N.Y. 2013) ........................................... 11

*Wallert v. Atlan*,
  141 F. Supp. 3d 258 (S.D.N.Y. 2015) ........................................... 19

*White Operating Co. v. Bank of Am.*,
  *NA*, 2023 WL 11950784 (W.D. Okla. Mar. 8, 2023) ..................... 14

*Wireless Consumers All., Inc. v. T-Mobile USA, Inc.*,
  2003 WL 22387598 (N.D. Cal. Oct. 14, 2003) .............................. 18

**Statutes**

28 U.S.C. § 1331 ................................................................................ 9

28 U.S.C. § 1332(c)(1)....................................................................... 9

28 U.S.C. § 1332(c)(2)....................................................................... 8

28 U.S.C. § 1404(a) ......................................................................... 13

Defendants DC Comics Inc., DC Comics, DC Entertainment,[1] and Warner Bros. Discovery, Inc. ("DC") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff Mark Warren Peary's Complaint for lack of subject matter jurisdiction or, in the alternative, to transfer venue.  Defendants file this motion well before the current March 24, 2025, deadline because "the Court must first examine whether it has subject matter jurisdiction" before evaluating a preliminary injunction motion.  *Ali v. Barr*, 464 F. Supp. 3d 549, 557 (S.D.N.Y. 2020).  As noted in the parties' letter to the Court filed today, DC respectfully asks the Court to stay DC's deadline to oppose Peary's preliminary injunction motion, ECF No. 25, and hear briefing on DC's motion to dismiss first.

## I.        INTRODUCTION

Peary and his counsel tried unsuccessfully for over two decades in Los Angeles courts to undo contracts that his family made fully assigning *any and all* rights in Superman to DC.  In the process, the federal district court and Ninth Circuit not only adjudged all of the dispositive legal and factual issues presented in this newest case, but were repeatedly critical of the means that Peary's counsel and business partner (his counsel here) used to pursue the Superman rights.

Peary's latest lawsuit in this New York federal court has no merit either, but it should be dismissed even before reaching the merits because the Court lacks subject matter jurisdiction:

- Peary cannot establish diversity jurisdiction because there is not complete diversity among the parties.  The Complaint misstates DC Comics' citizenship and ignores the law defining the citizenship of an *estate's executor*—a capacity in which Peary

---

[1] The Complaint erroneously names "DC Entertainment, Inc." and not "DC Entertainment," a former assumed name of one of DC Comics' partners, E.C. Publications, Inc.  *See* Decl. of Wayne Smith ¶¶ 2, 8 & Ex. 6 (filed herewith); ECF No. 16 (DC's Rule 7.1 Statement).

expressly and necessarily brings this suit.  Both DC Comics and Peary-as-executor
are California citizens.

- Peary also invokes federal-question jurisdiction under the Berne Convention and
  relies on the Declaratory Judgment Act.  But case after case confirms that neither
  source provides an independent basis for jurisdiction over his claims.

If this Court were to conclude subject matter jurisdiction exists, DC respectfully requests
the case be transferred to the Central District of California, where Peary pressed and lost the
same arguments he recycles here.  *See DC Comics v. Pac. Pictures Corp.*, 2012 WL 4936588
(C.D. Cal. Oct. 17, 2012) ("*Superman I*"), *aff'd*, 545 F. App'x 678 (9th Cir. 2013) ("*Superman
II*").  While the Complaint plays word games to allege that the foreign copyright interests were
not resolved in *Superman I*, the court records from those cases establish that both Judge Wright
and the Ninth Circuit held that Peary's mother—the sole executor and beneficiary of Superman
co-creator Joseph Shuster's estate under his will—assigned to DC in 1992 "any" and "all"
copyright interests she inherited from her brother, thus "fully settling" any and all claims
between her family and DC.

Those California federal courts rejected Peary's arguments that the 1992 assignment was
unconscionable, unfair, contrary to California probate law, or inconsistent with copyright law.
Instead, the California federal courts held that the 1992 Agreement was a valid and binding
assignment of *any and all rights* in Superman to DC.  There are no carve-outs in the controlling
1992 agreement for *any* foreign copyrights, much less for the copyrights in the 10 countries
Peary now alleges in the Complaint.

This case should be dismissed.

## II.     FACTUAL AND LEGAL FINDINGS FROM THE PRIOR *PEARY* LITIGATION

This case is the latest chapter in what was a "long-running saga regarding the ownership of copyrights in Superman." *Superman II*, 545 F. App'x at 679–80; *see Larson v. Warner Bros. Ent. Inc.*, 2013 WL 1688199, at *1 (C.D. Cal. Apr. 18, 2013).  Indeed, prior litigation between the heirs of Superman's co-creators and DC spanned 16 years, three lawsuits, 1,622 docket entries, and 11 appeals.  For each dispute, the result was the same:  DC prevailed, with Peary's and the other heirs' claims all being rejected by the courts.

