**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MARK WARREN PEARY, individually and in his capacity as executor of the Estate of Joseph Shuster,

        Plaintiff,

   vs.

DC COMICS, INC., et al.,

        Defendants.

Civil Action No. 1:25-cv-00910-JMF

---

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE TO TRANSFER

TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

*Attorneys for Plaintiff Mark Warren Peary, individually and as executor of the Estate of Joseph Shuster*

March 21, 2025

## <u>TABLE OF CONTENTS</u>

**Pages**

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND .................................................................................3

LEGAL STANDARD ............................................................................................5

ARGUMENT .........................................................................................................6

I.     THIS COURT HAS FEDERAL QUESTION JURISDICTION BASED ON
       SUBSTANTIAL AND DISPUTED QUESTIONS OF FEDERAL LAW, NECESSARY
       TO RESOLVE PLAINTIFF'S WELL-PLEADED COMPLAINT...................................6

       A.     This Case Presents Uniquely Federal Issues Under Berne, the
              Implementation Act, and U.S. Copyright Act.........................................6

       B.     Plaintiff's Well-Pleaded Complaint Presents Questions Under Berne and
              U.S. Copyright Law that Are Substantial and Disputed. ........................8

II.    THIS COURT HAS DIVERSITY JURISDICTION UNDER 28 U.S.C. § 1332. ...........14

III.   DC IS NOT ENTITLED TO TRANSFER VENUE...........................................16

       A.     Venue Is Not Proper in the Central District of California. ...................17

       B.     DC Has Not Carried Its Heavy Burden to Show by Clear and Convincing
              Evidence that § 1404(b)'s Factors Weigh Strongly in Its Favor. .........18

              1.     The Party Seeking Transfer Must Show that § 1404(b)'s Factors
                     Weigh "Strongly in Favor of" Overriding Plaintiff's Chosen Venue. ..........18

              2.     DC Fails to Meet Its Burden to Show by Clear and Convincing
                     Evidence that § 1404(b)'s Factors Weigh Strongly in Its Favor..................19

CONCLUSION.....................................................................................................28

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*,
No. 20-CV-0200 (GAM), 2020 WL 1888950 (E.D. Pa. Apr. 16, 2020) ................................. 24

*Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Env't Consulting, Inc.*,
No. 23-CV-4942 (AT), 2023 WL 8650266 (S.D.N.Y. Dec. 14, 2023) ................................... 20

*Anderson v. Michaels Stores, Inc.*,
No. 14-CV-0500 (WBS), 2014 WL 1613952 (E.D. Cal. Apr. 22, 2014) ......................... 25, 26

*Armstrong v. Virgin Records, Ltd.*,
91 F. Supp. 628 (S.D.N.Y. 2000) ......................................................................................... 22

*AXIS Reinsurance Co. v. Northrop Grumman Corp.*,
No. 17-CV-8660 (AB), 2018 WL 3326670 (C.D. Cal. Mar. 27, 2018)................................. 25

*Banco Nacional de Cuba v. Sabbatino*,
376 U.S. 398 (1964)............................................................................................................... 13

*Bassett v. Mashantucket Pequot Tribe*,
204 F.3d 343 (2d Cir. 2000)..................................................................................................... 2

*Baumgartner v. United States*,
322 U.S. 665 (1944)............................................................................................................... 14

*Berman v. Informix Corp.*,
30 F. Supp. 2d 653 (S.D.N.Y. 1998) ..................................................................................... 24

*Bridgeman Art Libr., Ltd. v. Corel Corp.*,
25 F. Supp. 2d 421 (S.D.N.Y. 1998) ................................................................................. 7, 18

*Caldwell v. Slip-N-Slide Records, Inc.*,
No. 10-CV-9106 (JFK), 2011 WL 3251502 (S.D.N.Y. July 26, 2011)................................. 20

*Carell v. Shubert Org., Inc.*,
104 F. Supp. 2d 236 (S.D.N.Y. 2000) ..................................................................................... 7

*Casper Sleep, Inc. v. Nectar Brand LLC*,
No. 18-CV-4459 (PGG), 2019 WL 4727496 (S.D.N.Y. Sept. 27, 2019)............................... 19

*Central Sports Army Club v. Arena Assocs.*,
952 F. Supp. 181 (S.D.N.Y. 1997) ....................................................................................... 24

*Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
598 F.3d 30 (2d Cir. 2010)....................................................................................................... 6

*Cmty. for Creative Non-Violence v. Reid*,
    490 U.S. 730 (1989) ................................................................................. 10

*Daniel v. Am. Bd. of Emergency Med.*,
    428 F.3d 408 (2d Cir. 2005) ..................................................................... 18

*DC Comics v. Pac. Pictures Corp.*,
    545 F. App'x 678 (9th Cir. 2013) ..................................................... passim

*DC Comics v. Pac. Pictures Corp.*,
    No. 10-CV-3633 (ODW) (RZx), 2012 WL 4936588 (C.D. Cal. Oct. 17, 2012) ..................... 27

*Dramatico Entertainment Ltd & Ors v British Sky Broadcasting Ltd & Ors*
    [2012] EWHC 268 (Ch) ............................................................................. 11

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
    547 U.S. 677 (2006) ................................................................................. 12

*Fellus v. Sterne, Agee & Leach, Inc.*,
    783 F. Supp. 2d 612 (S.D.N.Y. 2011) ...................................................... 17

*Folkes v. Greensleeves Publishing Ltd.*,
    1997 WL 1918053 (Ont. Gen. Div. 1997) ................................................ 10

*Friedman v. Zimmer*,
    2015 WL 6164787 (C.D. Cal. July 10, 2015) ........................................... 22

*Fuchberg & Fuchberg v. Galizia*,
    300 F.3d 105 (2d Cir. 2002) ..................................................................... 23

*Geringer v. Strong*,
    No. 15-CV-8696-CAS, 2016 WL 2732134 (C.D. Cal. May 9, 2016) ....................... 25

*Glass v. S & M NuTec, LLC*,
    456 F. Supp. 2d 498 (S.D.N.Y. 2006) ...................................................... 16

*Goggins v. Alliance Capital Management, L.P.*,
    279 F. Supp. 2d 228 (S.D.N.Y. 2003) ...................................................... 24

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*,
    545 U.S. 308 (2005) .................................................................. 1, 6, 10, 12

*Gross v. British Broadcasting Corp.*,
    386 F.3d 224 (2d Cir. 2004) ..................................................................... 18

*Gunn v. Minton*,
    568 U.S. 251 (2013) ................................................................................. 12

iv

*Hyatt Corp. v. Stanton*,
  945 F. Supp. 675 (S.D.N.Y. 1996) ................................................................. 2, 13

*In re Volkswagen AG*,
  371 F.3d 201, 204 (5th Cir. 2004) ..................................................................... 27

*In re Warrick*,
  70 F.3d 736 (2d Cir. 1995) ................................................................................ 18

*Itar-Tass Russian News v. Russian Kurier*,
  153 F.3d 82 (2d Cir. 1998) ................................................................................. 9

*ITSI T.V. Prods., Inc. v. Cal. Auth. of Racing Fairs*,
  785 F. Supp. 854 (E.D. Cal. 1992),
  *aff'd in part*, 3 F.3d 1289 (9th Cir. 1993) ...................................................... 22

*Izkhakov v. Educ. Comm'n for Foreign Med. Graduates*,
  No. 12-CV-0348 (ALC), 2012 WL 2861338 (S.D.N.Y. July 10, 2012) ................ 18

*Jose Armando Bermudez & Co. v. Bermudez Int'l*,
  No. 99-CV-9346 (AGS), 2000 WL 1225792 (S.D.N.Y. Aug. 29, 2000) ................ 22

*JustMed, Inc. v. Byce*,
  600 F.3d 1118 (9th Cir. 2010) ......................................................................... 1, 6

*Katz v. Holland & Knight LLP*,
  No. 08-CV-1137 (TSE), 2009 WL 367204 (E.D. Va. Feb. 12, 2009) ................... 14

*Khing v. Nay Lin*,
  No. 14-CV-4004, 2015 WL 4523238 (E.D.N.Y. July 27, 2015) ........................... 26

*Laumann Mfg. Corp. v. Castings USA, Inc.*,
  913 F. Supp. 712 (E.D.N.Y. 1996) ..................................................................... 19

*Lykes Bros. S.S. Co. v. Sugarman*,
  272 F.2d 679 (2d Cir. 1959) .............................................................................. 17

*Madani v. Shell Oil Co.*,
  No. 07-CV-4296 (MJJ), 2008 WL 268986 (N.D. Cal. Jan. 30, 2008) ................... 25

