**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK WARREN PEARY,<br><br>               Plaintiff,<br><br>     v.<br><br>DC COMICS, INC.; DC COMICS; DC ENTERTAINMENT, INC.; WARNER BROS. DISCOVERY, INC.; and DOES 1-10,<br><br>            Defendants. | Case No. 1:25-cv-00910-JMF |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

## INTRODUCTION

One way or another, this case should not proceed in this Court. At the threshold, the Court lacks subject-matter jurisdiction over Peary's Complaint. Nothing in his opposition alters that conclusion. Despite bringing claims in both his individual capacity *and* his capacity as executor of Shuster's estate, Peary attempts to manufacture complete diversity by asking the Court to ignore the latter capacity because, he claims, any reversionary rights "vested in him personally" *as executor*. Opp. 14. But that made-for-litigation conception of how those rights work ignores the plain language of the relevant statutes—which provide that the reversionary interest devolves on the author's legal personal representatives *as part of the author's estate*—and defies a common-sense understanding of an executor's role. The inescapable truth is that Peary-as-executor is bringing claims as a representative of Shuster's estate and is therefore a California citizen under the diversity-jurisdiction statute. Because DC Comics is also a California citizen, this Court lacks diversity jurisdiction.

Peary's arguments for federal-question jurisdiction fare no better. Conceding that his substantive claims are brought under foreign-law causes of action, Peary resorts to a *Grable* theory of federal jurisdiction—*i.e.*, that resolution of his claims requires addressing embedded issues of federal law or Berne Convention interpretation. But none of those issues is necessarily raised in his Complaint, actually disputed, *and* substantial, all of which he must show.

Accordingly, this case should be dismissed.

If the Court does find jurisdiction, it should transfer this dispute to the Central District of California. Contrary to Peary's assertions, venue clearly is proper in Los Angeles—the probate proceedings that he contends permit him to bring his claims were initiated there 22 years ago and have remained pending to facilitate this action. He also never objected to the Los Angeles venue where the *Superman I* case was litigated over the course of six years. The § 1404 transfer factors

strongly favor a transfer.  Peary fails to grapple with his decision to pursue this litigation outside

his home district, which diminishes any deference to his chosen forum.  Beyond that, trial

efficiency and the interest of justice—the two most important transfer factors—are dispositive.

The threshold (and most significant) merits issue is whether Judge Wright's rulings in *Superman*

*I* regarding the scope and effect of the 1992 Agreement have preclusive effect.  Judge Wright is

in the best position to resolve that issue.  Peary cannot persuasively argue otherwise.

## MOTION TO DISMISS

## I.  There is no diversity jurisdiction because the parties are not completely diverse.

Peary does not dispute that complete diversity of *all* plaintiffs from *all* defendants is

required to invoke diversity jurisdiction.  Mot. 8.  Instead, he launches misguided attacks on his

own California citizenship (in his capacity as executor of Shuster's estate) and the California

citizenship of DC Comics.  Both arguments miss the mark.

Although Peary brought this suit in both his individual capacity and his capacity as

executor of Shuster's estate, he seeks to repudiate the latter capacity, arguing that the foreign

reversionary rights at issue "vested in him personally."  Opp. 14.  But this view contradicts the

plain language of the four reversionary provisions at the center of the Complaint, all of which

state that the reversionary interest devolves on the author's legal personal representatives "*as*

*part of [the author's] estate*" (or some close variant thereof).  *E.g.*, U.K. Copyright, Designs and

Patents Act 1988, c. 48, Sch. I, ¶ 27(2); Canadian Copyright Act of 1985 § 14(1); Irish Copyright

and Related Rights Act, 2000, Sch. I, Pt. I, § 16(2); Australian Copyright Act 1968, § 239(4)(b).

Even the Complaint acknowledges that Peary must bring his claim for reversion rights in

his capacity as executor.  Peary admits that "the Foreign Reversionary Rights vest only in the

[legal] personal representative of an author's estate," and he claims to be such a qualifying

representative *as executor*, stating the Superman rights allegedly "reverted to Plaintiff *as the executor of Shuster's estate*." Compl. ¶¶ 41, 56 (all emphases added unless noted). Peary contends these rights are somehow personal to him as executor, but that makes a mockery of the purpose behind the foreign reversion scheme. Reversionary rights do not devolve on the executor personally as some sort of compensation for their administrative troubles; they devolve on the executor *in that representative capacity*, with the expectation that the benefits will inure to the appropriate beneficiary.

