# EXHIBIT A

# In The Matter Of:

*LAURA SIEGEL LARSON*

*v.*

*WARNER BROS. ENTERTAINMENT INC. AND DC COMICS*

_____

## *ORAL ARGUMENT*
### *November 5, 2012*

_____

**MERRILL CORPORATION**

**LegaLink, Inc.**                          20750 Ventura Boulevard
                                                            Suite 205
                                            Woodland Hills, CA 91364
                                            Phone: 818.593.2300
                                            Fax: 818.593.2301

Appeal Nos. 11-56863, 11-56034
IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

LAURA SIEGEL LARSON,
Plaintiff, Counterclaim-Defendant, Appellant,
and Cross Appellee,

v.

WARNER BROS. ENTERTAINMENT INC. AND DC COMICS,
Defendants, Counterclaimants, Appellees,
and Cross-Appellants.

_____

ON APPEAL FROM THE UNITIED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
THE HONORABLE OTIS D. WRIGHT II, JUDGE
CASE NO. CV-04-8400 ODW (RZx)

_____

ORAL ARGUMENT
HEARD BEFORE NINTH CIRCUIT PANEL:
REINHARDT, THOMAS, SEDWICK
NOVEMBER 5, 2012

TRANSCRIBED BY:  MELANIE M. FAULCONER
CSR NO. 6420

ORAL ARGUMENT - 11/5/2012

Page 2

1      PASADENA, CALIFORNIA
2      NOVEMBER 5, 2012
3
4          ---0---
5
6      MARC TOBEROFF, ESQ.:  May it please the Court.  Good
7  morning, your Honors.  My name is Marc Toberoff and I
8  represent the Plaintiff, Laura Siegel Larson.
9      I'd like to reserve 10 minutes of my 20 minutes
10 for rebuttal, if I may.
11     The Copyright Act's termination provisions were
12 designed to remedy the tremendous imbalance of power
13 between author/creators and media companies and to give
14 an author and an author's family an opportunity after a
15 very long waiting period to participate in the increased
16 market value of their works by finally recovering their
17 copyrights for the extended renewal term.
18     This case has become emblematic of the kind of
19 war of attrition an author's family must endure before
20 vindicating those rights.
21     I'm going to first turn to Warner Bros.'s
22 alleged settlement agreement defense.
23     Warner Bros.'s defense is based on a false
24 contract -- construct that it can artificially limit the
25 legal analysis to a single October 19th letter from the

Page 3

1  Siegels' attorney and call that a contract, regardless
2  of the differing the terms in Warner Bros.'s October
3  26th counteroffer and vastly different terms in Warner
4  Bros.'s February 1st counteroffer, which were part and
5  parcel of the exact same contract negotiation.
6      The cases Warner Bros. relies on are in the
7  opposite, particularly the Facebook case.
8      In the Facebook case, unlike here, you had a
9  binding contract signed by the parties.  That contract
10 also contained a stipulation saying that it would be
11 binding and enforceable in a court of law.  So the
12 question before the Ninth Circuit was whether the terms
13 of that contract were sufficiently definite to be
14 enforceable.  And of course this Court, since it
15 basically called for the payment of fixed amounts of
16 cash and stock, found that it was enforceable.
17     None of that exists here.  After the
18 termination --
19     JUDGE REINHARDT:  Are you saying there was no
20 contract or that the contract, if it existed, was not --
21 not a contract that could be enforced?
22     MARC TOBEROFF, ESQ.:  There was no contract signed
23 by the parties.
24     JUDGE REINHARDT:  No.  I said -- that's your first
25 contention, that there's no contract.

Page 4

1      Is it your second contention or is that the
2  issue, whether there was a contract?
3      MARC TOBEROFF, ESQ.:  In this case --
4      JUDGE REINHARDT:  Yes.
5      MARC TOBEROFF, ESQ.:  -- the issue is whether
6  there's a binding contract.
7      JUDGE REINHARDT:  Okay.
8      MARC TOBEROFF, ESQ.:  So here after the effective
9  date of the settlement -- of the Siegels' termination in
10 April of 1999, on again/off again settlement discussions
11 ensued.
12     And on October 9th, John Schulman on behalf of
13 Warner Bros., their general counsel, and Kevin Marks on
14 behalf of the Siegels held a telephone conference.
15     On October 16th, Marks sends over a letter
16 purporting to set forth the terms that were discussed on
17 October 16th.
18     On October 19th in his letter, he's -- he's
19 going over the terms, but it's an equivocal letter
20 because at the end he says, "John, if I got anything
21 wrong, please let me know."
22     JUDGE THOMAS:  Why do you say that's equivocal?
23     MARC TOBEROFF, ESQ.:  Because it shows at the very
24 beginning it's indefinite because he's unsure of --
25     JUDGE THOMAS:  No.  That's using typical language.

Page 5

1  It makes -- "this is what I see."
2      I mean, the response to it, if they -- if they
3  had written back and said, "No.  You're right," you'd
4  have to agree that there's a contract; right?
5      MARC TOBEROFF, ESQ.:  That could be the case.
6      JUDGE REINHARDT:  What could be the case?
7      MARC TOBEROFF, ESQ.:  Well, you said --
8      JUDGE REINHARDT:  "This is absolutely right.  This
9  is the contract we agreed to," isn't -- wouldn't that be
10 enough?
11     MARC TOBEROFF, ESQ.:  It's further along than the
12 facts here, but what happened here isn't --
13     JUDGE REINHARDT:  That I know, but that wasn't the
14 question.
15     MARC TOBEROFF, ESQ.:  Okay.
16     JUDGE REINHARDT:  All right.  So this could be the
17 contract if the parties agreed to it?
18     MARC TOBEROFF, ESQ.:  That's correct, if the party
19 agreed to material terms, you could have a contract.
20     JUDGE REINHARDT:  Yeah.
21     So you don't think that it's proper for a
22 lawyer who says, "This is the contract we agreed to.  If
23 you have any question about it" --
24     MARC TOBEROFF, ESQ.:  I don't think it's --
25     JUDGE REINHARDT:  -- "tell me"?

                                    2 (Pages 2 to 5)

ORAL ARGUMENT - 11/5/2012

Page 6

1    MARC TOBEROFF, ESQ.: -- improper at all, but I
2    don't think that forms --
3    JUDGE REINHARDT: But, I mean, that shows
4    uncertainty?
5    MARC TOBEROFF, ESQ.: It's not an unequivocal
6    acceptance of terms, but -- but even that --
7    JUDGE REINHARDT: No. It's a statement of the
8    terms.
9    MARC TOBEROFF, ESQ.: It's a statement of what he
10   perceived the terms as discussed on October 16th.
11       On October 26th, Schulman writes back while
12   he -- Marks then goes off to China. On October 26th,
13   Schulman writes back and in effect says, "You got it
14   wrong. Enclosed is a more fulsome outline of what we
15   believe the terms of the deal are."
16       That constitutes a counteroffer because the
17   terms outlined in the October 26th letter from Schulman
18   materially differ from the terms in the October 19th
19   letter from Marks.
20       A counteroffer in the State of California
21   extinguishes Marks' offer. Marks' offer itself is a
22   counteroffer because he purports to accept an offer on
23   October 16th that Schulman then tells him was never
24   made. You could stop right there --
25   JUDGE THOMAS: He didn't say that. He said that's

Page 7

1    "a more fulsome outline."
2        I mean, we have a -- there are sort of two
3    issues. One is, did the parties ever agree to the
4    terms? And -- and, two, were the terms embodied in the
5    first letter and-- and should a court enforce that?
6        And we've had -- there are cases that go a
7    little bit all over the map on that, but, I mean, there
8    are a lot of cases in which you say, "All right. We
9    know you added some terms, but this is the agreement the
10   Court is going to enforce," and it's the simple
11   agreement as to terms.
12       So what -- what tells you that they're making a
13   true counteroffer as opposed to adding a bunch of
14   conditions that a court could later say, "Well, we're
15   not going to put those in because obviously the parties
16   didn't agree to them"?
17   MARC TOBEROFF, ESQ.: Well, there's no agreement by
18   Warner Bros. as to the terms set forth in his letter.
19   In fact, there's disagreement. There's disagreement as
20   to the properties that are being assigned. There's
21   disagreement as to the essential term of compensation,
22   which you're dealing with a -- you're not dealing here
23   with a payment of cash and stock. You're dealing with a
24   complex royalty system applicable to multiple media
25   where you're dealing with Marks that says, "We will not

Page 8

1    indemnify Warner Bros. We'll only warrant -- we haven't
2    sold these rights to someone else," and Warner Bros.
3    adding six or seven warranties with indemnifications
4    attached.
5    JUDGE REINHARDT: Well, both sides agreed that they
6    had agreed to a contract.
7    MARC TOBEROFF, ESQ.: No. Both sides perceived that
8    they had a deal in principle. And the cases have said
9    that a deal in principle does not make a binding
10   contract.
11       What happens is in his October 26th
12   counteroffer Schulman doesn't stop there but he makes
13   reference and incorporates by reference a February 1st
14   draft that then comes in and widens the gap between the
15   parties even further.
16       On -- on May 9th, Joanne Siegel reacts to the
17   new and different terms that are being added by Warner
18   Bros. and -- and rejects those terms and says, "There
19   will -- there is no agreement."
20       And on May 26th -- she wrote a letter to the
21   CEO of Time Warner, Dick Parsons. On May 26th, 2002
22   Dick Parsons writes back and acknowledges that they had
23   no agreement. He says, "We hope the parties can arrive
24   at an agreement."
25       From that point on, from October 19th of 2001

Page 9

1    until we filed suit in -- in October of 2004, Warner
2    Bros. not once said that, "We have an agreement and we
3    accept the terms in the October 19th letter." They were
4    totally silent for three years about that.
5        They come up with this concocted defense when
6    we filed suit to enforce the termination rights. Under
7    cop- --
8    JUDGE THOMAS: You've described a lot of factual
9    considerations.
10       Why -- why isn't this a matter for trial as
11   opposed to summary judgment?
12   MARC TOBEROFF, ESQ.: Because contract formation is
13   based on the objective manifestations of the parties'
14   intent. And here you have that objective manifestation
15   in the form of three or four undisputed documents: the
16   October 19th offer or counteroffer, the October 26th
17   counteroffer, the February 26th counteroffer, the May
18   9th rejection, and the May 26th letter in response
19   acknowledging that there's no agreement.
20       Warner has not come up with anything that
21   creates a genuine issue of material fact.
22       It -- the Court not only was allowed to rule on
23   summary judgment, it was required to rule on summary
24   judgment.
25   JUDGE THOMAS: Why do you say that, "required"?

