# EXHIBIT J

# LAW OFFICES OF MARC TOBEROFF

A PROFESSIONAL CORPORATION

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
ALEXANDER M. MERINO

* ALSO ADMITTED IN NEW YORK

1999 AVENUE OF THE STARS, SUITE 1540

LOS ANGELES, CALIFORNIA 90067

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

## FACSIMILE COVER PAGE

| **TO:** James D. Weinberger, Esq.; Adam Hagen, Esq. | **FAX:** 212-813-5901; 310-550-7191 |
| --- | --- |
| **FROM:** Marc Toberoff | **PAGES ( including cover ):** 60 |
| **DATE :** 2/15/06 | **RE:** Siegel, et al., v. Time Warner, Inc., et al. (Case No. CV 04-08776 RSWL (RZx)) – Summary Judgment |

**COMMENTS:**

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS INTENDED ONLY FOR USE OF THE
INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS
PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE
READER OF THIS TRANSMISSION IS NOT THE INTENDED RECIPIENT, ANY DISSEMINATION,
DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE
RECEIVED THIS COMMUNICATION IN ERROR PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE
AND RETURN THE ORIGINAL TRANSMISSION TO US AT THE ABOVE ADDRESS VIA THE US POSTAL
SERVICE. THANK YOU.

1  Marc Toberoff (CA State Bar No. 188547)
   Nicholas C. Williamson (CA State Bar No. 231124)
2  LAW OFFICES OF MARC TOBEROFF, PLC
   1999 Avenue of the Stars, Suite 1540
3  Los Angeles, CA 90067
   Telephone: (310) 246-3333
4  Facsimile: (310) 246-3101

5  Attorneys for Plaintiffs and Counterclaim Defendants
   JOANNE SIEGEL and LAURA SIEGEL LARSON

6

7                  UNITED STATES DISTRICT COURT

8                  CENTRAL DISTRICT OF CALIFORNIA

9  JOANNE SIEGEL, an individual; and     Case No. CV 04-08776 RSWL (RZx)
   LAURA SIEGEL LARSON, an
10 individual,                           [Honorable Ronald S. W. Lew]
                         Plaintiffs,
11         vs.                          PLAINTIFFS JOANNE SIEGEL
                                        AND LAURA SIEGEL LARSON'S
12 TIME WARNER INC., a corporation;     NOTICE OF MOTION AND
   WARNER COMMUNICATIONS             MOTION FOR  PARTIAL
13 INC., a corporation; WARNER BROS.    SUMMARY JUDGMENT;
   ENTERTAINMENT INC., a             MEMORANDUM OF POINTS AND
14 corporation; WARNER BROS.            AUTHORITIES IN SUPPORT
   TELEVISION PRODUCTION INC., a    THEREOF
15 corporation; DC COMICS, a general
   partnership; and DOES 1-10,
16
                         Defendants.
17                                       [Complaint filed: October 22, 2004]

18

19 _____     Date:  March 20, 2006
                                        Time:  9:00 a.m.
   DC COMICS,                           Place: Courtroom 21, 5th Floor
20
                    Counterclaimant,
21         vs.                          [Memorandum of Points and
                                        Authorities In Support of Motion
22 JOANNE SIEGEL, an individual; and   For Partial Summary Judgment;
   LAURA SIEGEL LARSON, an          Statement of Uncontroverted Facts
23 individual,                           and Conclusions Of Law; Declaration
                                        Of Marc Toberoff; Request For Judicial
24           Counterclaim Defendants.   Notice and [Proposed] Judgment Filed
                                        Concurrently Herewith]
25

26

27

28

1  TO DEFENDANTS TIME WARNER INC., WARNER COMMUNICATIONS

2  INC., WARNER BROS. ENTERTAINMENT INC., WARNER BROS.

3  TELEVISION PRODUCTION INC., DC COMICS AND ITS COUNSEL OF

4  RECORD:

5       PLEASE TAKE NOTICE that on March 20, 2006, at 9:00 a.m. or as soon

6  thereafter as the matter may be heard, in Courtroom 21 of the above-entitled court,

7  Plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs"), the widow and

8  daughter respectively of author Jerome Siegel ("Siegel") will and hereby do move

9  the Court for an order of partial summary judgment that Plaintiffs' Notice of

10 Termination pursuant to Section 304(c) of the Copyright Act of 1976, 17 U.S.C. §

11 304(c), which was served on Defendants on November 8, 2002 and filed with the

12 United States Copyright Office on November 20, 2002, is valid and effective; and

13 that as of November 17, 2004, the noticed termination date, Jerome Siegel's prior

14 grant(s) of "Superboy" to Defendants' alleged predecessors were terminated and

15 Siegel's original "Superboy" copyright was thereby recaptured by Plaintiffs, all in

16 accordance with 17 U.S.C. § 304(c).

17      Plaintiffs' motion is based on this notice of motion and motion, the following

18 memorandum of points and authorities, the declaration and proposed judgment filed

19 concurrently herewith, the Court Record, the argument of counsel, and any matters

20 of which the court may take judicial notice.

21

22 Dated: February 15, 2006            LAW OFFICES OF MARC TOBEROFF, PLC

23

24

25                                     By: _____

26                                          Marc Toberoff
                                           Attorneys for Plaintiffs JOANNE SIEGEL
27                                          and LAURA SIEGEL LARSON

28

LAW OFFICES OF
MARC TOBEROFF                                    2

NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT

1 | Marc Toberoff (CA State Bar No. 188547)
2 | Nicholas C. Williamson (CA State Bar No. 231124)
   | LAW OFFICES OF MARC TOBEROFF, PLC
   | 1999 Avenue of the Stars, Suite 1540
3 | Los Angeles, CA 90067
   | Telephone: (310) 246-3333
4 | Facsimile: (310) 246-3101

5 | Attorneys for Plaintiffs and Counterclaim Defendants
   | JOANNE SIEGEL and LAURA SIEGEL LARSON

6

## UNITED STATES DISTRICT COURT

7

## CENTRAL DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| 9  JOANNE SIEGEL, an individual; and | Case No. CV 04-08776 RSWL (RZx) |
| 10  LAURA SIEGEL LARSON, an | |
| individual, | [Honorable Ronald S. W. Lew] |
| 11 | |
| Plaintiffs, | |
| 12  vs. | **PLAINTIFFS JOANNE SIEGEL** |
| | **AND LAURA SIEGEL LARSON'S** |
| 13  TIME WARNER INC., a corporation; | **MOTION FOR PARTIAL** |
| | **SUMMARY JUDGMENT** |
| 14  WARNER COMMUNICATIONS | |
| INC., a corporation; WARNER | |
| 15  BROS. ENTERTAINMENT INC., a | [Complaint filed: October 22, 2004] |
| 16  corporation; WARNER BROS. | |
| TELEVISION PRODUCTION INC., | Date: March 20, 2006 |
| 17  a corporation; DC COMICS, a general | Time: 9:00 a.m. |
| 18  partnership; and DOES 1-10, | Place: Courtroom 21, 5th Floor |
| 19 | [Statement of Uncontroverted Facts |
| Defendants. | and Conclusions Of Law; Declaration |
| 20 | of Marc Toberoff; Request For |
| DC COMICS, | Judicial Notice and [Proposed] |
| 21 | Judgment Filed Concurrently |
| | Herewith] |
| 22  Counterclaimant, | |
| 23  vs. | |
| 24  JOANNE SIEGEL, an individual; and | |
| LAURA SIEGEL LARSON, an | |
| 25  individual, | |
| 26 | |
| Counterclaim Defendants. | |
| 27 | |

28

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................1

II.   UNDISPUTED FACTS.........................................................................2

II.   LEGAL ANALYSIS.............................................................................8

    A.   Standard of Review....................................................................8

    B.   The Termination Provisions Of The 1976 Copyright
        Act ..........................................................................................8

        1. The Renewal Term Under The 1909 Copyright
           Act.................................................................................8

        2. The 1976 Copyright Act Was Designed To Give
           Authors And Heirs Full Benefits Of The Extended
           Renewal Term...............................................................9

    C.   Defendants Are Bound By The 1947 State Action .....................11

    D.   Plaintiffs' Duly Exercised Their Termination Right..................13

        1. Plaintiffs' Termination Complied with the Copyright Act......13

        2. The Termination Notice Was Not Required To List The
           1948 Consent Judgment................................................16

    E.   Plaintiffs' Own A Valid Statutory Copyright In "Superboy".......17

        1. Copyright Secured By Registration Of The Collective
           Periodical That Published The Siegel Superboy Material......17

        2. Siegel's Had The Legal Right to Create Superboy..............19

        3. The Siegel Superboy Material Were Not Works-For-Hire......21

IV.   CONCLUSION..................................................................................25

i

# TABLE OF AUTHORITIES

## FEDERAL CASES
<u>Pages</u>

*Allen v. McCurry,*
   449 U.S. 90, 101 S.Ct. 411, 66 L.Ed. 2d 308 (1980)......................11

*Ashe v. Swenson,*
   397 U.S. 436, 444, 25 L.Ed. 2d 469, 90 S.Ct. 1189 (1970)................22

*Burroughs v. MGM,*
   683 F.2d 610, (2d. Cir. 1982)...............................................17

*Dolman v. Agee,*
   157 F.3d 708, 711-712 (9th Cir. 1998).....................................24

*EFCO Corp. v. U.W. Marx, Inc.,*
   124 F.3d 394, 397 (2d Cir. 1997)..........................................12

*Foad Consulting Group, Inc. v. Musil Govan Azzalino,*
   270 F.3d 821, 825, 831-832 (9th Cir. 2001)...............................20

*Fred Fisher Music Co. v. M. Witmark & Sons,*
   318 U.S. 643 (1943)..........................................................9

*Fuchsberg & Fuchsberg v. Galizia,*
   300 F.3d 105, 109 (2d Cir. 2002)..........................................12

*Garguili v. Thompkins,*
   790 F.2d 265, 269 (2d Cir. 1986).........................................12

*Jasper v. Bovina Music, Inc.,*
   314 F.3d 42, 46 (2d Cir. N.Y. 2002)......................................22

*JBJ Fabrics, Inc. v. Brylane, Inc.,*
   714 F. Supp. 107, 110 (S.D.N.Y. 1989) ...................................20

*Jerome Siegel and Joseph Shuster v. National Periodical Publications et al.,*
   364 F. Supp. 1032 (S.D.N.Y. 1973).........................................2

*Jerome Siegel and Joseph Shuster v. National Periodical Publications, et al.,*
   508 F.2d 909 (2nd Cir. 1974).....................................1, 3, 19, 23

*Johnson v. Watkins,*
   101 F.3d 792 (2d Cir. 1996)...............................................12

*Kamilche Co. v. United States,*
   53 F.3d 1059, 1062 (9th Cir. 1995)........................................11

*Knickerbocker Toy Co. v. Faultless Starch Co.,*
   467 F.2d 501, (C.C.P.A. 1972).............................................22

*Lin-Brook Blders Hrdwre v. Gertler,*
   352 F.2d 298, 300 (9th Cir. 1965).........................................24

ii

*Marvel Characters, Inc. v. Simon,*
  310 F.3d 280 (2d Cir. 2002)...................................................11

*Matsushita Elec. Idus. Co. v. Epstein,*
  516 U.S. 367, 11 S.Ct. 873, 134 L.Ed. 2d 6 (1996).......................11

*Migra v. Warren City Sch. Dist. Bd. of Ed.,*
  465 U.S. 75, 84, 104 S.Ct. 892, 79 L.Ed. 2d 56 (1984)..................11

*Mills Music Inc. v. Snyder,*
  469 U.S. 153 (1985)..........................................................10

*Morse v. Fields,*
  127 F. Supp. 63, 64-65 (SDNY 1954).....................................18

*Murphy v. Gallagher,*
  761 F.2d 878, 882 (2d Cir. 1985).........................................12

*Music Sales Corp. v. Morris,*
  73 F. Supp. 2d 364 (S.D.N.Y. 1999).......................................17

*New York Times Co. v. Tasini,*
  533 U.S. 483 (2001)..........................................................10

*Norris v. Grosvenor Mktg. Ltd.,*
  803 F.2d 1281 (2d Cir. 1986)..............................................12

*Pension Trust Fund for Oper. Engineers v. Triple A Machine Shop, Inc.,*
  942 F.2d 1457, 1464-1465 (9th Cir. 1991).................................11

*Picture Music, Inc. v. Bourne, Inc.,*
  314 F. Supp. 640, 652 (S.D.N.Y. 1970)....................................13

*Playboy Enters., Inc. v. Dumas,*
  53 F.3d 549,554 (2d Cir. 1995)............................................24

*Self-Realization Fellowship Church v. Ananda Church,*
  206 F.3d 1322, 1329 (9th Cir. 2000)...................................18,24

*Stewart v. Abend,*
  495 U.S. 207 (1990)....................................................8, 9, 10

*T.B. Harms Co. v. Eliscu,*
  339 F.2d 823, 826 (2d Cir. 1964).........................................22

*Twentieth Century Fox Film Corp. v. Entertainment Distrib.,*
  429 F.3d 869, 877 (9th Cir. 2005).........................................24

*Vernitron Corp. v. Benjamin,*
  440 F.2d 105,108 (2d Cir. 1971).......................................13, 19

**STATE CASES**

*O'Brien v. City of Syracuse,*
  54 N.Y.2d 353, 357 (1981)................................................12

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1 | *Reilly v. Reid,*
    45 N.Y.2d 24, 29-30 (1978)...................................................................12

2 | *Schwartz v. Pub. Adm'r,*
3 |    24 N.Y.2d 65, 71 (1969)...................................................................12

4 | *Smith v. Russell Sage College,*
     54 N.Y.2d 185, 192 (1981)...................................................................12

