# EXHIBIT D

A. C.                AND PRIVY COUNCIL.                            603

[PRIVY COUNCIL.]

S. M. K. R. MEYAPPA CHETTY. . . . . APPELLANT;     J. C.*

AND                                                1916

S. N. SUPRAMANIAN CHETTY . . . . . RESPONDENT.    *March* 2.

ON APPEAL FROM THE SUPREME COURT AT SINGAPORE.

*Limitation—Executor—Accrual of Right to sue—Testator domiciled
Abroad—Probate—" Capable of instituting suit "—Devolution of
Interest—Substitution of· Plaintiff—Straits Settlements Ordinance
No. 6 of 1896, ss. 17, 22—Straits Settlements Ordinance No. 31 of
1907, ss. 133, 196.*

Straits Settlements Ordinance No. 6 of 1896, which deals with
the limitation of suits, provides as follows :—Sect. 17, sub-s. 1 :
" When a person who would, if he were living, have a right to insti-
tute a suit or make an application, dies before the right accrues,
the period of limitation shall be computed from the time when
there is a legal representative of the deceased capable of instituting
or making such suit or application." Sect. 22 :  " When, after
the institution of a suit, a new plaintiff or defendant is substituted
or added, the suit shall as regards him be deemed to have been
instituted when he was so made a party . . . . " :—

*Held,* (1.) that the executor of a will capable of probate in the
Straits Settlements is a legal representative capable of instituting
a suit, within the meaning of s. 17, sub-s. 1, from the date of the
testator's death and not only from the date when he obtains
probate :  *quaere* as to an executor who renounces probate ;
(2.) that, according to the English practice (which is made applicable
in the Straits Settlements in the absence of any other provision),
the will of a testator domiciled in British India, or elsewhere outside
the Straits Settlements, although not proved in the place of the
testator's domicil, is capable of probate in the Straits Settlements
if (*a*) it is valid according to the law of the testator's place of
domicil, and (*b*) if there are assets of the testator in the Straits
Settlements ; (3.) that s. 22 contemplates cases in which a suit is
defective by reason of the right persons not having been made
parties, but not cases in which the suit was originally properly
constituted but has become defective owing to a devolution of

---

* *Present :*  EARL LOREBURN, LORD ATKINSON, LORD PARKER OF
WADDINGTON, and LORD SUMNER.

604                    HOUSE OF LORDS                **[1916]**

J. C.

1916

MEYAPPA
CHETTY
*v.*
SUPRA-
MANIAN
CHETTY.

interest; in the latter circumstances a carrying-on order should be made under s. 169 of the Civil Procedure Ordinance No. 31 of 1907.

APPEAL from a judgment of the Supreme Court of the Straits Settlements (Settlement of Singapore), delivered June 26, 1914, reversing the judgment of the judge at the trial.

S. A. Supramanian Chetty, who was a native of and domiciled in British India, died on November 11, 1904, having by his will appointed as his executors S. R. M. Ramasamy Chetty (hereinafter called the executor) and another person who renounced probate at some date prior to August, 1907. For some years before his death the deceased had carried on a business at Singapore in partnership with the respondent. In December, 1904, the will was presented to the Court in British India for registration and probate. The respondent entered a caveat and contested its validity. After being set aside by the District Judge the will was affirmed by the High Court at Madras, probate being eventually granted to the executor in India on March 10, 1912.

Meanwhile, on March 10, 1910, the Supreme Court at Singapore granted to P. L. M. A. V. Meyappa Chetty, as representing the widow of the deceased, letters of administration pendente lite as to the assets within the jurisdiction of that Court. On October 23, 1911, he, as administrator pendente lite, commenced the present suit in the Supreme Court, claiming a declaration that the partnership in Singapore between the deceased and the respondent was dissolved by reason of the death of the deceased, and for the usual accounts and realization.

After the executor had obtained probate in India he appointed the appellant by power of attorney to obtain in the Straits Settlements a grant of letters of administration with the will annexed, and the grant was accordingly made. On April 11, 1913, it was ordered by consent that the name of P. L. M. A. V. Meyappa Chetty should be struck out as plaintiff in the suit and the name of the appellant substituted.

The respondent by his defence pleaded that the suit was barred by limitation, and the question of law so raised was subsequently argued upon an agreed statement of the facts.

