# EXHIBIT E

[No. 20]  27th August 1981  [1981] R.P.C.

IN THE HOUSE OF LORDS

Before: VISCOUNT DILHORNE
LORD SALMON
LORD EDMUND-DAVIES
LORD RUSSELL OF KILLOWEN
LORD KEITH OF KINKEL

15th, 19th–21st May, 24th July 1980

CHAPPELL & CO. LTD. AND OTHERS v. REDWOOD MUSIC LTD.
REDWOOD MUSIC LTD. v. FRANCIS, DAY & HUNTER LTD. AND ANOTHER

Copyright — Musical work — Songs — Reversionary interests — Whether words and music of a song constituted a collective work — Proviso to section 5(2) of Copyright Act 1911.

Pre-1957 works — Whether assignment of American renewal rights operative to assign English reversionary rights.

Pre-1912 works — Whether pre-1912 assignments vested substituted copyrights in respondents.

Copyright Act 1911, sections 5(2), 24(1), 35(1).

This was an appeal by Francis, Day & Hunter Ltd. and Chappell & Co. Ltd. from a decision of the Court of Appeal* determining the respective rights of the appellants and the respondents to the copyright in certain songs. The full facts are set out in the judgment of Robert Goff J. at first instance in Redwood Music Ltd. v. Francis, Day and Hunter Ltd.†

The appellants, who were music publishers, had acquired the copyright in numerous songs from the respective songwriters; in many cases the words and music of the songs had been written by different persons. By the proviso to section 5(2) of the Copyright Act 1911, copyright in a work assigned by its first owner reverted to the author's personal representatives 25 years after his death except where the work was a "collective work" within section 35(1) of the 1911 Act. The respondents, R. M. Ltd., were the assignees of persons claiming under the estates of numerous deceased songwriters and claimed to be entitled to the copyrights on the ground that the works were not "collective works" and therefore were not caught by the exception in the proviso to section 5(2). The principal question before their Lordships was whether the songs were collective works.

---

* Reported [1979] R.P.C. 385.
† Reported [1978] R.P.C. 429.

338

**Viscount Dilhorne**         **Chappell & Co. Ltd. and Others** *v.*         [1981] R.P.C.
**Redwood Music Ltd.**
**Redwood Music Ltd.** *v.* **Francis, Day & Hunter Ltd. and Another**

*Two further questions arose: first, whether an American agreement of 1948, dealing primarily with the right to renew the copyright in a song in the U.S.A. for a further 28 years contained an implied assignment of the reversionary interest in the U.K. copyright for the years 25–50 after the author's death, thereby depriving the author's personal representatives of the copyright for the remainder of the term. A further question was whether an assignment of copyright before the commencement of the 1911 Act constituted an "express agreement" within section 24(1) of the 1911 Act, depriving the author's personal representatives of the copyright which, but for that agreement, would have passed to them.*                                                                5

Held, *dismissing the appeal,*                                                                                10

(1) (Viscount Dilhorne *dissenting*) *The songs in question were not collective works and the exception in the proviso to section 5(2) did not apply. The music and lyrics of a song each had their own separate copyrights but there was no third separate copyright in the actual song. Accordingly the copyrights reverted to the author's personal representatives.*                                                                                        15

Coleridge-Taylor *v.* Novello and Co. Ltd. [1938] 2 All E.R. 318; [1938] Ch. 608; [1938] 3 All E.R. 506; [1938] Ch. 850 *referred to.*

(2) *The terms of the 1948 agreement were not such as to imply an assignment of the reversionary interest in the copyright.*

(3) *Express agreement in section 24(1) meant an agreement referring in terms to the substitution rights; the extended term therefore did not vest in the appellants but passed to the author's personal representatives.*                                                20

*Robert Alexander Q.C.* and *John Mummery,* instructed by *Joynson-Hicks,* appeared for the appellants. *Andrew Bateson Q.C.* and *John Camp,* instructed by *Denton, Hall and Burgin,* appeared for the respondents.                                25

**Viscount Dilhorne.**—My Lords, we now in 1980 have to decide important questions as the effect of provisions of the Copyright Act 1911 which was repealed in 1956 and replaced by the Copyright Act of that year.

Section 1(1) of the 1911 Act declared that copyright should subsist throughout His Majesty's dominions in "every original literary dramatic musical and artistic work" if certain conditions were satisfied "but in no other works". Section 3 provided that the term for which copyright was to subsist was, except as otherwise expressly provided by the Act, to be for the life of the author of the work and for 50 years after his death. Section 5(1) provided that subject to the provisions of the Act, the author of a work was to be the first owner of the copyright in it. This was subject to two provisos, one of which provided, *inter alia,* that where the author was in the employment of some person and the work was produced in the course of his employment, in the absence of any agreement to the contrary, the employer was to be the first owner of the copyright.    30    35

It is on the effect of section 5(2) that the most important of the three questions we now have to decide depends. That section gives the owner of the copyright in    40

any work the right to assign it either wholly or partially for the whole or any part of the term of the copyright and to grant any interest in the right by licence if the assignment or licence is in writing signed by the owner of the right or his duly authorised agent. This right is subject to the following proviso:

5    "Provided that, where the author of a work is the first owner of the copyright therein, no assignment of the copyright, and no grant of any interest therein, made by him (otherwise than by will) after the passing of this Act, shall be operative to vest in the assignee or grantee any rights with respect to the copyright in the work beyond the expiration of twenty-five years from the
10   death of the author, and the reversionary interest in the copyright expectant on the termination of that period shall, on the death of the author, notwithstanding any agreement to the contrary, devolve on his legal personal representatives as part of his estate, and any agreement entered into by him as to the disposition of such reversionary interest shall be null and void, but
15   nothing in this proviso shall be construed as applying to the assignment of the copyright in a collective work or a licence to publish a work or part of a work as part of a collective work."

So an assignment or grant of a licence made by an author who is the first owner of the copyright for his life and 50 years thereafter ceases to be valid, unless made
20 by will, 25 years after his death unless the exception at the end of the proviso applies. This exception to the proviso only applies if the assignment is "of the copyright in a collective work" or the licence is "to publish a work or part of a work as part of a collective work".

