UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK WARREN PEARY,<br><br>  Plaintiff,<br><br>  v.<br><br>DC COMICS, INC.; DC COMICS; DC ENTERTAINMENT, INC.; WARNER BROS. DISCOVERY, INC.; and DOES 1-10,<br><br>  Defendants. | Case No. 1:25-cv-00910-JMF<br><br>**DECLARATION OF DANIEL GLOVER IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |

I, Daniel Glover, declare and state as follows:

1. I am a partner at the law firm of McCarthy Tétrault LLP and am located in Toronto, Ontario, Canada. I was called to the bar of the province of Ontario in 2006 and have worked intensively on copyright matters, including with respect to transfers of copyright interests, for my entire career. I have represented authors, owners, licensees, and other users of copyrights in connection with advisory work and litigation before the Supreme Court of Canada, provincial and federal appellate courts, trial courts, and the Copyright Board of Canada. Throughout my legal career, my work on copyright matters has required me to have an extensive understanding of the Canadian Copyright Act as well as Canadian contract law relating to transfers of copyright interest. I have worked both for and opposite motion picture studios on intellectual property matters. I am Chambers-ranked in intellectual property litigation and media and entertainment law. I have been shortlisted by Managing IP as Canada's copyright practitioner of the year for 2023, 2024 and 2025, and McCarthy Tétrault LLP was named Canadian copyright firm of the year in 2018 and 2019. A current copy of my firm biography is attached to this Declaration as **Exhibit A**.

2. The content of this Declaration is based on my personal knowledge from my experience as a legal practitioner in Canada throughout my career. The matters set forth here are

either within my personal knowledge or are based on my experience and education, and if called as a witness, I could and would competently testify to them.

3.     In preparing this Declaration, I have reviewed Plaintiff's Complaint (dated January 31, 2025); Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction (dated February 28, 2025); the Central District of California's decision in *DC Comics v. Pacific Pictures Corp.*, 2012 WL 4936588 (C.D. Cal. 2012) ("*Superman I*"); the Ninth Circuit Court of Appeals' decision in *DC Comics v. Pacific Pictures Corp.*, 545 F. App'x 678 (9th Cir. 2013) ("*Superman II*"); the Last Will and Testament of Joseph Shuster dated June 28, 1988; and the agreement between DC Comics Inc., Frank Shuster, and Jean Shuster Peavy dated as of August 1, 1992.

4.     I have been asked to provide my expert opinion on the issues of Canadian law that are implicated in Plaintiff's preliminary injunction motion. Specifically, I have been asked, as a matter of Canadian law:

- Is the 1938 Grant[1] by Joseph Shuster to DC Comics subject to reversion under the Canadian Copyright Act?

- Assuming the 1938 Grant was subject to reversion, did the reversionary interest in the Superman copyright (if any) devolve to Jean Peavy—who was named sole heir and executor in Shuster's will—when Shuster died in 1992?

- Assuming any reversionary interest did devolve, did Jean Peavy effectively assign that reversionary interest in the copyright (if any) to DC Comics in the 1992 Agreement?

## SUMMARY OF OPINIONS

5.     For the convenience of the Court, I have summarized my opinions, which are detailed more fully below, on these questions as follows:

6.     **Question 1: No, the 1938 Grant by Shuster is not subject to reversion under the Canadian Copyright Act.** Under the reversionary clause contained within Section 14 of the Canadian Copyright Act, RSC 1985, c C-42, as amended (the "**Act**"), only a grant or assignment

---

[1] For purposes of this Declaration, I adopt the terms "1938 Grant" and "1992 Agreement" as they are defined in Plaintiff's Complaint.

by the author of a work, as the first owner of its copyright, made after June 4, 1921, is subject to reversion. Reversion cannot take place unless all of these conditions are met.

