# EXHIBIT B

| "LEGAL REPRESENTATIVES" | «REPRÉSENTANTS LÉGAUX»* |
|---|---|
| "legal representatives" includes heirs, executors, administrators, successors and assigns, or agents or attorneys who are thereunto duly authorized in writing; | «représentants légaux» Sont compris parmi les représentants légaux les héritiers, exécuteurs testamentaires, administrateurs, successeurs et ayants droit, ou les agents ou fondés de pouvoir régulièrement constitués par mandat écrit. |

R.S.C. 1985, c. C-42, s. 2

### §1.0 Related Sections

section 2.2 — Definition of "publication"; section 13—Ownership of copyright; section 14—Limitation where author is first owner of copyright; section 14.2—Moral rights; section 43—Infringement of copyright; section 55 — Copyright in works; section 56 — Copyright in subject-matter other than works; section 56.1 — Recovery of damages; section 60—Subsistence of substituted right; section 67—Public access to repertoire; section 70.1—Collective Societies; section 70.61—Filing of statements of proposed royalties; section 71(1) — Filing of proposed tariffs.

### §2.0 Related Regulations

None.

### §3.0 Prior Legislation

§3.1 *Corresponding Section in Prior Legislation*

Section 2(m) from 1924.01.01 to 1971.07.14; section 2 from 1971.07.15 to present.

§3.2 *Legislative History*

S.C. 1921, c. 24, s. 2(m); C.I.F. 1924.01.01; R.S.C. 1927, c. 32, s. 2(m); C.I.F. 1928.02.01; S.C. 1931, c. 8, s. 2(m); C.I.F. 1931.06.11; R.S.C. 1952, c. 55, s. 2(m); C.I.F. 1953.09.15; R.S.C. 1970, c. C-30, s. 2; C.I.F. 1971.07.15; R.S.C. 1985, c. C-42, s. 2; C.I.F. 1988.12.12.

§3.2.1 S.C. 1921, c. 24, s. 2(m).

| "LEGAL REPRESENTATIVES" | «REPRESÉNTATIVES LÉGAUX» |
|---|---|
| (m) "legal representatives" includes heirs, executors, administrators and assigns or other legal representatives; | (t) l'expression «représentants légaux» comprend les héritiers, exécuteurs testamentaires, administrateurs et ayants droit, ou autres représentants légaux. |

---

* Note: "Représentants Légaux", as the French translation of "legal representatives", was numbered 2(t) in the French text from 1924.01.01 to 1953.09.14 and 2m) from 1953.09.15 to 1971.07.14.

§3.2.2  R.S.C. 1927, c. 32, s. 2(m).

"LEGAL REPRESENTATIVES"

(m) "legal representatives" includes heirs, executors, administrators and assigns or other legal representatives;

«REPRÉSENTANTS LÉGAUX»

(t) «représentants légaux» comprend les héritiers, exécuteurs testamentaires, administrateurs et ayants droit, ou autres représentants légaux.

§3.2.3  S.C. 1931, c. 8, s. 2(m).

"LEGAL REPRESENTATIVES"

(m) "legal representatives" includes heirs, executors, administrators, successors and assigns, or agents or attorneys who are thereunto duly authorized in writing;

«REPRÉSENTANTS LÉGAUX»

t) «représentants légaux» comprend les héritiers, exécuteurs, administrateurs, successeurs et ayants droit, ou les agents ou fondés de pouvoir régulièrement constitués par mandat écrit;

§3.2.4  R.S.C. 1952, c. 55, s. 2(m).

"LEGAL REPRESENTATIVES"

(m) "legal representatives" includes heirs, executors, administrators, successors and assigns, or agents or attorneys who are thereunto duly authorized in writing.

«REPRÉSENTANTS LÉGAUX»

(m) «représentants légaux» comprend les héritiers, exécuteurs testamentaires, administrateurs, successeurs et ayants droit, ou les agents ou fondés de pouvoir régulièrement constités par mandat écrit;

§3.2.5  R.S.C. 1970, c. C-30, s. 2.

"LEGAL REPRESENTATIVES"

"legal representatives" includes heirs, executors, administrators, successors and assigns, or agents or attorneys who are thereunto duly authorized in writing;

«REPRÉSENTANTS LÉGAUX»

«représentants légaux» comprend les héritiers, exécuteurs testamentaires, administrateurs, successeurs et ayants droit, ou les agents ou fondés de pouvoir régulièrement constitués par mandat écrit;

### §4.0 Purpose

This section provides a non-exhaustive list of persons who may act as agents, or may be beneficiaries of the author or copyright owner.

