# EXHIBIT I



# Winkler v. Roy, 2002 FCT 950 (CanLII)

| | |
|---|---|
| Date: | 2002-09-12 |
| File number: | T-1842-00 |
| Other citations: | 222 FTR 161 — 21 CPR (4th) 539 |
| Citation: | Winkler v. Roy, 2002 FCT 950 (CanLII), <https://canlii.ca/t/jrt>, retrieved on 2025-03-13 |

Date: 20020912

Docket: T-1842-00

Neutral citation: 2002 FCT 950

BETWEEN:

THERESIA WINKLER, in her personal capacity and

as Executor of the Estate of Thomas P. Kelley, Deceased

Applicant

and

SAMUEL ROY, Aztec Investments Limited, Elane

Holdings Limited and Falwyn Developments Limited

carrying on business as Samuel Roy Enterprises,

Saroy Film Productions of Canada Limited and

Firefly Books Ltd. and Edperbrascan Corporation

Respondents

<u>REASONS FOR ORDER</u>

**<u>GIBSON J.</u>:**

INTRODUCTION

[1]        These reasons arise out of an application pursuant to various provisions of the *Copyright Act*[1], and Part V of the *Federal Court Rules, 1998*[2] whereby, in an Amended Notice Of Application, the applicant seeks the following reliefs:

1.        A declaration that Theresia Winkler is the owner of the copyright in the books authored by the late Thomas P. Kelley entitled "*The Black Donnellys*", first published in Canada in April 1954 and "*Vengeance of the Black Donnellys*" first published in Canada in November 1962 (collectively, the "Books") and that Theresia Winkler is entitled to the income generated by the sale of the Books;

2.        A declaration that the copyright registration, serial number 254758 dated October 15, 1974 as registered to Pagurian Press Limited is invalid and that said registration be expunged;

3.        A declaration that the Respondents have infringed the copyright in the Books owned by the Applicant;

4.        Damages for copyright infringement;

5.        Profits made by the infringers from the infringement of the Applicant's copyright that is not taken into account in calculating damages;

6.        Alternatively to the damages and profits sought, statutory damages as may be elected by the Applicant before final judgment;

7.        An injunction restraining the Respondents themselves and their officers, directors, servants, agents or otherwise from infringing the Applicant's copyright;

8.        Costs of the Application on a solicitor and client scale;

9.        Such further and other relief as to this Honourable [Court] may seem just.

[2]        In responding materials, the respondent Firefly Books Ltd. ("Firefly") seeks an Order:

(a)        dismissing this proceeding as against Firefly with costs on a solicitor and client basis; and

(b)        further awarding Firefly full indemnity or alternatively contribution from the co-Respondents (other than Edperbrascan Corporation) for its costs of this Application and for any amounts Firefly may be required to pay to the Applicant as a consequence of either having published the Books under licence from Saroy Film Productions or having made royalty payments to any of the co-Respondents pursuant to the Licence Agreement.


[3]        Samuel Roy, Aztec Investments Limited, Elane Holdings Limited, and Falwyn Developments Limited carrying on business as Samuel Roy Enterprises, and Saroy Film Productions of Canada Limited (the "Roy respondents") filed a useful affidavit of Samuel Roy annexing, albeit very belatedly, useful exhibits, and a very short and quite unhelpful Memorandum of Fact and Law. The Roy respondents claim no relief.

[4]        Edperbrascan Corporation filed no materials and was not represented at the hearing before me which took place in Toronto on the 6th of August, 2002.

[5]        In an amended Memorandum of Fact and Law only filed on behalf of the applicant on the 15th of July, 2002, the applicant appears to have totally abandoned the requests for a declaration of infringement, for damages and profits and for an injunction, and to have restricted the claim for statutory damages and costs to a claim as against the Roy respondents. At the same time

the claim for a declaration of ownership of copyright is extended, or at least clarified, to include the "reversionary interest" and a claim is added for an Order that Firefly "...remit the royalties held by it to [the applicant]", a relief that would appear to flow logically from a declaration that the applicant is the owner of copyright, if such a declaration were granted. These modifications of claimed relief were largely confirmed by counsel for the applicant in argument before me.

THE PARTIES

[6]        The applicant is the executor or "estate administrator" designated in the will of the late Thomas P. Kelley who died on the 14th of February, 1982. Mr. Kelley's wife predeceased him on the 1st of February, 1982. By reason of the death of Mrs. Kelley before the death of her husband, the applicant who, as landlady to the Kelleys, had taken a benevolent interest in their welfare, was the only named beneficiary in the will of Mr. Kelley. Mr. Kelley's will was duly probated.

[7]        Mr. Kelley was the author of a number of books, among them *The Black Donnellys* and *Vengeance of the Black Donnellys* (collectively, the "Donnelly Books"), both earlier referred in the first quoted relief as originally claimed by the applicant. It is the identity of the owner of copyright in the Donnelly Books and the right to royalties flowing from that ownership that is the central issue in this matter.

[8]        It was not in dispute before me that, at all relevant times, Samuel Roy was a businessman residing in Toronto, Ontario. He was the principal shareholder and director of Saroy Film Productions of Canada Limited, a company incorporated pursuant to the laws of Ontario with a principal place of business or head office in Toronto. Samuel Roy Enterprises was at all relevant times the business style of three (3) corporations incorporated pursuant to the laws of Ontario and also having their principal places of business in Toronto. As earlier noted, the corporations comprising Samuel Roy Enterprises were Falwyn Developments Limited, Elane Holdings Limited and Aztec Investments Limited. Mr. Roy was at all relevant times a director and officer of each of those three (3) corporations.

[9]          Firefly Books Ltd. was at all relevant times a company incorporated pursuant to the laws of Ontario with a principal place of business in Willowdale, Ontario. It carried on, and apparently continues to carry on, the business of publishing and distributing books.

