# EXHIBIT D

THE SUPREME COURT

JU405

Finlay C.J.
Walsh J.
Henchy J.
Hederman J.
McCarthy J.

(74/87)

BETWEEN

## JOHN FRANCIS KUTCHERA

Plaintiff

and

## BUCKINGHAM INTERNATIONAL HOLDINGS LIMITED (FORMERLY ALLIED VENTURE PROPERTIES LIMITED)

Defendants

JUDGMENT OF WALSH J. delivered on the 1st day of March 1988

[FINLAY C.J. AGREEING, HEDERMAN CONC]

By order of the High Court of the 1st December 1986

the plaintiff was given liberty to issue an originating

Plenary Summons against the defendants and, as it appeared

to the Court that the intended action fell within the

class of actions set out in O. 11, r. 1(e)(III) of the

Rules of the Superior Courts, it was ordered that the

plaintiff be at liberty to serve notice of the said

summons on the defendants at suite 1,500, 324 8th Avenue,

South West Calgary, Alberta in Canada.   In an affidavit of

service Roger Barrette of the city of Calgary in the

province of Alberta, Canada swore that he personally

served upon the defendants true copies of the order

and the notice of the summons of the High Court referred

to, and that the service was effected on the 16th

December 1986.

The defendants are a Canadian public company

incorporated in the province of Alberta in Canada.

The plaintiff lives in London, England.   He is not an

Irish citizen.

The contract the subject of the proceedings was an

agreement for the loan of money to the defendants, described

therein as "the borrowers".   In the contract Mr. Brian

Leigh with an address in Nassau in the Bahamas, and a

limited company called Weybridge Properties Limited, and

having its registered office in the Bahamas  were

described as "the lenders".   Mr. Michael Sylvester Birrane

with an address in Dublin, Ireland, was referred to in

the contract as "the guarantor".   In the

agreement  the  borrowers  acknowledged  and  the

( 3 )

lenders declared that they the lenders acted as agents

for the plaintiff, whose address at that time was given

as being in Transvaal, South Africa.    The defendants

borrowed  150,000 Canadian dollars and as a consideration

thereof, as well as agreeing to repay this sum, the

defendants undertook to engage in certain transactions

concerning the transfer of shares in their company to

the plaintiff or his assignees.    Paragraph 10 of the

Agreement which is the final clause in the Agreement

reads as follows:-

> "This Agreement and all aspects herein
> shall be construed and governed by the
> Laws of the Republic of Ireland (Eire)
> and shall be deemed to have been made in
> the Republic of Ireland and subject only
> to the jurisdiction of the Irish Courts
> and no other jurisdiction and the parties
> hereto irrevocably submit to the jurisdiction
> of the Courts of the Republic of Ireland in
> all or any matter of dispute arising out
> of this Agreement."

Notwithstanding  the error in the English language

version of the name of the State  it was correctly

( 4 )

00412

named  in the Irish language, there is no dispute as to

the fact that the jurisdiction referred to was the

jurisdiction and laws of this State which in the

English language can be correctly described only as

Ireland and the laws of Ireland.

On the 11th February 1987 the defendants entered

an appearance in the High Court which had written upon

it "for the purpose of contesting jurisdiction only."

This appearance was entered on behalf of the defendants

by a firm of solicitors carrying on business in Dublin.

On the 12th February 1987 a notice of motion on

behalf of the defendants was served seeking an order

pursuant to O. 12, r. 26 of the Rules of the Superior

Courts to set aside the service of the notice of the

plaintiff's summons upon the defendants.  The motion

was heard by Miss Justice Carroll who delivered

judgment on the 22nd February 1987 and made an order

discharging the previous order of the High Court

granting liberty to serve  notice of the plenary

summons upon the defendants.  Against this order

(5)

J0413

of Miss Justice Carroll the present appeal to this

Court has been taken.

The grounds upon which the learned Judge discharged

the order were that the High Court should refuse to

accept jurisdiction on the ground that Irish law "is

unconnected with the realities of the contract.    It

has no function to determine the validity of this

contract which must be determined by reference to

Canadian law."

In my view the opinion of the learned High

Court Judge was incorrect.   It would appear from her

judgment that because of the fact that it might become

necessary to consider some aspects of Canadian law

in the course of the case with reference to the capacity

of the defendants to enter into the contract she thought

this was tantamount to saying that Canadian law was the

proper law of the contract, "thus contradicting

clause 10."

There is no dispute between the parties as to what

is the proper law of the contract.   It is quite

(6)

clearly Irish law because that is the express

provision of the contract according to the agreement

of the parties.   The proper law of the contract in

this case is Irish law and the parties have expressly

agreed that their rights and obligations under the

contract are to be determined in accordance with Irish

law, and to be determined by an Irish Court.   So far

as the proper law of the contract is concerned there

is therefore no question of having to try to discover

whether the contract has, or to what extent it has, a

connection  with this country.   Irish law  is

applicable because the parties have chosen it and, in

the absence of strong evidence to the contrary, of which

there is none, the parties must be deemed to have

intended to refer to the domestic rules of Irish law, and

not to the conflict rules of Irish law.   It is well

established that in the absence of any such strong evidence

the doctrine of renvoi is not applicable in the law

of contract.   This unfortunate doctrine, which has been

variously described as being the result of a series of

accidents and as the bête noire of private international

law, happily does   not have to be considered by any

Irish Court in the present case, nor will our Courts

have to consider to what extent, if any, this

                                   Irish
doctrine is part of/private international law.   The

contract therefore falls to be construed and

interpreted by no law save Irish law, and therefore

there is no question of the Irish Courts being called

upon to apply any foreign law in so far as the

construction or interpretation of the contract is

concerned.   It may well be necessary at some stage

to refer to the law of Alberta in so far as any issue

may arise  concerning the constitution of the defendant

company, because under the conflict of law rules

matters concerning the constitution of a corporation

are governed by the laws of the place of the incorporation of the

company.   In so far as the case may be concerned with

the capacity of the corporation to enter into any legal

transaction  this is a question which would be governed

by the constitution of the company itself and by the

(8)                                           JG410

law which governs the transaction, namely, Irish law.

