# EXHIBIT C

464                           HIGH COURT                        [1939.

[HIGH COURT OF AUSTRALIA.]

BLAIR AND OTHERS     .     .     .     . APPELLANTS ;
    PLAINTIFFS,

AND

CURRAN AND OTHERS     .     .     .     . RESPONDENTS.
    DEFENDANTS,

———————

CURRAN AND ANOTHER     .     .     .     . APPELLANTS ;
    DEFENDANTS,

AND

BLAIR AND OTHERS     .     .     .     . RESPONDENTS.
    PLAINTIFFS AND DEFENDANTS,

———————

PERPETUAL TRUSTEE CO. (LIMITED) AND ⎫
    OTHERS     .     .     .     .     . ⎬ APPELLANTS ;
    DEFENDANTS,                       ⎭

v.

BLAIR AND OTHERS     .     .     .     . RESPONDENTS.
    PLAINTIFFS AND DEFENDANTS,

ON APPEAL FROM THE SUPREME COURT OF
TASMANIA.

H. C. OF A.   *Will—Construction—Trust to carry on sweep business—Income—Accumulation—*
1939.        *For expenditure for benefit, furtherance and advantage of business—Trust*
⌣           *unrestricted as to time—Declaration in previous proceedings that trust not void*
HOBART,      *for uncertainty or otherwise—Res judicata—Rule against perpetuities—The*
Feb. 13-17, 20.  *Accumulation Act (39 & 40 Geo. III. c. 98)—Destination of released income—*
             *Residue—Particular residue—Issue estoppel.*
MELBOURNE,
May 27.          By his will a testator who died in 1904 gave "all my real estate and the
———          residue of my personal estate of every kind and nature whatsoever in the State
Latham C.J.,  of Tasmania save and except" a sweep business carried on by him to certain
Rich, Starke,  persons, called the Hobart-property beneficiaries. He directed his trustees to
Dixon and     carry on the sweep business and provided that eight-tenths of the profits
McTiernan JJ.  should be divided in one-tenth or one-twentieth shares between twelve named

persons. The trustees were directed to stand possessed of one-tenth of the net profits of the sweep business " and of any part or parts of the said net profits which may for the time being for any reason be unapplied or undisposed of upon trust to accumulate the same but without being bound to invest the same or any part thereof " and to use such accumulations or any part of them for the furtherance and benefit and advantage of the business according to their discretion, and for the aid and assistance of any persons to whom, in the opinion of the trustees, aid or advantage at the particular time would be a benefit and advantage in this life and for supposed charities, the objects of which in fact went outside the scope of legal charities. The testator provided that if any of the named sweep beneficiaries should die in his life-time leaving a widow him surviving, then the proportion of profits to which he would have been entitled had he survived the testator should be paid to the widow during her lifetime. In the event of the winding up and realization of the business the trustees were directed to hold the proceeds upon trust for the named sweep beneficiaries in the same proportions as they were to take the net profits. He declared that any shares of the sweep beneficiaries either in the net profits or in the net proceeds of winding up and realization or in moneys which had been accumulated which should fall in or lapse owing to the death of a beneficiary during the testator's lifetime or owing to the death of a widow should be held upon trusts in favour of supposed charities which were held to be invalid (*Attorney-General (N.S.W.) v. Adams*, (1908) 7 C.L.R. 100). Two of the sweep beneficiaries, R. and B., predeceased the testator, leaving widows. By a decretal order on an originating summons issued out of the Supreme Court of New South Wales in 1907 *Street* J. made declarations in answer to questions relating to the interpretation and effect of various provisions in the will. In answer to a question whether the trust to employ one-tenth of the net profits of the sweep business for the purpose of the business and for charitable purposes was void for uncertainty or otherwise he declared that the trust was " not void for uncertainty or otherwise but that the said trustees are at liberty to apply as much or as little of the accumulated funds derived from the said net profits  .  .  .  for the benefit of the sweep business as in their discretion they think fit." In answer to further questions he declared that " the accumulated funds so far as not employed for the furtherance of the sweep business follow the same destination as the proceeds of such business on realization." He further declared that on realization the whole of the proceeds were to be divided amongst the named beneficiaries who survived the testator and the widows of those who predeceased him in the same proportion as they shared profits, but that the widows took estates for life only ; " and that on the death of a widow the share in which she took a life interest passes under the gift in the said will of the testator's Tasmanian property." The widow of R. died in 1936. An originating summons was taken out in the Supreme Court of Tasmania to determine the questions whether the trustees were authorized to accumulate the one-tenth of the net profits from the sweep business after twenty-one years from the death of the testator, and, if not, who was entitled to the said one-tenth, and who was entitled to

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

466                              HIGH COURT                              [1939.

H. C. of A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
Co. (LTD.)
*v.*
BLAIR.

the one-twentieth share of profits which the widow of R. had enjoyed until her death.

*Held* :—

(1) By the whole court, that the declaration of *Street* J. in 1907 that the trust to employ one-tenth of the net profits for the purpose of the sweep business was not void for uncertainty or otherwise did not exclude the application of the *Thellusson Act* to the trust.

(2) By the whole court, that the trust for accumulation was void as from the expiration of twenty-one years from the testator's death by virtue of the *Thellusson Act.*

(3) By *Latham* C.J., *Rich, Starke* and *Dixon* JJ. (*McTiernan* J. dissenting), that the Hobart-property beneficiaries were entitled to the property so released from the trust because (*per Latham* C.J., *Starke* and *Dixon* JJ.) the declaration of *Street* J. that the Hobart-property beneficiaries were entitled to the interest in the proceeds of realization released by the death of a widow should be followed as a decision on a question involving the construction of the will given many years previously which had been acted on by the parties and which was not clearly wrong ; (*per Latham* C.J.) the testator had given a true Tasmanian residue to the Hobart-property beneficiaries into which the lapsed interest fell ; (*per Rich* and *Dixon* JJ.) the decretal order of *Street* J. created an estoppel between the parties upon the question whether the Hobart-property beneficiaries were entitled to an interest in the business falling in because a specific disposition was found to be invalid in whole or in part.

(4) By *Latham* C.J., *Rich, Starke* and *Dixon* JJ. (*McTiernan* J. dissenting), that the Hobart-property beneficiaries were entitled to the one-twentieth share of profits released by the death of the widow, which was ineffectually given to charities. *Per Latham* C.J. : The share passed directly as Tasmanian residue. *Per Rich, Starke* and *Dixon* JJ. (*Latham* C.J. *contra*) : The share was caught by the words of the clause creating a trust for accumulation of portion of the profits of the sweep business.

The application of the *Thellusson Act* to profits of a business, and the principles of issue-estoppel, discussed.

Decision of the Supreme Court of Tasmania (*Clark* J.) affirmed subject to variations.

APPEAL from the Supreme Court of Tasmania.

The testator, George Adams, by his will dated 16th March 1901, gave, devised and bequeathed the whole of his real and personal estate in the State of New South Wales or elsewhere other than in the State of Tasmania to his trustees, subject to the several trusts, directions and provisions contained in the will.   He then proceeded to empower his trustees to carry on certain businesses in New South Wales and to bequeath several annuities out of the profits thereof.

Subject as aforesaid, he directed his trustees to sell that property, and, after several specific provisions relating thereto, the testator directed his trustees (clause Q) to stand possessed of "the residue of the proceeds of sale and disposition of my real and personal estate and the moneys forming part of my personal estate at my decease in New South Wales or elsewhere other than in Tasmania  .  .  . upon trust in their absolute and uncontrolled discretion as fully in all respects as if they were the absolute owners thereof to pay and distribute from time to time such part or parts of the aforesaid net profits and of my residuary estate and of the income thereof as my trustees shall think fit to between and amongst such charitable benevolent or philanthropic institutions for the time being existing in each of the States of the Commonwealth of Australia and the Colony of New Zealand and such person or persons for the time being in any of the said States and Colony to whom a gift would be an assistance and benefit and such of the individual poor needy and suffering of such States and Colony and such other person or persons for the time being in needy or straitened circumstances as my trustees shall consider deserving of support and assistance."

Other clauses of the will were to the following effect :—

S. The testator gave, devised and bequeathed unto and to the use of his trustees " according to the nature of the property all my real estate and all the residue of my personal estate of every kind and nature whatsoever in the State of Tasmania save and except the business as carried on by me at Hobart aforesaid as a conductor of sweep consultations and the goodwill and interest thereof and therein and save and except the personal estate effects and moneys belonging to such business and save and except moneys lying to my credit in any bank in Tasmania."

T. The testator declared that the trustees should hold the property given to them by clause S upon trust for certain persons according to the shares and proportions set out in the will.

U, V, W and X. The testator gave to his trustees a sweep-consultation business conducted by him in Tasmania under licence issued in pursuance of a statutory authority and authorized and empowered them to continue the same.  By clause W he directed

H. C. OF A.
1939.

BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
v.
BLAIR.

H. C. of A.
1939.
⌣
BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
Co. (LTD.)
v.
BLAIR.

the trustees to stand possessed of the sweep business on trust to pay debts connected therewith.

Y. The testator directed his trustees to stand possessed of the net profits arising from the carrying on of the sweep business upon trust to divide eight-tenths thereof between twelve named persons in one-tenth or one-twentieth shares and upon trust to distribute one-tenth of the profits between and amongst such of the employees for the time being engaged in the said business and in such proportions in all respects as the trustees in their absolute discretion should think fit.

Z. The testator directed his trustees " to stand possessed of the remaining one-tenth of the said net profits and of any part or parts of the said net profits which may for the time being for any reason be unapplied or undisposed of upon trust to accumulate the same but without being bound to invest the same or any part thereof and from time to time with the full and absolute powers of owners thereof to use such accumulations or any part or parts thereof for the furtherance and benefit and advantage of the said business in such manner and way in all respects as to them shall seem or appear best and in aiding or assisting any person or persons whatsoever to whom in the opinion of my trustees aid or assistance at the particular time would be a benefit and advantage in this life."   AA. " And in aiding or assisting any one or more of the persons institutions causes or funds that my trustees are directed to assist under trusts in favour of charities hereinbefore more fully set forth."

CC. The testator declared " that in the event of the death of any one of the before-named legatees in my lifetime leaving a widow him surviving the proportion of the said net profits to which the legatee so dying would have been entitled had he survived me shall be paid to the widow of the legatee so dying as aforesaid for and during her life.

DD. In the event of the trustees being unable to continue or deciding to discontinue the carrying on of his said business the testator authorized, empowered and directed them to wind up the said business and to realize the sweep-consultation business.   He directed them " to stand possessed of the net proceeds of such winding up and realization including all moneys which may have

accumulated in their hands under the trust in that behalf hereinbefore contained or so much of such accumulations as shall not have been used or distributed as aforesaid but after payment of all debts liabilities and prizes in connection therewith upon trust to divide the same between and amongst the before-named legatees of the net profits of the said business in the same proportions as they are hereinbefore directed to divide between them the said net profits."

FF. The testator declared "that the shares of any of the before-named legatees of my said business either in the net profits thereof or in the net proceeds of such winding up and realizations as aforesaid and in all moneys which may have accumulated as aforesaid which shall fall in or lapse owing to the death of such legatees in my lifetime or owing to the death of his widow should he leave one as aforesaid or owing to any one or more of the said legatees renouncing or disclaiming the legacy hereby bequeathed to him or them respectively shall be held by my trustees upon and subject to the trusts directions and provisions hereinbefore contained in favour of charities."

The testator, who was domiciled in Tasmania, died at Hobart on 23rd September 1904.

Two of the beneficiaries named in clause Y, Sir Henry Braddon and H. I. J. Rooke, predeceased the testator, each leaving a widow who survived the testator. Emma Rooke, the widow of H. I. J. Rooke, died on 22nd March 1936.

In July 1907 the executors and trustees of the testator's will took out an originating summons in the Supreme Court of New South Wales seeking the determination of a number of questions arising in the administration of the trusts of the testator's will. The summons was heard by *Street* J., who on the 30th October 1907 made a decretal order answering the questions. The following are the questions material to this report and the answers thereto :—

Question 1 (*a*) : " Whether the charitable trusts or the trusts in favour of charities or for charitable benevolent or philanthropic purposes or institutions contained in the will of the said George Adams are or are any of them void for uncertainty or otherwise ? " Answer : " That the whole of the charitable trusts and trusts in favour of charities or for charitable benevolent or philanthropic

H. C. OF A.
1939.
BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

H. C. of A.
1939.

BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
Co. (LTD.)
v.
BLAIR.

purposes or institutions contained in the said will and mentioned in the said question 1 (a) are void for uncertainty."

Question 1 (b): "In the event of the above question being answered in the affirmative what person or class of persons are entitled to the property or funds subject to such trusts ?" Answer: "That (subject to the liability to contribute to the payment of debts and to the costs charges and expenses of administration) the New-South-Wales assets given upon the trusts for charities mentioned in the said will and in the said question 1 (b) devolved on the death of the said testator as upon an intestacy. And that the gift in the said will of unclaimed moneys and prizes to charities is a pecuniary legacy which has lapsed."

Question 16 : " Whether the trust in favour of the employees for the time being engaged in the ' Tattersall Sweep Consultation care of George Adams ' in the said will mentioned is void for uncertainty or otherwise ? " Answer : " That the trust in favour of the employees for the time being engaged in the said sweep business mentioned in the said will and in question 16 of the said amended originating summons is not void for uncertainty or otherwise."

Question 17 : " Whether the trust to employ one-tenth of the net profits of such business for the purposes of the said business and for charitable purposes is void for uncertainty or otherwise ? " Answer : " That the trust to employ one-tenth of the net profits of the said sweep business for the purpose of the said business mentioned in question 17 of the said amended originating summons is not void for uncertainty or otherwise but that the said trustees are at liberty to apply as much or as little of the accumulated funds derived from the said net profits mentioned in the said question 17 for the benefit of the said sweep business as in their discretion they think fit."

Question 17 (a) : " If the answer to the above question is in the affirmative who is or are entitled to the property subject to such trust ? " Answer : " That the said accumulated funds so far as not employed for the furtherance of the sweep business follow the same destination as the net proceeds of such business on realization."

Question 17 (b) : " In the event of the trustees winding up the said business what becomes of the one-tenth interest therein the income of which is directed to be employed as aforesaid and also of

the one-tenth interest therein the income of which is directed to be held in trust for the employees aforesaid ? "  Question 17 (c) : " In the same event what becomes of the interests of the widows of Sir Edward Braddon and H. I. J. Rooke (both of whom died in the testator's lifetime) respectively (a) during their respective lives and (b) after their respective deaths ? "  Answer to questions 17 (b) and 17 (c) : " That in the event of the said trustees winding up the said sweep business the whole proceeds of realization are distributable among those of the twelve legatees of the net profits of the said sweep business named in the said will and codicil who survived the testator and the widows of those who predeceased him in similar proportions *inter se* to those in which the said net profits are divisible but that the interests of the widows are limited to estates for life ; and that on the death of a widow the share in which she took a life interest passes under the gift in the said will of the residue of the testator's Tasmanian property."

Parties interested in some of the questions thus determined (including questions 1 (a) and 1 (b) ) appealed from so much of the said decretal order as answered the same to the High Court of Australia.  Before any of the appeals was heard an arrangement was entered into that, if the High Court upheld the decision of *Street* J. that the trusts of the will for benevolent and other similar purposes were void as going beyond legal charity, the remaining appeals should be dropped.  The terms of the arrangement were set out in a preliminary agreement dated 11th August 1908.  The decision of *Street* J. as to the invalidity of the trusts for benevolent purposes was upheld (*Attorney-General (N.S.W.)* v. *Adams* (1) ).  On 2nd April 1909 the persons then entitled to the nine-tenths of the net profits of the sweep business bequeathed by clause Y of the will (These persons are hereinafter referred to as " the sweep beneficiaries "), and the trustees of the testator's will and the persons entitled under clauses S and T of the will to the testator's real estate in the State of Tasmania and the residue of his personal estate in that State other than the sweep business (These persons are hereinafter referred to as " the Hobart-property beneficiaries ") executed a deed in pursuance of the agreement of 11th August

(1) (1908) 7 C.L.R. 100.

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

H. C. of A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

1908 whereby the parties " mutually agreed " (*inter alia*) " as follows  .   .   .   the Hobart-property beneficiaries and the sweep beneficiaries do and each of them doth hereby  .   .   . authorize empower and direct the trustees for the time being of the said will and codicil to stand possessed of the one-tenth of the net profits arising from or out of the carrying on of the said sweep business and in the said will of the said George Adams deceased referred to as ' The remaining one-tenth of the said net profits ' and of any part or parts of the said net profits which may for the time being for any reason be unapplied or undisposed of upon the trusts and to and for the ends intents and purposes for the furtherance of the said sweep business and for charities in the said will declared and set forth with respect to the same and in accordance with the arrangement arrived at by the trustees with respect thereto at their first meeting held in Sydney aforesaid in or about the month of March one thousand nine hundred and five as modified by minute No. 10 of the trustees' meeting held in Hobart aforesaid in the month of January one thousand nine hundred and nine.   And the trustees do hereby declare and agree that they will stand possessed of all the moneys representing such unclaimed prizes as aforesaid in the said sweep business and of the one-tenth net profits as hereinbefore more particularly referred to or such part or parts thereof respectively as have not already been distributed by by the trustees upon the several trusts and directions hereinbefore more fully set forth with reference thereto respectively   Provided however that upon a winding up sale or other disposition of the said sweep business all then undisposed of moneys of the said furtherance one-tenth share if any shall be divided between such of the sweep beneficiaries as are by the said will and the said decretal order in such case declared to be entitled thereto."   " 13. Save as the same are hereby expressly or by necessary implication altered or varied the trusts powers authorities and directions contained in the will of the testator as the same have been interpreted by the judgment of his Honour Mr. Justice *Street* shall stand and be given full effect to." By a deed dated 15th February 1912 and made between the Hobart-property beneficiaries of the first part, the trustees of the testator's will of the second part and William Joseph Adams (who

H. C. of A.
1939.

BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
Co. (LTD.)
v.
BLAIR.

was one of the next of kin of the testator and had acquired by assignment the rights of all the other known next of kin) of the third part and containing recitals of the several facts recited in the deed dated 2nd April 1909 it was witnessed (*inter alia*) as follows :— "The Hobart-property beneficiaries and the said William Joseph Adams do and each of them doth hereby also authorize empower and direct the trustees to stand possessed of the one-tenth of the net profits arising from or out of the carrying on of the said sweep business and in the said will of the said George Adams deceased referred to as 'the remaining one-tenth of the said net profits' and of any part or parts of the said net profits which may hereafter for the time being for any reason be unapplied or undisposed of upon the trusts and to and for the ends intents and purposes for the furtherance of the said sweep business and for charities in the said will declared and set forth with respect to the same and in accordance with the arrangement arrived at by the trustees with respect thereto at their first meeting held in Sydney aforesaid in or about the month of March one thousand nine hundred and five as modified by minute number 10 of the trustees' meeting held in Hobart in the month of January one thousand nine hundred and nine and the trustees do hereby declare and agree that they will stand possessed of all the moneys representing such unclaimed prizes as aforesaid in the said sweep business and of the one-tenth net profits hereinbefore more particularly referred to upon the several trusts and directions hereinbefore more fully set forth with reference thereto respectively."

The trustees continued to carry on the sweep business. In each of the years from 1926 to 1938 the trustees appropriated one-tenth of the net profits for the purposes specified in clause Z of the will. In every year the sum so appropriated exceeded the sum expended in such year for the purposes of the trust. On 18th February 1938 there was standing to the credit of that trust in the accounts of the trustees the sum of £15,450.

The trustees took out an originating summons in the Supreme Court of Tasmania for the determination of the following questions :—

    (1) On the true construction of the said will and in the events which have happened who is entitled to the one-twentieth share of the net profits of the sweep consultation business

474                            HIGH COURT                        [1939.

H. C. of A.
1939.
BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
Co. (LTD.)
v.
BLAIR.

forming part of the estate of the late George Adams deceased
and bequeathed by the will of the said George Adams to
Emma Rooke widow of the Honourable Henry Isadore
Joachim Rooke ?

