UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK WARREN PEARY, individually and in his capacity as executor of the Estate of Joseph Shuster,<br><br>   Plaintiff,<br><br> vs.<br><br>DC COMICS, INC., et al.,<br><br>   Defendants. | Civil Action No. 1:25-cv-00910-JMF |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

*Attorneys for Plaintiff Mark Warren Peary, individually and as executor of the Estate of Joseph Shuster*

April 21, 2025

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 3

I.   PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS, OR
     AT A MINIMUM, HAS RAISED SERIOUS QUESTIONS. ........................................ 3

     A.   The FRRs Reverted to the Shuster Estate and Only Plaintiff
          Has Authority to Transfer Them. .......................................................................... 3

     B.   Collateral Estoppel Does Not Bar Plaintiff's Claims. ........................................... 5

          1.   The Issues Here Are Fundamentally Distinct. ............................................ 6

          2.   The Issues Were Not Actually Litigated or Necessarily Decided. ............. 7

          3.   Regardless, Peavy's Inability to Bind the Shuster Estate or
               Handle Assets Exceeding $60,000 Was Never Decided,
               Necessarily or Otherwise. ........................................................................... 7

II.  PLAINTIFF WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION. ... 8

III. THE BALANCE OF HARDSHIPS AND THE PUBLIC INTEREST
     FAVOR PLAINTIFF .................................................................................................... 9

     A.   DC's Self-Inflicted Harms Merit No Consideration. ............................................ 9

     B.   DC Has No First Amendment Right To Infringe; Plaintiff's First
          Amendment Interests Are Unrebutted. ................................................................ 10

     C.   The Public Interest Strongly Favors an Injunction. ............................................ 10

CONCLUSION .................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Cases**

*Arista Recs., LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) .................................................................................................. 10

*Bates v. Long Island R. Co.*,
    997 F.2d 1028 (2d Cir. 1993) .................................................................................................. 6

*Bear, Stearns & Co., Bear, Stearns Sec. Corp. v. 1109580 Ontario, Inc.*,
    409 F.3d 87 (2d Cir. 2005) ...................................................................................................... 6

*Crysknife Cap. v. Liberty Specialty Markets*,
    No. 22-CV-7912 (KPF), 2023 WL 3255777 (S.D.N.Y. May 3, 2023) ................................. 2, 8

*Fuchsberg & Fuchsberg v. Galizia*,
    300 F.3d 105 (2d Cir. 2002) .................................................................................................... 8

*Gelb v. Royal Globe Ins. Co.*,
    798 F.2d 38 (2d Cir. 1986) ...................................................................................................... 8

*Golan v. Holder*,
    565 U.S. 302 (2012) ............................................................................................................... 11

*Greene v. United States*,
    79 F.3d 1348 (2d Cir. 1996) .................................................................................................... 8

*Lyons v. Lancer Ins. Co.*,
    No. 07-CV-7095 (KMK), 2008 WL 4525542 (S.D.N.Y. Sept. 30, 2008) ............................... 8

*My-T Fine Corp. v. Samuels*,
    69 F.2d 76 (2d Cir.1934) ....................................................................................................... 10

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*,
    290 F.3d 578 (2d Cir. 2002) .................................................................................................... 9

*Ricks v. Brown*,
    No. 20-CV-0043 (LJV), 2024 WL 4362837 (W.D.N.Y. Sept. 30, 2024) ................................ 8

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010) .................................................................................................... 10

*Siegel v. Warner Bros. Ent. Inc.*,
    542 F. Supp. 2d 1098 (C.D. Cal. 2008),
    *judgment entered*, No. CV 04-8400 ODW (RZX),
        2011 WL 13127546 (C.D. Cal. Mar. 15, 2011),
    *rev'd on other grounds sub nom. Larson v. Warner Bros. Ent.*,
        504 F. App'x 586 (9th Cir. 2013) ..................................................................................... 2, 7

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) .................................................................................................................. 5

*Warner Bros. Entm't v. RDR Books*,
   575 F. Supp. 2d 513 (S.D.N.Y. 2008) ..................................................................................... 10

*WPIX, Inc. v. ivi, Inc.*,
   765 F. Supp. 2d 594 (S.D.N.Y. 2011),
   *aff'd*, 691 F.3d 275 (2d Cir. 2012) .......................................................................................... 10

