# EXHIBIT 2

*T. Quell*
*(Hare Court Temple E.C.)*

# COPINGER

ON THE

# LAW OF COPYRIGHT

IN WORKS OF LITERATURE, ART, ARCHITECTURE,
PHOTOGRAPHY, MUSIC AND THE DRAMA:

INCLUDING CHAPTERS ON MECHANICAL CONTRIVANCES AND
CINEMATOGRAPHS:

TOGETHER WITH

INTERNATIONAL AND COLONIAL COPYRIGHT,

WITH THE STATUTES RELATING THERETO.

SIXTH EDITION

BY

F. E. SKONE JAMES, B.A., B.C.L.,

OF THE MIDDLE TEMPLE, ESQ., BARRISTER-AT-LAW.

LONDON:
SWEET & MAXWELL, LIMITED,
Law Publishers,
2 & 3 CHANCERY LANE, W.C. 2.

| TORONTO: | SYDNEY, MELBOURNE, BRISBANE: |
|---|---|
| THE CARSWELL COMPANY, LIMITED. | THE LAW BOOK COMPANY OF AUSTRALASIA, LIMITED. |

1927.

*(Printed in England.)*

for fixing the period of twenty-five years from the death of an author as the limit of the assignability of copyright is because at that date a work ceases to have exclusive copyright, and any person—including, of course, the assignee of the copyright, who then ceases to have the benefit of his assignment—can publish the work upon a royalty basis (f). It is, however, doubtful whether a photograph or a record can be published upon this basis (g). The assignee of the copyright in a photograph or record whose author died shortly after the making of the negative or plate would therefore be in an unfair position as compared with an assignee of, say, literary copyright. Another reason for excluding photographs and records from the proviso against assignment is that a corporation may be deemed to be the "author" of either of these works, and in such a case the proviso could have no possible application. Again, the proviso refers to the interest of the author after the termination of the period of his assignment as "the reversionary interest in the copyright expectant on the termination of that period." If works as to which the existence of any reversionary period is problematical (for the author of a photograph might live for twenty-five years after the making of the photograph) were intended to be included, it would have been more in accordance with the rules of good draftsmanship to have added after "reversionary interest" the words "if any."

*Illusory nature of the benefits enforced by the proviso.*

The proviso to section 5, sub-section 2 was, of course, inserted in the interests of an author's family, to prevent, if possible, a successful author from making improvident contracts to the detriment of his dependants. In practice it will probably be found that the benefits to the author's family or dependants will be quite illusory. The proviso does render null and void any attempt by a living author to dispose of his copyright for longer than the period of his life and twenty-five years after his death, but the weakness of the proviso seems to lie in the fact that it declares that the reversionary interest shall, "on the death of the author," devolve on his legal personal representatives "as part of his estate." This reversionary interest, then, unassignable during the author's lifetime, becomes an asset of the author's estate and assignable immediately upon his death. It will consequently be liable to be sold by his executors for the payment of his debts, and even if not required for that purpose, it will frequently be the duty of the executors to realise the interest for the purpose of

---

(f) Section 9, proviso, *ante*, pp. 87 *et seq*. In the case, however, of works existing prior to the Act, this right does not arise until after thirty years from the death of the author (section 3). There is thus left a hiatus of five years.
(g) *Ante*, p. 88.

winding up the author's estate (*h*). Supposing the author made a specific bequest of his reversionary interest in his copyright, the specific legatee will probably be ready to sell that interest forthwith, rather than wait for a chance of income twenty-five years later. The only possible purchaser, at any rate in the case of a literary work, will, save in exceptional cases, be the author's publisher, and the amount which he will be prepared to give for a reversionary interest in a copyright falling into possession twenty-five years later is not likely to be very large, particularly having regard to the fact that he will, even if he declines to purchase the reversion, be entitled to continue to publish the work, if he thinks it worth while to do so, upon payment of a royalty to the owner of the copyright, and that if he does purchase, he cannot acquire an exclusive copyright (*i*).

Apart from assignment, section 5, sub-section 2 of the Act of 1911 gives to the owner of the copyright the power to grant any interest in the right by licence. Such licences must be in writing, signed by the owner of the copyright or his agent, and, where the author is the first owner of such copyright, cannot be made for a longer period than the life of the author and twenty-five years after his death. *Licences.*

It is not clear what was intended by this part of the section. Before the Act of 1911 a bare licensee had no proprietary right. As it was put by Tindal, C.J., in *Muskett* v. *Hill* (*k*), " a dispensation or licence properly passes no interest, but only makes an action lawful which, without it, would have been unlawful." It had been held, therefore, that a licensee from a copyright owner had no title to sue in his own name for infringement (*l*), but that his proper course was to join as co-plaintiff with himself the owner of the copyright (*m*), who did not lose his right to sue by reason of his having granted a licence (*n*). Again, in the case of *London Printing Alliance* v. *Cox* (*o*), Vaughan Williams, J., held that a purchaser of the copyright in a picture without notice of the existence of a previous licence to copy the picture in monochrome was not bound by the licence and could sue the licensee for doing that which he was authorised by the licence to do.

---

(*h*) For instance, the rule, well known to equity lawyers as the rule in *Howe* v. *Lord Dartmouth* ((1802), 7 Ves. 137), would apply. Cf. *Pickering* v. *Evans*, [1921] 2 Ch. 309.
(*i*) Section 3.
(*k*) (1839), 5 Bing. (N.C.) 694; *Heape* v. *Hartley* (1889), 40 Ch. D. 461.
(*l*) *Neilson* v. *Horniman* (1909), 25 T. L. R. 685; cf. *Heape* v. *Hartley*, supra; *Wooley* v. *Broad*, [1892] 1 Q. B. 806.
(*m*) *Macmillan* v. *Dent*, [1907] 1 Ch. 107. If the owner refused to join, the proper course would be to make him a defendant.
(*n*) *Marshall* v. *Bull* (1901), 85 L. T. 77.
(*o*) [1891] 3 Ch. 291.