```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
MARK WARREN PEARY, *individually and in his*                            :
*capacity as executor of the Estate of Joseph Shuster*,                 :
                                                                        :
                              Plaintiff,                                :       25-CV-910 (JMF)
                                                                        :
              -v-                                                       :       OPINION AND ORDER
                                                                        :
DC COMICS, INC. et al.,                                                 :
                                                                        :
                              Defendants.                               :
                                                                        :
------------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

This case is the latest installment in a "long-running saga regarding the ownership of copyrights in Superman — a story almost as old as the Man of Steel himself." *DC Comics v. Pacific Pictures Corp.*, 545 Fed. App'x 678, 679-80 (9th Cir. 2013) (unpublished). Plaintiff Mark Warren Peary is the nephew of Joseph Shuster, a co-creator of Superman who died in 1992. Peary brings this case — "individually *and* in his capacity as executor of the Estate of Joseph Shuster," ECF No. 1 ("Compl."), at 1 (emphasis added) — against Defendants DC Comics, Inc., DC Comics, DC Entertainment, Inc., and Warner Bros. Discovery, Inc. (collectively, "DC") to "vindicate" the Estate's "foreign copyright interests" in Superman. *Id.* ¶ 1. Specifically, he seeks a declaratory judgment as well as damages and injunctive relief for "Defendants' ongoing infringement in Canada, the United Kingdom, Ireland and Australia." *Id.* ¶ 5. Peary has moved for a preliminary injunction, *see* ECF No. 25, but before the Court can consider that motion — or anything pertaining to the merits of the parties' dispute — it must confront the threshold question of whether it has jurisdiction, an issue raised by Defendants in a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, *see* ECF

No. 30.  For the reasons that follow, the Court concludes that it does not have jurisdiction and that the case must therefore be dismissed.  Peary's motion is thus denied as moot.

## BACKGROUND

The following relevant factual background is, unless otherwise noted, drawn from the Complaint and assumed to be true for purposes of this Opinion and Order.  *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

In 1933, Shuster, a graphic artist, and Jerome Siegel, a writer, conceived and created "a cartoon strip featuring the first 'superhero': a unique man of superhuman strength and powers who would perform feats of great importance for the public good . . . .  They named their character 'Superman.'"  Compl. ¶ 19.  Five years later, Shuster and Siegel assigned the "exclusive right to the use of [Superman's] characters and story" (the "Work") to DC's predecessor, Detective Comics.  Compl. ¶ 22 & Ex. 1.  In 2003, Peary, acting as executor of Shuster's Estate, filed a copyright termination notice pursuant to 17 U.S.C. § 304(d), seeking to reclaim from DC the copyrights to Superman.  *See DC Comics*, 545 Fed. App'x at 680.  In response, DC sought and obtained (and then defended on appeal) a declaration that the notice of termination filed by the Estate was invalid under U.S. copyright law.  *See id*.

Peary now brings this suit seeking "damages and injunctive relief for Defendants' ongoing infringement in Canada, the United Kingdom, Ireland and Australia, as well as declaratory relief establishing the Shuster Estate's ownership rights across relevant jurisdictions."  Compl. ¶ 5.  Peary alleges that, although Shuster and Siegel assigned worldwide copyrights to Superman to DC in 1938, "the copyright laws of countries with the British legal tradition . . . contain provisions automatically terminating such assignments 25 years after an author's death, vesting in the Shuster Estate the co-author's undivided copyright interest in such

countries." *Id.* ¶¶ 2-3.  Peary contends that, despite the reversion of these foreign copyrights, Defendants "continue to exploit Superman across these jurisdictions without the Shuster Estate's authorization — including in motion pictures, television series, and merchandise — in direct contravention of these countries' copyright laws, which require the consent of all joint copyright owners to do so." *Id.* ¶ 3.  Peary's Complaint alleges that, under the Berne Convention for the Protection of Literary and Artistic Works ("Berne Convention"), the Court is "treaty bound to apply the laws of these countries . . . so as to protect Plaintiff's enjoyment and exercise of the Shuster Estate's Superman copyright interests." *Id.* ¶¶ 53-56.

Now pending are Peary's motion for a preliminary injunction, *see* ECF No. 25, and Defendants' motion to dismiss (or, in the alternative, transfer), *see* ECF No. 30.