As explained in more detail below, the Complaint takes significant liberties in describing the citizenship of the parties, and in describing the found facts and legal determinations germane to this case.  To provide the Court with an accurate history of what transpired, DC refers the Court to Judge Wright's detailed summary judgment order in *Superman I*, which recounted what it described as the undisputed facts—none of which the Ninth Circuit disturbed in *Superman II*.[2]

**A.  Siegel and Shuster's Agreements With DC.**  On March 1, 1938, Shuster and Jerome Siegel, the co-creators of Superman, assigned to DC the "exclusive right to the use of the [Superman] characters and story."  2012 WL 4936588, at *1.  On April 18, 1938, DC published "Action Comics #1" ("AC #1"), which featured an adapted version of Siegel and Shuster's Superman story.  *Id.*  Thereafter, Siegel and Shuster continued to supply DC with draft Superman material pursuant to work-for-hire agreements.  *Id.*  Siegel and Shuster were compensated for the work in royalties and bonuses, both of which increased with Superman's success.  *Id.*  By 1941, the pair reportedly stood to make over $2 million (in 2012 dollars) in the next year alone.  *Id.*

---

[2] In discussing these rulings in the Complaint, Peary incorporated them by reference, and the Court may consider them on this motion.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).  This Court may also take judicial notice of the rulings to determine the scope of what was previously litigated and decided.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498–99 (2d Cir. 2014).

In 1947, Siegel and Shuster sued DC in New York to invalidate the 1938 assignment, but the court found that the assignment had validly granted all Superman rights to DC. *Id.* In 1948, the parties entered into a stipulated judgment pursuant to which Siegel and Shuster acknowledged that the 1938 assignment granted DC all rights in Superman. *Id.*

As part of a 1975 agreement, DC provided Siegel and Shuster with (in 2012 dollars) lump sums of $75,000 each, lifetime annual payments of $80,000 each per year, survivor payments to their heirs, and insurance coverage, as well as "credits" on new Superman works. *Id.* In exchange, the pair acknowledged that DC owned all Superman-related copyrights. *Id.* Over time, DC voluntarily increased the annual payments; made periodic cost-of-living adjustments; gave special bonuses; and paid to have Siegel, Shuster, and their families travel to Superman-related events. *Id.* at *2. All told, the Siegels and Shusters have been paid over $4 million under the 1975 agreement, not including medical benefits or bonuses. *Id.*

**B. Jean Peavy's Agreement With DC.** On July 30, 1992, Shuster died in California. *Id.* He had no wife or child, and his will named his sister, Jean Peavy, as sole beneficiary and executrix of his estate. *Id.* On August 17, 1992, Jean filed an affidavit in California state probate court identifying herself as Shuster's "successor" and sole heir and requesting that his property "be paid, delivered or transferred to her." *Id.* Four days later, Jean wrote to DC, identifying herself as "heir to [Joseph Shuster's] Will" and asking DC to pay Shuster's "final debts and expenses." *Id.* DC offered to cover Shuster's debts and increase survivor payments under the 1975 agreement from $5,000 to $25,000 per year. *Id.*

On October 2, 1992, the parties executed an agreement under which DC would cover Shuster's debts and pay Jean $25,000 a year for the rest of her life (the "1992 Agreement"). *Id.*

In exchange, Jean and Frank re-granted all of Shuster's rights to DC and vowed never to assert a claim to such rights.  *Id.*  The 1992 Agreement stated, in pertinent part:

> We [DC] ask you to confirm by your signatures below that this agreement fully settles all claims to any payments or other rights or remedies which you may have under any other agreement or otherwise, whether now or hereafter existing regarding any copyrights, trademarks, or other property right in any and all work created in whole or in part by your brother, Joseph Shuster, or any works based thereon.  In any event, you now grant to us any such rights and release us, our licensees and all others acting with our permission, and covenant not to assert any claim of right, by suit or otherwise, with respect to the above, now and forever.

*Id.* at *4.  DC's then-Executive Vice President, Paul Levitz, told Jean and Frank that the 1992 Agreement "would represent the author/heir's last and final deal with DC, and would fully resolve any past, present, or future claims against DC."  *Id.* at *2.  Jean and Frank confirmed that they understood and agreed.  *Id.*

Over the next decade, DC maintained good relations with the Shusters, and Jean and Levitz corresponded regularly.  *Id.* at *3.  In the almost 60 letters back and forth between the two, Jean thanked DC for its generosity, reaffirmed the 1992 Agreement, and requested bonus payments in excess of those required.  *Id.*  In 1999, Congress amended the copyright statute to grant additional statutory heirs termination rights under 17 U.S.C. § 304(d).  Upon learning that Siegel's heirs had served a copyright termination notice on DC, Peavy reiterated her commitment "to honor" the 1992 Agreement.  *Id.*  In 1993, 1994, 1995, 1996, 1998, 1999, 2000, and 2001, DC provided additional bonuses to Jean, ranging from $10,000 to $25,000.  *Id.*  In one instance when Jean asked for such a bonus, DC made clear its position that she had no legal right to make such requests, but would pay her a bonus anyway, for which she thanked DC.  *Id.*  Peary testified that Jean was of sound mind when she sent her letters to DC.  *Id.*