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000) ................................................................................ 6

*Mastr Asset Backed Sec. Tr. 2007-WMC1, ex rel. U.S. Bank Nat. Ass'n v. WMC Mortg. LLC*,
  880 F. Supp. 2d 418 (S.D.N.Y. 2012) ................................................................. 24

*Meyersohn v. Bloom*,
  687 N.Y.S.2d 341 (App. Div. 1999) .................................................................... 21

*Milam v. State Farm Mut. Auto. Ins. Co.*,
  972 F.2d 166 (7th Cir. 1992) ........................................................................ 15

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
  599 F.3d 102 (2d Cir. 2010)................................................................... passim

*Nat. Res. Def. Council v. U.S. Dep't of Energy*,
  No. 17-CV-6989 (RWS), 2018 WL 1229733 (S.D.N.Y. Mar. 6, 2018)................................. 19

*Navarro Sav. Ass'n v. Lee*,
  446 U.S. 458 (1980)..................................................................................... 14

*Norex Petroleum Ltd. v. Access Industries, Inc.*,
  416 F.3d 146 (2d Cir. 2005)............................................................................ 19

*Park v. McGowan*,
  No. 11-CV-3454 (JG), 2011 WL 6329797 (E.D.N.Y. Dec. 16, 2011) ................................... 27

*Reserve Mgmt. Co. v. Willkie Farr & Gallagher LLP*,
  No. 11-CV-7045 (PGG), 2012 WL 4378058 (S.D.N.Y. Sept. 25, 2012) ............................... 14

*Ruso v. Morrison*,
  695 F. Supp.2d 33 (S.D.N.Y. 2010) ................................................................... 21

*Sadat v. State Univ. of N.Y. Upstate Med. Univ.*,
  No. 19-CV-5053 (JMF), 2019 WL 4511555 (S.D.N.Y. Sep. 19, 2019)................................. 16

*Shiloah v. GEICO Indem. Co.*,
  No. 24-CV-06447 (EAW), 2025 WL 762548 (W.D.N.Y. Mar. 11, 2025)............................. 20

*Siegel v. Nat'l Periodical Publ'ns, Inc.*,
  508 F.2d 909 (2d Cir. 1974)............................................................................. 4

*Siegel v. Warner Bros. Ent. Inc.*,
  542 F. Supp. 2d 1098 (C.D. Cal. 2008),
  *judgment entered*, No. CV 04-8400 (ODW) (RZx),
    2011 WL 13127546 (C.D. Cal. Mar. 15, 2011),
  *and rev'd in part on other grounds*, *Larson v. Warner Bros. Ent.*,
    504 F. App'x 586 (9th Cir. 2013) .......................................................... 4, 5, 10, 23

*Society of Composers, Authors and Music Publishers of Canada v. Canadian
  Assn. of Internet Providers* [2004] 2 SCR 427 ..................................................... 12

*Spar, Inc. v. Info. Res., Inc.*,
  956 F.2d 392 (2d Cir.1992)............................................................................. 27

*Starr Indem. & Liab. Co. v. Brightstar Corp.*,
  324 F. Supp. 3d 421 (S.D.N.Y. 2018) ............................................................. passim

*Steinlage ex rel Smith v. Mayo Clinic Rochester*,
    435 F.3d 913 (8th Cir. 2006) ......................................................................... 15

*Stichting Brein v Ziggo BV and XS4All Internet BV*
    [2017] EUECJ C-610/15 (14 June 2017)...................................................... 12

*T.B. Harms v. Eliscu*,
    339 F.2d 823 (2d Cir. 1964)............................................................... 1, 6, 10

*Tank v. Chronister*,
    160 F.3d 597 (10th Cir. 1998) .................................................................. 15, 16

*Telstra Corporation Ltd v Australasian Performing Right Association Ltd*
    [1997] HCA 41; 146 ALR 649 .................................................................... 12

*Tianhai Lace USA Inc. v. Forever 21, Inc.*,
    No. 16-CV-5950 (AJN), 2017 WL 4712632 (S.D.N.Y. Sept. 27, 2017)................. 21

*TouchTunes Music Corp. v. Rowe Int'l Corp.*,
    676 F. Supp. 2d 169 (S.D.N.Y. 2009) ........................................................ 23

*United States v. Bank of Am. Acct.*,
    No. 14-CV-723 (ATB), 2015 WL 224774 (N.D.N.Y. Jan. 15, 2015) ................... 20

*Whyte Monkee Prods. LLC v. Netflix, Inc.*,
    730 F. Supp. 3d 947 (N.D. Cal. 2024) ................................................... 1, 10

*Williams Advanced Materials, Inc. v. Target Tech. Co., LLC*,
    No. 03-CV-0276-A, 2007 WL 2245886 (W.D.N.Y. Aug. 1, 2007) ...................... 27

*X17, Inc. v. Hollywood.TV, Inc.*,
    No. 08-CV-2592 (VBF), 2008 WL 4527865 (C.D. Cal. June 24, 2008)................. 22

**Statutes**

17 U.S.C. § 304.......................................................................................... 4, 11

28 U.S.C. § 1331 ........................................................................................ 1, 13

28 U.S.C. § 1332......................................................................................... 14, 15

28 U.S.C. § 1391 ............................................................................................ 17

28 U.S.C. § 1404............................................................................... passim

Australian Copyright Act 1968 (Cth) .......................................................... 7, 15

Berne Convention Implementation Act of 1988,
   Pub. L. 100-568, 102 Stat. 2853 (Oct. 31, 1988) ............................................................... passim

Canadian Copyright Act (R.S.C., 1985, c. C-42) ...................................................................... 7, 15

Copyright Act of 1909, Pub. L. 60-349, 35 Stat. 1075, § 23 ......................................................... 10

Irish Copyright and Related Rights Act, 2000 .............................................................................. 7

United Kingdom Copyright Act of 1911 ..................................................................................... 15

United Kingdom Copyright, Designs and Patents Act 1988, c. 48 ........................................... 7, 8, 9

**Treatises**

13D, 15 Charles Alan Wright et al., *Federal Practice and Procedure, Jurisdiction* (3d ed.)

    § 3562 ............................................................................................................................ 1, 6

    § 3848 ............................................................................................................................ 19

    § 3851 ............................................................................................................................ 27

6A Charles Alan Wright et al., *Federal Practice and Procedure, Civil* § 1556 (3d ed.) ............. 14

7 William F. Patry, *Patry on Copyright* § 25:46 (2024 rev. ed.) ................................................. 10

**Other Authorities**

Restatement (Fourth) of the Foreign Relations Law of the United States
   § 112 (Am. L. Inst. 2018) ............................................................................................. 13

U.S. Courts, *CJRA Table 7* (Sept. 30, 2024) .............................................................................. 26

## INTRODUCTION

Plaintiff Mark Warren Peary ("Plaintiff") submits this memorandum in opposition to the motion of DC Comics, Inc., D.C. Comics, D.C. Entertainment, and Warner Bros. Discovery, Inc. (collectively "DC" or "Defendants") to dismiss for lack of subject matter jurisdiction or in the alternative to transfer to another federal court preferred by DC.

As to subject-matter jurisdiction, DC ignores the clear federal nature of claims for foreign copyright infringement that depend on this Court's interpretation of the Berne Convention for the Protection of Literary and Artistic Works ("Berne"), a federal treaty implemented into federal law, Berne Convention Implementation Act of 1988, Pub. L. 100-568, 102 Stat. 2853 (Oct. 31, 1988) ("Implementation Act"), as well as the resolution of questions under the U.S. Copyright Act and Berne necessary to decisions under the laws of the Foreign Reversionary Territories (as defined in Dkt. 1 ¶ 49) creating Plaintiff's causes of action. *See Whyte Monkee Prods. LLC v. Netflix, Inc.*, 730 F. Supp. 3d 947, 951-53 (N.D. Cal. 2024) (finding federal question jurisdiction as to foreign copyright infringement claims).

These substantial federal questions, actually disputed and necessary to Plaintiff's well-pleaded complaint, more than suffice to establish jurisdiction under 28 U.S.C. § 1331. *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312 (2005). Not one of Defendants' cases, which in any event predate *Grable*'s "wholehearted[] embrace[]" of this form of federal question jurisdiction, is to the contrary. 13D *Wright & Miller, Fed. Prac. & Proc. Juris.* § 3562 (3d ed.). Indeed, as to copyright in particular, this rule has been the law of the Second Circuit—and described as the majority approach—since Judge Friendly first set it out in 1964. *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1124 (9th Cir. 2010) ("In summary, the *T.B. Harms* [*v. Eliscu*, 339 F.2d 823 (2d Cir. 1964)] test requires the district court to exercise jurisdiction if:

… the complaint requires an interpretation of the Copyright Act; *or* [] federal principles should control the claims." (emphasis added)); *see also Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 347-56 (2d Cir. 2000) (reaffirming *T.B. Harms*).