Peary's position rests on a claimed conceptual "distinction" between reversionary rights and "traditional estate assets." Opp. 15. He suggests that because "authors cannot assign [the reversionary rights] during their lifetime" (unlike traditional estate assets), the rights never belong to the decedent and "only ever belong to the personal representative." *Id.* But Peary's core premise—that reversionary rights are not capable of alienation by the author—is wrong. UK and Irish law expressly permit authors to make such assignments during their lifetime, just like with other assets. *E.g.*, U.K. Copyright, Designs and Patents Act 1988, c. 48, Sch. I, ¶ 27(2) (providing that a "reversionary interest . . . may after [June 1, 1957] be assigned by the author during his life"); Irish Copyright and Related Rights Act, 2000, Sch. I, Pt. I, § 16(2) (similar). Because some of these reversionary rights are capable of alienation by the author/decedent, Peary's justification for why they belong to him personally falls apart.[1]

Peary's arguments also run afoul of the diversity-jurisdiction statute. The alignment between 28 U.S.C. § 1332(c)(2), which provides that "the legal representative of the estate of a

---

[1] If the author does *not* make such an assignment during his lifetime, the reversionary interest immediately devolves on his legal personal representative as part of his estate. As DC will show (if necessary), that is exactly how Jean Peavy, by operation of Shuster's will, obtained any reversionary interest that may have existed—and validly assigned it to DC in 1992.

decedent shall be deemed to be a citizen only of the same State as the decedent," and the foreign reversion provisions, which vest reversion rights in the "legal personal representative" or "legal representative" of the deceased author, could not be clearer. Peary brings claims in his capacity as executor of the Shuster estate—as he must—and in that capacity he is a California citizen. He cannot belatedly establish diversity jurisdiction by renouncing that indispensable role—especially when that is how he pleaded his Complaint. *See* Compl. 1 (bringing claims "individually *and in his capacity as executor of the Estate of Joseph Shuster*").

Peary's commentary on DC Comics' citizenship is equally unpersuasive. Hornbook law establishes that DC Comics, as a general partnership, is a California citizen through E.C. Publications, Inc., one of its partners. Mot. 8-9. While Peary quibbles with language in the Smith Declaration, he does not actually contest E.C.'s principal place of business is in California.

## II. There is no embedded federal issue that creates federal-question jurisdiction.

Peary concedes he advances no claims under the U.S. Copyright Act or the Berne Convention. Instead, he argues for jurisdiction on a *Grable* theory of embedded federal-copyright and Berne Convention issues. But only a "special and small category" of cases satisfy *Grable*'s demanding requirements. *Gunn v. Minton*, 568 U.S. 251, 258 (2013). To invoke federal-question jurisdiction, Peary must show his claims contain an embedded federal issue that is (i) necessarily raised, (ii) actually disputed, (iii) substantial, and (iv) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *See Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). "This is not a balancing test—if any one of these four prongs is absent, there is no federal jurisdiction." *Qatar v. First Abu Dhabi Bank PJSC*, 432 F. Supp. 3d 401, 414 (S.D.N.Y. 2020).

Peary cannot satisfy his burden under any of the four theories he now presses. *First*, he argues that establishing Shuster's status as the "first owner of the copyright" requires confirming the original work was not a work made for hire under the U.S. Copyright Act of 1909. Opp. 9-10. But even if that were true, the federal issue would not be substantial. Substantial issues "go beyond the application of some federal legal standard to private litigants' . . . claims, and instead implicate broad consequences to the federal system or the nation as a whole." *Pritika v. Moore*, 91 F. Supp. 3d 553, 558 (S.D.N.Y. 2015). These "broad consequences" are not just applications of established doctrines to particular facts, but *generally* applicable rulings. *E.g.*, *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 146 (2d Cir. 2021) (finding substantial a "purely legal [issue] concerning the preemptive effect of a federal statute"); *Grable*, 545 U.S. at 315 (finding substantial the issue of notice requirements imposed on IRS by federal law before it could seize property); *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 201 (1921) (federal interest substantial because "decision depend[ed] upon the determination" of "the constitutional validity of an act of Congress"). Applications of established work-made-for-hire principles are "fact-bound and situation specific," and certainly not "controlling in *numerous* other cases," *Gunn*, 568 U.S. at 262-63—not to mention that the issue is mooted by a dispositive, subsequent agreement with DC.[2]