3 (Pages 6 to 9)

ORAL ARGUMENT - 11/5/2012

Page 10

1    MARC TOBEROFF, ESQ.: Because -- because based on --
2   based on this undisputed objective manifestation of the
3   parties' intent there, was no meeting of the minds on
4   the material terms. The Court rightly said, "I can
5   point to no document that contains the parties'
6   agreement."
7        Warner Bros. -- a negotiation is a give and
8   take. You can't take an offer -- you can't go back
9   freeze in time and take an offer that a party made, a
10  proposal that you eviscerated by the counteroffer,
11  continued to grind the other side in negotiations, and
12  when that fails, reach back and try and resuscitate a
13  offer that has been extinguished by a counteroffer.
14   JUDGE REINHARDT: Well, an agreement was reached,
15  according to your client's lawyer -- right? -- and he
16  advised the other side on August 9th that, "I must
17  caution. I believe an agreement was reached last
18  October, albeit subject to documentation."
19       So the issue was whether the documentation
20  reflected the agreement.
21   MARC TOBEROFF, ESQ.: The contract fell apart, as
22  many contract negotiations, in the attempt to focus on
23  the details of the agreement.
24   JUDGE REINHARDT: There was an agreement and then
25  there was a dispute over the details, the documentation

Page 11

1   of it.
2    MARC TOBEROFF, ESQ.: No. There was a deal in
3   principle. But that deal in principle, for instance,
4   involved a 6 percent royalty. That 6 percent royalty
5   had all sorts of sliding scale reductions. There were
6   exclusions as to revenues to -- to which that royalty
7   would apply, would not apply. You had very important
8   issues (unintelligible) studio agreements. You have a
9   series of warranties that have indemnifications attached
10  to them, and if someone is found that you've breached
11  that warranty, they withhold the money on the royalty.
12   JUDGE THOMAS: No. I understand that.
13   MARC TOBEROFF, ESQ.: The question is not whether
14  that's an unusual term. The question is whether it
15  had -- it was contained in the October 19th letter. And
16  here he's saying, "There will be no indemnification from
17  the Siegels."
18       So the question is, does that become a material
19  term of the agreement?
20       And it certainly is a material term. The fact
21  you have such indemnities customarily in agreements I
22  would submit is not the issue.
23       The question is, did they agree to it on
24  October 19th? And they didn't.
25       Did Warner Bros. make that the condition of an

Page 12

1   agreement? Yes, they did.
2        And if-- and if these -- you know, people say
3   "a deal is a deal" precisely when they don't have a
4   binding contract.
5        If these terms were not material to Warner
6   Bros., then why did they insist upon them?
7        If a deal is a deal, then why did they go --
8   why didn't they just accept the October 19th recitation
9   of the terms and why did they continue to grind the
10  Siegels in the October 26th outline and in their
11  horrendous contract?
12       If you -- the same attorney, Marks, who sent
13  that attorney-client communication, which ordinarily
14  would have been privileged but for the fact it was
15  stolen from my law offices, the same attorney that wrote
16  that testified at length at deposition why, although he
17  thought there was a deal, there was no binding contract,
18  and he goes term by term in sworn testimony
19  comparing the huge gaps between the parties that had
20  developed.
21       You can't form a contract for the parties. The
22  contract -- the parties have to form a contract
23  themselves. Nor can you go back and -- and arrest the
24  legal analysis.
25   JUDGE REINHARDT: I don't understand what that

Page 13

1   means.
2        You can't form a contract between the parties
3   if you're their representative?
4    MARC TOBEROFF, ESQ.: No. A court cannot write a
5   contract for the parties when the parties themselves
6   cannot agree upon the terms.
7    JUDGE THOMAS: No. The only question is whether
8   they had an agreement in the earlier deal -- that's the
9   question -- and whether then there was a counteroffer
10  made later? I mean, those are -- those are the two
11  questions.
12       I mean, if they had -- we have all sorts of
13  cases where you -- it happens all the time in
14  mediation. Parties agree on principle. They draft up a
15  set of principal points, and then they go draft
16  documents, and then another fight erupts and they say,
17  "Well, we can't agree on this." It might be
18  indemnity. It might be something else. And then the
19  Court says, "All right. I'm going to enforce the
20  initial agreement that you made, period."
21       Isn't that the question here?
22   MARC TOBEROFF, ESQ.: No. Here you don't even have
23  the first point.
24   JUDGE REINHARDT: Well, that's --
25   MARC TOBEROFF, ESQ.: Unlike --

4  (Pages 10 to 13)

ORAL ARGUMENT - 11/5/2012

Page 14

1    JUDGE THOMAS:  That's why --
2    MARC TOBEROFF, ESQ.:  Unlike in the Facebook case
3  where you have a signed document signed by the parties
4  agreeing to certain terms that are definite and
5  enforceable, you don't even have that here.
6        And the reason we know you don't have that here
7  is because rather than accept -- in your hypothetical
8  you say they would accept the October 19th terms.  They
9  did the opposite.  They didn't accept them.
10    JUDGE THOMAS:  Well, they purported to by saying,
11  "Here's a more fulsome."
12        Now, you -- you would say -- you say that's
13  artifice and they were actually counter- --
14    MARC TOBEROFF, ESQ.:  Of course.
15    JUDGE THOMAS:  -- counterclaiming.
16    MARC TOBEROFF, ESQ.:  In the Valente -- in the
17  Valente-Kritzer case this Court held that congratulatory
18  words as to --
19    JUDGE THOMAS:  Yeah.
20    MARC TOBEROFF, ESQ.:  -- finally arriving at a deal
21  or in our case a monumental accord are meaningless.
22        What you look to is the objective manifestation
23  and you don't have an agreement where you don't have a
24  mutual meeting of the minds on the material terms of an
25  agreement.

Page 15

1        And here the objective evidence proves that.
2  And that's why in summary judgment the Court was
3  required to find there was no agreement.  And there is
4  nothing that they put forward that raised a genuine
5  issue of fact as to contract formation.
6        I'd like to reserve the remainder for rebuttal.
7    JUDGE REINHARDT:  Thank you.
8    MARC TOBEROFF, ESQ.:  Thanks.
9    DANIEL M. PETROCELLI, ESQ.:  May it please the
10  Court.  Daniel Petrocelli with my colleagues Cassandra
11  Seto and Matt Kline for the DC Comics parties.
12        Turning initially to the issue of the
13  settlement agreement, it's our fundamental position that
14  this was not a matter appropriate for summary judgment
15  and that the Court should have allowed this to go to
16  trial on the lynchpin factual issues of whether or not
17  the parties reached an agreement, and if so, to what?
18        And our position in the Court below and in this
19  appeal was that the parties did reach an agreement with
20  the acceptance letter that the plaintiff's lawyer sent
21  to DC Comics on October 19, 2001 at SER 456.
22        This is a detailed recitation of terms written
23  in powerful legal language of acceptance which says, "We
24  hereby -- the Siegel family has accepted DC Comics'
25  offer," and then it goes on to say, "The terms are as

Page 16

1  follows," and this was the culmination of two-and-a-half
2  years of back and forth negotiations, and the record
3  before the District Court was that this letter was
4  written following a phone call between the two principal
5  negotiators where they resolved the last deal point, and
6  the testimony of Mr. Marks, the plaintiff's
7  representative was, "We are closed.  We will send you
8  the document."  Mr. Schulman responded, "Great.  We'll
9  start working on a long form."
10        This document is then sent, and a week later
11  Mr. Schulman responds, and, very importantly, this
12  document is sent by one of the most experienced lawyers
13  in one of the most experienced law firms in the country
14  dealing with entertainment contracts.  This lawyer who
15  knows and probably has written thousands of times a
16  reservation of rights that this document is not binding
17  until and unless a long form or a more formal document
18  is executed says no such thing in this letter.
19    JUDGE REINHARDT:  Now, are you talking about
20  Mr. Schulman's letter?
21    DANIEL M. PETROCELLI, ESQ.:  No.  I'm talking about
22  the acceptance letter, the document that constitutes the
23  contract.  That's the letter of October 19, 2001.
24    JUDGE REINHARDT:  All right.  And then you said -- I
25  thought you said that the reply --

Page 17

1    DANIEL M. PETROCELLI, ESQ.:  Okay.
2    JUDGE REINHARDT:  -- was written by Schulman.
3    DANIEL M. PETROCELLI, ESQ.:  I may have misspoken.
4        But in this document following the conversation
5  with the DC representative, there's no indication in
6  here that the parties do not intend to be bound until
7  some future event.  There's no reservation, and the
8  testimony in the record is, "We are closed."
9        Then a week later, Mr. Schulman, the recipient
10  of Mr. Marks' letter and the other negotiator, responds
11  to it, and he states -- and I won't characterize it as a
12  counteroffer because I think that's begging the issue.
13  He states, "I've received it.  I've reviewed it.  I
14  enclose herewith for you and Bruce a more fulsome
15  outline of what we believe the deal we've agreed to is.
16  We're working on the draft agreement so that by the time
17  you have accomplished something of truly momentous
18  import, we will have this super matter transaction in
19  document form."  And then he goes on and flushes out in
20  more detail the same terms that appear in the October 19
21  letter and adds some things here and there to be sure,
22  like an indemnity or he flushes out a detail on some of
23  these royalty provisions.  These are essentially
24  immaterial variations and differences that are the
25  normal part of a process of commencing a long -- a long

5 (Pages 14 to 17)

ORAL ARGUMENT - 11/5/2012

Page 18

1  form document.
2        Now, the error, the fundamental error of
3  analysis here both by the District Court and by
4  Mr. Toberoff is -- is the fact that this process is
5  going on, that there's now an effort to create a long
6  form is dispositive of the -- of the conclusion that
7  there is no contract.
8        And that's what the District Court ruled.
9  Simply because the parties after the contract was formed
10  in the -- in the unambiguous acceptance letter, just
11  because of that, the fact that they now endeavor to do a
12  long form, the judge concluded as a matter of law there
13  can be no agreement.
14        And that's just wrong.
15        There are scores of cases.  This is an
16  extremely familiar situation where parties believe
17  they've reached a deal.  They have a confirmatory letter
18  or document.  They go off to prepare the long document.
19  Something happens, things breakdown, and one side then
20  says, "We don't have a deal."
21     JUDGE REINHARDT:  Was there any affidavit or
22  information introduced in the District Court as to the
23  custom and practice in the industry of reaching an
24  agreement, proceeding with it and then having the
25  documents prepared?

Page 19

1     DANIEL M. PETROCELLI, ESQ.:  There was no custom and
2  practice evidence in the record, to be sure, that
3  would be highly relevant on the issue.
4        Mr. Schulman had a direct declaration in the
5  record saying that Mr. Larson's (sic) letter accurately
6  reflected all the terms of the deal and that he wasn't
7  intending to change anything and he was just flushing
8  out the detail.
9        Now the proof is in the pudding.
10        In response to this letter of October 26, which
11  the plaintiffs want to suggest is some material
12  departure, they even go so far as to say this is a
13  counteroffer.  In response to Mr. Schulman's letter,
14  Mr. Marks never objects.  He never reaches out and says,
15  "Wait a second.  You got a problem.  That's not what
16  we've agreed to."
17     JUDGE REINHARDT:  Tell me why, if that's correct, is
18  this matter for trial rather than summary judgment for
19  you?
20     DANIEL M. PETROCELLI, ESQ.:  Well, we did not move
21  for summary judgment in the Court below.
22     JUDGE REINHARDT:  You're not asking for that here?
23     DANIEL M. PETROCELLI, ESQ.:  Well, we think the
24  record evidence that there is an agreement is so strong
25  that we do think it can support a judgment in our favor,

Page 20

1  but we -- at the very minimum we believe that we're
2  entitled to a trial.
3        The judge just departed wildly from the summary
4  judgment standard.  He drew all that adverse inference
5  against us.  He -- he did not understand that the
6  question of whether or not the long form process does or
7  does not negate a prior agreement is a factual
8  question.
9        Your Honor dealt with that issue, if I may, in
10  the -- you had a case with Judge Pregerson on -- it was
11  the Best Interior -- the Best Interiors case, the same
12  situation.  The plaintiff was a labor union and they --
13  and they sued this company, and they had an agreement,
14  they had a handshake agreement, and then they went on to
15  do a long form, and things broke down, and the judge
16  concluded there was no deal as a matter of law, and this
17  Court reversed that and this Court said that the
18  question of the intent to contract is a fact issue.  The
19  question of whether the subsequent events undid the
20  prior agreement or didn't undo the prior agreement,
21  that's a fact question.
22     JUDGE THOMAS:  So are there undisputed facts or
23  not?
24     I mean, I -- I'm not sure I -- I understand
25  your answer because Judge Reinhardt was asking you, "Is