5 | **STATUTES**

6 | 17 U.S.C. § 1 [1909 Act]..........................................................................8

7 | 17 U.S.C. § 26 [1909 Act].............................................................. 21,24

8 | 17 U.S.C. § 101 *et seq*[1976 Act]..........................................................9

9 | 17 U.S.C. § 304(a)..................................................................................9

10 | 17 U.S.C. § 304(b)..................................................................................9

11 | 17 U.S.C. § 304(c)...........................................................................passim

12 | 17 U.S.C. §304(d)...................................................................................9

13 | 37 C.F.R. § 201.10............................................................................7,17

14 | Fed R. Civ. P. 56(c)................................................................................8

15 |
16 | **MISCELLANEOUS**

17 | 3-30 *Moore's Federal Practice and Procedure* § 30.73.............................22

     18-133 *Moore's Federal Practice-Civil* § 133.30....................................11
18 |
     2-7 *Nimmer on Copyright* § 7.12 ..........................................................18
19 |
     3-9 *Nimmer on Copyright* § 9.11[B] [1](2005).......................................9
20 |
     3-10 *Nimmer on Copyright* § 10.03.......................................................20
21 |
     .3-12 *Nimmer on Copyright* § 12.01.......................................................22
22 |
23 | H.R. Rep. No. 94-1476 (1976).............................................................9, 10

     S. Rep. No. 104-315 (1996)....................................................................9
24 |

25 |
26 |
27 |
28 |

## I.    INTRODUCTION

1
2          Plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs") are the
3   widow and daughter, respectively, of Jerome Siegel ("Siegel"), the co-author of
4   the world renowned comic book hero, "Superman," and the author of
5   "Superboy."   This case arises out of Plaintiffs' proper exercise on March 8,
6   2002 of their right under section 304(c) of the 1976 Copyright Act to recapture
7   Siegel's original copyright in "Superboy" by serving statutory notice on the
8   defendants herein ("Defendants") terminating Siegel's prior grant(s) of
9   "Superboy" to Defendants' predecessor(s) (the "Termination").  Plaintiffs'
10  Termination complied with all the requirements of 17 U.S.C. § 304(c) and 37
11  C.F.R. § 201.10, the regulations promulgated thereunder by the Register of
12  Copyrights. On November 17, 2004, the noticed Termination date, all rights that
13  Siegel had conveyed in "Superboy" to Defendants' predecessors, duly reverted
14  to Plaintiffs.

15          Plaintiffs hereby move for partial summary judgment that their statutory
16  Termination is valid and that Plaintiffs have thereby recaptured Siegel's
17  "Superboy."   This issue is ripe for summary judgment.  There are no material
18  issues of fact due to the judicial findings in a prior 1947 action between the
19  parties' predecessors in the Supreme Court of the State of New York involving
20  the same underlying facts relevant to this motion. The findings of fact and
21  conclusions of law in the 1947 action regarding Siegel's creation/ownership of
22  "Superboy" and the relationship between Siegel and Defendants' predecessors
23  are binding on Defendants under the doctrines of *res judicata* or collateral
24  estoppel and are dispositive of Plaintiffs' motion. The preclusive effect of the
25  findings and conclusions in the 1947 state court action was explicitly confirmed
26  in *Jerome Siegel and Joseph Shuster v. National Periodical Publications, et al.*
27  509 F.2d 909, 912-913 (2nd Cir. 1974), a subsequent *federal copyright action*
28  against Defendants' predecessors.

i

1  **II.   UNDISPUTED FACTS**

2        In or about 1947, Siegel and Joseph Shuster ("Shuster"), the original

3  illustrator of "Superman," filed an action in the Supreme Court of the State of

4  New York, County of Westchester (the "1947 Action") against Defendant DC

5  Comics' predecessor, National Comics Publications, Inc. ("National") to

6  determine the validity of various "Superman" contracts between Siegel and

7  Shuster and National's predecessors, including Detective Comics, Inc.

8  ("Detective"), and to determine the ownership of Siegel's creation "Superboy."

9        Pursuant to stipulation of the parties the action was tried before an

10  Official Referee of the New York Supreme Court, Judge Addison Young

11  ("Judge Young"). *See Jerome Siegel and Joseph Shuster v. National Periodical*

12  *Publications et al.*, 364 F. Supp. 1032, 1034-1035 (S.D.N.Y. 1973) *aff'd* 509

13  F.2d 909, 912-913 (2nd Cir. 1974) (both the District Court and Second Circuit

14  court describe the procedural background of the 1947 Action).

15       After trial of the 1947 Action, Judge Young rendered an opinion dated

16  November 21, 1947 (the "1947 Opinion"). *Id.* On April 12, 1948, Judge Young

17  signed detailed findings of fact and conclusions of law and rendered an

18  interlocutory judgment from which no appeal was perfected. *Id.* After

19  reviewing considerable documentary and testimonial evidence, Judge Young

20  found that National owned "Superman" pursuant to an instrument dated March

21  1, 1938, but that Siegel was the sole author and owner of "Superboy." *See* Judge

22  Young's Findings of Fact and Conclusions of Law (Nos. 25-26), dated April 12,

23  1948, attached as Exhibit "B" to both the Declaration of Marc Toberoff

24  ("Toberoff Decl.") and the Request for Judicial Notice filed concurrently.

25       Settlement negotiations ensued, resulting in a stipulation of settlement by

26  the parties dated May 19, 1948 ("1948 Stipulation"), and pursuant to the

27  stipulation the entry in the New York Supreme Court of a final consent

28  judgment dated May 21, 1948 ("1948 Consent Judgment"). *Siegel*, 364 F. Supp.

2

1  at 1034-1035; 509 F.2d at 912-913. *See* 1948 Stipulation and 1948 Consent

2  Judgment attached as Exhibits "B" and "C," respectively, to Toberoff Decl.

3      In 1969, Siegel and Shuster sought declaratory relief in the U.S. District

4  Court for the Southern District of New York regarding ownership of the renewal

5  copyright to "Superman," resulting on appeal in the Second Circuit's decision in

6  *Siegel*, *supra*. The Second Circuit found that Judge Young's opinion, findings

7  of fact, conclusions of law and resultant consent judgment after settlement of the

8  1947 Action were binding on the parties under the doctrine of *res judicata*, and

9  based thereon found that National owned the renewal copyright to Superman

10 under the March 31, 1948 Grant. *Siegel*, 509 F.2d at 912-913.

11     Plaintiffs' motion for partial summary judgment should be granted

12 because the findings of fact and conclusions of law in these prior litigations

13 between the parties' predecessors are dispositive of Plaintiffs' motion.

14                    **The Creation of Superman**

15     The facts and conclusions of law set forth below are from the findings of

16 fact ("1948 FOF") and conclusions of law ("1948 COL") of Judge Young in the

17 1947 Action (*see* Toberoff Decl., Exh. B) and/or from the Second Circuit's

18 decision in *Siegel*, *supra*, except as otherwise noted:

19     In 1933, Jerome Siegel ("Siegel") conceived of the original idea of a

20 cartoon strip featuring a unique man of superhuman powers who would perform

21 feats for the public good. Siegel called him "Superman." 1948 FOF, Fact 9;

22 509 F.2d at 911. In 1934, Siegel wrote, and the artist, Joe Shuster ("Shuster"),

23 illustrated and "inked" multiple "Superman" comic strips intended for

24 publication in a newspaper format. 1948 FOF, Facts 8, 10; 509 F.2d at 911, 914.

25 By 1934, "Superman and his miraculous powers were completely developed [by

26 Siegel and Shuster]." 509 F.2d at 911, 914; *see* 1948 FOF, Facts 8-11.

27     In or about January–February 1938, when Detective expressed interest in

28 publishing Siegel and Shuster's 1934 Superman comic strip in a magazine

3

1  format, Siegel and Shuster chose to cut and paste their 1934 Superman comic
2  strip into separate panels to render their newspaper strip more suitable for a
3  magazine layout. 1948 FOF, Facts 17-18, 31-33; 509 F.2d at 911.

4       By an instrument dated March 1, 1938 (the "March 1, 1938 Grant"),
5  Siegel and Shuster agreed to the publication of their Revised 1934 Superman
6  Comic Strip by Detective in consideration for the sum of $10 per page for this
7  thirteen page installment equal to a total of $130. 1948 FOF, Facts 23-25; 509
8  F.2d at 911, 914. Detective published Siegel and Shuster's 1934 Superman
9  comic strip in the "June, 1938" issue of "Action Comics No. 1," which was first
10  published on April 18, 1938. 1948 FOF, Facts 30-33. Siegel and Shuster
11  thereafter continued to create "Superman" comic strips which were published in
12  succeeding issues by Detective. 1948 FOF, Fact 35.

13       On September 22, 1938, Siegel and Shuster entered into an agreement
14  with Detective (the "September 22, 1938 Agreement") to produce the "artwork
15  and continuity" for five existing comic strips created by them, including
16  "Superman." 1948 FOF, Facts 39, 46. In addition, the September 22, 1938
17  Agreement permitted Siegel and Shuster to create new comic book features,
18  provided National had a right of first refusal to accept or reject same within six
19  weeks of the submission thereof. 1938 Agreement, p.1, Toberoff Decl., Exh. E.

20       On December 19, 1939, Detective and Siegel and Shuster entered into a
21  supplemental agreement raising Siegel and Shuster's per page compensation rate
22  for the increasingly popular "Superman" comic strip. 1948 FOF, Fact 52.

23                    **Siegel's Creation Of "Superboy"**

24       In or about 1938, Siegel conceived of a new comic strip series entitled
25  "Superboy." 1948 FOF, Fact 155. On November 30, 1938 Siegel submitted to
26  Detective for its acceptance or rejection under the terms of the September 22,
27  1938 Agreement, a written synopsis or summary of the character, conception
28  and plan for his "Superboy" comic strip series (the "Superboy Synopsis"), which

4

1  Siegel suggested could run in Detective's magazines, "More Fun Comics" or

2  "New Adventure Comics." 1948 FOF, Facts 155-156.

3      By letter to Siegel dated December 2, 1938, Detective did not elect to

4  purchase Siegel's "Superboy" within six weeks from it submission per the terms

5  of the September 22, 1938 Agreement. 1948 FOF, Facts 157-159.

6      Thereafter, in December, 1940, Siegel authored a complete original

7  "Superboy" story ("Superboy Story"; collectively referred to with the Superboy

8  Synopsis, as the "Siegel Superboy Material"). 1948 FOF, Fact 160. The Siegel

9  Superboy Material contained in detail and with particularity the unique

10  conception and character of "Superboy;" the continuity and dialogue for the first

11  "release" or "releases" of "Superboy;" and the plan for the future publication of

12  a "Superboy" comic book series. *Id.*

13      On or about December of 1940, Mr. Siegel submitted his Superboy Story

14  to Detective for its further consideration; however, Detective did not elect to

15  purchase the Superboy Story within six weeks of its submission per the

16  September 22, 1938 Agreement. 1948 FOF, Facts 160, 162.

17      Jerome Siegel entered the U.S. Army in July, 1943 to serve his country

18  during World War II. *See* 1948 FOF, Fact 182. While Siegel was stationed

19  abroad, Detective, without notice to Siegel used and published the Siegel

20  Superboy Material as an illustrated comic book story entitled "Superboy" in the

21  body of the magazine issue, More Fun Comics, No. 101, which was published

22  and issued for sale in December, 1944. 1948 FOF, Fact 163-166, 168.

23  Thereafter, Detective released "Superboy" comic strips in magazines bi-monthly

24  until February, 1946 and monthly thereafter. 1948 FOF, Facts 169.

25      Detective's first "comic strip release entitled SUPERBOY published in

26  December of 1944 [in More Fun Comics, No. 101] embodied and was based

27  upon the idea, plan and conception contained in the [Superboy Story] submitted

28  by...SIEGEL to DETECTIVE COMICS, INC. in December of 1940," 1948

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1   FOF, Fact 165; and "embodied and was based upon the idea, plan and

2   conception contained in the [Superboy Synopsis] dated November 30, 1938.

3   1948 FOF, Fact 164.

4        In fact "[a]ll of the comic strip material published [by Detective] under the

5   title SUPERBOY was based upon the idea, plan, conception and direction

6   contained in the [Siegel Superboy Material]."  1948 FOF, Facts 171-172.

7        "SUPERMAN...did not contain the plan, scheme, idea or conception of

8   the comic strip SUPERBOY as it was later submitted by...SIEGEL to

9   DETECTIVE COMICS, INC. in [the Siegel Superboy Material]," 1948 FOF,

10  Fact 166; and "did not contain the plan, scheme, idea or conception of the comic

11  strip SUPERBOY as published by DETECTIVE COMICS, INC. and by

12  NATIONAL COMICS PUBLICATIONS, INC from December, 1944 until

13  [April, 1948]."  1948 FOF, Fact 167.

14       "Siegel is the originator and the sole owner of the comic strip feature

15  SUPERBOY."  1948 COL, No. 25.  "Siegel, as the originator and owner of the

16  comic strip feature ha[d] the sole and exclusive right to create, sell and distribute

17  comic strip material under the title SUPERBOY of the type and nature

18  [t]heretofore published [by Detective and National]."  1948 COL, No. 26.

19       Upon Siegel's return from the war in January of 1946, Detective entered

20  into negotiations with Siegel to purchase the Siegel Superboy Material and to

21  hire Siegel to write additional "Superboy" comic strips.  However, no agreement

22  was reached.  1948 FOF, Facts 183-184.