The Straits Settlements Limitation Ordinance No. 6 of 1896, by s. 4 and Sched. II., art. 86, provides that the period of limitation in the case of a suit for an account and a share of the profits of a dissolved partnership shall be three years from the date of the dissolution. Sect. 17, sub-s. 1, and s. 22, which were also material, are set out in the head-note.

J. C.
1916

MEYAPPA
CHETTY
*v.*
SUPRA-
MANIAN
CHETTY.

Sproule J. held that the suit was not barred. Upon appeal this decision was reversed by Bucknill, acting C.J., and Sercombe Smith J., Ebden J. dissenting.

1916. Jan. 20, 21, 23. *Holman Gregory, K.C.*, and *Jowitt*, for the appellant. Sect. 17, sub-s. 1, of the Limitation Ordinance applies to the present suit; it applies to all suits in which the right of action has not accrued to the deceased before his death. There was no personal representative capable of instituting the suit until March 10, 1910, when the original plaintiff was granted letters of administration pendente lite. The suit was commenced on October 23, 1911, and was therefore in time within Sched. II., art. 86. The title of an administrator and his right to sue date from the grant and not from the death of the deceased: Tristram and Coote, Probate Practice, 14th ed., p. 58. The testator being domiciled outside the Straits Settlements could not institute a suit there until he had obtained administration or probate within that jurisdiction: *Vanquelin* v. *Bouard* (1); Williams on Executors, 10th ed., p. 271. Under the Straits Settlements Civil Procedure Ordinance No. 31 of 1907, s. 840, the executor could have obtained administration but not probate in the Straits Settlements. It is true that under Ordinance No. 12 of 1909, s. 44, probate in the Straits Settlements could be obtained upon an authenticated copy of the will, but under that section probate could not have been obtained before 1910. The respondent was himself disputing the will, and the executor cannot be regarded as capable of instituting a suit against him until the will was admitted to probate in India. The appellant was not a new plaintiff within the meaning of s. 22. The order of April 11, 1913, though in form made under s. 133 of the Civil Procedure Ordinance, was in effect a carrying-on order under s. 169 of that Ordinance. The order effected no real change of parties, but was consequent

(1) (1863) 15 C. B. (N.S.) 341.

606                    HOUSE OF LORDS              **[1916]**

J. C.
1916
MEYAPPA
CHETTY
*v.*
SUPRA-
MANIAN
CHETTY.

upon a transmission of interest within the terms of the latter section.

*Upjohn*, K.C., and *Latter*, for the respondent. Even assuming that s. 17, sub-s. 1, applies to the present suit, time began to run from the death of the testator, or at any rate from the date when the second executor renounced probate ; in either case the suit is barred. The language of the sub-section is that used in *Murray* v. *East India Co.* (1), and the intention was to enact the law as established by judicial decisions in England. According to those decisions an executor can institute a suit on behalf of the estate at any time after the death of the testator, probate being merely necessary as evidence of title at the trial : Comyn's Digest, " Administration " B. 9 and B. 10 ; *Thompson* v. *Reynolds* (2) ; *Knox* v. *Gye* (3) ; *Woolley* v. *Clark.* (4) If a sole executor renounces probate time does not run because the renunciation relates back ; here the executor, having intermeddled, could not renounce. There is no difference in principle in the case of the executor of a testator with a foreign domicil. A will valid according to the law of the place of domicil of the deceased is capable of probate in the Straits Settlements if there are assets there : *In the Goods of Deshais* (5) ; *Whyte* v. *Rose.* (6) Probate in the Straits Settlements could have been obtained before the grant in India under s. 840 of the Procedure Ordinance, 1907, as amended by Ordinance No. 12 of 1909, s. 44. But, the will being capable of probate in the Straits Settlements, it is not material to the present question at what date probate could have been obtained. The decision in *Vanquelin* v. *Bouard* (7) and the passage in Williams on Executors relied on by the appellant refer only to the necessity of a grant of administration or probate being obtained in the jurisdiction before the suit comes to trial. But even if there was no representative capable of suing before the grant pendente lite the suit is still barred. The present appellant, who was substituted as plaintiff by the order of April 11, 1913, was a new plaintiff within the meaning of s. 22 of the Limitation Ordinance. The proviso to that section would be unnecessary if this was

(1) (1821) 5 B. & Ald. 204.          (4) (1822) 5 B. & Ald. 744.
(2) (1827) 3 C. & P. 123.            (5) (1865) 34 L. J. (P.) 58.
(3) (1872) L. R. 5 H. L. 656.        (6) (1842) 3 Q. B. 493, 507.
                    (7) 15 C. B. (N.S.) 341.

not so.  The order was in fact made under s. 133 of the Procedure
Ordinance.