"Collective work" is defined in section 35(1) as meaning:

25   "(a) an encyclopaedia, dictionary, year book, or similar work; (b) a newspaper, review, magazine, or similar periodical; and (c) any work written in distinct parts by different authors, or in which works or parts of works of different authors are incorporated."

Unlike in the United States, there is in this country no copyright in a song as
30 such. Under the 1911 Act, unless a proviso to section 5(1) applies, the author of the words of a song will be the first owner of the copyright in the words and the author of the music of the copyright in the music. If two persons collaborate in the production of a song and they each assign their copyrights to a publisher for their lifetimes and 50 years thereafter, and one of the authors dies, the publisher will,
35 unless the exception applies, not be entitled to publish the song, though, if it is the author of the words who dies, he will continue to be able to publish the music and, if it is the author of the music who dies, he will still be entitled to publish the words but he will cease to be able to earn profits from the song and the surviving author will cease to obtain royalties from the song.

40   Though one might regard a song so produced as the product of joint authorship, it is not treated by the 1911 Act as such. That Act only treats a work produced by the collaboration of two or more as the produce of joint authorship when the contribution of one author is not distinct from that of the other author or authors. Where their contributions are not distinct, section 16(1) provides that copyright
45 in the work they have produced will subsist "during the life of the author who first dies and for a term of fifty years" thereafter or during the life of the author who dies last, whichever period is the longer.

340

**Viscount Dilhorne**       Chappell & Co. Ltd. and Others *v.*           [1981] R.P.C.
                            Redwood Music Ltd.
                    Redwood Music Ltd. *v.* Francis, Day & Hunter Ltd. and Another

An American lady, a Miss Stern, learnt of the curious limitation imposed by section 5(2) of the 1911 Act and not repeated in the 1956 Act on the power of authors to dispose of their copyright. Having learnt of it, she believed that reliance on the proviso might lead to an increase in the royalties and assist widows and children of dead authors to obtain a fairer share of the profits made on the songs. 5 She formed a corporation called the Miriam Rose Stern Agency. When these actions were fought, the agency represented 177 estates of dead authors and the number of songs involved was between thirty and forty thousand. It was proposed that the publishers pay to the estates which the agency represented 50 per cent of the royalties they had received during the past six years and that, broadly speaking, 10 they should keep 50 per cent of the earnings from the songs for the next ten years but no longer. The agency was to get a commission not exceeding 30 per cent of the increase in royalties which it secured. This proposal was not accepted by the publishers, and a company, Redwood Music Ltd., the respondent, was formed and assignments made to it of copyrights alleged to have reverted to legal personal 15 representatives of deceased authors so that it might start actions to test the validity of the contentions advanced by Miss Stern.

The first and main question to be decided is whether a song of which one person has written the words and another the music comes within the definition of "collective work" in section 35(1). Robert Goff J. held that it did and so did the 20 Court of Appeal (Stephenson, Bridge and Shaw LJJ.).

It is true that a collective work coming within the definition may have a copyright of its own. This is recognised by the definition of "literary work" as including "compilations". There may be copyright in a collective work as such and also copyright in the works or parts of works published as part of a collective work. The 25 exception to the proviso to section 5(2) recognises this. It does not, however, follow that, because some of the works coming within paragraphs (*a*) and (*b*) of the definition of a collective work may have a copyright of their own, that a work which does not have a copyright of its own is not within the definition even though covered by its words. So to construe the definition would be to depart from all 30 principles of statutory construction and would in my opinion be very wrong. In my view Robert Goff J. and the Court of Appeal were right to hold that a song of which one person was the author of the words and another of the music came within paragraph (*c*) of the definition. I can see no justification whatsoever for concluding that to be a collective work coming within the definition the work must have its 35 own copyright in addition to and apart from the copyrights in its constituent parts. If that had been intended by Parliament, it would have been stated in the definition. It would have been easy to do so. To qualify the definition in this way is judicial legislation not warranted by the view that it would have been better had Parliament so provided.                                                                          40

The words "collective work" appear only in sections 5(2) and 24(1)(*a*)(ii) of the Act. Where they appear one of the meanings given by the definition must be given to them. Section 24 is a transitional provision. Those who had the copyright in any work when the Act came into force became entitled to copyright under the Act and that copyright was to subsist for the term for which it would have subsisted 45 if the Act had been in force at the date when the work was made. This was subject to two provisos, the first of which dealt with the position where the author had assigned the copyright before the commencement of the Act. When an author had

done that, then at the date when but for the passing of the Act the copyright would have expired the copyright under the Act "in the absence of express agreement" passed to the author. The section went on to confer certain rights on the person who, immediately before the copyright passed to the author, was the owner of it. He could at his option demand an assignment for the remainder of the term of the copyright for such consideration as, failing agreement, was determined by arbitration, or he could reproduce or perform the work as before subject to the payment of such royalties to the author as failing agreement might be determined by arbitration, "or, where the work is incorporated in a collective work and the owner of the right or interest is the proprietor of that collective work, without any such payment".

The Act does not define what is meant by "the proprietor of that collective work" but I think that the meaning is clear. The option is only exercisable by the owner of the copyright immediately before the date when it expired and was replaced by the copyright under the 1911 Act which "in the absence of express agreement" passed to the author. It is only when that owner, the assignee of the copyright in the work incorporated in the collective work, owns the collective work that he can reproduce or perform the work incorporated without payment. It is primarily with the work incorporated that this provision is concerned and I cannot interpret these words as meaning that that work can only be reproduced or performed without payment if there is a separate copyright in the collective work. If collective work in this section has the meaning which the definition of those words states it has and cannot mean, if this provision is not to be robbed of its effect, only a work coming within the definition which has a separate copyright of its own, it is, to say the very least, most unlikely that in the only other section in which the words "collective work" appear they should have a different meaning.

The Court of Appeal, while in my view correctly concluding that a song written as to the words by one person and as to the music by another came within the definition, went on the hold that it was to the disposition of the copyright in the collective work itself that the exception to the proviso to section 5(2) applied and that the exception did not apply to the constituent parts of the collective work to which copyright attached.