7. Plaintiff contends that the copyrights conveyed in the 1938 Grant by Shuster to DC Comics reverted to Shuster's legal representative in 2021 (25 years after Jerome Siegel's death). However, my understanding is that U.S. courts, in the *Superman I* and *Superman II* decisions, held that under the governing New York state contract law, the 1992 Agreement revoked the 1938 Grant and regranted "all" copyright interests to DC Comics, such that the 1938 Grant no longer had any legal effect. Under well-established principles of comity, issue estoppel, collateral attack and abuse of process applicable in Canada, and especially given the deference that a Canadian court would give to the expertise of U.S. courts in applying New York state contract law, it is my view that a Canadian court would treat the *Superman I* and *Superman II* decisions as determinative findings as to the revocation and re-granting of all copyright interests to DC Comics following the death of Shuster. Since the 1938 Grant was revoked in 1992, there was no assignment or grant by Shuster that could be voided by the Canadian reversionary clause in 2021. As a result, the 1992 Agreement was the only agreement dealing with Shuster's rights in the Superman property. The 1992 Agreement, however, was not subject to reversion under the Act because it was not a grant or assignment by *the author* of a work.

8. **Question 2: Yes, when Shuster died in 1992, any reversionary interest devolved to Jean Peavy.** Under Section 14 of the Act, the reversionary interest devolves immediately upon the author's death to his "legal representatives." The Act expressly defines "legal representatives" to include both heirs and executors. Since Joseph Shuster named Jean Peavy as his sole heir and executor in his will, under Canadian law, any reversionary interest in the Superman copyrights would have devolved to her immediately upon Shuster's death on July 30, 1992 and thereafter become assignable by her—irrespective of whether she had been formally appointed as an executor by a probate court.

9. **Question 3: Yes, Jean Peavy assigned the reversionary interest (if any) to DC Comics in the 1992 Agreement.** The Canadian reversion provision permits an author's legal

representative to assign their reversionary interest in a copyright at any time after the author's death—including before expiration of the 25-year vesting period. The *Superman I* and *Superman II* decisions held that the 1992 Agreement granted "all" rights that Peavy "may have under any other agreement or otherwise, whether now or hereafter existing regarding any copyrights…in any and all work created in whole or in part by [Shuster]." Based on the *Superman I* and *Superman II* decisions and the plain language of the 1992 Agreement, this grant of "any and all" rights included any reversionary interest in the Superman copyrights that may have existed under the Canadian reversionary clause.

10. These opinions should not be construed as an exhaustive recitation of the barriers Plaintiff's claims face under Canadian law. For purposes of addressing this preliminary injunction motion, I have focused on the three issues above as instructed.

## COPYRIGHT REVERSION UNDER CANADIAN LAW

11. Canada historically was a British territory—and remains part of the British Commonwealth—and its legal system including its copyright law regime draws heavily on that of the United Kingdom ("**UK**").

12. Copyright reversion rights were first established in the UK with the Copyright Act of 1911, and Canada implemented a similar reversion clause when it enacted its Copyright Act of 1921, which entered into force in 1924. Many aspects of the 1911 UK Copyright Act remain present in Canadian copyright law as well as the copyright laws of other Commonwealth countries. Canadian courts often resort to UK and Commonwealth jurisprudence to shed light on the intent and operation of sections of the Act that trace from the 1911 UK Copyright Act.[2] Since Canada's copyright reversion clause is similar in many respects to the now-repealed reversion clause under UK law, Canadian courts would pay respectful attention to UK jurisprudence except when material differences dictate a different interpretation.

---

[2] I understand that Plaintiff's counsel has provided the Court with copies of the relevant Acts, and therefore I do not separately attach them here.

13.     Although the reversion clause has been repealed in the UK and throughout the Commonwealth, Canada retains the reversion clause in Section 14 of the Act.  Subsection 14(1) states, in relevant part:

> Where the author of a work is the first owner of the copyright therein, no assignment of the copyright and no grant of any interest therein, made by him, otherwise than by will, after June 4, 1921, is operative to vest in the assignee or grantee any rights with respect to the copyright in the work beyond the expiration of twenty-five years from the death of the author, and the reversionary interest in the copyright expectant on the termination of that period shall, on the death of the author, notwithstanding any agreement to the contrary, devolve on his legal representatives as part of the estate of the author, and any agreement entered into by the author as to the disposition of such reversionary interest is void.