### §5.0 Commentary

#### §5.1 *History*

This definition, when introduced in the *Copyright Act, 1921*, was a mere duplication of subsection 2(c) of the *Copyright Act, 1886*, which read as follows:

2. In this Act, unless the context otherwise requires, — (. . .)

(c) The expression "legal representatives" includes heirs, executors, administrators and assigns, or other legal representatives.

This latter definition itself originates from the United Kingdom *Copyright Act, 1842*, section 2 of which read as follows:

> And be it enacted, that in the construction of this Act (. . .) that the words "*personal representative*" shall be construed to mean and include every executor, administrator, and next of kin entitled to administration; that the word "*assigns*" shall be construed to mean and include every person in whom the interest of an author in copyright shall be vested, whether derived from such author before or after the publication of any book, and whether acquired by sale, gift, bequest, or by operation of law, or otherwise; (. . .)" [Emphasis added.]

The United Kingdom *Copyright Act, 1842* was held to apply in Canada with respect to its subject matter which excluded, for instance, some of the fine arts which were otherwise covered by the then existing Canadian copyright Acts. It is probably in this context that in the revision of 1886, a definition of "legal representatives" was introduced in the *Copyright Act, 1886*, which combined those two definitions of "personal representative" and "assigns" found in the United Kingdom *Copyright Act, 1842*.

This definition of "legal representatives" was further clarified in Canada by the *Copyright Amendment Act, 1931* with the addition of the word "successors" and the replacement of the far too imprecise "or other legal representatives" by the words "or agents or attorneys who are thereunto duly authorized in writing". According to the House of Commons Debates of 1931, the insertion of those words were meant to clarify who qualified as a "legal representative" within the meaning of the statute:

> With regard to this clause, the definition, as I explained before, is clarified, and in addition in subsection (2) there is a definition of "legal representatives." Our present Act says:
>
>> "Legal representatives" includes heirs, executors, administrators, and assigns or other legal representatives.
>
> Doubt has arisen in our courts as to who are constituted "legal representatives." It is a very broad term. Instead of "legal representatives" we have inserted after "administrators" the word "successors" and then we have added "or agents or attorneys who are thereunto duly authorized in writing." I am instructed that these words clarify the section and make it clear who are legal representatives within the meaning of the statute. That is the only change.

See Cahan M.P., *Debates of the House of Commons*, 2nd session, 17th Parliament, Vol. III, p. 2399, June 8, 1931. Compare with the definition of "personal representative" found at section 2 of the *Bank Act* (S.C. 1991, c. 46):

| "personal representative" means a person who stands in place of and represents another person and, without limiting the generality of the foregoing, includes, as the circumstances require, a trustee, an executor, an administrator, a committee, a guardian, a tutor, a curator, an assignee, a receiver, an agent or an attorney of any person; | « représentant personnel » Personne agissant en lieu et place d'une autre, notamment un fiduciaire, un exécuteur testamentaire, un administrateur, un comité, un tuteur, un curateur, un cessionnaire, un séquestre ou un mandataire. |
|---|---|

§5.2 *Construction*

The word "includes" is generally used in interpretation clauses in order to extend the meaning of words or expressions occurring in the body of a statute. When these words or expressions are used, they must be construed as comprehending not only such things as they signify according to their natural import but also things which the interpretation clause declares that they shall include. "It has been established that when the statute employs the word "including' or 'includes' rather than 'means' the definition does not purport to be complete or exhaustive and there is no exclusion of the natural ordinary meaning of the words": see *Laidlaw v. Metropolitan Toronto (Municipality)*, [1978] 2 S.C.R. 736, Spence J. at 744-745.

Therefore, since it is introduced by the word "includes", the definition of "legal representative" should be construed as illustrative or extensive; such a definition does not provide for a complete and exhaustive enumeration and should not be restricted to the dictionary meaning since the enumeration following the word "legal representative" in section 2 is added to the usual sense thereof: SULLIVAN (Ruth), *Sullivan on the Constructions of Statutes*, 5th ed. (Toronto: LexisNexis, 2008), at 61-67; CÔTÉ (Pierre-André), *The Interpretation of Legislation in Canada*, 3rd ed. (Cowansville: Blais, 2000), at 60-62; PIGEON (Louis-Philippe), *Drafting and Interpreting Legislation* (Toronto: Carswell, 1988), at 32-35.

§5.3 *General*

This section is aimed at two general categories of persons, namely those who act in their own rights and those who act in the rights of others.

The *Copyright Act* mentions heirs and successors in the first category, while in the second category, reference is made to administrators, assigns, agents and attorneys.