[10]          Edperbrascan Corporation ("Edperbrascan") is apparently a successor corporation to a number of corporations including Pagurian Press Limited which, on the 15th of October, 1974, registered copyright in the published literary work, *The Black Donnellys*[3]. Evidence before me indicates that Pagurian Press first printed *The Black Donnellys* in July of 1978 and reprinted it in May 1980 and again in August 1982[4]. Pagurian Press first printed *Vengeance of The Black Donnellys* in January, 1975, twice reprinted it and printed a revised edition in September, 1988.[5] The same evidence indicates that the Pagurian Corporation Limited, as of 1986 in respect of *The Black Donnellys* and as of 1988 in respect of *Vengeance of the Black Donnellys*, claimed its copyright "...under agreement with Saroy Film Productions of Canada" and that "over 1 million copies" of *The Black Donnellys* had been sold when Pagurian Press Limited was engaged in publishing it. The relationship among Pagurian Press Limited, Pagurian Press and Pagurian Corporation Limited went unexplained. I have assumed for purposes of my decision that nothing turns on it.

PUBLICATION HISTORY OF THE DONNELLY BOOKS

[11]          Prior to its publication by Pagurian Press Limited, evidence before the Court indicates that *The Black Donnellys* was first printed by Harlequin Books Limited in April 1954, and was reprinted by Harlequin some fourteen (14) times. It was later printed by Greywood Publishing Limited in July 1969 and reprinted by Greywood some six (6) times. Finally preceding the involvement of Pagurian Press Limited, *The Black Donnellys* was printed by Modern Canadian Library Limited, first in June 1974 and later on four (4) subsequent dates. It was apparently also published in the United States and England.

[12]        *Vengeance of the Black Donnellys* was first printed by Harlequin Books Limited in November, 1962. It was reprinted by Harlequin some six (6) times. It was later printed by Greywood Publishing Limited in July, 1969. Greywood reprinted it six (6) times. I was referred to no evidence before the Court indicating the extent of its distribution or indicating that it was published outside Canada.

[13]        Evidence in the public domain, but not before the Court, indicates that the saga of The Black Donnellys whether based on Mr. Kelley's book or otherwise, continues to receive popular exposure. The following brief reference is drawn from page 40 of the issue of *Maclean's* magazine for the 22nd of April, 2002:

In Blyth [Ontario], at the renowned summer theatre festival, the bloody saga of the Black Donnellys plays out under the stars in June.[6]

THE BACKGROUND

[14]        The late Thomas P. Kelley was apparently a quite prolific but, at least in the later years of his life, a somewhat impecunious author. By letter agreement dated the 13th of August, 1968, Mr. Kelley granted to Saroy Film Productions of Canada Limited an option "...to acquire from [him] the sole and exclusive publishing, motion picture and allied rights throughout the world in and to those certain full length books written by [him] entitled "*THE BLACK DONNELLYS*" and "*VENGEANCE OF THE BLACK DONNELLYS*..."[7]. By letter dated the 15th of October, 1968,[8] Saroy Film Productions of Canada Limited exercised its option. In the result, a formal agreement of assignment[9] took effect in consideration of a one-time payment to Mr. Kelley by Saroy Film Productions of Canada Limited.

[15]        Two provisions of the agreement of assignment are central for the purposes of these reasons. The first reads as follows:

<u>FIRST</u>: The Owner [Mr. Kelley] now sells and grants to the Purchaser [Saroy Film Productions of Canada Limited] exclusively all motion picture rights (including all sound, musical, and talking motion picture rights) now or hereafter known throughout the world in the Property [the Donnelly Books] (and all component parts thereof as above defined), <u>forever</u>. Included among the rights so conveyed are the following rights (but their enumeration shall not be deemed to limit the grant first above made):

   ...                                                                    [emphasis added]

[16]        The second relevant provision reads as follows:

<u>EIGHTH</u>: No rights granted herein shall remain in <u>or revert back</u> to Owner regardless of the time when any picture or pictures are made from the Property, and regardless whether or not any picture at all is made from the Property. Purchaser intends to produce a motion picture or pictures from the Property, but does not obligate itself to do so or to make any other use of the Property.

[emphasis added]

[17]        While both of the above quoted provisions speak generally to motion picture rights, it was not in dispute before me that Mr. Kelley's assignment of copyright in the Donnelly Books to Saroy Film Productions of Canada Limited purported to extend to publication rights as well as to motion picture rights.

[18]        Many years after the death of Mr. Kelley, the applicant, as executor and beneficiary of Mr. Kelley's estate, began to pursue an interest in the arrangement, whatever it might have been, between Mr. Kelley and the Roy respondents. Her enquiries of the Roy respondents, both directly and through her granddaughter, were effectively stonewalled. It was only after this proceeding was commenced that Samuel Roy produced a brief affidavit to which he annexed the documents constituting the agreement of assignment with Mr. Kelley.

[19]        In 1992, apparently after Pagurian Press Limited had ceased printing and publication of the Donnelly Books, Samuel Roy approached the president of Firefly with a view to having Firefly publish new editions of the Donnelly Books. Firefly agreed to publish new editions of the Books under license from Saroy Film Productions of Canada Limited, subject to receiving confirmation

from Samuel Roy that Pagurian Press Limited was releasing any publication rights it had to the Donnelly Books. Firefly's concern in this regard was apparently satisfied by vague assurances from Samuel Roy. Firefly commenced printing and publication and from time to time remitted royalties to Saroy Film Productions of Canada Limited.

[20]     When the applicant brought to the attention of Firefly her interest in the Donnelly Books, Firefly immediately ceased distribution of the Donnelly Books and withheld distribution of accumulated royalties then held by it, pending settlement of any dispute. Firefly cooperated with the applicant by supplying to her information and documentation available to it relating to its publication and distribution of the Donnelly Books, ostensibly under licence from Saroy Film Productions of Canada Limited.

[21]     On the 14th of March, 2000, the applicant registered her interest, as "owner", of the copyright in the Donnelly Books.

[22]     This proceeding followed.

## RELEVANT PROVISIONS OF THE COPYRIGHT ACT

[23]     The relevant provisions of the *Copyright Act,* which are extensive, are reproduced in a schedule to these reasons.

## THE ISSUES

[24]     The issues identified in the Amended Memorandum of Fact and Law filed on behalf of the applicant are the following:

     a)     whether the applicant is the owner of the copyright, including the reversionary interest, in the Donnelly Books;

     b)     whether the Pagurian Registration of copyright should be expunged; and

     c)     whether the applicant is entitled to statutory damages and/or an Order for payment to her of unpaid royalties.