If an Irish Court is called upon to apply any part

of a foreign law the procedures for doing so are already

well settled.    See the decisions of the former

Supreme Court of Justice in <u>O'Callaghan v. O'Sullivan</u>

1925 1 I.R.    p. 90 and <u>MacNamara and Son v. The Owner</u>

<u>of the Steamship "Hatteras"</u> 1933 I.R. 675.    These

cases quite clearly establish that in Irish law

foreign law must generally be proved by expert evidence.

The burden of proving  foreign law lies upon the party

who bases a claim or a defence upon the foreign law,

and if that party produces no evidence, or only

insufficient evidence of the foreign law, the Court

applies Irish law.    These cases also establish

that if there is any conflicting evidence as to what

is the foreign law, or what is the correct interpretation

of the foreign law, then it is a matter for the Irish

Court to decide as between the conflicting expert

testimonies.    The possibility that some foreign law

                          be
may need to/applied in a case cannot be a justification

for an Irish Court refusing to hear the case.

The parties to the present contract clearly and expressly chose Irish law  and it has not been disputed by the parties in this Court that Irish law is the applicable law or the proper law of the contract. While Irish law is a foreign law to all the parties to this contract  it may not be particularly surprising that they have chosen it in view of the diversity of laws to which they might have been subject.  In the course of this case it appeared that while the company was registered in Alberta under the laws of Alberta, apparently its principal place of business is Ontario, and most of its directors live in Hong Kong.

In this Court the case was really contested on the basis of the defendants' claim that the case should not be submitted to an Irish jurisdiction.  In other words the defendants are seeking to avoid the terms of the contract to which they agreed in respect of this matter. As in the case of the proper law, the parties to this contract expressly chose that Irish Courts should have

(10)

00418

exclusive jurisdiction, notwithstanding that the Irish

Courts constitute a foreign jurisdiction for all of the

parties.

O. 11, r. 3(1) of the Rules of the Superior Courts

provides at paragraph 3(1) that

> "the parties to any contract may agree -
> (a) that the Court shall have jurisdiction to
>     entertain any proceeding in respect of such
>     contract, and also, or in the alternative;
>
> (b) that service of any summons in any such
>     proceeding may be effected at any place
>     within or out of the jurisdiction on any
>     party or on any person on behalf of any
>     party or in any manner specified or
>     indicated in such contract."

In the present case the contract did not provide

the special provision relating to service of summons etc.

but that is irrelevant to the present case.

The fact that the parties in this case have

submitted in their contract to the jurisdiction of an

Irish Court would be a most important  factor in the

enforcement of any judgment abroad.   It is well

established in a series of decisions, not merely in

this jurisdiction but in the jurisdiction of other

common law countries that agreement by contract to

submit to the jurisdiction of a foreign Court is an

unequivocal acceptance of the jurisdiction of that Court,

irrespective of whether the defendant fails to appear or

fails to contest the case.    See the judgment of Kenny J.

in International Alltex Corporation v. Lawler Creations

Ltd. 1965 I.R. 264.    It would appear that this is also

the law in Canada according to the decision of the

Overseas Food Importers and Distributors v. Brandt

1978 93 DLR 317.    The United States Supreme Court in

the case of Hilton v. Guyot 1895 159 U.S. 113 at

pp. 202-204 held that even when there has not been an

express submission to jurisdiction of a foreign Court

once the Court was satisfied that the system of the

jurisprudence in question was likely to secure an impartial

administration of justice between the citizens of that

country and those of other countries, and where there was

nothing to show prejudice or fraud in procuring the

judgment   or any other special reason why the comity of

the nation should not allow its full effect, recognition
would not be withheld.    Other and similar questions have
arisen in several English and U.S. cases concerning the
effect of entering a conditional appearance in a foreign
court.    However, one does not have to consider the latter
matter in the present case because the defendants clearly
and expressly agreed to the Irish Courts having sole and
exclusive jurisdiction.    It is however of interest to
note that Art. 18 of the EEC Judgments Convention does
permit of conditional appearances not amounting to a
submission to jurisdiction.

At no  stage have the defendants suggested that a
judgment of the Irish Court would not be obeyed by them, nor
indeed, have they suggested that it would not be enforced
abroad.    Indeed the defendants could scarcely have expected
to impress any Irish Court by telling it in advance that it
did not propose to obey any order made by that Court, not-
withstanding the fact that the defendants had agreed to its
jurisdiction.    In so far as the defendants may be
thought to have been arguing that the Irish Courts
do not constitute a convenient forum, they have not

(13)

indicated what foreign Court, if any, would have

jurisdiction.    Indeed it is not at all improbable that

if proceedings were undertaken in Alberta, Ontario,

Hong Kong or anywhere else that the Courts there

might refuse jurisdiction in view of the express

acceptance by the defendants of the Irish jurisdiction.

The notion that an order should not be made by an Irish

Court where it is unlikely to be obeyed is an erroneous

one.    It is obvious that in many cases where the

Court permits service abroad under O. 11 resulting in

judgment in favour of the plaintiff, the judgment will

not be capable of enforcement if the foreign defendant

has decided that the better course for him is not to

participate in the Irish proceedings at all  where

he had not made any submission to Irish jurisdiction.

Such an event would certainly reduce the chances of a

judgment being enforced abroad against the defendant,

The  idea  that   an Irish Court should on this account

decline jurisdiction  is quite unacceptable.    In the

present case the defendants have accepted jurisdiction

and for the reasons I have already given that enables

a judgment to be enforced abroad.    In the present

case the plaintiff has invoked the Irish jurisdiction,

pursuant to the contract, to seek a declaration from

the Irish Courts.    It is really the plaintiff's

business to decide whether this is the most practical

step for him to take.    I do not believe it is the

function of the Irish Courts to try to be wiser than

he is and to frustrate his expectations.    There is

in fact no reason to believe that the plaintiff is

probably not acting well in his own interest.    Because

of the clear choice of Irish jurisdiction there is

no certainty  that proceedings initiated in any

other jurisdiction would not fail because of that

choice.    If he gets judgment in Ireland in any form

then it is a matter for him to endeavour to have it

enforced in any other jurisdiction.    The nature of his

remedy in that jurisdiction is determined by the law

of that jurisdiction.    Thus if he sought to enforce

his Irish judgment in Alberta the nature of the

(15)

remedy the Albertan Courts might give him would be

determined by Albertan law.         Remedies are

procedures and there is no vested right in a particular

cause of action.    The plaintiff must take the

remedies available in the forum as he finds them.