(4) As and from the expiration of twenty-one years from the
death of the said George Adams are the trustees authorized
under the trust to employ the fund of one-tenth of the
net profits of the sweep-consultation business for the further-
ance of the said business to continue to accumulate the
surplus moneys in the said fund not expended in any year
for the furtherance of the said business ?

(5) If the trustees are not authorized to continue to accumulate
the said surplus moneys who are the person or persons
entitled under the will of the said George Adams to receive
the same ?

*Clark* J., before whom the questions were argued, held that the
one-twentieth share of profits which was received by Mrs. Rooke until
her death thereafter became " parts of the said net profits which may
for the time being for any reason be unapplied or undisposed of "
within the meaning of clause Z and that the trust therein declared
as to the original one-tenth profits, and the unapplied or undisposed-
of profits, was a trust to accumulate which by virtue of the *Accumu-
lation Act* became void on the expiration of twenty-one years
from the date of the testator's death ; and that both the original
one-tenth share of profits as well as the one-twentieth share of profits
in which Mrs. Rooke in her lifetime had been interested were payable
to the Hobart-property beneficiaries under clauses S and T of the will
and not to the next of kin.

The formal answers to the questions were (so far as material) as
follows :—

Question 1 : " Upon the true construction of the will of the
testator " the Hobart-property beneficiaries (who, as is indicated in
the judgment of *Latham* C.J. hereunder, were not correctly described
in the order), pursuant to clauses S and T of the will, " become
from and after the death of the said Emma Rooke on the 22nd day
of March 1936 entitled to the one-twentieth share of the net profits
of the sweep-consultation business which was bequeathed by the said

will to the said Emma Rooke for her life but that while the authority
and direction given to the trustees  .   .   .  by the parties to the
deed dated the 2nd day of April 1909  .   .   .  to stand possessed
of any part or parts of the net profits of the said sweep business
which may for the time being for any reason be unapplied or undis-
posed of within the meaning of the said deed upon the trusts and
to and for the ends intents and purposes therein mentioned remains
in force but no longer that is to say until any person entitled thereto
or to any part thereof revokes the authority conferred by the said
deed the one-twentieth share of the net profits of the said sweep-
consultation business which was bequeathed  .   .   .  to the said
Emma Rooke during her life is from the date of her death to be
accumulated by the said trustees ; but they are not bound to invest
the same or any part thereof and they have the full and absolute
powers of owners to use as much or as little of the said accumulated
fund for the furtherance and benefit and advantage of the said
sweep-consultation business in such manner and way in all respects
as to them shall seem or appear best ; but this declaration is without
prejudice to the power and authority of the trustees  .   .   .  by
virtue of the said deed to apply any part or parts of the said accumu-
lations to any of the purposes mentioned in clause Z of the will."

Questions 4 and 5 :  " That upon the true construction of the will
of the testator the trust expressed in clause Z of the will  .   .   .
was valid for the period of twenty-one years from the date of the
death of the testator but thereafter was invalid by reason of the
*Accumulation Act* 1800 and that as from the expiration of twenty-one
years from the date of the death of the testator upon the true con-
struction of the said will " the Hobart-property beneficiaries (again
incorrectly described in the order) " became entitled to the one-tenth
of the net profits of the sweep-consultation business referred to in
clause Z of the will but that while the authority and direction given
to the trustees  .   .   .  by the parties to the said deed dated the
2nd day of April 1909 to stand possessed of the one-tenth of the net
profits of the said sweep-consultation business in the said deed
referred to upon the trusts and to and for the ends intents and pur-
poses in the said deed mentioned remains in force but no longer
that is to say until any person entitled to the said one-tenth of the

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

476                          HIGH COURT                    [1939.

H. C. of A.
1939.
⌣
BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

said net profits or any part thereof revokes the authority conferred by the said deed the said one-tenth of the said net profits is to be accumulated by the said trustees ; but they are not bound to invest the same or any part thereof and they have the full and absolute powers of owners to use as much or as little of the accumulated fund for the furtherance and benefit and advantage of the said sweep business in such manner and way in all respects as to them shall seem or appear best ; but this declaration is without prejudice to the power and authority of the said trustees by virtue of the said deed to apply any part or parts of the said accumulations to any of the purposes mentioned in clause Z of the will."

From this decision, the trustees, the sweep beneficiaries and the next of kin appealed to the High Court of Australia. The three appeals were heard together.

*H. S. Baker* (with him *Leo Doyle*), for the trustees of the will, appellants. It is submitted that the question of the validity of the trust in the will to accumulate and use such accumulations for the furtherance, benefit and advantage of the business is concluded by the declaration of *Street* J. that the " trust to employ one-tenth of the net profits of the sweep business for the purposes of the said business . . . is not void for uncertainty or otherwise." Reliance is also placed upon the positive part of the declaration whereby the trustees are declared to be " at liberty to apply as much or as little of the accumulated funds . . . for the benefit of the said sweep business as in their discretion they think fit." But, assuming that the question of validity of the trust is open for consideration, the trust upon its true construction is a trust to use and not to accumulate. When the trustees have the full and absolute powers of owners to expend as much or as little of the income as they think fit, the evil at which the *Accumulation Act* was directed does not exist. There is no obligation to accumulate. If the trustees did not accumulate or set aside any money, they would commit no breach of trust. They are entitled to expend the whole sum received *instanter*. [He referred to *Jarman, Wills*, 7th ed. (1930), pp. 352, 353 ; *Halsbury, Laws of England*, 2nd ed., vol. 25, p. 173 ; *Theobald, Wills*, 8th ed. (1927), p. 690.]

62 C.L.R.]          OF AUSTRALIA.                    477

H. C. of A.
1939.

BLAIR
v.
CURRAN

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
v.
BLAIR.

[DIXON J. referred to *MacVean* v. *MacVean* (1).]

The employment of the word "accumulate" is not decisive. The substance of the trust must be ascertained. It has been correctly described in *Street* J.'s order as a "trust to employ" one-tenth for the purpose of the business. [Counsel referred to *Morgan* v. *Morgan* (2); *Tench* v. *Cheese* (3); *Mathews* v. *Keble* (4); *In re Mallen*; *Executor Trustee and Agency Company of South Australia Ltd.* v. *Wooldridge* (5).] In *Macpherson* v. *Stewart* (6) the qualification of the direction to accumulate was for a special purpose; here the power to expend negatives the direction, for it is given generally with the full powers of absolute owners. Next, the direction is not within the Act inasmuch as its purpose is merely to maintain and preserve the asset. Its purpose is not to expand and increase the business as *Clark* J. held. Alternatively, it is within the exception of the statute: a trust for the payment of debts. [He referred to *Vine* v. *Raleigh* (7); *In re Cox*; *Cox* v. *Edwards* (8); *Varlo* v. *Faden* (9); *Bateman* v. *Hotchkin* (10).] The direction to carry on a business is not a settlement of real and personal property within the meaning of the *Accumulation Act*. This business is carried on pursuant to an annual licence. But, if all the foregoing fail, the agreements, it is submitted, remain as irrevocable authorities with contractual operation which it is impossible for any one party to destroy.

*A. Dean* (with him *R. C. Wright*), for the appellants and respondents, Curran and Crisp, representing the sweep beneficiaries, adopted the argument submitted for the trustees. The order of *Street* J. operates as a complete estoppel. When it declares that the clause in question is not void it is a denial of voidness either wholly or in part. [He referred to *Hoystead* v. *Commissioner of Taxation* (11).] The *Accumulation Act* is concerned only with income from property: not with income earned from a business. This trust does not offend because there is no such positive direction to

(1) (1899) 24 V.L.R. 835; 20 A.L.T. 218.
(2) (1850) 4 De G. & Sm. 164, at p. 170 [64 E.R. 781, at p. 784].
(3) (1855) 24 L.J. Ch. 716.
(4) (1868) 3 Ch. App. 691.
(5) (1933) S.A.S.R. 50.
(6) (1859) 28 L.J. (N.S.) Ch. 177.
(7) (1891) 2 Ch. 13.
(8) (1900) W.N. 89.
(9) (1859) 27 Beav. 255 [54 E.R. 99].
(10) (1847) 10 Beav. 426 [50 E.R. 646].
(11) (1926) A.C. 155; (1925) 37 C.L.R. 290.

H. C. OF A.
1939.
⌣
BLAIR
*v.*
CURRAN.
———
CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.
———

accumulate as is required by the Act ; here there is only a discretionary trust to accumulate. [He referred to *Pride* v. *Fooks* (1).] The purpose of this provision is to preserve the asset ; it is not designed to establish an accretion to the original asset. Further, the trust as construed by *Street* J. is one which the sweep beneficiaries and the Hobart-property beneficiaries are competent to terminate at any time. To it, therefore, the principle of *Wharton* v. *Masterman* (2) is applicable. The sweep employees are not true beneficiaries ; the gift in their favour has been held valid ; such decision must have proceeded on the basis that the employees take no interest, but that the trust is for the distribution of a bonus amongst them ; otherwise it must offend the rule against perpetuities. Therefore the employees may be excluded for the purpose of considering the rule in *Saunders* v. *Vautier* (3).

*Maughan* K.C. (with him *S. C. Burbury*), for the Perpetual Trustee Co. (Ltd.) and others, personal representatives of W. J. Adams deceased representing the testator's next of kin. We claim Mrs. Rooke's one-twentieth share of profits as from her death in 1936. and the whole of the one-tenth expressed to be directed to accumulate as from 23rd September 1925. The scheme of the will is that the testator divides his assets into three groups—(1) his residuary estate, (2) his Tasmanian estate (*a*) other than the sweep business, and (*b*) the sweep business. Of those three groups the only one which has the characteristic of universality is what the testator himself calls " my residuary estate". The gifts of the Tasmanian assets are specific in character. Any lapsed interests in the sweep business are excluded ; they are not caught by any other clause in the will. If it is a contest as between residuary clauses, lapsed shares in the sweep business fall into clauses K-Q rather than into clause S. The trust to accumulate in clause Z is invalid. Any attempt to prevent net income going to the beneficiaries for their own use is invalid ; but that does not prevent a provision for maintenance and outgoings. [He referred to *Mathews* v. *Keble* (4) ; *Vine* v. *Raleigh* (5) ; *In re Mason* : *Mason* v. *Mason* (6) ; *Re Cox* (7) ; *Lombe* v. *Stoughton* (8) ; *Re Mallen* (9) ;

(1) (1840) 2 Beav. 430 [48 E.R. 1248].
(2) (1895) A.C. 186.
(3) (1841) Cr. & Ph. 240 [41 E.R. 482], affg. 4 Beav. 115 [49 E.R. 282].
(4) (1868) 3 Ch. App. 691.
(5) (1891) 2 Ch. 13.
(6) (1891) 3 Ch. 467.
(7) (1900) W.N. 89.
(8) (1841) 12 Sim. 304 [59 E.R. 1148].
(9) (1933) S.A.S.R. 50.

*In re Hawkins* ;  *White* v. *White* (1).]  But if it is an attempt to
withhold the enjoyment of income it is invalid.  Any retention for
expenditure upon a capital item is not permitted.  And once the
net profits are computed there remain no income items which have
not been provided for.  Reserves of income sanctioned by *Vine* v.
*Raleigh* (2) are only to be made out of gross income.  Furtherance,
benefit and advantage are not maintenance, and the whole provision
for accumulation is void.  Next, if that is not so, and if expenditure
on those purposes is legal, the balance unexpended is ours ; there
can be no carry over at the end of an accountancy period.  Next,
the rule in *Saunders* v. *Vautier* (3) cannot be applied ;  to make it
applicable it must be shown that some person is entitled to income
and corpus ;  under no construction can the sweep beneficiaries
claim to be entitled to the whole proceeds of realization.  The
reasons given by *Clark* J. are correct.  The interests of the employees
prevent the application of this rule.  [He referred to *Berry* v. *Geen*
(4).]  Next, the question is not *res judicata*.  The answer of *Street*
J. is inappropriate to deal with the question.  The answer does not
refer to the trust to accumulate.  Another very strong reason for
construing this answer in such a way as will not prevent the applica-
tion of the *Accumulation Act* to the trust now is that the determina-
tion of such a question in 1907 would have been premature.  The
words used are not apt to determine a future question.  The answer
is that the trust is not void.  [He referred to *O'Donel* v. *Commis-
sioner for Road Transport and Tramways* (N.S.W.) (5) ;  *Robinson* v.
*Duleep Singh* (6).]  As to clause Z, there is no *res judicata* arising
from the order of *Street* J. whereby the corpus of the proceeds of
realization in which the widows were to have a life interest was
directed to go to the Hobart-property beneficiaries.  The funds of
clause Z do not go as provided either in clauses K-Q or S-T but go
as upon an intestacy ; but if it is a contest between residues, they
go to K-Q.  Clause S divides the Tasmanian estate into two groups,
(*a*) real and personal estate, and (*b*) sweep business, and the separa-
tion thus made is made for all purposes.  It is submitted that the

H. C. of A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

(1) (1916) 2 Ch. 570.
(2) (1891) 2 Ch. 13.
(3) (1841) Cr. & Ph. 240 [41 E.R.
    482], affg. 4 Beav. 115 [49 E.R.
    282].
(4) (1938) A.C. 575.
(5) (1938) 59 C.L.R. 744.
(6) (1879) 11 Ch. D. 798.

H. C. of A.
1939.

BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
Co. (LTD.)
v.
BLAIR.

agreements created executed trusts and are not mandates. They were resettlements by the beneficiaries; as such they are bad for the following reasons: (*a*) uncertainty, (*b*) the rule against perpetuities, (*c*) they contain inseverable provisions for benefit of charities and non-charities, (*d*) they offend the *Accumulation Act*, but only as from expiration of twenty-one years from 1921.

*R. R. Sholl* (*R. M. Clarke* with him), for the respondents, Hobart-property beneficiaries. The first question relates to the fate of one-twentieth profits of sweep business between Mrs. Rooke's death and winding up of business. We first submit it is not caught by clause Z for the following reasons :—(*a*) Clause Z and clause FF are mutually exclusive in the first instance, and the one-twentieth in the present events falls into FF. The clause which applies to this one-twentieth during continuance of the business is not Z, but FF. (*b*) Then, it having gone into FF, that fails by reason of the High-Court decision as to charities (*Attorney-General (N.S.W.)* v. *Adams* (1)). (*c*) It is then caught by clause S, because S is a true residuary clause as to Tasmanian assets, and the business and profits have been excepted only for the purpose of being given by clauses Y and FF &c.; when those clauses fail, the profits go back to S (*Jarman, Wills*, 7th ed. (1930), pp. 1007-1009; *Williams* on *Executors*, 12th ed. (1930), p. 998; *Wingfield* v. *Newton* (2); *Sheffield* v. *Lord Orrery* (3); *Cambridge* v. *Rous* (4); *Bland* v. *Lamb* (5); *Evans* v. *Jones* (6); *Bernard* v. *Minshull* (7); *Thompson* v. *Whitelock* (8); *Blight* v. *Hartnoll* (9); *In re Green*; *Walsh* v. *Green* (10); *Re Powell*; *Campbell* v. *Campbell* (11); *Re Jupp*; *Gladman* v. *Jupp* (12); *In re Whitrod*; *Burrows* v. *Base* (13); *Re Mallen* (14)). *Wainman* v. *Field* (15) and *In re Fraser*; *Lowther* v. *Fraser* (16) are distinguishable. (*d*) The parties are estopped, as to the winding-up position,

(1) (1908) 7 C.L.R. 100.
(2) (1739) 2 Coll. 520, n. [63 E.R. 843].
(3) (1745) 3 Atk., 282, at p. 286 [26 E.R. 965, at p. 967].
(4) (1802) 8 Ves. 12, at p. 25 [32 E.R. 254, at p. 258].
(5) (1820) 2 J. & W. 399 [37 E.R. 680].
(6) (1846) 2 Coll. 516, at p. 526 [63 E.R. 840, at p. 845].
(7) (1859) Johu. 276 [70 E.R. 427].
(8) (1859) 4 DeG. & J. 490, at pp. 497, 502 [45 E.R. 190, at pp. 193, 196].
(9) (1883) 23 Ch. D. 218.
(10) (1893) 31 L.R. Ir. 338.
(11) (1900) 83 L.T. 24.
(12) (1903) 87 L.T. 739.
(13) (1926) Ch. 118, at pp. 120, 121.
(14) (1933) S.A.S.R. 50.
(15) (1854) Kay 507 [69 E.R. 215].
(16) (1904) 1 Ch. 111; (C.A.) 726.

from denying that clause S has this result by *Street* J.'s answers to question 17 (*b*) and (*c*), which in effect hold that clause S is a general Tasmanian residue, catching lapsed sweep property. The same position must obtain as to position *before* winding up (*Badar Bee* v. *Habib Merican Noordin* (1) ; *Plomley* v. *Shepherd* (2) ; *Room* v. *Baird* (3) ; *Hoystead* v. *Commissioner of Taxation* (4) ; *Brown* v. *Abbott* (5) ; *Goldring* v. *National Mutual Life Association of Australasia Ltd.* (6) ; *In re Bank of Hindustan, China and Japan* (7) ). If, alternatively, the one-twentieth does fall within clause Z :— I. Under the will—(*a*) the one-twentieth goes under FF ;  that fails, and it then falls into Z.    (*b*) But Z is bad as a gift to " charities," so-called.  Z is no different from Q (*Attorney-General (N.S.W.)* v. *Adams* (8) ).  And the trust for deserving persons &c. is also bad (per *Higgins* J. (9) ).  (*c*) The trust in Z however is not void *in toto*, because *Street* J. has so decided (Answer to question 17).    (*d*) Clause Z, however, in respect of the balance of the trust, viz., as to furtherance, is bad after twenty-one years from testator's death under the *Thellusson Act* (*Halsbury, Laws of England*, 2nd ed., vol. 25, pp. 168 et seq.).  The principle is that a provision which, upon certain events, or in all events, will require trustees after the specified period, to keep interest &c. received, after receipt, so as to postpone beneficial enjoyment of it, is bad.  The principle is not that they are prevented from keeping any interest payment for more than twenty-one years (taking that as the relevant period) and that the Act misses them unless they have to.  The question is : After such twenty-one years is there anything which, in any events, withholds the moneys from beneficial enjoyment when they are received ?  If so, to that extent, and in those events, such provision is bad.  A discretionary power to accumulate is hit by the Act (*Mathews* v. *Keble* (10) ; *Jagger* v. *Jagger* (11) ; *Tench* v. *Cheese* (12) ; *Teague* v. *Trustees, Executors and Agency Co. Ltd.* (13), per *Starke* J.). None of the answers made to this point is valid :—1. The trust is

H. C. OF A.
1939.

BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
v.
BLAIR.

(1) (1909) A.C. 615, at p. 622.
(2) (1932) 32 S.R. (N.S.W.) 61, at pp. 75, 76, 92.
(3) (1915) 19 C.L.R. 283.
(4) (1926) A.C., at pp. 165, 170.
(5) (1908) 5 C.L.R. 487, at pp. 495, 496.
(6) (1916) 22 C.L.R. 336.
(7) (1873) 9 Ch. App. 1, at pp. 25, 26.
(8) (1908) 7 C.L.R. 100.
(9) (1908) 7 C.L.R., at p. 132.
(10) (1868) 3 Ch. App., at pp. 695, 696.
(11) (1883) 25 Ch. D. 729.
(12) (1855) 6 D.M. & G. 453, at p. 462 [43 E.R. 1309, at p. 1313].
(13) (1923) 32 C.L.R. 252, at p. 273.