*Wyly v. Weiss*,
   697 F.3d 131 (2d Cir. 2012) .................................................................................................. 6, 7

**Statutes**

17 U.S.C. § 304 ............................................................................................................................ 6, 7

Cal. Prob. Code § 13100 (1992) ..................................................................................................... 4

United Kingdom Copyright Act of 1911 ............................................................................... 1, 3, 6

**Rules**

Federal Rule of Civil Procedure 44.1 ............................................................................................. 3

**Treatises**

14 Witkin, Summary of Cal. Law, Wills § 405 (10th ed. 2005) ..................................................... 4

27B Carmody-Wait, *Cyclopedia of New York Practice* § 162:110 (2d ed. 2025) .......................... 4

**Other Authorities**

Restatement (Second) of Conflict of Laws § 316 (Am. Law Inst. 1971) ....................................... 2

**INTRODUCTION**

From "implied" novation in *Shuster I* to "implied" issue preclusion in this case, one message is explicit: Defendants ("DC") are determined to prevent any court—and seemingly especially this Court—from reaching the merits of the claims brought by Plaintiff Mark Warren Peary ("Plaintiff"), the sole executor of the Estate of Joseph Shuster ("Shuster Estate"). DC's opposition complicates clear statutory language—"on the death of the author," "legal personal representative," and "notwithstanding any agreement to the contrary"—through putative expert IP practitioners offering uncannily similar (and incorrect) opinions, including on foreign *probate* law, as to which they are not experts. Plaintiff's rebuttal expert, the Rt. Hon. Professor Sir Robin Jacob, the Hugh Laddie Professor of Intellectual Property Law at University College London, retired Lord Justice of Appeal, world-renowned legal expert and author, and current member of the Privy Council, which served as the court of last resort for Canada, Australia, and Ireland (along with the U.K., "Major Commonwealth Markets") at the time Parliament passed the 1911 U.K. Copyright Act, sets the record straight. Decl. of Robin Jacob ("Jacob"), Ex. 1.

As Sir Robin explains, this is a straightforward case. Both parties agree that the copyright laws of the Major Commonwealth Markets govern the copyright issue. Both parties agree that, upon an author's death, they automatically and immediately vest a reversionary foreign copyright interest ("FRRs") in a decedent's estate. Jacob ¶¶ 8-10; Cade ¶ 39; Salizzo ¶ 47; Glover ¶ 8. The valuable Superman FRRs thus vested in the Shuster Estate on death, awaiting probate and judicial appointment of a legal personal representative, before DC swooped in with its 1992 Agreement, backdated, but still to the day *after* Shuster's death. Jacob ¶ 31; Dkt. 1 Ex. 2. The sole question in this case, therefore, is whether a court should conclude Jean Peavy

("Peavy") had any legal authority to assign away the Shuster Estate's FRRs via the 1992 Agreement.

All courts, U.S. and Major Commonwealth Markets alike, would conclude that this question is governed by California probate law. *See* Restatement (Second) of Conflict of Laws § 316; Jacob ¶¶ 24-26. No expert is necessary (or appropriate) on this domestic law, which makes clear that Peavy was never the Shuster Estate's legal personal representative, and, even if viewed as such, she lacked any legal authority before probate to deal in multi-million dollar assets like the FRRs or to bind the Shuster Estate to the 1992 Agreement. And when probate opened in 2003, Peavy expressly *declined* to serve as executor.

As to preclusion, *Shuster I* solely addressed U.S. termination rights under the U.S. Copyright Act, not the effect, if any, of the 1992 Agreement on the FRRs. Importantly, the Ninth Circuit explicitly refrained from deciding the dispositive issue of Peavy's total lack of legal authority under California probate law. Moreover, even if this issue had been litigated below (it was not), "[t]ime and time again, the Second Circuit has noted that res judicata and collateral estoppel do not apply to lower court findings that are not addressed on appellate review[.]" *Crysknife Cap. v. Liberty Specialty Markets*, 2023 WL 3255777, at *9 (S.D.N.Y. May 3, 2023) (collecting cases). *Shuster I* thus has little or no bearing on this case and is not preclusive under U.S. or foreign law. Jacob ¶ 33. In fact, DC is judicially estopped from arguing otherwise, having successfully claimed in the parallel *Siegel v. Warner Bros. Ent. Inc.* case that the Superman litigations regarding U.S. termination rights have no effect on "rights arising under…foreign laws." 542 F. Supp. 2d 1098, 1140-41 (C.D. Cal. 2008).