## LEGAL STANDARDS

The Court begins, as it must, with Defendants' motion to dismiss for lack of subject-matter jurisdiction.  *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998) (noting that subject-matter jurisdiction cannot be assumed and is a "threshold question that must be resolved . . . before proceeding to the merits"); *see also, e.g.*, *Take-Two Interactive Software, Inc. v. Zipperer*, No. 18-CV-2608 (LLS), 2018 WL 4347796, at *2 n.1 (S.D.N.Y. Aug. 16, 2018) ("Where subject matter jurisdiction is lacking, denial of a motion for a preliminary injunction is required.").  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  In reviewing a Rule 12(b)(1) motion, a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison*

3

*v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (cleaned up).  The Court also "may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

## DISCUSSION

The Complaint alleges that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a); federal-question jurisdiction pursuant to 28 U.S.C. § 1331; and jurisdiction over the declaratory judgment claim pursuant to 28 U.S.C. § 2201.  Compl. ¶¶ 12, 14-15; *see* ECF No. 39 ("Pl.'s Mem."), at 6-16.  The Court will begin with the issue of diversity jurisdiction.

### A. Diversity Jurisdiction

Diversity jurisdiction extends only to cases in which there is complete diversity of citizenship among the parties, *see* 28 U.S.C. § 1332(a), meaning that "all plaintiffs must be citizens of states diverse from those of all defendants," *Pa. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117-18 (2d Cir. 2014).  Peary alleges that he is a citizen of New Mexico, *see* Compl. ¶ 10, but, as noted above, he brings this action both in his individual capacity and in his capacity "as executor" of Shuster's Estate.  *See, e.g., id.* at 1 (caption); *id.* ¶ 5 (seeking damages, injunctive relief, and declaratory relief "as executor of the Shuster Estate").  Under the diversity statute, "the legal representative of the estate of a decedent *shall* be deemed to be a citizen *only of the same State as the decedent*," 28 U.S.C. § 1332(c)(2) (emphasis added), which is determined as of the date of the decedent's death, *see, e.g.*, *Hartke on behalf of Est. of Hartke v. Bonhams & Butterfields Auctioneers Corp.*, No. 24-258, 2024 WL 4380315, at *1 (2d Cir. 2024) (summary order).  It is undisputed that Shuster was, at the time of his death in 1992, a citizen of California.  Compl. ¶ 109; *see* Pl.'s Mem. 14-16.  It follows that Peary is, in his

capacity as executor of Shuster's Estate, "deemed to be" a citizen of California as well. 28 U.S.C. § 1332(c)(2).

At least one Defendant — DC Comics — is also a California citizen. DC Comics is a general partnership. *See* ECF No. 32 ("Smith Decl."), ¶¶ 2-7 & Exs. 1-5; ECF No. 16 (DC's Rule 7.1 Statement). It is well established that, "for purposes of establishing diversity, a partnership has the citizenship of each of its partners." *Herrick Co., Inc. v. SCS Communications, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001). One of DC Comics's partners — E.C. Publications, Inc. — is a California citizen because its principal place of business is in California. *See* Smith Decl. ¶¶ 2-7 & Exs. 1-5; *see also* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State . . . where it has its principal place of business."). Thus, there are California citizens on both sides of this case, defeating complete diversity. Peary's reliance on the diversity jurisdiction statute is thus misplaced.

Peary's efforts to avoid this conclusion are unpersuasive. He argues first that the foreign reversionary rights at issue belong to him personally. *See* Pl.'s Mem. 15. But as the Complaint acknowledges, any copyright interests "reverted to Plaintiff *as the executor of Shuster's estate*." Compl. ¶ 56 (emphasis added). It is no wonder, then, that Peary explicitly brings claims "in his capacity as executor of the Estate." *Id.* at 1. Next, citing no binding authority, Peary contends that a "functional approach to representative actions justifies looking through to Plaintiff's true citizenship — New Mexico." Pl.'s Mem. 16. In doing so, however, he ignores the plain language of the diversity statute and the Second Circuit's admonition that courts must "strictly construe the diversity statute." *Franceskin v. Credit Suisse*, 214 F.3d 253, 258 (2d Cir. 2000). Finally, Peary asserts in passing that "E.C. Publications is unrelated to Superman," Pl.'s Mem.

5

16, but that is irrelevant to the analysis. DC Comics is a named Defendant and its citizenship is based in part on the citizenship of E.C. Publications, whatever its role may be.

In short, the Court lacks jurisdiction pursuant to the diversity statute.