**C. Mark Peary's First Effort To Claim Superman Copyrights.** In 2003, Peary (as substitute executor of the Shuster estate) served on DC a notice of termination of the prior grants of Shuster's Superman copyrights, to take effect on October 26, 2013. *Id.* at *1, 3. In 2010, DC filed suit in the U.S. District Court for the Central District of California, seeking a declaration that the 2003 termination notice was invalid. *Id.* at *1. (Litigation filed by Siegel's heir was pending in the same court.) DC argued that the 1992 Agreement revoked the original 1938 assignment of copyrights to DC and re-granted to DC of *all* of Shuster's copyrights in Superman. *Id.* at *4–9. Because the Copyright Act permits termination of only those assignments "executed before January 1, 1978," 17 U.S.C. § 304(c), (d), DC argued that the 1992 Agreement left no pre-1978 assignment to terminate and thus the 2003 notice was invalid. *Id.*

The district court agreed with DC. "In sum, the Court finds that the 1992 Agreement . . . superseded and replaced all prior grants of the Superman copyrights. The 1992 Agreement thus represents the parties' operative agreement and, as a post-1978 grant, it is not subject to termination under 17 U.S.C. § 304(d)." *Id.* at *9; *see id.* at *5 (concluding that the 1992 Agreement "expressly and unambiguously" was a re-grant of "all rights").

On appeal, the Ninth Circuit affirmed. *See Superman II*, 545 F. App'x at 680-81:

The district judge correctly held that the 1992 Agreement, as a matter of New York law, superseded the 1938 assignment of copyrights to DC, and therefore operated to revoke that assignment and re-grant the Superman copyrights to DC . . . . We agree with the district judge that, under the plain text of the 1992 Agreement, which "fully settles all claims" regarding "any copyrights, trademarks, or other property right in any and all work created in whole or in part by [Shuster]," and further "now grants to DC any such rights," it superseded the 1938 assignment as a matter of New York law. We therefore hold that the agreement created a new, 1992 assignment of works to DC—an assignment unaffected by the 2003 notice of termination.

In so holding, the Ninth Circuit similarly rejected Peary's arguments that the 1992 Agreement ran afoul of New York contract law, California probate law, and copyright law. *Id.* & n.3. Peary sought panel and en banc review and petitioned for writ of certiorari. The requests were denied.

## III.    PROCEDURAL BACKGROUND OF THIS LAWSUIT

On January 31, 2025, more than a decade after *Superman II* definitively rejected Peary's termination rights under U.S. copyright law, Peary filed this suit pursuant to the reversionary provisions of 10 foreign jurisdictions' copyright laws. The Complaint alleges that the reversion statutes in the United Kingdom, Canada, Ireland, and Australia have returned the corresponding foreign copyrights in Superman back to the Shuster estate, so DC's continued exploitation of the copyrights in those jurisdictions constitutes infringement. Compl. ¶¶ 57–104. The Complaint also seeks a declaratory order that (i) Peary "holds a valid reversionary interest" in the Superman copyrights in all 10 jurisdictions, and (ii) DC cannot exploit those works or any derivative works in those jurisdictions without Peary's consent. *Id.* ¶¶ 105–17; *id.* at 27.

Peary's complaint fails on every ground. It is barred by the doctrine of collateral estoppel and fails under the foreign laws it invokes for many of the same reasons Judge Wright and the Ninth Circuit rejected his prior claims. But before the parties or Court can address those merits failings (and many others), the Court must first determine it has jurisdiction to hear this case and that this is the appropriate forum. The answer to both of those questions is no, as shown below.

## IV.    DC'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). On a Rule 12(b)(1) motion, subject matter jurisdiction "must be shown affirmatively, and that showing is not made by drawing from the

pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010). Plaintiff "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). In resolving such a motion, the Court "may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113. Peary fails to demonstrate subject matter jurisdiction over his complaint under any one of the three theories he pled.