While the Court need not reach the issue, with respect to diversity jurisdiction, Defendants ignore that the Foreign Reversionary Rights (as defined in Dkt. 1 ¶¶ 46-49) all vest by statute in the author's personal representative. Where, as here, that personal representative is also an ultimate beneficiary of those rights, the personal representative himself is the real party in interest, such that *his* residency is the relevant focus when determining diversity jurisdiction.

It defies reason to suggest the following belongs in state court: a case between a longtime New Mexico plaintiff and exclusively New York defendants (even if one of these longstanding New York entities now conveniently includes an uninvolved partner that, without declaring actual California business operations, lists an address there) entirely centered on copyright law (inherently federal), treaty interpretation (likewise federal), and matters affecting U.S.-foreign relations (unquestionably federal). This final point—that the determination of this case will influence how other countries view the United States' commitment to respecting their copyright laws—itself provides adequate justification for this case to be in federal rather than state court. *Hyatt Corp. v. Stanton*, 945 F. Supp. 675, 691 (S.D.N.Y. 1996) (exercising subject-matter jurisdiction when a case "requires either determinations that directly and significantly affect foreign relations or determinations of the law of international relations").

After vehemently protesting subject-matter jurisdiction, Defendants request transfer of this New York-centric action to another federal judge consistently favorable to their interests. A New York artist (Joe Shuster), working in New York, executed a grant of the Work in New York prepared by a New York publisher (DC Comics' predecessor), which published the Work from

New York; DC Comics is a New York general partnership that still exists in New York, where even its uninvolved partner with an ostensible California address is still incorporated in New York, and Warner Bros. Discovery is headquartered in New York. Even the 1992 Agreement on which Defendants rely was drafted by DC Comics in and sent from New York, which is why DC has always claimed that New York law governs it.

On these facts, transfer to the Central District of California is not available as a matter of law, because venue does not lie there. Defendants therefore cannot satisfy 28 U.S.C. § 1404(a)'s requirement that transfer be to a court "where [the case] might have been brought." Further, Defendants utterly fail to meet their burden to show by *clear and convincing* evidence that § 1404(b)'s factors weigh so "strongly in favor" of their preference as to override the Second Circuit's substantial deference to a plaintiff's chosen forum. *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.,* 599 F.3d 102, 114 (2d Cir. 2010); *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 433 (S.D.N.Y. 2018). Indeed, all Shuster-related litigation until DC's 2010 declaratory relief action took place in New York.

Defendants' motion should be denied.

## FACTUAL BACKGROUND

In 1933, Jerome Siegel and Joseph Shuster conceived Superman in New York City, creating the first superhero character who would perform feats for the public good. Dkt. 1 ¶ 19. By 1934, they had co-authored fifteen daily Superman comic strips, which they later adapted at Detective Comics' request in early 1938. *Id*. ¶¶ 20-21. On March 1, 1938, without legal representation, they signed an agreement (the "1938 Grant") prepared by Detective Comics, receiving a mere $130 total for their work. *Id*. ¶ 22. Detective Comics published their creation in *Action Comics No. 1* on April 18, 1938. *Id*. ¶ 23.

This publication and predecessor materials created solely by Siegel and Shuster contained all essential Superman elements that continue today—his origin story, core traits, and key relationships (the "Work"). *Id.* ¶ 24. Prior litigation confirmed Siegel and Shuster as the original copyright owners under the 1909 Copyright Act, but held that the 1938 Grant validly assigned worldwide rights. *Id.* ¶ 25. The authors' original ownership constitutes a critical predicate for the present dispute.

In November 2003, Plaintiff, as executor of the Shuster Estate, served a notice of termination under Section 304(c) of the U.S. Copyright Act (the "U.S. Termination"). Dkt. 1 ¶ 26. In prior litigation, DC established that U.S. termination notices solely affect U.S. rights. *See Siegel v. Warner Bros. Ent. Inc.*, 542 F. Supp. 2d 1098, 1140-42 (C.D. Cal. 2008), *judgment entered*, No. 04-CV-8400 (ODW) (RZx), 2011 WL 13127546 (C.D. Cal. Mar. 15, 2011), *and rev'd in part on other grounds*, *Larson v. Warner Bros. Ent.*, 504 F. App'x 586 (9th Cir. 2013); Dkt. 1 ¶ 26 (recognizing that copyrights are territorial, and that rights in foreign countries are governed by each country's respective laws.).

In 2010, DC filed a declaratory action claiming the U.S. Termination was invalid. Dkt. 1 ¶ 27. DC mainly relied on a perfunctory one-page 1992 agreement drafted in New York by DC's counsel ("1992 Agreement"). *Id.* ¶ 28. Shuster's brother, Frank Shuster ("Frank"), and sister, Jean Peavy ("Peavy"), signed the 1992 Agreement just weeks after Shuster's death without legal representation. *Id.* DC said the 1992 Agreement, which does not even mention the 1938 Grant, worked a novation of it under New York law. *Id.* ¶ 36. DC adopted this contradictory position despite *never* previously relying on the 1992 Agreement for its Superman rights. Instead, DC had consistently relied on the 1938 Grant, upheld in *Siegel v. Nat'l Periodical Publ'ns, Inc.*, 508 F.2d 909, 914 (2d Cir. 1974), as the basis for its worldwide Superman rights. Even long after 1992,

DC continued citing the 1938 Grant (not the 1992 Agreement) to establish its Superman chain-of-title, *including in concurrent Superman proceedings*. Pet. for Reh'g at 13, *Shuster I*, No. 12-57245 (Dkt. 37, Dec. 10, 2013); *Siegel*, 542 F. Supp. 2d at 1132.[1]

In a 2-1 memorandum disposition with a vigorous dissent, the Ninth Circuit nonetheless held the 1992 Agreement was a novation under New York law, invalidating the U.S. Termination. *DC Comics v. Pac. Pictures Corp.*, 545 F. App'x 678 (9th Cir. 2013) ("*Shuster I*"); Dkt. 1 ¶ 37. However, *Shuster I* addressed only the U.S. termination rights at issue, not foreign copyright laws or Foreign Reversionary Rights. Dkt. 1 ¶¶ 38-39. DC deliberately limited its *Shuster I* complaint to U.S. law, consistent with its position in *Siegel* that U.S. termination notices have no effect whatsoever on its foreign rights to Superman. *Id.* ¶ 39. And, of course, both the 1992 Agreement and related correspondence made no mention of Foreign Reversionary Rights, which did not vest until nearly twenty-five years thereafter. *Id.* ¶ 40.

## LEGAL STANDARD

When a defendant moves to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the party "asserting subject-matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201

---

[1] In fact, DC's 2011 counterclaims in *Siegel v. Warner Bros. Ent'mt Inc.*, No. 04-CV-8400 (C.D. Cal. 2013), *admitted* that the 1938 Grant and other pre-1992 Superman grants subsisted and had *not* been revoked or replaced. Reply Excerpts of Record at 24 ¶¶ 87, *Shuster I*, No. 12-57245 (9th Cir. Apr. 26, 2013) (Dkt. 28-2) ("All grants made by Siegel and Shuster of rights in Action Comics No. 1 [1938] are still in effect"); *id.* at 21 ¶ 69 (As to Shuster's "May 21, 1948 Consent Agreement, the grant contained therein to all copyrights related to Superman remains in full force and effect."); *id.* at 30 ¶ 112 ("The grants made by Siegel and Shuster [i.e., the 1938 Grant]…are still in effect…"); Req. Jud. Not., Ex. 2, *DC Comics v. Pac. Pictures Corp.*, 12-57245 (9th Cir. Mar. 6, 20), Dkt. 12.2 at 2 (As to Siegel and Shuster's 1938 Grant, "DC remains (through Shuster's un-terminated interests) a co-owner of the copyrights…").

F.3d 110, 113 (2d Cir. 2000). In evaluating a Rule 12(b)(1) motion, the Court may refer to evidence outside the pleadings. *Id.* at 113.