*Second*, Peary contends that "determining infringement requires the Court to establish the existence and duration of the Foreign Reversionary Rights, which hinges on determining that the Work secured and maintained valid U.S. copyright protection as of October 31, 1989, the [Berne Convention] Implementation Act's effective date." Opp. 10. But neither party actually disputes

---

[2] *Grable*, not the *T.B. Harms* case Peary cites, is the controlling test here. "All four of the *Grable* requirements *must* be met for jurisdiction to be proper under § 1331." *Wolfson v. Ernst*, 112 F. Supp. 3d 167, 172 (S.D.N.Y. 2015).

the validity of the Work's copyright as of that date.  Indeed, if Peary *were* contesting the point, then by his own logic, he would doom his claims.

*Third*, resolving the alleged discrepancy between U.S. copyright law and the Berne Convention regarding copyright duration, *see* Opp. 11, is an irrelevant issue not necessarily raised.  Whether the Superman copyrights extend to 2033 or 2046 is not a ripe question and, regardless, has no bearing on whether Peary possesses reversionary rights or DC is liable for infringement.  For the same reason, the issue is insubstantial.  *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) (a substantial federal question is raised when its resolution is "dispositive of the case").

*Fourth*, Peary argues that "determining whether [DC's] prior and contemplated streaming of derivative works of the Work . . . constitutes copyright infringement in the Foreign Reversionary Territories requires construction of Berne."  Opp. 11.  Tellingly, Peary does not identify *any* specific Berne-interpretation issue relevant here, let alone one that is disputed or substantial.  Instead, he cites four foreign copyright opinions that cite the Berne Convention—and he asks the Court to fill in the blanks.  That showing is insufficient to invoke federal jurisdiction.  *See Veneruso v. Mt. Vernon Neighborhood Health Ctr.*, 933 F. Supp. 2d 613, 622 (S.D.N.Y. 2013) ("'[M]ere presence' of a federal issue . . . does not confer federal jurisdiction.").

*Finally*, Peary asserts that his "position that the U.S. termination rights decided in [*Superman I & II*] do not impact foreign copyrights hinges on interpreting U.S. copyright law's territorial limits."  Opp. 12.  That statement misconstrues DC's preclusion defenses.  DC is not arguing that Peary's lack of U.S. termination rights forecloses his foreign-law claims.  Rather, Judge Wright's and the Ninth Circuit's rulings regarding the scope and effect of the 1992 Agreement are preclusive—and when applied faithfully here, they fatally undermine Peary's

claims. Those rulings applied New York contract law. *See DC Comics v. Pac. Pictures Corp.*, 2012 WL 4936588, at *4 (C.D. Cal. Oct 17, 2012) ("*Superman I*").

## MOTION TO TRANSFER

It is obvious why Peary filed this case in New York—2,000 miles from his home in New Mexico—and so stridently opposes transfer: He wants to avoid the California court that considered and conclusively decided in DC's favor the very issues that Peary seeks to relitigate. The law prevents such blatant forum-shopping, and gives little-to-no deference to such a plaintiff's forum choice. *E.g.*, *Mitchell v. Deutsche Bank Nat'l Tr. Co*., 2015 WL 12867746, at *3 (C.D. Cal. Oct. 29, 2015) (transfer appropriate "when it appears that a plaintiff is avoiding a forum because of prior unfavorable rulings"); *De Jesus v. Nat'l R.R. Passenger Corp.*, 725 F. Supp. 207, 208 (S.D.N.Y. 1989) (weight given to plaintiff's choice of forum "diminished" where he files outside home district). Peary has no response to these authorities. *See* Mot. 18.

The remaining § 1404 factors weigh strongly in favor of transfer, and Peary's arguments mischaracterize facts and law alike:

**Venue, Convenience, and Party Means.** Peary's contention that venue in Los Angeles is improper and inconvenient defies credulity. For the past 22 years, Peary and his counsel have invoked the protections of Los Angeles courts in a misguided effort to avoid the 1992 Agreement and recapture rights in Superman. In 2003, Peary initiated probate proceedings in Los Angeles Superior Court to replace his mother as executor of Shuster's estate (without her knowledge). *See Superman I*, Dkt. 491 at 16-17 (No. 2:10-cv-03633) (DC's Opp. to Peary's Mot. for Partial Summ. J. (C.D. Cal. Sept. 21, 2012)). *These Los Angeles proceedings remain ongoing today*, as Peary has regularly petitioned the probate court to keep the proceedings open so he can chase Superman copyrights. *E.g.*, Decl. of Matt Kline Exs. A-C (filings from *In re Est. of Shuster*, No.