Page 21

1  there sufficient evidence to -- for summary judgment in
2  your favor?"  And -- and you said, "Well, yes, there are
3  fact issues," so I'm --
4     DANIEL M. PETROCELLI, ESQ.:  There are -- there
5  are --
6     JUDGE THOMAS:  Tell me aside from the documents
7  themselves what genuine issues of material fact you
8  would raise.
9     DANIEL M. PETROCELLI, ESQ.:  The ques-- the
10  threshold question of whether the parties intended to be
11  bound and by this letter, by this -- by this acceptance
12  letter or whether they intended not to be bound at that
13  time but only upon such time as they agreed to a long
14  form.  We say that they intended to be bound at this
15  time.
16        But that question and all the events that
17  happened, that's evidence that's relevant to the
18  threshold issue of whether or not there was a deal in
19  the first place.  It is not dispositive that there was
20  no deal.
21        And so that's the -- that's the fundamental
22  factual issue.
23        There's a second factual issue, I suppose, and
24  that's what -- what terms the parties agreed to.
25        Well, we -- our position is it's everything in

6  (Pages 18 to 21)

ORAL ARGUMENT - 11/5/2012

Page 22

1  this letter, nothing more.  To the extent that
2  Mr. Schulman's letter is perceived to have added terms
3  or suggested new terms, they're not part of the deal.
4  It's that simple.
5      JUDGE THOMAS:  Why isn't that a matter of law that
6  you can decide on the basis of the documents
7  themselves?
8      DANIEL M. PETROCELLI, ESQ.:  You can decide as a
9  matter of law that if the parties reached the contract
10  as of October 19, everything thereafter doesn't matter.
11      What can't be decided as a matter of law is
12  that the parties did not reach an agreement.  That
13  cannot possibly be resolved against us with this record
14  of direct admissions by the plaintiffs that there was an
15  agreement, not only in the acceptance letter, not only
16  in the no response to Mr. Schulman's letter, thereby
17  indicating there was nothing significant or new or
18  different about it, but --
19      JUDGE REINHARDT:  Well, the second one was even more
20  fulsome than the first, I guess.
21      DANIEL M. PETROCELLI, ESQ.:  Excuse me?
22      JUDGE REINHARDT:  The second one was more fulsome
23  than the first.
24      DANIEL M. PETROCELLI, ESQ.:  The second one to be
25  sure was 50 pages of boilerplate, yes, but --

Page 23

1      JUDGE THOMAS:  Well, except -- except perhaps as to
2  royalty rate.
3      DANIEL M. PETROCELLI, ESQ.:  Excuse me?
4      JUDGE THOMAS:  Except perhaps as to royalty rate.
5      DANIEL M. PETROCELLI, ESQ.:  Well, under royalty
6  rate, if you really read the letter between Mr. Schulman
7  and Mr. Marks, they're -- they're flushing out very
8  precise little details about when the royalty rate gets
9  reduced, if multiple characterizers are involved, if it's
10  a cameo appearance, if it's a special project.  I mean,
11  this is why sometimes documents take 50 pages or more.
12      But that's not a material term, the absence of
13  which would negate a contract, and if it were, that
14  itself is a question of fact.  And case after case say
15  the -- the importance to which the parties attach to
16  particular terms is a fact question.
17      There was a question to Mr. Toberoff earlier I
18  think by Judge Reinhardt about whether this document,
19  this -- this contract, this acceptance letter of October
20  19 has sufficient material terms to constitute a
21  contract.
22      It does.  It easily passes the test.  I mean,
23  the threshold, as the Facebook case illustrates, is very
24  low: price, term.  So there's no question that this
25  document contains sufficient terms that a court could

Page 24

1  never look at this document and conclude as a matter of
2  law that it's not sufficient to be a contract.
3      Whether there are new and additional terms that
4  the parties wanted and whether that somehow gets added
5  on here or doesn't get on, that's a fact question that
6  takes testimony about the significance to which parties
7  attach to -- to the point, did they discuss it in their
8  negotiations, did they not discuss it, did they forget
9  to put in something, did they not forget, and that's the
10  subject of testimony.
11      Counsel has conflated this idea of the
12  objective hearing of contracts, which to be sure is how
13  the issue is decided, with the rules of evidence about
14  what kind of testimony is admitted in order to prove up
15  intent.
16      All kinds of testimony is admitted, including
17  custom and practice, including parties' state of mind as
18  to why they did certain things, why they said certain
19  things.
20      So at bottom we think that this case never
21  should have been thrown out, and importantly this has
22  the potential to dispose of this entire dispute.
23      Under this agreement, which took three years to
24  negotiate, the plaintiffs would receive an immediate
25  payment of $20 million, plus substantial future

Page 25

1  consideration for the duration of the copyright term,
2  which is 2033, plus medical benefits for their family
3  and all kinds of other benefits.
4      On the other hand, DC gets the transfer of the
5  copyright interests that were recaptured by the Siegel
6  family.  So they -- they transfer the copyright
7  interests, and they get a lot of money.
8      JUDGE REINHARDT:  Well, that's not -- that's
9  not -- no need to try to persuade us it's a good deal
10  for them.  If they think it's a good deal --
11      DANIEL M. PETROCELLI, ESQ.:  Well --
12      JUDGE REINHARDT:  -- for them, they wouldn't be
13  here.
14      DANIEL M. PETROCELLI, ESQ.:  Well, that's correct,
15  your Honor, because they believed they had a better deal
16  when someone came along and offered them more, and --
17  and they then repudiated this agreement.
18      And one final comment.
19      This question about what we did and did not do
20  afterwards, that's a very incomplete recitation that was
21  received, but all of that is simply more relevant
22  evidence on the question of whether the parties at the
23  inception when they made their deal intended to be bound
24  or not.  That's just evidence of subsequent conduct of
25  the parties.  Whether it bears on the contract formation

7 (Pages 22 to 25)

ORAL ARGUMENT - 11/5/2012

Page 26

1 or not is a relevance issue that's up to the trial judge
2 here.
3     JUDGE SEDWICK:  Let me ask you this question.
4     We had read your papers to suggest you were
5 seeking summary judgment, but assuming that you're
6 either now only seeking a remand for trial or that we
7 should independently decide that that's the most you
8 could get, do you think that this Court needs to decide
9 any of the other issues if we remand this case for trial
10 and whether there was an agreement?
11     DANIEL M. PETROCELLI, ESQ.:  I believe that since
12 this is potentially dispositive, it does not have to
13 because if this contract is proven and this contract is
14 enforced, that ends once and for all this dispute.
15 Every issue that is before your Honors and these very
16 large amount of briefs would all -- would all resolve.
17 That's why it took three years to do.  This wasn't some
18 initial offer.
19     JUDGE REINHARDT:  You may not be the one to answer
20 this question, but just out of curiosity, would it
21 resolve the prior case also?
22     DANIEL M. PETROCELLI, ESQ.:  Well, it would have a
23 significant impact at least on the damages in the prior
24 case and my view is it would go a long way to resolving
25 that one as well, at least insofar as the Siegel side is

Page 27

1 concerned.
2     I don't know if I have any time left.
3     JUDGE REINHARDT:  You have five minutes.
4     DANIEL M. PETROCELLI, ESQ.:  I would like to turn to
5 one other legal issue that's on a totally separate
6 subject, if your Honors don't have any additional
7 questions on this topic, and that has to do with a
8 decision, purely legal decision that the District Court
9 below made.
10     And what the Court decided was that this very
11 first Superman comic book, which is called "Action
12 Comics Number 1," SER 714, the District Court decided
13 that since this was largely created by Mr. Siegel and
14 Mr. Shuster long before DC came into the picture, "this"
15 being the character Superman in black and white
16 sketches, that he awarded the copyrights in the various
17 elements in this action comics book entirely to the
18 Siegels and the Shusters.
19     The error -- we -- we said to the judge, "We
20 don't challenge that in the main, except for this.  We,"
21 DC, "back in 1938 came up with the idea of making a
22 comic book.  Siegel and Shuster had drawn sketches of
23 Superman for newspaper strips in black and white.  We
24 want to create a comic book.  We want to put it in
25 color.  And we then retained them to do so."

Page 28

1     It is undisputed that certain elements of this
2 were done by DC in concert with Shuster and Siegel but
3 with other employees and artists.  So we asked the Court
4 to declare certain parts of this -- certain parts of
5 this owned by DC, either as a work for hire or as a
6 joint work or other theories of ownership.
7     The Court said he was -- the Court concluded it
8 was precluded from doing so because of a decision back
9 in the seventies in the Second Circuit by DC's
10 predecessor and Siegel and Shuster called the National
11 case, and the Court believed that the National case was
12 res judicata and/or collateral estoppel and prevented DC
13 from litigating the issue of whether it had ownership
14 interest and admittedly part of the contributions that
15 it made to Action Comics 1.
16     And I only wanted to address the Court's ruling
17 on collateral estoppel.  But it was clearly wrong for
18 the following reason, and this is a purely legal issue.
19     The National case back in the seventies was a
20 lawsuit about who owned the renewal copyright in Action
21 Comics 1, and this was before the new termination
22 legislation came about, the second 28-year renewal
23 term.
24     DC contended that it owned the renewal term for
25 two separate and independent reasons.

Page 29

1     One, the Siegel and Shuster parties transferred
2 full ownership of their Superman elements way back when
3 when they first met with DC and documented March 1.  So
4 they said, "We own it by contract."
5     Second, secondly DC said -- actually it was
6 National, its predecessor, but I'll just call it "DC."
7 DC said, "We own it because it was work for hire and we
8 were the author of it, and so we own the renewal
9 rights."  So they said, "We own the renewal right for
10 those reasons."
11     The District Court agreed on both counts, and
12 it went up to the Second Circuit.
13     The Second Circuit affirmed on the ground that
14 the conveyance of rights back in 1938 from Siegel and
15 Shuster to Na-- -- to DC included the conveyance of the
16 rights to the renewal term, and so the decision below
17 was correct and it was affirmed.
18     The Second Circuit then went on to say,
19 however, that the ruling about work for hire was
20 incorrect, and it made some references to the fact that
21 Superman had been developed before DC came along, so how
22 could the entirety of Action Comics 1 be a work for
23 hire?
24     It's that language that the judge in this case,
25 the District Court, felt was binding on him.