23       Based on his above findings of fact and conclusions of law, Judge Young

24  concluded in the 1947 Action that the defendants National *et al.* be "perpetually

25  enjoined and restrained from creating, publishing selling or distributing any

26  comic strip material of the nature now and heretofore sold under the title

27  SUPERBOY, or any other comic strip material made in imitation of the

28  conception, characters, nature, incidents, actions or plot of [Siegel's] comic strip

6

1 | SUPERBOY…" 1948 COL, No. 25; and that defendants "account to… Siegel
2 | for all profits derived from the publication, sale and distribution of all comic
3 | strip material entitled SUPERBOY…" 1948 COL, No. 27; 1947 Opinion,
4 | Toberoff, Exh. A, pp. 11-12.

5 |     Following Judge Young's opinion, findings of fact and conclusions of
6 | law, settlement negotiations ensued, resulting in the 1948 Stipulation of
7 | settlement between the parties. Toberoff Decl., Exh. C. In the 1948 Stipulation,
8 | Siegel, in exchange for a settlement payment, agreed, in part, that National shall
9 | have the exclusive rights to "Superboy." 1948 Stipulation, ¶¶ 9-10, *Id.* Two
10 | days later, the New York Supreme Court entered on May 21, 1948 a final
11 | consent judgment pursuant to the 1948 Stipulation. Toberoff Decl., Exh. D.

12 |     On December 23, 1975, Siegel and Shuster entered into an agreement
13 | with Warner Communications Inc. (the "1975 Agreement"), the alleged parent
14 | company of National, which, in exchange for Siegel and Shuster's
15 | acknowledgement that Warner Communications, Inc. was the exclusive owner
16 | of *"Superman,"* gave Siegel and Shuster modest annual payments, certain
17 | medical benefits and credit as the "creators" of "Superman." The 1975
18 | Agreement did not mention "Superboy."

19 |                     **Plaintiffs' Notice of Termination**

20 |     On November 8, 2002, Plaintiffs availed themselves of their legal right
21 | under the U. S. Copyright Act (17 U.S.C. § 304 (c)) to recapture the "Superboy"
22 | copyright by serving notice on the Defendants that Plaintiffs were terminating
23 | the grant of "Superboy" in the 1948 Stipulation and to the extent relevant, the
24 | 1975 Agreement (the "Termination Notice"). Termination was noticed to take
25 | effect on November 17, 2004 (the "Termination Date") sixty-six years after
26 | Siegel had created "Superboy." Plaintiffs' Termination duly complied with all
27 | the requirements of 17 U.S.C. § 304(c) and 37 C.F.R. § 201.10., the regulations
28 | promulgated thereunder by the Register of Copyrights.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## III.   LEGAL ANALYSIS

### A.   Standard Of Review

Plaintiffs are entitled to the entry of summary judgment in their favor if based on the pleadings and evidence on file, there is no genuine issue of material fact and Plaintiffs are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Partial summary judgment" where the Court disposes of some but not all claims or issues within a claim, is also permitted. Fed. R. Civ. P. 56(c), (d).

The instant motion presents a classic example of an issue of law that is ripe for summary judgment, namely the validity of Plaintiffs' Termination under 17 U.S.C. § 304(c). There are no material issues of fact because the relevant underlying facts were previously adjudicated and determined in the 1947 Action and binding herein under the doctrines of *res judicata* and collateral estoppel.

### B.   The Termination Provisions Of The 1976 Copyright Act

The legislative purpose of the termination provisions are best understood by reviewing the policies underlying its enactment and its predecessor reversionary renewal provision under the 1909 Copyright Act (the "1909 Act").

#### 1.   The Renewal Term Under The 1909 Copyright Act

Under the 1909 Act, copyright protection was divided into two separate, consecutive terms of twenty-eight years: the "initial" term and the "renewal" term. 17 U.S.C. § 24. The renewal term was intended to be a new grant reverting to the author at the end of the initial term, not merely an extension thereof. In fashioning the renewal term Congress was aware that authors had relatively little bargaining power. The renewal term was intended to protect authors who may have struck imprudent bargains by allowing them to realize a portion of the increased economic value of their work. *See Stewart v. Abend,* 495 U.S. 207, 217-20, 110 S. Ct. 1750, 109 L. Ed.2d 184 (1990) (legislative and judicial history of the 1909 Act's renewal provision).

This legislative purpose of the renewal term was emasculated by the

8

1  Supreme Court's decision in *Fred Fisher Music Co.* v. *M. Witmark & Sons*, 318
2  U.S. 643, 657-59 (1943) which held that authors were able to assign their
3  interest in the renewal term during the initial term. After *Fred Fisher*,
4  publishers routinely insisted that authors assign *both* copyright terms in one
5  initial transfer, eliminating the reversionary renewal right under the 1909 Act
6  and the author's ability to share in his work's success. *Stewart*, 495 U.S. at 219.

7           **2.       The 1976 Copyright Act Was Designed To Give Authors**
8                      **And Heirs Full Benefits Of The Extended Renewal Term**

9           On January 1, 1978, the 1976 Copyright Act (the "1976 Act") went into
10  effect, and with it, changes to copyright law that significantly enhanced the
11  rights of authors and their heirs. 17 U.S.C. § 101 *et seq.* (1978). The 1976 Act
12  extended the renewal term from 28 to 47 years for works, such as "Superboy,"
13  that were in their renewal term when the 1976 Act took effect. 17 U.S.C. §
14  304(a). Congress intended to give the benefit of the additional 19 years of
15  copyright protection to authors and their heirs, like Siegel and Plaintiffs, rather
16  than to grantees, like Defendants, for whom the extended term would have been
17  an unjustified windfall. H.R. Rep. No. 94-1476 ("H. Rep."), at 140 (1976).

18          Accordingly, Congress coupled the renewal term extension with the
19  creation of a *new* right of authors and their statutory heirs (principally surviving
20  spouse, children and grandchildren) to recapture the renewal copyright in their
21  works by terminating any prior grant thereof "executed before January 1, 1978,"
22  *i.e.*, before the 1976 Act went into effect.[1] 17 U.S.C. § 304(c). Such prior

23  _____

24  [1] The Sonny Bono Copyright Term Extension Act of 1998 ("CTEA") became effective
     October 27, 1998 and extended the term of protection for works created prior to
25  January 1, 1978 from seventy-five to ninety-five years, 17 U.S.C. § 304(b). As with
     the 1976 Act's original term extension, Congress intended this second term extension
26  as a benefit to authors and their families, not as a windfall for grantees. Congress
     therefore once again coupled the extended term with an inalienable termination right
27  for authors (and their surviving spouses, children and grandchildren) so they could
     recapture the additional twenty years of copyright protection. *See* 17 U.S.C. § 304(d).
28  *See* S. Rep. No. 104-315, at 22-23 (1996); 3 *Nimmer on Copyright* § 9.11[B] [1].

                                                  9

                    PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1  grants are terminable at any time during a five-year window beginning 56 years

2  after copyright in the work had originally been secured. 17 U.S.C. § 304(c)(3).

3       The termination right cannot be vitiated by contract and remains

4  effective "notwithstanding any agreement to the contrary." 17 U.S.C. §

5  304(c)(5). The termination clause provides in pertinent part:

6       "In the case of any copyright subsisting in either its first or renewal term
7       on January 1, 1978, other than a copyright in a work made for hire, the
         exclusive or nonexclusive grant of a transfer or license of the renewal
8       copyright or any right under it, executed before January 1, 1978, by any
9       of the persons designated by subsection (a)(1)(C) of this section, otherwise
         than by will, is subject to termination under the following conditions:
10      * * *

11      (5) Termination of the grant may be effected notwithstanding any
         agreement to the contrary, including an agreement to make a will or to
12      make any future grant. 17 U.S.C. §§ 304(c) and 304(c)(5)

13      As the Supreme Court noted in *Mills Music Inc. v. Snyder*, 469 U.S. 153,

14  173, 105 S. Ct. 638, 8 L.Ed. 556 (1985): "The principal purpose of... § 304 was

15  to provide added benefits to authors.... More particularly, the termination right

16  was expressly intended to relieve authors of the consequences of ill-advised and

17  unremunerative grants..." *Mills Music*, 469 U.S. at 172-73 *citing* H.R. Rep. No.

18  94-1476, at 124 (1976). In devising Section 304(c), Congress recognized that

19  authors commonly agree to one-sided copyright grants that publishers with far

20  greater bargaining power design to be as expansive as possible in exchange for

21  as little payment as possible. H.R. Rep. at 124. The results are often supremely

22  unfair, as when a work proves financially successful for many years, but

23  enriches only the grantee and not the author or the author's family.

24      Indeed, the Supreme Court recently recognized the overall intent of the

25  1976 Act to "enhance the author's position" and to adjust "the author/publisher

26  balance," emphasizing the "inalienable authorial right to revoke a copyright

27  transfer." *N.Y. Times v. Tasini,* 533 U.S. 483, 121 S. Ct. 2381, 150 L. Ed. 2d 500

28  (2001) ; *see also Stewart,* 495 U.S. at 230 ("[1976 Act] provides an inalienable

10

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1  termination right"); *See Marvel Characters, Inc. v. Simon,* 310 F.3d 280 (2d Cir.

2  2002) (pre-1978 settlement agreement cannot bar author's termination right).

3        Admittedly, the termination right lies in stark contrast to ordinary state

4  contract law principles, as it empowers authors and their statutory heirs to

5  terminate prior grants of rights *without cause*, regardless of the contracting

6  parties' promises, intent or the grantee's expectations at the time the grant was

7  made. 17 U.S.C. §304(c)(5). Congress clearly determined that giving authors

8  and their families an equal opportunity to benefit from each extension of the

9  copyright renewal term is of paramount importance.

10        **C.   Defendants Are Bound By The 1947 State Action**

11        It is well established that the findings in a prior litigation are binding on

12  the parties or their successors in a subsequent litigation involving the same facts

13  under the doctrines of *res judicata* and/or collateral estoppel. *Kamilche Co. v.*

14  *United States,* 53 F.3d 1059, 1062 (9th Cir. 1995).

15        The Full Faith and Credit Act, 28 U.S.C. § 1738, further commands that a

16  federal court must accord a state court's resolution of issues the same preclusive

17  effect as would be accorded in the rendering court. *See Matsushita Elec. Indus.*

18  *Co. v. Epstein,* 516 U.S. 367, 116 S. Ct. 873, 878, 134 L. Ed. 2d 6 (1996); *Allen*

19  *v. McCurry,* 449 U.S. 90, 96, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980). This rule

20  generally applies regardless of whether the state court construes civil, criminal,

21  state or federal law. *Allen,* 449 U.S. at 104; *see* 18-133 *Moore's Federal*

22  *Practice-Civil* § 133.30. Preclusion applies to issues raised as well as to issues

23  that could have been raised at the time of the earlier action. *Migra v. Warren*

24  *City Sch. Dist. Bd. of Ed.,* 465 U.S. 75, 84, 104 S.Ct. 892, 79 L.Ed. 2d 56 (1984).

25        The law is also well settled that a federal court determines the preclusive

26  effect of the findings and conclusions in a prior state court action by looking to

27  the laws of that state to determine whether principles of *res judicata* or collateral

28  estoppel bar the parties' respective arguments. *Pension Trust Fund for Oper.*

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1 *Engineers v. Triple A Machine Shop, Inc.*, 942 F.2d 1457, 1464-1465 (9th Cir.
2 1991, *citing Migra* 465 U.S. 75, 81.

3       New York has adopted a transactional approach to the doctrine of *res*
4 *judicata* or claim preclusion. *Garguili v. Thompkins*, 790 F.2d 265, 269 (2d Cir.
5 1986); *Reilly v. Reid*, 45 N.Y.2d 24, 29-30 (1978). If a subsequent claim arises
6 from the same "factual grouping" as a previously resolved claim, the subsequent
7 claim is barred regardless of whether the two suits are based on different legal
8 theories or seek different remedies. *Smith v. Russell Sage College*, 54 N.Y.2d
9 185, 192 (1981); *Reilly*, 45 N.Y.2d at 29-30; *see also EFCO Corp. v. U.W.*
10 *Marx, Inc.*, 124 F.3d 394, 397 (2d Cir. 1997). Thus, in New York "once a claim
11 is brought to a final conclusion, all other claims arising out of the same
12 transaction or series of transactions are barred..." *O'Brien v. City of Syracuse*,
13 54 N.Y.2d 353, 357 (1981).

14       "Collateral estoppel prevents a party from re-litigating an issue decided
15 against that party in a prior adjudication" in which that party had a "'full and fair
16 opportunity'" to litigate. *Fuchsberg & Fuchsberg v. Galizia,* 300 F.3d 105, 109
17 (2d Cir. 2002) *quoting Johnson v. Watkins*, 101 F.3d 792, 794-95 (2d Cir. 1996)
18 and *Schwartz v. Pub. Adm'r*, 24 N.Y.2d 65, 71 (1969)). The preclusive effect
19 extends to issues not specifically addressed but which "by necessary implication
20 . . . [are] contained in that which [was] explicitly decided." Id., *quoting Norris*
21 *v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281, 1285 (2d Cir. 1986). The fundamental
22 policies behind collateral estoppel (issue preclusion) are to increase judicial
23 efficiency, to reduce the number of inconsistent rulings and to promote the
24 finality of judgments. *Murphy v. Gallagher*, 761 F.2d 878, 882 (2d Cir. 1985).