*Jowitt* in reply.  At the date when the suit was instituted the
executor had done nothing in the Straits Settlements which
amounted either to an acceptance or renunciation of probate.
Intermeddling in the estate in India does not amount to inter-
meddling in the Straits Settlements : *Lowe* v. *Farlie* (1) ; *Logan* v.
*Fairlie.* (2)  The suit instituted by the administrator pendente lite
was therefore not barred when it was commenced ; it cannot have
become barred by subsequent acts of the executor who is not
a party.

March 2.  The judgment of their Lordships was delivered by

LORD PARKER OF WADDINGTON.  The facts of this case are not in
dispute.  S. A. Supramanian Chetty, a native of and domiciled in
British India (hereinafter referred to as " the testator "), carried on
for some years prior to his death a money-lending business in
Singapore in the Straits Settlements in co-partnership with the
respondent.  He died on November 11, 1904, having by his will
appointed S. R. M. Ramasamy Chetty and another to be his
executors.  Caveats were entered against the proof of this will, and
in August, 1907, S. R. M. Ramasamy Chetty (his co-executor having
renounced probate) presented a petition in the Court of the District
Judge of Madura, in the Madras Presidency, propounding the will
in solemn form.  Ultimately, after protracted litigation, the High
Court of Judicature at Madras ordered the District Judge at Madura
to grant probate of the will to S. R. M. Ramasamy Chetty, and such
probate was on March 10, 1912, granted accordingly.  An appeal
from the order of the High Court of Judicature in Madras has
recently been dismissed by His Majesty in Council.

Meanwhile, on March 7, 1910, letters of administration pendente
lite to the estate of the testator, situate within the jurisdiction of
the Supreme Court of the Straits Settlements, were granted by that
Court to P. L. M. A. V. Meyappa Chetty, the attorney of the testator's
widow, and on October 23, 1911, the administrator pendente lite
instituted the present suit, asking for a declaration that the partner-

J. C.
1916
MEYAPPA
CHETTY
*v.*
SUPRA-
MANIAN
CHETTY.

(1) (1817) 2 Madd. 101.          (2) (1835) 1 My. & Cr. 59.

608                              HOUSE OF LORDS                        **[1916]**

J. C.          ship existing between the testator and the defendant had been
1916           dissolved by the testator's death, and for the usual partnership
MEYAPPA        accounts.  The first question their Lordships have to decide is
CHETTY         whether this suit was at the date of its institution barred by s. 4 of
*v.*           the Straits Settlements Ordinance No. 6 of 1896, being an Ordinance
SUPRA-         to amend the law relating to the limitation of suits.
MANIAN
CHETTY.              Sect. 4 of this Ordinance provides that (subject to the provisions
               *contained in ss. 5 to 25 thereof inclusive) every suit instituted after*
               the period of limitation prescribed therefor by the Second Schedule
               thereto shall be dismissed, provided that limitation has been set up
               as a defence.  The period prescribed by the Second Schedule in the
               case of a suit for an account and a share of the profits of a dissolved
               partnership is three years from the date of the dissolution.  The date
               of dissolution was in the present case the testator's death ; and unless
               there is something to the contrary contained in ss. 5 to 25 of the
               Ordinance, it is not disputed that time had run prior to the institution
               of the present suit.
                    Reliance is, however, placed on s. 17, sub-s. 1, of the Ordinance,
               which provides that when a person who would, if he were living,
               have a right to institute a suit or make an application dies before
               the right accrues, the period of limitation shall be computed from
               the time when there is a legal personal representative of the deceased
               capable of instituting or making such suit or application.  It is
               contended that there was no legal representative of the testator
               capable of instituting this suit until the appointment on March 7,
               1910, of an administrator pendente lite, and that therefore the
               period of limitation must be computed from March 7, 1910.
                    Assuming, but without deciding, that this is to be deemed to be a
               suit which the testator would, if he were living, have a right to
               institute, their Lordships have come to the conclusion that this
               contention cannot be upheld.  It is quite clear that an executor
               derives his title and authority from the will of his testator and not
               from any grant of probate.  The personal property of the testator,
               including all rights of action, vests in him upon the testator's death,
               and the consequence is that he can institute an action in the character
               of executor before he proves the will.  He cannot, it is true, obtain
               a decree before probate, but this is not because his title depends on
               probate, but because the production of probate is the only way in

which, by the rules of the Court, he is allowed to prove his title. An administrator, on the other hand, derives title solely under his grant, and cannot, therefore, institute an action as administrator before he gets his grant. The law on the point is well settled : see Comyn's Digest, " Administration," B. 9 and 10 ; *Thompson* v. *Reynolds* (1) ; *Woolley* v. *Clark.* (2)