I must with regret say that I am unable to agree with that conclusion. If one replaces the words "collective work" in the exception with the words of the definition which the Court of Appeal agreed covered such a song, the exception reads as follows: ". . . but nothing in this proviso shall be construed as applying to the assignment of the copyright in any work written in distinct parts by different authors, or in which works or parts of works of different authors are incorporated . . ."

What is the meaning to be given to "the copyright in any work written in distinct parts by different authors"? There will be copyright in each of the distinct parts. There may also be copyright in the collective work as such. In my opinion the meaning of the exception is clear. It excepts the assignment of whatever copyright may attach to the collective work. That to my mind is the natural and ordinary meaning of these words and I do not think that the Interpretation Act in any way assists in determining their meaning.

It is said, and rightly said, that if one person writes both the words and the music of a song the exception will not apply. In such a case, and I suspect that it is not a very frequent occurrence, the copyright will revert to the legal personal

342

**Viscount Dilhorne**     Chappell & Co. Ltd. and Others *v*.     [1981] R.P.C.
Redwood Music Ltd.
Redwood Music Ltd. *v*. Francis, Day & Hunter Ltd. and Another

representative of the deceased author 25 years after his death. Why then, it is asked, should the copyright in the words or in the music not revert to the legal personal representatives of the dead author when one has written the words and another the music? Why should not the deceased's legal personal representatives not be able to renegotiate the royalties? These are questions which might well have   5
been asked and if asked, answered during the passage through Parliament of the Bill which became the 1911 Act. It might also be asked why, if the assigned copyright reverted to the author of a distinct part when the copyright was in a part of a collective work, the assigned copyright in the collective work itself should not also do so. I do not propose to make any attempt to answer these questions. It may well   10
have been the fact that there were anomalies resulting from the proviso leading to unfairness of treatment that led to the proviso not being re-enacted in the 1956 Act. It may have been thought that invalidating an assignment to a publisher for the author's lifetime and for 50 years after his death when 25 years had passed since his death without any compensation being payable to the publisher for the loss of   15
his right to publish for 25 years was going far enough. It may also have been thought that the reversion of any of the copyrights of the works incorporated in a collective work would be productive of many difficulties and anomalies and that may have been the reason for the exception. However this may be, the existence of anomalies is no ground for giving a strained and unnatural meaning to the   20
language of the section.

The word "work" appears many times and in many places in the Act. If Parliament had intended it to mean only a work in which copyright subsisted, I am confident that that would have been stated. In my opinion it merely signifies the product of an author's activities. One instance where the word is used where it clearly does   25
not mean a work in which copyright subsists is to be found in the opening words of section 24(1): "Where any person is immediately before the commencement of this Act entitled to any such right in any work . . ." I can see no reason why that word should be held to mean a work in which copyright subsists when it is the first word in paragraph (*c*) of the definition.   30

Some importance was sought to be attached to the fact that in *Coleridge-Taylor v. Novello & Co. Ltd.* [1938] 2 All E.R. 318, [1938] Ch. 608; *rvsd.* [1938] 3 All E.R. 506, [1938] Ch. 850 the point was not taken that the work in that case was a collective work. The fact that a point has not been taken by counsel, however eminent, is not in my opinion a reliable guide to the construction of a statute for   35
it may not have been taken for reasons which are not apparent from the report of the case.

In my opinion, agreeing as I do with Robert Goff J. and the Court of Appeal that a song of which the words were written by one person and the music by another is a collective work within the definition of those words in paragraph (*c*), the   40
exception to the proviso applies to such songs and I would therefore allow the appeals on this question.

The second question for determination in this House has conveniently been called "the American renewal point". It arises in connection with a song called "Two Cigarettes in the Dark" of which one person was the author of the words   45
and another of the music. Under the law of the United States the original term of the copyright there was 28 years (it has now been extended to the author's lifetime

plus 50 years) but there was a right of renewal for a further 28 years. Generally speaking that right of renewal had to be exercised within the year before the expiration of the 28 years. If the right was not renewed, the work went into the public domain.

5    On 16 July 1934 the author of the words and the author of the music of this song assigned their copyrights to publishers in New York and transferred to them "the right to secure copyright therein throughout the entire world" and to hold the copyright. Under an agreement made in the United States on 1 July 1948, Mrs Pollack as administratrix of the estate of Lewis Pollack and her two sons sold to
10   the publishers the United States renewal copyright in the music of which Lewis Pollack was the author "together with all their and each of their right, title and interest, vested and contingent, therein and thereto". Clause 1 of the agreement which provided for this also provided that if the term of the copyright in the U.S.A. was extended the copyright was assigned for the extended term. Clause 2 provided
15   for the payment of royalties by the publishers "until the expiration of the term of said renewal copyright" and also "until the expiration of the term of the respective copyrights thereof in all countries outside of the United States and Canada" for the payment of "fifty per cent (50%) of all receipts from sales and uses (subject to the deduction of foreign income taxes, if any)". It was contended that the terms
20   of this agreement were wide enough to cover the assignment of the copyright in the music of the song which had, if the song was not a collective work, on the expiry of 25 years from Lewis Pollack's death reverted to his legal personal representatives.

If the majority of your Lordships agree that such a song is a collective work and comes within the exception to the proviso to section 5(2), that reversion did not
25   take place and this question does not arise. In case your Lordships are of the opinion that the copyright in the United Kingdom did revert to his legal personal representatives, I should express my opinion on it.

In my view, if the copyright reverted, it was not assigned by the agreement of 1 July 1948 to the publishers. Robert Goff J. held that the passage I have cited from
30   clause 2 of the agreement, constituted an "implied grant of all new or extended terms of foreign copyright" in the music. The Court of Appeal did not agree, holding that clause 2 did no more "than to stipulate the rate at which royalties were to be paid by the publishers in enjoyment of such interests in copyright outside the United States and Canada as were already vested in them. . . ." On this I agree
35   with the Court of Appeal.

The third and last point to be decided in this appeal is what has been called "the express agreement point". It turns on the meaning to be given to the words "in the absence of express agreement" in section 24(1) to which I have already referred.