14.     As the language of this provision makes clear, the Canadian reversionary interest applies only when the author of a work, who was the first owner of its copyright, has made an assignment of the copyright or a grant of any interest therein after June 4, 1921.  This reversion of copyright rights takes effect twenty-five years after the death of the author, and its effect is automatic.

15.     While the reversionary provisions in the Act are closely modelled on the 1911 UK Act, they are not identical to that Act.  In Canada, from 1921 onward, under Section 2 of the Act, Parliament has expressly defined those persons who qualify as a "legal representative" of an author and thereby are able to exercise "the reversionary interest in the copyright expectant on the termination of that [25-year] period".  This provision has always included heirs and executors.  Immediately following the death of the author, the reversionary interest in the copyright expectant 25 years after the author's death becomes an asset of the author's estate and is controlled by his personal representatives.  The term "copyright expectant" confirms that a legal representative may deal in the reversionary interest during the period of time after the death of the author and before the copyright reverts to the estate.

16.     The last amendment to this provision took place in 1931, when Parliament amended the definition of "legal representatives" so that it "includes heirs, executors, administrators, successors and assigns, or agents or attorneys who are thereunto duly authorized

in writing." Parliament therefore reconfirmed that "heirs" and "executors" qualify as "legal representatives" who can assign the reversionary interest following the death of the author.

17. The leading Canadian authority on the legislative history of the Act, Robic's *Canadian Copyright Act – Annotated* ("**Robic**") (**Exhibit B**), has examined the history and intent of the "legal representatives" definition and explains that:

> This section is aimed at two general categories of persons, namely those who act in their own rights and those who act in the rights of others.
>
> The Copyright Act mentions heirs and successors in the first category, while in the second category, reference is made to administrators, assigns, agents and attorneys.

For the first category, those who act in their own rights, Robic explains that:

> This general category could itself be subdivided in two, namely those who inherit the copyright ('heirs') and those who acquired an interest in same, either contractually (see, for instance, subsections 13(2), 13(3) and 13(4)) or by law (see sections 2 and 14).
>
> The *Copyright Act* makes no difference between an heir at law, an heir beneficiary, an heir conventional or a legal heir. As defined in the 1986 second edition of the Collin[]s Dictionary of the English Language, an heir is 'the person legally succeeding to all property of the deceased person, irrespective of whether such person died testate or intestate and upon whom devolves as well as the rights, the duties and the liabilities attached to the estate'.

For the second category, those who act in the rights of others, Robic construes an executor as being a "person appointed by a testator to carry out the wishes expressed in his will" or "a person appointed by [a] testator to carry out the directions and requests in his will, and to dispose of the property according to his testamentary provisions after his decease".

18. Under Canadian estates law, the identity of the executor is determined by the will, not a probate process. As the leading Canadian wills and estates expert Albert Oosterhoff states:

> The question is often asked: Is it necessary to obtain probate … in every case? The answer is, no. This is because executors derive their authority from the will rather than from the probate process. As a result, executors have the lawful authority to deal with estate property even if they do not obtain probate. Likewise, courts have jurisdiction over wills (and the executors appointed thereunder) regardless of whether they are submitted for probate. … The primary function served by probate … is therefore not to vest named executors with authority to deal with estate property but to authenticate to third parties that the persons presenting themselves as the executors are indeed the persons (more specifically, the only persons) with that authority.

Oosterhoff et al. *Oosterhoff on Wills,* 9th ed (Toronto: Thomson Reuters Canada Limited, 2021) at page 33 (**Exhibit C**), recently applied in *Kulyk v. Kulyk,* 2024 ONSC 4213 at 10 (**Exhibit D**).

19. Notably, this passage confirms that, in Canada, an author's will grants an executor the legal authority to deal with estate property even if the executor does not obtain probate.

20. Although the reversion is not effective until 25 years from the author's death, an author's legal representative may assign his or her reversionary interest at any time after the death of the author. There is no requirement that the representative wait until the reversion actually takes effect. This principle was confirmed in the very first annotated version of the 1911 UK Copyright Act, MacGillivray, *The Copyright Act, 1911, Annotated* (1912) at 69 (**Exhibit E**), which observed that "immediately upon the author's death, his executors or legatees may sell such reversionary interest."