In order to ascertain the ordinary meaning of these expressions, useful reference could be made to dictionary definition, either actual or contemporaneous, with the enactment of the *Copyright Act, 1921*: see BARBE (Raoul P.), *Les définitions contenues dans les actes législatifs et réglementaires* (1983), 43 Revue du Barreau 1105, at 1118-1120.

§5.4 *Those who Act in their Own Rights*

This general category could itself be subdivided in two, namely those who inherit the copyright ("heirs") and those who acquired an interest in same, either contractually (see, for instance, subsections 13(2), 13(3) and 13(4)) or by law (see sections 2 and 14).

The *Copyright Act* makes no difference between an heir at law, an heir beneficiary, an heir conventional or a legal heir. As defined in the 1986 second edition of the *Collin's Dictionary of the English Language*, an heir is "the person legally succeeding to all property of a deceased person, irrespective of whether such person died testate or intestate, and upon whom devolves as well as the rights, the duties and liabilities attached to the estate".

What is meant by "assigns" is not entirely free of doubt, at least from a philological point of view.

In the 1905 edition of FUNK (Isaac K.), *A Standard Dictionary of the English Language* (New York: Funk & Wagnalls, 1905), "assign" is defined as "a person to whom property, rights or powers are transferred by another; as heirs and assigns in a grant by deed" while "assignee" is defined as "(1) One to whom property or rights in action have been assigned either for himself or in trust; a trustee: (2) One who is appointed and empowered to act for another in the care and management of certain property and interests for a specified purpose". Funk states further that "Assign differs from assignee in that the latter is personally designated and holds immediately from his assignor; while the former, though individually undesignated and however remote, may hold under the original grantor".

The 1924 edition of *Webster's New International Dictionary of the English Language* (Springfield, Merriam, 1924) indicates that an "assign" is *inter alia* "an agent or representative assigned to act for another" and is synonymous with "assignee", while an "assignee" is "a person to whom an assignment is made; a person appointed by another to do some act, or enjoy some right, privilege, or property". Nowadays, these terms are almost synonymous as it appears, for instance, from the 1986 second edition of the *Collins English Dictionary* where "assign" is defined as "(8) a person to whom property is assigned; assignee" and "assignee" as "a person to whom some right, interest, or property is transferred". As found in the 1991 6th edition of *Black's Law Dictionary*:

> Assignees; those to whom property is, will, or may be assigned. Used *e.g.* in the phrase, in deeds, "heirs, administrators, and assigns to denote the assignable nature of the interest or right created." It generally comprehends all those who take either immediately or remotely from or under the assignor, whether by conveyance, devise, descent, or act of law.

However in the 2009, 9th edition of *Black's Law Dictionary*, "assignee" is now defined as:

> One to whom property rights or powers are transferred to another. Use of the term is so widespread that it is difficult to ascribe positive meaning to it with any specificity. Courts recognize the protean nature of the term and are therefore often forced to look to the intent of the assignor and assignee in making the assignment rather than to the formality of the use of the term *assignee* —in defining rights and responsibilities.—

Such an interpretation of "assigns" as "assignees" rather than one restricted to "legatees" is comforted by the French text of section 2 where reference is made to "ayants droit", which means a "personne qui tient un droit ou une obligation d'un autre dénommé auteur": CRÉPEAU (Paul-A.) et al., *Dictionnaire de droit privé*, 2nd ed. (Cowansville, Blais, 1991), at p. 52.

### §5.5 *Those who Act in the Rights of others*

This general category could itself be subdivided in two, namely those persons in charge of an estate or trust, acting in the name of a copyright owner and persons acting in the name of the copyright owner by virtue of a written mandate.

The 1986 second edition of the *Collin's English Dictionary* defines "executor" as "a person appointed by a testator to carry out the wishes expressed in his will" while "administrator" is defined as "a person authorized to manage an estate, especially when the owner has died intestate or without having appointed executors" or as "a person who administers the affairs of an organization, official body, etc." In the 2009, 9th edition of

*Black's Law Dictionary* "administrator" is defined as "A person who manages or heads a business or public office, or agency. A person appointed by the court to manage the assets and liabilities of an intestate decedent." More particularly, an "executor" is defined as "a person appointed by testator to carry out the directions and requests in his will, and to dispose of the property according to his testamentary provisions after his decease".

It is to be noted that, despite the origin of the concept, the "legal representative" is not synonymous to a "personal representative" who is a person who manages the affairs of another unable to act for himself because of incapacity or death. It includes executors, administrators, successors, personal representatives, special administrators, and persons who perform substantially the same function under the law governing their status. Under commercial law, however, it could also include a receiver or liquidator as well as a trustee to a bankruptcy.