[25]      The issues identified in the Amended Memorandum of Fact and Law filed on behalf of Firefly, to some extent overlapping with those identified on behalf of the applicant, are the following:

        a)      is the applicant the owner of the copyright in the Donnelly Books?

        b)      does Firefly's publication of the Donnelly Books under licence from Saroy Film Productions of Canada Limited infringe the applicant's copyright in the Donnelly Books;

        c)      does the applicant have any entitlement to the royalties being withheld by Firefly which are payable by Firefly under its licence Agreement with Saroy Film Productions of Canada Limited in respect of the period from May 1, 1999? and

        d)      is the applicant's claim precluded by virtue of the expiry of a relevant limitation period?

[26]      The only issue identified in the Memorandum of Fact and Law filed on behalf of the Roy respondents is whether copyright interest in the Donnellys Books passed by the agreement between Saroy Film Productions of Canada Limited and Mr. Kelley or was such agreement ineffectual, leaving the copyright interest in the Donnelly Books to pass by will to the applicant.

[27]      As earlier noted, Edperbrascan Corporation filed no material and did not appear at the hearing. Therefore, no issues were raised on its behalf.

ANALYSIS

        a)      Is the Applicant's Claim Barred by Limitation

[28]      Subsection 41(1) of the *Copyright Act* (the "*Act*"), set out in the Schedule to these reasons, provides that a Court may not award a civil remedy in relation to an infringement unless, first, in a case where a person such as the applicant here knew, or could reasonably have been expected to know of the infringement at the time it occurred, the proceeding is commenced within three (3) years after the infringement occurred, and secondly, where a person such as the applicant did not know, and could not reasonably have been expected to

know of the infringement at the time it occurred, the proceeding was commenced within three (3) years after the time when the applicant first knew or could reasonably have been expected to know of the infringement.

[29]      Subsection 41(2) provides that a Court may only apply the foregoing limitation period in favour of a party who has pled the limitation period.

[30]      The Roy respondents did not plead the limitation period. In the result, a limitation defence cannot operate in their favour.

[31]      Firefly did plead the limitation defence. Counsel for Firefly urges that, in 1993, the applicant was aware, or should have been aware, that Firefly was publishing The Black Donnellys. The same argument is made in respect of Vengeance of the Black Donnellys, from 1995.

[32]      The applicant's granddaughter, Coralie Ann Nott, who from the age of twelve (12) at the time when Mr. Kelley died, and more intensely since 1999, has pursued the issue of copyright in the Donnelly Books on behalf of her grandmother, attests that she first saw the Firefly edition of the Donnelly Books in bookstores in, or shortly before 1999. To that time, she had achieved no success in her efforts to obtain from the Roy respondents any information that would support a claim to copyright on their behalf.

[33]      In February of 2000, Ms. Nott, through her solicitor, first informed Firefly of her allegation that publication of the Donnelly Books by it was not legally authorized. Firefly replied by providing copies of the exchange of correspondence between itself and the Roy respondents that purported to authorize Firefly to publish the Donnelly Books. That correspondence, once again, provided no substantive evidence that the Roy respondents had the authority to grant such an authorization.

[34]      On the 14th of March, 2000, Ms. Nott procured registration of copyright in the Donnelly Books in her grandmother's name, once again to that time having received no satisfactory evidence of the rights of the Roy respondents.

[35]      This proceeding was commenced by Originating Notice of Application filed the 4th of October, 2000.

[36]       None of the foregoing attested allegations on behalf of the applicant were challenged on cross-examination.

[37]       I am satisfied on the evidence before me that, as between the applicant and Firefly, it cannot be said that the applicant knew, or could reasonably have been expected to know of infringement of copyright in the Donnelly Books before 1999. Further, I am satisfied that this proceeding was instituted within three (3) years from the time when the applicant first knew, or could reasonably have been expected to know, of the infringement.

[38]       In summary, neither the Roy respondents nor Firefly can succeed on the ground that the applicant's claim is barred by an applicable limitation.

b)     The Pagurian Copyright Registration

[39]       Subsection 55(1) of the *Act*, also set out in the Schedule, provides that application for registration of copyright in a work may be made by or on behalf the author of the work, the owner of the copyright in the work, an assignee of the copyright, or a person to whom an interest in the copyright has been granted by licence.

[40]       Subsection 57(4) of the *Act* provides that this Court may, on application of the Registrar of Copyrights or of any interested persons, order rectification of the Register of Copyrights by, among other things, expunging any entry wrongly made in or remaining on the Register.

[41]       Edperbrascan, as successor to Pagurian Press Limited, filed no materials on this application and failed to appear at hearing to support Pagurian's copyright registration of the published literary work, *The Black Donnellys*, which registration is dated the 15th of October, 1974.

[42]       Subsection 53(2) of the *Act* provides that a certificate of registration of copyright is evidence that the copyright subsists and that the person registered in the owner of the copyright. In *Circle Films Enterprises Inc.* v. *Canadian Broadcasting Corp.*[10], Mr. Justice Judson, for the Court, wrote at page 215:

In a case where there is evidence to contradict the certificate, then its weight may be affected, but in the absence of any such evidence, its weight is not to be minimized because no proof of title is required in the application for registration

and because the Copyright Office assumes no responsibility for the truth of the facts asserted in the application and conducts no independent examination. A plaintiff who produces this certificate has adduced some evidence in support of his case, sufficient to compel the tribunal of fact to act in his favour in the absence of any evidence to contradict it.

[43]      Here, I am satisfied that there is evidence to contradict Pagurian's certificate of registration. It was not in dispute before me that Mr. Kelley was the author of *The Black Donnellys*. The evidence before the Court demonstrates that there may be some doubt whether the late Mr. Kelley, and through him, the applicant, or the Roy respondents, is or are the owners of copyright in *The Black Donnellys*. But there is no evidence other than the registration in favour of Pagurian Press Limited, and the bald assertion on the introductory pages of the Pagurian edition of *The Black Donnellys* that is an exhibit to the affidavit of Juliet Fernandes sworn the 26th of October, 2000[11] to support the certificate.