Furthermore there was no reason offered in this Court as

to why a court in Alberta or Ontario or anywhere else

would not be willing to give effect to an Irish

judgment.   In this connection it is of value to recall

the statement of Fitzgibbon L.J. in Lett v. Lett

1906 I.R. 618 at pp. 639-640 where he quoted as a

correct statement of the law the following passage

from Fry on Specific Performance 4th Ed. p. 52, ss. 126

and 127:-

> "A contract made abroad may be enforced
> against a defendant within the jurisdiction of
> this country, and, as the remedies for
> breach of a contract are clearly governed
> by the lex fori, it follows that it is no
> objection to the specific performance
> in England of a foreign contract that
> the foreign law might have given no
> such remedy."

(16)

While the Irish Courts probably would not
enforce a foreign decree for specific performance
they would certainly enforce one in Ireland, if one
was made by an Irish Court, even though the contract
was a foreign contract.

However in the present case the plaintiff is not
seeking specific performance.   The principal remedies
which he seeks are declarations and the injunction
relief which he seeks is more the nature of a _quia_
_timet_ nature, and would not even in conjunction with
the declaration which he seeks as his primary remedy,
amount to specific performance.   Even if one were to
assume that the Courts of Alberta or any other foreign
jurisdiction would not enforce that part  of an Irish
judgment prescribing an injunction, they should have
no similar difficulty so far as declarations are
concerned.   It is up to the Alberta Courts applying
the lex fori to translate these declarations into
actual relief.   No reason has been shown for the

plaintiff to apprehend that he will in fact get no

relief in a foreign court on foot of his Irish

judgments.    In my opinion there is certainly no

basis for this Court  for this reason to decline to

permit his case to be considered here on the very threshold

of the proceedings in this jurisdiction.    Apart from that

it  may  also  be of considerable importance to the

plaintiff to have a record of what the Irish Court

determined in accordance with Irish law were his

rights under the contract regardless of the question of

enforcing the judgment.   He might, for example, seek

to avail himself of his contractual entitlements, on the

basis of the Irish declarations, in a manner which does

not involve direct enforcement of the Irish judgment,

but which is consistent with them as a statement of

his rights under Irish law as the proper law and

declared by an Irish Court.

I am not aware of any decision in Ireland or indeed

in England in which the choice of an Irish, or an

English jurisdiction as the case may be, has been set

(18)

aside in favour of permitting litigation elsewhere.

Even if the proper law of this contract was not

Irish law I believe that a court in Ireland would

have jurisdiction to deal with this matter because of

the express choice of the Irish jurisdiction by the

parties concerned.    In the present case

the parties have not merely chosen an Irish

jurisdiction but have also agreed and chosen Irish

law as the proper law of the contract.    Where better

can Irish law be interpreted and applied than in an

Irish Court?

There is quite a number of decisions in

courts of various common law countries, including

England, to the effect that a person who has agreed

to a foreign jurisdiction, and then in breach of that

agreement seeks to institute proceedings in England has

had his action stayed.    There are also many decisions

of English Courts to show that English Courts are

most reluctant to permit service out of the

jurisdiction in the face of an agreement by the parties

00427

to submit their dispute to the exclusive jurisdiction

of a foreign court.   This is particularly so when

the foreign jurisdiction clauses are "exclusive

jurisdiction" clauses.   It appears from the English

case law that the principles underlying the English

decisions are to the effect that where a plaintiff

elects to sue in England in breach of an agreement

which referred the dispute to a foreign court, there

is a very heavy burden upon such plaintiff to prove

that there is a strong cause for the Court not to

exercise its jurisdiction to stay the proceedings.  Admittedly

there are also English decisions which indicate that

English Courts are often quite ready to assume  jurisdiction

in such cases by refusing a stay where the matter is one

which would otherwise fall into the English

jurisdiction.   Such was the decision in one of the

cases cited in the arguments before this Court, namely,

the case of Fehmarn 1958 1 A.E.R. 333.   In fact

that case is the converse of the present case.   In

that case the agreed law was Soviet Union law, and the

agreed jurisdiction was Soviet Union jurisdiction.

In my opinion, there is nothing in that decision to

indicate that the English Court would have declined

to exercise jurisdiction in the face of a choice of

English jurisdiction clause, nor have I been able to

discover any commentator ever to have so understood

it or so interpreted that decision.

As was stated recently by this Court in <u>Grehan v.</u>

<u>Medical Incorporated and Valley Pines Associated</u>

[1986] I.R. 528 the permission to issue notice of

proceedings out of the jurisdiction is within the

discretion of the Court.  There is nothing whatever

in the present case to show that discretion was not

properly exercised and the case appears to have fallen

squarely within the cases permitted by O. 11.  The

application by the defendants to have that order set

aside is in effect asking the Court to act in aid of

the defendants in their efforts to act in breach of

their own contract by endeavouring to avoid the Irish

jurisdiction which they had expressly chosen and

agreed to.   In general the Court should act in a

way calculated to make people honour their contracts

save where there is shown to exist some very grave cause

to do otherwise.   No such cause has been shown in the

present case.   This case is still only at its

beginning and it would be a matter for the trial Judge

when it comes to trial to decide what, if any relief,

he deems to be the appropriate relief.   It will be a

matter for him in the light of the case made and of the

submissions made to him to decide whether or not he

should grant the declarations sought and whether or not

he should grant any injunctions.   What is clear beyond

all doubt is that the law, and the only law, which he shall

be guided by in these decisions is Irish law.

   I would allow this appeal and set aside the

order of Miss Justice Carroll.