H. C. of A.
1939.

BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
v.
BLAIR.

not one for payment of debts (*Re Mallen* (1) ; *Re Cox* (2) ; *Halsbury*, 2nd ed., vol. 25, pp. 25, 177 ; *In re Hurlbatt* ; *Hurlbatt* v. *Hurlbatt* (3) ; *Varlo* v. *Faden* (4) ). The payment of debts is only an accidental purpose, which may never operate. 2. It is not a trust for maintenance (*Re Mallen* (1) ; *Halsbury*, 2nd ed., vol. 25, p. 181 ; *Vine* v. *Raleigh* (5) ; *Re Mason* (6) ; *In re Gardiner* ; *Gardiner* v. *Smith* (7) ). 3. It is not a trust to expend without accumulation. 4. It is not within *Wharton* v. *Masterman* (8) for the following reasons :—(*a*) The employees are interested in maintaining business. The Hobart-property beneficiaries are interested in the proceeds of winding up under *Street* J.'s order (*In re Deloitte* ; *Griffiths* v. *Deloitte* (9) ; *Trustees Executors and Agency Co. (Ltd.)* v. *Bush* (10) ) ; (*b*) It cannot be said the employees are not beneficiaries, but only objects of a power, because they are objects of a trust (*Drummond, In re* ; *Ashworth* v. *Drummond* (11) ), i.e., *Street* J.'s judgment was wrong, but not appealed from, and that fact does not prevent this court approaching this question on a correct basis ; (*c*) Even if it is a power only, it is bad under rule against perpetuities (*Halsbury, Laws of England*, 2nd ed., vol. 25, p. 158 ; (*d*) Clause W excludes the rule —amounts to a charge (*Weatherall* v. *Thornburgh* (12) )—Cf. *Berry* v. *Geen* (13). 5. This is real or personal property within the Act. 6. Profits of a business are within the Act (*Re Mallen* (1) ; *Re Cox* (2) ). 7. There is no right to spend profits independently of failure of accumulation. *Pride* v. *Fooks* (14) is to be distinguished : Lord *Langdale* himself regarded it as of little authority (*Conolly* v. *Farrell* (15).) But here, the trustees' true position is that they must reserve moneys &c. before declaring net profits—there is an equal burden on everyone in clause Y. (*e*) Therefore, all funds under clause Z go as if the accumulation directed had stopped after twenty-one years under clause S and not to the next of kin for the reasons already stated. II. Under *Street* J.'s order there is an estoppel as to meaning

(1) (1933) S.A.S.R. 50.
(2) (1900) W.N. 89.
(3) (1910) 2 Ch. 553.
(4) (1859) 1 D.F. & J. 211, at p. 224
    [45 E.R. 339, at p. 344].
(5) (1891) 2 Ch. 13.
(6) (1891) 3 Ch. 467.
(7) (1901) 1 Ch. 697.
(8) (1895) A.C. 186.

(9) (1926) Ch. 56, at pp. 61, 62.
(10) (1908) 28 N.Z.L.R. 117.
(11) (1914) 2 Ch. 90.
(12) (1878) 8 Ch. D. 261.
(13) (1938) A.C. 575.
(14) (1840) 2 Beav. 430 [48 E.R. 1248].
(15) (1845) 8 Beav. 347, at p. 351 [50
    E.R. 136, at p. 138].

of clause S, i.e., that it is enough to catch lapsed Tasmanian property. Apart from this, the order has no effect, for there is no decision by *Street* J. that the accumulation directed by clause Z is valid ; the words " or otherwise " in the answer to question 17 do not cover the point.  A court of equity will not determine such a question in advance (*Hastie* v. *Curdie* (1) ).   Consequently *Street* J.'s order does not interfere with the conclusion to be arrived at on the will. III.   Under the agreements :—(*a*) The question is : Have the agreements, or any of them, bound the clause-S beneficiaries to admit the permanent and indefinite right of the trustees, or the sweep beneficiaries to have the clause-Z funds accumulated till winding up, but subject to being spent, totally or partially, on furtherance, or on furtherance and charities, but on nothing else ?  (*b*) We say No : —(i) The agreements themselves are to be read subject to the will and *Street* J.'s order—save as to any definitely inconsistent provision —and, so read, they do not purport to constitute a trust for or power of accumulation to have any longer or greater or different operation from that legally effectuated by the will and the order.  (ii) Alternatively, the agreements *per se* amount to a trust or disposition for charity and furtherance jointly, and are, therefore, as to that, void *in toto* (*Attorney-General* (*N.S.W.*) v. *Adams* (2) ;  *In re Chapman* ; *Hales* v. *Attorney-General* (3) ;  *Public Trustee* (*N.S.W.*) v. *Federal Commissioner of Taxation* (4) ).  This would remove the effect of the agreements and leave the result on the will and order standing as under I. above.  (iii) Alternatively, the agreement or agreements constitute :—1. The creation of a bad charitable trust. 2. A disposition amounting to a void direction for accumulation at the end of either twenty-one years from death of the testator or the life of the survivor of the parties to the document or documents.  For the *Thellusson Act* must apply to contracts disposing of property (*Jarman on Wills*, 7th ed. (1930), pp. 369, 370), and this is such an agreement (*Comptroller of Stamps* (*Vic.*) v. *Howard-Smith* (5) ).  (iv) Alternatively, the agreement or agreements is or are a bad disposition under the rule against perpetuities and so wholly void as such, in

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

(1) (1869) 6 W.W. & a'B. (E.) 91, at      (3) (1922) 2 Ch. 479.
     pp. 98, 99.                                      (4) (1934) 51 C.L.R. 75.
(2) (1908) 7 C.L.R. 100.                    (5) (1936) 54 C.L.R. 614.

484                                    HIGH COURT                              [1939.

H. C. of A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

relation both to furtherance and employees (*Kennedy* v. *Kennedy* (1) ).

[RICH J. referred to *In re Cassel*; *Public Trustee* v. *Mountbatten* (2).]

With regard to questions 4 and 5 it is submitted that for the same reasons the original furtherance fund comes to the Hobart-property beneficiaries.

*Maughan* K.C., in reply. The cases cited support the contention that clause Q is the true residue. No estoppel arises out of *Street* J.'s declaration that on winding up the shares of which the widows received the income go to the Hobart-property beneficiaries. The *res* is different from the *res* now before the court. The question then decided by *Street* J. is not of the same class or category as this question. [He referred to *Marginson* v. *Blackburn Borough Council* (3) ; *O'Donel* v. *Commissioner for Road Transport and Tramways (N.S.W.)* (4).]

*Dean*, in reply. Upon the question of *res judicata* the only problem is one of interpretation. *Street* J. has declared it is not void for uncertainty or otherwise, i.e., so long as it is a trust. That, at least, means that the trust does not offend the rule against perpetuities. Therefore it does not offend against the *Accumulation Act*. Upon its true construction the clause is a trust to accumulate and use.

*Doyle*, in reply. The series of questions answered by *Street* J. were designed to cover the whole subject matter dealing both with extent and duration of the trusts. The whole life of the trust in Z is passed upon in the answers to question 17 (*a*), (*b*) and (*c*). A disposition of income which falls short of an imperative direction to accumulate does not come within the *Accumulation Act*. [He referred to *Tench* v. *Cheese* (5) ; *Mathews* v. *Keble* (6).] *In re Mallen* (7) placed the problem purely upon an accountancy basis.

*Cur. adv. vult.*

(1) (1914) A.C. 215.                    (4) (1938) 59 C.L.R. 744.
(2) (1926) Ch. 358, at p. 370.          (5) (1855) 24 L.J. Ch. 716.
(3) (1939) 1 All E.R. 273.              (6) (1868) 3 Ch. App. 691.
                    (7) (1933) S.A.S.R. 50.

The following written judgments were delivered :—

LATHAM C.J.   This is an appeal from a judgment of the Supreme Court of Tasmania (*Clark* J.) dealing with questions affecting the interpretation and the validity of provisions in the will of the late George Adams, who died on 23rd September 1904, leaving a will which was made on 16th March 1901.

The testator conducted a sweep at Hobart in Tasmania known as " The Tattersall's Sweep Consultation care George Adams " and he had property in Tasmania which was not connected with the sweep business.   He also had property in New South Wales and elsewhere.   He provided in his will for the payment of certain debts and legacies out of his New-South-Wales property and directed that the residue of the proceeds of sale and disposition of his real and personal estate in New South Wales should be distributed among " charitable benevolent or philanthropic institutions " and persons to whom a gift would be of assistance and other persons who were poor, needy and suffering or in needy and straitened circumstances.

In the year 1907 proceedings by originating summons were taken in the Supreme Court of New South Wales and *Street* J. (afterwards *Street* C.J.) interpreted many provisions of the will.   He held that the gift of the residue of New-South-Wales property was invalid because it purported to authorize the trustees to devote the property to objects other than charitable objects in the legal sense of that term, and that the next of kin of the testator were entitled to this property.   Several parties appealed to the High Court, but their differences were adjusted by agreements, to which further reference will be made, and the only question dealt with by the High Court was that relating to the charitable or philanthropic dispositions. Upon this question the High Court affirmed the decision of *Street* J. (*Attorney-General* (*N.S.W.*) v. *Adams* (1) ).   Upon the present proceedings in the Supreme Court of Tasmania it has become necessary to interpret and apply other declarations made in the order of *Street* J. and to consider how far, if at all, the rights of the parties under the will and under that order have been affected by the agreements mentioned.

(1) (1908) 7 C.L.R. 100.

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

May 27.

486                            HIGH COURT                        [1939.

H. C. of A.
1939.

BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
Co. (LTD.)
v.
BLAIR.

Latham C.J.

The testator directed his trustees to carry on the sweep and provided that eight-tenths of the profits of the sweep should be divided in one-tenths or one-twentieths between twelve named persons. or their widows if any of those persons should predecease the testator. Another tenth was given for the benefit of employees in the sweep business and the last tenth was directed to be devoted to the furtherance of that business and to benevolent purposes. One of the widows of a sweep beneficiary who predeceased the testator has now died, and questions arise as to the disposition of the one-twentieth share of the profits to which she was entitled. The share is claimed by the next of kin, by the sweep beneficiaries, and also by persons to whom the testator gave his property in Tasmania other than his interests in the sweep. These latter persons have been called the Hobart-property beneficiaries to distinguish them from the sweep beneficiaries.

Mr. Justice *Clark* held that the Hobart-property beneficiaries were entitled to receive the share of the profits which was released by the death of the widow.

The other question which arises relates to the provision by which the trustees are directed to accumulate one-tenth of the profits of the sweep for the furtherance of the sweep business and other purposes. *Street* J. held in 1907 that this provision was not void and, as already stated, no appeal was brought against this decision. It is now urged that this provision became void after the expiration of twenty-one years from the death of the testator by reason of the *Accumulation Act* 1800, 39 & 40 Geo. III. c. 98 (the *Thellusson Act*), which is in operation in Tasmania by virtue of 9 Geo. IV. c. 83. It is contended that the direction in the will ceased to operate twenty-one years after the death of the testator, so that the profits after that date go to such persons as would have been entitled if the excessive accumulation had not been directed. Here again the contest is between the next of kin, the sweep beneficiaries, and the Hobart-property beneficiaries. *Clark* J. held that the Hobart-beneficiaries were entitled.

The determination of the questions which arise depends not only upon the terms of the will and upon the order made by *Street* J., but

also, it is contended, upon the provisions of the agreements to which reference has been made.   It has been held by *Clark* J. that, although these agreements are not effective as dispositions of property, they are, until revoked, effective as a mandate or authority to the trustees to deal, in accordance with their terms, with the property to which they relate.   These provisions have been interpreted by the learned judge as applying to both the released widow's share and the accumulations made after twenty-one years from the testator's death.

There are three appeals before the court.   The trustees of the will and the sweep beneficiaries have each appealed against the decision that the *Thellusson Act* is applicable.   The next of kin, while contending that the *Thellusson Act* applies to the provision for accumulation, appeal against the decision that the unauthorized accumulations go to the Hobart-property beneficiaries, and contend that there is an intestacy as to such accumulations, so that they go to the next of kin.   The next of kin also appeal against the decision as to the widows' one-twentieth of the profits, and contend that as to these moneys there is also an intestacy.   The Hobart-property beneficiaries support the decision of the learned judge on all questions, except that they contend that they are entitled outright to all the moneys in question and that their claim is not modified or restricted in any degree by the agreements mentioned.

In order to appreciate the questions which arise it is now necessary to refer more particularly to the provisions of the will.   The will has, for purposes of reference, been divided into lettered paragraphs, though it was not so divided by the testator.

It is not necessary to consider in detail the provisions dealing with the properties in New South Wales and elsewhere.   The provisions in clauses K and Q in favour of charitable benevolent or philanthropic institutions were, as already stated, held to be invalid. It is sufficient to say that these provisions deal with the " residue of the proceeds of sale and disposition of my real and personal estate and the moneys forming part of my personal estate at my decease in New South Wales or elsewhere other than in Tasmania." It is therefore clear that this gift to charitable and philanthropic institutions (which has been held to be void) is not a gift of Tasmanian assets.

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

Latham C.J.

488                          HIGH COURT                    [1939.

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

Latham C.J.

In clauses S and T the testator deals with Tasmanian property. This property is to be divided between five persons in stated proportions. These persons have been called, in the agreements to which reference has already been made, the "Hobart-property beneficiaries." What is given to them is " all my real estate and all the residue of my personal estate of every kind and nature whatsoever in the State of Tasmania save and except the business carried on by me at Hobart aforesaid as a conductor of sweep consultations and the goodwill and interest thereof and therein and save and except the personal estate, effects and moneys belonging to such business and save and except moneys lying to my credit in any bank in Tasmania."

In this clause the testator deals with all his Tasmanian property save and except the sweep business and moneys in banks in Tasmania. The question which arises upon this clause is whether, if subsequent dispositions of interests in sweep profits fail to take effect, those interests pass to the Hobart-property beneficiaries by virtue of the gift in clauses S and T of all the residue of personal estate in Tasmania except the sweep property.

In clause U and subsequent clauses the testator deals with the sweep. He expresses his desire that his trustees shall carry on the sweep under a licence under an Act entitled *The Suppression of Public Betting and Gaming Act* 1896. In clause W he directs the trustees to stand possessed of the sweep business upon trust to pay debts connected therewith. In clauses Y and Z he deals with the profits of the sweep. Clause Y provides that the trustees shall pay the net profits of the sweep to twelve named persons, four of whom receive one-tenth each and eight of whom receive one-twentieth. These provisions account for eight-tenths of the profits.

Clause Y also directs that one-tenth of the profits is " to be distributed between and amongst such of the employees for the time being engaged in the said business and in such proportions in all respects as my trustees shall in their absolute discretion think fit." In the proceedings in 1907 *Street* J. answered a question asked by declaring " that the trust in favour of the employees for the time being engaged in the said sweep business  .  .  . is not void for uncertainty or otherwise." It will be observed that his Honour

62 C.L.R.]            OF AUSTRALIA.                    489

expressly refers to this provision as creating a trust and holds that it is not void for uncertainty or otherwise. Such a trust is not charitable in character; it is intended to continue for an undefined time; and the beneficiaries under it consist of a class of persons fluctuating from time to time. It might be thought, therefore, that the gift was void, but the contrary decision has been reached in litigation between all the parties who are now represented before the court and this court must necessarily accept the decision that the provision in question is not void for uncertainty or otherwise. This decision must, I think, be construed as excluding any objection based on the rule against perpetuities. It means that, at the time when the question arose, there was nothing invalid in the provision. The validity of such a provision, if it is valid, cannot be affected by effluxion of time. It might have been otherwise if the clause had provided for the accumulation of any of the profits.

The interest of the employees, however it may be defined, is an interest only in relation to one-tenth of the profits while the sweep is a going concern. A later provision in the will (clause DD) provides for the division of the proceeds of the sweep business if it is wound up. The employees take no benefit under clause DD, though, as will be seen, the persons specifically mentioned in clause Y, or their widows, do benefit under clause DD.

Clauses Z and AA deal with the remaining one-tenth of the sweep profits. They are as follows :—" Z. And I direct my trustees to stand possessed of the remaining one-tenth of the said net profits and of any part or parts of the said net profits which may for the time being for any reason be unapplied or undisposed of upon trust to accumulate the same but without being bound to invest the same or any part thereof and from time to time with the full and absolute powers of owners thereof to use such accumulations or any part or parts thereof for the furtherance and benefit and advantage of the said business in such manner and way in all respects as to them shall seem or appear best and in aiding or assisting any person or persons whatsoever to whom in the opinion of my trustees aid or assistance at the particular time would be a benefit and advantage in this life."
" AA. And in aiding or assisting any one or more of the persons

H. C. OF A.
1939.

BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
v.
BLAIR.

Latham C.J.

490                          HIGH COURT                          [1939.

H. C. OF A.
1939.

BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
Co. (LTD.)
v.
BLAIR.

Latham C.J.

institutions causes or funds that my trustees are directed to assist under trusts in favour of charities hereinbefore more fully set forth."

These clauses relate to : (1) the remaining one-tenth of the said net profits ; and (2) any part or parts of the said net profits which may for the time being for any reason be unapplied or undisposed of. It will appear hereafter that it is arguable that a lapsed share which would have been payable to the widow of one of the sweep beneficiaries under clause Y passes under the words which I have quoted under Z.

Clause Z directs the trustees to accumulate the funds mentioned in 1 and 2 and to use the accumulations or any part thereof for three purposes which are as follows : (1) the furtherance and benefit and advantage of the said business ; (2) aiding or assisting persons at the discretion of the trustees ; (3) aiding or assisting any of the persons &c. which the trustees are directed to assist under the prior trusts in favour of charities, that is, under clauses K and Q. The latter trusts were declared by the High Court to be invalid. It is plain that the direction to apply the moneys towards assisting any persons &c. are also invalid. It might have been thought that a direction to apply moneys during an indefinite period for the furtherance benefit and advantage of a business was also invalid, but any arguments to that effect were rejected by *Street* J., who, in answer to a question asked by the originating summons in 1907, declared " that the trust to employ one-tenth of the net profits of the said sweep business for the purpose of the said business mentioned in question 17 of the said amended originating summons is not void for uncertainty or otherwise but that the said trustees are at liberty to apply as much or as little of the accumulated funds derived from the said net profits mentioned in the said question 17 for the benefit of the said sweep business as in their discretion they think fit."

Thus, so far as the funds are directed to be employed " for the purposes of the said business " (that is, for the furtherance and benefit and advantage thereof) the trust is declared to be not void for uncertainty or otherwise. This decision must also be accepted as a matter finally determined between all the parties. The declaration is plainly limited to the use of the funds for the purpose of the

business.  It does not apply to either of the other two purposes mentioned.

This answer therefore, permits the trustees to accumulate moneys and to apply them in the manner stated.  The first question which arises under clause Z is whether the decision of *Street* J. established the validity of clause Z in relation to the application of funds in the manner stated, not only as against an objection which would go to the whole of the clause (such as an objection based upon uncertainty or the rule against perpetuities) but also as against an objection based upon the *Thellusson Act*.  No specific question as to the *Thellusson Act* was asked in the summons in 1907, and there is nothing in the answer to the question to show that it was considered by the learned judge.  In my opinion the answer should not be read as applying to any objection based upon the *Thellusson Act*.  The decision that the clause is not void for uncertainty or otherwise is a decision that the clause is not entirely destitute of legal effect.  In my opinion it is not a proper construction of the answer to read it as establishing the validity of the clause at all times in the indefinite future.  I am therefore of opinion that it is open to parties interested to contend that the *Thellusson Act* is applicable to this clause notwithstanding the decision given in 1907.

The next questions which arise with respect to clause Z are whether it applies to a share released by the death of a widow of one of the legatees, and, if the clause does so apply, what becomes of the said share.  Clause CC provides that, if any legatee mentioned in clause Y dies in the lifetime of the testator leaving a widow him surviving, then the proportion of the profits to which that legatee would have been entitled had he survived the testator shall be paid to the widow during her lifetime.  Two of the legatees did predecease the testator, and each of them left a widow who has received under clause CC one-twentieth of the net profits of the sweep.  The widow of one of the legatees died on 22nd March 1936.  The court is asked to determine what becomes of the share of the net profits which, if she had continued to live, she would have continued to receive.  Before this question can be answered it is necessary to refer to other clauses of the will.

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

Latham C.J.

H. C. of A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

Latham C.J.