On the remaining preliminary injunction factors, DC's claim that its *Superman* investment outweighs Plaintiff's harm turns equity on its head. DC has known for decades that

the 1911 U.K. Copyright Act would revert the Superman foreign rights to the Shuster Estate twenty-five years after his death. It gambled that the author's estate would not realize or could not afford to enforce them—a self-inflicted "harm" deserving no judicial sympathy.

DC's delay complaint rings hollow, particularly when it seeks a time-consuming transfer to its preferred judge and has *thrice* requested further delays since the Complaint's January filing. DC ignores that litigation, without a major Superman film release, over small-scale exploitations in select countries would have been financially prohibitive, making an earlier suit unfeasible. This difficulty increases given notorious "studio accounting," which renders proving damages extraordinarily complex and costly. DC also disregards the substantial public interest in respecting and enforcing foreign copyright laws in a digital age where global markets and rampant piracy require international cooperation if copyright protection is to remain meaningful.

Plaintiff respectfully submits that a preliminary injunction should issue.

## ARGUMENT

### I. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS, OR AT A MINIMUM, HAS RAISED SERIOUS QUESTIONS.

#### A. The FRRs Reverted to the Shuster Estate and Only Plaintiff Has Authority to Transfer Them.

This case involves a straightforward application of the FRR statutes, which all specify that these foreign copyright interests revert automatically and immediately "on the death of the author" to the "legal personal representative[]" of his estate "notwithstanding any agreement to the contrary." Jacob ¶¶ 8-10.[1] The statute "vested the reversionary interests of the copyrights in

---

[1] DC wrongly faults Plaintiff for not previously producing a foreign law expert, even though the foreign statutes at issue are in English, come from legal systems sharing traditions with U.S. courts, and neither case law nor Federal Rule of Civil Procedure 44.1 imposes any expert report requirement. Plaintiff initially provided primary source materials, trusting the Court's ability to interpret them, but now submits this rebuttal report from an unparalleled expert on the primary

3

the estate the very moment Shuster died. Thus, the reversions were assets of the estate already, not DC or Ms Peavy, at the time of the 1992 agreement." *Id*. ¶ 31. Therefore, even if DC's fiction that the 1992 Agreement (dated "as of" a date *after* Shuster's death) operated to "revoke" Shuster's 1938 Grant were true (it is not), this would have no effect on the FRRs that had *already* vested in the Shuster Estate by operation of law. *Id*. ¶¶ 30-32.

DC's experts reach contrary conclusions only by glossing over the threshold choice-of-law issue and taking irrelevant detours into alleged Commonwealth probate law, as to which they do not qualify (or even claim to qualify) as experts—and as to which they are incorrect.[2] Both this Court, 27B Carmody-Wait 2d § 162:110, and any Commonwealth court, Jacob ¶¶ 24-29, would naturally look to California probate law to answer the question whether Peavy had the legal authority prior to probate in 2003 to bind the Shuster Estate or transfer its FRRs to DC. *Id*. ¶ 24 ("Whether or not a person named as executor in a Californian will has power in absence of the grant of probate to deal with estate property must be a single question – one to be answered by Californian law.") As confirmed by Judge Thomas, Peavy lacked any legal authority to transfer Superman copyrights—valued well above $60,000—without probate. *Shuster I*, 545 F. App'x at 683 (Thomas, J., dissenting) (citing Cal. Prob. Code § 13100 (1992); 14 Witkin, Summary of Cal. Law, Wills § 405 (10th ed. 2005)).[3] Nor did such probate, over a decade after the 1992 Agreement, somehow ratify Peavy's purported 1992 Agreement because, when probate

---

law to which all experts agree their courts would look. Glover ¶¶ 11-12; Salizzo ¶¶ 13-15, 42; Cade ¶¶ 22-24; Jacob ¶ 7.

[2] As Sir Robin diplomatically demonstrates, DC's lead expert Ian Mill *omits* the relevant language from the *Peer* case he quotes and discusses. Jacob ¶¶ 27-29; Mill ¶ 20 & n.3.