## B. Federal-Question Jurisdiction

That leaves federal-question jurisdiction. Under 28 U.S.C. § 1331, the Court has subject-matter jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." To invoke this ground for jurisdiction, however, a complaint must "necessarily raise a federal issue" — that is, "a right or immunity created by the Constitution or laws of the United States [must be] an element, and an essential one, of the plaintiff's cause of action." *Solomon v. St. Joseph Hosp.*, 62 F.4th 54, 63-64 (2d Cir. 2023). On the face of the Complaint here, Peary would not seem to satisfy that requirement. Indeed, his infringement claims are brought explicitly under the laws of *foreign* countries, not the laws of the United States. *See* Compl. ¶¶ 65-74 ("Infringement Under Canadian Copyright Law"); *id.* ¶¶ 75-84 ("Infringement Under U.K. Copyright Law"); *id.* ¶¶ 85-94 ("Infringement Under Irish Copyright Law"); *id.* ¶¶ 95-104 ("Infringement Under Australian Copyright Law").

Despite that, the Complaint puts forward two grounds for federal-question jurisdiction, but both can be swiftly rejected. First, the Complaint alleges that the Court has subject-matter jurisdiction "over the declaratory claim pursuant to 28 U.S.C. § 2201." Compl. ¶ 15. It is well established, however, that "the Declaratory Judgments Act is not an independent source of federal jurisdiction." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960); *see also Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co.*, 116 F.4th 106, 113-14 (2d Cir. 2024) ("The [Declaratory Judgment Act] only provides courts with discretion to fashion a remedy, not a cause of action."). Second, the Complaint alleges that Peary's claims "arise under the Berne

6

Convention" itself. Compl. ¶ 14. But "[a]n action arises under a treaty only when the treaty expressly or by implication provides for a private right of action" — that is, "[t]he treaty must be self-executing." *Columbia Marine Servs., Inc. v. Reffet Ltd.*, 861 F.2d 18, 21 (2d Cir. 1988). And "[e]very judge in this district who has considered whether the Berne Convention is self-executing has concluded that it is not." *Elsevier B.V. v. UnitedHealth Group, Inc.*, No. 09-CV-2124 (WHP), 2010 WL 150167, at *2 (S.D.N.Y. Jan. 14, 2010) (collecting cases); *Joint Stock Co. "Channel One Russia Worldwide" v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2024 WL 5154462, at *9 n.5 (S.D.N.Y. Dec. 18, 2024) ("[T]he Berne Convention is not a self-executing treaty.").[1] Tellingly, Peary does not rely on either of these grounds for federal-question jurisdiction in his opposition to Defendants' motion to dismiss.[2]

Instead, Peary's case for federal-question jurisdiction now rests on the "substantial federal question doctrine," which recognizes that "in certain cases federal-question jurisdiction will lie over state-law claims" — or, Peary suggests, and the Court assumes, foreign-law claims — "that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005); *see also* Pl's Mem. 6-14; *see also* ECF No. 26 ("Pl.'s PI

---

[1] Peary acknowledges that the Berne Convention "is not self-executing" but contends that "Congress has in fact executed it," citing the Berne Convention Implementation Act. Pl.'s Mem. 7. But Peary's claims are not based on the Berne Convention Implementation Act. Moreover, Congress declared in that Act that "[t]he obligations of the United States under the Berne Convention may be performed *only pursuant to appropriate domestic law*"; and that "[t]he amendments made by this Act, together with the law as it exists on the date of the enactment of this Act, satisfy the obligations of the United States in adhering to the Berne Convention and no further rights or interests shall be recognized or created for that purpose." Pub. L. No. 100-568 § 2(2)-(3), 102 Stat. 2853 (1988) (emphasis added); *see Elsevier B.V.*, 2010 WL 150167, at *2. Peary cites no other provision of domestic law as a basis for his claims.

[2] For that reason, the Court could deem the arguments to be abandoned. *See, e.g.*, *Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) ("Where abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended.").

7

Mem."), at 7-8 n.5 ("There is federal question jurisdiction over Plaintiff's claims under *Grable*[.] While the laws of the Major Commonwealth Markets create Plaintiff's causes of action, they require interpretation of substantial issues under the Berne Convention."). As the Supreme Court has explained, the substantial federal question doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.

  *Grable*, the leading modern case on the substantial federal question doctrine, involved a suit to quiet title to property that the Internal Revenue Service ("IRS") had seized from the plaintiff to satisfy a federal tax delinquency, which it then sold to the defendant. *Id.* at 310-11. The plaintiff alleged that the defendant's record title was invalid because, in providing notice of the seizure by mail rather than by personal service, the IRS had failed to comply with the notice requirements of federal law. *See id.* at 311. The defendant removed the case to federal court, and that removal was upheld by the lower courts. In reviewing the case, the Supreme Court held that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (discussing *Grable*). "Where all four of these requirements are met . . . , jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quoting *Grable*, 545 U.S. at 313).