     **A. Diversity.** Diversity jurisdiction is not available because the parties are not completely diverse. *See Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 126 (2d Cir. 2020) (noting that to satisfy the diversity jurisdiction statute, 28 U.S.C. § 1332, "*all* plaintiffs must be citizens of states diverse from those of *all* defendants.").[3] Peary alleges that he is a citizen of New Mexico, but he brings this suit both as an individual *and* in his capacity as executor of Shuster's estate. Compl. ¶ 11. Under the diversity jurisdiction statute, "the legal representative of the estate of a decedent shall be deemed to be a citizen *only of the same State as the decedent*." 28 U.S.C. § 1332(c)(2). The decedent's state of citizenship is determined "at the time of his death." *Hartke on behalf of Est. of Hartke v. Bonhams & Butterfields Auctioneers Corp.,* 2024 WL 4380315, at *1 (2d Cir. Oct. 3, 2024); *Johnson v. Smithsonian Inst.*, 80 F. Supp. 2d 197, 199 (S.D.N.Y. 2000) (same), *aff'd*, 4 F. App'x 69 (2d Cir. 2001). Peary admits that Shuster was a California citizen when he died. *See* Compl. ¶¶ 109–110. Thus, Peary—in his capacity as executor of Shuster's estate—is likewise a California citizen for diversity purposes.

     That fact precludes complete diversity among the parties. Defendant DC Comics is a California citizen. *See* Smith Decl. ¶¶ 2-7 & Exs. 1-5; ECF No. 16 (DC's Rule 7.1 Statement).[4]

---

[3] Unless noted, all emphases are added and internal cites and quote marks omitted.

[4] DC Comics is the entity that holds all rights and title to the Superman character and story. Smith Decl. ¶ 2. DC Comics Inc. dissolved in 1993 and no longer exists. *Id.* ¶ 9; ECF No. 16.

As a general partnership, DC Comics is considered a citizen of "each jurisdiction of which [any of its] partners is a citizen." *Murphy v. Gutfreund*, 624 F. Supp. 444, 447 (S.D.N.Y. 1985); *accord Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51–52 (2d Cir. 2000). One of its two partners—E.C. Publications, Inc.—is a California citizen given its principal place of business. *See* Smith Decl. ¶¶ 2-7 & Exs. 1-5; 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State . . . where it has its principal place of business."); *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016) (same).[5]

In short, because this suit is "by a plaintiff against a partnership in which [a] partner's citizenship is identical to that of the plaintiff," the Court "does not have diversity jurisdiction." *Murphy*, 624 F. Supp. at 448.

**B. Federal Question.** There is no federal-question jurisdiction over Peary's claims either. That statute grants district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Second Circuit has explained that to invoke "arising under" jurisdiction, a complaint must "necessarily raise a federal issue"—*i.e.*, "a right or immunity created by the Constitution or laws of the United States [must be] an element, and an essential one, of the plaintiff's cause of action." *Solomon v. St. Joseph Hosp.*, 62 F.4th 54, 63–64 (2d Cir. 2023).

That is plainly not the case here. Peary's infringement claims are all brought explicitly under the laws of *foreign* countries. Compl. ¶¶ 65–74 ("Infringement Under Canadian Copyright Law"); *id.* ¶¶ 75–84 ("Infringement Under U.K. Copyright Law"); *id.* ¶¶ 85–94 ("Infringement Under Irish Copyright Law"); *id.* ¶¶ 95–104 ("Infringement Under Australian Copyright Law").

---

[5] DC Entertainment is a former assumed name of E.C. Publications, Inc. *Supra* n.1. It is not an actual entity in its own right.

Peary tries to sidestep this problem by alleging that his claims "arise under the Berne Convention for the Protection of Literary and Artistic Works, a treaty to which the United States is a party and that Congress has implemented." *Id.* ¶ 14.  But "[a]n action arises under a treaty only when the treaty expressly or by implication provides for a private right of action." *Columbia Marine Servs., Inc. v. Reffet Ltd.*, 861 F.2d 18, 21 (2d Cir. 1988).  The treaty must also be self-executing.  *See id.*

The Berne Convention does not satisfy either requirement, as cases uniformly have held. The Berne Convention Implementation Act itself "provides that the provisions of the Convention '*shall not be enforceable* in any action brought pursuant to the provisions of the Berne Convention itself.'"  *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 259 (S.D.N.Y. 2000); *see also Mahon v. Mainsail LLC*, 2020 WL 4569597, at *7 (N.D. Cal. Aug. 7, 2020) ("[T]he Berne Convention . . . does not confer an independent cause of action.").  Thus, "[e]very judge in this district who has considered whether the Berne Convention is self-executing has concluded that it is not."  *Elsevier B.V. v. UnitedHealth Grp., Inc.*, 2010 WL 150167, at *2 (S.D.N.Y. Jan. 14, 2010) (collecting cases).  The Convention simply "do[es] not offer an independent jurisdictional basis for suit in U.S. federal court."  *Carell*, 104 F. Supp. 2d at 259; *see Bridgeman Art Libr., Ltd. v. Corel Corp.*, 25 F. Supp. 2d 421, 430 (S.D.N.Y. 1998) (rejecting reliance "on the Berne Convention and its implementation vehicle, the BCIA" to "create jurisdiction for [plaintiff's] claim under the laws of Canada and the United Kingdom").