**ARGUMENT**

I.     **THIS COURT HAS FEDERAL QUESTION JURISDICTION BASED ON SUBSTANTIAL AND DISPUTED QUESTIONS OF FEDERAL LAW, NECESSARY TO RESOLVE PLAINTIFF'S WELL-PLEADED COMPLAINT.**

Federal question jurisdiction exists over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Supreme Court has long recognized that federal question jurisdiction even extends to non-federal claims that "turn on substantial questions of federal law." *Grable*, 545 U.S. at 312; *see* 13D Wright & Miller 3d *Fed. Prac. & Proc. Juris.* § 3562 (noting *Grable* was unanimous and "wholeheartedly embraces" this form of federal question jurisdiction).

Substantial federal question jurisdiction exists where a cause of action not created by federal law necessarily raises a federal issue that is: (1) actually disputed, (2) substantial, and (3) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Grable*, 545 U.S. at 312. All three requirements are met here. Further, there is federal question jurisdiction under *T.B. Harms*, because Plaintiff's "complaint requires an interpretation of the Copyright Act; or [] federal principles should control the claims." *JustMed*, 600 F.3d at 1124.

A.     **This Case Presents Uniquely Federal Issues Under Berne, the Implementation Act, and U.S. Copyright Act.**

The United States acceded to Berne on November 16, 1988, and it entered into force with the Implementation Act on March 1, 1989. Pub. L. 100-568, 102 Stat. 2853 (Oct. 31, 1988). There can be no question—and Defendants do not question—that these, along with the U.S. Copyright Act, are federal treaties and laws.

6

Instead, Defendants cite cases quoting a provision in the Implementation Act stating: "The provisions of the Berne Convention…shall not be enforceable in any action brought pursuant to the provisions of the Berne Convention *itself*." *Id.* § 3(a)(2) (emphasis added). This provision, and the pre-*Grable* cases Defendants cite regarding it, including *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236 (S.D.N.Y. 2000), and *Bridgeman Art Libr., Ltd. v. Corel Corp.*, 25 F. Supp. 2d 421 (S.D.N.Y. 1998), are irrelevant. Plaintiff has not brought an action pursuant to "the Berne Convention itself."[2] He has brought an action for Canadian copyright infringement, Dkt. 1 ¶ 71 (citing Canadian Copyright Act (R.S.C., 1985); U.K. copyright infringement, *id.* ¶ 81 (citing U.K. Copyright, Designs and Patents Act 1988); Irish copyright infringement, *id.* ¶ 91 (citing Irish Copyright and Related Rights Act, 2000); and Australian copyright infringement, *id.* ¶ 101 (Australian Copyright Act 1968). Even in *Carell*, the claims under the laws of Australia, Canada, Japan, and the U.K were allowed to proceed on other grounds; only those "under the Berne Convention and UCC" were dismissed. 104 F. Supp. 2d at 258-59.

Moreover, even though Berne is not self-executing, Congress has in fact executed it. While the Implementation Act bars causes of action brought directly under Berne itself, this is because Congress declared in the preceding clause that such claims are unnecessary because "[t]he provisions of the Berne Convention—(1) shall be given effect under title 17, as amended

---

[2] Indeed, *Columbia Marine Servs., Inc. v. Reffet Ltd.*, 861 F.2d 18 (2d Cir. 1988), which Defendants erroneously cite for their argument that only self-executing treaties confer federal question jurisdiction, is actually to the contrary. The case *Reffet* cites for the point that non-self-executing treaties do not create federal *causes of action* unequivocally held there was nonetheless federal question *jurisdiction*. *Id.* at 21 (citing *Dreyfus v. Von Finck*, 534 F.2d 24, 28 (2d Cir. 1976) ("The District Court held that it had [§ 1331] jurisdiction to consider plaintiff's treaty-based claims, because plaintiff's right to recover 'will be sustained if the treaties of the United States are given one construction and will be defeated if they are given another.' This analysis was proper.")).

by this Act, *and any other relevant provision of Federal* or State law, *including the common law.*" Pub. L. 100-568, 102 Stat. 2853, § 3(a)(1) (emphasis added). In this case, the only way to "give[] effect" to the "provisions of the Berne Convention" that provide Plaintiff with the benefits and protection of foreign copyright laws regarding the Work is to exercise jurisdiction over this case.

Failure to do so would mean that the United States has *not* "given effect" to its commitment: "Authors shall enjoy, in respect of works for which they are protected under this Convention, in countries of the Union other than the country of origin, the rights which their respective laws do now or may hereafter grant to their nationals" and "such enjoyment and such exercise shall be independent of the existence of protection in the country of origin of the work." Berne, art. 5(1)-5(2).

### B.    Plaintiff's Well-Pleaded Complaint Presents Questions Under Berne and U.S. Copyright Law that Are Substantial and Disputed.

Plaintiff's well-pleaded claims necessarily raise questions under Berne and U.S. copyright law. Taking as but one example, the U.K. cause of action for Defendants' "Infringement by communication to the public," U.K. Copyright, Designs and Patents Act 1988 (c. 48), §§ 16(1)(d), 20 (addressing streaming), requires Plaintiff to show Defendants' prior and imminent acts amount to:

(1) "the making available to the public of the work by electronic transmission in such a way that members of the public may access it from a place and at a time individually chosen by them";[3]

---

[3] U.K. Copyright, Designs and Patents Act 1988 (c. 48), §§ 20(1)(a), 2(b).

(2) of, *inter alia*, "an adaptation…of a non-dramatic work," here the Work, that "is converted into a dramatic work," *e.g.*, DC's new *Superman* movie, Dkt. 1 ¶¶ 23, 80-81;[4] and

(3) of which Plaintiff is the owner by virtue of the fact:

    a) Shuster "was the first owner of the copyright" in the Work;[5]

    b) Shuster made the "grant of any interest in it before 1st June 1957";[6]

    c) "the expiration of 25 years from the death of the author" has occurred;[7]

    d) Plaintiff is Shuster's legal personal representative;[8] and

    e) the copyright's term subsists.[9]

As an initial matter, foreign infringement claims, for example under U.K. law, require application of Berne's national treatment principle in Article 5 and federal choice-of-law rules. *Itar-Tass Russian News v. Russian Kurier*, 153 F.3d 82, 90-92 (2d Cir. 1998). Defendants claim they do not contest these federal questions—though only time will tell. But, even after this threshold question, Defendants have vigorously contested several elements of Plaintiff's exemplative *prima facie* case above.[10]

*First*, to establish Shuster's status as "the first owner of the copyright" (along with Siegel), Plaintiff must show the Work was not a work-made-for-hire under the U.S. Copyright

---

[4] *Id.* § 21(1)-(3).

[5] U.K. Copyright, Designs and Patents Act 1988 (c. 48), Schedule I, § 27(1). "First owner" includes joint owners. U.K. Copyright, Designs and Patents Act 1988 (c. 48), § 10(3).

[6] U.K. Copyright, Designs and Patents Act 1988 (c. 48), Schedule I, § 27(1).

[7] *Id.*

[8] *Id.* § 27(2).

[9] *Id.* § 27(2) & (3)(c).

[10] To the extent Defendants' reply assures they will not contest an issue, the Court should not credit such when issued for strategic purposes at the outset of litigation.

Act of 1909 (applicable to works created before January 1, 1978). Otherwise, DC's predecessor would be the "first owner," invalidating Plaintiff's Foreign Reversionary Rights claims. Dkt. 26-12 at 15. Defendants strongly contested this threshold element of Plaintiff's *prima facie* case (Dkt. 1 ¶ 51) in the 2008 *Siegel* litigation, and there is no guarantee they will not do so again here. *Siegel*, 542 F. Supp. 2d at 1126-30. As the Supreme Court noted in *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 749-50 (1989), consistent application of the work-made-for-hire doctrine in the U.S. is vital to the stability of our copyright regime.[11] This question clearly satisfies both the *Grable* and *T.B. Harms* tests. *See Whyte Monkee*, 730 F. Supp. 3d at 951-53.

*Second*, determining infringement requires the Court to establish the existence and duration of the Foreign Reversionary Rights, which hinges on determining that the Work secured and maintained valid U.S. copyright protection as of October 31, 1989, the Implementation Act's effective date, and had not fallen into the public domain (e.g., by not satisfying copyright notice requirements or the proper copyright renewal claimant failing to file a renewal registration). Copyright Act of 1909, Pub. L. 60-349, 35 Stat. 1075, § 23.

Article 7(8) of Berne, which codifies "the rule of the shorter term," provides:

> In any case, the term [of copyright] shall be governed by the legislation of the country where protection is claimed; however, unless the legislation of that country otherwise provides, the term shall not exceed the term fixed in the country of origin of the work.