BP080635 (L.A. Super. Ct. July 23, 2003)); *id.* Ex. B. (Suppl. to Clear Probate Notes at 2 (July 3, 2024) (Court's probate note: "the Estate has been open for 20+ years – administration needs to close"; Peary's response: "the Estate should remain open, as certain rights with respect to Shuster's copyright interests can only be exercised by the executor or administrator of his Estate")).

Los Angeles is also where the parties spent 2010 through 2016 litigating the same issues concerning the scope and effect of the 1992 Agreement that Peary seeks to relitigate here. Peary argues DC initiated that litigation, but omits that he never, in six years, argued venue was improper in Los Angeles—and cannot belatedly do so now.[3]

Los Angeles is also where Marc Toberoff—Peary's attorney and business partner—lives. Remarkably, Toberoff asserts Peary is welcome to stay at his New York apartment, but not the guest house at his Malibu home. Dkt. 39-1 ¶¶ 3-4. Toberoff omits that his joint venture agreement with Peary—formed "for the purpose of retrieving, enforcing and exploiting" Shuster's rights in Superman—required that Toberoff's Los Angeles-based company cover Peary's travel costs. *Superman I*, Dkt. 459-3 at 109-110 (Ex. 32 to DC's Mot. for Part. Summ. J. (Jul. 16, 2012)); *see In re Pac. Pictures Corp.*, 679 F.3d 1121, 1124 (9th Cir. 2012); *Superman I*, 2012 WL 4936588, at *11; *DC Comics v. Pacific Pictures Corp.*, 545 F. App'x 678, 682 (9th Cir. 2013) ("*Superman II*").

**Interests of Efficiency, Justice, and Consistency.** Peary does not dispute that courts consider trial efficiency and the interests of justice to be the "most important" factors. Mot. 14.

---

[3] Peary's contention that Los Angeles is inconvenient for *DC witness* Paul Levitz, Opp. 20, is not credible. If Levitz's testimony is required, DC will produce him in Los Angeles. *See* Mot. 18.

The threshold merits issue in this case is whether, as DC contends, Judge Wright's rulings in *Superman I* that the 1992 Agreement (i) revoked and replaced Shuster's original 1938 copyright grant to DC; (ii) granted "all" of Jean Peavy's copyrights in Superman to DC; and (iii) is binding on Shuster's estate are dispositive of Peary's claims in this case. *Superman I*, 2012 WL 4936588, at *4-9; *Superman II*, 545 F. App'x at 681 n.3. Judge Wright presided over *Superman I* for six years and is intimately familiar with the parties, facts, and law. He is best positioned to enforce his own rulings and determine their preclusive effect. Mot. 14 (collecting cases). Peary has no response to DC's authorities for this self-evident proposition.[4]

Peary contends that issue (iii) above—whether the 1992 Agreement is binding on Shuster's estate—was not decided in the prior litigation because he "waived" appeal of the issue, so it lacks preclusive effect. Opp. 23. That is as preposterous as it is false. Peary selectively quotes from a footnote in the Ninth Circuit's opinion, which says the opposite of what he claims. The Ninth Circuit *actually* recognized that the question whether Jean Peavy had authority to bind Shuster's estate to the 1992 Agreement was both actually litigated and necessarily decided in the district court proceedings, and declined to disturb that ruling because Peary failed to challenge it. *Superman II*, 545 F. App'x at 681 n.3. That the Ninth Circuit declined to review or reverse Judge Wright's ruling does not mean it lacks preclusive effect—it means that ruling remains final, binding, and preclusive. *See GAF Corp. v. Eastman Kodak Co.*, 519 F. Supp. 1203, 1213

---

[4] Peary attempts to distinguish a separate line of cases holding that transfer is warranted to avoid inconsistent interpretations of the same contract, on the ground that some (not all) involved still-pending cases in the transferee district. Opp. 24-25. That misses the point. Those courts' decisions to transfer were driven by a desire to avoid inconsistent results—here, that goal can best be accomplished via transfer to the court that conclusively determined the 1992 Agreement's scope and effect. Mot. 16-17; *see Mastr Asset Backed Sec. Tr. 2007-WMC1, ex rel. U.S. Bank Nat'l. Ass'n v. WMC Mortg. LLC*, 880 F. Supp. 2d 418, 425 (S.D.N.Y. 2012) ("[I]t is more efficient to have one court interpret the same contracts, rather than multiple courts potentially arriving at inconsistent results.").