8  (Pages 26 to 29)

ORAL ARGUMENT - 11/5/2012

Page 30

1    We pointed out below and pointed out in our
2  papers, as a matter of law that cannot be res judicata
3  or collateral estoppel because that was an adverse
4  determination made in favor of a prevailing party and it
5  was not necessary to the decision and it was dictum.
6  We, for example, never could have appealed that
7  decision.  We won, National did.  It never could have
8  appealed solely for the purpose of addressing the
9  alternative statement by the Court of Appeal that was
10 adverse to -- to National.
11    And case after case make this clear, including
12 the Fireman's Fund case in the Ninth Circuit, the --
13    JUDGE REINHARDT:  All right.  We're running out of
14 time.  Let me just ask you.
15    Is this -- is this issue resolved if you win on
16 the summary judgment question?
17    DANIEL M. PETROCELLI, ESQ.:  Yes.  Everything goes
18 away on the summary judgment, everything, your Honor.
19 It's -- it's the end of this case once and for all.
20    JUDGE REINHARDT:  All right.  Thank you very much.
21    DANIEL M. PETROCELLI, ESQ.:  Thank you very much,
22 your Honors.
23    MARC TOBEROFF, ESQ.:  Your Honors, Warner Bros.
24 cannot point to any place in 2001 where they accepted
25 the terms set forth in the October 19th, 2001 letter

Page 31

1  from Marks.
2    I don't know how one can find that a contract
3  exists without mutual agreement of both sides.
4    Instead of agreement from Warner Bros. we have
5  disagreement as reflected in the October 26th letter and
6  as reflected in Warner Bros.'s agreements.
7    It's -- it's insane to say this is purely a
8  question of formal documentation of an agreement of the
9  parties when there is --
10    JUDGE REINHARDT:  The problem -- and maybe you can
11 comment on this, Mr. Toberoff.  The problem is that the
12 October 26th letter doesn't reject the October 19th
13 letter.  It says, "a more ful-- I'm enclosing a
14 fulsome outline of what we believe the deal we've agreed
15 to is."
16    Now, the argument on the other side is that
17 that says, "We've agreed to a deal but we're giving you
18 a more expansive outline of what that deal is."
19    Now, what's the answer to that?
20    MARC TOBEROFF, ESQ.:  The answer to that is whether
21 or not there's a contract is not based on verbiage such
22 as "a more fulsome outline."  It's based on the
23 comparison of the terms.  And anything less than an
24 unequivocal acceptance of an offer is a counteroffer
25 extinguishing that offer.  It's been that way forever in

Page 32

1  California and it's still that way in California.  So
2  regardless of how you --
3    JUDGE REINHARDT:  Well, take -- take the example of
4  a movie distribution deal or a movie production deal
5  where the parties make -- they agree to the deal.  They
6  then start with the movie.  Finally in the middle of the
7  movie they get down to reducing everything to writing
8  and there's a disagreement but both parties agree that
9  "we have a deal."
10    Now, is that not an agreement without the
11 written exposition of it?
12    MARC TOBEROFF, ESQ.:  It depends on the terms of the
13 agreement.  Here -- here -- and there have been cases
14 about that where one side has argued, "In California and
15 Hollywood we do lunch.  We don't do contracts," and
16 they've rejected those arguments when it came down to
17 specific contract formation issues like this.
18    They cannot point to an acceptance of the terms
19 of the October 19th letter.  And instead we have --
20    JUDGE THOMAS:  Well, it depends on who is the
21 offerer and who is the-- who is the accepting party.
22    What-- what the October 19th letter says, "This
23 is to confirm our telephone conversation," it goes on to
24 say, "which we accept the DC Comics' offer of October
25 16th."

Page 33

1    So if there's a legitimate offer on the 16th
2  and accepted on the 19th, does it really matter what
3  happened after that?
4    MARC TOBEROFF, ESQ.:  Yes, it does because on --
5    JUDGE THOMAS:  I mean, if there's a contract
6  formation as of this and it's reflected in the letter of
7  the 19th, then -- then there's a deal.
8    MARC TOBEROFF, ESQ.:  But this is an ongoing
9  negotiation that continues into 2002.
10    JUDGE THOMAS:  No.  I understand that.
11    MARC TOBEROFF, ESQ.:  And that's acknowledged by all
12 the parties.  So you can't artificially limit the
13 analysis to an oral communication on October 16th and a
14 written communication on October 19th.
15    JUDGE THOMAS:  I'm just saying, to my mind at least,
16 I haven't come to rest on it, but it certainly suggests
17 that it's a more complicated situation, and therefore
18 there's a -- probably a genuine issue of material fact.
19    MARC TOBEROFF, ESQ.:  I -- I can see none.  And I
20 can tell you why.  Because when he refers to the October
21 16th conferen-- teleconference and -- and asks, "Do
22 you agree that these are the terms?" because that's what
23 he says, he says, "If I got anything wrong, let me
24 know," he's essentially asking, "Do you agree, Warner
25 Bros., that these are the terms?" and all they would

ORAL ARGUMENT - 11/5/2012

Page 34

1  have to have done is said, "Yes," then you would have a
2  different situation.
3       And that's not the situation that exists here,
4  and the objective evidence shows that -- the undisputed
5  evidence shows that it's not the situation that exists
6  here.
7       What it shows is that Warner Bros. said,
8  "That's not what I believe" --
9       JUDGE THOMAS:  They didn't say that.
10      MARC TOBEROFF, ESQ.:  Yes, they did.
11      JUDGE THOMAS:  They said, "Here's -- here's a --
12  here's a larger outline."
13      Now today they say, "Well, that's essentially
14  the same terms."  And you can say, "Well, it's not the
15  same terms."
16      And, you know, obviously they didn't agree --
17  the parties did not agree on indemnity, period.  There's
18  no agreement on indemnity.
19      But the question for the Court is not
20  necessarily whether there was -- whether -- the question
21  is whether there was a contract formed before that.
22      MARC TOBEROFF, ESQ.:  Exactly.  This isn't -- well,
23  there's not a contract formed before that if when he
24  says, "This is the terms that we believe were
25  discussed," he doesn't just say, "more fulsome outline,"

Page 35

1  he says, "a more fulsome outline of what we believe the
2  terms are."  They then send over a contract and reserve
3  the right of Warner Bros. to -- to -- to revise the
4  terms, and they acknowledge that the Siegels can also
5  revise the terms.  It's not just a matter of these
6  indemnity provisions.
7       I would refer the Court --
8       JUDGE THOMAS:  No.  I understand that.  I just used
9  that as an example.
10      I mean, it often happens where you have a deal
11  reached, a deal letter like this, and then the parties
12  add terms, and they say, "Well, that's not part of our
13  deal," and then they may agree or disagree on subsequent
14  terms, but that doesn't alter the original agreement or
15  the fact that it's been made.
16      MARC TOBEROFF, ESQ.:  The problem is you have no
17  acceptance to those original terms.  The hypothetical
18  doesn't apply here.
19      JUDGE THOMAS:  Unless you say that this -- the --
20  the letter of the 19th accepts an offer of the 16th.
21      MARC TOBEROFF, ESQ.:  And -- and we have a letter
22  from October 26th saying that wasn't the offer, "This is
23  what we believe the deals are."
24      Now, I want to draw the Court's attention to a
25  chart in our reply brief below which impressed the

Page 36

1  District Court who dealt with this in tremendous
2  detail.  It's in our reply excerpts at Pages 140 to 149
3  where we outline the material differences.
4       Warner acknowledges that the properties being
5  assigned is an essential term using -- using words from
6  the -- from the Facebook case.
7       Well, the properties in the Marks' memo are
8  limited to three properties: Superman, Superboy and
9  Spectre.
10      The properties in Schulman's memo and then in
11  the February 1st agreement concern Superman, Superboy,
12  related properties and anything created for DC, whether
13  published or unpublished, by Siegel.  So there's an
14  expansion of what is even being assigned.
15      Secondly, the royalties.  You have a very
16  complex royalty situation here.  It's not like in
17  Facebook with a fixed amount of money and a fixed amount
18  of stock.  You have a 6 percent royalty which was
19  reducible to 3 percent, which is then reducible to 1 1/2
20  percent to 1 percent as an absolute floor.
21      Warner Bros. drills all sorts of holes in that
22  floor rendering them illusory and -- and having
23  situations where they would receive no money whatsoever
24  for the exploitation of Superman.
25      These are material contract terms.  You can't

Page 37

1  ignore them.  They change the -- the -- the dance
2  between offer and counteroffer.  And that's the way
3  contract formation is analyzed in the State of
4  California.
5       Warner Bros. has a situation where if Superman
6  appears in a -- in another character's contract
7  published by DC, like Green Arrow, for weeks Superman is
8  appearing but the name is not in the title of the comic
9  book, under -- under Schulman's scenario, you would
10  receive a -- excuse me -- under Marks' scenario, you
11  would receive a royalty.  Under Warner Bros.'s scenario,
12  you receive no royalty.
13      It comes as no surprise that all of the changes
14  made by Warner Bros., which they now say are boilerplate
15  and not material, were all decidedly in Warner Bros.'s
16  favor and affect the key terms of the agreement: the
17  scope of the properties, the royalties and
18  compensation.
19      The -- the warranties and indemnifications is
20  not a small matter because what happens with the studios
21  when you enter in a contract and you have substantial
22  contingent compensation and there's any claim by a third
23  party or anything happens which they can claim triggers
24  a warranty, they will withhold your -- they will
25  withhold your royalty payments.

10  (Pages 34 to 37)

ORAL ARGUMENT - 11/5/2012

Page 38

1    There are credit provisions where Marks says,
2 "We want credit in paid ads," because that's very
3 important to his clients and he testifies that to
4 effect.
5    Warner Bros.'s October 26th outline and their
6 long form says, "No credit in paid ads." Warner Bros.
7 requires an elderly Joanne Siegel who is in her late
8 eighties to go on publicity tours promoting Superman.
9 None of this exists. There's --
10    JUDGE REINHARDT: Well, that doesn't sound like
11 (unintelligible) form. As David's (sic) saying, "These
12 are the sort of -- the kind of things we put in our
13 contracts."
14    And, you know, that clause isn't drawn for her
15 individual -- you know, because they're concerned about
16 her. That's a boilerplate provision.
17    MARC TOBEROFF, ESQ.: Well, it's not boilerplate to
18 say that the Siegels have to indemnify Warner Bros. for
19 a claim for her ex-husband.
20    JUDGE REINHARDT: No, no. I'm talking about that
21 Joanne -- that Joanne Siegel has to go on a tour. You
22 know, those are the kinds of things that have to be
23 worked out after there's a contract.
24    MARC TOBEROFF, ESQ.: Well, but the royalty
25 provisions and the scope of the properties assigned go

Page 39

1 to the heart of this. And under Section 204(a) of the
2 Copyright Act when you have an assignment of a
3 copyright, it has to be in writing signed by the
4 assignee.
5    Marks' letter does not assign any trans- -- any
6 copyrights. It says, "We will. We anticipate signing
7 those contracts."
8    Nobody in this exchange viewed the October 19th
9 letter outlining deal terms or the October 26th letter
10 outlining different deal terms as a binding, enforceable
11 contract. Everybody understood that considering the
12 magnitude of these rights and the complexity of the
13 agreement that was being discussed that you would have a
14 final written agreement signed by both parties.
15    JUDGE THOMAS: So how do we -- how do we determine
16 that as a matter of summary judgment, that everybody
17 understood?
18    MARC TOBEROFF, ESQ.: Because -- because --
19    JUDGE THOMAS: No. I mean, you can't -- you can't
20 do that without -- without extrinsic evidence of the
21 parties.
22    And you well may be right. I'm just saying.
23 But if you can't do it on the basis of the documents
24 alone. If you have to rely on what you say is that
25 everybody understood, then that's extrinsic evidence

Page 40

1 that requires a resolution by a fact-finder.
2    MARC TOBEROFF, ESQ.: I respectfully disagree, your
3 Honor. If you look at the October 26th Warner Bros.
4 communication, it specifically refers, "We will have
5 this matter drafted in contract form and we will send it
6 to you." So right there you know --
7    JUDGE THOMAS: Well, that's what happens in all
8 cases. You don't have a -- you always have --
9    MARC TOBEROFF, ESQ.: But that's not extrinsic
10 evidence. That's objective evidence saying that --
11 showing that the parties anticipated that the form of
12 agreement would be a written agreement signed by both
13 parties. And that's what's required by the Copyright
14 Act. That never happened. And then they send it over
15 and they reserve the right to --
16    JUDGE THOMAS: I don't mean to quarrel with you.
17 I'm just -- you know, we're working through these --
18 these cases.
19    But what often happens when you have a
20 situation like this is the Court will say, "If you have
21 enough for specific enforcement of the terms to which
22 you agreed," and therefore you execute the unnecessary
23 assignments and so forth.
24    The fact that they weren't all executed I don't
25 think is dispositive.