25       The application here of the *res judicata* and collateral estoppel doctrines is
26 further based on good reason. The findings and conclusions of Judge Young in
27 1948, nine years after the events in question, are far more factually reliable than
28 any findings that can presently be made. There is little about the operative facts

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1    regarding Siegel's creation of "Superboy" and his dealings with Detective

2    regarding "Superboy" that can be supplied by new testimonial evidence. Siegel

3    is no longer alive and the majority of those who dealt with "Superboy" at the

4    time of its creation by Siegel are likely also dead. The findings and conclusions

5    in the 1947 Action which concerned the same facts as this motion provide a

6    much more reliable index of the truth than anything that can be mustered by

7    Defendants today. *See Picture Music, Inc. v. Bourne, Inc.*, 314 F. Supp. 640,

8    652 (S.D.N.Y. 1970). "The subsequent effect of collateral estoppel...is a result

9    which should be welcomed to avoid the task of reconsidering issues that have

10   already been settled by another competent tribunal." *Vernitron Corp. v.*

11   *Benjamin*, 440 F.2d 105,108 (2d Cir. 1971), *cert. denied*, 402 U.S. 987, 29 L.

12   Ed. 2d 154, 91 S. Ct. 1664 (1971) *citing Klein v. Walston Co.*, 432 F.2d 936 (2d

13   Cir. 1970).

14         Thus, the findings of fact and conclusions of law in the 1947 Action

15   should be accepted as given premises of which there can be no dispute.

16         **D.    Plaintiffs' Duly Exercised Their Termination Right**

17               **1.    Plaintiffs' Termination Complied with the Copyright Act**

18         Plaintiffs fully satisfied the requirements for termination set forth in 17

19   U.S.C. § 304(c) ("Section 304(c)"):

20         • Section 304(c) applies to "any copyright ... subsisting in its renewal term

21   on the effective date of the [1976 Act]." 17 U.S.C. § 304(c). Copyright in

22   "Superboy" subsisted in its renewal term on the effective date of the 1976 Act,

23   January 1, 1978.  Copyright in the serialized magazine, More Fun Comics, No.

24   101, was secured on November 23, 1944 with the Register of Copyrights under

25   copyright registration number B653651 in the name of Detective and renewed

26   on July 17, 1972 in the name of National, claiming as proprietor of copyright,

27   under copyright renewal registration number R532582. *See* Toberoff Decl.,

28   Exh. F.  The serialized magazine issue, "More Fun Comics 101" published the

13

1 | Siegel Superboy Material. 1948 FOF, Fact 164, 165 ["[Detective's] comic strip
2 | release entitled SUPERBOY published in December of 1944 embodied and was
3 | based upon the idea, plan and conception contained in the [Superboy Story]
4 | submitted by...SIEGEL to DETECTIVE COMICS, INC. in December of 1940,"
5 | and "embodied and was based upon the idea, plan and conception contained in
6 | the [Superboy Synopsis] dated November 30, 1938."]. [2]

7 |          • Section 304(c) applies only to transfers or licenses "executed before
8 | January 1, 1978," by the author, the author's surviving spouse, children (or
9 | certain other designated persons) 17 U.S.C. § 304(c). The grants terminated by
10 | Plaintiffs were the 1948 Stipulation and the 1975 Agreement (to the extent
11 | relevant), both pre-1978 documents. No post-1978 grant of rights in "Superboy"
12 | by Siegel or his heirs exists and none have been alleged by Defendants.

13 |          • Section 304(c) allows termination by the author's "widow" and
14 | "surviving children" which together own and are entitled to exercise more than
15 | one-half of the author's termination interest under the statute. 17 U.S.C.
16 | §304(c)(1) and (c)(2)(A) and (B). Plaintiff Joanne Siegel is the author Siegel's
17 | widow and she therefore owns 50% of Siegel's termination interest. 17 U.S.C.
18 | §304(c)(2)(A); *see* Counterclaim, ¶ 2. Plaintiff Laura Siegel Larson is one of
19 | Siegel's two children, and she therefore owns 25% of Siegel's termination
20 | interest. 17 U.S.C. §304(c)(2)(A); *see* Counterclaim, ¶ 3. Together Plaintiffs
21 | own and constitute the more than one-half of Siegel's termination interest
22 | required to effect the Termination. 17 U.S.C. §304(c)(1).

23 |          • Section 304(c) requires the termination notice to "state the effective date

24 | [2] In fact, Judge Young found that "[a]ll of the comic strip material published [by
25 | Detective prior to the trial of the 1947 Action in April, 1948] under the title
26 | SUPERBOY was based upon the idea, plan, conception and direction contained in the
    | [Siegel Superboy Material]." 1948 FOF, Facts 171-172. As with More Fun Comics,
27 | No. 101, statutory copyright for these periodical publications was similarly secured
    | through registration by Detective (and later National) and renewal by National with the
28 | Register of Copyrights. *See* Termination Notice, pp. 6-7, Toberoff Decl., Exh. G.

1   of termination, which shall fall within the five-year period" "beginning at the

2   end of 56 years from the date copyright was originally secured," 17 U.S.C. §§

3   304(d)(1), (c)(4)(A), and requires that the termination notice be "served not less

4   than two or more than ten years" before the effective date of termination. 17

5   U.S.C. §§ 304(c)(4)(A). Plaintiffs' Termination Notice stated the effective date

6   of termination, November 17, 2004, which fell within the appropriate time-

7   frame from the date the copyright was originally secured (November 23, 1944

8   under copyright registration no. B653651); service of the Termination Notice

9   took place on November 8, 2002 by First Class Mail, postage pre-paid (per 37

10  C.F.R. § 201.10(d)) and in addition by certified mail return receipt requested,

11  which service date is "not less than two or more than ten years" before the

12  November 17, 2004 Termination Date. 17 U.S.C. §§ 304(c)(4)(A).

13      • Section 304(c) requires that a copy of the termination notice be "recorded

14  in the Copyright Office before the effective date of termination," 17 U.S.C. §

15  304(c)(4)(A), and that it comply "in form, content, and manner of service, with

16  requirements that the Register of Copyrights shall prescribe by regulation," 17

17  U.S.C. § 304(c)(4)(B). Plaintiffs' Termination Notice was recorded in the

18  Copyright Office on November 20, 2002, well before the November 17, 2004

19  Termination Date (see Toberoff Decl., Exh, H); and the notice fully complied

20  with 37 C.F.R. § 201.10, the regulations issued by the Register of Copyrights

21  under Section 304(c).

22      Because Plaintiffs met all of the statutory requirements of Section 304(c),

23  their Termination should be deemed effective. On November 17, 2004, the

24  noticed Termination Date, Plaintiffs recaptured Siegel's original copyright in

25  "Superboy." While Defendants may continue to exploit works derived from

26  "Superboy" created prior to November 17, 2004, Plaintiffs' production and

27  exploitation of "Superboy" derivative works on or after November 17, 2004 is

28  expressly prohibited by 17 U.S.C. § 304(c)(6)(A).

15

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## 2. The Termination Notice Was Not Required To List The 1948 Consent Judgment

The regulations promulgated under 17 U.S.C. §304(c) by the Register of Copyrights require "a brief statement reasonably identifying the grant to which the notice of termination applies." 37 C.F.R. §201.10 (b)(1)(iv). In compliance, the Termination Notice explicitly identifies the 1948 Stipulation dated May 19, 1948 wherein Siegel received compensation for granting "Superboy" to Defendants' alleged predecessors. Termination Notice, ¶ 3, p. 52, Toberoff Decl., Exh. G. The Termination Notice also identified the 1975 Agreement regarding "Superman," to the extent relevant.

Defendants nonetheless asserted in their Answer that Plaintiffs' Termination is purportedly defective for not also listing the consent judgment dated May 21, 1948 ("1948 Consent Judgment"). *See* Counterclaim, ¶¶ 66-68. Firstly, the 1948 Consent Judgment is a judgment, not a "grant" of copyright. 37 C.F.R. §201.10 (b)(1)(iv). Secondly, the 1948 Consent Judgment dated May 21, 1948 merely follows the parties' 1948 Stipulation entered into two days earlier on May 19, 1948. The 1948 Stipulation constitutes the operative grant underlying the 1948 Consent Judgment and, as such, *is* explicitly identified in the Termination Notice. Thirdly, since the prior 1948 Stipulation constituted the operative grant of "Superboy" to National, the subsequent 1948 Consent Judgment did not as a matter of law convey that which was previously granted on May 19, 1948, and already in National's possession on May 21, 1948.

Finally, the 1948 Consent Judgment has no adverse impact on Plaintiffs' Termination as "[t]ermination…may be effected notwithstanding any agreement to the contrary" 17 U.S.C. § 304(c)(5) and assignments of the reversionary termination interest cannot be made until "after the notice of termination has been served" (i.e., November 8, 2002). 17 U.S.C. § 304(c)(6)(B),(D).

As stated, the 1948 Consent Judgment merely adjudges what was

16

1   previously granted to National two days earlier in the 1948 Stipulation identified

2   in Plaintiffs' Termination Notice.  In the unlikely event the Court even views

3   1948 Consent Judgment as a grant, the identification of the underlying 1948

4   Stipulation "reasonably identifies" the parallel consent judgment issued pursuant

5   to the 1948 Stipulation.  37 C.F.R. §201.10 (b)(1)(iv).

6       There is little case law on notice of termination formalities.  In *Burroughs*

7   *v. MGM*, the court found that a Section 304(c) termination notice identifying a

8   1923 grant and 35 titles, applied to only the titles listed, but was not rendered

9   ineffective by the fact that many of the titles were assigned in subsequent grants

10  by the author *not* identified in the termination notice. 683 F.2d 610, 614, 618,

11  622 (2d. Cir. 1982) ("As further Tarzan books were written, the rights in these

12  were also transferred to the corporation").  In *Music Sales Corp. v. Morris*, a

13  "generic statement [in a Section 304(c) termination notice which] would not

14  seem to reasonably identify the grant" was nonetheless held adequate. 73 F.

15  Supp. 2d 364, 378 (SDNY 1999) (upheld termination notice that simply

16  identified grant as "grant or transfer of copyright and the rights of copyright

17  proprietor, including publication and recording right only").

18      Defendants received more than ample notice within the statutory time

19  frame of Plaintiffs' intention to terminate prior grants of "Superboy" and were in

20  no way prejudiced by Plaintiffs' not listing the 1948 Consent Judgment in

21  addition to the 1948 Stipulation.  The regulations of the Register of Copyright,

22  on which Defendants purport to rely, specifically dissuade such hyper-technical

23  attempts to invalidate termination notices: "Harmless errors in a notice that do

24  not materially affect the adequacy of the information required to serve the

25  purposes of …section 304(c) of title 17, U.S.C….shall not render the notice

26  invalid." 37 CFR § 201.10(e)(1).

27      **E.    Plaintiffs' Own A Valid Statutory Copyright In "Superboy"**

28          **1.    Copyright Secured By Registration Of The Collective**

17

## Periodical That Published The Siegel Superboy Material

As stated, the Siegel Superboy Material secured a statutory copyright on November 23, 1944 upon registration with the Copyright Office of the serialized magazine, More Fun Comics, No. 101 (registration no. B653651) in which the Siegel Superboy Material was published in December of 1944. 1948 FOF, Fact 164-165; Toberoff Decl., Exh. F. The statutory copyright in this collective periodical (More Fun Comics, No. 101) secures the statutory copyright in its component part -- the Siegel Superboy Material. *See Self-Realization Fellowship Church v. Ananda Church*, 206 F.3d 1322, 1329 (9th Cir. 2000) (a blanket copyright on a periodical protects its constituent parts); *Morse v. Fields*, 127 F. Supp. 63, 64-65 (SDNY 1954) (publication in a collective work will secure a copyright in all component parts); *see also* 2-7 Nimmer on Copyright § 7.12 ("The rule with respect to collective works under the 1909 Act...provided that a single notice in the name of the copyright owner of the collective work was sufficient to protect each contribution contained therein.").

It is indisputable that the Siegel Superboy Material was published in More Fun Comics No. 101 in December of 1944. In the 1947 Action, Judge Young found that Detective's "comic strip release entitled SUPERBOY published [in More Fun Comics, No. 101] in December of 1944 embodied and was based upon the idea, plan and conception contained in the [Siegel Superboy Story] submitted by...SIEGEL to DETECTIVE COMICS, INC. in December of 1940," 1948 FOF, Fact 165, and "embodied and was based upon the idea, plan and conception contained in the [Siegel Superboy Synopsis] dated November 30, 1938. 1948 FOF, Fact 164.

Such findings of fact in the 1947 Action, to which no appeal was taken, are binding on Defendants as successors to the defendants in the 1947 Action under the doctrines of *res judicata* or *collateral estoppel*. Defendants may nonetheless try to side-step the preclusive effect of the 1947 Action by arguing

18

1 | that it was not a copyright case. However, this is largely irrelevant because the

2 | binding 1947 findings are not conclusions of copyright law, but are underlying

3 | *factual* findings, i.e. that the "Superboy" comic strip, published in More Fun

4 | Comics, No. 101, "embodied and was based upon" the Siegel Superboy

5 | Material. 1948 FOF, Facts 164-165.

6 |      Moreover, in *Siegel, supra,* a federal copyright action, the Second Circuit

7 | ruled that Judge Young's findings of fact and conclusions of law are preclusive

8 | under *res judicata* and specifically relied on such in holding that Siegel had

9 | conveyed the "Superman" renewal copyright to National. 509 F.2d at 912-913.

10 |      The lower court in *Siegel,* 364 F. Supp. at 1035, *aff'd* 509 F.2d at 913 also

11 | explicitly held that Judge Young's findings in the 1947 state action were binding

12 | on Defendants' predecessors in the subsequent copyright action, *citing Vernitron*

13 | *Corp. v. Benjamin,* 440 F.2d at 108 ("There can be no question but that the

14 | doctrine of collateral estoppel would be applied in any instance where the state

15 | court had determined a factual issue arising in a subsequent federal litigation").

16 |       **2.   Siegel Had The Legal Right To Create Superboy**

17 |      Defendants will next predictably argue that Siegel's "Superboy" is not

18 | entitled to the benefits of copyright protection by claiming that Siegel was not

19 | authorized to create "Superboy." This is incorrect, belied by both the evidence

20 | and Judge Young's findings in the 1947 Action.