It would seem, therefore, that an executor is not only the legal representative of his testator, but capable of instituting a suit within the meaning of s. 17, sub-s. 1, of the Ordinance in question. There is nothing in the Ordinance to confine " legal representative " to a person to whom the Court has actually made a grant. But, in their Lordships' opinion, the words " capable of instituting a suit " mean capable of instituting a suit in which a decree might be obtained. The will under which the executor claims must therefore be capable of probate ; otherwise the action must fail. It has to be determined, therefore, whether the testator's will was in the present case capable of probate in the Straits Settlements. This question depends on the Civil Procedure Code, Ordinance No. 31 of 1907.

Sect. 3 of that Code provides that where no other provision is made by the Code or any law in force for the time being, the procedure and practice for the time being in force in the Supreme Court of Judicature in England shall, as near as may be, be followed and adopted. There is nothing in the Code or in any law in force in the Straits Settlements precluding the Supreme Court of the Straits Settlements from granting probate of the will of a person wherever domiciled. The English practice is therefore applicable. According to English practice, probate may be granted of the will of a person domiciled abroad upon proof that it is a valid will according to the law of the domicil, and that there are assets within the jurisdiction. It is not necessary that it should be first proved in the Courts of the domicil : see Jarman on Wills, 6th ed., vol. 1, p. 7, and *Robinson* v. *Palmer.* (3) It follows that the testator's will could have been proved in the Straits Settlements (1.) because it was valid according to the law of the testator's domicil, as shown by its admission to probate in the Court of the District Judge at Madura ; and

J. C.
1916
~
MEYAPPA
CHETTY
*v.*
SUPRA-
MANIAN
CHETTY.

(1) 3 C. & P. 123.          (2) 5 B. & Ald. 744.
(3) [1901] 2 I. R. 489.

J. C.

1916

MEYAPPA
CHETTY
*v.*
SUPRA-
MANIAN
CHETTY

(2.) because there were assets of the testator locally situate in the Straits Settlements.

There was a good deal of discussion before their Lordships' Board as to what would have been the result had the English Statutes of Limitation been applicable. This discussion, though perhaps not strictly relevant, was useful as illustrating the principles which ought to guide the Court and throwing light on the meaning of the Ordinances of the Straits Settlements. For the purpose of the English Statutes of Limitation time runs from the accruer of the cause of action, but a cause of action does not accrue unless there be some one who can institute the action. In the case of a cause of action arising in favour of the estate of a deceased person at or after his death time will at once begin to run, if there be an executor, even though probate has not been obtained: *Knox* v. *Gye* (1); but if there be no executor, time will run only from the actual grant of letters of administration: *Murray* v. *East India Co.* (2) It is, in their Lordships' opinion, probable that s. 17, sub-s. 1, of the Ordinance in question was intended to apply this rule. A good deal was also said as to what would be the effect if the executor who might have instituted proceedings subsequently renounced probate. Their Lordships at first thought that this might be important for the purposes of the present case, because it is doubtful whether one of two joint executors can properly institute proceedings on behalf of their estate. On reference, however, to the record on the appeal from the order of the High Court of Judicature at Madras directing probate to be granted, it appears that S. R. M. Ramasamy Chetty's co-executor renounced probate at some time before August, 1907. Since August, 1907, S. R. M. Ramasamy Chetty was therefore sole executor and capable of instituting the action. The three years prescribed by the Ordinance must therefore in any case have elapsed before the suit was instituted.

The second question argued before their Lordships turns upon the effect of s. 22 of the Limitation Ordinance. That section provides that when after the institution of a suit a new plaintiff is substituted or added, the suit shall as regards him be deemed to have been instituted when he was so made a party; provided that when a plaintiff dies, and the suit is continued by his legal representative,

(1) L. R. 5 H. L. 656.                    (2) 5 B. & Ald. 204.