Assignments of copyright in the words and in the music of songs were made
40   before the Act came into operation in terms which were wide enough to cover the substituted rights conferred by this section. Robert Goff J. held that "an express agreement" did not mean "an agreement which expressly refers to the new copyright as such" (see [1978] R.P.C. 429 at 443). It meant, he said, "an agreement which uses express terms wide enough to include the new copyright." The Court of
45   Appeal, however, held that the word " 'express' indicates that the substituted right must be identified as the subject of any agreement that it shall not pass" (see [1979] R.P.C. 385 at 395). They said: "To us the most natural meaning of an 'express agreement' in this context is an agreement which refers to the substituted right in terms . . . clearly identifying the right by naming it. . . ."

20—B

344

| Lord Salmon | Chappell & Co. Ltd. and Others v. Redwood Music Ltd. | [1981] R.P.C. |

**Redwood Music Ltd.** v. **Francis, Day & Hunter Ltd. and Another**

In my opinion on this the Court of Appeal came to the right conclusion. For the substituted right not to pass to the author, there must be an agreement which expressly states that that is not to happen and that can be made clear beyond all doubt. Wide general words will not, in my view, suffice.

As the appellants have in my opinion succeeded on the main and most important question to be decided and have failed on the other two questions, I would order that the respondents should pay three-quarters of the appellants' costs in this House and make no order as to the costs in the courts below where a number of other issues were decided.

**Lord Salmon.**—My Lords, I propose to confine my observations to what is by far the most important point in these appeals and has been aptly described as "the collective work point".

Section 3 of the Copyright Act 1911 provides that the term for which a copyright shall subsist, except as otherwise expressly provided by the Act, shall be the life of the author of the work and a period of 50 years after his death.

Section 5(1) of the Act provides that "the author of a work shall be the first owner of the copyright therein" with certain exceptions which I need not mention.

Section 5(2) of the Act empowers the owner of a copyright to assign it or to grant a licence in relation to it, subject to a proviso which reads as follows:

> "Provided that, where the author of a work is the first owner of the copyright therein, no assignment of the copyright, and no grant of any interest therein, made by him (otherwise than by will) after the passing of this Act, shall be operative to vest in the assignee or grantee any rights with respect to the copyright in the work beyond the expiration of twenty-five years from the death of the author, and the reversionary interest in the copyright expectant on the termination of that period shall, on the death of the author, notwithstanding any agreement to the contrary, devolve on his legal personal representatives as part of his estate, and any agreement entered into by him as to the disposition of such reversionary interest shall be null and void, but nothing in this proviso shall be construed as applying to the assignment of the copyright in a collective work or a licence to publish a work or part of a work as part of a collective work."

I agree with the Court of Appeal that the object of the proviso was to safeguard authors and their heirs from the consequences of any imprudent disposition which authors might make of the fruits of their talent and originality.

To this end, the proviso enacts that an assignment of a copyright by its first owner shall not be operative beyond 25 years after his death; and the copyright shall then devolve for its remaining 25 years on his legal personal representatives as part of his estate.

This case concerns a large number of songs which came into existence many years ago and none later than the Copyright Act 1956. In each instance, the words of

each of those songs were written by one person, and its music by another. The one person was the first owner of the copyright of the words and the other person was the first owner of the copyright of the music. These copyrights had been assigned by their respective first owners to song publishers such as the appellant companies. About 177 of the first owners of these copyrights relating to upwards of 30,000 songs have been dead for more than 25 years. A number of these copyrights were assigned by the legal personal representatives of the deceased writers and composers to the respondent company so that it could bring the present actions to test whether the copyrights had reverted under the proviso in section 5(2) to the estates of the deceased writers of the songs' words and to the estates of the deceased composers of the songs' music.

The appellant companies contend that the last clause of the proviso (referred to as "the exception") eliminates the safeguard with which the proviso would otherwise protect the estate of the writers of the words of the song and the estate of the composers of its music during the last 25 years of the respective copyrights' existence. I am afraid that I cannot agree with this contention.

It is common ground that there can never be a copyright of a song save in the exceptional case where its words and music are written by the same man, in which event he would own the copyright of the song and he and his estate would have full protection in relation to it under the proviso to section 5(2). In these circumstances it seems absurd to me that where the words of a song are written by one man and the music by another, and each accordingly has a separate copyright in relation respectively to the words and music yet neither the man nor his estate has any protection under the proviso. I do not consider that the language of the Act leads to any such result.

Much depends on the meaning of the words "collective work" in the exception at the end of the proviso to section 5(2) of the Act. "Collective work" is defined in section 35(1) of the Act as follows:

> " 'Collective work' means—(a) an encyclopaedia, dictionary, year book, or similar work; (b) a newspaper, review, magazine, or similar periodical; and (c) any work written in distinct parts by different authors, or in which works or parts of works of different authors are incorporated."

Paragraphs (*a*) and (*b*) describe collective work, the compilation of which is copyright in addition to the copyright of each of the parts which constitute or are incorporated in the collective work. In my opinion, the exception to the proviso in section 5(2) is confined to the assignment of the copyright of a collective work such as an encyclopaedia, a dictionary and the like. I would stress that these works constitute "work written in distinct parts by different authors, or in which works or parts of works of different authors are incorporated". Each such author, no doubt, has a separate copyright in the particular work he has written. The compiler of an encyclopaedia has, however, a separate copyright of the work which he has compiled by incorporating other work in it.

It was, I think, recognised that paragraphs (*a*) and (*b*) might fail to cover all the works which constitute collective works, and accordingly paragraph (*c*) was added to include, in principle, collective works which might turn out to have been overlooked, e.g. anthologies such as Palgrave's Golden Treasury and the Oxford Book of English Verse.

| Lord Edmund-Davies<br>Lord Russell<br>of Killowen | Chappell & Co. Ltd. and Others v.<br>Redwood Music Ltd.<br>Redwood Music Ltd. v.<br>Francis, Day & Hunter Ltd. and Another | [1981] R.P.C. |

In my opinion, an essential ingredient of "collective work" referred to in the exception to the proviso in section 5(2) was that it should have a copyright of its own, which is not surprising as copyright is what the Act is all about. The only assignment of any copyright which is excepted from the protection of the proviso is the assignment of a copyright of a collective work.