21. The same principle is reconfirmed by three leading Canadian copyright authorities in the treatise International Copyright Law and Practice CAN § 4 (2025) at n.96 (**Exhibit F**).

22. In addition, as the Canadian reversion provision is generally interpreted in tandem with its UK counterpart (on which it is closely based), a Canadian court would likely find persuasive that this principle is well-established under UK law. That a deceased author's representative can immediately assign his or her reversionary interest upon the death of the author under UK law is also laid out in the treatise *Copinger and Skone James on Copyright* (19th ed.) at § 4-140(e)(ii) (**Exhibit G**), which confirms that the reversionary clause in no way affects:

> [a]n assignment of the reversionary interest after the death of the author by the author's personal representatives or any person becoming entitled to it. Any such assignment by the personal representatives is therefore valid, even made while the 1911 Act was in force. There is therefore no requirement that the personal representatives must wait until the reversion falls in. The purpose of the Act was only to prevent a disposal by the author.

23. This principle is drawn from the House of Lords' decision in *Chappell & Co. Ltd. v. Redwood Music Ltd*. [1981] R.P.C. 337 (**Exhibit H**), in which Lord Russell of Killowen concluded that the 1911 UK Copyright Act "made [it] impossible for the author either to assign

or license, or to contract to assign or license, in manner extending into the reversionary 25 year period, *though his legal personal representatives (or a beneficiary after assent) can do so at any time after the author's death*," *id*. at 347 (emphasis added). The Federal Court of Canada quoted this specific passage approvingly in *Winkler v. Roy,* 2002 FCT 950 at 55-56 (**Exhibit I**) as being "highly relevant to the interpretation of subsection 14(1) of the *Act"*.

24. There is no specific language that a Canadian legal representative must use to assign his or her reversionary interest. Ordinary principles of contract law would govern the meaning of such a grant or assignment, so long as it is in writing as required by Subsection 13(4) of the Act: see, for example, *Glasz c. Choko,* 2018 QCCS 5020 at 60 (**Exhibit J**); *FWS Joint Sports Claimants v. Canada (Copyright Board),* [1992] 1 FC 487 at 492-93 (**Exhibit K**); and *Chancellor Management Inc. v. Oasis Homes Ltd.,* 2002 ABQB 500 at 47-50 (**Exhibit L**). The broad "any and all" language used in the 1992 Agreement reflects the sort of all-encompassing grant of any and all copyrights, domestic and foreign, that one sees regularly enforced by Canadian courts.

25. Also relevant to this analysis is the principle of comity, to which Canadian courts adhere. The principle of comity means that Canadian courts will recognize and enforce the decisions of other courts, including the courts of other jurisdictions abroad: *Beals v. Saldanha,* 2003 SCC 72 at 29 (**Exhibit M**). In addition, Canadian courts apply principles of estoppel (including through the doctrines of issue estoppel, collateral attack and abuse of process) to prevent the relitigation of issues that have already been finally decided by a foreign tribunal: *Danyluk v. Ainsworth Technologies Inc.,* 2001 SCC 44 at 18 (**Exhibit N**); *British Columbia (Workers' Compensation Board) v. Figliola,* 2011 SCC 52 at 27-28 (**Exhibit O**); *Toronto (City) v. C.U.P.E., Local 79,* 2003 SCC 63 at 37 (**Exhibit P**).

## FURTHER ANALYSIS OF PLAINTIFF'S CLAIM OF REVERSION

26. Plaintiff contends that the Superman copyrights conveyed in the 1938 Grant by Shuster to DC Comics reverted to him in 2021 (25 years after Jerome Siegel's death). In assessing this claim under Canadian law, the threshold question is whether Plaintiff has

established the existence of a qualifying grant or assignment by Shuster as first owner of the copyright.