As to the distinction between a trust and other concepts as fiduciary relationship, administration of deceased's estate, agency and powers, see generally WATERS (Donovan W.M.), *Law of Trusts in Canada*, 3rd ed. (Toronto: Carswell, 2005), at ch. 3.

§5.6 *Agents or Attorneys Duly Authorized*

This category of representative embraces persons acting in the name of the copyright owner or the author, by virtue of a deed or otherwise. As to the privacy of contract under the Law of Agency, see generally FURMSTON (Michael T.) et al., *Cheshire Fifoot and Furmston's Law of Contract*, 15th ed. (Oxford: OUP, 2006), at ch. 15; RENAUD (Yvon) et al., *Baudoin-Renaud Code civil annoté* (Montréal, Wilson et Lafleur, 1995), Livre cinquième Des obligations, under "Du Mandat".

Unlike assignees, the agents or attorneys are not vested with any property interest in the copyright but are rather entitled to represent the author or copyright owner in respect thereto and even, as the case may be, to dispose of, in all or in part, the copyright: see subsection 13(4).

The definition of "legal representatives" provides, however, that the appointment of such agents or attorneys must be made *in writing*. Section 35 of the *Interpretation Act* (R.S.C. 1985, c. I-21) defines "writing" as:

| "writing" | «écrit» |
|---|---|
| "writing", or any term of like import, includes words printed, typewritten, painted, engraved, lithographed, photographed or represented or reproduced by any mode of representing or reproducing words in visible form. | «écrit» Mots pouvant être lus, quel que soit leur mode de présentation ou de reproduction, notamment impression, dactylographie, peinture, gravure, lithographie ou photographie. La présente définition s'applique à tout terme de sens analogue. |

See also section 56.1 as to the consequences of fraudulent or erroneous assumption of authority when registering a copyright.

The definition of "legal representative" requires that the appointment of the agent or attorney be made in writing: it does not specify that the scope of the mandate itself be written. An agent can do nothing beyond the authority given or implied by the mandate

but he may do all acts which are incidental to such authority and necessary to the execution of the mandate, i.e., every act usually incidental to the business transaction for which he has been appointed: see FURMSTON (Michael T.) et al., *Cheshire Fifoot and Furmston's Law of Contract*, 15th ed. (Oxford: OUP, 2006) at ch. 15; REYNOLDS (Francis M.B.), *Bowstead on Agency*, 18th ed. (London: Sweet & Maxwell, 2005); POPOVICI (Adrian), *La couleur du mandat* (Montréal: Themis, 1995). Noteworthy, the "in writing" requirement is further qualified by the word "duly" (régulièrement).

### §5.7 *"Legal representatives" in other sections of the Act*

The expression "legal representatives" is found in several sections of the *Copyright Act* and Rules thereunder. According to the general principle of interpretation, a definition established in a statute will be applicable to other sections of the same statute with the same meaning, unless a contrary intention appears in a specific section. Furthermore, a definition provided in a statute shall also be applicable to all other enactments relating to the same subject matter, unless a contrary intention appears.

Indeed, section 15 of the *Interpretation Act* (R.S.C. 1985, c. I-21) provides that:

| *Application of definitions and interpretation rules* | *Application* |
|---|---|
| 15. (1) Definitions or rules of interpretation in an enactment apply to all the provisions of the enactment, including the provisions that contain those definitions or rules of interpretation. | 15. (1) Les définitions ou les règles d'interprétation d'un texte s'appliquent tant aux dispositions où elles figurent qu'au reste du texte. |
| *Interpretation sections subject to exceptions* | *Restriction* |
| (2) Where an enactment contains an interpretation section or provision, it shall be read and construed | (2) Les dispositions définitoires ou interprétatives d'un texte : |
| (*a*) as being applicable only if a contrary intention does not appear; and | *a*) n'ont d'application qu'à défaut d'indication contraire; |
| (*b*) as being applicable to all other enactments relating to the same subject-matter unless a contrary intention appears. | *b*) s'appliquent, sauf indication contraire, aux autres textes portant sur un domaine identique. |

See CÔTÉ (Pierre-André), *The Interpretation of Legislation in Canada*, 3rd ed. (Cowansville, Blais: 2000), at 60-62; and SULLIVAN (Ruth), *Sullivan on the Constructions of Statutes*, 5th ed. (Toronto: LexisNexis, 2008), at 210-213, while subsection 33(3) of the aforesaid *Interpretation Act* provides that:

| *Parts of speech and grammatical forms* | Famille de mots |
|---|---|
| 33 (3) Where a word is defined, other parts of speech and grammatical forms of the same word have corresponding meanings. | 33 (3) Les termes de la même famille qu'un terme défini ont un sens correspondant. |

The following expressions are found throughout the *Copyright Act* and the Rules:
(a) Legal representatives of the owner: subsection 43(1);
(b) Legal representatives of the author: subsection 43(2);
(c) Duly authorized agents [of the owner]: subsection 13(4);
(d) Legal representatives [of the author]: subsection 14(1);
(e) Bequeather [of the author]: paragraph 14.2(2)(b).