[44]      I am satisfied on the totality of the evidence before the Court that the presumption in favour of Pagurian created by subsection 53(2) of the *Act* is overcome by the evidence contradicting that presumption. In the result, an Order will go expunging the certificate of registration of copyright in *The Black Donnellys*, dated the 15th of October, 1974 in favour of Pagurian Press Limited.

c)      As between Saroy Film Productions of Canada Limited and the Applicant, who is the owner of copyright in the Donnelly Books?

[45]      Section 6 of the *Act* provides that, except as otherwise expressly provided in the *Act*, the term for which copyright subsists is the life of the author, the remainder of the calendar year in which the author dies, and a period of fifty (50) years following the end of that calendar year. No other term is expressly provided by the *Act* in respect of works such as the Donnelly Books.

[46]      Counsel for the applicant urged that the assignment of copyright in the Donnelly Books from Mr. Kelley to Saroy Film Productions of Canada Limited was void as against the applicant by virtue of subsection 57(3) of the *Act* and/or subsection 14(1) of the *Act* or, in the alternative, was void as against the applicant with respect to the "reversionary term" of copyright. On the facts

of this matter, the reversionary term would be the balance of the calendar year that is twenty-five (25) years from the year of death of the author, 1982, and the remaining twenty-five (25) years of the term of copyright following that year. Each of these submissions will be examined in turn.

### i)    Subsection 57(3) of the *Act* - when an assignment or licence is void

[47]    Subsection 57(3) of the *Act* provides that an assignment, among other things, of copyright shall be adjudged void against any subsequent assignee or licensee for valuable consideration without actual notice, unless the prior assignment is registered as provided in the *Act* before registration of the subsequent assignment or licence for valuable consideration without actual notice. This provision raises directly the question of whether the applicant can be said to be an assignee or licensee for valuable consideration without actual notice, from Mr. Kelley as the first holder of copyright in the Donnelly Books.

[48]    I take it as uncontested that, at the time of Mr. Kelley's death, the applicant had no notice, actual or otherwise, of the assignment of copyright in the Donnelly Books from Mr. Kelley to Saroy Film Productions of Canada Limited. But there remains the question of whether the applicant, as executor and sole surviving named beneficiary of the will of Mr. Kelley, can be said to be an assignee or licensee for valuable consideration of copyright in the Donnelly Books. I am satisfied that the short answer to that question is "she cannot".

[49]    Mr. Kelley's will[12] consisted of a stationer's form with certain of the blanks filled in. It directed that all of his "...just debts and funeral and Testamentary expenses be paid and satisfied by my Executor...", the applicant. It is noteworthy that it did not transfer or assign, let alone licence, to the applicant, as executor, all of his "...Real and Personal Estate..." to be dealt with as directed. Rather, after directing the applicant to pay and satisfy his just debts and funeral and testamentary expenses, the applicant "...Devise[d] and Bequeath[ed] the Real and Personal Estate of which I may die possessed in the manner following, that is to say:" -

To my wife Ethel Grace Kelley

All income from my Books and any money received from any other source, such as Movies, etc.

To be paid to my wife.

In the event of her death all moneyies [sic] shall be paid to [the applicant] from the sales to my Books or from any other source.

Once again, I am satisfied that the bequest to the applicant could in no sense be interpreted as an assignment, let alone a licence to the applicant since Mr. Kelley's wife had predeceased him, of any copyright in the Donnelly Books that remained in Mr. Kelley. I further note that the blank space following the introduction of the residual clause in Mr. Kelley's will form remained just that, a blank space.

[50]          Further, even if the applicant were found to be an assignee or a licensee, either as Executor or as beneficiary under Mr. Kelley's will, I am satisfied that it could not be said to be an assignment or licence "for valuable consideration". In support of an argument that it was such an assignment or licence "for valuable consideration", counsel referred me to *Deglman* v. *Guaranty Trust, et al*[13]. I am satisfied that that case is entirely distinguishable. At page 729, Mr. Justice Cartwright, for the majority, noted:

The appeal was argued on the assumption, that there was an oral contract made between the respondent and the late Laura Constantineau Brunet under the terms of which the former was to perform certain services in consideration whereof the latter was to devise No. 548 Besserer Street to him... .

While, as I have earlier noted in these reasons, the applicant, as landlady to the Kelleys, took a benevolent interest in their welfare in their declining years, there is no evidence whatsoever before me that a contract, express or implied, oral or otherwise, existed between the applicant and Mr. Kelley that led to him identifying the applicant as his executor and sole surviving named beneficiary.

[51]      The applicant cannot succeed on the basis of subsection 57(3).

### ii)      Subsection 14(1) of the *Act* - whether a grant of an interest is wholly inoperative

[52]      Subsection 13(4) of the *Act* provides that the owner of copyright in any work may assign that right, "...either for the whole term of the copyright or

for any other part thereof," and may grant any interest in the right by licence. The same subsection provides that any such assignment or grant is valid only if it is in writing and duly executed.

[53]      Subsection 14(1) of the *Act*, on its face, acts as a limitation on subsection 13(4). For ease of reference, subsection 14(1) is repeated here in full:

14. (1) Where the author of a work is the first owner of the copyright therein, no assignment of the copyright and <u>no grant of any interest therein, made by him, otherwise than by will, after June 4, 1921, is operative to vest in the assignee or grantee any rights with respect to the copyright in the work beyond the expiration of twenty-five years from the death of the author</u>, and the reversionary interest in the copyright expectant on the termination of that period shall, on the death of the author, notwithstanding any agreement to the contrary, devolve on his legal representatives as part of the estate of the author, <u>and any agreement entered into by the author as to the disposition of such reversionary interest is void.</u>

[emphasis added]