1-3-1988

Finlay C.J.
Walsh J.
Henchy J.
Hederman J.
McCarthy J.

THE SUPREME COURT

1986 No. 642P

JOHN FRANCIS KUTCHERA

v.

BUCKINGHAM INTERNATIONAL HOLDINGS LIMITED

Judgment of Henchy J.
delivered the 1st March 1988

The plaintiff has the rights of the lenders named

in the loan agreement entered into in May 1978, and the

defendant company, for the purposes of that agreement,

stands in the shoes of the borrower named in the agreement.

The borrower having defaulted in the repayment with

interest of the money lent, the plaintiff has sought to

assert in this jurisdiction his rights under the agreement.

He relies on clause 10 of the agreement, which provides

in effect that the agreement is to be construed and

governed by the law of this State, that it is to be

00431

(2)

deemed to have been made in this State and that any dispute

arising out of it is to be dealt with exclusively in the

courts of this State.   The parties plainly chose Irish law

as the law governing the agreement and an Irish court as the

proper and exclusive forum for the resolution of any

dispute under the agreement.

The problem presented in this appeal arises from the

fact that, save for that clause, the agreement, the parties

to it and the subject matter of it have no connection with

this State.   (A guarantor who was a party to the agreement

then had a Dublin address, but as he is not involved in

the present proceedings, he may be ignored).   The

uncontroverted facts show that the agreement was made in

Canada; that the defendant company was incorporated under

the laws of Alberta, where its registered office is

situated; that the plaintiff then had an address in South

Africa but apparently is now based in London; and that

the plaintiff's rights in and over the shares in the

defendant company will involve the application of the

(3)

relevant laws of the province of Alberta.    Aside from the

wishes of the parties as expressed in the agreement,

Ireland has no connection, direct or indirect, with the

parties to or the subject matter of the agreement.    That

being so, should the choice of this State as the venue for

the resolution of the dispute that has arisen be allowed to

prevail?

The matter has come to a head in the following way.

The plaintiff was granted ex parte an order in the Irish

High Court giving him liberty to serve notice of an

originating summons on the defendant company at a named

address in Calgary, Alberta.    The response of the

defendant company was to apply under R.S.C. O. 12, r. 26,

to the High Court for an order setting aside the service

of the notice of the summons.    Such an order was made by

Carroll J., and this is the plaintiff's appeal against that

order.

In so far as the main point at issue is governed by

rules of court, R.S.C. O. 11, r. 1(e)(iii) provides that

service out of the jurisdiction of a summons or of notice

( 4 )

of a summons "may be allowed" when the dispute has arisen

out of a contract which is "by its terms or by implication

to be governed by Irish law".   It was plainly intended

by the framers of the rule that even when the parties

to the contract have expressly chosen Irish law as the

proper law of the contract, liberty to serve the

originating summons, or notice of it, out of the

jurisdiction will not necessarily be allowed.   The rule

says it _may_ be allowed.   This connotes a discretion in

the Court.   What requires to be decided now is how that

discretion should be exercised in the particular circumstances

of this case.

  When one turns to principle rather than rules of

practice or procedure, it has to be first pointed out

that the defendant has not sought to avoid the provision

in the contract that it is to be "construed and governed"

by Irish law.   So much is common case.   What the

defendant does contend for is that the provision in the

contract giving exclusive jurisdiction to the Irish courts

( 5 )

should not be enforced and that, having regard to all

the circumstances, the plaintiff should be left to seek in

Alberta the relief claimed in the present proceedings.

I consider it to be well-established law that an

exclusive jurisdiction clause in a contract is prima facie

binding as representing the contractually expressed

agreement of the parties, but that the courts have a

discretion, to be exercised in the light of the

particular circumstances of the case, as to whether to

hold the parties bound to accept that jurisdiction.    While

that statement of principle is not in dispute, it is

submitted by counsel for the plaintiff that it is only in

the most exceptional circumstances that a defendant

should be held to have discharged the onus (which plainly

lies on him) of showing that the exclusive jurisdiction

clause should be disregarded.

It was suggested in the course of the hearing in this

Court that there is no reported case in which an exclusive

jurisdiction clause was disregarded.    That, however, is

not correct.    I find cases in England and in other

000455

(6)

jurisdictions in which the courts have refused to hold the

exclusive jurisdiction clause to be binding: see, for

example, The Fehmarn 1958 1 All E.R. 333 and Carvalho v.

Hull Blyth (Angola) Ltd. 1979 3 All E.R. 280.    The

general effect of such decisions seems to be that, while

the exclusive jurisdiction clause should generally be

upheld, it should not be enforced if in all the circumstances

of the case it would not be just and proper to do so.

Take for instance the case of The Fehmarn, in which

Willmer J. in the High Court and Lord Denning M.R. and

Hodson and Morris L.J. in the Court of Appeal all refused

to apply an exclusive jurisdiction clause.    It was a

shipping case in which cargo-owners issued a writ in

London against the owners of a ship, claiming damages in

respect of a breach of the contract of carriage as

evidenced by the bill of lading.    The contract provided

that all claims and disputes should be judged in the U.S.S.R.

and in accordance with U.S.S.R. law.    The shipowners

brought a motion to have the writ set aside for want of

jurisdiction.    In affirming the dismiss of that motion,

(7)

Lord Denning M.R. said (at p. 335):

> "The next question is whether the action
> ought to be stayed because of the provision
> in the bill of lading that all disputes
> are to be judged by the Russian courts.  I do
> not regard this provision as equal to an
> arbitration clause, but I do say that the
> English courts are in charge of their own
> proceedings: and one of the rules which they
> apply is that a stipulation that all disputes
> should be judged by the tribunals of a
> particular country is not absolutely binding.
> Such a stipulation is a matter to which the
> courts of this country will pay much regard and
> to which they will normally give effect, but it
> is subject to the overriding principle that
> no one by his private stipulation can oust
> these courts of their jurisdiction in a
> matter that properly belongs to them. .....
>
> It has been said by counsel for the
> shipowners that this contract is governed
> by Russian law and should be judged by the
> Russian courts, who know that law, and that
> the dispute may involve evidence from
> witnesses in Russia about the condition of
> the goods on shipment.  Then why, says
> counsel, should not it be judged in Russia
> as the condition says?  I do not regard

the choice of law in the contract as
decisive.   I prefer to look to see with
what country the dispute is most closely
concerned."