Clause DD deals with the possible winding up of the sweep. It is in the following terms :—" DD. In the event of my trustees being unable to continue or deciding to discontinue the carrying on of my said business then I authorize empower and direct my trustees to wind up the said business and to realize my sweep consultation business and I direct my trustees to stand possessed of the net proceeds of such winding up and realization including all moneys which may have accumulated in their hands under the trust in that behalf hereinbefore contained or so much of such accumulations as shall not have been used or distributed as aforesaid but after payment of all debts liabilities and prizes in connection therewith upon trust to divide the same between and amongst the before-named legatees of the net profits of the said business in the same proportions as they are hereinbefore directed to divide between them the said net profits."

Clause DD was also interpreted by *Street* J. In the first place the learned judge held that the funds accumulated under clause Z " so far as not employed for the furtherance of the sweep business follow the same destination as the net proceeds of such business upon realization." That destination is then defined in the answer to questions 17 (*b*) and (*c*), which is as follows :—" That in the event of the said trustees winding up the said sweep business the whole proceeds of realization are distributable amongst those of the twelve legatees of the net profits of the said sweep business named in the said will and codicil who survived the testator and the widows of those who predeceased him in similar proportions *inter se* to those in which the said net profits are divisible but that the interests of the widows are limited to estates for life and that on the death of a widow the share in which she took a life interest passes under the gift in the said will of the residue of the testator's Tasmanian property." I will return to this answer after referring to one further provision of the will, clause FF, which is as follows :—" FF. And I declare that the shares of any of the before-named legatees of my said business either in the net profits thereof or in the net proceeds of such winding up and realization as aforesaid and in all moneys which may have accumulated as aforesaid which shall fall in or lapse owing to the death of such legatees in my lifetime or owing to the death of his widow should he leave one as aforesaid or owing to any

one or more of the said legatees renouncing or disclaiming the legacy hereby bequeathed to him or them respectively shall be held by my trustees upon and subject to the trusts directions and provisions hereinbefore contained in favour of charities."

This clause deals with shares of the legatees, either in net profits of the sweep or in the net proceeds of the winding up of the sweep, if such shares fall in or lapse owing to certain events. One of the events is the death of the widow of a legatee. This, therefore, is a provision specifically declaring what is to happen to a share which falls in on account of the death of a widow. The provision is that the trustees shall hold such a share upon the trusts &c. " hereinbefore contained in favour of charities." Those trusts are declared in clauses K and Q, which relate to New-South-Wales assets. The effect of this provision is not, however, to change Tasmanian assets into New-South-Wales assets. The provision simply applies referentially to these assets the same provisions as are applicable to New-South-Wales assets by virtue of clauses K and Q. In accordance with the prior decision of this court in *Attorney-General (N.S.W.)* v. *Adams* (1), this provision must be held to be invalid. The result of holding that clauses K and Q were invalid was that the New-South-Wales assets went to the next of kin. It does not, however, follow that the result of holding that clause FF is invalid is that any Tasmanian assets pass to the next of kin. If clauses S and T apply to Tasmanian assets which are not effectively disposed of by other provisions in the will, the lapsed shares of the widows will go under those clauses to the Hobart-property beneficiaries as *Clark* J. has held. I propose now to consider this question in connection with clause DD and the answer of *Street* J. to questions 17 (*b*) and (*c*).

By that answer *Street* J. decided that in the event of a winding up, the widows would share with the legatees in the proceeds of the winding up, including accumulations, but would take only a life interest. The employees engaged in the business are given no interest in the proceeds of winding up, and no beneficiaries are selected to take any part of the proceeds corresponding to the furtherance one-tenth of profits. Clause DD provides that the legatees (and widows), who received eight-tenths of the profits, are to receive the

(1) (1908) 7 C.L.R. 100.

H. C. of A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

Latham C.J.

494                          HIGH COURT                    [1939.

H. C. of A.
1939.

BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
Co. (LTD.)
v.
BLAIR.

Latham C.J.

whole of the proceeds in proportions corresponding to their share in the eight-tenths of the profits, not in the ten-tenths of the profits. Thus, some would receive a one-eighth share and others would receive a one-sixteenth share.

The effect of *Street* J.'s decision is that, if a winding up took place, the widows would during their lives each receive the interest upon one-sixteenth of the proceeds, and that, after the death of a widow, the capital of her one-sixteenth share would, if a winding up took place, pass to the Hobart-property beneficiaries under clause S, or more particularly, under that part of clause S which deals with the residue of Tasmanian personal property. His Honour construed clause S as excepting sweep assets, not in order to take them away under all circumstances and for all purposes from the persons to whom the Tasmanian estate (with the exception of the sweep assets) are given, but only to take them away for the purpose of giving them to other persons, e.g., under clauses Y, Z, AA, CC, DD or FF. In accordance with this view of the nature of clause S, his Honour held that the undisposed of one-sixteenth of the proceeds of a winding up representing a deceased widow's share passed under the words of clauses S and T dealing with all the residue of personal estate in Tasmania.

It is now contended for the Hobart-property beneficiaries that the same reasoning necessarily applies to a widow's interest in profits (as distinct from proceeds of winding up) which has ceased owing to her death. In other words, it is said, clause S creates a true Tasmanian residue, and under clauses S and T the Hobart-property beneficiaries are entitled to receive any sweep interests which fail, whether those interests be interests in profits during the carrying on of the sweep or interests in corpus upon the winding up of the sweep.

The decision of *Street* J. upon this point relates only to proceeds of winding up and not to profits during the continuance of the business, and therefore it cannot be relied upon as *res judicata* in relation to the lapsed interest of a widow in profits. But it is argued for the Hobart-property beneficiaries that all parties are estopped in relation to this matter by way of issue-estoppel, for the reason that the decision of the learned judge necessarily involves the proposition that clause S creates a true Tasmanian residue. In

my opinion the decision does involve this proposition, but I do not think it necessary to consider the rather difficult question relating to issue-estoppel. Independently of any question of estoppel I agree with the decision of *Street* J., which is supported by *Blight* v. *Hartnoll* (1) and similar cases. There is, I think, nothing in clause S or elsewhere in the will to exclude the application of the general rule which is to be found stated in *Cambridge* v. *Rous* (2) and *Leake* v. *Robinson* (3) that, prima facie, a testator is supposed to give his property away from a residuary legatee only for the purpose of giving it to a particular legatee, so that, if the latter provision fails, the residuary legatee takes. But, further, the decision of *Street* J. was given thirty-two years ago. It has been acted upon by the parties and, in my opinion, it should not be overruled unless it was thought to be very clearly wrong, apart altogether from any question of estoppel. In my opinion, for the reasons stated, the decision was right and I think it ought to be followed as a well-decided authority of long standing.

I should, however, refer to one argument which, upon the basis that the parties are not affected by any estoppel, has been raised on behalf of the sweep beneficiaries. It has been argued that the lapsed shares of the widows in the profits are dealt with by clause Z, which applies to " any part or parts of the said net profits which may for the time being for any reason be unapplied or undisposed of." It is contended that the lapsed widow's shares in profits is such a part of profits and should therefore be added to the further-ance one-tenth and applied for the furtherance &c. of the sweep business. I do not agree with this view. Clause Z is a provision which deals in general terms with any part of the net profits which " for the time being " is undisposed of. It is, perhaps, doubtful whether clause Z can be applied to any part of the net profits which is permanently undisposed of, but, placing that suggestion on one side, I am of opinion that clause Z is a general provision dealing with such unapplied net profits, while clause FF is a special provision specifically dealing with the case of lapse due to the death of a widow. Effect should be given to this specific provision, with the

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

Latham C.J.

(1) (1883) 23 Ch. D. 218.
(2) (1802) 8 Ves. 12, at p. 25 [32 E.R. 254, at p. 258].
(3) (1817) 2 Mer. 363, at p. 393 [35 E.R. 979, at p. 990].

H. C. of A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
Co. (LTD.)
*v.*
BLAIR.

Latham C.J.

result that a share of net profits which is released by the death of a widow is given, but ineffectively given, to charities by clause FF. This share, therefore, in my opinion, passed directly to the provisions of clause S as Tasmanian residue, and not first to clause Z and then to clause S.

This view is important in relation to the agreements which have been made and to which it is now necessary to refer in more detail. An agreement was made on 2nd April 1909 between the sweep beneficiaries, the trustees and the Hobart-property beneficiaries. John Coleman, described as representing the employees of the Tattersall's Sweep Consultation business, was also a party to the agreement. There is no evidence, however, that he was entitled to represent the persons who were then employed in the said sweep business, and there is no principle of law according to which he could bind future employees. Accordingly, his participation in the agreement cannot be regarded as effective to affect the interests of the employees. For the immediate present purpose, however, it is not necessary to refer further to this aspect of the agreement. The parties to this agreement sought to re-establish the trusts of the will in relation to the furtherance one-tenth so far as the will authorized a distribution to charities. Clause 9 of the agreement authorized the trustees " to stand possessed of the one-tenth of the net profits arising from or out of the carrying on of the said sweep business and in the said will of the said George Adams deceased referred to as ' The remaining one-tenth of the said net profits ' and of any part or parts of the said net profits which may for the time being for any reason be unapplied or undisposed of upon the trusts and to and for the ends intents and purposes for the furtherance of the said sweep business and for charities in the said will declared and set forth with respect to the same," and in accordance with certain arrangements made in March 1905 and January 1909 as to certain of the said profits. The clause also contained a declaration by the trustees that they would stand possessed of the one-tenth net profits in accordance with the direction already quoted. (The declaration by the trustees did not relate to any part of the profits unapplied. But the authority did relate to such parts.) By an agreement of 15th February 1912 an identical authority was given to the

trustees by W. J. Adams (who had acquired all the interests of the next of kin) and again by the Hobart-property beneficiaries. Thus, the sweep beneficiaries, the Hobart-property beneficiaries and the next of kin have all given an authority to the trustees in the terms stated.

The terms of this authority reproduce the words of clause Z of the will. *Clark* J. has interpreted this provision as applying to a lapsed widow's interest in net profits. In my opinion it does not so apply for reasons which I have stated, namely, that such an interest does not fall within the terms of clause Z of the will. His Honour declared that the agreement, while not effective as a disposition of property, because it involved an accumulation of income prohibited by the *Thellusson Act*, nevertheless did operate as an authority to the trustees, so long as it was unrevoked, to deal with the moneys to which it referred by applying them for furtherance purposes or for charities. Upon my view this authority does not extend to the lapsed widow's share of profits, and, accordingly, the order of *Clark* J. should in my opinion be varied by omitting the part thereof which declares that it does so apply.

For the reasons which I have stated I am of opinion that the one-twentieth share of profits which would have been paid to the deceased widow had she continued to live should be paid as from the time of her death to the Hobart-property beneficiaries in the proportions set out in clause T of the will.

The next question which is raised upon the appeal relates to clause Z. It is contended that the *Thellusson Act* prohibits any accumulation of the furtherance one-tenth or of unapplied parts of net profits beyond twenty-one years from the testator's death. I have already dealt with the contention that the order of *Street* J. established the validity of clause Z throughout the indefinite future and have stated the reasons which lead me to the opinion that the order did not have that effect. It thus becomes necessary to consider whether clause Z infringes the *Thellusson Act*.

In my opinion clause Z plainly directs an accumulation of income during an indefinite period. It cannot be defended as a direction for the maintenance as distinct from the extension and increase of what may be regarded as the capital asset of the sweep business so

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

Latham C.J.

H. C. OF A.
1939.

BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
v.
BLAIR.

Latham C.J.

as to be protected by the principle of *Vine* v. *Raleigh* (1) : See *Halsbury, Laws of England*, 2nd ed., vol. 25, pp. 181, 182. It cannot be supported as making provision for reserve funds to meet depreciation, because the clause deals only with net profits, and in ascertaining net profits all proper reserves as well as current running expenses must necessarily have been allowed for and taken into account. The persons entitled to the profits of the business are not the same as the persons entitled to the proceeds of the business upon a winding up, and for this reason the rule in *Saunders* v. *Vautier* (2) and *Wharton* v. *Masterman* (3) cannot be utilized so as to escape the operation of the *Thellusson Act*. I do not, however, propose to examine this portion of the case further, because my brother *Dixon* has dealt with it in full detail and I agree entirely with his views. I agree that the *Thellusson Act* prohibits accumulations under clause Z after twenty-one years from the death of the testator.

The fund constituted by the prohibited accumulations is thus not dealt with by clause Z, which, owing to the *Thellusson Act*, is ineffective for that purpose. Accordingly it is undisposed of ; it is a Tasmanian asset of the testator's estate ; for reasons which I have already stated it falls within the provisions S and T of the will and goes to the Hobart-property beneficiaries.

The agreements, so far as relevant to the questions now before the court, have two aspects. They purport to dispose of property upon trusts involving an accumulation of income which is in breach of the *Thellusson Act*. So regarded, they are not illegal, but they are void after the expiry of the permitted period. Any permitted period which can be suggested has now expired. But the agreements further contained an express direction and authority to the trustees to dispose of the moneys in the manner set forth. This direction and authority cannot operate as an agreement by which the parties are bound. But when any person is entitled to receive money there is nothing to prevent him from directing that it be applied towards any lawful object. The parties entitled to the moneys in question could from time to time request or direct the trustees to pay the moneys to any charities or to any persons. In the agreements a

(1) (1891) 2 Ch. 13.            (2) (1841) 10 L.J. Ch. 354.
            (3) (1895) A.C. 186.

H. C. of A.
1939.

BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
Co. (LTD.)
v.
BLAIR.

Latham C.J.

general direction of this character has been given, and, until it is revoked by any party, it operates as a justification for such payment by the trustees. Thus, the agreements, though not effective as a disposition of property, do, by reason of the express direction which they contain, provide a justification to the trustees for the expenditure of moneys accumulated after the permitted period in accordance with the direction. I agree with *Clark* J. that this direction may be withdrawn at any time.

I am, therefore, of the opinion that the order appealed from should be varied by omitting from the answer to question 1 all reference to the agreement of 2nd April 1909, but that otherwise the appeal should be dismissed.

In the order as settled the names of the trustees have inadvertently been inserted in two places instead of the names of the Hobart-property beneficiaries. These errors should be corrected.

The parties have agreed that the costs of all parties should be taxed as between solicitor and client and that they should be paid out of the funds which are subject to clause Z of the will. In my opinion there is no reason in the present case why the court should not give effect to this agreement of the parties.

RICH J. I agree in the view adopted by *Clark* J. that, in the events which have happened, the one-twentieth share of profits allotted to Henry Isadore Joachim Rooke, which up to the death of his widow was paid to her, fell in the first instance into the invalid gift of undisposed interests in the business in favour of " charities," and then, in consequence of the invalidity of that gift, into the gift of one-tenth of the profits and of any part of the net profits which might for the time being for any reason be unapplied or undisposed of. The result of this view is, in effect, that the one-tenth becomes three-twentieths, and the fate of this fraction of the profits of the business may be dealt with as one question. Unfortunately, although the question may be one, the answer to it cannot be given without solving a succession of subsidiary questions. What for brevity I shall call the three-twentieths of the profits is the subject of an unusual direction requiring the trustees to accumulate the same and to use the accumulations or any part of them for the furtherance

500 HIGH COURT [1939.

H. C. of A.
1939.
⌣
BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
Co. (LTD.)
v.
BLAIR.

Rich J.

and benefit and advantage of the business according to their discretion, and for the aid or assistance of any persons to whom, in the opinion of the trustees, aid or assistance at the particular time would be a benefit and advantage in this life and for supposed charities, objects which in fact go outside the scope of legal charities. There can be few persons to whom aid or assistance in this life could be of no benefit or advantage. But doubtless the testator was not inspired by motives of universal benevolence towards the human race. He is careful to absolve his trustees from any duty to account, and his reliance upon them must have extended to their choice of fitting persons as objects of solicitude on the part of the proprietors of a sweep business. However, I imagine that so much of the gift as relates to the advantage and benefit of such persons is as void as the part relating to so-called charities. But the decretal order of *Street* J., as he then was, made over thirty years ago, establishes the validity and moulds the form of the rest of the trust or direction. That order declares that the trust " is not void for uncertainty or otherwise but that the said trustees are at liberty to apply as much or as little of the accumulated funds derived from the said net profits mentioned for the benefit of the said sweep business as in their discretion they think fit." What we now have to consider is whether the continued accumulation or application of profits under the trust is hit by the *Thellusson Act*. First, does the decretal order allow us to consider the question in substance or, by its declaration that the trust is not void, does it mean that it is forever and in all respects valid ? I think that the decretal order should be construed as doing no more than declaring that the trust was not wholly void either for uncertainty or for perpetuities or for any other reason. It is to be noticed that the declaration establishes only part of the trust, and, in any event, the application of the *Thellusson Act* was at that date a future and contingent question which might never arise.

Next, as to the question of substance, whether the trust is within the *Thellusson Act*. Its most conspicuous feature is that it directs an accumulation. The accumulation is for future expenditure and as to the surplus for distribution on the winding up of the business, an uncertain future event. I cannot agree in the soundness of any of the answers suggested to the application of the *Thellusson Act*.

The judgment of *Murray* C.J. in *Re Mallen* (1) correctly applies the *Thellusson Act* to a reserve fund created out of the profits of a business. The same view is adopted by *Byrne* J. in *In re Cox* (2). I cannot see that there is any room for the application of the rule in *Saunders* v. *Vautier* (3). There are no person or persons with an immediate right to the enjoyment of corpus and income. I think that the employees take an interest and Lady Braddon is indirectly interested : See *Berry* v. *Geen* (4). The theory that the accumulations are for expenditure that does not involve the creation, acquisition or extension of any capital asset enuring for the future benefit of beneficiaries and therefore is not against the *Thellusson Act* does not seem to me to be tenable. The direction is for the accumulation of a fund. It is not a direction to lay out money for purposes which may not or do not secure any enduring advantage. It begins in the creation or maintenance of a fund, and, whilst consistently with the trust the fund may be dissipated, yet consistently with the trust the fund may be spent for the benefit of persons in the immediate or remote future or for the acquisition of capital assets or retained until final distribution. I am, therefore, of opinion that the application of the money under the trust was not authorized after twenty-one years from the testator's death. What then ought to have been done with it ? Certain persons, called for shortness the Tasmanian-property beneficiaries, say that it should pass to them under a residuary clause limited to Tasmanian property. The clause expressly excepts the sweep business. But it is contended on their behalf that the exception is made only for the purpose of disposing of the business on other effective trusts and that, on the failure of one of these trusts, the purpose of the exception being defeated, the undisposed of interest falls back into the main provision : See *Blight* v. *Hartnoll* (5). On the other hand, for the assignee of the next of kin it is maintained that the exception is absolute and made for all purposes and, further, that the disposition is not a true general residuary gift or a gift of particular residue capable of catching

(1) (1933) S.A.S.R. 50.
(2) (1900) W.N. 89.
(3) (1841) Cr. & Ph. 240 [41 E.R. 482], affg. 4 Beav. 115 [49 E.R. 282].
(4) (1938) A.C. 575.
(5) (1883) 23 Ch.D. 218.

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
Co. (LTD.)
*v.*
BLAIR.

Rich J.

502 HIGH COURT [1939.

H. C OF A.
1939.

BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
v.
BLAIR.

Rich J.

undisposed-of interests. Unfortunately for this contention, *Street* J. in the decretal order embodied a declaration founded on the construction of the clause contended for by the Tasmanian-property beneficiaries. It fell to him to deal with another undisposed-of interest in the business, and he decided that it was caught by the clause. While it is true that it was a different interest, the parties were the same, the destination of the interest was governed by the same clause and by the same considerations. If he construed the clause one way, the interest fell to the next of kin, and, if in the other, to the Tasmanian-property beneficiaries. Except for the difference in the identity of the subject matter the issues were the same. He decided the question, and, in my opinion, we are precluded by his decision, which conclusively fixed upon the clause the construction contended for by the Tasmanian-property beneficiaries. This construction was fundamental to the decision and directly involved in it. Indeed, it is almost expressed in the words of the declaration, which said that the share then in question passed under " the gift in the said will of the residue of the testator's Tasmanian property," a form of expression which clearly means that the clause is a true residuary gift limited to the Tasmanian property. I am, therefore, of the opinion that the three-twentieths share of the profits must be taken to have passed to the Tasmanian-property beneficiaries.