[3] These probate rules exist to protect not only heirs but also creditors and vital state interests. If Peavy could sign away the FRRs, worth tens of millions for estate tax purposes, for $25,000 annually, state and federal governments would be deprived of substantial tax revenue, undermining fundamental public policy interests.

opened in 2003, she affirmatively declined to serve as executor of the Shuster Estate. Dkt. 42 Ex. 1.

DC's rhetorical "any and all" emphasis regarding the 1992 Agreement is thus legally irrelevant. Peavy could not assign the Shuster Estate's FRRs because she lacked the authority and capacity to do so as a matter of law.

### B.   Collateral Estoppel Does Not Bar Plaintiff's Claims.[4]

DC's preclusion argument is that court decisions under one statute (the U.S. Copyright Act) may implicitly resolve unaddressed issues about entirely different statutes with different operative language (the FRRs), even when the supposed implicitly resolved issue (Peavy's lack of legal authority to enter into the 1992 Agreement or to bind the Shuster Estate to it) is affirmatively held waived in the final appellate opinion. That is not the law.

Federal law controls this preclusion question. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law.").[5] "Collateral estoppel is permissible as to a given issue if (1) the identical issue was raised

---

[4] In *Shuster I*, DC specifically sued "Mark Warren Peary, as personal representative of the Estate of Joseph Shuster," while separately naming three other defendants as "an individual." FAC at 1, *DC Comics v. Pacific Pictures Corp.*, No. CV-10-3633 (C.D. Cal. Sept. 3, 2010). This deliberate distinction shows Peary was not sued in his individual capacity and, therefore, he could only be precluded by more stringent *non-mutual* collateral estoppel doctrines. Since DC does not even mention these doctrines or explain why they should apply here, any such claim against Peary individually is waived.

[5] DC's experts appear to assume contrary to this that the preclusion law of the Major Commonwealth Markets would apply. Even if true, however, Sir Robin confirms they would not impose preclusion here. Jacob ¶ 33 ("[I]n my opinion no UK court would consider *Shuster I* preclusive on the issue of Ms Peavy's authority to act either for herself or an estate."). Additionally, the fact federal law governs this question establishes yet another substantial and actually disputed issue supporting subject-matter jurisdiction. Indeed, even separate and apart from the preclusion issue, DC's own expert reports confirm the presence of substantial and disputed federal questions. Cade ¶ 14 (raising authorship questions the Berne Convention specifies must be resolved under U.S. copyright law); Salizzo ¶ 21 (assuming "[f]or purposes of

in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Bear, Stearns & Co., Bear, Stearns Sec. Corp. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91 (2d Cir. 2005). None of these elements are satisfied.

        1.    *<u>The Issues Here Are Fundamentally Distinct.</u>*

For collateral estoppel to apply, "the identical issue" must have been raised in the prior proceeding. *Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir. 2012). The emphasis is on *identical*—not merely similar or related. Here, the issues are fundamentally different. The prior litigation involved U.S. termination rights under 17 U.S.C. § 304(c), while these proceedings concern the FRRs—governed by different statutes and legal requirements.

Significantly, each FRR provision expressly provides that the foreign copyright interest automatically reverts to an author's estate on his death "notwithstanding any agreement to the contrary." *See, e.g.*, U.K. Copyright Act of 1911, § 5(2). The immediate reversion upon death provision of the FRRs does not appear in the U.S. Copyright Act.

DC's own litigation strategy confirms this distinction and judicially estops its argument. "[T]he elements of the [judicial estoppel] doctrine [are] clear. First, the party against whom the estoppel is asserted must have argued an inconsistent position in a prior proceeding; and second, the prior inconsistent position must have been adopted by the court in some manner." *Bates v. Long Island R. Co.*, 997 F.2d 1028, 1037-38 (2d Cir. 1993). In *Siegel*, brought by Shuster's coauthor, DC successfully argued that U.S. termination rights do not affect foreign copyrights

---

this Declaration only" that Siegel and Shuster were the joint authors and original joint owners of the Superman copyrights, again a matter of U.S. copyright law).