  Applying that test, the *Grable* Court held that removal of the plaintiff's suit to quiet title was proper. First, the plaintiff had "premised its superior title claim on a failure by the IRS to

8

give it adequate notice, as defined by federal law." 545 U.S. at 314-15. Thus, whether the plaintiff had received notice adequate within the meaning of federal law was "an essential element of its quiet title claim." *Id.* at 315. Second, "the meaning of the federal statute [was] actually in dispute"; in fact, it appeared "to be the only legal or factual issue contested in the case." *Id.* Third, the Court concluded that "[t]he meaning of the federal tax provision [was] an important issue of federal law that sensibly belong[ed] in a federal court" given the IRS's "strong interest in the prompt and certain collection of delinquent taxes" and the interest of "buyers (as well as tax delinquents)" in having "judges used to federal tax matters" resolve whether the IRS "has touched the bases necessary for good title." *Id.* (internal quotation marks omitted). Finally, the Court held that federal jurisdiction would not disrupt the federal-state balance "because it will be the rare state title case that raises a contested matter of federal law." *Id.* Thus, "federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor." *Id.*

The Supreme Court has made clear that *Grable* calls for federal jurisdiction over only a "special and small category" of cases. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006); *see id.* at 701 (referring to "the slim category *Grable* exemplifies"); *see also Gunn*, 568 U.S. at 258 (same). For example, "[t]he 'mere presence' of a federal issue in a state cause of action" and the "mere assertion of a federal interest" are not enough to confer federal jurisdiction. *Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 933 F. Supp. 2d 613, 619, 622 (S.D.N.Y. 2013) (quoting *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986), and citing *Empire Healthchoice*, 547 U.S. at 701); *accord Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 674-75 (9th Cir. 2012). Nor does the presence of a federal defense suffice — "even if the parties concede that the defense is the only disputed issue in the case" and, in that

sense, "necessary to the resolution" of the state law claim. *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138, 141 n.5 (2d Cir. 2012); *see id.* at 140 n.4 (stating that jurisdiction is inappropriate under *Grable* where a federal issue is "not necessarily raised by [the plaintiff's] affirmative claims," but rather "comes into the case as a defense"); *see also, e.g., Gilmore v. Weatherford*, 694 F.3d 1160, 1173 (10th Cir. 2012) ("To determine whether an issue is 'necessarily' raised, the Supreme Court has focused on whether the issue is an 'essential element' of a plaintiff's claim." (quoting *Grable*, 545 U.S. at 314-15)); *see generally Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (holding that a federal defense to a state-law cause of action does not support federal-question jurisdiction). And finally, if a claim does not present "a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous . . . cases," but rather is "fact-bound and situation-specific," the exercise of federal-question jurisdiction will generally be inappropriate. *Empire Healthchoice*, 547 U.S. at 700-01, (internal quotation marks omitted).

  This case does not fall into "the slim category *Grable* exemplifies." *Id.* at 701. Treating his U.K. copyright infringement claim as an exemplar, Peary asserts several ways in which his foreign copyright claims necessarily raise federal issues. *See* Pl.'s Mem. 9-12. All of these asserted issues, however, suffer the same shortcoming: They are not substantial within the meaning of *Grable* and its progeny. As the Supreme Court has instructed, "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim necessarily raises a disputed federal issue, as *Grable* separately requires." *Gunn*, 568 U.S. at 260 (cleaned up). Instead, "[t]he substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Id.* On that score, Peary's arguments plainly fall short. The crux of Peary's argument is that the elements of

10

his foreign claims implicate several ancillary questions about the nature of Shuster's copyrights under U.S. copyright law and the Berne Convention — including, for instance, whether "the Work was not a work-made-for-hire under the U.S. copyright Act of 1909"; whether "the Work secured and maintained valid U.S. copyright protection as of October 31, 1989"; and whether the copyright protection at issue extends until 2033 or 2046 under U.S. copyright law and the Berne Convention. *See* Pl.'s Mem. 9-11. But to state the argument is to show why it fails the *Grable* test. Far from issues of pure law that "would govern numerous . . . cases," these issues raise "fact-bound and situation-specific" questions whose import is largely confined to the particular circumstances of this dispute. *Empire Healthchoice*, 547 U.S. at 700-01 (internal quotation marks omitted). Thus, "[t]he present case is poles apart from *Grable*, in which a state court's resolution of the federal question would be controlling in numerous other cases," *Gunn*, 568 U.S. at 262 (internal quotation marks omitted), and, as a result, "there is no serious federal interest in claiming the advantages thought to be inherent in a federal forum," *id.* at 264-65 (internal quotation marks omitted). Put simply, "[t]he issues here are significant only to the relevant parties and their specific disputes." *Sunvestment Energy Grp.*, 116 F.4th at 118.