Peary's footnote in his preliminary injunction motion does not alter the analysis.  *Cf.* ECF No. 26 at 7 n.5.  He contends that the standard articulated in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), should also control whether an alleged federal issue embedded in foreign-law claims should give rise to federal jurisdiction.  But

here, there is no embedded federal issue to begin with.  Although Peary relies on the Berne

Convention as supplying the conflicts rule for infringement issues, the very case he cites

indicates otherwise.  *See Itar-Tass Russian New Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 91

(2d Cir. 1998) ("On infringement issues, the governing conflicts principle is usually *lex loci*

*delicti*.").  Moreover, even if the Berne Convention dictated the choice of law analysis, *Grable*

itself notes that the federal issue needs to be "actually disputed" before it suffices to create

federal jurisdiction.  545 U.S. at 314.  Here, DC does not dispute that U.K., Canadian, Irish, and

Australian copyright laws apply to Peary's infringement claims in those respective jurisdictions.

Because a court need not interpret the Berne Convention to dispose of Peary's foreign-law

claims, federal question jurisdiction does not apply.  *See Veneruso v. Mt. Vernon Neighborhood*

*Health Ctr.*, 933 F. Supp. 2d 613, 622 (S.D.N.Y. 2013) ("'mere presence' of a federal issue . . .

does not confer federal jurisdiction").

      **C.  The Declaratory Judgment Act.**  Contrary to the Complaint, there is no subject matter

jurisdiction "over the declaratory claim pursuant to 28 U.S.C. § 2201."  Compl. ¶ 15.  It is well-

settled that "the Declaratory Judgment Act is not an independent source of federal jurisdiction."

*Schilling v. Rogers*, 363 U.S. 666, 677 (1960); *accord Sunvestment Energy Grp. NY 64 LLC v.*

*Nat'l Grid USA Servs. Co.*, 116 F.4th 106, 113 (2d Cir. 2024).

      To determine whether this Court has subject matter jurisdiction over a DJA claim, it must

"conceptually realign the declaratory judgment parties and claims and analyze them as they

would appear in a coercive suit."  *Sunvestment*, 116 F.4th at 114.  That test is a somewhat

awkward fit for Peary's declaratory judgment claim.  Typically, in a declaratory judgment action

involving copyright, the party *threatened* with a potential infringement suit brings its own suit

seeking a declaration that it is not liable for infringement.  *E.g.*, *Mailer v. Zolotow*, 380 F. Supp.

894, 896 (S.D.N.Y. 1974) ("Mailer now brings this suit for a declaratory judgment on the ground that Zolotow has publicly threatened to sue plaintiff for copyright infringement.").  In such cases, it is easy to reconceptualize the dispute as a coercive suit for copyright infringement brought by the declaratory defendant—indeed, that is precisely the suit the declaratory plaintiff hopes to preempt with a favorable judgment.

Here, by contrast, Peary's declaratory claim is not an attempt to preempt a coercive infringement suit from DC.  Rather, it is plainly an extension of his foreign-law infringement claims recast as a request for declaratory relief.  *See* Compl. at 27 (seeking an order "declaring that, under the laws of the Foreign Reversionary Territories, [Peary] holds a valid reversionary interest in the Work's copyright" and that DC "cannot exploit and/or license the exploitation of the Work or derivative works thereof in any Foreign [Reversionary] Territory without a copyright license from [Peary] and/or [Peary]'s prior written consent").  Accordingly, for the same reasons there is no subject matter jurisdiction over Peary's infringement claims arising under foreign law, there is likewise no jurisdiction over his declaratory judgment claim.[6]

*     *     *

Because Peary fails to identify a valid basis for subject matter jurisdiction over his claims, the Complaint must be dismissed.

## V.    DC'S MOTION, URGED IN THE ALTERNATIVE, TO TRANSFER VENUE

The Court need not reach this issue, but in the unlikely event that it finds subject matter jurisdiction over Peary's claims, it should transfer this case to the Central District of California so that it may be heard by Judge Wright.  Judge Wright not only presided over the parties'

---

[6] Even if this Court were to assess jurisdiction based on a hypothetical "corresponding" coercive infringement suit filed by DC against Peary, the result would be the same.  For the reasons mentioned, that suit would lack complete diversity and would not raise a federal issue.

related dispute over Peary's termination rights under the U.S. Copyright Act, he issued preclusive rulings in *Superman I* that were upheld on appeal and foreclose Peary's new claims.

 **A. The Legal Test.** Under 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  On a Section 1404(a) motion, the moving party must establish that transfer is appropriate.  *Vassallo v. Niedermeyer*, 495 F. Supp. 757, 759 (S.D.N.Y. 1980).

 In resolving the motion, courts first ask "whether the case could have been brought in the transferee district."  *Izhkakov v. Educ. Comm'n for Foreign Med. Graduates*, 2012 WL 2861338, at *2 (S.D.N.Y. July 10, 2012).  Here, the answer is clearly yes—the same parties litigated the same dispositive issues in Los Angeles in *Superman I.  See* 2012 WL 4936588, at *4–9.