---

[11] There is also no question the four common law countries would look to U.S. law to determine this issue, as they effectively apply *lex originis* as a matter of comity. *E.g.*, *Folkes v. Greensleeves Publishing Ltd.*, 1997 WL 1918053, ¶¶ 16-17 (Ont. Gen. Div. 1997) (Canada); *see Whyte Monkee*, 730 F. Supp. 3d at 952 n.2 (U.K. and New Zealand, summarizing common-law approach); *see also* 7 Patry on Copyright § 25:46 n.7.

Further, Article 28(1) of Berne provides:

> This Convention shall apply to all works which, at the moment of its coming into force, have not yet fallen into the public domain in the country of origin through the expiry of the term of protection.

Here, as the U.S. is the "country of origin," both the existence and duration of Plaintiff's Foreign Reversionary Rights depend on the length of protection under U.S. copyright law per Berne's "rule of the shorter term." Berne, art. 7(8).

*Third*, Berne requires copyright duration for joint works be calculated from the last surviving author's (Siegel) death. Berne, art. 7*bis* ("The provisions of the preceding Article [concerning copyright duration] shall also apply in the case of a work of joint authorship, provided that terms measured from the death of the author shall be calculated from the death of the *last* surviving author." (emphasis added)). Since Siegel died January 28, 1996, Berne extends protection until 2046 for both creators, *see id.* art. 7(5), while U.S. law limits protection to 2033, *i.e.*, 95 years from the Work's first publication, 17 U.S.C. § 304(b). This discrepancy between Berne (incorporated into the laws of the Foreign Reversionary Territories) and the U.S. Copyright Act requires resolution—a point Defendants will not concede given the thirteen years' worth of revenue at stake.

*Fourth*, determining whether Defendants' prior and contemplated streaming of derivative works of the Work (e.g., film and television productions) constitutes copyright infringement in the Foreign Reversionary Territories requires construction of Berne. For example, in *Dramatico Entertainment Ltd & Ors v British Sky Broadcasting Ltd & Ors* [2012] EWHC 268 (Ch), the U.K. court cited Berne nineteen times in resolving a question of infringement by streaming, *id.*

11

¶¶ 30-32, 47, 54, 62-63, and consulted Court of Justice decisions and World Intellectual Property Organization guides interpreting Berne, *id.* ¶¶ 47, 54.[12]

Canadian and Australian courts do the same, *e.g. Society of Composers, Authors and Music Publishers of Canada v. Canadian Assn. of Internet Providers* [2004] 2 SCR 427, ¶ 43; *Telstra Corporation Ltd v Australasian Performing Right Association Ltd* [1997] HCA 41; 146 ALR 649. Ireland, as part of the EU, falls under the jurisdiction of the Court of Justice of the European Union, which also regularly cites Berne to decide such issues. *Stichting Brein v Ziggo BV and XS4All Internet BV* [2017] EUECJ C-610/15 (14 June 2017).

Finally, Plaintiff's position that the U.S. termination rights decided in *Shuster I* do not impact foreign copyrights hinges on interpreting U.S. copyright law's territorial limits—a threshold federal question. Dkt. 1 ¶¶ 39-41.

These disputed federal issues qualify as "substantial" under *Grable*. The factors to determine when federal issues are "substantial" are whether the issue: (1) is a "pure issue of law"; (2) is "dispositive of the case"; and (3) involves "a strong federal interest in the availability of a federal forum." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700-01 (2006). All three factors are present here: the issues present dispositive and pure questions of law, and there is a strong federal interest in a federal forum for copyright and other matters related to U.S. treaties. The U.S. has a compelling federal interest in uniformly interpreting treaty obligations, particularly for intellectual property, where inconsistent rulings could undermine international relations and treaty compliance. *See Gunn v. Minton*, 568 U.S. 251, 260 (2013); *see also* 28 U.S.C. § 1338.

---

[12] This and the following streaming-related foreign cases address exactly the kind of technical liability issues related to streaming services, like Warner Bros. Discovery's Max platform, which has hosted and continues to host infringing derivative films and TV shows.

Exercising federal question jurisdiction in this case would reaffirm rather than disrupt the congressionally approved balance of federal and state judicial responsibilities. This case requires interpreting U.S. obligations under Berne—a matter directly affecting federal comity, foreign relations, and international intellectual property policy. Courts consistently recognize treaty interpretation and foreign relations issues as substantial federal questions warranting federal question jurisdiction. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398 (1964) (holding that "our relationships with other members of the international community must be treated exclusively as an aspect of federal law."); *Hyatt Corp.*, 945 F. Supp. at 691; *see also* Restatement (Fourth) of the Foreign Relations Law of the United States § 112 (Am. L. Inst. 2018) ("The determination and interpretation of international law present federal questions"); *id* § 112 cmt. A ("The conclusive authority of the United States Supreme Court to determine and interpret international law for all courts in the United States derives from the character of that law as federal law." (citing § 111 cmt. D)).

Congress has already determined that federal courts have exclusive jurisdiction over copyright cases, a principle that should extend to international copyright matters, consistent with the federal interest in ensuring uniform interpretation of intangible, cross-jurisdictional rights and U.S. treaty obligations. Rejecting jurisdiction would inappropriately delegate critical federal treaty and foreign relations questions to state courts, risking inconsistent interpretations that would undermine U.S. policy objectives and compliance with international obligations.

For these reasons, the Court has federal question jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331, as they necessarily raise substantial, disputed federal issues concerning a congressionally implemented treaty, U.S. Copyright Act provisions, and federal common law. Exercising jurisdiction thoroughly aligns with the congressionally approved balance of federal

and state judicial responsibilities. *See Reserve Mgmt. Co. v. Willkie Farr & Gallagher LLP*, 2012 WL 4378058, at *7 (S.D.N.Y. Sept. 25, 2012) (finding malpractice claim relating to securities litigation supports federal question jurisdiction under § 1331) (citing *Katz v. Holland & Knight LLP*, 2009 WL 367204, at *4 (E.D. Va. Feb. 12, 2009) (same, copyright claims)).

## II.    THIS COURT HAS DIVERSITY JURISDICTION UNDER 28 U.S.C. § 1332.

Though moot given clear federal question jurisdiction, Defendants' challenge to diversity jurisdiction should also fail. Their arguments—that (1) Plaintiff should be deemed a California citizen due to Shuster's California residence at death; and (2) the New York company, EC Publications, Inc. (one alleged partner of New York Defendant DC Comics) allegedly moved its principal place of business to California—raise more questions than they answer.

The Supreme Court has established that, for diversity jurisdiction, courts must consider only the citizenship of "real and substantial parties to the controversy," and "must disregard nominal or formal parties[.]" *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980) (quotations and citations omitted). This principle is rooted in federalism, *see* 6A Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1556, and requires courts to base citizenship determinations on factual realities, not mechanical rules, *Baumgartner v. United States*, 322 U.S. 665, 670 (1944). Here, the reality is that Plaintiff is a longtime New Mexico citizen, asserting Foreign Reversionary Rights that vested in him personally as both executor and Shuster's nephew. Dkt. 1 ¶ 10.

Defendants cite 28 U.S.C. § 1332(c)(2), which states that "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent." However, courts have consistently ruled that application of § 1332(c)(2) depends on the capacity in which the legal representative brings suit and the nature of the rights asserted. *Steinlage ex rel*

14

*Smith v. Mayo Clinic Rochester*, 435 F.3d 913, 920 (8th Cir. 2006) (holding after comprehensive review of case law since Congress added amended § 1332(c)(2) in 1998 that "we believe that it remains necessary to determine whether representative plaintiffs, variously labeled by a state legislature[] represent the estates of decedents" rather than themselves, because "substance rather than labels should drive analysis.").

This distinction is critical. The Foreign Reversionary Rights automatically vest in the legal personal representative twenty-five years following an author's death under applicable foreign copyright laws. Dkt. 26 at 8-10 (collecting statutes). Unlike traditional estate assets that belonged to the decedent and so the decedent's citizenship controls, these entitlements did not exist during the author's lifetime and vest decades after death. Indeed, under the 1911 U.K. Copyright Act as well as the copyright acts of Canada and Australia, authors cannot assign Foreign Reversionary Rights during their lifetime. U.K. Copyright Act of 1911 (c. 46), § 5(2); Canadian Copyright Act (R.S.C., 1985, c. C-42), § 14(1); Australian Copyright Act 1968 (Cth), § 239(4)(c). These rights therefore only ever belong to the personal representative and *his* assignee(s) (usually the author's family), and here Plaintiff is both. Since most estates conclude probate well before twenty-five years after the author's death, the anomalous timeline here should not obscure the functional reality that the Foreign Reversionary Rights belong to Plaintiff personally.