(S.D.N.Y. 1981) ("[f]ailure to raise . . . issues on appeal" that were "vigorously litigated" below "does not alter their preclusive effect"); *Frazer Exton Dev., L.P. v. Kemper Env't, Ltd.*, 2007 WL 756494, at *1 (S.D.N.Y. Mar. 13, 2007) ("It is hornbook law that an affirmance by an appellate court 'ratifies, confirms, and declares that the trial court judgment was correct, as if there had been no appeal.'") (quoting 5 Am. Jur. 2d. Appellate Review § 833). Were the rule otherwise, litigants would simply not appeal adverse rulings, so another court could revisit them—an inefficient, unfair, and illogical outcome.

**Remaining Factors.** The other § 1404 factors support a transfer or are neutral. Peary agrees the location of documents is irrelevant in the era of electronic production. Opp. 22.

As for the locus of operative facts, Peary does not dispute that his claims allege infringement "in connection with the distribution and exploitation" of Superman works in *foreign* territories, Compl. ¶¶ 71, 81, 91, 101, or that "the key question is 'where the *infringement* occurred'"—*i.e.*, abroad. Opp. 21. And while some historical facts did occur in New York, DC and the movie studio that made the allegedly infringing Superman movie are based in Los Angeles. Mot. 19. (Peary's claim that his uncle originated Superman in New York is also wrong; Shuster claimed it was conceived in Ohio.)

As for familiarity with governing law, Peary's arguments that California federal courts are unqualified to apply New York law, and that only New York federal courts should interpret foreign laws because New York is "unquestionably the international business center of the world," Opp. 21, do not merit serious discussion. As the Ninth Circuit confirmed, Judge Wright capably and "correctly" applied New York law in interpreting the 1992 agreement. *Superman II*, 545 F. App'x at 680. There are countless other cases in which California federal courts decided New York contract-law questions. *See, e.g.*, *Farrar v. Cupcake Digit., Inc.*, 2017 WL 395311, at

*4 (C.D. Cal. Jan. 26, 2017) ("federal district courts 'regularly apply the law of states other than the forum state'"); *Bare Body Laser Spa, Inc. v. Billings*, 2024 WL 3445333, at *11 (S.D.N.Y. July 17, 2024) (familiarity with governing state law "is typically . . . accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the substantive law of other states").  And California federal courts are equally qualified to apply to interpret foreign laws.  *Cf. Wallert v. Atlan*, 141 F. Supp. 3d 258, 265 n.3, 278 (S.D.N.Y. 2015) (noting "[t]he Court has no familiarity with the copyright laws of" Australia, Ireland, New Zealand, or the U.K.).

## CONCLUSION

DC's motion should be granted.

Dated:   March 25, 2025

Respectfully submitted,

O'MELVENY & MYERS LLP

By:   _/s/ Daniel M. Petrocelli_

Daniel M. Petrocelli (admitted *pro hac vice*)
Matt Kline (admitted pro hac vice)
Cassandra L. Seto (admitted *pro hac vice*)
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Office: (310) 553-6700
Fax: (310) 246-6779
dpetrocelli@omm.com
mkline@omm.com
cseto@omm.com

Natasha W. Teleanu
Danielle Feuer
1301 Avenue of the Americas, Suite 1700
New York, NY 10019-6022
Office: (212) 326-2000
Fax: (212) 326-2061
nteleanu@omm.com
dfeuer@omm.com

*Counsel for Defendants*

## **CERTIFICATE OF WORD COUNT (L.R. 7.1(C))**

Pursuant to Local Rule 7.1(c), I hereby certify that, excluding the caption, signature block, and this certificate, the foregoing Memorandum of Law contains 3,407 words, counted using the Microsoft Word program used to prepare it.  It therefore complies with the word-count limitation of Local Rule 7.1(c).


Dated:   March 25, 2025                              */s/ Daniel M. Petrocelli*
                                                  _____

                                                     Daniel M. Petrocelli