Page 41

1    Now, you may well be right on it. I'm just
2 saying that it's a more complicated issue than --
3    MARC TOBEROFF, ESQ.: Your Honor, I believe if you
4 peel back the veneer of comments like "a deal is a deal"
5 and look at the actual facts of this case carefully, you
6 will see that under every single principle in California
7 law about contract formation this fails as a matter of
8 law and you can make that determination on this
9 objective exchange of undisputed documents. The parties
10 absolute -- in the State of Calif- --
11    JUDGE REINHARDT: I think we've explored this
12 fully. And you're seven minutes are over, so --
13    I mean, you know, these are not simple issues,
14 and I don't mean that the answer may not be simple, but
15 the case, as you say, you know, we're going to -- to the
16 extent that we haven't sufficiently read them, we'll
17 certainly explore them all, and, you know, we understand
18 the arguments of both side, and they're legitimate
19 arguments, so --
20    MARC TOBEROFF, ESQ.: I'd just like to read to you
21 from a memo that you pointed out, Marks' memo, which by
22 the way is an extra-record document that should be made
23 part of this record, but I'd like to read to you what
24 Marks actually says in that memo.
25    He says, "I believe a deal will be finalized

11 (Pages 38 to 41)

ORAL ARGUMENT - 11/5/2012

Page 42

1  with DC Comics, even if this process is not entirely
2  smooth -- smooth.  If the parties cannot reach final
3  agreement, then the negotiations would be terminated."
4  That's what he says in an attorney-client communication
5  that they're saying proves there was a binding
6  contract.
7      JUDGE REINHARDT:  Okay.  Thank you.
8      MARC TOBEROFF, ESQ.:  Thank you, your Honor.
9      JUDGE REINHARDT:  The case just argued will be
10 submitted.
11          ---0---
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 43

1        C E R T I F I C A T E
2
3      I, Melanie M. Faulconer, certify
4  that the foregoing transcript is a true
5  record of said proceedings, that I am not
6  connected by blood or marriage with any of
7  the parties herein, nor interested directly
8  or indirectly in the matter in controversy,
9  nor am I in the employ of counsel.
10     I have hereunto subscribed my name
11 this 6th day of November, 2012.
12
13     _____
14          MELANIE M. FAULCONER
15
16
17
18
19
20
21
22
23
24
25

Merrill  Corporation  -  Los Angeles
Los Angeles - 800-826-0277          www.merrillcorp.com/law

ORAL ARGUMENT - 11/5/2012

## A

**absence** 23:12
**absolute** 36:20 41:10
**absolutely** 5:8
**accept** 6:22 9:3 12:8 14:7,8,9 32:24
**acceptance** 6:6 15:20 15:23 16:22 18:10 21:11 22:15 23:19 31:24 32:18 35:17
**accepted** 15:24 30:24 33:2
**accepting** 32:21
**accepts** 35:20
**accomplished** 17:17
**accord** 14:21
**accurately** 19:5
**acknowledge** 35:4
**acknowledged** 33:11
**acknowledges** 8:22 36:4
**acknowledging** 9:19
**Act** 39:2 40:14
**action** 27:11,17 28:15 28:20 29:22
**actual** 41:5
**Act's** 2:11
**add** 35:12
**added** 7:9 8:17 22:2 24:4
**adding** 7:13 8:3
**additional** 24:3 27:6
**address** 28:16
**addressing** 30:8
**adds** 17:21
**admissions** 22:14
**admitted** 24:14,16
**admittedly** 28:14
**ads** 38:2,6
**adverse** 20:4 30:3,10
**advised** 10:16
**affect** 37:16
**affidavit** 18:21
**affirmed** 29:13,17
**again/off** 4:10
**agree** 5:4 7:3,16 11:23

13:6,14,17 32:5,8 33:22,24 34:16,17 35:13
**agreed** 5:9,17,19,22 8:5,6 17:15 19:16 21:13,24 29:11 31:14 31:17 40:22
**agreeing** 14:4
**agreement** 2:22 7:9,11 7:17 8:19,23,24 9:2 9:19 10:6,14,17,20 10:23,24 11:19 12:1 13:8,20 14:23,25 15:3,13,17,19 17:16 18:13,24 19:24 20:7 20:13,14,20,20 22:12 22:15 24:23 25:17 26:10 31:3,4,8 32:10 32:13 34:18 35:14 36:11 37:16 39:13,14 40:12,12 42:3
**agreements** 11:8,21 31:6
**albeit** 10:18
**alleged** 2:22
**allowed** 9:22 15:15
**alter** 35:14
**alternative** 30:9
**amount** 26:16 36:17 36:17
**amounts** 3:15
**analysis** 2:25 12:24 18:3 33:13
**analyzed** 37:3
**and/or** 28:12
**answer** 20:25 26:19 31:19,20 41:14
**anticipate** 39:6
**anticipated** 40:11
**apart** 10:21
**appeal** 1:1,10 15:19 30:9
**appealed** 30:6,8
**APPEALS** 1:2
**appear** 17:20
**appearance** 23:10

**appearing** 37:8
**appears** 37:6
**Appellant** 1:5
**Appellee** 1:5
**Appellees** 1:8
**applicable** 7:24
**apply** 11:7,7 35:18
**appropriate** 15:14
**April** 4:10
**argued** 32:14 42:9
**argument** 1:14 31:16
**arguments** 32:16 41:18,19
**arrest** 12:23
**arrive** 8:23
**arriving** 14:20
**Arrow** 37:7
**artifice** 14:13
**artificially** 2:24 33:12
**artists** 28:3
**aside** 21:6
**asked** 28:3
**asking** 19:22 20:25 33:24
**asks** 33:21
**assign** 39:5
**assigned** 7:20 36:5,14 38:25
**assignee** 39:4
**assignment** 39:2
**assignments** 40:23
**assuming** 26:5
**attach** 23:15 24:7
**attached** 8:4 11:9
**attempt** 10:22
**attention** 35:24
**attorney** 3:1 12:12,15
**attorney-client** 12:13 42:4
**attrition** 2:19
**August** 10:16
**author** 2:14 29:8
**author's** 2:14,19
**author/creators** 2:13
**awarded** 27:16

## B

**back** 5:3 6:11,13 8:22 10:8,12 12:23 16:2 27:21 28:8,19 29:2 29:14 41:4
**based** 2:23 9:13 10:1,2 31:21,22
**basically** 3:15
**basis** 22:6 39:23
**bears** 25:25
**begging** 17:12
**beginning** 4:24
**behalf** 4:12,14
**believe** 6:15 10:17 17:15 18:16 20:1 26:11 31:14 34:8,24 35:1,23 41:3,25
**believed** 25:15 28:11
**benefits** 25:2,3
**Best** 20:11,11
**better** 25:15
**binding** 3:9,11 4:6 8:9 12:4,17 16:16 29:25 39:10 42:5
**bit** 7:7
**black** 27:15,23
**blood** 43:6
**boilerplate** 22:25 37:14 38:16,17
**book** 27:11,17,22,24 37:9
**bottom** 24:20
**bound** 17:6 21:11,12 21:14 25:23
**breached** 11:10
**breakdown** 18:19
**brief** 35:25
**briefs** 26:16
**broke** 20:15
**Bros** 1:7 2:21,23 3:2,4 3:6 4:13 7:18 8:1,2 8:18 9:2 10:7 11:25 12:6 30:23 31:4,6 33:25 34:7 35:3 36:21 37:5,11,14,15 38:5,6,18 40:3

ORAL ARGUMENT - 11/5/2012

Page 2

**Bruce** 17:14
**bunch** 7:13

---

**C**

**C** 43:1,1
**Calif** 41:10
**California** 1:11 2:1
  6:20 32:1,1,14 37:4
  41:6
**call** 3:1 16:4 29:6
**called** 3:15 27:11
  28:10
**cameo** 23:10
**carefully** 41:5
**case** 1:12 2:18 3:7,8
  4:3 5:5,6 14:2,17,21
  20:10,11 23:14,14,23
  24:20 26:9,21,24
  28:11,11,19 29:24
  30:11,11,12,19 36:6
  41:5,15 42:9
**cases** 3:6 7:6,8 8:8
  13:13 18:15 32:13
  40:8,18
**cash** 3:16 7:23
**Cassandra** 15:10
**caution** 10:17
**CENTRAL** 1:11
**CEO** 8:21
**certain** 14:4 24:18,18
  28:1,4,4
**certainly** 11:20 33:16
  41:17
**certify** 43:3
**challenge** 27:20
**change** 19:7 37:1
**changes** 37:13
**character** 27:15
**characterize** 17:11
**characterizes** 23:9
**character's** 37:6
**chart** 35:25
**China** 6:12
**Circuit** 1:2,15 3:12
  28:9 29:12,13,18
  30:12

**claim** 37:22,23 38:19
**clause** 38:14
**clear** 30:11
**clearly** 28:17
**clients** 38:3
**client's** 10:15
**closed** 16:7 17:8
**collateral** 28:12,17
  30:3
**colleagues** 15:10
**color** 27:25
**come** 9:5,20 33:16
**comes** 8:14 37:13
**comic** 27:11,22,24
  37:8
**comics** 1:7 15:11,21
  15:24 27:12,17 28:15
  28:21 29:22 32:24
  42:1
**commencing** 17:25
**comment** 25:18 31:11
**comments** 41:4
**communication** 12:13
  33:13,14 40:4 42:4
**companies** 2:13
**company** 20:13
**comparing** 12:19
**comparison** 31:23
**compensation** 7:21
  37:18,22
**complex** 7:24 36:16
**complexity** 39:12
**complicated** 33:17
  41:2
**concern** 36:11
**concerned** 27:1 38:15
**concert** 28:2
**conclude** 24:1
**concluded** 18:12 20:16
  28:7
**conclusion** 18:6
**concocted** 9:5
**condition** 11:25
**conditions** 7:14
**conduct** 25:24
**conferen** 33:21

**conference** 4:14
**confirm** 32:23
**confirmatory** 18:17
**conflated** 24:11
**congratulatory** 14:17
**connected** 43:6
**consideration** 25:1
**considerations** 9:9
**considering** 39:11
**constitute** 23:20
**constitutes** 6:16 16:22
**construct** 2:24
**contained** 3:10 11:15
**contains** 10:5 23:25
**contended** 28:24
**contention** 3:25 4:1
**contingent** 37:22
**continue** 12:9
**continued** 10:11
**continues** 33:9
**contract** 2:24 3:1,5,9,9
  3:13,20,20,21,22,25
  4:2,6 5:4,9,17,19,22
  8:6,10 9:12 10:21,22
  12:4,11,17,21,22,22
  13:2,5 15:5 16:23
  18:7,9 20:18 22:9
  23:13,19,21 24:2
  25:25 26:13,13 29:4
  31:2,21 32:17 33:5
  34:21,23 35:2 36:25
  37:3,6,21 38:23
  39:11 40:5 41:7 42:6
**contracts** 16:14 24:12
  32:15 38:13 39:7
**contributions** 28:14
**controversy** 43:8
**conversation** 17:4
  32:23
**conveyance** 29:14,15
**cop** 9:7
**copyright** 2:11 25:1,5
  25:6 28:20 39:2,3
  40:13
**copyrights** 2:17 27:16
  39:6