21 |      The September 22, 1938 Agreement between Siegel and Shuster and

22 | Defendants' predecessor, National, permitted Siegel to create new comic book

23 | features, subject to National's right of first refusal to accept or reject same

24 | within six weeks of the submission thereof as follows:

25 |      "In the event you shall do or make any other artwork or continuity suitable for us as comics or comic strips you shall first give us the right to

26 | first refusal thereof by submitting said copy and continuity ideas to us. We shall have the right to exercise that option for six weeks after sub-

27 | mission to us at a price no greater than offered to you by any other party."

28 | 1938 Agreement, p.1, Toberoff, Exh. E

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1   Thus, Judge Young specifically found in the 1947 Action:

2   "On or about November 30, 1938, the plaintiff SIEGEL, in writing and by

3   mail submitted to DETECTIVE COMICS, INC. for it consideration and
acceptance or rejection, for publication, under the terms of the contract
4   dated September 22, 1938 ...synopsis or summary [Siegel Superboy
Synopsis] of the idea and conception and plan of a new comic strip to be
5   known as SUPERBOY..."
1948 FOF, Fact 156.
6
7   "DETECTIVE COMICS, INC on or about December 2, 1938, by its letter
in writing to the plaintiff SIEGEL did not elect to publish the said comic
8   strip SUPERBOY under the terms of the contract dated September 22,
1938." 1948 FOF, Fact 157.
9   "During the month of December, 1940 the plaintiff SIEGEL submitted to
DETECTIVE COMICS, INC. for its further consideration a complete
10   script [Siegel Superboy Story]...for the first 'release' or 'releases' of the
proposed new comic strip SUPERBOY..." 1948 FOF, Fact 160.
11
"DETECTIVE COMICS, INC. did not within six weeks after submission
12   of the said script or scenario indicate its election to publish the said comic
strip SUPERBOY." 1948 FOF, Fact 162.
13
14   Moreover, as Judge Young found in the 1947 Action, Detective ultimately

15   published the Siegel Superboy Material in December of 1944 in More Fun

16   Comics No. 101 (1948 FOF, Facts 164-165) and implicit in Detective's

publication, acceptance and ratification of this material is Detective's
17
authorization of its creation by Siegel. In addition, Siegel had submitted to
18
Detective his Superboy Synopsis in 1938 and his Superboy Story in 1940
19
without objection. For instance, when Siegel submitted his "Superboy" synopsis
20
"[o]n December 2, 1938, DETECTIVE COMICS, INC. deferred consideration
21
of a SUPERBOY comic strip until some future time." 1948 FOF, Fact 157.
22
Moreover, nonexclusive authorization need not be in writing and may be
23
granted orally or implied by conduct. *Foad Consulting Group, Inc. v. Musil*
24
*Govan Azzalino*, 270 F.3d 821, 825, 831-832 (9th Cir. 2001) ("The Copyright
25
Act permits copyright holders to grant non-exclusive copyright licenses by
26
implication."); *JBJ Fabrics, Inc. v. Brylane, Inc.*, 714 F. Supp. 107, 110
27
(S.D.N.Y. 1989) ("informal authorization" sustains author's copyright in
28
derivative work); 3-10 Nimmer on Copyright § 10.03 ("nonexclusive licenses

20

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1  may be granted orally, or may even be implied from conduct.").

2      Finally, Defendants are equitably estopped from arguing that Siegel's

3  creation of "Superboy" was unauthorized after their predecessors' published it;

4  and both their predecessors and they have willingly benefited from the Siegel

5  Superboy Material for decades. (1947 FOF, Facts 164-165).

6          **3.    The Siegel Superboy Material Were Not Works-For-Hire**

7      The termination provisions of Section 304(c) do not apply to a "work

8  made for hire." 17 U.S.C. § 304(c).  Defendants will thus also try to argue that

9  the Siegel Superboy Synopsis and the Siegel Superboy Story were owned by

10  Defendants' predecessor, Detective, as "works made for hire" under the now

11  repealed 1909 Copyright Act. See 17 U.S.C. § 26 (states the word "author" shall

12  include an employer in the case of works made for hire). This also flies in the

13  face of the findings of fact in the 1947 Action which resulted in the conclusion

14  of law that Siegel originally owned "Superboy" which binds Defendants under

15  the doctrines of *res judicata* or *collateral estoppel*.

16      As set forth above, Judge Young found in the 1947 Action that even

17  though Siegel and Shuster were to produce five specific comic books under the

18  September 22, 1938 Agreement, the Siegel Superboy Material fell under the

19  category of new comic strip ideas and material for which <u>Detective held only a</u>

20  <u>right of first refusal for six weeks after its submission; and that Detective</u>

21  <u>ultimately declined to exercise such right.</u> 1948 FOF, Facts 156-157; September

22  22, 1938 Agreement, p.1, Toberoff Decl., Exh. E.

23      Judge Young concluded:

24      "Plaintiff Siegel is the originator and sole owner of the comic strip
        feature SUPERBOY, and the defendants [National *et al.*]...are
25      perpetually enjoined and restrained from creating, publishing,
        selling or distributing any comic strip material of the nature now
26      and heretofore sold under the title SUPERBOY..." 1948 COL, No.
        25; and
27

28      "Plaintiff Siegel, as the originator and sole owner of the comic strip
        feature SUPERBOY has the sole and exclusive right to create, sell

                                        -21-

1    and distribute comic strip material under the title SUPERBOY of the type and nature heretofore published..." 1948 COL, No. 25

2    As set forth above, such findings of fact and conclusions of law bind
3    Defendants under the doctrines of *res judicata* or *collateral estoppel* and are in
4    opposition to Defendants' assertion that the Siegel Superboy Material was
5    owned by Detective / National as "works made for hire" within the scope of
6    Siegel's alleged employment. Issue preclusion includes not only issues that
7    were clearly litigated but also, by implication, a connected issue. "In other words
8    when the issue for which preclusion is sought is the only rational one that the
9    fact finder could have found, then that issue is considered foreclosed by
10    implication, even if no explicit finding of that issue has been made." 3-30
11    *Moore's Federal Practice and Procedure* § 30.73, *see Ashe v. Swenson*, 397
12    U.S. 436, 444, 25 L.Ed. 2d 469, 90 S.Ct. 1189 (1970).

13    Matters of contract interpretation relating to copyright typically fall within
14    state court jurisdiction. 3-12 *Nimmer on Copyright* § 12.01. *See T.B. Harms*
15    *Co. v. Eliscu*, 339 F.2d 823, 826 (2d Cir. 1964) (The federal grant of ...a
16    copyright has not been thought to infuse with any national interest a dispute as to
17    ownership...turning on the facts or on ordinary principles of contract law.").
18    *See Jasper v. Bovina Music, Inc.*, 314 F.3d 42, 46 (2d Cir. 2002)( "if the case
19    concerns a dispute as to ownership of a copyright, and the issue of ownership
20    turns on the interpretation of a contract, the case presents only a state
21    law issue"); *Knickerbocker Toy Co. v. Faultless Starch Co.*, 467 F.2d 501,
22    (C.C.P.A. 1972)("Although 28 USC 1338(a) provides that the federal district
23    courts' original jurisdiction over copyright actions "shall be exclusive of the
24    courts of the states," the state courts clearly may pass on the validity of a
25    copyright if it is necessary to do so in the course of deciding a case over which
26    they do have jurisdiction." ).

27    Thus, in *Siegel, supra* the Second Circuit found that National owned the
28    renewal copyright to "Superman" based on Judge Young's first conclusion of

22

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1    law that "[b]y virtue of the instrument of March 1, 1938…DETECTIVE

2    COMICS, INC. became the absolute owner of the comic strip SUPERMAN…"

3    even though the 1947 state action did not mention or concern such renewal

4    copyright. 503 F.2d at 912; 1948 COL, No. 1. In response to Siegel's and

5    Shuster's arguments that a general transfer of copyright does not convey the

6    renewal copyright, the Second Circuit held "the state court action determined

7    that the agreements conveyed *all* of the plaintiffs' rights in Superman to the

8    defendants…Under the doctrine of res judicata we are not free collaterally to re-

9    examine the agreements to determine whether the construction placed on them

10    was warranted." 503 F.2d at 913. "The state court was called upon to construe

11    these instruments…that decision is binding on us here." *Id.*

12    Likewise, Defendants are bound by the finding in the 1947 Action that

13    Detective held merely (and failed to exercise) a contractual right of first refusal

14    with respect to the Siegel Superboy Material; and that Siegel, not Defendants'

15    predecessors, therefore owned all rights in "Superboy." Defendants cannot now

16    claim that Detective owned "Superboy" as a "work made for hire" or otherwise,

17    no more than Siegel and Shuster were permitted to argue in federal court that

18    they owned the renewal copyright to "Superman." *Id.*

19    After immensely benefiting for fifty-eight years from the findings and

20    conclusions in the 1947 Action and from the federal decision in *Siegel, supra*

21    regarding "Superman," Defendants now assume positions and arguments

22    completely contrary to both these decisions regarding "Superboy." In addition

23    to the preclusive effect of *res judicata* and collateral estoppel, Defendants are

24    equitably estopped and/or judicially estopped from doing so.

25    Moreover, even if, contrary to these overriding principles, the Court were

26    to re-open the issue of whether Siegel owned "Superboy," the underlying

27    findings of *fact* in the 1947 Action as to the parties' contractual relationship and

28    Siegel's wholly independent creation of "Superboy" inevitably also preclude

1    that "Superboy" was a "work made for hire" under the 1909 Copyright Act.

2         Throughout much of the life of the 1909 Act, until the mid-1960's, federal

3    courts applied the work-for-hire doctrine only to traditional hierarchical

4    employment relationships. *Twentieth Century Fox Film Corp. v. Entertainment*

5    *Distrib.*, 429 F.3d 869, 877 (9th Cir. 2005) *citing Playboy Enters., Inc. v.*

6    *Dumas*, 53 F.3d 549,554 (2d Cir. 1995) "In the last decade that the [1909] Act

7    was effective the Courts expanded the doctrine to include less traditional

8    relationships so long as the hiring party had " 'the right to control the artist's

9    work.' " *Twentieth Century*, 429 F.3d at 877, *quoting Self-Realization*

10    *Fellowship Church v. Ananda Church*, 206 F.3d 1322, 1331 (9th Cir. 2000).

11         The Ninth Circuit has "consistently evaluated claims that a work was

12    made for hire by asking whether it was created at the "instance and expense" of

13    the engaging party. *Id.* at 877, *citing and quoting Dolman v. Agee*, 157 F.3d 708,

14    711-712 (9th Cir. 1998) (a party asserting work for hire defense is "required to

15    present some credible evidence that [the author's] work was done at the

16    'instance and expense' of the commissioning party.").

17         Judge Young found that Siegel independently created his original

18    Superboy Synopsis and Superboy Story under the terms of the September 22,

19    1938 Agreement, which permitted him to originate new comic strip concepts and

20    stories outside the five comic strips Siegel and Shuster were currently producing,

21    subject to a right on the part of Detective to accept or reject same with six weeks

22    of their submission.  1948 FOF, Facts 156-159, 160-162.

23         This first refusal procedure and time limit on Detective's right to purchase

24    and publish the Siegel Superboy Material from a factual perspective runs

25    counter to any notion or intent that Detective owned such material at inception

26    as the "author" of a "work made for hire. *See* 17 U.S.C. § 26 (repealed). *See*

27    *Lin-Brook Blders Hrdwre v. Gertler*, 352 F.2d 298, 300 (9th Cir. 1965) (work for

28    hire status turns on "*mutual intent of the parties* [] that the title of the copyright

24

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1 | shall be in the person at whose instance and expense the work was done").

2 | Judge Young found that Siegel's Superboy Synopsis created by Siegel on

3 | November 30, 1938 contained the "conception and plan of a new comic strip to

4 | be known as SUPERBOY," 1948 FOF, Fact 156, and that Siegel's Superboy

5 | Story created by Siegel in December of 1940, contained:

6 | "the continuity, plan and dialogue for the first 'release' or 'releases' of the
  | proposed new comic strip SUPERBOY and...contained within itself the
7 | entire plan for the future publication of the said comic strip SUPERBOY
  | and the concept and character SUPERBOY, all set forth with detail and
8 | particularity."

9 | 1948 FOF, Fact 160. Judge Young further found that Detective did not elect to

10 | purchase and publish such material within the six weeks allotted to them in the

11 | September 22, 1938 Agreement. From this factual scenario, it is impossible to

12 | conclude that the Siegel Superboy Material was created by Siegel "at the

13 | instance and expense" of Detective. Judge Young found that Siegel owned his

14 | original Superboy material because Detective failed to exercise its right of first

15 | refusal to pay for the Siegel Superboy Material. 1948 FOF, Facts 158, 162, 173;

16 | 1948 COL, Nos. 25-26. Again, these findings of fact are binding on Defendants

17 | and preclude the conclusion that the Siegel Superboy Material was work-for-hire

18 | even under the 1909 Act's "instance and expense" test.

19 | **IV.   CONCLUSION**

20 | For the foregoing reasons, Plaintiffs respectfully requests that the Court

21 | grant their motion for partial summary adjudication in the form lodged

22 | separately herewith as the Proposed Judgment.