A. C.    AND PRIVY COUNCIL.    611

it shall as regards him be deemed to have been instituted when it was instituted by the deceased plaintiff.    It appears that after the grant of probate by the Court of the District Judge at Madura the letters of administration pendente lite granted to the original plaintiff in this suit were cancelled, and in lieu thereof letters of administration with the will annexed were granted by the Supreme Court of the Straits Settlements to the appellant as attorney for the proving executor.    Subsequently, on April 14, 1913, an order was made in the suit striking out the original plaintiff and substituting the appellant as plaintiff.    It is contended that, as regards the appellant, the suit therefore must, under s. 22 of the Ordinance, be deemed to have been instituted on April 14, 1913, at which date the action was barred, even if it was not barred when the action was instituted by the original plaintiff.    Having regard to their Lordships' decision on the first question, it is not, strictly speaking, necessary to decide this point.    In view, however, of its importance in practice it may be desirable to deal with it.

Their Lordships are of opinion that s. 22 contemplates cases in which a suit is defective by reason of the person or one of the persons in whom the right of suit is vested not being before the Court. Sect. 133 of the Civil Procedure Code provides against the defeat of a suit on this ground and enables the proper party to be added or substituted.    If A. is the right person to sue, it would be clearly wrong to allow him, for the sake of avoiding the Limitation Ordinance, to take advantage of a suit improperly instituted by B.    Their Lordships do not think that s. 22 of the Ordinance has any application to cases in which the suit was originally properly constituted as to parties but has become defective because there has been a change or devolution of interest.    Such cases do not fall within s. 133, but within s. 169, of the Civil Procedure Code, and the proper remedy is by way of an order to carry on proceedings, and not of an order adding or substituting parties.    The proviso to s. 22 of the Ordinance may have been inserted per cautelam, and cannot be relied on as controlling the operative words.    The difficulty really arises out of the form of the order of April 14, 1913.    What was required was an order under s. 169 of the Code, and if the order was competent it was competent under this section only.    Their Lordships do not think that the respondent could have taken advantage of the form

J. C.

1916

Meyappa
Chetty
v.
Supra-
manian
Chetty.

3    2 S 2

612                    HOUSE OF LORDS                    **[1916]**

J. C.
1916

MEYAPPA
CHETTY
*v.*
SUPRA-
MANIAN
CHETTY.
——

of order to escape a liability to which he would have been subject if the order had been made in proper form.

Under the circumstances their Lordships will humbly advise His Majesty that the appeal should be dismissed with costs.

Solicitors for appellant : *Whites & Co.*

Solicitors for respondent : *Loughborough, Gedge, Nisbet & Drew.*

———

[HOUSE OF LORDS.]

H. L. (E.)*
1916
*Jan.* 28.

CHURM . . . . . . . . . . . . APPELLANT;

AND

DALTON MAIN COLLIERIES, LIMITED · . RESPONDENTS.

*Mines—Minimum Wage — Contract of Service — Construction — "Employer"—Collier and Filler—Filler receiving Wages directly from Collier—Liability of Colliery Owners—Coal Mines (Minimum Wage) Act, 1912 (2 Geo. 5, c. 2), s. 1, sub-s. 1.*

A colliery company usually assigned two workmen, a collier and a filler, to each underground working place or stall, but occasionally a double or treble set of men, composed of an equal number of colliers and fillers, worked together in one stall. The men were paid upon a tonnage rate in accordance with the coal gotten. A weekly pay-note was made out to the number of the stall and the money was paid to the collier, or, in the case of double or treble sets, to one of the colliers. The division of the pay between the collier and the filler was a matter of private bargain between them. On entering the service of the colliery company all the workmen, whether colliers or fillers, were bound to sign three documents, one of which contained the by-laws of the company. By by-law 2, "All persons employed . . . . shall receive wages and payment according to the current rate of wages for the time being at the colliery." By by-law 13, "All persons working under or for or paid by contractors or other persons shall be deemed to be the servants of the owners of the colliery to the extent only that they shall be bound to obey these by-laws and the other rules of the colliery, but the owners of the colliery shall not be bound to see to the payment of or be liable for the wages due to such persons after they have paid the contractor or other person for whom such persons work."

A filler worked with a collier in a stall under an arrangement

———

\* *Present :* LORD BUCKMASTER L.C., LORD ATKINSON, LORD SHAW OF DUNFERMLINE, LORD PARKER OF WADDINGTON, and LORD SUMNER.