A song, as in the present case, has its words written by one man and its music by another; its words have a copyright, and so has its music. But these two copyrights are entirely separate from each other and cannot be merged. It follows that the song itself has no copyright and does not therefore fall within the exception to the proviso in section 5(2). Accordingly, the writers of the words of the song having the copyright of those words and the composers of the music of the songs having the copyright of that music, they and their estates are, in my opinion, entitled to the protection conferred by the proviso.

My Lords, for these reasons I would dismiss these appeals on the collective work point. I would also, in accordance with your Lordships' views, dismiss the appeals in respect of the other two points raised by the appeals.

**Lord Edmund-Davies.**—My Lords, of the three points raised by these appeals, I respectfully share the unanimous view of your Lordships that, in relation to the second and third points, which have been conveniently labelled (2) the American renewal point and (3) the express agreement point, the appeals should be dismissed.

But point (1), the collective work point, presents much greater difficulties than the others do, and my mind has veered a great deal regarding their proper solution. The burden has been increased by my inability to identify with anything like certainty what purpose the legislature sought to fulfil by excepting from the proviso to section 5(2) of the Copyright Act 1911 "the assignment of the copyright in a collective work or a licence to publish a work or part of a work as part of a collective work".

The purpose of the proviso itself seems clear. As Greene MR. said in *Coleridge-Taylor* v. *Novello & Co. Ltd.* [1938] 3 All E.R. 506 at 514, [1938] Ch. 850 at 866, it has ". . . the effect of restraining what I may call for convenience the improvidence of the author by placing a statutory prohibition on assignments by him extending beyond the first 25 years following his death". But the goal aimed at by the exception to that proviso is another and more difficult matter.

After much reflection I am still left in doubt. But I incline on the whole to the view expressed by my noble and learned friends Lord Russell and Lord Keith. No advantage would be gained were I to express in my own words the reasons they give for holding that, in respect of this point, like the other two, the appeals should be dismissed. It is sufficient to say that I respectfully concur in that view.

It follows that I would therefore dismiss the appeals in their entirety.

**Lord Russell of Killowen.**—My Lords, there are three quite separate points in these appeals which have been conveniently labelled (1) the collective work point, (2) the American renewal point and (3) the express agreement point. I will deal with them in that order.

[No. 20]  **House of Lords**  Lord Russell of Killowen

*The collective work point*

The Copyright Act 1911, "the Act", (*inter alia*) extended the term of copyright from the previous term of the life of the author plus seven years (or 42 years in all) to the life of the author and 50 years after his death. Section 5(1) of the Act
5  provided that, subject to the provisions of the Act, the author of a work should be the first owner of the copyright therein. The proviso to sub-section (1), dealing first with the case of certain artistic works commissioned for valuable consideration, provided that the commissioner and not the author (unless otherwise agreed) should be the first owner of the copyright, and next with the case of a work made in the
10 course of employment under a contract of service, that (unless otherwise agreed) the employer should be that first owner, though with the qualification that where the work was an article or other contribution to a newspaper, magazine or similar periodical, a right was reserved to the author (unless otherwise agreed) to restrain publication of his work otherwise than as part of a newspaper etc.

15  Section 5(2) conferred on the owner of copyright in any work the ability to assign that right, either wholly or partially, and either generally or subject to territorial limitation, and either for the whole term of the copyright or for any part of the term, and also the ability to grant any interest in the copyright by licence.

Then comes the crucial proviso to sub-section (2). Apart from the restriction at
20 the end (generally referred to as "the exception"), excluding in certain circumstances the operation and effect of the rest of that proviso, the proviso operates by restricting, in a case where the author of a work is the first owner of the copyright therein, the ability conferred on him by sub-section (2) to assign in whole or in part and to grant interests by licence. The proviso (a) enacts that no such assignment
25 or grant by licence can operate to vest in the assignee or grantee any right or interest in the copyright extending in time beyond the expiration of 25 years from the death of the author of the work, (b) enacts that the reversionary interest for the remaining 25 years of the copyright term shall on the author's death devolve on his legal personal representative as part of his estate and (c) enacts that any
30 agreement by the author as to the disposition of such reversionary interest shall be null and void. Thus it is made impossible for the author either to assign or license, or to contract to assign or license, in manner extending into the reversionary 25 year period, though his legal personal representatives (or a beneficiary after assent) can do so at any time after the author's death.

35  Then comes the restriction on the operation of the proviso, the exception: "but nothing in this proviso shall be construed as applying to the assignment of the copyright in a collective work or a licence to publish a work or part of a work as part of a collective work." The contention of the appellants is that in the case of the song "Barney Google" (as an example) the exception excludes the operation
40 of the proviso, on the ground that it was a collective work.

The words of the song were written by author A and the music to go with the words by composer B, though maybe the sequence was the other way round. In the one case there was an original literary work, the property of author A, carrying its own copyright as such; in the other case there was an original musical work, the
45 property of B, carrying its own copyright as such. It is important to note that these two copyrights were separate and distinct. To "marry" the two in the form of a song did not constitute a third copyright in the song as a "work". (That this is clear derives from the fact that otherwise it would not be possible to know which of the

| Lord Russell<br>of Killowen | Chappell & Co. Ltd. and Others *v.*<br>Redwood Music Ltd. | [1981] R.P.C. |

**Redwood Music Ltd.** *v.* **Francis, Day & Hunter Ltd. and Another**

two lives was involved in the measure of the term of such third copyright, and the concept of a "work of joint authorship" under section 16 of the Act, in which that section solves the problem of which life to select, is not applicable to a song such as the present, having regard to the definition of such a work in section 16(3).