27.     It is my opinion that a Canadian court would apply the principles of comity, issue estoppel, collateral attack, and/or abuse of process to credit the Ninth Circuit's decision in *Superman II* "that the 1992 Agreement, as a matter of New York law, superseded the 1938 assignment of copyrights to DC, and therefore operated to revoke that assignment and re-grant the Superman copyrights to DC." 545 F. App'x at 680.  Canadian courts are not experts in New York or American contract law, and given the length of time spent briefing and contesting the 1992 Agreement in *Superman I* and *Superman II*, Canadian courts would be very unlikely to address, let alone question, the determinations of the American courts.  I cannot envision a situation where a Canadian court would risk offending principles of comity to reweigh these final decisions.

28.     Additionally, a Canadian court would likely apply the doctrines of issue estoppel, collateral attack and/or abuse of process to prevent re-litigation of the contractual issues addressed in *Superman I* and *Superman II*.  As the Supreme Court of Canada held in *Danyluk v. Ainsworth Technologies Inc.,* 2001 SCC 44 at 18 (**Exhibit N**):

> The law rightly seeks a finality to litigation.  To advance that objective, it requires litigants to put their best foot forward to establish the truth of their allegations when first called upon to do so.  A litigant, to use the vernacular, is only entitled to one bite at the cherry. The appellant chose the ESA as her forum.  She lost.  An issue, once decided, should not generally be re-litigated to the benefit of the losing party and the harassment of the winner.  A person should only be vexed once in the same cause.  Duplicative litigation, potential inconsistent results, undue costs, and inconclusive proceedings are to be avoided.

29.     For all of these reasons, my view is that a Canadian court would give full effect to the finding in *Superman I* and *Superman II* that the 1938 Grant was extinguished in 1992, and thus that there was no eligible grant or assignment by the author (Shuster) that would qualify for reversion under Canadian law in the first instance.[3]  This finding would remove the Plaintiff's claim to ownership of the relevant copyrights and therefore be dispositive of Plaintiff's claims.

---

[3] I also note that the 1992 Agreement itself would not be subject to reversion, as it was not made by the author.

30. Even if a Canadian court were to find a viable reversionary interest, its next step would be to determine to whom that reversionary interest devolved, and whether that person assigned rights in the copyright after the death of the author.

31. Immediately after the death of the author, the Canadian reversionary interest devolves on the deceased author's legal representative, which is defined to include heirs and executors. Jean Peavy was named as both in Shuster's will. The operative question, then, is whether the reversionary interest in the Superman copyrights automatically passed to Jean Peavy upon Shuster's death, or whether Shuster's estate first needed to be probated, which Plaintiff argues had not occurred by the time Peavy entered into the 1992 Agreement.

32. Under Canadian law, any reversionary interest in the Superman copyrights that may have existed would have descended automatically to Jean Peavy upon Shuster's death. It is undisputed that Peavy was named as Shuster's sole heir in his will, and Canadian law recognizes an heir as a legal representative. Shuster's will—not the probate process—is what conferred on Peavy her rights as an heir. Thus, by operation of the Act, any reversionary interest would have passed to Peavy as Shuster's heir immediately upon Shuster's death, with no requirement that the estate first be probated. Plaintiff's legal papers do not appear to address Canada's express definition of a "legal representative" or question Peavy's status as Shuster's sole heir upon Shuster's death, but rather only her status as executor. Sections 2 and 14 of the Act enabled Peavy to assign the reversionary interest in either capacity following the death of Shuster.

33. As to Peavy's status as executor, I understand that issue was already litigated in DC Comics' favor in *Superman I* and *Superman II*, which concluded that Peavy had authority to enter into the 1992 Agreement and that the 1992 Agreement is binding on Peary as substitute executor of Shuster's estate. 2012 WL 4936588, at *8-9; 545 F. App'x at 681 n.3. As I have noted above, the Supreme Court of Canada applies doctrines of comity, issue estoppel, collateral attack and abuse of process that would prevent the Plaintiff from trying to relitigate these settled issues in a Canadian court.

34.     But if I were to assume that, contrary to these doctrines, a Canadian court revisited this question, it would reach the same conclusion as *Superman I* as to Peavy's status as executor. As I have explained above, if the author has left a will and named an executor, it is clear that executors draw their authority from the will and therefore have the lawful authority to deal with estate property even if they do not obtain probate. Furthermore, section 14(1) of the Act provides an independent authorization for executors to grant or assign the reversionary interest immediately after the death of the author, with no requirement of probate.