§5.7.1 Infringement in case of dramatic, operatic or musical work: section 43

According to subsection 43(1), it is an infringement of copyright to perform or cause to be performed in public for private profit a dramatic, operatic or musical work without the written consent of the owner of the copyright or of the *legal representatives of the owner*.

Subsection 43(2) creates further prohibition against the change or suppression of the title or the name of the author of a dramatic or operatic work or a musical composition without the written consent of the author or of the *legal representatives of the author*.

The use of the expression "legal representative" in section 43 is consistent with the definition given in section 2.

§5.7.2 Licence and assignment: section 13

Subsection 13(4) requires that an assignment of copyright or the grant of a licence therein, in order to be valid, must be in writing and executed by the copyright owner or by the *duly authorized agent* of the copyright owner.

The use of the term "duly authorized agent" implies that an agent or attorney has been duly authorized by the copyright owner to assign or grant an interest in the copyright.

The fact of not having used in subsection 13(4) the expression "legal representatives" appears to be an indication that a written mandate is not required. Whether or not an agent has been duly authorized remains a matter of evidence: see FABIEN (Claude), *Les règles du mandat* (Montréal: Chambre des notaires du Québec, 1987), at nos. 326-347; and, as to the implied terms, see FRIDMAN (Gerald H.L.), *The Law of Contract in Canada*, 5th ed. (Toronto: Carswell, 2006); WADDAMS (Stephen M.), *The Law of Contracts*, 5th ed. (Toronto: Canada Law Book, 2005), part 3.

§5.7.3 Reversion of copyright: section 14

Subsection 14(1) provides that when an author of a work is the first owner of the copyright therein, any rights remaining on the twenty-fifth anniversary of the author's death immediately revert to or devolve onto his *legal representatives as part of his estate* for the remainder of the copyright protection period.

This provision regarding the reversionary interest in an author's copyright originates from subsection 5(2) of the United Kingdom *Copyright Act, 1911* in which the legislator first adopted such a provision supposedly to protect the indigent heirs of an author who may otherwise have neglected the needs of his dependants in assigning his copyright interests for the whole term of protection provided by law.

However, while the Canadian *Copyright Act* provides for the devolution of the reversionary interest on the author's legal representatives, the United Kingdom *Copyright Act, 1911* refers specifically to the author's legal *personal* representatives.

It would then appear that in the context of subsection 14(1), the expression "legal representatives" has a meaning less encompassing than that of subsection 2(16).

§5.7.4 Succession of moral rights: section 14.2

Subsection 14.2(2) provides that the moral rights subsist up to the death of the author and could be bequeathed. In the French text, specific reference is made to a devolution in favour of the "légataire" or, in default, to the "héritiers de l'auteur". Unfortunately, the English text does not refer to a "legatee" (which is one kind of assign) or to "heirs". These words are otherwise found in the definition of "legal representatives" in section 2. This situation entertains the confusion arising from using the same words or concepts within the same Act to describe the same things, as the case may be.

Application for registration of copyright: section 55; section 55 allows a person purporting to be the *agent* of an author or an author's *legal representatives* to apply for the registration of a copyright in the name of the author or of his *legal representatives*: see REYNOLDS (Francis M.B.), *Bowstead on Agency*, 18th ed. (London: Sweet & Maxwell, 2005) as to the delegation of authority by an agent.

Because of the presence of the words "agent (. . .) duly authorized" in the definition of "legal representatives" in section 2, section 55 makes it possible for an agent of an agent to apply for registration of copyright.

Rules 29, 31 and 33; section 16 of the *Interpretation Act* (R.S.C. 1985, c. I-21) provides that a definition given in a statute is also applicable in the regulations adopted under the statute: "Where an enactment confers power to make regulations, expressions used in the regulations have the same respective meanings as in the enactment conferring the power."