14. (1) Lorsque l'auteur d'une oeuvre est le premier titulaire du droit d'auteur sur cette oeuvre, aucune cession du droit d'auteur <u>ni aucune concession d'un intérêt dans ce droit, faite par lui - autrement que par testament - après le 4 juin 1921, n'a l'effet d'investir le cessionnaire ou le concessionnaire d'un droit quelconque, à l'égard du droit d'auteur sur l'oeuvre, pendant plus de vingt-cinq ans à compter de la mort de l'auteur</u>; la réversibilité du droit d'auteur, en expectative à la fin de cette période, est dévolue, à la mort de l'auteur, nonobstant tout arrangement contraire, à ses représentants légaux comme faisant partie de ses biens; <u>toute stipulation conclue par lui concernant la disposition d'un tel droit de réversibilité est nulle.</u>                                            [je souligne]

- 
- Counsel for the applicant urged that the underlined words in the closing three (3) lines of subsection 14(1) of the *Act* must be read as rendering any agreement, otherwise valid under subsection 13(4) of the *Act*, entirely void

where it purports to assign the reversionary interest as described in subsection 14(1). Counsel urged this interpretation on two (2) grounds: first, because if the closing words are not so read, they would be purely duplicative of the earlier words in the subsection that I have emphasized; and secondly, because only such an interpretation accords with the grammatical structure of the closing words.

[55]        By contrast, counsel for Firefly urged that subsections 13(4) and 14(1) of the *Act* must be read together and that the interpretation urged on behalf of the applicant would be entirely inconsistent with the objective of subsection 13(4) and the objectives of the *Act*, read as a whole. Counsel for Firefly referred me to two (2) passages from *Chappell & Co. Ltd.* v. *Redwood Music Ltd.*,[14] commenting on a provision equivalent to subsection 14(1) of the *Act* in the United Kingdom legislation. At page 823, Lord Salmon wrote:

I agree with the Court of Appeal that the object of the proviso was to safeguard authors and their heirs from the consequences of any imprudent disposition which authors might make of the fruits of their talent and originality.

To this end, the proviso enacts that an assignment of a copyright by its first owner shall not be operative beyond 25 years after his death; and the copyright shall then devolve for its remaining 25 years on his legal personal representatives as part of his estate.

At pages 825 and 826, Lord Russell of Killowen wrote:

The proviso (a) enacts that no such assignment or grant by licence can operate to vest in the assignee or grantee any right or interest in the copyright extending in time beyond the expiration of 25 years from the death of the author of the work, (b) enacts that the reversionary interest for the remaining 25 years of the copyright term shall on the author's death devolve on his legal representative as part of his estate and (c) enacts that any agreement by the author as to the disposition of such reversionary interest shall be null and void. Thus it is made impossible for the author either to assign or license, or to contract to assign or license, in manner extending into the reversionary 25 year period, though his legal personal representatives (or a beneficiary after assent) can do so at any time after the author's death.

[56]    Counsel for the applicant urged that the foregoing passages should not be relied on because the facts underlying the *Chappell* decision are substantially different from the facts of this matter. I am satisfied that the factual differences are irrelevant and that the two (2) quoted passages are highly relevant to the interpretation of subsection 14(1) of the *Act*. I will interpret subsection 14(1) in a manner consistent with the interpretation provided by the quoted passages. I am satisfied that the interpretation urged on behalf of the applicant would simply not be consistent with the scheme of the *Act* as a whole and, more particularly, with the scheme of subsections 13(4) and 14(1) of the *Act*, read together.

### iii)    Subsection 14(1) of the *Act*, the reversionary interest

[57]    I am satisfied that provisions from the assignment from Mr. Kelley to Saroy Film Productions of Canada Limited that are quoted earlier in these reasons do purport to assign copyright, at least in respect of motion pictures, and I am satisfied more broadly, in relation to the reversionary period. To the extent that they purport to do so, they are void with respect to the reversionary interest. With respect to the term of copyright from the date of assignment to the commencement of the reversionary period as defined in subsection 14(1), I find the assignment from Mr. Kelley to Saroy Film Productions of Canada Limited to be valid under subsection 13(4) of the *Act*.

[58]    Pursuant to subsection 14(1) of the *Act*, the reversionary interest devolves upon the applicant as Mr. Kelley's legal representative, as part of the estate of Mr. Kelley. I was not called upon in the terms of the issues identified before me, or indeed in explicit terms in the argument before me, under the terms of Mr. Kelley's will, to determine the impact of the devolution of the reversionary interest on the applicant, as the sole named beneficiary. I decline to undertake any such analysis and, indeed, I entertained very serious doubts whether I have the jurisdiction to do so.

[59]    In the result, I determine that as between Saroy Film Productions of Canada Limited and the applicant, Saroy Film Productions of Canada Limited is the owner of copyright in the Donnellys Books to the date that is 25 years from the death of Mr. Kelley, that is to say February 14th, 2007. Thereafter, by virtue of subsection 14(1) of the *Act*, the reversionary interest in the copyright in the Donnelly Books devolves upon the applicant as his executor.

d)      The Applicant's Entitlement to Statutory Damages and to Withheld Royalties

[60]      In light of my conclusions to this point, it follows that the applicant has no entitlement to statutory damages, as provided for in subsection 38.1(1) of the *Act*. Equally, it follows that the applicant has no entitlement to royalties withheld by Firefly after it received notice of the applicant's claimed interest in copyright in the Donnelly Books.

e)      Infringement by Firefly

[61]      Once again given my findings to this point, I conclude that Firefly, through its publication and distribution of the Donnelly Books, has infringed no copyright interest of the applicant.

### f)      Reliefs other than Costs

[62]      A declaration will go that copyright registration Serial No. 254758 dated October 15, 1974, as registered to Pagurian Press Limited, is invalid. Such registration will be expunged under paragraph 57(4)(*b*) of the *Act* as an entry wrongly made in or remaining on the Register of Copyrights.

[63]      A further declaration will go that, as between the applicant and the respondents, Saroy Film Productions of Canada Limited is the owner by assignment of copyright in the Donnelly books for a term commencing with the date of the assignment of copyright in those books from Mr. Kelley to Saroy Film Productions of Canada Limited, and continuing to the 14th of February, 2007. Thereafter, for the balance of the term of copyright in the Donnelly Books as provided by section 6 of the *Act*, copyright devolves on the applicant, as Mr. Kelley's legal representative, as part of Mr. Kelley's estate.