I refer to that case as an example of the rejection

of both the law and the jurisdiction chosen by the

parties to the contract.   There Lord Denning M.R.

applied the test of which country the contract is most

closely concerned with, but I for my part would adopt the

general test appearing from the decided cases, namely,

whether the party seeking to have the exclusive

jurisdiction clause rejected has satisfied the court that

in the circumstances of the particular case it would be

just and proper to do so.

I turn therefore to the particular circumstances of

this case.   The loan agreement giving rise to this

litigation provided that, in consideration of the loan

of 150,000 Canadian dollars to the defendant company by

the plaintiff, the defendant company would repay on a

named date that capital sum with compound interest as

specified in the loan agreement.   The defendant company

(9)

would seem to have defaulted in that repayment. The loan

agreement went on to provide that in the event of that

default the defendant company would, on request, allot to

the plaintiff a number of its ordinary shares to be

calculated by dividing the number of Canadian dollars

representing the principal and compound interest then

owing by 60 cents. The plaintiff reckons the number of

shares thus computed to be 1,847,380. He complains

that the defendant company has failed to allot those shares

to him and (as the loan agreement also provided in the

event of default in repayment) to allow him to nominate

up to four persons as directors of the defendant company.

The relevant parts of the relief claimed in the

originating summons which the plaintiff wishes to serve

are as follows:

"1. A declaration that the plaintiff is

entitled to have allotted to him 1,847,380

ordinary shares in the defendant.

2. A declaration that the defendant do all

such acts and execute all such documents as may

be necessary to allot 1,847,380 ordinary shares

in the defendant to the plaintiff.

3.    A declaration that the plaintiff is entitled to nominate four persons to be appointed as directors of the defendant.

4.    An order that the defendant do all such acts and execute all such documents as may be necessary to appoint the plaintiff's nominees as directors of the defendant.

5.    If necessary, that an account be taken of (1) the defendant's indebtedness to the plaintiff and (2) the number of ordinary shares to which the plaintiff is entitled.

6.    An order that the defendant do permit the plaintiff and/or his agents to inspect all books, records and accounts of the defendant.

7.    An injunction restraining the defendant its servants or agents or otherwise howsoever from charging selling or disposing of its assets or entering into any agreement which would reduce the value of the said."

The first thing to be noted is that there is no claim in that endorsement for the payment of the principal and interest due under the loan agreement.   If that were the claim, the High Court in Dublin, as the mutually chosen forum, could readily and properly give judgment, and the

plaintiff could then seek to sue abroad on foot of that judgment.

But the true nature of the claim made is quite different.  The relief claimed, by means of declarations and injunctions (both negative or prohibitory and positive or mandatory) is for the purpose of implementing the contractual consequences of the defendant's breach of the duty of repayment.  The claim is in effect one for specific performance of the contract in the events that have happened.  The purpose of the claim is to compel the defendant company to allot to him 1,847,380 of its shares and to effectuate his nomination of four directors. That is the central relief sought and each of the specified reliefs sought in the summons is either directly or indirectly for the purpose of achieving that purpose. It has not been suggested, nor could it reasonably have been, that some of the relief sought should be dealt with by an Irish court and some by a court in Alberta.  Neither convenience nor the choice of the parties points to such a splitting of the venue.  The jurisdiction of the trial

(12)

must be either Ireland or Alberta.

Let us consider the legal position that would arise

if an Irish venue were provided in accordance with the

contract. What would then come before the High Court

in Dublin would be a claim by a plaintiff who has no

contact, by residence, domicile, citizenship or otherwise,

with Ireland, against a company registered in Alberta

and whose trading is now carried on in Hong Kong, and which

has no Irish connection, in respect of shares and director-

ships in that company. According to the contract giving

rise to the action, the contract is to be "construed and

governed" by Irish law. But a component of Irish law is

private international law, which has been defined as "that

part of law which comes into play when the issue before the

court affects some fact, event or transaction that is so

closely connected with a foreign system of law as to

necessitate recourse to that system": Cheshire and

North's private International Law, 11th edn., p. 4-5.

The claim being pursued by the plaintiff, necessarily

involving the disposition of shares and directorships in

(13)

the Alberta — based defendant company, clearly could not

be disposed of in the Irish court without having recourse

to the law, particularly the company law, of Alberta.

Indeed, the main facts and the interpretation of the contract

being hardly in dispute, an Irish judge would be largely

concerned with ascertaining and applying Albertan law.

That law could be ascertained only by means of the

evidence of properly qualified witnesses, and if those

witnesses disagreed, an impasse would be reached.    However,

even if the relevant Albertan law were clearly and

unequivocally proved, much of the claim would have to be

decided by the application of Albertan law.    Thus it

might be thought that there would be a frustration of the

contractually - expressed intention of the parties, for it

may be that the provision in the contract for the mandatory

application of Irish law and for the recourse exclusively

to the Irish jurisdiction was intended to ensure that in

the resolution of disputes arising under the contract

the resulting court proceedings would not involve the

application of the law of Alberta or of that of any other

(14)

non-Irish jurisdiction.

However, even if that interpretation of the

intention of the parties is not correct, there is a further

and more fundamental reason for refusing to grant a

hearing in Ireland of the plaintiff's claim.  As I have

pointed out, the plaintiff's claim is in essence one for

the specific performance of the contract in the terms

laid down by the contract in the event of default in

repayment.  This end is sought to be achieved by the grant

of declarations and injunctions aimed primarily at

compelling the defendant company to allot to the plaintiff

1,847,380 of its shares and to give effect to his

nomination of four directors.  But I fail to see how an

Irish court could effectuate such injunctions.