This conclusion upon the will and order does not end the matter, for after the decretal order of *Street* J. the parties entered into agreements dealing with many matters which he had decided. Appeal had been taken to the High Court from his decision, and, if the agreements cannot be regarded as agreements of compromise, they, at any rate, attempt to re-establish some of the provisions which his decision had destroyed or modified. Upon the particular point with which we are concerned, viz., the disposal of the three-twentieths of the profits, I think the agreements constitute nothing but an attempt to re-establish as trusts the same provisions as the testator had adopted as his testamentary disposition of the share of the profits. They are just as much subject to the *Thellusson Act* as the trusts of the testator's will, and I think that for the purposes of that Act the same time must be taken as the *terminus a quo* of the period of permitted accumulation. *Clark* J., in whose judgment in this

intricate case I generally concur, took the view that the agreements had an additional effect as a revocable authority to the trustees to continue administering on the footing of the testator's will.  I am clearly of opinion that for the purposes of the *Thellusson Act* the authority could not be considered irrevocable.  It is unnecessary to consider the correctness of so much of the order as is based upon the view that the agreements are a revocable authority, for no one appealed against it.

The appeal should be dismissed.

STARKE J.  George Adams died on 23rd September 1904.  He was the owner of property both in New South Wales and Tasmania. This property was the subject of testamentary dispositions on his part.  These dispositions have been marked alphabetically in the transcript copy of his will for convenience of reference, but are not so marked in the original will.

So far as material to these appeals the dispositions were as follows :—

1. All his real and personal estate in the State of New South Wales and elsewhere other than in Tasmania was given to his trustees, subject to various trusts and provisions in his will set forth ;  and directions were given as to certain profits mentioned in the will. And the trustees were directed to stand possessed of the residue of the proceeds of sale and disposition of his real and personal estate in New South Wales or elsewhere other than in Tasmania (referred to as his residuary estate) upon trust to pay and distribute the income thereof amongst various objects and for various purposes which are described as charities in the will (clauses K to Q of the will both inclusive).  But the gift to " charities " failed for reasons set forth in the decision of this court (*Attorney-General (N.S.W.)* v. *Adams* (1) ), which need not be repeated.

2. All his real estate and all the residue of his personal estate in Tasmania save and except a sweep-consultation business carried on by him at Hobart he gave to trustees upon trust for certain named persons, who have been called " the Hobart beneficiaries", in certain proportions : See clauses S and T.

(1) (1908) 7 C.L.R. 100.

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

H. C. of A.
1939.

BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
v.
BLAIR.

Starke J.

3. A sweep-consultation business, or, in other words, a lottery business, which he conducted under licence issued in pursuance of statutory authority in Tasmania he gave to trustees and authorized and empowered them to carry on and continue the same. And he directed his trustees to stand possessed of the net profits which might arise from the carrying on and continuance of the said business upon trust to pay the same to named persons in certain proportions. Thus, he gave to the Honourable Henry Isadore Joachim Rooke of Launceston in Tasmania one twentieth share. And his trustees were directed to stand possessed of one-tenth of the said net profits and of any part or parts of the said net profits which might for the time being for any reason be unapplied or undisposed of upon trust to accumulate the same and from time to time with the full and absolute powers of owners thereof to use such accumulation or any part thereof for the furtherance and benefit and advantage of the business in such manner and way in all respects as to them should seem best and in aiding and assisting any person or persons whatsoever to whom in the opinion of his trustees aid or assistance at the particular time would be a benefit and advantage in this life and in aiding or assisting any one or more of the persons, institutions, causes or funds that his trustees are directed to assist under trusts in favour of charities thereinbefore set forth : See clauses U, V, W, X, Y, Z, AA.

The Honourable H. I. J. Rooke died in November 1901, but his wife (Emma) survived. The testator had provided for this event and directed that his proportion of the net profits should be paid to his widow for and during her life (clause CC). Mrs. Rooke died in March 1936.

One of the questions that arise on these appeals is the destination of the one-twentieth share of the net profits in the sweep business given over to the widow of the Honourable H. I. J. Rooke during her lifetime. It is contended that it fell into the accumulation for the furtherance of the sweep business, " I direct my trustees to stand possessed of " " any part or parts of the net profits which may for the time being for any reason be unapplied or undisposed of upon trust to accumulate the same " and to use such accumulations for the furtherance and advantage of the business &c. (clause Z). But

OF AUSTRALIA.

the share is expressly dealt with under the clause which directs that any share in the profits of the business which shall fall in or lapse owing to the death of a widow should be held by his trustees upon and subject to the trusts, directions and provisions thereinbefore contained in favour of charities (clause FF). But the gift in favour of charities cannot be sustained : See *Attorney-General (N.S.W.)* v. *Adams* (1). In my opinion the share given to Mrs. Rooke then falls back into the accumulation for the furtherance of the sweep business (clause Z).

The testator directs that his trustees stand possessed of any part or parts of the said net profits which may for the time being for any reason be unapplied or undisposed of upon trust to accumulate and use for the furtherance, benefit and advantage of the business &c. A part of the profits, namely, Mrs. Rooke's one-twentieth share, is unapplied or undisposed of within the meaning of that trust upon the failure of the gift to the charities. The trusts declared in respect of the profits of his sweep business must, I think, be exhausted before the gift of all his real and all the residue of his personal estate in Tasmania can operate, if it operate at all upon the share (clause S).

The accumulation trust (clause Z) raises other questions in these appeals. They are thus stated in the originating summons issued out of the Supreme Court of Tasmania :—

" 4. As from the expiration of 21 years from the death of the said George Adams are the trustees authorized under the trust to employ the fund of one-tenth of the net profits of the sweep consultation business for the furtherance of the said business to continue to accumulate the surplus moneys in the said fund not expended in any year for the furtherance of the said business ? "

" 5. If the trustees are not authorized to continue to accumulate the said surplus moneys who are the person or persons entitled under the will of the said George Adams to receive the same ? "

But these questions cannot be resolved without reference to an originating summons issued out of the Supreme Court of New South Wales in 1907 and to a judgment given by *Street* J. on that summons. Various orders and declarations were made. It was in that

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

Starke J.

(1) (1908) 7 C.L.R. 100.

H. C. of A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
Co. (LTD.)
*v.*
BLAIR.

Starke J.

proceeding that the trusts in favour of charities were declared void and the decision affirmed, as already mentioned, in this court (*Attorney-General (N.S.W.)* v. *Adams* (1) ). But the declarations more closely touching these appeals are :—

Question 17.—Whether the trust to employ one-tenth of the net profits of such business for the purpose of the said businesses and for charitable purposes is void for uncertainty or otherwise. Declaration.—That the trust to employ one-tenth of the net profits of the said sweep business mentioned in question 17 of the said amended originating summons is not void for uncertainty or otherwise but that the said trustees are at liberty to apply as much or as little of the accumulated funds derived from the said net profits mentioned in the said question 17 for the benefit of the said business as in their discretion they think fit.

Question 17a.—If the answer to the above question is in the affirmative who is or are entitled to the property subject to such trust ? Declaration.—That the said accumulated funds so far as not employed for the furtherance of the sweep business follow the same destination as the net proceeds of such business on realization.

Question 17b.—In the event of the trustees winding up the said sweep business what becomes of the one-tenth interest therein the income of which is directed to be employed as aforesaid and also of the one-tenth interest therein the income of which is directed to be held in trust for the employees aforesaid ? Question 17c.—In the same event what becomes of the interests of the widows of Sir Edward Braddon and H. I. J. Rooke (both of whom died in the testator's lifetime) respectively (a) during their respective lives and (b) after their respective deaths ? Declaration.—That in the event of the said trustees winding up the said sweep business the whole proceeds of realization are distributable amongst those of the twelve legatees of the net profits of the said sweep business named in the said will and codicil who survived the testator and the widows of those who predeceased him in similar proportions *inter se* to those in which the said net profits are divisible but that the interests of the widows are limited to estates for life and that on the death of a widow the share in which she took a life interest

(1) (1908) 7 C.L.R. 100

passes under the gift in the said will of the residue of the testator's Tasmanian property.

These declarations are binding on the parties to these appeals and cannot now be canvassed by them. The declaration in answer to question 17 is a definite determination that the furtherance trust is not uncertain and does not infringe the rule against perpetuities, but is it also a determination that the trust is not a violation of the provisions of the Act commonly known as the *Thellusson Act*, 39 & 40 Geo. III. c. 98 ? The declaration is certainly dealing with the application of the accumulated funds, but, unless its language is explicit and compelling, the declaration ought to be so construed that it accords with and is not in opposition to the provisions of the *Thellusson Act*. Nothing is before the court suggesting that *Street J.* had in mind or discussed the *Thellusson Act* when he made the declaration. The construction however of the declaration must rest upon the language used and not upon matters such as those last mentioned. In my opinion the declaration does not exclude the application of the provisions of the *Thellusson Act* to the furtherance trust (clause Z).

But this view raises the question whether the furtherance trust (clause Z) directs accumulations beyond any period allowed by the *Thellusson Act*. " It is expedient," so the Act recites, " that all dispositions of real and personal estate whereby the profits and produce thereof are directed to be accumulated and the beneficial enjoyment thereof postponed should be made subject to the restrictions set forth in the Act." A provision, however, that violates the Act is only void for the excess. Further, accumulations that can be stopped at any time are not a violation of the Act. Thus, accumulations directed but payable to a person who has an indefeasible right to the possession of the principal may be ended at any time and are not in violation of the Act (*Saunders* v. *Vautier* (1) ; *In re Trevanion* ; *Trevanion* v. *Lennox* (2) ). And trusts which direct the application of the profits and produce of property for its upkeep and repair are not violations of the Act. Thus, directions to keep up policies of insurance effected by the testator on the lives of his children which are to be settled for their benefit, or to keep up

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

Starke J.

1) (1841) 4 Beav. 115 [49 E.R. 282].        (2) (1910) 2 Ch. 538, at p. 546.