6

because the U.S. Copyright Act expressly states that termination "affects only those rights covered by the grant that arise under this title, and in no way affects rights arising under any other Federal, State, or foreign laws." 17 U.S.C. § 304(c)(6)(E); *Siegel*, 542 F. Supp. 2d at 1140-41. Having won that point, DC now contradictorily claims a U.S. court's interpretation of U.S. termination rights somehow resolved the entirely separate FRR questions—a position it is judicially estopped from taking.

        2.    *The Issues Were Not Actually Litigated or Necessarily Decided.*

Even if the issues were somehow identical (they are not), collateral estoppel would still fail because the FRR issues—particularly whether a post-mortem agreement can circumvent their vesting immediately upon death—were neither "actually litigated" nor "necessarily decided" in the prior case. *See Wyly*, 697 F.3d at 141. As DC correctly maintained that the U.S. termination rights at issue in *Siegel* and *Shuster I* had no effect on DC's foreign copyrights, the FRR issues present here were not before the courts in *Shuster I*, and its litigation record contains no discussion of the FRRs or the impact of the 1992 Agreement on them—a point DC cannot contest.

        3.    *Regardless, Peavy's Inability to Bind the Shuster Estate or Handle Assets Exceeding $60,000 Was Never Decided, Necessarily or Otherwise.*

DC's assertion that the Ninth Circuit "implicitly rejected" Plaintiff's probate authority arguments is pure fiction. It explicitly stated: "The *factual* and *legal* dispute regarding whether [Peavy] acted as [Shuster's] executor when she signed the 1992 Agreement is a potentially complex one; *we do not address this question of state law, because the heirs failed to raise it in their opening brief.*" *Superman I*, 545 F. App'x at 681 n.3 (emphases added).

This shows the Ninth Circuit never reached the merits of the probate authority issue. The Second Circuit has established that, "[i]f a court does not address an issue because it deems the

7

argument on the issue to have been waived, then, for collateral estoppel purposes, the issue has not been decided." *Fuchsberg & Fuchsberg v. Galizia*, 300 F.3d 105, 109 (2d Cir. 2002). DC incorrectly argues that the district court in *Shuster I* "impliedly" decided Peavy's supposed legal authority under California probate law—but even assuming *arguendo* that it did, that would not trigger preclusion given the Ninth Circuit's explicit refusal to rule on it. *Crysknife*, 2023 WL 3255777, at *9 ("Time and time again, the Second Circuit has noted that res judicata and collateral estoppel do not apply to lower court findings that are not addressed on appellate review...Thus, where an appellate court intentionally declines to rule on certain issues decided by a lower court, those lower court findings are not given preclusive effect and the appellate court's silence is not read to be preclusive."); *see also Greene v. United States*, 79 F.3d 1348, 1353 (2d Cir. 1996) ("To hold that our intentional decision not to resolve this issue amounts to a final adjudication of the issue would be to misapply the settled law regarding issue preclusion."); *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 45 n.6 (2d Cir. 1986) ("[U]nreviewed findings are not preclusive under our general rule once an appeal is taken"); *Lyons v. Lancer Ins. Co.*, 2008 WL 4525542 (S.D.N.Y. Sept. 30, 2008) (same).

In addition to DC's utter failure to meet the well-settled prerequisites for collateral estoppel, "it would fly in the face of the equitable principles that underly the collateral estoppel doctrine to apply that doctrine here." *Ricks v. Brown*, 2024 WL 4362837, at *5 (W.D.N.Y. Sept. 30, 2024)..

## II.     PLAINTIFF WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION.

DC disregards Plaintiff's evidence of lost control and the inadequacy of monetary damages, particularly given notorious "studio accounting," and focuses solely on alleged delay. Unlike DC—a multi-billion-dollar entity backed by Warner Bros.—Plaintiff is an individual who cannot reasonably pursue litigation over smaller Superman exploitations in every foreign

8

territory. The economic reality is that such piecemeal litigation would cost far more than any potential recovery, making it irrational to pursue until a major project like the upcoming *Superman* film justifies the substantial legal expense this litigation entails.

Plaintiff's Canadian rights—by far the most valuable, given Canada's size and proximity to the American media market—only vested in 2021. Dkt. 1 ¶¶ 50, 52. At that time, DC's unauthorized uses in all the Major Commonwealth Markets were still limited to ancillary exploitations such as ensemble films and merchandising, where "studio accounting" would have made any victory a pyrrhic one. *Id.* ¶¶ 69, 79, 89, 99. Plaintiff filed for relief in January because DC's planned *Superman* release in July is its first major exploitation of a Superman film in over a decade. *Id.* ¶ 13. To demand more is to simply ignore the realities of litigating against a massive multinational like DC/Warner Bros.