That is enough to reject Peary's reliance on the substantial federal question doctrine. *See, e.g.*, *Qatar v. First Abu Dhabi Bank PJSC*, 432 F. Supp. 3d 401, 414 (S.D.N.Y. 2020) (Nathan, J.) (observing that the *Grable* test "is not a balancing test — if any one of these four prongs is absent, there is no federal jurisdiction"). But in any event, his reliance is misplaced for other reasons as well. First, Peary asserts broadly that resolution of his foreign infringement claims "requires construction of Berne," Pl.'s Mem. 11; *see also* Pl.'s PI Mem.7-8 n.5 (asserting, without elaboration, that "[w]hile the laws of the Major Commonwealth Markets create Plaintiff's causes of action, they require interpretation of substantial issues under the Berne

11

Convention"), but he neglects to identify any specific Berne-interpretation issues "necessarily raised" in this case.  Second, the issue of whether the Superman copyright extends until 2033 or 2046 is also not "necessarily raised" because it has no bearing on whether Peary possesses foreign reversionary rights or whether DC is liable for foreign copyright infringement.  *See* ECF No. 40 ("Defs.' Reply"), at 6.  Third, at least three of Peary's asserted federal issues — the choice-of-law issues raised by his foreign infringement claims; whether the Work maintained a valid U.S. copyright protection as of October 31, 1989; and the unspecified construction of Berne, *see* Pl.'s Mem. 9-11 — are not "actually disputed" by the parties.  *See* Defs.' Reply 5-7.  And finally, Peary's one-sentence claim that Defendants' preclusion defense "hinges on interpreting U.S. copyright law's territorial limits," Pl.'s Mem. 12, fails because "references to federal law [that] only anticipate and refute [a defendant's] defenses . . . do not give rise to federal question jurisdiction," *Shinnecock Indian Nation*, 686 F.3d at 139.

     In short, the Court concludes that this case falls outside the "special and small category" of cases defined by the substantial federal question doctrine.  Peary argues, in passing, that Judge Friendly's opinion in *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir. 1964), supplies an independent basis for federal-question jurisdiction.  *See* Pl.'s Mem. 1-2, 6.  But that pre-*Grable* decision — which addresses "whether a suit arises under the Copyright Act . . . if the disputed issues include non-copyright matters," *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 350 (2d Cir. 2000) — is neither a perfect substitute for, nor alternative to, the substantial federal question doctrine that the Supreme Court enunciated in *Grable*.  *See Wolfson v. Ernst*, 112 F. Supp. 3d 167, 172 (S.D.N.Y. 2015) (discussing the interplay between *T.B. Harms* and *Grable* and its progeny in connection with a copyright infringement claim); *see also, e.g., Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG.*, 510 F.3d 77, 96 n.20

(1st Cir. 2007) (Cyr, J., dissenting) (noting that "the principle set forth in *T.B. Harms*" is "often" cited "as a device to establish the *absence* of federal question jurisdiction, but [courts] have been reluctant to embrace the test as a reliable means to establish the *presence* of [substantial federal question] jurisdiction"). At most, the *T.B. Harms* analysis might inform whether an issue under the U.S. Copyright Act is "necessarily raised," but it says nothing about, for example, whether that issue is "actually disputed" or "substantial" within the meaning of *Grable*.

Accordingly, there is no jurisdiction under the federal-question statute either.

## CONCLUSION

For the foregoing reasons, the Court concludes that it lacks subject-matter jurisdiction over this case; the case therefore must be and is dismissed. Accordingly, the Court need not and does not address Defendants' alternative argument that the case should be transferred to another federal district. *See* ECF No. 31, at 12. Additionally, given the Court's lack of jurisdiction, Peary's motion for a preliminary injunction must be and is denied as moot.[3]

The Clerk of Court is directed to terminate ECF Nos. 25, 30, and 61 and to close the case.

SO ORDERED.

Dated: April 24, 2025
New York, New York

JESSE M. FURMAN
United States District Judge

---

[3] Defendants' motion to strike a declaration Peary filed in connection with his motion for a preliminary injunction is similarly denied as moot. *See* ECF No. 61.