 Next, the Court must determine "whether the transfer would promote the convenience of parties and witnesses and would be in the interest of justice."  *Id.*  In answering that question, district courts consider the following factors, as applicable:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interest of justice . . . .

*Pence v. Gee Grp., Inc.*, 236 F. Supp. 3d 843, 850 (S.D.N.Y. 2017); *accord Izhkakov*, 2012 WL 2861338, at *3.  "[W]eighing the balance is essentially an equitable task left to the Court's discretion."  *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000).

**B.  Balancing the Factors.**

Here, trial efficiency and the interest of justice—which courts consider the "most important" factors of all—strongly support a transfer to the Central District of California. *Kawasaki Motors Fin. Corp. v. Power Sports Unlimited LLC*, 2010 WL 11595853, at *3 (C.D. Cal. Mar. 22, 2010).  DC obviously intends to present preclusion defenses based on claims and issues that were raised and resolved in *Superman I* and *II*.  This includes relying on the preclusive force of Judge Wright's determinations that the 1992 agreement (i) revoked and replaced Shuster's original 1938 copyright grant to DC; (ii) granted "all" of Jean Peavy's copyrights in Superman to DC (including any reversionary rights); and (iii) is binding on Shuster's estate.  *See Superman I*, 2012 WL 4936588, at *4–9; *Superman II*, 545 F. App'x at 680 n.3 (noting the district court's ruling "implicitly rejected" the argument that the 1992 Agreement could not bind the estate and that Peary waived any challenge to that ruling on appeal).

Having issued the summary judgment order in *Superman I*, Judge Wright is best placed to enforce his own rulings and determine their preclusive effect.  *See Robertson v. Cartinhour*, 2011 WL 5175597, at *4 (S.D.N.Y. Oct. 28, 2011) (granting motion to transfer; "[t]he [prior] Court, having entered the judgment in the underlying D.C. Action . . . is in the best position to review any further briefing and make [preclusion] determinations"); *Allied Erecting & Dismantling Co., Inc. v. U.S. Steel Corp.*, 2016 WL 7442397, *9 (W.D. Pa. Nov. 22, 2016) (granting motion to transfer; explaining that the judge whose prior rulings addressed "the same agreements" would be "in the best position to decide matters of res judicata and collateral estoppel"); *White Operating Co. v. Bank of Am., NA*, 2023 WL 11950784, *9 (W.D. Okla. Mar. 8, 2023) (granting motion to transfer; emphasizing "[t]he Texas District Court is in a better position to evaluate . . . collateral estoppel effect of its multiple prior orders").

- 14 -

Indeed, it is hard to square most of the essential pleaded facts in Peary's Complaint with the California courts' prior rulings, *e.g.*:

| The Allegation | What the California Courts Held |
|---|---|
| The litigation in *Superman I & II* "conspicuously left the foreign rights at issue here entirely unaddressed." Compl. ¶ 4.<br><br>"This action therefore presents a *clean slate* for vindicating valuable rights that have now vested in the Shuster Estate." *Id.* (emphasis added).<br><br>*Superman II* "says nothing about foreign copyright laws or the Foreign Reversionary Rights at issue here." *Id.* ¶ 39.<br><br>"[B]oth the 1992 Agreement and the parties' related correspondence were silent as to Foreign Reversionary Rights." *Id.* ¶ 40. | The scope of the 1992 agreement, as interpreted by both Judge Wright and the Ninth Circuit, covers *all* copyrights, including foreign rights.<br><br>In *Superman I*, Judge Wright held that the parties' 1992 Agreement "not only settled and released *all* 'claims[,] . . . rights [and] remedies' concerning the Shuster copyrights under all prior agreements, but it *also extended the release to such rights and remedies as might exist 'otherwise.'*" 2012 WL 4936588, at *5 (quoting 1992 Agreement).<br><br>In *Superman II*, the Ninth Circuit agreed with Judge Wright, noting that the 1992 Agreement "'***fully settles all*** claims' regarding '***any*** copyrights, trademarks, ***or other property right in any and all work*** created in whole or in part by . . . Joseph [Shuster],' and further 'now grant[s] to [DC] ***any such rights***.'" 545 F. App'x at 681. |
| The 1992 Agreement "did not include . . . any of the customary language to work a novation under New York law." Compl. ¶ 34. | Judge Wright and the Ninth Circuit squarely rejected this argument. *Superman I*, 2012 WL 4936588, at *5 (noting that under New York Law, "the 1992 Agreement . . . essentially revok[ed] and regrant[ed] all copyright agreements and interest"); *Superman II*, 545 F. App'x at 680 ("The district judge correctly held that the 1992 Agreement, as a matter of New York law, superseded the 1938 assignment of copyrights to DC, and therefore operated to revoke that assignment and re-grant the Superman copyrights to DC."); *id.* (rejecting Peary's argument that New York law required the 1992 Agreement to contain certain "magic words"). |