Multiple Courts of Appeal endorse a functional approach to § 1332(c)(2) in examining whether rights vests in the representative plaintiff personally or in the estate. *Mayo Clinic Rochester*, 435 F.3d at 917; *Tank v. Chronister*, 160 F.3d 597 (10th Cir. 1998); *Milam v. State Farm Mut. Auto. Ins. Co.,* 972 F.2d 166 (7th Cir. 1992) (Posner, J.).

It also bears noting that, as Plaintiff is one of only two surviving Shuster family members and a longtime New Mexico resident, this case lacks the manufactured diversity concerns that motivated § 1332(c)(2). *Tank*, 160 F.3d at 599, 602. Instead, Plaintiff "has a real, beneficial interest in the lawsuit and, as one of decedent's heirs, is entitled to a share of any eventual recovery." *Id*. Exercising jurisdiction aligns with the fundamental diversity principle that the citizenship of the real party-in-interest should determine jurisdiction.

Further, E.C. Publications is unrelated to Superman. Without discovery, Plaintiff cannot contest the convenient relocation of its headquarters from New York to California, but notes that DC's declaration does not represent that E.C. conducts any actual business from California. Dkt. 31 ¶¶ 2-8. If the Court must "look through" New York Defendant DC Comics to one of its partners for citizenship purposes, and then look past that partner's New York incorporation to a purported California headquarters, the Courts of Appeals' functional approach to representative actions justifies looking through to Plaintiff's true citizenship—New Mexico.

## III.    DC IS NOT ENTITLED TO TRANSFER VENUE.

It is undisputed that venue is proper in this Court. "In evaluating a transfer motion, a court must determine whether the case could have been filed in the proposed transferee district and, if so, determine whether convenience and the interests of justice favor transfer." *Sadat v. State Univ. of N.Y. Upstate Med. Univ.,* 2019 WL 4511555, at *2 (S.D.N.Y. Sep. 19, 2019) (citing *Glass v. S & M NuTec, LLC*, 456 F. Supp. 2d 498, 501 (S.D.N.Y. 2006)). "The latter inquiry is guided by a non-exhaustive set of factors, including: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means

of the parties, (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interests of justice." *Id.* (citing *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010); *Fellus v. Sterne, Agee & Leach, Inc.*, 783 F. Supp. 2d 612, 617-18 (S.D.N.Y. 2011)).

"A plaintiff's choice of forum, however, should be disturbed only when 'the balance' of these factors 'is strongly in favor of the defendant.'" *Id.* (quoting *Lykes Bros. S.S. Co. v. Sugarman*, 272 F.2d 679, 680-81 (2d Cir. 1959)). "Moreover, the moving party bears the burden of establishing, by 'clear and convincing evidence' that transfer is proper." *Id.* (quoting *N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 114).

## A. Venue Is Not Proper in the Central District of California.

Venue is not proper in the Central District of California under 28 U.S.C. § 1391. Under § 1391(b)(1), venue is improper because not "all defendants are residents of the State" of California. Defendant DC Comics is incorporated in New York, with one partner allegedly headquartered in California, but none of the remaining Defendants is an alleged California citizen. Dkt. 31 at 16.

Under § 1391(b)(2), venue is not proper because this case involves no physical property, and "a substantial part of the events or omissions giving rise to the claim" did not occur in California. 28 U.S.C. § 1391(b)(2). While some of Defendants' derivative Superman works may have been produced in California (among other locations), that does not "give rise to" Plaintiff's claims for foreign copyright infringement; only their exploitation in the Foreign Reversionary Territories does. DC is permitted (per *Shuster I*) to produce and distribute derivative works anywhere in the U.S., making domestic production locations entirely irrelevant.

Finally, it is undisputed that venue is proper in this Court, rendering the fallback provision of § 1391(b)(3) inapplicable. *Daniel v. Am. Bd. Of Emergency Med.*, 428 F.3d 408, 434 (2d Cir. 2005) (holding "venue may be based on that subsection only if venue cannot be established in another district pursuant to any other venue provision.").

Accordingly, § 1404(a) expressly precludes transfer because this action could *not* "have been brought" in the Central District of California. *Izkhakov v. Educ. Comm'n for Foreign Med. Graduates*, 2012 WL 2861338, at *2 (S.D.N.Y. July 10, 2012).

**B.    DC Has Not Carried Its Heavy Burden to Show by Clear and Convincing Evidence that § 1404(b)'s Factors Weigh Strongly in Its Favor.**

DC's venue transfer request should also be denied because it wrongly frames this case as centered on *Shuster I*, *see* Dkt. 31 at 20-21, rather than, as the Complaint makes clear, foreign rights left wholly unaddressed by that case at Defendants' insistence. DC misstates the legal standard, ignores the strong deference due Plaintiff's chosen venue, and disregards the substantial connection between the present claims and this District.

1.    *The Party Seeking Transfer Must Show that § 1404(b)'s Factors Weigh "Strongly in Favor of" Overriding Plaintiff's Chosen Venue.*

Defendants wrongly suggest that the Court should give little or no weight to the Plaintiff's choice of forum—where they do not dispute venue is proper—and instead invite a *de novo* inquest to determine if *their* preferred venue is convenient. That is not the law. "[A] plaintiff's choice of forum is presumptively entitled to substantial deference." *Gross v. British Broadcasting Corp.*, 386 F.3d 224, 230 (2d Cir. 2004); *In re Warrick*, 70 F.3d 736, 741 (2d Cir. 1995) ("[Plaintiff's] choice of venue [is] entitled to substantial consideration"); *Starr Indem.*, 324 F. Supp. 3d at 433 (holding plaintiff's choice of forum "is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the

defendant" (internal quotation marks omitted)); *see generally* 15 Wright & Miller, *Fed. Prac. & Proc. Juris.* § 3848 ("[A] motion to transfer under Section 1404(b) should not be granted lightly. After all, by definition, these are cases in which the plaintiff's choice of venue is proper under the applicable venue provisions.").

Given the deference owed to a plaintiff's choice of venue, a party seeking transfer, like DC, must show by "clear and convincing evidence" that the § 1404(b) factors compel transfer. *N.Y. Marine*, 599 F.3d at 114. Consequently, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Norex Petroleum Ltd. v. Access Industries, Inc.*, 416 F.3d 146, 154 (2d Cir. 2005). The standard is demanding: Plaintiff's venue choice "should only be disturbed if that choice is completely and utterly outweighed by the severe inconvenience of the defendant." *Laumann Mfg. Corp. v. Castings USA, Inc.,* 913 F. Supp. 712, 721 (E.D.N.Y. 1996).

As shown below, the balance of the § 1404(b) factors favor maintaining Plaintiff's chosen venue. But, even if this Court found these factors neutral or moderately favoring DC, transfer should still be denied, as DC "ha[s] not provided the type of 'clear-cut showing' necessary." *Casper Sleep, Inc. v. Nectar Brand LLC*, 2019 WL 4727496, at *7 (S.D.N.Y. Sept. 27, 2019).

> 2.     *DC Fails to Meet Its Burden to Show by Clear and Convincing Evidence that § 1404(b)'s Factors Weigh Strongly in Its Favor.*

DC's own admission that many § 1404(b) factors are "neutral," Dkt. 31 at 23, confirms it has not made the "clear-cut showing" necessary to overcome the deference accorded in the Second Circuit to Plaintiff's choice of forum. *Casper*, 2019 WL 4727496, at *7 (citations omitted); *Starr Indem.*, 324 F. Supp. 3d at 433; *Nat. Res. Def. Council v. U.S. Dep't of Energy*, 2018 WL 1229733, at *6 (S.D.N.Y. Mar. 6, 2018) ("[W]here the balance of convenience is in

19

equipoise, plaintiff's choice of forum should not be disturbed."). As to the remaining factors, DC improperly flips the analysis by arguing that Plaintiff will not be inconvenienced by *DC's* preferred forum, Dkt. 31 at 23. But that is not the test. DC fails to carry its "burden of establishing by clear and convincing evidence that" New York is an inconvenient forum. *Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Env't Consulting, Inc.*, 2023 WL 8650266, at *1 (S.D.N.Y. Dec. 14, 2023) (citing *N.Y. Marine,* 599 F.3d at 114).