**correct** 5:18 19:17
  25:14 29:17
**counsel** 4:13 24:11
  43:9
**counter** 14:13
**Counterclaimants** 1:8
**counterclaiming**
  14:15
**Counterclaim-Defe...**
  1:5
**counteroffer** 3:3,4
  6:16,20,22 7:13 8:12
  9:16,17,17 10:10,13
  13:9 17:12 19:13
  31:24 37:2
**country** 16:13
**counts** 29:11
**course** 3:14 14:14
**court** 1:2,10 2:6 3:11
  3:14 7:5,10,14 9:22
  10:4 13:4,19 14:17
  15:2,10,15,18 16:3
  18:3,8,22 19:21
  20:17,17 23:25 26:8
  27:8,10,12 28:3,7,7
  28:11 29:11,25 30:9
  34:19 35:7 36:1
  40:20
**Court's** 28:16 35:24
**create** 18:5 27:24
**created** 27:13 36:12
**creates** 9:21
**credit** 38:1,2,6
**Cross** 1:5
**Cross-Appellants** 1:8
**CSR** 1:24
**culmination** 16:1
**curiosity** 26:20
**custom** 18:23 19:1
  24:17
**customarily** 11:21
**CV-04-8400** 1:12

---

**D**

**D** 1:11
**damages** 26:23

dance 37:1
**Daniel** 15:9,10 16:21
17:1,3 19:1,20,23
21:4,9 22:8,21,24
23:3,5 25:11,14
26:11,22 27:4 30:17
30:21
date 4:9
**David's** 38:11
day 43:11
**DC** 1:7 15:11,21,24
17:5 25:4 27:14,21
28:2,5,12,24 29:3,5,6
29:7,15,21 32:24
36:12 37:7 42:1
**DC's** 28:9
deal 6:15 8:8,9 11:2,3
12:3,3,7,7,17 13:8
14:20 16:5 17:15
18:17,20 19:6 20:16
21:18,20 22:3 25:9
25:10,15,23 31:14,17
31:18 32:4,4,5,9 33:7
35:10,11,13 39:9,10
41:4,4,25
dealing 7:22,22,23,25
16:14
deals 35:23
dealt 20:9 36:1
decide 22:6,8 26:7,8
decided 22:11 24:13
27:10,12
decidedly 37:15
decision 27:8,8 28:8
29:16 30:5,7
declaration 19:4
declare 28:4
**Defendants** 1:8
defense 2:22,23 9:5
definite 3:13 14:4
departed 20:3
departure 19:12
depends 32:12,20
deposition 12:16
described 9:8
designed 2:12

detail 17:20,22 19:8
36:2
detailed 15:22
details 10:23,25 23:8
determination 30:4
41:8
determine 39:15
developed 12:20 29:21
**Dick** 8:21,22
dictum 30:5
differ 6:18
differences 17:24 36:3
different 3:3 8:17
22:18 34:2 39:10
differing 3:2
direct 19:4 22:14
directly 43:7
disagree 35:13 40:2
disagreement 7:19,19
7:21 31:5 32:8
discuss 24:7,8
discussed 4:16 6:10
34:25 39:13
discussions 4:10
dispose 24:22
dispositive 18:6 21:19
26:12 40:25
dispute 10:25 24:22
26:14
distribution 32:4
**District** 1:10,11 16:3
18:3,8,22 27:8,12
29:11,25 36:1
document 10:5 14:3
16:8,10,12,16,17,22
17:4,19 18:1,18,18
23:18,25 24:1 41:22
documentation 10:18
10:19,25 31:8
documented 29:3
documents 9:15 13:16
18:25 21:6 22:6
23:11 39:23 41:9
doing 28:8
draft 8:14 13:14,15
17:16

drafted 40:5
draw 35:24
drawn 27:22 38:14
drew 20:4
drills 36:21
duration 25:1

**E**

**E** 43:1,1
earlier 13:8 23:17
easily 23:22
effect 6:13 38:4
effective 4:8
effort 18:5
eighties 38:8
either 26:6 28:5
elderly 38:7
elements 27:17 28:1
29:2
emblematic 2:18
embodied 7:4
employ 43:9
employees 28:3
enclose 17:14
**Enclosed** 6:14
enclosing 31:13
endeavor 18:11
ends 26:14
endure 2:19
enforce 7:5,10 9:6
13:19
enforceable 3:11,14
3:16 14:5 39:10
enforced 3:21 26:14
enforcement 40:21
ensued 4:11
enter 37:21
entertainment 1:7
16:14
entire 24:22
entirely 27:17 42:1
entirety 29:22
entitled 20:2
equivocal 4:19,22
error 18:2,2 27:19
erupts 13:16

**ESQ** 2:6 3:22 4:3,5,8
4:23 5:5,7,11,15,18
5:24 6:1,5,9 7:17 8:7
9:12 10:1,21 11:2,13
13:4,22,25 14:2,14
14:16,20 15:8,9
16:21 17:1,3 19:1,20
19:23 21:4,9 22:8,21
22:24 23:3,5 25:11
25:14 26:11,22 27:4
30:17,21,23 31:20
32:12 33:4,8,11,19
34:10,22 35:16,21
38:17,24 39:18 40:2
40:9 41:3,20 42:8
essential 7:21 36:5
essentially 17:23
33:24 34:13
estoppel 28:12,17 30:3
event 17:7
events 20:19 21:16
everybody 39:11,16
39:25
evidence 15:1 19:2,24
21:1,17 24:13 25:22
25:24 34:4,5 39:20
39:25 40:10,10
eviscerated 10:10
exact 3:5
**Exactly** 34:22
example 30:6 32:3
35:9
excerpts 36:2
exchange 39:8 41:9
exclusions 11:6
excuse 22:21 23:3
37:10
execute 40:22
executed 16:18 40:24
existed 3:20
exists 3:17 31:3 34:3,5
38:9
expansion 36:14
expansive 31:18
experienced 16:12,13
exploitation 36:24

explore 41:17
explored 41:11
exposition 32:11
extended 2:17
extent 22:1 41:16
extinguished 10:13
extinguishes 6:21
extinguishing 31:25
extra-record 41:22
extremely 18:16
extrinsic 39:20,25
 40:9
ex-husband 38:19

**F**
F 43:1
Facebook 3:7,8 14:2
 23:23 36:6,17
fact 7:19 9:21 11:20
 12:14 15:5 18:4,11
 20:18,21 21:3,7
 23:14,16 24:5 29:20
 33:18 35:15 40:24
facts 5:12 20:22 41:5
factual 9:8 15:16 20:7
 21:22,23
fact-finder 40:1
fails 10:12 41:7
false 2:23
familiar 18:16
family 2:14,19 15:24
 25:2,6
far 19:12
Faulconer 1:23 43:3
 43:14
favor 19:25 21:2 30:4
 37:16
February 3:4 8:13
 9:17 36:11
fell 10:21
felt 29:25
fight 13:16
filed 9:1,6
final 25:18 39:14 42:2
finalized 41:25
finally 2:16 14:20 32:6

find 15:3 31:2
Fireman's 30:12
firms 16:13
first 2:21 3:24 7:5
 13:23 21:19 22:20,23
 27:11 29:3
five 27:3
fixed 3:15 36:17,17
floor 36:20,22
flushes 17:19,22
flushing 19:7 23:7
focus 10:22
following 16:4 17:4
 28:18
follows 16:1
foregoing 43:4
forever 31:25
forget 24:8,9
form 9:15 12:21,22
 13:2 16:9,17 17:19
 18:1,6,12 20:6,15
 21:14 38:6,11 40:5
 40:11
formal 16:17 31:8
formation 9:12 15:5
 25:25 32:17 33:6
 37:3 41:7
formed 18:9 34:21,23
forms 6:2
forth 4:16 7:18 16:2
 30:25 40:23
forward 15:4
found 3:16 11:10
four 9:15
freeze 10:9
ful 31:13
full 29:2
fully 41:12
fulsome 6:14 7:1
 14:11 17:14 22:20,22
 31:14,22 34:25 35:1
Fund 30:12
fundamental 15:13
 18:2 21:21
further 5:11 8:15
future 17:7 24:25

**G**
gap 8:14
gaps 12:19
general 4:13
genuine 9:21 15:4
 21:7 33:18
give 2:13 10:7
giving 31:17
go 7:6 10:8 12:7,23
 13:15 15:15 18:18
 19:12 26:24 38:8,21
 38:25
goes 6:12 12:18 15:25
 17:19 30:17 32:23
going 2:21 4:19 7:10
 7:15 13:19 18:5
 41:15
good 2:6 25:9,10
Great 16:8
Green 37:7
grind 10:11 12:9
ground 29:13
guess 22:20

**H**
hand 25:4
handshake 20:14
happened 5:12 21:17
 33:3 40:14
happens 8:11 13:13
 18:19 35:10 37:20,23
 40:7,19
HEARD 1:15
hearing 24:12
heart 39:1
held 4:14 14:17
hereunto 43:10
herewith 17:14
highly 19:3
hire 28:5 29:7,19,23
holes 36:21
Hollywood 32:15
Honor 20:9 25:15
 30:18 40:3 41:3 42:8
HONORABLE 1:11
Honors 2:7 26:15 27:6

30:22,23
hope 8:23
horrendous 12:11
huge 12:19
hypothetical 14:7
 35:17

**I**
idea 24:11 27:21
ignore 37:1
II 1:11
illusory 36:22
illustrates 23:23
imbalance 2:12
immaterial 17:24
immediate 24:24
impact 26:23
import 17:18
importance 23:15
important 11:7 38:3
importantly 16:11
 24:21
impressed 35:25
improper 6:1
inception 25:23
included 29:15
including 24:16,17
 30:11
incomplete 25:20
incorporates 8:13
incorrect 29:20
increased 2:15
indefinite 4:24
indemnification 11:16
indemnifications 8:3
 11:9 37:19
indemnify 8:1 38:18
indemnities 11:21
indemnity 13:18 17:22
 34:17,18 35:6
independent 28:25
independently 26:7
indicating 22:17
indication 17:5
indirectly 43:8
individual 38:15

ORAL ARGUMENT - 11/5/2012

Page 5

**industry** 18:23
**inference** 20:4
**information** 18:22
**initial** 13:20 26:18
**initially** 15:12
**insane** 31:7
**insist** 12:6
**insofar** 26:25
**instance** 11:3
**intend** 17:6
**intended** 21:10,12,14
  25:23
**intending** 19:7
**intent** 9:14 10:3 20:18
  24:15
**interest** 28:14
**interested** 43:7
**interests** 25:5,7
**Interior** 20:11
**Interiors** 20:11
**introduced** 18:22
**involved** 11:4 23:9
**issue** 4:2,5 9:21 10:19
  11:22 15:5,12 17:12
  19:3 20:9,18 21:18
  21:22,23 24:13 26:1
  26:15 27:5 28:13,18
  30:15 33:18 41:2
**issues** 7:3 11:8 15:16
  21:3,7 26:9 32:17
  41:13

---

**J**

**Joanne** 8:16 38:7,21
  38:21
**John** 4:12,20
**joint** 28:6
**judge** 1:11 3:19,24 4:4
  4:7,22,25 5:6,8,13,16
  5:20,25 6:3,7,25 8:5
  9:8,25 10:14,24
  11:12 12:25 13:7,24
  14:1,10,15,19 15:7
  16:19,24 17:2 18:12
  18:21 19:17,22 20:3
  20:10,15,22,25 21:6

22:5,19,22 23:1,4,18
25:8,12 26:1,3,19
27:3,19 29:24 30:13
30:20 31:10 32:3,20
33:5,10,15 34:9,11
35:8,19 38:10,20
39:15,19 40:7,16
41:11 42:7,9
**judgment** 9:11,23,24
  15:2,14 19:18,21,25
  20:4 21:1 26:5 30:16
  30:18 39:16
**judicata** 28:12 30:2

---

**K**

**Kevin** 4:13
**key** 37:16
**kind** 2:18 24:14 38:12
**kinds** 24:16 25:3
  38:22
**Kline** 15:11
**know** 4:21 5:13 7:9
  12:2 14:6 27:2 31:2
  33:24 34:16 38:14,15
  38:22 40:6,17 41:13
  41:15,17
**knows** 16:15