23 |
24 | DATED: February 15 , 2006      LAW OFFICES OF MARC TOBEROFF, PLC

25 |
26 | By _____
   |                Marc Toberoff

27 | Attorneys for Plaintiffs JOANNE SIEGEL
28 | and LAURA SIEGEL LARSON

25

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1   Marc Toberoff (CA State Bar No. 188547)
    Nicholas C. Williamson (CA State Bar No. 231124)
2   LAW OFFICES OF MARC TOBEROFF, PLC
    1999 Avenue of the Stars, Suite 1540
3   Los Angeles, CA 90067
    Telephone: (310) 246-3333
4   Facsimile: (310) 246-3101

5   Attorneys for Plaintiffs and Counterclaim Defendants
    JOANNE SIEGEL and LAURA SIEGEL LARSON
6

7                  **UNITED STATES DISTRICT COURT**

8                  **CENTRAL DISTRICT OF CALIFORNIA**

9   JOANNE SIEGEL, an individual; and          Case No. CV 04-08776 RSWL (RZx)
    LAURA SIEGEL LARSON, an
10  individual,                                 [Honorable Ronald S. W. Lew]
                        Plaintiffs,
11
         vs.
12                                              **[PROPOSED] JUDGMENT**
    TIME WARNER INC., a corporation;           **FOLLOWING PARTIAL**
13  WARNER COMMUNICATIONS              **SUMMARY JUDGMENT**
    INC., a corporation; WARNER
14  BROS. ENTERTAINMENT INC., a
    corporation; WARNER BROS.
15  TELEVISION PRODUCTION INC.,                 [Complaint filed: October 22, 2004]
    a corporation; DC COMICS, a general
16  partnership; and DOES 1-10,
                                                Date:  March 20, 2006
17                  Defendants.                 Time:  9:00 a.m.
                                                Place: Courtroom 21, 5th Floor
18

19                                              [Notice of Motion; Memorandum of
    DC COMICS,                                  Points and Authorities In Support of
20                                              Motion For Partial Summary
                    Counterclaimant,            Judgment; Statement of
21       vs.                                    Uncontroverted Facts and
                                                Conclusions Of Law; Declaration Of
22  JOANNE SIEGEL, an individual; and           Marc Toberoff; Request For Judicial
    LAURA SIEGEL LARSON, an                     Notice Filed Concurrently Herewith]
23  individual,

24                  Counterclaim Defendants.

25

26

27

28

LAW OFFICES OF
MARC TOBEROFF

[PROPOSED] JUDGMENT FOLLOWING PARTIAL SUMMARY JUDGMENT

1    The Motion of plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs")
2    for Partial Summary Judgment on Plaintiffs' First Amended Complaint and the
3    First Amended Counterclaim of defendants and counterclaimants Time Warner
4    Inc., Warner Communications Inc., Warner Bros. Entertainment Inc., Warner Bros.
5    Television Production Inc. and DC Comics ("Defendants") came on regularly for
6    hearing on March 20, 2006 in Courtroom 21 of the above-entitled Court, the
7    Honorable Ronald S. W. Lew presiding. Appearances were reflected in the record.

8    The Court, having considered the papers submitted in support of and in
9    opposition to the Motion, the pleadings and files in this action, and the arguments
10   of counsel, having considered all admissible, relevant evidence and having
11   disregarded any inadmissible and/or irrelevant evidence and having made a
12   determination of Uncontroverted Facts and Conclusions of Law in connection
13   therewith, and good cause appearing therefore,

14   IT IS HEREBY ORDERED AND ADJUDGED that Plaintiffs' Motion for
15   Partial Summary Judgment is granted in its entirety. There is no triable issue of
16   material fact as to whether Plaintiffs' Notice of Termination ("Termination")
17   pursuant to the Section 304(c) of the Copyright Act of 1976, 17 U.S.C. § 304(c), is
18   valid and effective. The undisputed facts demonstrate that the Termination
19   properly terminated Jerome Siegel's ("Siegel") May 19, 1948 grant and December
20   23, 1975 grant, if any, of Siegel's copyright in "Superboy" to Defendants' alleged
21   predecessors and that on the noticed March 20, 1998 Termination date Plaintiffs
22   recaptured Siegel's copyright in "Superboy" pursuant to 17 U.S.C. § 304(c).
23   Defendants are therefore ordered to account to Plaintiffs with respect to all profits
24   derived by Defendants, or any of them, from the exploitation of "Superboy" on or
25   after the November 17, 2004 Termination date and Defendants are enjoined from
26   exploiting any new derivative works derived in whole or in part from "Superboy"
27   //
28   //

[PROPOSED] JUDGMENT FOLLOWING SUMMARY PARTIAL SUMMARY ADJUDICATION

1    created on or after November 17, 2004 without due authorization from the

2    Plaintiffs.

3

4

5    DATED: _____                    _____

6                                              Hon. Ronald S. W. Lew
                                              U.S. District Judge

7

8

9    Respectfully submitted,

10   Law Offices of Marc Toberoff, PLC

11

12   By: _____

13   Marc Toberoff
     Attorneys for Plaintiffs Joanne Siegel
14   and Laura Siegel Larson

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | Marc Toberoff (CA State Bar No. 188547)
Nicholas C. Williamson (CA State Bar No. 231124)
2 | LAW OFFICES OF MARC TOBEROFF, PLC
1999 Avenue of the Stars, Suite 1540
3 | Los Angeles, CA 90067
Telephone: (310) 246-3333
4 | Facsimile: (310) 246-3101

5 | Attorneys for Plaintiffs and Counterclaim Defendants
JOANNE SIEGEL and LAURA SIEGEL LARSON

6

7 | UNITED STATES DISTRICT COURT

8 | CENTRAL DISTRICT OF CALIFORNIA

9 | JOANNE SIEGEL, an individual; and | Case No. CV 04-08776 RSWL (RZx)
LAURA SIEGEL LARSON, an
10 | individual, | [Honorable Ronald S. W. Lew]

11 | Plaintiffs,
vs. | PLAINTIFFS JOANNE SIEGEL
12 | | AND LAURA SIEGEL LARSON'S
REQUEST FOR JUDICIAL
13 | TIME WARNER INC., a corporation; | NOTICE IN SUPPORT OF
WARNER COMMUNICATIONS | MOTION FOR PARTIAL
14 | INC., a corporation; WARNER | SUMMARY JUDGMENT
BROS. ENTERTAINMENT INC., a
15 | corporation; WARNER BROS.
TELEVISION PRODUCTION INC.,
16 | a corporation; DC COMICS, a general | [Complaint filed: October 22, 2004]
partnership; and DOES 1-10,
17 | | Date: March 20, 2006
18 | Defendants. | Time: 9:00 a.m.
Place: Courtroom 21, 5th Floor
19 |
20 | DC COMICS, | [Notice of Motion; Memorandum of
Points and Authorities In Support of
21 | | Motion For Partial Summary
Counterclaimant, | Judgment; Statement of
22 | vs. | Uncontroverted Facts and
Conclusions Of Law; Declaration Of
23 | | Marc Toberoff and [Proposed]
JOANNE SIEGEL, an individual; and | Judgment Filed Concurrently
24 | LAURA SIEGEL LARSON, an | Herewith]
individual,
25 |
26 | Counterclaim Defendants.

27

28

1       Pursuant to the Federal Rules of Evidence, Rule 201, Plaintiffs Joanne

2  Siegel and Laura Siegel Larson ("Plaintiffs"), respectfully requests that this

3  Honorable Court take judicial notice of the following law and facts:

4       Fed. R. Civ. Proc. Rule 201 states that:

5       A judicially noticed fact must be one not subject to reasonable

6       dispute in that it is either (1) generally known within the territorial

7       jurisdiction of the trial court or (2) capable of accurate and ready

8       determination by resort to sources whose accuracy cannot

9       reasonably be questioned.

10       Judicial notice may be taken of court records. *Mullis v. U.S. Bankruptcy*

11  *Court for Dist. Of Nevada*, 828 F.2d 1385, 1388 n. (9th Cir. 1987). Accordingly,

12  a court may take judicial notice of the opinions, complaints, briefs, and evidence

13  filed in other actions. *See Egan v. Teets*, 251 F.2d 571, 578 (9th Cir. 1957).

14       Accordingly, Plaintiffs respectfully requests that this Honorable Court

15  take Judicial Notice of the documents set forth below from the civil action filed

16  in 1947 by Jerome Siegel and Joseph Shuster against Defendant DC Comics'

17  predecessor, National Comics Publications, Inc. *et al.* ("National") in the

18  Supreme Court of the State of New York, County of Westchester in 1947 (the

19  "1947 Action") to determine the validity of various "Superman" contracts

20  between Siegel and Shuster and National's predecessors,  and to determine the

21  ownership of Siegel's creation, "Superboy," under such contracts.   Pursuant to

22  stipulation of the parties the 1947 Action was tried before an Official Referee of

23  the New York Supreme Court, Judge Addison Young ("Judge Young"). *See*

24  *Jerome Siegel and Joseph Shuster v. National Periodical Publications et al.*, 364

25  F. Supp. 1032, 1034-1035 (S.D.N.Y. 1973) *aff'd* 508 F.2d 909, 912-913 (2nd Cir.

26  1974).

27       1.     Attached hereto and incorporated herein as Exhibit "A" is a true

28  and correct certified copy of Judge Young's Opinion dated November 21, 1947

1

1  in the 1947 Action.

2      2.    Attached hereto and incorporated herein as Exhibit "B" is a true and

3  correct certified copy of Judge Young's signed findings of fact and conclusions

4  of law dated April 12, 1948 in the 1947 Action.

5

6  DATED: February 15, 2006        LAW OFFICES OF MARC TOBEROFF, PLC

7

8                                  By:
                                         Marc Toberoff

9                                  Attorneys for Plaintiffs JOANNE SIEGEL
                                   and LAURA SIEGEL LARSON

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    2

1 | Marc Toberoff (CA State Bar No. 188547)
Nicholas C. Williamson (CA State Bar No. 231124)
2 | LAW OFFICES OF MARC TOBEROFF, PLC
1999 Avenue of the Stars, Suite 1540
3 | Los Angeles, CA 90067
Telephone: (310) 246-3333
4 | Facsimile: (310) 246-3101

5 | Attorneys for Plaintiffs and Counterclaim Defendants
JOANNE SIEGEL and LAURA SIEGEL LARSON

6

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> TIME WARNER INC., a corporation; WARNER COMMUNICATIONS INC., a corporation; WARNER BROS. ENTERTAINMENT INC., a corporation; WARNER BROS. TELEVISION PRODUCTION INC., a corporation; DC COMICS, a general partnership; and DOES 1-10, <br><br> Defendants. | Case No. CV 04-08776 RSWL (RZx) <br><br> [Honorable Ronald S. W. Lew] <br><br> **DECLARATION OF MARC TOBEROFF IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> [Complaint filed: October 22, 2004] <br><br> Date: March 20, 2006 <br> Time: 9:00 a.m. <br> Place: Courtroom 21, 5th Floor |
| DC COMICS, <br><br> Counterclaimant, <br><br> vs. <br><br> JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual, <br><br> Counterclaim Defendants. | [Notice of Motion; Memorandum of Points and Authorities In Support of Motion For Partial Summary Judgment; Statement of Uncontroverted Facts and Conclusions Of Law; Request For Judicial Notice and [Proposed] Judgment Filed Concurrently Herewith] |

1                       **DECLARATION OF MARC TOBEROFF**

2        I, Marc Toberoff, declare as follows:

3          1.     I am an attorney at the Law Offices of Marc Toberoff, PLC,

4 counsel of record for plaintiffs Laura Siegel Larson and Joanne Siegel

5 ("Plaintiffs"). I am a member in good standing of the State Bar of California

6 and submit this Declaration in support of Plaintiff's Motion for Partial Summary

7 Judgment. I have personal knowledge of the facts set forth in this Declaration

8 and, if called as a witness, could and would testify competently to such facts

9 under oath.

10       2.     A true and correct certified copy of the Opinion, dated November

11 21, 1947, of the Official Referee Judge Addison Young (hereinafter, "Judge

12 Young") in the action entitled *Jerome Siegel and Joseph Shuster v. National*

13 *Periodical Publications, et al.* in the Supreme Court of the State of New York,

14 Westchester County (hereinafter, the "1947 Action") is attached hereto as

15 Exhibit "A."

16       3.     A true and correct certified copy of Judge Young's Findings of Fact

17 and Conclusions of Law dated April 12, 1948, in the 1947 Action, is attached

18 hereto as Exhibit "B."

19       4.     A true and correct copy of the Stipulation of settlement dated May

20 19, 1948 between the parties to the 1947 Action (Jerome Siegel, Joseph Shuster

21 and National Periodical Publications, *et al.*) which I had copied from the Joint

22 Appendix in *Siegel v. National Periodical Publications, Inc. et al.*, 508 F.2d 909

23 (2d Cir. 1974) is attached hereto as Exhibit "C."

24       5.     A true and correct certified copy of Judge Young's corresponding

25 Final [Consent] Judgment dated May 21, 1948 in the 1947 Action is attached

26 hereto as Exhibit "D."

27       6.     A true and correct copy of the agreement dated September 22, 1938

28 between Jerome Siegel and Joseph Shuster on the one hand and Detective

Declaration Of Marc Toberoff In Support Of Plaintiffs' Motion For Partial Summary Judgment

1 Comics, Inc. on the other hand, which was provided to me by Plaintiffs, is
2 attached hereto as Exhibit "E."

3      7.      A true and correct copy of an excerpt from the United States
4 Copyright Office Catalogue of Copyright Entries listing the copyright
5 registration (no. B653651) of More Fun Comics, No. 101 on November 18, 1944
6 and its renewal registration (no. R532582) on July 17, 1972, which I caused to
7 be researched and copied at the Los Angeles Public Library, Central Branch, is
8 attached hereto as Exhibit "F."

9      8.      A true and correct copy of Plaintiffs' Notice of Termination of
10 Transfer Covering Extended Renewal Term of "Superboy" dated November 8,
11 2002 ("Termination Notice") is attached hereto as Exhibit "G."