It is clear that if A had had the musical talent to compose the music as well as the literary talent to write words suitable to go with the music no assignment, licence or agreement by him could have operated to deprive his estate of the copyright, either in the literary work or in the musical work extending beyond the first 25 years after his death. If A is author of a literary work, in the shape of the verse of "Barney Google", and B is the author of a musical work in the shape of the tune of "Barney Google", and the words and music are married into a song, it would be most surprising if the Act were to provide that each of them, A and B, were to be excluded from the protection that would have been afforded to their respective separate copyrights by the proviso had the marriage not taken place. Such an outcome of the exception is, in my opinion, not to be expected, and I would require the most precise clarity of language to be satisfied that such was the intention of the legislature. It is not to be overlooked that the music of a song such as "Barney Google" may frequently be played without any use of the words, as a dance tune. I ask myself why, just because it was originally fitted to the words (or vice versa), the composer should be deprived of the protection afforded to his estate by the proviso to section 5(2)? Again, the words of such a song may by some quirk of public taste fall out of favour and be replaced by some other versifier. Is the composer's original assignment within the exception to the proviso? Or is an assignment by the second versifier?

Section 35(1) of the Act contains definitions of words and phrases used in the Act "unless the context otherwise requires". Among them is to be found:

> " 'Collective work' means—(a) an encyclopaedia, dictionary, year book, or similar work; (b) a newspaper, review, magazine, or similar periodical; and (c) any work written in distinct parts by different authors, or in which works or parts of works of different authors are incorporated."

The phrase "collective work" occurs only twice in the Act: once in the exception and once in section 24(1) proviso (*a*)(ii), which envisages a case "where the work is incorporated in a collective work and the owner of the right or interest is the proprietor of that collective work".

My Lords, when the Act speaks of a "collective work", in my opinion it refers to a totality in which copyright exists in addition to and apart from any copyright which may exist in its constituent parts. This is, in my opinion, so in the word "work" in paragraph (*c*) of the definition of "collective work" where that word first occurs. It is in my opinion also so in the exception to the proviso to section 5(2). The collective work is something which by original collocation or arrangement has a copyright of its own and it is the assignment of *that* copyright that is excepted from the proviso; and as a natural corollary licences for the publication of works or parts of works as part of the collective work are also excepted, inasmuch as the exception would not serve its purpose if the assignee of the collective work copyright were faced after 25 years with reversionary claims to copyright in constituent parts.

There being, in the case of the song in question, no third and separate copyright in the combination of the words and music the song is not, in my opinion, a collective work.

5 I am, my Lords, to some extent fortified in my opinion by the fact that, if I am wrong, it was a point entirely missed in *Coleridge-Taylor* v. *Novello & Co. Ltd.* [1938] 2 All E.R. 318, [1938] Ch. 608; *rvsd.* [1938] 3 All E.R. 506, [1938] Ch. 850 by counsel for the publishers, Shelley K.C. and Macgilivray, both expert in the copyright field, as an alternative point which would also have got them home. The facts were such as would support all the arguments advanced for the appellants in
10 the instant appeal on the collective work point (see [1938] Ch. 608 at 611–612). The argument for the publishers against the applicability of the section 5(2) proviso (preserving the reversionary interest) was based entirely on the perhaps more complicated point of the impact of section 24 on the proviso, an argument which failed at first instance but succeeded in the Court of Appeal. None of the judges
15 noticed collective work as a possible point. Indeed, Greene MR., when quoting the proviso, brushed aside the exception as "a qualification which I need not read" (see [1938] 3 All E.R. 506 at 513, [1938] Ch. 850 at 864). Shelley K.C. was not in my experience accustomed to pass by, even as an alternative, a point which he considered arguable, and I can think of no conceivable tactical reason for his not
20 advancing it had he thought it an arguable point.

If I may summarise. The Act is concerned with the conferring of copyright in a "work" as such. That is what the Act is about. In my opinion the exception to the proviso to section 5(2) assumes that a collective work is in itself an original creation by its author, who is the first owner of the copyright which is conferred
25 on him by the Act in respect of that collective work, and is able to assign that copyright for its full term under section 5(2) apart from the proviso. The "exception" assumes that without the exception the proviso would have restricted effective disposal of the copyright in the collective work as such by its author for its full term, but by such exception permits such unrestricted effective disposal. Thus it is made
30 plain that a collective work is one which *as such* attracts its own copyright distinct from any components. The song is not such, and in my opinion is not a collective work. Accordingly, on this point, I would dismiss the appeals.

*The American renewal point*
The question here is whether the agreement in 1948, which dealt primarily with
35 the right to renew copyright in the U.S.A. for a further 28 years in the song "Two Cigarettes in the Dark", also by implication contained an assignment by the representatives of the estate of the composer of the reversionary U.K. copyright in the years 25 to 50 after the composer's death. (It seems probable on the documents that if the appellants were upheld on the collective work point this song
40 was a collective work, and if so the question of implied assignment of the copyright in the reversionary 25 years under the 1948 agreement would not arise.)

The recital to the 1948 agreement and the whole of clause 1 are exclusively directed to the U.S.A. right to renew the U.S.A. copyright in the song, which the representatives of the estate of the composer thereby conferred on the publisher.
45 Clause 2 provided for the consideration for that act. It provided for payment of royalties until the expiration of the "renewal copyright" on, *inter alia,* the song published and sold by and paid for to the publisher in the U.S.A. and Canada. Those royalties are set out. There follows the provision (in the same clause) which, it is contended for the appellants, constitutes by implication an assignment of U.K.
50 copyright in the song during the reversionary 25 years:

350

| | | |
|---|---|---|
| **Lord Russell of Killowen** | **Chappell & Co. Ltd. and Others** v. **Redwood Music Ltd.** | **[1981] R.P.C.** |

Redwood Music Ltd. v. Francis, Day & Hunter Ltd. and Another

"The Publisher also agrees to pay or cause to be paid commencing with the beginning of the first calendar quarter year after the date hereof and continuing until the expiration of the term of the respective copyrights thereof in all countries outside of the United States and Canada fifty per cent (50%) of all receipts from sales and uses (subject to the deduction of foreign income taxes, if any)."