35.     Here, I understand that Jean Peavy was named in Shuster's will as the executor of his estate and his sole heir. I also understand she held herself out as the sole heir and executor named in her brother's will, and that the *Superman I* court relied on those facts and called them undisputed. 2012 WL 4936588, at *1–2. Therefore, under Canadian law, all reversionary copyright interests passed automatically and immediately to Jean Peavy upon Shuster's death. Accordingly, a Canadian court would almost certainly find that Jean Peavy had the authority to assign any Canadian reversionary interest (if any in fact existed) in the Superman copyrights at the time of the 1992 Agreement.

36.     Since Peavy assigned "any and all" rights relating to the Superman property, there is no remaining basis through which Plaintiff could assert copyrights in that property.[4] Failure to establish ownership would be fatal to all of the Plaintiff's Canadian copyright claims in this new lawsuit for this additional reason.

37.     Furthermore, Peavy's assignment of the reversionary interest was valid under Canadian law notwithstanding that it occurred in 1992, years before the interest vested. Canadian jurisprudence and secondary authorities confirm that the Section 14 reversion scheme permits an author's legal representative to assign his or her reversionary interests at any time

---

[4] Additionally, in the 1992 Agreement, Peavy waived "all claims to any payments or other rights or remedies which you may have under any other agreement or otherwise, whether now or hereafter existing regarding any copyrights". Not only is Peavy assigning the reversionary interest (if any) in the copyright expectant upon the expiration of the 25-year period, she is waiving all claims to reversion as a legal representative of the estate.

after the death of the author. See *Winkler v. Roy,* 2002 FCT 950 at 55-56 (**Exhibit I**), applying *Chappell & Co. Ltd. v. Redwood Music Ltd*. [1981] R.P.C. 337 at 347 (**Exhibit H**) (progenitor provision in 1911 UK Copyright Act "made [it] impossible for the author either to assign or license, or to contract to assign or license, in manner extending into the reversionary 25 year period, *though his legal personal representatives (or a beneficiary after assent) can do so at any time after the author's death*" (emphasis added)); 1 International Copyright Law and Practice CAN § 4 (2025), at n.96 (**Exhibit F**) ("At any time after the author's death, however, the legal representatives may make deals with respect to the reversionary interest."); *Copinger and Skone James on Copyright* (19th ed.), § 4-140(e)(ii) (**Exhibit G**) (analogous UK reversion provision does not hinder "[a]n assignment of the reversionary interest after the death of the author by the author's personal representatives," and "[a]ny such assignment by the personal representatives is therefore valid," with "no requirement that the personal representatives must wait until the reversion falls in"). Jean Peavy therefore could validly assign her reversionary interest (if any) in the 1992 Agreement, even though the 25-year period for reversion had not yet passed.

38. Finally, a Canadian court would look to the text of the 1992 Agreement to confirm whether it in fact conveyed Jean Peavy's reversionary interest (to the extent she had any to begin with). To do so, a Canadian court would look to the plain language of the agreement. This would be true regardless of whether the Canadian court were to apply Canadian law or New York law to this interpretive question.

39. The 1992 Agreement, by its express terms, grants "all" rights that Peavy "may have under any other agreement or otherwise, whether now or hereafter existing regarding any copyrights . . . in any and all work created in whole or in part by your brother, Joseph Shuster." "All" copyright interests necessarily includes any copyright reversionary interest. Indeed, the contractual language specifically encompasses those rights Peavy had "other[]" than by an agreement—so, including rights conferred by statute such as the Canadian copyright reversion provision—and also encompasses rights "hereafter existing," to any extent Plaintiff might quibble that the reversionary interest had not yet fully materialized at the time. Moreover,

-12-

-13-

Canadian law does not require any specific language to assign reversionary interests. Therefore, my interpretation of Canadian law is that Jean Peavy validly assigned any reversionary interests she may have had in the 1992 Agreement. All simply means all. And this, too, would be sufficient to dispose of Plaintiff's Canadian claims.

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct. Executed on April 7, 2025.

BY: _____
Daniel Glover