Rule 29 (transaction with the Copyright Office) and Rule 31 ("correspondence" with the Copyright Office) make reference to an applicant or the *agent of the applicant*; such an agent is not synonymous with "legal representative" even though legal representatives, as defined in section 2 could include such agent.

Rule 33(a) ("Application for registration") makes reference however to an applicant or the *duly authorized agent* of the applicant: again, the terms "duly authorized agent" used in this Rule are not synonymous with "legal representative", as defined in section 2 even though, as in subsection 13(4), legal representatives could also include such duly authorized agent.

§5.7.5 Editorial comment

The consequences, if any, of the apparent inconsistency in the use throughout the *Copyright Act* and its Rules of the terms "legal representative", "agent", "duly authorized agent", and the like are left open for judicial determination.

**§6.0 Case Law**

§6.1 *Canada*

1. *Langlois v. Vincent*, 18 L.C.J. 160 (Que. Sup. Ct.; 1874-02-07) Stuart J. at 162.

> If the author could not, can his legal representatives? But is the plaintiff in any sense the legal representative of Monseigneur de St Valier? This is not alleged or shewn; he bought the right of publishing the work for ten years from the Archbishop of Quebec. The defendant does not contest this sale, but he says that that confers upon him no exclusive rights and does not purport to do so on its face. It is admitted that the Archbishop of Quebec is not the author, and he is not shewn to be the legal representative of the author. It follows that neither the plaintiff nor his vendor are clothed with the character of legal representatives of Monseigneur de St Valier, and therefore it follows as an irresistible legal consequence, that the enregistration by the plaintiff not being the act of the author nor of his legal representatives, for all practical and legal purposes is a fruitless, worthless formality in no way justified by the Copyright Act.

2. *Benjamin Distribution Ltd. v. Les Éditions Flammarion Ltée* (1982), 68 C.P.R. (2d) 251, McCarthy J. (Que. C.A.).

> Section 12(4) [now s. 13(4)] of the *Copyright Act*, R.S.C. 1970, c. C-30, permits the assignment of copyright, either generally or subject to territorial limitations, provided that such assignment is in writing signed by the owner "or by his duly authorized agent". Benjamin points to the apparent absence of written authorization to Manon Racicot, who signed the contract on behalf of Les Editions, but the Act requires her to be "duly" authorized, not necessarily authorized "in writing". The fact that, according to Racicot's uncontradicted testimony, Flammarion and Les Editions were closely affiliated companies explains the informalities in their dealings with one another. True, s. 2 of the Act defines "legal representatives" as including "heirs, executors, administrators, successors and assigns, or agents or attorneys who are thereunto duly authorized in writing". However, there is no mention of "legal representatives" in s. 12(4). [at 254]

### §6.2 *United Kingdom*

1. *Carlin Music Corporation v. Collins*, [1979] F.S.R. 548, Ormrod J. (C.A.).

> There are two different features about this case. One is that it involves the importation of records from Canada and from America in circumstances in which the importation itself amounts to a breach of copyright; and the other aspect of the case is the position of the third plaintiffs who are the almost universal agents in this country for the owners of copyright in this type of musical performance and who are here in this action suing in their own name for reasons which seem good, in that they say they have something like 2,000 principals and that it would be quite impossible for them to consult each individual principal before starting litigation of the type we are now dealing with . . . Mr. Thorley's argument in this court convinces me that this clients (who are the third plaintiffs in this case) have established prima facie a cause of action against both the defendants—certainly the second defendant—in that it is shown by the plaintiffs that the second defendant has deliberately interfered in the course of their business and has and is causing them pecuniary loss by selling these records without obtaining and paying for the licence to do so and well knowing that the third plaintiffs are people who administer such licences on behalf of their principals and who, of course, receive a substantial commission for doing so. I therefore think that Mr. Thorley has brought himself within the principles set out in McCardie J.'s judgment in *Pratt v. British Medical Association* [1919] 1 K.B. 244 particularly at page 260 and in my Lord's judgment in *Acrow (Automation) Ltd. v. Rex Chainbelt Inc.* [1971] 1 W.L.R. 1676. [at 553]

2. *Rickless v. United Artists Corp.* (1986), [1987] F.S.R. 362, Browne-Wiljinson J. (C.A.).