[64]      Subject to what follows as to costs, in all other respects, the applicant's application will be dismissed, as against all respondents.

[65]      Given the foregoing result, once again subject to what follows as to costs, the reliefs requested on behalf of Firefly will be dismissed. The Roy respondents having claimed no relief and Edperbrascan having filed no materials and not having appeared at hearing, no further reliefs will be granted in respect of them.

g)        **Costs**

[66]        The applicant has been only marginally successful on this application. That being said, she certainly cannot be faulted for having brought the application in light of the completely uncooperative attitude displayed by the Roy respondents who were the only ones in a position to effectively answer the questions that arose in the minds of the applicant and her granddaughter surrounding the ownership of copyright in the Donnelly Books. In the circumstances, an Order for costs on the ordinary scale will go in favour of the applicant against the Roy respondents.

[67]        Firefly was equally inconvenienced, was put at risk, and was likely deprived of revenues by reason of the intransigence of the Roy respondents. The Roy respondents having failed to effectively identify their copyright interests in the Donnelly Books to the applicant when asked to so do as and to effectively defend their copyright interests when called upon in this proceeding to do so, interests through which Firefly claimed its own interests, Firefly was put to what I assume must be substantial legal expense to defend its interests and, in so doing, to defend the interests of the Roy respondents. In all of the circumstances, an Order will go for costs in favour of Firefly, as against the Roy respondents, taxed, if not otherwise agreed upon, on the basis of the upper end of column V of Tariff B to the *Federal Court Rules, 1998*.

[68]        There will be no Order as to costs for or against Edperbrascan Corporation.

_____

    J. F.C.C.


Ottawa, Ontario

September 12, 2002


**SCHEDULE**

2. In this Act,

...

"book" means a volume or a part or division of a volume, in printed form, but does not include

(a) a pamphlet,

(b) a newspaper, review, magazine or other periodical,

(c) a map, chart, plan or sheet music where the map, chart, plan or sheet music is separately published, and

(d) an instruction or repair manual that accompanies a product or that is supplied as an accessory to a service;

...

"copyright" means the rights described in

(a) section 3, in the case of a work,

(b) sections 15 and 26, in the case of a performer's performance,

(c) section 18, in the case of a sound recording, or

(d) section 21, in the case of a communication signal;

...

"legal representatives" includes heirs, executors, administrators, successors and assigns, or agents or attorneys who are thereunto duly authorized in writing;

...

"work" includes the title thereof when such title is original and distinctive;

...

3. (1) For the purposes of this Act, "copyright", in relation to a work, means the sole right to produce or reproduce the work or any substantial part thereof in any material form whatever, to perform the work or any substantial part thereof in public or, if the work is unpublished, to publish the work or any substantial part thereof, and includes the sole right

(a) to produce, reproduce, perform or publish any translation of the work,

...

2. Les définitions qui suivent s'appliquent à la présente loi.

...

« _livre_ » Tout volume ou toute partie ou division d'un volume présentés sous forme imprimée, à l'exclusion_ :

a) des brochures;

b) des journaux, revues, magazines et autres périodiques;

c) des feuilles de musique, cartes, graphiques ou plans, s'ils sont publiés séparément;

d) des manuels d'instruction ou d'entretien qui accompagnent un produit ou sont fournis avec des services.

...

« _droit d'auteur_ » S'entend du droit visé_ :

a) dans le cas d'une oeuvre, à l'article 3;

b) dans le cas d'une prestation, aux articles 15 et 26;

c) dans le cas d'un enregistrement sonore, à l'article 18;

d) dans le cas d'un signal de communication, à l'article 21.

...

« représentants légaux » Sont compris parmi les représentants légaux les héritiers, exécuteurs testamentaires, administrateurs, successeurs et ayants droit, ou les agents ou fondés de pouvoir régulièrement constitués par mandat écrit.

...

« oeuvre » Est assimilé à une oeuvre le titre de l'oeuvre lorsque celui-ci est original et distinctif.

...

3. (1) Le droit d'auteur sur l'oeuvre comporte le droit exclusif de produire ou reproduire la totalité ou une partie importante de l'oeuvre, sous une forme matérielle quelconque, d'en exécuter ou d'en représenter la totalité ou une partie importante en public et, si l'oeuvre n'est pas publiée, d'en publier la totalité ou une partie importante; ce droit comporte, en outre, le droit exclusif_:

a) de produire, reproduire, représenter ou publier une traduction de l'oeuvre;

...

6. The term for which copyright shall subsist shall, except as otherwise expressly provided by this Act, be the life of the author, the remainder of the calendar year in which the author dies, and a period of fifty years following the end of that calendar year.

...

13. (1) Subject to this Act, the author of a work shall be the first owner of the copyright therein.

...

(4) The owner of the copyright in any work may assign the right, either wholly or partially, and either generally or subject to limitations relating to territory, medium or sector of the market or other limitations relating to the scope of the assignment, and either for the whole term of the copyright or for any other part

thereof, and may grant any interest in the right by licence, but no assignment or grant is valid unless it is in writing signed by the owner of the right in respect of which the assignment or grant is made, or by the owner's duly authorized agent.

...

14. (1) Where the author of a work is the first owner of the copyright therein, no assignment of the copyright and no grant of any interest therein, made by him, otherwise than by will, after June 4, 1921, is operative to vest in the assignee or grantee any rights with respect to the copyright in the work beyond the expiration of twenty-five years from the death of the author, and the reversionary interest in the copyright expectant on the termination of that period shall, on the death of the author, notwithstanding any agreement to the contrary, devolve on his legal representatives as part of the estate of the author, and any agreement entered into by the author as to the disposition of such reversionary interest is void.

...

27. (1) It is an infringement of copyright for any person to do, without the consent of the owner of the copyright, anything that by this Act only the owner of the copyright has the right to do.

6. Sauf disposition contraire expresse de la présente loi, le droit d'auteur subsiste pendant la vie de l'auteur, puis jusqu'à la fin de la cinquantième année suivant celle de son décès.

...

13. (1) Sous réserve des autres dispositions de la présente loi, l'auteur d'une oeuvre est le premier titulaire du droit d'auteur sur cette oeuvre.