I understand it to be a fundamental principle of our

law that a court, in the exercise of its equitable

jurisdiction, should not make orders which it is unable to

carry into effect.  A court exercising such a

jurisdiction is said to act in personam.  Where the

defendant is a limited company, it is nonetheless amenable

(15)

to the court's jurisdiction if it is registered in this

State, or even if it only has assets within the State, for

in such event the court could give effect to its orders

by processes such as attachment for contempt, or the

sequestration of the company's assets, or the nomination of

persons to give effect to the court's order.   But the

defendant company is registered in Alberta, it does not

trade in this State, its personnel do not seem to have

any connection with this State, and it apparently has no

assets in this State.

An order of an Irish court seeking to compel the

defendant company to allot shares to the plaintiff and to

give effect to his nomination of directors would be

outside the legitimate range of the court's jurisdiction.

Apart from the risk of seeking to compel a performance which

might not be consistent with the laws of Canada or of the

province of Alberta, an Irish court's order would be bad for

being in excess of what the court can legitimately and

effectually seek to compel.   The court would have acted to

no effect, for those required to act in conformity with

(16)

its requirements could with impunity ignore the court's

order.    They would be far beyond the court's capacity

to compel performance by them or to punish them for non-

performance.    In other words, the court would have

acted in vain.    And, as the legal aphorism goes, equity

never acts in vain.

The plain fact of the matter is that the relief

sought by the plaintiff could be effectively granted only

by a court in Alberta.    As a matter of practicality,

apart from purely legal considerations, it is difficult

to see how the defendant company could be made amenable to

specific performance of the contractual obligations, save

in Alberta.

However, it is not strictly necessary to go that far.

It is sufficient to say that, for the reasons I have given,

considerations of justice, fairness, practicality and

convenience rule out an Irish court as the venue for the

disposition of the plaintiff's claim.

I would dismiss this appeal.

*SH.*
*./3/88*

THE SUPREME COURT

Finlay C.J.
Walsh J.
Henchy J.        BETWEEN/
Hederman J.
McCarthy J.
(74/87)

JOHN FRANCIS KUTCHERA

PLAINTIFF/APPELLANT

AND

BUCKINGHAM INTERNATIONAL HOLDINGS LIMITED

DEFENDANT/RESPONDENT

JUDGMENT OF McCARTHY J. delivered the 1st day of March 1988

[FINLAY CJ AGREEING]

On the 1st December 1986 Murphy J. ordered that the

plaintiff be at liberty to issue an originating plenary

summons against the defendant.    Due notice was given to

the defendant which, moved pursuant to O. 12, r. 26 of the

Rules of the Superior Courts and obtained, per Carroll J.,

an Order that the Order of the 1st December 1986 be

discharged.    The plaintiff appeals against the Order of

Carroll J.

(2)

## THE FACTS

By a Loan Agreement made the 26th May 1978 Allied Venture Properties Limited (now "Buckingham"), a company formed under the laws of the Province of Alberta, Canada, and having its registered office premises in Calgary, Alberta, and its business office in Toronto, Ontario, Canada, upon the terms contained in the Agreement, borrowed one hundred and fifty thousand Canadian Dollars (CS 150,000) from Brian Leigh and Weybridge Properties Limited, a Bahamian company, both of Nassau, Bahamas, and both acknowledged to be lending as agents for John Francis Kutchera and his assignees of Transvaal, South Africa, (the plaintiff - "Kutchera"). Michael Sylvester Birrane, the then Chairman and President/Managing Director of Buckingham, having his address in Dublin, entered into the Loan Agreement as a guarantor. The repayment of the sum borrowed was to be made to Leigh and Weybridge Properties at Johnson Matthey Bankers Limited London, England to the account of J.F. Kutchera on or before 26th May 1983.

Further provisions of the Loan Agreement, if binding,

in the events which have happened, entitled Kutchera,

as he did, to demand of Buckingham that it should allot

1,847,380 shares in Buckingham to him, being the share

equivalent, at CS 0.60 per share of the total sum due

as an accumulation of principal and interest as set out

in the Agreement, to inspect all books, records and

accounts of Buckingham, and to nominate up to four persons

to be appointed as directors of Buckingham.

Clause 10 of the Loan Agreement provided as follows:-

> "This Agreement and all aspects herein shall
> be construed and governed by the Laws of the
> Republic of Ireland (EIRE) and shall be deemed
> to have been made in the Republic of Ireland
> and subject only to the jurisdiction of the
> Irish Courts and no other jurisdiction and the
> parties hereto irrevocably submit to the
> jurisdiction of the Courts of the Republic
> of Ireland in all or any matter of dispute
> arising out of this Agreement."

( 4 )

Robert Robertson, a director of Buckingham, has stated

on affidavit that Buckingham has approximately 500 to

600 shareholders, the majority of whom reside in Canada

and the United States of America.    Approximately 81.23

per cent of all the issued and outstanding shares of

Buckingham are held by Overseas Union Realty  Limited

(formerly known as Hong Kong Barge Limited) a Hong Kong

company, now in liquidation.    As far back as October 1978,

as appears from minutes of Buckingham exhibited in the

proceedings, meetings of the Board of Buckingham

were held in Hong Kong, where at least five of the

directors live.    In an action instituted in the Court of

Queen's Bench of Alberta by David Cowper on behalf of

minority shareholders, suing Buckingham, certain

directors, and the majority shareholder, Overseas

Union Realty Limited, it was Ordered that the action be

stayed but that in the event that the Supreme Court of

Hong Kong refuses to assume jurisdiction over an action

similar to that action then the plaintiffs should have

(5)

leave to apply to set aside the Order.

From this statement of facts it will be seen that

of the parties to the Loan Agreement the lender

(Kutchera) then had an address in South Africa (his

address in the plenary summons being stated to be in

London, England),his agents had addresses in the Bahamas,

the borrower had been formed under the laws of the

Province of Alberta, Canada, had its registered office

in Alberta but its business office in Ontario and its

business in Hong Kong, that the guarantor, the Chairman

and President/Managing Director of the Alberta company had his

address in Dublin, that the money lent was in Canadian

Dollars but repayable to a banking company in London.