H. C. of A.
1939.
~~~
BLAIR
c.
CURRAN.
―――
CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
v.
BLAIR.
―――
Starke J.

policies of insurance to secure the replacement of the capital that would be lost through not selling leaseholds, or to repair or improve property so long as the repairs or improvements do not involve expenditure that should be defrayed from capital, are not violations of the provisions of the Act (*Bassil* v. *Lister* (1); *In re Gardiner*; *Gardiner* v. *Smith* (2); *Vine* v. *Raleigh* (3); *In re Mason*; *Mason* v. *Mason* (4)). Now it cannot be affirmed that the persons entitled to the profits of the sweep business are the same persons as are entitled to the business itself. This depends upon a consideration of the provisions of clauses Y, Z, and DD of the will. It is enough to point to the provision (clause Y) that was declared valid by *Street* J., that one-tenth of the net profits of the business is distributable amongst such of the employees for the time being engaged in the business in such proportion as his trustees should in their absolute discretion think fit (*Berry* v. *Geen* (5)). In my opinion however the trust for accumulation contained in clause Z of the will is in violation of the provisions of the *Thellusson Act* and is void in so far as it exceeds the accumulations allowed by it. It does not fall within any of the exceptions contained in the Act; it may be that debts or losses of the business could be met out of the fund but the authority to use the accumulation for the furtherance, benefit and advantage of the business is much wider than an authority to pay debts and rests wholly in the discretion of the trustees. Again, the accumulations are made from the net profits of the business, which indicates that all outgoings properly chargeable against profits have first been deducted. Those deductions would cover all reasonable business provisions that the trustees deemed proper, including, for instance, reserves or suspense accounts for increased taxation or losses in the business. The beneficial enjoyment of one-tenth of the net profits is postponed; that is free income available for distribution and not required for any purpose of the business is accumulated. The power given to the trustees is so wide in its scope that it goes far beyond providing for the upkeep and expansion of the sweep business. The accumulation directed by clause Z must

(1) (1851) 9 Ha. 177 [68 E.R. 464].        (3) (1891) 2 Ch. 13.
(2) (1901) 1 Ch. 697.                      (4) (1891) 3 Ch. 467.
                    (5) (1938) A.C. 575.

therefore be limited in this case to the term of twenty-one years from the death of the testator.

The question then arises who takes the net profits of the sweep business which can no longer be accumulated according to the terms of the will by reason of the provisions of the *Thellusson Act*. The declaration of *Street* J. under question 17 (*b*) and (*c*) already mentioned here ·becomes important. But that declaration cannot be understood without reference to the following clause in the will :—
" In the event of my trustees being unable to continue or deciding to discontinue the carrying on of my said business then I authorize empower and direct my trustees to wind up the said business and to realize my said sweep-consultation business. And I direct my trustees to stand possessed of the net proceeds of such winding up and realization including all moneys which may have accumulated in their hands under the trust in that behalf hereinbefore contained or so much of such accumulations as shall not have been used or distributed as aforesaid but after payment of all debts liabilities and prizes in connection therewith upon trust to divide the same between and amongst the before-named legatees of the net profits of the said business in the same proportions as they are hereinbefore directed to divide between them the said net profits " (clause DD). The important part of the declaration so far as these appeals are concerned is that the interests of the widows of legatees are limited to estates for life and that on the death of a widow the share in which she took a life estate passes under the gift in the said will of the residue of the testator's Tasmanian property ; that is, to the Hobart beneficiaries under clause S of the will. " If there is a residuary gift and certain property is excepted from it which is disposed of by a later or earlier part of the will the presumption is that the exception was made for the purposes of the particular disposition and that if that disposition fails the excepted property passes by the residuary gift " (*Theobald* on *Wills*, 8th ed. (1927), p. 256, and cases there cited). It must be assumed, I think, that the declaration was based upon this rule of construction. But I doubt if the conclusion of the learned judge was correct ; the frame of the will suggests that the sweep business was taken out of the Tasmanian residue for all purposes and dealt with separately. The declaration, however,

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
Co. (LTD.)
*v.*
BLAIR.

Starke J.

H. C. of A.
1939.
⌒
BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

Starke J.

does not involve the identical question that now falls for determination ; that question is, therefore, not *res judicata* in the technical sense between the parties to these appeals.

But it is contended that the construction of clause S was the foundation of the declaration and consequently that an estoppel by judgment arises. It is well settled that a judgment concludes not merely the point decided but matters which were necessary to decide and which were actually decided as the groundwork of the decision itself though not then directly the point at issue and that a judgment is conclusive evidence not merely of the facts directly decided but of those facts which are necessary steps to the decision —so cardinal to it that without them it cannot stand (*R.* v. *Inhabitants of the Township of Hartington Middle Quarter* (1) ; *Duchess of Kingston's Case* (2) ; *Howlett* v. *Tarte* (3) ; *Humphries* v. *Humphries* (4) ; *Cooke* v. *Rickman* (5) ; *Hoystead* v. *Commissioner of Taxation* (6) ; *Broken Hill Pty. Coy. Ltd.* v. *Municipal Council of Broken Hill* (7) *Commissioners of Inland Revenue* v. *Sneath* (8) ; *Marginson* v. *Blackburn Borough Council* (9) ). But I cannot assent to the applicability of these principles to cases in which the subject matter of the litigation is not the same ; for example, as in this case, where the subject matter of the litigation before *Street* J. for this purpose related to the destination of the share in the proceeds of the sweep business on a winding up in which a widow had taken a life interest under clause DD, whilst in these appeals the subject matter of the litigation relates to part of the net profits of the business under separate and distinct gifts (clauses CC and Z). It would, however, be incongruous after a decision accepted by the parties and given over thirty years ago that this share in the proceeds of the sweep business on a winding up should go to the Hobart beneficiaries under clause S whilst the net profits of the business accumulated beyond the period allowed by the *Thellusson Act* should go not to the Hobart beneficiaries but in some other direction as to the next of kin of the

(1) (1855) 4 E. & B. 780, at pp. 794-
        797 [119 E.R. 288, at pp. 293,
        294].
(2) (1704) *Smith's Leading Cases*,
        13th ed. (1929), vol. II., at pp.
        788-790.
(3) (1861) 10 C.B.N.S. 813 [142 E.R.
        673].

(4) (1910) 2 K.B. 531.
(5) (1911) 2 K.B. 1125.
(6) (1926) A.C. 155.
(7) (1926) A.C. 94.
(8) (1932) 2 K.B. 362.
(9) (1939) 1 All E.R. 273.

testator.  This incongruity is best resolved by accepting the construction placed upon clause S by so learned and experienced a judge as *Street* J., who afterwards became Chief Judge in Equity of the Supreme Court of New South Wales and ultimately its Chief Justice :  Cf. clause 21 of Hobart beneficiaries agreement, 11th August 1908.

All that remains for consideration is the effect of certain agreements made between the parties to these appeals.  The agreements were made after the decision of *Street* J. already mentioned.  They bind the interests of the sweep beneficiaries under the will and also the interests of the Hobart beneficiaries and the next of kin, and an attempt was made to bind the interests of the employees in the net profits of the sweep business by adding a party as representative of their interests.  The trustees of the will are parties to the agreements.  It is unnecessary to go in detail through the complicated provisions of these agreements, for the essential matter so far as these appeals are concerned is set forth in the agreement dated 2nd April 1909.  In clause 9 of this document the Hobart beneficiaries and the sweep beneficiaries authorize the trustees for the time being of the will to stand possessed of one-tenth of the net profits arising from or out of the carrying on of the sweep business and in the will referred to as " the remaining one-tenth of the said net profits " and of any part or parts of the said net profits which may for the time being for any reason be unapplied or undisposed of upon the trusts and to the ends intents and purposes for the furtherance of the said sweep business and for charities in the said will declared and set forth with respect to the same and in accordance with the arrangement arrived at by the trustees with respect thereto.  And the trustees declared and agreed that they would stand possessed of the funds upon the trusts set forth.  It is unnecessary for the purposes of these appeals to set forth the arrangement arrived at by the trustees.  Apparently the parties desired by this clause 9 to confirm and set up again the trust of the testator's will in relation to the one-tenth of the net profits of the sweep business for the furtherance of the sweep business and the charities mentioned in the will.  But the parties could no more than could the testator contravene the provisions of the *Thellusson Act* nor create perpetuities

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

Starke J.

H. C. of A.
1939.
⌣
BLAIR
v.
CURRAN.
———
CURRAN
AND
PERPETUAL
TRUSTEE
Co. (LTD.)
v.
BLAIR.
———
Starke J.

that were not effective as charitable bequests. Consequently, in my opinion, the same result is reached as under the will; the gift to the so-called charities fails; the furtherance trust, according to the declaration of *Street* J., is not void for uncertainty or otherwise, but the accumulation directed in excess of the *Thellusson Act* fails.

*Clark* J., in the proceedings in the Supreme Court of Tasmania, has declared that upon the true construction of the will of the testator the trust expressed in clause Z thereof was valid for twenty-one years from the date of death of the testator but thereafter was invalid by reason of the *Accumulation Act* 1800 and that as from the expiration of twenty-one years from the date of the death of the testator the personal representatives of the Hobart beneficiaries (clause S) became entitled to the one-tenth of the net profits of the sweep business referred to in clause Z of the will. This declaration should be affirmed subject to some addition making it clear that the persons mentioned in clause S or their successors hold upon the trusts declared in clause T. In my opinion, however, the remainder of the declaration should be deleted. It is not right to make effective the trusts and dispositions in the deed of April 1909 until the same are revoked. These trusts and dispositions are wholly or partly void and ineffective in law. But it may be that the trustees have expended moneys on the faith of the provisions in the agreement and can properly rely upon the concurrence and acquiescence of of the beneficiaries in this expenditure, though unauthorized by law. The declaration might as a cautionary measure expressly state that the trustees are not accountable for any unauthorized expenditure that they have made in accordance with the terms of the agreements mentioned or with the concurrence, acquiescence or instigation of beneficiaries under the will.

The declaration made by *Clark* J. in reference to questions numbered 4 and 5 in the originating summons should add a similar reference to the trusts declared in clause T of the will, but otherwise the appeals should be dismissed.

DIXON J. The testator, who died on 23rd September 1904, carried on a business of conducting public sweepstakes or lotteries. By his will he gave directions for the carrying on of his business and the distribution of the profits, a direction with which his trustees are still complying. He named twelve persons among whom eight-tenths of the net profits were to be divided, four of them taking

one-tenth each and eight of them one-twentieth. Of the remaining two-tenths, he directed that one should be applied by the trustees in a distribution among the employees for the time being of the business, and the other should be appropriated for purposes which may briefly be described as advancing the business, providing benefits for persons whom the trustees should think fit to help and making gifts to institutions and for objects of benevolence, unfortunately not confined to the class of charitable purposes for which a valid trust may be established. If the trustees should be unable to continue the business or should decide not to do so, the will authorized them to wind it up. In that event the will directed what should be done with the proceeds of the winding up and realization, including whatever moneys resulting from the appropriation of the final tenth share of profits should then remain in their hands unexpended. It directed that the fund produced by winding up should be divided among the twelve named persons, in the proportions in which they shared profits. This meant that four of the twelve would take two-sixteenths of the proceeds and eight of them one-sixteenth. The division no longer would be in twentieths because, in the distribution of the proceeds of winding up, no share is allotted to the employees, who in the case of profits take one-tenth, and no share is allotted to the above-mentioned purposes to which the will devotes the final tenth share of the profits.

The twelve named beneficiaries of these trusts were all males living at the time when the will was made. The possibility was not overlooked that the death of one of them before the will took effect might cause a lapse of his share. Two clauses dealt with the case. The first declared that, in the event of any of the twelve predeceasing the testator leaving a widow, she should take the proportion of net profits which her husband would have taken had he survived the testator. But, unlike the interests in profits of the named persons, the widow's interest was restricted to her life. The second clause provided that, if a share of one of the twelve named persons in profits or in the proceeds of winding up, including accumulations, should fall in or lapse owing to the legatee's death in the testator's lifetime or to his widow's death, it should be held in trust for the same set of non-charitable objects already mentioned. In fact two

H. C. OF A.
1939

BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
v.
BLAIR.

Dixon J.

H. C. of A.
1939.

BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
Co. (LTD.)
v.
BLAIR.

Dixon J.

of the twelve named persons did die and both left widows who survived the testator. One of them has since died. She died on 22nd March 1936. The last clause, if valid, would have caught the share in the profits and proceeds which, had he lived, her husband would have taken and in which she took a life interest. But, as was declared judicially (1), the purposes named in the trust extended beyond the description of charitable objects for which a trust may validly be created, and the trust necessarily failed. Thus, upon the death of the widow in question, the share, a one-twentieth share, of profits in respect of which her husband was named as beneficiary was, but for a provision yet to be mentioned, undisposed of by the provisions specifically dealing with the business. That provision consists of a few words in the clause relating to the final tenth share of profits which is appropriated to the threefold purpose of advancing the business, making, so to speak, grants in aid of individuals, and providing for non-charitable benevolent objects. The words appear to have been inserted in order to provide for the case of some unforseen failure to dispose, or to dispose effectively, of the entire profits of the business. The clause directs the trustees to stand possessed, upon trust for the purposes mentioned, not only of the final one-tenth of the net profits, but also " of any part or parts of the said net profits which may for the time being for any reason be unapplied or undisposed of." Although the effect of these words was contested, I think they suffice to catch the one-twentieth share of the profits which, upon the widow's death, would, but for the inclusion of non-charitable objects, have passed under the clause providing for the case of one of the twelve named beneficiaries predeceasing the testator leaving no widow or leaving a widow whose life interest in the profits comes to an end. The invalidity of this clause leaves " a part of the net profits which for the time being is undisposed of," and the case falls within the very words of the provision, words which are strengthened by the phrase " for any reason." From this it follows that, in my opinion, by the addition of one-twentieth as from the death of the widow the proportion of profits to be appropriated to what I have called the threefold purpose of advancing the business and so on is increased from one-tenth to three-twentieths.

(1) (1908) 7 C.L.R. 100.

The fate of this proportion or share of profits constitutes the chief question in the case.   It is evident that the direction in the will to apply profits to the purposes stated could not receive full effect. Besides expenditure for the advantage of the business, a thing which may be upheld as incidental to the management of the business and enuring for the advantage of the beneficiaries, the purposes stated by the clause include the application of money for the benefit of no defined persons and for objects non-charitable ; that is, for purposes clearly void.  It might be thought that the trust or direction was entire and inseparable and should, therefore, be regarded as wholly invalid, so that three-twentieths of the profits, unless caught by some residuary bequest, would devolve as upon an intestacy.  On this footing, the sole question left would be whether the will contained such a residuary bequest.  But the fate of the three-twentieths is not governed by the provisions of the will only.  Two other instruments affect its destination.  The first is a decretal order of the Supreme Court of New South Wales, made, on originating summons, by *Street* J., as he then was, on 30th October 1907.  The second is an agreement, or rather a set of agreements, made after that order by the beneficiaries whose interests were involved, or, at all events, by most of them.

It is necessary to deal first with the decretal order.  It contains a great number of declarations made in answer to questions relating to the interpretation and effect of various provisions of the will. Among the questions asked in reference to the profits of the business was the question whether the trust to employ one-tenth of the net profits for the purpose of the business and for charitable purposes was void for uncertainty or otherwise.  In answer the decretal order declared that the trust to employ one-tenth of the net profits was not void for uncertainty or otherwise, but that the trustees were at liberty to apply as much or as little of the accumulated funds derived from the said net profits for the benefit of the said sweep business as in their discretion they thought fit.  The answer implies that part of the trust is void, that is, the part or parts referring to expenditure in subventions to individuals and for the benevolent purposes, not necessarily charitable.  If confirmation of this view were needed, it is provided by the fact that an answer was given to the next

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

Dixon J.

516                          HIGH COURT                      [1939.

H. C. OF A.
1939.
BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
v.
BLAIR.

Dixon J.

succeeding question although that question was expressed to be contingent upon the answer to the preceding question being in the affirmative. In that event, it inquired who was or were entitled to the property subject to the trust. The answer dealt with the unexpended balance of the fund formed by the final tenth share of the profits. It declared that the accumulated profits, so far as not employed for the furtherance of the sweep business, follow the same destination as the net proceeds of such business on realization. A declaration made in answer to two subsequent questions set out what that destination was.

All parties to the present proceedings are bound by the decretal order, and, though in terms the declarations are confined to the one-tenth and do not expressly include the addition, or what in 1907 was a potential addition, of the further one-twentieth by reason of the death of a widow of one of the named beneficiaries who had predeceased the testator, yet, as the addition is governed by the same provisions, the construction and effect given to the trust must be applied to the entire three-twentieths. The full effect of the declaration establishing the validity of part of the trust and defining the discretion conferred upon the trustees cannot be understood without reading with it the exact terms of so much of the provision as was upheld as valid. The material part, so upheld, consists in a direction to the trustees to stand possessed of the proportion of profits "upon trust to accumulate the same but without being bound to invest the same or any part thereof and from time to time with the full and absolute powers of owners thereof to use such accumulations or any part or parts thereof for the furtherance and benefit and advantage of the said business in such manner and way in all respects as to them shall seem or appear best."

The trustees acted under this direction as established and expounded by the decretal order. In some years the expenditure of profits on the furtherance, benefit and advantage of the business was greater, and in some years less, than the amount set aside. Between 1913 and 1930, rightly or wrongly, the trustees distributed among the beneficiaries considered to be entitled half the tenth share of profits, treating half as sufficient for the expenditure

necessary or expedient on furtherance &c. But, otherwise, the excess over expenditure was accumulated, and, at the beginning of 1938, the fund in hand stood at £15,450.

The period limited for directions to accumulate by the *Thellusson Act*, which is in force in Tasmania by virtue of 9 Geo. IV. c. 83, expired on 23rd September 1925. No notice of this circumstance seems to have been taken at the time, but, no doubt, in 1936, when, owing to the death of the widow who was in receipt of a one-twentieth share of the profits, it became necessary to consider how that share devolved, the difficulty arising under the *Thellusson Act* was seen. Plainly a serious question existed whether the trust involved an accumulation which must stop at the end of twenty-one years from the testator's death. But that question cannot now be raised if to do so would be inconsistent with the decretal order. Probably when the decretal order was made it was not foreseen that the period allowed by the *Thellusson Act* would be exceeded, but the application of that Act would be put out of consideration if the decretal order means to declare that the trust or direction for the accumulation and application of the money for the furtherance, benefit and advantage of the business operates validly over an unlimited duration of time. In other words, the first question is whether the application of the *Thellusson Act* is excluded by the declaration that the trust is not void but that the trustees are at liberty to apply the accumulated funds for the benefit of the sweep business. I think that we ought not so to construe the declaration. It is true that the answers to the successive questions state, so to speak, a programme for administering the particular trust or direction. That is to say, they declare, in effect, that part of the trust is valid and authorizes expenditure on furtherance &c. of the business, and that, on winding up the business, the unexpended fund that has accumulated is to be distributed in the same way as the proceeds of realization and winding up. But the declaration that the trust is not void is a general denial that the trust is without validity for any reason. It is not an affirmance of its full and perpetual efficacy. It is expressed in the present tense and does not deal with the duration of the future operation of the trust. The question to which the declaration was addressed was doubtless the want of definite objects and the

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

Dixon J.

H. C. of A.
1939.

BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
v.
BLAIR.

Dixon J.

non-charitable nature of some of the purposes included. How long the trust could lawfully endure was a matter that could only arise in the future, and I do not think general words should be construed as controlling or concluding such a question. After all, there is no expression in any portion of the declarations inconsistent with the termination of the trust at the end of twenty-one years and the cesser at that date of all further accumulation. I, therefore, proceed to consider the question whether the *Thellusson Act* applies to the trust or direction as interpreted by the decretal order.

When the will directs the trustees to stand possessed of the final one-tenth of the net profits arising from carrying on the business and any part or parts of the net profits which may for the time being for any reason be unapplied or undisposed or upon a trust for the stated purposes, no doubt its total or partial expenditure is contemplated. But the trust is not for the direct application to the purposes specified of the part of the annual net income to which it relates. Instead of directly applying the portion of net profits year by year to the purposes, the trustees are told " to accumulate the same but without being bound to invest the same or any part thereof and from time to time with the full and absolute powers of owners thereof to use such accumulations or any part or parts thereof for the " named purposes. The very form of this direction provokes the question whether the trust may operate beyond the period limited by the *Thellusson Act* for the accumulation of income. The period appropriate to the provisions of the will, if otherwise it falls under the Act, would be twenty-one years from the death of the testator. But while the form in which the trust is expressed raises the question whether, after that time, the trustees might act under the direction, the reference to accumulation by no means concludes the matter. The substance, not the form of the provision, must be considered. Moreover, the application of the *Thellusson Act* is not independent of the purposes for which the money may be used. Those purposes are not, of course, to be discovered from the terms of the provision alone. They depend upon the manner in which the decretal order of *Street* J. has modified and affected the operation of the provision. Further, the *Thellusson Act* does not control directions for accumulations which, apart from the Act, would not be efficacious against

those beneficially entitled, if they chose to terminate the accumulation and to demand that they should be put into immediate enjoyment or receipt of the income. Such a right is claimed for the beneficiaries entitled to the profits of the business and to the proceeds of a winding up and, if the claim is well founded, the trustees may act under the clause until the beneficiaries step in, notwithstanding that in the meantime the period limited by the statute had elapsed.

It is evident that any consideration of the questions thus arising should begin with an exact understanding of the nature and effect of the trust as modified or moulded by the order of *Street* J. For that purpose the very compendious account given above requires some elaboration. The extent to which the purposes of the trust have been reduced, the nature of the purposes eliminated and of those that have survived and the character of the discretion committed to the trustees are matters which must be taken into account in determining how far the continued execution of the trust involves an accumulation which cannot validly be directed.

Three purposes, or three descriptions of purpose, are stated in the clause. Of these the third is for so-called charities which were held by *Street* J. and by this court to extend beyond the class of charitable objects for which trusts may validly be declared. So much of the trust as relates to this purpose is, therefore, void.

The second purpose is not so clearly distinguishable from the first as is the third ; but it also could not be sustained if regarded as a separate and distinct object of a trust. It is better, however, to state the terms in which both the first and second classes of purpose are expressed. The provision expresses them by saying that the trustees are to use the accumulations or any part or parts thereof for the furtherance and benefit and advantage of the business in such manner and way in all respects as to them shall seem or appear best and in aiding or assisting any person or persons whatsoever to whom in the opinion of the trustees aid or assistance at the particular time would be a benefit and advantage in this life.

The second part of this description of purposes, namely, that dealing with aid and assistance to those to whom the trustees think it would be a benefit, has been treated as an attempt, proceeding from pure philanthropy, to confer an authority of the widest character

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

Dixon J.

H. C. of A.
1939.
⌣
BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
Co. (LTD.)
*v.*
BLAIR.

Dixon J.

to give financial aid without motive or design. So regarded it is, of course, void, being a trust in favour of no definite persons and not confined to charitable purposes. It is, however, conceivable that the testator looked upon the whole provision as conferring upon his trustees a single discretionary power for the timely expenditure of money, without restriction or control, exercisable as one of the powers and authorities for carrying on and maintaining a business conducting lotteries or sweeps. However that may be, the order of *Street* J. declares the extent to which the trust is good and incidentally defines its ambit. The order declares that what it calls " the trust to employ one-tenth of the net profits of the sweep business," is not void for uncertainty or otherwise, but that the trustees are at liberty to apply as much or as little of the accumulated funds derived from the said net profits (i.e., the one-tenth) for the benefit of the sweep business as in their discretion they think fit. The question which evoked this declaration mentioned, not only the purposes of the business, but also charitable purposes. The answer implies, in conformity with other parts of the order, that so much of the clause as refers to charities is void. Perhaps the question and answer were intended to cover what I have called the second purpose as well as the third, but, as the declaration is framed, it seems as if the second purpose, without any express reference to its invalidity in the question or in the answer, has been excluded, as invalid, from the actual declaration of the purposes which the trustees' discretion covers. The expression " for the benefit of the sweep business," which is used in the declaration, I take to be referential and to mean " for the furtherance and benefit and advantage of the business in such manner and way in all respects as to the trustees shall seem or appear best."

The effect, therefore, of the order is that the trustees are annually to put aside at least one-tenth of the net profits derived from the business and from the fund thus accumulating to expend money if and when they think fit for any purpose which will in their opinion be for the advantage of the sweep business. As appears from another part of the order, when the business is wound up any accumulations then in hand will be distributed among the same persons as the proceeds of realization.

In my opinion, a trust of this description, if otherwise effective, falls under the operation of the *Thellusson Act* and, at the end of the period limited by that Act, the direction to put on one side or accumulate the specified part of the net profits becomes altogether nugatory.

It is true that the profits are earned by the conduct of a business and are not simply the returns from property.  But the business, consisting, as it did, of an organization for the regular and profitable conduct of public sweepstakes or lotteries which possessed a valuable goodwill, and also of physical assets, formed part of the property of the testator passing under his will.  The *Thellusson Act* uses the general expression " any real or personal property", and enacts that no person shall settle or dispose of it so and in such manner that the rents, issues, profits, or produce shall be wholly or partially accumulated beyond the permitted period.  The business was property and the profits are its profits or produce.  This view has, it seems, been accepted without discussion or doubt : See *Varlo* v. *Faden* (1) ;  per *Selwyn* L.J. in *Mathews* v. *Keble* (2) ;  *Re Cox* ; *Cox* v. *Edwards* (3) and *Re Mallen* (4).

In carrying on a business the creation of reserves of profits is often felt to be necessary and is commonly regarded as at least wise. The *Thellusson Act* has nothing to say to reserves for depreciation, amortization, or the like, made by debits against revenue in the course of arriving at the net profits which upon a safe and prudent estimate the business may be considered to have earned.  But the Act is aimed at the retention of net income which has accrued in a form available for enjoyment.  It invalidates any disposition which would have the effect of requiring, or even perhaps enabling, trustees to set on one side and withhold until the occurrence of a future event net income which, during the operation of the trusts, arises after the close of the appropriate period of restriction specified by the statute, e.g., after twenty-one years from the testator's death have elapsed, or after the death of a settlor.

The purpose of the statute is to prevent the accumulation of income arising after the end of the permitted period in order to form

H. C. OF A.
1939.

BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
v.
BLAIR.

Dixon J.

(1) (1859) 27 Beav. 255 [54 E.R. 99].          (3) (1900) W.N. 89.
(2) (1868) 3 Ch. App. 691, at p. 699.          (4) (1933) S.A.S.R. 50.

H. C. of A.
1939.
⌣
BLAIR
v.
CURRAN.
———
CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
v.
BLAIR.
———
Dixon J.

an increased corpus for future enjoyment by the intended objects of the trust. It may be true that the extension and enlargement of a business demands the continuous, or at all events continual, appropriation of part of the net profits to reserves. But such an enlargement of the capital asset constituted by the " business " appears to fall within the process of capitalization which the statute confines to the income of the first twenty-one years or other permitted period of accumulation. On the other hand, preservation and maintenance of the assets of the estate, whether in respect of state or condition or in respect of value, are things for which revenue may be used without restriction of time. Once net profits have been ascertained, all proper deductions being made in order to arrive at a safe and prudent estimate of net gain, then if the profits are earned after the permitted period has elapsed no direction in the trust instrument for the " accumulation " of any part of them is valid. It is an " accumulation " if it takes the form of expenditure of net income in the acquisition or permanent improvement or increase of capital assets. A provision directing such an application of income or profits cannot validly apply to income arising after the expiration of twenty-one years from a testator's death. But expenditure which prevents or restores deterioration in the condition or value of the estate or which amounts to a provision against the loss of a wasting asset involves no accumulation, and a direction for such a thing in a trust instrument may apply validly to income arising after the termination of the period permitted for accumulation. This is a different thing from saying that, although the trust is for the accumulation of income as a provision against future contingent deterioration or for future repairs which do not accrue commensurately with the accumulation, nevertheless it may validly apply to income arising after the period allowed by the statute. *Re Mason* (1) has sometimes been read as if it justified such a proposition, but an examination and comparison of the terms of the will in that case (2) and of the order of *Stirling* J (3) will show that what was allowed was the expenditure of income arising after the permitted period upon rebuilding, reinstating and repairing pursuant to the powers

1) (1891) 3 Ch. 467.          (2) (1891) 3 Ch., at pp. 468, 469.
          (3) (1891) 3 Ch., at p. 473.

in the will for such expenditure and that accumulation was stopped, at all events, except to provide for the fulfilment of the trustees' liabilities as lessees. *Re Mason* (1) is founded on *Vine* v. *Raleigh* (2), an authority which is concerned only in the distinction, no doubt sometimes practically difficult, between present expenditure of income on enlargement of capital, which therefore amounts to accumulation, and present expenditure in maintenance and preservation. It is true that in *Re Hurlbatt* (3) *Warrington* J., as he then was, spoke of the trust upheld in *Re Mason* (1) as " a trust for accumulation," but the description is scarcely accurate. The actual decision of *Warrington* J. was confined to the proposition that a trust bona fide to provide against a lessee's liability for dilapidations is within the exception in the statute of accumulations for the payment of debts and that the addition of directions as to the disposition of so much of the fund as may not be required for a liability so uncertain in amount as that for future dilapidation does not invalidate the trust.

The result appears to be that, if a testator who directs that his business shall be carried on under a trust of indefinite duration wishes to provide for the retention and appropriation to reserves of part of the net profits, he should rely on the profits of the twenty-one years immediately following his death for the building up of the reserves and content himself with directing that profits arising after that period shall be called upon for the purpose only of maintaining the reserves at the level they have then reached and otherwise in preserving and maintaining the business and the assets of which it is formed, including goodwill.

An element in the accumulation directed by the clause under consideration in the present case is the evident intention that the fund should be constantly drawn upon for expenditure for the purposes which it specifies. The policy of the *Thellusson Act* is to invalidate accumulations " whereby," in the language of the preamble. " the beneficial enjoyment thereof is postponed." It may be said that the purpose of the clause is to provide, not for the postponement of beneficial enjoyment, but for future contingent

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

Dixon J.

1) (1891) 3 Ch. 467.            (2) (1891) 2 Ch. 13.
          (3) (1910) 2 Ch. 553, at p. 558.

524                              HIGH COURT                        [1939.

H. C. OF A.
1939.
~~~
BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

Dixon J.

expenditure. The distinction is, however, difficult to maintain as a test between good and bad provisions. It must be remembered that we are only concerned with the operation of a direction after the expiration of the permitted period. It must further be remembered that, under the order of *Street* J., so much only will be expended as the trustees think fit to spend in the furtherance, benefit and advantage of the business. In making the distributions of unexpended profits between 1913 and 1930, to which I referred earlier, the trustees appear to have adopted an interpretation of part of the order of *Street* J. which meant that the balance was distributed at once, year by year, but that interpretation was, I think, erroneous. It follows that the fund must be retained and, subject to future contingent expenditure, enjoyment of the accumulation is postponed. There are certain definite exceptions from the invalidating provisions of the *Thellusson Act*, the payment of debts, the raising of portions and the use of the produce of timber. The inference is that accumulation for future expenditure of a description falling outside the exceptions is just as much forbidden as accumulation to increase the amount of legacies or other dispositions to be subsequently enjoyed by beneficiaries. But, in any case, since the order of *Street* J., the purpose cannot be considered solely or substantially expenditure. It includes retention of the surplus. In *Re Cox* (1), *Byrne* J. applied the statute to a direction to set aside not more than ten per cent of the profits of a newspaper business for a reserve or guarantee fund to meet losses, misfortunes, expenses and contingencies in connection with the newspapers. He appears to have considered that the clause could only have been saved from the operation of the Act by a direction to apply the fund in payment of future debts, so that it would fall within the exception. Prima facie, therefore, I think that the trust is within the *Thellusson Act* and, therefore, had no validity in relation to net income accruing after 23rd September 1925.