DC's delay complaints are particularly disingenuous given that it has, for its own strategic reasons, requested *three* continuances since this case was filed *and* sought a transfer that would cause even more delay. Dkts. 17, 34, 30, 57. As its July *Superman* release approaches, when certainty is most needed, DC has strategically slow-walked proceedings. DC's "delay for me, alacrity for thee" approach undermines equity.

### III. THE BALANCE OF HARDSHIPS AND THE PUBLIC INTEREST FAVOR PLAINTIFF.

#### A. DC's Self-Inflicted Harms Merit No Consideration.

Any hardship DC may suffer from an injunction is entirely self-inflicted and warrants no weight in the balance of hardships analysis. DC was well aware of the FRRs, and the Second Circuit consistently holds that self-inflicted harm does not count against granting preliminary injunctions. *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (2d Cir. 2002) ("As we have previously ruled, the injury a

9

defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself."); *WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 621 (S.D.N.Y. 2011) ("It is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product."), *aff'd*, 691 F.3d 275 (2d Cir. 2012) (quoting *Warner Bros. Entm't v. RDR Books*, 575 F.Supp.2d 513, 553 (S.D.N.Y. 2008) (citing *My-T Fine Corp. v. Samuels*, 69 F.2d 76, 78 (2d Cir.1934)) (Hand, J.)). The scales of justice tip irreversibly toward Plaintiff on this point.

      **B.**    **DC Has No First Amendment Right To Infringe; Plaintiff's First Amendment Interests Are Unrebutted.**

Unlike Plaintiff's legitimate expressive interests, confirmed by his uncontested declaration, that merit First Amendment protections, *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010), "[t]he First Amendment does not…provide [DC] a license for copyright infringement." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010).

      **C.**    **The Public Interest Strongly Favors an Injunction.**

A compelling public interest mandates injunctive relief to uphold international copyright commitments that form the bedrock of cross-border intellectual property protection. When the U.S. acceded to the Berne Convention, it made a binding sovereign commitment to enforce authors' rights under foreign copyright laws—a promise that serves not merely abstract legal principles, but tangible economic interests and the advancement of knowledge and culture worldwide. Copyright industries depend on a worldwide market, contribute over $2 trillion to the U.S. economy, and employ 11.6 million Americans. Dtk. 26-20 at 2; *id*. 26-21 at 6, 13. Failing to enforce foreign copyrights, including, where appropriate, by injunctive relief, substantially undermines this multilateral framework and invites disregard for U.S. copyright interests abroad. The principles of international comity require respect for the deliberate legislative determinations

10

of sovereign nations, including the Major Commonwealth Markets, which have consciously strengthened these author protections through their democratic processes. As the Supreme Court emphasized: "Congress determined that U.S. interests were best served by our full participation in the dominant system of international copyright protection. Those interests include ensuring exemplary compliance with our international obligations.…" *Golan v. Holder*, 565 U.S. 302, 326 (2012). The Court's decision here will not merely resolve a discrete legal dispute, but will signal that, even in uncertain times, U.S. courts remain committed to the international rule of law.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion for a preliminary injunction.

Dated:  April 21, 2025  

TOBEROFF & ASSOCIATES, P.C.

*/s/ Marc Toberoff*
Marc Toberoff
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

*Attorneys for Plaintiff Mark Warren Peary, individually and as executor of the Estate of Joseph Shuster*

11

## CERTIFICATION

I certify that, excluding the caption, table of contents, table of authorities, signature block, and this certification, the foregoing Memorandum of Law contains 3,408 words, calculated using Microsoft Word, which complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Dated:   April 21, 2025                             */s/ Marc Toberoff*
                                                    Marc Toberoff
                                                    23823 Malibu Road, Suite 50-363
                                                    Malibu, CA 90265
                                                    Telephone: (310) 246-3333
                                                    Facsimile: (310) 246-3101

                                                    *Attorneys for Plaintiff Mark Warren Peary, individually and as executor of the Estate of Joseph Shuster*