| | |
|---|---|
| Jean Peavy "executed DC Comics' 1992 Agreement solely in [her] personal capacities." Compl. ¶ 35. | "Jean Peavy, Joseph Shuster's sister and sole heir, entered into the 1992 Agreement (along with Frank) which renegotiated the terms of the parties' prior agreements to her and Frank's benefit. By taking advantage of this opportunity, she exhausted the single opportunity provided by statute to the Shuster heirs to revisit the terms of Shuster's original grants of his copyrights." *Superman I*, 2012 WL 4936588, at *8. Before negotiating and executing the 1992 Agreement, Jean Peavy (1) "filed an affidavit in California state court identifying herself as Shuster's 'successor' and sole heir"; and (2) "wrote to DC, identifying herself as 'heir to [Joseph Shuster's] Will.'" *Id.* at *2.<br><br>Indeed, nowhere does the 1992 Agreement state or even suggest that Peavy executed the Agreement solely in her personal capacity. |
| *Superman II* "left open whether Peavy had the authority, prior to the probating of the Shuster Estate and the appointment of an executor, to bind the estate to the 1992 Agreement." Compl. ¶ 41.<br><br>"Peavy did not have authority to bind the Shuster Estate to the 1992 Agreement." *Id.* ¶ 42. | As the Ninth Circuit held, "[t]he district judge's ruling implicitly rejected this argument, *holding that the estate was bound by the 1992 Agreement*." *Superman II*, 545 F. App'x at 681 n.3 (emphasis added). It is disingenuous to claim the Ninth Circuit "left open" the issue when Peary and his counsel, according to the Ninth Circuit, waived the issue on appeal, having "failed to raise it in their opening brief." *Id.* |

Judge Wright is also best positioned to interpret the 1992 Agreement and avoid possible inconsistent interpretations of the same contract. *See Mastr Asset Backed Sec. Tr. 2007-WMC1, ex rel. U.S. Bank Nat. Ass'n v. WMC Mortg. LLC,* 880 F. Supp. 2d 418, 425 (S.D.N.Y. 2012) ("[I]t is more efficient to have one court interpret the same contracts, rather than multiple courts potentially arriving at inconsistent results."); *Goggins v. All. Cap. Mgmt., L.P.*, 279 F. Supp. 2d 228, 234 (S.D.N.Y. 2003) (noting the Second Circuit's "strong policy favoring the litigation of

related claims in the same tribunal" so that "inconsistent results can be avoided").  As the presiding judge in *Superman I*, Judge Wright is familiar with the parties and shared facts and legal issues, of which there are many.  *See Geringer v. Strong*, 2016 WL 2732134, at \*5–6 (C.D. Cal. May 9, 2016) (transferring case to avoid multiplicity of litigation resulting from a single transaction); *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 660 (S.D.N.Y. 1998) ("[O]ne of the most important factors considered by courts in evaluating a motion to transfer is the existence of similar litigation in the transferee district.").

That the present dispute involves assertedly distinct legal claims makes no difference to the analysis.  In analogous cases, courts grant transfers to a court already "familiar . . . with underlying factual contentions that are common to both actions."  *Madani v. Shell Oil Co.*, 2008 WL 268986, at \*2 (N.D. Cal. Jan. 30, 2008).  In *Madani*, plaintiffs brought a price-fixing class action in the Northern District of California alleging a violation of Section 1 of the Sherman Act under the Rule of Reason.  *Id.* at \*1.  Plaintiffs were members of a putative class in a prior action in the Central District of California against the same defendants on essentially the same facts but a different yet related legal theory (*per se* illegal price fixing under Section 1).  *Id.*  Judge King (C.D. Cal.) resolved the prior action in favor of the defendants on summary judgment, and the ruling was upheld on appeal.  *Id.*  Given that backdrop, Judge Jenkins (N.D. Cal.) transferred the new case to the Central District, rejecting the plaintiffs' "efforts to minimize the factual overlap" between the two sets of claims and emphasizing the "significant time and resources" required "to reach a similar level of familiarity [as Judge King]."  *Id.* at \*2; *accord Geringer*, 2016 WL 2732134, at \*6 (transferring case where there was "substantial overlap of issues between the two actions," even though second-filed case involved new claims).

The remaining § 1404 factors support a transfer or are neutral. The weight accorded to Peary's choice of forum is "diminished" because he not a citizen of this district. *De Jesus v. Nat'l R.R. Passenger Corp.*, 725 F. Supp. 207, 208 (S.D.N.Y. 1989). If anything, his decision to file 3,000 miles from home in an obvious attempt to avoid Judge Wright is a tactic that itself merits a transfer. *See Wireless Consumers All., Inc. v. T-Mobile USA, Inc.*, 2003 WL 22387598, at *5 (N.D. Cal. Oct. 14, 2003) ("evidence of plaintiff's attempt to avoid a particular precedent from a particular judge weighs heavily . . . often make[s] the transfer of venue proper").