**Convenience of Witnesses[13] & Availability of Process.** DC fails to demonstrate any witness inconvenience in New York, and admits key witnesses are deceased except for non-party Paul Levitz, a longtime New York resident. Dkt. 31 at 23. "The convenience of non-party witnesses is accorded more weight than that of party witnesses." *Shiloah v. GEICO Indem. Co.*, 2025 WL 762548, at *4 (W.D.N.Y. Mar. 11, 2025) (citations omitted); *see also United States v. Bank of Am. Acct.*, 2015 WL 224774, at *6 (N.D.N.Y. Jan. 15, 2015) ("The convenience of non-party witnesses is one of the most important factors[.]"). DC's ability to fly Levitz cross-country does not prove New York is *inconvenient. Caldwell v. Slip-N-Slide Records, Inc*., 2011 WL 3251502, at *3 (S.D.N.Y. July 26, 2011) ("In a motion to transfer venue, the movant bears the burden of identifying any and all potential witnesses who would [be] inconvenienced if the suit were to remain in the forum chosen by plaintiff."). This factor therefore supports maintaining venue in this District.

**Locus of Operative Facts.** There is a strong connection between Plaintiff's claims and this District. The key facts regarding Siegel and Shuster's creation of Superman "on spec," its publication by DC's predecessor in *Action Comics No. 1,* the 1948 and 1974 court decisions

---

[13] Courts often consider the "convenience of witnesses" the most important of the § 1404(b) factors. *See Starr Indem.*, 324 F. Supp. 3d at 437.

confirming the authors' original ownership of Superman, and even the 1992 Agreement touted by DC—all occurred in New York. Dkt. 1 ¶¶ 19, 22, 32. This District's connection to the Work, the Complaint's allegations, and other cases in this District concerning Shuster's interest in Superman,[14] that are equally if not more relevant as the California case, give substantial weight to Plaintiff's choice to bring this case here and militate against transfer. *See Starr Indem.*, 324 F. Supp. 3d at 433.

DC admits that Plaintiff's foreign copyright infringement claims do not favor California over New York, Dkt. 31 at 24 (citing "*Tianhai Lace USA Inc. v. Forever 21, Inc.*, 2017 WL 4712632, at *5 (S.D.N.Y. Sept. 27, 2017) (noting the key question is 'where the *infringement* occurred'"), further demonstrating that DC has not met its burden.[15]

**Forum's Familiarity with Governing Law.** DC admits the 1992 Agreement it solely relies upon is governed by New York law. Dkt. 31 at 11. This Court is obviously well-suited and accustomed to applying New York law. While other districts can interpret out-of-state law, the record in *Shuster I* indicates confusion regarding New York law. *Shuster I*, 545 F. App'x at 683 (Thomas, J., dissenting) (criticizing majority's clear misapplication of New York novation law); *see Ruso v. Morrison*, 695 F. Supp.2d 33, 53 (S.D.N.Y. 2010) ("'New York courts have set a stringent standard for novation.'"); *Meyersohn v. Bloom,* 687 N.Y.S.2d 341, 342 (App. Div. 1999) (requiring that parties manifest an "unequivocal intention to extinguish prior contract."). Further, New York City is unquestionably the international business center of the world, and

---

[14] *Siegel & Shuster v. Nat'l Periodical Pubs.*, No. 69-CV-1429 (S.D.N.Y. Oct. 18, 1973) (Lasker, J.); *Siegel & Shuster v. Nat'l Comics Pubs, Inc.*, No. 1099-1947 (N.Y. Sup. Ct. [Rochester]).

[15] DC argues its derivative new "Superman" movie was produced in Los Angeles, but that is immaterial. The filming location has no legal relevance to the movie's infringing exploitation in the Foreign Reversionary Territories.

district courts in this Circuit, particularly this District, routinely apply foreign law, while California courts shy away.[16]

*Location of Documents.*  DC admits this factor is neutral in an era of electronic documents, Dkt. 31 at 18. It therefore does not support transfer.

*Relative Means of the Parties.*  Plaintiff is of modest means and has free room available in New York for the duration of any trial. Toberoff Decl. ¶¶ 2-3. Defendants are multi-billion-dollar corporations for whom such a quotidian concern might not seem important, but the cost of extended stays in Los Angeles are considerable to ordinary people.

*Trial Efficiency and the Interests of Justice.* After asserting that federal courts have no subject matter jurisdiction, DC's entire motion to transfer rests on its claim that Judge Wright is purportedly better equipped than this Court to resolve this case concerning foreign copyright infringement merely because thirteen years ago he decided *Shuster I.* As an initial matter, transfer is to a *district* or *division*, not an individual judge. 28 U.S.C. 1404(a). There is no guarantee this case would be assigned to Judge Wright or, given California courts' reluctance to consider foreign copyright claims, that he would exercise jurisdiction. *See supra* p. 22 n.16.

---

[16] *Compare Jose Armando Bermudez & Co. v. Bermudez Int'l*, 2000 WL 1225792, at *5 (S.D.N.Y. Aug. 29, 2000) ("[C]ourts of this Circuit frequently consider issues of foreign law, which may be implicated by…the ownership of the copyrights in question."), *and Armstrong v. Virgin Records, Ltd.*, 91 F. Supp. 628, 637 (S.D.N.Y. 2000) ("Not only is this Court called upon to enter bramble bushes, briar patches, and other thorny legal thickets on a routine basis…but a number of persuasive authorities and commentators have also indicated that the exercise of subject matter jurisdiction is appropriate in cases of transnational copyright infringement."), *with ITSI T.V. Prods., Inc. v. Cal. Auth. of Racing Fairs*, 785 F. Supp. 854, 866 (E.D. Cal. 1992) (declining supplemental jurisdiction with reluctance "to enter the bramble bush of ascertaining and applying foreign law," *aff'd in part*, 3 F.3d 1289 (9th Cir. 1993), *quoted with approval in Friedman v. Zimmer*, 2015 WL 6164787, at *6 (C.D. Cal. July 10, 2015) ("We are of the same mind") and *X17, Inc. v. Hollywood.TV, Inc.*, 2008 WL 4527865, at *5 (C.D. Cal. June 24, 2008) (declining to entertain foreign copyright claim).

DC's emphasis on *Shuster I* is misplaced in any event. This case distills to new and distinct legal issues, including key questions of foreign law that, based on the pleadings, U.S. copyright law, and DC's own representations, were never before Judge Wright or the Ninth Circuit in *Shuster I*, 545 F. App'x at 681 (discussing only U.S. law); *see Siegel*, 542 F. Supp. 2d at 1140 ("Left expressly intact and undisturbed were any of the rights the original grantee or its successors in interest had gained over the years from the copyright through other sources of law, notably the right to exploit the work abroad that would be governed by the copyright laws of foreign nations."). DC's assertion that *Shuster I* decided these issues is frivolous.

DC's claim that *Shuster I*, based on Peavy's 1992 Agreement, is preclusive here is equally erroneous as a matter of law because the Shuster Estate was not probated until 2003, when Plaintiff was appointed executor. According to the Ninth Circuit in *Shuster I*, this issue of Peavy's legal authority (or lack thereof, per Judge Thomas's considered dissent) to handle assets worth over $60,000 or bind the Shuster Estate was *waived*, 545 F. App'x at 681 n.3; *id.* at 682-83 (Thomas, J., dissenting)*,* and therefore never "actually litigated." *Fuchberg & Fuchberg v. Galizia*, 300 F.3d 105, 109 (2d Cir. 2002). Additionally, the Foreign Reversionary Rights at issue did not vest in Plaintiff until 2017 and 2021 (Canada) and cannot be pre-assigned as a matter of law. *See supra* p. 15.

DC's suggestion that "Peary's counsel initiated the other two prior Superman litigations in Los Angeles" to imply DC did not choose the venue in *Shuster I* is misleading. As DC knows, the cases to which it refers were consolidated into a single case, and filed on behalf of *Siegel's* heirs who were Los Angeles residents, not Plaintiff. *Siegel*, 542 F. Supp. 2d 1098.

In *TouchTunes Music Corp. v. Rowe Int'l Corp.*, this District denied a transfer motion despite prior litigation between the parties in the transferee forum because "the relative balance

of the usual convenience factors is nearly in equipoise other than the plaintiff's choice of forum, which weighs significantly in favor of [plaintiff] in the circumstances of this case and the relationship of the parties." 676 F. Supp. 2d 169, 175-76 (S.D.N.Y. 2009). "[C]ourts in this circuit are loath to disturb a plaintiff's choice of forum absent a showing that 'the balance of convenience and justice weighs heavily in favor of transfer.'" *Central Sports Army Club v. Arena Assocs.,* 952 F. Supp. 181, 189 (S.D.N.Y. 1997) (citations omitted).