---

**L**

**labor** 20:12
**language** 4:25 15:23
  29:24
**large** 26:16
**largely** 27:13
**larger** 34:12
**Larson** 1:4 2:8
**Larson's** 19:5
**late** 38:7
**Laura** 1:4 2:8
**law** 3:11 12:15 16:13
  18:12 20:16 22:5,9
  22:11 24:2 30:2 41:7
  41:8
**lawsuit** 28:20
**lawyer** 5:22 10:15
  15:20 16:14

**lawyers** 16:12
**left** 27:2
**legal** 2:25 12:24 15:23
  27:5,8 28:18
**legislation** 28:22
**legitimate** 33:1 41:18
**length** 12:16
**letter** 2:25 4:15,18,19
  6:17,19 7:5,18 8:20
  9:3,18 11:15 15:20
  16:3,18,20,22,23
  17:10,21 18:10,17
  19:5,10,13 21:11,12
  22:1,2,15,16 23:6,19
  30:25 31:5,12,13
  32:19,22 33:6 35:11
  35:20,21 39:5,9,9
**limit** 2:24 33:12
**limited** 36:8
**litigating** 28:13
**little** 7:7 23:8
**long** 2:15 16:9,17
  17:25,25 18:5,12,18
  20:6,15 21:13 26:24
  27:14 38:6
**look** 14:22 24:1 40:3
  41:5
**lot** 7:8 9:8 25:7
**low** 23:24
**lunch** 32:15
**lynchpin** 15:16

---

**M**

**M** 1:23 15:9 16:21
  17:1,3 19:1,20,23
  21:4,9 22:8,21,24
  23:3,5 25:11,14
  26:11,22 27:4 30:17
  30:21 43:3,14
**magnitude** 39:12
**main** 27:20
**making** 7:12 27:21
**manifestation** 9:14
  10:2 14:22
**manifestations** 9:13
**map** 7:7

**Marc** 2:6,7 3:22 4:3,5
  4:8,23 5:5,7,11,15,18
  5:24 6:1,5,9 7:17 8:7
  9:12 10:1,21 11:2,13
  13:4,22,25 14:2,14
  14:16,20 15:8 30:23
  31:20 32:12 33:4,8
  33:11,19 34:10,22
  35:16,21 38:17,24
  39:18 40:2,9 41:3,20
  42:8
**March** 29:3
**market** 2:16
**Marks** 4:13,15 6:12,19
  6:21,21 7:25 12:12
  16:6 17:10 19:14
  23:7 31:1 36:7 37:10
  38:1 39:5 41:21,24
**marriage** 43:6
**material** 5:19 9:21
  10:4 11:18,20 12:5
  14:24 19:11 21:7
  23:12,20 33:18 36:3
  36:25 37:15
**materially** 6:18
**Matt** 15:11
**matter** 9:10 15:14
  17:18 18:12 19:18
  20:16 22:5,9,10,11
  24:1 30:2 33:2 35:5
  37:20 39:16 40:5
  41:7 43:8
**mean** 5:2 6:3 7:2,7
  13:10,12 20:24 23:10
  23:22 33:5 35:10
  39:19 40:16 41:13,14
**meaningless** 14:21
**means** 13:1
**media** 2:13 7:24
**mediation** 13:14
**medical** 25:2
**meeting** 10:3 14:24
**Melanie** 1:23 43:3,14
**memo** 36:7,10 41:21
  41:21,24
**met** 29:3

middle 32:6
million 24:25
mind 24:17 33:15
minds 10:3 14:24
minimum 20:1
minutes 2:9,9 27:3
  41:12
misspoken 17:3
momentous 17:17
money 11:11 25:7
  36:17,23
monumental 14:21
morning 2:7
move 19:20
movie 32:4,4,6,7
multiple 7:24 23:9
mutual 14:24 31:3

**N**

name 2:7 37:8 43:10
National 28:10,11,19
  29:6 30:7,10
necessarily 34:20
necessary 30:5
need 25:9
needs 26:8
negate 20:7 23:13
negotiate 24:24
negotiation 3:5 10:7
  33:9
negotiations 10:11,22
  16:2 24:8 42:3
negotiator 17:10
negotiators 16:5
never 6:23 19:14,14
  24:1,20 30:6,7 40:14
new 8:17 22:3,17 24:3
  28:21
newspaper 27:23
Ninth 1:2,15 3:12
  30:12
normal 17:25
Nos 1:1
November 1:17 2:2
  43:11
Number 27:12

**O**

objective 9:13,14 10:2
  14:22 15:1 24:12
  34:4 40:10 41:9
objects 19:14
obviously 7:15 34:16
October 2:25 3:2 4:12
  4:15,17,18 6:10,11
  6:12,17,18,23 8:11
  8:25 9:1,3,16,16
  10:18 11:15,24 12:8
  12:10 14:8 15:21
  16:23 17:20 19:10
  22:10 23:19 30:25
  31:5,12,12 32:19,22
  32:24 33:13,14,20
  35:22 38:5 39:8,9
  40:3
ODW 1:12
offer 6:21,21,22 9:16
  10:8,9,13 15:25
  26:18 31:24,25 32:24
  33:1 35:20,22 37:2
offered 25:16
offerer 32:21
offices 12:15
Okay 4:7 5:15 17:1
  42:7
once 9:2 26:14 30:19
ongoing 33:8
opportunity 2:14
opposed 7:13 9:11
opposite 3:7 14:9
oral 1:14 33:13
order 24:14
ordinarily 12:13
original 35:14,17
OTIS 1:11
outline 6:14 7:1 12:10
  17:15 31:14,18,22
  34:12,25 35:1 36:3
  38:5
outlined 6:17
outlining 39:9,10
owned 28:5,20,24
ownership 28:6,13

29:2

**P**

pages 22:25 23:11
  36:2
paid 38:2,6
PANEL 1:15
papers 26:4 30:2
parcel 3:5
Parsons 8:21,22
part 3:4 17:25 22:3
  28:14 35:12 41:23
participate 2:15
particular 23:16
particularly 3:7
parties 3:9,23 5:17 7:3
  7:15 8:15,23 9:13
  10:3,5 12:19,21,22
  13:2,5,5,14 14:3
  15:11,17,19 17:6
  18:9,16 21:10,24
  22:9,12 23:15 24:4,6
  24:17 25:22,25 29:1
  31:9 32:5,8 33:12
  34:17 35:11 39:14,21
  40:11,13 41:9 42:2
  43:7
parts 28:4,4
party 5:18 10:9 30:4
  32:21 37:23
PASADENA 2:1
passes 23:22
payment 3:15 7:23
  24:25
payments 37:25
peel 41:4
people 12:2
perceived 6:10 8:7
  22:2
percent 11:4,4 36:18
  36:19,20,20
period 2:15 13:20
  34:17
persuade 25:9
Petrocelli 15:9,10
  16:21 17:1,3 19:1,20

19:23 21:4,9 22:8,21
  22:24 23:3,5 25:11
  25:14 26:11,22 27:4
  30:17,21
phone 16:4
picture 27:14
place 21:19 30:24
plaintiff 1:5 2:8 20:12
plaintiffs 19:11 22:14
  24:24
plaintiff's 15:20 16:6
please 2:6 4:21 15:9
plus 24:25 25:2
point 8:25 10:5 13:23
  16:5 24:7 30:24
  32:18
pointed 30:1,1 41:21
points 13:15
position 15:13,18
  21:25
possibly 22:13
potential 24:22
potentially 26:12
power 2:12
powerful 15:23
practice 18:23 19:2
  24:17
precise 23:8
precisely 12:3
precluded 28:8
predecessor 28:10
  29:6
Pregerson 20:10
prepare 18:18
prepared 18:25
prevailing 30:4
prevented 28:12
price 23:24
principal 13:15 16:4
principle 8:8,9 11:3,3
  13:14 41:6
prior 20:7,20,20 26:21
  26:23
privileged 12:14
probably 16:15 33:18
problem 19:15 31:10

31:11 35:16
**proceeding** 18:24
**proceedings** 43:5
**process** 17:25 18:4
 20:6 42:1
**production** 32:4
**project** 23:10
**promoting** 38:8
**proof** 19:9
**proper** 5:21
**properties** 7:20 36:4,7
 36:8,10,12 37:17
 38:25
**proposal** 10:10
**prove** 24:14
**proven** 26:13
**proves** 15:1 42:5
**provision** 38:16
**provisions** 2:11 17:23
 35:6 38:1,25
**publicity** 38:8
**published** 36:13 37:7
**pudding** 19:9
**purely** 27:8 28:18 31:7
**purported** 14:10
**purporting** 4:16
**purports** 6:22
**purpose** 30:8
**put** 7:15 15:4 24:9
 27:24 38:12

_____

**Q**

**quarrel** 40:16
**ques** 21:9
**question** 3:12 5:14,23
 11:13,14,18,23 13:7
 13:9,21 20:6,8,18,19
 20:21 21:10,16 23:14
 23:16,17,24 24:5
 25:19,22 26:3,20
 30:16 31:8 34:19,20
**questions** 13:11 27:7

_____

**R**

**R** 43:1
**raise** 21:8

**raised** 15:4
**rate** 23:2,4,6,8
**reach** 10:12 15:19
 22:12 42:2
**reached** 10:14,17
 15:17 18:17 22:9
 35:11
**reaches** 19:14
**reaching** 18:23
**reacts** 8:16
**read** 23:6 26:4 41:16
 41:20,23
**really** 23:6 33:2
**reason** 14:6 28:18
**reasons** 28:25 29:10
**rebuttal** 2:10 15:6
**recaptured** 25:5
**receive** 24:24 36:23
 37:10,11,12
**received** 17:13 25:21
**recipient** 17:9
**recitation** 12:8 15:22
 25:20
**record** 16:2 17:8 19:2
 19:5,24 22:13 41:23
 43:5
**recovering** 2:16
**reduced** 23:9
**reducible** 36:19,19
**reducing** 32:7
**reductions** 11:5
**refer** 35:7
**reference** 8:13,13
**references** 29:20
**refers** 33:20 40:4
**reflected** 10:20 19:6
 31:5,6 33:6
**regardless** 3:1 32:2
**Reinhardt** 1:16 3:19
 3:24 4:4,7 5:6,8,13
 5:16,20,25 6:3,7 8:5
 10:14,24 12:25 13:24
 15:7 16:19,24 17:2
 18:21 19:17,22 20:25
 22:19,22 23:18 25:8
 25:12 26:19 27:3

30:13,20 31:10 32:3
 38:10,20 41:11 42:7
 42:9
**reject** 31:12
**rejected** 32:16
**rejection** 9:18
**rejects** 8:18
**related** 36:12
**relevance** 26:1
**relevant** 19:3 21:17
 25:21
**relies** 3:6
**rely** 39:24
**remainder** 15:6
**remand** 26:6,9
**remedy** 2:12
**rendering** 36:22
**renewal** 2:17 28:20,22
 28:24 29:8,9,16
**reply** 16:25 35:25 36:2
**represent** 2:8
**representative** 13:3
 16:7 17:5
**repudiated** 25:17
**required** 9:23,25 15:3
 40:13
**requires** 38:7 40:1
**res** 28:12 30:2
**reservation** 16:16 17:7
**reserve** 2:9 15:6 35:2
 40:15
**resolution** 40:1
**resolve** 26:16,21
**resolved** 16:5 22:13
 30:15
**resolving** 26:24
**respectfully** 40:2
**responded** 16:8
**responds** 16:11 17:10
**response** 5:2 9:18
 19:10,13 22:16
**rest** 33:16
**resuscitate** 10:12
**retained** 27:25
**revenues** 11:6
**reversed** 20:17