12      9.      A true and correct copy of the electronic record of the recordation
13 at the United States Copyright Office on November 20, 2002 of Plaintiffs'
14 Termination Notice which I caused to be researched on line and copied is
15 attached hereto as Exhibit "H."

16      10.    For the Court's convenience, a true and correct copy of the decision
17 in *Siegel v. National Periodical Publications, Inc. et al.*, 364 F. Supp. 1032
18 (S.D.N.Y. 1973) is attached hereto as Exhibit "I."

19      11.    For the Court's convenience, a true and correct copy of the decision
20 in *Siegel v. National Periodical Publications, Inc. et al.*, 508 F.2d 909 (2d Cir.
21 1974) is attached hereto as Exhibit "J."

22              Executed on February 15, 2006 in Los Angeles, California.

23

24

25                                    _____
                                          Marc Toberoff
26

27

28

                                    2

Declaration Of Marc Toberoff In Support Of Plaintiffs' Motion For Partial Summary Judgment

1  Marc Toberoff (CA State Bar No. 188547)
   Nicholas C. Williamson (CA State Bar No. 231124)
2  LAW OFFICES OF MARC TOBEROFF, PLC
   1999 Avenue of the Stars, Suite 1540
3  Los Angeles, CA 90067
   Telephone: (310) 246-3333
4  Facsimile: (310) 246-3101

5  Attorneys for Plaintiffs and Counterclaim Defendants
   JOANNE SIEGEL AND LAURA SIEGEL LARSON

6

7             UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
8

9  JOANNE SIEGEL, an individual; and          Case No. CV 04-08776 RSWL (RZx)
   LAURA SIEGEL LARSON, an
10 individual,                                 [Honorable Ronald S. W. Lew]

11              Plaintiffs,                     PLAINTIFFS JOANNE SIEGEL
                                               AND LAURA SIEGEL LARSON'S
12      vs.                                    STATEMENT OF
                                               UNCONTROVERTED FACTS
13 TIME WARNER INC., a corporation;            AND CONCLUSIONS OF LAW
   WARNER COMMUNICATIONS                       IN SUPPORT OF MOTION FOR
14 INC., a corporation; WARNER                 PARTIAL SUMMARY
   BROS. ENTERTAINMENT INC., a                 JUDGMENT
15 corporation; WARNER BROS.
   TELEVISION PRODUCTION INC.,                 Complaint filed: October 22, 2004
16 a corporation; DC COMICS, a general
17 partnership; and DOES 1-10,                 Date:  March 20, 2006
                                               Time:  9:00 a.m.
18              Defendants.                     Place: Courtroom 21, 5th Floor

19 _____

20 DC COMICS,                                  [Notice of Motion; Memorandum of
                                               Points and Authorities In Support of
21              Counterclaimant,               Motion For Partial Summary
                                               Judgment; Declaration of Marc
22      vs.                                     Toberoff; Request For Judicial Notice
                                               and [Proposed] Judgment Filed
23 JOANNE SIEGEL, an individual; and           Concurrently Herewith]
   LAURA SIEGEL LARSON, an
24 individual,

25

26              Counterclaim Defendants.

27

28

_____
PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

1        Plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs")

2 respectfully submit this Statement of Uncontroverted Facts and Conclusions of

3 Law pursuant to Central District Local Rule 56-1 in support of Plaintiffs' motion

4 for partial summary judgment.

5

6                **STATEMENT OF UNCONTROVERTED FACTS**

7

| **FACTS** | **EVIDENCE** |
|---|---|
| 1. On September 22, 1938, Jerome Siegel ("Siegel") and Joseph Shuster ("Shuster") entered into an agreement with Detective Comics, Inc. ("Detective") (the "September 22, 1938 Agreement") to produce the "artwork and continuity" for five existing comic strips, including "Superman." | 1. Judge Addison Young's Findings of Fact ("1948 FOF") and Conclusions of Law ("1948 COL") dated April 12, 1948, Facts 39, 46, attached as Exhibit "B" to the Declaration of Marc Toberoff ("Toberoff Decl."); Toberoff Decl. Exh. "E" [Copy of the September 22, 1938 Agreement]. |
| 2. In addition, the September 22, 1938 Agreement permitted Siegel and Shuster to create new comic book features, provided that National had a right of first refusal to accept or reject same within six weeks of the submission thereof. | 2. Toberoff Decl. Exh. "B" [1948 FOF, Facts 155-158]; Toberoff Decl. Exh. "E" [Copy of the September 22, 1938 Agreement]. |
| | |

1

| | |
|---|---|
| 3. In or about 1938, Siegel conceived of a new comic strip series entitled "Superboy." | 3. Toberoff Decl. Exh. "B" [1948 FOF, Fact 155]. |
| 4. On November 30, 1938 Siegel submitted to Detective for its acceptance or rejection under the terms of the September 22, 1938 Agreement, a written synopsis or summary of the character, conception and plan for his "Superboy" comic strip series (the "Superboy Synopsis"), which Siegel suggested could run in Detective's magazines, "More Fun Comics" or "New Adventure Comics." | 4. Toberoff Decl. Exh. "B" [1948 FOF, Facts 155-156]. |
| 5. By letter to Siegel dated December 2, 1938, Detective did not elect to purchase Siegel's "Superboy" within six weeks from it submission per the terms of the September 22, 1938 Agreement. | 5. Toberoff Decl. Exh. "B" [1948 FOF, Facts 157-159]. |
| 6. Thereafter, in December, 1940, Siegel authored a complete original "Superboy" story ("Superboy Story"; collectively referred to herein with the Superboy Synopsis, as the "Siegel Superboy Material"). | 6. Toberoff Decl. Exh. "B" [1948 FOF, Fact 160]. |

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| 1 | 7. The Siegel Superboy Material | 7. Toberoff Decl. Exh. "B" |
|---|---|---|
| 2 | contained in detail and with | [1948 COL, Nos. 25-26; 1948 |
| 3 | particularity the unique conception | FOF, Facts 155-162]. |
| 4 | and character of "Superboy," the | |
| 5 | continuity and dialogue for the first | |
| 6 | "release" or "releases" of | |
| 7 | "Superboy," and the plan for the | |
| 8 | future publication of a "Superboy" | |
| 9 | comic book series. | |
| 10 | 8. On or about December of 1940, | 8. Toberoff Decl. Exh. "B" |
| 11 | Mr. Siegel submitted his Superboy | [1948 FOF, Facts 160, 162]. |
| 12 | Story to Detective for its further | |
| 13 | consideration; however, Detective did | |
| 14 | not elect to purchase the Superboy | |
| 15 | Story within six weeks of its | |
| 16 | submission per the September 22, | |
| 17 | 1938 Agreement. | |
| 18 | 9. In 1944 Jerome Siegel was | 9. Toberoff Decl. Exh. "B" |
| 19 | stationed abroad on military service. | [1948 FOF, Fact 182]. |
| 20 | 10. While Siegel was stationed | 10. Toberoff Decl. Exh. "B" |
| 21 | abroad, Detective, without notice to | [1948 FOF, Facts 163-168, 168]. |
| 22 | Siegel, used and published the Siegel | |
| 23 | Superboy Material as an illustrated | |
| 24 | comic book story entitled "Superboy" | |
| 25 | in the body of the magazine issue, | |
| 26 | More Fun Comics, No. 101, which | |
| 27 | was published and issued for sale in | |
| 28 | | |

3

| | |
|---|---|
| December, 1944. | |
| 11. Thereafter, Detective released "Superboy" comic strips in magazines bi-monthly until February, 1946 and monthly thereafter. | 11. Toberoff Decl. Exh. "B" [1948 FOF, Fact 169]. |
| 12. Upon Siegel's return from the war in January of 1946, Detective entered into negotiations with Siegel to purchase the Siegel Superboy Material and to hire Siegel to write further "Superboy" comic strips. However, no agreement was reached. | 12. Toberoff Decl. Exh. "B" [1948 FOF, Facts 183-184]. |
| 13. In or about 1947, Jerome Siegel ("Siegel") and Joseph Shuster ("Shuster"), filed an action in the Supreme Court of the State of New York, County of Westchester (the "1947 Action") against Defendant DC Comics' predecessor, National Comics Publications, Inc. ("National") to determine the validity of various "Superman" contracts between Siegel and Shuster and National's predecessors, including Detective and to determine the ownership of Siegel's creation "Superboy." | 13. First Amended Supplemental Complaint ("FASC") ¶ 33; Answer to First Amended Supplemental Complaint ("AFASC") ¶ 33; First Amended Counterclaim ("FACC") ¶ 23. |

4

| | |
|---|---|
| 14. Pursuant to stipulation of the parties the 1947 Action was tried before an Official Referee of the New York Supreme Court, Judge Addison Young ("Judge Young"). | 14. FASC ¶ 33; AFASC ¶ 33; Toberoff Decl. Exhs. "A", "B" [Opinion of Official Referee Judge Addison Young; 1948 FOF and 1948 COL dated April 12, 1948]; Toberoff Decl. Exh. "J" [*Siegel v. National Periodical Publications, Inc.*, 508 F.2d 909, 912 (2nd Cir. 1974)]. |
| 15. After trial of the 1947 Action, Judge Young rendered an opinion dated November 21, 1947 (the "1947 Opinion"). | 15. Toberoff Decl. Exh. "A" [Opinion of Official Referee Judge Addison Young]; FASC ¶ 33; FACC ¶ 24; Toberoff Decl. Exh. "J" [*Siegel v. National Periodical Publications, Inc.*, 508 F.2d 909, 912 (2nd Cir. 1974)]; Request for Judicial Notice, Exh. "A" [Opinion of Judge Addison Young]. |
| 16. On April 12, 1948, Judge Young signed detailed findings of fact and conclusions of law and rendered an interlocutory judgment from which no appeal was perfected. | 16. FAC ¶ 34; FACC ¶ 25; Toberoff Decl. Exh. "B" [1948 FOF and 1948 COL]; Toberoff Decl. Exh. "J" [*Siegel v. National Periodical Publications, Inc.*, 508 F.2d 909, 912 (2nd Cir. 1974)]; Request for |

5

| | |
|---|---|
| | Judicial Notice, Exh. "B" [1948 FOF and 1948 COL]. |
| 17. Siegel is the originator and the sole author of the comic strip feature "Superboy." | 17. Toberoff Decl. Exh. "B" [1948 FOF, Fact 160; 1948 COL, Nos. 25-26]. |
| 18. Detective's first "comic strip release entitled SUPERBOY published in December of 1944 [in More Fun Comics, No. 101] embodied and was based upon the idea, plan and conception contained in the [Superboy Story] submitted by...SIEGEL to DETECTIVE COMICS, INC. in December of 1940," and "embodied and was based upon the idea, plan and conception contained in the [Siegel Superboy Synopsis] dated November 30, 1938." | 18. Toberoff Decl. Exh. "B" [1948 FOF, Facts 164-165]. |
| 19. "[A]ll of the comic strip material published [by Detective] under the title SUPERBOY was based upon the idea, plan, conception and direction contained in the [Siegel Superboy Material]." | 19. Toberoff Decl. Exh. "B" [1948 FOF, Facts 171-172]. |
| 20. "SUPERMAN...did not contain the plan, scheme, idea or conception of the comic strip SUPERBOY as it | 20. Toberoff Decl. Exh. "B" [1948 FOF, Facts 166-167]. |

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| | |
|---|---|
| was later submitted by…SIEGEL to DETECTIVE COMICS, INC. in [the Siegel Superboy Material]," and "did not contain the plan, scheme, idea or conception of the comic strip SUPERBOY as published by DETECTIVE COMICS, INC. and by NATIONAL COMICS PUBLICATIONS, INC from December, 1944 until [April, 1948]." | |
| 21. "Siegel is the originator and the sole owner of the comic strip feature SUPERBOY." | 21. Toberoff Decl. Exh. "B" [1948 COL, No. 25]. |
| 22. "Siegel, as the originator and owner of the comic strip feature ha[d] the sole and exclusive right to create, sell and distribute comic strip material under the title SUPERBOY of the type and nature [t]heretofore published [by Detective and National Comics Publications, Inc. ("National")]." | 22. Toberoff Decl. Exh. "B" [1948 COL, No. 26]. |
| 23. Based on his above findings of fact and conclusions of law, Judge Young concluded in the 1947 Action that the defendants National *et al.* be "perpetually enjoined and restrained | 23. Toberoff Decl. Exh. "B" [1948 COL, No. 25]. |

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| | |
|---|---|
| 1  from creating, publishing selling or | |
| 2  distributing any comic strip material | |
| 3  of the nature now and heretofore sold | |
| 4  under the title SUPERBOY, or any | |
| 5  other comic strip material made in | |
| 6  imitation of the conception, | |
| 7  characters, nature, incidents, actions | |
| 8  or plot of [Siegel's] comic strip | |
| 9  SUPERBOY…" | |
| 10  24. Based on his above findings of | 24. Toberoff Decl. Exh. "B" |
| 11  fact and conclusions of law, Judge | [1948 COL, No. 27]. |
| 12  Young concluded in the 1947 Action | |
| 13  that the defendants National *et al.* | |
| 14  "account to… Siegel for all profits | |
| 15  derived from the publication, sale and | |
| 16  distribution of all comic strip material | |
| 17  entitled SUPERBOY…" | |
| 18  25. The parties entered a stipulation | 25. FASC ¶ 33; AFASC ¶ 33; |
| 19  of settlement dated May 19, 1948 | FACC ¶ 26; Toberoff Decl. Exh. |
| 20  ("1948 Stipulation") settling the 1947 | "C" [1948 Stipulation]; Toberoff |
| 21  Action wherein Siegel granted | Decl. Exh. "J" [*Siegel v.* |
| 22  "Superboy" to National. | *National Periodical* |
| 23  | *Publications, Inc.*, 508 F.2d 909, |
| 24  | 912 (2nd Cir. 1974)]. |
| 25  26. In 1969, Siegel and Shuster | 26. FACC ¶ 27; Toberoff Decl. |
| 26  sought declaratory relief in the U.S. | Exh. "T" [*Siegel v. National* |
| 27  District Court for the Southern | *Periodical Publications, Inc. et* |
| 28 | |