The original assignment in 1934 to the publisher was expressed to cover world-wide copyright in the work, and no doubt in respect of U.K. copyright the parties were not aware of the ban imposed by the proviso to section 5(2) of the Act. I see no reason to suppose that the parties to the 1948 agreement had any more in mind the reversionary 25 years, which had not then been reached. There was certainly no express assignment in 1948 of the reversionary rights by those representing the composer's estate. Nor do I consider that the quoted clause by necessary implication involves such assignment. It is part of the consideration for the assignment of the renewal right, and in that context is improbable as a conferring by the estate of a right which had not previously been conferred on the publisher. The increase of royalty to 50 per cent can well be attributed to a desire by the publisher to obtain the American renewal rights. It was argued that unless the assignment of the reversionary interest were implied the publisher would be committed to payment of the U.K. royalties in the reversionary period without any right to publish. But this would not follow. If the copyright in the reversionary period remains with the composer's estate then during that period there would be no receipts from sales or uses by the publisher (or any sub-publisher) of the work in the U.K.: any such sales or uses would be infringements of the U.K. copyright.

In my opinion on this point also the appeals should be dismissed.

*The express agreement point*

This point arises on the true construction of section 24 of the Act, which deals with works existing at the date of its commencement in connection with the extension of the period of copyright effected by the Act to the life of the author and 50 years after his death. Subsection (1) conferred the benefit of such extension on the person entitled at such commencement to old copyright. But proviso (*a*) to the subsection deals with the case where the author of a work in which old copyright subsisted at such commencement had previously assigned the right or granted any interest therein for its whole term; in such case at the date when the old copyright would have expired the new copyright should "in the absence of express agreement" pass to the author (or his legal personal representatives if deceased) and any interest therein created before the commencement of the Act and then subsisting should determine. There was then provision (including arbitration) for preserving some rights in respect of the extended period to the assignee on terms.

The whole argument on this point depended on the effect to be given to the quoted words and in particular, to the use of the word "express". (As previously noticed, the decision in the *Coleridge-Taylor* case depended on the interaction of section 24 and the proviso to section 5(2)).

I observe a contrast between the quoted phrase and the phrases used in section 5 of the Act: "in the absence of any agreement to the contrary" (twice) and "notwithstanding any agreement to the contrary".

[No. 20]    **House of Lords**    Lord Keith of Kinkel

The pre-commencement works to which this point is relevant were all the subject of assignments in which the language used was wide enough to embrace in the generality of their terms the copyright therein and by that generality (though not otherwise) were capable of embracing the extended period provided by the Act. But in my opinion, on the proper construction of section 24, it is necessary, in order to exclude the author from the benefit of the extension, that there should have been in express terms an agreement so to exclude. Mere generality of expression does not suffice, and only if that proposition is correct is effect given to the word "express".

On this third point also I would dismiss the appeals.

**Lord Keith of Kinkel.**—My Lords, the three points which have been argued in these appeals are conveniently described as the collective work point, the American renewal point and the express agreement point. On the second and third of these I am in complete agreement with the reasoning and conclusions contained in the speeches of my noble and learned friends Viscount Dilhorne and Lord Russell and cannot usefully add anything.

The collective work point raises problems of quite exceptional difficulty, as evidenced by the division of opinion between the courts below and among your Lordships. The question to be resolved is the proper construction of the concluding words of the proviso to section 5(2) of the Copyright Act 1911. The proviso restricts the right of the author of a work who is the first owner of the copyright therein to assign the copyright or grant any interest in it. No such assignment of grant (unless made by will) is to be effective to confer any rights beyond the expiration of 25 years from the death of the author. The reversionary interest in the copyright during the remaining 25 years of its period is, on the death of the author, to devolve on his legal personal representatives as part of his estate, and any agreement by him as to the disposition of such reversionary interest is to be null and void. The concluding words of the proviso introduce an exception in these terms:

> ". . . nothing in this proviso shall be construed as applying to the assignment of the copyright in a collective work or a licence to publish a work or part of a work as part of a collective work."

Section 35(1) of the Act defines the term "collective work" as meaning, unless the context otherwise requires:

> "(a) an encyclopaedia, dictionary, year book, or similar work; (b) a newspaper, review, magazine, or similar periodical; and (c) any work written in distinct parts by different authors, or in which works or parts of works of different authors are incorporated. . . ."

The particular subject-matter in respect of which the problem of construction has to be resolved in this appeal consists in a song of which the music was written by one author and the words by another. It is common ground that two separate and distinct copyrights subsisted in relation to the song, one in the music and the other in the words. English law does not admit the existence of a single copyright in a song as an entity. The author of the music of the song and the author of the words each assigned to publishers *inter vivos* his own individual copyright. The question is whether these assignments were effective to vest in the publishers any

| Lord Keith of Kinkel | Chappell & Co. Ltd. and Others v. Redwood Music Ltd. Redwood Music Ltd. v. Francis, Day & Hunter Ltd. and Another | [1981] R.P.C. |
|---|---|---|

rights with respect to copyright after the expiry of 25 years from the death of the assignor or whether such rights belong to the assignor's legal personal representatives.

The two aspects of the problem which have been principally agitated are whether a song is a "collective work" within the meaning of that expression in the exception to the proviso to section 5(2) and, if so, whether the respective copyrights in the music and in the words of a song are each "the copyright in a collective work". I think it helpful to approach the matter in the first instance without reference to the question whether a song or other hybrid work (viz. one which partakes of more than one of the characteristics "literary dramatic musical and artistic" mentioned in section 1 of the Act) can be a "collective work" within the meaning of the definition in section 35(1). I would draw attention to the example of a magazine, which is specifically mentioned in paragraph (*b*) of the definition. If an author writes a short story and assigns the copyright, which at that stage is quite independent, to a publisher and the publisher incorporates the story in a magazine, which he is quite entitled to do without any consent by the author, does the copyright in the story then become the copyright in a collective work, so that the application of the proviso is excluded? That would seem an unreasonable result, particularly as a different result would appear to follow if only a general licence and not an assignment had been granted. The terms of the exception so far as relating to a licence to publish a work indicate that the application of the proviso is excluded only if the licence is to publish the work specifically as part of a collective work. I do not think it will do to say that a general licence to publish work must necessarily include a licence to publish it as part of a collective work. If that line was followed it would mean that any licence to publish was excluded from the proviso, on the ground that it allowed publication as part of collective work, notwithstanding that there had in fact been no such publication. At the same time it is hard to read any corresponding intention out of the only other provision of the Act which contains any reference to a collective work. That is proviso (*a*)(ii) to section 24(1). That is the subsection which substitutes new copyright (life of the author plus 50 years) for old copyright (life of the author plus seven years or 42 years, whichever shall be the longer). Proviso (*a*) provides that, as a general rule, where the author of work has before the commencement of the Act assigned the old copyright or granted any interest therein, then at the date when but for the Act the right would have expired the new copyright is to pass to the author. There are further provisions giving the grantee of the right an entitlement to continue publishing subject to appropriate financial arrangements, but under paragraph (ii) no payment need be made to the author "where the work is incorporated in a collective work and the owner of the right or interest is the proprietor of the collective work". There is nothing here to impose any limitation by reference to whether or not the author granted the assignment or licence for the purpose of the work being incorporated into a collective work. It appears to be enough that the assignee or licensee has at his own hand incorporated the work into a collective work of which he is proprietor. However, the assignment or licence at least ceases to be exclusive.