> 25031 ch04 5031   4 relation to section 7 of the *Dramatic and Performers Protection Act 1958*:

Section 7 is dealing with the ostensible authority of an agent to give consent on behalf of a performer; it depends upon a representation that the agent is authorised by the performer to give such a consent on his behalf. If the performer has died, no such authority to consent as an agent could exist; such authority dies with the performer. Personnal representatives are not the agents of the deceased; their powers rest not on the authority given to them by the deceased, but on a quite separate authority given to them by law to stand in the place of the deceased. [at 375]

### §7.0 List of Cases

§7.1 *Canada*

1. *Langlois v. Vincent*, 2 Can. Comm. R. 164 (Que. Sup. Ct.; 1874-02-07).
2. *Éditions Flammarion Ltée v. Benjamin Distribution Ltd.*, An unreported judgment rendered 1981-12-22 by Flynn J., court docket 500-05-016867-812 (Que. Sup. Ct.-Interlocutory); affd. (1982), 68 C.P.R. (2d) 251 (Que. C.A.-Interlocutory); consent judgment on the merit 1983-05-30 (Que. Sup. Ct.).
3. *Kelley Estate v. Roy*, 21 C.P.R. (4th) 539 (F.C.T.D.; 2002-09-12).

§7.2 *United Kingdom*

1. *Heinemann v. Smart Set Publishing Co.* (1909), [1905-10] MacG. Cop. Cas. 221 (Ch.D.).
2. *Hales v. T. Fisher Unwin Ltd.* (1923), [1923-28] MacG. Cop. Cas. 31 (Ch.D.).
3. *Watt v. Vyver* (1925), [1928-35] MacG. Cop. Cas. 146 (Ch.D.).
4. *Ward v. Summerville* (1929), [1928-35] MacG. Cop.C. 79 (Ch.D.); aff'd (1929), [1928-35] MacG. Cop. Cas. 79-87 (C.A.).
5. *Re Sullivan* (1929), [1930] 1 Ch. 84 (Ch.D.).
6. *International Copyright Bureau Ltd. v. Hoffe* (1930), [1928-35] MacG. Cop. Cas. 144 (Ch.D.).
7. *Holland v. Methuen & Co.* (1930), [1928-35] MacG. Cop. Cas. 247 (Ch.D.).
8. *Phillips v. Brandon* (1932), [1928-35] MacG. Cop. Cas. 338 (Ch.D.).
9. *Excelsior Film Productions Ltd. v. Hackett* (1939), [1936-45] MacG. Cop. Cas. 262 (K.B.D.).
10. *Carlin Music Corp. v. Collins*, [1979] F.S.R. 548 (C.A.).
11. *Rickless v. United Artists Corp.* (1985), [1986] F.S.R. 502, 135 L.J. 656 (Q.B.D.); [1987] 1 All E.R. 679 (C.A.).

### §8.0 Authors

§8.1 *Canada*

§8.1.1 Interpretation Issues

1. BARBE (Raoul P.), *Les définitions contenues dans les actes législatifs et réglementaires* (1983), 43 Revue du Barreau 1105, at 1118-1120.
2. CÔTÉ (Pierre-André), *The Interpretation of Legislation in Canada*, 3rd ed. (Cowansville: Blais, 2000), at 60-62.

3. CÔTÉ (Pierre-André) et al., *Interprétation des lois*, 4th ed. (Montreal: Thémis, 2009), at §229 et sq.
4. CRÉPEAU (Paul A.) et al., *Dictionnaire de droit privé et lexiques bilinges*, 2nd ed. (Cowansville: Blais, 1991).
5. DICK (Robert C.) *Legal Drafting*, 2nd ed. (Toronto: Carswell, 1985), ch 5.
6. DRIEDGER (Elmer A.), *Construction of Statutes*, 2nd ed. (Toronto: Butterworths, 1983), at 18-22, 93-94.
7. LAJOIE (Marie) et al., *La rédaction française des lois*, 2nd ed., Commission de réforme du droit au Canada (Ottawa: MASC, 1982), at ch. 4.
8. LAJOIE (Marie) et al., *Drafting Law in French*, 2nd ed., Commission de réforme du droit au Canada (Ottawa: DSSC, 1982), at ch. 4.
9. PIGEON (Louis-Phillipe), *Drafting and Interpreting Legislation* (Toronto: Carswell, 1988), at 32-35.
10. SULLIVAN (Ruth), *Sullivan and Driedger on the Construction of Statutes*, 4th ed. (Toronto: Butterworths, 2002), at 9-18.
11. SULLIVAN (Ruth), *Sullivan on the Constructions of Statutes*, 5th ed. (Toronto: LexisNexis, 2008), at 61-67.