...

(4) Le titulaire du droit d'auteur sur une oeuvre peut céder ce droit, en totalité ou en partie, d'une façon générale ou avec des restrictions relatives au territoire, au support matériel, au secteur du marché ou à la portée de la cession, pour la durée complète ou partielle de la protection; il peut également concéder, par une

licence, un intérêt quelconque dans ce droit; mais la cession ou la concession n'est valable que si elle est rédigée par écrit et signée par le titulaire du droit qui en fait l'objet, ou par son agent dûment autorisé.

...

14. (1) Lorsque l'auteur d'une oeuvre est le premier titulaire du droit d'auteur sur cette oeuvre, aucune cession du droit d'auteur ni aucune concession d'un intérêt dans ce droit, faite par lui - autrement que par testament - après le 4 juin 1921, n'a l'effet d'investir le cessionnaire ou le concessionnaire d'un droit quelconque, à l'égard du droit d'auteur sur l'oeuvre, pendant plus de vingt-cinq ans à compter de la mort de l'auteur; la réversibilité du droit d'auteur, en expectative à la fin de cette période, est dévolue, à la mort de l'auteur, nonobstant tout arrangement contraire, à ses représentants légaux comme faisant partie de ses biens; toute stipulation conclue par lui concernant la disposition d'un tel droit de réversibilité est nulle.

...

27. (1) Constitue une violation du droit d'auteur l'accomplissement, sans le consentement du titulaire de ce droit, d'un acte qu'en vertu de la présente loi seul ce titulaire a la faculté d'accomplir.

...

34. (1) Where copyright has been infringed, the owner of the copyright is, subject to this Act, entitled to all remedies by way of injunction, damages, accounts, delivery up and otherwise that are or may be conferred by law for the infringement of a right.

...

(3) The costs of all parties in any proceedings in respect of the infringement of a right conferred by this Act shall be in the discretion of the court.

(4) The following proceedings may be commenced or proceeded with by way of application or action and shall, in the case of an application, be heard and determined without delay and in a summary way:

(a) proceedings for infringement of copyright or moral rights;

(b) proceedings taken under section 44.1, 44.2 or 44.4; and

(c) proceedings taken in respect of

(i) a tariff certified by the Board under Part VII or VIII, or

(ii) agreements referred to in section 70.12.

(5) The rules of practice and procedure, in civil matters, of the court in which proceedings are commenced by way of application apply to those proceedings, but where those rules do not provide for the proceedings to be heard and determined without delay and in a summary way, the court may give such directions as it considers necessary in order to so provide.

...

(7) In this section, "application" means a proceeding that is commenced other than by way of a writ or statement of claim.

...

35. (1) Where a person infringes copyright, the person is liable to pay such damages to the owner of the copyright as the owner has suffered due to the infringement and, in addition to those damages, such part of the profits that the infringer has made from the infringement and that were not taken into account in calculating the damages as the court considers just.

...

...

34. (1) En cas de violation d'un droit d'auteur, le titulaire du droit est admis, sous réserve des autres dispositions de la présente loi, à exercer tous les recours - en vue notamment d'une injonction, de dommages-intérêts, d'une reddition de compte ou d'une remise - que la loi accorde ou peut accorder pour la violation d'un droit.

...

(3) Les frais de toutes les parties à des procédures relatives à la violation d'un droit prévu par la présente loi sont à la discrétion du tribunal.

(4) Les procédures suivantes peuvent être engagées ou continuées par une requête ou une action_ :

a) les procédures pour violation du droit d'auteur ou des droits moraux;

b) les procédures visées aux articles 44.1, 44.2 ou 44.4;

c) les procédures relatives aux tarifs homologués par la Commission en vertu des parties VII et VIII ou aux ententes visées à l'article 70.12.

Le tribunal statue sur les requêtes sans délai et suivant une procédure sommaire.

(5) Les requêtes visées au paragraphe (4) sont, en matière civile, régies par les règles de procédure et de pratique du tribunal saisi des requêtes si ces règles ne prévoient pas que les requêtes doivent être jugées sans délai et suivant une procédure sommaire. Le tribunal peut, dans chaque cas, donner les instructions qu'il estime indiquées à cet effet.

...

(7) Au présent article, « _requête_ » s'entend d'une procédure engagée autrement que par un bref ou une déclaration.

...

35. (1) Quiconque viole le droit d'auteur est passible de payer, au titulaire du droit qui a été violé, des dommages-intérêts et, en sus, la proportion, que le tribunal peut juger équitable, des profits qu'il a réalisés en commettant cette violation et qui n'ont pas été pris en compte pour la fixation des dommages-intérêts.

...

37. The Federal Court has concurrent jurisdiction with provincial courts to hear and determine all proceedings, other than the prosecution of offences under

section 42 and 43, for the enforcement of a provision of this Act or of the civil remedies provided by this Act.

...

38.1 (1) Subject to this section, a copyright owner may elect, at any time before final judgment is rendered, to recover, instead of damages and profits referred to in subsection 35(1), an award of statutory damages for all infringements involved in the proceedings, with respect to any one work or other subject-matter, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than_$500 or more than_$20,000 as the court considers just.

...

41. (1) Subject to subsection (2), a court may not award a remedy in relation to an infringement unless

(a) in the case where the plaintiff knew, or could reasonably have been expected to know, of the infringement at the time it occurred, the proceedings for infringement are commenced within three years after the infringement occurred; or

(b) in the case where the plaintiff did not know, and could not reasonably have been expected to know, of the infringement at the time it occurred, the proceedings for infringement are commenced within three years after the time when the plaintiff first knew, or could reasonably have been expected to know, of the infringement.

(2) The court shall apply the limitation period set out in paragraph (1)(a) or (b) only in respect of a party who pleads a limitation period.

...

53.(2) A certificate of registration of copyright is evidence that the copyright subsists and that the person registered is the owner of the copyright.

...

37. La Cour fédérale, concurremment avec les tribunaux provinciaux, connaît de toute procédure liée à l'application de la présente loi, à l'exclusion des poursuites visées aux articles 42 et 43.

...