Whilst it does not so appear from the affidavits, it has

been stated without contradiction that the Loan Agreement

was executed in Canada; it may fairly be said that the

transaction had an international flavour.

The issue assuming, as for the purpose of this

appeal one must, that Kutchera advanced the money to

Buckingham, which defaulted in payment, and that

(6)

Kutchera is therefore entitled to relief on the terms of the Agreement, he seeks relief in two forms, declaratory and injunctive.    It is not questioned that the Agreement must be construed according to Irish law, since it so provides.    The contest is one of venue.    Kutchera asks that clause 10 be enforced, that the parties he held to the bargain; Buckingham, whilst acknowledging the provisions of clause 10, says that the jurisdiction provision should not be enforced.    For my part, I would hold the parties to their bargain.


## THE LAW

No Irish decision directly in point has been cited on the hearing of the appeal.    Counsel on both sides agree, however, that the correct legal principle is that the parties' choice of jurisdiction should be upheld and the necessary procedural Orders granted unless there are strong reasons to the contrary.    Counsel for Buckingham argues that the injunctive relief sought

(7)

involves interference in the internal management of a

foreign company, a form of relief which a court in

Ireland can neither enforce nor supervise, relying

upon the observations of Pennycuick J. in <u>Pergamon Press</u>

<u>Limited v. Maxwell</u> (1970) 2 All E.R. 809.  In that case

the English company ("Limited"), which had removed the

defendant from its own Board, sought an Order requiring

him to call a meeting of the American Company("Incorporated")

for the purpose of removing certain directors, including

himself.  This the High Court refused to do.

Pennycuick J. said at 813 (j):

> "It is accepted on behalf of Limited
> that the power under section 1.02 is a
> fiduciary power of a discretionary nature,
> vested in the defendant in the capacity of
> an officer of Incorporated.  It follows that
> the defendant is bound to exercise that
> power in good faith in the interest of
> Incorporated as a whole.   There is no
> suggestion that the law of New York
> is different in this respect from
> that of England.  That being the position,
> it seems to me, in the first place, that
> the New York Court is the only proper
> tribunal in which the members of
> Incorporated could seek to control the

exercise of this power.  It cannot be
open to an English Court to control the
exercise of a fiduciary power of a
discretionary nature arising in the internal
management of a foreign company.  But even
if this difficulty were overcome, the Court
would not, at the instance of some only of
the members of Incorporated, make a mandatory
Order on the defendant directing him to
exercise his discretion in a certain manner.
That would, I think, be contrary to the
principles on which the Court acts in
controlling trustees or others in the
exercise of fiduciary discretionary powers.
I observe, in parentheses, that if this were
an English company, other remedies might be
available.  In any event, it seems to me that
Incorporated would be a necessary party to
proceedings seeking such an order......"

Later, at 814(e) he says:-

"I am only indirectly concerned with the
question whether the New York Court would
give effect to the Order now sought if it
were made.  On this point there is a difference
of opinion between the American lawyers who
have sworn affidavits on either side.  I have
no doubt that if the position were reversed and
a foreign Court directed one of its own

00409

> nationals who is an officer of an English
> company to exercise in a certain manner
> discretionary power vested in him for the
> benefit of the English company, this Court
> would not feel bound to give effect to the
> Order."

These observations seem to me to fall far short of

supporting Buckingham's case.   It seems to me to go no

further than stating that the Court will not seek to

control the exercise of a fiduciary power of a discretionary

nature, not because it is in the internal management

of a foreign company, but rather because it was a

fiduciary power of a discretionary nature.   Yet,

Pennycuick J. contemplated that that difficulty might

be overcome and reflected that in a case where a foreign

Court directed one of its own nationals who was an

officer of an English company to exercise in a certain

manner discretionary power the Court would not feel

bound to give effect to the Order.   In Bula Limited (In

Receivership) and Others v. Tara Mines Limited and

Others[1], Murphy J. refused an application by foreign

defendants, made pursuant to O. 12, r. 26, for the

discharge of an Order granting liberty to serve notice

of the plenary summons in the action on such defendants

where the relief claimed against them was for a

declaration as to the duty to enter into negotiations

of a particular kind.    In the course of argument in this appeal

attention was drawn to Kingston v. Irish Dunlop Company

Limited[2], a decision of this Court, in which the plaintiff

claimed a declaration of rights under the compromise

of an action for personal injuries originally brought

against the defendants.    It was not a case in which any

problem would have arisen about enforcement as such, the

defendants being within the jurisdiction, but it contains

a significant statement of the law and a convenient

summary of the case law on such an issue.    At 241

Ó Dalaigh C.J., with whom Walsh and FitzGerald JJ.


[1] High Court - unreported - judgment delivered
February 11th 1987; under appeal to this Court.

[2] (1969 I.R.) 233

(11)

expressly agreed, said:-

> "In my opinion clause 2 of the consent did
> entitle the plaintiff to be employed
> by the defendants in the scrap section while
> they were willing to maintain him in their
> employment and while they had a scrap section
> in which employment was available and while,
> as I have already said, his disability
> continues.  This is the right which the
> defendants, both in the correspondence
> preceding the initiation of proceedings and
> by their defence in the action, contended that
> the plaintiff did not have.