The contention that the trust for accumulating or applying a fund for the furtherance, advantage and benefit of the business is wholly or partly within the exception in favour of accumulations for the payment of debts cannot, in my opinion, be maintained. It rests substantially on a direction which is contained in a later clause to

(1) (1900) W.N. 89.

the effect that when the business is realized the proceeds, including surplus accumulations, shall be paid to the beneficiaries thereto entitled only after payment of all debts, liabilities and prizes.  To come within the exception the discharge of liabilities, whether generally or of a particular description, must be the substantial object of the accumulation directed.   It is plain that the trust cannot fulfil this requirement.  But, notwithstanding the prima-facie or apparent application of the *Thellusson Act* to a trust or direction for accumulation, it may be shown that, in any event, the direction to accumulate is no more than an ineffectual attempt to withhold the income from beneficiaries in whom the entire beneficial interest is indefeasibly vested.   In such a case the trust instrument does not, in the language of the statute, " dispose of real or personal property in such manner that  .   .   .   the profits or produce thereof shall be  .   .   .   accumulated."  The obligation of the trustees to accumulate is then dependent upon the will of the beneficiaries who are entitled to the immediate enjoyment of the income.   Where there is an absolute vested gift made payable at a future event with a direction to accumulate the income in the meantime and pay it with the principal, the court will not enforce the trust for accumulation, in which no person has any interest but the legatee, or (in other words) the court holds that a legatee may put an end to an accumulation which is exclusively for his benefit (per Lord *Davey*, *Wharton* v. *Masterman* (1) ).   If there is no effective or enforceable direction for accumulation independently of the Act, then the Act has no application to the case (2).   There must be some ascertained person or persons who can say that he or they have a vested indefeasible right to the surplus (per *Cussen J.*, *Cain* v. *Watson* (3) ) : See *Weatherall* v. *Thornburgh* (4).

To take a direction for accumulation out of the operation of the *Thellusson Act*, it must be one which is not effective according to the terms of the will, because it is an attempt to withhold income from persons in whom, as a matter of property, it is vested.   Once the statute does operate to destroy the direction to accumulate so as to release the income otherwise to be accumulated, then the rule

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

Dixon J.

---

(1) (1895) A.C. 186, at p. 198.
(2) (1895) A.C., at p. 200.
(3) (1910) V.L.R. 256, at p. 273 ; 31 A.L.T. 212, at p. 217.
(4) (1878) 8 Ch. D. 261.

H. C. OF A.
1939.

BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
v.
BLAIR.

Dixon J.

in *Saunders* v. *Vautier* (1) cannot operate to break down the trust, unless all persons who have any present, future, or contingent interest in the property are *sui juris* and consent. These may include next of kin or residuary legatees : Cp. *Berry* v. *Geen* (2).

The provisions in the present case direct the carrying on the business and the division of eight-tenths of the profits among twelve persons in varying shares. One-tenth is to be applied in a discretionary distribution among employees, a class who may or may not be entitled as objects of the discretion. One-tenth, the subject of discussion, is to be accumulated and applied for the furtherance of the business in the manner described. Of the twelve persons, two took for life, and upon their deaths their respective shares in profits were to be added to the tenth in question. Upon winding up and realization of the business, an event left to the decision of the trustees and confined within no limit of time, the proceeds of realization, including unexpended accumulations, are to be distributed among the ten of the same twelve persons and a class substituted for the two taking life interests in shares of the profits, a class named by a declaration in the order of *Street* J. So long as the business is carried on, there is no right given by the will to the accumulating fund for expenditure in furtherance of the business. It must await winding up, because, according to the terms of the provision, it may be called upon to answer some expenditure for the furtherance, advantage, or benefit of the business.

The persons who would take what is left as corpus are not the same as those sharing the profits. The two persons who took a share for life, both of whom were alive in 1925 and one only of whom is now dead, are included, and the maintenance of the fund must be considered to be as much for their potential benefit as for those taking the surplus on winding up and realization. For the fund is to aid and advantage the profit-making entity. Independently, therefore, of the possible interest of the employees, there was not a class of ascertained persons who were entitled indefeasibly to the accumulating income, so that they could ignore the direction to accumulate.

(1) (1841) 4 Beav. 115 [49 E.R. 282].        (2) (1938) A.C. 575, at pp. 582, 585.

Upon the bare construction of the provision for distributing one-tenth of the profits among the employees, I should have thought that employees for the time being were beneficially interested in the discretionary trust. But this means that a class took a beneficial interest who were not necessarily ascertained within the period limited by the rule against perpetuities. If this were so, the provision would be void. Indeed there is no escape from the conclusion that the provision contravenes the rule against perpetuities, unless it is construed as giving the employees no title as a class beneficially interested in the discretionary trust and as being no more than a direction operating for the benefit of the named persons sharing in profits, a direction, in effect, to distribute a bonus among employees, not for their benefit, but to obtain better service in the interests of the business.

The order of *Street* J. has declared the provision good, and it may, therefore, be right to adopt some such construction.

But, in any case, I think the trust of the tenth share directing accumulation would, apart from the *Thellusson Act*, be enforceable, and, therefore, the direction for accumulation is invalidated as from 23rd September 1925.

The consequence of this view is that, as from 23rd September 1925, one-tenth of the net profits and, as from 22nd March 1936, the date of the death of the widow already mentioned, a further one-twentieth, forming in all three-twentieths, of the net profits of the business are not disposed of by the provisions of the will dealing specifically with the business.

The question then arises whether the three-twentieths should be distributed as on an intestacy or, on the contrary, passes under some provision of a residuary nature to be found elsewhere in the will. For the purpose of answering this question there is, in my opinion, only one provision which demands consideration. The will, which is a long one, and was not divided by the testator into paragraphs, naturally falls into three parts. The first deals with the testator's property out of Tasmania, the second with his property in Tasmania except his sweepstake or lottery business and the third with that business. The provision to be considered as possibly carrying the lapsed three-twentieths share of the profits is that

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

Dixon J.

528                              HIGH COURT                         [1939.

H. C. of A.
1939.

BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
Co. (LTD.)
v.
BLAIR.

Dixon J.

disposing of the residue of the Tasmanian estate except the business of conducting sweepstakes or lotteries. It is a devise and bequest in certain shares to five named persons who happen to be included among the twelve named beneficiaries sharing in the profits of the business. It is expressed as a devise and bequest of all the testator's real estate and all the residue of his personal estate of every kind and nature whatsoever in the State of Tasmania save and except the business as carried on by him at Hobart as a conductor of sweep consultations and the goodwill and interest thereof and therein and save and except the personal estate, effects and moneys belonging to such business and save and except moneys lying to the testator's credit in any bank in Tasmania. The question is whether, notwithstanding the exception of the business, a lapsed share of the profits of the business falls back into a gift of Tasmanian residue. When certain property is excepted from a general residuary gift and is specifically devised or bequeathed, the presumption is that in making the exception the testator had no purpose but that of specifically disposing of the excepted property. If the specific disposition proves ineffectual, in whole or in part, then, the purpose of the exception having failed, there is no reason why the general residuary gift should not operate upon the lapsed interest. Once it is found that in its nature the disposition is a general residuary gift, it is not to be deprived of its capacity of comprehending all property not effectually disposed of by anything less than absolute exception made independently of the efficacy of the specific bequest or devise of the excepted property. It is commonly said that it must appear from context or subject matter that the exception is made "for all purposes" and not for the purpose only of the specific disposition, a statement originating in *Bernard* v. *Minshull* (1).

The gift in the present case is not a full general residuary disposition. It is limited to the Tasmanian estate. Further, the exceptions of the business and money in the bank may be considered as combining with the limitation to Tasmania to form the testator's method of defining the subject of the gift.

When a bequest is expressed as a gift of a limited residue or a particular residue, it becomes a question of construction whether it

(1) (1859) John. 276, at p. 299 [70 E.R. 427, at p. 437].

is intended to operate as a general residuary clause subject to the limitations or amounts to a specific bequest of what is left after the deduction or separation of so much of the subject matter as is given otherwise or falls outside the limitations.

In the clause now under consideration the question whether the exception of the sweep business and of moneys in any Tasmanian bank brings about an absolute and final separation of those assets from the property comprised in the clause cannot be treated as independent of the question whether the clause otherwise operates as a limited or particular residuary gift so as to include interests specifically bequeathed under dispositions which have lapsed or failed.

The general scheme of the will is to separate the estate into three parts, namely, first, the assets out of Tasmania, secondly, assets in Tasmania unconnected with the continuance of the business of conducting sweepstakes or lotteries, and, thirdly, that business, including moneys in the testator's Tasmanian bank account.

The testator's primary intention seems to have been to make independent dispositions of the three parts.

If the matter were *res integra*, the view which I should be inclined to prefer is that the clause in question amounts to a gift of a particular residue consisting of the assets in Tasmania other than the sweep business and the moneys in the bank. Upon this view the clause would be capable of embracing an interest specifically given by a disposition which lapsed or failed if it was an interest in the particular class of property to which the clause related, but the Tasmanian business would fall outside the class. The consequence would be that the next of kin would take the three-twentieths share of income set free by the operation of the *Thellusson Act*. But the matter is not *res integra*. For *Street* J. evidently adopted the contrary interpretation of the clause and held that it caught an interest in the sweep business disposed of invalidly.

This interpretation must form the foundation of the part of the declaration contained in his decretal order governing the manner in which in the event of the trustees winding up the business the proceeds of realization are to be distributed, a distribution which the accumulations then in hand also follow.

VOL. LXII.                                          34

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

Dixon J.

530                              HIGH COURT                          [1939.

H. C. of A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

Dixon J.

The declaration establishes, in the first place, that according to the will the distribution is among those of the twelve named persons who survived the testator and the widows of those who predeceased him and in the second place that a widow took a life interest only in the share allotted to her husband and that after her death the share " passed under the gift in the said will of the residue of the testator's Tasmanian property."

The gift so described is constituted by the clause now under consideration.  As has been already stated, the will provided that a share of any of the twelve named beneficiaries, as well in the proceeds of realization as in profits, which should fall in or lapse owing to his death in the testator's lifetime or owing to the death of his widow, should be held upon trust for the benevolent purposes which have before been mentioned.  The decretal order included a declaration of the invalidity of such a trust, and therefore so much of the declaration governing distribution as deals with the fate of a share in which a widow took a life interest means that, the express disposition of that share in the proceeds of the business and in the possible accumulation of profits thereof having failed, the share passes under the disposition of the real estate and the residue of the personal estate in Tasmania, notwithstanding the exception of the sweep business.

It means that *Street* J. interpreted the clause as a gift of particular residue from which the business was excepted for the purpose only of making effectual specific dispositions thereof, so that on the failure of a disposition the interest was caught by the clause in spite of the exception.

Between the three-twentieths share of profits with which the present proceedings are concerned and that interest with which *Street* J. dealt it is difficult t o see any relevant distinction.

It is true that the failure of the first is due to the supervenien t operation of a statutory provision, the *Thellusson Act,* and the failure of the second to the invalidity *ab initio* of the disposition, that is, an invalidity because of the absence of definite objects and of the presence of purposes of a non-charitable nature.  But this difference appears to me to be one which could not affect the question whether the interest of which the disposition had failed passed under the

clause dealing with Tasmanian residue. For the court at this date
to give to the clause an interpretation contrary to that placed upon
it by *Street* J. in 1907 would, I think, be highly inconvenient. It
would mean that the administration and winding up of the estate
would in one case proceed according to one interpretation of the
clause and in another case according to a contrary interpretation of
the same clause. For if a case of lapse or failure could be brought
within the direct operation of the decretal order the interest the
disposition of which had lapsed or failed would pass under the clause
to the residuary legatees, but wherever a case of lapse or failure
arose out of events or conditions which could be shown to fall outside
the language of the decretal order, the interest would pass to the
next of kin, notwithstanding that, so far as the interpretation of the
will went, the cases were the same. Apart, therefore, from any
question of issue-estoppel there is much to be said for our taking
the course of following the decision of *Street* J. as a matter of
authority. It is a decision upon a question of interpretation which
certainly cannot be said to be clearly wrong, and it was given thirty-
two years ago, and to depart from it would cause an incongruity.
But in any case I have formed the opinion that the decretal order
operates to preclude the parties upon the question whether the
clause embraces an interest in the business falling in because a
specific disposition is found to be invalid in whole or in part.

The decretal order does not, of course, deal with the title to the
undisposed of three-twentieths share of income. The case is, there-
fore, not one of *res judicata* in the proper sense. The principle upon
which the parties are precluded from denying to the clause an
operation and effect sufficient to catch the undisposed of share of
income is called estoppel by record or issue-estoppel.

A judicial determination directly involving an issue of fact or of
law disposes once for all of the issue, so that it cannot afterwards
be raised between the same parties or their privies. The estoppel
covers only those matters which the prior judgment, decree or order
necessarily established as the legal foundation or justification of its
conclusion, whether that conclusion is that a money sum be recovered
or that the doing of an act be commanded or be restrained or that

H. C. of A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
Co. (LTD.)
*v.*
BLAIR.

Dixon J.

532                          HIGH COURT                        [1939.

H. C. of A.
1939.
~
Blair
v.
Curran.

Curran
and
Perpetual
Trustee
Co. (Ltd.)
v.
Blair.

Dixon J.

rights be declared. The distinction between *res judicata* and issue-estoppel is that in the first the very right or cause of action claimed or put in suit has in the former proceedings passed into judgment, so that it is merged and has no longer an independent existence, while in the second, for the purpose of some other claim or cause of action, a state of fact or law is alleged or denied the existence of which is a matter necessarily decided by the prior judgment, decree or order.

Nothing but what is legally indispensable to the conclusion is thus finally closed or precluded. In matters of fact the issue-estoppel is confined to those ultimate facts which form the ingredients in the cause of action, that is, the title to the right established. Where the conclusion is against the existence of a right or claim which in point of law depends upon a number of ingredients or ultimate facts the absence of any one of which would be enough to defeat the claim, the estoppel covers only the actual ground upon which the existence of the right was negatived. But in neither case is the estoppel confined to the final legal conclusion expressed in the judgment, decree or order. In the phraseology of *Coleridge* J. in *R.* v. *Inhabitants of the Township of Hartington Middle Quarter* (1), the judicial determination concludes, not merely as to the point actually decided, but as to a matter which it was necessary to decide and which was actually decided as the groundwork of the decision itself, though not then directly the point at issue. Matters cardinal to the latter claim or contention cannot be raised if to raise them is necessarily to assert that the former decision was erroneous.

In the phraseology of Lord *Shaw*, "a fact fundamental to the decision arrived at" in the former proceedings and "the legal quality of the fact" must be taken as finally and conclusively established (*Hoystead* v. *Commissioner of Taxation* (2) ). But matters of law or fact which are subsidiary or collateral are not covered by the estoppel. Findings, however deliberate and formal, which concern only evidentiary facts and not ultimate facts forming the very title to rights give rise to no preclusion. Decisions upon matters of law which amount to no more than steps in a process

(1) (1855) 4 E. & B. 780, at p. 794          (2) (1926) A.C. 155.
    [119 E.R. 288, at p. 293].

of reasoning tending to establish or support the proposition upon which the rights depend do not estop the parties if the same matters of law arise in subsequent litigation.

The difficulty in the actual application of these conceptions is to distinguish the matters fundamental or cardinal to the prior decision or judgment, decree or order or necessarily involved in it as its legal justification or foundation from matters which even though actually raised and decided as being in the circumstances of the case the determining considerations, yet are not in point of law the essential foundation or groundwork of the judgment, decree or order. In the present case the decretal order refers in terms to the clause the meaning and effect of which is now in question. The order declared " that on the death of a widow the share in which she took a life interest passes under the gift in the said will of the residue of the testator's Tasmanian property." I think that two questions must be asked and answered in deciding whether from this there arises an issue-estoppel governing or determining the operation of the clause upon the undisposed of three-twentieths share of profits.

The first is whether the declaration quoted necessarily involves the proposition that an interest in the business of conducting sweepstakes, if not otherwise validly disposed of, falls under the clause as a residuary gift of Tasmanian property. The second is whether this proposition is the immediate foundation of the declaration, as opposed to a proposition collateral or subsidiary only, that is, no more than part of the reasoning supporting the conclusion. I think both these questions should receive an affirmative answer. As to the first, the declaration on its face describes the clause as a residuary gift of the Tasmanian property, and there is no legal hypothesis which would account for the widow's life interest passing under it consistent with any narrower interpretation or effect being given to the clause than that stated. As to the second question, the beneficiaries' rights are the immediate creation of the will and directly depend upon the effect assigned to its provisions. The effect given to the clause is therefore fundamental or cardinal to the material part of the decretal order and is the essential groundwork of the decision which it embodies. The case closely resembles *Badar Bee*

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

Dixon J.

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

Dixon J.

v. *Habib Merican Noordin* (1) : Cf. *In re Graydon* ; *Ex parte Official Receiver* (2), cited with apparent approval in *Hoystead* v. *Commissioner of Taxation* (3).

For these reasons I am of opinion that the undisposed of three-twentieths share of the income passes to the five persons (or their representatives) named in the provision concerned with the real and residuary personal estate in Tasmania.

It remains to deal with the effect of the agreements made between the beneficiaries and the trustees after the proceedings before *Street* J. Appeals to this court having been instituted from the decretal order by various parties aggrieved, an arrangement was made that, if this court upheld the decision of *Street* J. that the trusts of the will for benevolent and other similar purposes were void as going beyond legal charity, the remaining appeals should be dropped. The terms of the arrangement were embodied in two preliminary agreements, dated 11th August 1908, dealing with different questions that had arisen. The decision of *Street* J. as to the invalidity of the trusts for benevolent and other purposes was upheld, and two final agreements were executed in pursuance of the preliminary agreements.

One of the twelve named beneficiaries sharing the income of the business, who also was one of the five residuary legatees of the Hobart property, acquired the interests of the testator's next of kin. He was a party to the agreements, and, though as a party he was described as filling capacities other than representative of the next of kin, there is no doubt that the interests he acquired were bound. Indeed, all the beneficiaries were bound, except the class of employees for the time being of the business, if that class took a beneficial interest in the share of profits to be distributed among them.