Moreover, there is no indication that witnesses or parties will be inconvenienced. The key witnesses are deceased, save for Paul Levitz, whom DC can produce in Los Angeles.[7] Peary lives in New Mexico, Compl. ¶ 10, which is considerably closer to Los Angeles than to New York. And Peary is a litigant in Los Angeles County Superior Court. *Id.* ¶ 11. The availability of process to compel unwilling witnesses is not a concern here. *See Eres N.V. v. Citgo Asphalt Refin. Co.*, 605 F. Supp. 2d 473, 482 (S.D.N.Y. 2009) (granting transfer where parties could not identify "non-party witnesses whose testimony could be obtained only through a subpoena"). As demonstrated by proceedings in *Superman I*, all parties have the means to litigate in the Central District of California. "In an era of electronic documents, easy copying and overnight shipping," the location of documents "assumes much less importance." *Pence*, 236 F. Supp. 3d at 857.

While in his recent letter to the Court, Peary's counsel now claims that DC chose the Los Angeles venue last time, and this is really a New-York-centric case, that claim is not well taken. Peary's counsel initiated the other two prior Superman litigations in federal court in Los

---

[7] If this case proceeded to discovery or trial—and it should not—there would very likely be no need to produce Levitz at all. In *Superman I*, Judge Wright accepted his declaration as uncontested fact, *see* 2012 WL 4936588, at *2, as Peary never deposed Levitz or offered a competing witness on the subject of his testimony.

Angeles, *e.g.*, *Larson v. Warner Bros. Ent. Inc.*, 2013 WL 1688199 (C.D. Cal. Apr. 18, 2013), as well as Peary's probate case in Los Angeles Superior Court.  Peary has no identifiable ties to New York, other than now-deceased family who used to live there.

As for the locus of operative facts, Peary alleges infringement "in connection with the distribution and exploitation" of "works featuring Superman" in exclusively foreign countries.  Compl. ¶ 71 (Canada); *id.* ¶ 81 (United Kingdom); *id.* ¶ 91 (Ireland); *id.* ¶ 101 (Australia).  This favors neither California nor New York, *see Tianhai Lace USA Inc. v. Forever 21, Inc.*, 2017 WL 4712632, at *5 (S.D.N.Y. Sept. 27, 2017) (noting the key question is "where the *infringement* occurred" (emphasis in original)), but of course DC and the movie studio that made the allegedly offending motion picture that Peary now targets are based in Los Angeles.

Finally, neither forum has greater familiarity with the application of the copyright laws of the 10 foreign jurisdictions identified in the Complaint.  *Cf., Wallert v. Atlan*, 141 F. Supp. 3d 258, 265 n.3, 278 (S.D.N.Y. 2015) (noting "[t]he Court has no familiarity with the copyright laws of" Australia, Ireland, New Zealand, or the U.K., etc., "implicated by [plaintiff's] claims").  The legal and factual rulings that Judge Wright made, however, are dispositive under all of those sources of law, as DC will show, if need be, at the appropriate time.

## VI.    CONCLUSION

The Court should dismiss the Complaint for lack of subject matter jurisdiction.  If it rules jurisdiction exists, it should transfer the case to the U.S. District Court for the Central District of California, where DC will ask that it proceed before Judge Wright.

Dated:  March 5, 2025

Respectfully submitted,

O'MELVENY & MYERS LLP

By:  _/s/ Daniel M. Petrocelli_

Daniel M. Petrocelli (admitted *pro hac vice*)
Matt Kline (admitted *pro hac vice*)
Cassandra L. Seto (admitted *pro hac vice*)
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Office: (310) 553-6700
Fax: (310) 246-6779
dpetrocelli@omm.com
mkline@omm.com
cseto@omm.com

Natasha W. Teleanu
Danielle Feuer
1301 Avenue of the Americas, Suite 1700
New York, NY 10019-6022
Office: (212) 326-2000
Fax: (212) 326-2061
nteleanu@omm.com
dfeuer@omm.com

*Counsel for Defendants*

## <u>CERTIFICATE OF WORD COUNT (L.R. 7.1(C))</u>

Pursuant to Local Rule 7.1(c), I hereby certify that, excluding the caption, table of contents, table of authorities, signature block, and this certificate, the foregoing Memorandum of Law contains 6,382 words, counted using the Microsoft Word program used to prepare it.  It therefore complies with the word-count limitation of Local Rule 7.1(c).


Dated:   March 5, 2025                                      */s/ Daniel M. Petrocelli*

                                                              Daniel M. Petrocelli