DC cites and quotes out of context mostly out-of-circuit cases that provide no support for transfer here. Several cases DC cites concern *pending* class actions in the transferee districts and are significantly distinguishable on that basis, as the transfer analysis fundamentally differs when concurrent litigation exists elsewhere. For example, in *Goggins*, the court transferred to the District of New Jersey where six consolidated actions with identical parties and overlapping securities-related claims were already pending, noting that as "this is a securities class action" plaintiff's forum choice is given "less weight." *See Goggins v. Alliance Capital Management, L.P.*, 279 F. Supp. 2d 228, 231-32 (S.D.N.Y. 2003). *Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*, further confirms this class-action distinction by denying transfer despite one overlapping action pending elsewhere, demonstrating that even a pending parallel case does not automatically justify transfer. 2020 WL 1888950, at *5 (E.D. Pa. Apr. 16, 2020) (distinguishing *Goggins* and denying transfer).

Similarly, in *Mastr Asset Backed Sec. Tr. 2007-WMC1, ex rel. U.S. Bank Nat. Ass'n v. WMC Mortg. LLC*, quoted by DC, the avoidance of inconsistent results was implicated because an action was "*currently pending* in [another] district involv[ing] the same parties and claims." 880 F. Supp. 2d 418, 420-21 (S.D.N.Y. 2012) (emphasis added). DC also cites *Berman v. Informix Corp.*, which involved a *pro se* plaintiff filing his individual securities fraud action a

year after more than twenty related class actions were already proceeding in California—a case with obvious judicial efficiency concerns that simply do not exist here. 30 F. Supp. 2d 653, 655 (S.D.N.Y. 1998).

*Geringer v. Strong*, cited by DC, likewise involved two *pending*, related actions in different districts, raising duplicative litigation concerns. 2016 WL 2732134 (C.D. Cal. May 9, 2016). Importantly, *AXIS Reinsurance Co. v. Northrop Grumman Corp.,* in denying transfer, distinguished *Geringer*, noting that "when cases have similar factual backgrounds but present different legal issues, judicial economy does not necessarily favor a transfer." No. 17-CV-8660 (AB), 2018 WL 3326670, at *5 (C.D. Cal. Mar. 27, 2018) (collecting cases).

DC's assertion that "the distinct legal claims" here (foreign copyright infringement), as compared to those at issue in *Shuster I* thirteen years ago (validity of U.S. Termination), "makes no difference to the analysis" is simply wrong and unsupported by its cases. DC cites *Madani v. Shell Oil Co.*, which, like *Goggins*, afforded less deference to plaintiff's choice of forum because of a related pending class action in the transferee forum where both cases concerned price-fixing claims under Section 1 of the Sherman Act. 2008 WL 268986, at *2 (N.D. Cal. Jan. 30, 2008). DC's assertion that these claims were different because one asserted a "per se" theory, while the other, the "rule of reason," is unavailing; it is the *same claim* under the *same statute*, merely differing as to methods of proof.

Even in *Anderson v. Michaels Stores, Inc.*, with pending actions on the same claim for unpaid overtime compensation, the court distinguished the *Madani* class action and denied transfer, reasoning:

> Defendant contends that the interest of justice favors transfer to the Central District because transfer will avoid duplicative litigation, place the case before a judge who has already adjudicated similar claims, and result in speedier resolution of the case. The court is mindful that Judge

25

> Wu has already adjudicated related cases, but there is no guarantee that
> transferring this action to the Central District would result in assignment
> to Judge Wu…Moreover, this court sees no reason it cannot bring this
> case to a just resolution.

2014 WL 1613952, at *3-4 (E.D. Cal. Apr. 22, 2014). This reasoning applies even more

forcefully here regarding a different case from thirteen years ago.

Practically speaking, transferring to *Defendants'* preferred forum offers no efficiency,

only delay. Defendants' preferred judge in California has eleven civil cases pending over three

years, seven specifically delayed by trial scheduling issues. This Court in contrast has only four

such cases, with just one citing trial availability. Admin. Office of the U.S. Courts, *CJRA Table

7*, at 434, 6795 (Sept. 30, 2024), *available at* https://tinyurl.com/5a99h4fk. Further, DC did not

seek to transfer this case until March 5, Dkt. 29, and only in strategic response to Plaintiff's

preliminary injunction motion, Dkt. 25, having previously requested two months just to respond

to the Complaint. Dkt. 17.

With DC's planned *Superman* release in July 2025, transfer now would be inefficient

and indeed, injurious. This case will have been pending for more than two months by the time

DC's motion is decided. Compared with this Court, which is already familiar with the issues in

this case, a transferee court is unlikely to resolve Plaintiff's motion for preliminary injunction in

time. *See, e.g.*, *Khing v. Nay Lin*, 2015 WL 4523238, at *2 (E.D.N.Y. July 27, 2015) (denying

motion to transfer to avoid delay).

The "interests of justice" also do not favor DC's transfer motion, which is motivated by

brazen judge-shopping. In the early days of the *Siegel* case, Judge Larson ruled in favor of that

co-author on principal issues. But following Judge Larson's retirement, *Siegel* and *Shuster I* went

before Judge Wright, who consistently ruled in DC's favor in both cases; and in *Shuster I*, did so

even after expressing pointed conclusions that were completely irreconcilable with his later

ruling. *Compare DC Comics v. Pac. Pictures Corp.*, No. 10-CV-3633 (ODW) (RZx), 2012 WL 4936588, at *4 (C.D. Cal. Oct. 17, 2012) (finding implied novation) *with* Toberoff Decl. Ex. 5 at 48, lns. 6-7 (Judge Wright dismissing the notion that the 1992 Agreement constituted a novation as "lunacy"), and *id*. at 55, ln. 10 (sarcastically stating he was certain DC would prefer to exchange "a clear, unequivocal grant...from 1938" for "this ephemeral thing [the 1992 Agreement]"); *see also Williams Advanced Materials, Inc. v. Target Tech. Co.*, *LLC*, No. 03-CV-0276-A, 2007 WL 2245886, at *6 (W.D.N.Y. Aug. 1, 2007) (third-party defendants "are seeking to engage in forum shopping.…[They] want the action transferred to California where [third-party plaintiff] has received unfavorable rulings. 'The purpose of § 1404(a) is not to allow judge-shopping by litigants.' While the motion is being made under the pretense that it is more convenient for the moving parties, the true motivation behind it is 'judge-shopping.'" (citation omitted)); *Spar, Inc. v. Info. Res., Inc.,* 956 F.2d 392, 395 (2d Cir.1992) (affirming refusal to transfer venue when "plaintiffs' attempt to transfer the case was, in some respect, forum shopping").

In short, DC has failed to demonstrate by "clear and convincing" evidence that California is a clearly "superior" venue to this District. *See Park v. McGowan*, 2011 WL 6329797, at *4 (E.D.N.Y. Dec. 16, 2011); *N.Y. Marine*, 599 F.3d at 114. DC improperly asks the Court to ignore Plaintiff's allegations and rely instead on DC's views, which is wholly at odds with this case's current procedural posture. At this pleading stage, DC cannot rewrite Plaintiff's claims as laid out in the operative complaint to suit its preference for another venue. *See* 15 Wright & Miller, *Fed. Prac. & Proc. Juris.* § 3851 (the Court's "evaluation [should be] based on the posture of the case at the time of the request for a change of venue.") (citing *In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004)).

Having failed to present the "clear and convincing evidence" required to overcome Plaintiff's choice of forum, DC's motion to transfer should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion in its entirety and bring this case to a just resolution.

Dated:   March 21, 2025                    TOBEROFF & ASSOCIATES, P.C.

                                           */s/ Marc Toberoff*
                                           Marc Toberoff
                                           23823 Malibu Road, Suite 50-363
                                           Malibu, CA 90265
                                           Telephone: (310) 246-3333
                                           Facsimile: (310) 246-3101

                                           *Attorneys for Plaintiff Mark Warren Peary,*
                                           *individually and as executor of the Estate of*
                                           *Joseph Shuster*

## **CERTIFICATE OF WORD COUNT**

I certify that, excluding the caption, table of contents, table of authorities, signature block, and this certification, the foregoing Memorandum of Law contains 8,638 words, calculated using Microsoft Word, which complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.


Dated:   March 21, 2025

*/s/ Marc Toberoff*
Marc Toberoff
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

*Attorneys for Plaintiff Mark Warren Peary,*
*individually and as executor of the Estate of*
*Joseph Shuster*

29