**reviewed** 17:13
**revise** 35:3,5
**right** 5:3,4,8,16 6:24
 7:8 10:15 13:19
 16:24 29:9 30:13,20
 35:3 39:22 40:6,15
 41:1
**rightly** 10:4
**rights** 2:20 8:2 9:6
 16:16 29:9,14,16
 39:12
**royalties** 36:15 37:17
**royalty** 7:24 11:4,4,6
 11:11 17:23 23:2,4,5
 23:8 36:16,18 37:11
 37:12,25 38:24
**rule** 9:22,23
**ruled** 18:8
**rules** 24:13
**ruling** 28:16 29:19
**running** 30:13
**RZx** 1:12

_____

**S**

**s** 2:21,23 3:2,4 31:6
 37:11,15 38:5
**saying** 3:10,19 11:16
 14:10 19:5 33:15
 35:22 38:11 39:22
 40:10 41:2 42:5
**says** 4:20 5:22 6:13
 7:25 8:18,23 13:19
 15:23 16:18 18:20
 19:14 31:13,17 32:22
 33:23,23 34:24 35:1
 38:1,6 39:6 41:24,25
 42:4
**scale** 11:5
**scenario** 37:9,10,11
**Schulman** 4:12 6:11
 6:13,17,23 8:12 16:8
 16:11 17:2,9 19:4
 23:6
**Schulman's** 16:20
 19:13 22:2,16 36:10
 37:9

**scope** 37:17 38:25
**scores** 18:15
**second** 4:1 19:15
  21:23 22:19,22,24
  28:9,22 29:5,12,13
  29:18
**secondly** 29:5 36:15
**Section** 39:1
**SEDWICK** 1:16 26:3
**see** 5:1 33:19 41:6
**seeking** 26:5,6
**send** 16:7 35:2 40:5,14
**sends** 4:15
**sent** 12:12 15:20 16:10
  16:12
**separate** 27:5 28:25
**SER** 15:21 27:12
**series** 11:9
**set** 4:16 7:18 13:15
  30:25
**Seto** 15:11
**settlement** 2:22 4:9,10
  15:13
**seven** 8:3 41:12
**seventies** 28:9,19
**showing** 40:11
**shows** 4:23 6:3 34:4,5
  34:7
**Shuster** 27:14,22 28:2
  28:10 29:1,15
**Shusters** 27:18
**sic** 19:5 38:11
**side** 10:11,16 18:19
  26:25 31:16 32:14
  41:18
**sides** 8:5,7 31:3
**Siegel** 1:4 2:8 8:16
  15:24 25:5 26:25
  27:13,22 28:2,10
  29:1,14 36:13 38:7
  38:21
**Siegels** 3:1 4:9,14
  11:17 12:10 27:18
  35:4 38:18
**signed** 3:9,22 14:3,3
  39:3,14 40:12

**significance** 24:6
**significant** 22:17
  26:23
**signing** 39:6
**silent** 9:4
**simple** 7:10 22:4 41:13
  41:14
**simply** 18:9 25:21
**single** 2:25 41:6
**situation** 18:16 20:12
  33:17 34:2,3,5 36:16
  37:5 40:20
**situations** 36:23
**six** 8:3
**sketches** 27:16,22
**sliding** 11:5
**small** 37:20
**smooth** 42:2,2
**sold** 8:2
**solely** 30:8
**sort** 7:2 38:12
**sorts** 11:5 13:12 36:21
**sound** 38:10
**special** 23:10
**specific** 32:17 40:21
**specifically** 40:4
**Spectre** 36:9
**standard** 20:4
**start** 16:9 32:6
**state** 6:20 24:17 37:3
  41:10
**statement** 6:7,9 30:9
**states** 1:2,10 17:11,13
**stipulation** 3:10
**stock** 3:16 7:23 36:18
**stolen** 12:15
**stop** 6:24 8:12
**strips** 27:23
**strong** 19:24
**studio** 11:8
**studios** 37:20
**subject** 10:18 24:10
  27:6
**submit** 11:22
**submitted** 42:10
**subscribed** 43:10

**subsequent** 20:19
  25:24 35:13
**substantial** 24:25
  37:21
**sued** 20:13
**sufficient** 21:1 23:20
  23:25 24:2
**sufficiently** 3:13 41:16
**suggest** 19:11 26:4
**suggested** 22:3
**suggests** 33:16
**suit** 9:1,6
**summary** 9:11,23,23
  15:2,14 19:18,21
  20:3 21:1 26:5 30:16
  30:18 39:16
**super** 17:18
**Superboy** 36:8,11
**Superman** 27:11,15
  27:23 29:2,21 36:8
  36:11,24 37:5,7 38:8
**support** 19:25
**suppose** 21:23
**sure** 17:21 19:2 20:24
  22:25 24:12
**surprise** 37:13
**sworn** 12:18
**system** 7:24

**T**

**T** 43:1,1
**take** 10:8,8,9 23:11
  32:3,3
**takes** 24:6
**talking** 16:19,21 38:20
**teleconference** 33:21
**telephone** 4:14 32:23
**tell** 5:25 19:17 21:6
  33:20
**tells** 6:23 7:12
**term** 2:17 7:21 11:14
  11:19,20 12:18,18,18
  23:12,24 25:1 28:23
  28:24 29:16 36:15
**terminated** 42:3
**termination** 2:11 3:18

**4:9** 9:6 28:21
**terms** 3:2,3,12 4:16,19
  5:19 6:6,8,10,15,17
  6:18 7:4,4,9,11,18
  8:17,18 9:3 10:4
  12:5,9 13:6 14:4,8,24
  15:22,25 17:20 19:6
  21:24 22:2,3 23:16
  23:20,25 24:3 30:25
  31:23 32:12,18 33:22
  33:25 34:14,15,24
  35:2,4,5,12,14,17
  36:25 37:16 39:9,10
  40:21
**test** 23:22
**testified** 12:16
**testifies** 38:3
**testimony** 12:18 16:6
  17:8 24:6,10,14,16
**Thank** 15:7 30:20,21
  42:7,8
**Thanks** 15:8
**theories** 28:6
**thing** 16:18
**things** 17:21 18:19
  20:15 24:18,19 38:12
  38:22
**think** 5:21,24 6:2
  17:12 19:23,25 23:18
  24:20 25:10 26:8
  40:25 41:11
**third** 37:22
**THOMAS** 1:16 4:22
  4:25 6:25 9:8,25
  11:12 13:7 14:1,10
  14:15,19 20:22 21:6
  22:5 23:1,4 32:20
  33:5,10,15 34:9,11
  35:8,19 39:15,19
  40:7,16
**thought** 12:17 16:25
**thousands** 16:15
**three** 9:4,15 24:23
  26:17 36:8
**threshold** 21:10,18
  23:23

ORAL ARGUMENT - 11/5/2012

Page 9

thrown 24:21
time 8:21 10:9 13:13
    17:16 21:13,13,15
    27:2 30:14
times 16:15
title 37:8
Toberoff 2:6,7 3:22
    4:3,5,8,23 5:5,7,11
    5:15,18,24 6:1,5,9
    7:17 8:7 9:12 10:1
    10:21 11:2,13 13:4
    13:22,25 14:2,14,16
    14:20 15:8 18:4
    23:17 30:23 31:11,20
    32:12 33:4,8,11,19
    34:10,22 35:16,21
    38:17,24 39:18 40:2
    40:9 41:3,20 42:8
today 34:13
topic 27:7
totally 9:4 27:5
tour 38:21
tours 38:8
trans 39:5
transaction 17:18
TRANSCRIBED 1:23
transcript 43:4
transfer 25:4,6
transferred 29:1
tremendous 2:12 36:1
trial 9:10 15:16 19:18
    20:2 26:1,6,9
triggers 37:23
true 7:13 43:4
truly 17:17
try 10:12 25:9
turn 2:21 27:4
Turning 15:12
two 7:2,4 13:10 16:4
    28:25
two-and-a-half 16:1
typical 4:25

_____ U _____

unambiguous 18:10
uncertainty 6:4

understand 11:12
    12:25 20:5,24 33:10
    35:8 41:17
understood 39:11,17
    39:25
undid 20:19
undisputed 9:15 10:2
    20:22 28:1 34:4 41:9
undo 20:20
unequivocal 6:5 31:24
unintelligible 11:8
    38:11
union 20:12
UNITED 1:2
UNITIED 1:10
unnecessary 40:22
unpublished 36:13
unsure 4:24
unusual 11:14

_____ V _____

v 1:6
Valente 14:16
Valente-Kritzer 14:17
value 2:16
variations 17:24
various 27:16
vastly 3:3
veneer 41:4
verbiage 31:21
view 26:24
viewed 39:8
vindicating 2:20

_____ W _____

Wait 19:15
waiting 2:15
want 19:11 27:24,24
    35:24 38:2
wanted 24:4 28:16
war 2:19
Warner 1:7 2:21,23
    3:2,3,6 4:13 7:18 8:1
    8:2,17,21 9:1,20 10:7
    11:25 12:5 30:23
    31:4,6 33:24 34:7

35:3 36:4,21 37:5,11
    37:14,15 38:5,6,18
    40:3
warrant 8:1
warranties 8:3 11:9
    37:19
warranty 11:11 37:24
wasn't 5:13 19:6 26:17
    35:22
way 26:24 29:2 31:25
    32:1 37:2 41:22
week 16:10 17:9
weeks 37:7
went 20:14 29:12,18
weren't 40:24
we'll 8:1 16:8 41:16
we're 7:14 17:16 20:1
    30:13 31:17 40:17
    41:15
we've 7:6 17:15 19:16
    31:14,17 41:11
whatsoever 36:23
white 27:15,23
widens 8:14
wildly 20:3
win 30:15
withhold 11:11 37:24
    37:25
won 30:7
words 14:18 36:5
work 28:5,6 29:7,19
    29:22
worked 38:23
working 16:9 17:16
    40:17
works 2:16
wouldn't 5:9 25:12
WRIGHT 1:11
write 13:4
writes 6:11,13 8:22
writing 32:7 39:3
written 5:3 15:22 16:4
    16:15 17:2 32:11
    33:14 39:14 40:12
wrong 4:21 6:14 18:14
    28:17 33:23

wrote 8:20 12:15

_____ Y _____

Yeah 5:20 14:19
years 9:4 16:2 24:23
    26:17

_____ $ _____

$20 24:25

_____ 0 _____

0 2:4 42:11

_____ 1 _____

1 27:12 28:15,21 29:3
    29:22 36:19,20
1st 3:4 8:13 36:11
1/2 36:19
10 2:9
11-56034 1:1
11-56863 1:1
140 36:2
149 36:2
16th 4:15,17 6:10,23
    32:25 33:1,13,21
    35:20
19 15:21 16:23 17:20
    22:10 23:20
19th 2:25 4:18 6:18
    8:25 9:3,16 11:15,24
    12:8 14:8 30:25
    31:12 32:19,22 33:2
    33:7,14 35:20 39:8
1938 27:21 29:14
1999 4:10

_____ 2 _____

20 2:9
2001 8:25 15:21 16:23
    30:24,25
2002 8:21 33:9
2004 9:1
2012 1:17 2:2 43:11
2033 25:2
204(a) 39:1
26 19:10
26th 3:3 6:11,12,17

8:11,20,21 9:16,17
9:18 12:10 31:5,12
35:22 38:5 39:9 40:3
**28-year** 28:22

---
**3**
---
**3** 36:19

---
**4**
---
**456** 15:21

---
**5**
---
**5** 1:17 2:2
**50** 22:25 23:11

---
**6**
---
**6** 11:4,4 36:18
**6th** 43:11
**6420** 1:24

---
**7**
---
**714** 27:12

---
**9**
---
**9th** 4:12 8:16 9:18
10:16