8

| | |
|---|---|
| 1  District of New York regarding <br> 2  ownership of the renewal copyright to <br> 3  "Superman," resulting in the decision, <br> 4  *Siegel v. National Periodical* <br> 5  *Publications, Inc. et al.*, 364 F. Supp. <br> 6  1032 (S.D.N.Y. 1973) | *al.*, 364 F. Supp. 1032 (S.D.N.Y. <br> 1973)]. |
| 7  27. This case was appealed to the <br> 8  U.S. Court of Appeals for the Second <br> 9  Circuit resulting in the decision, <br> 10 *Siegel v. National Periodical* <br> 11 *Publications, Inc.*, 508 F.2d 909 (2nd <br> 12 Cir. 1974). | 27. FASC ¶ 36; FACC ¶ 28; <br> Toberoff Decl. Exh. "J" [*Siegel* <br> *v. National Periodical* <br> *Publications, Inc.*, 508 F.2d 909 <br> (2nd Cir. 1974)]. |
| 13 28. On appeal, the Second Circuit <br> 14 Court of Appeals found that Judge <br> 15 Addison's opinion, findings of fact, <br> 16 conclusions of law and resultant <br> 17 consent judgment after settlement of <br> 18 the 1947 Action were binding on the <br> 19 parties under the doctrine of *res* <br> 20 *judicata*. <br> 21 | 28. Toberoff Decl. Exh. "J" <br> [*Siegel v. National Periodical* <br> *Publications, Inc.*, 508 F.2d 909, <br> 912-913 (2nd Cir. 1974)]. |
| 22 29. On December 23, 1975, Siegel <br> 23 and Shuster entered into an agreement <br> 24 with Warner Communications Inc. <br> 25 (the "1975 Agreement"), the alleged <br> 26 parent company of National <br> 27 Periodical Publications, Inc., which | 29. FACC ¶ 29. |

28

9

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| | |
|---|---|
| provided for modest annual payments to Siegel and Shuster, certain medical benefits and credit to Siegel and Shuster as the "creators" of "Superman," in exchange for Siegel and Shuster's acknowledgement that Warner Communications, Inc. was the exclusive owner of "Superman." | |
| 30. On November 8, 2002, Plaintiffs availed themselves of their right under the U. S. Copyright Act (17 U.S.C. § 304 (c)) to recapture the "Superboy" copyright by serving notice on the Defendants that Plaintiffs were terminating the grant of "Superboy" in the 1948 Stipulation and to the extent relevant, the 1975 Agreement (the "Termination Notice"), to take effect November 17, 2004. | 30. Toberoff Decl. Exh. "G" ["Superboy" Notice of Termination]; Toberoff Decl. Exh. "H" [Electronic Record of Recordation of "Superboy" Notice of Termination in U.S. Copyright Office]; FASC ¶ 48; FACC ¶ 57. |
| 31. Plaintiff Joanne Siegel is the author Siegel's widow and she therefore owns 50% of Siegel's termination interest. | 31. FASC ¶ 6; FACC ¶ 2; 17 U.S.C. §304(c)(2)(A); Toberoff Decl. Exh. "G" ["Superboy" Notice of Termination]. |
| 32. Plaintiff Laura Siegel Larson is one of Siegel's two children, and she | 32. FASC ¶ 7; FACC ¶ 3; 17 U.S.C. §304(c)(2)(A); Toberoff |

10

| | |
|---|---|
| therefore owns 25% of Siegel's termination interest. | Decl. Exh. "G" ["Superboy" Notice of Termination]. |
| 33. The serialized magazine issue, "More Fun Comics 101" used, embodied and published the Siegel Superboy Material. | 33. Toberoff Decl. Exh. "B" [1948 FOF, Fact 164, 165]. |
| 34. Copyright in the serialized magazine, More Fun Comics, No. 101, was secured on November 23, 1944 with the Register of Copyrights under copyright registration number B653651 in the name of Detective and renewed on July 17, 1972 in the name of National, claiming as proprietor of copyright, under copyright renewal registration number R532582. | 34. Toberoff Decl. Exh. "F" [Record of Original and Renewal Registration for "More Fun Comics 101"]; Toberoff Decl. Exh. "G" ["Superboy" Notice of Termination]. |
| 35. Section 304(c) of the Copyright Act of 1976 ("Section 304(c)") applies to "any copyright ... subsisting in its renewal term on the effective date of the [1976 Act]." Copyright in "Superboy" subsisted in its renewal term on the effective date of the 1976 Act, January 1, 1978. | 35. 17 U.S.C. § 304(c); Toberoff Decl. Exh. "F" [Record of Original and Renewal Registration for "More Fun Comics 101"]; Toberoff Decl. Exh. "G" ["Superboy" Notice of Termination]; Toberoff Decl. Exh. "H" [Electronic Record of Recordation of "Superboy" |

11

| | |
|---|---|
| | Termination Notice in U.S. Copyright Office]. |
| 36. Section 304(c) applies only to transfers or licenses "executed before January 1, 1978," by the author, the author's surviving spouse and children (or certain other designated persons). The grants terminated by Plaintiffs were the 1948 Stipulation and the 1975 Agreement (to the extent relevant), both pre-1978 documents. | 36. 17 U.S.C. § 304(c); Toberoff Decl. Exh. "G" ["Superboy" Notice of Termination]; Toberoff Decl. Exh. "H" [Electronic Record of Recordation of "Superboy" Termination Notice in U.S. Copyright Office]; FASC ¶ 50; FACC ¶ 57. |
| 37. Section 304(c) requires the termination notice to "state the effective date of termination, which shall fall within the five-year period" "beginning at the end of 56 years from the date copyright was originally secured," and requires that the termination notice be "served not less than two or more than ten years" before the effective date of termination. Plaintiffs' Termination Notice stated the effective date of termination, November 17, 2004, which fell within the appropriate time-frame from the date the | 37. 17 U.S.C. §§ 304(c)(4)(A), (d)(1); Toberoff Decl. Exh. F. [Record of Original and Renewal Registration for "More Fun Comics 101"]; Toberoff Decl. Exh. "G" ["Superboy" Notice of Termination]; Toberoff Decl. Exh. "H" [Electronic Record of Recordation of "Superboy" Termination Notice in U.S. Copyright Office]. |

12

| | |
|---|---|
| copyright was originally secured (November 23, 1944 under copyright registration no. B653651); service of the Termination Notice took place on November 8, 2002 by First Class Mail, postage pre-paid and in addition by certified mail return receipt requested, which service date is "not less than two or more than ten years" before the November 17, 2004 Termination Date. | |
| 38. Section 304(c) requires that a copy of the termination notice be "recorded in the Copyright Office before the effective date of termination," and that it comply "in form, content, and manner of service, with requirements that the Register of Copyrights shall prescribe by regulation." Plaintiffs recorded their Termination Notice in the Copyright Office on November 20, 2002, well before the November 17, 2004 Termination Date; and the notice fully complied with 37 C.F.R. § 201.10, the regulations issued by the Register of Copyrights under Section | 38. 17 U.S.C. § 304(c)(4)(A), (c)(4)(B); Toberoff Decl. Exh. "G" ["Superboy" Notice of Termination]; Toberoff Decl. Exh. "H" [Electronic Record of Recordation of "Superboy" Termination Notice in U.S. Copyright Office]. |

13

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

1 | 304(c).

2

3 | **CONCLUSIONS OF LAW**

4

5 | 1.    The Court has jurisdiction over this matter pursuant to 17 U.S.C. §
6 | 101 *et al.* and 28 U.S.C.§§ 1331 and 1338(a).

7

8 | 2.    Judge Young's findings of fact and conclusions of law in the 1947
9 | Action regarding Siegel's creation and ownership of "Superboy" and the
10 | relationship between Siegel and Defendants' predecessors are binding on
11 | Defendants under the doctrines of *res judicata* or collateral estoppel and are
12 | dispositive of Plaintiffs' motion for summary judgment. The preclusive effect,
13 | in a federal copyright action, of the findings of fact and conclusions of law in the
14 | 1947 state court action was confirmed in *Siegel v. National Periodical*
15 | *Publications, et al.* 508 F.2d 909, 912-913 (2nd Cir. 1974). *See also Allen v.*
16 | *McCurry*, 449 U.S. 90, 96, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980); *Migra v.*
17 | *Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 84, 104 S.Ct. 892, 79 L. Ed.
18 | 2d 56 (1984); *Pension Trust Fund for Oper. Engineers v. Triple A Machine*
19 | *Shop, Inc.*, 942 F.2d 1457, 1464-1465 (9th Cir. 1991); *Garguili v. Thompkins*,
20 | 790 F.2d 265,269 (2d Cir. 1986); *Fuchsberg & Fuchsberg v. Galizia,* 300 F.3d
21 | 105, 109 (2d Cir. 2002); *Vernitron Corp. v. Benjamin*, 440 F.2d 105,108 (2d Cir.
22 | 1971).

23

24 | 3.    Pursuant to Section 304(c) of the 1976 Copyright Act, Plaintiffs'
25 | March 8, 2002 Notice of Termination regarding "Superboy" terminated the May
26 | 19, 1948 Stipulation and the December 23, 1975 Agreement (to the extent such
27 | agreements are applicable to "Superboy") resulting in Plaintiffs' recapture of the
28 | "Superboy" copyright on November 17, 2004, the noticed termination date.

14

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

1 | 17 U.S.C. § 304(c); 37 C.F.R. § 201.10; *See Stewart v. Abend*, 495 U.S. 207,
2 | 217-20, 110 S.Ct. 1750, 109 L. Ed. 184 (1990); *New York Times v. Tasini*, 533
3 | U.S. 483, 121 S. Ct. 2381, 150 L. Ed. 2d 500; *Marvel Characters, Inc. v. Simon*,
4 | 310 F.3d 280 (2d Cir. 2002).

5

6 |     4.    Plaintiffs are therefore entitled to partial summary judgment in their
7 | favor on their first amended supplemental complaint, declaring: (i) that
8 | Plaintiffs' Termination with respect to "Superboy" is valid under 17 U.S.C. §
9 | 304(c); (ii) that Plaintiffs thereby properly terminated the May 19, 1948
10 | Stipulation and the December 23, 1975 Agreement (to the extent such
11 | agreements are applicable to "Superboy") and (iii) that on November 17, 2004,
12 | the noticed Termination date, Plaintiffs recaptured Siegels' original copyright in
13 | "Superboy" pursuant to 17 U.S.C. § 304(c).

14

15

16 | DATED: _____          _____

17 |                                    Hon. Ronald S.W. Lew

18 |                                    U.S. District Judge

19

20 | Respectfully Submitted,

21 | Law Offices of Marc Toberoff, PLC

22

23 | By: _____

24 |          Marc Toberoff

25 | Attorneys for Plaintiffs Joanne Siegel and
    Laura Siegel Larson

26

27

28

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

1

## PROOF OF SERVICE

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3        I am employed in the County of Los Angeles, State of California. I am over the age of eighteen
          years and not a party to the within action; my business address is: 1999 Avenue of the Stars, Suite
4        1540, Los Angeles, California 90067.

5            On February 15, 2006, I served the attached documents described as

6        1.    Plaintiffs Joanne Siegel and Laura Siegel Larson's Notice of Motion And
                Motion For Partial Summary Judgment; Memorandum of Points and
7               Authorities In Support Thereof;

8        2.    Plaintiffs Joanne Siegel and Laura Siegel Larson's Statement of
                Uncontroverted Facts and Conclusions Of Law;
9

10       3.    Plaintiffs Joanne Siegel and Laura Siegel Larson's Request For Judicial
                Notice in Support of Motion for Partial Summary Judgment;

11       4.    Declaration of Marc Toberoff in Support of Plaintiffs' Motion for Partial
                Summary Judgment
12

13       5.    [Proposed] Judgment Following Partial Summary Judgment

          on all interested parties in this action by placing _____ the original _X_ a true copy thereof enclosed in
14       sealed envelope(s) addressed as follows:

15       David L. Burg
          Weissman Wolff Bergman Coleman Grodin & Evall LLP
16       9665 Wilshire Blvd., Ninth Floor
          Beverly Hills, CA 90212
17       Facsimile No. 310.550.7191

18       Roger L. Zissu
          James D. Weinberger
19       Fross, Zelnick, Lehrman & Zissu P.C.
          866 United Nations Plaza
20       New York, New York 10017
          Facsimile No.: 212-813-5901
21

          [X]  :BY FACSIMILE:
22

          As follows: I caused the transmission of the above named document to the fax number set forth
23       above, or on the attached service list.

24       [X]  :BY MAIL:

25       As follows: I am "readily familiar" with the firm's practice of collection and processing
          correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on
26       that same day with postage thereon fully prepaid at Los Angeles California in the ordinary course of
          business. I am aware that on motion of the party served, service is presumed invalid if postal
27       cancellation date or postage meter date is more than one day after date of deposit for mailing in
          affidavit.
28

1       :(STATE) – I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

2   [X] :(FEDERAL) – I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

3

4       I declare under penalty of perjury that the foregoing is true and correct.

5       EXECUTED on February 15, 2006, in Los Angeles, California.

6

7                                             Nicholas C. Williamson

8

9