There can be no doubt that there can subsist in a collective work a copyright which relates purely to its character of collectiveness, separate and distinct from any copyright in the individual parts of the work, because section 35(1) of the Act defines "literary work" as including, *inter alia*, "compilations". It is for consideration whether or not this must be true of every collective work. Under paragraph (*c*) of the definition "any work written in distinct parts by different authors" is a collective

work. On the face of it it might appear that in such a work there can subsist only the separate copyrights of the different authors, each in his own contribution. But I see no reason why, in a situation where, as must usually if not always be the case, the collocation of the different contributions involves original literary effort producing an artistic effect transcending that of any individual contribution taken by itself, there should not be an additional and separate collective work copyright. If an individual who brings together in a compilation the works of different authors can acquire a separate collective work copyright I do not see why the same result should not follow where two or more authors similarly bring together works of their own. Section 16 of the Act contains special provisions applicable to "works of joint authorship". That term is defined by sub-section (3) as meaning "a work produced by the collaboration of two or more authors in which the contribution of one author is not distinct from the contribution of the other author or authors". Notwithstanding that in a particular collective work produced by a number of different authors their respective contributions may be distinct, I would not exclude that there may be a separate copyright related to the collective aspect in respect of which a work of joint authorship exists. The contribution made by one author to the collocation process would not be distinguishable from those made by the others.

I do not consider that much assistance is to be derived from attempts to discern the legislative policy behind the proviso to section 5(2) or the exception to it. No purpose has been suggested for the proviso other than that of safeguarding the estates of authors from the effects of their improvidence. As regards the exception, one can only surmise that its object was to mitigate some inconvenience or unfairness which Parliament thought might otherwise result in relation to some aspects of collective works. I am unable to find anywhere in the Act any clear indication as to the mischief which it was thereby sought to avert, and repeated consideration has failed to eradicate the impression that the precise scope and intendment of the exception was never thoroughly thought out.

As I have already mentioned, it is clear that the 1911 Act recognises the existence of a copyright in a collective work which is separate and distinct from the copyrights in the individual parts. I consider that when section 24(1)(*a*)(ii) refers to "the proprietor of a collective work" it is referring to the person who owns the collective work copyright as such. I have come to the conclusion that in the exception to the proviso to section 5(2) the words "the copyright in a collective work" are intended to mean the copyright in a collective work as such. Like my noble and learned friend Lord Russell, I would require clear words to persuade me that Parliament intended to exclude from the protection of the proviso assignments of individual copyrights in the separate parts of a collective work, and no such words are present. I am of opinion that it is of no avail to invoke the Interpretation Act to the effect of converting the singular into the plural. To read in "assignments of copyrights in collective works" would not assist in a solution of the problem of construction. To produce the solution contended for by the appellants would necessitate reading in the words "or any part of a collective work" after the word "work" where it first occurs in the exception to the proviso. The words are not there and I can see no good ground for implying them. It may well have been contemplated that in the usual case the proprietor of a collective work would have no more than a licence to publish therein its constituent parts. In that situation adequate protection against inconvenience or unfairness would be available to the proprietor of the collective work. It is worth considering the case where an author has granted a licence to the proprietor of a collective work with a view to having his own work incorporated therein, and has assigned the copyright to a third party subject to that licence. If

354

**Lord Keith**           Chappell & Co. Ltd. and Others *v.*         [1981] R.P.C.
**of Kinkel**                      Redwood Music Ltd.
             Redwood Music Ltd. *v.* Francis, Day & Hunter Ltd. and Another

the appellants are right, that assignment would be deprived of the protection of the proviso on no rational basis.

On the view which I have expressed, it is unnecessary to reach a final conclusion whether a hybrid work such as a song can be a "collective work" within the meaning of the definition. I suspect that the framers of the Act did not have the position of hybrid works specifically in contemplation, and that the word "work" was used in paragraph (*c*) with no other idea than that it meant a work having one or other of the characteristics mentioned in section 1(1), i.e. literary, dramatic, musical or artistic, and not one partaking of more than one such characteristic. It may have been an assumption of that nature which led to no point on the exception being taken in *Coleridge-Taylor* v. *Novello & Co. Ltd.* [1938] 2 All E.R. 318, [1938] Ch. 608; *rvsd.* [1938] 3 All E.R. 506 [1938] Ch. 850. However that may be, I am of opinion that the language of paragraph (*c*) in its ordinary and natural meaning is capable of covering a hybrid work. It remains true, in my view, that a collective hybrid work which does not engender a collective work copyright distinct from the copyrights in the individual parts does not fall under the exception to the proviso to section 5(2). It is possible to envisage a hybrid collective work which does engender such a copyright, for example a work consisting of literary text and illustrations closely intermingled. I doubt whether this could be so in the case of a simple song, but the position may be different in the case of a complicated work comprising musical and literary components such as an opera. That is a matter on which I prefer to reserve my opinion.

My Lords, for these reasons I would dismiss the appeals on all points argued.

*Appeals dismissed.*