§8.1.2 Copyright Issues

1. BONCOMPAIN (Jacques), *Le droit d'auteur au Canada : étude critique* (Montréal: Cercle du livre de France, 1971), at 178-181.
2. FOX (Harold George), *The Canadian Law of Copyright*, 1st ed. (Toronto: University of Toronto Press, 1944), at 290-292.
3. FOX (Harold George), *The Canadian Law of Copyright and Industrial Designs*, 2nd ed. (Toronto: Carswell, 1967), at 287-296.
4. HUGHES (Roger T.), *Hughes on Copyright and Industrial Design* (Toronto: Butterworths, 1984), at nos. 25, 30.
5. HUGHES (Roger T.) et al., *Copyright and Industrial Design*, 2d ed. looseleaf (Toronto: LexisNexis Butterworths, 2005) at §25 and §30.
6. SANDERSON (Paul), *Musicians and the Law in Canada* (Toronto: Carswell; 2000), ch. 6 "Agents and Managers."
7. SARNA (Lazar), *Authors and Publishers – Agreements and Legal Aspects of Publishing*, 2nd ed. (Toronto: Carswell, 1987), at 63-65.
8. TORNO (Barry), *Durée de la protection en matière de droit d'auteur au Canada : situation actuelle et propositions de réforme*, in Études en vue de la révision de la *Loi sur le droit d'auteur* (Ottawa: CCAC, 1981), at 44- 45.

§8.1.3 Representation Issues

1. FABIEN (Claude), *Le nouveau droit du mandat*, in La réforme du Code civil (Quebec: P.U.L., 1993), Vol. 2, at 881-954.

COPYRIGHT ACT — LEGAL REPRESENTATIVES            S. 2§8.3

2. FABIEN (Claude), *Les règles du mandat* (Montréal: Chambre des notaires du Québec, 1987), at nos. 159 to 208, 326-347.
3. FRIDMAN (Gerald H.L.), *Canadian Agency Law* (Toronto: LexisNexis 2009).
4. FRIDMAN (Gerald H.L.), *The Law of Contract in Canada*, 5th ed. (Toronto: Carswell, 2006).
5. POPOVICI (Adrian), *La couleur du mandat* (Montréal: Thémis, 1995), sp. ch. 4.
6. RENAUD (Yvon) et al., *Code civil du Québec annoté* (Montréal: Wilson & Lafleur, 1995), Livre cinquième Des obligations, under "Du Mandat".
7. STOHN (J. Stephen) et al., *Deals You Can Refuse* (1993), 3 Media & Communications Law Review 265.
8. WADDAMS (Stephen M.), *The Law of Contracts*, 5th ed. (Toronto: Canada Law Book, 2005).
9. WATERS (Donovan W.M.), *Waters Law of Trusts in Canada*, 3rd ed. (Toronto: Carswell, 2005).

§8.2 *United Kingdom*

1. FURMSTON (Michael T.) et al., *Cheshire Fifoot and Furmston's Law of Contract*, 15th ed. (Oxford: OUP, 2006).
2. LESTER (David) et al., *Joynson-Hicks on UK Copyright Law* (London: Sweet & Maxwell, 1989), at nos. 8.30, 8.51, 8.60, 9.03 and 10.27.
3. REYNOLDS (Francis M.B.), *Bowstead on Agency*, 18th ed. (London: Sweet & Maxwell, 2005).
4. ROBERTSON (Georges Stuart), *The Law of Copyright* (Oxford: Clarendon Press, 1912), at 146-147.
5. SKONE JAMES (F.E.), *Copinger and Skone James on the Law of Copyright*, 8th ed. (London: Sweet & Maxwell, 1948), at 104-105, 111-114 and 317.

§8.3 *Varia*

1. *Centenaire de la Convention de Berne 1886-1986* (1986 Genève, BIPI), at 84-85, 127, 166 and 213.
2. LADAS (Stephen P.), *The International Protection of Literary and Artistic Property*, in Harvard Studies in International Law No. 3 (New York: Macmillan, 1938), vol. I, at p. 203, and in vol. II, at 269-271.
3. LE FANU (Mark), *L'agent littéraire et le droit d'auteur* (1984), 18-1 Bulletin du droit d'auteur 8.
4. NORDEMANN (Wilhelm) et al., *International Copyright and Neighbouring Rights Law* (Weinheim: VCH, 1990), at 48-50, 108-109, 221-222, 565, 568 and 574.
5. POTU (Émile), *La Convention de Berne pour La Protection des oeuvres littéraires et artistiques revisée à Berlin le 13 Novembre 1908 et le Protocole additionnel de Berne du 20 mars 1914* (Paris: Rousseau, 1914), at 241, 249 and 259.
6. RICKETSON (Sam), *La durée de la protection dans le cadre de la Convention de Berne* (1991), 104 Le Droit d'Auteur 91, at 173-174.

(*Continued on page 2-381*)