38.1 (1) Sous réserve du présent article, le titulaire du droit d'auteur, en sa qualité de demandeur, peut, avant le jugement ou l'ordonnance qui met fin au litige, choisir de recouvrer, au lieu des dommages-intérêts et des profits visés au paragraphe 35(1), des dommages-intérêts préétablis dont le montant, d'au moins 500_$ et d'au plus 20 000_$, est déterminé selon ce que le tribunal estime équitable en l'occurrence, pour toutes les violations - relatives à une oeuvre donnée ou à un autre objet donné du droit d'auteur - reprochées en l'instance à un même défendeur ou à plusieurs défendeurs solidairement responsables.

...

41. (1) Sous réserve du paragraphe (2), le tribunal saisi d'un recours en violation ne peut accorder de réparations que si_:

a) le demandeur engage des procédures dans les trois ans qui suivent le moment où la violation a eu lieu, s'il avait connaissance de la violation au moment où elle a eu lieu ou s'il est raisonnable de s'attendre à ce qu'il en ait eu connaissance à ce moment;

b) le demandeur engage des procédures dans les trois ans qui suivent le moment où il a pris connaissance de la violation ou le moment où il est raisonnable de s'attendre à ce qu'il en ait pris connaissance, s'il n'en avait pas connaissance au moment où elle a eu lieu ou s'il n'est pas raisonnable de s'attendre à ce qu'il en ait eu connaissance à ce moment.

(2) Le tribunal ne fait jouer la prescription visée aux alinéas (1)a) ou b) qu'à l'égard de la partie qui l'a invoquée.

...

53.(2) Le certificat d'enregistrement du droit d'auteur constitue la preuve de l'existence du droit d'auteur et du fait que la personne figurant à l'enregistrement en est le titulaire.

...

55. (1) Application for the registration of a copyright in a work may be made by or on behalf of the author of the work, the owner of the copyright in the work, an assignee of the copyright, or a person to whom an interest in the copyright has been granted by licence.

...

57.(3) Any assignment of copyright, or any licence granting an interest in a copyright, shall be adjudged void against any subsequent assignee or licensee for valuable consideration without actual notice, unless the prior assignment or licence is registered in the manner prescribed by this Act before the registering of the instrument under which the subsequent assignee or licensee claims.

(4) The Federal Court may, on application of the Registrar of Copyrights or of any interested person, order the rectification of the Register of Copyrights by

(a) the making of any entry wrongly omitted to be made in the Register,

(b) the expunging of any entry wrongly made in or remaining on the Register, or

(c) the correction of any error or defect in the Register,

and any rectification of the Register under this subsection shall be retroactive from such date as the Court may order.

55. (1) La demande d'enregistrement d'un droit d'auteur sur une oeuvre peut être faite par l'auteur, le titulaire ou le cessionnaire du droit d'auteur, ou le titulaire d'une licence accordant un intérêt dans ce droit, ou en leur nom.

57. (3) Tout acte de cession d'un droit d'auteur ou toute licence concédant un intérêt dans un droit d'auteur doit être déclaré nul à l'encontre de tout cessionnaire du droit d'auteur ou titulaire de l'intérêt concédé qui le devient subséquemment à titre onéreux sans connaissance de l'acte de cession ou licence antérieur, à moins que celui-ci n'ait été enregistré de la manière prévue par la

présente loi avant l'enregistrement de l'instrument sur lequel la réclamation est fondée.

(4) La Cour fédérale peut, sur demande du registraire des droits d'auteur ou de toute personne intéressée, ordonner la rectification d'un enregistrement de droit d'auteur effectué en vertu de la présente loi :

a) soit en y faisant une inscription qui a été omise du registre par erreur;

b) soit en radiant une inscription qui a été faite par erreur ou est restée dans le registre par erreur;

c) soit en corrigeant une erreur ou un défaut dans le registre.

Pareille rectification du registre a effet rétroactif à compter de la date que peut déterminer la Cour.

## FEDERAL COURT OF CANADA

## TRIAL DIVISION

## NAMES OF COUNSEL AND SOLICITORS OF RECORD

**DOCKET:**                T-1842-00

**STYLE OF CAUSE:** THERESIA WINKLER, in her personal capacity and

as Executor of the Estate of Thomas P. Kelley,            Deceased

v. SAMUEL ROY EL AL

**PLACE OF HEARING:**      Toronto, Ontario

**DATE OF HEARING:**      August 6, 2002

REASONS FOR ORDER: THE HONOURABLE MR. JUSTICE GIBSON

**DATED:**                    September 12, 2002


<u>APPEARANCES</u>:

Mr. Peter W. J. Wells                                        FOR APPLICANT

LANG MICHENER

Ms. Barbara Grossman                              FOR RESPONDENT

FRASER MILNER CASGRAIN LLP             Firefly Books Ltd.


Mr. Marc Koplowitz                                        FOR
RESPONDENTS,

Mark Koplowitz Associates                                Samuel Roy,

Aztec Investments Limited

Elane Holdings Limited and

Falwyn Developments Limited

c.o.b. as Samuel Roy

Enterprises and Saroy Film

Productions of Canada Limited

---

[1]        R.S.C. 1985, c. C-42, as amended.

[2]        SOR/98-106.

[3]      Applicant's Application Record, tab 6C, page 96.

[4]      Applicant's Application Record, Tab 6A, page 90.

[5]      Applicant's Application Record, tab 6B, page 94.

[6]      B. Bergman, "Paradise Found: Hidden Gems in the Hinterland" *Maclean's* 115:16 (22 April, 2002) 31 at 40.

[7]      Roy respondents' Record, page 4.

[8]      Roy respondents' Record, page 25.

[9]      Roy respondents' Record, pages 8 to 24 as amended by the amending agreement at pages 26 and 27.

[10]     (1959), 1959 CanLII 74 (SCC), 20 D.L.R. (2d) 211 (S.C.C.).

[11]     Applicant's Application Record, tab 6A, page 90.

[12]     Applicant's Applicant Record, tab 4C, pages 23 and 24.

[13]     1954 CanLII 2 (SCC), [1954] S.C.R. 725.

[14]     [1980] 2 All E.R. 817 (H.L.).