> Is the plaintiff entitled to have a
> declaration of his rights?  The plaintiff
> relies on Order 19, r. 29, of the Rules of
> the Superior Courts, which states that:-
> "No action or pleading shall be open to
> objection on the ground that a merely
> declaratory judgment or order is sought
> thereby, and the Court may, if it thinks fit,
> make binding declarations of right whether
> any consequential relief is or could be
> claimed or not."  This rule, save for the
> addition of the words "if it [i.e. the court]
> thinks fit" is a transcription from Order XXV,
> r. 5, of the Rules of 1905 which, in its
> turn, was taken from the Rules of 1877.  This

(12)

rule has been common to English and Irish jurisdiction since the passing of the respective Judicature Acts and its wide scope has long been settled.    Bankes L.J., in Guaranty Trust Company of New York v. Hannay & Co.[6] at p. 568 of the report, discussed the background to the rule and then says:-

"It is obvious from a mere reading of the language of the rule that it introduces a considerable extension into the practice previously existing.    It enables the Court to make the declaration irrespective of whether consequential relief could be claimed or not.    Lindley M.R. in Ellis v. Duke of Bedford[7] refers to this as an innovation of an important kind; Farwell L.J. in Chapman v. Michaelson[8] refers to it as a novel practice created by the Judicature Act, which cannot be limited by the old equitable practice; and Warrington J. in Burghes v. Attorney-General[9], differing in this apparently from what he had previously said in

[6] [1915] 2 K.B. 536
[7] [1899] 1 Ch. 494, 515
[8] [1909] 1 Ch. 238, 243
[9] [1911] 2 Ch. 139, 155

<u>Offin v. Rochford Rural Council</u>[10], says
that the Order is intended to deal
with the very case - that is, one in
which no relief can be claimed either
by way of damages for the past or an
injunction for the future - and that
several cases had occurred where declarations
had been made under the Order where
there was no cause of action in the
proper sense, and he cites <u>Jenkins v.
Price</u>[11] as an example.   A later and still
more forcible instance of the same view is to
be found in <u>Dyson v. Attorney – General</u>[12],
the question being as to validity of a
Form IV notice.   Fletcher Moulton L.J.
says (at p. 168) 'that an action thus
framed' (that is, asking for a
declaration of right) 'is the most
convenient method of enabling the subject
to test the justifiability of proceedings
on the part of permanent officials
purporting to act under statutory provisions.'
In <u>Jenkins v. Price</u>[11] Swinfen Eady J.
granted the declaration of right asked for,

[10][1906] 1 Ch. 342, 358.
[11][1907] 2 Ch. 229
[12][1912] 1 Ch. 158

but without costs because the plaintiff

had no cause of action, and Eve J. followed

the same course in Evans v. Levy.[13]"

See also the observations, in the same case,

of Pickford L.J. at pp. 558-9.

In my judgment the Court should make the

declaration sought.    The declaration is not

valueless. If the position in the defendants'

factory changes and work again becomes

available in the scrap section then, other

things being equal, the plaintiff will be

entitled to be employed there; and this

declaration will have established for the

plaintiff, against the defendants' contrary

assertions, what his rights are under the

agreement.

I shall add that I am also of opinion that

it is an implied term of the consent that

the defendants will give the plaintiff

comparable light work if work in the scrap

section is not available.    There is some

evidence that the defendants did not do so and

some evidence of loss arising therefrom.    The

plaintiff, however, is content to have his

rights declared without more.    I would

make a declaration in the terms I have

indicated."

[13]

(15)

0.19, r.29 of the Rules of the Superior Courts,

1986, is identical with the quoted in the extract.

Conclusion

The essence of the defendant's argument appears

to me to include the bald statement that if the Court

entertains the action, finds for the plaintiff and

grants the declaratory relief sought, the defendant

which has expressly consented to the jurisdiction

in the contract sought to be enforced will then flout

the Order of the Court.  I do not find such an

argument attractive nor do I deem it good in law.  In

the course of argument, a number of references were

made  to issues of public policy; in my view, in actions

concerning commercial contracts the first principle

of public policy should be that the parties should be

held to their terms.

It is self-evident that, if this dispute is tried

in Ireland, evidence will have to be given as to the

law of Alberta and, possibly, the federal law of

Canada as to the powers etc. of a company incorporated

in Alberta, but the contract  must be construed

(16)

according to Irish law, which would be the fact

whether the action is tried in Ireland, in Alberta,

in Hong Kong or elsewhere.    In my view, the learned

trial Judge placed too much emphasis upon the legal

capacity of Buckingham; Buckingham did not seek to

support the reasoning of the trial Judge on the

hearing of the appeal but relied upon the argument

that I have sought to outline, which argument was

advanced in the High Court, but is not reflected in

the judgment.    An amount of authority[3] was cited but none, and

---

[3]Dicey and Morris - Conflict of Laws - 11th edition at
pp. 304, 320-321
Halsbury - Laws of England - Vol. 8 para. 584
Grehan v. Medical Incorporated and Others (1986) ILRM 627
Vita Food Products Inc. v. Unus Shipping Company Limited
(1939 A.C.) 277
Boissevain v. Weil (1949) 1 K.B. 482: 1950 A.C. 387
Fehmarn (1958) 1 W.L.R. 159
Tzorszis v. Monarch Line (1968) 1 W.L.R. 406
In Re Herbert Wagg and Company Limited's claim (1956)
Ch. 323
Unterweser Reederei v. Zapata Off-Shore Company
(the "Chaparral") (1968) 2 LL.L.R. 158
Mackender and Others v. Feldia A.G. and Ors. (1967)
2 Q.B. 590
Limerick Corporation v. Crompton (1910) 2 I.R. 416

there are apparently none, in which a choice of English

jurisdiction clause had not been enforced.    There is,

therefore, no opportunity of comparing like with like.  In

the "Chaparral" 1968 - 2 Lloyds Rep. the Court of Appeal in England

stated the policy of the Court to hold parties to the

bargain into which they had entered;       that was

not an inflexible rule; and  the Court had a discretion

which, in the ordinary way and in the absence of strong

reason to the contrary would be exercised in favour of

holding parties to their bargain; that it had not been

shown that the High Court Judge's exercise of his

discretion had been plainly wrong; and that, therefore,

the Court should not interfere.  The latter reasoning

would not apply in this jurisdiction but I would prefer

to express what I conceive  to be the correct approach

in different terms.    In my view, it must be the policy

of this and other Courts to hold parties to the bargains

into which they enter.  Whilst that remains the

policy, there may be circumstances, of a compelling

nature in the light of which the Court may permit a

(18)

party to renege upon his bargain.   In my view, no

such reason has been established in the instant case.

In her judgment, Carroll J. stated that the defendant

(Buckingham) queried the bona fides of the plaintiff

(Kutchera) but she did not consider that this question

could be decided on affidavit.   I share that view.

I would allow the appeal and dismiss the motion.

7 3 88.