In the agreements the persons interested under the will in the residue of the Tasmanian property were called collectively the Hobart-property beneficiaries and those sharing in the profits of the business the sweep beneficiaries. The general purpose of the instruments was to dispose by agreement of many questions affecting

(1) (1909) A.C. 615.                    (3) (1926) A.C. 155, at p. 167.
(2) (1896) 1 Q.B. 417.

the administration of the estate, particularly the New-South-Wales estate, and to establish, so far as agreement might do so, the trusts of the will. The clause by which an attempt was made to confirm the trusts affecting the share of profits devoted to the purposes of furthering the business &c. contains the following provision which is material to the question who is entitled to the three-twentieths part of the profits : " The Hobart-property beneficiaries and the sweep beneficiaries do and each of them doth hereby also authorize empower and direct the trustees for the time being of the said will and codicil to stand possessed of the one-tenth of the net profits arising from or out of the carrying on of the said sweep business and in the said will of the said George Adams deceased referred to as ' The remaining one-tenth of the said net profits ' and of any part or parts of the said net profits which may for the time being for any reason be unapplied or undisposed of upon the trusts and to and for the ends intents and purposes for the furtherance of the said sweep business and for charities in the said will declared and set forth with respect to the same."

This passage is followed by a declaration of trust on the part of the trustees which, presumably through an accident of drafting, is not quite coextensive with the direction.

If the provision in the agreement amounted to a personal contract or covenant and not to a disposition of property, the *Thellusson Act* would not, I imagine, operate upon it. But it is, in my opinion, a disposition of property. It does not purport to impose executory contractual obligations ; it is an agreement between those entitled to the beneficial interest in property as to the trusts upon which it is to be held. It cannot, therefore, escape the operation of the *Thellusson Act*. Perhaps the agreement does not attempt to escape it. It apparently means to re-establish or confirm the trusts in the will with their legal incidents, except that reliance is placed upon the authority of the beneficiaries to enable the trustees to act on the trust for so-called charities. A difficulty arises under the agreements as to the date from which the period of accumulation is to be reckoned and as to the period to be adopted, but the difficulty would be met if the agreements are treated as confirming the trusts with all their legal incidents. The period would still be twenty-one

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

Dixon J.

H. C. of A.
1939.

BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
Co. (LTD.)
v.
BLAIR.

Dixon J.

years from the testator's death. If, however, the agreements are to be regarded as an independent settlement, the period would, I think, be the lives of the settlors. As it required a combination of the settlors' interests to make the " settlement," this must mean their joint lives. I say the period would be the lives of the settlors because the accumulation directed would begin antecedently from the death of the testator, and, on the hypothesis that it is an independent settlement, for an accumulation commencing, not at the death of the settlors, but in their lifetime and not connected with the minority of any one, the appropriate period is the lives of the settlors. The settlors are for the most part dead, and, as I understand, if the period were limited to their joint lives, it would have expired earlier than twenty-one years after the death of the testator.

*Clark* J. considered that the agreements operated as a continuing but revocable authority to the trustees to apply the profits in accordance with the terms of the trust. None of the appellants is interested to attack this view.

The result of the conclusions I have stated is that the order of *Clark* J. should be affirmed and the appeals dismissed.

McTIERNAN J. In these three appeals the questions which arise are : (1) Is the trust in clause Z of the will with respect to the one-tenth of the net profits of the sweep business valid as from twenty-one years from the testator's death ? (2) If the trust is not valid, who is entitled to the one-tenth share of net profits and the moneys accumulated under the trust and not expended since the expiration of the twenty-one years ? (3) Who is entitled to the one-twentieth share of the net profits of the sweep business received by Emma Rooke during her lifetime ?

I agree that the first question should be answered in the negative on the ground that the trust is, after the twenty-one years, prohibited by the *Thellusson Act* as applied to Tasmania by 9 Geo. IV. c. 83, and is not within any of the exceptions contained in the Act. I have nothing to add to the reasons which have been given by the other members of the court for this conclusion. The answer of *Street* J. in 1907 in which he declared that the trust to accumulate

62 C.L.R.]          OF AUSTRALIA.          537

was not void was not a decision that the trust was outside the
operation of the *Thellusson Act*. The question was asked as to its
validity at that time. The *Thellusson Act* could not at that time
operate to avoid the trust. I agree that the declaration that the
trust was not void at that time does not preclude a declaration that
the trust is void after the period allowed by the Act has run.

Questions 2 and 3 can be conveniently dealt with together. It is
contended that the order of *Street* J. in 1907 has determined the
destination of these shares in net profits and that any of the parties
is now estopped from seeking a declaration that the will on its true
construction has any different effect. The declaration of *Street* J.
was made in answer to different questions from the present ones.
The answers to the present questions depend upon the construction
of the will and the effect, if any, of the order of *Street* J.

The one-twentieth share in net profits enjoyed by Emma Rooke
during her lifetime came to her by virtue of clause CC of the will,
operating to vest in her a life interest in the share by reason of the
death of her husband (a legatee of the one-twentieth share of net
profits under clause Y) during the testator's lifetime. It was the
intention of the testator (expressed by clause FF) that in the event
of the death of a widow entitled to a share of net profits for life that
the share lapsing owing to her death should go to " charities." By
the order of *Street* J. the gifts to " charities " were declared bad.
What provision, then, if any, is made by the will for the disposition
of this one-twentieth share of net profits ? It is suggested that the
share falls into the accumulated funds of clause Z. There are words
in clause Z which could draw in the one-twentieth share, after clause
FF has failed to dispose of it, but clause Z cannot draw in the share
for the reason that the share is only free from the enjoyment of
Emma Rooke at a date after the date as from which the accumula-
tion should be declared invalid as violating the *Thellusson Act*.
For Emma Rooke died at a date after the expiration of twenty-
one years from the testator's death. After the twenty-one years
clause Z is as incapable of dealing with the share as clause FF
is. However, the one-twentieth share and the fund have, in my
opinion, the same destination ; for they have the same character
inasmuch as they are both shares in net profits undisposed of by

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

McTiernan J.

538                                    HIGH COURT                              [1939.

H. C. of A.
1939.

BLAIR
*v*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

McTiernan J.

any specific gift in the will—the one failing for invalidity, the other for lapse. Their destination depends (apart from the effect, if any, of the order of *Street* J.) on the question of construction, namely, whether clause S is a residuary clause capable of drawing in the failing specific dispositions or whether these devolve as upon an intestacy to the next of kin.

In order that clause S may have the effect of drawing in the shares of net profits, it is not necessary that it should be a general residuary clause of the will. It is sufficient that the clause should be a true residue of a particular class of property and not a specific gift; but even if it is such a residue, it is necessary to determine whether the testator intended the bequests of the sweep business to be excepted from the residue not merely to make the bequests to the sweep beneficiaries but for all purposes, and the operative effect of the residuary clause to be limited accordingly.

If clause S is not a true residue, even one with a limited operation, but a specific gift, the question of construction is ended; for a specific gift cannot gather in another specific gift which has failed. By clause S the testator gave to his trustees "all my real estate and all the residue of my personal estate of every kind and nature whatsoever in the State of Tasmania save and except the business as carried on by me at Hobart aforesaid as a conductor of sweep consultations and the goodwill and interest thereof." By clause T the testator declared that the trustees should stand possessed of the "last-mentioned real estate to convey the same to and of the personal estate lastly hereinbefore bequeathed to them upon trust to divide" among certain persons (who have been called for convenience the Hobart beneficiaries). Then by various elaborate provisions the testator bequeathed the profits arising from the carrying on of the sweep business to certain persons and upon certain trusts and then disposed of the proceeds of the sweep business in the event of a realization by the trustees to certain persons. In my opinion, clause S has no operation as a residue at all but is a devise of specific realty and a bequest of specific personalty which, for the purposes of description, has been called "the residue" of personalty "save and except" the sweep business. There are several reasons for this conclusion on construction. At the outset, it should be borne

62 C.L.R.]          OF  AUSTRALIA.                            539

in mind that this is a mere question of intention. In *Patching* v. *Barnett* (1) *Malins* V.C. said :—" It is almost in vain to cite authorities on the subject. The question is, what is the intention of the testator ? " The general tenor of all the provisions relating to the Tasmanian property indicates that the testator contemplated, for the purpose of disposition, a clear division of his property into two parts : (a) the sweep business, and (b) all the other property in Tasmania. The devise of realty and the bequest of the " residue " of personalty were made before the dispositions of the sweep business. It appears that by clause S and clause T the testator intended to dispose of everything except the sweep business, so that he could then proceed to make the elaborate dispositions of that very considerable asset in his estate, the sweep business itself. The careful precautions (made by clauses CC and FF) against the lapsing of any share of the net profits is another indication of the testator's intention to remove the sweep business out of the dispositions of his other property finally and for all purposes. It seems to distort his intention to suppose that he gave all his Tasmanian property to the Hobart beneficiaries and excepted the sweep business merely for the purpose of making the other dispositions ; so that any lapsed gift of a share in the profits of the sweep business would fall back to the Hobart beneficiaries. Besides, the language of clause S lacks the indefinite and elastic character of a true residuary gift. The testator devised all his realty and bequeathed " the residue of my personal estate . . . save and except the business." These words are naturally descriptive of a definite quantity of assets equal to the difference between the whole of his Tasmanian property and that part of it described as the sweep business. In *Page* v. *Leapingwell* (2) a bequest of the " overplus moneys " after the payment of certain legacies out of a realization was held to be a specific gift even although the legacies were made to abate to enable the persons entitled to the " overplus " to rank *pari passu*. In the present case the context does not show that the word residue has been used to denote a true residue. Instances of contexts which denote a true residue are to be found in *De Trafford* v. *Tempest* (3) ; *Cook* v. *Oakley* (4).

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

McTiernan J.

(1) (1880) 28 W.R. 886, at p. 889.        (3) (1856) 21 Beav. 564 [52 E.R. 978].
(2) (1812) 18 Ves. 463 [34 E.R. 392].     (4) (1715) 1 P. Wms. 302 [24 E.R. 399].

540                          HIGH COURT                        [1939.

H. C. of A.
1939.

BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
v.
BLAIR.

McTiernan J.

A further indication that the testator made a specific, not a residuary, gift to the Hobart beneficiaries is seen in clause T. By that clause the testator declared that his trustees stand possessed of the real estate (devised to the trustees by clause S) to convey it to the Hobart beneficiaries 'and of " the personal estate " (bequeathed 'to the trustees in the terms " all the residue . . . save and except " by clause S) to divide it between the Hobart beneficiaries. This clause disposed of the beneficial interest in the Tasmanian realty and the " residue " of the personalty. The personal property to be divided is here referred to as " the personal estate lastly hereinbefore bequeathed," words which reflect the intention of the testator in clause S to make a specific bequest. Moreover, the direction to divide the property seems, in the circumstances, to intend an immediate division of ascertained property, not of a residue ; for, if the testator intended a residue to be divided, one would expect, in view of the provisions authorizing the trustees to carry on the sweep business indefinitely, some reference postponing the time of division—at any rate as regards the sweep business, lapsed shares of which might not reach the residue for many years after his death. In my opinion, the testator intended the Hobart beneficiaries to get definite and circumscribed assets, and, having given them these, he proceeded to dispose of the sweep business to the sweep beneficiaries.

But is there any estoppel by reason of the decision of *Street* J. ? He decided (*inter alia*) :—(1) That " the said accumulated funds so far as are not employed for the furtherance of the sweep business follow the same destination as the net proceeds of such business on realization." (The destination is into the hands of the twelve legatees of the net profits and the widows of those who predeceased the testator for their lives). (2) That on the death of the widow, Emma Rooke, subsequent to a realization (the learned judge does not seem to have dealt with the contingency of a widow dying before realization) the one-twentieth share of the sweep business in which she took a life interest passed " under the gift in the said will of the residue of the testator's Tasmanian property." The decision regarding the accumulated funds construes the provisions of clause DD of the will as meaning that the balance, if any, of money which is left in the Z fund at the date of realization is to be divided as indicated by

clause DD. Further, the decision was that, not any net profits, but the one-twentieth share in the sweep business, from which Emma Rooke derived net profits in her lifetime, passed on realization to the Hobart beneficiaries. *Street* J., therefore, decided the destination of certain shares of corpus. It would seem that the reason why the question relating to "the interests of the widows" was asked, and asked in a form limiting it to the disposition of the interests on realization, was that the testator had expressly intended to dispose of (by clause DD) the shares of corpus on realization to the "before-named legatees," but had neglected to provide in this clause for the contingency that one of these "before-named legatees" might predecease him so that his share in the sweep business on realization became undisposed of by the clause.

The present questions, unlike those answered by *Street* J., relate to the destination of certain shares of income, namely, net profits. The decision, therefore, does not create an estoppel *per rem judicatam*. But, if it was an issue fundamental to his decision that clause S is a gift of the true residue for all purposes of the Tasmanian assets to the Hobart beneficiaries, then, any party bound by the decision would be estopped from denying that the lapsed shares of income passed as residue to the Hobart beneficiaries. In my opinion, the decision of *Street* J. does not necessarily rest on a finding that clause S operates as a true residuary gift of the Tasmanian property for all purposes. It was alone fundamental to the decision that clause S was a residue with an operation sufficient, and no more, to gather in the property which he allocated to it. And this might have been the basis upon which the learned judge reached his conclusion.

There have been many cases in which a residuary clause has been given a limited effect : See *Davers* v. *Dewes* (1) ; *Attorney-General* v. *Johnstone* (2) ; *Wainman* v. *Field* (3). And in *Blight* v. *Hartnoll* (4) *Fry* J. stated : " I take the rule to be plain that in general the residuary gift carries every lapsed legacy and every legacy which on any ground fails to take effect, but that is subject to this other rule, that if the testator has shown some intention with regard to the excepted property inconsistent with its ever falling again into the

H. C. of A.
1939

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
CO. (LTD.)
*v.*
BLAIR.

McTiernan J.

(1) (1730) 3 P. Wms. 40 [24 E.R. 96].    (3) (1854) Kay 507 [69 E.R. 215].
(2) (1769) Amb. 577 [27 E.R. 373].       (4) (1883) 23 Ch. D. 218, at p. 220.

542                              HIGH COURT                        [1939.

H. C. of A.
1939.

Blair
v.
Curran.

Curran
and
Perpetual
Trustee
Co. (Ltd.)
v.
Blair.

McTiernan J.

residue, effect must be given to that intention." *Jessel* M.R. (1) appears to have decided that in such circumstances there would be a true residue. But to speak of a residuary clause as having a limited effect may be a contradiction, but, if it is, it is a contradiction merely of terms ; it is not a legal impossibility for a testator to limit the operation of a residuary clause. It is clear that, if a testator intends that the residuary clause should gather in certain classes of failing gifts, but not others, he may achieve this intention by the appropriate language. *Davers* v. *Dewes* (2) is a case in which, as *Fry* J. said in *Blight* v. *Hartnoll* (3), " the testator has shown some intention with regard to the excepted property inconsistent with its ever falling again into the residue."

The decision of *Street* J. does not involve, then, as a decided issue fundamental to his decision, that clause S is a residuary clause which gathers in any more than the shares of corpus on realization ; it does not involve that the clause gathers in lapsed shares of income, that is, net profits, yielded by the one-twentieth share while the business is still being carried on or of the amount of net profits accumulated in the Z fund at a time (before realization) after which the accumulation is declared void together with the one-tenth share of net profits (accruing thereafter until realization) directed by the will to be allocated to the fund. The only question which the decision necessarily settles is that clause S is a residue which draws in lapsed gifts of realized assets. Sweep business was, in my opinion, excepted by the testator for all purposes from clause S. *Street* J. might have faced, and accepted, this very position, and reached his decision that the lapsed shares of corpus on realization came within the description in clause S of " residue of my personal estate . . . save and except the business " because, on realization, a lapsed share of corpus lost its character as an income-bearing share in the sweep business and became a share of money, not having any special character and forming part of the Tasmanian assets. It is not necessarily involved in his decision that he deemed the clause a true residue of Tasmanian property for all purposes or wide enough, at least, to draw in a lapsed share of net profits in the sweep

(1) (1883) 23 Ch. D., at pp. 221-223.    (2) (1730) 3 P. Wms. 40 [24 E.R. 96].
            (3) (1883) 23 Ch. D., at p. 220.

business.  The one-twentieth share of the net profits and the balance of the fund accumulated by virtue of clause Z and the one-tenth share of the net profits directed to be allocated to the fund should, in my opinion, pass as upon intestacy to the next of kin.

As stated above, the two lapsed shares of income, having the same character, should reach the same destination.  It might be said that this is not so and that one of the lapsed shares, namely, the fund accumulated by clause Z and the one-tenth share in the net profits, is disposed of by the provisions of clause DD.  By this clause the testator directed that there be added to the net proceeds on realization for distribution to the " before-named legatees " " all moneys which may have accumulated in their hands under the trust in that behalf hereinbefore contained or so much of such accumulations as shall not have been used or distributed as aforesaid."  In my opinion, no claim to the fund as it now stands or to the one-tenth share of the net profits can be based on clause DD. The clause merely provides for the addition to the net proceeds of sale of the moneys, if any, accumulated under clause Z and not spent at the time of winding up and realization.

It was contended that the decision of *Street* J. should be adopted so as to settle the lapsed shares of net profits because the decision has been acted upon for many years.  The contention begs the question what is the matter as to which the decision of *Street* J. creates an estoppel.

With respect to the effect of the agreements, I concur in the observations of my brother *Dixon* and have nothing to add.

For these reasons, I am of opinion that, subject to the agreements, the balance of moneys standing in the fund created by clause Z and the one-tenth share in net profits from the carrying on of the sweep business directed by the will to be allocated to this fund pass as upon intestacy to the persons entitled to the interests of the next of kin ; and that the one-twentieth share in net profits from the carrying on of the sweep business, which Emma Rooke enjoyed during her lifetime, has the same destination.

The appeal of the Perpetual Trustee Co. Ltd. and A. E. Blair and W. C. Adams should be allowed, and the order of *Clark* J. varied accordingly.

H. C. OF A.
1939.

BLAIR
*v.*
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
Co. (LTD.)
*v.*
BLAIR.

McTiernan J.

544                      HIGH COURT                    [1939.

H. C. of A.
1939.
‿‿
BLAIR
v.
CURRAN.

CURRAN
AND
PERPETUAL
TRUSTEE
Co. (LTD.)
v.
BLAIR.

*Subject to variations of order hereinafter set out, appeals dismissed. Order of Clark J. varied by striking out in the answer to question 1 all the words from and including " Upon the true construction " to and including " Emma Rooke for her life " and by substituting therefor the words " Upon the true construction of the will of the testator the said one-twentieth share from and after the death of the said Emma Rooke on the 22nd March 1936 vested in the trustees mentioned in clause S of the said will or their successors upon the trusts declared in clause T thereof subject to any assignments encumbrances or other dispositions made by the persons or any of them beneficially entitled thereto." Order further varied by striking out in answer to questions 4 and 5 all the words from and including " That upon the true construction of the will " to and including " clause Z of the will " and by substituting therefor the following words : " That upon the true construction of the will of the testator the trusts expressed in clause Z of the will of the testator were valid for the period of twenty-one years from the date of the death of the testator but thereafter were invalid by reason of the Accumulation Act 1800 and that as from the expiration of twenty-one years from the date of the death of the testator upon the true construction of the said will the one-tenth of the net profits of the sweep consultation business referred to in clause Z of the said will (including any accumulations thereof heretofore made) vested in the trustees mentioned in clause S of the said will or their successors upon the trusts declared in clause T thereof subject to any assignments encumbrances or other dispositions made by the persons or any of them beneficially entitled thereto." Costs of the appeals of all parties as between solicitor and client to be paid out of the funds which are referred to in clause Z of the said will.*

Solicitors for the appellants, *Finlay, Watchorn, Baker & Turner, A. B. & C. Crisp, Gill & Harvey* and *Simmons, Wolfhagen, Simmons & Walch.*

Solicitors for respondents, *Murdoch, Cuthbert & Clarke.*

R.C.W.